**| Respond to Selected Documents |** **Sort by date:** Descending Ascending **Display options:** All Entries

EXHIBIT
A

**08/31/2026**

**Notice**
Notice Regarding Filing of Administrative Record; Record; Electronic Filing Certificate of Service.
**Filed By:** SANDRA PATRICIA ZAMBRANA
**On Behalf Of:** ST. LOUIS COUNTY, MISSOURI, ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH, ST. LOUIS COUNTY CIVIL SERVICE COMMISSION, KANIKA CUNNINGHAM, DERRICK MELTON, SHARON GARDNER

**Case Mgmt Conf Scheduled**
SO ORDERED: JUDGE HEATHER R. CUNNINGHAM
**Scheduled For:** 10/26/2026; 8:45 AM; HEATHER RENE CUNNINGHAM; St Louis County

**Case Mgmt Conf Held**

**Associated Entries: 08/11/2026 - Case Mgmt Conf Scheduled**
**Scheduled For:** 08/31/2026; 8:45 AM; HEATHER RENE CUNNINGHAM; St Louis County

**08/28/2026**

**Order Granting Ext of Time**
CONSENT MOTION FOR ADDITIONAL TIME TO FILE RECORD BEFORE THE AGENCY PURSUANT TO RSMO § 536.130 SO ORDERED: JUDGE HEATHER R. CUNNINGHAM

**08/26/2026**

**Affidavit Filed**
Wyatt Second Supplemental Affidavit - Exhibit A; Electronic Filing Certificate of Service.
**Filed By:** KATHERINE CLENDENIN LEMLEY
**On Behalf Of:** DERRICK MELTON

**Notice**
Wyatt Notice of Commencement of Chief Operating Officer Position and Reservation of Rights; Electronic Filing Certificate of Service.
**Filed By:** KATHERINE CLENDENIN LEMLEY
**On Behalf Of:** DERRICK MELTON

**Order to Consolidate**
The Court hereby orders that the trial of the action on the merits to be advanced and consolidated with the hearing of the application for a preliminary injunction. SO ORDERED: JUDGE HEATHER R. CUNNINGHAM
**Associated Entries: 08/26/2026 -**
**Motion to Consolidate**
+

**Proposed Order Filed**
Wyatt Proposed Order on Consolidation and Scheduling; Electronic Filing Certificate of Service.
**Filed By:** KATHERINE CLENDENIN LEMLEY
**On Behalf Of:** DUANE "PETE" WYATT

**Motion to Consolidate**
Wyatt Motion to Consolidate; Electronic Filing Certificate of Service.
**Filed By:** KATHERINE CLENDENIN LEMLEY
**On Behalf Of:** DUANE "PETE" WYATT
**Associated Entries: 08/26/2026 -**
**Order to Consolidate**
+

**Request for Jury Trial Filed**
Wyatt Demand for Trial By Jury; Electronic Filing Certificate of Service.
**Filed By:** KATHERINE CLENDENIN LEMLEY
**On Behalf Of:** DUANE "PETE" WYATT

**08/25/2026**

**Order Granting Ext of Time**
CONSENT MOTION FOR ADDITIONAL TIME TO FILE RECORD BEFORE THE AGENCY PURSUANT TO RSMO § 536.130 COMES NOW IS GRANTED SO ORDERED: JUDGE HEATHER R. CUNNINGHAM
**Associated Entries: 08/24/2026 -**
**Motion for Extension of Time**
+

**08/24/2026**

**Motion for Extension of Time**

MOTION FOR EXTENTION OF TIME; Electronic Filing Certificate of Service.

**Filed By:** NICHOLAS CHARLES LINDLEY

**On Behalf Of:** ST. LOUIS COUNTY, MISSOURI, ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH, ST. LOUIS COUNTY CIVIL SERVICE COMMISSION, KANIKA CUNNINGHAM, DERRICK MELTON, SHARON GARDNER

**Associated Entries: 08/25/2026 -**

**Order Granting Ext of Time**

+

**08/16/2026**

**Corporation Served**

Document ID - 26-SMCC-10421; Served To - ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH; Served Date - 08/12/2026; Served Time - 13:47:24; Service Type - SP; Reason Description - SERV; Service Text -

**Corporation Served**

Document ID - 26-SMCC-10422; Served To - ST. LOUIS COUNTY, MISSOURI; Served Date - 08/12/2026; Served Time - 13:45:59; Service Type - SP; Reason Description - SERV; Service Text -

**Corporation Served**

Document ID - 26-SMCC-10420; Served To - ST. LOUIS COUNTY CIVIL SERVICE COMMISSION; Served Date - 08/12/2026; Served Time - 13:45:20; Service Type - SP; Reason Description - SERV; Service Text -

**Affidavit Filed**

Affidavit of Service on St. Louis County; Electronic Filing Certificate of Service.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Affidavit Filed**

Affidavit of Service on Defendant Civil Service Commission; Electronic Filing Certificate of Service.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Affidavit Filed**

Affidavit of Service on Defendant Department of Health; Electronic Filing Certificate of Service.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Motion for Extension of Time**

Wyatt Motion for Extension of Time to File Administrative Record; Wyatt Letter to Commission and County81626; Proposed Order on Request for Extension of Time to File Administrative Record; Electronic Filing Certificate of Service.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**08/11/2026**

**Case Mgmt Conf Scheduled**

**Associated Entries: 08/31/2026 - Case Mgmt Conf Held**

**Scheduled For:** 08/31/2026; 8:45 AM; HEATHER RENE CUNNINGHAM; St Louis County

**Order**

ORDER REGARDING TEMPORARY RESTRAINING ORDER SO ORDERED: JUDGE HEATHER R. CUNNINGHAM

**Summons Personally Served**

Document ID - 26-SMCC-10417; Served To - SHARON GARDNER; Served Date - 08/09/2026; Served Time - 09:58:27; Service Type - SP; Reason Description - SERV; Service Text -

**Affidavit Filed**

Affidavit of Service on Defendant Sharon Gardner; Electronic Filing Certificate of Service.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**08/10/2026**

**Motion Hearing Held**

**Associated Entries: 08/06/2026 - Motion Hearing Scheduled** +

**Scheduled For:** 08/10/2026; 9:30 AM; HEATHER RENE CUNNINGHAM; St Louis County

**Order**

PLAINTIFF CALLS HIS MOTION FOR TEMPORARY RESTRAINING ORDER FOR HEARING. PLAINTIFF APPEARS AND BY COUNSEL. ST. LOUIS COUNTY APPEARS BY COUNSEL. PLAINTIFF'S MOTION HEARD AND SUBMITTED. SO ORDERED: JUDGE HEATHER R. CUNNINGHAM

**Memo of Law in Suppt of Filed**

MEMORANDUM IN OPPOSITION; Electronic Filing Certificate of Service.

**Filed By:** NICHOLAS CHARLES LINDLEY

**On Behalf Of:** ST. LOUIS COUNTY, MISSOURI

**Entry of Appearance Filed**

ENTRY OF APPEARANCE, Electronic Filing Certificate of Service.

**Filed By:** NICHOLAS CHARLES LINDLEY

**On Behalf Of:** ST. LOUIS COUNTY, MISSOURI

**08/07/2026**

**Proposed Order Filed**

Plaintiffs Proposed Temporary Restraining Order.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Certificate of Service**

Certificate of Service.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Affidavit Filed**

Wyatt Supplemental Affidavit ISO Motion for Temporary Restraining Order.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Mot for Temp Restraining Order**

Supplement to Motion for Temporary Restraining Order and Notice of Supplemental Facts.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Alias Summons Requested**

Second Request for Alias Summonses.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Alias Summons Issued**

Document ID: 26-SMCC-10422, for ST. LOUIS COUNTY, MISSOURI Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Alias Summons Issued**

Document ID: 26-SMCC-10421, for ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Alias Summons Issued**

Document ID: 26-SMCC-10420, for ST. LOUIS COUNTY CIVIL SERVICE COMMISSION Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Alias Summons Issued**

Document ID: 26-SMCC-10419, for CUNNINGHAM, KANIKA Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Alias Summons Issued**

Document ID: 26-SMCC-10418, for MELTON, DERRICK Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Alias Summons Issued**

Document ID: 26-SMCC-10417, for GARDNER, SHARON Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**08/06/2026**

**Motion Hearing Scheduled**

PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER REVISED Event Information: New EventType: Add On;

**Associated Entries: 08/10/2026 - Motion Hearing Held**

**Scheduled For:** 08/10/2026; 9:30 AM; HEATHER RENE CUNNINGHAM; St Louis County

**Notice of Hearing Filed**

Notice of Hearing of Plaintiffs Motion for Temporary Restraining Order.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**08/05/2026**

**Note to Clerk eFiling**

**Filed By:** KATHERINE CLENDENIN LEMLEY

**Alias Summons Requested**

Plaintiffs Request for Alias Summonses.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Alias Summons Requested**

Plaintiffs Request for Alias Summonses.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Order Granting Leave**

REQUEST FOR LEAVE TO AMEND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT SO ORDERED: JUDGE HEATHER R. CUNNINGHAM

**Memo of Law in Suppt of Filed**

Plaintiffs Memorandum in Support of Preliminary Injunction Motion; Pl. Ex. 1; Pl. Ex. 2; Pl. Ex. 3; Pl. Ex. 4; Pl. Ex. 5; Pl. Ex. 6; Pl. Ex. 7; Pl. Ex. 8; Pl. Ex. 9; Pl. Ex. 11; Pl. Ex. 12; Pl. Ex. 13; Pl. Ex. 14; Pl. Ex. 15.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Motion for Leave**

Plaintiffs Request for Leave to Amend His Motion for Preliminary Injunction and Memorandum in Support.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Amended Motion/Petition Filed**

Plaintiffs First Amended Motion for Preliminary Injunction.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Summons Returned Non-Est**

Document ID - 26-SMCC-10086; Served To - SHARON GARDNER; Served Date - 08/07/2026; Served Time - 08:27:19; Service Type - SP; Reason Description - NEST; Service Text -

**Summons Returned Non-Est**

Document ID - 26-SMCC-10087; Served To - DERRICK MELTON; Served Date - 08/07/2026; Served Time - 08:26:54; Service Type - SP; Reason Description - NEST; Service Text -

**Summons Returned Non-Est**

Document ID - 26-SMCC-10088; Served To - KANIKA CUNNINGHAM; Served Date - 08/07/2026; Served Time - 08:26:28; Service Type - SP; Reason Description - NEST; Service Text -

**Summons Returned Non-Est**

Document ID - 26-SMCC-10089; Served To - ST. LOUIS COUNTY CIVIL SERVICE COMMISSION; Served Date - 08/07/2026; Served Time - 08:26:08; Service Type - SP; Reason Description - NEST; Service Text -

**Summons Returned Non-Est**

Document ID - 26-SMCC-10090; Served To - ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH; Served Date - 08/07/2026; Served Time - 08:25:50; Service Type - SP; Reason Description - NEST; Service Text -

**Summons Returned Non-Est**

Document ID - 26-SMCC-10091; Served To - ST. LOUIS COUNTY, MISSOURI; Served Date - 08/07/2026; Served Time - 08:25:29; Service Type - SP; Reason Description - NEST; Service Text -

**08/03/2026**

**Motion for Discovery**

Wyatt Motion for Expedited Discovery.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Affidavit Filed**

Wyatt Affidavit in Support of His Motion for Temporary Restraining Order.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**Mot for Temp Restraining Order**

Wyatt Motion for Temporary Restraining Order.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**07/31/2026**

**Summons Issued-Circuit**

Document ID: 26-SMCC-10091, for ST. LOUIS COUNTY, MISSOURI Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Summons Issued-Circuit**

Document ID: 26-SMCC-10090, for ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Summons Issued-Circuit**

Document ID: 26-SMCC-10089, for ST. LOUIS COUNTY CIVIL SERVICE COMMISSION Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Summons Issued-Circuit**

Document ID: 26-SMCC-10088, for CUNNINGHAM, KANIKA Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Summons Issued-Circuit**

Document ID: 26-SMCC-10087, for MELTON, DERRICK Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**Summons Issued-Circuit**

Document ID: 26-SMCC-10086, for GARDNER, SHARON Summons Attached in PDF Form for Attorney to Retrieve from Secure Case.Net and Process for Service.

**07/28/2026**

**Motion Special Process Server**

Request for Appointment of Special Process Server.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**Motion Special Process Server**

Request for Appointment of Special Process Server.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**Judge/Clerk - Note**

PLEASE SUBMIT SPECIAL PROCESS SERVER FORM WITH SECOND PAGE, LOCAL RULE 28, ATTACHED. LOCAL RULE 28 IS NECESSARY FOR ALL FILINGS OF SPECIAL PROCESS SERVER FORMS. IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT THE CLERK AT (314)-615-2671. FAILURE TO DO SO WILL RESULT IN YOUR FILING BEING PROCESSED FOR DISMISSAL.

**07/27/2026**

**Summ Req-Circuit Pers Serv**

Request for Appointment of Process Server.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

**07/19/2026**

**Request for Hearing**

Plaintiffs Motion for Expedited Hearing of His Preliminary Injunction Motion.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**Motion Filed**

Plaintiffs Motion for Preliminary Injunction.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**Memo of Law in Suppt of Filed**

Plaintiffs Brief in Support of His Motion for Preliminary Injunction; Pl. Ex. 1; Pl. Ex. 2; Pl. Ex. 3; Pl. Ex. 4; Pl. Ex. 5; Pl. Ex. 7; Pl. Ex. 8; Pl. Ex. 9; Pl. Ex. 10; Pl. Ex. 11.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**07/17/2026**

**Judge Assigned**

DIV 3

**Filing Info Sheet eFiling**

**Filed By:** KATHERINE CLENDENIN LEMLEY

**Pet Filed in Circuit Ct**

Wyatt v. St. Louis County, et. al, Petition; Exhibit 1 33026 Administrative Hearing Transcript; Exhibit 2 Appellants Administrative Hearing Exhibits; Exhibit 3 Civil Service Commission Findings of Fact, Conclusions of Law and Decision; Exhibit 4 Wyatt Second Amended Appeal to Civil Service Commission; Exhibit 5 Sunshine Request 26-3253 File; Exhibit 6 Sunshine Act Request 26-3253 Timeline; Exhibit 7 Appelants Findings of Fact, Conclusions of Law, Proposed Order and Post-Hearing Brief in Support.

**Filed By:** KATHERINE CLENDENIN LEMLEY

**On Behalf Of:** DUANE "PETE" WYATT

2

In the
# CIRCUIT COURT
## of St. Louis County, Missouri

WYATT
Plaintiff(s)

vs.

ST. LOUIS COUNTY
Defendant(s)

08.31.26
Date

26SL-CC05095
Case Number

3
Division

File Stamp Only

FILED
AUG 31 2026
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

## CIVIL/CRIMINAL DOCKET MEMO

| | |
|---|---|
| ____ | Pre-trial Conference not held |
| ____ | Pre-trial Conference held |
| ✓ | State/Plaintiff appears by: FRIEDRICH |
| ✓ | Defendant(s) appear by: LINDLEY / PRATT / ZAMBRANA |
| ____ | Cause determined to be a definite trial |
| ____ | Caused passed for settlement |
| ____ | Track Number |
| ____ | Length of time of trial |
| ____ | Offer/Demand/Recommendation: |
| ✓ | Comments: Case management ~~Settlement~~ Conference Date: 10-26-26 @ 8:45AM |
| ____ | Trial Date: |
| ____ | Defendant fails to appear, warrant and bond forfeiture ordered. |

**A COPY OF THIS ORDER WILL SERVE AS YOUR ONLY NOTICE; NO FURTHER NOTICE WILL BE MAILED.**

Attorney [signature] FOR A — Bar No. 63038
Address
Phone No. 314-696-6172

Attorney [signature] — Bar No. 51345
Phone No. (314) 791-5227

SO ORDERED

[signature]
Judge/Division DV3 08/31/2026

CCCDT178 Rev. 01/2019 WHITE – File YELLOW – Plaintiff/Attorney PINK – Defendant/Attorney

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**TWENTY-FIRST JUDICIAL CIRCUIT**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **DUANE "PETE" WYATT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Cause No. 26SL-CC05095** |
| **v.** | ) | |
| | ) | |
| **ST. LOUIS COUNTY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANT ST. LOUIS COUNTY'S**
**NOTICE REGARDING ADMINISTRATIVE RECORD**

COMES NOW Defendant St. Louis County, Missouri ("Defendant County"), by and through undersigned counsel, and hereby provides notice to the Court and all parties that Defendant County is filing the **Administrative Record** from the underlying agency proceedings of the St. Louis County Civil Service Commission in this matter, pursuant to §536.140 RSMo, and states as follows:

1. The attached Administrative Record constitutes the complete record of the proceedings before the agency, including all exhibits, orders, transcripts, findings of fact, conclusions of law, and the final decision issued by the agency.

2. The Administrative Record is being filed for purposes of judicial review and is submitted to ensure the Court has the complete record necessary to adjudicate the pending Petition for Judicial Review.

3. Defendant respectfully requests that the Court accept the attached Administrative Record as filed and incorporate it into the record of this case.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

WHEREFORE, Defendant files this Notice and the attached Administrative Record and requests any further relief deemed just and proper.

Respectfully Submitted,

**DANA T. REDWING**

**COUNTY COUNSELOR**

By: */s/ Sandra Zambrana*
Sandra Zambrana, #61125
Associate County Counselor
County Counselor's Office
41 S. Central Avenue
Clayton, Missouri 63105
(314) 930-5251
SZambrana@stlouiscountymo.gov

*Attorneys for Defendant St. Louis County*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was transmitted on this 31st day of August 2026, to all counsel of record through the court's electronic filing system.

*/s/ Sandra Zambrana*
Sandra Zambrana

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**TWENTY-FIRST JUDICIAL CIRCUIT**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **DUANE "PETE" WYATT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Cause No. 26SL-CC05095** |
| **v.** | ) | |
| | ) | |
| **ST. LOUIS COUNTY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**INDEX**


1. Index………………………………………………………………………………. i
2. Certification of the Administrative Record…………………………………………… iii
3. CSC Findings of Fact and Conclusions of Law……………………………………….. Page 1
4. Signed Findings of Fact and Conclusions of Law…………………………………….. Page 11
5. Civil Service Commission Materials…………………………………………………. Page 20
6. Exhibit 1………………………………………………………………………………. Page 44
7. Exhibit 2.a…………………………………………………………………………….. Page 45
8. Exhibit 2.b…………………………………………………………………………….. Page 48
9. Exhibit 2.c…………………………………………………………………………….. Page 51
10. Exhibit 2.d…………………………………………………………………………….. Page 55
11. Exhibit 2.e…………………………………………………………………………….. Page 56
12. 8.1 Personnel Director Approvals……………………………………………………. Page 58
13. Wyatt Resp's Exhibit A……………………………………………………………….. Page 59
14. Wyatt Resp's Exhibit B……………………………………………………………….. Page 61
15. Wyatt Resp's Exhibit C……………………………………………………………….. Page 62

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

16. Matter of Wyatt Transcript………………………………………………………………. Page 63

17. Wyatt Proposed Findings of Fact, Conclusions of Law, and Proposed Order 2026….. Page 286

18. Wyatt Proposed Findings of Fact and Conclusions of Law…………………………... Page 295

19. Wyatt Post-Hearing Brief 2026……………………………………………………….. Page 305

20. Wyatt_Appellants Prehearing Brief in Support of Reversal-Reinstatement-and Ancillary Relief……………………………………………………………………. Page 322

Respectfully Submitted,

**DANA T. REDWING**
**COUNTY**
**COUNSELOR**

By: *<u>/s/ Sandra Zambrana</u>*
Sandra Zambrana, #61125
Associate County Counselor
County Counselor's Office
41 S. Central Avenue
Clayton, Missouri 63105
(314) 930-5251
SZambrana@stlouiscountymo.gov

*Attorneys for Defendants*

**<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a copy of the foregoing was transmitted on this 31st day of August 2026, to all counsel of record through the court's electronic filing system.

*<u>/s/ Sandra Zambrana</u>*
Sandra Zambrana

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **DUANE "PETE" WYATT,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Cause No. 26SL-CC05095** |
| **v.** | ) | |
| **ST. LOUIS COUNTY, MISSOURI., Et al** | ) | |
| **Defendants.** | ) | |

**CERTIFICATION OF THE ADMINISTRATIVE RECORD PURSUANT TO RSMO § 536.130**

**I, Jairris Goen**, in my capacity as the Deputy Director of Human Resources for St. Louis County, being first duly sworn and upon my oath, hereby certify that the attached documents constitute the true, correct, and complete administrative record of the St. Louis County Civil Service Commission ("Commission") concerning Plaintiff Duane "Pete" Wyatt, and that these materials represent the record "before the agency" and have been properly compiled pursuant to RSMo § 536.130, and that this administrative record includes:

1. All pleadings, filings, and written submissions made before the Commission;
2. All exhibits, documents, and evidence admitted or considered by the Commission;
3. The Commission's Findings of Fact, Conclusions of Law, and Final Order

FURTHER AFFIANT SAYETH NOT.

[signature]
JAIRRIS GOEN

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**STATE OF MISSOURI )**
**) ss:**
**COUNTY OF ST. LOUIS )**

**JAIRRIS GOEN**

Subscribed and sworn to me this 26th day of August, 2026.

NICHOLAS CHARLES LINDLEY
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: October 29, 2027
Commission Number: 19876233

Notary Public

My commission expires: 10-29-27

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**BEFORE THE CIVIL SERVICE COMMISSION ST. LOUIS COUNTY, MISSOURI**

In Re the Matter of: )
)
Duane "Pete" Wyatt, )
)
Appellant. )

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION**

## A. Introduction

A hearing was conducted on March 30, 2026 to hear evidence relating to Duane "Pete" Wyatt's appeal related to his separation from employment with St. Louis County. Official notice was taken of the St. Louis County Charter Article VII section 7.020; St. Louis County Ordinance 15,154, St. Louis County Revised Ordinances section 202.100, and St. Louis County Civil Service Rules XIX and XXII. The Civil Service Commission, now having considered all the evidence and testimony adduced, and having reviewed the full record of this matter, and being fully advised in the premises, makes these findings of fact, conclusions of law, and decision.

## B. Findings of Fact

1. Duane "Pete" Wyatt was employed by St. Louis County starting on August 19, 2024, as the Federally Qualified Health Center Chief Operations Officer within the Department of Public Health. Hearing Tr. 122:12-15.

2. Dr. Kanika Cunningham, beginning in January 2023, has served as and continues to serve as the Director of the St. Louis County Department of Public Health. Hearing Tr. 85:19-23.

3. Dr. Kanika Cunningham is the Appointing Authority for the Department of

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Public Health. Hearing Tr. 87:8.

4. Mr. Wyatt resigned from County employment, effective February 6, 2026. Hearing Tr. 90:5 – 91:16; Exh. A (resignation acceptance email).

**Mr. Wyatt's Performance and Conduct Prior to Feb. 5**

5. Mr. Wyatt reported directly to Derrick Melton, the Federally Qualified Health Center Chief Executive Officer. Hearing Tr. 31:10.

6. Mr. Wyatt's job duties included the oversight of DPH's clinical operations, including supervising nursing and administrative staff, engaging in strategic planning to maintain financial solvency and stability, and ensuring regulatory compliance with federal HRSA (Health Resources and Services Administration) requirements tied to maintaining DPH's federally qualified health center status. Hearing Tr. 31:14 –25.

7. As of February 5, 2026, Mr. Melton was generally satisfied with Mr. Wyatt's job performance. Hearing Tr. 32:2.

8. As of February 5, 2026, the Department of Public Health was pursuing no disciplinary action against Mr. Wyatt and knew of no allegations of misconduct that could have lead to disciplinary action. Hearing Tr. 32:21 – 33.1.

**Mr. Wyatt's Resignation**

9. On February 5, 2026:

a. At approximately 9:00 a.m., Dr. Cunningham asked Mr. Melton how many employees reported directly to Mr. Wyatt. Dr. Cunningham communicated that she needed an answer urgently. Tr. 89:24-90:1.

b. Mr. Melton sent a text message to Mr. Wyatt with the question at 9:03 a.m. Mr. Wyatt replied that he thought he had six direct reports but would confirm.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Hearing Tr. 41:22-42:2.

c. Mr. Melton called Mr. Wyatt directly four times between 9:03 a.m. and 9:30 a.m. seeking a more specific answer. Mr. Wyatt did not answer. Hearing Tr. 33:16 – 20; Exh. B (call logs).

d. Ms. Pike, who served as Mr. Melton's administrative support staff, also called Mr. Wyatt on Mr. Melton's behalf. Mr. Wyatt did not answer. Hearing Tr. 63:20-23.

e. At or around 9:30 a.m., Mr. Wyatt returned Mr. Melton's call. The call duration was 58 seconds. Hearing Tr. 128:25-129:2; Exh. B.

f. Mr. Wyatt's voice was raised, and Mr. Melton heard a smacking sound that he believed to be Mr. Wyatt smacking the steering wheel of his vehicle. Hearing Tr. 36:17-25.

g. During the 9:30 a.m. call:

   i. Mr. Wyatt repeatedly cursed Mr. Melton, using language including "fuck you," "I'm fucking talking to you," "I'm fucking driving," and "I'm tired of this shit." Hearing Tr. 31:13-25.

   ii. Mr. Wyatt then stated, "I fucking quit." Hearing Tr. 36:1.

   iii. Mr. Melton asked Mr. Wyatt to confirm, and he repeated, "I fucking quit." Hearing Tr. 36:3-8.

   iv. Mr. Melton responded, "If you quit, then I accept." Hearing Tr. 36:12.

h. Following the 9:30 a.m. call, Mr. Melton immediately called Dr. Cunningham. Hearing Tr. 89:16-20.

i. Mr. Melton told Dr. Cunningham that Mr. Wyatt said that he "fucking quit."

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Hearing Tr. 90:6.

j. Mr. Wyatt did not submit a written resignation. Hearing Tr.

**Mr. Wyatt's Actions After the Resignation**

10. On February 5, 2026:

a. At or about 10:00 a.m. Mr. Wyatt arrived at the John C. Murphy building, located at 6121 North Hanley Road Berkeley, Missouri 63134. Hearing Tr. 138:19.

b. Soon after Mr. Wyatt's arrival, at or about 10:15 a.m. Mr. Wyatt entered Mr. Melton's office. Hearing Tr. 38:19-23.

i. Mr. Melton immediately asked why Mr. Wyatt was there. Mr. Melton repeated, "You resigned. You said what you said and that's that." Hearing Tr. 38:1-16.

ii. Mr. Wyatt then left Mr. Melton's office. Hearing Tr. 38:17.

iii. Mr. Wyatt did not attempt to deny his resignation or ask for clarification. Hearing Tr. 38:24 – 39:6.

k. Mr. Wyatt approached Ms. Pike outside Mr. Melton's office multiple times throughout the afternoon. Mr. Wyatt repeatedly said "I need to apologize to him." Hearing Tr. 70:15 – 71:2; *see also* Exh. C (Eugenia Pike statement)

a. At or soon after 3:30 p.m., Ms. Pike cancelled a future one-on-one meeting between Mr. Wyatt and Mr. Melton. Hearing Tr. 71:3.

b. Mr. Wyatt approached Ms. Pike, repeated his request and asked Ms. Pike, "Is he mad? he's mad, isn't he?" Hearing Tr. 71:3-6; Exh. B.

c. Ms. Pike and Mr. Wyatt both left the office at approximately 4:30 p.m.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Hearing Tr. 71:14.

**Dr. Cunningham's Acceptance**

11. On February 6, 2026:

a. On the morning of February 6, 2026, Dr. Cunningham directed her executive assistant, Sharon Gardner, to communicate her formal acceptance of Mr. Wyatt's resignation. Hearing Tr. 78:22 – 79:4.

b. Mr. Wyatt arrived at the John C. Murphy building at approximately 12:35 p.m. Hearing Tr. 131:2.

c. Ms. Gardner came to Mr. Wyatt's office at or around 12:50 p.m. and informed him verbally that Dr. Cunningham had accepted his resignation. Hearing Tr. 82:13-15.

d. In response to Ms. Gardner, Mr. Wyatt denied that he had resigned. Hearing Tr. 82:22

e. Mr. Wyatt initially denied to Ms. Gardner that he had spoken to Mr. Melton at all on February 5, 2026 and repeated his denial multiple times. Hearing Tr. 79:18 – 80:3.

f. After Ms. Gardner asked whether Mr. Wyatt complied with Mr. Melton's text message to call him, Mr. Wyatt changed his answer. Hearing Tr. 80:6-11.

g. Mr. Wyatt then admitted that he had a heated conversation with Mr. Melton. Mr. Wyatt stated to Ms. Gardner that he could not recall whether he cursed. Hearing Tr. 80:19-25.

h. Ms. Gardner instructed Mr. Wyatt to turn in his badge and mobile telephone. Hearing Tr. 84:7.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

i. Mr. Wyatt then left the building. Hearing Tr. 83:19.

j. At 1:19 p.m., Ms. Gardner sent an email to Mr. Wyatt with further written confirmation of Dr. Cunningham's acceptance of Mr. Wyatt's resignation. Hearing Tr. 81:4-9; Exh. A.

12. Mr. Wyatt submitted an appeal to the Civil Service Commission on February 24, 2026, and amended his appeal on March 9, 2026. Mr. Wyatt alleged in both the original and amended submissions that he had never resigned, and so his separation from County employment was properly characterized as an appealable termination.

13. On March 30, 2026, without ruling on whether Mr. Wyatt's separation from County employment was an appealable termination, the Civil Service Commission held a hearing on the record on Mr. Wyatt's allegation. *See* Hearing Tr 1.

14. The Civil Service Commission provided Mr. Wyatt due process on March 30, 2026, by conducting its hearing prior to deciding whether his separation from employment was a resignation or a termination, which was appealable. *See* Hearing Tr., *passim.*

15. During the appeal hearing, Mr. Wyatt received due process when he had the opportunity to respond to all allegations against him with his own testimony and the opportunity to provide additional testimony, exhibits and evidence. *See* Hearing Tr., *passim*.

16. Mr. Wyatt testified at the hearing and provided witness testimony. *See* Hearing Tr. 109:23 – 159:3.

17. Mr. Wyatt and the County were both represented by counsel in this matter. *See* Hearing Tr. 2.

18. The Civil Service Commission members reviewed all the transcripts and evidence before voting on Mr. Wyatt's appeal. The evidence reviewed included a transcript of

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Mr. Wyatt's testimony. *See* Minutes of the Civil Service Commission Meeting dated June 16, 2026.

**C. Conclusions of Law**

The Commission makes the following conclusions of law from its findings of fact and the reasonable inferences derived therefrom:

19. The St. Louis County Civil Service Commission has jurisdiction of this matter pursuant to the St. Louis County Charter Article VII, section 7.20; Ordinance 15,154, section 202.100 of the St. Louis County Revised Ordinances; and St. Louis County Civil Service Rule XXII, section B.1-.3.

20. St. Louis County Civil Service Rule XIX (Resignation) fully applies and the Appointing Authority correctly interpreted the true intent thereof in accepting Mr. Wyatt's oral statement as a resignation not in good standing on February 6, 2026, pursuant to Section A, sub-sections 1 and 2, which respectively state that:

1. A merit system employee may resign in good standing by submitting a written resignation to the employee's Appointing Authority, at least 14 calendar days before the effective date of the resignation. A copy of the written resignation must be submitted by the Appointing Authority to the Personnel Director with the payroll form terminating employment.
2. Failure of the employee to give 14 calendar days notice, unless the Appointing Authority consents to a shorter period of notice, may be cause for an employee not to be recommended for future employment with the County.

21. The hearing before the Commission consisted of direct testimony and cross examination of witnesses and the introduction of exhibits. *See* Tr.

22. County's evidence credibly established that even though there was no written resignation, Mr. Wyatt made an unequivocal verbal statement of his intent to resign to Derrick Melton on February 5, 2026.

23. The County's evidence established that, by failing to submit his resignation in

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

writing and with 14 calendar days' notice, Mr. Wyatt resigned not in good standing.

24. The County's evidence established that Dr. Cunningham, by and through Ms. Gardner, accepted Mr. Wyatt's verbal resignation on February 6, 2026.

25. The County's evidence established that Mr. Wyatt did not disclaim or rescind his resignation prior to Dr. Cunningham's acceptance.

26. Dr. Cunningham's interpretation of Mr. Wyatt's conduct as a verbal resignation not in good standing was supported by competent and substantial evidence, and was not arbitrary, capricious, or unreasonable.

27. Dr. Cunningham did not abuse her discretion when she accepted Mr. Wyatt's resignation.

28. Mr. Wyatt's separation from County employment was appropriate and lawful under the Charter, St. Louis County ordinances, and the Rules and Regulations of this Commission.

29. The Appointing Authority was not required to comply with the procedural requirements contained in Rule XXI, Section D of the St. Louis County Civil Service Rules in that Mr. Wyatt, by resigning, voluntarily waived his entitlement to the due process described therein.

30. Mr. Wyatt's contention on appeal that he was involuntarily terminated from County employment without due process is therefore denied.

31. The evidence adduced at the March 30, 2026 hearing that is contrary or inconsistent with the findings of fact, conclusions of law and decision herein is specifically found to be not credible, and not an adequate basis to reverse any or all of such findings, conclusions and decision.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**DECISION**

We, the Civil Service Commission, therefore, unanimously affirm the decision of the Appointing Authority accepting Mr. Wyatt's resignation from St. Louis County employment, effective February 6, 2026, and deny Appellant's appeal from such resignation.

Nadine Nunn, Chairperson
St. Louis County Civil Service Commission

Satonya Booker, Member
St. Louis County Civil Service Commission

Chantal Hoffsten, Member
St. Louis County Civil Service Commission

Raven Akram, Member
St. Louis County Civil Service Commission

SO ORDERED:

Date

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**BEFORE THE CIVIL SERVICE COMMISSION ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| In Re the Matter of: | ) |
| | ) |
| Duane "Pete" Wyatt, | ) |
| | ) |
| Appellant. | ) |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION**

**A. Introduction**

A hearing was conducted on March 30, 2026 to hear evidence relating to Duane "Pete" Wyatt's appeal related to his separation from employment with St. Louis County. Official notice was taken of the St. Louis County Charter Article VII section 7.020; St. Louis County Ordinance 15,154, St. Louis County Revised Ordinances section 202.100, and St. Louis County Civil Service Rules XIX and XXII. The Civil Service Commission, now having considered all the evidence and testimony adduced, and having reviewed the full record of this matter, and being fully advised in the premises, makes these findings of fact, conclusions of law, and decision.

**B. Findings of Fact**

1. Duane "Pete" Wyatt was employed by St. Louis County starting on August 19, 2024, as the Federally Qualified Health Center Chief Operations Officer within the Department of Public Health. Hearing Tr. 122:12-15.

2. Dr. Kanika Cunningham, beginning in January 2023, has served as and continues to serve as the Director of the St. Louis County Department of Public Health. Hearing Tr. 85:19-23.

3. Dr. Kanika Cunningham is the Appointing Authority for the Department of

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Public Health. Hearing Tr. 87:8.

4. Mr. Wyatt resigned from County employment, effective February 6, 2026. Hearing Tr. 90:5 – 91:16; Exh. A (resignation acceptance email).

**<u>Mr. Wyatt's Performance and Conduct Prior to Feb. 5</u>**

5. Mr. Wyatt reported directly to Derrick Melton, the Federally Qualified Health Center Chief Executive Officer. Hearing Tr. 31:10.

6. Mr. Wyatt's job duties included the oversight of DPH's clinical operations, including supervising nursing and administrative staff, engaging in strategic planning to maintain financial solvency and stability, and ensuring regulatory compliance with federal HRSA (Health Resources and Services Administration) requirements tied to maintaining DPH's federally qualified health center status. Hearing Tr. 31:14 –25.

7. As of February 5, 2026, Mr. Melton was generally satisfied with Mr. Wyatt's job performance. Hearing Tr. 32:2.

8. As of February 5, 2026, the Department of Public Health was pursuing no disciplinary action against Mr. Wyatt and knew of no allegations of misconduct that could have lead to disciplinary action. Hearing Tr. 32:21 – 33.1.

**<u>Mr. Wyatt's Resignation</u>**

9. On February 5, 2026:

a. At approximately 9:00 a.m., Dr. Cunningham asked Mr. Melton how many employees reported directly to Mr. Wyatt. Dr. Cunningham communicated that she needed an answer urgently. Tr. 89:24-90:1.

b. Mr. Melton sent a text message to Mr. Wyatt with the question at 9:03 a.m. Mr. Wyatt replied that he thought he had six direct reports but would confirm.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Hearing Tr. 41:22-42:2.

c. Mr. Melton called Mr. Wyatt directly four times between 9:03 a.m. and 9:30 a.m. seeking a more specific answer. Mr. Wyatt did not answer. Hearing Tr. 33:16 – 20; Exh. B (call logs).

d. Ms. Pike, who served as Mr. Melton's administrative support staff, also called Mr. Wyatt on Mr. Melton's behalf. Mr. Wyatt did not answer. Hearing Tr. 63:20-23.

e. At or around 9:30 a.m., Mr. Wyatt returned Mr. Melton's call. The call duration was 58 seconds. Hearing Tr. 128:25-129:2; Exh. B.

f. Mr. Wyatt's voice was raised, and Mr. Melton heard a smacking sound that he believed to be Mr. Wyatt smacking the steering wheel of his vehicle. Hearing Tr. 36:17-25.

g. During the 9:30 a.m. call:

   i. Mr. Wyatt repeatedly cursed Mr. Melton, using language including "fuck you," "I'm fucking talking to you," "I'm fucking driving," and "I'm tired of this shit." Hearing Tr. 31:13-25.

   ii. Mr. Wyatt then stated, "I fucking quit." Hearing Tr. 36:1.

   iii. Mr. Melton asked Mr. Wyatt to confirm, and he repeated, "I fucking quit." Hearing Tr. 36:3-8.

   iv. Mr. Melton responded, "If you quit, then I accept." Hearing Tr. 36:12.

h. Following the 9:30 a.m. call, Mr. Melton immediately called Dr. Cunningham. Hearing Tr. 89:16-20.

i. Mr. Melton told Dr. Cunningham that Mr. Wyatt said that he "fucking quit."

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Hearing Tr. 90:6.

j. Mr. Wyatt did not submit a written resignation. Hearing Tr.

**Mr. Wyatt's Actions After the Resignation**

10. On February 5, 2026:

a. At or about 10:00 a.m. Mr. Wyatt arrived at the John C. Murphy building, located at 6121 North Hanley Road Berkeley, Missouri 63134. Hearing Tr. 138:19.

b. Soon after Mr. Wyatt's arrival, at or about 10:15 a.m. Mr. Wyatt entered Mr. Melton's office. Hearing Tr. 38:19-23.

i. Mr. Melton immediately asked why Mr. Wyatt was there. Mr. Melton repeated, "You resigned. You said what you said and that's that." Hearing Tr. 38:1-16.

ii. Mr. Wyatt then left Mr. Melton's office. Hearing Tr. 38:17.

iii. Mr. Wyatt did not attempt to deny his resignation or ask for clarification. Hearing Tr. 38:24 – 39:6.

k. Mr. Wyatt approached Ms. Pike outside Mr. Melton's office multiple times throughout the afternoon. Mr. Wyatt repeatedly said "I need to apologize to him." Hearing Tr. 70:15 – 71:2; *see also* Exh. C (Eugenia Pike statement)

a. At or soon after 3:30 p.m., Ms. Pike cancelled a future one-on-one meeting between Mr. Wyatt and Mr. Melton. Hearing Tr. 71:3.

b. Mr. Wyatt approached Ms. Pike, repeated his request and asked Ms. Pike, "Is he mad? he's mad, isn't he?" Hearing Tr. 71:3-6; Exh. B.

c. Ms. Pike and Mr. Wyatt both left the office at approximately 4:30 p.m.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Hearing Tr. 71:14.

**Dr. Cunningham's Acceptance**

11. On February 6, 2026:

a. On the morning of February 6, 2026, Dr. Cunningham directed her executive assistant, Sharon Gardner, to communicate her formal acceptance of Mr. Wyatt's resignation. Hearing Tr. 78:22 – 79:4.

b. Mr. Wyatt arrived at the John C. Murphy building at approximately 12:35 p.m. Hearing Tr. 131:2.

c. Ms. Gardner came to Mr. Wyatt's office at or around 12:50 p.m. and informed him verbally that Dr. Cunningham had accepted his resignation. Hearing Tr. 82:13-15.

d. In response to Ms. Gardner, Mr. Wyatt denied that he had resigned. Hearing Tr. 82:22

e. Mr. Wyatt initially denied to Ms. Gardner that he had spoken to Mr. Melton at all on February 5, 2026 and repeated his denial multiple times. Hearing Tr. 79:18 – 80:3.

f. After Ms. Gardner asked whether Mr. Wyatt complied with Mr. Melton's text message to call him, Mr. Wyatt changed his answer. Hearing Tr. 80:6-11.

g. Mr. Wyatt then admitted that he had a heated conversation with Mr. Melton. Mr. Wyatt stated to Ms. Gardner that he could not recall whether he cursed. Hearing Tr. 80:19-25.

h. Ms. Gardner instructed Mr. Wyatt to turn in his badge and mobile telephone. Hearing Tr. 84:7.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

i. Mr. Wyatt then left the building. Hearing Tr. 83:19.

j. At 1:19 p.m., Ms. Gardner sent an email to Mr. Wyatt with further written confirmation of Dr. Cunningham's acceptance of Mr. Wyatt's resignation. Hearing Tr. 81:4-9; Exh. A.

12. Mr. Wyatt submitted an appeal to the Civil Service Commission on February 24, 2026, and amended his appeal on March 9, 2026. Mr. Wyatt alleged in both the original and amended submissions that he had never resigned, and so his separation from County employment was properly characterized as an appealable termination.

13. On March 30, 2026, without ruling on whether Mr. Wyatt's separation from County employment was an appealable termination, the Civil Service Commission held a hearing on the record on Mr. Wyatt's allegation. *See* Hearing Tr 1.

14. The Civil Service Commission provided Mr. Wyatt due process on March 30, 2026, by conducting its hearing prior to deciding whether his separation from employment was a resignation or a termination, which was appealable. *See* Hearing Tr., *passim*.

15. During the appeal hearing, Mr. Wyatt received due process when he had the opportunity to respond to all allegations against him with his own testimony and the opportunity to provide additional testimony, exhibits and evidence. *See* Hearing Tr., *passim*.

16. Mr. Wyatt testified at the hearing and provided witness testimony. *See* Hearing Tr. 109:23 – 159:3.

17. Mr. Wyatt and the County were both represented by counsel in this matter. *See* Hearing Tr. 2.

18. The Civil Service Commission members reviewed all the transcripts and evidence before voting on Mr. Wyatt's appeal. The evidence reviewed included a transcript of

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Mr. Wyatt's testimony. *See* Minutes of the Civil Service Commission Meeting dated June 16, 2026.

**C. Conclusions of Law**

The Commission makes the following conclusions of law from its findings of fact and the reasonable inferences derived therefrom:

19. The St. Louis County Civil Service Commission has jurisdiction of this matter pursuant to the St. Louis County Charter Article VII, section 7.20; Ordinance 15,154, section 202.100 of the St. Louis County Revised Ordinances; and St. Louis County Civil Service Rule XXII, section B.1-.3.

20. St. Louis County Civil Service Rule XIX (Resignation) fully applies and the Appointing Authority correctly interpreted the true intent thereof in accepting Mr. Wyatt's oral statement as a resignation not in good standing on February 6, 2026, pursuant to Section A, sub-sections 1 and 2, which respectively state that:

1. A merit system employee may resign in good standing by submitting a written resignation to the employee's Appointing Authority, at least 14 calendar days before the effective date of the resignation. A copy of the written resignation must be submitted by the Appointing Authority to the Personnel Director with the payroll form terminating employment.
2. Failure of the employee to give 14 calendar days notice, unless the Appointing Authority consents to a shorter period of notice, may be cause for an employee not to be recommended for future employment with the County.

21. The hearing before the Commission consisted of direct testimony and cross examination of witnesses and the introduction of exhibits. *See* Tr.

22. County's evidence credibly established that even though there was no written resignation, Mr. Wyatt made an unequivocal verbal statement of his intent to resign to Derrick Melton on February 5, 2026.

23. The County's evidence established that, by failing to submit his resignation in

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

writing and with 14 calendar days' notice, Mr. Wyatt resigned not in good standing.

24. The County's evidence established that Dr. Cunningham, by and through Ms. Gardner, accepted Mr. Wyatt's verbal resignation on February 6, 2026.

25. The County's evidence established that Mr. Wyatt did not disclaim or rescind his resignation prior to Dr. Cunningham's acceptance.

26. Dr. Cunningham's interpretation of Mr. Wyatt's conduct as a verbal resignation not in good standing was supported by competent and substantial evidence, and was not arbitrary, capricious, or unreasonable.

27. Dr. Cunningham did not abuse her discretion when she accepted Mr. Wyatt's resignation.

28. Mr. Wyatt's separation from County employment was appropriate and lawful under the Charter, St. Louis County ordinances, and the Rules and Regulations of this Commission.

29. The Appointing Authority was not required to comply with the procedural requirements contained in Rule XXI, Section D of the St. Louis County Civil Service Rules in that Mr. Wyatt, by resigning, voluntarily waived his entitlement to the due process described therein.

30. Mr. Wyatt's contention on appeal that he was involuntarily terminated from County employment without due process is therefore denied.

31. The evidence adduced at the March 30, 2026 hearing that is contrary or inconsistent with the findings of fact, conclusions of law and decision herein is specifically found to be not credible, and not an adequate basis to reverse any or all of such findings, conclusions and decision.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**DECISION**

We, the Civil Service Commission, therefore, unanimously affirm the decision of the Appointing Authority accepting Mr. Wyatt's resignation from St. Louis County employment, effective February 6, 2026, and deny Appellant's appeal from such resignation.

Nadine Nunn, Chairperson
St. Louis County Civil Service Commission

Satonya L Booker

Satonya Booker, Member
St. Louis County Civil Service Commission

Chantal Hoffsten, Member
St. Louis County Civil Service Commission

Raven Akram

Raven Akram, Member
St. Louis County Civil Service Commission

SO ORDERED:

June 18, 2026

Date

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

SAINT LOUIS COUNTY
Missouri

# AGENDA

## St. Louis County Government
## Civil Service Commission
## Monday, March 30, 2026 at 12:00 PM

### PUBLIC MEETING NOTICE TENTATIVE AGENDA

https://stcoit-evt.webex.com/stcoit-evt/j.php?MTID=madbbd4ea1253e8f2bb5011953f875d42
**Webinar number (access code): 2861 327 1186, Webinar password: 3026 (3026 when dialing from a phone or video system)**

**Join by Phone: 1-408-418-9388**
**Webinar number (access code): 2861 327 1186, Webinar password: 3026**

*Email written comments for the next Regular Meeting to CountyHR@stlouiscountymo.gov. Register to make a virtual statement before the Civil Service Commission by calling 314-615-5429 or emailing CountyHR@stlouiscountymo.gov at least 2 hours prior to the meeting's published start time. Comments will be summarized in the meeting minutes.*

**1. MEETING CALL TO ORDER / ROLL CALL**

**2. HEARINGS, APPEALS, GRIEVANCES**

2.1. Resignation Appeal From Pete Wyatt in the Department of Public Health

**3. CLOSED SESSION**

3.1. The Commission may consider a motion to go into closed session to discuss personnel, employee matters and for legal advice pursuant to Section 610.021(1) (3) (13) RSMo. and Section 114.020.1 (1) (3) (13) SLCRO. If there is a closed session, a roll call on motion to return to open session at the conclusion of the matters subject to closure is required

**4. NEXT MEETING**

4.1. April 21, 2026 at 11:00 AM via WebEx Events

**5. ADJOURNMENT**

For individuals with disabilities who may need an accommodation to participate in the meeting or require an alternative format for this material, please contact Jairris Goen, Deputy Director of Human Resources, at JGoen@stlouiscountymo.gov or 314-615-5419 (voice) or call RelayMO 711 or 1-800-735-2966 (TTY). In order to provide your requested accommodation, please contact us as soon as possible prior to the meeting date.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

BEFORE THE CIVIL SERVICE COMMISSION
ST LOUIS COUNTY, MISSOURI

Duane Pete Wyatt COO Community Health Centers, Appellant,

v.

St. Louis County, Missouri,

St. Louis County Department of Public Health,

St. Louis County Clinical Consumer Majority Board,

Derrick Melton, CEO, Community Health Centers, and

Dr. Kanica Cunningham, Director, Department of Public Health, Respondents.

**SECOND AMENDED RULE XXII APPEAL**

COMES NOW Duane "Pete" Wyatt, and hereby amends my above-captioned appeal to clarify the respondents to include St. Louis County, the St. Louis County Department of Public Health, and the St. Louis County Clinical Consumer Majority Board. Other than additional formatting fixes, counsel's signature and certificate of service below, this is the only change from Mr. Wyatt's first Amended Rule XXII Appeal.

I Duane "Pete" Wyatt hereby state my formal appeal of wrongful discharge (false resignation), failure to abide by administrative grievance rules, and disparagement, as follows:

1. I am an adult over the age of 18 and resident of St. Louis County, Missouri

2. On August 19, 2024, I was hired to serve as Chief Operating Officer, Community Health Centers

3. I have performed uninterrupted in this capacity and without any performance concerns.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**Wrongful Termination (False Resignation)**

4. On Friday, February 6 2026 at approximately 12:40 pm, while in my office preparing for my weekly leadership staff meeting, I was informed by Sharon Gardner, Executive Assistant to Dr. Kanica Cunningham that Dr. Cunningham had accepted my resignation."

5. When I asked for clarification Sharon Gardner stated that my direct supervisor, Derrick Melton Chief Executive Officer, Community Health Centers had informed Dr. Cunningham, his fractional supervisor and Director of Public Health that I had told him in a heated cure laden, exchange, "I quit."

6. The alleged exchange with Derrick Melton occurring at some point on Thursday,

February 5 2026 did not occur. The account allegedly provided by Derrick Melton to Dr. Cunningham is a fabrication

7. At no time have I "quit" (resigned) my position either verbally or in writing. At all relevant times I've consistently denied doing so

8. Further belying Derrick Melton's account on Thursday, February 5th, that I allegedly "quit" is the fact that I was communicating and or present in the office and performing my work as usual on Friday, February 6th

9. Over my objections, at approximately 12:55p.m., I was asked to leave my office and it was planned that I be escorted out of the building, and my access badge, phone and laptop was confiscated

10. Documented evidence exists some attached, (Exhibits 1-4) that directly

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

challenges Derrick Meltons' claim as follows: (1) a detailed timeline, (2A B) bank transaction records, (3) a cell phone call log, including the single connected call with time and duration, and (4A B)) text message threads with timestamps and content My work calendar and DPH security video footage require authorization

**Failure to Comply with Administrative Procedures to Investigate the Grievance**

11. Pursuant to Rule XX: Conflict Resolution and Grievance Procedure Section C.1, Prior to knowing I had resigned", I attempted to interact with Derrick Melton in passing on Friday, February 6th, approximately 12:35pm in the DPH employee parking lot, regarding a meeting update; Derrick Melton proceeded to his car, avoiding communication As he exited the lot he looked my way, but refused to stop and speak with me. Department of Public Health security video footage will confirm my account.

12. Pursuant to Rule XX: Conflict Resolution and Grievance Procedure - Section E.5 , I did not file an official grievance. I did, however attempt to address this false account directly with Dr. Cunningham twice directly via email and once indirectly, when she and Derrick Melton were copied on my initial email response to the email from Sharon Gardner stating that my "resignation" had been accepted. These communications are attached collectively as Exhibit 6

13. To date, I have not received any acknowledgement or response to my messages in direct contravention of obligations pursuant to and in the "spirit" of Rule XX: Sections C.1 and C.2

**Disparagement by Derrick Melton**

14. Upon information and belief, Derrick Melton has repeated this false narrative

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

to senior and middle management within the Department of Public Health, as well as to the Executive Committee of the Clinical Consumer Majority Board of Directors Subsequently, the false narrative has also reached clinical and Department of Public Health staff This false disparagement slanders and damages my professional and personal reputation.

**Subsequently, I hereby respectfully request:**

1. *Pursuant to Rule XXII: Appeals, Hearings and Investigations Section 3.c.;* Immediate and full reinstatement to my position as Chief Operating Officer, with restoration of all status, seniority, pay, and no loss of time or standing

2. *Pursuant to Rule XXV: Records and Reports Section E;* A copy of a the resignation letter supporting these actions and a copy of a clear, written apology and retraction from Derrick Melton to Dr. Cunninham Matt Livasy and the Executive Committee of the Clinical Consumer Majority Board of Directors

3. *Pursuant to Rule XXII: Appeals, Hearings and Investigations Section 2;* In the absence of these results, I hereby request an expedited, closed hearing with the opportunity to conduct reasonable discovery

Respectfully submitted,

Katherine C. Frierdich, MO 51375
Cadenzia Consulting LLC
14 Fordyce Ln
St. Louis, Missouri 63124
(314) 791-5297

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

## Certificate of Service

The undersigned hereby certifies that the foregoing was filed at countyhr@stlouiscountymo.gov, with copy to mlivasy@stlouiscountymo.gov on this 9th day of March, 2026.

____________________

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

BEFORE THE CIVIL SERVICE COMMISSION
ST. LOUIS COUNTY, MISSOURI

Duane "Pete" Wyatt, Appellant,

v.

St. Louis County, Missouri,

St. Louis County Department of Public Health,

St. Louis County Clinical Consumer Majority Board,

Derrick Melton, CEO, Community Health Centers, and

Dr. Kanica Cunningham, Director, Department of Public Health, Respondents.

**MOTION FOR COMPELLED TESTIMONY AND RECORDS, FULL INVESTIGATION, AND CLOSED RULE XXII HEARING**

COMES NOW Duane "Pete" Wyatt, by and through his counsel, and for his Motion for Compelled Testimony and Records, Full Investigation and Closed Hearing regarding his alleged "resignation" of February 5, 2026, states as follows:

1. On March 17, 2026, the Civil Service Commission set the above-titled action to an evidentiary hearing at noon on March 30, 2026.

2. Mr. Wyatt appreciates the Commission's willingness to hear his appeal in a special session, as, against his will or desire, Mr. Wyatt has been out of work and without pay since February 6, 2026.

3. Testimony under oath must be required, as there may be credibility issues with one or more of the individuals below listed.

4. Mr. Wyatt requests that, pursuant to Rule XXIIB.2.f., the Commission subpoena or otherwise compel the sworn testimony of the following witnesses:

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

a. Mr. Derrick Melton, CEO of Community Health Centers;

b. Dr. Kanica Cunningham, Director of the Department of Public Health;

c. Ms. Eugenia Pike, Executive Assistant to Mr. Melton;

d. Ms. Sharon Gardner, Executive Assistant to Dr. Cunningham;

e. Mr. Damon Broadus, Deputy Director, Department of Public Health; and

f. Dr. Patrick Miller, Chief Medical Officer, Community Health Centers.

5. If necessary, the following additional witnesses may offer rebuttal testimony:

a. Ms. Diane Watkins, Front Office Receptionist;

b. Ms. Erica Moore, Front Office Receptionist; and

c. Ms. Brenda Wessel, Health Center Administrator.

6. Mr. Wyatt further requests that, pursuant to Rule XXIIB.2.g., the Commission fully investigate the matter and compel production to the Commission all relevant, non-privileged documents relating to Mr. Wyatt's alleged "resignation," with copy to Mr. Wyatt.

7. Upon information and belief, Mr. Melton and Ms. Pike, and perhaps others, were presented with and signed sworn affidavits relating to this matter. Mr. Wyatt requests that no witness affidavits be admitted as a sufficient replacement for their testimony before the Commission, as it would deprive Mr. Wyatt of his due process

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

right to confront those witnesses.

Therefore, Mr. Wyatt requests that the Commission hold its hearing in closed session; compel the listed witnesses to testify live and under oath on March 30, 2026; and fully investigate this matter, including compelling production of all relevant, non-privileged records to it with copy to Mr. Wyatt.

Respectfully submitted,

Katherine C. Frierdich, MO 51375
Cadenzia Consulting LLC
14 Fordyce Ln
St. Louis, Missouri 63124
(314) 791-5297

Certificate of Service

The undersigned hereby certifies that the foregoing was filed at countyhr@stlouiscountymo.gov, with copy to mlivasy@stlouiscountymo.gov and Ms. Dionne Jones at restorepinelawn@gmail.com on the 18th day of March, 2026.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**BEFORE THE ST. LOUIS COUNTY CIVIL SERVICE COMMISSION**
**ST. LOUIS COUNTY, MISSOURI**

In re Appeal of Duane "Pete" Wyatt,

Appellant,

v.

St. Louis County, Missouri,

St. Louis County Department of Health,

St. Louis County Clinical Consumer Majority Board,

Derrick Melton, CEO, Community Health Centers,

and

Dr. Kanica Cunningham, Director, Department of Public Health,

Respondents.

**APPELLANT'S PREHEARING BRIEF IN SUPPORT OF REVERSAL, REINSTATEMENT, AND ANCILLARY RELIEF**

## I. Preliminary Statement

This appeal presents a straightforward question of substance over label: may St. Louis County remove a merit employee by retroactively characterizing a disputed event as a resignation, rather than proceeding under the disciplinary framework that governs suspensions and discharge. The County says Appellant resigned in a profane outburst by saying, "I quit."[1] Appellant denies that any such resignation occurred and denies that any curse-laden exchange occurred at all. It is undisputed that Appellant remained at work for the rest of the day on February 5, 2026, after the time of the alleged interaction with Respondent Melton. It further is

[1] The last time Appellant interacted with Respondent Melton was on February 5, 2026. Because the County has not provided Appellant with any information regarding his purported "resignation," for purposes of this brief, Appellant assumes that the County will posit that this alleged conversation happened on February 5, 2026.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

undisputed that he returned to work the next day, did not know management had already reported a resignation, immediately and repeatedly denied resigning when he received an email "accepting" his resignation, and was instructed to exit the building with security present.

The St. Louis County Charter establishes a merit system for covered County employees and appointive county officers, and provides for retention on the basis of merit and ability. See St. Louis County Charter Article VII, § 7.010. The Charter further provides that the Civil Service Commission shall hear appeals in cases of disciplinary action by appointing authorities. Id., § 7.030(3). The County's Civil Service Rules distinguish two–and only two events–suspension or discharge under Rule XXI–with Commission review under Rule XXII. See St. Louis County Government Civil Service Rules (Nov. 2024), XXI, XXII.

**II. Jurisdiction**

Jurisdiction lies with the Civil Service Commission because this appeal challenges a separation that was disciplinary in substance. Article VII of the Charter gives the Commission authority to hear appeals in cases of disciplinary action by appointing authorities. See St. Louis County Charter Art. VII, § 7.030(3). Rule XXII of the Civil Service Rules provides that the Commission may review qualifying appeals and may affirm, modify, or reverse the Appointing Authority's action. See Civil Service Rules, Rule XXII. If the County's action was not on a valid resignation, then it was an appealable removal.

**III. Statement of Relevant Facts**

Appellant was employed by St. Louis County as the Chief Operating Officer of the Department of Health/Public Health since August 19, 2024, and, at all relevant times, was treated as a merit-system employee. At no time was Appellant disciplined or placed under a performance improvement plan. At some point in time, believed to be February 5, 2026, the

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

CEO of the St. Louis Community Health Centers, who reports to the St. Louis County Clinical Consumer Majority Board, told Dr. Kanica Cunningham, Director of the Department of Public Health and Appointing Authority (the "Director"), that Appellant had resigned in a heated, curse-laden fit and said "I quit." Appellant denies that any such resignation occurred and denies that the alleged conversation happened as described. Appellant did not submit any written resignation. Appellant finished the work day while present in the office on February 5, 2026 with no mention of any "resignation" by anyone from the County. Appellant returned to work the next day. On that next day, February 6, 2026, the Director sent Appellant an email stating that the County "accepted" his resignation. Appellant immediately and repeatedly denied resigning. Despite those denials, Appellant was instructed to leave his badge and equipment and depart the building, with security present. The only indication given of the County's position was on March 3rd via Assistant County Counselor Kaethe Kaufman that Appellant "resigned verbally and not in good standing." See email from K. Kaufman to the undersigned and copying Mr. M. Livasy, attached as Exhibit 1.

**IV. Argument**

**A. The County did not prove a resignation recognized by the Civil Service Rules.**

The official County rules provide three mechanisms for valid resignation. One is by written resignation to the Appointing Authority with 14 days' advanced notice. See Civil Service Rules, Rule XI. The rule separately provides that an employee who accumulates three or more consecutive working days without authorization shall be deemed to have resigned without notice from County service. Id. The only provision which allows for verbal resignation is in the event of "emergency, temporary, or seasonal employees." See Rule XIX, D. No such facts are present here.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Here there was no written resignation, and Appellant did not abandon his position; he reported to work the very next day. The County therefore failed to establish either a written resignation or a deemed resignation by unauthorized absence. And clearly there was no "emergency" on February 6, 2026 justifying a verbal resignation. Rule XIX clearly states that any resignation that is not "bona fide and voluntary" . . . "shall not be accepted as a resignation."

**B. Appellant's return to work the next day is objective evidence that no completed resignation occurred.**

Whatever the County says was said in a disputed conversation, Appellant's conduct the next day is objective and undisputed. A person who has truly and finally resigned does not ordinarily report for duty the next morning, unaware that management has already claimed a resignation. Appellant's return to work is inconsistent with a settled, voluntary resignation and consistent with Appellant's position that no resignation occurred. That objective fact is more reliable than a disputed oral account, especially where the alleged resignation was unwritten and immediately repudiated.

C. **"Resigned verbally not in good standing" is disciplinary in substance.**

The County's own formulation reveals that this was not a neutral voluntary departure. A notation that an employee "resigned verbally not in good standing" reflects a fault-based judgment resting on alleged blameworthy conduct. Once the County relied on alleged misconduct as the basis for ending employment, it was required to proceed under the rules governing disciplinary action rather than recast the event as a resignation. The Charter gives this Commission authority over disciplinary appeals, and Rule XXI governs suspension and discharge. See St. Louis County Charter Art. VII, § 7.030(3); Civil Service Rules, Rule XXI.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**D. The County bypassed Rule XXI process.**

Rule XXI contemplates a written disciplinary process, including written basis and reasons for the action, the employee's written reply if any, together with notice of appeal rights. See Civil Service Rules, Rule XXI. None of that occurred before Appellant was forced out. Instead, the County made the separation effective by sending an email "accepting" a resignation after Appellant appeared for work and Appellant denied ever giving. Once Appellant appeared for work and denied resigning, the County had a live factual dispute. If it wished to separate him based on alleged misconduct, it was required to use the discharge process. It did not.[2]

**E. The County failed to provide the minimum pretermination process required by Loudermill.**

For a public employee with a protected property interest in continued employment, due process requires notice of the charges, an explanation of the employer's evidence, and an opportunity to respond before termination. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-46 (1985). A covered merit employee under Article VII has a strong claim of protected employment status because the Charter provides for retention on the basis of merit and ability and for appeal from disciplinary action. See St. Louis County Charter Art. VII, §§ 7.010, 7.030(3). Here, Appellant received no pre-separation notice of charges, no formal discharge notice, and no opportunity to respond before the County effected his removal in a *pre-termination* hearing. The County made the decision first, labeled it an accepted resignation, and removed Appellant effective immediately despite his contemporaneous and consistent denials. That sequence does not satisfy Loudermill's protections.

[2] In fact, Rule XI requires the Appointing Authority to provide the affected employee with a written statement of the bases for a termination within 5 days (8 if mailed), which never happened, and the employee has the right to a pre-termination hearing within 10 days of that notice period. Thus, had this had been a Rule XI discharge, Appellant would have been heard by the Commission no later than February 24th to 27th, over a month prior to the Commission's hearing in this unenforceable "resignation" matter. This only compounds the harm to Appellant by the County.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**F. The Commission should look to substance, not label, and reverse.**

Rule XXII authorizes the Commission to affirm, modify, or reverse the appointing authority's action. Civil Service Rules, Rule XXII. The Commission should find that the County failed to prove a voluntary resignation, that the separation was disciplinary in substance, and that the County's attempt to avoid Rule XXI cannot defeat Commission review. The proper remedy is reversal, reinstatement, restoration of pay and benefits, and correction of Appellant's personnel record.

## V. <u>Prayer for Relief</u>

WHEREFORE, Appellant respectfully requests that the Commission: (a) find that Appellant did not voluntarily resign; (b) find that the County's action was disciplinary in substance and not a valid resignation; (c) reverse the County's action pursuant to Rule XXII; (d) order reinstatement to Appellant's position; (e) award back pay, restoration of benefits, leave accruals, seniority from the date of separation forward and return of Appellant's same office space; (f) order correction of Appellant's personnel file to remove any statement that Appellant "quit," "resigned," or "resigned not in good standing"; (g) alternatively find that the County failed to provide the notice-and-response process required before removing a merit employee; and (h) grant such other and further relief as is just and proper.

Respectfully submitted,

Katherine Frierdich, MO 51375
Cadenzia Consulting LLC
14 Fordyce Ln
Ladue, MO 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
Counsel for Appellant

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on counsel for Respondent and the St. Louis County Clinical Consumer Majority Board on March 23, 2026, via electronic mail.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**From:** Kaufman, Kaethe KKaufman@stlouiscountymo.gov
**Subject:** RE: [External Email] Wyatt Civil Service Commission Appeal
**Date:** March 3, 2026 at 2:59 PM
**To:** Katherine Friedrich kcfrierdich@cadenziaconsulting.com
**Cc:** Livasy, Matt MLivasy@stlouiscountymo.gov

KK

Dear Ms. Frierdich;

We appreciate your follow-up. I am providing you with a copy of Civil Service Rule XXII, which governs the Commission's hearing of personnel appeals. To further respond to your questions and contentions:

As Mr. Livasy indicated to you during our phone meeting, he intends to place Mr. Wyatt's appeal on either the agenda for the Civil Service Commission's regular March 17 meeting or an earlier special meeting of the Commission. The Commission will then decide what action to take in accordance with its rules, including whether and when the matter will be set for hearing. Should the Commission set the matter for hearing, a hearing may take place in closed session upon request of the appellant or the Appointing Authority.

As to your request for discovery, the St. Louis County Civil Service Commission Rules do not provide for parties to conduct pre-hearing discovery. Further, the Civil Service Commission of a charter county is not an agency created by Missouri Constitution or state statute. Thus, parties to Civil Service Commission hearings have no right to discovery under the Missouri Administrative Proceedings Act. Mo. Rev. Stat. § 536.073. Please see Civil Service Rule XXII regarding the Civil Service Commission's hearing procedures.

Finally, and in response to your contention at our meeting that Mr. Wyatt could not have resigned without a written resignation, Civil Service Rule XIX permits merit system employees to resign *in good standing* by written submission. It is the County's position that Mr. Wyatt resigned verbally and not in good standing.

If you have something you wish the County to consider, please feel free to provide it to me.

Best regards,
Kaethe Kaufman

**Katherine R. Kaufman**
Assistant County Counselor
Saint Louis County
41 South Central Ave | Clayton, MO 63105
kkaufman@stlouiscountymo.gov
-
*Opportunity Central*

**Disclaimer and Notice:**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful. This message, including attachments, may contain

Exhibit 1

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

confidential or privileged information. If you are not the intended recipient, promptly delete this message and notify the sender of the delivery error by return e-mail.

**NOTICE** The Missouri Bar and Missouri Supreme Court Rules require all Missouri attorneys to notify all e-mail recipients: 1) e-mail communication is not a secure method of communication; 2) any e-mail that is sent to you or by you may be copied and held by any or all computers through which it passes as it is transmitted; and 3) persons not participating in our communication may intercept our communications by improperly accessing either of our computers or another computer unconnected to either of us through which the e-mail has passed.

-

**From:** Katherine Frierdich <kcfrierdich@cadenziaconsulting.com>
**Sent:** Monday, March 2, 2026 5:27 PM
**To:** Kaufman, Kaethe <KKaufman@stlouiscountymo.gov>; Livasy, Matt <MLivasy@stlouiscountymo.gov>
**Cc:** Pete Wyatt <petewyatt149@gmail.com>
**Subject:** [External Email] Wyatt Civil Service Commission Appeal

EXTERNAL EMAIL: Please exercise caution when opening links or attachments

Matt and Kaethe,

Thank you both for meeting with Pete and me last Friday. We really appreciate your willingness to help us understand the procedures for Civil Service Commission meetings and hearings.

Matt, thank you for confirming that Pete's appeal of the alleged "resignation" was received properly and accepted. You mentioned that it will be included in the agenda for the March 17th Commission meeting, but that a special meeting might precede that date. We would be very grateful for any expedited process, as Pete has been unable to perform his duties during a critical time for the Department of Public Health and remains unpaid. You indicated that the Commission may resolve the matter during the meeting, special or otherwise, without the need for a formalized hearing. We request that any discussion of the matter occur during executive session and thus not become public record. Furthermore, since we have received no documentation whatsoever from the County regarding Pete's alleged "resignation," we request that you provide us in advance with any information the County plans to present to the Commission during that meeting.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

However, if the Commission refers the matter to a formalized hearing for resolution, we respectfully request that the proceedings be held privately as a disputed matter. Given the dearth of available documentation and existing credibility issues, we request limited and expedited discovery in the form of interrogatories, document requests, and reasonable depositions. We anticipate no more than three depositions at this time. I previously sent Matt a list of known witnesses to show our existing view of relevant parties. Of course, we request that witnesses testify under oath and that opening and closing statements be permitted.

Kaethe, if you wish to discuss settlement terms, I am available at your convenience.

Best regards,

Katherine Frierdich

*Cadenzia Consulting*
Strategic Legal Advisory.
Built for Growth.

Katherine Frierdich, JD, MBA
Outside GC | Principal Consultant
(314) 325-9303
LinkedIn

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**BEFORE THE ST. LOUIS COUNTY CIVIL SERVICE COMMISSION**
**ST. LOUIS COUNTY, MISSOURI**

In re Appeal of Duane "Pete" Wyatt,

Appellant,

v.

St. Louis County, Missouri,

St. Louis County Department of Health,

St. Louis County Clinical Consumer Majority Board,

Derrick Melton, CEO, Community Health Centers,

and

Dr. Kanica Cunningham, Director, Department of Public Health,

Respondents.

**APPELLANT'S PROPOSED FINDINGS OF**
**FACT, CONCLUSIONS OF LAW, AND ORDER**

## I. Proposed Findings of Fact

1. Appellant was employed by St. Louis County as the Chief Operating Officer of the Department of Public Health and, at all relevant times, was treated as a merit-system employee.

2. The County contends that Appellant orally resigned during a conversation in which he allegedly said, "I quit" during a heated, curse-ladened conversation on February 5, 2026.

3. Appellant denies that he resigned and denies that a heated, curse-laden conversation occurred.

4. Appellant did not submit a written resignation to the Appointing Authority, the Department Director.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

5. Appellant finished the work day while present in the office on February 5, 2026 with no mention of any "resignation" by anyone from the County.

6. Appellant reported to work the next day.

7. On that day, February 6, 2026, the Department Director sent Appellant an email stating that the County "accepted" Appellant's resignation.

8. Upon receipt of that email, Appellant immediately and repeatedly denied resigning.

9. Notwithstanding Appellant's denials, the County removed Appellant from the workplace from the building.

10. The County classified the separation as a "verbal resignation not in good standing."

11. The St. Louis County Charter establishes a merit system for covered County employees and appointive county officers and provides for retention on the basis of merit and ability. See St. Louis County Charter Article VII, § 7.010.

12. The Charter provides that the Civil Service Commission shall hear appeals in cases of disciplinary action by appointing authorities. Id. § 7.030(3).

13. The County's November 2024 Civil Service Rules provide for resignation by written resignation with notice and separately address resignation without notice for absence for three or more work days without authorization. See Civil Service Rules, Rule XI.

14. The County's Civil Service Rules separately govern suspension and discharge under Rule XXI and appeals, hearings, and investigations under Rule XXII. See Civil Service Rules, Rules XXI, XXII.

15. Rule XXII provides that the Commission may affirm, modify, or reverse the appointing authority's action. See Civil Service Rules, Rule XXII.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

16. Before removing Appellant from County service, the County did not provide Appellant with a formal discharge notice setting out charges and appeal rights under Rule XXI.

17. Before removing Appellant from County service, the County did not provide Appellant a meaningful opportunity to respond to charges in advance of the separation decision.

18. At no time was Appellant disciplined, nor was he under any performance improvement plan.

**II. Proposed Conclusions of Law**

1. The Civil Service Commission has jurisdiction over this appeal because Article VII of the Charter authorizes the Commission to hear appeals in disciplinary cases involving merit-system employees. See St. Louis County Charter Article VII, § 7.030(3).

2. The County failed to establish that Appellant voluntarily resigned under the Civil Service Rules. There was no written resignation, and Appellant's return to work and immediate denial are inconsistent with a bona fide, voluntary, or completed resignation. See Civil Service Rules, Rule XI.

3. The County likewise failed to establish a deemed resignation by unauthorized absence because Appellant returned to work the next day and did not satisfy the rule governing resignation without notice. Id.

4. The County's classification of Appellant's separation as a "verbal resignation not in good standing" was disciplinary in substance because it rested on alleged misconduct or fault, not on a voluntary act of resignation.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

5. Because the separation was disciplinary in substance, the County was required to proceed under Rule XXI rather than by unilateral "acceptance" of a disputed resignation. See Civil Service Rules, Rule XXI.

6. The County did not comply with Rule XXI before effecting Appellant's removal.

7. The Commission should therefore treat the separation as an improper discharge or removal mislabeled as a resignation and should reverse the action under Rule XXII. See Civil Service Rules, Rule XXII.

8. A covered merit employee has a protected property interest sufficient to require pretermination due process because the Charter provides for retention on the basis of merit and ability and for appeal from disciplinary action. See St. Louis County Charter art. VII, §§ 7.010, 7.030(3).

9. Under Cleveland Board of Education v. Loudermill, due process required notice of the charges and an opportunity to respond before termination. See 470 U.S. 532, 542-46 (1985).

10. The County did not provide constitutionally adequate pretermination process because it removed Appellant first and only then treated the matter as final despite Appellant's immediate denials. Id.

11. To the extent the Commission concludes it lacks authority to grant relief solely on constitutional grounds, the Charter and Civil Service Rules should nevertheless be construed and applied in a manner that avoids the due-process problem, and the County's action should be reversed on nonconstitutional grounds.

## III. Proposed Order

1. The County's action separating Appellant from employment is REVERSED.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

2. The Commission finds that Appellant did not voluntarily resign in accordance with Rule XI.

3. Appellant shall be REINSTATED to his former position.

4. Appellant shall receive back pay, restoration of benefits, leave accruals, retirement service credit, seniority, and same office space from the effective date of separation through reinstatement, less any lawful offsets.

5. The County shall correct Appellant's personnel records to remove any notation that Appellant "quit," "resigned," or "resigned not in good standing."

6. The County shall provide such further relief as is necessary to restore Appellant to the status quo ante.

Respectfully submitted,

Katherine Frierdich, MO 51375
Cadenzia Consulting LLC
14 Fordyce Ln
Ladue, MO 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
Counsel for Appellant

Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on counsel for Respondent and the St. Louis County Clinical Consumer Majority Board on March 23 2026, via electronic mail.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Summary of Events

Eugenia Pike

On Thursday February 5, 2026 Derrick came into the office that morning and inquired about Pete's whereabouts. I reached out by phone, but Pete did not answer. Kathy went to check Pete's calendar to see if he had anything scheduled for that time such as a meeting or PTO. While we waited Derrick and I talked in his office. He was not upset and stated he did not need to know exactly where Pete was or what he was doing and that he just needed to get the information from him. He was not upset or angry. Derrick and I walked to Kathy's desk to see if she had any luck locating Pete. We all looked and saw that there was nothing scheduled on Pete's calendar from 9 a.m.-10a.m. Kathy explained that the next scheduled meeting wasn't until 10am. I sent Pete a text informing him Derrick needed to speak with him right away. Approximately 5 minutes later I received a call from Pete. He seemed upset and had just finished speaking with Derrick. He asked, "what the hell is wrong with Derrick" and that "I was on stage answering Derrick's text message". I explained to him that he should speak with Derrick directly. He then asked, "what did Derrick need from him". I again stated that he would need to speak with Derrick directly. He stated that he was on the way and would arrive shortly. When Pete arrived, he showed me there was an event showing on his calendar. I explained to him that Derrick and I checked and the calendar showed nothing scheduled between 9-10 a.m.

Later that day Pete and I discussed the events of that morning. I explained that Derrick was not upset that morning and just needed the information right away. Pete explained to me on 2 different occasions that he needed to apologize to Derrick and that he would like to do it face-to-face and not by phone. After he saw that the 1:1 scheduled for Friday had been canceled he asked me several times if Derrick was angry. I informed him that Derrick showed no signs to me that he was angry with Pete.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Gmail

Pete Wyatt <petewyatt149@gmail.com>

## Re: Resignation Acceptance

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Mon, Feb 9, 2026 at 4:57 AM
To: "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>
Cc: "Melton, Derrick" <DMelton@stlouiscountymo.gov>, "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Sharon,

This emailed "acceptance" is in reference to a situation or conversation that to my knowledge, did not happen. I do not recall ever going into Derrick's office, cussing and quitting.

To accept a resignation that was not made verbally or in writing, without question, conversation or process is a concern. Derrick "advising" Dr. Cunningham that "I quit", simply stated, for reasons I, nor anyone else can explain, he lied.

I did not say to Derrick or anyone else, "I quit". I did not resign. I had/have no interest, intent or prior consideration in the notion of quitting. Quite the contrary. Nor do I intend to allow Derrick to "quit" my job for me. Particularly around something this outrageous and demonstrably false.

To make this decision, in this way, on any level, without inquiry, fact or process would suggest Civil Service Rules allow one person to quit another person's job just by "advising" someone in authority.

To be clear, I DID NOT "QUIT"! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING. I DID NOT AND HAVE NOT HAD ANY CONVERSATION ABOUT QUITTING WITH ANY EMPLOYEE OF THE ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH OR THE COMMUNITY HEALTH CENTERS.

This unwarranted action is based in malicious slander. A petulant, petty and immature act perpetrated for no other reason than to do personal harm. It was definitely not in the interest of staff, community or the mission.

If this has gone forward with Appointing Authority signature without communication, documentation or intent based ONLY on Derrick's "advising", there's something very important missing. Per Civil Service Rules a resignation needs to be in writing. I have not written or presented such a document. If there is such a document, please provide me with a copy today. If there is a document "from me" or written on my behalf, being used to support this action, it IS NOT from my hand, mind or heart. If there is such a document, it is and will be considered libelous.

Again, to be perfectly clear, I DID NOT "quit". Nor did I ever use the word "quit" in my two brief conversations with Derrick, Thursday morning. I have documented communication that would/will suggest otherwise.

If Dr. Cunningham would like more context on this matter, I am more than willing to share what I believe is actual fact and that can help discern the truth. I will also be reaching out to others who may also have fallen victim to Derrick's lie.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

I did not "quit" or resign. Nor do I understand why Derrick would risk his professional and personal integrity by telling a lie to Dr. Cunningham and staff. To gain/prove what?

Thank you.

Pete

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation. This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

Forbes 2025 AMERICA'S BEST MIDSIZE EMPLOYERS POWERED BY statista

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 59 of 1127 PageID #: 62

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Gmail

**Pete Wyatt <petewyatt149@gmail.com>**

# Fwd: Resignation Acceptance

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Mon, Feb 9, 2026 at 6:50 AM
To: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>
Cc: "Gardner, Sharon" <sgardner2@stlouiscountymo.gov>

Dr. Cunningham,

This situation is truly unfortunate. Reputation and integrity are all that we truly own.

My specific request is to be reinstated immediately without further escalation, to continue the important work that needs to be done.

In the absence of truth and a submitted resignation letter stating my intent, the actions taken violate Civil Service Rules.

Derrick's reasons are his. I do not expect his truth. What happens in that particular space is no longer my concern. My sincere interest, as demonstrated, is in the work. Allow me to do that.

Thank you.

Pete

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 9, 2026 at 4:57 AM
Subject: Re: Resignation Acceptance
To: Gardner, Sharon <SGardner2@stlouiscountymo.gov>
Cc: Melton, Derrick <DMelton@stlouiscountymo.gov>, Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Sharon,

This emailed "acceptance" is in reference to a situation or conversation that to my knowledge, did not happen. I do not recall ever going into Derrick's office, cussing and quitting.

To accept a resignation that was not made verbally or in writing, without question, conversation or process is a concern. Derrick "advising" Dr. Cunningham that "I quit", simply stated, for reasons I, nor anyone else can explain, he lied.

I did not say to Derrick or anyone else, "I quit". I did not resign. I had/have no interest, intent or prior consideration in the notion of quitting. Quite the contrary. Nor do I intend to allow Derrick to "quit" my job for me. Particularly around something this outrageous and demonstrably false.

To make this decision, in this way, on any level, without inquiry, fact or process would suggest Civil Service Rules allow one person to quit another person's job just by "advising" someone in authority.

To be clear, I DID NOT "QUIT"! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING. I DID NOT AND HAVE NOT HAD ANY CONVERSATION ABOUT QUITTING WITH ANY EMPLOYEE OF THE ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH OR THE COMMUNITY HEALTH CENTERS.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

This unwarranted action is based in malicious slander. A petulant, petty and immature act perpetrated for no other reason than to do personal harm. It was definitely not in the interest of staff, community or the mission.

If this has gone forward with Appointing Authority signature without communication, documentation or intent based ONLY on Derrick's "advising", there's something very important missing. Per Civil Service Rules a resignation needs to be in writing. I have not written or presented such a document. If there is such a document, please provide me with a copy today. If there is a document "from me" or written on my behalf, being used to support this action, it IS NOT from my hand, mind or heart. If there is such a document, it is and will be considered libelous.

Again, to be perfectly clear, I DID NOT "quit". Nor did I ever use the word "quit" in my two brief conversations with Derrick, Thursday morning. I have documented communication that would/will suggest otherwise.

If Dr. Cunningham would like more context on this matter, I am more than willing to share what I believe is actual fact and that can help discern the truth. I will also be reaching out to others who may also have fallen victim to Derrick's lie.

I did not "quit" or resign. Nor do I understand why Derrick would risk his professional and personal integrity by telling a lie to Dr. Cunningham and staff. To gain/prove what?

Thank you.

Pete

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation. This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Gmail

Pete Wyatt <petewyatt149@gmail.com>

# Fwd: Resignation Acceptance

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Thu, Feb 12, 2026 at 6:18 AM
To: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>
Cc: "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>
Bcc: mlivasy@stlouiscountymo.gov, djones@pinelawn.org

Dr. Cunningham,

I'm following up on my February 9th (Monday) email to you requesting reinstatement to my job due to this egregious situation that is based on a deliberate and malicious lie told to you by Derrick Melton. He created and told you a story that included, among other falsehoods, my alleged cursing the job and quitting. That **DID NOT** happen. However, based on that lie, you subsequently accepted "my resignation!" A resignation that I had to be told about by your assistant. A resignation that, to my knowledge, is not supported by a formal letter from me. It is only supported by hearsay.

In a previous response, I referred to the lie as demonstratively false. However, there has been no attempt to challenge the lie or communicate with me for truth. To that end, I've elevated this situation by attaching a document that lays out the documented communication and timing during the 36 hour period that fostered the unnecessary, unwarranted and unprofessional lie. My statements can be supported by bank records, phone records and staff accounts.

Again, I request

1. A copy of the resignation letter used for this process to occur without my knowledge. Originally requested in the response below to Sharon Gardner.
2. To be fully reinstated as soon as possible to continue the work necessary to serve St. Louis County residents.
3. To have my office locked and off limits until this matter is resolved.

Dr. Cunningham, I don't know how or why the lie was brought to you. But, I do know that your response to it was unjust and without the benefit of doubt. I've shown you nothing but support and respect. This is my informal appeal to be heard and acted upon. Review the document. Ask the questions.

To be clear..., **I did not quit my job. I did not quit on my team. I did not quit on my peers. I did not quit on the mission. Nor did I quit on you.**

My reputation and integrity are all that I truly own. I stand prepared to defend both. They matter.

I look forward to hearing from you and my subsequent return to service.

Thank you.

Pete
314-494-2100

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 9, 2026 at 6:50 AM
Subject: Fwd: Resignation Acceptance
To: Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
Cc: Gardner, Sharon <sgardner2@stlouiscountymo.gov>

Dr. Cunningham,

This situation is truly unfortunate. Reputation and integrity are all that we truly own.

My specific request is to be reinstated immediately without further escalation, to continue the important work that needs to be done.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

In the absence of truth and a submitted resignation letter stating my intent, the actions taken violate Civil Service Rules.

Derrick's reasons are his. I do not expect his truth. What happens in that particular space is no longer my concern. My sincere interest, as demonstrated, is in the work. Allow me to do that.

Thank you.

Pete

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 9, 2026 at 4:57 AM
Subject: Re: Resignation Acceptance
To: Gardner, Sharon <SGardner2@stlouiscountymo.gov>
Cc: Melton, Derrick <DMelton@stlouiscountymo.gov>, Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Sharon,

This emailed "acceptance" is in reference to a situation or conversation that to my knowledge, did not happen. I do not recall ever going into Derrick's office, cussing and quitting.

To accept a resignation that was not made verbally or in writing, without question, conversation or process is a concern. Derrick "advising" Dr. Cunningham that "I quit", simply stated, for reasons I, nor anyone else can explain, he lied.

I did not say to Derrick or anyone else, "I quit". I did not resign. I had/have no interest, intent or prior consideration in the notion of quitting. Quite the contrary. Nor do I intend to allow Derrick to "quit" my job for me. Particularly around something this outrageous and demonstrably false.

To make this decision, in this way, on any level, without inquiry, fact or process would suggest Civil Service Rules allow one person to quit another person's job just by "advising" someone in authority.

To be clear, I DID NOT "QUIT"! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING. I DID NOT AND HAVE NOT HAD ANY CONVERSATION ABOUT QUITTING WITH ANY EMPLOYEE OF THE ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH OR THE COMMUNITY HEALTH CENTERS.

This unwarranted action is based in malicious slander. A petulant, petty and immature act perpetrated for no other reason than to do personal harm. It was definitely not in the interest of staff, community or the mission.

If this has gone forward with Appointing Authority signature without communication, documentation or intent based ONLY on Derrick's "advising", there's something very important missing. Per Civil Service Rules a resignation needs to be in writing. I have not written or presented such a document. If there is such a document, please provide me with a copy today. If there is a document "from me" or written on my behalf, being used to support this action, it IS NOT from my hand, mind or heart. If there is such a document, it is and will be considered libelous.

Again, to be perfectly clear, I DID NOT "quit". Nor did I ever use the word "quit" in my two brief conversations with Derrick, Thursday morning. I have documented communication that would/will suggest otherwise.

If Dr. Cunningham would like more context on this matter, I am more than willing to share what I believe is actual fact and that can help discern the truth. I will also be reaching out to others who may also have fallen victim to Derrick's lie.

I did not "quit" or resign. Nor do I understand why Derrick would risk his professional and personal integrity by telling a lie to Dr. Cunningham and staff. To gain/prove what?

Thank you.

Pete

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation. This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov



Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

---

**Derrick Melton - Pete Wyatt Incident Feb 5-6.pdf**
138K

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Gmail

Pete Wyatt <petewyatt149@gmail.com>

# Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Mon, Feb 16, 2026 at 4:31 AM
To: mlivasy@stlouiscountymo.gov
Cc: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

My name is Pete Wyatt, Chief Operating Officer, Community Health Centers.

I copied you in a February 9th memo to Dr. Cunningham and others on this subject. Hopefully, you were able to review the background and talk to Dr. Cunningham about the "resignation." A resignation that was fully processed in 24 hours. However, **I did not and have not resigned.**

I am officially appealing the "resignation" and I'm seeking expeditious and complete reinstatement. I am also requesting an investigation into how this situation occurred.

The attachments represent my appeal and support material.

I understand there is a process that could take some time. I also understand that special circumstances can be acknowledged. I am unjustly without an income and the clinical staff is in the middle of critical transition. This is an extremely positive, but chaotic time for all involved in the Community Health Centers.

Can I get this on Tuesday's agenda?

Thank you.

Pete Wyatt
314-494-2100

---

**7 attachments**

**Exhibit 2A Panera Transaction.docx**
153K

**Exhibit 2B Imo's Transaction.docx**
151K

**Exhibit 3 Cell Phone Call Log.docx**
144K

**BEFORE THE CIVIL SERVICE COMMISSION.pdf**
274K

**Exhibit 1 Derrick Melton - Pete Wyatt Incident Feb 5-6.pdf**
223K

**Exhibit 4B Text Thread 2.docx**
181K

**Exhibit 4A Text Thread 1.docx**
164K

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Gmail

Pete Wyatt <petewyatt149@gmail.com>

# Fwd: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Fri, Feb 20, 2026 at 3:48 PM
To: mlivasy@stlouiscountymo.gov
Cc: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

I'm following up on my attempt to establish a line of communication and timeline regarding my requested appeal and hearing.

It has been 10 working days since Derrick Melton inexplicably submitted MY "resignation" to Dr. Cunningham, stating "I quit", which she accepted, without my knowledge, my consent, a written document from me or factual cause. Since February 6, 2026 I have attempted communication with leadership on several occasions, but have not received acknowledgement of my denial, my submission of evidence to the contrary, my request for appeal or my request for a private, in person hearing under oath.

I've read there is a form you may send for me to state my reasons for appeal and remedy sought. Will you, in fact, be sending a form? Or will the information I have already provided suffice?

What are the next steps in the process? Is there ANYTHING else you need from me at this time that will move this process forward?

Your acknowledgement and direction will be truly appreciated.

Thanks,

Pete
314-494-2100

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Thu, Feb 19, 2026 at 9:17 AM
Subject: Fwd: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request
To: <mlivasy@stlouiscountymo.gov>
Cc: Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, Gardner, Sharon <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

Can we establish a line of communication and timeline regarding my requested appeal?

I prefer private, in person and under oath.

Is there anything you need from me at this time?

Thanks,

Pete
314-494-2100

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 16, 2026 at 4:31 AM

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Subject: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request
To: <mlivasy@stlouiscountymo.gov>
Cc: Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, Gardner, Sharon <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

My name is Pete Wyatt, Chief Operating Officer, Community Health Centers.

I copied you in a February 9th memo to Dr. Cunningham and others on this subject. Hopefully, you were able to review the background and talk to Dr. Cunningham about the "resignation." A resignation that was fully processed in 24 hours. However, **I did not and have not resigned.**

I am officially appealing the "resignation" and I'm seeking expeditious and complete reinstatement. I am also requesting an investigation into how this situation occurred.

The attachments represent my appeal and support material.

I understand there is a process that could take some time. I also understand that special circumstances can be acknowledged. I am unjustly without an income and the clinical staff is in the middle of critical transition. This is an extremely positive, but chaotic time for all involved in the Community Health Centers.

Can I get this on Tuesday's agenda?

Thank you.

Pete Wyatt
314-494-2100

---

**7 attachments**

**Exhibit 2A Panera Transaction.docx**
153K

**Exhibit 2B Imo's Transaction.docx**
151K

**Exhibit 3 Cell Phone Call Log.docx**
144K

**BEFORE THE CIVIL SERVICE COMMISSION.pdf**
274K

**Exhibit 1 Derrick Melton - Pete Wyatt Incident Feb 5-6.pdf**
223K

**Exhibit 4B Text Thread 2.docx**
181K

**Exhibit 4A Text Thread 1.docx**
164K

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

SAINT LOUIS COUNTY
Administration

June 16, 2026

**MEMORANDUM TO**: Civil Service Commission
Nadine V. Nunn, Chairperson
Raven Akram, Member
Chantal Hoffsten, Member
Gloria Carter-Hicks, Member
Satonya Booker, Member

**FROM**: Matt Livasy, Personnel Director
County HR

**SUBJECT:** Personnel Director Approvals
FOR INFORMATION

The following individuals were appointed to a rate of pay exceeding the discretionary hire maximum (typically 20% above the pay range minimum). The Appointing Authority recommended the individuals for hire based on exceeding minimum qualifications, best fit for the role and potential contributions.

| Department | Name | Job Class | Rate of Pay Approved |
|---|---|---|---|
| Public Health | Erin Williams | P718 - Dentist<br>Pay Range 22 ($60.98 – $100.62)<br>Discretionary Hire Maximum $100.62 | $96.15 |
| Public Health | Lauren Moeller | T515- Veterinary Technician<br>Pay Range 8 ($20.00 - $30.00)<br>Discretionary Hire Maximum $30.00 | $28.50 |

Sufficient funding is available. Please contact me with questions.

OPPORTUNITY CENTRAL

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation. This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Exhibit 3: Cell Phone Call Log



Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Summary of Events

Eugenia Pike

On Thursday February 5, 2026 Derrick came into the office that morning and inquired about Pete's whereabouts. I reached out by phone, but Pete did not answer. Kathy went to check Pete's calendar to see if he had anything scheduled for that time such as a meeting or PTO. While we waited Derrick and I talked in his office. He was not upset and stated he did not need to know exactly where Pete was or what he was doing and that he just needed to get the information from him. He was not upset or angry. Derrick and I walked to Kathy's desk to see if she had any luck locating Pete. We all looked and saw that there was nothing scheduled on Pete's calendar from 9 a.m.-10a.m. Kathy explained that the next scheduled meeting wasn't until 10am. I sent Pete a text informing him Derrick needed to speak with him right away. Approximately 5 minutes later I received a call from Pete. He seemed upset and had just finished speaking with Derrick. He asked, "what the hell is wrong with Derrick" and that "I was on stage answering Derrick's text message". I explained to him that he should speak with Derrick directly. He then asked, "what did Derrick need from him". I again stated that he would need to speak with Derrick directly. He stated that he was on the way and would arrive shortly. When Pete arrived, he showed me there was an event showing on his calendar. I explained to him that Derrick and I checked and the calendar showed nothing scheduled between 9-10 a.m.

Later that day Pete and I discussed the events of that morning. I explained that Derrick was not upset that morning and just needed the information right away. Pete explained to me on 2 different occasions that he needed to apologize to Derrick and that he would like to do it face-to-face and not by phone. After he saw that the 1:1 scheduled for Friday had been canceled he asked me several times if Derrick was angry. I informed him that Derrick showed no signs to me that he was angry with Pete.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Administrative Hearing

3/30/2026

In the Matter of Duane “Pete” Wyatt, Appellant

**Hartford Reporting & Technology**

**7733 Forsyth Boulevard, Suite 1100**

**St. Louis, Missouri 63105**

**(855) 443-3767**

**www.hartfordreporting.com**

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 76 of 1127 PageID #: 79


Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

ST. LOUIS COUNTY GOVERNMENT

CIVIL SERVICE COMMISSION

MONDAY, MARCH 30, 2026 AT 12:00 P.M.

In Re:

HEARINGS, APPEALS, GRIEVANCES

In the Matter of Duane "Pete" Wyatt (Appellant);

Dr. Kanika Cunningham (Respondent)

TRANSCRIPT OF PROCEEDINGS

taken via WebEx

March 30, 2026

Taken before Juliana F. Zajicek, Registered Professional Reporter, Certified Shorthand Reporter and Certified Realtime Reporter, and Notary Public.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A P P E A R A N C E S:

CIVIL SERVICE COMMISSION COMMISSIONERS (via WebEx):
Commissioner Satonya Booker
Commissioner Nadine V. Nunn, Esq.
Commissioner Chantal Hoffsten

FOR ST. LOUIS COUNTY (via WebEx):
Mr. Noah Goldkamp, Esq.

FOR APPELLANT DUANE "PETE" WYATT (via WebEx):
Ms. Katherine Frierdich, Esq.

FOR RESPONDENT DR. KANIKA CUNNINGHAM (via WebEx):
Ms. Katherine R. Kaufman, Esq.

ALSO PRESENT (via WebEx):
Duane "Pete" Wyatt, Appellant;
Ms. Jairris Goen, Manager of Employment,
St. Louis County

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

I N D E X

OPENING STATEMENT - RESPONDENT 28
OPENING STATEMENT - APPELLANT 106

CLOSING STATEMENT - APPELLANT 159
CLOSING STATEMENT - RESPONDENT 161

E X A M I N A T I O N

WITNESS: PAGE:
DERRICK MELTON
DX BY MS. KAUFMAN.................... 30
CX BY MS. FRIERDICH.................. 40
RDX BY MS. KAUFMAN................... 55
RCX BY MS. FRIERDICH................. 57
EUGENIA PIKE
DX BY MS. KAUFMAN.................... 61
CX BY MS. FRIERDICH.................. 67
RDX BY MS. KAUFMAN................... 74
SHARON GARDNER
DX BY MS. KAUFMAN:................... 77
CX BY MS. FRIERDICH.................. 81

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

E X A M I N A T I O N

WITNESS: PAGE:
DR. KANIKA CUNNINGHAM
DX BY MS. KAUFMAN.................... 85
CX BY MS. FRIERDICH.................. 93
RDX BY MS. KAUFMAN................... 105
DR. PATRICK MILLER
DX BY MS. FRIERDICH.................. 109
CX BY MS. KAUFMAN.................... 116
DAMON BROADUS
DX BY MS. FRIERDICH.................. 118
DUANE "PETE" CARLTON WYATT
DX BY MS. FRIERDICH.................. 122
CX BY MS. KAUFMAN.................... 152
RDX BY MS. FRIERDICH................. 156

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

MR. LIVASY: Why don't we go ahead and call the meeting to order. Chairwoman Nunn, are you willing to do that for us?

COMMISSIONER NUNN: Yes, we would now call this special hearing for March the 30th, and you will be in the hands of Matt Livasy to do a roll call vote.

MR. LIVASY: All right. Thank you.

Chairwoman Nunn?

COMMISSIONER NUNN: Present.

MR. LIVASY: Commissioner Hoffsten?

COMMISSIONER HOFFSTEN: Present.

MR. LIVASY: Commissioner Booker?

COMMISSIONER BOOKER: Present.

COMMISSIONER NUNN: Okay.

MR. LIVASY: And Commissioner Akram and Commissioner Carter-Hicks are not present.

All right. So, Juliana, I think since the meeting is officially kicked off, you're welcome to go ahead and start putting us on the record.

I'm moving to Section 2, Hearings, Appeals, Grievances, and Item 2.1 is Resignation Appeal from Pete Wyatt and the Department of Public Health.

We do have a closed session on the agenda, so we will exercise that likely for this, if that's

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

what the Commission and the parties choose to do.

We need to appoint a hearing officer, so that will be up to the Commission. Who would like to take on that role today?

COMMISSIONER NUNN: Did you say Commissioner Booker is on the line?

MR. LIVASY: Yes.

COMMISSIONER NUNN: And you sent out all of the materials for the hearing procedure and everything to Commissioner Booker?

COMMISSIONER BOOKER: Yes, I have the procedure documents.

COMMISSIONER NUNN: Okay. All right. Then I would say that Commissioner Booker should be the hearing officer for this particular meeting.

COMMISSIONER BOOKER: Okay. I'm going to need some help.

COMMISSIONER NUNN: Okay. No problem.

MR. LIVASY: Commissioner Booker, you have the --

COMMISSIONER BOOKER: Administrative hearing procedure guidance, yes, I do.

MR. LIVASY: And we'll be following the first column on the far left.

COMMISSIONER BOOKER: Okay. An employee with an

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

attorney?

MR. LIVASY: Yes.

COMMISSIONER BOOKER: Okay.

MR. LIVASY: Correct.

COMMISSIONER BOOKER: Okay. So I just --

MR. GOLDKAMP: I'm sorry, I couldn't get to my unmute button. My mouse pad wasn't working.

But can we have a motion to appoint Commissioner Booker as the hearing officer?

COMMISSIONER HOFFSTEN: I'll make that motion.

COMMISSIONER NUNN: Second.

All of those in favor?

COMMISSIONER HOFFSTEN: Aye.

COMMISSIONER BOOKER: Aye.

COMMISSIONER NUNN: Aye.

MR. GOLDKAMP: And then I believe there has been a request from the employee for the hearing to be in a closed session, so I think that's appropriate to take up before -- before anything -- before anything else.

COMMISSIONER NUNN: So I move that we go into closed session by roll call vote.

COMMISSIONER HOFFSTEN: I'll second that.

MR. LIVASY: Chairwoman Nunn?

COMMISSIONER NUNN: Aye.

MR. LIVASY: Commissioner Hoffsten?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

COMMISSIONER HOFFSTEN: Aye.

MR. LIVASY: Booker?

COMMISSIONER BOOKER: Aye.

MS. GOEN: And then, Noah, at this point is there anybody else I need to promote to bring into closed session with us?

MR. GOLDKAMP: So at this point, it would be appropriate for the employee, the employee's attorney, and Dr. Cunningham to all be moved over to the closed session.

MS. PIKE: And me, please.

MR. GOLDKAMP: Well, I think you're already a panelist, Gina.

MS. PIKE: Okay.

MS. GOEN: Yeah, sorry. We moved panelists -- okay, so I have promoted those three individuals to panelist -- excuse me -- so we should be ready to go ahead and move into closed session.

IT TECH: Hello, everyone. It's Shawn with IT again. I'm getting ready to start your closed session. I just wanted to verify before I hit it, everybody that's currently a panelist will be moving into closed session, correct?

MS. GOEN: Correct, thank you.

IT TECH: All right. I'll go ahead and start

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

it. If you get a popup, please hit "yes" or "no."

(WHEREUPON, the following proceedings were had in closed session, as follows:)

MR. LIVASY: Let's give a moment to allow all of the others who needed to join to join us.

MS. FRIERDICH: So you are going to be looking for Pete, as I don't see him?

MR. LIVASY: Katherine, you are muted.

MS. KAUFMAN: Thank you. I just wanted to let any witnesses who may be called into the main room know where we are going and that they will be brought in from time to time.

MS. FRIERDICH: Do you have a list of said witnesses, as we have not received one?

MS. KAUFMAN: Yes. I think all of the witnesses on our list are also on yours. We are intending to call Dr. Cunningham, Mr. Melton, Ms. Pike, and Ms. Gardner.

MS. FRIERDICH: Okay. Did you submit a witness list, because I don't believe we received one, or did you submit anything else that we didn't receive?

MS. KAUFMAN: No.

MS. FRIERDICH: Okay. And what about the witnesses that we proposed, are they also in the

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

waiting room?

MS. KAUFMAN: They can be made available. They've all been informed of the hearing. I don't see the relevance of some of the witnesses' proposed testimony, but we can handle that as we get to it.

MS. FRIERDICH: I'm not sure that's your decision to make, but you're saying that they are available?

MS. KAUFMAN: Yes, ma'am.

MS. FRIERDICH: Thank you.

Did the County submit any documents?

MS. KAUFMAN: No, ma'am.

MS. FRIERDICH: And no other pleadings that we did not receive a copy for?

MS. KAUFMAN: No.

MS. FRIERDICH: Thank you.

So a question for the Commission since Ms. Cunningham is to be a witness, is she going to be remaining here as a party or will you be putting her into the waiting room and bringing her in as a witness?

MR. WYATT: I think I'm in now.

MS. FRIERDICH: Hi, Pete. Glad you could join us.

Is that a question for whom? I'm not

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

sure.

MR. GOLDKAMP: It could be my advice to the Commission that Dr. Cunningham is not only a witness, she is the appointing authority who made this decision and is, therefore, a party to the case. That would be my advice to -- to the Commission. But it is the Commission's decision.

So I think, Commissioners, that if you want to make a ruling on whether Dr. Cunningham can remain in the room as the appointing authority who made the decision, or if she is a witness and should then be sequestered like the other witnesses, I think that's the first decision we need to make here.

MR. LIVASY: And, I'm sorry, administratively, Chairwoman Nunn, can you accept the breakout session on your computer? You're still showing up on camera in open session, and we just don't want to -- to risk anything there.

COMMISSIONER NUNN: Oh. Is that fine? I did join the session.

MR. LIVASY: We've got you for Call-in User 3, but I need your computer as well to be switched over.

COMMISSIONER NUNN: Oh, okay.

MR. LIVASY: There should be a popup where there's a "join" button in the top left corner of your

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

WebEx.

COMMISSIONER NUNN: Okay. I see "join breakout session," and it says I'm assigned to breakout session 1.

MR. LIVASY: Okay.

COMMISSIONER NUNN: Let me do join.

MR. LIVASY: It looks like we've got you in. Thank you for taking care of that. I appreciate it.

COMMISSIONER NUNN: Okay. All right.

MR. LIVASY: Okay. And then it looks like we would need you to return to the main meeting for now that's taking place in the chat.

MS. KAUFMAN: Yes, that's addressed to Ms. Pike. I think somehow she may have accidentally traveled in with us.

MR. LIVASY: Ms. Pike, if you can hear me, I'm still seeing you showing up in attendance -- nope, you are gone.

Okay. I think we're all ready to proceed. Thank you for the interruption. Noah, you presented a question, I believe.

MR. GOLDKAMP: Yes. I think the first matter we need to take up is whether the Commission will allow Dr. Cunningham to stay in the hearing while others are testifying and these pre-motions are heard or if she

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

should be sequestered like the other witnesses?

COMMISSIONER NUNN: Ms. Booker, you are the hearing officer. It is my suggestion that all witnesses will be sequestered until their time to testify.

COMMISSIONER HOFFSTEN: I concur.

COMMISSIONER BOOKER: I agree as well.

MS. KAUFMAN: Would that include Mr. Wyatt as well, assuming he intends to give testimony?

MS. FRIERDICH: I believe the rules require him to be present.

COMMISSIONER BOOKER: Yes. That's how it normally is. So how do we --

MR. GOLDKAMP: So we just -- if we have a motion, and then Dr. Cunningham can be placed in the waiting room.

COMMISSIONER BOOKER: So the motion shall be that Dr. Cunningham shall be treated as a witness, is that how that --

MR. GOLDKAMP: And -- and not present during pre-hearing motions and other witnesses' testimony.

COMMISSIONER BOOKER: May I say what Noah said, or should I --

COMMISSIONER NUNN: You can say "so moved."

COMMISSIONER BOOKER: So moved.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

COMMISSIONER HOFFSTEN: Second.

COMMISSIONER BOOKER: All those in favor?

COMMISSIONER HOFFSTEN: Aye.

COMMISSIONER NUNN: Aye.

COMMISSIONER BOOKER: Aye.

COMMISSIONER HOFFSTEN: Do we need to do a roll call vote since we're in a closed --

MR. GOLDKAMP: We do not.

MS. GOEN: Okay. Dr. Cunningham, I have no idea if you have the option to leave. I think I have the option to put you back, but if it removes you from the meeting, just rejoin and you should end up in -- back in the open session.

Oh, okay. She did it, it looks like.

(WHEREUPON, Dr. Cunningham exited the closed session.)

MS. FRIERDICH: And just to confirm, Call-in User 3 is Commissioner Nunn?

COMMISSIONER BOOKER: Yes.

COMMISSIONER NUNN: Correct.

MS. FRIERDICH: Thank you.

COMMISSIONER BOOKER: Am I supposed to read this over here?

MR. GOLDKAMP: Yes.

COMMISSIONER BOOKER: Okay. Do I start with,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

"This hearing is convened"?

MR. GOLDKAMP: Yes.

COMMISSIONER BOOKER: Okay. This hearing is convened -- let's go on record.

I am Satonya Booker, a Commissioner of the St. Louis County Civil Service Commission. I am the designated hearing officer for the appeal filed by the appellant.

It appears they are present, along with their attorney, and the Department's appointing authority is present along with a County attorney, Associate -- Associate County Counselor for the St. Louis County Government.

Before we begin, I'm going to inquire as to whether or not there has been any discussion between the attorneys concerning the settlement -- concerning a settlement?

MS. KAUFMAN: No.

COMMISSIONER BOOKER: Is there any benefit to the parties entering into any further discussion at this time?

MS. KAUFMAN: No.

COMMISSIONER BOOKER: If so, I will provide an -- okay. So there is no discussion, okay.

If not, we will begin the hearing.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

I want to point out that all of the Commissioners will view the evidence in the appeal. The other Commission members will be supplied with the transcript of today's proceedings, as well as copies of any documents that are admitted into evidence. The full Commission will make the decision, not just me. I am here simply to conduct today's hearing.

Just a general statement, both parties are represented by attorneys and the rules of the Civil Service Commission provide that hearings shall be informal and shall not follow the strict Rules of Evidence and the technicalities thereupon.

I will, however, consider any objections that either one of you may have, but please remember that any rulings that are made may not necessarily conform to what either of you may be -- may be used to in a courtroom. It is May -- I'm sorry, March 30th, 2026, and it is about 12:23 p.m. We are ready to begin the proceeding.

Are there any preliminary issues to be considered at this time?

MS. FRIERDICH: I --

MR. GOLDKAMP: I believe --

MS. FRIERDICH: Yes, go ahead. I think we were headed in the same direction. Go ahead.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

MR. GOLDKAMP: And you can take it.

MS. FRIERDICH: Okay. So we do have a couple of motions on file. One was to request that the Commission do an investigation, subpoena witnesses, and collect documentation. We did not receive any information regarding subpoena of witnesses or witnesses, so we've already granted the closed ruling request -- closed hearing request.

Is there anything the Commission has to say in regard to that motion? We just haven't -- we didn't -- "we," meaning Mr. Wyatt, did not receive any information regarding compelled testimony or records from the Commission prior to this meeting, nor the County.

MR. GOLDKAMP: So what is on the table, Commissioners, is whether you want to compel certain witnesses to appear. From the list, it looks like the first four, the County is already calling, so it seems to be a moot point. And then there are five other names that Ms. Frierdich gave for you to consider.

COMMISSIONER BOOKER: Yes, it looks like -- okay. So it looks like for the record, we now have these -- these exhibits, so we reviewed the -- we reviewed the copies of the -- of the facts that you have -- that you have -- that you have offered to us,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

and I'm understanding that those can be admitted by stipulation. Is that correct?

MS. KAUFMAN: We would not stipulate to the veracity of those facts, Commissioner Booker. There is, I believe, conflicting factual accounts and testimony on both sides which is what brings us here today.

MS. FRIERDICH: And if what you're referring to is appellant's, that's Mr. Wyatt's proposed findings of fact, conclusions of law, and order, so. It's really a -- we presented a pre-hearing brief and proposed findings of facts and conclusions of law and an order because the latter is what the Commission will have to issue in order to help to lay it out in advance for the Commission so you're not coming in blind.

COMMISSIONER BOOKER: Okay. Okay. Well, let's -- let's call -- let's call in these witnesses then. Let's look at --

COMMISSIONER HOFFSTEN: Commissioner Booker, this is Commissioner Hoffsten. I'm just wondering if maybe we can ask the relevance of the rest of the witnesses in the motion?

COMMISSIONER BOOKER: Okay.

COMMISSIONER HOFFSTEN: Because if we -- sorry,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

I muted myself -- it might be helpful.

So in the motion that was filed by appellant's attorney, there's a list of witnesses, and I believe that there is -- while there's agreement, there's disagreement. So we can, you know, deny the motion or at least hear why they think they're relevant, if you'd like, as the hearing officer.

COMMISSIONER BOOKER: I agree, I concur.

MS. FRIERDICH: Okay. The two that were not listed by Ms. Kaufman is Mr. David Broadus, Deputy Director, Department of Public Health, and Dr. Patrick Miller, Chief Medical Officer, Community Health Centers. They both are fact witnesses who can speak to the disputed facts in this matter.

And then we offer three witnesses as rebuttal, as we have not received any information whatsoever from the County with regard to the facts; no documentation, no statement of cause, nothing. So we are, you know, trying to -- we are trying to keep it to the point and short. I don't think this has to be a very drawn-out hearing.

I think the facts are very clear, but, you know, we don't know what they're presenting so I presented three additional people as potential rebuttal witnesses, depending on what they present.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

We don't know what they're going to present.

And I would ask what the -- what the relevance of the other ones are to the County if I have to, you know, justify it, but the two -- the two witnesses that are not listed as rebuttal are fact witnesses who literally witnessed disputed facts.

COMMISSIONER NUNN: So there is no stipulation to the facts?

MS. KAUFMAN: Should we have --

COMMISSIONER NUNN: I'm sorry. Are you saying there is no stipulation as to the facts?

MS. KAUFMAN: No. There is a dispute as to the facts, ma'am.

COMMISSIONER NUNN: All right. Commissioner Booker?

COMMISSIONER BOOKER: Okay. So -- okay. So the stip- --

MS. KAUFMAN: If I may respond, we have Mr. Broadus and Dr. Miller both on standby. Dr. Miller is in the main session and doctor -- Mr. Broadus can be called by phone and requested to join.

As for the three rebuttal witnesses, I understand they are on the list, one of them was on bereavement leave during the time period at issue, and

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

the other two did not directly witness any interactions between any of the parties or any of the other witnesses. So I doubt they will be necessary as rebuttal.

MS. FRIERDICH: That's testifying on their behalf, so I would object to that.

Ms. Cunningham was also on leave, that's my understanding, so if that's the -- if that's the test. Look, we may not need the rebuttal witnesses. We can cross that bridge when we come to it. I just -- I don't think we should be putting words in witnesses' mouths.

COMMISSIONER BOOKER: So the relevance of the -- okay. So let's see. So you're interested in bringing -- so we start with -- can we choose which witnesses to bring forth first?

MR. GOLDKAMP: What you would do is call the County to present their witnesses, and then it is the same for the claimant, is you would call the claimant to put on their testimony and then they can use whatever order they would like.

COMMISSIONER BOOKER: So it's the County first and then the -- okay.

MR. GOLDKAMP: Correct.

COMMISSIONER BOOKER: Okay. Okay. Well, the --

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

okay. So can the County proceed?

MS. KAUFMAN: Yes, Commissioner.

MS. FRIERDICH: Can we just back up and get a ruling on acceptance of our pre-hearing brief and proposed findings of fact, conclusions of law, and order, that they will be accepted by the Commission?

COMMISSIONER BOOKER: I'm sorry, Noah and Katherine were talking at the same time.

MS. FRIERDICH: I apologize. So I think there are a couple of things still outstanding. We also ask that the Commission investigate this matter and collect relevant non-privileged records. Did the Commission do that, and is there anything to offer to Mr. Wyatt at this point? As I mentioned, we have received nothing from the County.

COMMISSIONER BOOKER: So they do not have the same things we have?

MS. KAUFMAN: So if Ms. Frierdich is referring to a proposed findings of fact and conclusions of law, it's generally our practice to submit that after the hearing so that we can cite to portions of the trial transcript that represent the facts that were brought out at the hearing.

MS. FRIERDICH: That's not what I was referring to. Thank you, though. I was referring to the motion

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

for compelled testimony and records, full investigation, enclosed Rule 22 hearing.

We requested that the Commission investigate and collect all non-privileged relevant records and supply them to Mr. Wyatt in fairness. We did not receive anything from the County or the Commission. I'm just wondering did the Commission investigate and collect any records such that they should be presented to Mr. Wyatt in response for our motion?

COMMISSIONER BOOKER: Okay. So what is my -- what do I do here?

MR. GOLDKAMP: So the County -- the Commission did not. So it isn't really my place to say that, but that is the -- the answer.

MS. FRIERDICH: Okay. And then we did file a pre-hearing brief and proposed findings of fact and conclusions of law. We'd ask that those be accepted by the Commission at this point.

I understand Ms. Kaufman, you know, may intend to file something of the same nature after the fact. We would reserve the right to file an amended, but we filed proposed at this point.

And to clarify, it's not adversarial to do that. It's really, Mr. Wyatt wanted to, you know,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

really help to educate the Commission on what the issues are prior to the Commissioners coming in cold, essentially, on this matter, so. They are only proposed findings of fact and conclusions of law in a pre-hearing brief from Mr. Wyatt.

COMMISSIONER NUNN: Commissioner Booker, we can have everyone to submit findings of fact and conclusions of law at the end of the hearing, and that is my suggestion that we would do so at this time.

COMMISSIONER BOOKER: I concur. So moved.

COMMISSIONER NUNN: Thank you.

MS. FRIERDICH: So will the Commission accept our pre-hearing brief, which is separate?

COMMISSIONER BOOKER: I submit that we will -- we will accept -- accept your pre-hearing brief.

COMMISSIONER NUNN: After hearing or at this time, is what you are asking?

COMMISSIONER BOOKER: After the hearing.

COMMISSIONER NUNN: Okay.

MS. FRIERDICH: It's my understanding, Mr. Goldkamp, that the documents that we filed have been distributed to the commissioners?

COMMISSIONER BOOKER: Yes.

MS. FRIERDICH: Okay.

COMMISSIONER BOOKER: Yes, we have all of that,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

all of those materials.

MS. FRIERDICH: I'm just trying to catch up here. Thank you.

COMMISSIONER BOOKER: Okay. So then the County, call their witnesses.

MS. KAUFMAN: Yes. Before we proceed, we would like to take judicial notice of a couple of the ordinances and the charter provision that gives us authority to do what we're doing today. That would be judicial notice of St. Louis County Charter Article VII, Section 7.020; St. Louis County Ordinance 15,154; St. Louis County Revised Ordinances Section 202.100; and I believe the three civil service rules that have been mentioned in anybody's pleadings thus far are Rule 19, Rule 21, and Rule 22.

MS. FRIERDICH: I would add to that Rule 20. Otherwise, I have no objection.

MR. GOLDKAMP: Can we have a motion to take judicial notice of those ordinances and rules of the County?

COMMISSIONER BOOKER: I will make that motion.

COMMISSIONER HOFFSTEN: I'll second.

COMMISSIONER NUNN: Second.

COMMISSIONER HOFFSTEN: All those in favor?

COMMISSIONER BOOKER: Aye.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

COMMISSIONER NUNN: Aye.
COMMISSIONER HOFFSTEN: Aye.
All of the preliminary issues have been resolved, so -- and that is what is on the record for all of the motions and all of the exhibits and findings of fact.
So, Commissioner Booker, are we --
COMMISSIONER BOOKER: Yes.
COMMISSIONER NUNN: -- as we're accepting all of those, and as they're resolving, may we have the County call its first witness?
MS. FRIERDICH: May I ask, is there a portion of this hearing at which there are either opening or closing argument opportunities, or do we need to request those?
COMMISSIONER BOOKER: I see nothing in here that -- I don't see anything that -- that calls for that. I don't see anything that calls for that. But it doesn't -- there's nothing that prohibits it -- prohibits it either.
MR. GOLDKAMP: No, there's nothing that prohibits it. Is that an official request, Ms. Frierdich, for the Commission to consider?
MS. FRIERDICH: Yes. Thank you.
COMMISSIONER BOOKER: Do you all see a problem

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

with that, Commissioners?

COMMISSIONER HOFFSTEN: I don't see a problem with it as long as we keep the hearing moving along.

COMMISSIONER BOOKER: One minute -- do they a minute or how long?

COMMISSIONER NUNN: Yeah, if -- do you have a chance to share the screen, is that my understanding?

COMMISSIONER BOOKER: No. She wants to have an opening statement and a closing statement?

COMMISSIONER NUNN: Okay. I misunderstood. That's fine.

COMMISSIONER BOOKER: With a limit of how long? What is reasonable?

MS. FRIERDICH: I need five minutes.

COMMISSIONER BOOKER: Three minutes?

MS. FRIERDICH: Five. It might be three. I do talk fast, so.

COMMISSIONER BOOKER: I think three is reasonable. I am working.

COMMISSIONER HOFFSTEN: Yeah, I think that three is reasonable.

COMMISSIONER BOOKER: I move to allow them to have -- they each have three-minute opening statements and closing statements?

COMMISSIONER NUNN: Second.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

COMMISSIONER BOOKER: All of those in favor?
COMMISSIONER HOFFSTEN: Aye.
COMMISSIONER NUNN: Aye.
COMMISSIONER BOOKER: Okay. Would the County like to have an opening statement?
MS. KAUFMAN: Sure.
COMMISSIONER BOOKER: Okay.
MS. KAUFMAN: Thank you.

OPENING STATEMENT ON BEHALF OF THE RESPONDENT

MS. KAUFMAN: Good afternoon, Commissioners, and it is indeed now afternoon. Thank you for your time. Today you will hear that on February 5th, 2026, Duane Pete Wyatt resigned. You'll hear how much that shocked his supervisor, Derrick Melton, and that it was all the more striking because of just how Mr. Wyatt resigned. At the end of a minute-long phone call in which he repeatedly cursed Mr. Melton, he said, and I quote, "I fucking quit," and he said it more than once. And then he hung up the phone. But Mr. Melton had heard enough to conclude that Mr. Wyatt meant precisely what he said.

You'll hear how he called Dr. Cunningham, his appointing authority, and told her what happened right then and there the minute Mr. Wyatt got off the phone. And after that conversation, Dr. Cunningham

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

had also heard enough to reasonably believe Mr. Wyatt had resigned.

And while our civil service rules provide that a resignation in good standing must be in writing and requires 14 days' notice, Mr. Wyatt is not the first DPH employee to make a verbal resignation. In this instance, Dr. Cunningham accepted.

What you will not hear is that Mr. Wyatt ever attempted to rescind that resignation from the moment it occurred until the moment Dr. Cunningham's executive assistant communicated her acceptance. Mr. Wyatt will tell you that he never said it at all. But at the close of this hearing, I anticipate you too will have heard enough to draw your conclusion regarding the propriety of Mr. Wyatt's resignation under our civil service rules.

That's all I've got to start with.

COMMISSIONER BOOKER: Call your first witness.

MS. KAUFMAN: Yes, thank you. We'd like to call Derrick Melton.

MS. GOEN: Give me just a little bit of time to coordinate.

MS. KAUFMAN: Okay. Thank you.

(WHEREUPON, Derrick Melton entered the proceedings.)

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

MS. GOEN: Okay. I believe he has arrived.

COMMISSIONER BOOKER: Okay. Would you like to begin?

MS. KAUFMAN: Yes. Can you hear us, Derrick?

MR. MELTON: Yes. I'll start my video.

MS. KAUFMAN: Yeah, I don't think we can see you yet.

MR. MELTON: Okay. I'll --

MS. KAUFMAN: Oh, yeah.

DERRICK MELTON,

called as a witness herein, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. KAUFMAN:

Q. Derrick, could you state your full name for the record?

A. Yes. Derrick Melton.

Q. And for our court reporter's benefit, could you spell that out?

A. Yes. D-e-r-r-i-c-k for Derrick, Melton, M-e-l-t-o-n.

Q. Okay. And, Derrick, what is your position with the County?

A. Chief executive officer.

Q. And what branch of DPH is that position

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

associated with?
A. The clinical umbrella. I manage the Federally Qualified Health Center.
Q. To whom do you report?
A. Dr. Cunningham.
Q. Okay. And as of February 5th, 2026, did you have any direct reports to you?
A. Yes.
Q. Who were they?
A. Five people. Sharon Foote, Eugenia Pike, Dr. Patrick Miller, Michael Ladevich, and Pete Wyatt.
Q. And what was Mr. Wyatt's position?
A. Chief operating officer.
Q. Could you tell the Commission a little bit about the job duties associated with that position?
A. Sure. He -- Mr. Wyatt managed all of the operations. The majority included our financial grants. A lot of times he would also focus on the nonclinical care as well as the clinical piece as well.
And what I mean by that is indirectly, he supervises the nurses, the registration staff members, and a few more other members on our team as well. So he was over the entire clinical operational enterprise, in summary.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. And as of February 5th, were you generally satisfied with his performance?
A. Absolutely.
Q. Okay. Were you having any -- any difficulties whatsoever with the position?
A. No.
Q. What were the steps, if any, you took with Mr. Melton -- sorry, Mr. Wyatt to check in about his job performance?
A. We would often have meetings, standing meetings, at least once a week, standing meetings for sure. Sometimes we would meet, you know, quite more frequently than that, but we definitely had standing meetings once a week.
Mr. Wyatt, from my understanding, he come from a background of not-for-profit care. He didn't have a lot of experience in FQHC clinical work, so we spent a lot of time prioritizing his daily task and obviously his weekly task to get him caught up to speed for the FQHC Look-Alike program.
Q. Okay. And were you pursuing -- as of February 5th, were you pursuing any discipline against Mr. Wyatt?
A. No.
Q. Were you pursuing Mr. Wyatt's termination?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. No.
Q. Were you investigating any alleged conduct of Mr. Wyatt's?
A. No, not that I can remember, no.
Q. Okay. So in the course of this workplace relationship, have the two of you had some disagreements?
A. Yeah, we've had a few disagreements.
Q. Okay. In any of these disagreements, has Mr. Wyatt ever cursed at you?
A. No.
Q. So I'm going to take you to February 5th.
A. Um-hum.
Q. Can you tell me about your interactions with Mr. Wyatt, if you had any, on that day?
A. Yes. So I called Mr. Wyatt roughly around four times on his cell phone to get some information from him. I also texted him a few times. And it's my understanding he was busy or he was preoccupied with something else.
And he finally called me back, and I asked him, did he get my phone calls, did he get my text messages; and he said yes. The information that I needed from him at that time was related to how many positions reported to him. That was the question at

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

hand. And he responded something back to the nature of a number that he thought, and I needed him to be more accurate. And I asked him that question, and he -- that's when things essentially went south.

Q. Okay. So how many -- you said you called Mr. Wyatt about four times.

A. Um-hum.

Q. In what space of time?

A. I would probably say anywhere between 9:00 and 9:30-ish.

Q. Okay. And at what point did he call you back?

A. It was probably about 30 to 45 minutes or so after.

Q. So 9:30?

A. Yeah, roughly, ish, yes, that's fair to say.

Q. Okay. And when you picked up the phone, can you describe for me Mr. Wyatt's demeanor?

A. It was very vague. I asked him did he get my text, and he said yes, he was in a meeting. And he -- and I said, I also got your text, but I needed more detailed information of the -- of the question that I asked you.

And his demeanor at that time got very

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

rogue. He began to, you know, say curse words and ask me questions as it relates to the -- to the statement or the questions that I was asking him.

Q. Okay. And I know we have our -- our politenesses, but can you recall which words he used?

A. Yeah, I was trying to be a little vague there, and, again, I apologize up front for the audience. But I particularly asked Mr. Wyatt, did he get my text or did he get my call?

And he said yes.

And, again, as to rehash, I asked him, I need him to be more specific.

And he verbatim said, Derrick, what do you want me to do, I'm fucking driving.

And I said, Excuse me?

He said, I'm fucking driving.

And I repeatedly asked Mr. Wyatt who was he talking to, and he responded, I'm fucking talking to you.

And that's when I went into the situation of asking him, you know, basically what was going on, out of everything that I've done for him in terms of his role and his career was he going to talk to me like that.

He said, Absolutely, I'm fucking talking

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

to you. And he said, You know what, I just fucking quit.

And I said, So you quit? You're not returning?

He said, Yes, I fucking quit.

Q. Okay. And that statement happened twice that you recall?

A. At least twice.

Q. Okay. And how did the conversation end?

A. It was basically very short after that. After he said he fucking quit, I said, Well, if you quit, then I accept your resignation.

And we hung up.

Q. All right. Now, can you tell me anything else about Mr. Wyatt's tone of voice or demeanor such as you recall?

A. Yes, his demeanor was very, I would say, he was loud. I could tell he was very aggressive or what would come off to be aggressive to me. I heard him beating, what seems to be beating on the steering wheel as he would say he fucking quit. He was screaming erratically, not any words to me at that particular time, but just yelling as if, you know, he was irritated at something or, I would imagine, the situation that was happening.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. Yeah, and I understand you are describing what you heard as opposed to saw.

Okay. Is there any chance you misheard?

A. No. In fact, I asked him more than once who was he talking to. I did give him the benefit of the doubt that maybe he was talking to someone else in the background or per se, but he -- he doubled-down, that I'm fucking talking to you.

Q. Okay. What did you do after the phone call?

A. I merely called Dr. Cunningham.

Q. And what did you communicate to Dr. Cunningham?

A. That we just had a verbal resignation and Mr. Wyatt -- she asked me, What happened. At that particular time, I told her it was a very heated conversation. I gave her very minor but major details, and she was saying, that's very unfortunate. And she accepted it.

Q. Okay. Did you have any more contact with Mr. Wyatt on that same day, February 5th?

A. Actually, I did.

Q. Okay. And what was that? Was that phone again or in person, or how did that happen?

A. Yeah, it was in person. He came to my

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

office. And as soon as he came in, I essentially asked him something similar to the nature of, Why are you here. You said what you said, and I accepted your resignation.

And he repeated and said, You're not going to do this to me, per se.

And I asked him what he said.

Well, you know what's going on with me and my family.

I said, Well, Mr. Wyatt -- at that particular time it was probably "Pete." I said, Well, Pete, you quit.

And he said, You're not going to do this to me.

I said, Well, Pete, you did it to yourself. You resigned.

And I asked him to leave my office, and he did.

Q. Okay. And about what time was this?

A. I would probably say about 45 minutes after we initially hung up from the first conversation, so 9:30 plus another 30, 45 minutes on top of that. So roughly 10:15-ish or so.

Q. Okay. And during the course of that conversation, did Mr. Wyatt deny having resigned?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. No.
Q. Did he ask you what you were talking about?
A. No.
Q. Did he ask you any questions at all?
A. No, not really.
Q. And when he left the office, was it still your belief that he had resigned?
A. Absolutely.
Q. Did you speak to Mr. Wyatt any more about this, either on February 5th or after?
A. No.
Q. Did you speak to Dr. Cunningham again about it?
A. Yes.
Q. Okay. And what was the purpose of that conversation?
A. Just to rehash what happened. I also asked her did I need to do anything else from a resignation standpoint, and she told me that obviously she wanted me to make documentation and she would take it from there.
Q. Okay. Had Mr. Wyatt ever cursed at you before?
A. No.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. To your knowledge, had he ever wanted -- mentioned wanting to quit before?
A. No.
Q. Joked about quitting?
A. Nope.
Q. Did you have any reason to believe he didn't mean what he said?
A. No. He was very, very honest and very open. It was very clear. And even, in fact, I asked him multiple times, A, who was he talking to, what's going on. I mean, he -- he repeated himself several different times in that manner.
Q. Okay. I don't have any further questions for you at the moment, Mr. Melton.
A. All right. Thank you.

CROSS-EXAMINATION

BY MS. FRIERDICH:
Q. Okay. Hi, Mr. Melton. My name is Katherine Frierdich, and I represent Pete, Mr. Wyatt, in this appeal. I do have a few questions for you.
A. Okay.
Q. You -- would it surprise you that Mr. Wyatt was told by someone at the County that he supposedly resigned while talking to you in person in your office versus how you described it happening?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. Yes. That would be a surprise to me.

Q. Okay. So when you were calling Mr. Wyatt, 9:03 is when it started, he was in a meeting and he told you that he had been in a meeting. You texted him and asked him that -- how many direct reports did he have, is that correct?

A. No, that's not correct.

Q. What did you text him?

A. It was more so when you said he told me that he was in a meeting. He did not tell me when he was in a meeting.

Q. So you did not ask him over text how many direct reports does he have?

A. I did.

Q. You did ask him, okay. And that was the question that you had, is that correct?

A. That is correct, yes. I'm sorry.

Q. Okay. And Mr. Wyatt told you, I'm in the middle of a meeting wrapping up, is that correct, by text?

A. I don't remember.

Q. And then by text, he said six direct reports --

A. Yes.

Q. -- but that he would like to confirm to be

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

certain?
A. Yes.
Q. Okay. And that was your question, that was your only question to him, "How many direct reports you have?"
A. Yes.
Q. Okay. And you have access to the org chart, don't you? You knew he was in a meeting. You do, it was hanging on your assistant's wall, hanging on Mr. Wyatt's wall. It was available on your -- on your internet. You could have called HR, right?
A. Is that a question?
Q. Yes. There were those places that you could have confirmed how many direct reports Mr. Wyatt had?
A. Possibly.
Q. Possibly?
A. Um-hum.
Q. Do you know whether or not you could look up his organizational chart in some way online?
A. Yes. Mr. Wyatt is the chief operating officer. He has the option to -- in certain situations to change his org chart as he sees fit.
Q. Okay. So you say that he quit verbally on the phone?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. Yes.
Q. And then came to the office and visited your office?
A. Yes.
Q. You had a conversation. Did that conversation -- was that conversation loud and curse-ridden?
A. No, I don't think any curse words were exchanged during that time.
Q. How long did that conversation last?
A. If I had to put a time limit on it, I would say approximately two minutes.
Q. Okay. And you say on the phone, just backing up to when Mr. Wyatt was in the car, you said, So you're not returning?
A. I didn't -- I don't recall saying that.
Q. Okay. I believe you just testified that you asked him, So you're not returning? And then you said, If you quit, I accept your resignation.
That's not your testimony?
A. I asked Mr. Wyatt did he resign and he said yes.
Q. Okay. You mentioned that you immediately called Dr. Cunningham after that phone call, correct?
A. Correct.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. Okay. And you asked her in that -- in that conversation or in later conversation what documentation needed to happen?

A. When I called Dr. Cunningham, I asked Dr. Cunningham -- well, I told her obviously what just happened, and I basically asked her what were next steps.

Q. And what did she say the next steps were?

A. She told me in that particular time that she would get back with me, and she did and that's when we later said that I would definitely need to document it; obviously I had already done so, but send it to her.

Q. Okay. When -- did you ask Mr. Wyatt to put his resignation in writing?

A. No.

Q. Are you familiar with the civil service rule relating to resignations?

A. Yes.

Q. Did you review those at the same contemporaneous time as what we're talking about?

A. No. Mr. Wyatt verbally said that he quit. I didn't have any -- in my mind he wasn't coming back.

Q. I see. Are you aware that Mr. Wyatt worked the rest of that day, came to the office, I

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

believe it was 9:50. Would that sound about right when he came to the office?
A. Ish, yeah.
Q. In the morning?
A. (Nodding head.)
Q. Did you know that Mr. Wyatt was continuing to work the remainder of that day?
A. I did not know.
Q. You did not see him?
A. I saw him. I didn't know what he was doing.
Q. And you didn't stop him and say, Why are you here, you quit?
Did you ever do that?
A. Yes, when he came to my office.
Q. What about when you saw him later?
A. I don't recall seeing him too much later the rest of the day.
Q. When did you see him?
A. When he came to my office.
Q. After he --
A. He said he quit.
Q. After he left your office, you indicated that you saw him at the office, he was there all day? Is that correct?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. I can't confirm if he was or not.

Q. When is the next time you saw him after he left your office?

A. I don't remember.

Q. You remember seeing him though at the office?

A. Absolutely. I remember him coming to my office, and he stated my testimony earlier and that was it. Any other recollections or conversations or was he in the office or was he in the building, I can't speak to that.

Q. Okay. You're aware that Mr. Wyatt worked on February 6th, which is the next day, correct?

A. I was not aware.

Q. You saw him on February 6th, correct?

A. I saw him in the parking lot, correct.

Q. And Mr. Wyatt tried to get your attention, correct?

A. I saw him in the parking lot. I don't know if he signaled and tried to get my attention or not, but I did see him in the parking lot.

Q. Okay. Did you say to him, What are you doing here, you quit?

A. No.

Q. Have you ever used the F-word in

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

conversations in the office before?
A. In the office, I don't remember.
Q. Have you ever used it in connection with any conversation with anyone who works for the County?
A. I don't remember.
Q. Did you -- Mr. Wyatt's office is across the hall from yours, right?
A. Correct.
Q. So would you say that Mr. Wyatt's office remained the same during the rest of the day of the 5th? It remained untouched?
A. Yeah, probably untouched.
Q. Did you see his office on the 6th?
A. Yes.
Q. Was it in the same condition?
A. I had no reason to go to his office.
Q. Was Mr. Wyatt's personal effects in his office on the 5th when you saw it?
A. I'm not sure. I didn't go in his office. I did not enter inside of his office those days.
Q. Did you receive any emails or text messages after the point that you say that you accepted his resignation from Mr. Wyatt?
A. Yes, I did.
Q. Can you describe them?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. I'll have to pull them up.
Q. Pull both emails and text messages?
A. Text message. He asked me -- he asked me something to the nature of, If you need me to help on an assignment.
But if you need accuracy in that statement, I'm happy to provide it.
Q. And that was on the morning of the 6th, correct, the day after you say he quit?
A. I don't remember. I don't have them in front of me right now.
Q. Okay. So more than one text is what you recall?
A. I don't have that in front of me right now.
Q. Okay. Well, when you received those text messages from Mr. Wyatt, did you respond, Why are you texting me about work when you quit?
A. I did not.
Q. Okay. Did you see that Mr. Wyatt's email account was disabled after he quit and you accepted his resignation?
A. Did I ever see that his email account was disabled?
Q. He reported to you, correct?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. Correct.
Q. So if he quit in a curse-laden rage where he is pounding on the steering wheel and screaming at you, did you call HR?
A. I talked to Dr. Cunningham, which is the appointed authority.
Q. Did you call HR about his email account, phone, ability to continue County business?
A. I did not. I talked to Dr. Cunningham about the next steps, and those would have been the things that I assumed that she had taken when I talked to her about next steps.
Q. Your assistant is Gina, what is her last name?
A. Pike.
Q. Pike. Thank you. Eugenia, right?
A. Yes.
Q. She goes by Gina, correct?
A. Yes.
Q. Okay. Did Gina tell you that she spoke with Mr. Wyatt after he spoke with you on the 5th in the car?
A. I don't remember.
Q. There is a -- I'm missing the last name, I'm not as familiar with the people in your office.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

There's someone with the last name Miller, correct?

A. Patrick Miller, maybe.

Q. Did -- did Mr. Miller indicate that he spoke with Mr. Wyatt after you spoke with him on the phone on the way into the office on that morning?

A. I had no conversation with Dr. Miller. If you are referring to Dr. Miller, I had no conversations with him.

Q. Did anyone indicate to you that they had spoken with Mr. Wyatt after the yelling, cursing, beating the steering wheel conversation happened with you when he was on the way to the office?

A. I don't remember.

Q. Okay. You never received anything in writing from Mr. Wyatt indicating that he had resigned his position, is that correct?

A. No -- correct, I'm sorry, I did not receive anything from Mr. Wyatt.

Q. And you're aware, because I believe you were copied on several emails, in which he denied that he ever resigned, is that correct?

A. I was copied on one email.

Q. Were you asked to sign a -- an affidavit after -- at some point after the phone call on the 5th?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. No.

Q. Were you interviewed by anyone other than counsel and the two conversations that you mentioned with Ms. Cunningham regarding this incident that you have testified to today?

A. No.

Q. Was there any, to your knowledge, any investigation performed regarding the conversation that you have relayed to the Commission today?

A. Can you explain "investigation"?

Q. Yes. Did anyone investigate whether or not Mr. Wyatt resigned?

A. Counsel did. Counsel asked me to give all communication --

Q. I'm not asking about your conversations with counsel. Anything outside of conversations with counsel. Those are privileged. I'm not asking you to tell me anything about that.

Did anyone else to your knowledge other than counsel --

A. Not to my knowledge.

Q. And -- but you said that you were really shocked that this high performer, Mr. Wyatt, resigned so suddenly on the morning of February 5th, correct?

A. It was odd.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. Did -- did you think that that required a further conversation, investigation, written confirmation from Mr. Wyatt?

A. After me asking him several times on the phone, as I remember, who was he talking to, was he okay, and he doubled-down and he continued to say the things that he said, I didn't think so.

Q. Were there any witnesses to the conversation that you've testified to?

A. Not on my end.

Q. You conduct business on your personal cell phone through the County, correct, text messages, phone calls, emails, any of those?

A. I don't know.

Q. You don't know?

A. I mean, I don't know. What do you mean by do I conduct business?

Q. Do you use your personal cell phone to text about County business?

A. I don't know. Maybe, maybe not. I don't -- I can't answer that question.

Q. You testified that you documented everything and you sent it to Dr. Cunningham, is that correct?

A. Yes.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. Who else?
A. Well, I take -- give me one second, please.
Q. Okay.
A. I sent -- I actually sent the information to Sharon Gardner.
Q. Not Dr. Cunningham?
A. I sent the -- I sent my statement to Dr. Cunningham of what happened, that is correct.
Q. And so what did you send to Sharon?
A. Conversations that -- I mean, I'm sorry, screenshots that a conversation actually happened.
Q. What screenshots?
A. What do you mean what -- oh, what screenshots I sent or what screenshots in general?
Q. What screenshots did you send to Sharon?
A. I sent her, as I remember, phone calls, phone call logs for sure.
Q. Did you send anyone else your statement or screenshots or any other information regarding the conversation that you allege happened?
A. Outside of the -- outside of counsel, I don't remember, no.
Q. Okay. You said that you had no problems with Mr. Wyatt's work, correct?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. No.

Q. Did you ever review him?

A. We met every Friday -- well, we had a standing meeting every Friday. Sometimes they were earlier in the week, sometimes they were later in the week, but that was my time to review all of his standard work.

Q. What projects did Dr. Wyatt -- or Mr. Wyatt have in flight at the time of this supposed conversation?

A. I know we were really working in honest -- in earnest, I'm sorry, about physicians and their operational schedules. There were staffing patterns that we were particularly working on in terms of nursing, how many employees and how many care team members did we have per site; and we were also gearing up to work for -- work towards our OSV, which is short for on-site visit.

Q. Okay.

A. And there -- there may be more, but I would have to review the list.

Q. You published Mr. Wyatt's role as a job description to be filled, correct?

A. Correct.

MS. FRIERDICH: So at this time because we asked

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 130 of 1127 PageID #: 133

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

for documentation and it sounds like the statement by Mr. Melton and the screenshots were not produced to us, we ask for those to be produced at this time.

And that's all I have for you, Mr. Melton.

THE WITNESS: Thank you.

MS. FRIERDICH: Ms. Kaufman might have some redirect, but thank you for your time. Appreciate it.

THE WITNESS: Absolutely.

REDIRECT EXAMINATION

BY MS. KAUFMAN:

Q. Thank you. I'll be real quick with you, Derrick. I promise.

A. Sure. Take your time.

Q. So -- well, I don't want to take everybody else's either.

A. That's fair.

Q. So you were asked a moment ago whether you contacted HR or made arrangements to have Mr. Wyatt's badge taken or his email account shut off.

A. Um-hum.

Q. Would that be your normal practice for an employee who resigns?

A. Yes. What do you -- well, let me go back. Would it be the normal practice for me to contact them?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. Yes. Are you the one who has to do it normally?
A. No. Dr. Cunningham.
Q. Okay. And what about making the formal acceptance of a resignation, is that normally something you do unilaterally or something Dr. Cunningham does?
A. No, I don't do it unilaterally. That's something Dr. Cunningham does as the appointed authority.
Q. So did you feel you had anything left to do --
A. No.
Q. -- after contacting her and hearing, I'll take it from here?
A. Absolutely, I feel like there was -- that was my point in asking her. I agree with you, I didn't feel like I had anything else to do.
Q. Okay. And just to clarify, you met with Pete once when he returned to the office on February 5th, is that correct?
A. That's correct.
Q. Did you have any further interaction with him on February 5th or February 6th?
A. No.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. Other than seeing him in the parking lot?
A. That is correct.
Q. Okay. Thank you.

RECROSS-EXAMINATION

BY MS. FRIERDICH:
Q. I just have a couple of questions. You're able to see Mr. Wyatt's schedule, are you not, his calendar?
A. Able to see it, yes, if I requested it. I don't have -- I never had access to his schedule. In fact, I did go to his admin assistant to look at his schedule. And there were -- at the time that I looked at it, along with Ms. Eugenia Pike, there was nothing on his schedule for that morning.
Q. And you're talking about the meeting that he was at on February 5th, the morning of February 5th?
A. Correct, the morning of February 5th. And he never told me he was at a meeting. He told me per se, I was at the podium.
So whatever that means. Maybe that's a meeting to him, but those were the words he gave me, "I was on the podium."
Q. Okay. When you saw Mr. Wyatt in the office on the 5th, did you inquire about what his

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

schedule looked like, if he was having any meetings, conducting County business after he supposedly quit?

A. He stated he was on the podium, and he mentioned, as I recall, he was doing something for me. I didn't really engage in that because at the time it really wasn't about where he was or what -- where he wasn't per se. It was more so about getting me the information, but furthermore, it was about how he conducted himself, telling me he fucking quit.

Q. Right. I'm actually referring to later on after -- after your conversation in your office --

A. Um-hum.

Q. -- when you were aware he was in the office after he supposedly quit. And he quit in a what you're describing to be a curse-laden shouting, beating the steering wheel situation, but it didn't concern you to check his schedule, see what he's up to, why he's in the office after he quit?

A. It was my understanding given the hostility of the conversation, I was under the assumption that, you know -- I'm not going to -- I'm definitely not going to say I was fearful or anything, but given the hostility of the conversation, it was in my best interest to stay away from Mr. Wyatt.

And to be quite honest, when I saw him

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

come in, I actually thought he was gathering his stuff, in which that was his right.

Q. I think you said you saw him later on in the day, you knew he was there later on in the day?

A. Well, we're referring back to when you asked me the question the first time.

Q. Okay.

A. Yeah.

MS. FRIERDICH: That's all I have.

THE WITNESS: Okay. Thank you.

MS. FRIERDICH: Thank you, I appreciate it.

MS. KAUFMAN: Nothing further.

THE WITNESS: Okey-doke.

MS. GOEN: Okay, Derrick, I am working to remove you. Give me one moment.

(WHEREUPON, Derrick Melton left the proceedings.)

COMMISSIONER BOOKER: Does the County have any other witnesses?

MS. KAUFMAN: Yes. We'd like to call Eugenia Pike next. And -- yeah, I think she is listed as DPH WebEx Event 1.

MS. GOEN: Thank you.

Okay. So it sounds like in open session we have two users with the DPH WebEx 1, both names, so

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

we are adding one. We'll have to confirm whether or not it is Ms. Pike or not.

MS. KAUFMAN: Okay.

(WHEREUPON, Eugenia Pike entered the proceedings.)

MS. GOEN: Okay. So we were looking to add Eugenia Pike. I do see that we have a DPH account in here. You are currently on mute, but could you confirm whether or not we have got the right person?

MS. PIKE: Yes, this is Eugenia.

MS. GOEN: Perfect. Thank you.

MS. KAUFMAN: Ms. Pike, I know you're not feeling tip top, and I appreciate you being here. Are you able to turn your calendar on?

MS. PIKE: I have not been able to turn it on. I'm not sure why. It is not even giving me the option of a video. Let me try it again.

(Discussion off the record.)

MR. GOLDKAMP: If you could swear Ms. Pike in, that is the usual procedure.

(WHEREUPON, the witness was duly sworn.)

EUGENIA PIKE,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

DIRECT EXAMINATION

BY MS. KAUFMAN:

Q. Thank you. Could you state your name for the record?

A. Eugenia Pike.

Q. And for our court reporter, could you spell it?

A. Sure. E as in Edward, U, G as in girl, E as in Edward, N as in Nancy, I, A as in apple.

Pike, P as in Paul, I as in Igloo, K as in kite, E as in echo.

Q. Okay. And if you need at some point to take a break today, please let us know, okay?

A. Thank you.

Q. What is your position title?

A. Office supervisor for the FQHC Look-Alike.

Q. And how long have you worked in that position?

A. A year and -- about a year and four months, I do believe.

Q. And what does that job involve?

A. What does it involve?

Q. Yes.

A. My daily work usually consists of just supervising at the executive level of the FQHC, so I

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

work closely with the senior leadership for the FQHC.

Q. Okay. And would that include both Mr. Melton and Mr. Wyatt?

A. Yes, uh-huh.

Q. Okay. Now, if you had any, can you recall your interactions with either or both of those people on February 5th?

A. Yes, I had interactions that day with both. Do you want me to -- where do you want me to start?

Q. Let's start at the beginning. When did you first see Mr. Melton that day?

A. As soon as he came in, I guess there was some urgency, so he -- he hadn't even taken his coat off. He was just asking if Pete was there, and we indicated that he wasn't -- we hadn't seen him. So Kathy and I were together, so he asked us to go search for Pete, try to contact him.

Q. Okay. And can you describe Mr. Melton's demeanor for me?

A. It was normal. He -- he just -- just needed to talk to Pete. He wasn't, like, rushing or anything like that. He was -- he was just his normal self.

Q. Did you get the sense that he was angry?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. No, no, he wasn't angry, no, not at all. Even during all of the time that we were looking for Pete, he and I are kind of joking about things, about Pete and, you know, like, you know, Pete's out doing other things a lot of times. And we always cracked jokes about it with him, so we were just laughing about some of those things.

Q. Okay. And just to clarify, did you personally witness any conversation between the two of them that morning?

A. No.

Q. Okay. Did you hear from Mr. Wyatt later that morning?

A. Yes. I -- we -- when we tried to contact him, I -- Kathy and Derrick, we -- well, we actually went to look and see if he had, like, a meeting on his calendar or something like that, you know, to where he couldn't be disturbed.

So Kathy showed us his calendar, and since there was nothing scheduled at that time, we -- I called him. He didn't answer. So I -- I sent him a text message just letting him know that Derrick needed to speak with him.

Q. Okay. Did Mr. Wyatt ever call you back?

A. He -- he did call. He did call maybe like

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

five minutes later or something like that.

Q. Okay. Do you recall what he said?

A. Yeah, he was a little upset. He asked what the hell was wrong with Derrick, and he asked if I knew what Derrick was looking for or why he was looking for him. And I told him I didn't know, and I didn't want to actually -- I didn't want to talk about it, so I just kind of left it at that.

Q. Okay. Did you see Mr. Wyatt in person that day?

A. I saw him when he came in. He -- he stopped at my desk for a minute. He was just trying to show me that he did have something scheduled on his calendar. I informed him that that's not what was -- you know, that's not what we saw, and I just -- I just kind of left it at that. I talked to him to let him know that, you know, we -- we, you know, weren't trying to pry, you know, his privacy or whatever. It's just that Derrick needed to speak with him.

We did check the calendar. Like, if you were in a meeting, you know, we were not going to interrupt you or anything like that, but your calendar showed you were free, so that's why, you know, you got phone calls from both of us.

Q. Okay. Did you have any more conversations

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

with him that day?

A. Yeah. So I work closely with him, so working on different things throughout the day, all day until time to go home at 4:30. He talked to me throughout the day about, you know, just different work products and stuff like that.

Q. Did he mention Mr. Melton again?

A. Yes, he -- he kept saying he needed to apologize to Derrick and that he wanted to talk to him face-to-face. Again, I didn't dwell on -- I didn't want any information about it. I did not know what happened, and I -- I was just kind of staying out of it. I didn't -- I just said if you need to talk to him, go ahead. You know, their offices are across from each other. So I just kind of kept my distance from it. I didn't know until the next day that -- what -- what actually happened. I was not aware.

Q. Okay. So I do have to ask, at any point during your working relationship with Mr. Wyatt, had you witnessed him becoming upset or angry?

A. Yeah, I have. I have.

Q. Did that ever involve foul language?

A. Yes.

Q. Is there any incident in specific that you can tell me about?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. Well, when, let's see, that was in maybe January of '25. I think that might have been the first time I saw him actually get angry. He -- we were in the middle of prep for the -- our HRSA -- the HRSA site visit. To actually gain the FQHC designation, the federal government comes on site and does a site visit to check and see if you're compliant with all of their guidelines in order to become a Look-Alike site.

Q. Okay.

A. So -- so part of that site visit, they require us to actually upload documents and things, and so we had received an email stating that the things that we submitted were not right, incorrect. And so we all wind up working until like 6 o'clock that night, and Pete was upset because he was already gone and had to come back into the office.

Q. Do you remember the language he used?

A. Yeah.

Q. I'm going to ask you to put your politeness aside and quote it for us just the once.

A. He stated that this was bullshit, and he was just swearing and mad. But I just told him, you have to take that up with Derrick. Don't -- I don't want to hear it. Just take it up with Derrick. I

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

don't want to hear it, so.

Q. And did you wind up reporting that incident to anybody?

A. No, no. Only the people in the room actually heard it.

Q. Okay. All right. I think that is all I have for the moment. I think Ms. Frierdich may have some additional questions for you, if you stay on the line.

A. Okay.

CROSS-EXAMINATION

BY MS. FRIERDICH:

Q. Hi, Ms. Pike. I'm Katherine Frierdich, counsel for Pete Wyatt. Thanks for being here. I understand you're not feeling well, so thank you especially for your time.

Just to -- just to back up a little bit, you spoke with Mr. Wyatt on the morning of February 5th while he was driving into the office, correct?

A. Yes.

Q. Did he use the F-word in his conversation with you?

A. Yeah, he was -- he was swearing. He was just asking, like, what the is wrong with Derrick or,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

you know, whatever. I didn't really want to -- I know when he gets mad -- I can tell when he is mad. So when he gets mad like that, I don't really like to engage.
Q. Did he tell you that he quit his job?
A. No, he did not.
Q. Did he ever tell you that he quit his job on February 5th as you were working together?
A. No.
Q. Have you ever heard him say "I quit"?
A. No.
Q. So you did not witness the conversation between Mr. Melton and Mr. Wyatt on the morning of February 5th?
A. No.
Q. And were you ever asked to sign an affidavit relating to this situation?
A. An affidavit?
Q. Yes.
A. I -- I was told to give a statement. I don't recall signing an affidavit.
Q. Okay. Who asked you to give a statement?
A. I think Dr. Cunningham needed a statement of what happened that morning.
Q. And you prepared a written statement

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

when -- when did you do that?

A. I don't remember. I think it was -- actually, it was Friday. It was that Friday. I didn't sign an affidavit. I don't recall signing an affidavit. I just told -- like everything that I just said is what I told them.

Q. What -- do you remember what time on Friday you drafted and submitted that statement?

A. No. I was talking to Sharon Gardner in our office.

Q. But you submitted a written statement?

A. No. She took my statement on what happened that day.

Q. Okay. What time was that on the 6th?

A. I don't know. I can't remember. I can't remember what time it was. It was later in the day.

Q. So afternoon, would you say?

A. Yes, um-hum, yeah.

Q. Okay. And Sharon Gardner is Dr. Cunningham's assistant, is that correct?

A. Yes.

Q. Okay. And was her counsel present, or was it you and just Sharon?

A. Well, she was doing what's normal in incidents at work. She actually takes a statement

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

from everybody involved.
Q. Okay.
A. It was just --
Q. Just you and Sharon?
A. Yeah, it was just me and Sharon, uh-huh.
Q. Do you know anybody else who gave Sharon a statement?
A. I don't know.
Q. Okay. Did you see Mr. Wyatt leaving Mr. Melton's office on the morning of February 5th?
A. No.
Q. When you were working with Mr. Wyatt on February 5th, this was after the phone call when he was driving, was he agitated while working on the 5th?
A. On the 5th he was just -- he just said that he -- he was feeling bad of -- from what happened with him and Derrick, and he just wanted to talk to him and apologize to him. That's -- that's what he kept -- he kept repeating to me that day throughout the day.
Q. Okay. Did he say exactly what he wanted to say to Mr. Melton?
A. The only thing he said to me was after -- after he got there and saw and understood everything that happened, he needed to talk to Derrick and

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

apologize. He never told me what for. He just kept saying he needed to apologize.

And then later in the day after I cancelled their meeting, he just started asking me was Derrick angry with him. He kept asking me, Is he mad? He's mad Gina, isn't he mad?

And I told him, If Derrick is mad, he did not indicate that to me, because I didn't know Derrick was mad.

Q. I see. How long did you work on the 5th?

A. I'm sorry?

Q. How late in the day were you at the office on the 5th?

A. I think Pete and I left at the same time, 4:30.

Q. Okay.

A. Yeah, we did, because we talked on the way home, yep.

Q. Okay. And then on the 6th, did you see Mr. Wyatt in the office?

A. No, I did not.

Q. Did you work with him at all over email or text message? Did you talk to him on the phone --

A. Yes.

Q. Did you have any interaction with him

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

on -- on the 6th?

A. Yes. I called him that morning. I can't remember what time it was. He wasn't answering, so I sent him a text. I just had questions in regards to another staff member. And eventually he called me back and he told me where he was, but I can't remember. And he told me that he had -- he just went over his day, like his meetings and things like that.

Q. Okay. And you take care of Mr. Melton's calendar, correct?

A. Yes.

Q. And on the 5th, did you cancel a -- their weekly one-on-one meeting for the 6th?

A. Yes. So that's when Pete really started asking if Derrick was angry with him. But I -- I -- I -- so Derrick had several meetings for the next day off site, and so that's why I thought he was cancelling.

Q. Is it unusual that Derrick cancels the one-on-one meetings?

A. Yeah, yeah. Like I said, he had -- I think that was -- they had Black history events in the community, and he was scheduled to speak at some of those. So he -- he -- yeah, he -- he needed to cancel the meetings. Well, he didn't tell me why. He just

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

said cancel the meeting for tomorrow. I just assumed it was for -- because he was going to be out in the public.

Q. Was it unusual for Mr. Melton to cancel the one-on-one meetings with Mr. Wyatt?

A. No, that's not unusual.

Q. Okay.

A. It's actually quite normal. So I think that's why I was kind of concerned when Pete started asking is Derrick angry. I didn't understand why he kept asking me that.

Q. And so just to be clear, you did not witness any conversation between Mr. Melton and Mr. Wyatt in the office on February 5th?

A. No. He just -- I guess after he talked to Derrick, he called me. And, again, this is normal, you know, he called -- he'll call me to get clarity on what Derrick needs from him or, you know, things like that, so. But he was -- when he was -- he was mad, so I didn't want to talk -- I don't talk to Pete when he is mad. I wait until he cools off, so.

Q. And I think Ms. Kaufman asked you about one incident in which you said that Mr. Wyatt was angry.

Have you ever reported Mr. Wyatt being mad

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

to a superior, to HR, ever?
A. No.
MS. FRIERDICH: That's all I have for Ms. Pike.
Thank you so much for your time.

REDIRECT EXAMINATION

BY MS. KAUFMAN:
Q. A quick follow-up question.
A. Okay.
Q. Thank you.
Ms. Pike, you said that you did not witness visually Mr. Wyatt going in or out of Mr. Melton's office the morning of February 5th. Does that mean it didn't happen or just that you didn't see it?
A. Just that I didn't see it.
Q. Okay.
A. So their offices are right across from each other, and mine is kind of down the way. So if they talked, I may not have seen it. I don't have, like, line of sight to their offices.
Q. Okay.
A. If that makes sense.
Q. Yes. Thank you. I don't have anything more.
A. Oh, okay.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

MS. FRIERDICH: Thank you.

THE WITNESS: Is that it?

MS. KAUFMAN: Yes, ma'am. You are good to go rest.

THE WITNESS: Okay. Thank you. Thank you.

(WHEREUPON, Eugenia Pike left the proceedings.)

MS. GOEN: Okay. Ms. Pike has been removed.

MS. KAUFMAN: Okay. Could we bring in Ms. Gardner?

MS. FRIERDICH: Just for the record, I just want to request a copy of the statement given by Ms. Pike to Ms. Gardner, as it is not privileged and we did request documents. We were not provided them. Thank you.

MS. GOEN: You said Sharon Gardner?

MS. KAUFMAN: Yes.

MS. GOEN: Thanks.

COMMISSIONER BOOKER: County, do you have any other witnesses?

MS. KAUFMAN: We do have Dr. Cunningham, but I think that should be pretty brief.

COMMISSIONER BOOKER: Would you like to call her now?

MS. KAUFMAN: Well, we have Ms. Gardner, also

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

hopefully quite brief.

COMMISSIONER BOOKER: Who would you like to call now?

MS. KAUFMAN: Sharon Gardner, please.

(WHEREUPON, Sharon Gardner entered the proceedings.)

COMMISSIONER BOOKER: It looks like she's in here now?

MS. GOEN: No, we're working on it.

COMMISSIONER BOOKER: Oh, it looks like she's in here.

MR. GOLDKAMP: Mary Gardner is --

COMMISSIONER BOOKER: Oh, that's a different Gardner. I see.

MR. GOLDKAMP: They are two different people.

COMMISSIONER BOOKER: A different Gardner, yes.

MS. GOEN: Okay. But we do now have Sharon. Can you hear us?

MS. GARDNER: I can hear you. Can you hear me?

MS. GOEN: You're a little quiet, but I can hear you.

MS. GARDNER: Okay. Let me turn my volume up a little bit.

(WHEREUPON, the witness was duly sworn.)

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

SHARON GARDNER,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. KAUFMAN:

Q. Ms. Gardner, could you spell your name out for the court reporter here?

A. Sure. First name, S-h-a-r-o-n. Last name, G-a-r-d-n-e-r.

Q. All right. And what is your title, Ms. Gardner, with the County?

A. I am the executive assistant to Dr. Cunningham.

Q. How long have you worked in that position?

A. I have been in this role since October 2024.

Q. And had you held any other positions with the County before?

A. Yes. I actually started in January 2011 as the Public Health Department director of human resources, and then in about October or -- in 2022, I went to County HR as a generalist and then, of course, back to the Health Department.

Q. Okay. And, Sharon, what sort of interaction, if any, did you have with Mr. Wyatt on a

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

regular basis?

A. On a regular basis, he would -- we'd talk about personnel matters, he may seek my advice, and then from time to time we'd have small chat.

Q. Okay. Did he ever express any dissatisfaction with his job to you?

A. We never had any -- no, we never had conversations about that.

Q. It's not really the sort of thing you talk about?

A. No, we did not.

Q. Okay. Did you interact with him directly on February 5th?

A. No.

Q. Okay. Okay. Were you informed at some point that he had resigned?

A. Yes.

Q. Okay. And who told you that?

A. Dr. Cunningham told me that.

Q. Okay. Did Dr. Cunningham have any other direction for you?

A. Yes, she did. She actually asked me to accept Pete's resignation on her behalf.

Q. Okay. And is that something you had done for her before?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. Yes, yes, I do.

Q. Okay. Now, when was that, February 5th or the next day?

A. Actually, it was on February 6th that she asked me to accept his resignation.

Q. Okay. And did you have any direct interaction with Pete on that day, February 6th?

A. I did, yes.

Q. And how did you wind up seeing -- seeing Mr. Wyatt that day?

A. He actually came into the building. So I asked Dr. Cunningham if I should accept on her behalf in person, and she said yes, so I actually talked to him then.

Q. Okay. Now, after you accepted the resignation, did you have any further conversation with him?

A. Yeah, we -- I did. He actually told me that he didn't -- he didn't know what I was talking about, so I just asked him if he had talked to Derrick on the phone or in person. He said no, he hadn't talked to him at all. And after -- after a while, he changed his answer to say that he actually did talk to him.

Q. Okay. So how did he wind up changing his

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

answer? Did you repeat the question?
A. I had to repeat the question. I think I repeated the question about at least three times. The first time I asked him if he had talked to him.
You know, he said no, he hadn't talked to him. He repeated that several times. And then he said, you know, he had texted him and the text had asked him to call Derrick.
And I said, Well, did you call him?
And then that's when he admitted, Well, yeah, I guess I did talk to him.
And then later in the conversation, I asked him if he had gone into his office to talk to him.
He said no. He said that a couple of times.
I asked him if he remembered using the F'ing word in his conversation with him.
And then that's when he said, Oh, I did talk to him. He mentioned that his conversation had gotten heated and -- and that he did remember talking to him, so.
Q. And what was the answer to the question specifically about using the F-word?
A. He said he didn't remember.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. Okay. Okay. And after that verbal conversation, did you do anything else to follow up on the resignation acceptance?

A. I sent the email too to follow up.

Q. And what did the email communicate?

A. The email just said, on behalf of Dr. Cunningham, as I usually do, your resignation has been accepted, you know, wish you the best with your future endeavors.

MS. KAUFMAN: Okay. Thank you. I don't have any other questions.

CROSS-EXAMINATION

BY MS. FRIERDICH:

Q. Hello, Ms. Gardner. My name is Katherine Frierdich. I am counsel for Pete Wyatt. Thank you so much for being here today. I just have a few questions for you.

Are you aware that the conversation that was alleged to have been had between Mr. Melton and Mr. Wyatt was in the morning of February 5th?

A. I was aware that the conversation happened February 5th. I'm not sure what time of day it was.

Q. Okay. And it was your understanding that Mr. Wyatt was cursing at Mr. Melton and -- on the phone or in his office?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. On the phone.

Q. Okay. And you heard from Ms. Cunningham on the 6th, February 6th that Mr. Wyatt had resigned, is that correct?

A. That is correct.

Q. And you took a -- we just heard from Ms. Pike that you took a statement from her in the afternoon of the 6th?

A. I did.

Q. Did you take any other statements from anyone?

A. I did not.

Q. Okay. What time was it that you -- was it -- I believe it was about 12:50 that you confronted Mr. Wyatt in the office on the 6th, is that right?

A. That sounds about right, yes.

Q. Okay. And would you -- would it be fair to say that Mr. Wyatt was surprised to learn that his resignation had been accepted?

A. Yes, that would be fair to say.

Q. Did he tell you that he did not resign?

A. He did. He said he did not resign, that is correct.

Q. Okay. And you have -- you have experience with HR, you said, is that right?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. I do.

Q. Did -- once you received information that there had been a curse-laden conversation, did you report that to anyone?

A. Could you repeat that question again? I didn't hear the entire question.

Q. Did you report that you had heard that there was a curse-laden conversation between Mr. Wyatt and Mr. Melton to HR?

A. No.

Q. Did you call security to escort Mr. Wyatt out of the building at around 12:50 on the 6th?

A. I did not.

Q. So if security was there, it wasn't because of you?

A. Security might have been present in the vicinity, but in terms of him -- them or me, or me knowing of anyone asking them to escort him out, I am not aware of that. As a matter of fact, I saw him walk out. I didn't see security with him.

Q. Ms. Cunningham -- Dr. Cunningham wasn't in the office on the 5th or the 6th, was she?

A. Dr. Cunningham was in the office on the 6th. I'm not sure about the 5th. I believe she was.

Q. Why did she not communicate with Mr. Wyatt

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

directly then?

A. It is generally the practice to have me accept on her behalf.

Q. Okay. Did Mr. Wyatt curse at you when you talked to him at 12:50?

A. He did not.

Q. And at that time you told him that you needed to collect his badge, phone, and computer, is that correct?

A. That is correct.

Q. Are you aware of any other investigation of the matter between Mr. Wyatt and Mr. Melton other than the statement that you took from Ms. Pike?

A. I am not.

MS. FRIERDICH: Okay. Thank you. That's all I have.

THE WITNESS: Should I get off the call now?

MS. KAUFMAN: Yes. I don't have any redirect for you, Sharon. Thank you.

MS. FRIERDICH: Thank you.

THE WITNESS: Okay. Bye-bye.

(WHEREUPON, Sharon Gardner left the proceedings.)

MS. KAUFMAN: Okay. Last person we've got to speak to is Dr. Kanika Cunningham.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

MS. GOEN: Okay. Give me one moment.

(WHEREUPON, there was a short interruption due to technical difficulties.)

(WHEREUPON, Dr. Kanika Cunningham entered the proceedings.)

(WHEREUPON, the witness was duly sworn.)

DR. KANIKA CUNNINGHAM,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. KAUFMAN:

Q. Thank you. Dr. Cunningham, could you spell your name for the court reporter?

A. Yes. K-a-n-i-k-a, C-u-n-n-i-n-g-h-a-m.

Q. Okay. And what is your position with the County?

A. I am the director of the Department of Public Health.

Q. All right. And how long have you worked in that position?

A. Since January of 2023.

Q. Okay. Did Mr. Wyatt report directly to you --

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. No.
Q. -- in his position?
A. No.
Q. To whom did he report?
A. Derrick. And I'm sorry, there is an echo on my end. Can you all not hear it?
Q. We can hear it, but you're still audible if we listen carefully.
MR. LIVASY: If you turn down the volume all of the way on your computer and only use your phone audio to talk to us and listen, that should remove that echo.
THE WITNESS: Okay.
BY MS. KAUFMAN:
Q. All right. Let's give it a go.
As of February 5th, 2026, were you contemplating disciplining Mr. Wyatt for any reason?
A. No.
Q. Were you contemplating terminating him for any reason?
A. No.
Q. Were you generally satisfied with his job performance?
A. Yeah. I know deposition is a little different because we're FQHC and some people don't

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

understand the specific federal guidelines specifically called HRSA, but I think kind of where he was with his experience and coming in understanding HRSA, I didn't have any concerns. I know there was a steep learning curve there.

Q. Okay. Dr. Cunningham, are you the appointing authority for DPH?

A. Yes.

Q. And what does that mean with respect to your personnel decisions?

A. All of the hiring and firing, termination, disciplinary, those decisions, corrective actions, those decisions come up to me.

Q. Are you also acceptable -- or are you also responsible for accepting resignations?

A. Yes.

Q. And before February 5th, 2026, had you ever accepted a verbal resignation?

A. Yes, um-hum.

Q. Had you ever accepted a resignation that was not in good standing?

A. Yes, um-hum.

Q. Okay. And in the case of a verbal resignation, was that something you'd have to witness directly in order to accept it?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. No.

Q. So how would you -- how would you learn about a verbal resignation then?

A. A lot of times it's the department, depending on what level it is, but it would escalate up like higher manager, get the division leader, get the executive leader, get my -- my team. I know a lot of times, the executive leaders try to kind of give me a heads-up if there's any concerns coming up, but a lot of times, it's filtered up through the hierarchy of leadership and then it will come up to me.

Q. Okay.

A. But, yeah, there's no way for me to be -- you know, we have nine locations and, you know, I can't be at every single location involved directly in every personnel decision, you know, actually see every single thing.

Q. Okay. And I do want to clarify, is this -- a verbal resignation, is this something that's happened once before or a handful of times or a lot of times?

A. I can think of a few times that it has happened. I know, of course, it happened, like, before me, and, again, it goes back to, you know, this is somebody just resigning and not desiring to come

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

back and work for the County. But I can recall a few since I've been here that this has happened.

And normally, it's -- it's either, you know, there's a heated situation and they'll call me, you know, run a situation by me and then, you know, and then I'll accept it. I'm trying to think of -- but, yeah, there are some examples. I don't know if you want me to share those.

Q. No, I'm all set.

Let's see. Did you speak directly to Mr. Wyatt on February 5th?

A. No.

Q. What about Mr. Melton?

A. Yes.

Q. Okay. And how did Mr. Melton contact you?

A. He called me.

Q. When?

A. It was that morning I think right after the conversation between him and Pete. Like, I think, like, immediately right after the conversation.

Q. Okay. And what did he say?

A. Well, he was definitely upset and he explained the whole situation to me with, you know -- it started off earlier, I needed information to give back to our County counselor, and I needed very

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

specific information. And I think that is where the interaction happened between him and Pete, and so he called me letting me know what happened during that phone call.

And it was, you know, he did say -- I don't curse, so, I F'ing -- you know, he said he F'ing quit, and he explained all -- everything to me. And I will say there was a conversation too where I was a little concerned about his mental health, like, you know, is everything -- is everything okay with him. And, you know, accepted his resignation and that was -- that was it.

Q. Okay. And now did you have any interaction with Mr. Wyatt or did you accept his resignation indirectly?

A. I accepted it indirectly, no interaction with Pete. It was through Derrick. And that's normal, yeah.

Q. And let's see. Okay. And did you have -- who accepted the resignation on your behalf?

A. Oh, like, who wrote -- what do you mean? Because I accepted it and then -- when Derrick called me.

Q. Did you have anybody else speak to Mr. Wyatt over the next couple of days?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. Oh, yeah, yeah. So Sharon, my assistant, she normally either sends emails or directly deal with employees.

Q. Okay. And is that what happened in this case?

A. Yes.

Q. And did Sharon give you any more information about her conversation with Mr. Wyatt?

A. Yeah, that was that Friday, and that was -- so Sharon was actually in the process of sending him the email and then he was walking in. I think it was that afternoon, maybe around 12-something probably. And so since he was walking in, and I said, Well, just go ahead and tell him, make sure we get his ID badge, his laptop, and then we can still follow up with the email afterwards.

So when he -- I sat in my office, and then Sharon, I know she had wanted to have security; and that's standard to have security by for just in case something happens. And then I was in my office, and then the next thing I remember Billy knocked on my door and told me to stay in my office, don't come out, just because I think there was some escalation in Pete's voice, his tone, and I was -- it was shared with me that security had walked him out.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

And then Sharon came to my office and let me know what -- what Pete had shared. And there was some inconsistencies from what he shared with Sharon and based off of the situation that happened. And so then I just directed Sharon just to still follow up with that email because she had collected all of his company equipment and ID at that time.

Q. Okay. And what do you mean by "inconsistencies"?

A. So the one thing about the cursing back-and-forth -- well, first it was "that conversation didn't happen," and then somewhere along the conversation, I guess he shared with Sharon or Sharon saw that a conversation did happen; and then Pete had admitted, well, yeah, they did have a conversation, but it wasn't a heated conversation. And then it ended up coming out that, yes, it was a heated conversation.

So it sounded like there was a lot of back-and-forth and, you know, that to me that it wasn't -- it wasn't straightforward or direct. And so she was just sharing those inconsistencies when she was -- when he was talking to her.

Q. Okay.

A. And she knew about the situation because

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

she is my assistant who typically works with me on these issues and work with HR legal.

MS. KAUFMAN: Okay. All right. I don't have any other questions for you, Dr. Cunningham.

THE WITNESS: Okay.

CROSS-EXAMINATION

BY MS. FRIERDICH:

Q. Hi, Dr. Cunningham. I'm Katherine Frierdich, counsel for Pete today, and I appreciate you being here. I do have some questions for you.

As the appointing authority, you indicated that you accept verbal resignations and that they can be indirect. In any of those instances, were they from someone in your C-suite?

A. Yeah, they're always from our C-suite when they come up to me. I can't recall a time in which it came from some other route. It always goes through the executive leadership.

Q. My question is, the verbal resignation coming from someone in your C-suite?

A. Yeah, it can -- it comes up through them to communicate to me. So like a hiring manager or firing manager, they wouldn't come directly to me.

Q. My question is, did a -- did you accept a verbal resignation from a member of your C-suite that

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

was not made directly to you in the past other than Mr. Wyatt?

A. I believe I'm answering your question.

Q. Yeah, I'm sorry if I'm not being clear.

So did -- in the past, did someone in your C-suite verbally resign, not to you, but it was reported to you and you accepted the resignation as reported by somebody else?

A. Yes.

Q. And who was that?

THE WITNESS: Is Noah okay -- is it okay for me to tell the employee's name?

MS. KAUFMAN: Yes.

THE WITNESS: Okay.

BY THE WITNESS:

A. Well, there are two I'm familiar with. This was one that was before Pete was here, back in like 2024. This was an employee named Rachel. And then the second one -- actually, this one was Will Bogan who reported to Pete, and that was another example of a verbal resignation.

And then also at our animal care and control, there was another employee who kind of similar, said "I quit" and walked off the job, and I accepted a verbal resignation. And that was toward

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

the end of like 2025. I can't remember that employee's name because he wasn't employed long.

Q. And were Rachel or Will part of the C-suite?

A. No. They were not, but it came up through the C-suite to me.

Q. Okay. But you just answered my question finally. Thank you.

So is it -- and you just mentioned a verbal resignation with somebody walking off the job, so is it typical that a verbal resignation then would result in that person not continuing to work in their role after that resignation?

A. Right, um-hum.

Q. Okay. So just to -- because there was an echo, is that correct?

A. Yes.

Q. Okay. Thank you. Okay. So you at the beginning of your testimony said you didn't have a problem with Pete or his performance, right?

A. Correct.

Q. And you didn't talk to him at all about this supposed resignation, correct?

A. Correct.

Q. Were you in the office on February 5th?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. I was in the office -- I think that afternoon I was in the office. I wasn't there in the morning.

Q. Did you see Pete in the office?

A. I don't recall seeing him.

Q. Did you know that he was in the office?

A. Say it again.

Q. Did you -- did you know that he was in the office?

A. I actually don't recall seeing him that day or Friday actually.

Q. Did anyone tell you that Pete was working in the office?

A. No, no. It was my understanding that he got his stuff and left.

Q. Who told you that?

A. That was Derrick. I think there was some interaction when Pete showed up to work, and I know Derrick -- I think he tried to talk to Derrick or something, and I don't know what the interaction was but I was under the impression that he was getting his stuff and left. I'm not sure. I didn't see him, but that was why he came in the office, to get his stuff.

Q. I see. So let me repeat this back to you.

Derrick calls you, tells you that Pete,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

over the phone on his way into the office, resigned?

A. Who was in the office, Derrick?

Q. Is there a way, are you -- are you able to talk through your phone, or is there a way to --

A. Yeah, I muted my computer. Unless, let me see if --

MR. LIVASY: Are the speakers from your computer still --

(WHEREUPON, there was a short interruption.)

BY MS. FRIERDICH:

Q. So -- so just let me repeat that back to you so I understand. Mr. Melton calls you, says that on the way into the office, Mr. Wyatt resigned his position; he said "I quit." And you understand that there may have been a meeting in Mr. Melton's office thereafter, and then it's your understanding that Pete gathered his stuff and left?

A. Yeah, that -- yes, that is my understanding, he was getting his stuff and he left, yeah.

Q. Okay. Thank you.

You didn't witness the conversation between Mr. Wyatt and Mr. Melton, right?

A. No, no.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. As the appointing authority, you're familiar with Rule 19 regarding resignations, right?

A. Right. They're resigning in good standing or not.

Q. Did you ask -- because you held people in high regard, did you ask him to submit his resignation in writing?

A. No, because I would never talk to -- in a situation, I would never talk directly to the person that's being terminated. It always comes up through the executive team. So I would never go around a leader to talk to their direct report.

Q. Did you instruct Mr. Melton to get the resignation in writing?

A. No, because the civil service rules, that's if someone want to resign in good standing. So historically when we've accepted verbal resignations, that's not a standard to say, Hey, go back and have them send a letter. If you accept the verbal resignation and if somebody want to quit, then they're are able to quit, you wouldn't keep them on. So that's not -- that's not a standard.

Q. Right. So verbal resignation not in good standing is typically, like, "I quit," pick up my stuff and leave?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. Yeah, if they say "I quit," yes.
Q. Okay. And there is a provision in the Rule 19 for someone who is presumed resigned who misses three days of work consecutively, correct?
A. Um-hum, yep, yep, that is another one, um-hum.
Q. Okay. Did you have any -- why did you not inquire with Mr. Wyatt with regard to whether or not the -- whether or not it happened and why?
A. Because I don't ever talk to the -- I never go around leadership to get involved. If that's the case, I will be talking to everyone in my department that leaves. So I don't ever go directly and talk to them. That's not a standard.
Q. Right. But I think you testified that nobody in your C-suite had verbally resigned prior to, and just up and left before, so this is a little bit different of a situation then?
A. No, it's not. It's the same situation. I think when you were asking me and I answered it, this happens, and I don't go and -- so I had my -- so the C-suite, that's different. So we have -- our C-suite is made up of division leaders that report to the executive leaders.
The executive leadership, that is the

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 175 of 1127 PageID #: 178


Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

leadership team that discuss with me. So that C-suite, they go and they speak with my executive leaders.

So, no, again, it would be a verbal resignation coming up to me, but I don't -- I would not get in the middle of the division leaders who we refer to as our C-suite -- and Pete would have been a part of the C-suite -- I would never -- it would never be a time where I would talk directly to them unless I didn't have an executive leader in the role; and then they all reported to me.

Q. Okay. You said that you were concerned about Pete's mental health based on Mr. Melton's account to you?

A. Um-hum.

Q. Is that correct?

A. Um-hum.

Q. And so did you report the situation to HR based on your concern?

A. So, no, I actually called a mutual friend of Pete and myself, and that particular friend gave some professional advice and I took a position of staying out of that. Now, I don't know if Derrick or anybody else provided those resources or that mutual friend provided those resources, but at that point I

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

just took -- it was a professional route.

And like I said, I was genuinely concerned. I think a lot of times with me that I'm often genuinely concerned about the individual, not just, oh, this is, you know, professional and you quit, but I often do ask questions.

There has been times in which, you know, we uncover other individuals on FMLA, and then that will completely change the entire discussion. So a lot of time bringing it up, it prompts the -- whoever is telling me this, it lets me know if there's other factors that I need to consider, like if there's an FMLA or if there are ADA accommodations. And none of that existed with Pete, so it's -- normally it's who I am to be able to make sure we're not missing anything.

Q. And who is the mutual friend you called?

THE WITNESS: Kate, is it okay for me to share?

MS. KAUFMAN: Yes.

BY THE WITNESS:

A. Rodney Gee, who is the director of administration.

BY MS. FRIERDICH:

Q. It was my understanding that Mr. Melton did not report to you but reported to the -- the board, the civil authority -- I'm butchering it, I

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

understand.

A. No, no, Derrick reports to me. There's a dotted line to the board, but how the application is set up, Derrick fully reports to me.

Q. Okay. Did it surprise you, then, that Mr. Wyatt was returning to work on the 6th when you learned that he was walking into the building?

A. Yeah, I didn't know why he was coming. That's why I told Sharon to meet him and to grab security. I didn't know why he was coming into the building.

Q. Okay.

A. Yeah.

Q. Okay. And you -- you perceived -- well, Sharon told you that Mr. Wyatt denied resigning, correct, when she spoke with him on February 6th?

A. Yeah.

Q. Okay. And you also received some emails from Mr. Wyatt emphatically denying that he resigned, correct?

A. Um-hum.

Q. Did you -- did you think that -- or did you ask for the situation to be investigated at that point?

A. No. I did -- I did not ask for the

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

situation to be investigated. I did speak with our County counsel's office when that information came over. I did read the email.

MS. KAUFMAN: (Inaudible.)

BY THE WITNESS:

A. The email -- did somebody interrupt me.

MS. FRIERDICH: I'm not -- I'm not asking her to discuss what she discussed with you as counsel.

MS. KAUFMAN: Well, that wouldn't have been me, but nonetheless, our office, so I appreciate it.

BY MS. FRIERDICH:

Q. Yeah, so I'm not -- I don't want to know what you said or what counsel said to you.

A. No, that's fine. So, yeah, I did do that, but then reading the emails, there was also some inconsistencies in the emails too. So I think you may have a copy of those.

Q. Okay. And who did you ask to investigate?

A. Well, it was a discussion with the County counsel's office.

Q. Okay. So you didn't instruct anyone outside of legal to investigate?

A. Well, I don't -- I don't instruct anyone. What it is, you know, I get their guidance, and then based off their guidance is when I would follow

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

whatever direction they will tell you based on the situation. So I discussed with them and then followed their guidance.

Q. So since you didn't communicate with Mr. Wyatt at all, you didn't tell him the reasons why he was being booted from the building or give him an opportunity to respond or instruct him about appellate rights, any of those things?

A. That's not my role to do that.

Q. Whose role is that?

A. I mean, the employees, they often they can follow the civil service rules, and I think with Mr. Wyatt -- Mr. Wyatt, or Pete, reaching out to Matt Livasy, that's typically the route that employees will take when they want to go before the Civil Service Commission. They'll copy an appointed authority on the email.

But, again, I would not have this conversation directly with Pete because he didn't report to me. He is on that middle management. It's not standard for me to go around leadership to go and talk to their immediate supervisor -- to go and talk to the employee.

Q. Okay.

A. But there's no difference in this case. I

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

wouldn't have had a conversation with Pete.

MS. FRIERDICH: Okay. That's all I have. Thank you so much for your time. I appreciate it. Ms. Kaufman may have some questions for you.

REDIRECT EXAMINATION

BY MS. KAUFMAN:

Q. I do want to ask one final follow-up.

Dr. Cunningham, in any situation if you have had an employee resigned and you have accepted the resignation, do you have further direct communication with that employee?

A. No, uhn-uhn.

MS. KAUFMAN: Thank you. That's all I've got.

MS. FRIERDICH: Thank you.

(WHEREUPON, Dr. Kanika Cunningham left the proceedings.)

COMMISSIONER BOOKER: Does the County have any other witnesses?

MS. KAUFMAN: No, the County has no other witnesses.

MS. FRIERDICH: Can I take a moment to confer with Mr. Wyatt and come back in a couple of minutes?

MS. KAUFMAN: I would love to use the lady's room, so I'm on board with that.

MS. FRIERDICH: Okay. All right.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

COMMISSIONER BOOKER: Okay. How many minutes, when should we come back?

MS. KAUFMAN: It's 2:32, so say five minutes? Is that enough time?

COMMISSIONER BOOKER: We will return at 2:37.

(WHEREUPON, a recess was had from 2:32 to 2:39 p.m.)

MS. FRIERDICH: So we would like to call briefly the -- the other two witnesses starting with Dr. Miller.

COMMISSIONER BOOKER: You may proceed.

MS. KAUFMAN: Okay.

COMMISSIONER NUNN: Ms. Frierdich, do you want to make an opening statement before you call your witnesses?

COMMISSIONER BOOKER: I believe they both did.

MS. FRIERDICH: Oh --

COMMISSIONER BOOKER: Oh, yeah, you -- you were supposed to, yes.

OPENING STATEMENT ON BEHALF OF THE APPELLANT

MS. FRIERDICH: Yeah, I definitely would love to. And certainly -- okay.

Yeah, so obviously we're here because there's a precedent being asked to be made by this Commission. The precedent is that someone in the

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

County can resign for somebody else, and that's the message back to merit employees at the County. Somebody can call up the appointing authority and say you resigned your position and, guess what, you're out.

We've got, you know, one day you're sitting in your office and, you know, somebody walks up and says, Hey, we accept your resignation. And that's fine. Nobody asks you if you resigned, nobody investigated. It's all the word of one person. And that's enough for this Commission to say, We'll accept your resignation, and that's fine.

Dr. Cunningham actually confirmed what I suspected to be true, that a verbal resignation not in good standing is made by somebody who says, I quit, they pick up their stuff, they walk out the door, and they stop working. That is not the situation here.

Mr. Wyatt returned to work -- actually stayed at work the entire day of the 5th and returned to work on the 6th; in fact, had a meeting representing the County on the 6th, and then was told to pack up and leave based on one person reporting that he had resigned.

So it's sort of like resignation by hearsay that you're being asked to enforce here, and

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

it's not the situation that Dr. Cunningham just told you is the situation where a verbal resignation is accepted by her.

So I'd like you to keep that in mind as we talk with Mr. Wyatt and what actually happened and the fact that he did continue to work and continued to represent the County and was summarily dismissed without anyone even speaking to him about it. And that is the precedent that they're asking you to set today for the merit employees of the County.

Okay. So at this time we'd like to call Dr. Miller, please.

MS. GOEN: Give me one moment.

MS. FRIERDICH: Thank you.

MR. LIVASY: While the next witness is coming in, I want to just out of respect for the Commission's time, ask everybody if they have a hard stop or any other obligations that we need to be mindful of this afternoon?

COMMISSIONER BOOKER: I don't.

COMMISSIONER NUNN: I'm fine today.

COMMISSIONER HOFFSTEN: Likewise.

MR. LIVASY: All right. Thank you all very much. I myself will have to exit the meeting at 3 o'clock.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

MS. FRIERDICH: Is that a problem, Mr. Goldkamp?

MR. GOLDKAMP: No. We can continue the hearing without Mr. Livasy.

MS. FRIERDICH: Okay. Thank you.

(WHEREUPON, Dr. Patrick Miller entered the proceedings.)

MS. GOEN: Okay. Dr. Miller, it looks like you joined us. Can you hear us?

DR. MILLER: Yes.

MS. GOEN: Thank you.

DR. MILLER: Can you see me?

MS. GOEN: We cannot.

MR. LIVASY: Dr. Miller, it looks like the camera lens --

MS. GOEN: Now we can. We've gotcha.

(WHEREUPON, the witness was duly sworn.)

DR. PATRICK MILLER,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. FRIERDICH:

Q. Hi, Mr. Miller. I'm Katherine Frierdich. I represent Mr. Wyatt in this appeal. I just have a few questions for you, and I really appreciate you

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

being here today.

Can you describe where your office is located in proximity to Mr. Melton's and Mr. Wyatt's old office?

A. I share a wall with Mr. Wyatt. I share a wall, so it's immediately next to it. Mr. Melton's office is directly across from Mr. Wyatt's.

Q. Okay.

A. So catty-corner.

Q. Do you have a recollection of February 5th?

A. February 5th being Thursday?

Q. Yes.

A. Yes.

Q. Did you at any time witness Mr. Wyatt resign his position or say "I quit"?

A. I did not.

Q. Had you ever heard Mr. Wyatt talk about quitting his job?

A. I had not.

Q. There has been some testimony that Mr. Wyatt gets angry and curses at people in the office. Have you witnessed that?

A. I have not.

Q. Okay. On February 5th, you had a meeting

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

with Mr. Wyatt, is that correct?
A. That is correct.
Q. What time is your meeting?
A. We met more than once, if I remember correctly. We met around lunchtime-ish. Briefly, we talked for a few minutes but then we had a standard meeting that's in the afternoon.
Q. And --
A. Late afternoon, like 3:00 or 4:00. Sorry.
Q. Okay. Thank you.
And then at any time, were you told by anyone that Mr. Wyatt had resigned his position?
A. On Thursday?
Q. Yes.
A. No.
Q. Okay. And did Mr. Wyatt indicate that he had gotten into an argument with Mr. Melton?
A. No.
Q. Did he seem agitated?
A. No.
Q. Did you have a meeting with him or see him on February 6th?
A. I met with -- I was home on February 6th, so I did not meet with anybody in person on February 6th.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. Okay. Were you aware that Mr. Wyatt had a -- a meeting at Centene that day? Had you talked about that?
A. On Friday?
Q. Yes, a meeting on Friday?
A. The 6th?
Q. Yes.
A. No, I'm not aware of that.
Q. Did you exchange any phone calls, text messages, or emails with Mr. Wyatt on February 6th?
A. Yes.
Q. And can you tell me about those instances?
A. Sure. On that Friday, I wasn't -- I didn't have my phone with me the whole day and I went to go check it, and then I saw a text message saying, Call me. It may have been, Call me ASAP. I'm not 100 percent sure, but it was, Call me.
So I called him, and he explained that he did not quit, that that did not happen, and he reiterated that a couple of times, and talked me through some of what happened on that Friday. Also, there was an email that went out from him saying similar things --
Q. Okay.
A. -- that he did not quit.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. Okay. Did you have any work-related interactions with him on February 6th?
A. I do not believe so. I was at home, so I think this -- I don't know if this counts as a work-related interaction, just him telling me that he did not quit, but that was my interaction with him.
Q. Okay. Back to generally in the office since you -- I believe you said you share a wall with Mr. Wyatt. How soundproof are the -- are the offices?
A. They're not terribly soundproof. With me and Mr. Wyatt sharing a wall, I can usually hear rumblings if he's talking at all. Across the hall, I can usually not hear a normal conversation whatsoever, but if at a normal vocal level; but if the Cardinals hit a home run, I'm going to hear that.
Q. Okay. Gotcha.
Have you ever heard through the wall Mr. Wyatt yelling at anybody, cursing at anybody?
A. No.
Q. Okay. Did you hear any elevated discussion between Mr. Wyatt and Mr. Melton on the morning of February 5th?
A. I did not.
Q. Okay. Did you in any -- have any interactions with Mr. Melton on February 5th that

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

indicated that you had just met or you were going to meet with Mr. Wyatt?

A. No, I do not believe so.

Q. Who knew that you were meeting with Mr. Wyatt on February 5th?

A. It was a standing meeting we had with the CFO, CMO and C -- or CMO. Yeah, me, Mr. Wyatt, and Mr. Ladevich.

Q. I see. I see.

A. It had been a standard meeting and everyone -- it had been ongoing for months. I don't know exactly how long, but for a while.

Q. Okay. And who is your assistant?

A. I don't know that I actually have an assistant. Possibly Kathy. I think she helps out in general and Eugenia helps out in general. Ms. Davis and Ms. Pike. Sorry.

MS. FRIERDICH: Okay. Okay. That's all I have for you today. Thank you so much for joining us. I really appreciate your time.

THE WITNESS: All right. Thank you.

MS. FRIERDICH: Ms. Kaufman may have some questions for you.

THE WITNESS: Oh, okay. Sorry.

MR. GOLDKAMP: Before Ms. Kaufman asks any

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

questions that she may have, I would ask the Commission to reconsider their decision on allowing Dr. Cunningham to be in the hearing. I believe as the appointing authority, she is entitled to be in this hearing to hear the -- the testimony of -- of the witnesses.

So I would just ask the Commission to maybe reconsider their -- their decision that they made earlier.

COMMISSIONER NUNN: Dr. Cunningham has already testified?

MR. GOLDKAMP: That is correct.

COMMISSIONER NUNN: Okay.

COMMISSIONER HOFFSTEN: I would have no objection to her being present since she's already testified.

COMMISSIONER NUNN: Neither do I.

MR. GOLDKAMP: Just for formality purposes, can we have a motion on that?

COMMISSIONER BOOKER: So moved.

COMMISSIONER HOFFSTEN: Second.

COMMISSIONER BOOKER: All of those in favor?

COMMISSIONER HOFFSTEN: Aye.

COMMISSIONER NUNN: Aye.

COMMISSIONER BOOKER: Aye.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

MS. GOEN: Okay. Give me one moment.

Okay. So Dr. Cunningham is no longer in open session to be added. Is that something where I should reach out to her?

MR. GOLDKAMP: Yes, Jairris, if you could just send her an email to join the open session, and then we can just add her whenever she shows up. We don't need to -- we can continue with the hearing.

MS. GOEN: I will do that. Thank you.

COMMISSIONER BOOKER: Are we finished with this witness's testimony or does the County need...

MS. KAUFMAN: Thanks.

CROSS-EXAMINATION

BY MS. KAUFMAN:

Q. Dr. Miller, I understand Mr. Wyatt reached out to you with his version of events. Was this something you spoke to anybody else about?

A. My conversation with him? I absolutely spoke about it with my spouse. Yeah, I don't -- I tried not to get into gossip if I can avoid it as much as I can.

Q. So it's fair to say that you did not have an interest in getting a story from Mr. Melton?

A. No, I -- he did not bring it up, nor did I ask.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. Or Dr. Cunningham?
A. Likewise.
MS. KAUFMAN: Thank you. Nothing further.
COMMISSIONER BOOKER: Would you like to redirect?
MS. FRIERDICH: No.
Thank you, Dr. Miller.
THE WITNESS: Thank you. Do I go now or -- last time I tried to go you all kept --
MS. FRIERDICH: Yes. Thank you.
(WHEREUPON, Dr. Patrick Miller left the proceedings.)
MS. FRIERDICH: Okay. So we'd like to call Damon Broadus, if I'm pronouncing that correctly.
MS. GOEN: Okay. One moment.
(WHEREUPON, Damon Broadus entered the proceedings.)
MR. BROADUS: Good afternoon.
MS. FRIERDICH: Good afternoon. I think we see your background but not you.
(WHEREUPON, the witness was duly sworn.)
DAMON BROADUS,
called as a witness herein, having been first duly sworn, was examined and testified as follows:

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

DIRECT EXAMINATION

BY MS. FRIERDICH:

Q. Okay. So, Mr. Broadus, my name is Katherine Frierdich. I represent Pete Wyatt in this appeal. And I just have a few questions for you, so this won't take long, but I really appreciate you joining us and giving us your time.

How often did you work with Mr. Wyatt in your position at the County?

A. I would say regularly. As the deputy director of public health, I was regular integration with Pete as the COO.

Q. Okay. And where -- can you describe where your office is in proximity to Mr. Wyatt's?

A. Sure. I'm across the hall. There's a file cabinet in between our locations. I'm located between Mr. Melton and Dr. Cunningham.

Q. Okay. So you just answered my next question about proximity of your office to Mr. Melton's office. So you share a wall with Mr. Melton?

A. Yep.

Q. Okay. How soundproof is your office? Do you hear conversations that are happening on either side of you?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. They're rumblings, if you will, or you hear voices. You can't -- you know, clear audio sounds, no.

Q. Right, okay. And on -- do you remember February 5th, the Thursday? Do you recall that day?

A. Not exactly. I mean, it was a Thursday, like you said.

Q. Well, do you recall hearing any elevated discussion in Mr. Melton's office that day, like voices elevated?

A. I do not.

Q. Okay. Would you have heard any -- if Mr. Wyatt was raising his voice in his office with his door closed, would you -- would you hear that in your office?

A. If Mr. Wyatt was in Mr. Wyatt's office, I would not.

Q. Okay. There has been some talk about Mr. Wyatt's conduct on the -- on -- in the -- in the business. Have you -- have you witnessed Mr. Wyatt raise his voice at people and curse at people?

A. I have not.

Q. Did you meet with Mr. Wyatt on February 5th?

A. I did not. I'd have to look at my

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

calendar, but I don't recall.
Q. Do you recall seeing him in the office?
A. I'm sure I did.
Q. Okay. And you don't remember any conversations you had with Mr. Wyatt?
A. At a minimum, an exchange of pleasantries.
Q. Okay. So suffice it to say that Mr. Wyatt did not tell you that he resigned his position that morning?
A. No, he did not.
Q. Okay. When you saw Mr. Wyatt, did he seem agitated?
A. No, he did not.
Q. On -- so let's talk about February 6th, that's the Friday, did you have any interactions with Mr. Wyatt over phone, text, or email relating to work, County work?
A. He called me that afternoon. I don't recall the exact time, but it was in the afternoon.
Q. Okay. Was that related to County work?
A. Yes.
Q. Okay. And so it was a conversation between you in your position and Mr. Wyatt as COO?
A. Yes.
Q. Okay. And that was in the afternoon of

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

February 6th?
A. Yes.
Q. Were you aware that Mr. Wyatt had a meeting with Centene on the 6th?
A. I did not.
Q. In your interactions with Mr. Wyatt, did you ever find him to be disrespectful to you?
A. Not to me, no, not ever.
Q. Did you see him be disrespectful to anyone else?
A. No, I haven't.
Q. Okay. That's all of the questions I have for you. I appreciate your time. Ms. Kaufman may have some questions for you at this time.
MS. KAUFMAN: No cross for this witness. Thanks.
MS. FRIERDICH: Thank you. You can -- you can depart, Mr. Broadus. Thank you so much.
(WHEREUPON, Damon Broadus left the proceedings.)
MS. FRIERDICH: Okay. At this time we'll call Mr. Wyatt to testify.
All right. So, Pete, here we go. Why don't you state your name for the record -- well, actually let's swear him in.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

(WHEREUPON, the witness was duly sworn.)

DUANE "PETE" CARLTON WYATT,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. FRIERDICH:

Q. Thank you. Mr. Wyatt, would you state your name for the record, please?

A. My name is Duane Carlton Wyatt. I go by Pete.

Q. Okay. And up until February 6th, you were chief operating officer for the Department of Public Health, correct?

A. I was. I began August 19th, 2024.

Q. Okay. Can you just give us a very brief description of your career preceding your COO position?

A. Sure. I have -- I held senior leadership positions in the for-profit industry, the nonprofit industry, the healthcare industry, and I'm an instructor.

Q. When you were interviewing for the COO role, who did you interview with?

A. I interviewed with a host of people. I

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

interviewed with Derrick, David Marker, Damon Broadus, and Dr. Nelson who at the time was the chief medical officer.

THE COURT REPORTER: It is very hard for me to hear the witness.

(WHEREUPON, there was a short interruption.)

BY MS. FRIERDICH:

Q. Okay. Are you okay on your end, Pete?

A. Sure, sure.

Q. Okay. So you worked full time as a merit employee for the County, correct?

A. I was, yes.

Q. Yes. Okay. And what were your duties as COO?

A. As COO, in a nutshell, all clinical operations, most of the clinical staff, and external responsibilities through outreach and program management.

Q. Were you out of the office a lot in meetings in your position?

A. Was I -- I'm sorry, say that again?

Q. Were you out of the office in meetings a lot in your position?

A. Often, yes.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. And we've heard you reported to Derrick Melton, correct?
A. I did, yes.
Q. Describe your relationship with Mr. Melton.
A. I thought our relationship was professional. The -- the common day, nonsense banter was normal. As senior executives do, we disagree on strategy from time to time, but that was never anything that impacted work.
Q. Was there a point at which, you know, you've been -- everyone who has testified has said that they didn't have a problem with you, you were a good employee, did a good job, et cetera.
Have you ever been confronted by anyone at the County complaining about your behavior?
A. No, not officially from a performance perspective. There has been an employee complaint that was put in. I think we discussed that earlier.
Q. Okay. Can you -- so obviously February 6th and February -- or February 5th and 6th are critical here. So can we start and you take us through the morning of February 5th?
A. Sure.
Q. Thank you.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. On February 5th, I had a meeting that began at 8 o'clock in which I was helping a group of people prepare themselves for job interviews. That is not part of my County. That is just part of an organization that I belong to and part of the commitment.

The meeting was taking long. I began to get calls from Derrick. I actually got one or two calls from Derrick. I do not have my phone active in those meetings as a point of respect, but I do get notifications on my watch. So when he called twice, I picked up and shot him a text and said, Hey, I am wrapping up a meeting. I'll call you back shortly.

That happened. The meeting went a little longer. Derrick called again. I sent him a text. He asked me the question, how many people reported to me. I said six. And I said, I think, I will be able to verify that for you shortly.

The meeting continued. He called again. I didn't get it as I was getting into my car, but I called him back immediately as soon as the -- the car started and the system worked. What I realized on the phone was that Derrick got my information of six, but he focused on the part where I said, "I think, I will confirm it for you shortly." So he needed that number

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

confirmed.

I was not locked into that he needed that number confirmed. The call went on. I said to him -- so everybody has talked about the F-word, and I need to put this F-word in context. Derrick pressed me about the importance of the number. What I couldn't understand was why he was pressing me on the number because that org chart that is active and current is on his assistant's wall. He has it electronically. It's on my wall in my office, and it's also on my assistant's office, Kathy's wall. So the data is available.

So he pressed, and I said to him, Just use the F'ing number, what the F.

Because I couldn't understand why we were pressing. He had the number. He has the -- where I'm going to verify that number is literally less than ten feet from his desk. So I'm confused.

So I made a couple of calls. I did call Gina, I did call Michael Ladevich. I made a couple of other calls on my way back into the office. When I got into the office, I went straight into Derrick's office. I knocked. I went in. My first question to him was, Do you still need that number verified?

He expressed to me that how important it

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

was because he was trying to keep me out of a lawsuit. He said he was trying to protect me. He got up from his chair. He came over to me. He showed me his cell phone and he said, This is what I'm trying to get; and that's the question on his cell phone, on his private cell phone, how many people do you supervise.

I said, Okay, you've got the number, six.

He walked over and sat down. There was some other banter. Nothing was elevated. As he text, he said, You never should have treated me that way.

I didn't know what that was all about. I don't know what the lawsuit is all about. I don't know what he's trying to protect me from. I said to him, I'm out there trying to protect you too, and you shouldn't have treated me like that, as I turned and I left.

So when I left, I closed the door, no slamming the door, no voice. I saw Gina in the hallway. Her testimony was that she talked to me when I came into the building. That is not correct. It was after I talked to Derrick.

And she said, well, something about they couldn't find me, they looked at Kathy and it wasn't on Kathy's calendar. I pulled up my County phone, and I showed her on my County phone that my 8:00 a.m.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

meeting was on my County phone.

And she said to me, Well, it wasn't on Kathy's desk.

Okay. And I -- and we both laughed, and I said, Oh, I guess I just put this on my phone.

And we just parted. I went into my office, put my stuff down, and continued my day.

Q. Okay. So let's stop right there and back up just a little bit.

A. Sure.

Q. So is it fair to say that you were a little frustrated --

A. Sure.

Q. -- as Mr. Melton is blowing up your phone during the meeting, right?

A. Right.

Q. And you don't understand why?

A. I do not understand why.

Q. And you felt that you had answered the question?

A. I thought I did, yes.

Q. So how long was your call with Mr. Melton where you supposedly F-bombed, cursed, yelled at him, was beating the steering wheel, et cetera, how long -- how long was that call?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. 58 seconds.
Q. 58 seconds?
A. Yes.
Q. That was the only call between you and Mr. Melton?
A. That's it.
Q. Okay.
A. So in 58 seconds, I pounded on the steering wheel, I told him about my home life, and I quit in 58 seconds. Not possible how that all happens, but you guys heard the testimony.
In his office two to three minutes, four max. I went, I had committed to buy lunch that day for the front office staff. So I had left my office after I put my stuff down. I went and I bought them Imo's Pizza. The day continued.
I had various conversations with -- with the CFO. I had the meeting with Dr. Miller later, but before I had the meeting with Dr. Miller, I talked -- I heard -- had Gina's conversation and I talked with Kathy. And Kathy said, I couldn't -- I couldn't see it on your calendar.
And it was in that moment that I stopped and I sent Derrick another text, and I said, I just talked to Kathy and I just discovered that you did not

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

have information that I had; meaning, he couldn't see that I had a meeting but I thought he saw that I had a meeting.

So I wanted to go and apologize to him because the context of my response to him on the phone was with the understanding that you knew I had the meeting, you know I don't use my phone during a meeting, but you kept blowing up my phone during a meeting after I said I was going to get back to you. So that was a respect thing for me.

So I knocked on his door. He wasn't available. Before I went downstairs to my meeting, I sent him that text, that I hope I could catch him before the end of the day. I didn't. I sat with -- at the end of the day, I had a meeting with Brenda Wetzel that went probably until 5:30, and it was kind of sharing with her what's going on because she had just lost her husband.

So I sat with her until about 5:30, and I came back upstairs. Derrick was gone. Gina had told me earlier in the day that the meeting was cancelled for Friday, so I worked from home. I sent Derrick a note, a text message, How can I help you with UDS, at 9:03 I believe it was on Friday morning. No response.

I went to my meeting with the Centene

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

person. I had that meeting. I came back to the building I guess 12:30, 12:35. I saw Derrick walking out of the door going to his car, tapped on my horn. He noticed me. He continued to get in his car. I said so, you know, I just found a good parking spot. I didn't want to pass that up.

So I got in, and I moved a few steps towards his car. He sat there for a moment and he drove off. I thought I was going to be able to tell him about Centene, but he continued going. I didn't understand that. But all of this was before that I had known that I quit apparently.

Q. Okay.

A. So when I got to my office at 12:40, I am preparing for -- I have a meeting with my -- my health center leadership teams, and we were going to do training on Epic. And that was starting at 1 o'clock, and at 12:40, Sharon Gardner came into my office. I can't remember her words, but she said that she -- that Dr. Cunningham had accepted my resignation.

And as you can imagine the shock, I said, What resignation?

We go through -- her description to me was, Did you not go into Derrick's office yesterday?

Well, in a moment of shock, I'm trying to

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

figure out where I resigned, when all of this happened, if this was even real. She asked did I not go into Derrick's office and cuss. I said no.

First, I couldn't remember going into Derrick's office in the context of quitting. So when she testified that I didn't remember, what I wasn't remembering was quitting. But I did go into Derrick's office.

She continued to say that Derrick had told Dr. Cunningham that I had resigned, and Dr. Cunningham had accepted my resignation. I said to her in that moment that this was an integrity problem and that it was going to affect the entire staff and trickle down to my patients.

I stood, I grabbed a couple of personal things, you know, and I walked out of my office at probably 12:50, 12:55, I'm not sure, in that range. Security had been called, and they were standing on the wall. I just walked calmly out and got in my car, and that was it.

Q. Okay.

A. So there was no cursing, pounding the wheel. There was no cursing in his office. And if you add all of the testified time, it's 58 seconds.

Q. And you submitted your phone records with

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

your appeal showing the 58-second call, correct?
A. I did.
Q. So it's in the record?
A. It's in the record.
Q. Did -- did Melton tell you to go home during that 58 seconds?
A. Yeah, at the end of the call, at the end of the phone call, we were both heated, and after I said -- used the fricking -- use the F'ing number and what the F, he said, Well, just go home. Just go home.
Q. So would you say both of you were frustrated at this point?
A. Oh, extremely frustrated, but that's -- that's not something to concern yourself with.
Q. So there was testimony that -- or I think it was County counsel, made an argument that you didn't deny quitting until you were told that Dr. Cunningham accepted your resignation. Do you recall hearing that?
A. Right, that's the first -- that's the first I had ever heard of it.
Q. So you didn't know that Mr. Melton had resigned on your behalf until Sharon came and told you that your resignation was accepted, is that correct?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. Correct. Correct.
Q. So you never used the word "resigned" or "quit" to Mr. Melton either time you talked to him on February 5th?
A. Never used which word?
Q. "Resign" or "quit."
A. No.
Q. When you left Mr. Melton's office, did you feel that the situation had deescalated?
A. Yeah, I thought it was done. I thought it was over.
Q. Okay.
A. The conversation I had in Derrick's office was indicative of conversations amongst the C-suite. It was a misunderstanding. It was a strategic thing. A ball was dropped, the ball was picked up, but that's just what happens.
Q. And you spoke with a couple of other people on the phone on the way into the office as well, right?
A. I'm sorry, I spoke to who people?
Q. You spoke with Gina and Mr. Ladevich?
A. Yes.
Q. And so that was also on the way into the office?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. Yes.
Q. Okay. And did you yell or curse at them on the phone?
A. No.
Q. Just a second. I'm catching up because you took us through the two days.
A. I'm sorry.
Q. Do you know why Mr. Melton said that he was trying to protect you?
A. I have no idea. He mentioned the lawsuit, but I have no idea what the lawsuit is --
Q. Okay.
A. -- or how I would be involved.
Q. Did anyone approach you and ask you about having an argument with Mr. Melton on the 5th or 6th?
A. About having an argument?
Q. Yes.
A. No.
Q. So when you left Mr. Melton's office, there was business as usual for the rest of the day?
A. For me, yeah, there was a lot to be done.
Q. Okay. And you had meetings?
A. Yes.
Q. And you were in your office?
A. Yes.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. Your office is across the hall from Mr. Melton's?
A. Directly, yes.
Q. Okay. So just to -- just to go back and clarify, we did hear from Gina testifying that you had said to her that you really wanted to apologize to Mr. Melton?
A. Um-hum.
Q. And she -- she did testify that she didn't know why, but -- why you were saying that, but you clarified it. Can you -- can you explain again so it's clear, why Gina would say that you said that you need to apologize to Mr. Melton that afternoon?
A. After I talked with Kathy, it became very, very clear that going back to the morning, Derrick did not know that I had a meeting because it wasn't on Kathy's calendar. So after Gina said it and then Kathy confirmed it, for me the context of my response to Derrick was different or should have been different.
So had I known that he did not know that I was in a meeting and he did not understand that I was -- I wasn't picking up the phone because I wasn't aware it was ringing because my ringer is always off, then I wouldn't have been as adamant about, I gave you

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

the number, use the number. And I would not have said things like, You shouldn't have treated me that way, because what I was referring to was he kept blowing up my phone when I'm trying to wrap up a meeting.

Q. Okay.

A. So had I known that, that conversation would have happened differently.

Q. But you did tell Mr. Melton that you were in a meeting and you were wrapping it up?

A. I did, I did.

Q. And he continued to call and text you, is that correct?

A. Yes, yes.

Q. Okay. And then you said --

A. So --

Q. -- that you finished out your day meeting with Brenda and that Mr. Melton was gone by the time you were leaving the office, right?

A. Yes. When I -- when I knocked on Derrick's door, I don't know, somewhere between 2:00 and 3:00, he did not answer, so that's when I sent the text --

Q. Okay.

A. -- in hopes that I could catch him before he left.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. So Mr. Melton knows what car you drive, right?

A. Sure.

Q. And so if Mr. Melton had left before you left, and you left at 5:30, would the parking lot be pretty empty?

A. Pretty empty at 5:30, yes.

Q. Would Mr. Melton have had an opportunity to see your car in the parking lot?

A. The opportunity, sure, if he was looking. I park in the same place, but if he was looking, he had the opportunity, but I don't know that that's something that he does. I don't -- I don't know that.

Q. Let me catch up with you here.

Okay. So back to the remainder of February 5th, and this is talking about pretty much like 10:00 a.m., right, on to --

A. Yes.

Q. -- the whole day you were at the office from 10:00 a.m. forward?

A. Yes.

Q. And you met with the chief medical officer, we heard from him?

A. Um-hum.

Q. You met with him twice?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. Um-hum.
Q. And you met with Brenda?
A. Yes.
Q. The front -- the front desk folks saw you because you --
A. Yes, Diane and Erica, yes.
Q. Did you -- did you also have other interactions where people saw you in your office?
A. Oh, yes. There's a lot of interaction up and down that hallway. You can bring in Michael Ladevich, the CFO. We had conversation. We had -- I had a con- -- a conversation with the contract folks about the phlebotomy project. All of these were drive-by conversations. They weren't meetings.
Q. And at no time did anybody say to you, man, why are you here when you just quit?
A. Yeah, it was not a thing. It was not a relevant point all day.
Q. Yeah, yet nobody said, "Oh, we're so sorry to see you go"?
A. No.
Q. "I can't believe you quit"?
A. No.
Q. Nothing?
A. I don't think it was public knowledge

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

until Friday to even myself.

Q. And you mentioned that Gina cancelled your one-on-one with Mr. Melton, but that didn't cause you concern, did it?

A. No.

Q. Does that -- does that include it all happening?

A. The cancellation didn't really concern me. That's a regular thing to have the Friday cancel.

Q. It's a regular thing that Mr. Melton cancels your one-on-ones?

A. Yeah.

Q. Okay.

A. Am I echoing over there, I'm sorry?

Q. I'm sorry?

A. Do you guys hear an echo?

Q. It is a -- there's a bit of an echo, but I think we're able to parse through it. Are you able to -- okay?

A. I'm struggling, but I can do it.

Q. Okay. So let's move on to February 6th. You decided you had a meeting with Centene at 11:30 in the morning, correct?

A. Yes.

Q. And it was outside of the office, the

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

meeting?
A. Yes.
Q. So when Mr. Melton cancelled your meeting, you just worked from home until you had to leave for that meeting, is that correct?
A. Yes.
Q. Did you -- what did you do the morning before you left for the Centene meeting work-wise?
A. I had a couple of conversations. I think the first one might have been with Sharon Foote. I sent Derrick a text 9:03, 9:06, or something like that, asking him if he needed any assistance with the UDS project because it was due on the 15th. I didn't hear back from Derrick about my text on the 5th, and I didn't hear back from him on the 6th.
Q. Well, let's talk about that meeting quickly. So you texted him on the 5th, and he didn't respond, Why are you texting me, you don't work here anymore, you resigned?
A. No.
Q. And when you texted him about the -- and UDS means Uniform Data System. I asked you that myself earlier.
A. Yes.
Q. But when you asked him about the UDS,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

which is definitely related to work and --
A. Yes.
Q. -- key to the work, in fact, he didn't respond saying, Why are you texting me about work, you quit?
A. No response.
Q. So you had -- you talked to some folks. Did you email that morning before you left for the Centene meeting?
A. I do not recall. I don't believe I did.
Q. Okay.
A. As a matter of fact, I think -- I know I didn't because I don't believe I brought my laptop home, so I can't recall.
Q. Okay. And when you were meeting with the Centene folks, you were meeting with them in the capacity of COO for the Department of Public Health, correct?
A. Yes.
Q. And that meeting was on your calendar?
A. Yes.
Q. Okay. And when you said -- when Sharon approached your office to accept your resignation, I'm putting that in air quotes for the record --
A. Yeah, uh-huh.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. -- you were preparing for a meeting, and I think you mentioned it was the Health Center Management meeting?

A. Yes. Every Friday -- every Friday at 1 o'clock to 3 o'clock.

Q. Okay. A two-hour meeting?

A. Yes.

Q. Do you lead that meeting?

A. Do I what?

Q. Do you lead that meeting?

A. Yes, I do.

Q. Okay. And how many people are in that meeting?

A. Four. On this particular day, we were working with the Epic training crews. They were going to do a training walk-through for the Health Center leaders.

Q. Okay. Was Mr. Melton in the office on the 6th, do you know?

A. I do not know.

Q. When Sharon approached you to tell you that you had resigned --

A. Oh, excuse me.

Q. Yes.

A. I do know, he was in the office but he

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

left. When he was leaving, I was arriving on Friday the 6th, so he was in the office in the morning.

Q. Thank you for correcting me.

When Sharon approached you to inform you of your resignation, did you deny that you had resigned?

A. Did I what?

Q. Deny that you had resigned?

A. Oh, absolutely.

Q. Have you denied that you resigned consistently ever since?

A. Every time I get the opportunity.

Q. Did you ask to speak with anyone or, you know, Dr. Cunningham or HR, anyone?

A. Yeah, I sent Dr. Cunningham a note. Again, her position is understandable, but I did reach out to Dr. Cunningham. My first response -- my first response wasn't until Monday for personal reasons, but my first response was back to Sharon, Dr. Cunningham, and Derrick. The next -- I think the next note was to Dr. Cunningham. And then the next note I think was to Dr. Cunningham, Sharon, and Matt Livasy.

Q. So we had a -- and you submitted your email correspondence to the Commission, so they have it in their file, correct?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. I didn't hear the last part.

COMMISSIONER NUNN: I didn't hear that.

MS. FRIERDICH: All right. This echo is not great.

BY MS. FRIERDICH:

Q. You have submitted your email correspondence to people at the County regarding your alleged resignation, correct?

A. I did.

Q. And so --

A. I think if I -- if I -- if I turn -- if I mute my phone, I think I kill the echo.

Q. Okay. Yes.

So if I take you through the emails, you on -- on February 9th at 4:57 a.m. you emailed Sharon Gardner, Derrick Melton, Dr. Cunningham, and in that email, you -- you spent multiple paragraphs, and this was in response to Sharon's email to you, accepting your, and I'm putting this in air quotes for the record again, your quote/unquote resignation, you responded in a several-paragraph email explaining that you did not resign, is that correct?

A. That is correct.

Q. You didn't receive a response to that email, did you?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. No response.
Q. And then you emailed again to Dr. Cunningham and Sharon Gardner at 6:50 a.m., same day. Did you ever receive a response to that email?
A. No response.
Q. You then emailed on February 12th, this is a week from the fated Thursday, Thursday, February 12th, you emailed Dr. Cunningham, Sharon Gardner, and Matt Livasy, and then Dionne Jones denying --
A. That is correct.
Q. -- you had resigned?
A. That is correct.
Q. And why Dionne Jones?
A. Dionne Jones is the chairman of the consumer board that we all present to once a month. So the health centers have a board of directors that is -- that is a reporting relationship for Derrick.
Q. You didn't respond -- you didn't receive a response from that email either, did you?
A. I did not.
Q. Then you emailed Matt Livasy, Dr. Cunningham, Dionne Jones, Sharon Gardner, on February 16th, that's the Monday, with, again, denying that you had resigned and your appeal, is that

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

correct?

A. That is correct.

Q. And you appended quite a few attachments, including your phone records, your text records, your emails, et cetera.

A. Correct.

Q. Did you receive a response from that email?

A. I did not get a response to the email, but I had made a couple of calls into HR to get Matt to check his emails, to check his phone messages, and I got the call back from Matt on I believe it was that Wednesday.

Q. And what did Matt say to you? What's the first thing that Matt said to you when you picked up?

A. He apologized that he had been out of the office. He said that he had gotten word that he should look for my email, but originally he couldn't find it because he was unaware that I no longer worked at the County. So I was not using a County email, I was using my personal email. But he had found it. I don't know if he had found it that day and called or found it the day before.

Q. So it had been about a week and a half before the personnel director knew that you were no

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

longer with the County?
A. More like two weeks, yes.
Q. Two weeks.
Just to be absolutely certain, you did not submit a written resignation?
I think you're on mute.
A. How about now?
Q. No, yes.
A. No, I did not submit.
Q. You were not an emergency, temporary, or seasonal employee?
A. I was not.
Q. You did not miss work for three consecutive days?
A. I did not.
Q. And when you supposedly, allegedly resigned your position, you continued to work that day?
A. I did because I had no idea that I -- that that was a real thing.
Q. And then you came back the next day, you continued to work --
A. Yes.
Q. -- the next day?
A. Yes.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. And you have continually denied resigning?
A. Yes.
Q. Did you ever receive any information from the County whether it be documents, explanation, anything, prior to this hearing and what you heard at this hearing?
A. I have not.
Q. Prior to this hearing, is it the case that you thought based on Sharon's account that the alleged resignation occurred in Mr. Melton's office?
A. Yes. The word that I had gotten indirectly from Sharon's account, it was, Did you not go into Derrick's office and do this and say these things?
Q. That was the only indication you had received from anyone at the County with regard to what supposedly happened on February 5th?
A. That was it.
Q. You through your counsel submitted because -- your requested several times documents supporting what supposedly happened, correct?
A. Yes.
Q. And you've got nothing?
A. Nothing.
Q. So you submitted a public records request,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

correct?
A. Yes.
Q. And you submitted that with a -- and a response came back from Sharon Gardner that it was accepted, right? It had been received?
A. Yes.
Q. And that response was immediate, wasn't it?
A. Yes.
Q. And we had the initial meeting with this Commission on March 17th, correct?
A. Yes.
Q. And you were -- and you were notified on February 26th that the response to that records request would be delayed to the 20th, three days after that meeting, correct?
A. Yes.
Q. Then this hearing was set for today, and you were notified on the 20th that that response would be delayed to April 1st?
A. Yes.
Q. So you haven't received anything in response to your public records request?
A. Nothing.
Q. Have you requested your HR file through

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

that public records request?

A. I have, I have.

Q. And received no records?

A. No response.

Q. And you heard about statements that were given by Mr. Melton and Gina, Ms. Pike, in this hearing?

A. I did hear about that, yes.

Q. Have you seen those?

A. I have not.

Q. Were you given an opportunity to respond to those?

A. I have not.

Q. Did anyone call you and say, Do you have a response to this, Mr. Melton says you quit?

A. No.

Q. Can you describe what -- what was in flight, what were you doing at the time that you were essentially booted from the office?

A. I was preparing for a PCMH audit. I was preparing for a Title 10 audit. We were doing training on the new EMR. I had a slate of candidates ready to be interviewed for the program manager position that following week.

We were working on scheduling execution.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

We were working on a lot of civil service work around our nursing crew, around our clinical staff, because we were going to have to make some changes. We were working on Care team assignments, because those assignments -- because of incomes, because of salaries, because of longevity, it was going to cause some pain. We were discussing those.

So there were seven or eight different open topics that needed to be completed before May 1st.

Q. And you heard in this hearing that every person who testified said that you did good work, they had no problem with you, no complaints?

A. No complaints. I try.

MS. FRIERDICH: That's all I have at this point -- at this moment. I'll turn you over to Ms. Kaufman.

CROSS-EXAMINATION

BY MS. KAUFMAN:

Q. All right. I'll keep it very brief, Mr. Wyatt. Thank you for your time.

So you've testified today that when you were speaking with Ms. Gardner, you were somewhat confused?

A. Very.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Q. And the inconsistencies in your statement, we'll chalk that up to the fact that you were confused?

A. Can we be specific about the inconsistencies?

MS. FRIERDICH: I don't think he testified to any inconsistencies, so could you rephrase, please.

MS. KAUFMAN: Sure.

BY MS. KAUFMAN:

Q. So when you spoke to Sharon, you said a few moments ago, "I said I didn't speak to Derrick because I didn't go into his office and use those words."

Is that a fair recap?

A. What I was responding to Sharon, she was asking if I did go into Derrick's office and cuss, and I said no. She apparently says that that -- or she probably took -- it sounds as though she heard me say I didn't go into Derrick's office.

Q. Okay. So she just misheard?

A. Potentially.

Q. And now you heard Sharon come up here and say that at first you told her you didn't talk to Derrick at all. Did she mishear that too?

A. I'm speaking to Sharon about did I resign;

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

she is speaking to me did I talk to Derrick. So the context in this meeting --

Q. So you never told her you didn't talk to Derrick?

A. So the context of this meeting was she just told me I resigned. So --

Q. The question I asked --

MS. FRIERDICH: Could you let him finish his answers, please. Please don't interrupt. Thank you.

Go ahead, Pete.

BY THE WITNESS:

A. I'm sorry, I'm going -- trying to cancel this, the echo. But the context of this conversation was Sharon was asking me rapid-fire questions behind telling me that I just resigned. So what I'm responding to her about did I go into Derrick's office and curse, I said no.

So then she asked me if I went into Derrick's office, and I said yes, I went into Derrick's office.

BY MS. KAUFMAN:

Q. Okay. So do we all agree that there was a heated conversation with Derrick on the phone?

A. Define "heated."

Q. Well, to my recollection, you've used the

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

word too, so what does it mean to you?

A. That's why it's not heated. It's common.

Q. Okay.

A. "Heated" would be defined as, for me, pounding on my steering wheel, saying F you and F this job, I quit.

That's heated. That never occurred.

Q. So if Sharon recalls you using the word "heated," she also misheard that?

A. I don't recall using the word "heated."

Q. Okay.

A. Sharon did not mention the phone call. Sharon spoke to the office visit.

Q. Oh, so Sharon didn't ask you about the phone call at all?

A. Not that I recall.

Q. Okay. So let's see. Now, you did tell us that that call lasted 58 seconds and nobody is disputing that. Now, I'm going to be straightforward. It doesn't take you 58 seconds to say "I F'ing quit, I'm done, I F'ing quit," does it?

A. Do you remember Mr. Melton's testimony as to how much was involved in that personal conversation, are you okay, all of those questions?

Q. I'm asking the questions.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. Okay.
Q. Okay.
A. Please re- -- please repeat your question, please. Thank you.
Q. It is, you are physically capable of saying "I F'ing quit, I F'ing quit" in under 58 seconds?
A. That is absolutely possible.
Q. Okay. Let's see. And so the fact that -- do you recall Eugenia testifying that right after she cancelled that one-on-one, you came up to her and asked, Is he mad, is he angry at me?
A. I don't recall that specific conversation. I wasn't concerned if he was upset with me.
Q. So if Eugenia recalls it, she was just -- she must be misremembering?
A. I won't repeat what Eugenia recalls. I just don't recall.
Q. Okay. Let's see. Okay. I don't think I have anything further. Thank you for your time.

REDIRECT EXAMINATION

BY MS. FRIERDICH:
Q. So, Pete, 58 seconds. We have Dr. Cunningham in the hearing now. I don't think she was here for Mr. Melton's testimony. What did

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Mr. Melton say you all talked about in that 58 seconds?

I think you're on mute, Pete. Sorry.

A. I'm sorry. I'm trying to toggle back and forth. The statement was that I said that I quit. He asked me, Who are you talking to. I said, You. I mentioned about my -- my household situation with my wife. There were -- there were other conversations in there that I doubled-down on, and we discussed the six people that directly report to me and how I was going to confirm it.

So there were -- there were several things in that 58 seconds.

Q. And that's according to Mr. Melton. And when you say your family situation, what are you referring to?

A. So in -- in December, I sat in front of the C-team, and I told them that my wife after 16 years had just been RIF'd and that things were going to get kind of crazy through the holidays, but that was going to happen on January 16th, which happened to be her birthday, so it was a very emotional time.

So I told the C-team that in December. So I told -- Dr. Miller was there, Ladevich, Sharon

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Foote, Gina, Derrick. So I said that in front of the team because that's work family and we want work family to know. So did I bring that up again in the phone call in 58 seconds? No.

Q. Okay. And there's a lot of talk about when this supposed resignation happened -- did we lose him? Oh, I see you. You just moved on me, Pete.

There's a lot of talk about when this supposed resignation happened, was it on the phone, was it in the office. When you left the office after talking to Mr. Melton after the phone call, you felt it was resolved?

A. Yeah, I thought it was resolved.

Q. Okay. And --

A. Given all of the pieces that are working and transitioning a health center from the public health, there are lots of exchanges that happen in the hallway. So this was just another.

Q. Right.

A. We don't have a hostile work environment.

Q. So if Sharon's account is that you were confused, you were confused because --

A. I was absolutely confused.

Q. Because you were told that you had resigned, and you hadn't?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

A. I was told that I had resigned, and I had not.

MS. FRIERDICH: Okay. Thank you, Pete.

MS. KAUFMAN: Nothing further.

MS. FRIERDICH: We're not calling any other witnesses for confirmation.

COMMISSIONER BOOKER: Thank you. Do you all -- would you like to have closing statements? Or is there anything else you'd like to offer?

MS. FRIERDICH: I believe that the findings of fact and conclusions of law, I will need to amend mine because the story we heard here was not the story that we understood. So I'm asking for leave to amend that.

CLOSING STATEMENT ON BEHALF OF APPELLANT

MS. FRIERDICH: For final statement in two minutes, you heard here that there's a dispute with regard to what was said, and there's one person who was able to resign someone else's position without them knowing and without any ability to respond to it.

And this is a C-suite position. And so what the Commission is being asked to do is say that that's just fine. And we heard from Dr. Cunningham, again, verbal terminations come in and are not in good standing, and those people leave. They up and leave. They pack up and they walk out. They don't continue

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

working. And Pete continued working.

There's all of the evidence in the world he denied it every single time. He continued working. He thought it was resolved. He never said it. So there's just not -- there's not enough here to impact someone's livelihood in the way that it has been and being shut out completely. He has been out of work since the 6th.

It's time to make a decision, reverse this, and consider it a dismissal, and none of the due process related to a dismissal was followed here. So even just ignoring the he said/he said situation, this Commission should find on procedural grounds that this thing was not done right.

So we ask for you to reverse it and all of the other things that we ask in our prayer, restate him with the same position, all of the back pay, all of the benefits, give him back his office and let him get back to work. Thank you.

So is there any other business that needs to be --

MS. KAUFMAN: Yes, I would like to make a closing statement as well.

MS. FRIERDICH: Oh, sure.

CLOSING STATEMENT ON BEHALF OF RESPONDENT

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

MS. KAUFMAN: So what you are being asked to find today is rather whether there is competent and substantial evidence for Dr. Cunningham's decision. We are not denying the existence of a factual dispute. He said/he said is a pretty good way to put it, and I don't envy you your task today because what you have before you is to determine whether Mr. Wyatt's resignation was supported by competent and substantial evidence based upon a total of what was said in 58 seconds.

But what we have heard are indications of a lack of credibility, a story that changes, a conversation that doesn't occur at all, and then it does, and then it was heated, and an F word we can't remember using, until we got a good answer for why about a month and a half later.

What you have not heard is any reason to gin up a resignation, any reason to claim that Mr. Wyatt left and said those words, "I fucking quit" when he didn't. Because Ms. Frierdich is absolutely right about that. Nobody is disputing that Mr. Wyatt was a competent employee.

But what we do have is competent and substantial evidence to hold him to his word, and that's all the Commission is being asked to do today.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Thanks.

MS. FRIERDICH: So my question, Mr. Goldkamp, was, is there an opportunity or any indication that the Commission wants to ask Pete any questions, or is that part of the hearing process? I don't want to cut that off, if there are any questions.

MR. GOLDKAMP: The commissioners have opportunities to ask questions of -- of all witnesses as, you know, as they're called. I guess we can confirm before Mr. Wyatt is, you know, let off the proverbial stand if they want to ask him any questions.

MS. FRIERDICH: Okay. Well, I thank you for your time. Is there any other business? I'm not familiar with these as you are, Mr. Goldkamp.

MR. GOLDKAMP: So I believe the hearing officer has one final statement to close this out and then the hearing can go off the record, but the Commission is going to need to, you know, do some procedural stuff to go back in open session and end the meeting.

COMMISSIONER NUNN: Before we do that, I would move that we will allow everybody to give ten days to file either amended findings of fact and conclusions of law or for the County to file the same, but -- and to include the statement from the young lady that made

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

the statement. We want to do that. I would so move.

MR. GOLDKAMP: So before -- before we do that, can I -- can I give the Commissioners some information that I think may be...

So the findings -- generally what the Commission has done is -- and this will be in the final statement that Commissioner Booker was about to make, is it's 30 days after the receipt of the transcript. And I understand if you want to shorten that period, that's -- that's certainly within your prerogative.

But the findings of fact and conclusions of law cite the transcript, so I don't know how the County or opposing counsel can submit -- submit a findings of fact and conclusions of law before getting a copy of the transcript.

So generally we've made a date that it's basically -- what we usually do is 30 days from the receipt of transcript, but it's usually a date from the receipt -- receipt of the transcript.

MS. FRIERDICH: Is there a --

COMMISSIONER NUNN: I would move to amend to make 30 days -- please do the amendment, as well as the County, have their chance to make findings of facts and conclusions of law within that time period.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

COMMISSIONER BOOKER: Someone else was speaking? Did someone else have something to say before you said that?

MS. FRIERDICH: I was -- this is Katherine. I was just asking whether or not we can expedite the transcript, if that's possible? We are at March 30th and Mr. Wyatt has been out of work and unpaid since February 6th.

COMMISSIONER BOOKER: Either way, we still have 30 days, yes.

COMMISSIONER NUNN: Can I have a motion on those?

COMMISSIONER BOOKER: I'll second.

COMMISSIONER HOFFSTEN: And may I just say before we vote, I'm not sure that we're in a position as a Commission to expedite the transcript itself, I don't think.

COMMISSIONER BOOKER: Exactly.

COMMISSIONER HOFFSTEN: Noah, is that the case?

MR. GOLDKAMP: I would say I think --

MS. FRIERDICH: That was to the court reporter, I believe.

COMMISSIONER HOFFSTEN: That's right. We can certainly amend the period of time we're allotting once the transcript is produced, but we can't really

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

impact the timeline of when the transcript is ready to be sent out. Correct?

MR. GOLDKAMP: Yes.

COMMISSIONER BOOKER: Yes, exactly. But I'll second the motion on the floor.

COMMISSIONER HOFFSTEN: Could you repeat the motion back, Commissioner Nunn?

COMMISSIONER NUNN: Yes, I would move that we would allow the 30 days for the -- the ability to amend findings of fact and conclusions of law, and the County to be able to do the same, including filing the statement that was supposedly made by -- I can't think of her name now -- the statement from the young lady that was not included with anything that was sent by the County.

MS. FRIERDICH: Well, I --

COMMISSIONER BOOKER: I believe that will be included -- will that not be included because you asked for that or not?

MS. FRIERDICH: That was not presented here as an exhibit, so it's not in the record and so I would object to anything outside of the record being included in the record by the County at this point, yeah. So we need to -- we need to stick with what they presented. That's my motion.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

COMMISSIONER BOOKER: Can she make a motion?

COMMISSIONER HOFFSTEN: Commissioner Nunn, could we amend your motion to remove the statement that you referred at the end?

COMMISSIONER BOOKER: Oh, goodness. What is the final motion?

COMMISSIONER NUNN: 30 days for amendment of the findings of fact and conclusions of law, and for the County to be able to have that same 30 days, but I included the statement. So now there's an objection to that.

MS. KAUFMAN: I would -- I would respond to the objection that the Commission does have the sua sponte right to request as part of their investigation any documentation they would like under Civil Rule -- Service Rule 22 and to interview any witnesses they would like and to conduct an investigation under such parameters as they see fit. You've got a lot of broad discretion here.

COMMISSIONER BOOKER: I would like to see this transcript. So I -- I'm going to second the motion that -- that Commissioner Nunn made.

COMMISSIONER HOFFSTEN: I guess I'm just confused about what exactly the statement, who the individual the statement is from?

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

COMMISSIONER BOOKER: So the young lady was interviewed by the HR person, who is also the assistant to Cunningham.

MS. KAUFMAN: Ms. Pike.

COMMISSIONER BOOKER: Ms. Pike. And that was not -- that was not originally included in the discovery or something like that. So we want to see that.

COMMISSIONER HOFFSTEN: Then I will support the motion.

MS. FRIERDICH: The problem with that is due process, that we are not able to confront that witness on that statement, as we have not been provided that statement.

So while it is true that the Commission can do an investigation, that witness testified today, but the statement was not before us so we were not able to ask her questions about it. So Pete's due process is in jeopardy by including evidence that was not presented by the County.

COMMISSIONER BOOKER: This is not a regular court of law. What is the remedy? This is not a regular court of law. We would like to see this statement.

COMMISSIONER NUNN: That's the motion.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

COMMISSIONER BOOKER: I still second it.
All of those in favor?
Aye.
COMMISSIONER NUNN: Aye.
COMMISSIONER HOFFSTEN: Aye.
COMMISSIONER BOOKER: Does anyone have any other motions or issues they'd like to present?
MS. FRIERDICH: No.
COMMISSIONER BOOKER: Okay. Then closing, you will be notified when the transcript of these proceedings have been received in the division of personnel. Findings of facts and conclusions are due to the County HR within 30 days after receipt of the transcript, which is March 30th, 2026. The Commission will --
MR. GOLDKAMP: We don't know the date of the receipt of transcript.
COMMISSIONER BOOKER: Oh, I thought it was -- I thought it was 30 days from this date? I thought you were -- I thought that was the date that I'm saying, 30 days from this date. Is that not what we're saying?
MR. GOLDKAMP: My understanding is it's 30 days after receipt of the transcript.
COMMISSIONER BOOKER: Okay. So then we do not

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 244 of 1127 PageID #: 247

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

know that date. Okay. Well, then -- which date is unknown. The Commission will consider all documents at their next regular meeting after the transcripts are received. You will receive written notification of that meeting.

Thank you to everyone who is involved. This hearing is concluded.

MS. FRIERDICH: Thank you.

MS. KAUFMAN: Thank you.

---

Thereupon, at 4:18 p.m., on Monday, March 30, 2026, the hearing was concluded.

---

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

CERTIFICATE OF OFFICER

I, JULIANA F. ZAJICEK, a Registered Professional Reporter and Certified Shorthand Reporter, do hereby certify that I reported in shorthand the proceedings had at the remote hearing aforesaid, and that the foregoing is a true, complete and correct transcript of the proceedings of said remote hearing as appears from my stenographic notes so taken and transcribed under my personal direction.

IN WITNESS WHEREOF, I do hereunto set my hand of office this 12th day of April, 2026.

Juliana F. Zajicek

JULIANA F. ZAJICEK, Certified Court Reporter

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

WORD INDEX


< 1 >
**1** 12:4 59:22, 25 131:17 143:5
**10** 151:21
**10:00** 138:17, 20
**10:15-ish** 38:23
**100** 112:17
**105** 4:6
**106** 3:4
**109** 4:8
**11:30** 140:22
**116** 4:9
**118** 4:11
**12:00** 1:3
**12:23** 16:18
**12:30** 131:2
**12:35** 131:2
**12:40** 131:14, 18
**12:50** 82:14 83:12 84:5 132:17
**12:55** 132:17
**122** 4:13
**12-something** 91:12
**12th** 146:6, 8 170:13
**14** 29:5
**15,154** 25:12
**152** 4:14
**156** 4:15
**159** 3:6
**15th** 141:13
**16** 157:19
**161** 3:7
**16th** 146:24 157:21
**17th** 150:11
**19** 25:15 98:2 99:3
**19th** 122:15
**1st** 150:20 152:10

< 2 >
**2** 5:20
**2.1** 5:21
**2:00** 137:20
**2:32** 106:3, 7
**2:37** 106:5
**2:39** 106:7
**20** 25:16
**2011** 77:19
**202.100** 25:13
**2022** 77:21
**2023** 85:23
**2024** 77:16 94:18 122:15
**2025** 95:1
**2026** 1:3, 12 16:18 28:12 31:6 86:16 87:17 168:14 169:12 170:13
**20th** 150:15, 19
**21** 25:15
**22** 23:2 25:15 166:16
**25** 66:2
**26th** 150:14
**28** 3:3

< 3 >
**3** 11:21 14:18 108:25 143:5
**3:00** 111:9 137:21
**30** 1:3, 12 3:13 34:13 38:22 163:8, 18, 23 164:10 165:9 166:7, 9 168:13, 19, 21, 23 169:12
**30th** 5:5 16:17 164:6 168:14

< 4 >
**4:00** 111:9
**4:18** 169:11
**4:30** 65:4 71:15
**4:57** 145:15
**40** 3:14
**45** 34:13 38:20, 22

< 5 >
**5:30** 130:16, 19 138:5, 7
**55** 3:15
**57** 3:16
**58** 129:1, 2, 8, 10 132:24 133:6 155:18, 20 156:7, 23 157:2, 13 158:4 161:10
**58-second** 133:1
**5th** 28:12 31:6 32:1, 22 33:12 37:21 39:11 47:11, 18 49:21 50:25 51:24 56:21, 24 57:16, 17, 18, 25 62:7 67:19 68:8, 14 70:10, 13, 14, 15 71:10, 13 72:12 73:14 74:12 78:13 79:2 81:20, 22 83:22, 24

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

86:*16*
87:*17*
89:*11*
95:*25*
107:*19*
110:*11*, *12*, *25* 113:*22*, *25* 114:*5*
119:*5*, *24*
124:*21*, *23*
125:*1*
134:*4*
135:*15*
138:*16*
141:*14*, *17*
149:*17*

**< 6 >**
**6** 66:*15*
**6:50** 146:*3*
**61** 3:*18*
**67** 3:*19*
**6th** 46:*13*, *15* 47:*13*
48:*8* 56:*24*
69:*14*
71:*19* 72:*1*, *13* 79:*4*, *7*
82:*3*, *8*, *15*
83:*12*, *22*, *24* 102:*6*, *16* 107:*20*, *21* 111:*22*, *23*, *25*
112:*6*, *10*
113:*2*
120:*14*
121:*1*, *4*
122:*12*
124:*21*
135:*15*
140:*21*
141:*15*
143:*19*
144:*2*
160:*8* 164:*8*

**< 7 >**
**7.020** 25:*11*
**74** 3:*20*
**77** 3:*22*

**< 8 >**
**8** 125:*2*
**8:00** 127:*25*
**81** 3:*23*
**85** 4:*4*

**< 9 >**
**9:00** 34:*9*
**9:03** 41:*3*
130:*24*
141:*11*
**9:06** 141:*11*
**9:30** 34:*15*
38:*22*
**9:30-ish**
34:*10*
**9:50** 45:*1*
**93** 4:*5*
**9th** 145:*15*

**< A >**
**a.m** 127:*25*
138:*17*, *20*
145:*15*
146:*3*
**ability**
49:*8*
159:*19*
165:*9*
**able** 57:*7*, *9* 60:*14*, *15*
97:*3* 98:*21*
101:*15*
125:*17*
131:*9*
140:*18*
159:*18*
165:*11*
166:*9*
167:*12*, *18*
**Absolutely**
32:*3* 35:*25*
39:*9* 46:*7*
55:*8* 56:*16*
116:*18*
144:*9*
148:*4*
156:*8*
158:*23*
161:*20*
**accept**
11:*15*
24:*12*, *15*
36:*12*
43:*19*
78:*23* 79:*5*, *12* 84:*3*
87:*25* 89:*6*
90:*14*
93:*12*, *24*
98:*19*
107:*8*, *11*
142:*23*
**acceptable**
87:*14*
**acceptance**
22:*4* 29:*11*
56:*5* 81:*3*
**accepted**
22:*6* 23:*18*
29:*7* 37:*19*
38:*3* 47:*23*
48:*21*
79:*15* 81:*8*
82:*19*
87:*18*, *20*
90:*11*, *16*, *20*, *22* 94:*7*, *25* 98:*17*
105:*9*
108:*3*
131:*20*
132:*11*
133:*19*, *25*
150:*5*
**accepting**
26:*9* 87:*15*
145:*18*
**access** 42:*7*
57:*10*
**accidentally**
12:*14*

**accommodations**
101:*13*
**account**
48:*21*, *23*
49:*7* 55:*19*
60:*7*
100:*14*
149:*9*, *12*
158:*21*
**accounts**
18:*5*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**accuracy** 48:6
**accurate** 34:3
**actions** 87:12
**active** 125:9 126:8
**ADA** 101:13
**adamant** 136:25
**add** 25:16 60:6 116:7 132:24
**added** 116:3
**adding** 60:1
**additional** 19:24 67:8
**addressed** 12:13
**admin** 57:11
**administration** 101:21
**Administrative** 6:21
**administratively** 11:14
**admitted** 16:5 18:1 80:10 92:15
**advance** 18:15
**adversarial** 23:24
**advice** 11:2, 6 78:3 100:22
**affect** 132:13
**affidavit** 50:23 68:17, 18, 21 69:4, 5
**aforesaid** 170:7
**afternoon** 28:10, 11 69:17 82:8 91:12 96:2 108:19 111:7, 9 117:18, 19 120:18, 19, 25 136:13
**agenda** 5:24
**aggressive** 36:18, 19
**agitated** 70:14 111:19 120:12
**ago** 55:17 153:11
**agree** 13:7 19:8 56:17 154:22
**agreement** 19:4
**ahead** 5:1, 19 8:18, 25 16:24, 25 65:14 91:14 154:10
**air** 142:24 145:19
**Akram** 5:15
**allege** 53:21
**alleged** 33:2 81:19 145:8 149:9
**allegedly** 148:16
**allotting** 164:24
**allow** 9:5 12:23 27:22 162:22 165:9
**allowing** 115:2
**amend** 159:11, 13 163:22 164:24 165:10 166:3
**amended** 23:22 162:23
**amendment** 163:23 166:7
**angry** 62:25 63:1 65:20 66:3 71:5 72:15 73:10, 24 110:22 156:12
**animal** 94:22
**answer** 23:15 52:21 63:21 79:23 80:1, 23 137:21 161:15
**answered** 95:7 99:20 118:18 128:19
**answering** 72:3 94:3
**answers** 154:9
**anticipate** 29:13
**anybody** 8:5 67:3 70:6 90:24 100:24 111:24 113:18 116:17 139:15
**anybody's** 25:14
**anymore** 141:19
**apologize** 22:9 35:7 65:9 70:18 71:1, 2 130:4 136:6, 13
**apologized** 147:16
**apparently** 131:12 153:17
**Appeal** 5:22 15:7 16:2 40:20 109:24

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

118:5
133:1
146:25
**APPEALS** 1:7
5:21
**appear** 17:17
**appears**
15:9 170:9
**Appellant**
1:8 2:12,
19 3:4, 6
15:8
106:20
159:14
**appellant's**
18:9 19:3
**appellate**
104:7
**appended**
147:3
**apple** 61:9
**application**
102:3
**appoint** 6:2
7:8
**appointed**
49:6 56:9
104:16
**appointing**
11:4, 10
15:10
28:23 87:7
93:11 98:1
107:3 115:4
**appreciate**
12:8 55:7
59:11
60:13 93:9
103:10
105:3
109:25
114:20
118:6
121:13
**approach**
135:14
**approached**
142:23
143:21
144:4
**appropriate**
7:18 8:8
**approximately**
43:12
**April**
150:20
170:13
**argument**
26:14
111:17
133:17
135:15, 16
**arrangements**
55:18
**arrived** 30:1
**arriving**
144:1
**Article**
25:11
**ASAP** 112:16
**aside** 66:21
**asked** 33:21
34:3, 20, 24
35:8, 11, 17
37:4, 15
38:2, 7, 17
39:19 40:9
41:5 43:18,
21 44:1, 4,
6 48:3
50:23
51:13
54:25
55:17 59:6
62:17 64:3,
4 68:16, 22
73:22
78:22 79:5,
12, 20 80:4,
8, 13, 17
106:24
107:25
125:16
132:2
141:22, 25
154:7, 18
156:12
157:6
159:21
161:1, 25
165:19
**asking**
24:17 35:3,
21 51:15,
17 52:4
56:17
62:15
67:25 71:4,
5 72:15
73:10, 11
83:18
99:20
103:7
108:9
141:12
153:16
154:14
155:25
159:13
164:5
**asks** 107:9
114:25
**assigned**
12:3
**assignment**
48:5
**assignments**
152:4, 5
**assistance**
141:12
**assistant**
29:11
49:13
57:11
69:20
77:12 91:1
93:1
114:13, 15
167:3
**assistant's**
42:9 126:9,
11
**Associate**
15:12
**associated**
31:1, 15
**assumed**
49:11 73:1
**assuming**
13:9
**assumption**
58:21
**attachments**
147:3
**attempted**
29:9
**attendance**
12:17
**attention**
46:17, 20

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**attorney** 7:*1* 8:*8* 15:*10, 11* 19:*3*
**attorneys** 15:*16* 16:*9*
**audible** 86:*7*
**audience** 35:*8*
**audio** 86:*10* 119:*2*
**audit** 151:*20, 21*
**August** 122:*15*
**authority** 11:*4, 10* 15:*11* 25:*9* 28:*23* 49:*6* 56:*10* 87:*7* 93:*11* 98:*1* 101:*25* 104:*16* 107:*3* 115:*4*
**available** 10:*2, 8* 42:*10* 126:*12* 130:*12*
**avoid** 116:*20*
**aware** 44:*24* 46:*12, 14* 50:*19* 58:*13* 65:*17* 81:*18, 21* 83:*19* 84:*11* 112:*1, 8* 121:*3* 136:*24*
**Aye** 7:*13, 14, 15, 24* 8:*1, 3* 14:*3, 4, 5* 25:*25* 26:*1, 2* 28:*2, 3* 115:*23, 24, 25* 168:*3, 4, 5*

< B >

**back** 14:*11, 12* 22:*3* 33:*21* 34:*1, 12* 44:*10, 23* 55:*23* 59:*5* 63:*24* 66:*17* 67:*17* 72:*6* 77:*23* 88:*24* 89:*1, 25* 94:*17* 96:*24* 97:*12* 98:*18* 105:*22* 106:*2* 107:*2* 113:*7* 125:*13, 21* 126:*21* 128:*8* 130:*9, 20* 131:*1* 136:*4, 15* 138:*15* 141:*14, 15* 144:*19* 147:*12* 148:*21* 150:*4* 157:*4* 160:*17, 18, 19* 162:*20* 165:*7*
**back-and-forth** 92:*11, 20*
**background** 32:*16* 37:*7* 117:*20*
**backing** 43:*14*
**bad** 70:*16*
**badge** 55:*19* 84:*8* 91:*15*
**ball** 134:*16*
**banter** 124:*7* 127:*9*
**based** 92:*4* 100:*13, 19* 103:*25* 104:*1* 107:*22* 149:*9* 161:*9*
**basically** 35:*21* 36:*10* 44:*6* 163:*18*
**basis** 78:*1, 2*
**beating** 36:*20* 50:*11* 58:*16* 128:*24*
**becoming** 65:*20*
**began** 35:*1* 122:*15* 125:*2, 7*
**beginning** 62:*11* 95:*19*
**behalf** 21:*6* 28:*9* 78:*23* 79:*12* 81:*6* 84:*3* 90:*20* 106:*20* 133:*24* 159:*14* 160:*25*
**behavior** 124:*16*
**belief** 39:*8*
**believe** 7:*16* 9:*21* 12:*21* 13:*10* 16:*23* 18:*5* 19:*4* 25:*13* 29:*1* 30:*1* 40:*6* 43:*17* 45:*1* 50:*19* 61:*20* 82:*14* 83:*24* 94:*3* 106:*16* 113:*3, 8* 114:*3* 115:*3* 130:*24* 139:*22* 142:*10, 13* 147:*12* 159:*10* 162:*16* 164:*22*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

165:*17*
**belong** 125:*5*
**benefit** 15:*19* 30:*18* 37:*5*
**benefits** 160:*18*
**bereavement** 20:*25*
**best** 58:*24* 81:*8*
**Billy** 91:*21*
**birthday** 157:*22*
**bit** 29:*21* 31:*14* 67:*17* 76:*23* 99:*17* 128:*9* 140:*17*
**Black** 72:*22*
**blind** 18:*16*
**blowing** 128:*14* 130:*8* 137:*3*
**board** 101:*25* 102:*3* 105:*24* 146:*16, 17*
**Bogan** 94:*20*
**Booker** 2:*4* 5:*12, 13* 6:*6, 10, 11, 14, 16, 19, 21, 25* 7:*3, 5, 9, 14* 8:*2, 3* 13:*2, 7, 12, 17, 22, 25* 14:*2, 5, 19, 22, 25* 15:*3, 5, 19, 23* 17:*21* 18:*4, 17, 20, 24* 19:*8* 20:*15, 16* 21:*13, 22, 25* 22:*7, 16* 23:*11* 24:*6, 10, 14, 18, 23, 25* 25:*4, 21, 25* 26:*7, 8, 16, 25* 27:*4, 8, 12, 15, 18, 22* 28:*1, 4, 7* 29:*18* 30:*2* 59:*18* 75:*19, 23* 76:*2, 7, 10, 13, 16* 105:*17* 106:*1, 5, 11, 16, 18* 108:*20* 115:*20, 22, 25* 116:*10* 117:*4* 159:*7* 163:*7* 164:*1, 9, 13, 18* 165:*4, 17* 166:*1, 5, 20* 167:*1, 5, 21* 168:*1, 6, 9, 18, 25*
**booted** 104:*6* 151:*19*
**bought** 129:*15*
**branch** 30:*25*
**break** 61:*13*
**breakout** 11:*15* 12:*2, 3*
**Brenda** 130:*15* 137:*17* 139:*2*
**bridge** 21:*10*
**brief** 18:*11* 22:*4* 23:*17* 24:*5, 13, 15* 75:*22* 76:*1* 122:*16* 152:*20*
**briefly** 106:*8* 111:*5*
**bring** 8:*5* 21:*16* 75:*9* 116:*24* 139:*10* 158:*3*
**bringing** 10:*20* 21:*15* 101:*10*
**brings** 18:*6*
**broad** 166:*18*
**BROADUS** 4:*10* 19:*10* 20:*19, 21* 117:*14, 16, 18, 23* 118:*3* 121:*18, 19* 123:*1*
**brought** 9:*12* 22:*22* 142:*13*
**building** 46:*10* 79:*11* 83:*12* 102:*7, 11* 104:*6* 127:*20* 131:*2*
**bullshit** 66:*22*
**business** 49:*8* 52:*11, 17, 19* 58:*2* 119:*20* 135:*20* 160:*20* 162:*14*
**busy** 33:*19*
**butchering** 101:*25*
**button** 7:*7* 11:*25*
**buy** 129:*13*
**Bye-bye** 84:*21*

**< C >**
**cabinet** 118:*16*
**calendar** 57:*8* 60:*14* 63:*17, 19* 64:*14, 20, 22* 72:*10* 120:*1* 127:*24* 129:*22*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

136:*17* 142:*20*
**call** 5:*1*, *4*, *6* 7:*21* 9:*18* 14:*7* 18:*18* 21:*17*, *19* 25:*5* 26:*11* 28:*17* 29:*18*, *19* 34:*11* 35:*9* 37:*10* 43:*24* 49:*4*, *7* 50:*24* 53:*18* 59:*20* 63:*24*, *25* 70:*13* 73:*17* 75:*23* 76:*2* 80:*8*, *9* 83:*11* 84:*17* 89:*4* 90:*4* 106:*8*, *14* 107:*3* 108:*11* 112:*16*, *17* 117:*13* 121:*21* 125:*13* 126:*3*, *19*, *20* 128:*22*, *25* 129:*4* 133:*1*, *7*, *8* 137:*11* 147:*12* 151:*14* 155:*12*, *15*, *18* 158:*4*, *11*
**called** 9:*11* 20:*21* 28:*22* 30:*11* 33:*16*, *21* 34:*5* 37:*11* 42:*11* 43:*24* 44:*4* 60:*24* 63:*21* 72:*2*, *5* 73:*16*, *17* 77:*2* 85:*10* 87:*2* 89:*16* 90:*3*, *22* 100:*20* 101:*16* 109:*19* 112:*18* 117:*24* 120:*18* 122:*4* 125:*11*, *15*, *19*, *21* 132:*18* 147:*22* 162:*9*
**Call-in** 11:*21* 14:*17*
**calling** 17:*18* 41:*2* 159:*5*
**calls** 26:*17*, *18* 33:*22* 52:*13* 53:*17* 64:*24* 96:*25* 97:*13* 112:*9* 125:*8*, *9*
126:*19*, *21* 147:*10*
**calmly** 132:*19*
**camera** 11:*16* 109:*14*
**cancel** 72:*12*, *24* 73:*1*, *4* 140:*9* 154:*12*
**cancellation** 140:*8*
**cancelled** 71:*4* 130:*21* 140:*2* 141:*3* 156:*11*
**cancelling** 72:*18*
**cancels** 72:*19* 140:*11*
**candidates** 151:*22*
**capable** 156:*5*
**capacity** 142:*17*
**car** 43:*14* 49:*22* 125:*20*, *21* 131:*3*, *4*, *8* 132:*19* 138:*1*, *9*
**Cardinals** 113:*14*
**care** 12:*8* 31:*19* 32:*16* 54:*15* 72:*9* 94:*22* 152:*4*
**career** 35:*23* 122:*17*
**carefully** 86:*8*
**CARLTON** 4:*12* 122:*3*, *10*
**Carter-Hicks** 5:*16*
**case** 11:*5* 87:*23* 91:*5*, *19* 99:*12* 104:*25* 149:*8* 164:*19*
**catch** 25:*2* 130:*13* 137:*24* 138:*14*
**catching** 135:*5*
**catty-corner** 110:*9*
**caught** 32:*19*
**cause** 19:*18* 140:*3* 152:*6*
**cell** 33:*17* 52:*11*, *18* 127:*3*, *5*, *6*
**Centene** 112:*2* 121:*4* 130:*25* 131:*10*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

140:22
141:8
142:9, 16
**Center** 31:3
131:16
143:2, 16
158:16
**Centers**
19:13
146:17
**certain**
17:16 42:1, 22 148:4
**certainly**
106:22
163:10
164:24
**CERTIFICATE**
170:1
**Certified**
1:16, 17
170:4, 19
**certify**
170:5
**cetera**
124:14
128:24
147:5
**CFO** 114:7
129:18
139:11
**chair** 127:3
**chairman**
146:15
**Chairwoman**
5:2, 8
7:23 11:15
**chalk** 153:2
**chance** 27:7
37:3 163:24
**change**
42:23 101:9
**changed**
79:23
**changes**
152:3
161:12
**changing**
79:25
**Chantal** 2:6
**chart** 42:8, 20, 23 126:8
**charter**
25:8, 10
**chat** 12:12
78:4
**check** 32:8
58:17
64:20 66:7
112:15
147:11
**Chief** 19:12
30:24
31:13
42:21
122:13
123:2
138:22
**choose** 6:1
21:15
**cite** 22:21
163:13
**CIVIL** 1:2
2:3 15:6
16:9 25:13
29:3, 16
44:17
98:15
101:25
104:12, 15
152:1
166:15
**claim** 161:18
**claimant**
21:19
**clarified**
136:11
**clarify**
23:24
56:19 63:8
88:18 136:5
**clarity**
73:17
**clear** 19:22
40:9 73:12
94:4 119:2
136:12, 15
**clinical**
31:2, 19, 24
32:17
123:16, 17
152:2
**close** 29:13
162:17
**closed** 5:24
7:18, 21
8:6, 9, 18, 20, 23 9:3
14:7, 16
17:7, 8
119:14
127:17
**closely**
62:1 65:2
**CLOSING** 3:6, 7 26:14
27:9, 24
159:8, 14
160:23, 25
168:9
**CMO** 114:7
**coat** 62:14
**cold** 24:2
**collect**
17:5 22:12
23:4, 8
84:8
**collected**
92:6
**column** 6:24
**come** 21:10
32:15
36:19 59:1
66:17
87:13
88:11, 25
91:22
93:16, 23
105:22
106:2
153:22
159:23
**comes** 66:6
93:21 98:10
**coming**
18:15 24:2
44:23 46:7
87:3 88:9
92:17
93:20
100:5
102:8, 10
108:15
**COMMISSION**
1:2 2:3
6:1, 3
10:17 11:3, 6 12:23
15:6 16:3,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

6, 10 17:4, 9, 13 18:13, 15 22:6, 11, 13 23:3, 7, 13, 19 24:1, 12 26:23 31:14 51:9 104:16 106:25 107:11 115:2, 7 144:24 150:11 159:21 160:13 161:25 162:4, 18 163:6 164:16 166:13 167:15 168:14 169:2
**Commissioner** 2:4, 5, 6 5:4, 9, 10, 11, 12, 13, 14, 15, 16 6:5, 8, 10, 11, 13, 14, 16, 18, 19, 21, 25 7:3, 5, 9, 10, 11, 13, 14, 15, 20, 22, 24, 25 8:1, 3 11:19, 23 12:2, 6, 9 13:2, 6, 7, 12, 17, 22, 24, 25 14:1, 2, 3, 4, 5, 6, 18, 19, 20, 22, 25 15:3, 5, 19, 23 17:21 18:4, 17, 20, 21, 24, 25 19:8 20:7, 10, 14, 16 21:13, 22, 25 22:2, 7, 16 23:11 24:6, 10, 11, 14, 16, 18, 19, 23, 25 25:4, 21, 22, 23, 24, 25 26:1, 2, 7, 8, 9, 16, 25 27:2, 4, 6, 8, 10, 12, 15, 18, 20, 22, 25 28:1, 2, 3, 4, 7 29:18 30:2 59:18 75:19, 23 76:2, 7, 10, 13, 16 105:17 106:1, 5, 11, 13, 16, 18 108:20, 21, 22 115:10, 13, 14, 17, 20, 21, 22, 23, 24, 25 116:10 117:4 145:2 159:7 162:21 163:7, 22 164:1, 9, 11, 13, 14, 18, 19, 23 165:4, 6, 7, 8, 17 166:1, 2, 5, 7, 20, 22, 23 167:1, 5, 9, 21, 25 168:1, 4, 5, 6, 9, 18, 25
**COMMISSIONERS** 2:3 11:8 16:2 17:16 24:2, 22 27:1 28:10 162:7 163:3
**Commission's** 11:7 108:16
**commitment** 125:6
**committed** 129:13
**common** 124:7 155:2
**communicate** 37:12 81:5 83:25 93:22 104:4
**communicated** 29:11
**communication** 51:14 105:11
**Community** 19:12 72:23
**company** 92:7
**compel** 17:16
**compelled** 17:12 23:1
**competent** 161:2, 8, 22, 23
**complaining** 124:16
**complaint** 124:18
**complaints** 152:13, 14
**complete** 170:7
**completed** 152:9
**completely** 101:9 160:7
**compliant** 66:7
**computer** 11:16, 22 84:8 86:10 97:5, 7
**con** 139:12
**concern** 58:17 100:19 133:15 140:4, 8
**concerned** 73:9 90:9 100:12 101:3, 4 156:14
**concerning** 15:16, 17
**concerns** 87:4 88:9

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**conclude** 28:20
**concluded** 169:7, 12
**conclusion** 29:14
**conclusions** 18:10, 12 22:5, 19 23:18 24:4, 8 159:11 162:23 163:12, 15, 25 165:10 166:8 168:12
**concur** 13:6 19:8 24:10
**condition** 47:15
**conduct** 16:7 33:2 52:11, 17 119:19 166:17
**conducted** 58:9
**conducting** 58:2
**confer** 105:21
**confirm** 14:17 41:25 46:1 60:1, 9 125:25 157:11 162:10
**confirmation** 52:3 159:6
**confirmed** 42:14 107:13 126:1, 3 136:18
**conflicting** 18:5
**conform** 16:16
**confront** 167:12
**confronted** 82:14 124:15
**confused** 126:18 152:24 153:3 158:22, 23 166:24
**connection** 47:3
**consecutive** 148:14
**consecutively** 99:4
**consider** 16:13 17:20 26:23 101:12 160:10 169:2
**considered** 16:21
**consistently** 144:11
**consists** 61:24
**consumer** 146:16
**contact** 37:20 55:24 62:18 63:14 89:15
**contacted** 55:18
**contacting** 56:14
**contemplating** 86:17, 19
**contemporaneous** 44:21
**context** 126:5 130:5 132:5 136:18 154:2, 5, 13
**continually** 149:1
**continue** 49:8 108:6 109:2 116:8 159:25
**continued** 52:6 108:6 125:19 128:7 129:16 131:4, 10 132:9 137:11 148:17, 22 160:1, 3
**continuing** 45:6 95:12
**contract** 139:12
**control** 94:23
**convened** 15:1, 4
**conversation** 28:25 36:9 37:17 38:22, 25 39:17 43:5, 6, 10 44:2 47:4 50:6, 11 51:8 52:2, 9 53:12, 21 54:10 58:11, 20, 23 63:9 67:22 68:12 73:13 79:16 80:12, 18, 20 81:2, 18, 21 83:3, 8 89:19, 20 90:8 91:8 92:12, 13, 14, 16, 18 97:23 104:19 105:1 113:13 116:18 120:22 129:20 134:13 137:6 139:11, 12

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

154:13, 23 155:24 156:13 161:13
**conversations** 46:9 47:1 50:8 51:3, 15, 16 53:11 64:25 78:8 118:24 120:5 129:17 134:14 139:14 141:9 157:8
**COO** 118:12 120:23 122:17, 23 123:15, 16 142:17
**cools** 73:21
**coordinate** 29:22
**copied** 50:20, 22
**copies** 16:4 17:24
**copy** 10:14 75:12 103:17 104:16 163:16
**corner** 11:25
**Correct** 7:4 8:23, 24 14:20 18:2 21:24 41:6, 7, 16, 17, 19 43:24, 25 45:25 46:13, 15, 16, 18 47:8 48:9, 25 49:1, 18 50:1, 16, 17, 21 51:24 52:12, 24 53:9, 25 54:23, 24 56:21, 22 57:2, 18 67:20 69:20 72:10 82:4, 5, 23 84:9, 10 95:16, 21, 23, 24 99:4 100:16 102:16, 20 111:1, 2 115:12 122:14 123:12 124:2 127:20 133:1, 25 134:1 137:12 140:23 141:5 142:18 144:25 145:8, 22, 23 146:11, 13 147:1, 2, 6 149:21 150:1, 11, 16 165:2 170:8
**correcting** 144:3
**corrective** 87:12
**correctly** 111:5 117:14
**correspondence** 144:24 145:7
**counsel** 51:3, 13, 16, 17, 20 53:22 67:14 69:22 81:15 93:9 103:8, 13 133:17 149:19 163:14
**Counselor** 15:12 89:25
**counsel's** 103:2, 20
**counts** 113:4
**COUNTY** 1:1 2:9, 21 10:11 15:6, 11, 12, 13 17:14, 18 19:17 20:3 21:18, 22 22:1, 15 23:6, 13 25:4, 10, 11, 12, 20 26:11 28:4 30:23 40:23 47:4 49:8 52:12, 19 58:2 59:18 75:19 77:11, 18, 22 85:18 89:1, 25 103:2, 19 105:17, 19 107:1, 2, 21 108:7, 10 116:11 118:9 120:17, 20 123:12 124:16 125:4 127:24, 25 128:1 133:17 145:7 147:20 148:1 149:4, 16 162:24 163:14, 24 165:11, 15, 23 166:9 167:20 168:13
**couple** 17:2 22:10 25:7 57:6 80:15 90:25 105:22 112:20 126:19, 20

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

132:*15* 134:*18* 141:*9* 147:*10*
**course** 33:*5* 38:*24* 77:*22* 88:*23*
**court** 30:*18* 61:*6* 77:*7* 85:*15* 123:*4* 164:*21* 167:*22*, *23*
**courtroom** 16:*17*
**cracked** 63:*5*
**crazy** 157:*20*
**credibility** 161:*12*
**crew** 152:*2*
**crews** 143:*15*
**critical** 124:*22*
**cross** 21:*10* 121:*15*
**CROSS-EXAMINATION** 40:*16* 67:*11* 81:*12* 93:*6* 116:*13* 152:*18*
**C-suite** 93:*14*, *15*, *20*, *25* 94:*6* 95:*4*, *6* 99:*16*, *22* 100:*2*, *7*, *8* 134:*14* 159:*20*
**C-team** 157:*18*, *24*
**Cunningham** 1:*9* 2:*15* 4:*3* 8:*9* 9:*18* 10:*18* 11:*3*, *9* 12:*24* 13:*15*, *18* 14:*9*, *15* 21:*7* 28:*22*, *25* 29:*7* 31:*5* 37:*11*, *13* 39:*13* 43:*24* 44:*4*, *5* 49:*5*, *9* 51:*4* 52:*23* 53:*7*, *9* 56:*3*, *7*, *9* 68:*23* 75:*21* 77:*13* 78:*19*, *20* 79:*12* 81:*7* 82:*2* 83:*21*, *23* 84:*25* 85:*5*, *9*, *14* 87:*6* 93:*4*, *8* 105:*8*, *15* 107:*13* 108:*1* 115:*3*, *10* 116:*2* 117:*1* 118:*17* 131:*20* 132:*10* 133:*19* 144:*14*, *15*, *17*, *19*, *21*, *22* 145:*16* 146:*3*, *8*, *23* 156:*24* 159:*22* 167:*3*
**C-u-n-n-i-n-g-h-a-m** 85:*16*
**Cunningham's** 29:*10* 69:*20* 161:*3*
**current** 126:*8*
**currently** 8:*22* 60:*8*
**curse** 35:*1* 43:*8* 84:*4* 90:*6* 119:*21* 135:*2* 154:*17*
**cursed** 28:*17* 33:*10* 39:*23* 128:*23*
**curse-laden** 49:*2* 58:*15* 83:*3*, *8*
**curse-ridden** 43:*7*
**curses** 110:*22*
**cursing** 50:*10* 81:*24* 92:*10* 113:*18* 132:*22*, *23*
**curve** 87:*5*
**cuss** 132:*3* 153:*16*
**cut** 162:*5*
**CX** 3:*14*, *19*, *23* 4:*5*, *9*, *14*

< D >
**daily** 32:*18* 61:*24*
**DAMON** 4:*10* 117:*14*, *16*, *23* 121:*19* 123:*1*
**data** 126:*11* 141:*22*
**date** 163:*17*, *19* 168:*16*, *19*, *20*, *21* 169:*1*
**David** 19:*10* 123:*1*
**Davis** 114:*16*
**day** 33:*15* 37:*21* 44:*25* 45:*7*, *18*, *24* 46:*13* 47:*10* 48:*9* 59:*4* 62:*8*, *12* 64:*10* 65:*1*, *3*, *4*, *5*, *16* 69:*13*, *16* 70:*19*, *20* 71:*3*, *12* 72:*8*, *16* 79:*3*, *7*, *10* 81:*22* 96:*11* 107:*6*, *19*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

112:2, 14
119:5, 9
124:7
128:7
129:13, 16
130:14, 15, 21 135:20
137:16
138:19
139:18
143:14
146:4
147:22, 23
148:18, 21, 24 170:13
**days** 29:5
47:20
90:25 99:4
135:6
148:14
150:15
162:22
163:8, 18, 23 164:10
165:9
166:7, 9
168:13, 19, 21, 23
**deal** 91:2
**December**
157:17, 24
**decided**
140:22
**decision**
10:7 11:4, 7, 11, 13
16:6 88:16
115:2, 8
160:9 161:3
**decisions**
87:10, 12, 13
**deescalated**
134:9
**Define**
154:24
**defined**
155:4
**definitely**
32:13
44:11
58:22
89:22
106:21
142:1
**delayed**
150:15, 20
**demeanor**
34:19, 25
36:15, 17
62:20
**denied**
50:20
102:15
144:10
149:1 160:3
**deny** 19:5
38:25
133:18
144:5, 8
**denying**
102:19
146:10, 24
161:4
**depart**
121:18
**Department**
5:22 19:11
77:20, 23
85:19 88:4
99:13
122:13
142:17
**Department's**
15:10
**depending**
19:25 88:5
**deposition**
86:24
**Deputy**
19:10
118:10
**DERRICK**
3:12 28:14
29:20, 24
30:4, 10, 15, 17, 20, 22
35:13
55:12
59:14, 16
63:15, 22
64:4, 5, 19
65:9 66:24, 25 67:25
70:17, 25
71:5, 7, 8
72:15, 16, 19 73:10, 16, 18
79:20 80:8
86:5 90:17, 22 96:17, 19, 25 97:2
100:23
102:2, 4
123:1
124:1
125:8, 9, 15, 23 126:5
127:21
129:24
130:20, 22
131:2
132:9
136:15, 19
141:11, 14
144:20
145:16
146:18
153:11, 24
154:1, 4, 23
158:1
**D-e-r-r-i-c-k**
30:20
**Derrick's**
126:22
131:24
132:3, 5, 7
134:13
137:20
149:13
153:16, 19
154:16, 19, 20
**describe**
34:19
47:25
62:19
110:2
118:13
124:4
151:17
**described**
40:25
**describing**
37:1 58:15
**description**
54:23
122:17
131:23

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**designated** 15:*7*
**designation** 66:*6*
**desiring** 88:*25*
**desk** 64:*12* 126:*18* 128:*3* 139:*4*
**detailed** 34:*23*
**details** 37:*18*
**determine** 161:*7*
**Diane** 139:*6*
**difference** 104:*25*
**different** 40:*12* 65:*3*, *5* 76:*13*, *15*, *16* 86:*25* 99:*18*, *22* 136:*19*, *20* 152:*8*
**differently** 137:*7*
**difficulties** 32:*5* 85:*4*
**Dionne** 146:*9*, *14*, *15*, *23*
**DIRECT** 30:*13* 31:*7* 41:*5*, *13*, *22* 42:*4*, *14* 61:*1* 77:*4* 79:*6* 85:*12* 92:*21* 98:*12* 105:*10* 109:*21* 118:*1* 122:*6*
**directed** 92:*5*
**direction** 16:*25* 78:*21* 104:*1* 170:*10*
**directly** 21:*1* 78:*12* 84:*1* 85:*24* 87:*25* 88:*15* 89:*10* 91:*2* 93:*23* 94:*1* 98:*9* 99:*13* 100:*9* 104:*19* 110:*7* 136:*3* 157:*10*
**Director** 19:*11* 77:*20* 85:*19* 101:*20* 118:*11* 147:*25*
**directors** 146:*17*
**disabled** 48:*21*, *24*
**disagree** 124:*8*
**disagreement** 19:*5*
**disagreements** 33:*7*, *8*, *9*
**disciplinary** 87:*12*
**discipline** 32:*22*
**disciplining** 86:*17*
**discovered** 129:*25*
**discovery** 167:*7*
**discretion** 166:*19*
**discuss** 100:*1* 103:*8*
**discussed** 103:*8* 104:*2* 124:*19* 157:*9*
**discussing** 152:*7*
**discussion** 15:*15*, *20*, *24* 60:*18* 101:*9* 103:*19* 113:*21* 119:*9*
**dismissal** 160:*10*, *11*
**dismissed** 108:*7*
**dispute** 20:*12* 159:*16* 161:*4*
**disputed** 19:*14* 20:*6*
**disputing** 155:*19* 161:*21*
**disrespectful** 121:*7*, *9*
**dissatisfaction** 78:*6*
**distance** 65:*15*
**distributed** 24:*22*
**disturbed** 63:*18*
**division** 88:*6* 99:*23* 100:*6* 168:*11*
**doctor** 20:*20*
**document** 44:*12*
**documentation** 17:*5* 19:*18* 39:*21* 44:*3* 55:*1* 166:*15*
**documented** 52:*22*
**documents** 6:*12* 10:*11* 16:*5* 24:*21* 66:*12* 75:*14* 149:*4*, *20* 169:*2*
**doing** 25:*9* 45:*11* 46:*23* 58:*4* 63:*4* 69:*24* 151:*18*, *21*
**door** 91:*22* 107:*16*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

119:*14*
127:*17*, *18*
130:*11*
131:*3*
137:*20*
**dotted** 102:*3*
**doubled-down** 37:7 52:*6*
157:*9*
**doubt** 21:*3*
37:*6*
**downstairs** 130:*12*
**DPH** 29:*6*
30:*25*
59:*21*, *25*
60:7 87:7
**Dr** 1:*9*
2:*15* 4:*3*, 7 8:*9*
9:*18* 11:*3*, *9* 12:*24*
13:*15*, *18*
14:*9*, *15*
19:*11*
20:*19*, *20*
28:*22*, *25*
29:*7*, *10*
31:*5*, *11*
37:*11*, *13*
39:*13*
43:*24* 44:*4*, *5* 49:*5*, *9*
50:*6*, *7*
52:*23* 53:7, *9* 54:*8*
56:*3*, *7*, *9*
68:*23*
69:*20*
75:*21*
77:*13*
78:*19*, *20*
79:*12* 81:7
83:*21*, *23*
84:*25* 85:*5*, *9*, *14* 87:*6*
93:*4*, *8*
105:*8*, *15*
106:*10*
107:*13*
108:*1*, *12*
109:*5*, *7*, *9*, *11*, *13*, *18*
115:*3*, *10*
116:*2*, *15*
117:*1*, 7, *11*
118:*17*
123:*2*
129:*18*, *19*
131:*20*
132:*10*
133:*19*
144:*14*, *15*, *17*, *19*, *21*, *22* 145:*16*
146:*3*, *8*, *23*
156:*24*
157:*25*
159:*22*
161:*3*
**drafted** 69:*8*
**draw** 29:*14*
**drawn-out** 19:*21*
**drive** 138:*1*
**drive-by** 139:*14*
**driving** 35:*14*, *16*
67:*19* 70:*14*
**dropped** 134:*16*
**drove** 131:*9*
**Duane** 1:*8*
2:*12*, *19*
4:*12* 28:*12*
122:*3*, *10*
**due** 85:*3*
141:*13*
160:*10*
167:*11*, *18*
168:*12*
**duly** 60:*21*, *24* 76:*24*
77:*2* 85:7, *10* 109:*16*, *19* 117:*21*, *24* 122:*1*, *4*
**duties** 31:*15*
123:*14*
**dwell** 65:*10*
**DX** 3:*13*, *18*, *22* 4:*4*, *8*, *11*, *13*

**< E >**
**earlier** 46:*8* 54:*5*
89:*24*
115:*9*
124:*19*
130:*21*
141:*23*
**earnest** 54:*12*
**echo** 61:*11*
86:*5*, *12*
95:*16*
140:*16*, *17*
145:*3*, *12*
154:*13*
**echoing** 140:*14*
**educate** 24:*1*
**Edward** 61:*8*, *9*
**effects** 47:*17*
**eight** 152:*8*
**either** 16:*14*, *16*
26:*13*, *20*
39:*11*
55:*15* 62:*6*
89:*3* 91:*2*
118:*24*
134:*3*
146:*20*
162:*23*
164:*9*

**electronically** 126:*9*
**elevated** 113:*20*
119:*8*, *10*
127:*9*
**else's** 55:*15*
159:*18*
**email** 48:*20*, *23* 49:7
50:*22*
55:*19*
66:*13*
71:*22* 81:*4*, *5*, *6* 91:*11*, *16* 92:*6*
103:*3*, *6*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

104:17
112:22
116:6
120:16
142:8
144:24
145:6, 17, 18, 21, 25
146:4, 20
147:8, 9, 18, 20, 21
**emailed**
145:15
146:2, 6, 8, 22
**emails**
47:21 48:2
50:20
52:13 91:2
102:18
103:15, 16
112:10
145:14
147:5, 11
**emergency**
148:10
**emotional**
157:23
**emphatically**
102:19
**employed**
95:2
**employee**
6:25 7:17
8:8 29:6
55:22
94:18, 23
104:23
105:9, 11
123:12
124:14, 18
148:11
161:22
**employees**
54:15 91:3
104:11, 14
107:2
108:10
**employee's**
8:8 94:12
95:2
**Employment**
2:20
**empty** 138:6, 7
**EMR** 151:22
**enclosed**
23:2
**endeavors**
81:9
**ended** 92:17
**enforce**
107:25
**engage** 58:5
68:4
**enter** 47:20
**entered**
29:24 60:4
76:5 85:6
109:5
117:16
**entering**
15:20
**enterprise**
31:25
**entire**
31:24 83:6
101:9
107:19
132:13
**entitled**
115:4
**environment**
158:20
**envy** 161:6
**Epic** 131:17
143:15
**equipment**
92:7
**Erica** 139:6
**erratically**
36:22
**escalate**
88:5
**escalation**
91:23
**escort**
83:11, 18
**especially**
67:16
**Esq** 2:5, 10, 13, 16
**essentially**
24:3 34:4
38:1 151:19
**et** 124:14
128:24
147:5
**EUGENIA**
3:17 31:10
49:16
57:13
59:20 60:4, 7, 10, 23
61:5 75:6
114:16
156:10, 15, 17
**Event** 59:22
**events**
72:22
116:16
**eventually**
72:5
**everybody**
8:22 55:14
70:1
108:17
126:4
162:22
**evidence**
16:2, 5, 12
160:2
161:3, 9, 24
167:19
**exact** 120:19
**exactly**
70:21
114:12
119:6
164:18
165:4
166:24
**EXAMINATION**
30:13 55:9
61:1 74:5
77:4 85:12
105:5
109:21
118:1
122:6
156:21
**examined**
30:11
60:25 77:3
85:11
109:20
117:25
122:5

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM


**example** 94:*21*
**examples** 89:*7*
**exchange** 112:*9* 120:*6*
**exchanged** 43:*9*
**exchanges** 158:*17*
**excuse** 8:*17* 35:*15* 143:*23*
**execution** 151:*25*
**executive** 29:*11* 30:*24* 61:*25* 77:*12* 88:*7*, *8* 93:*18* 98:*11* 99:*24*, *25* 100:*2*, *10*
**executives** 124:*8*
**exercise** 5:*25*
**exhibit** 165:*21*
**exhibits** 17:*23* 26:*5*
**existed** 101:*14*
**existence** 161:*4*
**exit** 108:*24*
**exited** 14:*15*
**expedite** 164:*5*, *16*
**experience** 32:*17* 82:*24* 87:*3*
**explain** 51:*10* 136:*11*
**explained** 89:*23* 90:*7* 112:*18*
**explaining** 145:*21*
**explanation** 149:*4*
**express** 78:*5*
**expressed** 126:*25*
**external** 123:*17*
**extremely** 133:*14*

**< F >**
**face-to-face** 65:*10*
**fact** 18:*10* 19:*13* 20:*5* 22:*5*, *19* 23:*17*, *22* 24:*4*, *7* 26:*6* 37:*4* 40:*9* 57:*11* 83:*19* 107:*20* 108:*6* 142:*3*, *12* 153:*2* 156:*9* 159:*11* 162:*23* 163:*12*, *15* 165:*10* 166:*8*
**factors** 101:*12*
**facts** 17:*24* 18:*4*, *12* 19:*14*, *17*, *22* 20:*6*, *8*, *11*, *13* 22:*22* 163:*25* 168:*12*
**factual** 18:*5* 161:*4*
**fair** 34:*16* 55:*16* 82:*17*, *20* 116:*22* 128:*11* 153:*14*
**fairness** 23:*5*
**familiar** 44:*17* 49:*25* 94:*16* 98:*2* 162:*15*
**family** 38:*9* 157:*15* 158:*2*, *3*
**far** 6:*24* 25:*15*
**fast** 27:*17*
**fated** 146:*7*
**favor** 7:*12* 14:*2* 25:*24* 28:*1* 115:*22* 168:*2*
**F-bombed** 128:*23*
**fearful** 58:*22*
**February** 28:*12* 31:*6* 32:*1*, *22* 33:*12* 37:*21* 39:*11* 46:*13*, *15* 51:*24* 56:*21*, *24* 57:*16*, *17*, *18* 62:*7* 67:*19* 68:*8*, *14* 70:*10*, *13* 73:*14* 74:*12* 78:*13* 79:*2*, *4*, *7* 81:*20*, *22* 82:*3* 86:*16* 87:*17* 89:*11* 95:*25* 102:*16* 110:*11*, *12*, *25* 111:*22*, *23*, *25* 112:*10* 113:*2*, *22*, *25* 114:*5* 119:*5*, *24* 120:*14* 121:*1* 122:*12* 124:*21*, *23* 125:*1* 134:*4*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

138:16
140:21
145:15
146:6, 8, 24
149:17
150:14
164:8
**federal** 66:6 87:1
**Federally** 31:3
**feel** 56:11, 16, 18 134:9
**feeling** 60:13 67:15 70:16
**feet** 126:18
**felt** 128:19 158:11
**figure** 132:1
**file** 17:3 23:16, 21, 22 118:16 144:25 150:25 162:23, 24
**filed** 15:7 19:2 23:23 24:21
**filing** 165:11
**filled** 54:23
**filtered** 88:10
**final** 105:7 159:15 162:17 163:7 166:6
**finally** 33:21 95:8
**financial** 31:17
**find** 121:7 127:23 147:19 160:13 161:2
**findings** 18:9, 12 22:5, 19 23:17 24:4, 7 26:6 159:10 162:23 163:5, 12, 15, 24 165:10 166:8 168:12
**fine** 11:19 27:11 103:14 107:9, 12 108:21 159:22
**F'ing** 80:18 90:6 126:14 133:9 155:20, 21 156:6
**finish** 154:8
**finished** 116:10 137:16
**firing** 87:11 93:23
**first** 6:23 11:13 12:22
17:18 21:16, 22 26:11 29:6, 18 38:21 59:6 60:24 62:12 66:3 77:2, 8 80:4 85:10 92:11 109:19 117:24 122:4 126:23 132:4 133:21, 22 141:10 144:17, 19 147:15 153:23
**fit** 42:23 166:18
**five** 17:19 27:14, 16 31:10 64:1 106:3
**flight** 54:9 151:18
**floor** 165:5
**FMLA** 101:8, 13
**focus** 31:18
**focused** 125:24
**folks** 139:4, 12 142:7, 16
**follow** 16:11 81:2, 4 91:15 92:5
103:25
104:12
**followed** 104:2 160:11
**following** 6:23 9:2 151:24
**follows** 9:4 30:12 60:25 77:3 85:11 109:20 117:25 122:5
**follow-up** 74:7 105:7
**Foote** 31:10 141:10 158:1
**foregoing** 170:7
**formal** 56:4
**formality** 115:18
**for-profit** 122:20
**forth** 21:16 157:5
**forward** 138:20
**foul** 65:22
**found** 131:5 147:21, 22, 23
**four** 17:18 33:17 34:6 61:19 129:12 143:14

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM


**FQHC** 32:17, 20 61:16, 25 62:1 66:5 86:25
**free** 64:23
**frequently** 32:13
**fricking** 133:9
**Friday** 54:3, 4 69:3, 8 91:9 96:11 112:4, 5, 13, 21 120:15 130:22, 24 140:1, 9 143:4 144:1
**friend** 100:20, 21, 25 101:16
**Frierdich** 2:13 3:14, 16, 19, 23 4:5, 8, 11, 13, 15 9:7, 14, 20, 24 10:6, 10, 13, 16, 23 13:10 14:17, 21 16:22, 24 17:2, 20 18:8 19:9 21:5 22:3, 9, 18, 24 23:16 24:12, 20, 24 25:2, 16 26:12, 23, 24 27:14, 16 40:17, 19 54:25 55:6 57:5 59:9, 11 67:7, 12, 13 74:3 75:1, 11 81:13, 15 84:15, 20 93:7, 9 97:11 101:22 103:7, 11 105:2, 14, 21, 25 106:8, 13, 17, 21 108:14 109:1, 4, 22, 23 114:18, 22 117:6, 10, 13, 19 118:2, 4 121:17, 21 122:7 123:8 145:3, 5 152:15 153:6 154:8 156:22 159:3, 5, 10, 15 160:24 161:20 162:2, 13 163:21 164:4, 21 165:16, 20 167:11 168:8 169:8
**front** 35:7 48:11, 14 129:14 139:4 157:17 158:1
**frustrated** 128:12 133:13, 14
**fucking** 28:18 35:14, 16, 18, 25 36:1, 5, 11, 21 37:8 58:9 161:19
**full** 16:6 23:1 30:15 123:11
**fully** 102:4
**further** 15:20 40:13 52:2 56:23 59:12 79:16 105:10 117:3 156:20 159:4
**furthermore** 58:8
**future** 81:9
**F-word** 46:25 67:22 80:24 126:4, 5
**< G >**
**gain** 66:5
**GARDNER** 3:21 9:19 53:6 69:9, 19 75:10, 13, 16, 25 76:4, 5, 12, 14, 16, 19, 22 77:1, 6, 11 81:14 84:22 131:18 145:16 146:3, 9, 23 150:4 152:23
**G-a-r-d-n-e-r** 77:9
**gathered** 97:18
**gathering** 59:1
**gearing** 54:16
**Gee** 101:20
**general** 16:8 53:15 114:16
**generalist** 77:22
**generally** 22:20 32:1 84:2 86:22 113:7 163:5, 17
**genuinely** 101:2, 4
**getting** 8:20 58:7

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

96:21
97:20
116:23
125:20
163:15
**gin** 161:18
**Gina** 8:13
49:13, 18, 20 71:6
126:20
127:18
130:20
134:22
136:5, 12, 17 140:2
151:6 158:1
**Gina's**
129:20
**girl** 61:8
**give** 9:5
13:9 29:21
37:5 51:13
53:2 59:15
68:20, 22
85:1 86:15
88:8 89:24
91:7 104:6
108:13
116:1
122:16
160:18
162:22
163:3
**given** 58:19, 23 75:12
151:6, 11
158:15
**gives** 25:8
**giving**
60:16 118:7
**Glad** 10:23
**go** 5:1, 18
7:20 8:17, 25 15:4
16:24, 25
47:16, 19
55:23
57:11
62:17 65:4, 14 75:3
86:15
91:14
98:11, 18
99:11, 13, 21 100:2
104:15, 21, 22 112:15
117:8, 9
121:23
122:10
130:4
131:23, 24
132:3, 7
133:5, 10
136:4
139:20
149:13
153:12, 16, 19 154:10, 16 162:18, 20
**Goen** 2:20
8:4, 15, 24
14:9 29:21
30:1 59:14, 23 60:6, 11
75:8, 16, 18
76:9, 17, 20
85:1
108:13
109:7, 10, 12, 15
116:1, 9
117:15
**goes** 49:18
88:24 93:17
**going** 6:16
9:7, 12
10:18
15:14 20:1
33:12
35:21, 23
38:5, 8, 13
40:11
58:21, 22
64:21
66:20 73:2
74:11
113:15
114:1
126:17
130:9, 17
131:3, 9, 10, 16 132:4, 13 136:15
143:15
152:3, 6
154:12
155:19
157:10, 20, 21 162:19
166:21
**Goldkamp**
2:10 7:6, 16 8:7, 12
11:2 12:22
13:14, 20
14:8, 24
15:2 16:23
17:1, 15
21:17, 24
23:13
24:21
25:18
26:21
60:19
76:12, 15
109:1, 2
114:25
115:12, 18
116:5
162:2, 7, 15, 16 163:2
164:20
165:3
168:16, 23
**Good** 28:10
29:4 75:3
87:21 98:3, 16, 23
107:15
117:18, 19
124:14
131:5
152:12
159:23
161:5, 15
**goodness**
166:5
**gossip**
116:20
**gotcha**
109:15
113:16
**gotten**
80:21
111:17
147:17
149:11

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**GOVERNMENT** 1:*1* 15:*13* 66:*6*
**grab** 102:*9*
**grabbed** 132:*15*
**granted** 17:7
**grants** 31:*18*
**great** 145:*4*
**GRIEVANCES** 1:7 5:*21*
**grounds** 160:*13*
**group** 125:*2*
**guess** 62:*13* 73:*15* 80:*11* 92:*13* 107:*4* 128:*5* 131:*2* 162:*9* 166:*23*
**guidance** 6:*22* 103:*24*, *25* 104:*3*
**guidelines** 66:*8* 87:*1*
**guys** 129:*11* 140:*16*

**< H >**
**half** 147:*24* 161:*16*
**hall** 47:7 113:*12* 118:*15* 136:*1*
**hallway** 127:*19* 139:*10* 158:*18*
**hand** 34:*1* 170:*13*
**handful** 88:*20*
**handle** 10:*5*
**hands** 5:*6*
**hanging** 42:*9*
**happen** 37:*24* 44:*3* 74:*13* 92:*12*, *14* 112:*19* 157:*21* 158:*17*
**happened** 28:*23* 36:*6* 37:*15* 39:*18* 44:*6* 50:*11* 53:*9*, *12*, *21* 65:*12*, *17* 68:*24* 69:*13* 70:*16*, *25* 81:*21* 88:*20*, *23* 89:*2* 90:*2*, *3* 91:*4* 92:*4* 99:*9* 108:*5* 112:*21* 125:*14* 132:*2* 137:7 149:*17*, *21* 157:*22* 158:*6*, *9*
**happening** 36:*25* 40:*25* 118:*24* 140:7
**happens** 91:*20* 99:*21* 129:*11* 134:*17*
**happy** 48:7
**hard** 108:*17* 123:*4*
**head** 45:*5*
**headed** 16:*25*
**heads-up** 88:*9*
**Health** 5:*23* 19:*11*, *12* 31:*3* 77:*20*, *23* 85:*20* 90:*9* 100:*13* 118:*11* 122:*14* 131:*15* 142:*17* 143:*2*, *16* 146:*17* 158:*16*, *17*
**healthcare** 122:*21*
**hear** 12:*16* 19:*6* 28:*12*, *13*, *22* 29:*8* 30:*4* 63:*12* 66:*25* 67:*1* 76:*18*, *19*, *20* 83:*6* 86:*6*, *7* 109:*8* 113:*11*, *13*, *15*, *20* 115:*5* 118:*24* 119:*2*, *14* 123:*5* 136:*5* 140:*16* 141:*14*, *15* 145:*1*, *2* 151:*8*
**heard** 12:*25* 28:*20* 29:*1*, *14* 36:*19* 37:*2* 67:*5* 68:*10* 82:*2*, *6* 83:7 110:*18* 113:*17* 119:*12* 124:*1* 129:*11*, *20* 133:*22* 138:*23* 149:*5* 151:*5* 152:*11* 153:*18*, *22* 159:*12*, *16*, *22* 161:*11*, *17*
**hearing** 5:*5* 6:*2*, *9*, *15*, *21* 7:*9*, *17* 10:*3* 12:*24* 13:3 15:*1*, *3*, *7*, *25*

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 267 of 1127 PageID #: 270
Page 255 of 331
Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

16:7 17:8 19:7, 21 22:21, 23 23:2 24:8, 16, 18 26:13 27:3 29:13 56:14 109:2 115:3, 5 116:8 119:8 133:20 149:5, 6, 8 150:18 151:7 152:11 156:24 162:5, 16, 18 169:7, 12 170:6, 9
**HEARINGS** 1:7 5:20 16:10
**hearsay** 107:25
**heated** 37:16 80:21 89:4 92:16, 18 133:8 154:23, 24 155:2, 4, 7, 9, 10 161:14
**held** 77:17 98:5 122:19
**hell** 64:4
**he'll** 73:17
**Hello** 8:19 81:14
**help** 6:17 18:14 24:1 48:4 130:23
**helpful** 19:1
**helping** 125:2
**helps** 114:15, 16
**hereunto** 170:12
**Hey** 98:18 107:8 125:12
**Hi** 10:23 40:18 67:13 93:8 109:23
**hierarchy** 88:10
**high** 51:23 98:6
**higher** 88:6
**hiring** 87:11 93:22
**historically** 98:17
**history** 72:22
**hit** 8:21 9:1 113:15
**Hoffsten** 2:6 5:10, 11 7:10, 13, 22, 25 8:1 13:6 14:1, 3, 6 18:20, 21, 25 25:22, 24 26:2 27:2, 20 28:2 108:22 115:14, 21, 23 164:14, 19, 23 165:6 166:2, 23 167:9 168:5
**hold** 161:24
**holidays** 157:20
**home** 65:4 71:18 111:23 113:3, 15 129:9 130:22 133:5, 10, 11 141:4 142:14
**honest** 40:8 54:11 58:25
**hope** 130:13
**hopefully** 76:1
**hopes** 137:24
**horn** 131:3
**host** 122:25
**hostile** 158:20
**hostility** 58:20, 23
**household** 157:7
**HR** 42:11 49:4, 7 55:18 74:1 77:22 82:25 83:9 93:2 100:18 144:14 147:10 150:25 167:2 168:13
**HRSA** 66:4, 5 87:2, 4
**human** 77:20
**hung** 28:19 36:13 38:21
**husband** 130:18

**< I >**
**ID** 91:15 92:7
**idea** 14:9 135:10, 11 148:19
**Igloo** 61:10
**ignoring** 160:12
**imagine** 36:24 131:21
**immediate** 104:22 150:7
**immediately** 43:23 89:20 110:6 125:21
**Imo's** 129:16
**impact** 160:5 165:1
**impacted** 124:10
**importance** 126:6

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**important** 126:25
**impression** 96:21
**Inaudible** 103:4
**incident** 51:4 65:24 67:3 73:23
**incidents** 69:25
**include** 13:8 62:2 140:6 162:25
**included** 31:17 165:14, 18, 23 166:10 167:6
**including** 147:4 165:11 167:19
**incomes** 152:5
**inconsistencies** 92:3, 9, 22 103:16 153:1, 5, 7
**incorrect** 66:14
**indicate** 50:3, 9 71:8 111:16
**indicated** 45:23 62:16 93:11 114:1
**indicating** 50:15
**indication** 149:15 162:3
**indications** 161:11
**indicative** 134:14
**indirect** 93:13
**indirectly** 31:21 90:15, 16 149:12
**individual** 101:4 166:25
**individuals** 8:16 101:8
**industry** 122:20, 21
**inform** 144:4
**informal** 16:11
**information** 17:6, 12 19:16 33:17, 23 34:23 53:5, 20 58:8 65:11 83:2 89:24 90:1 91:8 103:2 125:23 130:1 149:3 163:3
**informed** 10:3 64:14 78:15
**initial** 150:10
**initially** 38:21
**inquire** 15:14 57:25 99:8
**inside** 47:20
**instance** 29:7
**instances** 93:13 112:12
**instruct** 98:13 103:21, 23 104:7
**instructor** 122:22
**integration** 118:11
**integrity** 132:12
**intend** 23:21
**intending** 9:17
**intends** 13:9
**interact** 78:12
**interaction** 56:23 71:25 77:25 79:7 90:2, 14, 16 96:18, 20 113:5, 6 139:9
**interactions** 21:2 33:14 62:6, 8 113:2, 25 120:15 121:6 139:8
**interest** 58:24 116:23
**interested** 21:14
**internet** 42:11
**interrupt** 64:22 103:6 154:9
**interruption** 12:20 85:3 97:10 123:7
**interview** 122:24 166:16
**interviewed** 51:2 122:25 123:1 151:23 167:2
**interviewing** 122:23
**interviews** 125:3
**investigate** 22:11 23:4, 8 51:11 103:18, 22
**investigated** 102:23 103:1 107:10
**investigating** 33:2

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**investigation** 17:4 23:2 51:8, 10 52:2 84:11 166:14, 17 167:16
**involve** 61:21, 22 65:22
**involved** 70:1 88:15 99:11 135:13 155:23 169:6
**irritated** 36:24
**ish** 34:16 45:3
**issue** 18:14 20:25
**issues** 16:20 24:2 26:3 93:2 168:7
**Item** 5:21
**its** 26:11

< J >
**Jairris** 2:20 116:5
**January** 66:2 77:19 85:23 157:21
**jeopardy** 167:19
**job** 31:15 32:9 54:22 61:21 68:5, 7 78:6 86:22 94:24 95:10 110:19 124:14 125:3 155:6
**join** 9:6 10:23 11:20, 25 12:2, 6 20:22 116:6
**joined** 109:8
**joining** 114:19 118:7
**Joked** 40:4
**jokes** 63:6
**joking** 63:3
**Jones** 146:9, 14, 15, 23
**judicial** 25:7, 10, 19
**Juliana** 1:15 5:17 170:3, 19
**justify** 20:4

< K >
**Kanika** 1:9 2:15 4:3 84:25 85:5, 9 105:15
**K-a-n-i-k-a** 85:16
**Kate** 101:17
**Katherine** 2:13, 16 9:9 22:8 40:19 67:13 81:14 93:8 109:23 118:4 164:4
**Kathy** 62:17 63:15, 19 114:15 127:23 129:21, 25 136:14, 18
**Kathy's** 126:11 127:24 128:3 136:17
**Kaufman** 2:16 3:13, 15, 18, 20, 22 4:4, 6, 9, 14 9:10, 16, 23 10:2, 9, 12, 15 12:13 13:8 15:18, 22 18:3 19:10 20:9, 12, 18 22:2, 18 23:20 25:6 28:6, 8, 10 29:19, 23 30:4, 6, 9, 14 55:6, 10 59:12, 20 60:3, 12 61:2 73:22 74:6 75:3, 9, 17, 21, 25 76:4 77:5 81:10 84:18, 24 85:13 86:14 93:3 94:13 101:18 103:4, 9 105:4, 6, 13, 19, 23 106:3, 12 114:22, 25 116:12, 14 117:3 121:13, 15 152:17, 19 153:8, 9 154:21 159:4 160:22 161:1 166:12 167:4 169:9
**keep** 19:19 27:3 98:21 108:4 127:1 152:20
**kept** 65:8, 15 70:19 71:1, 5 73:11 117:9 130:8 137:3
**key** 142:3
**kicked** 5:18
**kill** 145:12
**kind** 63:3 64:8, 16 65:12, 15 73:9 74:18 87:2 88:8 94:23

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

130:*16* 157:*20*
**kite** 61:*11*
**knew** 42:*8* 59:*4* 64:*5* 92:*25* 114:*4* 130:*6* 147:*25*
**knocked** 91:*21* 126:*23* 130:*11* 137:*19*
**know** 9:*12* 19:*5*, *19*, *23* 20:*1*, *4* 23:*20*, *25* 32:*12* 35:*1*, *4*, *21* 36:*1*, *23* 38:*8* 42:*19* 45:*6*, *8*, *10* 46:*20* 52:*14*, *15*, *16*, *20* 54:*11* 58:*21* 60:*12* 61:*13* 63:*4*, *17*, *22* 64:*6*, *15*, *17*, *18*, *21*, *23* 65:*5*, *11*, *14*, *16* 68:*1* 69:*15* 70:*6*, *8* 71:*8* 73:*17*, *18* 79:*19* 80:*5*, *7* 81:*8* 86:*24* 87:*4* 88:*7*, *14*, *16*, *23*, *24* 89:*4*, *5*, *7*, *23* 90:*3*, *5*, *6*, *10*, *11* 91:*18* 92:*2*, *20* 96:*6*, *8*, *18*, *20* 100:*23* 101:*5*, *7*, *11* 102:*8*, *10* 103:*12*, *24* 107:*6*, *7* 113:*4* 114:*12*, *14* 119:*2* 124:*11* 127:*11*, *12*, *13* 130:*7* 131:*5* 132:*16* 133:*23* 135:*8* 136:*10*, *16*, *21* 137:*20* 138:*12*, *13* 142:*12* 143:*19*, *20*, *25* 144:*14* 147:*22* 158:*3* 162:*9*, *10*, *19* 163:*13* 168:*16* 169:*1*
**knowing** 83:*18* 159:*19*
**knowledge** 40:*1* 51:*7*, *19*, *21* 139:*25*
**known** 131:*12* 136:*21* 137:*6*
**knows** 138:*1*

< L >
**lack** 161:*12*
**Ladevich** 31:*11* 114:*8* 126:*20* 134:*22* 139:*11* 157:*25*
**lady** 162:*25* 165:*13* 167:*1*
**lady's** 105:*23*
**language** 65:*22* 66:*18*
**laptop** 91:*15* 142:*13*
**lasted** 155:*18*
**late** 71:*12* 111:*9*
**laughed** 128:*4*
**laughing** 63:*6*
**law** 18:*10*, *12* 22:*5*, *19* 23:*18* 24:*4*, *8* 159:*11* 162:*24* 163:*13*, *15*, *25* 165:*10* 166:*8* 167:*22*, *23*
**lawsuit** 127:*1*, *12* 135:*10*, *11*
**lay** 18:*14*
**lead** 143:*8*, *10*
**leader** 88:*6*, *7* 98:*12* 100:*10*
**leaders** 88:*8* 99:*23*, *24* 100:*3*, *6* 143:*17*
**leadership** 62:*1* 88:*11* 93:*18* 99:*11*, *25* 100:*1* 104:*21* 122:*19* 131:*16*
**learn** 82:*18* 88:*2*
**learned** 102:*7*
**learning** 87:*5*
**leave** 14:*10* 20:*25* 21:*7* 38:*17* 98:*25* 107:*22* 141:*4* 159:*13*, *24*
**leaves** 99:*13*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**leaving** 70:9 137:18 144:1
**left** 6:24 11:25 39:7 45:23 46:3 56:11 59:16 64:8, 16 71:14 75:6 84:22 96:15, 22 97:18, 20 99:17 105:15 117:11 121:19 127:16, 17 129:14 134:8 135:19 137:25 138:4, 5 141:8 142:8 144:1 158:10 161:19
**legal** 93:2 103:22
**lens** 109:14
**lets** 101:11
**letter** 98:19
**letting** 63:22 90:3
**level** 61:25 88:5 113:14
**life** 129:9
**Likewise** 108:22 117:2
**limit** 27:12 43:11
**line** 6:6 67:9 74:20 102:3
**list** 9:14, 17, 21 17:17 19:3 20:24 54:21
**listed** 19:10 20:5 59:21
**listen** 86:8, 11
**literally** 20:6 126:17
**little** 29:21 31:14 35:6 64:3 67:17 76:20, 23 86:24 90:9 99:17 125:14 128:9, 12
**LIVASY** 5:1, 6, 7, 10, 12, 15 6:7, 19, 23 7:2, 4, 23, 25 8:2 9:5, 9 11:14, 21, 24 12:5, 7, 10, 16 86:9 97:7 104:14 108:15, 23
109:3, 13 144:22 146:9, 22
**livelihood** 160:6
**located** 110:3 118:16
**location** 88:15
**locations** 88:14 118:16
**locked** 126:2
**logs** 53:18
**long** 27:3, 5, 12 43:10 61:17 71:10 77:14 85:21 95:2 114:12 118:6 125:7 128:22, 24, 25
**longer** 116:2 125:15 147:19 148:1
**longevity** 152:6
**look** 18:19 21:9 42:19 57:11 63:16 119:25 147:18
**Look-Alike** 32:20 61:16 66:9
**looked** 57:12 58:1 127:23
**looking** 9:7 60:6 63:2 64:5, 6 138:10, 11
**looks** 12:7, 10 14:14 17:17, 21, 22 76:7, 10 109:7, 13
**lose** 158:6
**lost** 130:18
**lot** 31:18 32:17, 18 46:16, 19, 21 57:1 63:5 88:4, 7, 10, 20 92:19 101:3, 10 123:20, 24 135:21 138:5, 9 139:9 152:1 158:5, 8 166:18
**lots** 158:17
**loud** 36:18 43:6
**LOUIS** 1:1 2:9, 21 15:6, 13 25:10, 11, 12

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 272 of 1127 PageID #: 275

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**love** 105:23 106:21
**lunch** 129:13
**lunchtime-ish** 111:5

< M >
**ma'am** 10:9, 12 20:13 75:3
**mad** 66:23 68:2, 3 71:5, 6, 7, 9 73:19, 21, 25 156:12
**main** 9:11 12:11 20:20
**major** 37:17
**majority** 31:17
**making** 56:4
**man** 139:16
**manage** 31:2
**managed** 31:16
**management** 104:20 123:19 143:3
**Manager** 2:20 88:6 93:22, 23 151:23
**manner** 40:12
**MARCH** 1:3, 12 5:5 16:17 150:11 164:6
168:14 169:11
**Marker** 123:1
**Mary** 76:12
**materials** 6:9 25:1
**Matt** 5:6 104:13 144:22 146:9, 22 147:10, 12, 14, 15
**Matter** 1:8 12:22 19:14 22:11 24:3 83:19 84:12 142:12
**matters** 78:3
**max** 129:13
**mean** 31:21 40:7, 11 52:16 53:11, 14 74:13 87:9 90:21 92:8 104:11 119:6 155:1
**meaning** 17:11 130:1
**means** 57:21 141:22
**meant** 28:21
**Medical** 19:12 123:2 138:22
**meet** 32:12 102:9
111:24 114:2 119:23
**meeting** 5:2, 18 6:15 12:11 14:12 17:13 34:21 41:3, 4, 10, 11, 19 42:8 54:4 57:15, 19, 22 63:16 64:21 71:4 72:13 73:1 97:16 107:20 108:24 110:25 111:3, 7, 21 112:2, 5 114:4, 6, 10 121:4 125:1, 7, 13, 14, 19 128:1, 15 129:18, 19 130:2, 3, 7, 8, 9, 12, 15, 21, 25 131:1, 15 136:16, 22 137:4, 9, 16 140:22 141:1, 3, 5, 8, 16 142:9, 15, 16, 20 143:1, 3, 6, 8, 10, 13 150:10, 16
154:2, 5 162:20 169:3, 5
**meetings** 32:10, 11, 14 58:1 72:8, 16, 20, 25 73:5 123:21, 23 125:10 135:22 139:14
**MELTON** 3:12 9:18 28:14, 17, 20 29:20, 24 30:5, 8, 10, 17, 20 32:8 40:14, 18 55:2, 4 59:16 62:3, 12 65:7 68:13 70:22 73:4, 13 81:19, 24 83:9 84:12 89:13, 15 97:13, 24 98:13 101:23 111:17 113:21, 25 116:23 118:17, 21 124:2, 5 128:14, 22 129:5 133:5, 23 134:3

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

135:8, 15
136:7, 13
137:8, 17
138:1, 4, 8
140:3, 10
141:3
143:18
145:16
151:6, 15
157:1, 14
158:11
**M-e-l-t-o-n** 30:21
**Melton's** 62:19 70:10 72:9 74:12 97:16 100:13 110:3, 6 118:20 119:9 134:8 135:19 136:2 149:10 155:22 156:25
**member** 72:5 93:25
**members** 16:3 31:22, 23 54:16
**mental** 90:9 100:13
**mention** 65:7 155:12
**mentioned** 22:14 25:14 40:2 43:23 51:3 58:4 80:20 95:9 135:10 140:2 143:2 157:7
**merely** 37:11
**merit** 107:2 108:10 123:11
**message** 48:3 63:22 71:23 107:2 112:15 130:23
**messages** 33:23 47:22 48:2, 17 52:12 112:10 147:11
**met** 54:3 56:19 111:4, 5, 23 114:1 138:22, 25 139:2
**Michael** 31:11 126:20 139:10
**middle** 41:19 66:4 100:6 104:20
**MILLER** 4:7 19:12 20:19, 20 31:11 50:1, 2, 3, 6, 7 106:10 108:12 109:5, 7, 9, 11, 13, 18, 23 116:15 117:7, 11 129:18, 19 157:25
**mind** 44:23 108:4
**mindful** 108:18
**mine** 74:18 159:11
**minimum** 120:6
**minor** 37:17
**minute** 27:4, 5 28:24 64:12
**minute-long** 28:16
**minutes** 27:14, 15 34:13 38:20, 22 43:12 64:1 105:22 106:1, 3 111:6 129:12 159:16
**mishear** 153:24
**misheard** 37:3 153:20 155:9
**misremembering** 156:16
**misses** 99:4
**missing** 49:24 101:15
**misunderstanding** 134:15
**misunderstood** 27:10
**moment** 9:5 29:10 40:14 55:17 59:15 67:7 85:1 105:21 108:13 116:1 117:15 129:23 131:8, 25 132:12 152:16
**moments** 153:11
**MONDAY** 1:3 144:18 146:24 169:11
**month** 146:16 161:16
**months** 61:20 114:11
**moot** 17:19
**morning** 45:4 48:8

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

50:5 51:24 57:14, 16, 18 63:10, 13 67:18 68:13, 24 70:10 72:2 74:12 81:20 89:18 96:3 113:22 120:9 124:23 130:24 136:15 140:23 141:7 142:8 144:2
**motion** 7:8, 10 13:15, 17 17:10 18:23 19:2, 6 22:25 23:10 25:18, 21 115:19 164:11 165:5, 7, 25 166:1, 3, 6, 21 167:10, 25
**motions** 13:21 17:3 26:5 168:7
**mouse** 7:7
**mouths** 21:12
**move** 7:20 8:18 27:22 140:21 162:22
163:1, 22 165:8
**moved** 8:9, 15 13:24, 25 24:10 115:20 131:7 158:7
**moving** 5:20 8:22 27:3
**multiple** 40:10 145:17
**mute** 60:8 145:12 148:6 157:3
**muted** 9:9 19:1 97:5
**mutual** 100:20, 24 101:16

< N >
**Nadine** 2:5
**name** 30:15 40:18 49:14, 24 50:1 61:3 77:6, 8, 9 81:14 85:15 94:12 95:2 118:3 121:24 122:9, 10 165:13
**named** 94:18
**names** 17:20 59:25
**Nancy** 61:9
**nature** 23:21 34:1 38:2 48:4
**necessarily** 16:15
**necessary** 21:3
**need** 6:2, 16 8:5 11:13, 22 12:11, 23 14:6 21:9 26:14 27:14 35:12 39:19 44:11 48:4, 6 61:12 65:13 101:12 108:18 116:8, 11 126:4, 24 136:13 159:11 162:19 165:24
**needed** 9:6 33:24 34:2, 22 44:3 62:22 63:22 64:19 65:8 68:23 70:25 71:2 72:24 84:8 89:24, 25 125:25 126:2
141:12 152:9
**needs** 73:18 160:20
**Neither** 115:17
**Nelson** 123:2
**never** 29:12 50:14 57:10, 19 71:1 78:7 98:8, 9, 11 99:11 100:8 124:9 127:10 134:2, 5 154:3 155:7 160:4
**new** 151:22
**night** 66:16
**nine** 88:14
**Noah** 2:10 8:4 12:20 13:22 22:7 94:11 164:19
**Nodding** 45:5
**nonclinical** 31:19
**non-privileged** 22:12 23:4
**nonprofit** 122:20
**nonsense** 124:7
**nope** 12:17 40:5

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**normal** 55:21, 24 62:21, 23 69:24 73:8, 16 90:18 113:13, 14 124:8
**normally** 13:13 56:2, 5 89:3 91:2 101:14
**Notary** 1:17
**note** 130:23 144:15, 20, 21
**notes** 170:9
**not-for-profit** 32:16
**notice** 25:7, 10, 19 29:5
**noticed** 131:4
**notification** 169:4
**notifications** 125:11
**notified** 150:13, 19 168:10
**number** 34:2 125:25 126:3, 6, 7, 14, 16, 17, 24 127:7 133:9 137:1
**Nunn** 2:5 5:2, 4, 8, 9, 14 6:5, 8, 13, 18 7:11, 15, 20, 23, 24 11:15, 19, 23 12:2, 6, 9 13:2, 24 14:4, 18, 20 20:7, 10, 14 24:6, 11, 16, 19 25:23 26:1, 9 27:6, 10, 25 28:3 106:13 108:21 115:10, 13, 17, 24 145:2 162:21 163:22 164:11 165:7, 8 166:2, 7, 22 167:25 168:4
**nurses** 31:22
**nursing** 54:15 152:2
**nutshell** 123:16

**< O >**
**object** 21:6 165:22
**objection** 25:17 115:15 166:10, 13
**objections** 16:13
**obligations** 108:18
**obviously** 32:19 39:20 44:5, 12 106:23 124:20
**occur** 161:13
**occurred** 29:10 149:10 155:7
**o'clock** 66:15 108:25 125:2 131:17 143:5
**October** 77:16, 21
**odd** 51:25
**offer** 19:15 22:13 159:9
**offered** 17:25
**office** 38:1, 17 39:7 40:25 43:2, 3 44:25 45:2, 15, 20, 23, 24 46:3, 6, 8, 10 47:1, 2, 6, 9, 13, 16, 18, 19, 20 49:25 50:5, 12 56:20 57:25 58:11, 14, 18 61:16 66:17 67:19 69:10 70:10 71:12, 20 73:14 74:12 80:13 81:25 82:15 83:22, 23 91:17, 20, 22 92:1 95:25 96:1, 2, 4, 6, 9, 13, 23 97:1, 2, 14, 16 103:2, 10, 20 107:7 110:2, 4, 7, 23 113:7 118:14, 19, 20, 23 119:9, 13, 15, 16 120:2 123:20, 23 126:10, 11, 21, 22, 23 128:7 129:12, 14 131:14, 18, 24 132:3, 5, 8, 16, 23 134:8, 13, 19, 25 135:19, 24 136:1 137:18 138:19 139:8 140:25

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM


142:*23* 143:*18, 25* 144:*2* 147:*17* 149:*10, 13* 151:*19* 153:*12, 16, 19* 154:*16, 19, 20* 155:*13* 158:*10* 160:*18* 170:*13*

**officer** 6:*2, 15* 7:*9* 13:*3* 15:*7* 19:*7, 12* 30:*24* 31:*13* 42:*22* 122:*13* 123:*3* 138:*23* 162:*16* 170:*1*

**offices** 65:*14* 74:*17, 20* 113:*9*

**official** 26:*22*

**officially** 5:*18* 124:*17*

**Oh** 11:*19, 23* 14:*14* 30:*9* 53:*14* 74:*25* 76:*10, 13* 80:*19* 90:*21* 91:*1* 101:*5* 106:*17, 18* 114:*24* 128:*5* 133:*14* 139:*9, 19* 143:*23* 144:*9* 155:*14* 158:*7* 160:*24* 166:*5* 168:*18*

**Okay** 5:*14* 6:*13, 16, 18, 25* 7:*3, 5* 8:*14, 16* 9:*20, 24* 11:*23* 12:*2, 5, 9, 10, 19* 14:*9, 14, 25* 15:*3, 24* 17:*2, 22* 18:*17, 24* 19:*9* 20:*16* 21:*14, 23, 25* 22:*1* 23:*11, 16* 24:*19, 24* 25:*4* 27:*10* 28:*4, 7* 29:*23* 30:*1, 2, 8, 22* 31:*6* 32:*4, 21* 33:*5, 9* 34:*5, 11, 18* 35:*4* 36:*6, 9* 37:*3, 9, 20, 23* 38:*19, 24* 39:*16, 23* 40:*13, 18, 21* 41:*2, 15, 18* 42:*3, 7, 24* 43:*13, 17, 23* 44:*1, 14* 46:*12, 22* 48:*12, 16, 20* 49:*20* 50:*14* 52:*6* 53:*4, 24* 54:*19* 56:*4, 19* 57:*3, 24* 59:*7, 10, 14, 24* 60:*3, 6* 61:*12, 13* 62:*2, 5, 19* 63:*8, 12, 24* 64:*2, 9, 25* 65:*18* 66:*10* 67:*6, 10* 68:*22* 69:*14, 19, 22* 70:*2, 9, 21* 71:*16, 19* 72:*9* 73:*7* 74:*8, 16, 21, 25* 75:*5, 8, 9* 76:*17, 22* 77:*24* 78:*5, 12, 15, 18, 20, 24* 79:*2, 6, 15, 25* 81:*1, 10, 23* 82:*2, 13, 17, 24* 84:*4, 15, 21, 24* 85:*1, 17, 24* 86:*13* 87:*6, 23* 88:*12, 18* 89:*15, 21* 90:*10, 13, 19* 91:*4* 92:*8, 24* 93:*3, 5* 94:*11, 14* 95:*7, 15, 18* 97:*22* 99:*2, 7* 100:*12* 101:*17* 102:*5, 12, 14, 18* 103:*18, 21* 104:*24* 105:*2, 25* 106:*1, 12, 22* 108:*11* 109:*4, 7* 110:*8, 25* 111:*10, 16* 112:*1, 24* 113:*1, 7, 16, 20, 24* 114:*13, 18, 24* 115:*13* 116:*1, 2* 117:*13, 15* 118:*3, 13, 18, 23* 119:*4, 12, 18* 120:*4, 7, 11, 20, 22, 25* 121:*12, 21* 122:*12, 16* 123:*9, 11, 14* 124:*20* 127:*7*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

128:*4*, *8* 129:*7* 131:*13* 132:*21* 134:*12* 135:*2*, *12*, *22* 136:*4* 137:*5*, *14*, *23* 138:*15* 140:*13*, *19*, *21* 142:*11*, *15*, *22* 143:*6*, *12*, *18* 145:*13* 153:*20* 154:*22* 155:*3*, *11*, *17*, *24* 156:*1*, *2*, *9*, *19* 158:*5*, *14* 159:*3* 162:*13* 168:*9*, *25* 169:*1*
**Okey-doke** 59:*13*
**old** 110:*4*
**once** 28:*19* 32:*11*, *14* 37:*4* 56:*20* 66:*21* 83:*2* 88:*20* 111:*4* 146:*16* 164:*25*
**one-on-one** 72:*13*, *20* 73:*5* 140:*3* 156:*11*
**one-on-ones** 140:*11*
**ones** 20:*3*
**ongoing** 114:*11*
**online** 42:*20*
**on-site** 54:*18*
**open** 11:*17* 14:*13* 40:*9* 59:*24* 116:*3*, *6* 152:*9* 162:*20*
**OPENING** 3:*3*, *4* 26:*13* 27:*9*, *23* 28:*5*, *9* 106:*14*, *20*
**operating** 31:*13* 42:*21* 122:*13*
**operational** 31:*24* 54:*13*
**operations** 31:*17* 123:*17*
**opportunities** 26:*14* 162:*8*
**opportunity** 104:*7* 138:*8*, *10*, *12* 144:*12* 151:*11* 162:*3*
**opposed** 37:*2*
**opposing** 163:*14*
**option** 14:*10*, *11* 42:*22* 60:*16*
**order** 5:*2* 18:*10*, *13*, *14* 21:*21* 22:*6* 66:*8* 87:*25*
**Ordinance** 25:*11*
**ordinances** 25:*8*, *12*, *19*
**org** 42:*7*, *23* 126:*8*
**organization** 125:*5*
**organizational** 42:*20*
**originally** 147:*18* 167:*6*
**OSV** 54:*17*
**outreach** 123:*18*
**outside** 51:*16* 53:*22* 103:*22* 140:*25* 165:*22*
**outstanding** 22:*10*

**< P >**
**P.M** 1:*3* 16:*18* 106:*7* 169:*11*
**pack** 107:*22* 159:*25*
**pad** 7:*7*
**PAGE** 3:*11* 4:*2*
**pain** 152:*7*
**panelist** 8:*13*, *17*, *22*
**panelists** 8:*15*
**paragraphs** 145:*17*
**parameters** 166:*18*
**park** 138:*11*
**parking** 46:*16*, *19*, *21* 57:*1* 131:*5* 138:*5*, *9*
**parse** 140:*18*
**part** 66:*11* 95:*3* 100:*8* 125:*4*, *5*, *24* 145:*1* 162:*5* 166:*14*
**parted** 128:*6*
**particular** 6:*15* 36:*23* 37:*16* 38:*11* 44:*9* 100:*21* 143:*14*
**particularly** 35:*8* 54:*14*
**parties** 6:*1* 15:*20* 16:*8* 21:*2*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**party** 10:*19* 11:*5*
**pass** 131:*6*
**patients** 132:*14*
**PATRICK** 4:7 19:*11* 31:*11* 50:*2* 109:*5*, *18* 117:*11*
**patterns** 54:*13*
**Paul** 61:*10*
**pay** 160:*17*
**PCMH** 151:*20*
**people** 19:*24* 31:*10* 49:*25* 62:*6* 67:*4* 76:*15* 86:*25* 98:*5* 110:*22* 119:*21* 122:*25* 125:*3*, *16* 127:*6* 134:*19*, *21* 139:*8* 143:*12* 145:*7* 157:*10* 159:*24*
**perceived** 102:*14*
**percent** 112:*17*
**Perfect** 60:*11*
**performance** 32:*2*, *9* 86:*23* 95:*20* 124:*17*
**performed** 51:*8*
**performer** 51:*23*
**period** 20:*25* 163:*10*, *25* 164:*24*
**person** 37:*24*, *25* 40:*24* 60:*9* 64:*9* 79:*13*, *21* 84:*24* 95:*12* 98:*9* 107:*10*, *22* 111:*24* 131:*1* 152:*12* 159:*17* 167:*2*
**personal** 47:*17* 52:*11*, *18* 132:*15* 144:*18* 147:*21* 155:*23* 170:*10*
**personally** 63:*9*
**personnel** 78:*3* 87:*10* 88:*16* 147:*25* 168:*12*
**perspective** 124:*18*
**Pete** 1:*8* 2:*12*, *19* 4:*12* 5:*22* 9:*8* 10:*23* 28:*13* 31:*11* 38:*11*, *12*, *15* 40:*19* 56:*20* 62:*15*, *18*, *22* 63:*3*, *4* 66:*16* 67:*14* 71:*14* 72:*14* 73:*9*, *20* 79:7 81:*15* 89:*19* 90:*2*, *17* 92:*2*, *15* 93:*9* 94:*17*, *20* 95:*20* 96:*4*, *12*, *18*, *25* 97:*17* 100:7, *21* 101:*14* 104:*13*, *19* 105:*1* 118:*4*, *12* 121:*23* 122:*3*, *11* 123:*9* 154:*10* 156:*23* 157:*3* 158:7 159:*3* 160:*1* 162:*4*
**Pete's** 63:*4* 78:*23* 91:*24* 100:*13* 167:*18*
**phlebotomy** 139:*13*
**phone** 20:*21* 28:*16*, *19*, *25* 33:*17*, *22* 34:*18* 37:*9*, *23* 42:*25* 43:*13*, *24* 49:*8* 50:*5*, *24* 52:*5*, *12*, *13*, *18* 53:*17*, *18* 64:*24* 70:*13* 71:*23* 79:*21* 81:*25* 82:*1* 84:*8* 86:*10* 90:*4* 97:*1*, *4* 112:*9*, *14* 120:*16* 125:*9*, *23* 127:*4*, *5*, *6*, *24*, *25* 128:*1*, *5*, *14* 130:*5*, *7*, *8* 132:*25* 133:*8* 134:*19* 135:*3* 136:*23* 137:*4* 145:*12* 147:*4*, *11* 154:*23* 155:*12*, *15* 158:*4*, *9*, *11*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**physically** 156:5
**physicians** 54:12
**pick** 98:24 107:16
**picked** 34:18 125:12 134:16 147:15
**picking** 136:23
**piece** 31:19
**pieces** 158:15
**PIKE** 3:17 8:11, 14 9:18 12:13, 16 31:10 49:15, 16 57:13 59:21 60:2, 4, 7, 10, 12, 15, 19, 23 61:5, 10 67:13 74:3, 10 75:6, 8, 12 82:7 84:13 114:17 151:6 167:4, 5
**Pizza** 129:16
**place** 12:12 23:14 138:11
**placed** 13:15
**places** 42:13
**pleadings** 10:13 25:14
**pleasantries** 120:6
**please** 8:11 9:1 16:14 53:3 61:13 76:4 108:12 122:9 153:7 154:9 156:3, 4 163:23
**plus** 38:22
**podium** 57:20, 23 58:3
**point** 8:4, 7 16:1 17:19 19:20 22:14 23:19, 23 34:11 47:22 50:24 56:17 61:12 65:18 78:16 100:25 102:24 124:11 125:10 133:13 139:18 152:16 165:23
**politeness** 66:21
**politenesses** 35:5
**popup** 9:1 11:24
**portion** 26:12
**portions** 22:21
**position** 30:22, 25 31:12, 15 32:5 50:16 61:15, 18 77:14 85:17, 22 86:2 97:15 100:22 107:4 110:16 111:12 118:9 120:8, 23 122:18 123:21, 24 144:16 148:17 151:24 159:18, 20 160:17 164:15
**positions** 33:25 77:17 122:20
**possible** 129:10 156:8 164:6
**Possibly** 42:16, 17 114:15
**potential** 19:24
**Potentially** 153:21
**pounded** 129:8
**pounding** 49:3 132:22 155:5
**practice** 22:20 55:21, 24 84:2
**prayer** 160:16
**precedent** 106:24, 25 108:9
**preceding** 122:17
**precisely** 28:21
**pre-hearing** 13:21 18:11 22:4 23:17 24:5, 13, 15
**preliminary** 16:20 26:3
**pre-motions** 12:25
**preoccupied** 33:19
**prep** 66:4
**prepare** 125:3

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**prepared** 68:*25*
**preparing** 131:*15* 143:*1* 151:*20, 21*
**prerogative** 163:*11*
**PRESENT** 2:*18* 5:*9, 11, 13, 16* 13:*11, 20* 15:*9, 11* 19:*25* 20:*1* 21:*18* 69:*22* 83:*16* 115:*15* 146:*16* 168:*7*
**presented** 12:*20* 18:*11* 19:*24* 23:*9* 165:*20, 25* 167:*20*
**presenting** 19:*23*
**pressed** 126:*5, 13*
**pressing** 126:*7, 16*
**presumed** 99:*3*
**pretty** 75:*22* 138:*6, 7, 16* 161:*5*
**prior** 17:*13* 24:*2* 99:*16* 149:*5, 8*
**prioritizing** 32:*18*
**privacy** 64:*18*
**private** 127:*5*
**privileged** 51:*17* 75:*13*
**probably** 34:*9, 13* 38:*11, 20* 47:*12* 91:*13* 130:*16* 132:*17* 153:*18*
**problem** 6:*18* 26:*25* 27:*2* 95:*20* 109:*1* 124:*13* 132:*12* 152:*13* 167:*11*
**problems** 53:*24*
**procedural** 160:*13* 162:*19*
**procedure** 6:*9, 11, 22* 60:*20*
**proceed** 12:*19* 22:*1* 25:*6* 106:*11*
**proceeding** 16:*19*
**PROCEEDINGS** 1:*10* 9:*2* 16:*4* 29:*25* 59:*17* 60:*5* 75:*7* 76:*6* 84:*23* 85:*6* 105:*16* 109:*6* 117:*12, 17* 121:*20* 168:*11* 170:*6, 8*
**process** 91:*10* 160:*11* 162:*5* 167:*12, 19*
**produced** 55:*2, 3* 164:*25*
**products** 65:*6*
**Professional** 1:*16* 100:*22* 101:*1, 5* 124:*7* 170:*4*
**program** 32:*20* 123:*18* 151:*23*
**prohibits** 26:*19, 20, 22*
**project** 139:*13* 141:*13*
**projects** 54:*8*
**promise** 55:*12*
**promote** 8:*5*
**promoted** 8:*16*
**prompts** 101:*10*
**pronouncing** 117:*14*
**proposed** 9:*25* 10:*4* 18:*9, 12* 22:*5, 19* 23:*17, 23* 24:*4*
**propriety** 29:*15*
**protect** 127:*2, 13, 14* 135:*9*
**proverbial** 162:*11*
**provide** 15:*23* 16:*10* 29:*3* 48:*7*
**provided** 75:*14* 100:*24, 25* 167:*13*
**provision** 25:*8* 99:*2*
**proximity** 110:*3* 118:*14, 19*
**pry** 64:*18*
**Public** 1:*18* 5:*22* 19:*11* 73:*3* 77:*20* 85:*20* 118:*11*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

122:13 139:25 142:17 149:25 150:23 151:1 158:16
**published** 54:22
**pull** 48:1, 2
**pulled** 127:24
**purpose** 39:16
**purposes** 115:18
**pursuing** 32:21, 22, 25
**put** 14:11 21:20 43:11 44:15 66:20 124:19 126:5 128:5, 7 129:15 161:5
**putting** 5:19 10:19 21:11 142:24 145:19

< Q >
**Qualified** 31:3
**question** 10:17, 25 12:21 33:25 34:3, 23 41:16 42:3, 4, 12 52:21 59:6 74:7 80:1, 2, 3, 23 83:5, 6 93:19, 24 94:3 95:7 118:19 125:16 126:23 127:5 128:20 154:7 156:3 162:2
**questions** 35:2, 3 39:5 40:13, 20 57:6 67:8 72:4 81:11, 17 93:4, 10 101:6 105:4 109:25 114:23 115:1 118:5 121:12, 14 154:14 155:24, 25 162:4, 6, 8, 12 167:18
**quick** 55:11 74:7
**quickly** 141:17
**quiet** 76:20
**quit** 28:18 36:2, 3, 5, 11, 12, 21 38:12 40:2 42:24 43:19 44:22 45:13, 22 46:23 48:9, 18, 21 49:2 58:2, 9, 14, 18 68:5, 7, 10 90:7 94:24 97:15 98:20, 21, 24 99:1 101:6 107:15 110:16 112:19, 25 113:6 129:10 131:12 134:3, 6 139:16, 22 142:5 151:15 155:6, 20, 21 156:6 157:5 161:19
**quite** 32:12 58:25 73:8 76:1 147:3
**quitting** 40:4 110:19 132:5, 7 133:18
**quote** 28:18 66:21
**quote/unquote** 145:20
**quotes** 142:24 145:19

< R >
**Rachel** 94:18 95:3
**rage** 49:2
**raise** 119:21
**raising** 119:13
**range** 132:17
**rapid-fire** 154:14
**RCX** 3:16
**RDX** 3:15, 20 4:6, 15
**reach** 116:4 144:16
**reached** 116:15
**reaching** 104:13
**read** 14:22 103:3
**reading** 103:15
**ready** 8:17, 20 12:19 16:18 151:23 165:1
**real** 55:11 132:2 148:20

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**realized** 125:*22*
**really** 18:*11* 23:*14*, *25* 24:*1* 39:*6* 51:*22* 54:*11* 58:*5*, *6* 68:*1*, *3* 72:*14* 78:*9* 109:*25* 114:*20* 118:*6* 136:*6* 140:*8* 164:*25*
**Realtime** 1:*17*
**reason** 40:*6* 47:*16* 86:*17*, *20* 161:*17*, *18*
**reasonable** 27:*13*, *19*, *21*
**reasonably** 29:*1*
**reasons** 104:*5* 144:*18*
**rebuttal** 19:*16*, *25* 20:*5*, *23* 21:*4*, *9*
**recall** 35:*5* 36:*7*, *16* 43:*16* 45:*17* 48:*13* 58:*4* 62:*5* 64:*2* 68:*21* 69:*4* 89:*1* 93:*16* 96:*5*, *10* 119:*5*, *8* 120:*1*, *2*, *19* 133:*20* 142:*10*, *14* 155:*10*, *16* 156:*10*, *13*, *18*
**recalls** 155:*8* 156:*15*, *17*
**recap** 153:*14*
**receipt** 163:*8*, *19*, *20* 168:*13*, *17*, *24*
**receive** 9:*22* 10:*14* 17:*5*, *11* 23:*6* 47:*21* 50:*18* 145:*24* 146:*4*, *19* 147:*7* 149:*3* 169:*4*
**received** 9:*15*, *21* 19:*16* 22:*15* 48:*16* 50:*14* 66:*13* 83:*2* 102:*18* 149:*16* 150:*5*, *22* 151:*3* 168:*11* 169:*4*
**recess** 106:*6*
**recollection** 110:*10* 154:*25*
**recollections** 46:*9*
**reconsider** 115:*2*, *8*
**record** 5:*19* 15:*4* 17:*22* 26:*4* 30:*16* 60:*18* 61:*4* 75:*11* 121:*24* 122:*9* 133:*3*, *4* 142:*24* 145:*20* 162:*18* 165:*21*, *22*, *23*
**records** 17:*12* 22:*12* 23:*1*, *5*, *8* 132:*25* 147:*4* 149:*25* 150:*14*, *23* 151:*1*, *3*
**RECROSS-EXAMINATION** 57:*4*
**redirect** 55:*7*, *9* 74:*5* 84:*18* 105:*5* 117:*5* 156:*21*
**refer** 100:*7*
**referred** 166:*4*
**referring** 18:*8* 22:*18*, *24*, *25* 50:*7* 58:*10* 59:*5* 137:*3* 157:*16*
**regard** 17:*10* 19:*17* 98:*6* 99:*8* 149:*16* 159:*17*
**regarding** 17:*6*, *12* 29:*15* 51:*4*, *8* 53:*20* 98:*2* 145:*7*
**regards** 72:*4*
**Registered** 1:*16* 170:*3*
**registration** 31:*22*
**regular** 78:*1*, *2* 118:*11* 140:*9*, *10* 167:*21*, *23* 169:*3*
**regularly** 118:*10*
**rehash** 35:*11* 39:*18*
**reiterated** 112:*20*
**rejoin** 14:*12*
**related** 33:*24* 120:*20* 142:*1*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

160:*11*
**relates** 35:*2*
**relating**
44:*18*
68:*17*
120:*16*
**relationship**
33:*6* 65:*19*
124:*4*, *6*
146:*18*
**relayed** 51:*9*
**relevance**
10:*4* 18:*22*
20:*3* 21:*13*
**relevant**
19:*7* 22:*12*
23:*4* 139:*18*
**remain** 11:*10*
**remainder**
45:*7* 138:*15*
**remained**
47:*10*, *11*
**remaining**
10:*19*
**remedy**
167:*22*
**remember**
16:*14* 33:*4*
41:*21* 46:*4*,
*5*, *7* 47:*2*,
*5* 48:*10*
49:*23*
50:*13* 52:*5*
53:*17*, *23*
66:*18* 69:*2*,
*7*, *15*, *16*
72:*3*, *7*
80:*21*, *25*
91:*21* 95:*1*
111:*4*
119:*4*
120:*4*
131:*19*
132:*4*, *6*
155:*22*
161:*15*
**remembered**
80:*17*
**remembering**
132:*7*
**remote**
170:*6*, *9*
**remove**
59:*14*
86:*11* 166:*3*
**removed** 75:*8*
**removes**
14:*11*
**repeat** 80:*1*,
*2* 83:*5*
96:*24*
97:*12*
156:*3*, *17*
165:*6*
**repeated**
38:*5* 40:*11*
80:*3*, *6*
**repeatedly**
28:*17* 35:*17*
**repeating**
70:*19*
**rephrase**
153:*7*
**report** 31:*4*
83:*4*, *7*
85:*24* 86:*4*
98:*12*
99:*23*
100:*18*
101:*24*
104:*20*
157:*10*
**reported**
33:*25*
48:*25*
73:*25* 94:*7*,
*8*, *20*
100:*11*
101:*24*
124:*1*
125:*16*
170:*5*
**Reporter**
1:*16*, *17*
61:*6* 77:*7*
85:*15*
123:*4*
164:*21*
170:*4*, *5*, *19*
**reporter's**
30:*18*
**reporting**
67:*2*
107:*22*
146:*18*
**reports**
31:*7* 41:*5*,
*13*, *23* 42:*5*,
*14* 102:*2*, *4*
**represent**
22:*22*
40:*19*
108:*7*
109:*24*
118:*4*
**represented**
16:*9*
**representing**
107:*21*
**request**
7:*17* 17:*3*,
*8* 26:*15*, *22*
75:*12*, *14*
149:*25*
150:*15*, *23*
151:*1*
166:*14*
**requested**
20:*21* 23:*3*
57:*9*
149:*20*
150:*25*
**require**
13:*10* 66:*12*
**required**
52:*1*
**requires**
29:*5*
**rescind** 29:*9*
**reserve**
23:*22*
**resign**
43:*21*
82:*21*, *22*
94:*6* 98:*16*
107:*1*
110:*16*
134:*6*
145:*22*
153:*25*
159:*18*
**Resignation**
5:*21* 29:*4*,
*6*, *9*, *15*
36:*12*
37:*14* 38:*4*
39:*20*
43:*19*
44:*15*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

47:*23*
48:*22* 56:*5*
78:*23* 79:*5*, *16* 81:*3*, *7*
82:*19*
87:*18*, *20*, *24* 88:*3*, *19*
90:*11*, *15*, *20* 93:*19*, *25* 94:*7*, *21*, *25* 95:*10*, *11*, *13*, *23*
98:*6*, *14*, *20*, *23* 100:*5*
105:*10*
107:*8*, *12*, *14*, *24*
108:*2*
131:*20*, *22*
132:*11*
133:*19*, *25*
142:*23*
144:*5*
145:*8*, *20*
148:*5*
149:*10*
158:*6*, *9*
161:*8*, *18*
**resignations**
44:*18*
87:*15*
93:*12* 98:*2*, *17*
**resigned**
28:*13*, *16*
29:*2* 38:*16*, *25* 39:*8*
40:*24*
50:*15*, *21*
51:*12*, *23*
78:*16* 82:*3*
97:*1*, *14*
99:*3*, *16*
102:*19*
105:*9*
107:*4*, *9*, *23*
111:*12*
120:*8*
132:*1*, *10*
133:*24*
134:*2*
141:*19*
143:*22*
144:*6*, *8*, *10*
146:*12*, *25*
148:*17*
154:*6*, *15*
158:*25*
159:*1*
**resigning**
88:*25* 98:*3*
102:*15*
149:*1*
**resigns**
55:*22*
**resolved**
26:*4*
158:*12*, *13*
160:*4*
**resolving**
26:*10*
**resources**
77:*21*
100:*24*, *25*
**respect**
87:*9*
108:*16*
125:*10*
130:*10*
**respond**
20:*18*
48:*17*
104:*7*
141:*18*
142:*4*
146:*19*
151:*11*
159:*19*
166:*12*
**responded**
34:*1* 35:*18*
145:*21*
**Respondent**
1:*9* 2:*15*
3:*3*, *7*
28:*9* 160:*25*
**responding**
153:*15*
154:*16*
**response**
23:*9* 130:*5*, *24* 136:*18*
142:*6*
144:*17*, *18*, *19* 145:*18*, *24* 146:*1*, *4*, *5*, *20* 147:*7*, *9* 150:*4*, *7*, *14*, *19*, *23*
151:*4*, *15*
**responsibilities** 123:*18*
**responsible**
87:*15*
**rest** 18:*22*
44:*25*
45:*18*
47:*10* 75:*4*
135:*20*
**restate**
160:*16*
**result** 95:*12*
**return**
12:*11* 106:*5*
**returned**
56:*20*
107:*18*, *19*
**returning**
36:*4* 43:*15*, *18* 102:*6*
**reverse**
160:*9*, *15*
**review**
44:*20* 54:*2*, *6*, *21*
**reviewed**
17:*23*, *24*
**Revised**
25:*12*
**RIF'd** 157:*19*
**right** 5:*7*, *17* 6:*13*
8:*25* 12:*9*
20:*14*
23:*22*
28:*24*
36:*14*
40:*15*
42:*11* 45:*1*
47:*7* 48:*11*, *14* 49:*16*
58:*10* 59:*2*
60:*9* 66:*14*
67:*6* 74:*17*
77:*10*
82:*15*, *16*, *25* 85:*21*
86:*15*
89:*18*, *20*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

93:3 95:14, 20 97:24 98:2, 3, 23 99:15 105:25 108:23 114:21 119:4 121:23 128:8, 15, 16 133:21 134:20 137:18 138:2, 17 145:3 150:5 152:20 156:10 158:19 160:14 161:21 164:23 166:14
**rights** 104:8
**ringer** 136:24
**ringing** 136:24
**risk** 11:17
**Rodney** 101:20
**rogue** 35:1
**role** 6:4 35:23 54:22 77:15 95:13 100:10 104:9, 10 122:24
**roll** 5:6 7:21 14:6
**room** 9:11 10:1, 20 11:10 13:16 67:4 105:24
**roughly** 33:16 34:16 38:23
**route** 93:17 101:1 104:14
**Rule** 23:2 25:15, 16 44:18 98:2 99:3 166:15, 16
**rules** 13:10 16:9, 11 25:14, 19 29:3, 16 98:15 104:12
**ruling** 11:9 17:7 22:4
**rulings** 16:15
**rumblings** 113:12 119:1
**run** 89:5 113:15
**rushing** 62:22

**< S >**
**said/he** 160:12 161:5
**salaries** 152:6
**sat** 91:17 127:8 130:14, 19 131:8 157:17
**satisfied** 32:2 86:22
**Satonya** 2:4 15:5
**saw** 37:2 45:10, 16, 24 46:2, 15, 16, 19 47:18 57:24 58:25 59:3 64:11, 15 66:3 70:24 83:19 92:14 112:15 120:11 127:18 130:2 131:2 139:4, 8
**saying** 10:7 20:10 37:18 43:16 65:8 71:2 112:15, 22 136:10 142:4 155:5 156:6 168:20, 22
**says** 12:3 97:13 107:8, 15 151:15 153:17
**schedule** 57:7, 10, 12, 14 58:1, 17
**scheduled** 63:20 64:13 72:23
**schedules** 54:13
**scheduling** 151:25
**screaming** 36:22 49:3
**screen** 27:7
**screenshots** 53:12, 13, 15, 16, 20 55:2
**se** 37:7 38:6 57:20 58:7
**search** 62:17
**seasonal** 148:11
**Second** 7:11, 22 14:1 25:22, 23 27:25 53:2 94:19 115:21 135:5 164:13 165:5 166:21 168:1

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**seconds** 129:*1, 2, 8, 10* 132:*24* 133:*6* 155:*18, 20* 156:*7, 23* 157:*2, 13* 158:*4* 161:*10*
**Section** 5:*20* 25:*11, 13*
**security** 83:*11, 14, 16, 20* 91:*18, 19, 25* 102:*10* 132:*18*
**see** 9:*8* 10:*3* 12:*2* 21:*14* 26:*16, 17, 18, 25* 27:*2* 30:*6* 44:*24* 45:*9, 19* 46:*21* 47:*13* 48:*20, 23* 57:*7, 9* 58:*17* 60:*7* 62:*12* 63:*16* 64:*9* 66:*1, 7* 70:*9* 71:*10, 19* 74:*13, 15* 76:*14* 83:*20* 88:*16* 89:*10* 90:*19* 96:*4, 22, 24* 97:*6* 109:*11* 111:*21* 114:*9* 117:*19* 121:*9* 129:*21* 130:*1* 138:*9* 139:*20* 155:*17* 156:*9, 19* 158:*7* 166:*18, 20* 167:*7, 23*
**seeing** 12:*17* 45:*17* 46:*5* 57:*1* 79:*9* 96:*5, 10* 120:*2*
**seek** 78:*3*
**seen** 62:*16* 74:*19* 151:*9*
**sees** 42:*23*
**self** 62:*24*
**send** 44:*12* 53:*10, 16, 19* 98:*19* 116:*6*
**sending** 91:*11*
**sends** 91:*2*
**senior** 62:*1* 122:*19* 124:*8*
**sense** 62:*25* 74:*22*
**sent** 6:*8* 52:*23* 53:*5, 8, 15, 17* 63:*21* 72:*4* 81:*4* 125:*15* 129:*24* 130:*13, 22* 137:*21* 141:*11* 144:*15* 165:*2, 14*
**separate** 24:*13*
**sequestered** 11:*12* 13:*1, 4*
**SERVICE** 1:*2* 2:*3* 15:*6* 16:*10* 25:*13* 29:*3, 16* 44:*17* 98:*15* 104:*12, 15* 152:*1* 166:*16*
**session** 5:*24* 7:*18, 21* 8:*6, 10, 18, 21, 23* 9:*3* 11:*15, 17, 20* 12:*3, 4* 14:*13, 16* 20:*20* 59:*24* 116:*3, 6* 162:*20*
**set** 89:*9* 102:*4* 108:*9* 150:*18* 170:*12*
**settlement** 15:*16, 17*
**seven** 152:*8*
**several-paragraph** 145:*21*
**share** 27:*7* 89:*8* 101:*17* 110:*5* 113:*8* 118:*20*
**shared** 91:*24* 92:*2, 3, 13*
**sharing** 92:*22* 113:*11* 130:*17*
**SHARON** 3:*21* 31:*10* 53:*6, 10, 16* 69:*9, 19, 23* 70:*4, 5, 6* 75:*16* 76:*4, 5, 17* 77:*1, 24* 84:*19, 22* 91:*1, 7, 10, 18* 92:*1, 3, 5, 13, 14* 102:*9, 15* 131:*18* 133:*24* 141:*10* 142:*22* 143:*21* 144:*4, 19, 22* 145:*15* 146:*3, 8, 23* 150:*4*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

153:*10, 15, 22, 25* 154:*14* 155:*8, 12, 13, 14* 157:*25*
**S-h-a-r-o-n** 77:*8*
**Sharon's** 145:*18* 149:*9, 12* 158:*21*
**Shawn** 8:*19*
**shock** 131:*21, 25*
**shocked** 28:*14* 51:*23*
**short** 19:*20* 36:*10* 54:*17* 85:*2* 97:*9* 123:*6*
**shorten** 163:*9*
**Shorthand** 1:*16* 170:*4, 6*
**shortly** 125:*13, 18, 25*
**shot** 125:*12*
**shouting** 58:*15*
**show** 64:*13*
**showed** 63:*19* 64:*23* 96:*18* 127:*3, 25*
**showing** 11:*16* 12:*17* 133:*1*
**shows** 116:*7*
**shut** 55:*19* 160:*7*
**side** 118:*25*
**sides** 18:*6*
**sight** 74:*20*
**sign** 50:*23* 68:*16* 69:*4*
**signaled** 46:*20*
**signing** 68:*21* 69:*4*
**similar** 38:*2* 94:*24* 112:*23*
**simply** 16:*7*
**single** 88:*15, 17* 160:*3*
**site** 54:*16* 66:*5, 6, 7, 9, 11* 72:*17*
**sitting** 107:*7*
**situation** 35:*20* 36:*25* 58:*16* 68:*17* 89:*4, 5, 23* 92:*4, 25* 98:*9* 99:*18, 19* 100:*18* 102:*23* 103:*1* 104:*2* 105:*8* 107:*17* 108:*1, 2* 134:*9* 157:*7, 15* 160:*12*
**situations** 42:*23*
**six** 41:*22* 125:*17, 23* 127:*7* 157:*9*
**slamming** 127:*18*
**slate** 151:*22*
**small** 78:*4*
**somebody** 88:*25* 94:*8* 95:*10* 98:*20* 103:*6* 107:*1, 3, 7, 15*
**someone's** 160:*6*
**somewhat** 152:*23*
**soon** 38:*1* 62:*13* 125:*21*
**sorry** 7:*6* 8:*15* 11:*14* 16:*17* 18:*25* 20:*10* 22:*7* 32:*8* 41:*17* 50:*17* 53:*11* 54:*12* 71:*11* 86:*5* 94:*4* 111:*9* 114:*17, 24* 123:*22* 134:*21* 135:*7* 139:*19* 140:*14, 15* 154:*12* 157:*3, 4*
**sort** 77:*24* 78:*9* 107:*24*
**sound** 45:*1*
**sounded** 92:*19*
**soundproof** 113:*9, 10* 118:*23*
**sounds** 55:*1* 59:*24* 82:*16* 119:*3* 153:*18*
**south** 34:*4*
**space** 34:*8*
**speak** 19:*13* 39:*10, 13* 46:*11* 63:*23* 64:*19* 72:*23* 84:*25* 89:*10* 90:*24* 100:*2* 103:*1* 144:*13* 153:*11*
**speakers** 97:*7*
**speaking** 108:*8* 152:*23*

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 288 of 1127 PageID #: 291

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM


153:*25* 154:*1* 164:*1*
**special** 5:*5*
**specific** 35:*12* 65:*24* 87:*1* 90:*1* 153:*4* 156:*13*
**specifically** 80:*24* 87:*2*
**speed** 32:*20*
**spell** 30:*19* 61:*7* 77:*6* 85:*15*
**spent** 32:*18* 145:*17*
**spoke** 49:*20*, *21* 50:*4* 67:*18* 102:*16* 116:*17*, *19* 134:*18*, *21*, *22* 153:*10* 155:*13*
**spoken** 50:*10*
**sponte** 166:*13*
**spot** 131:*5*
**spouse** 116:*19*
**ST** 1:*1* 2:*9*, *21* 15:*6*, *13* 25:*10*, *11*, *12*
**staff** 31:*22* 72:*5* 123:*17* 129:*14* 132:*13* 152:*2*
**staffing** 54:*13*
**stand** 162:*11*
**standard** 54:*7* 91:*19* 98:*18*, *22* 99:*14* 104:*21* 111:*6* 114:*10*
**standby** 20:*19*
**standing** 29:*4* 32:*10*, *11*, *13* 54:*4* 87:*21* 98:*3*, *16*, *24* 107:*15* 114:*6* 132:*18* 159:*24*
**standpoint** 39:*20*
**start** 5:*19* 8:*20*, *25* 14:*25* 21:*15* 29:*17* 30:*5* 62:*10*, *11* 124:*22*
**started** 41:*3* 71:*4* 72:*14* 73:*9* 77:*19* 89:*24* 125:*22*
**starting** 106:*9* 131:*17*
**state** 30:*15* 61:*3* 121:*24* 122:*8*
**stated** 46:*8* 58:*3* 66:*22*
**STATEMENT** 3:*3*, *4*, *6*, *7* 16:*8* 19:*18* 27:*9* 28:*5*, *9* 35:*2* 36:*6* 48:*7* 53:*8*, *19* 55:*1* 68:*20*, *22*, *23*, *25* 69:*8*, *11*, *12*, *25* 70:*7* 75:*12* 82:*7* 84:*13* 106:*14*, *20* 153:*1* 157:*5* 159:*14*, *15* 160:*23*, *25* 162:*17*, *25* 163:*1*, *7* 165:*12*, *13* 166:*3*, *10*, *24*, *25* 167:*13*, *14*, *17*, *24*
**statements** 27:*23*, *24* 82:*10* 151:*5* 159:*8*
**stating** 66:*13*
**stay** 12:*24* 58:*24* 67:*8* 91:*22*
**stayed** 107:*19*
**staying** 65:*12* 100:*23*
**steep** 87:*5*
**steering** 36:*20* 49:*3* 50:*11* 58:*16* 128:*24* 129:*9* 155:*5*
**stenographic** 170:*9*
**steps** 32:*7* 44:*7*, *8* 49:*10*, *12* 131:*7*
**stick** 165:*24*
**stip** 20:*17*
**stipulate** 18:*3*
**stipulation** 18:*2* 20:*7*, *11*
**stood** 132:*15*
**stop** 45:*12* 107:*17* 108:*17* 128:*8*
**stopped** 64:*12* 129:*23*
**story** 116:*23* 159:*12* 161:*12*
**straight** 126:*22*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**straightforward** 92:*21* 155:*19*
**strategic** 134:*15*
**strategy** 124:*9*
**strict** 16:*11*
**striking** 28:*15*
**struggling** 140:*20*
**stuff** 59:*2* 65:*6* 96:*15*, *22*, *23* 97:*18*, *20* 98:*25* 107:*16* 128:*7* 129:*15* 162:*19*
**sua** 166:*13*
**submit** 9:*20*, *22* 10:*11* 22:*20* 24:*7*, *14* 98:*6* 148:*5*, *9* 163:*14*
**submitted** 66:*14* 69:*8*, *11* 132:*25* 144:*23* 145:*6* 149:*19*, *25* 150:*3*
**subpoena** 17:*4*, *6*
**substantial** 161:*3*, *8*, *24*
**suddenly** 51:*24*
**suffice** 120:*7*
**suggestion** 13:*3* 24:*9*
**summarily** 108:*7*
**summary** 31:*25*
**superior** 74:*1*
**supervise** 127:*6*
**supervises** 31:*22*
**supervising** 61:*25*
**supervisor** 28:*14* 61:*16* 104:*22*
**supplied** 16:*3*
**supply** 23:*5*
**support** 167:*9*
**supported** 161:*8*
**supporting** 149:*21*
**supposed** 14:*22* 54:*9* 95:*23* 106:*19* 158:*6*, *9*
**supposedly** 40:*24* 58:*2*, *14* 128:*23* 148:*16* 149:*17*, *21* 165:*12*
**sure** 10:*6* 11:*1* 28:*6* 31:*16* 32:*12* 47:*19* 53:*18* 55:*13* 60:*16* 61:*8* 77:*8* 81:*22* 83:*24* 91:*14* 96:*22* 101:*15* 112:*13*, *17* 118:*15* 120:*3* 122:*19* 123:*10* 124:*24* 128:*10*, *13* 132:*17* 138:*3*, *10* 153:*8* 160:*24* 164:*15*
**surprise** 40:*22* 41:*1* 102:*5*
**surprised** 82:*18*
**suspected** 107:*14*
**swear** 60:*19* 121:*25*
**swearing** 66:*23* 67:*24*
**switched** 11:*22*
**sworn** 60:*22*, *25* 76:*25* 77:*3* 85:*8*, *11* 109:*17*, *20* 117:*22*, *25* 122:*2*, *5*
**system** 125:*22* 141:*22*

**< T >**
**table** 17:*15*
**take** 6:*4* 7:*18* 12:*23* 17:*1* 25:*7*, *18* 33:*12* 39:*21* 53:*2* 55:*13*, *14* 56:*15* 61:*13* 66:*24*, *25* 72:*9* 82:*10* 104:*15* 105:*21* 118:*6* 124:*22* 145:*14* 155:*20*
**taken** 1:*11*, *15* 49:*11* 55:*19* 62:*14* 170:*10*
**takes** 69:*25*
**talk** 27:*17* 35:*23* 62:*22* 64:*7* 65:*9*, *13* 70:*17*, *25* 71:*23*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

73:*20* 78:*2*, *9* 79:*23* 80:*11*, *13*, *20* 86:*11* 95:*22* 96:*19* 97:*4* 98:*8*, *9*, *12* 99:*10*, *14* 100:*9* 104:*22* 108:*5* 110:*18* 119:*18* 120:*14* 141:*16* 153:*23* 154:*1*, *3* 158:*5*, *8*
**talked** 49:*5*, *9*, *11* 64:*16* 65:*4* 71:*17* 73:*15* 74:*19* 79:*13*, *20*, *22* 80:*4*, *5* 84:*5* 111:*6* 112:*2*, *20* 126:*4* 127:*19*, *21* 129:*19*, *20*, *25* 134:*3* 136:*14* 142:*7* 157:*1*
**talking** 22:*8* 35:*18*, *25* 37:*5*, *6*, *8* 39:*2* 40:*10*, *24* 44:*21* 52:*5* 57:*15* 69:*9* 79:*19* 80:*21* 92:*23* 99:*12* 113:*12* 138:*16* 157:*6* 158:*11*
**tapped** 131:*3*
**task** 32:*18*, *19* 161:*6*
**team** 31:*23* 54:*15* 88:*7* 98:*11* 100:*1* 152:*4* 158:*2*
**teams** 131:*16*
**TECH** 8:*19*, *25*
**technical** 85:*3*
**technicalities** 16:*12*
**tell** 29:*12* 31:*14* 33:*14* 36:*14*, *18* 41:*10* 49:*20* 51:*18* 65:*25* 68:*2*, *5*, *7* 72:*25* 82:*21* 91:*14* 94:*12* 96:*12* 104:*1*, *5* 112:*12* 120:*8* 131:*9* 133:*5* 137:*8* 143:*21* 155:*17*
**telling** 58:*9* 101:*11* 113:*5* 154:*15*
**tells** 96:*25*
**temporary** 148:*10*
**ten** 126:*17* 162:*22*
**terminated** 98:*10*
**terminating** 86:*19*
**termination** 32:*25* 87:*11*
**terminations** 159:*23*
**terms** 35:*22* 54:*14* 83:*17*
**terribly** 113:*10*
**test** 21:*9*
**testified** 30:*11* 43:*17* 51:*5* 52:*9*, *22* 60:*25* 77:*3* 85:*11* 99:*15* 109:*20* 115:*11*, *16* 117:*25* 122:*5* 124:*12* 132:*6*, *24* 152:*12*, *22* 153:*6* 167:*16*
**testify** 13:*5* 121:*22* 136:*9*
**testifying** 12:*25* 21:*5* 136:*5* 156:*10*
**testimony** 10:*5* 13:*9*, *21* 17:*12* 18:*6* 21:*20* 23:*1* 43:*20* 46:*8* 95:*19* 110:*21* 115:*5* 116:*11* 127:*19* 129:*11* 133:*16* 155:*22* 156:*25*
**text** 33:*22* 34:*21*, *22* 35:*9* 41:*8*, *12*, *20*, *22* 47:*21* 48:*2*, *3*, *12*, *16* 52:*12*, *19* 63:*22* 71:*23* 72:*4* 80:*7* 112:*9*, *15* 120:*16* 125:*12*, *15* 127:*9* 129:*24*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

130:13, 23 137:11, 22 141:11, 14 147:4
**texted** 33:18 41:4 80:7 141:17, 21
**texting** 48:18 141:18 142:4
**Thank** 5:7 8:24 9:10 10:10, 16 12:8, 20 14:21 22:25 24:11 25:3 26:24 28:8, 11 29:19, 23 40:15 49:16 55:5, 7, 11 57:3 59:10, 11, 23 60:11 61:3, 14 67:15 74:4, 9, 23 75:1, 5, 14 81:10, 15 84:15, 19, 20 85:14 95:8, 18 97:22 105:2, 13, 14 108:14, 23 109:4, 10 111:10 114:19, 21 116:9 117:3, 7, 8, 10 121:17, 18 122:8 124:25 144:3 152:21 154:9 156:4, 20 159:3, 7 160:19 162:13 169:6, 8, 9
**Thanks** 67:14 75:18 116:12 121:16 162:1
**thing** 70:23 78:9 88:17 91:21 92:10 130:10 134:15 139:17 140:9, 10 147:15 148:20 160:14
**things** 22:10, 17 34:4 49:11 52:7 63:3, 5, 7 65:3 66:12, 14 72:8 73:18 104:8 112:23 132:16 137:2 149:14 157:12, 19 160:16
**think** 5:17 7:18 8:12 9:16 10:22 11:8, 12 12:14, 19, 22 14:10 16:24 19:6, 20, 22 21:11 22:9 27:18, 20 30:6 43:8 52:1, 7 59:3, 21 66:2 67:6, 7 68:23 69:2 71:14 72:22 73:8, 22 75:22 80:2 87:2 88:22 89:6, 18, 19 90:1 91:12, 23 96:1, 17, 19 99:15, 20 101:3 102:22 103:16 104:12 113:4 114:15 117:19 124:19 125:17, 24 133:16 139:25 140:18 141:9 142:12 143:2 144:20, 21 145:11, 12 148:6 153:6 156:19, 24 157:3 163:4 164:17, 20 165:12
**thought** 34:2 59:1 72:17 124:6 128:21 130:2 131:9 134:10 149:9 158:13 160:4 168:18, 19, 20
**three** 8:16 19:15, 24 20:23 25:13 27:15, 16, 18, 20 80:3 99:4 129:12 148:13 150:15
**three-minute** 27:23
**Thursday** 110:12 111:13

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

119:5, 6 146:7
**time** 9:13 13:4 15:21 16:21 20:25 22:8 24:9, 17 28:11 29:21 32:18 33:24 34:8, 25 36:23 37:16 38:11, 19 43:9, 11 44:9, 21 46:2 54:6, 9, 25 55:3, 7, 13 57:12 58:5 59:6 63:2, 20 65:4 66:3 67:16 69:7, 14, 16 71:14 72:3 74:4 78:4 80:4 81:22 82:13 84:7 92:7 93:16 100:9 101:10 105:3 106:4 108:11, 17 110:15 111:3, 11 114:20 117:9 118:7 120:19 121:13, 14, 21 123:2, 11 124:9 132:24 134:3 137:17 139:15 144:12 151:18 152:21 156:20 157:23 160:3, 9 162:14 163:25 164:24
**timeline** 165:1
**times** 31:18 33:17, 18 34:6 40:10, 12 52:4 63:5 80:3, 6, 16 88:4, 8, 10, 20, 21, 22 101:3, 7 112:20 149:20
**tip** 60:13
**title** 61:15 77:10 151:21
**today** 6:4 18:7 25:9 28:12 51:5, 9 61:13 81:16 93:9 108:10, 21 110:1 114:19 150:18 152:22 161:2, 6, 25 167:16
**today's** 16:4, 7
**toggle** 157:4
**told** 28:23 37:16 39:20 40:23 41:4, 9, 18 44:5, 9 57:19 64:6 66:23 68:20 69:5, 6 71:1, 7 72:6, 7 78:18, 19 79:18 84:7 91:22 96:16 102:9, 15 107:21 108:1 111:11 129:9 130:20 132:9 133:18, 24 153:23 154:3, 6 157:18, 24, 25 158:24 159:1
**tomorrow** 73:1
**tone** 36:15 91:24
**top** 11:25 38:23 60:13
**topics** 152:9
**total** 161:9
**training** 131:17 143:15, 16 151:22
**transcribed** 170:10
**TRANSCRIPT** 1:10 16:4 22:22 163:9, 13, 16, 19, 20 164:6, 16, 25 165:1 166:21 168:10, 14, 17, 24 170:8
**transcripts** 169:3
**transitioning** 158:16
**traveled** 12:14
**treated** 13:18 127:10, 15 137:2
**trial** 22:21
**trickle** 132:13
**tried** 46:17, 20 63:14 96:19 116:20 117:9
**true** 107:14 167:15 170:7

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**try** 60:*17* 62:*18* 88:*8* 152:*14*
**trying** 19:*19* 25:*2* 35:*6* 64:*12*, *18* 89:*6* 127:*1*, *2*, *4*, *13*, *14* 131:*25* 135:*9* 137:*4* 154:*12* 157:*4*
**turn** 60:*14*, *15* 76:*22* 86:*9* 145:*11* 152:*16*
**turned** 127:*15*
**twice** 36:*6*, *8* 125:*11* 138:*25*
**two** 19:*9* 20:*4* 21:*1* 33:*6* 43:*12* 51:*3* 59:*25* 63:*9* 76:*15* 94:*16* 106:*9* 125:*8* 129:*12* 135:*6* 148:*2*, *3* 159:*15*
**two-hour** 143:*6*
**typical** 95:*11*
**typically** 93:*1* 98:*24* 104:*14*

**< U >**
**UDS** 130:*23* 141:*13*, *22*, *25*
**uh-huh** 62:*4* 70:*5* 142:*25*
**uhn-uhn** 105:*12*
**umbrella** 31:*2*
**Um-hum** 33:*13* 34:*7* 42:*18* 55:*20* 58:*12* 69:*18* 87:*19*, *22* 95:*14* 99:*5*, *6* 100:*15*, *17* 102:*21* 136:*8* 138:*24* 139:*1*
**unaware** 147:*19*
**uncover** 101:*8*
**understand** 20:*24* 23:*20* 37:*1* 67:*15* 73:*10* 87:*1* 97:*13*, *15* 102:*1* 116:*15* 126:*7*, *15* 128:*17*, *18* 131:*11* 136:*22* 163:*9*
**understandable** 144:*16*
**understanding** 18:*1* 21:*8* 24:*20* 27:*7* 32:*15* 33:*19* 58:*19* 81:*23* 87:*3* 96:*14* 97:*17*, *20* 101:*23* 130:*6* 168:*23*
**understood** 70:*24* 159:*13*
**unfortunate** 37:*18*
**Uniform** 141:*22*
**unilaterally** 56:*6*, *8*
**unknown** 169:*2*
**unmute** 7:*7*
**unpaid** 164:*7*
**untouched** 47:*11*, *12*
**unusual** 72:*19* 73:*4*, *6*
**upload** 66:*12*
**upset** 64:*3* 65:*20* 66:*16* 89:*22* 156:*14*
**upstairs** 130:*20*
**urgency** 62:*14*
**use** 21:*20* 52:*18* 67:*22* 86:*10* 105:*23* 126:*13* 130:*7* 133:*9* 137:*1* 153:*12*
**User** 11:*21* 14:*18*
**users** 59:*25*
**usual** 60:*20* 135:*20*
**usually** 61:*24* 81:*7* 113:*11*, *13* 163:*18*, *19*

**< V >**
**vague** 34:*20* 35:*6*
**various** 129:*17*
**veracity** 18:*4*
**verbal** 29:*6* 37:*14* 81:*1* 87:*18*, *23* 88:*3*, *19* 93:*12*, *19*, *25* 94:*21*,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

25 95:10, 11 98:17, 19, 23 100:4 107:14 108:2 159:23
**verbally** 42:24 44:22 94:6 99:16
**verbatim** 35:13
**verified** 126:24
**verify** 8:21 125:18 126:17
**version** 116:16
**versus** 40:25
**vicinity** 83:17
**video** 30:5 60:17
**view** 16:2
**VII** 25:11
**visit** 54:18 66:5, 7, 11 155:13
**visited** 43:2
**visually** 74:11
**vocal** 113:14
**voice** 36:15 91:24 119:13, 21 127:18
**voices** 119:2, 10
**volume** 76:22 86:9
**vote** 5:6 7:21 14:7 164:15

**< W >**
**wait** 73:21
**waiting** 10:1, 20 13:16
**walk** 83:20 107:16 159:25
**walked** 91:25 94:24 127:8 132:16, 19
**walking** 91:11, 13 95:10 102:7 131:2
**walks** 107:7
**walk-through** 143:16
**wall** 42:9, 10 110:5, 6 113:8, 11, 17 118:20 126:9, 10, 11 132:19
**want** 11:9, 17 16:1 17:16 35:14 55:14 62:9 64:7 65:11 66:25 67:1 68:1 73:20 75:11 88:18 89:8 98:16, 20 103:12 104:15 105:7 106:13 108:16 131:6 158:2 162:5, 11 163:1, 9 167:7
**wanted** 8:21 9:10 23:25 39:21 40:1 65:9 70:17, 21 91:18 130:4 136:6
**wanting** 40:2
**wants** 27:8 162:4
**watch** 125:11
**way** 42:20 50:5, 12 71:17 74:18 86:10 88:13 97:1, 3, 4, 14 126:21 127:10 134:19, 24 137:2 160:6 161:5 164:9
**WebEx** 1:11 2:3, 9, 12, 15, 18 12:1 59:22, 25
**Wednesday** 147:13
**week** 32:11, 14 54:5, 6 146:7 147:24 151:24
**weekly** 32:19 72:13
**weeks** 148:2, 3
**welcome** 5:18
**Well** 8:12 11:22 13:7, 9 16:4 18:17 21:25 31:19, 20, 23 36:11 38:8, 10, 11, 15 44:5 48:16 53:2 54:3 55:14, 23 59:5 63:15 66:1 67:15 69:24 72:25 75:25 80:9, 10 89:22 91:14 92:11, 15 94:16 102:14 103:9, 19, 23 119:8 121:24 127:22 128:2 131:25

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 295 of 1127 PageID #: 298

Page 283 of 331
Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM


133:10 134:20 141:16 154:25 160:23 162:13 163:23 165:16 169:1
**went** 34:4 35:20 63:16 72:7 77:22 112:14, 22 125:14 126:3, 22, 23 128:6 129:13, 15 130:12, 16, 25 154:18, 19
**we're** 12:19 14:7 25:9 26:9 44:21 59:5 76:9 86:25 101:15 106:23 139:19 140:18 159:5 164:15, 24 168:21
**Wetzel** 130:16
**We've** 11:21 12:7 17:7 33:8 84:24 98:17 107:6 109:15 124:1 163:17
**whatsoever** 19:17 32:5 113:13
**wheel** 36:21 49:3 50:11 58:16 128:24 129:9 132:23 155:5
**WHEREOF** 170:12
**wife** 157:8, 18
**willing** 5:2
**wind** 66:15 67:2 79:9, 25
**wish** 81:8
**WITNESS** 3:11 4:2 9:20 10:18, 21 11:3, 11 13:18 21:1 26:11 29:18 30:11 55:5, 8 59:10, 13 60:21, 24 63:9 68:12 73:13 74:11 75:2, 5 76:24 77:2 84:17, 21 85:7, 10 86:13 87:24 93:5 94:11, 14, 15 97:23 101:17, 19 103:5 108:15 109:16, 19 110:15 114:21, 24 117:8, 21, 24 121:15 122:1, 4 123:5 154:11 167:12, 16 170:12
**witnessed** 20:6 65:20 110:23 119:20
**witnesses** 9:11, 15, 16, 25 10:4 11:12 13:1, 4, 21 17:4, 6, 7, 17 18:18, 23 19:3, 13, 15, 25 20:5, 6, 23 21:3, 9, 12, 16, 18 25:5 52:8 59:19 75:20 105:18, 20 106:9, 15 115:6 159:6 162:8 166:16
**witness's** 116:11
**wondering** 18:21 23:7
**word** 80:18 107:10 134:2, 5 147:17 149:11 155:1, 8, 10 161:14, 24
**words** 21:11 35:1, 5 36:22 43:8 57:22 131:19 153:13 161:19
**work** 32:17 45:7 48:18 53:25 54:7, 17 61:24 62:1 65:2, 6 69:25 71:10, 22 89:1 93:2 95:12 96:18 99:4 102:6 107:18, 19, 20 108:6 118:8 120:16, 17, 20 124:10 141:18 142:1, 3, 4 148:13, 17, 22 152:1, 12 158:2,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

20 160:7, 19 164:7
**worked** 44:25 46:12 61:17 77:14 85:21 123:11 125:22 130:22 141:4 147:19
**working** 7:7 27:19 54:11, 14 59:14 65:3, 19 66:15 68:8 70:12, 14 76:9 96:12 107:17 143:15 151:25 152:1, 4 158:15 160:1, 3
**workplace** 33:5
**work-related** 113:1, 5
**works** 47:4 93:1
**work-wise** 141:8
**world** 160:2
**wrap** 137:4
**wrapping** 41:19
125:13 137:9
**writing** 29:4 44:15 50:15 98:7, 14
**written** 52:2 68:25 69:11 148:5 169:4
**wrong** 64:4 67:25
**wrote** 90:21
**Wyatt** 1:8 2:12, 19 4:12 5:22 10:22 13:8 17:11 22:14 23:5, 9, 25 24:5 28:13, 16, 20, 24 29:1, 5, 8, 12 31:11, 16 32:8, 15, 23 33:10, 15, 16 34:6 35:8, 17 37:15, 21 38:10, 25 39:10, 23 40:19, 23 41:2, 18 42:14, 21 43:14, 21 44:14, 22, 24 45:6 46:12, 17 47:23 48:17 49:21 50:4, 10, 15, 18 51:12, 23 52:3 54:8, 9 57:24 58:24 62:3 63:12, 24 64:9 65:19 67:14, 18 68:13 70:9, 12 71:20 73:5, 14, 23, 25 74:11 77:25 79:10 81:15, 20, 24 82:3, 15, 18 83:8, 11, 25 84:4, 12 85:24 86:17 89:11 90:14, 25 91:8 94:2 97:14, 24 99:8 102:6, 15, 19 104:5, 13 105:22 107:18 108:5 109:24 110:5, 15, 18, 22 111:1, 12, 16 112:1, 10 113:9, 11, 18, 21 114:2, 5, 7 116:15 118:4, 8 119:13, 16, 20, 23 120:5, 7, 11, 16, 23 121:3, 6, 22 122:3, 8, 10 152:21 161:19, 21 162:10 164:7
**Wyatt's** 18:9 29:15 31:12 32:25 33:3 34:19 36:15 42:10 47:6, 9, 17 48:20 53:25 54:22 55:18 57:7 110:3, 7 118:14 119:16, 19 161:7

**< Y >**
**Yeah** 8:15 27:6, 20 30:6, 9 33:8 34:16 35:6 37:1, 25 45:3 47:12 59:8, 21 64:3 65:2, 21 66:19 67:24 69:18 70:5

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

71:*17*
72:*21*, *24*
79:*18*
80:*11*
86:*24*
88:*13* 89:*7*
90:*18* 91:*1*, *9* 92:*15*
93:*15*, *21*
94:*4* 97:*5*, *19*, *21* 99:*1*
102:*8*, *13*, *17* 103:*12*, *14* 106:*18*, *21*, *23*
114:*7*
116:*19*
133:*7*
134:*10*
135:*21*
139:*17*, *19*
140:*12*
142:*25*
144:*15*
158:*13*
165:*24*
**year** 61:*19*
**years** 157:*19*
**yell** 135:*2*
**yelled** 128:*23*
**yelling** 36:*23* 50:*10* 113:*18*
**yep** 71:*18* 99:*5* 118:*22*
**yesterday** 131:*24*
**young** 162:*25* 165:*13* 167:*1*

**< Z >**
**Zajicek** 1:*15* 170:*3*, *19*

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**BEFORE THE ST. LOUIS COUNTY CIVIL SERVICE COMMISSION**
**ST. LOUIS COUNTY, MISSOURI**

In re Appeal of Duane "Pete" Wyatt, )
)
Appellant, )
)
v. )
)
Dr. Kanika Cunningham, )
Appointing Authority, et al., )
)
Respondents. )

**APPELLANT'S PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

**Proposed Findings of Fact**

1. Mr. Wyatt was employed by St. Louis County as Chief Operating Officer for the Department of Public Health and was a merit employee. Tr. 31:10-13; 122:13-15; 123:11-13.

2. Dr. Kanika Cunningham, the Appointing Authority, testified that she considered Mr. Wyatt terminated from his position. Tr. 98:05-10.

3. The County did not produce any pre-hearing witness list, written statement of cause, or documentary evidence to Appellant before the hearing, and the County confirmed at hearing that it had submitted no documents. Tr. 9:14-23; 10:11-15; 19:16-24; 22:10-15.

4. The Commission took judicial notice of St. Louis County Charter Article VII, Section 7.020; Revised Ordinances section 202.100; Ordinance 15,154; and Civil Service Rules XIX, XX, XXI, and XXII. Tr. 25:07-26:03.

5. On February 5, 2026, Mr. Melton and Mr. Wyatt had a 58-second telephone conversation while Mr. Wyatt was driving to work. Tr. 34:9-17; 125:7-25; Exhibit 3.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

6. Mr. Melton testified that during that call Mr. Wyatt twice said that he "quit" and Mr. Melton treated the call as a resignation. Tr. 35:13-25; 36:1-13.

7. No witness other than Mr. Melton claimed ever to have heard Mr. Wyatt say "I quit." Tr. 63:8-11; 68:5-11; 110:15-20.

8. Ms. Pike testified that she worked with Mr. Wyatt throughout the remainder of February 5 until 4:30 p.m. Tr. 64:25-65:06.

9. Dr. Miller testified that he met with Mr. Wyatt on February 5th, did not hear him say he quit, did not observe agitation, and never heard any elevated office discussion that day. See Tr. 110:15-111:24; 113:7-24. Dr. Miller testified that he has never witnessed Mr. Wyatt get angry and curse at people. Tr. 110:21-24.

10. Damon Broadus likewise testified that he saw no agitation from Mr. Wyatt on February 5th, and never heard or saw disrespectful conduct by Mr. Wyatt. Tr. 119:08-120:25.

11. Mr. Wyatt never submitted a written resignation. Tr. 44:14-16; 50:14-18; 148:4-9.

12. Mr. Melton admitted he never asked for a written resignation, and Dr. Cunningham admitted she never asked for one either. Tr. 44:14-16; 50:14-18; 98:5-19.

13. Mr. Wyatt reported to work on February 5th after the 58-second phone call, entered Mr. Melton's office for a brief in-person discussion, continued working the rest of the day, and returned again on February 6th. Tr. 37:20-38:18; 45:06-10; 46:12-24; 129:11-25; 131:22-25; 148:16-25.

14. Ms. Gardner testified that Dr. Cunningham did not ask her to accept the resignation until February 6th. Tr. 79:04-14.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

15. When Ms. Gardner informed Mr. Wyatt on February 6th that the County had accepted his resignation, he was surprised, and expressly denied resigning. Tr. 79:15-24; 82:13-23; 132:18-25; 144:5-12.

16. Dr. Cunningham did not speak directly with Mr. Wyatt before accepting the alleged resignation. Tr. 89:10-23; 90:13-18; 95:22-24.

17. Dr. Cunningham testified that verbal resignations “not in good standing” are situations where an employee says “I quit,” leaves, and does not continue working in the role. Tr. 88:17-89:08; 94:22-95:15.

18. This case did not fit that pattern because Mr. Wyatt continued to work on February 5th and February 6th after the alleged resignation. Tr. 65:1-17; 71:10-18; 129:11-25; 131:22-25; 148:16-25.

19. Dr. Cunningham sent her assistant to inform Mr. Wyatt on February 6th that a supposed resignation “not in good standing” the day prior had already been accepted, and caused Mr. Wyatt to exit the building under supervision of security. Tr. 79:11-24; 82:13-23; 91:17-20; 102:05-11; 132:18-19.

20. After Ms. Gardner informed him that the County had accepted his resignation, Mr. Wyatt sent repeated emails denying that he resigned. Tr. 145:6-25; 146:1-25; 147:1-25; Exhibit 2.

21. Dr. Cunningham admitted that, even after learning Mr. Wyatt denied resigning, she did not direct anyone outside counsel to conduct an investigation. Tr. 102:14-25.

22. The Commission later invited post-hearing filings and referenced “the statement from the young lady that made the statement.” Tr. 165:08-168:05.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

23. The Pike statement later produced to the Commission is an undated, unsigned one-page typed summary. Exhibit 1.

24. At the hearing, however, Ms. Pike testified that she did not recall signing an affidavit, believed Sharon Gardner took her statement, and described that process as occurring later on February 6th. Tr. 68:16-69:25; 70:01-05; 82:06-12.

25. Appellant had no opportunity, after the Pike statement was produced on May 4, 2026, to cross-examine Ms. Pike concerning that document's preparation, timing, edits, or accuracy.

26. Before the hearing, Appellant sought relevant records through a public records request, including materials concerning the alleged resignation, witness statements, investigative materials, and his HR file, but those materials were not produced before the hearing. Request 26-3253.

27. The hearing record reflects that Appellant repeatedly advised the Commission that he had requested documents supporting the County's account and had received nothing from either the County or the Commission before the hearing.

28. The County delayed production of requested records beyond the hearing date and, based on the hearing record and subsequent events, beyond the deadline for meaningful use in post-hearing submissions as well. Request 26-3253.

29. Because the requested materials were not timely produced, Appellant was unable before or during the hearing to compare witness testimony to contemporaneous documents, prepare cross-examination using witness statements and investigative materials, or determine whether exculpatory or inconsistent records existed in his HR file or elsewhere.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

30. The post-hearing production of Ms. Pike's undated, unsigned statement confirms that requested materials existed but were not disclosed in time for Appellant to confront the witness with them during her testimony.

**Proposed Conclusions of Law**

31. Under Article VII of the St. Louis County Charter, covered county employees are retained on the basis of merit and ability, and the Civil Service Commission hears appeals in disciplinary cases. St. Louis County Charter Art. VII, §§ 7.010, 7.030(3).

32. The Commission therefore has jurisdiction to review a separation that is disciplinary in substance regardless of whether Appellant was terminated, as the Appointing Authority testified, or if the County labels it a resignation. Tr. 25:07-26:3.

33. The County failed to prove that Mr. Wyatt voluntarily resigned under Rule XIX because there was no written resignation and because the record shows continued work rather than departure. Tr. 44:14-16; 50:14-18; 65:1-17; 71:10-18; 129:11-25; 148:16-25.

34. The County also failed to prove any deemed resignation by absence. Dr. Cunningham herself acknowledged the Rule XIX provision addressing presumptive resignation after three consecutive missed workdays, and Mr. Wyatt indisputably did not miss three consecutive days. Tr. 99:2-6; 148:10-25.

35. The more persuasive record evidence shows, at most, a brief heated call followed by continued employment conduct inconsistent with resignation. Tr. 64:1-8; 65:1-17; 110:15-25; 120:14-25.

36. Because the Appointing Authority testified to considering the Appellant terminated, Appellant had enforceable rights pursuant to the Charter and Rules XXI and XXII.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

37. Because the County relied on allegations of profanity, aggression, a resignation "not in good standing," and alleged "mental health" concerns shared with an outside third party, the County's action was disciplinary in substance and should have been processed under the discipline-and-appeal framework recognized by the Charter and Rules XXI and XXII. St. Louis County Charter Art. VII, § 7.030(3); Tr. 25:07-26:03; 88:17-25; 90:21-91:12.

38. Mr. Wyatt, as a covered merit employee, possessed a protected property interest in continued employment. St. Louis County Charter Art. VII, §§ 7.010, 7.030(3).

39. Under Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542-46 (1985), due process required notice and an opportunity to respond before the County deprived Mr. Wyatt of that protected employment interest.

40. The County did not provide that process. Dr. Cunningham testified that she considered Mr. Wyatt terminated. Tr. 98:05-10 She alternatively testified that she accepted the alleged resignation without speaking to Mr. Wyatt; Ms. Gardner informed him after the decision had already been made; and the County persisted even after his immediate denial and later written denials. Tr. 79:04-24; 82:13-23; 89:10-23; 90:13-18; 102:14-25; 145:6-147:25; Exhibit 2.

41. Accordingly, the County's action should be reversed on non-constitutional grounds because it was not a proven resignation under the Rules, and, alternatively, because it deprived a merit employee of employment without the minimum pre-deprivation process required by Loudermill.

42. To the extent the County's "resigned not in good standing" designation and all associated accusations placed Mr. Wyatt's good name, reputation, honor, or integrity at issue in connection with loss of employment, due process also supports corrective relief to clear his

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

name. Board of Regents v. Roth, 408 U.S. 564, 573 (1972); Paul v. Davis, 424 U.S. 693, 701-10 (1976); Codd v. Velger, 429 U.S. 624, 627-28 (1977).

43. The late-produced Pike statement should either be excluded or accorded no weight because it was produced only after the hearing, is undated and unsigned, and was not subject to cross-examination after production. Tr. 68:16-25; 69:01-25; 162:21-25; 163:01-25; Exhibit 1.

44. Missouri's Sunshine Law required the County to act on Appellant's request for public records as soon as possible and, absent reasonable cause, no later than the end of the third business day after receipt. Mo. Rev. Stat. § 610.023.

45. Although formal enforcement of Chapter 610 lies in circuit court, the Commission may consider the fairness consequences of the County's delayed and incomplete production in evaluating the reliability and weight of the County's proof in this appeal. § 610.027 R.S.Mo.

46. The County's failure to timely produce requested records materially prejudiced Appellant's ability to prepare and present his case, including his ability to test the County's changing account against contemporaneous records, prepare cross-examination, and confront witnesses with prior statements.

47. To the extent the full extent of prejudice cannot yet be identified, that uncertainty results from the County's continued nonproduction itself. Appellant has therefore preserved all additional objections and remedies arising from any later-produced records, including any rights and remedies available under Chapter 610.

48. The Commission should accordingly draw no inference favorable to the County from the absence of documents the County failed to timely produce and should not afford

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

dispositive or enhanced weight to witness narratives that Appellant was denied a fair opportunity to test through contemporaneous records.

**Proposed Order**

49. The County's action separating Appellant from employment is REVERSED.

50. The Commission finds that Appellant did not voluntarily resign.

51. Appellant shall be reinstated to his former position.

52. Appellant shall receive back pay with interest, restoration of benefits, service credit, leave accruals, seniority from the date of separation through reinstatement, less any lawful offsets, and return of his office space.

53. The County shall remove from Appellant's personnel records any statement that he resigned "not in good standing" and any comparable misconduct-based, resignation or "mental health" notation.

54. The Pike statement produced after hearing is excluded from consideration as unreliable.

55. The Commission shall not afford Respondent any evidentiary or persuasive advantage from records not timely produced, and Appellant's objections arising from that nonproduction are preserved.

56. The Commission grants such other and further relief as is just and proper.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Respectfully submitted,

____s/s Katherine Frierdich_________

Katherine C. Frierdich (née Lemley)
Mo Bar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
Counsel for Appellant

Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on counsel for Respondent and the St. Louis County Clinical Consumer Majority Board on May 13, 2026, via electronic mail.

____s/s Katherine Frierdich_________

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**BEFORE THE CIVIL SERVICE COMMISSION ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| In Re the Matter of: | ) |
| | ) |
| Duane "Pete" Wyatt, | ) |
| | ) |
| Appellant. | ) |

**<u>FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION</u>**

**A. Introduction**

A hearing was conducted on March 30, 2026 to hear evidence relating to Duane "Pete" Wyatt's appeal related to his separation from employment with St. Louis County. Official notice was taken of the St. Louis County Charter Article VII section 7.020; St. Louis County Ordinance 15,154, St. Louis County Revised Ordinances section 202.100, and St. Louis County Civil Service Rules XIX and XXII. The Civil Service Commission, now having considered all the evidence and testimony adduced, and having reviewed the full record of this matter, and being fully advised in the premises, makes these findings of fact, conclusions of law, and decision.

**B. Findings of Fact**

1. Duane "Pete" Wyatt was employed by St. Louis County starting on August 19, 2024, as the Federally Qualified Health Center Chief Operations Officer within the Department of Public Health. Hearing Tr. 122:12-15.

2. Dr. Kanika Cunningham, beginning in January 2023, has served as and continues to serve as the Director of the St. Louis County Department of Public Health. Hearing Tr. 85:19-23.

3. Dr. Kanika Cunningham is the Appointing Authority for the Department of

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Public Health. Hearing Tr. 87:8.

4. Mr. Wyatt resigned from County employment, effective February 6, 2026. Hearing Tr. 90:5 – 91:16; Exh. A (resignation acceptance email).

**Mr. Wyatt's Performance and Conduct Prior to Feb. 5**

4. Mr. Wyatt reported directly to Derrick Melton, the Federally Qualified Health Center Chief Executive Officer. Hearing Tr. 31:10.

5. Mr. Wyatt's job duties included the oversight of DPH's clinical operations, including supervising nursing and administrative staff, engaging in strategic planning to maintain financial solvency and stability, and ensuring regulatory compliance with federal HRSA (Health Resources and Services Administration) requirements tied to maintaining DPH's federally qualified health center status. Hearing Tr. 31:14 –25.

6. As of February 5, 2026, Mr. Melton was generally satisfied with Mr. Wyatt's job performance. Hearing Tr. 32:2.

7. As of February 5, 2026, the Department of Public Health was pursuing no disciplinary action against Mr. Wyatt and knew of no allegations of misconduct that could have lead to disciplinary action. Hearing Tr. 32:21 – 33.1.

**Mr. Wyatt's Resignation**

9. On February 5, 2026:

a. At approximately 9:00 a.m., Dr. Cunningham asked Mr. Melton how many employees reported directly to Mr. Wyatt. Dr. Cunningham communicated that she needed an answer urgently. Tr. 89:24-90:1.

b. Mr. Melton sent a text message to Mr. Wyatt with the question at 9:03 a.m. Mr. Wyatt replied that he thought he had six direct reports but would confirm.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Hearing Tr. 41:22-42:2.

c. Mr. Melton called Mr. Wyatt directly four times between 9:03 a.m. and 9:30 a.m. seeking a more specific answer. Mr. Wyatt did not answer. Hearing Tr. 33:16 – 20; Exh. B (call logs).

d. Ms. Pike, who served as Mr. Melton's administrative support staff, also called Mr. Wyatt on Mr. Melton's behalf. Mr. Wyatt did not answer. Hearing Tr. 63:20-23.

e. At or around 9:30 a.m., Mr. Wyatt returned Mr. Melton's call. The call duration was 58 seconds. Hearing Tr. 128:25-129:2; Exh. B.

f. Mr. Wyatt's voice was raised, and Mr. Melton heard a smacking sound that he believed to be Mr. Wyatt smacking the steering wheel of his vehicle. Hearing Tr. 36:17-25.

g. During the 9:30 a.m. call:

   i. Mr. Wyatt repeatedly cursed Mr. Melton, using language including "fuck you," "I'm fucking talking to you," "I'm fucking driving," and "I'm tired of this shit." Hearing Tr. 31:13-25.

   ii. Mr. Wyatt then stated, "I fucking quit." Hearing Tr. 36:1.

   iii. Mr. Melton asked Mr. Wyatt to confirm, and he repeated, "I fucking quit." Hearing Tr. 36:3-8.

   iv. Mr. Melton responded, "If you quit, then I accept." Hearing Tr. 36:12.

h. Following the 9:30 a.m. call, Mr. Melton immediately called Dr. Cunningham. Hearing Tr. 89:16-20.

i. Mr. Melton told Dr. Cunningham that Mr. Wyatt said that he "fucking quit."

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Hearing Tr. 90:6.

**<u>Mr. Wyatt's Actions After the Resignation</u>**

10. On February 5, 2026:

a. At or about 10:00 a.m. Mr. Wyatt arrived at the John C. Murphy building, located at 6121 North Hanley Road Berkeley, Missouri 63134. Hearing Tr. 138:19.

b. Soon after Mr. Wyatt's arrival, at or about 10:15 a.m. Mr. Wyatt entered Mr. Melton's office. Hearing Tr. 38:19-23.

i. Mr. Melton immediately asked why Mr. Wyatt was there. Mr. Melton repeated, "You resigned. You said what you said and that's that." Hearing Tr. 38:1-16.

ii. Mr. Wyatt then left Mr. Melton's office. Hearing Tr. 38:17.

iii. Mr. Wyatt did not attempt to deny his resignation or ask for clarification. Hearing Tr. 38:24 – 39:6.

j. Mr. Wyatt approached Ms. Pike outside Mr. Melton's office multiple times throughout the afternoon. Mr. Wyatt repeatedly said "I need to apologize to him." Hearing Tr. 70:15 – 71:2; *see also* Exh. C (Eugenia Pike statement)

a. At or soon after 3:30 p.m., Ms. Pike cancelled a future one-on-one meeting between Mr. Wyatt and Mr. Melton. Hearing Tr. 71:3.

b. Mr. Wyatt approached Ms. Pike, repeated his request and asked Ms. Pike, "Is he mad? he's mad, isn't he?" Hearing Tr. 71:3-6; Exh. B.

c. Ms. Pike and Mr. Wyatt both left the office at approximately 4:30 p.m. Hearing Tr. 71:14.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**Dr. Cunningham's Acceptance**

11. On February 6, 2026:

a. On the morning of February 6, 2026, Dr. Cunningham directed her executive assistant, Sharon Gardner, to communicate her formal acceptance of Mr. Wyatt's resignation. Hearing Tr. 78:22 – 79:4.

b. Mr. Wyatt arrived at the John C. Murphy building at approximately 12:35 p.m. Hearing Tr. 131:2.

c. Ms. Gardner came to Mr. Wyatt's office at or around 12:50 p.m. and informed him verbally that Dr. Cunningham had accepted his resignation. Hearing Tr. 82:13-15.

d. In response to Ms. Gardner, Mr. Wyatt denied that he had resigned. Hearing Tr. 82:22

e. Mr. Wyatt initially denied to Ms. Gardner that he had spoken to Mr. Melton at all on February 5, 2025 and repeated his denial multiple times. Hearing Tr. 79:18 – 80:3.

f. After Ms. Gardner asked whether Mr. Wyatt complied with Mr. Melton's text message to call him, Mr. Wyatt changed his answer. Hearing Tr. 80:6-11.

g. Mr. Wyatt then admitted that he had a heated conversation with Mr. Melton. Mr. Wyatt stated to Ms. Gardner that he could not recall whether he cursed. Hearing Tr. 80:19-25.

h. Ms. Gardner instructed Mr. Wyatt to turn in his badge and mobile telephone. Hearing Tr. 84:7.

i. Mr. Wyatt then left the building. Hearing Tr. 83:19.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

j. At 1:19 p.m., Ms. Gardner sent an email to Mr. Wyatt with further written confirmation of Dr. Cunningham's acceptance of Mr. Wyatt's resignation. Hearing Tr. 81:4-9; Exh. A.

12. Mr. Wyatt submitted an appeal to the Civil Service Commission on February 24, 2026, and amended his appeal on March 9, 2026. Mr. Wyatt alleged in both the original and amended submissions that he had never resigned, and so his separation from County employment was properly characterized as an appealable termination.

13. On March 30, 2026, without ruling on whether Mr. Wyatt's separation from County employment was an appealable termination, the Civil Service Commission held a hearing on the record on Mr. Wyatt's allegation. *See* Hearing Tr 1.

14. The Civil Service Commission provided Mr. Wyatt due process on March 30, 2026, by conducting its hearing prior to deciding whether his separation from employment was a resignation or a termination, which was appealable. *See* Hearing Tr., *passim.*

15. During the appeal hearing, Mr. Wyatt received due process when he had the opportunity to respond to all allegations against him with his own testimony and the opportunity to provide additional testimony, exhibits and evidence. *See* Hearing Tr., *passim*.

16. Mr. Wyatt testified at the hearing and provided witness testimony. *See* Hearing Tr. 109:23 – 159:3.

17. Mr. Wyatt and the County were both represented by counsel in this matter. *See* Hearing Tr. 2.

18. The Civil Service Commission members reviewed all the transcripts and evidence before voting on Mr. Wyatt's appeal. *See* Minutes of the Civil Service Commission Meeting dated _________, 2026.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**C. Conclusions of Law**

The Commission makes the following conclusions of law from its findings of fact and the reasonable inferences derived therefrom:

44. The St. Louis County Civil Service Commission has jurisdiction of this matter pursuant to the St. Louis County Charter Article VII, section 7.20; Ordinance 15,154, section 202.100 of the St. Louis County Revised Ordinances; and St. Louis County Civil Service Rule XXII, section B.1-.3.

45. St. Louis County Civil Service Rule XIX (Resignation) fully applies and the Appointing Authority correctly interpreted the true intent thereof in accepting Mr. Wyatt's oral statement as a resignation not in good standing on February 6, 2026, pursuant to Section A, sub-sections 1 and 2, which respectively state that:

1. A merit system employee may resign in good standing by submitting a written resignation to the employee's Appointing Authority, at least 14 calendar days before the effective date of the resignation. A copy of the written resignation must be submitted by the Appointing Authority to the Personnel Director with the payroll form terminating employment.
2. Failure of the employee to give 14 calendar days notice, unless the Appointing Authority consents to a shorter period of notice, may be cause for an employee not to be recommended for future employment with the County.

46. The hearing before the Commission consisted of direct testimony and cross examination of witnesses and the introduction of exhibits. *See* Tr.

47. County's evidence established that Mr. Wyatt made an unequivocal verbal statement of his intent to resign to Derrick Melton on February 5, 2026.

48. The County's evidence established that, by failing to submit his resignation in writing and with 14 calendar days' notice, Mr. Wyatt resigned not in good standing.

49. The County's evidence established that Dr. Cunningham, by and through Ms. Gardner, accepted Mr. Wyatt's verbal resignation on February 6, 2026.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

50. The County's evidence established that Mr. Wyatt did not disclaim or rescind his resignation prior to Dr. Cunningham's acceptance.

51. Dr. Cunningham's interpretation of Mr. Wyatt's conduct as a verbal resignation not in good standing was supported by competent and substantial evidence, and was not arbitrary, capricious, or unreasonable.

52. Dr. Cunningham did not abuse her discretion when she accepted Mr. Wyatt's resignation.

53. Mr. Wyatt's separation from County employment was appropriate and lawful under the Charter, St. Louis County ordinances, and the Rules and Regulations of this Commission.

54. The Appointing Authority was not required to comply with the procedural requirements contained in Rule XXI, Section D of the St. Louis County Civil Service Rules in that Mr. Wyatt, by resigning, voluntarily waived his entitlement to the due process described therein.

55. Mr. Wyatt's contention on appeal that he was involuntarily terminated from County employment without due process is therefore denied.

56. The evidence adduced at the March 30, 2026 hearing that is contrary or inconsistent with the findings of fact, conclusions of law and decision herein is specifically found to be not credible, not truthful and not an adequate basis to reverse any or all of such findings, conclusions and decision.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**DECISION**

We, the Civil Service Commission, therefore, unanimously affirm the decision of the Appointing Authority accepting Mr. Wyatt's resignation from St. Louis County employment, effective February 6, 2026, and deny Appellant's appeal from such resignation.

____________________________________

Nadine Nunn, Chairperson
St. Louis County Civil Service Commission

____________________________________

Satonya Booker, Member
St. Louis County Civil Service Commission

____________________________________

Chantal Hoffsten, Member
St. Louis County Civil Service Commission

SO ORDERED:

________________________
Date

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**BEFORE THE ST. LOUIS COUNTY CIVIL SERVICE COMMISSION**
**ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| In re Appeal of Duane "Pete" Wyatt, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| Dr. Kanika Cunningham, | ) |
| Appointing Authority, et al., | ) |
| | ) |
| Respondents. | ) |

**APPELLANT'S POST-HEARING BRIEF**

**Introduction**

St. Louis County (the "County"), through its Appointing Authority, Dr. Kanika Cunningham, would like the Commission to believe that this case is about a merit employee who voluntarily resigned "not in good standing." The County bears the burden to prove that. But its theory simply did not hold up at the hearing on March 30, 2026:

Q: ". . . did you ask [Mr. Wyatt] to submit his resignation in writing?"

A: [Dr. Cunningham] "No, because I would never talk to--in a situation, I would never talk directly to the **person that's being terminated.**"

See Tr. 98:05-10 (emphasis added). This case is about a termination of a merit employee without basic due process protections.

Even had the County consistently stuck with its "resignation not in good standing" story, which clearly it did not, its case still would have failed. That case would have concerned whether a covered merit employee may be stripped of civil service protection based on an alleged verbal resignation that no one documented in writing, no one investigated before

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

separation, the employee continued to perform County work after the supposed "resignation not in good standing," and the employee immediately, repeatedly and emphatically denied resigning once the County first announced that it had "accepted" the supposed resignation. Even where the County tried to stick to its original story, the hearing record shows that the County's theory shifted; the County's own witnesses materially undermined the resignation narrative; and the County processed this matter as an involuntary separation first and a fact-finding exercise never.

The Commission should find that the County failed to meet its burden of proof, reverse the County's decision, and reinstate Mr. Wyatt to his merit position as if he never left, with interest, because: (a) the Appointing Authority referred to Mr. Wyatt as "terminated"; (b) alternatively, the County failed to prove a voluntary resignation under Rule 19 and Missouri law; (c) Mr. Wyatt's undisputed conduct is inconsistent with any completed resignation; (d) the Appointing Authority admitted that the facts of Mr. Wyatt's alleged resignation don't align with resignations "not in good standing;" and (e) the County denied Mr. Wyatt the minimum due process required before depriving a merit employee of continued employment and disparaging his reputation.

## Jurisdiction and Procedural Background

Mr. Wyatt was a merit employee serving as Chief Operating Officer. See Tr. 31:10-13; 122:13-15; 123:11-13. Jurisdiction lies with the Civil Service Commission because this appeal challenges a termination of a merit employee. Even if the Commission ignores the Appointing Authority's sworn testimony of considering it a termination, and otherwise considers the County's contrived story, it involves a separation that was disciplinary in substance. Article VII of

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

the Charter gives the Commission authority to hear appeals in cases of disciplinary action by appointing authorities. See St. Louis County Charter Art. VII, § 7.030(3). Rule XXII of the Civil Service Rules provides that the Commission may review qualifying appeals and may affirm, modify, or reverse the Appointing Authority's action. If the County's action was a termination, which was admitted, or, alternatively, not on a valid resignation, then it is an appealable removal.

Before the hearing, counsel for Mr. Wyatt asked the Commission to compel testimony and collect non-privileged records, explaining that Mr. Wyatt had received no witness list, no records, and no statement of cause from the County. See Tr. 9:14-23; 10:11-15; 19:16-24; 22:10-15; 23:1-15. The County confirmed at the hearing that it had submitted no documents. See Tr. 10:11-15. Mr. Wyatt additionally requested relevant documents through Missouri's Sunshine Law, but received no production in the 34 days between his request and the evidentiary hearing.

The Commission later directed that post-hearing findings of fact and conclusions of law could be filed and specifically referenced "the statement from the young lady that made the statement," i.e., Ms. Pike's statement. See Tr. 165:08-168:05. The Pike statement was then produced to the Commission by the County on April 27, 2026, nearly a month after the March 30, 2026 hearing, although the County represented at hearing that Ms. Pike's statement was taken later on February 6. See Tr. 68:16-70:05; 82:6-12; Pike Statement at Exhibit 1. The document produced is undated and unsigned. See Exhibit 1. Mr. Wyatt had no opportunity to confront Ms. Pike about that document after it was produced.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

## Argument

Even under the theory of resignation "not in good standing" that the County wants the Commission to believe, the County's treatment of Mr. Wyatt was disciplinary in substance, not a voluntary departure. The Charter gives this Commission authority to hear appeals in disciplinary matters. See St. Louis County Charter art. VII, § 7.030(3). The Commission also took judicial notice of Charter Article VII, and Civil Service Rules XIX, XX, XXI, and XXII. See Tr. 25:7-26:3. Where the County relies on alleged misconduct to remove a merit employee, it cannot evade review by simply relabeling the event a resignation.

### I. The County Impermissibly Denied Mr. Wyatt the Pre-Deprivation Process Required by Loudermill and St. Louis County Civil Service Rule XXI.

A covered merit employee has a protected property interest in continued employment when the governing law retains employees on the basis of merit and ability and provides appeal rights in disciplinary cases. See St. Louis County Charter Art. VII, §§ 7.010, 7.030(3). In Cleveland Board of Education v. Loudermill, the United States Supreme Court held that due process requires, before discharge, notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to present his side of the story. See 470 U.S. 532, 542-46 (1985). The pretermination or pre-determination hearing need not be elaborate, but it must occur before the government makes effective the decision to deprive the employee of the job; it is an initial check against mistaken decisions. Id. Rule XXI of the St. Louis County Civil Service Rules mirrors those constitutional protections, and the Commission took judicial notice of the Rule during the hearing. See Tr. 25:07-26:03.

Dr. Cunningham testified under oath that, in this situation, she "would never talk directly to the **person that's being terminated**." See Tr. 98:05-10 (emphasis added). That testimony is

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

fatal to the County's case. The County was required to follow the requirements of Loudermill and Rule XXI, but it did not do so. No one gave Mr. Wyatt advance notice that the County was terminating his position. No one explained the evidence relied upon in terminating him, and no one gave him a chance to be heard before the County made the decision effective. Instead, Dr. Cunningham had her assistant inform Mr. Wyatt on February 6th that a supposed resignation "not in good standing" from the day before had already been accepted. See Tr. 79:04-24; 82:13-23. Dr. Cunningham further testified that she told Ms. Gardner to "grab security" and that security walked Mr. Wyatt out, while Mr. Wyatt testified that security was present when he left. See Tr. 91:11-92:07; 102:5-11; 132:16-20. Reinstatement of Mr. Wyatt, under the terms outlined below, is the appropriate relief.

**II. Even if the Commission Ignores Dr. Cunningham's Admission, the County Did Not Prove a Resignation Under Civil Service Commission Rule XIX.**

The record does not support a valid resignation under any route recognized by the County's own rules and hearing theory. Consistent with Dr. Cunningham's testimony using the language of termination, the County produced no written resignation, no contemporaneous memorialization by the decisionmaker, no third-party witness testimony corroborating an oral resignation, and no alleged written statement from Mr. Melton, despite testimony that such a statement existed and was relied upon. The absence of ordinary employment documentation substantially undermines the reliability of the County's claim that Mr. Wyatt voluntarily resigned.

Also importantly, Mr. Wyatt did not disappear from County service. According to the hearing record, he came to the office shortly after the alleged call on Thursday, February 5th, met briefly with Mr. Melton, worked the rest of that day with numerous people in the office,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

returned on February 6th, and remained engaged in County work until Ms. Gardner confronted him around 12:40 p.m. that day. See Tr. 37:20-38:18; 64:09-65:17; 71:10-18; 129:11-132:25; 148:16-25. This matters because Dr. Cunningham, the County's own Appointing Authority, explained that the verbal resignations she accepts are situations where the employee says "I quit," leaves immediately, and does not continue working. See Tr. 88:17-89:08; 95:9-15; 98:23-99:01. That is not this record. By the County's own description, this case does not fit its own category.

## III. Even if the Commission Ignores Dr. Cunningham's Admission, Rule XXI Should Have Governed Because the County Treated this as a Misconduct-Based Separation.

The County has repeatedly attempted to reframe the "situation," as Dr. Cunningham called it, as a profanity-laced, heated interaction that called into question Mr. Wyatt's "mental health" and justified a voluntary resignation "not in good standing." See Tr. 28:16-24; 35:01-36:25; 90:21-91:12. Even taking that story at face value, Dr. Cunningham admitted she accepted the alleged resignation indirectly through Mr. Melton without speaking to Mr. Wyatt at all. See Tr. 89:10-23; 90:13-18. Mr. Melton testified that Dr. Cunningham told him to document the alleged resignation himself, but not to obtain a written resignation from Mr. Wyatt. See Tr. 44:01-16. Dr. Cunningham further testified that she "needed information to give back to our County counselor, and . . . needed very specific information." See Tr. 89:24-90:01. She needed information to provide to the County's attorneys, but did not think it necessary to document the actual resignation. Dr. Cunningham also testified that, before she knew Mr. Wyatt would deny voluntarily resigning, she instructed that security be called and that it is "standard to have security by just in case something happens." See Tr. 91:11-25; 102:05-11. Everyone agrees that Mr. Wyatt immediately denied resigning. See, e.g., Tr. 79:15-24; 82:13-23; 132:18-25; 144:05-12.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Dr. Cunningham admitted that, even after Ms. Gardner reported that denial, and even after later emails emphatically denying resignation, she did not ask for an investigation or revisit the decision. See Tr. 92:01-25; 102:14-25; Emails at Exhibit 2.

Under Rule XXII and Loudermill, all of this is backwards: the government cannot decide first, deprive a merit employee of his job second, and then treat the employee's response as too late. This therefore was not merely a failure of form. It was the absence of any pretermination hearing at all. Mr. Wyatt was given no contemporaneous notice that the County had terminated his employment or accepted a verbal resignation "not in good standing," no opportunity to meet with the Appointing Authority before the decision was finalized, and no chance to correct what the record shows was, at minimum, a highly disputed and error-prone account. In a merit system, where the whole point is protection against mistaken or arbitrary removals, that omission is legally significant and independently supports reversal.

**IV. The County's Witnesses Materially Undercut the Verbal-Resignation Story.**

Again, it should be dispositive that Dr. Cunningham used the language of termination in describing how she handles the "situation" at issue here. See Tr. 98:05-10. Yet the County's proof of a voluntary resignation "not in good standing" depends almost entirely on Mr. Melton's account of a 58-second phone call. See Exhibit 3. A problem the County cannot outrun is that the surrounding evidence is inconsistent with a completed resignation. Mr. Melton testified that when Mr. Wyatt appeared at work on February 5th, he conversed with Mr. Wyatt in his office, but no request was made for a written resignation at that time. A reasonable inference is that no unequivocal resignation existed because County leadership knew that Mr. Wyatt did not intend to resign and would not provide one in writing. This gap is powerful because it calls into

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

question Mr. Melton's credibility, contemporaneous conduct, and the reliability of the County's narrative.

Even more, Mr. Melton acknowledged that he received work-related texts from Mr. Wyatt on the morning of February 6th and saw him in the parking lot later that day, yet did not inquire, "[w]hy are you texting me about work?" or "[w]hy are you here?" See Tr. 47:21-48:19; 46:13-24. If Mr. Melton truly believed the 58-second phone call had ended Mr. Wyatt's employment relationship at approximately 9:30 a.m. on February 5th, his response to continuing work on February 6th would have been immediate. It was not.

Gina Pike, Mr. Melton's assistant, testified that she spoke with Mr. Wyatt shortly after the supposed resignation call, that Mr. Wyatt did not tell her he quit, and that she did not witness any such conversation between Messrs. Melton and Wyatt. See Tr. 68:05-15. Ms. Pike then worked with Mr. Wyatt throughout the entire day, until 4:30 p.m. See Tr. 64:09-25; 65:01-17; 71:10-18.

Dr. Miller, Chief Medical Officer, also met with Mr. Wyatt on February 5th, observed no agitation, did not hear any elevated office discussion, and heard no indication that he had resigned. See Tr. 110:15-111:24; 113:07-24. Dr. Miller further confirmed that the behavior described by Mr. Melton was unlike Mr. Wyatt; specifically that he had never witnessed Mr. Wyatt get angry and curse at people. See Tr. 110:21-24. Damon Broadus, Deputy Director of Public Health, likewise testified that he saw no aggression from Mr. Wyatt on February 5th, nor had he ever heard or seen disrespectful conduct by Mr. Wyatt. See Tr. 119:08-120:25.

Ms. Gardner testified that the County's "acceptance of the resignation" did not occur until midday February 6th, that Mr. Wyatt was surprised, and that he immediately said he had

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

not resigned. See Tr. 79:04-24; 82:13-23. That is not post hoc buyer's remorse. It is a contemporaneous denial the first time the County told Mr. Wyatt that it was treating him as resigned.

**V. The County's Shifting Story and the Late Pike Statement Further Undermine Reliability.**

The County's account is further undermined by its shifting description of the supposed resignation. At the time of separation, the explanation communicated to Mr. Wyatt through Ms. Gardner focused on whether he had entered Mr. Melton's office and cursed. See Tr. 131:18-132:13; 149:08-18. At the hearing, however, the County's principal merits theory was materially different: a 58-second phone call while Mr. Wyatt was driving into work, that no one else heard, and that the alleged in-office exchange was not, in fact, the resignation event. See Tr. 28:12-24; 34:9-17; 35:13-36:13; 97:12-20. That change is not minor. It goes directly to what supposedly happened, where it happened, and who, if anyone, could corroborate it. The inconsistency is made more serious by Mr. Melton's testimony that he prepared a written statement and provided information to management . . . and by the strong inference that Ms. Gardner relied on that statement, or on related undisclosed communications, in confronting Mr. Wyatt based on an account that focused on whether he had gone into Mr. Melton's office, cursed, and quit. Yet that statement was not produced before or during the hearing, depriving Mr. Wyatt of the ability to test whether the County's present version matches the contemporaneous written account. And, again, Mr. Melton's own testimony raises the obvious question: if he truly believed on the morning of February 5th that Mr. Wyatt had resigned, why did he not ask for a written resignation when he saw him minutes later in the office? The most

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

reasonable inference is that he did not ask because he knew Mr. Wyatt would not provide one, which is fully consistent with Mr. Wyatt's position that he had not resigned at all.

The County's shift matters because it reinforces that the County did not contemporaneously process an undisputed resignation. It processed a disputed event and later fit the facts to a resignation label. It processed a "termination," per Dr. Cunningham.

The post-hearing Pike statement only deepens the County's reliability problem. During the hearing, Ms. Pike testified that Ms. Gardner "took" her statement later in the day on Friday, February 6th. See Tr. 68:16-70:05. The document produced to the Commission nearly a month after the hearing is a typed, one-page "Summary of Events," undated and unsigned, and Mr. Wyatt had no chance to question Ms. Pike about its origin, timing, edits, or accuracy after it was produced. See Exhibit 1. The Commission should afford it no weight.

**VI. The Record Supports Corrective Relief to Clear Mr. Wyatt's Name.**

When the government, in connection with employment termination, puts at issue an employee's "good name, reputation, honor, or integrity," due process requires an opportunity to refute the charge. Board of Regents v. Roth, 408 U.S. 564, 573 (1972). Reputation alone is not enough, but reputation plus loss of employment can implicate liberty interests. Paul v. Davis, 424 U.S. 693, 701-10 (1976). And where a stigmatizing charge is false, the purpose of the hearing is to give the employee an opportunity to clear his name. Codd v. Velger, 429 U.S. 624, 627-28 (1977).

By asserting that Mr. Wyatt resigned following alleged misconduct, while simultaneously denying him a meaningful pretermination process and withholding key investigative materials,

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

the County deprived Mr. Wyatt of the opportunity to clear his name and challenge stigmatizing allegations affecting his professional reputation and future employment opportunities.

Here, the County associated Mr. Wyatt's separation with a profanity-laced explosive quit, a "not in good standing" designation, questioning of Mr. Wyatt's "mental health" to Mr. Melton and an external third party, and a removal with security present. See, e.g., Tr. 90:07-12; 100:12-101:22; 132:18-20. Mr. Wyatt squarely disputes the truth of those charges and disparaging characterizations. See Tr. 132:21-24; 144:05-12. Even if the Commission concludes it need not decide the federal constitutional liberty-interest issue, it should at minimum order removal of the "resigned not in good standing" notation, any mention of a profanity-laced explosive quit, any mention of "mental health" concerns, and any equivalent misconduct characterization from Mr. Wyatt's file because the record does not support it.

## VII. The County's Rolling Nonproduction Preserved Mr. Wyatt's Sunshine Law Objection and Independently Prejudiced the Fairness of the Proceeding.

On February 24, 2026, Mr. Wyatt timely requested relevant public records, including materials concerning the alleged resignation, investigative materials, witness statements, and his HR file. Yet the hearing proceeded without production of those materials. The resulting prejudice was not abstract. In a case that turned almost entirely on credibility and on the details of a brief alleged verbal exchange, contemporaneous records mattered. Without timely production, Mr. Wyatt could not compare witness testimony to underlying writings, prepare cross-examination using statements and investigative materials, test whether the County's hearing theory matched what was communicated to him at the time of separation, or determine whether exculpatory or inconsistent records existed in his HR file or elsewhere.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

The problem is underscored by the hearing record itself. Counsel for Mr. Wyatt advised the Commission that Mr. Wyatt had requested compelled records and had received nothing from either the County or the Commission before hearing. When witness statements surfaced during testimony, counsel for Mr. Wyatt requested them and objected that he had been denied a fair opportunity to confront the witnesses with those materials while they were on the stand. That objection was well-founded. The late production of Ms. Pike's statement nearly a month after the hearing illustrates the point: disclosure delayed until after testimony is not disclosure in time to permit meaningful use.

Missouri's Sunshine Law required the County to act on a request for records as soon as possible and, absent reasonable cause, no later than the end of the third business day after receipt. See R.S.Mo. § 610.023. The County, through Ms. Gardner, Dr. Cunningham's assistant, as custodian of records, confirmed acceptance of the public records request on February 24th. Ms. Gardner then delayed production of the requested documentation *seven* separate times and, tellingly, *twice* pushed production just beyond the initial meeting and then the evidentiary hearing in this matter.

Mr. Wyatt cannot speculate regarding every document that remains withheld. That is precisely the prejudice. Because the records have not been produced, the full extent of the prejudice cannot yet be known. Mr. Wyatt therefore expressly preserves all objections arising from the County's repeatedly delayed and ultimately recent and unresponsive production, including all rights and remedies under Missouri's Sunshine Law, and reserves the right to seek any additional relief that may become appropriate once the records are finally produced or the missing records are identified.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

## Conclusion

The County bears the burden of proving that Mr. Wyatt voluntarily and unequivocally resigned rather than being removed without due process. A public employer cannot avoid constitutional and civil service protections merely by characterizing a disputed separation as a resignation. Due process requires notice of the allegations, disclosure of the evidence relied upon, and a meaningful opportunity to respond before a protected public employee may be deprived of employment. The County produced no written resignation and failed to produce the alleged written statement it relied upon, despite testimony that such a statement existed. These failures substantially undermine the reliability of the County's resignation claim and demonstrate the absence of constitutionally adequate process.

The County asks the Commission to treat a disputed, unwritten, uninvestigated, and immediately denied allegation as a final resignation.

WHEREFORE, for the foregoing reasons, Mr. Wyatt respectfully requests that the Commission find and order as follows:

1. The County removed Mr. Wyatt from employment without providing the pre-deprivation process required by Loudermill and Civil Service Rule XXI.

2. The County failed to prove that Mr. Wyatt voluntarily resigned.

3. In the alternative, Mr. Wyatt's separation was, in substance, a disciplinary removal or discharge and not a valid resignation under Civil Service Rule XIX.

4. Reverse the County's action under Rule XXII and order reinstatement to Mr. Wyatt's former position with (a) back pay with interest, (b) benefits, and (c) restoration of service credit, leave, title, seniority, and office space.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

5. Order the County to remove from Mr. Wyatt's personnel record any notation that he resigned "not in good standing," demonstrated any "mental health" issues, or otherwise engaged in misconduct related to a resignation.

6. Exclude the late-produced Pike statement from consideration or, alternatively, accord it no weight because it is undated, unsigned, produced after the hearing, and was never subject to confrontation or rebuttal after production.

7. Decline to afford Respondents any evidentiary or persuasive advantage from records not timely produced under Missouri's Sunshine Law, preserve Mr. Wyatt's objections arising from that nonproduction, and grant such further relief as is necessary to prevent prejudice from the County's delayed disclosure.

8. Grant all other relief the Commission deems just and proper.

Respectfully submitted,

__s/s Katherine Frierdich_________

Katherine C. Frierdich (née Lemley)
MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
Counsel for Appellant

Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on counsel for Respondent and the St. Louis County Clinical Consumer Majority Board on May 13, 2026, via electronic mail.

__s/s Katherine Frierdich_________

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Exhibit 1

Pike Statement

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Exhibit 2

Emails

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Exhibit 3

Phone Record

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**BEFORE THE ST. LOUIS COUNTY CIVIL SERVICE COMMISSION**
**ST. LOUIS COUNTY, MISSOURI**

In re Appeal of Duane "Pete" Wyatt,

Appellant,

v.

St. Louis County, Missouri,

St. Louis County Department of Health,

St. Louis County Clinical Consumer Majority Board,

Derrick Melton, CEO, Community Health Centers,

and

Dr. Kanica Cunningham, Director, Department of Public Health,

Respondents.

**APPELLANT'S PREHEARING BRIEF IN SUPPORT OF REVERSAL, REINSTATEMENT, AND ANCILLARY RELIEF**

## I. Preliminary Statement

This appeal presents a straightforward question of substance over label: may St. Louis County remove a merit employee by retroactively characterizing a disputed event as a resignation, rather than proceeding under the disciplinary framework that governs suspensions and discharge. The County says Appellant resigned in a profane outburst by saying, "I quit."[1] Appellant denies that any such resignation occurred and denies that any curse-laden exchange occurred at all. It is undisputed that Appellant remained at work for the rest of the day on February 5, 2026, after the time of the alleged interaction with Respondent Melton. It further is

[1] The last time Appellant interacted with Respondent Melton was on February 5, 2026. Because the County has not provided Appellant with any information regarding his purported "resignation," for purposes of this brief, Appellant assumes that the County will posit that this alleged conversation happened on February 5, 2026.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

undisputed that he returned to work the next day, did not know management had already reported a resignation, immediately and repeatedly denied resigning when he received an email "accepting" his resignation, and was instructed to exit the building with security present.

The St. Louis County Charter establishes a merit system for covered County employees and appointive county officers, and provides for retention on the basis of merit and ability. See St. Louis County Charter Article VII, § 7.010. The Charter further provides that the Civil Service Commission shall hear appeals in cases of disciplinary action by appointing authorities. Id., § 7.030(3). The County's Civil Service Rules distinguish two–and only two events–suspension or discharge under Rule XXI–with Commission review under Rule XXII. See St. Louis County Government Civil Service Rules (Nov. 2024), XXI, XXII.

**II. Jurisdiction**

Jurisdiction lies with the Civil Service Commission because this appeal challenges a separation that was disciplinary in substance. Article VII of the Charter gives the Commission authority to hear appeals in cases of disciplinary action by appointing authorities. See St. Louis County Charter Art. VII, § 7.030(3). Rule XXII of the Civil Service Rules provides that the Commission may review qualifying appeals and may affirm, modify, or reverse the Appointing Authority's action. See Civil Service Rules, Rule XXII. If the County's action was not on a valid resignation, then it was an appealable removal.

**III. Statement of Relevant Facts**

Appellant was employed by St. Louis County as the Chief Operating Officer of the Department of Health/Public Health since August 19, 2024, and, at all relevant times, was treated as a merit-system employee. At no time was Appellant disciplined or placed under a performance improvement plan. At some point in time, believed to be February 5, 2026, the

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

CEO of the St. Louis Community Health Centers, who reports to the St. Louis County Clinical Consumer Majority Board, told Dr. Kanica Cunningham, Director of the Department of Public Health and Appointing Authority (the "Director"), that Appellant had resigned in a heated, curse-laden fit and said "I quit." Appellant denies that any such resignation occurred and denies that the alleged conversation happened as described. Appellant did not submit any written resignation. Appellant finished the work day while present in the office on February 5, 2026 with no mention of any "resignation" by anyone from the County. Appellant returned to work the next day. On that next day, February 6, 2026, the Director sent Appellant an email stating that the County "accepted" his resignation. Appellant immediately and repeatedly denied resigning. Despite those denials, Appellant was instructed to leave his badge and equipment and depart the building, with security present. The only indication given of the County's position was on March 3rd via Assistant County Counselor Kaethe Kaufman that Appellant "resigned verbally and not in good standing." See email from K. Kaufman to the undersigned and copying Mr. M. Livasy, attached as Exhibit 1.

## IV. Argument

### A. The County did not prove a resignation recognized by the Civil Service Rules.

The official County rules provide three mechanisms for valid resignation. One is by written resignation to the Appointing Authority with 14 days' advanced notice. See Civil Service Rules, Rule XI. The rule separately provides that an employee who accumulates three or more consecutive working days without authorization shall be deemed to have resigned without notice from County service. Id. The only provision which allows for verbal resignation is in the event of "emergency, temporary, or seasonal employees." See Rule XIX, D. No such facts are present here.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Here there was no written resignation, and Appellant did not abandon his position; he reported to work the very next day. The County therefore failed to establish either a written resignation or a deemed resignation by unauthorized absence. And clearly there was no "emergency" on February 6, 2026 justifying a verbal resignation. Rule XIX clearly states that any resignation that is not "bona fide and voluntary" . . . "shall not be accepted as a resignation."

**B. Appellant's return to work the next day is objective evidence that no completed resignation occurred.**

Whatever the County says was said in a disputed conversation, Appellant's conduct the next day is objective and undisputed. A person who has truly and finally resigned does not ordinarily report for duty the next morning, unaware that management has already claimed a resignation. Appellant's return to work is inconsistent with a settled, voluntary resignation and consistent with Appellant's position that no resignation occurred. That objective fact is more reliable than a disputed oral account, especially where the alleged resignation was unwritten and immediately repudiated.

C. **"Resigned verbally not in good standing" is disciplinary in substance.**

The County's own formulation reveals that this was not a neutral voluntary departure. A notation that an employee "resigned verbally not in good standing" reflects a fault-based judgment resting on alleged blameworthy conduct. Once the County relied on alleged misconduct as the basis for ending employment, it was required to proceed under the rules governing disciplinary action rather than recast the event as a resignation. The Charter gives this Commission authority over disciplinary appeals, and Rule XXI governs suspension and discharge. See St. Louis County Charter Art. VII, § 7.030(3); Civil Service Rules, Rule XXI.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**D. The County bypassed Rule XXI process.**

Rule XXI contemplates a written disciplinary process, including written basis and reasons for the action, the employee's written reply if any, together with notice of appeal rights. See Civil Service Rules, Rule XXI. None of that occurred before Appellant was forced out. Instead, the County made the separation effective by sending an email "accepting" a resignation after Appellant appeared for work and Appellant denied ever giving. Once Appellant appeared for work and denied resigning, the County had a live factual dispute. If it wished to separate him based on alleged misconduct, it was required to use the discharge process. It did not.[2]

**E. The County failed to provide the minimum pretermination process required by Loudermill.**

For a public employee with a protected property interest in continued employment, due process requires notice of the charges, an explanation of the employer's evidence, and an opportunity to respond before termination. See Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542-46 (1985). A covered merit employee under Article VII has a strong claim of protected employment status because the Charter provides for retention on the basis of merit and ability and for appeal from disciplinary action. See St. Louis County Charter Art. VII, §§ 7.010, 7.030(3). Here, Appellant received no pre-separation notice of charges, no formal discharge notice, and no opportunity to respond before the County effected his removal in a *pre-termination* hearing. The County made the decision first, labeled it an accepted resignation, and removed Appellant effective immediately despite his contemporaneous and consistent denials. That sequence does not satisfy Loudermill's protections.

[2] In fact, Rule XI requires the Appointing Authority to provide the affected employee with a written statement of the bases for a termination within 5 days (8 if mailed), which never happened, and the employee has the right to a pre-termination hearing within 10 days of that notice period. Thus, had this had been a Rule XI discharge, Appellant would have been heard by the Commission no later than February 24th to 27th, over a month prior to the Commission's hearing in this unenforceable "resignation" matter. This only compounds the harm to Appellant by the County.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**F. The Commission should look to substance, not label, and reverse.**

Rule XXII authorizes the Commission to affirm, modify, or reverse the appointing authority's action. Civil Service Rules, Rule XXII. The Commission should find that the County failed to prove a voluntary resignation, that the separation was disciplinary in substance, and that the County's attempt to avoid Rule XXI cannot defeat Commission review. The proper remedy is reversal, reinstatement, restoration of pay and benefits, and correction of Appellant's personnel record.

## V. Prayer for Relief

WHEREFORE, Appellant respectfully requests that the Commission: (a) find that Appellant did not voluntarily resign; (b) find that the County's action was disciplinary in substance and not a valid resignation; (c) reverse the County's action pursuant to Rule XXII; (d) order reinstatement to Appellant's position; (e) award back pay, restoration of benefits, leave accruals, seniority from the date of separation forward and return of Appellant's same office space; (f) order correction of Appellant's personnel file to remove any statement that Appellant "quit," "resigned," or "resigned not in good standing"; (g) alternatively find that the County failed to provide the notice-and-response process required before removing a merit employee; and (h) grant such other and further relief as is just and proper.

Respectfully submitted,

Katherine Frierdich, MO 51375
Cadenzia Consulting LLC
14 Fordyce Ln
Ladue, MO 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
Counsel for Appellant

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on counsel for Respondent and the St. Louis County Clinical Consumer Majority Board on March 23, 2026, via electronic mail.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

**From:** **Kaufman, Kaethe** KKaufman@stlouiscountymo.gov
**Subject:** RE: [External Email] Wyatt Civil Service Commission Appeal
**Date:** March 3, 2026 at 2:59 PM
**To:** Katherine Frierdich kcfrierdich@cadenziaconsulting.com
**Cc:** Livasy, Matt MLivasy@stlouiscountymo.gov

KK

Dear Ms. Frierdich;

We appreciate your follow-up. I am providing you with a copy of Civil Service Rule XXII, which governs the Commission's hearing of personnel appeals. To further respond to your questions and contentions:

As Mr. Livasy indicated to you during our phone meeting, he intends to place Mr. Wyatt's appeal on either the agenda for the Civil Service Commission's regular March 17 meeting or an earlier special meeting of the Commission. The Commission will then decide what action to take in accordance with its rules, including whether and when the matter will be set for hearing. Should the Commission set the matter for hearing, a hearing may take place in closed session upon request of the appellant or the Appointing Authority.

As to your request for discovery, the St. Louis County Civil Service Commission Rules do not provide for parties to conduct pre-hearing discovery. Further, the Civil Service Commission of a charter county is not an agency created by Missouri Constitution or state statute. Thus, parties to Civil Service Commission hearings have no right to discovery under the Missouri Administrative Proceedings Act. Mo. Rev. Stat. § 536.073. Please see Civil Service Rule XXII regarding the Civil Service Commission's hearing procedures.

Finally, and in response to your contention at our meeting that Mr. Wyatt could not have resigned without a written resignation, Civil Service Rule XIX permits merit system employees to resign *in good standing* by written submission. It is the County's position that Mr. Wyatt resigned verbally and not in good standing.

If you have something you wish the County to consider, please feel free to provide it to me.

Best regards,
Kaethe Kaufman

**Katherine R. Kaufman**
Assistant County Counselor
Saint Louis County
41 South Central Ave | Clayton, MO 63105
kkaufman@stlouiscountymo.gov
-
*Opportunity Central*

**Disclaimer and Notice:**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful. This message, including attachments, may contain

Exhibit 1

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

confidential or privileged information. If you are not the intended recipient, promptly delete this message and notify the sender of the delivery error by return e-mail.

**NOTICE** The Missouri Bar and Missouri Supreme Court Rules require all Missouri attorneys to notify all e-mail recipients: 1) e-mail communication is not a secure method of communication; 2) any e-mail that is sent to you or by you may be copied and held by any or all computers through which it passes as it is transmitted; and 3) persons not participating in our communication may intercept our communications by improperly accessing either of our computers or another computer unconnected to either of us through which the e-mail has passed.

-

**From:** Katherine Frierdich <kcfrierdich@cadenziaconsulting.com>
**Sent:** Monday, March 2, 2026 5:27 PM
**To:** Kaufman, Kaethe <KKaufman@stlouiscountymo.gov>; Livasy, Matt <MLivasy@stlouiscountymo.gov>
**Cc:** Pete Wyatt <petewyatt149@gmail.com>
**Subject:** [External Email] Wyatt Civil Service Commission Appeal

EXTERNAL EMAIL: Please exercise caution when opening links or attachments

Matt and Kaethe,

Thank you both for meeting with Pete and me last Friday. We really appreciate your willingness to help us understand the procedures for Civil Service Commission meetings and hearings.

Matt, thank you for confirming that Pete's appeal of the alleged "resignation" was received properly and accepted. You mentioned that it will be included in the agenda for the March 17th Commission meeting, but that a special meeting might precede that date. We would be very grateful for any expedited process, as Pete has been unable to perform his duties during a critical time for the Department of Public Health and remains unpaid. You indicated that the Commission may resolve the matter during the meeting, special or otherwise, without the need for a formalized hearing. We request that any discussion of the matter occur during executive session and thus not become public record. Furthermore, since we have received no documentation whatsoever from the County regarding Pete's alleged "resignation," we request that you provide us in advance with any information the County plans to present to the Commission during that meeting.

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

However, if the Commission refers the matter to a formalized hearing for resolution, we respectfully request that the proceedings be held privately as a disputed matter. Given the dearth of available documentation and existing credibility issues, we request limited and expedited discovery in the form of interrogatories, document requests, and reasonable depositions. We anticipate no more than three depositions at this time. I previously sent Matt a list of known witnesses to show our existing view of relevant parties. Of course, we request that witnesses testify under oath and that opening and closing statements be permitted.

Kaethe, if you wish to discuss settlement terms, I am available at your convenience.

Best regards,

Katherine Frierdich

*Cadenzia Consulting*
Strategic Legal Advisory.
Built for Growth.

Katherine Frierdich, JD, MBA
Outside GC | Principal Consultant
(314) 325-9303
LinkedIn

Electronically Filed - ST LOUIS COUNTY - August 31, 2026 - 05:05 PM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY: KATHERINE CLENDENIN LEMLEY, Attorney for Plaintiff
SERVICE EMAIL: kcfrierdich@cadenziaconsulting.com, katherine.c.lemley@centene.com

SERVICE PARTY: NICHOLAS CHARLES LINDLEY, Attorney for Defendant
SERVICE EMAIL: ncl@lindleylegal.com, nlindley@stlouiscountymo.gov

FILED
08/28/2026
JOAN M. GILMER
CIRCUIT CLERK
ST. LOUIS COUNTY, MO

Electronically Filed - ST LOUIS COUNTY - August 24, 2026 - 05:15 PM

**IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **DUANE "PETE" WYATT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | **Cause No. 26SL-CC05095** |
| **v.** | ) | |
| | ) | |
| **ST. LOUIS COUNTY, MISSOURI., Et al** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**CONSENT MOTION FOR ADDITIONAL TIME TO FILE RECORD BEFORE THE AGENCY PURSUANT TO RSMO § 536.130**

COMES NOW Counsel for Defendants/Respondents, and for his Motion to request additional time to file a certified record before the agency pursuant to RSMo § 536.130 *et seq*., states as follows:

1. That in a letter dated August 16, 2026, Plaintiff's Counsel requested that the full and complete record before the agency in Plaintiff's case be transmitted by the agency directly to the reviewing court, as prescribed by *RSMo § 536.130.4;*

2. That *RSMo § 536.130* provides that the record before the agency shall be filed in the reviewing court within thirty days after the filing of the petition, "or within such further time as the court may allow.";

3. That Plaintiff's Counsel moved this Court on August 16, 2026 for an Order "that the Court direct the Commission to certify and transmit the complete record before the agency to the Clerk of this Court by August 24, 2026, which is one week prior to the conference scheduled by this Court.";

Electronically Filed - ST LOUIS COUNTY - August 24, 2026 - 05:15 PM

4. That as of the date of this filing, the Court has not ruled on Plaintiff's Motion;

5. That Counsel for Defendants requires additional time to compile the requested documents, and to arrange for the certification of the same;

6. That as the only scheduled hearing in this case is the August 31, 2026 case management conference, Plaintiff will not be prejudiced by the Court's granting of a brief extension; and,

7. That this Motion is made with consent of Plaintiff's Counsel.

WHEREFORE, Counsel for Defendants prays this Court grant their Motion for Additional Time to File a Certified Copy of the record before the agency, up to and including Monday, August 31, 2026, and for any further relief as this Court may deem just and proper.

By consent

**LEAVE GRANTED:**

Judge Division 3

August 28, 2026

Respectfully Submitted,

**DANA T. REDWING**
**COUNTY COUNSELOR**

By: **___/s/ Nicholas C. Lindley**
Nicholas Lindley, #63038
Associate County Counselor
Office of the County Counselor
41 S. Central Avenue
Clayton, Missouri 63105
(314) 934-0476
NLindley@stlouiscountymo.gov
*Attorney for Defendants*

Electronically Filed - ST LOUIS COUNTY - August 24, 2026 - 05:15 PM

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was transmitted this 24th day of August, 2026 through the court's electronic filing system.

***/s/ Nicholas C. Lindley #63038***
Nicholas Lindley

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:26 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et al., | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

**PLAINTIFF/PETITIONER'S DEMAND FOR TRIAL BY JURY**

COMES NOW Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt"), by and through counsel, and pursuant to Article I, Section 22(a) of the Constitution of Missouri, § 510.190, R.S.Mo., and Missouri Supreme Court Rule 69.01, demands trial by jury of all issues so triable, and states as follows.

1. **Mr. Wyatt demands trial by jury on the following counts of the Verified Petition:**

a. **Count III** — Deprivation of Property Interest Without Procedural Due Process, 42 U.S.C. § 1983;

b. **Count IV** — Deprivation of Liberty Interest Without Due Process, 42 U.S.C. § 1983;

c. **Count V** — Conspiracy to Deprive Constitutional Rights, 42 U.S.C. § 1983; and

d. **Count X** — Defamation (Slander).

2. Each of these counts is a civil action seeking damages for a personal wrong, of the kind triable to a jury at common law when the Constitution of Missouri was adopted. The right of trial by jury "as heretofore enjoyed" is therefore preserved inviolate as to each. Mo. Const. art. I, § 22(a); *State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 86–87 (Mo. banc 2003);

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:26 PM

*Hammons v. Ehney*, 924 S.W.2d 843, 848–49 (Mo. banc 1996); *All Star Awards & Ad Specialties, Inc. v. HALO Branded Solutions, Inc.*, 642 S.W.3d 281, 286–87 (Mo. banc 2022).

3. Mr. Wyatt does not demand trial by jury on Count I (judicial review under §§ 536.100–536.140, R.S.Mo.), Count II (ultra vires — declaratory and injunctive relief), Count VI (Missouri Sunshine Law), Count VII (declaratory judgment), Count VIII (writ of mandamus), or Count IX (preliminary and permanent injunctive relief). Each of those counts is triable to the Court, and Mr. Wyatt consents to their determination by the Court. § 536.140.1, R.S.Mo.; *State ex rel. Mo. Comm'n on Human Rights v. Lasky*, 622 S.W.2d 762, 763 (Mo. App. E.D. 1981); *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 352 (Mo. banc 2006); *State ex rel. Prior v. Kansas City*, 261 S.W. 112 (Mo. 1924) (no right of trial by jury in mandamus).

4. That counts triable to the Court are joined in the same Petition does not impair this demand. *Dorsch v. Family Medicine, Inc.*, 159 S.W.3d 424, 430–31 (Mo. App. S.D. 2005); *State ex rel. Wayside Waifs, Inc. v. Williamson*, 3 S.W.3d 390, 393–94 (Mo. App. W.D. 1999); *see State ex rel. Leonardi v. Sherry*, 137 S.W.3d 462, 473 (Mo. banc 2004) (abrogating the equitable clean-up doctrine as a basis for denying a jury on legal claims).

5. Mr. Wyatt makes this demand notwithstanding that Missouri law requires none. Rule 69.01(b) and § 510.190.2 specify the exclusive means by which the right may be waived, and no demand is required to preserve it. *Holm v. Wells Fargo Home Mortg., Inc.*, 514 S.W.3d 590, 600 (Mo. banc 2017); *Advanced Transmissions, L.C. v. Duff*, 9 S.W.3d 743, 744 (Mo. App. W.D. 2000); *Meadowbrook Country Club v. Davis*, 421 S.W.2d 769 (Mo. 1967). This demand is filed so that the record is unambiguous.

6. **Mr. Wyatt expressly objects to the trial of Counts III, IV, V, or X before the Court, and does not consent to their submission to the Court.** This objection is made now, and is renewed and continuing, so that no proceeding hereafter conducted may be

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:26 PM

characterized as "entering into trial before the court without objection" within the meaning of Rule 69.01(b)(4) or § 510.190.2(4). Nothing in Mr. Wyatt's pending Motion to Advance and Consolidate Trial on the Merits Pursuant to Rule 92.02(c)(3), and no participation by Mr. Wyatt in any proceeding consolidated pursuant to that Rule, is intended as or shall constitute a waiver of trial by jury on any count. *See* Rule 92.02(c)(3) (the Rule "shall be so construed and applied to preserve any party's right to trial by jury").

WHEREFORE, Plaintiff/Petitioner Duane "Pete" Wyatt respectfully demands trial by jury on Counts III, IV, V, and X of the Verified Petition, and requests that this cause be so docketed.

Respectfully submitted,

__s/s *Katherine C. Frierdich*________

Katherine C. Frierdich, MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff/Petitioner*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 26th day of August, 2026, a true and accurate copy of the foregoing was filed through the Missouri eFiling System, which will serve notice upon all counsel of record, including Nicholas C. Lindley, Associate County Counselor, Office of the County Counselor, 41 South Central Avenue, Clayton, Missouri 63105, counsel for Defendant St. Louis County.

__s/s *Katherine C. Frierdich*_________

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:26 PM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY: NICHOLAS CHARLES LINDLEY, Attorney for Defendant
SERVICE EMAIL: ncl@lindleylegal.com, nlindley@stlouiscountymo.gov

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et al., | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

**PLAINTIFF/PETITIONER'S MOTION TO ADVANCE AND CONSOLIDATE TRIAL ON THE MERITS WITH THE HEARING ON THE MOTION FOR PRELIMINARY INJUNCTION PURSUANT TO RULE 92.02(c)(3), FOR ENTRY OF A SCHEDULING ORDER, AND FOR CLARIFICATION OF THE COURT'S AUGUST 11, 2026 ORDER**

COMES NOW Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt"), by and through counsel, and, pursuant to Missouri Supreme Court Rule 92.02(c)(3), respectfully moves this Court to advance the trial of this action on the merits and consolidate it with the hearing on the pending Motion for Preliminary Injunction; to enter a scheduling order governing the balance of this cause; and to clarify the effect of the Court's August 11, 2026 Order Regarding Temporary Restraining Order. In support, Mr. Wyatt states as follows.

**RELIEF REQUESTED**

Mr. Wyatt requests an order:

(A) advancing the trial of this action on the merits and consolidating it with the hearing on the Motion for Preliminary Injunction as to **Count I** (judicial review under §§ 536.100–536.140, R.S.Mo.), **Count II** (ultra vires action and failure to follow mandatory merit employee procedures — declaratory and injunctive relief), **Count VI** (Missouri Sunshine Law), **Count VII** (declaratory judgment, Chapter 527, R.S.Mo.), **Count VIII** (alternative petition for writ of mandamus, Rule

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

94), and **Count IX** (preliminary and permanent injunctive relief), each of which is triable to the Court;

(B) expressly reserving trial by jury on **Counts III, IV, and V** (42 U.S.C. § 1983) and **Count X** (defamation — slander), and directing that those counts be tried to a jury in advance of the Court's determination of the counts identified in paragraph (A), or on such other sequence as preserves the jury's determination of any fact common to both groups;

(C) setting an evidentiary hearing on the consolidated proceeding on a date certain, and entering the scheduling order set forth in Section V below;

(D) confirming that evidence of alleged irregularities in procedure and of unfairness by the Civil Service Commission not shown in the administrative record may be received at the consolidated hearing pursuant to § 536.140.4, R.S.Mo.;

(E) ruling upon the pending Motion for Expedited Discovery and Motion for Expedited Hearing on Motion for Preliminary Injunction;

(F) clarifying that the August 11, 2026 Order denying temporary relief is without prejudice to the relief sought in the pending Motion for Preliminary Injunction and to final relief on all counts of the Verified Petition, and that the commencement of a replacement's employment in the Chief Operating Officer position shall not be urged by Defendants as a ground for denying interim or final reinstatement or equivalent relief; and

(G) to the extent that the jury trial does not occur first, confirming that no finding of fact made in the consolidated proceeding shall be given preclusive, collateral-estoppel, or law-of-the-case effect as to Counts III, IV, V, or X, and that Mr. Wyatt's participation in the consolidated proceeding shall not constitute a waiver of trial by jury on any count under Rule 69.01(b).

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

**I. PROCEDURAL POSTURE**

1. Mr. Wyatt filed his Verified Petition on July 17, 2026, seeking judicial review of the Civil Service Commission's June 18, 2026 decision under §§ 536.100–536.140, R.S.Mo., together with claims for ultra vires action, deprivation of civil rights under 42 U.S.C. § 1983, violation of the Missouri Sunshine Law, declaratory judgment, mandamus, injunctive relief, and defamation. The County is in the process of certifying the administrative record for filing.

2. The Motion for Preliminary Injunction and Brief in Support were filed contemporaneously with the Petition and remain pending and undecided. A Motion for Expedited Hearing on that Motion and a Motion for Expedited Discovery likewise remain pending and undecided.

3. On August 3, 2026, Mr. Wyatt filed a Motion for Temporary Restraining Order, supplemented August 7, 2026, seeking solely to restrain Defendants from filling the Chief Operating Officer position pending hearing on the Motion for Preliminary Injunction. Defendants opposed. The Court heard arguments on August 10, 2026 and denied the Motion by Order entered August 11, 2026.

4. The Court's Order recites that its findings were made "for purposes of this Order only." The Order did not rule upon the Motion for Preliminary Injunction, the Motion for Expedited Discovery, or the Motion for Expedited Hearing, and adjudicated no count of the Verified Petition. The Order set this matter for a Case Management Conference on August 31, 2026.

5. This Motion is filed in advance of that conference so that the Court and the parties may take up scheduling on a developed record.

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

## II. CONSOLIDATION IS EXPRESSLY AUTHORIZED BY RULE 92.02(c)(3)

6. Rule 92.02(c)(3) provides that "[a]t any time the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application for a preliminary injunction," and that evidence received at the hearing which would be admissible at trial "becomes part of the trial record and need not be repeated at the trial." The Rule further directs that it "shall be so construed and applied to preserve any party's right to trial by jury."

7. The Rule is patterned after Federal Rule of Civil Procedure 65(a)(2), and Missouri courts require only that a consolidation order be clear and unambiguous, and that notice be given in sufficient time to afford the parties a reasonable opportunity to marshal and present their evidence. *State ex rel. Cohen v. Riley*, 994 S.W.2d 546, 548 (Mo. banc 1999); *Cook v. McElwain*, 432 S.W.3d 286, 290–91 (Mo. App. W.D. 2014); *Estate of Hutchison v. Massood*, 494 S.W.3d 595, 600–01 (Mo. App. W.D. 2016); *Zoological Park Subdistrict of the Metro. Park Museum Dist. v. Smith*, 561 S.W.3d 893, 897 (Mo. App. E.D. 2018).

8. Both conditions are satisfied here in the most secure way available: Mr. Wyatt is himself the movant, so no party can claim surprise; the request is made 6 days before the Case Management Conference; and the schedule proposed in Section V affords Defendants a full discovery period before any evidentiary hearing. Mr. Wyatt requests that any order entered state the fact and scope of consolidation expressly.

## III. CONSOLIDATION IS APPROPRIATE ON THIS RECORD

A. <u>As to Count I, the record is closed, and a separate preliminary-injunction hearing would decide the merits under another name</u>.

9. Judicial review of a contested case is conducted "upon the petition and record filed," except as otherwise provided in § 536.140.4. *See also* § 536.140.1, R.S.Mo. The circuit court is confined to the agency record and lacks authority to receive additional evidence outside

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

the exceptions that subsection supplies. *Johnston v. Livingston Cnty. Comm'n*, 462 S.W.3d 859, 865–66 (Mo. App. W.D. 2015).

10. The consequence is structural. Because review is on a closed record, the "likelihood of success on the merits" inquiry at a preliminary injunction hearing and the merits determination under § 536.140.2 would be conducted on identical materials, applying identical law, before the same finder of fact. A separate preliminary-injunction hearing would not develop the record; it would decide the case provisionally and then require the Court to decide it again.

11. Defendants have taken this very position. Their Memorandum in Opposition argues that the disputed matters are "issues to be resolved under § 536.140 on the full record, not at TRO," and that "[t]he public interest favors continuity ... while this Court conducts § 536.140 review on a full record." Mem. in Opp'n, pp. 5, 8. Mr. The most direct route to the review Defendants say should govern is to advance it.

B. <u>Consolidation conserves the resources of the Court and the parties</u>.

12. The alternative is two evidentiary proceedings, two sets of briefs, and two decisions on overlapping questions, separated by months. Rule 92.02(c)(3) is designed to avoid that duplication: evidence received at the preliminary hearing that is admissible at trial "need not be repeated at the trial," and a contrary construction would render the Rule "redundant." *State ex rel. Cohen v. Riley*, 994 S.W.2d 546, 547–48 (Mo. banc 1999).

C. <u>Consolidation produces a single, reviewable judgment</u>.

13. An order granting or denying a preliminary injunction is interlocutory. It is not a final judgment, and it is not appealable. Section 512.020, R.S.Mo., authorizes appeal from an order "dissolving an injunction," but not from an order refusing one. *Salau v. Deaton*, 433 S.W.3d 449, 452–53 (Mo. App. W.D. 2014); *Pomirko v. Sayad*, 693 S.W.2d 323, 324 (Mo. App. E.D. 1985); *Leone v. Leone*, 917 S.W.2d 608, 616 (Mo. App. W.D. 1996); *Eickelmann v.*

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

*Eickelmann*, 724 S.W.2d 261, 262 (Mo. App. W.D. 1986) ("[O]rders entered during the temporary injunction stage are not final, appealable orders.... No appeal lies from the denial of a preliminary injunction."); *see also Spectrum Cleaning Servs., Inc. v. Blalack*, 990 S.W.2d 656, 658 (Mo. App. E.D. 1999); *ACLU of Mo. v. Ashcroft*, 577 S.W.3d 881, 886 n.7 (Mo. App. W.D. 2019) (quoting *Eickelmann*).

14. Proceeding by separate preliminary-injunction hearing would therefore commit substantial judicial resources to a proceeding that produces nothing either party may take up on appeal, while the merits remain undecided. Consolidation directs the same effort toward a judgment that finally resolves the controversy and is subject to review in the ordinary course.

D. The relief Mr. Wyatt seeks is, in substance, final relief.

15. Count IX of the Verified Petition seeks preliminary and permanent injunctive relief restoring Mr. Wyatt to his merit position and expunging the "resignation not in good standing" designation. The Motion for Preliminary Injunction seeks the same restoration on an interim basis. Defendants have argued that the relief sought by interim motion "is the ultimate relief Plaintiff seeks in the case." Mem. in Opp'n, pp. 9–10. Where the interim and final relief substantially coincide, consolidation is the orderly response; it resolves the objection rather than deferring it.

16. Consolidation also removes from the critical path the showing on which temporary relief was denied. A final judgment under § 536.140.2 turns on whether the agency (a) is in violation of constitutional provisions; (b) is in excess of the statutory authority or jurisdiction of the agency; (c) is unsupported by competent and substantial evidence upon the whole record; (d) Is, for any other reason, unauthorized by law; (e) Is made upon unlawful procedure or without a fair trial; (f) Is arbitrary, capricious or unreasonable; and/or (g) Involves an abuse of discretion. It does not require a showing of irreparable harm.

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

17. Advancing the merits is further warranted because the controlling question is one of law that this Court decides without deference to the Commission. By S.B. 221, effective August 28, 2025, the General Assembly amended § 536.140, R.S.Mo., to provide that a reviewing court shall not defer to an agency's interpretation of any statute, rule, or regulation, shall determine its meaning and effect de novo, and shall resolve any remaining doubt in favor of a reasonable interpretation that limits agency power and maximizes individual liberty. The construction of Civil Service Rule XIX, and whether a merit employee may resign otherwise than by the writing or abandoning their role for 3 or more consecutive days that the Rule specifies, is precisely such a question, and it is the question presented by Counts I and II alike. It will be resolved on the record that will be before the Court.

**IV. THE COURT SHOULD RECEIVE EVIDENCE UNDER § 536.140.4 AT THE CONSOLIDATED HEARING**

18. Section 536.140.4 provides, without qualification as to the standard of review, that "[t]he court may in any case hear and consider evidence of alleged irregularities in procedure or of unfairness by the agency, not shown in the record." This pathway is available regardless of whether the court is otherwise entitled to weigh the evidence. *Cf. State ex rel. Horn v. Randall*, 275 S.W.2d 758, 762 (Mo. App. 1955) (extra-record evidence inadmissible where not offered on an irregularity-or-unfairness theory).

19. Mr. Wyatt intends to offer evidence under this subsection including, without limitation, the following matters, each of which concerns the regularity and fairness of the Commission's process and none of which is resolved on the face of the administrative record:

a. the participation of a commissioner in the decision who attended no portion of the evidentiary hearing, together with the decision's recital of a unanimous vote and the absence of a commissioner's signature;

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

b. the Commission's consideration and reliance upon an unsigned and undated “witness statement” produced after the close of the evidentiary record and never subject to cross-examination; and

c. the circumstances of the preparation and adoption of the Findings of Fact, Conclusions of Law, and Decision, including the appearance in the decision of quoted statements not given by any witness at the hearing.

20. Mr. Wyatt requests that the order entered on this Motion state expressly that evidence pursuant to § 536.140.4 may be received, so that the scope of the consolidated hearing is settled in advance rather than litigated at it.

**IV-A. THE COUNTS TO BE CONSOLIDATED ARE TRIABLE TO THE COURT; TRIAL BY JURY IS DEMANDED AND PRESERVED ON COUNTS III, IV, V, AND X**

21. Rule 92.02(c)(3) provides in terms that it "shall be so construed and applied to preserve any party's right to trial by jury." The Rule tracks Fed. R. Civ. P. 65(a)(2), under which "[a]greement to a consolidation of trial on the merits with a hearing for a preliminary injunction by itself in no way amounts to a waiver of the right to jury trial." *Heyman v. Kline*, 456 F.2d 123, 130 (2d Cir. 1972); *accord New Windsor Volunteer Ambulance Corps, Inc. v. Meyers*, 442 F.3d 101, 120 (2d Cir. 2006) (quoting *Heyman*); *see Lamex Foods, Inc. v. Audeliz Lebrón Corp.*, 646 F.3d 100, 107 (1st Cir. 2011) (courts "indulge every reasonable presumption against" construing participation in a consolidated hearing as waiver).

22. **The six counts Mr. Wyatt asks to advance are triable to the Court in any event.** Judicial review under Chapter 536 is heard "without a jury" by the terms of the statute itself, and no constitutional jury right attaches to review of an administrative proceeding, such review being unknown at common law. § 536.140.1, R.S.Mo.; Mo. Const. art. I, § 22(a); *State ex rel. Mo. Comm'n on Human Rights v. Lasky*, 622 S.W.2d 762, 763 (Mo. App. E.D. 1981); *State ex rel. Diehl v. O'Malley*, 95 S.W.3d 82, 90 & n.13 (Mo. banc 2003) (Count I). Claims for

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

declaratory and injunctive relief are equitable and tried to the court. *Nitro Distrib., Inc. v. Dunn*, 194 S.W.3d 339, 352 (Mo. banc 2006); *Hammons v. Ehney*, 924 S.W.2d 843, 847 (Mo. banc 1996) (Counts II, VII, and IX). The Sunshine Law count seeks statutory penalties, fees, and injunctive and declaratory relief committed to the court, and states no cause of action known to the common law in 1820 (Count VI).

23. **Mandamus is likewise tried to the court, and no jury right attaches to Count VIII.** The writ is a common law writ, and although the English Statute of 9 Anne, ch. 20, provided for jury trial of issues of fact in mandamus, Missouri adopted only the common law and acts of Parliament prior to the fourth year of James I, and so never received that statute. *State ex rel. Prior v. Kansas City*, 261 S.W. 112 (Mo. 1924). Because mandamus is neither an action for money only nor for the recovery of specific real or personal property, it falls within the category of issues that must "be tried by the court." *Id.*; *accord State ex rel. White v. Goodfellow*, 1 Mo. App. 495 (1876). Neither Rule 94 nor Chapter 529, R.S.Mo., contains any provision for a jury; § 529.050 directs only that issues joined be tried "in the court from which such writ of mandamus issued." The rule holds even where the relator seeks back pay along with restoration to the rolls. *State ex rel. Wingfield v. Kansas City*, 217 Mo. App. 288, 263 S.W. 516 (Mo. App. 1924).

24. **Mr. Wyatt does not ask that Counts III, IV, V, or X be tried to the Court, and does not consent to their submission to the Court.** The § 1983 counts and the count for slander are civil actions for damages analogous to actions triable by jury at common law, and the right attaches. Mo. Const. art. I, § 22(a); *Diehl*, 95 S.W.3d at 86–87; *Hammons*, 924 S.W.2d at 848–49; *All Star Awards & Ad Specialties, Inc. v. HALO Branded Solutions, Inc.*, 642 S.W.3d 281, 286–87 (Mo. banc 2022). **Mr. Wyatt hereby demands trial by jury on Counts III, IV, V, and X and preserves that demand for all purposes.** That a mandamus count is joined in the same petition does not impair the demand. *Dorsch v. Family Medicine, Inc.*, 159 S.W.3d 424,

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

430–31 (Mo. App. S.D. 2005) (trial court should have impaneled a jury on the legal counts although the mandamus and accounting counts were properly tried to the court); *State ex rel. Wayside Waifs, Inc. v. Williamson*, 3 S.W.3d 390, 393–94 (Mo. App. W.D. 1999).

25. **Mr. Wyatt further requests that the order address the sequence of trials.** Where a cause presents both claims at law and claims in equity, "[u]nless circumstances clearly demand otherwise, trials should be conducted to allow claims at law to be tried to a jury, with the court reserving for its own determination only equitable claims and defenses, which it should decide consistently with the factual findings made by the jury." *State ex rel. Leonardi v. Sherry*, 137 S.W.3d 462, 473 (Mo. banc 2004); *accord State ex rel. Barker v. Tobben*, 311 S.W.3d 798, 800 (Mo. banc 2010); *Rhodes v. Mo. Highways & Transp. Comm'n*, 718 S.W.3d 419, 423 (Mo. banc 2025) (quoting *Payne v. Cunningham*, 549 S.W.3d 43, 50 (Mo. App. W.D. 2018), for the "marked preference" to conduct the jury trial first); *see also* Mo. Const. art. I, § 22(a).

26. The sequence matters here for a concrete reason. Counts III and IV seek both damages, which the jury must assess, and equitable relief: reinstatement, expungement of the designation, and a name-clearing hearing, which the Court alone may order. The facts underlying both are the same facts. Ordering the jury trial first assures that the equitable relief rests on the jury's findings rather than displacing them.

27. In the alternative, Mr. Wyatt does not ask the Court to defer resolution of Count I, which is decided on the closed record and on a question of law the Court determines de novo. He asks only that the order state expressly that no finding made in the consolidated proceeding, including any finding on evidence received under § 536.140.4, shall be given preclusive or law-of-the-case effect as to Counts III, IV, V, or X, and that his participation shall not be deemed a waiver under Rule 69.01(b). That provision costs Defendants nothing, since it withholds from

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

them only an advantage they could not have obtained had the counts been tried in the ordinary sequence.

**V. PROPOSED SCHEDULE**

28. Mr. Wyatt proposes the following schedule and will confer with counsel for Defendants in advance of the Case Management Conference in an effort to submit it jointly:

| **Event** | **Proposed date** |
|---|---|
| Ruling on Motion for Expedited Discovery | At the August 31, 2026 conference |
| Written discovery served | Within 14 days of the scheduling order |
| Responses to written discovery | 30 days after service |
| Depositions completed | Within 75 days of the scheduling order |
| Discovery closes | November 16, 2026 |
| Plaintiff's brief on the § 536.140 review | 21 days after close of discovery |
| Defendants' responsive brief | 21 days thereafter |
| Plaintiff's reply | 14 days thereafter |
| Jury trial, Counts III, IV, V, and X | After January 11, 2027 as set by the Court |
| Consolidated evidentiary hearing and trial on the merits, Counts I, II, VI, VII, VIII, and IX | After the trial by jury on Counts III, IV, V, and X or, in the alternative, after January 11, 2027 as set by the Court, with an order that any finding on the evidence pursuant to § 536.140.4 shall not be given preclusive or law-of-the-case effect as to Counts III, IV, V, or X, |

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

29. Mr. Wyatt does not request an expedited schedule that would prejudice Defendants' preparation. He requests only a schedule with dates certain. He has been without salary, health coverage, retirement service credit, and seniority since February 6, 2026, and the "resignation not in good standing" designation remains on record throughout. Those constitutional deprivation consequences continue for as long as this cause is undecided, and they are the reason a date certain matters.

**VI. CLARIFICATION OF THE AUGUST 11, 2026 ORDER**

30. Mr. Wyatt does not seek reconsideration of the August 11, 2026 Order, and does not ask the Court to elaborate upon its reasoning. He asks only that two matters be made explicit, so that they are not disputed later.

31. **First**, that the denial of temporary relief is without prejudice to the pending Motion for Preliminary Injunction and to final relief on all counts. The Order says as much already: its findings were made "for purposes of this Order only," and an order denying interim relief is interlocutory in any event, over which the Court retains continuing authority until final judgment. *Universal Credit Acceptance, Inc. v. Ware*, 556 S.W.3d 69, 75 (Mo. App. E.D. 2018); *Nicholson v. Surrey Vacation Resorts, Inc.*, 463 S.W.3d 358, 364–65 (Mo. App. S.D. 2015); *Garza v. Valley Crest Landscape Maint., Inc.*, 224 S.W.3d 61, 65 (Mo. App. E.D. 2007). Mr. Wyatt asks that the point be stated on the face of an order so that no question arises about the Order's preclusive effect.

32. **Second**, that Defendants' commencement of a replacement's employment in the Chief Operating Officer position shall not be urged as a ground for denying interim or final reinstatement. Defendants filled the position with actual notice of the pending motions and of the specific act sought to be restrained. "For where a defendant, with notice of the filing of a bill for

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

an injunction, proceeds to complete the acts sought to be enjoined, the court may, by mandatory injunction, compel a restoration of the status quo." *Texas & New Orleans R.R. v. Northside Belt Ry.*, 276 U.S. 475, 479 (1928); *accord Porter v. Lee*, 328 U.S. 246, 251 (1946); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 n.2 (1946). Missouri law is to the same effect: "the status quo which will be preserved by preliminary injunction is the last actual, peaceable, noncontested status which preceded the pending controversy, and equity will not permit a wrongdoer to shelter himself behind a suddenly or secretly changed status, though he succeeded in making the change before the chancellor's hand actually reached him." *State on inf. of McKittrick v. American Ins. Co.*, 351 Mo. 392, 173 S.W.2d 51, 52 (Mo. banc 1943).

33. Nor does the appointment of a replacement defeat reinstatement. Missouri law has long held that where a public employee has been wrongfully deprived of his position by the illegal appointment of another, restoration will be ordered "even though such appointee be in possession de facto," and the appointee is not a necessary party, because an appointment made to fill a vacancy that did not legally exist is a nullity. *State ex rel. Guion v. Miles*, 210 Mo. 127, 109 S.W. 595, 605–08 (Mo. 1908). The principle was applied to a civil service employee in *State ex rel. Rundberg v. Kansas City*, 206 Mo. App. 17, 226 S.W. 986, 988–90 (Mo. App. 1920), where the municipality had placed another person in the relator's position and paid him a salary. The court ordered reinstatement and back pay notwithstanding, reasoning that "it is not the appointment of the other person which prevents the proper incumbent from performing the duties and obtaining the salary, but it is the wrongful discharge," and that the municipality's decision to install and pay a replacement "was the city's affair, if it chose to take such course with its attending consequences." *Id.* at 988–90. That is this case: the vacancy the County purported to fill exists only if the "resignation not in good standing" determination stands, and that determination is the subject of this proceeding.

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

34. This request asks the Court to decide nothing about the merits. It asks only that the sequence of events not become an argument of its own.

**CONCLUSION**

WHEREFORE, Plaintiff/Petitioner Duane "Pete" Wyatt respectfully requests that this Court enter an order granting the relief set forth in paragraphs (A) through (G) above, in the form of the proposed order submitted herewith, and granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

s/s *Katherine C. Frierdich*
Katherine C. Frierdich, MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff/Petitioner*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 25th day of August, 2026, a true and accurate copy of the foregoing was filed through the Missouri eFiling System, which will serve notice upon all counsel of record, including Nicholas C. Lindley, Associate County Counselor, Office of the County Counselor, 41 South Central Avenue, Clayton, Missouri 63105, counsel for Defendant St. Louis County.

s/s *Katherine C. Frierdich*

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 12:31 PM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY: NICHOLAS CHARLES LINDLEY, Attorney for Defendant
SERVICE EMAIL: ncl@lindleylegal.com, nlindley@stlouiscountymo.gov

FILED
08/26/2026
JOAN M. GILMER
CIRCUIT CLERK
ST. LOUIS COUNTY, MO

**IN THE CIRCUIT OURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | |
|---|---|
| **DUANE WYATT,**<br><br>**Plaintiff(s),**<br>**v.**<br><br>**ST. LOUIS COUNTY, et al.**<br>**Defendant(s)** | **Cause No. 26SL-CC05095**<br><br>**Division 3** |

**ORDER**

Pursuant to order Rule 92.02(c) of the Missouri Rules of Civil Procedure, the Court hereby orders that the trial of the action on the merits to be advanced and consolidated with the hearing of the application for a preliminary injunction. Repetition of evidence will be avoided as this is subject to judicial review of the record already developed, no delay in the disposition of the application for preliminary injunction will result from consolidation, and the final disposition of the action will be expedited.

**SO ORDERED:**

Heather Cunningham

Judge Division 3

August 26, 2026

cc: Notification to all attorneys of record via the Court's e-filing system

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 04:24 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et al., | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

**PLAINTIFF/PETITIONER'S NOTICE OF COMMENCEMENT OF EMPLOYMENT IN THE CHIEF OPERATING OFFICER POSITION AND RESERVATION OF RIGHTS**

COMES NOW Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt"), by and through counsel, and respectfully gives notice to the Court and to all parties of the following. **This Notice seeks no relief and requests no ruling.** It is filed solely to complete the record on a fact material to the relief sought in the Verified Petition and in the pending Motion for Preliminary Injunction, and to reserve rights that would otherwise be subject to dispute.

1. On July 17, 2026, Mr. Wyatt filed his Verified Petition, together with his Motion for Preliminary Injunction and Brief in Support, seeking (among other relief) judicial review of the Civil Service Commission's June 18, 2026 decision under § 536.140, R.S.Mo., and reinstatement to his merit position as Chief Operating Officer of the Department of Public Health Community Health Centers.

2. On August 3, 2026, Mr. Wyatt filed his Motion for Temporary Restraining Order. On August 6, 2026, he filed a Notice of Hearing setting the motion for August 10, 2026. On August 7, 2026, he filed a Supplement to that Motion and a Notice of Supplemental Facts, together with his Supplemental Affidavit, advising the Court that Defendants had hired a

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 04:24 PM

replacement Chief Operating Officer whose employment was scheduled to commence August 17, 2026.

3. Complete copies of the Verified Petition, the Motion for Preliminary Injunction and Brief in Support, the Motion for Temporary Restraining Order, and the supporting affidavits were delivered to the Office of the St. Louis County Counselor, with written notice of presentment, on the dates reflected in the certificates of service accompanying those filings. Defendants appeared and were heard in opposition on August 10, 2026. Defendants have therefore had actual notice of the pendency of Mr. Wyatt's request for injunctive relief, and of the specific act sought to be restrained, at all times material to this Notice.

4. On August 11, 2026, the Court entered its Order Regarding Temporary Restraining Order, denying the Motion for Temporary Restraining Order. The Court's findings were expressly made "for purposes of this Order only." The Order did not adjudicate the Motion for Preliminary Injunction, which remains pending, and did not adjudicate any count of the Verified Petition.

5. The employment of a replacement Chief Operating Officer of the Community Health Centers commenced on or about August 17, 2026. Mr. Wyatt's basis for this belief is the reports of three executive-level employees of the Department of Public Health. *See* Wyatt Second Supplemental Affidavit at *Exhibit A*.

6. Mr. Wyatt expressly reserves, and does not waive, all rights and remedies sought in the Verified Petition and the pending Motion for Preliminary Injunction, including reinstatement to the position of Chief Operating Officer of the Department of Public Health Community Health Centers or to an equivalent merit position, back pay and benefits, and expungement of the "resignation not in good standing" designation. Specifically, and without limitation, Mr. Wyatt states that the commencement of a replacement's employment:

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 04:24 PM

a. does not moot, and cannot moot, the pending Motion for Preliminary Injunction or any count of the Verified Petition. *See Texas & New Orleans R.R. v. Northside Belt Ry.*, 276 U.S. 475, 479 (1928); *Porter v. Lee*, 328 U.S. 246, 251 (1946); *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 n.2 (1946); *State on inf. of McKittrick v. American Ins. Co.*, 351 Mo. 392, 173 S.W.2d 51, 52 (Mo. banc 1943);

b. was undertaken by Defendants with actual notice of the pending request for injunctive relief and of the specific act sought to be restrained, and therefore at Defendants' own peril, *id.*; and

c. does not render reinstatement impracticable or unavailable. *See State ex rel. Guion v. Miles*, 210 Mo. 127, 109 S.W. 595, 605–08 (Mo. 1908); *State ex rel. Rundberg v. Kansas City*, 206 Mo. App. 17, 226 S.W. 986, 988–90 (Mo. App. 1920).

7. Section 536.120, R.S.Mo., authorizes this Court, pending final disposition of the proceedings for review, to "issue all necessary and appropriate process" to stay enforcement of the agency's order or "temporarily to grant or extend ... relief denied or withheld." Mr. Wyatt reserves his request for such process.

8. Mr. Wyatt further gives notice that he will address the appropriate schedule for resolution of this cause, including consolidation of the hearing on his Motion for Preliminary Injunction with trial on the merits pursuant to Rule 92.02(c)(3), at the Case Management Conference set for August 31, 2026, and by his separate motion filed in advance of that conference.

WHEREFORE, Plaintiff/Petitioner Duane "Pete" Wyatt respectfully submits this Notice for the Court's information and for completion of the record.

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 04:24 PM

Respectfully submitted,

__s/s *Katherine C. Frierdich*________
Katherine C. Frierdich, MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff/Petitioner*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 26th day of August, 2026, a true and accurate copy of the foregoing was filed through the Missouri eFiling System, which will serve notice upon all counsel of record, including Nicholas C. Lindley, Associate County Counselor, Office of the County Counselor, 41 South Central Avenue, Clayton, Missouri 63105, counsel for Defendant St. Louis County.

__s/s *Katherine C. Frierdich*_________

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 04:24 PM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY: NICHOLAS CHARLES LINDLEY, Attorney for Defendant
SERVICE EMAIL: ncl@lindleylegal.com, nlindley@stlouiscountymo.gov

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 04:24 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI, et al., | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

**SECOND SUPPLEMENTAL AFFIDAVIT OF DUANE "PETE" WYATT IN SUPPORT OF HIS NOTICE OF COMMENCEMENT OF EMPLOYMENT IN THE CHIEF OPERATING OFFICER POSITION AND RESERVATION OF RIGHTS**

Duane "Pete" Wyatt, being first duly sworn upon his oath, states as follows:

1. I am the Plaintiff/Petitioner in this action. I am over eighteen years of age and competent to make this Affidavit. The facts stated here are true and are based on my personal knowledge. As to those facts, I identify the source and basis of my information, and I believe them to be true.

2. On the evening of August 17, 2026, I learned from three executive-level employees of the Department of Public Health that the individual hired to fill my role as Chief Operating Officer reported to work on that same day.

3. I believe the information in paragraph 2 to be accurate because the sources are high-level employees of the Department of Public Health with direct knowledge of the Department's hiring activity for the Community Health Centers.

Plaintiff/Petitioner's Exhibit A

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 04:24 PM

STATE OF Pennsylvania )
) ss.
COUNTY OF Northampton )

FURTHER AFFIANT SAYETH NOT.

Duane Pete Wyatt
Duane "Pete" Wyatt

Subscribed and sworn to before me this 26th day of August, 2026.

Commonwealth of Pennsylvania - Notary Seal
Francisco J Santiago, Notary Public
Northampton County
My commission expires May 9, 2028
Commission Number 1446353

Notary Public

My commission expires: 05/09/2028

Notarized remotely online using communication technology via Proof.

Electronically Filed - ST LOUIS COUNTY - August 26, 2026 - 04:24 PM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY: NICHOLAS CHARLES LINDLEY, Attorney for Defendant
SERVICE EMAIL: ncl@lindleylegal.com, nlindley@stlouiscountymo.gov

FILED
08/25/2026
JOAN M. GILMER
CIRCUIT CLERK
ST. LOUIS COUNTY, MO

Electronically Filed - ST LOUIS COUNTY - August 24, 2026 - 05:15 PM

**IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **DUANE "PETE" WYATT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | **Cause No. 26SL-CC05095** |
| **v.** | ) | |
| | ) | |
| **ST. LOUIS COUNTY, MISSOURI., Et al** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**CONSENT MOTION FOR ADDITIONAL TIME TO FILE RECORD BEFORE THE AGENCY PURSUANT TO RSMO § 536.130**

COMES NOW Counsel for Defendants/Respondents, and for his Motion to request additional time to file a certified record before the agency pursuant to RSMo § 536.130 *et seq*., states as follows:

1. That in a letter dated August 16, 2026, Plaintiff's Counsel requested that the full and complete record before the agency in Plaintiff's case be transmitted by the agency directly to the reviewing court, as prescribed by *RSMo § 536.130.4;*

2. That *RSMo § 536.130* provides that the record before the agency shall be filed in the reviewing court within thirty days after the filing of the petition, "or within such further time as the court may allow.";

3. That Plaintiff's Counsel moved this Court on August 16, 2026 for an Order "that the Court direct the Commission to certify and transmit the complete record before the agency to the Clerk of this Court by August 24, 2026, which is one week prior to the conference scheduled by this Court.";

Electronically Filed - ST LOUIS COUNTY - August 24, 2026 - 05:15 PM

4. That as of the date of this filing, the Court has not ruled on Plaintiff's Motion;

5. That Counsel for Defendants requires additional time to compile the requested documents, and to arrange for the certification of the same;

6. That as the only scheduled hearing in this case is the August 31, 2026 case management conference, Plaintiff will not be prejudiced by the Court's granting of a brief extension; and,

7. That this Motion is made with consent of Plaintiff's Counsel.

WHEREFORE, Counsel for Defendants prays this Court grant their Motion for Additional Time to File a Certified Copy of the record before the agency, up to and including Monday, August 31, 2026, and for any further relief as this Court may deem just and proper.

By consent of all parties

**LEAVE GRANTED:**

Judge Division 3
August 25, 2026

Respectfully Submitted,

**DANA T. REDWING**
**COUNTY COUNSELOR**

By: **___/s/ Nicholas C. Lindley**
Nicholas Lindley, #63038
Associate County Counselor
Office of the County Counselor
41 S. Central Avenue
Clayton, Missouri 63105
(314) 934-0476
NLindley@stlouiscountymo.gov
*Attorney for Defendants*

Electronically Filed - ST LOUIS COUNTY - August 24, 2026 - 05:15 PM

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was transmitted this 24th day of August, 2026 through the court's electronic filing system.

***/s/ Nicholas C. Lindley #63038***
Nicholas Lindley

Electronically Filed - ST LOUIS COUNTY - August 24, 2026 - 05:15 PM

**IN THE CIRCUIT COURT OF THE COUNTY OF ST. LOUIS**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **DUANE "PETE" WYATT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | **Cause No. 26SL-CC05095** |
| **v.** | ) | |
| | ) | |
| **ST. LOUIS COUNTY, MISSOURI., Et al** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**CONSENT MOTION FOR ADDITIONAL TIME TO FILE RECORD BEFORE THE AGENCY PURSUANT TO RSMO § 536.130**

COMES NOW Counsel for Defendants/Respondents, and for his Motion to request additional time to file a certified record before the agency pursuant to RSMo § 536.130 *et seq*., states as follows:

1. That in a letter dated August 16, 2026, Plaintiff's Counsel requested that the full and complete record before the agency in Plaintiff's case be transmitted by the agency directly to the reviewing court, as prescribed by *RSMo § 536.130.4;*

2. That *RSMo § 536.130* provides that the record before the agency shall be filed in the reviewing court within thirty days after the filing of the petition, "or within such further time as the court may allow.";

3. That Plaintiff's Counsel moved this Court on August 16, 2026 for an Order "that the Court direct the Commission to certify and transmit the complete record before the agency to the Clerk of this Court by August 24, 2026, which is one week prior to the conference scheduled by this Court.";

Electronically Filed - ST LOUIS COUNTY - August 24, 2026 - 05:15 PM

4. That as of the date of this filing, the Court has not ruled on Plaintiff's Motion;

5. That Counsel for Defendants requires additional time to compile the requested documents, and to arrange for the certification of the same;

6. That as the only scheduled hearing in this case is the August 31, 2026 case management conference, Plaintiff will not be prejudiced by the Court's granting of a brief extension; and,

7. That this Motion is made with consent of Plaintiff's Counsel.

WHEREFORE, Counsel for Defendants prays this Court grant their Motion for Additional Time to File a Certified Copy of the record before the agency, up to and including Monday, August 31, 2026, and for any further relief as this Court may deem just and proper.

Respectfully Submitted,

**DANA T. REDWING**
**COUNTY COUNSELOR**

By: **___/s/ Nicholas C. Lindley**

Nicholas Lindley, #63038
Associate County Counselor
Office of the County Counselor
41 S. Central Avenue
Clayton, Missouri 63105
(314) 934-0476
NLindley@stlouiscountymo.gov
*Attorney for Defendants*

Electronically Filed - ST LOUIS COUNTY - August 24, 2026 - 05:15 PM

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was transmitted this 24th day of August, 2026 through the court's electronic filing system.

***/s/ Nicholas C. Lindley #63038***
Nicholas Lindley

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY: KATHERINE CLENDENIN LEMLEY, Attorney for Plaintiff
SERVICE EMAIL: kcfrierdich@cadenziaconsulting.com, katherine.c.lemley@centene.com

Electronically Filed - ST LOUIS COUNTY - August 24, 2026 - 05:15 PM

Electronically Filed - ST LOUIS COUNTY - August 16, 2026 - 12:50 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

**PLAINTIFF/PETITIONER'S MOTION FOR EXTENSION OF TIME TO FILE THE RECORD BEFORE THE AGENCY PURSUANT TO § 536.130 R.S.Mo., AND, IN THE ALTERNATIVE, TO DIRECT TRANSMITTAL OF THE RECORD BY THE AGENCY**

COMES NOW Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt"), by and through counsel, and, pursuant to § 536.130, R.S.Mo., respectfully moves this Court for an extension of time within which to file the record before the St. Louis County Civil Service Commission (the "Commission"). In support, Mr. Wyatt states:

1. Mr. Wyatt filed his Verified Petition for judicial review, together with additional claims, on **July 17, 2026**.

2. Section 536.130, R.S.Mo., provides that the record before the agency shall be filed in the reviewing court within thirty days after the filing of the petition, **"or within such further time as the court may allow."** The statute thus expressly commits the period to the Court's discretion.

3. Thirty days from July 17, 2026 fell on Sunday, August 16, 2026. Under Rule 44.01(a), the period therefore runs through **Monday, August 17, 2026**. This Motion is filed before that date.

Electronically Filed - ST LOUIS COUNTY - August 16, 2026 - 12:50 PM

A. The Court's authority to extend the period is settled. The thirty-day period for filing the record is procedural, not jurisdictional. *Greene County v. Hermel, Inc.*, 511 S.W.2d 762, 764 (Mo. 1974); *see also City of Richmond v. Suddarth*, 120 S.W.3d 212, 215, 218 (Mo. App. W.D. 2003) ("[t]he filing of a record within the thirty-day period established by Section 536.130.4 is not a jurisdictional requirement"); *Orion Sec., Inc. v. Board of Police Comm'rs of Kansas City*, 43 S.W.3d 467, 470 (Mo. App. W.D. 2001); *Knapp v. Missouri Local Gov't Emps. Ret. Sys.*, 738 S.W.2d 903 (Mo. App. W.D. 1987).[1]

4. Contemporaneously with the Verified Petition, Mr. Wyatt filed: the Civil Service Commission administrative hearing transcript, the Commission's Findings of Fact, Conclusions of Law, and Decision*;* the Hearing Exhibits, and the Pike Statement, which materials are of record and were considered by the Court in connection with its August 11, 2026 Order.[2] Mr. Wyatt seeks additional time to complete and file the record before the agency, certified, so that the record is complete in the form § 536.130 contemplates.

5. Section 536.130.1 permits the record to consist of (a) such parts of the record, proceedings, and evidence as the parties by written stipulation may agree upon, (b) an agreed statement of the case, agreed to by all parties and approved as correct by the agency, or (c) a complete transcript of the entire record, proceedings, and evidence before the agency, provided that in every case the agency's decision, order, findings of fact, and conclusions of law are included. Mr. Wyatt intends to request that the Commission file with this Court a full, certified copy of the entire record. Because Mr. Wyatt already possesses much of the record, he has

---

[1] Missouri courts have upheld extensions granted even after the original period has run. Orion Sec., 43 S.W.3d at 470; Johnston v. Livingston Cnty. Comm'n, 462 S.W.3d 859, 865 (Mo. App. W.D. 2015); Bresnahan v. Bass, 562 S.W.2d 385, 389 (Mo. App. E.D. 1978); Suburban Bank of Kansas City v. Proposed Jackson County State Bank of Kansas City, 326 S.W.2d 420, 423–24 (Mo. App. W.D. 1959). Mr. Wyatt does not rely on that authority here, because he seeks relief before the period expires.

[2] Mr. Wyatt included the County's Proposed Findings of Fact, Conclusions of Law and Decision as well as Mr. Wyatt's Findings of Fact, Conclusions of Law and Order and Post-Hearing Brief with his Motion for Preliminary Injunction.

Electronically Filed - ST LOUIS COUNTY - August 16, 2026 - 12:50 PM

offered to work with the County on a stipulated partial certified record pursuant to Section 536.130.1.

6. Good cause exists for a short extension. Certification of the record is an act only the Commission can perform, and material portions of the record, including the post-hearing submissions and the signature and voting records associated with the June 18, 2026 Decision, which are in the possession and control of the Commission and of Defendant St. Louis County. Assembly and certification cannot be completed within the original period through no fault of Mr. Wyatt.

7. Section 536.130 provides that the record "shall be filed by the plaintiff, or at the request of the plaintiff shall be transmitted by the agency directly to the clerk of the reviewing court and by him filed." Mr. Wyatt has made that request of the Commission by correspondence of even date, a copy of which is attached as **Exhibit A**. In addition to the extension requested above, Mr. Wyatt requests that the Court direct the Commission to certify and transmit the complete record before the agency to the Clerk of this Court by August 24, 2026, which is one week prior to the conference scheduled by this Court.

A. Mr. Wyatt further requests that any order entered preserve the Court's authority under § 536.130 to "require or permit subsequent corrections of or additions to the record," so that any omission from the Commission's transmittal may be cured without further motion practice.

8. No party will be prejudiced by the extension requested. This cause is set for a Case Management Conference on August 31, 2026, no trial or hearing date has been set, and no responsive deadline of any Defendant depends upon the filing of the record. The extension will, if anything, advance the orderly resolution of this cause by ensuring that the Court has the complete record before it when the parties address scheduling.

Electronically Filed - ST LOUIS COUNTY - August 16, 2026 - 12:50 PM

9. This Motion is not made for purposes of delay.

10. Mr. Wyatt attaches a proposed order as Exhibit. B.

WHEREFORE, Plaintiff/Petitioner Duane "Pete" Wyatt respectfully requests that this Court:

A. Extend the time within which the record before the agency shall be filed, pursuant to § 536.130, R.S.Mo., through and including August 24, 2026, 2026;

B. In addition, direct the St. Louis County Civil Service Commission to certify and transmit the complete record before the agency directly to the Clerk of this Court by August 24, 2026;

C. Preserve the Court's authority under § 536.130 to "require or permit subsequent corrections of or additions to the record," so that any omission from the Commission's transmittal may be cured without further motion practice; and

D. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Katherine C. Frierdich*

Katherine C. Frierdich, MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff/Petitioner*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 16th day of August, 2026, a true and accurate copy of the foregoing was filed through the Missouri eFiling System, which will serve notice upon all counsel of record, including Nicholas C. Lindley, Associate County Counselor, Office of the County Counselor, 41 South Central Avenue, Clayton, Missouri 63105, counsel for

Electronically Filed - ST LOUIS COUNTY - August 16, 2026 - 12:50 PM

Defendant St. Louis County, who has agreed to accept service of process for Dr. Kanika Cunningham and Derrick Melton.

_s/s *Katherine C. Frierdich*_______________

Electronically Filed - ST LOUIS COUNTY - August 16, 2026 - 12:50 PM

Cadenzia Consulting
STRATEGIC LEGAL ADVISORY. BUILT FOR GROWTH.

Katherine C. Frierdich
14 Fordyce Lane
St. Louis, Missouri 63124
kcfrierdich@cadenziaconsulting.com

August 16, 2026

**VIA EMAIL**

St. Louis County Civil Service Commission
c/o Noah Goldkamp, Commission Counselor
c/o Matt Livasy, Commission Secretary
41 S. Central Avenue
Clayton, Missouri 63105
ngodlkamp@stlouiscountymo.gov
mlivasy@stlouiscountymo.gov

Nicholas C. Lindley, Esq
Associate County Counselor
Office of the County Counselor
41 South Central Avenue
Clayton, Missouri 63105
nlindley@stlouiscountymo.gov

**Re: *Duane "Pete" Wyatt v. St. Louis County, Missouri, et al.*, Cause No. 26SL-CC05095, Division 3, Circuit Court of St. Louis County; Request pursuant to § 536.130.4, R.S.Mo., that the Commission Transmit the Certified Record before the Agency Directly to the Reviewing Court**

Dear Messrs. Goldkamp, Livasy and Lindley:

As you are aware, his firm represents Duane "Pete" Wyatt, the petitioner in the above-captioned proceeding for judicial review, filed July 17, 2026.

Electronically Filed - ST LOUIS COUNTY - August 16, 2026 - 12:50 PM

**This letter is a request under § 536.130.4, R.S.Mo. It is not a request under Chapter 610.** Section 536.130.4 provides that the record before the agency "shall be filed by the plaintiff or, at the plaintiff's request, transmitted by the agency directly to the reviewing court." By this letter, Mr. Wyatt makes that request.

Accordingly, Mr. Wyatt requests that the Commission certify and transmit **directly to the Clerk of the Circuit Court of St. Louis County**, in Cause No. 26SL-CC05095, Division 3, the complete record before the agency in Mr. Wyatt's appeal, including:

1. The complete transcript of the evidentiary hearing, including all volumes and any transcript of argument;
2. All exhibits offered or admitted by any party, whether or not received, and any exhibit index;
3. All pleadings, notices, appeal filings, correspondence, and other papers filed with or issued by the Commission in the matter;
4. All pre-hearing and post-hearing submissions of the parties, including proposed findings of fact and conclusions of law;
5. Any document, statement, or other material submitted to or considered by the Commission after the close of the evidentiary record;
6. The Commission's Findings of Fact, Conclusions of Law, and Decision dated June 18, 2026, together with any signature pages, certificates, and any record of the vote of the members; and
7. All minutes, notices, or records of any Commission meeting or session at which Mr. Wyatt's appeal was considered or the decision was adopted or signed.

Please confirm in writing (a) the date by which you will transmit the record directly to the Clerk, and (b) whether any portion of the transcript requires preparation and, if so, the anticipated cost and the deposit or arrangement the Commission requires. Mr. Wyatt will bear any cost properly chargeable to him under § 536.130 and will make prompt arrangements for payment.

**Stipulated record.** Section 536.130.1 permits the parties to file a stipulated partial record. Because Mr. Wyatt possesses much of the record, he is willing to confer promptly regarding either, which may reduce cost and delay for both sides. Please let me know whether the County is interested.

**Pending motion.** Because assembly and certification of the record cannot be completed within the period specified in § 536.130.4, Mr. Wyatt has today filed a motion asking the Court to extend that period and to direct the Commission's transmittal. A copy is enclosed. Mr. Wyatt would prefer to present that motion as unopposed, and asks whether the County will agree.

Electronically Filed - ST LOUIS COUNTY - August 16, 2026 - 12:50 PM

Nothing in this letter withdraws, modifies, or limits any request previously made under Chapter 610, including Request No. 26-3253, or any of Mr. Wyatt's rights or claims arising from those requests, all of which are expressly reserved.

Thank you for your prompt attention.

Very truly yours,

s/s *Katherine C. Frierdich*

Counsel for Duane "Pete" Wyatt

Encl: Motion for Extension of Time to File the Record Before the Agency

Electronically Filed - ST LOUIS COUNTY - August 16, 2026 - 12:50 PM

**PROPOSED ORDER**

Upon Plaintiff/Petitioner's Motion for Extension of Time to File the Record Before the Agency, and good cause appearing, it is **ORDERED** that:

1. The time within which the record before the St. Louis County Civil Service Commission shall be filed pursuant to § 536.130, R.S.Mo., is **EXTENDED** through and including August 24, 2026.

2. The St. Louis County Civil Service Commission shall certify and transmit the complete record before the agency, including the transcript of the evidentiary hearing, all exhibits admitted or offered, and its Findings of Fact, Conclusions of Law, and Decision, to the Clerk of this Court on or before August 24, 2026.

3. The Court may require or permit subsequent corrections of or additions to the record pursuant to § 536.130, R.S.Mo.

**SO ORDERED.**

______________________________________
Hon. Heather Renee Cunningham, Division 3

Dated: _________________, 2026

Exhibit B

Electronically Filed - ST LOUIS COUNTY - August 16, 2026 - 12:50 PM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY: NICHOLAS CHARLES LINDLEY, Attorney for Defendant
SERVICE EMAIL: ncl@lindleylegal.com, nlindley@stlouiscountymo.gov

## AFFIDAVIT OF SERVICE

| Case: 26SL-CC05095 | Court: 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI | County: St Louis, MO | Job: 16524124 |
|---|---|---|---|
| Plaintiff / Petitioner: DUANE "PETE" WYATT | | Defendant / Respondent: ST. LOUIS COUNTY, MISSOURI | |
| Received by: Elliott Process LLC | | For: Cadenzia Consulting | |
| To be served upon: ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH | | | |

I, Adam Elliott, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Keith Schildroth - County Council , 41 South Central Avenue, Clayton, MO 63105

**Manner of Service:** Authorized, Aug 12, 2026, 11:23 am CDT

**Documents:** Summons in Civil Case. et al,.

**Additional Comments:**
1) Unsuccessful Attempt: Aug 4, 2026, 12:36 pm CDT at 41 South Central Avenue, Clayton, MO 63105
The staff member that I spoke with stated that she was new and uncertain if she could accept these documents because they weren't specifically addressed to a department of some kind. She stated she would have to speak with her supervisors and let me know. I gave her my phone number for her to call me with any questions

2) Successful Attempt: Aug 12, 2026, 11:23 am CDT at 41 South Central Avenue, Clayton, MO 63105 received by Keith Schildroth - County Council . Age: 50-60 ; Ethnicity: Caucasian; Gender: Male; Weight: 300; Height: 6'; Hair: Brown;
Successfully served Keith Schildroth - County Council ,who was authorized to accept service.

*Subscribed and sworn to before me by the affiant who is personally known to me.*

Adam Elliott [signature] 08/13/2026
Adam Elliott — Date

Notary Public [signature]
8/13/2026 — Jun 04, 2028
Date — Commission Expires

Elliott Process LLC
5636 Telegraph Road #510181
St. Louis, MO 63129
6362008069

BILLY BRANDON
Notary Public - Notary Seal
STATE OF MISSOURI
County of Jefferson
My Commission Expires: Jun. 04, 2028
Commission #24123979

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY: NICHOLAS CHARLES LINDLEY, Attorney for Defendant
SERVICE EMAIL: ncl@lindleylegal.com, nlindley@stlouiscountymo.gov

Electronically Filed - ST LOUIS COUNTY - August 16, 2026 - 01:09 PM

# AFFIDAVIT OF SERVICE

| Case: 26SL-CC05095 | Court: 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI | County: St Louis, MO | Job: 16524124 |
|---|---|---|---|
| Plaintiff / Petitioner: DUANE "PETE" WYATT | | Defendant / Respondent: ST. LOUIS COUNTY, MISSOURI | |
| Received by: Elliott Process LLC | | For: Cadenzia Consulting | |
| To be served upon: ST. LOUIS COUNTY CIVIL SERVICE COMMISSION, | | | |

I, Adam Elliott, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Keith Schildroth - County Council , 41 South Central Avenue, Clayton, MO 63105
**Manner of Service:** Authorized, Aug 12, 2026, 11:23 am CDT
**Documents:** Summons in Civil Case, et al,,

**Additional Comments:**
1) Unsuccessful Attempt: Aug 4, 2026, 12:36 pm CDT at 41 South Central Avenue, Clayton, MO 63105
The staff member that I spoke with stated that she was new and uncertain if she could accept these documents because they weren't specifically addressed to a department of some kind. She stated she would have to speak with her supervisors and let me know. I gave her my phone number for her to call me with any questions

2) Successful Attempt: Aug 12, 2026, 11:23 am CDT at 41 South Central Avenue, Clayton, MO 63105 received by Keith Schildroth - County Council . Age: 50-60 ; Ethnicity: Caucasian; Gender: Male; Weight: 300; Height: 6'; Hair: Brown;
Successfully served Keith Schildroth - County Council ,who was authorized to accept service.

Adam Elliott [signature] 08/13/2026
Adam Elliott — Date

Elliott Process LLC
5636 Telegraph Road #510181
St. Louis, MO 63129
6362008059

*Subscribed and sworn to before me by the affiant who is personally known to me.*

[signature]
Notary Public
8/13/2026 — Jun 04, 2028
Date — Commission Expires

BILLY BRANDON
Notary Public - Notary Seal
STATE OF MISSOURI
County of Jefferson
My Commission Expires: Jun. 04, 2028
Commission #24123979

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY: NICHOLAS CHARLES LINDLEY, Attorney for Defendant
SERVICE EMAIL: ncl@lindleylegal.com, nlindley@stlouiscountymo.gov

Electronically Filed - ST LOUIS COUNTY - August 16, 2026 - 01:11 PM

## AFFIDAVIT OF SERVICE

| Case: 26SL-CC05095 | Court: 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI | County: St Louis, MO | Job: 16524124 |
|---|---|---|---|
| Plaintiff / Petitioner: DUANE "PETE" WYATT | | Defendant / Respondent: ST. LOUIS COUNTY, MISSOURI | |
| Received by: Elliott Process LLC | | For: Cadenzia Consulting | |
| To be served upon: ST. LOUIS COUNTY, MISSOURI, | | | |

I, Adam Elliott, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Keith Schildroth - County Council , 41 South Central Avenue, Clayton, MO 63105

**Manner of Service:** Authorized, Aug 12, 2026, 11:23 am CDT

**Documents:** Summons in Civil Case, et al,.

**Additional Comments:**

1) Unsuccessful Attempt: Aug 4, 2026, 12:36 pm CDT at 41 South Central Avenue, Clayton, MO 63105
The staff member that I spoke with stated that she was new and uncertain if she could accept these documents because they weren't specifically addressed to a department of some kind. She stated she would have to speak with her supervisors and let me know. I gave her my phone number for her to call me with any questions

2) Successful Attempt: Aug 12, 2026, 11:23 am CDT at 41 South Central Avenue, Clayton, MO 63105 received by Keith Schildroth - County Council , Age: 50-60 ; Ethnicity: Caucasian; Gender: Male; Weight: 300; Height: 6'; Hair: Brown;
Successfully served Keith Schildroth - County Council ,who was authorized to accept service.

Adam Elliott 08/13/2026
Adam Elliott Date

Elliott Process LLC
5636 Telegraph Road #510181
St. Louis, MO 63129
6362008059

*Subscribed and sworn to before me by the affiant who is personally known to me.*

Notary Public

8/13/2026 Jun 04, 2028
Date Commission Expires

BILLY BRANDON
Notary Public - Notary Seal
STATE OF MISSOURI
County of Jefferson
My Commission Expires: Jun. 04, 2028
Commission #24123979

Electronically Filed - ST LOUIS COUNTY - August 16, 2026 - 01:11 PM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY: NICHOLAS CHARLES LINDLEY, Attorney for Defendant
SERVICE EMAIL: ncl@lindleylegal.com, nlindley@stlouiscountymo.gov

Electronically Filed - ST LOUIS COUNTY - August 11, 2026 - 09:53 AM

# AFFIDAVIT OF SERVICE

| Case: 26SL-CC05095 | Court: 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI | County: St Louis, MO | Job: 16567122 |
|---|---|---|---|
| Plaintiff / Petitioner: DUANE "PETE" WYATT | | Defendant / Respondent: ST. LOUIS COUNTY, MISSOURI | |
| Received by: Elliott Process LLC | | For: Cadenzia Consulting | |
| To be served upon: Sharon Gardner | | | |

I, Adam Elliott, being duly sworn, depose and say: I am over the age of 18 years and not a party to this action, and that within the boundaries of the state where service was effected, I was authorized by law to make service of the documents and informed said person of the contents herein

**Recipient Name / Address:** Sharon Gardner, 12453 Quatre Drive, Florissant, MO 63033

**Manner of Service:** Personal/Individual, Aug 9, 2026, 12:20 pm CDT

**Documents:** Summons and Complaint. et al.,

**Additional Comments:**
1) Successful Attempt: Aug 9, 2026, 12:20 pm CDT at 12453 Quatre Drive, Florissant, MO 63033 received by Sharon Gardner. Age: 48-58 ; Ethnicity: African American; Gender: Female; Weight: 165; Height: 5'6"; Hair: Black;
Successfully served the defendant at the above specified address.

Adam Elliott (signature) 08/09/2026

Adam Elliott **Date**

Elliott Process LLC
5636 Telegraph Road #510181
St. Louis, MO 63129
6362008059

*Subscribed and sworn to before me by the affiant who is personally known to me.*

(signature)

**Notary Public**

08.10.2026 JUN 04, 2028

**Date** **Commission Expires**

BILLY BRANDON
Notary Public - Notary Seal
STATE OF MISSOURI
County of Jefferson
My Commission Expires: Jun. 04, 2028
Commission #24123979

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY: NICHOLAS CHARLES LINDLEY, Attorney for Defendant
SERVICE EMAIL: ncl@lindleylegal.com, nlindley@stlouiscountymo.gov

Electronically Filed - ST LOUIS COUNTY - August 11, 2026 - 09:53 AM

Filed
08/11/2026
JOAN M. GILMER
CIRCUIT CLERK
ST. LOUIS COUNTY, MO

**IN THE CIRCUIT OURT OF ST. LOUIS COUNTY
STATE OF MISSOURI**

| | |
|---|---|
| **DUANE WYATT,** | |
| **Plaintiff(s),** | |
| **v.** | **Cause No. 26SL-CC05095** |
| | **Division 3** |
| **ST. LOUIS COUNTY, et al.** | |
| **Defendant(s)** | |

**ORDER REGARDING TEMPORARY RESTRAINING ORDER**

This cause came before the Court on August 10, 2026, on Plaintiff's Motion for Temporary Restraining Order. Plaintiff provided notice to all Defendants as set forth in the Certificate of Service and Notice accompanying the Motion. The Court has considered the Verified Petition, Plaintiff's Motion for Temporary Restraining Order, the Supplement thereto and Notice of Supplemental Facts, the Motion for Preliminary Injunction and Brief in Support, the Affidavit and Supplemental Affidavit of Duane "Pete" Wyatt, the administrative record submitted with the Petition, Defendants Opposition to Plaintiff's Motion for Temporary Restraining Order, and arguments of counsel.

Being fully advised, the Court finds, for purposes of this Order only, pursuant to Rule 92.02 and § 536.120, RSMo.:

Based upon case law, rules, statutes, arguments of counsel and briefings, and for some of the arguments set forth in Defendant's Opposition, the Court finds that Plaintiff failed to show that plaintiff will be immediately and irreparably harmed and is likely to prevail on the merits, as required for the Court to issue a stay of the Commission's administrative findings and decision. See, *State ex rel. Director of Revenue, State of Mo, v. Gabbert*, 925 S.W.2d 838, 839-40 (Mo. banc 1996).

It is therefore ordered that Plaintiff's Motion for Temporary Restraining Order is DENIED.

Matter set for Case Management Conference on August 31, 2026 at 8:45 a.m.

**SO ORDERED:**

Judge Division 3

August 11, 2026

Cc: Notification of all attorneys of record via the Court's e-filing system

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**TWENTY-FIRST JUDICIAL CIRCUIT**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **DUANE "PETE" WYATT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | **Cause No. 26SL-CC05095** |
| **v.** | ) | |
| | ) | |
| **ST. LOUIS COUNTY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**ENTRY OF APPEARANCE**

COMES NOW Associate County Counselor Nicholas Lindley, and hereby enters his appearance as counsel of record for Defendant St. Louis County. Nicholas Lindley respectfully requests that all future correspondence and pleadings in this matter be forwarded to his attention at the address below.

Respectfully Submitted,

**DANA T. REDWING**
**COUNTY COUNSELOR**

By: **___/s/ Nicholas C. Lindley**
Nicholas Lindley, #63038
Associate County Counselor
Office of the County Counselor
41 S. Central Avenue
Clayton, Missouri 63105
(314) 934-0476
NLindley@stlouiscountymo.gov

*Attorneys for Defendant St. Louis County*

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was transmitted this 10th day of August, 2026 through the court's electronic filing system.

***/s/ Nicholas C. Lindley #63038***
Nicholas Lindley

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY: KATHERINE CLENDENIN LEMLEY, Attorney for Plaintiff
SERVICE EMAIL: kcfrierdich@cadenziaconsulting.com, katherine.c.lemley@centene.com

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**TWENTY-FIRST JUDICIAL CIRCUIT**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| **DUANE "PETE" WYATT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | **Cause No. 26SL-CC05095** |
| **v.** | ) | |
| | ) | |
| **ST. LOUIS COUNTY, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

COMES NOW Defendant St. Louis County, by and through undersigned counsel, and for its brief in opposition to Plaintiff's Motion for Temporary Restraining Order ("Mot. for TRO" and Supplemental Motion for Temporary Restraining Order ("Supp. Mot. for TRO") states as follows:

## INTRODUCTION

Plaintiff filed his Petition for judicial review of an administrative decision, declaratory judgment, deprivation of civil rights under 42 U.S.C. § 1983, violation of Missouri Sunshine Law, and preliminary and permanent injunctive relief ("Petition") on July 17, 2026. *See* Petition, *passim.*

On August 3, 2026, Plaintiff filed a Motion for TRO asking the Court "for a Temporary Restraining Order preserving the status quo pending hearing and determination of his Motion for Preliminary Injunction." Mot. for TRO, p. 1. Plaintiff alleges that the County "has identified a candidate to replace Mr. Wyatt in the Chief Operating Officer position" and he seeks to prevent

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

the County from filling the position until after this Court hears his Motion for Preliminary Injunction. Mot. for TRO, p. 2. On August 6, 2026, Plaintiff filed a Notice of Hearing on his Motion for Temporary Restraining Order, setting his hearing for Monday, August 10, 2026, at 9:30 a.m., and on Friday, August 7, 2026, Plaintiff filed a Supplemental Motion to his Motion for Temporary Restraining Order. In his Supplemental Motion, Plaintiff is alleging that the County has not only identified a candidate to replace Mr. Wyatt but that individual is expected to begin working for the County on August 17, 2026. Supp. Mot. for TRO, p. 2.

Plaintiff is seeking a TRO to prevent this new individual from beginning his or her employment with the County until after Plaintiff's Motion for Preliminary Injunction is heard, argued, and decided; Order Defendants to preserve all documents related to the filling of the Chief Operating Officer position; and grant Plaintiff's Motion for Expedited Discovery. Supp. Mot. for TRO, pp. 4-5.

Plaintiff seeks to restrain the County from filling the Chief Operating Officer (COO) position, a senior leadership position in the County's Department of Public Health (hereinafter "DPH"), asserting he was "unlawfully separated" on February 6, 2026, and seeks to preserve that "status quo" by restraining Defendants from filling the COO position pending a preliminary injunction hearing. Supp. Mot. for TRO, p*assim*.

## FACTUAL BACKGROUND

Plaintiff's resignation was adjudicated by the Civil Service Commission ("Commission"), which on June 18, 2026, issued Findings of Fact, Conclusions of Law and Decision concluding that Civil Service Rule XIX applied and that the Appointing Authority properly accepted Plaintiff's oral resignation "not in good standing," relying on Rule XIX § A.1–2. Plaintiff's Petition, Exhibit 3, Civil Service Commission's Findings of Fact, Conclusions of Law, and

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

Decision ("Exhibit 3"), pp. 7-9. The Commission found Plaintiff's resignation "unequivocal," that he did not rescind before acceptance, and that Rule XXI § D procedures were waived by resignation. *Id.* The Commission concluded that the "County's evidence credibly established that … Mr. Wyatt made an unequivocal verbal statement of his intent to resign." *Id.*, p. 7. The Commission further found "that by failing to submit his resignation in writing and with 14 calendar days' notice, Mr. Wyatt resigned not in good standing." *Id.*, pp. 7-8. The Commission further held that "he did not disclaim or rescind his resignation prior to Dr. Cunningham's acceptance" and finally concluding that "Mr. Wyatt, by resigning, voluntarily waived his entitlement to due process" under Rule XXI § D. *Id.*, p. 8.

## STANDARD OF REVIEW

The standard for issuance of a temporary restraining order is set forth in Missouri Rule of Civil Procedure 92.02, which states that "[t]he court shall not grant a temporary restraining order unless the party seeking relief demonstrates that immediate and irreparable injury, loss, or damage will result in the absence of relief" and requires that the party seeking such relief file "a verified petition or affidavit reciting the specific facts that support the showing." Mo. R. Civ. P. 92.02(a)(1)-(2). *See also State ex rel. Dir. Of Revenue v. Gabbert*, 925 S.W.2d 838, 839 (Mo. banc 1996). When analyzing a motion for preliminary injunction, a court "should weigh the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest." *State ex rel. Director of Revenue, State of Mo. v. Gabbert*, 925 S.W.2d 835, 839 (Mo. banc 1996). The party moving for a preliminary injunction must show some probability of success on the merits and has the "obligation to justify the court's exercise of such an extraordinary remedy." *Id.*

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

An injunction is an action in equity. *Sigma-Aldrich Corp. v. Vikin*, 451 S.W.3d 767, 771 (Mo. App. E.D. 2014). "A party must have proved that it had no adequate remedy at law and that irreparable harm would have resulted if the injunction was not granted." *Id.*

## ARGUMENT

The crux of Plaintiff's argument is that this Court should issue a temporary restraining order, ordering the County to leave a position open despite the Commission's finding that Plaintiff's resignation was properly accepted. *See* Petition, *passim;* Mot. for TRO, passim; Supp. Mot. for TRO; and Exhibit 3, *passim*.

### I. Plaintiff's Motion for Temporary Restraining Order Should be Denied Because Plaintiff Has Not Demonstrated A Likelihood of Success on the Merits of His Case that would Justify the Court's Exercise of Such an Extraordinary Remedy.

"The purpose of [a temporary restraining order or preliminary injunction] is to preserve the status quo until the trial court adjudicates the merits of the claim for a permanent injunction." *State ex rel. Myers Mem'l Airport Comm., Inc. v. City of Carthage*, 951 S.W.2d 347, 350 (Mo. App. S.D. 1997). However, before the Court can issue a preliminary injunction, the petitioner "must make some showing of probability of success on the merits." *Gabbert*, 925 S.W.2d at 839.

The Commission's decision against Plaintiff defeats any clear showing of success on the merits. Exhibit 3, *passim*. The Commission applied Rule XIX § A.1–2 and found an "unequivocal" verbal resignation, no rescission before acceptance, and waiver of Rule XXI procedures. Exhibit 3, p. 7. The Commission concluded that Rule XIX "fully applies" and the Appointing Authority accepted an oral resignation "not in good standing," relying on § A.1–2. Exhibit 3, *passim*. Plaintiff seeks reinstatement and reversal-related relief despite the Commission's affirmance of a resignation not in good standing based on an "unequivocal" verbal statement. *Id.*

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

Plaintiff's Motion for TRO and Supplemental Motion for TRO underscore disputed facts, not entitlement on the merits. Plaintiff describes a "he said/he said" dispute over the 58-second call and claims the Commission misread Rule XIX and acted on unlawful procedure—issues to be resolved under § 536.140 on the full record, not at TRO. Mot. for TRO, *passim*; and Supp. Mot. for TRO, *passim*. Plaintiff characterizes the Commission's decision as misreading Rule XIX, unsupported by and contradictory to the record, and rendered upon unlawful procedure, citing portions of the Commission decision and the hearing transcript. *Id.* Plaintiff acknowledges review is under Mo. Const. art. V, § 18 and § 536.140 to determine authorization by law and whether supported by competent and substantial evidence upon the whole record.

Plaintiff's Supplemental Motion for TRO labels his separation "unlawful" without demonstrating a Rule-based violation and relies on equity's restorative power rather than entitlement. Supp. Mot. for TRO, *passim*. Nor does Plaintiff attach or quote the operative Rule provisions to attempt to show a rule-based violation. *Id.*

Missouri Rule of Civil Procedure 92.02 states that "[t]he court shall not grant a temporary restraining order unless the party seeking relief demonstrates that immediate and irreparable injury, loss, or damage will result in the absence of relief." Mo. R. Civ. P. 92.02(a)(1)-(2). Plaintiff has not alleged that *any* harm would result in the absence of a temporary restraining order, let alone irreparable harm. *See* Mot. for TRO, *passim* and Supp. Mot. for TRO, *passim*. Instead, Plaintiff shows only that a temporary restraining order will prevent someone from being placed in his former position. To demonstrate irreparable harm, Plaintiffs "must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *Copeland LP v. Thurston*, ___ F. Supp. 3d ___, 2024 WL 1856250, *5 (E.D. Mo. Apr. 29, 2024). As such, his motion for a temporary restraining order should be denied. *See*

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

*State v. Ent. Ventures I, Inc.*, 44 S.W.3d 383, 387 (Mo. banc 2001) (stating that when a party has "no allegation demonstrating that immediate and irreparable harm would result absent such relief [of a temporary restraining order]," it is appropriate for the trial court to deny a motion for a temporary restraining order).

Plaintiff's asserted harms are largely compensable or merits-dependent. He seeks back pay with interest, restoration of benefits, seniority, retirement credit, and expungement remedies available upon merits success, which undermine irreparability. Mot for TRO, *passim*; Supp. Mot. for TRO, *passim*. Plaintiff's Count IV seeks expungement of the "not in good standing" finding and associated characterizations or a name-clearing hearing, confirming a merits-driven remedy is sought. The Commission's process affords hearings, potential reinstatement, and back pay with offsets, which are monetary and status remedies adequate to make an employee whole. However, the Commission determined Plaintiff warrants no such remedies. Exhibit 3, *passim*.

Generalized constitutional-injury citations do not substitute for the required showing where the underlying claim is disputed and already decided adversely at the administrative level. Plaintiff argues ongoing deprivation of protected interests is irreparable injury. Mot. for TRO, *passim*; Supp. Mot. for TRO, *passim*. That said, Plaintiff acknowledges the Commission's denial of his appeal and seeks to relitigate factual and procedural issues which he says were mishandled, but for which he already has legal remedy. *Id.*

**II. Plaintiff's Motion for Temporary Restraining Order Should be Denied Because Plaintiff Has Not Demonstrated that Irreparable Harm Outweighs Potential Harm to the County.**

In addition to showing a likelihood of success on the merits and that irreparable harm would result in the absence of the requested injunctive relief, Plaintiff must show that the alleged irreparable harm "decidedly outweigh[s] any potential harm to the other party or to the public

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

interest….” *Gabbert*, 925 S.W.2d at 840. As stated above, Plaintiff has not identified any harm that he will suffer absent a temporary restraining order, let alone any irreparable harm. Plaintiff has already been without this position since February 2026. Mot. for TRO, *passim*; Supp. Mot. for TRO, *passim*. Nor has Plaintiff considered the harm to the County or to the public interest and has completely omitted any allegation that the harm absent a temporary restraining order outweighs potential harm to the County or the public interest. *Id.*

Plaintiff's requested restraint is sweeping and operationally harmful. He would enjoin the County from hiring, approving compensation, and even onboarding, credentialing, issuance of a badge or systems access for a new COO, a senior leadership position in DPH, which would impair management of public health operations to the detriment of the health and safety of St. Louis County residents. *Id.*

Plaintiff minimizes the County's interests but concedes the position is "vacant, funded, and needed," underscoring the importance of staffing flexibility; his proposed "brief postponement" nonetheless disrupts a long-vacant leadership role. Mot. for TRO, *passim*; Supp. Mot. for TRO, passim. Plaintiff additionally asserts that holding the vacancy open "for a short period is simple" while "unwinding an appointment is not." *Id.* Plaintiff further asserts a "brief postponement of a start date" presents no cognizable injury and emphasizes that the position has been vacant since February 6, 2026. *Id.* However, Plaintiff's alleged harm is neither new nor uniquely tied to onboarding; it arises from the February 2026 separation, for which he seeks compensatory and equitable relief in due course. *Id.* Further, Plaintiff's assertions as to the period of time the vacancy existed underscores the County's need to fill the position without delay.

## III. Plaintiff's Motion for Temporary Restraining Order Should be Denied Because Plaintiff Has Not Demonstrated that Irreparable Harm Outweighs Potential Harm to the Public Interest.

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

Plaintiff frames the public interest as merit-system enforcement and due process. Plaintiff asserts the public interest favors enforcement of the merit system, governmental due process compliance, and preservation of the Court's ability to grant relief, and disfavors permitting the County to moot pending motions by its own acts. Mot. for TRO, *passim;* Supp. Mot. for TRO, *passim*. However, Plaintiff's assertions wholly ignore the risk to public safety from having a vacant leadership position within DPH. Further, Plaintiff's requested order would micromanage staffing, compensation approvals, and organizational design within the Community Health Centers before the Court completes its judicial review of the Commission's findings. Plaintiff's proposed temporary restraining order seeks to enjoin not only hiring but also compensation approvals and any reclassification or transfer of duties for the position and any substantially equivalent or provisional roles. Proposed Order, *passim*. These propositions would fundamentally undermine the smooth operation of DPH.

The public interest favors continuity of public health operations and adherence to the Civil Service framework while this Court conducts § 536.140 review on a full record. The Commission took official notice of Civil Service Rules XIX and XXII and applied Rule XIX. Exhibit 3. Plaintiff's Petition and his Motion for Temporary Restraining Order seek to reframe those rules on review, which should occur without interim disruption to DPH operations. The Rules' stated policy is to provide effective, economical, and merit-based County service, with fair procedures and equal treatment, and to maintain a uniform system of classification, pay, and discipline. Exhibit A, Civil Service Rules, *passim*.

**IV. Plaintiff seeks to prevent the County from filling the position of COO as he argues it a preservation of the status quo, however, the Commission's finding is the actual status quo.**

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

Plaintiff invokes the "last peaceable" status as his employment through February 6, 2026. Mot. for TRO, *passim*; Supp. Mot. TRO, *passim*. Plaintiff asserts the last actual, peaceable, uncontested status preceding of the controversy was his active merit employment as COO through February 6, 2026. *Id.* But the Commission's June 18, 2026, decision affirming acceptance of his resignation defines the current operative status pending review. Exhibit 3. Plaintiff acknowledges the Commission's June 18, 2026, decision affirming the Appointing Authority's acceptance of resignation and denying his appeal. Exhibit 3, *passim*. The Commission "affirmed the Appointing Authority's acceptance of Mr. Wyatt's alleged resignation effective February 6, 2026, and denied his appeal," which is the operative status quo following the administrative process. *Id.*

Plaintiff's proposed temporary restraining order would alter, not preserve, conditions by freezing hiring, compensation, and restructuring decisions, and halting multi-departmental onboarding steps for the COO position. Mot. for TRO, *passim*; Supp. Mot. for TRO, *passim*. Plaintiff seeks prohibitions on appointing and hiring, requesting or approving compensation, and on abolishing, reclassifying, defunding, or transferring duties of the position or equivalents. *Id.* Plaintiff submits a proposed TRO that "makes explicit that the restraint extends to permitting or implementing the commencement of any person's employment" and to "any acting, provisional, temporary, or substantially equivalent placement." *Id.*

**V. Plaintiff's Motion for Temporary Restraining Order Should be Denied Because Plaintiff's Requested Relief is Inappropriate.**

As stated above, the purpose of preliminary injunctive relief is to preserve the status quo until the Court can adjudicate the merits of the case. *Myers Mem'l Airport Comm.*, 951 S.W. 2d at 350. As stated above, the status quo is actually the Commission's finding that Plaintiff is not entitled to any relief. Exhibit 3. The relief Plaintiff is requesting in his "temporary restraining

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

order" is the ultimate relief Plaintiff seeks in the case; preventing the County from hiring someone else to fill the position of COO. *See* Petition, *passim*; Mot. for TRO, *passim;* Supp. Mot. for TRO, *passim.* Therefore, the requested relief in Plaintiff's Motion for a TRO is not appropriate for such a motion and should be denied.

### VI. This Court should deny Plaintiff's request for a waiver or nominal amount of bond.

Plaintiff also requests waiver or nominal bond, but any restraint on hiring, compensation, or organizational authority in a critical public health role and risks concrete operational and financial harms, therefore a meaningful bond is required if this Court grants Plaintiff's requested relief. Plaintiff asks the Court to waive bond or set a nominal bond because he claims the restraint compels no expenditure and he claims minimal risk of compensable loss to the County. *Id.* However, since Plaintiff's proposed order would preclude appointment, compensation approvals, and reclassification or transfer of duties for the COO or any equivalent roles Plaintiff's Motion for TRO and Supplemental Motion for TRO request expansive restraints on commencement and related processes but does not specify a bond amount to secure potential damages arising from wrongful restraint. The Rules contemplate monetary administration and offsets—for example, offsets against back pay for interim earnings or benefits, confirming financial exposure tied to personnel status.

WHEREFORE, for the above and foregoing reasons, Defendant St. Louis County respectfully requests this Honorable Court deny Plaintiff's Motion for Temporary Restraining Order and Supplemental Motion for Temporary Restraining Order and move for such other and further relief as the Court finds just and proper under the circumstances.

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

Respectfully Submitted,

**DANA T. REDWING**
**COUNTY COUNSELOR**

By: /s/ _Nicholas C. Lindley
Nicholas Charles Lindley #63038
Associate County Counselor
Office of the County Counselor
41 S. Central Avenue
Clayton, Missouri 63105
(314) 934-0476
nlindley@stlouiscountymo.gov
*Attorneys for Defendant St. Louis County*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was transmitted this 10th day of August, 2026, through the court's electronic filing system.

***/s/ _Nicholas C. Lindley #63038***

Based on the Supreme Court Rules governing eFiling, an eService email has been issued to the following parties:

SERVICE PARTY: KATHERINE CLENDENIN LEMLEY, Attorney for Plaintiff
SERVICE EMAIL: kcfrierdich@cadenziaconsulting.com, katherine.c.lemley@centene.com

Electronically Filed - ST LOUIS COUNTY - August 10, 2026 - 08:41 AM

In the
# CIRCUIT COURT
of St. Louis County, Missouri

For File Stamp Only

FILED
AUG 10 2026
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

Plaintiff(s): Wyatt

vs.

Defendant(s): St. Louis Co.

Date: 8/10/26

Case Number: 26SL-CC05095

Division: 3

Order

Plaintiff calls this Motion For Temporary Restraining Order for hearing.
Plaintiff appears and by counsel. St. Louis County appears by counsel.
Plaintiff's motion heard and submitted

SO ORDERED

Judge [signature]

ENTERED: 08/10/2026
(Date)

Attorney: Katherine Fiedler [signature] Bar No. 51375
Address: Atty for Plaintiff Wyatt
Phone No. Fax No.

Attorney: [signature] 41304 Atty for St. Louis Co.
Bar No.
Address: [signature] #63039 For Δ
Phone No. Fax No.

CCOPR47-WS Rev. 02/14

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>HEATHER RENE CUNNINGHAM | **Case Number: 26SL-CC05095** | |
| Plaintiff/Petitioner:<br>DUANE "PETE" WYATT<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>KATHERINE CLENDENIN LEMLEY<br>ONE METROPOLITAN SQ<br>211 N BROADWAY STE 3600<br>ST LOUIS, MO 63102 | |
| Defendant/Respondent:<br>ST. LOUIS COUNTY, MISSOURI | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Other Administrative Review | | (Date File Stamp for Return) |

**The State of Missouri to:** **SHARON GARDNER**
**Alias:**
**12453 QUATRE DR.**
**FLORISSANT, MO 63033**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

07-AUG-2026
Date

/S/ MALIK WRIGHT-HAMILTON
Clerk

**Further Information:**
MWH

 Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________.

Served at ______________________________ (address)

in ______________________________ (County/City of St. Louis), MO, on ______________ (date)

at __________ (time).

______________________________ ______________________________
Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________ (date).

*(Seal)*

My commission expires: ______________ ______________________
Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the “neutral,” who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator’s decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) <u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) <u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**<u>(4) Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**<u>(5) Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**<u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>HEATHER RENE CUNNINGHAM | **Case Number: 26SL-CC05095** | |
| Plaintiff/Petitioner:<br>DUANE "PETE" WYATT<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>KATHERINE CLENDENIN LEMLEY<br>ONE METROPOLITAN SQ<br>211 N BROADWAY STE 3600<br>ST LOUIS, MO 63102 | |
| Defendant/Respondent:<br>ST. LOUIS COUNTY, MISSOURI | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Other Administrative Review | | (Date File Stamp for Return) |

**The State of Missouri to:** **DERRICK MELTON**
**Alias:**
**537 ROSEWOOD LN**
**SAINT LOUIS, MO 63122**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

07-AUG-2026
Date

/S/ MALIK WRIGHT-HAMILTON
Clerk

**Further Information:**
MWH


Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________________________________.

Served at ______________________________________________ (address)

in ______________________________ (County/City of St. Louis), MO, on ____________________ (date)

at ______________ (time).

______________________________ ______________________________

Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**

Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: ____________________ ______________________________

Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) <u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) <u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**<u>(4) Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**<u>(5) Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**<u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>HEATHER RENE CUNNINGHAM | **Case Number: 26SL-CC05095** | |
| Plaintiff/Petitioner:<br>DUANE "PETE" WYATT<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>KATHERINE CLENDENIN LEMLEY<br>ONE METROPOLITAN SQ<br>211 N BROADWAY STE 3600<br>ST LOUIS, MO 63102 | |
| Defendant/Respondent:<br>ST. LOUIS COUNTY, MISSOURI | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Other Administrative Review | | (Date File Stamp for Return) |

**The State of Missouri to:** **KANIKA CUNNINGHAM**
**Alias:**
**623 WALNUT WOODS ST**
**SAINT CHARLES, MO 63301**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

07-AUG-2026
Date

/S/ MALIK WRIGHT-HAMILTON
Clerk

**Further Information:**
MWH

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________.

Served at ______________________________ (address)

in ______________________________ (County/City of St. Louis), MO, on ______________ (date)

at __________ (time).

______________________________ ______________________________

Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________ (date).

*(Seal)*

My commission expires: ______________ ______________________

Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

# NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the “neutral,” who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator’s decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) <u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) <u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**<u>(4) Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**<u>(5) Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**<u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**

Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>HEATHER RENE CUNNINGHAM | **Case Number: 26SL-CC05095** | |
| Plaintiff/Petitioner:<br>DUANE "PETE" WYATT<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>KATHERINE CLENDENIN LEMLEY<br>ONE METROPOLITAN SQ<br>211 N BROADWAY STE 3600<br>ST LOUIS, MO 63102 | |
| Defendant/Respondent:<br>ST. LOUIS COUNTY, MISSOURI | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Other Administrative Review | | (Date File Stamp for Return) |

**The State of Missouri to:** **ST. LOUIS COUNTY CIVIL SERVICE COMMISSION**
**Alias:**
**41 S. CENTRAL AVE.**
**CLAYTON, MO 63105**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

| | |
|---|---|
| 07-AUG-2026 | /S/ MALIK WRIGHT-HAMILTON |
| Date | Clerk |

**Further Information:**
MWH


Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ________________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

____________________________________ (name) ________________________ (title).

☐ other: ________________________________________________________________.

Served at ____________________________________________________________ (address)

in __________________________ (County/City of St. Louis), MO, on ________________ (date)

at ____________ (time).

______________________________ ______________________________

Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**

Subscribed and sworn to before me on ________________________ (date).

*(Seal)*

My commission expires: ________________ ________________________

Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.


Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the “neutral,” who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator’s decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) <u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) <u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**<u>(4) Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**<u>(5) Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**<u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>HEATHER RENE CUNNINGHAM | **Case Number: 26SL-CC05095** | |
| Plaintiff/Petitioner:<br>DUANE "PETE" WYATT<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>KATHERINE CLENDENIN LEMLEY<br>ONE METROPOLITAN SQ<br>211 N BROADWAY STE 3600<br>ST LOUIS, MO 63102 | |
| Defendant/Respondent:<br>ST. LOUIS COUNTY, MISSOURI | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | (Date File Stamp for Return) |
| Nature of Suit:<br>CC Other Administrative Review | | |

**The State of Missouri to: ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH**
**Alias:**
**REGISTERED AGENT**
**41 S. CENTRAL AVE**
**CLAYTON, MO 63105**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

07-AUG-2026
Date

/S/ MALIK WRIGHT-HAMILTON
Clerk

**Further Information:**
MWH

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________________________.

Served at ______________________________________________ (address)

in ______________________________ (County/City of St. Louis), MO, on ____________________ (date)

at ______________ (time).

______________________________ ______________________________
Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: ____________________ ______________________________
Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**Selecting an Alternative Dispute Resolution Procedure and a Neutral**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>HEATHER RENE CUNNINGHAM | **Case Number: 26SL-CC05095** | |
| Plaintiff/Petitioner:<br>DUANE "PETE" WYATT<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>KATHERINE CLENDENIN LEMLEY<br>ONE METROPOLITAN SQ<br>211 N BROADWAY STE 3600<br>ST LOUIS, MO 63102 | |
| Defendant/Respondent:<br>ST. LOUIS COUNTY, MISSOURI | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Other Administrative Review | | (Date File Stamp for Return) |

**The State of Missouri to:** **ST. LOUIS COUNTYVMISSOUEI**
**Alias:**
**41 S. CRNTEAL A, R.**
**CLAYTONVMO 63124**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

07-AUG-2026
Date

/S/ MALIK WRIGHT-HAMILTON
Clerk

**Further Information:**
MWH

**Officer's or Server's Eeturn**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________.

Served at ______________________________ (address)

in ______________________________ (County/City of St. Louis), MO, on ____________________ (date)

at ______________ (time).

______________________________ Printed Name of Officer or Server

______________________________ Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: ____________________ Date ______________________________ Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**Selecting an Alternative Dispute Resolution Procedure and a Neutral**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

Electronically Filed - ST LOUIS COUNTY - August 07, 2026 - 12:52 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

**SECOND REQUEST FOR ISSUANCE OF ALIAS SUMMONSES**

COMES NOW Plaintiff/Petitioner hereby requests that the Circuit Clerk issue Alias Summonses for the following Defendants/Respondents, to be directed to Elliott Process (5636 Telegraph Rd., St. Louis, Missouri 63129 and (636) 200-8059)), the Special Process Server already appointed. The Alias Summonses issued to the entities below included no names or offices and thus we know will not be accepted by the Deputy Clerk. Please issue alias summonses directly to the server for personal service at the following address with the names and offices listed as shown below:

Defendant/Respondent St. Louis County, Missouri
Mr. Sam Page, County Executive, or Clerk of the County Commission
41 S. Central Ave.
Clayton, Missouri 63105

Defendant/Respondent St. Louis Civil Service Commission
County Counselor's Office or County Clerk's Office
41 S. Central Ave.
Clayton, Missouri 63105

Defendant/Respondent St. Louis Department of Health

Electronically Filed - ST LOUIS COUNTY - August 07, 2026 - 12:52 PM

Mr. Sam Page, County Executive, or Clerk of the County Commission
41 S. Central Ave.
Clayton, Missouri 63105

Dated: August 7, 2026

Respectfully submitted,

__/s/_*KatherineC. Frierdich*___________

Katherine C. Frierdich
MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis,Missouri 63124
(314)791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff/Petitioner*

Electronically Filed - ST LOUIS COUNTY - August 07, 2026 - 03:26 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

**PLAINTIFF/PETITIONER'S SUPPLEMENT TO MOTION FOR TEMPORARY RESTRAINING ORDER AND NOTICE OF SUPPLEMENTAL FACTS**

COMES NOW Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt"), by and through counsel, and respectfully supplements his Motion for Temporary Restraining Order (the "TRO Motion") with newly learned facts material to the relief requested, and states as follows:

**I. The Supplemental Facts**

1. The TRO Motion asks this Court to preserve the status quo by restraining Defendants from filling the position of Chief Operating Officer of the Community Health Centers pending hearing and determination of Mr. Wyatt's Motion for Preliminary Injunction. That is the merit position from which Mr. Wyatt was unlawfully separated on February 6, 2026. The TRO Motion was filed in collection with the Verified Petition, the Motion for Preliminary Injunction and Brief in Support, the Motion for Expedited Hearing, Motion for Expedited Discovery, and Mr. Wyatt's supporting Affidavit.

2. At the time of filing, the TRO Motion stated, upon information and belief, that the Department of Public Health had identified a candidate to replace Mr. Wyatt"[B]eing subject to an unconstitutional statute, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Rebman v. Parson*, 576 S.W.3d 605, 612 (Mo. banc 2019) (as modified June

Electronically Filed - ST LOUIS COUNTY - August 07, 2026 - 03:26 PM

25, 2019) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). *See* TRO Motion ¶¶ 5–7; Wyatt Aff. ¶ 4. Complete copies of all of the initial round of TRO papers were delivered to the St. Louis County Counselor's Office on August 3, 2026, by electronic mail.

3. This Court has set the TRO Motion for hearing on August 10, 2026.

4. On August 6, 2026, Mr. Wyatt learned that the contingency described in the TRO Motion is no longer a contingency. The County has hired a replacement Chief Operating Officer. The replacement's first day of employment is scheduled for **Monday, August 17, 2026**, seven days after the hearing on this Motion. The facts are set forth in the Supplemental Affidavit of Duane "Pete" Wyatt, filed with this Supplement and incorporated here (the "Supplemental Affidavit").

5. Neither Defendants nor anyone acting on their behalf disclosed the hiring or the start date to Mr. Wyatt or his counsel. *See* Suppl. Aff. ¶ 7.

**II. Why the Supplemental Facts Matter**

6. <u>The threatened harm is now certain, imminent, and datable</u>. The TRO Motion described an appointment that could occur "on any day, upon a single approval, on timing entirely within the County's control." *See* TRO Motion ¶ 10. That day now has a date: August 17, 2026. Whatever standard of imminence applies, harm scheduled for a date certain one week after the hearing satisfies it. The ongoing deprivation of Mr. Wyatt's constitutionally protected interests is itself irreparable injury. *Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Rebman v. Parson*, 576 S.W.3d 605, 612 (Mo. banc 2019). Installing a replacement would add the further harm the TRO Motion warned of: substantial impairment of the interim reinstatement now pending before this Court. *See* TRO Motion ¶¶ 6, 10.

Electronically Filed - ST LOUIS COUNTY - August 07, 2026 - 03:26 PM

7. The hiring does not moot the Motion. It confirms the need for the Order. The replacement's employment has not begun. The TRO Motion's prayer already asks the Court to restrain "extending or finalizing any offer of employment" and "implementing any approval of compensation." *See* TRO Motion, Prayer. An order restraining a start date still a week away is classically prohibitory. It requires Defendants to do nothing but refrain. Nor could Defendants defeat this Motion by completing the act it seeks to restrain. A defendant who completes the acts sought to be enjoined, with notice of the pending proceeding, does not place itself beyond the court's reach; the court of equity may restore the status quo by mandatory injunction. *Porter v. Warner Holding Co.*, 328 U.S. 395, 400-401 (1946); *see Texas & New Orleans R.R. Co. v. Northside Belt Ry. Co.*, 276 U.S. 475, 479 (1928). Missouri equity is in accord. *State on inf. of McKittrick v. American Ins. Co.*, 351 Mo. 392, 173 S.W.2d 51, [pin cite] (Mo. banc 1943) *State on inf. of McKittrick v. American Ins. Co.*, 351 Mo. 392, 173 S.W.2d 51, 52 (Mo. banc 1943); *accord Pomirko v. Sayad*, 693 S.W.2d 323, 324 (Mo. App. E.D. 1985); *cf. Barnes v. Bosley*, 828 F.2d 1253, 1257–58 (8th Cir. 1987) (public employer's reorganization during litigation could not defeat court-ordered reinstatement).

8. Section 536.120 reinforces the point. Pending disposition of the petition for review, this Court may "issue all necessary and appropriate process" to stay enforcement of the Commission's order and "temporarily to grant or extend … relief denied or withheld." § 536.120, R.S.Mo. That authority exists so that judicial review is not displaced by accomplished facts. It would mean little if a party to a pending review proceeding could extinguish the court's power to grant effective interim relief simply by accelerating the very act at issue.

9. The equities and the public interest are sharpened, not changed. The position has stood vacant since February 6, 2026, without any evident operational emergency. The only deadline in

Electronically Filed - ST LOUIS COUNTY - August 07, 2026 - 03:26 PM

this case is August 17, and Defendants created it after receiving complete copies of these papers. No candidate holds an entitlement to a public appointment before assuming it. A brief postponement of a start date pending this Court's ruling works no cognizable injury, particularly where the hiring was made and scheduled with actual notice of this litigation. On the other side of the scale stands the potential loss of effective interim relief for a merit employee separated without process, along with a potential commitment of public funds to a higher salary for the same role while the lawfulness of the vacancy is before this Court. *See* TRO Motion ¶¶ 7, 11–12.

10. <u>The order should expressly reach the commencement of employment</u>. Mr. Wyatt submits with this a Proposed Temporary Restraining Order. It makes explicit that the restraint extends to permitting or implementing the commencement of any person's employment in the Chief Operating Officer position, including onboarding, orientation, payroll activation, credentialing, and issuance of badge or systems access, and to any acting, provisional, temporary, or substantially equivalent placement. The revision forecloses any argument that "appointing" or "hiring" describes only acts already completed. It narrows nothing and adds no new category of relief. It makes explicit what the TRO Motion's prayer necessarily includes.

WHEREFORE, Plaintiff/Petitioner Duane "Pete" Wyatt respectfully requests that this Court:

A. Consider this Supplement and the Supplemental Affidavit of Duane "Pete" Wyatt in ruling on the Motion for Temporary Restraining Order at the hearing on August 10, 2026;

B. Enter the Proposed Temporary Restraining Order submitted herewith, effective immediately upon entry, expressly restraining, among other acts, the commencement of any person's employment in the Chief Operating Officer position on or after August 10, 2026, pending hearing and determination of the Motion for Preliminary Injunction;

Electronically Filed - ST LOUIS COUNTY - August 07, 2026 - 03:26 PM

C. Set the Motion for Preliminary Injunction for hearing at the earliest available date;

D. Order Defendants to preserve all documents, electronically stored information, and communications relating to the identification, recruitment, selection, offer, hiring, compensation, or onboarding of any candidate or hire for the Chief Operating Officer position, including the executed offer and all approvals relating to it;

E. Grant Mr. Wyatt's Motion for Expedited Discovery; and

F. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Katherine C. Frierdich*
Katherine C. Frierdich, MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff/Petitioner*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 7th day of August, 2026, a true and accurate copy of the foregoing Supplement to Motion for Temporary Restraining Order and Notice of Supplemental Facts, together with the Supplemental Affidavit of Duane "Pete" Wyatt and the Proposed Temporary Restraining Order, was filed through the Missouri eFiling System and served upon Defendants/Respondents by the eFiling System upon counsel of record / in the manner provided by Missouri Supreme Court Rule 54. Service of process is still pending as of the time of this writing.

/s/ *Katherine C. Frierdich*
Katherine C. Frierdich

Electronically Filed - ST LOUIS COUNTY - August 07, 2026 - 03:26 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI, et al., | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

**SUPPLEMENTAL AFFIDAVIT OF DUANE "PETE" WYATT IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

Duane "Pete" Wyatt, being first duly sworn upon his oath, states as follows:

1. I am the Plaintiff/Petitioner in this action. I am over eighteen years of age and competent to make this Affidavit. The facts stated here are true and are based on my personal knowledge, except where I say a fact is stated on information and belief. As to those facts, I identify the source and basis of my information, and I believe them to be true.

2. This Affidavit supplements my Affidavit executed on August 3, 2026 and filed in support of my Motion for Temporary Restraining Order (the "Original Affidavit"). I have reviewed the Original Affidavit. I reaffirm under oath each statement in it.

3. In the Original Affidavit, I stated on information and belief that the Department of Public Health had identified a candidate to fill the position of Chief Operating Officer of the Community Health Centers, and that the appointment awaited only approval of a salary greater than the salary the County paid me. *See* Original Aff. ¶ 4. That is the merit position I held from August 19, 2024 until February 6, 2026.

4. On the evening of August 5, 2026, I learned from an executive of the Department of Public Health that the County has now hired an individual (hereinafter "Replacement"), to fill the Chief Operating Officer position that once belonged to me. Replacement currently resides in the State of Oregon and, upon information and belief, may receive relocation assistance to the

Electronically Filed - ST LOUIS COUNTY - August 07, 2026 - 03:26 PM

State of Missouri to fill the role. I also learned that this person's first date of employment with the County is scheduled for Monday, August 17, 2026. That is seven days after the August 10, 2026 hearing on my Motion for Temporary Restraining Order.

5. I believe the information in paragraphs 4 to be accurate because the source is a high-level employee of the Department of Public Health with direct knowledge of the Department's hiring activity for the Community Health Centers..

6. What I described in the Original Affidavit as a threatened appointment is no longer a threat or a prediction. The County has made the hire. It has set a date certain. Unless restrained, the County will place a replacement into my position one week after this Court hears my Motion, and before my Motion for Preliminary Injunction seeking my interim reinstatement to that position can be heard.

7. No one from the County has ever contacted me about returning to the position. I am aware of no communication from the County to my counsel disclosing the hiring or the August 17, 2026 start date.

8. If the replacement begins work before my Motion for Preliminary Injunction is heard, I believe the interim reinstatement I seek will be substantially impaired, and it may become impracticable. I reaffirm paragraph 7 of the Original Affidavit. I remain without salary, health insurance, retirement contributions and service credit, leave accrual, and seniority. Those losses continue and compound each day, while the County prepares to potentially hire a replacement.

Electronically Filed - ST LOUIS COUNTY - August 07, 2026 - 03:26 PM

STATE OF Nevada )
) ss.
COUNTY OF Clark )

FURTHER AFFIANT SAYETH NOT.

Duane "Pete" Wyatt

Duane "Pete" Wyatt

Subscribed and sworn to before me this 7th day of August, 2026.

THE GREAT SEAL OF THE STATE OF NEVADA
ALL FOR OUR COUNTRY

Skye Harris
NOTARY PUBLIC
STATE OF NEVADA
Appt. No. 25-7759-01
Expires March 31, 2029

Notary Public

My commission expires: 03/31/2029

Notarized remotely using audio-video communication technology via Proof.

Electronically Filed - ST LOUIS COUNTY - August 07, 2026 - 03:26 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

**CERTIFICATE OF SERVICE**

COMES NOW Plaintiff/Petitioner Duane "Pete" Wyatt, by and through his counsel, and hereby certifies that, in order to ensure actual knowledge of the TRO Motion papers and hearing, **complete copies of the Verified Petition and all TRO-related pleadings**, **sans exhibits**, were delivered to each Defendant/Respondent and/or their respective counsel by electronic mail addressed to the following listed individuals. All exhibits and other case papers are available to view on Missouri's case.net.

1. County Counselor Dana Redwing: dredwing@stlouiscountymo.gov
2. Civil Service Commission Counsel Noah Goldkamp: ngoldkamp@stlouiscountymo.gov
3. Dr. Kanika Cunningham: stlouiscountymo.gov
4. Derrick Melton: dmelton@stlouiscountymo.gov
5. Sharon Gardner: sgardner@stlouiscountymo.gov

/s/ *Katherine C. Frierdich*
Katherine C. Frierdich

Electronically Filed - ST LOUIS COUNTY - August 06, 2026 - 10:05 AM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

**NOTICE OF HEARING**

COMES NOW Plaintiff/Petitioner and hereby notifies all Defendants/Respondents that Plaintiff's Motion for Temporary Restraining Order will be heard on August 10, 2026 from 9:30 a.m. to 11:30 a.m. before Division 3 of the St. Louis County Circuit Court.

Respectfully submitted,

__/s/ _*Katherine C. Frierdich*___________

Katherine C. Frierdich
MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff/Petitioner*

Electronically Filed - ST LOUIS COUNTY - August 06, 2026 - 10:05 AM

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 6th day of August, 2026, a true and accurate copy of the foregoing Motion for Preliminary Injunction was filed through the Missouri eFiling System, which will provide notice to all counsel of record, and/or was served together with the summons and Verified Petition upon Defendants/Respondents in the manner provided by Missouri Supreme Court Rule 54.

/s/ *Katherine C. Frierdich*
Katherine C. Frierdich

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants. . | ) | |

**FIRST AMENDED PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

COMES NOW Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt"), by and through counsel, and, pursuant to Missouri Supreme Court Rule 92.02, Chapter 526, R.S.Mo., § 536.120, R.S.Mo., and Count IX of his verified Petition, respectfully moves this Court for a preliminary injunction restoring Mr. Wyatt to his merit position, with pay and benefits, pending final judgment, and enjoining Defendants/Respondents (collectively, "Defendants" or the "County") from continuing to enforce or rely upon his purported "resignation not in good standing." The Correction to this Motion is limited to adding counsel's signature and correcting paragraph numbering, and in no way prejudices Defendants, as they have not received service of process yet. In support of this Motion, Mr. Wyatt states as follows:

1. Mr. Wyatt was a merit employee of St. Louis County who served as Chief Operating Officer of the Department of Public Health's Community Health Centers, the County's Federally Qualified Health Center Look-Alike, from August 19, 2024 until February 6, 2026. *See* Pl. Ex. 1 (Hearing Tr. 31:10–13; 122:12–15; 123:11–13).[1]

[1] The exhibits listed herein correspond to the exhibits appended to the accompanying Memorandum in support of this motion.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

2. As a merit employee, Mr. Wyatt held a constitutionally protected property interest in his continued employment. *See* St. Louis County Charter art. VII, §§ 7.010, 7.030(3); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–41 (1985).

3. As of February 5, 2026, Mr. Wyatt's supervisor was "absolutely" satisfied with his performance, and no discipline, investigation, or termination was pending or contemplated against him. *See* Hearing Tr. 32:1–3; 32:21–33:4; 86:16–21.

4. On February 6, 2026, the County separated Mr. Wyatt from his employment on the basis of a single supervisor's disputed assertion that, during a 58-second telephone call on February 5, 2026, Mr. Wyatt orally stated that he quit. *See* Hearing Tr. 34:9–17; 35:13–36:13; 129:1–10; Pl. Ex. 2.

5. No written resignation exists. *See* Hearing Tr. 50:14–18; 148:4–9.

6. No other witness ever heard Mr. Wyatt say that he quit. See Hearing Tr. 52:8–10; 63:8–11; 68:5–11; 110:15–17.

7. No one asked Mr. Wyatt to confirm or reduce any resignation to writing. *See* Hearing Tr. 44:14–16; 98:5–19.

8. Mr. Wyatt continued performing County work on February 5 and 6, 2026, including representing the County at an outside meeting with Centene on the morning of February 6th. *See* Hearing Tr. 64:25–65:17; 129:11–132:25; 140:21–141:8. He did not abandon his position for a minute, let alone the three days required for a resignation in lieu of a resignation in writing, as per Rule XIX. And no one from the County contacted Mr. Wyatt before "accepting" the alleged resignation. *See* Hearing Tr. 89:10–23; 90:13–18; 95:22–24; 104:18–105:1.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

9. Mr. Wyatt immediately denied resigning, in person and in writing ("I DID NOT 'QUIT'! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING"), and repeatedly requested reinstatement. *See* Hearing Tr. 82:13–23; 144:5–12; 145:6–147:25; Pl. Ex. 3, 4, and 5.

10. The County treated the matter as a termination in all but name: the Appointing Authority, Dr. Cunningham, testified she never spoke with Mr. Wyatt because "I would never talk directly to the person that's being terminated." *See* Hearing Tr. 98:5–10). And she directed that security be called to escort Mr. Wyatt from the building. *See* Hearing Tr. 91:11–25; 102:5–11; 132:16–20.

11. Yet the County provided Mr. Wyatt none of the procedural protections mandated for merit-employee terminations by the Charter, the Civil Service Rules, and the Due Process Clause: no notice, no statement of cause, no explanation of the evidence, and no pre-deprivation opportunity to respond. *See* Hearing Tr. 104:4–9; 149:3–18.

12. On June 18, 2026, the Civil Service Commission affirmed the Appointing Authority's acceptance of the alleged resignation "not in good standing" and denied Mr. Wyatt's appeal. As set forth in the Verified Petition and the brief accompanying this Motion, the Commission's decision (a) misreads Civil Service Rule XIX; (b) rests on findings unsupported by, and in places contradicted by, the record; (c) adopts the County's proposed findings and conclusions nearly verbatim — including counsel's citation errors and quoted statements no witness ever uttered; (d) was rendered upon unlawful procedure (including consideration of an unsigned, undated witness statement produced nearly a month after the hearing, and joinder in the decision by a commissioner who did not attend the hearing); and (e) affirms a separation

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

effected without any due process. *See* Pl. Ex. 68 (Decision ¶¶ 9(g)(i)), 18, 20–25, 29, 31; Hearing Tr. 5:15–16; 16:1–7; 165:8–168:5; Pl. Ex. 11.

13. Since February 6, 2026, Mr. Wyatt has been without salary, health insurance, retirement contributions and service credit, leave accrual, and seniority, and he suffers continuing injury to his constitutional rights and professional reputation each day the County's official "not in good standing" designation stands. *See* Hearing Tr. 164:4–8, Verified Petition ¶ 9.

14. In determining whether to issue a preliminary injunction, Missouri courts weigh "the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest." *State ex rel. Dir. of Revenue v. Gabbert*, 925 S.W.2d 838, 839 (Mo. banc 1996) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). Each factor favors relief here.

15. ***Probability of success***. Mr. Wyatt is likely to prevail because: (a) Rule XIX authorizes resignation only by a writing or by presumption after three days' unexcused absence, and the Commission's contrary "true intent" construction unlawfully enlarges agency authority, *State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n*, 344 S.W.3d 178, 186 (Mo. banc 2011); (b) even fully credited, a frustrated utterance during a 58-second call, immediately contradicted by the speaker's conduct and denials, is not a voluntary, deliberate, and unequivocal resignation as a matter of law, See Angarita v. St. Louis County, 981 F.2d 1537, 1544 (8th Cir. 1992); (c) the Commission's decision is unsupported by competent and substantial evidence upon the whole record and was made upon unlawful procedure and without a fair trial, § 536.140.2, R.S.Mo.; (d) the County deprived Mr. Wyatt of protected property and liberty interests without any pre-deprivation process or name-clearing opportunity, Loudermill, 470 U.S. at 542–46, and the

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Commission's holding that Mr. Wyatt "by resigning, voluntarily waived" that process (Decision ¶ 29) assumes the very fact in dispute — a waiver of constitutional protections must be knowing and voluntary and cannot be supplied by the contested resignation itself, Johnson v. Zerbst, 304 U.S. 458, 464 (1938); and (e) the Commission adopted the County's proposed findings and conclusions nearly verbatim, errors included, negating the "independent reflection" Missouri law requires of a tribunal that adopts a party's proposals. Skillicorn v. State, 22 S.W.3d 678, 690 (Mo. banc 2000); King v. King, 548 S.W.3d 440, 442 n.1 (Mo. App. E.D. 2018); Tribus, LLC v. Greater Metro, Inc., 589 S.W.3d 679, 699 (Mo. App. E.D. 2019).

16. ***Irreparable harm.*** The ongoing deprivation of constitutionally protected interests is itself irreparable injury, Elrod v. Burns, 427 U.S. 347, 373 (1976), and Mr. Wyatt's loss of health coverage, retirement service credit, professional standing, and reputation – injuries compounding daily under an official stigmatizing "not in good standing" designation – cannot be measured or restored by money damages alone. Moreover, on information and belief, the County is presently in the process of filling Mr. Wyatt's position as Chief Operating Officer of the Community Health Centers. If the County permanently fills that position before the Injunction Motion can be heard, the core interim relief Mr. Wyatt seeks may be substantially impaired or rendered impracticable by the mere passage of time.

17. ***Balance of harms.*** Defendants suffer no cognizable injury from being required to comply with their own Charter, Rules, and the Constitution; they will receive the services of an executive whose performance their own witnesses praised; and if they ultimately prevail, they retain every lawful personnel power. Each additional day of exclusion, by contrast, compounds Mr. Wyatt's irreparable injuries.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

18. ***Public interest.*** The public interest favors enforcement of the merit system, constitutional due process, and open government, and disfavors permitting a governmental employer to evade mandatory termination procedures by labeling a disputed separation a "resignation." No prejudice to the public interest will result from interim relief. § 536.120, R.S.Mo.

19. The relief requested preserves and restores the status quo. The last actual, peaceable, uncontested status preceding this controversy was Mr. Wyatt's active merit employment as Chief Operating Officer through midday February 6, 2026. *See Pomirko v. Sayad*, 693 S.W.2d 323, 324 (Mo. App. E.D. 1985); *State ex rel. Eagleton v. Cameron*, 384 S.W.2d 627, 631 (Mo. 1964).

20. Independent of Rule 92.02 and § 536.120, R.S.Mo., authorizes this Court, pending disposition of the petition for review, to "issue all necessary and appropriate process" to stay enforcement of the Commission's order and "temporarily to grant or extend … relief denied or withheld" – here, the reinstatement, pay, benefits, etc., the Commission's order denies.

21. Mr. Wyatt requests that any bond required by Rule 92.02(d) be waived or, in the alternative, set in a nominal amount. The injunction sought compels public officials' compliance with existing legal obligations; Defendants face no financial harm or loss (they will receive Mr. Wyatt's services in exchange for his salary); and a substantial bond would effectively deny an unlawfully unpaid employee meaningful access to equitable relief.

22. This Motion is made upon notice to all Defendants. Mr. Wyatt requests that the Court set this Motion for hearing at the earliest available date, and he relies upon his Verified Petition, sworn to by Mr. Wyatt and effective as an affidavit, administrative record, the exhibits thereto,

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

and the Brief in Support filed contemporaneously herewith, all of which are incorporated by reference.

WHEREFORE, Plaintiff/Petitioner Duane "Pete" Wyatt respectfully requests that this Court, after notice and hearing, enter a preliminary injunction:

A. Ordering Defendants immediately to reinstate Mr. Wyatt to his position as Chief Operating Officer of the Community Health Centers, or to an equivalent level of seniority merit position, with full salary, health insurance, retirement participation and service credit, leave accrual, seniority, title, and all other rights and benefits of merit employment, pending final judgment;

B. Ordering Defendants to restore to Mr. Wyatt, as temporary relief pursuant to § 536.120, R.S.Mo., the pay and benefits withheld since February 6, 2026, together with interest, or, in the alternative, preserving the quantification and award of back pay and lost benefits for final judgment pursuant to § 536.140.5, R.S.Mo., 42 U.S.C. § 1983, and the Court's equitable powers;

C. Enjoining Defendants from treating, recording, or representing Mr. Wyatt internally, in his personnel and employment records, or to any third party, as having resigned, resigned "not in good standing," engaged in misconduct, or presented "mental health" concerns, pending final judgment;

D. Enjoining Defendants from permanently filling Mr. Wyatt's position or, in the alternative, requiring Defendants to maintain an equivalent executive merit position pending final judgment;

E. Ordering Defendants to preserve all documents, electronically stored information, emails, text messages on County-issued and personal cell phones, personnel files, telephone

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

records, investigative materials, meeting minutes, and communications relating to Mr. Wyatt's employment, separation, appeal, records requests, and this litigation;

F. Waiving any injunction bond or setting bond in a nominal amount pursuant to Rule 92.02(d);

G. Setting this Motion for hearing at the earliest available date; and

H. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Katherine C. Frierdich*
Katherine C. Frierdich
MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff/Petitioner*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 3rd day of August, 2026, a true and accurate copy of the foregoing Motion for Preliminary Injunction was filed through the Missouri eFiling System, which will provide notice to all counsel of record, and/or was served together with the summons and Verified Petition upon Defendants/Respondents in the manner provided by Missouri Supreme Court Rule 54.

/s/ *Katherine C. Frierdich*
Katherine C. Frierdich

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants. . | ) | |

**REQUEST FOR LEAVE TO AMEND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT**

COMES NOW Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt") and, through counsel, requests leave to amend his Motion for Preliminary Injunction and Memorandum in Support. The substantive corrections to the Motion and Memorandum are (a) adding missing counsel signatures. The substantive edits to the Memorandum in Support are: (a) correcting Exhibit numbering to avoid duplicative exhibit numbers; and (b) amending to add the sentence on page 6, citing newly added Pl. Ex. 13-15. None of these edits prejudice Defendants, as they have not yet received service of process.

Respectfully submitted,

*/s/ Katherine C. Frierdich*
Katherine C. Frierdich, MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff /Petitioner*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 3rd day of August, 2026, a true and accurate copy of the foregoing was filed through the Missouri eFiling System, which will provide notice to all counsel of record, and/or was served together with the summons and Verified Petition upon Defendants/Respondents in the manner provided by Missouri Supreme Court Rule 54.

/s/ Katherine C. Frierdich
Katherine C. Frierdich

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants. . | ) | |

**FIRST AMENDED PLAINTIFF'S MEMORANDUM**
**IN SUPPORT OF HIS MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt") submits this First Amended Memorandum in support of his First Amended Motion for Preliminary Injunction seeking interim reinstatement to his merit position, with pay, benefits, and seniority, pending final judgment.

## I. INTRODUCTION

For nearly eighteen months, Mr. Wyatt served, by his supervisor's own account, "absolutely" satisfactorily, as Chief Operating Officer of the St. Louis County Department of Public Health's Community Health Centers. *See* Hearing Tr. 32:1–3; 31:10–13 (appended as Pl. Ex. 1). On February 6, 2026, the County stripped Mr. Wyatt of that merit position, his income, and his health insurance on the strength of one man's disputed account of a 58-second telephone call. *See* Hearing Tr. 34:9–17; 129:1–10; Pl. Ex. 2. There is no written resignation. *See* Hearing Tr. 50:14–18; 148:4–9. No other witness heard the words the County attributes to Mr. Wyatt. *See* Hearing Tr. 52:8–10; 63:8–11; 68:5–11; 110:15–17. Mr. Wyatt denied resigning the moment the County first told him it had "accepted" his resignation, and he has never stopped denying it. *See* Hearing Tr. 82:13–23; 144:5–12; Pl. Ex. 3-7. The County's own Appointing Authority described Mr. Wyatt in sworn testimony as "the person that's being terminated." *See* Hearing Tr. 98:5–10.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

What the County calls a "resignation not in good standing" was, in substance, a summary termination of a merit employee without notice, without a statement of cause, without disclosure of any evidence, and without any opportunity to be heard – the precise deprivation forbidden by *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985). The Civil Service Commission's June 18, 2026 decision affirming that action compounds, rather than cures, the violation: it construes Civil Service Rule XIX to authorize a form of separation the Rule nowhere permits; rests on purported testimony "findings" that no witness ever uttered; relies on an unsigned, undated witness statement produced nearly a month after the evidentiary hearing closed; and was joined by a commissioner who never heard a word of the evidence and, upon information and belief, did not review the entire record. *See* Pl. Ex. 8 (Decision ¶¶ 9(g)(i), 10(k), 18, 20, 29, 31); Hearing Tr. 5:15–16; 165:8–168:5.

Every day that this unlawful separation remains in effect, Mr. Wyatt goes without salary, health coverage, retirement credit, and seniority. *See* Hearing Tr. 164:4–7. Also, an official, stigmatizing designation – one that by rule impairs his eligibility for future County employment (Pl. Ex. 8 (Decision ¶ 20 (quoting Rule XIX § A.2))) – continues to brand a public-health executive who was never accused of misconduct. Money damages entered years from now cannot restore constitutional rights, health insurance in the interim, or a professional reputation. Mr. Wyatt asks this Court to restore his active merit employment – the last peaceable, uncontested status – pending final judgment.

## II. STATEMENT OF FACTS

### A. Mr. Wyatt's Merit Employment

Mr. Wyatt began his County employment on August 19, 2024, and served as Chief Operating Officer of the Community Health Centers, the County's Federally Qualified Health

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Center Look-Alike, overseeing clinical operations, staff, grants, and federal HRSA regulatory compliance. *See* Hearing Tr. 31:10–25; 122:12–123:19. He was a merit employee with a protected property interest in continued employment. *See*, e.g., St. Louis County Charter art. VII, §§ 7.010, 7.030(3); Hearing Tr. 123:11–13. As of February 5, 2026, his supervisor, Community Health Centers CEO Derrick Melton, was "absolutely" satisfied with his performance; no discipline, investigation, or termination was pending or contemplated. *See* Hearing Tr. 32:1–3; 32:21–33:4; 86:16–21.

**B. The 58-Second Call and the County's "Resignation" Narrative**

On the morning of February 5, 2026, while Mr. Wyatt was in a scheduled 8:00 a.m. commitment, Mr. Melton placed repeated calls and texts to his phone. *See* Hearing Tr. 33:16–34:17; 125:1–25. At 9:32 a.m., Mr. Wyatt returned the call while driving to work; the call lasted fifty-eight seconds. *See* Hearing Tr. 34:9–17; 129:1–10; Pl. Ex. 2. The County's entire resignation theory rests on Mr. Melton's assertion that, in that call, Mr. Wyatt twice said that he quit. *See* Hearing Tr. 28:12–24; 35:13–36:13. Mr. Wyatt testified that he expressed momentary frustration about (a) Mr. Melton's incessant calls and texts when he knew that Mr. Wyatt was in a meeting, and (b) the staffing question behind them all because the organizational charts were easily available to Melton online, on the walls of Mr. Wyatt's office wall across the hall from his, as well as both of their assistants' walls ("Just use the F'ing number, what the F"). *See* Hearing Tr. 124:6-12. He never said "quit" or "resign;" and the call ended with Mr. Melton telling him, "Well, just go home. Just go home." *See* Hearing Tr. 126:3–14; 133:5–11; 134:2–7.

No one asked Mr. Wyatt to put any resignation in writing – not Mr. Melton (Hearing Tr. 44:14–16), and not Appointing Authority Dr. Kanika Cunningham, who explained: "<u>I would never talk directly to the person that's being terminated</u>." *See* Hearing Tr. 98:5–10 (emphasis

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

added). No one contacted Mr. Wyatt to confirm his intent before "accepting" the alleged resignation. *See* Hearing Tr. 89:10–23; 90:13–18; 95:22–24; 104:18–105:1. And no one investigated, before or after his immediate denials. *See* Hearing Tr. 51:7–24; 102:22–103:3.

**C. Mr. Wyatt's Conduct Refuted Any Resignation**

Twenty minutes after the call, Mr. Wyatt reported to work. *See* Hearing Tr. 44:24–45:3. He met calmly with Mr. Melton, by Mr. Melton's own account, without a single curse word. *See* Hearing Tr. 43:5–12. He then worked the entire day: alongside Mr. Melton's assistant, Eugenia Pike until 4:30 p.m., buying lunch for the front-office staff, meeting twice with the Chief Medical Officer, and consoling a grieving colleague at day's end. *See* Hearing Tr. 64:25–65:17; 110:25–111:9; 129:11–130:19. The next morning he texted Mr. Melton offering help on a federal Uniform Data System submission, represented the County at an outside Centene meeting, returned to the office, and began preparing to lead the standing 1:00 p.m. management meeting. *See* Hearing Tr. 47:21–48:19; 130:22–131:18; 140:21–143:17. None of the witnesses who worked beside him those two days – Ms. Pike, Dr. Miller, Deputy Director Broadus – heard any resignation or observed any agitation. *See* Hearing Tr. 63:8–11; 68:5–15; 110:15–111:24; 119:8–120:25.

**D. A Termination in Substance: Security, Seized Badge, No Process**

On February 6, 2026, at Dr. Cunningham's direction, her assistant Sharon Gardner informed Mr. Wyatt that his "resignation" had been "accepted;" Mr. Wyatt, surprised, said he did not resign. *See* Hearing Tr. 79:4–14; 82:13–23; 131:18–132:3. Ms. Gardner collected his badge, phone, and computer, and security supervised his exit. *See* Hearing Tr. 84:4–10; 91:11–25; 132:15–20. A written "acceptance" issued at 1:19 p.m. – after his denial. *See* Pl. Ex. 9. Mr. Wyatt renewed his denials in writing on February 9 ("I DID NOT 'QUIT'! I DID NOT SUBMIT A

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

RESIGNATION VERBALLY OR IN WRITING"), February 12, and February 16, 2026, requesting reinstatement and an investigation; the County never responded. *See* Pl. Ex. 3-7; Hearing Tr. 145:6–147:25. At no point did the County give Mr. Wyatt notice of any charge, a statement of cause, its evidence, or an opportunity to respond. *See* Hearing Tr. 104:4–9; 149:3–18.

**E. The Commission Proceedings and Decision**

Mr. Wyatt appealed. Before the March 30, 2026 hearing, the County produced nothing: no documents, no witness list, no statement of cause, as it confirmed on the record. *See* Hearing Tr. 9:14–23; 10:11–15; 19:16–19. His February 24, 2026 Sunshine Law request (No. 26-3253) went unanswered through the hearing, met instead with serial boilerplate extensions timed past the Commission's key dates. *See* Hearing Tr. 149:25–151:4; Pl. Ex. 10 and 11. Only three of five commissioners attended the hearing. *See* Hearing Tr. 5:7–16. Nearly a month after the record closed, the County submitted an unsigned, undated and unauthenticated "Summary of Events" attributed to Ms. Pike, which the Commission accepted over objection and expressly relied upon, though Mr. Wyatt never had any opportunity to cross-examine her about it. *See* Pl. Ex. 12; Hearing Tr. 165:8–168:5; Pl. Ex. 8 (Decision ¶ 10(k)).

On June 18, 2026, the Commission affirmed, concluding that Rule XIX "fully applies" and that Mr. Wyatt, "by failing to submit his resignation in writing and with 14 calendar days' notice … resigned not in good standing," and that by "resigning" he "voluntarily waived" the due process owed under Rule XXI. *See* Pl. Ex. 8 (Decision ¶¶ 20, 23, 29). The decision follows nearly verbatim the County's Findings of Fact, Conclusions of Law and Order, while completely ignoring Mr. Wyatt's submitted proposed Findings of Fact, Conclusions of Law, Decision and Post-Hearing Brief. *See* Pl. Ex. 13 (County's Findings of Fact, Conclusions of Law and Decision);

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

cf. Pl. Ex. 14 (Plaintiff's Proposed Findings of Fact, Conclusions of Law, and Order) & 15 (Plaintiff's Post-Hearing Brief). The decision attributes to Mr. Wyatt quoted profanities ("fuck you"; "I'm tired of this shit") that no witness ever testified to, supported by a citation to testimony about his job duties *See* Pl. Ex. 8 (Decision ¶ 9(g)(i)); Hearing Tr. 31:13–25 (cited by the County and the Commission, cf. Pl. Ex. 13)). It disposes of all contrary evidence, including the County's own witnesses' testimony, in a single unexplained sentence. *See* Pl. Ex. 8 (Decision ¶ 31). And it was signed by Commissioner Akram, who did not attend the hearing and, upon information and belief, did not review the whole record, while a fifth commissioner did not sign at all, though the decision recites a "unanimous" affirmance by the Commission. *See* Pl. Ex. 8 (Decision ¶ 18 & signature page); Hearing Tr. 5:15–16; 16:1–7.

**F. Mr. Wyatt's Continuing Injuries**

Since February 6, 2026, Mr. Wyatt has had no salary, no County health insurance, no retirement contributions or service credit, no leave accrual, and no seniority. (Hearing Tr. 164:4–7.) The official "not in good standing" designation – which under Rule XIX § A.2 "may be cause for an employee not to be recommended for future employment with the County" (Pl. Ex. 8 (Decision ¶ 20)) – remains in his official records, accompanied by the County's characterizations of a profanity-laced quit and questions about his "mental health" that Dr. Cunningham shared with a third party. *See* Hearing Tr. 28:12–24; 90:7–12; 100:12–101:21.

## III. LEGAL STANDARD

Rule 92.02 authorizes this Court to issue a preliminary injunction upon notice and hearing. In deciding whether to do so, Missouri courts weigh "the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

parties, and the public interest." *State ex rel. Dir. of Revenue v. Gabbert*, 925 S.W.2d 838, 839 (Mo. banc 1996) (adopting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). The office of the remedy is to preserve the status quo pending final judgment, the status quo being "the last actual, peaceable, uncontested status which preceded the pending controversy." *Pomirko v. Sayad*, 693 S.W.2d 323, 324 (Mo. App. E.D. 1985); *State ex rel. Eagleton v. Cameron*, 384 S.W.2d 627, 631 (Mo. 1964).

In addition, because Count I of the Petition seeks judicial review of a contested case, § 536.120, R.S.Mo. independently empowers this Court, "[p]ending the filing and final disposition of proceedings for review," to "issue all necessary and appropriate process" to stay enforcement of the agency's order and "temporarily to grant or extend … relief denied or withheld," upon such terms as appear proper, so long as the Court is satisfied "that the public interest will not be prejudiced thereby." The relief the Commission denied and withheld – recognition of Mr. Wyatt's continued merit status, reinstatement, and restoration of pay and benefits – is precisely the relief § 536.120 authorizes this Court to grant temporarily, pending review.

## IV. ARGUMENT

### A. Mr. Wyatt Is Substantially Likely to Succeed on the Merits.

1. Rule XIX does not authorize separation by disputed oral utterance.

Civil Service Rule XIX recognizes **only two ways** a merit employee may resign: (a) by "submitting a written resignation" (§ A.1), or (b) by presumption after three consecutive days' absence without notice. *See also* Pl. Ex. 8 (Decision ¶ 20); Hearing Tr. 29:3–5; 99:2–6. Neither occurred. Mr. Wyatt submitted no writing and missed no work – not a single day. See Hearing Tr. 50:14–18; 148:4–25. Subsection A.2, on which the Commission relied, addresses only a consequence of deficient notice – that a departing employee "may … not be recommended for

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

future employment" – not a freestanding mechanism of separation. The Commission's resort to the Rule's "true intent" in derogation of its text (Pl. Ex. 8 (Decision ¶ 20)) is precisely the enlargement of agency authority Missouri law forbids. An agency "possesses only those powers expressly conferred or necessarily implied by law." *State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n*, 344 S.W.3d 178, 186 (Mo. banc 2011). And the Commission's reasoning that Mr. Wyatt "resigned not in good standing" precisely "by failing to submit his resignation in writing" (Pl. Ex. 8 (Decision ¶ 23)) is circular; it converts the absence of the very act the Rule requires into proof that the act occurred. On de novo review of these legal questions, no deference is owed. *Lagud v. Kansas City Bd. of Police Comm'rs*, 136 S.W.3d 786, 791 (Mo. banc 2004).

2. Even fully credited, the County's account fails as a matter of law.

A separation extinguishes a merit employee's protected property interest only if the employee's relinquishment was voluntary, deliberate, and unequivocal, judged under the totality of the circumstances, *Angarita v. St. Louis County*, 981 F.2d 1537, 1544 (8th Cir. 1992), and courts "indulge every reasonable presumption against waiver" of fundamental rights. *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Even taking Mr. Melton's account at face value – "screaming erratically," pounding a steering wheel, all within fifty-eight seconds (Hearing Tr. 36:14–25) – it describes the archetypal heat-of-the-moment outburst, from an executive who had never cursed at his supervisor or mentioned quitting (Hearing Tr. 33:9–11; 40:1–5), whose supposed resignation Mr. Melton himself found "odd" (Hearing Tr. 51:22–25), and who was back at work within twenty minutes. Mr. Melton's own conduct – closing the call with "just go home," never requesting a writing, saying nothing as Mr. Wyatt kept working and texting about work – confirms that even he did not understand an unequivocal resignation to have occurred. *See* Hearing Tr. 133:5–11; 44:14–16; 45:9–11; 46:12–24; 48:16–19. Purely hypothetically, if Mr.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Wyatt had said "I quit" during that phone call, at most the alleged words were an offer, withdrawn by Mr. Wyatt's open, continued performance of his duties before any acceptance was communicated to him on February 6, and expressly repudiated upon first notice. *See* Hearing Tr. 79:4–24; 82:13–23; emailed denials at Pl. Ex. 3-7. Because even the County's best version of the facts fails as a matter of law, reversal does not depend on any credibility determination.

3. The Commission's decision cannot survive § 536.140 review.

On review, this Court determines whether the decision is supported by competent and substantial evidence upon the whole record, including the evidence that fairly detracts from it, and whether it was made upon lawful procedure and a fair trial. *See* § 536.140.2, R.S.Mo.; *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo. banc 2003). The Commission's decision fails on both scores. It rests on "findings" – quoted profanities – that no witness uttered, supported by a citation to testimony about Mr. Wyatt's job duties. (Pl. Ex. 8 (Decision ¶ 9(g)(i).)) It declares the alleged resignation "unequivocal" with no record citation at all (Decision ¶ 22), in the face of the County's three on-the-record concessions that the facts were disputed (e.g., "He said/he said is a pretty good way to put it"). *See* Hearing Tr. 18:3–7; 20:12–13; 161:4–5.) It finds Mr. Wyatt "did not attempt to deny his resignation" while elsewhere finding that he denied it immediately and repeatedly (Decision ¶¶ 10(b)(iii), 11(d)–(e).) It sweeps away all contrary evidence, including the County's own witnesses, in one unexplained sentence (Pl. Ex 6 (Decision ¶ 31)), findings that violate § 536.090, R.S.Mo. and preclude meaningful review. It expressly relies on the unsigned, undated purported Pike statement produced nearly a month after the hearing, never authenticated and never subject to cross-examination. *See* Pl. Ex. 8 (Decision ¶ 10(k)); Hearing Ex. 11; Hearing Tr. 165:8–168:5. And it was joined by a commissioner who attended no part of the hearing and, upon information and belief, did not

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

independently consider the entire record, in violation of § 536.080.2, R.S.Mo. and Civil Service Rule XXII § B.2.a, which requires decision "by the entire Commission after consideration of all testimony and evidence adduced at the hearing." *See* Hearing Tr. 5:15–16; 16:1–7; Pl. Ex. 8 (Decision ¶ 18). Finally, it is not a decision "by the entire Commission," as one Commissioner did not sign the decision. *See* Pl. Ex. 8 (Decision signature page); Civil Service Rule XXII § B.2.a.

4. The separation violated due process.

A merit employee may not be deprived of his property interest in employment without prior notice, an explanation of the employer's evidence, and an opportunity to respond – "the initial check against mistaken decisions" – before the deprivation becomes effective. *Loudermill, 470 U.S. at 542–46; Bd. of Regents v. Roth*, 408 U.S. 564, 576–78 (1972). Where the employee disputes that any resignation occurred, the separation is an involuntary deprivation requiring process, *Angarita*, 981 F.2d at 1544, and here Mr. Wyatt received none: no notice, no statement of cause, no evidence, no hearing of any kind before the County seized his badge and walked him out under security supervision. *See* Hearing Tr. 84:4–10; 91:11–25; 104:4–9; 149:3–18. A post-deprivation appeal held seven weeks later – at which the County withheld every document and produced its sole witness statement a month after the record closed – cannot supply the pre-deprivation process *Loudermill* requires, nor a meaningful name-clearing opportunity for the stigmatizing "not in good standing" designation and accompanying characterizations. *Codd v. Velger*, 429 U.S. 624, 627–28 (1977); *Speer v. City of Wynne*, 276 F.3d 980, 984–85 (8th Cir. 2002).

**B. Mr. Wyatt Is Suffering Irreparable Harm.**

The ongoing deprivation of constitutional rights "unquestionably constitutes irreparable

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Beyond the constitutional injury, the harms here are continuing, compounding, and beyond the reach of a money judgment. Mr. Wyatt has been without health insurance since February 6, 2026, an exposure no retrospective damages award can insure against. *See* Hearing Tr. 164:4–7. His retirement service credit, leave accrual, and seniority erode with each pay period. An official, governmental designation that he resigned "not in good standing," coupled with the County's characterizations of a profanity-laced quit and "mental health" concerns disclosed to third parties (Hearing Tr. 90:7–12; 100:12–101:21), stigmatizes a healthcare executive whose career depends on reputation and integrity, and by Rule XIX § A.2 impairs his eligibility for future County employment. *See* Pl. Ex. 8 (Decision ¶ 20). Reputational injury of this kind, inflicted and maintained by official records, is not compensable in damages. And the executive experience and professional relationships lost during exclusion from public service cannot be recreated after the fact. There is no adequate remedy at law.

Moreover, on information and belief, the County is presently in the process of filling Mr. Wyatt's position as Chief Operating Officer of the Community Health Centers. If the County permanently fills that position before the Injunction Motion can be heard, the core interim relief Mr. Wyatt seeks may be substantially impaired or rendered impracticable by the mere passage of time.

**C. The Balance of Harms Tips Decisively in Mr. Wyatt's Favor.**

Against these mounting injuries, Defendants can identify no cognizable harm. An injunction requiring public officials to comply with their own Charter, Civil Service Rules, and the Constitution inflicts no legally recognized injury. Moreover, reinstatement pending judgment is not a windfall: the County receives the full-time services of an executive whose performance its own witnesses praised (Hearing Tr. 32:1–3), in exchange for the salary it pays. If Defendants

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

ultimately prevail, they retain every lawful personnel power, including the power to pursue any lawful action through proper procedures. If Mr. Wyatt prevails after years of exclusion, no judgment can return what the interim took. Where one side faces compounding irreparable injury and the other faces, at most, the ordinary obligations of a public employer, the balance is not close.

**D. The Public Interest Favors Relief.**

The public interest lies in enforcement of the merit system that the St. Louis County Charter establishes, in governmental compliance with constitutional due process, and in ensuring that no appointing authority may nullify civil-service protections simply by declaring that a disputed separation was a "resignation." If the County's theory stands even provisionally, every merit employee's protections hang on nothing more than a supervisor's say-so about an unwitnessed conversation. The public also benefits directly from the services of a qualified Chief Operating Officer at its federally qualified health centers. Interim relief will not prejudice the public interest, § 536.120, R.S.Mo.; it vindicates it.

**E. The Requested Relief Preserves the Status Quo and Is Squarely Within the Court's Power.**

The last actual, peaceable, uncontested status preceding this controversy was Mr. Wyatt's active merit employment as Chief Operating Officer through February 5, 2026. *Pomirko*, 693 S.W.2d at 324. An order restoring that status pending judgment preserves, rather than alters, the lawful status quo; it is Defendants' unilateral action – taken without process – that disturbed it. Section 536.120, R.S.Mo. removes any doubt about the Court's authority: pending disposition of the petition for review, the Court may "issue all necessary and appropriate process" to stay enforcement of the Commission's order and "temporarily to grant or extend … relief denied or withheld." Reinstatement with pay, benefits, and seniority pending review is exactly the relief the

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Commission's order denies and withholds. The Court may likewise order, as temporary relief on such terms as appear proper, restoration of the pay, benefits and seniority withheld since February 6, 2026, or may preserve quantification of those losses for final judgment, at which the Court may order reinstatement and restoration of pay, benefits and seniority lost by reason of the unlawful decision. *See* § 536.140.5, R.S.Mo.; 42 U.S.C. § 1983.

**F. Any Bond Should Be Waived or Nominal.**

Rule 92.02(d) requires security before an injunction is issued, but the amount rests in the Court's discretion. Here the injunction compels governmental compliance with existing legal obligations; the County's exposure is minimal because it will receive Mr. Wyatt's services in exchange for the salary it pays; and a substantial bond, imposed on an employee unlawfully deprived of income since February 6, 2026, would effectively price him out of equitable relief. Mr. Wyatt respectfully requests that bond be waived or alternatively set at a nominal amount.

## V. CONCLUSION

For the foregoing reasons, and on the basis of the Verified Petition, the administrative record, and the exhibits, Mr. Wyatt respectfully requests that the Court grant his Motion for Preliminary Injunction; order his immediate reinstatement to his position as Chief Operating Officer of the Community Health Centers, or to an equivalent merit position, with full salary, health insurance, retirement participation and service credit, leave accrual, seniority, office space, and all other rights and benefits of merit employment, pending final judgment; order restoration of the pay and benefits withheld since February 6, 2026, with interest, or preserve their quantification for final judgment; enjoin Defendants from treating or representing Mr. Wyatt as having resigned "not in good standing" or otherwise engaged in misconduct; enjoin Defendants from permanently filling his position pending further order; order preservation of all relevant

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

records; waive or set any bond in a nominal amount; and grant such further relief as is just and proper.

Respectfully submitted,

*/s/ Katherine C. Frierdich*

Katherine C. Frierdich, MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 4th day of August, 2026, a true and accurate copy of the foregoing Plaintiff's Brief in Support of His Motion for Preliminary Injunction was filed through the Missouri eFiling System, which will provide notice to all counsel of record, and/or was served together with the summons and Verified Petition upon Defendants/Respondents in the manner provided by Missouri Supreme Court Rule 54.

/s/ Katherine C. Frierdich

Katherine C. Frierdich

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

HRT
HARTFORD
REPORTING & TECHNOLOGY

Administrative Hearing

3/30/2026

In the Matter of Duane “Pete” Wyatt, Appellant

**Hartford Reporting & Technology**

**7733 Forsyth Boulevard, Suite 1100**

**St. Louis, Missouri 63105**

**(855) 443-3767**

**www.hartfordreporting.com**

Plaintiff's Exhibit
#01

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 1

ST. LOUIS COUNTY GOVERNMENT
CIVIL SERVICE COMMISSION
MONDAY, MARCH 30, 2026 AT 12:00 P.M.

In Re:
HEARINGS, APPEALS, GRIEVANCES
In the Matter of Duane "Pete" Wyatt (Appellant);
Dr. Kanika Cunningham (Respondent)
TRANSCRIPT OF PROCEEDINGS
taken via WebEx
March 30, 2026

Taken before Juliana F. Zajicek, Registered Professional Reporter, Certified Shorthand Reporter and Certified Realtime Reporter, and Notary Public.

Page 2

A P P E A R A N C E S:

CIVIL SERVICE COMMISSION COMMISSIONERS (via WebEx):
Commissioner Satonya Booker
Commissioner Nadine V. Nunn, Esq.
Commissioner Chantal Hoffsten

FOR ST. LOUIS COUNTY (via WebEx):
Mr. Noah Goldkamp, Esq.

FOR APPELLANT DUANE "PETE" WYATT (via WebEx):
Ms. Katherine Frierdich, Esq.

FOR RESPONDENT DR. KANIKA CUNNINGHAM (via WebEx):
Ms. Katherine R. Kaufman, Esq.

ALSO PRESENT (via WebEx):
Duane "Pete" Wyatt, Appellant;
Ms. Jairris Goen, Manager of Employment, St. Louis County

Page 3

I N D E X


| | |
|---|---|
| OPENING STATEMENT - RESPONDENT | 28 |
| OPENING STATEMENT - APPELLANT | 106 |
| CLOSING STATEMENT - APPELLANT | 159 |
| CLOSING STATEMENT - RESPONDENT | 161 |


E X A M I N A T I O N


| WITNESS: | PAGE: |
|---|---|
| DERRICK MELTON | |
| DX BY MS. KAUFMAN.................... | 30 |
| CX BY MS. FRIERDICH.................. | 40 |
| RDX BY MS. KAUFMAN................... | 55 |
| RCX BY MS. FRIERDICH................. | 57 |
| EUGENIA PIKE | |
| DX BY MS. KAUFMAN.................... | 61 |
| CX BY MS. FRIERDICH.................. | 67 |
| RDX BY MS. KAUFMAN................... | 74 |
| SHARON GARDNER | |
| DX BY MS. KAUFMAN:................... | 77 |
| CX BY MS. FRIERDICH.................. | 81 |


Page 4

E X A M I N A T I O N


| WITNESS: | PAGE: |
|---|---|
| DR. KANIKA CUNNINGHAM | |
| DX BY MS. KAUFMAN.................... | 85 |
| CX BY MS. FRIERDICH.................. | 93 |
| RDX BY MS. KAUFMAN................... | 105 |
| DR. PATRICK MILLER | |
| DX BY MS. FRIERDICH.................. | 109 |
| CX BY MS. KAUFMAN.................... | 116 |
| DAMON BROADUS | |
| DX BY MS. FRIERDICH.................. | 118 |
| DUANE "PETE" CARLTON WYATT | |
| DX BY MS. FRIERDICH.................. | 122 |
| CX BY MS. KAUFMAN.................... | 152 |
| RDX BY MS. FRIERDICH................. | 156 |

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 5

MR. LIVASY: Why don't we go ahead and call the meeting to order. Chairwoman Nunn, are you willing to do that for us?
COMMISSIONER NUNN: Yes, we would now call this special hearing for March the 30th, and you will be in the hands of Matt Livasy to do a roll call vote.
MR. LIVASY: All right. Thank you.
Chairwoman Nunn?
COMMISSIONER NUNN: Present.
MR. LIVASY: Commissioner Hoffsten?
COMMISSIONER HOFFSTEN: Present.
MR. LIVASY: Commissioner Booker?
COMMISSIONER BOOKER: Present.
COMMISSIONER NUNN: Okay.
MR. LIVASY: And Commissioner Akram and Commissioner Carter-Hicks are not present.
All right. So, Juliana, I think since the meeting is officially kicked off, you're welcome to go ahead and start putting us on the record.
I'm moving to Section 2, Hearings, Appeals, Grievances, and Item 2.1 is Resignation Appeal from Pete Wyatt and the Department of Public Health.
We do have a closed session on the agenda, so we will exercise that likely for this, if that's

Page 6

what the Commission and the parties choose to do.
We need to appoint a hearing officer, so that will be up to the Commission. Who would like to take on that role today?
COMMISSIONER NUNN: Did you say Commissioner Booker is on the line?
MR. LIVASY: Yes.
COMMISSIONER NUNN: And you sent out all of the materials for the hearing procedure and everything to Commissioner Booker?
COMMISSIONER BOOKER: Yes, I have the procedure documents.
COMMISSIONER NUNN: Okay. All right. Then I would say that Commissioner Booker should be the hearing officer for this particular meeting.
COMMISSIONER BOOKER: Okay. I'm going to need some help.
COMMISSIONER NUNN: Okay. No problem.
MR. LIVASY: Commissioner Booker, you have the --
COMMISSIONER BOOKER: Administrative hearing procedure guidance, yes, I do.
MR. LIVASY: And we'll be following the first column on the far left.
COMMISSIONER BOOKER: Okay. An employee with an

Page 7

attorney?
MR. LIVASY: Yes.
COMMISSIONER BOOKER: Okay.
MR. LIVASY: Correct.
COMMISSIONER BOOKER: Okay. So I just --
MR. GOLDKAMP: I'm sorry, I couldn't get to my unmute button. My mouse pad wasn't working.
But can we have a motion to appoint Commissioner Booker as the hearing officer?
COMMISSIONER HOFFSTEN: I'll make that motion.
COMMISSIONER NUNN: Second.
All of those in favor?
COMMISSIONER HOFFSTEN: Aye.
COMMISSIONER BOOKER: Aye.
COMMISSIONER NUNN: Aye.
MR. GOLDKAMP: And then I believe there has been a request from the employee for the hearing to be in a closed session, so I think that's appropriate to take up before -- before anything -- before anything else.
COMMISSIONER NUNN: So I move that we go into closed session by roll call vote.
COMMISSIONER HOFFSTEN: I'll second that.
MR. LIVASY: Chairwoman Nunn?
COMMISSIONER NUNN: Aye.
MR. LIVASY: Commissioner Hoffsten?

Page 8

COMMISSIONER HOFFSTEN: Aye.
MR. LIVASY: Booker?
COMMISSIONER BOOKER: Aye.
MS. GOEN: And then, Noah, at this point is there anybody else I need to promote to bring into closed session with us?
MR. GOLDKAMP: So at this point, it would be appropriate for the employee, the employee's attorney, and Dr. Cunningham to all be moved over to the closed session.
MS. PIKE: And me, please.
MR. GOLDKAMP: Well, I think you're already a panelist, Gina.
MS. PIKE: Okay.
MS. GOEN: Yeah, sorry. We moved panelists -- okay, so I have promoted those three individuals to panelist -- excuse me -- so we should be ready to go ahead and move into closed session.
IT TECH: Hello, everyone. It's Shawn with IT again. I'm getting ready to start your closed session. I just wanted to verify before I hit it, everybody that's currently a panelist will be moving into closed session, correct?
MS. GOEN: Correct, thank you.
IT TECH: All right. I'll go ahead and start

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM



it. If you get a popup, please hit "yes" or "no."

(WHEREUPON, the following proceedings were had in closed session, as follows:)

MR. LIVASY: Let's give a moment to allow all of the others who needed to join to join us.

MS. FRIERDICH: So you are going to be looking for Pete, as I don't see him?

MR. LIVASY: Katherine, you are muted.

MS. KAUFMAN: Thank you. I just wanted to let any witnesses who may be called into the main room know where we are going and that they will be brought in from time to time.

MS. FRIERDICH: Do you have a list of said witnesses, as we have not received one?

MS. KAUFMAN: Yes. I think all of the witnesses on our list are also on yours. We are intending to call Dr. Cunningham, Mr. Melton, Ms. Pike, and Ms. Gardner.

MS. FRIERDICH: Okay. Did you submit a witness list, because I don't believe we received one, or did you submit anything else that we didn't receive?

MS. KAUFMAN: No.

MS. FRIERDICH: Okay. And what about the witnesses that we proposed, are they also in the



waiting room?

MS. KAUFMAN: They can be made available. They've all been informed of the hearing. I don't see the relevance of some of the witnesses' proposed testimony, but we can handle that as we get to it.

MS. FRIERDICH: I'm not sure that's your decision to make, but you're saying that they are available?

MS. KAUFMAN: Yes, ma'am.

MS. FRIERDICH: Thank you.

Did the County submit any documents?

MS. KAUFMAN: No, ma'am.

MS. FRIERDICH: And no other pleadings that we did not receive a copy for?

MS. KAUFMAN: No.

MS. FRIERDICH: Thank you.

So a question for the Commission since Ms. Cunningham is to be a witness, is she going to be remaining here as a party or will you be putting her into the waiting room and bringing her in as a witness?

MR. WYATT: I think I'm in now.

MS. FRIERDICH: Hi, Pete. Glad you could join us.

Is that a question for whom? I'm not



sure.

MR. GOLDKAMP: It could be my advice to the Commission that Dr. Cunningham is not only a witness, she is the appointing authority who made this decision and is, therefore, a party to the case. That would be my advice to -- to the Commission. But it is the Commission's decision.

So I think, Commissioners, that if you want to make a ruling on whether Dr. Cunningham can remain in the room as the appointing authority who made the decision, or if she is a witness and should then be sequestered like the other witnesses, I think that's the first decision we need to make here.

MR. LIVASY: And, I'm sorry, administratively, Chairwoman Nunn, can you accept the breakout session on your computer? You're still showing up on camera in open session, and we just don't want to -- to risk anything there.

COMMISSIONER NUNN: Oh. Is that fine? I did join the session.

MR. LIVASY: We've got you for Call-in User 3, but I need your computer as well to be switched over.

COMMISSIONER NUNN: Oh, okay.

MR. LIVASY: There should be a popup where there's a "join" button in the top left corner of your



WebEx.

COMMISSIONER NUNN: Okay. I see "join breakout session," and it says I'm assigned to breakout session 1.

MR. LIVASY: Okay.

COMMISSIONER NUNN: Let me do join.

MR. LIVASY: It looks like we've got you in. Thank you for taking care of that. I appreciate it.

COMMISSIONER NUNN: Okay. All right.

MR. LIVASY: Okay. And then it looks like we would need you to return to the main meeting for now that's taking place in the chat.

MS. KAUFMAN: Yes, that's addressed to Ms. Pike. I think somehow she may have accidentally traveled in with us.

MR. LIVASY: Ms. Pike, if you can hear me, I'm still seeing you showing up in attendance -- nope, you are gone.

Okay. I think we're all ready to proceed. Thank you for the interruption. Noah, you presented a question, I believe.

MR. GOLDKAMP: Yes. I think the first matter we need to take up is whether the Commission will allow Dr. Cunningham to stay in the hearing while others are testifying and these pre-motions are heard or if she

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 13

should be sequestered like the other witnesses?
COMMISSIONER NUNN: Ms. Booker, you are the hearing officer. It is my suggestion that all witnesses will be sequestered until their time to testify.
COMMISSIONER HOFFSTEN: I concur.
COMMISSIONER BOOKER: I agree as well.
MS. KAUFMAN: Would that include Mr. Wyatt as well, assuming he intends to give testimony?
MS. FRIERDICH: I believe the rules require him to be present.
COMMISSIONER BOOKER: Yes. That's how it normally is. So how do we --
MR. GOLDKAMP: So we just -- if we have a motion, and then Dr. Cunningham can be placed in the waiting room.
COMMISSIONER BOOKER: So the motion shall be that Dr. Cunningham shall be treated as a witness, is that how that --
MR. GOLDKAMP: And -- and not present during pre-hearing motions and other witnesses' testimony.
COMMISSIONER BOOKER: May I say what Noah said, or should I --
COMMISSIONER NUNN: You can say "so moved."
COMMISSIONER BOOKER: So moved.

Page 14

COMMISSIONER HOFFSTEN: Second.
COMMISSIONER BOOKER: All those in favor?
COMMISSIONER HOFFSTEN: Aye.
COMMISSIONER NUNN: Aye.
COMMISSIONER BOOKER: Aye.
COMMISSIONER HOFFSTEN: Do we need to do a roll call vote since we're in a closed --
MR. GOLDKAMP: We do not.
MS. GOEN: Okay. Dr. Cunningham, I have no idea if you have the option to leave. I think I have the option to put you back, but if it removes you from the meeting, just rejoin and you should end up in -- back in the open session.
Oh, okay. She did it, it looks like.
(WHEREUPON, Dr. Cunningham exited the closed session.)
MS. FRIERDICH: And just to confirm, Call-in User 3 is Commissioner Nunn?
COMMISSIONER BOOKER: Yes.
COMMISSIONER NUNN: Correct.
MS. FRIERDICH: Thank you.
COMMISSIONER BOOKER: Am I supposed to read this over here?
MR. GOLDKAMP: Yes.
COMMISSIONER BOOKER: Okay. Do I start with,

Page 15

"This hearing is convened"?
MR. GOLDKAMP: Yes.
COMMISSIONER BOOKER: Okay. This hearing is convened -- let's go on record.
I am Satonya Booker, a Commissioner of the St. Louis County Civil Service Commission. I am the designated hearing officer for the appeal filed by the appellant.
It appears they are present, along with their attorney, and the Department's appointing authority is present along with a County attorney, Associate -- Associate County Counselor for the St. Louis County Government.
Before we begin, I'm going to inquire as to whether or not there has been any discussion between the attorneys concerning the settlement -- concerning a settlement?
MS. KAUFMAN: No.
COMMISSIONER BOOKER: Is there any benefit to the parties entering into any further discussion at this time?
MS. KAUFMAN: No.
COMMISSIONER BOOKER: If so, I will provide an -- okay. So there is no discussion, okay.
If not, we will begin the hearing.

Page 16

I want to point out that all of the Commissioners will view the evidence in the appeal. The other Commission members will be supplied with the transcript of today's proceedings, as well as copies of any documents that are admitted into evidence. The full Commission will make the decision, not just me. I am here simply to conduct today's hearing.
Just a general statement, both parties are represented by attorneys and the rules of the Civil Service Commission provide that hearings shall be informal and shall not follow the strict Rules of Evidence and the technicalities thereupon.
I will, however, consider any objections that either one of you may have, but please remember that any rulings that are made may not necessarily conform to what either of you may be -- may be used to in a courtroom. It is May -- I'm sorry, March 30th, 2026, and it is about 12:23 p.m. We are ready to begin the proceeding.
Are there any preliminary issues to be considered at this time?
MS. FRIERDICH: I --
MR. GOLDKAMP: I believe --
MS. FRIERDICH: Yes, go ahead. I think we were headed in the same direction. Go ahead.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM



MR. GOLDKAMP: And you can take it.

MS. FRIERDICH: Okay. So we do have a couple of motions on file. One was to request that the Commission do an investigation, subpoena witnesses, and collect documentation. We did not receive any information regarding subpoena of witnesses or witnesses, so we've already granted the closed ruling request -- closed hearing request.

Is there anything the Commission has to say in regard to that motion? We just haven't -- we didn't -- "we," meaning Mr. Wyatt, did not receive any information regarding compelled testimony or records from the Commission prior to this meeting, nor the County.

MR. GOLDKAMP: So what is on the table, Commissioners, is whether you want to compel certain witnesses to appear. From the list, it looks like the first four, the County is already calling, so it seems to be a moot point. And then there are five other names that Ms. Frierdich gave for you to consider.

COMMISSIONER BOOKER: Yes, it looks like -- okay. So it looks like for the record, we now have these -- these exhibits, so we reviewed the -- we reviewed the copies of the -- of the facts that you have -- that you have -- that you have offered to us,



and I'm understanding that those can be admitted by stipulation. Is that correct?

MS. KAUFMAN: We would not stipulate to the veracity of those facts, Commissioner Booker. There is, I believe, conflicting factual accounts and testimony on both sides which is what brings us here today.

MS. FRIERDICH: And if what you're referring to is appellant's, that's Mr. Wyatt's proposed findings of fact, conclusions of law, and order, so. It's really a -- we presented a pre-hearing brief and proposed findings of facts and conclusions of law and an order because the latter is what the Commission will have to issue in order to help to lay it out in advance for the Commission so you're not coming in blind.

COMMISSIONER BOOKER: Okay. Okay. Well, let's -- let's call -- let's call in these witnesses then. Let's look at --

COMMISSIONER HOFFSTEN: Commissioner Booker, this is Commissioner Hoffsten. I'm just wondering if maybe we can ask the relevance of the rest of the witnesses in the motion?

COMMISSIONER BOOKER: Okay.

COMMISSIONER HOFFSTEN: Because if we -- sorry,



I muted myself -- it might be helpful.

So in the motion that was filed by appellant's attorney, there's a list of witnesses, and I believe that there is -- while there's agreement, there's disagreement. So we can, you know, deny the motion or at least hear why they think they're relevant, if you'd like, as the hearing officer.

COMMISSIONER BOOKER: I agree, I concur.

MS. FRIERDICH: Okay. The two that were not listed by Ms. Kaufman is Mr. David Broadus, Deputy Director, Department of Public Health, and Dr. Patrick Miller, Chief Medical Officer, Community Health Centers. They both are fact witnesses who can speak to the disputed facts in this matter.

And then we offer three witnesses as rebuttal, as we have not received any information whatsoever from the County with regard to the facts; no documentation, no statement of cause, nothing. So we are, you know, trying to -- we are trying to keep it to the point and short. I don't think this has to be a very drawn-out hearing.

I think the facts are very clear, but, you know, we don't know what they're presenting so I presented three additional people as potential rebuttal witnesses, depending on what they present.



We don't know what they're going to present.

And I would ask what the -- what the relevance of the other ones are to the County if I have to, you know, justify it, but the two -- the two witnesses that are not listed as rebuttal are fact witnesses who literally witnessed disputed facts.

COMMISSIONER NUNN: So there is no stipulation to the facts?

MS. KAUFMAN: Should we have --

COMMISSIONER NUNN: I'm sorry. Are you saying there is no stipulation as to the facts?

MS. KAUFMAN: No. There is a dispute as to the facts, ma'am.

COMMISSIONER NUNN: All right. Commissioner Booker?

COMMISSIONER BOOKER: Okay. So -- okay. So the stip- --

MS. KAUFMAN: If I may respond, we have Mr. Broadus and Dr. Miller both on standby. Dr. Miller is in the main session and doctor -- Mr. Broadus can be called by phone and requested to join.

As for the three rebuttal witnesses, I understand they are on the list, one of them was on bereavement leave during the time period at issue, and

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 21

the other two did not directly witness any interactions between any of the parties or any of the other witnesses. So I doubt they will be necessary as rebuttal.

MS. FRIERDICH: That's testifying on their behalf, so I would object to that.

Ms. Cunningham was also on leave, that's my understanding, so if that's the -- if that's the test. Look, we may not need the rebuttal witnesses. We can cross that bridge when we come to it. I just -- I don't think we should be putting words in witnesses' mouths.

COMMISSIONER BOOKER: So the relevance of the -- okay. So let's see. So you're interested in bringing -- so we start with -- can we choose which witnesses to bring forth first?

MR. GOLDKAMP: What you would do is call the County to present their witnesses, and then it is the same for the claimant, is you would call the claimant to put on their testimony and then they can use whatever order they would like.

COMMISSIONER BOOKER: So it's the County first and then the -- okay.

MR. GOLDKAMP: Correct.

COMMISSIONER BOOKER: Okay. Okay. Well, the --

Page 22

okay. So can the County proceed?

MS. KAUFMAN: Yes, Commissioner.

MS. FRIERDICH: Can we just back up and get a ruling on acceptance of our pre-hearing brief and proposed findings of fact, conclusions of law, and order, that they will be accepted by the Commission?

COMMISSIONER BOOKER: I'm sorry, Noah and Katherine were talking at the same time.

MS. FRIERDICH: I apologize. So I think there are a couple of things still outstanding. We also ask that the Commission investigate this matter and collect relevant non-privileged records. Did the Commission do that, and is there anything to offer to Mr. Wyatt at this point? As I mentioned, we have received nothing from the County.

COMMISSIONER BOOKER: So they do not have the same things we have?

MS. KAUFMAN: So if Ms. Frierdich is referring to a proposed findings of fact and conclusions of law, it's generally our practice to submit that after the hearing so that we can cite to portions of the trial transcript that represent the facts that were brought out at the hearing.

MS. FRIERDICH: That's not what I was referring to. Thank you, though. I was referring to the motion

Page 23

for compelled testimony and records, full investigation, enclosed Rule 22 hearing.

We requested that the Commission investigate and collect all non-privileged relevant records and supply them to Mr. Wyatt in fairness. We did not receive anything from the County or the Commission. I'm just wondering did the Commission investigate and collect any records such that they should be presented to Mr. Wyatt in response for our motion?

COMMISSIONER BOOKER: Okay. So what is my -- what do I do here?

MR. GOLDKAMP: So the County -- the Commission did not. So it isn't really my place to say that, but that is the -- the answer.

MS. FRIERDICH: Okay. And then we did file a pre-hearing brief and proposed findings of fact and conclusions of law. We'd ask that those be accepted by the Commission at this point.

I understand Ms. Kaufman, you know, may intend to file something of the same nature after the fact. We would reserve the right to file an amended, but we filed proposed at this point.

And to clarify, it's not adversarial to do that. It's really, Mr. Wyatt wanted to, you know,

Page 24

really help to educate the Commission on what the issues are prior to the Commissioners coming in cold, essentially, on this matter, so. They are only proposed findings of fact and conclusions of law in a pre-hearing brief from Mr. Wyatt.

COMMISSIONER NUNN: Commissioner Booker, we can have everyone to submit findings of fact and conclusions of law at the end of the hearing, and that is my suggestion that we would do so at this time.

COMMISSIONER BOOKER: I concur. So moved.

COMMISSIONER NUNN: Thank you.

MS. FRIERDICH: So will the Commission accept our pre-hearing brief, which is separate?

COMMISSIONER BOOKER: I submit that we will -- we will accept -- accept your pre-hearing brief.

COMMISSIONER NUNN: After hearing or at this time, is what you are asking?

COMMISSIONER BOOKER: After the hearing.

COMMISSIONER NUNN: Okay.

MS. FRIERDICH: It's my understanding, Mr. Goldkamp, that the documents that we filed have been distributed to the commissioners?

COMMISSIONER BOOKER: Yes.

MS. FRIERDICH: Okay.

COMMISSIONER BOOKER: Yes, we have all of that,

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 25

all of those materials.
MS. FRIERDICH: I'm just trying to catch up here. Thank you.
COMMISSIONER BOOKER: Okay. So then the County, call their witnesses.
MS. KAUFMAN: Yes. Before we proceed, we would like to take judicial notice of a couple of the ordinances and the charter provision that gives us authority to do what we're doing today. That would be judicial notice of St. Louis County Charter Article VII, Section 7.020; St. Louis County Ordinance 15,154; St. Louis County Revised Ordinances Section 202.100; and I believe the three civil service rules that have been mentioned in anybody's pleadings thus far are Rule 19, Rule 21, and Rule 22.
MS. FRIERDICH: I would add to that Rule 20. Otherwise, I have no objection.
MR. GOLDKAMP: Can we have a motion to take judicial notice of those ordinances and rules of the County?
COMMISSIONER BOOKER: I will make that motion.
COMMISSIONER HOFFSTEN: I'll second.
COMMISSIONER NUNN: Second.
COMMISSIONER HOFFSTEN: All those in favor?
COMMISSIONER BOOKER: Aye.

Page 26

COMMISSIONER NUNN: Aye.
COMMISSIONER HOFFSTEN: Aye.
All of the preliminary issues have been resolved, so -- and that is what is on the record for all of the motions and all of the exhibits and findings of fact.
So, Commissioner Booker, are we --
COMMISSIONER BOOKER: Yes.
COMMISSIONER NUNN: -- as we're accepting all of those, and as they're resolving, may we have the County call its first witness?
MS. FRIERDICH: May I ask, is there a portion of this hearing at which there are either opening or closing argument opportunities, or do we need to request those?
COMMISSIONER BOOKER: I see nothing in here that -- I don't see anything that -- that calls for that. I don't see anything that calls for that. But it doesn't -- there's nothing that prohibits it -- prohibits it either.
MR. GOLDKAMP: No, there's nothing that prohibits it. Is that an official request, Ms. Frierdich, for the Commission to consider?
MS. FRIERDICH: Yes. Thank you.
COMMISSIONER BOOKER: Do you all see a problem

Page 27

with that, Commissioners?
COMMISSIONER HOFFSTEN: I don't see a problem with it as long as we keep the hearing moving along.
COMMISSIONER BOOKER: One minute -- do they a minute or how long?
COMMISSIONER NUNN: Yeah, if -- do you have a chance to share the screen, is that my understanding?
COMMISSIONER BOOKER: No. She wants to have an opening statement and a closing statement?
COMMISSIONER NUNN: Okay. I misunderstood. That's fine.
COMMISSIONER BOOKER: With a limit of how long? What is reasonable?
MS. FRIERDICH: I need five minutes.
COMMISSIONER BOOKER: Three minutes?
MS. FRIERDICH: Five. It might be three. I do talk fast, so.
COMMISSIONER BOOKER: I think three is reasonable. I am working.
COMMISSIONER HOFFSTEN: Yeah, I think that three is reasonable.
COMMISSIONER BOOKER: I move to allow them to have -- they each have three-minute opening statements and closing statements?
COMMISSIONER NUNN: Second.

Page 28

COMMISSIONER BOOKER: All of those in favor?
COMMISSIONER HOFFSTEN: Aye.
COMMISSIONER NUNN: Aye.
COMMISSIONER BOOKER: Okay. Would the County like to have an opening statement?
MS. KAUFMAN: Sure.
COMMISSIONER BOOKER: Okay.
MS. KAUFMAN: Thank you.

OPENING STATEMENT ON BEHALF OF THE RESPONDENT

MS. KAUFMAN: Good afternoon, Commissioners, and it is indeed now afternoon. Thank you for your time. Today you will hear that on February 5th, 2026, Duane Pete Wyatt resigned. You'll hear how much that shocked his supervisor, Derrick Melton, and that it was all the more striking because of just how Mr. Wyatt resigned. At the end of a minute-long phone call in which he repeatedly cursed Mr. Melton, he said, and I quote, "I fucking quit," and he said it more than once. And then he hung up the phone. But Mr. Melton had heard enough to conclude that Mr. Wyatt meant precisely what he said.
You'll hear how he called Dr. Cunningham, his appointing authority, and told her what happened right then and there the minute Mr. Wyatt got off the phone. And after that conversation, Dr. Cunningham

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 494 of 1127 PageID #: 497
Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM



had also heard enough to reasonably believe Mr. Wyatt had resigned.

And while our civil service rules provide that a resignation in good standing must be in writing and requires 14 days' notice, Mr. Wyatt is not the first DPH employee to make a verbal resignation. In this instance, Dr. Cunningham accepted.

What you will not hear is that Mr. Wyatt ever attempted to rescind that resignation from the moment it occurred until the moment Dr. Cunningham's executive assistant communicated her acceptance. Mr. Wyatt will tell you that he never said it at all. But at the close of this hearing, I anticipate you too will have heard enough to draw your conclusion regarding the propriety of Mr. Wyatt's resignation under our civil service rules.

That's all I've got to start with.

COMMISSIONER BOOKER: Call your first witness.

MS. KAUFMAN: Yes, thank you. We'd like to call Derrick Melton.

MS. GOEN: Give me just a little bit of time to coordinate.

MS. KAUFMAN: Okay. Thank you.

(WHEREUPON, Derrick Melton entered the proceedings.)



MS. GOEN: Okay. I believe he has arrived.

COMMISSIONER BOOKER: Okay. Would you like to begin?

MS. KAUFMAN: Yes. Can you hear us, Derrick?

MR. MELTON: Yes. I'll start my video.

MS. KAUFMAN: Yeah, I don't think we can see you yet.

MR. MELTON: Okay. I'll --

MS. KAUFMAN: Oh, yeah.

DERRICK MELTON,

called as a witness herein, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. Derrick, could you state your full name for the record?**

A. Yes. Derrick Melton.

**Q. And for our court reporter's benefit, could you spell that out?**

A. Yes. D-e-r-r-i-c-k for Derrick, Melton, M-e-l-t-o-n.

**Q. Okay. And, Derrick, what is your position with the County?**

A. Chief executive officer.

**Q. And what branch of DPH is that position**



**associated with?**

A. The clinical umbrella. I manage the Federally Qualified Health Center.

**Q. To whom do you report?**

A. Dr. Cunningham.

**Q. Okay. And as of February 5th, 2026, did you have any direct reports to you?**

A. Yes.

**Q. Who were they?**

A. Five people. Sharon Foote, Eugenia Pike, Dr. Patrick Miller, Michael Ladevich, and Pete Wyatt.

**Q. And what was Mr. Wyatt's position?**

A. Chief operating officer.

**Q. Could you tell the Commission a little bit about the job duties associated with that position?**

A. Sure. He -- Mr. Wyatt managed all of the operations. The majority included our financial grants. A lot of times he would also focus on the nonclinical care as well as the clinical piece as well.

And what I mean by that is indirectly, he supervises the nurses, the registration staff members, and a few more other members on our team as well. So he was over the entire clinical operational enterprise, in summary.



**Q. And as of February 5th, were you generally satisfied with his performance?**

A. Absolutely.

**Q. Okay. Were you having any -- any difficulties whatsoever with the position?**

A. No.

**Q. What were the steps, if any, you took with Mr. Melton -- sorry, Mr. Wyatt to check in about his job performance?**

A. We would often have meetings, standing meetings, at least once a week, standing meetings for sure. Sometimes we would meet, you know, quite more frequently than that, but we definitely had standing meetings once a week.

Mr. Wyatt, from my understanding, he come from a background of not-for-profit care. He didn't have a lot of experience in FQHC clinical work, so we spent a lot of time prioritizing his daily task and obviously his weekly task to get him caught up to speed for the FQHC Look-Alike program.

**Q. Okay. And were you pursuing -- as of February 5th, were you pursuing any discipline against Mr. Wyatt?**

A. No.

**Q. Were you pursuing Mr. Wyatt's termination?**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


A. No.
**Q. Were you investigating any alleged conduct of Mr. Wyatt's?**
A. No, not that I can remember, no.
**Q. Okay. So in the course of this workplace relationship, have the two of you had some disagreements?**
A. Yeah, we've had a few disagreements.
**Q. Okay. In any of these disagreements, has Mr. Wyatt ever cursed at you?**
A. No.
**Q. So I'm going to take you to February 5th.**
A. Um-hum.
**Q. Can you tell me about your interactions with Mr. Wyatt, if you had any, on that day?**
A. Yes. So I called Mr. Wyatt roughly around four times on his cell phone to get some information from him. I also texted him a few times. And it's my understanding he was busy or he was preoccupied with something else.
And he finally called me back, and I asked him, did he get my phone calls, did he get my text messages; and he said yes. The information that I needed from him at that time was related to how many positions reported to him. That was the question at


hand. And he responded something back to the nature of a number that he thought, and I needed him to be more accurate. And I asked him that question, and he -- that's when things essentially went south.
**Q. Okay. So how many -- you said you called Mr. Wyatt about four times.**
A. Um-hum.
**Q. In what space of time?**
A. I would probably say anywhere between 9:00 and 9:30-ish.
**Q. Okay. And at what point did he call you back?**
A. It was probably about 30 to 45 minutes or so after.
**Q. So 9:30?**
A. Yeah, roughly, ish, yes, that's fair to say.
**Q. Okay. And when you picked up the phone, can you describe for me Mr. Wyatt's demeanor?**
A. It was very vague. I asked him did he get my text, and he said yes, he was in a meeting. And he -- and I said, I also got your text, but I needed more detailed information of the -- of the question that I asked you.
And his demeanor at that time got very


rogue. He began to, you know, say curse words and ask me questions as it relates to the -- to the statement or the questions that I was asking him.
**Q. Okay. And I know we have our -- our politenesses, but can you recall which words he used?**
A. Yeah, I was trying to be a little vague there, and, again, I apologize up front for the audience. But I particularly asked Mr. Wyatt, did he get my text or did he get my call?
And he said yes.
And, again, as to rehash, I asked him, I need him to be more specific.
And he verbatim said, Derrick, what do you want me to do, I'm fucking driving.
And I said, Excuse me?
He said, I'm fucking driving.
And I repeatedly asked Mr. Wyatt who was he talking to, and he responded, I'm fucking talking to you.
And that's when I went into the situation of asking him, you know, basically what was going on, out of everything that I've done for him in terms of his role and his career was he going to talk to me like that.
He said, Absolutely, I'm fucking talking


to you. And he said, You know what, I just fucking quit.
And I said, So you quit? You're not returning?
He said, Yes, I fucking quit.
**Q. Okay. And that statement happened twice that you recall?**
A. At least twice.
**Q. Okay. And how did the conversation end?**
A. It was basically very short after that. After he said he fucking quit, I said, Well, if you quit, then I accept your resignation.
And we hung up.
**Q. All right. Now, can you tell me anything else about Mr. Wyatt's tone of voice or demeanor such as you recall?**
A. Yes, his demeanor was very, I would say, he was loud. I could tell he was very aggressive or what would come off to be aggressive to me. I heard him beating, what seems to be beating on the steering wheel as he would say he fucking quit. He was screaming erratically, not any words to me at that particular time, but just yelling as if, you know, he was irritated at something or, I would imagine, the situation that was happening.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 37

**Q. Yeah, and I understand you are describing what you heard as opposed to saw.**

**Okay. Is there any chance you misheard?**

A. No. In fact, I asked him more than once who was he talking to. I did give him the benefit of the doubt that maybe he was talking to someone else in the background or per se, but he -- he doubled-down, that I'm fucking talking to you.

**Q. Okay. What did you do after the phone call?**

A. I merely called Dr. Cunningham.

**Q. And what did you communicate to Dr. Cunningham?**

A. That we just had a verbal resignation and Mr. Wyatt -- she asked me, What happened. At that particular time, I told her it was a very heated conversation. I gave her very minor but major details, and she was saying, that's very unfortunate. And she accepted it.

**Q. Okay. Did you have any more contact with Mr. Wyatt on that same day, February 5th?**

A. Actually, I did.

**Q. Okay. And what was that? Was that phone again or in person, or how did that happen?**

A. Yeah, it was in person. He came to my

Page 38

office. And as soon as he came in, I essentially asked him something similar to the nature of, Why are you here. You said what you said, and I accepted your resignation.

And he repeated and said, You're not going to do this to me, per se.

And I asked him what he said.

Well, you know what's going on with me and my family.

I said, Well, Mr. Wyatt -- at that particular time it was probably "Pete." I said, Well, Pete, you quit.

And he said, You're not going to do this to me.

I said, Well, Pete, you did it to yourself. You resigned.

And I asked him to leave my office, and he did.

**Q. Okay. And about what time was this?**

A. I would probably say about 45 minutes after we initially hung up from the first conversation, so 9:30 plus another 30, 45 minutes on top of that. So roughly 10:15-ish or so.

**Q. Okay. And during the course of that conversation, did Mr. Wyatt deny having resigned?**

Page 39

A. No.

**Q. Did he ask you what you were talking about?**

A. No.

**Q. Did he ask you any questions at all?**

A. No, not really.

**Q. And when he left the office, was it still your belief that he had resigned?**

A. Absolutely.

**Q. Did you speak to Mr. Wyatt any more about this, either on February 5th or after?**

A. No.

**Q. Did you speak to Dr. Cunningham again about it?**

A. Yes.

**Q. Okay. And what was the purpose of that conversation?**

A. Just to rehash what happened. I also asked her did I need to do anything else from a resignation standpoint, and she told me that obviously she wanted me to make documentation and she would take it from there.

**Q. Okay. Had Mr. Wyatt ever cursed at you before?**

A. No.

Page 40

**Q. To your knowledge, had he ever wanted -- mentioned wanting to quit before?**

A. No.

**Q. Joked about quitting?**

A. Nope.

**Q. Did you have any reason to believe he didn't mean what he said?**

A. No. He was very, very honest and very open. It was very clear. And even, in fact, I asked him multiple times, A, who was he talking to, what's going on. I mean, he -- he repeated himself several different times in that manner.

**Q. Okay. I don't have any further questions for you at the moment, Mr. Melton.**

A. All right. Thank you.

CROSS-EXAMINATION

BY MS. FRIERDICH:

**Q. Okay. Hi, Mr. Melton. My name is Katherine Frierdich, and I represent Pete, Mr. Wyatt, in this appeal. I do have a few questions for you.**

A. Okay.

**Q. You -- would it surprise you that Mr. Wyatt was told by someone at the County that he supposedly resigned while talking to you in person in your office versus how you described it happening?**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM



A. Yes. That would be a surprise to me.

**Q. Okay. So when you were calling Mr. Wyatt, 9:03 is when it started, he was in a meeting and he told you that he had been in a meeting. You texted him and asked him that -- how many direct reports did he have, is that correct?**

A. No, that's not correct.

**Q. What did you text him?**

A. It was more so when you said he told me that he was in a meeting. He did not tell me when he was in a meeting.

**Q. So you did not ask him over text how many direct reports does he have?**

A. I did.

**Q. You did ask him, okay. And that was the question that you had, is that correct?**

A. That is correct, yes. I'm sorry.

**Q. Okay. And Mr. Wyatt told you, I'm in the middle of a meeting wrapping up, is that correct, by text?**

A. I don't remember.

**Q. And then by text, he said six direct reports --**

A. Yes.

**Q. -- but that he would like to confirm to be certain?**



A. Yes.

**Q. Okay. And that was your question, that was your only question to him, "How many direct reports you have?"**

A. Yes.

**Q. Okay. And you have access to the org chart, don't you? You knew he was in a meeting. You do, it was hanging on your assistant's wall, hanging on Mr. Wyatt's wall. It was available on your -- on your internet. You could have called HR, right?**

A. Is that a question?

**Q. Yes. There were those places that you could have confirmed how many direct reports Mr. Wyatt had?**

A. Possibly.

**Q. Possibly?**

A. Um-hum.

**Q. Do you know whether or not you could look up his organizational chart in some way online?**

A. Yes. Mr. Wyatt is the chief operating officer. He has the option to -- in certain situations to change his org chart as he sees fit.

**Q. Okay. So you say that he quit verbally on the phone?**



A. Yes.

**Q. And then came to the office and visited your office?**

A. Yes.

**Q. You had a conversation. Did that conversation -- was that conversation loud and curse-ridden?**

A. No, I don't think any curse words were exchanged during that time.

**Q. How long did that conversation last?**

A. If I had to put a time limit on it, I would say approximately two minutes.

**Q. Okay. And you say on the phone, just backing up to when Mr. Wyatt was in the car, you said, So you're not returning?**

A. I didn't -- I don't recall saying that.

**Q. Okay. I believe you just testified that you asked him, So you're not returning? And then you said, If you quit, I accept your resignation.**

**That's not your testimony?**

A. I asked Mr. Wyatt did he resign and he said yes.

**Q. Okay. You mentioned that you immediately called Dr. Cunningham after that phone call, correct?**

A. Correct.



**Q. Okay. And you asked her in that -- in that conversation or in later conversation what documentation needed to happen?**

A. When I called Dr. Cunningham, I asked Dr. Cunningham -- well, I told her obviously what just happened, and I basically asked her what were next steps.

**Q. And what did she say the next steps were?**

A. She told me in that particular time that she would get back with me, and she did and that's when we later said that I would definitely need to document it; obviously I had already done so, but send it to her.

**Q. Okay. When -- did you ask Mr. Wyatt to put his resignation in writing?**

A. No.

**Q. Are you familiar with the civil service rule relating to resignations?**

A. Yes.

**Q. Did you review those at the same contemporaneous time as what we're talking about?**

A. No. Mr. Wyatt verbally said that he quit. I didn't have any -- in my mind he wasn't coming back.

**Q. I see. Are you aware that Mr. Wyatt worked the rest of that day, came to the office, I**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 45

**believe it was 9:50. Would that sound about right when he came to the office?**

A. Ish, yeah.

**Q. In the morning?**

A. (Nodding head.)

**Q. Did you know that Mr. Wyatt was continuing to work the remainder of that day?**

A. I did not know.

**Q. You did not see him?**

A. I saw him. I didn't know what he was doing.

**Q. And you didn't stop him and say, Why are you here, you quit?**

**Did you ever do that?**

A. Yes, when he came to my office.

**Q. What about when you saw him later?**

A. I don't recall seeing him too much later the rest of the day.

**Q. When did you see him?**

A. When he came to my office.

**Q. After he --**

A. He said he quit.

**Q. After he left your office, you indicated that you saw him at the office, he was there all day? Is that correct?**

Page 46

A. I can't confirm if he was or not.

**Q. When is the next time you saw him after he left your office?**

A. I don't remember.

**Q. You remember seeing him though at the office?**

A. Absolutely. I remember him coming to my office, and he stated my testimony earlier and that was it. Any other recollections or conversations or was he in the office or was he in the building, I can't speak to that.

**Q. Okay. You're aware that Mr. Wyatt worked on February 6th, which is the next day, correct?**

A. I was not aware.

**Q. You saw him on February 6th, correct?**

A. I saw him in the parking lot, correct.

**Q. And Mr. Wyatt tried to get your attention, correct?**

A. I saw him in the parking lot. I don't know if he signaled and tried to get my attention or not, but I did see him in the parking lot.

**Q. Okay. Did you say to him, What are you doing here, you quit?**

A. No.

**Q. Have you ever used the F-word in**

Page 47

**conversations in the office before?**

A. In the office, I don't remember.

**Q. Have you ever used it in connection with any conversation with anyone who works for the County?**

A. I don't remember.

**Q. Did you -- Mr. Wyatt's office is across the hall from yours, right?**

A. Correct.

**Q. So would you say that Mr. Wyatt's office remained the same during the rest of the day of the 5th? It remained untouched?**

A. Yeah, probably untouched.

**Q. Did you see his office on the 6th?**

A. Yes.

**Q. Was it in the same condition?**

A. I had no reason to go to his office.

**Q. Was Mr. Wyatt's personal effects in his office on the 5th when you saw it?**

A. I'm not sure. I didn't go in his office. I did not enter inside of his office those days.

**Q. Did you receive any emails or text messages after the point that you say that you accepted his resignation from Mr. Wyatt?**

A. Yes, I did.

**Q. Can you describe them?**

Page 48

A. I'll have to pull them up.

**Q. Pull both emails and text messages?**

A. Text message. He asked me -- he asked me something to the nature of, If you need me to help on an assignment.

But if you need accuracy in that statement, I'm happy to provide it.

**Q. And that was on the morning of the 6th, correct, the day after you say he quit?**

A. I don't remember. I don't have them in front of me right now.

**Q. Okay. So more than one text is what you recall?**

A. I don't have that in front of me right now.

**Q. Okay. Well, when you received those text messages from Mr. Wyatt, did you respond, Why are you texting me about work when you quit?**

A. I did not.

**Q. Okay. Did you see that Mr. Wyatt's email account was disabled after he quit and you accepted his resignation?**

A. Did I ever see that his email account was disabled?

**Q. He reported to you, correct?**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM



A. Correct.
**Q. So if he quit in a curse-laden rage where he is pounding on the steering wheel and screaming at you, did you call HR?**
A. I talked to Dr. Cunningham, which is the appointed authority.
**Q. Did you call HR about his email account, phone, ability to continue County business?**
A. I did not. I talked to Dr. Cunningham about the next steps, and those would have been the things that I assumed that she had taken when I talked to her about next steps.
**Q. Your assistant is Gina, what is her last name?**
A. Pike.
**Q. Pike. Thank you. Eugenia, right?**
A. Yes.
**Q. She goes by Gina, correct?**
A. Yes.
**Q. Okay. Did Gina tell you that she spoke with Mr. Wyatt after he spoke with you on the 5th in the car?**
A. I don't remember.
**Q. There is a -- I'm missing the last name, I'm not as familiar with the people in your office.**



**There's someone with the last name Miller, correct?**
A. Patrick Miller, maybe.
**Q. Did -- did Mr. Miller indicate that he spoke with Mr. Wyatt after you spoke with him on the phone on the way into the office on that morning?**
A. I had no conversation with Dr. Miller. If you are referring to Dr. Miller, I had no conversations with him.
**Q. Did anyone indicate to you that they had spoken with Mr. Wyatt after the yelling, cursing, beating the steering wheel conversation happened with you when he was on the way to the office?**
A. I don't remember.
**Q. Okay. You never received anything in writing from Mr. Wyatt indicating that he had resigned his position, is that correct?**
A. No -- correct, I'm sorry, I did not receive anything from Mr. Wyatt.
**Q. And you're aware, because I believe you were copied on several emails, in which he denied that he ever resigned, is that correct?**
A. I was copied on one email.
**Q. Were you asked to sign a -- an affidavit after -- at some point after the phone call on the 5th?**



A. No.
**Q. Were you interviewed by anyone other than counsel and the two conversations that you mentioned with Ms. Cunningham regarding this incident that you have testified to today?**
A. No.
**Q. Was there any, to your knowledge, any investigation performed regarding the conversation that you have relayed to the Commission today?**
A. Can you explain "investigation"?
**Q. Yes. Did anyone investigate whether or not Mr. Wyatt resigned?**
A. Counsel did. Counsel asked me to give all communication --
**Q. I'm not asking about your conversations with counsel. Anything outside of conversations with counsel. Those are privileged. I'm not asking you to tell me anything about that.**
**Did anyone else to your knowledge other than counsel --**
A. Not to my knowledge.
**Q. And -- but you said that you were really shocked that this high performer, Mr. Wyatt, resigned so suddenly on the morning of February 5th, correct?**
A. It was odd.



**Q. Did -- did you think that that required a further conversation, investigation, written confirmation from Mr. Wyatt?**
A. After me asking him several times on the phone, as I remember, who was he talking to, was he okay, and he doubled-down and he continued to say the things that he said, I didn't think so.
**Q. Were there any witnesses to the conversation that you've testified to?**
A. Not on my end.
**Q. You conduct business on your personal cell phone through the County, correct, text messages, phone calls, emails, any of those?**
A. I don't know.
**Q. You don't know?**
A. I mean, I don't know. What do you mean by do I conduct business?
**Q. Do you use your personal cell phone to text about County business?**
A. I don't know. Maybe, maybe not. I don't -- I can't answer that question.
**Q. You testified that you documented everything and you sent it to Dr. Cunningham, is that correct?**
A. Yes.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 53

**Q. Who else?**
A. Well, I take -- give me one second, please.
**Q. Okay.**
A. I sent -- I actually sent the information to Sharon Gardner.
**Q. Not Dr. Cunningham?**
A. I sent the -- I sent my statement to Dr. Cunningham of what happened, that is correct.
**Q. And so what did you send to Sharon?**
A. Conversations that -- I mean, I'm sorry, screenshots that a conversation actually happened.
**Q. What screenshots?**
A. What do you mean what -- oh, what screenshots I sent or what screenshots in general?
**Q. What screenshots did you send to Sharon?**
A. I sent her, as I remember, phone calls, phone call logs for sure.
**Q. Did you send anyone else your statement or screenshots or any other information regarding the conversation that you allege happened?**
A. Outside of the -- outside of counsel, I don't remember, no.
**Q. Okay. You said that you had no problems with Mr. Wyatt's work, correct?**

Page 54

A. No.
**Q. Did you ever review him?**
A. We met every Friday -- well, we had a standing meeting every Friday. Sometimes they were earlier in the week, sometimes they were later in the week, but that was my time to review all of his standard work.
**Q. What projects did Dr. Wyatt -- or Mr. Wyatt have in flight at the time of this supposed conversation?**
A. I know we were really working in honest -- in earnest, I'm sorry, about physicians and their operational schedules. There were staffing patterns that we were particularly working on in terms of nursing, how many employees and how many care team members did we have per site; and we were also gearing up to work for -- work towards our OSV, which is short for on-site visit.
**Q. Okay.**
A. And there -- there may be more, but I would have to review the list.
**Q. You published Mr. Wyatt's role as a job description to be filled, correct?**
A. Correct.
MS. FRIERDICH: So at this time because we asked

Page 55

for documentation and it sounds like the statement by Mr. Melton and the screenshots were not produced to us, we ask for those to be produced at this time.
And that's all I have for you, Mr. Melton.
THE WITNESS: Thank you.
MS. FRIERDICH: Ms. Kaufman might have some redirect, but thank you for your time. Appreciate it.
THE WITNESS: Absolutely.

REDIRECT EXAMINATION

BY MS. KAUFMAN:
**Q. Thank you. I'll be real quick with you, Derrick. I promise.**
A. Sure. Take your time.
**Q. So -- well, I don't want to take everybody else's either.**
A. That's fair.
**Q. So you were asked a moment ago whether you contacted HR or made arrangements to have Mr. Wyatt's badge taken or his email account shut off.**
A. Um-hum.
**Q. Would that be your normal practice for an employee who resigns?**
A. Yes. What do you -- well, let me go back. Would it be the normal practice for me to contact them?

Page 56

**Q. Yes. Are you the one who has to do it normally?**
A. No. Dr. Cunningham.
**Q. Okay. And what about making the formal acceptance of a resignation, is that normally something you do unilaterally or something Dr. Cunningham does?**
A. No, I don't do it unilaterally. That's something Dr. Cunningham does as the appointed authority.
**Q. So did you feel you had anything left to do --**
A. No.
**Q. -- after contacting her and hearing, I'll take it from here?**
A. Absolutely, I feel like there was -- that was my point in asking her. I agree with you, I didn't feel like I had anything else to do.
**Q. Okay. And just to clarify, you met with Pete once when he returned to the office on February 5th, is that correct?**
A. That's correct.
**Q. Did you have any further interaction with him on February 5th or February 6th?**
A. No.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM



**Q. Other than seeing him in the parking lot?**
A. That is correct.
**Q. Okay. Thank you.**

RECROSS-EXAMINATION

BY MS. FRIERDICH:
**Q. I just have a couple of questions. You're able to see Mr. Wyatt's schedule, are you not, his calendar?**
A. Able to see it, yes, if I requested it. I don't have -- I never had access to his schedule. In fact, I did go to his admin assistant to look at his schedule. And there were -- at the time that I looked at it, along with Ms. Eugenia Pike, there was nothing on his schedule for that morning.
**Q. And you're talking about the meeting that he was at on February 5th, the morning of February 5th?**
A. Correct, the morning of February 5th. And he never told me he was at a meeting. He told me per se, I was at the podium.
So whatever that means. Maybe that's a meeting to him, but those were the words he gave me, "I was on the podium."
**Q. Okay. When you saw Mr. Wyatt in the office on the 5th, did you inquire about what his**



**schedule looked like, if he was having any meetings, conducting County business after he supposedly quit?**
A. He stated he was on the podium, and he mentioned, as I recall, he was doing something for me. I didn't really engage in that because at the time it really wasn't about where he was or what -- where he wasn't per se. It was more so about getting me the information, but furthermore, it was about how he conducted himself, telling me he fucking quit.
**Q. Right. I'm actually referring to later on after -- after your conversation in your office --**
A. Um-hum.
**Q. -- when you were aware he was in the office after he supposedly quit. And he quit in a what you're describing to be a curse-laden shouting, beating the steering wheel situation, but it didn't concern you to check his schedule, see what he's up to, why he's in the office after he quit?**
A. It was my understanding given the hostility of the conversation, I was under the assumption that, you know -- I'm not going to -- I'm definitely not going to say I was fearful or anything, but given the hostility of the conversation, it was in my best interest to stay away from Mr. Wyatt.
And to be quite honest, when I saw him



come in, I actually thought he was gathering his stuff, in which that was his right.
**Q. I think you said you saw him later on in the day, you knew he was there later on in the day?**
A. Well, we're referring back to when you asked me the question the first time.
**Q. Okay.**
A. Yeah.
MS. FRIERDICH: That's all I have.
THE WITNESS: Okay. Thank you.
MS. FRIERDICH: Thank you, I appreciate it.
MS. KAUFMAN: Nothing further.
THE WITNESS: Okey-doke.
MS. GOEN: Okay, Derrick, I am working to remove you. Give me one moment.
(WHEREUPON, Derrick Melton left the proceedings.)
COMMISSIONER BOOKER: Does the County have any other witnesses?
MS. KAUFMAN: Yes. We'd like to call Eugenia Pike next. And -- yeah, I think she is listed as DPH WebEx Event 1.
MS. GOEN: Thank you.
Okay. So it sounds like in open session we have two users with the DPH WebEx 1, both names, so



we are adding one. We'll have to confirm whether or not it is Ms. Pike or not.
MS. KAUFMAN: Okay.
(WHEREUPON, Eugenia Pike entered the proceedings.)
MS. GOEN: Okay. So we were looking to add Eugenia Pike. I do see that we have a DPH account in here. You are currently on mute, but could you confirm whether or not we have got the right person?
MS. PIKE: Yes, this is Eugenia.
MS. GOEN: Perfect. Thank you.
MS. KAUFMAN: Ms. Pike, I know you're not feeling tip top, and I appreciate you being here. Are you able to turn your calendar on?
MS. PIKE: I have not been able to turn it on. I'm not sure why. It is not even giving me the option of a video. Let me try it again.
(Discussion off the record.)
MR. GOLDKAMP: If you could swear Ms. Pike in, that is the usual procedure.
(WHEREUPON, the witness was duly sworn.)

EUGENIA PIKE,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 61

DIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. Thank you. Could you state your name for the record?**

A. Eugenia Pike.

**Q. And for our court reporter, could you spell it?**

A. Sure. E as in Edward, U, G as in girl, E as in Edward, N as in Nancy, I, A as in apple.

Pike, P as in Paul, I as in Igloo, K as in kite, E as in echo.

**Q. Okay. And if you need at some point to take a break today, please let us know, okay?**

A. Thank you.

**Q. What is your position title?**

A. Office supervisor for the FQHC Look-Alike.

**Q. And how long have you worked in that position?**

A. A year and -- about a year and four months, I do believe.

**Q. And what does that job involve?**

A. What does it involve?

**Q. Yes.**

A. My daily work usually consists of just supervising at the executive level of the FQHC, so I

Page 62

work closely with the senior leadership for the FQHC.

**Q. Okay. And would that include both Mr. Melton and Mr. Wyatt?**

A. Yes, uh-huh.

**Q. Okay. Now, if you had any, can you recall your interactions with either or both of those people on February 5th?**

A. Yes, I had interactions that day with both. Do you want me to -- where do you want me to start?

**Q. Let's start at the beginning. When did you first see Mr. Melton that day?**

A. As soon as he came in, I guess there was some urgency, so he -- he hadn't even taken his coat off. He was just asking if Pete was there, and we indicated that he wasn't -- we hadn't seen him. So Kathy and I were together, so he asked us to go search for Pete, try to contact him.

**Q. Okay. And can you describe Mr. Melton's demeanor for me?**

A. It was normal. He -- he just -- just needed to talk to Pete. He wasn't, like, rushing or anything like that. He was -- he was just his normal self.

**Q. Did you get the sense that he was angry?**

Page 63

A. No, no, he wasn't angry, no, not at all. Even during all of the time that we were looking for Pete, he and I are kind of joking about things, about Pete and, you know, like, you know, Pete's out doing other things a lot of times. And we always cracked jokes about it with him, so we were just laughing about some of those things.

**Q. Okay. And just to clarify, did you personally witness any conversation between the two of them that morning?**

A. No.

**Q. Okay. Did you hear from Mr. Wyatt later that morning?**

A. Yes. I -- we -- when we tried to contact him, I -- Kathy and Derrick, we -- well, we actually went to look and see if he had, like, a meeting on his calendar or something like that, you know, to where he couldn't be disturbed.

So Kathy showed us his calendar, and since there was nothing scheduled at that time, we -- I called him. He didn't answer. So I -- I sent him a text message just letting him know that Derrick needed to speak with him.

**Q. Okay. Did Mr. Wyatt ever call you back?**

A. He -- he did call. He did call maybe like

Page 64

five minutes later or something like that.

**Q. Okay. Do you recall what he said?**

A. Yeah, he was a little upset. He asked what the hell was wrong with Derrick, and he asked if I knew what Derrick was looking for or why he was looking for him. And I told him I didn't know, and I didn't want to actually -- I didn't want to talk about it, so I just kind of left it at that.

**Q. Okay. Did you see Mr. Wyatt in person that day?**

A. I saw him when he came in. He -- he stopped at my desk for a minute. He was just trying to show me that he did have something scheduled on his calendar. I informed him that that's not what was -- you know, that's not what we saw, and I just -- I just kind of left it at that. I talked to him to let him know that, you know, we -- we, you know, weren't trying to pry, you know, his privacy or whatever. It's just that Derrick needed to speak with him.

We did check the calendar. Like, if you were in a meeting, you know, we were not going to interrupt you or anything like that, but your calendar showed you were free, so that's why, you know, you got phone calls from both of us.

**Q. Okay. Did you have any more conversations**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


**with him that day?**
A. Yeah. So I work closely with him, so working on different things throughout the day, all day until time to go home at 4:30. He talked to me throughout the day about, you know, just different work products and stuff like that.
**Q. Did he mention Mr. Melton again?**
A. Yes, he -- he kept saying he needed to apologize to Derrick and that he wanted to talk to him face-to-face. Again, I didn't dwell on -- I didn't want any information about it. I did not know what happened, and I -- I was just kind of staying out of it. I didn't -- I just said if you need to talk to him, go ahead. You know, their offices are across from each other. So I just kind of kept my distance from it. I didn't know until the next day that -- what -- what actually happened. I was not aware.
**Q. Okay. So I do have to ask, at any point during your working relationship with Mr. Wyatt, had you witnessed him becoming upset or angry?**
A. Yeah, I have. I have.
**Q. Did that ever involve foul language?**
A. Yes.
**Q. Is there any incident in specific that you can tell me about?**


A. Well, when, let's see, that was in maybe January of '25. I think that might have been the first time I saw him actually get angry. He -- we were in the middle of prep for the -- our HRSA -- the HRSA site visit. To actually gain the FQHC designation, the federal government comes on site and does a site visit to check and see if you're compliant with all of their guidelines in order to become a Look-Alike site.
**Q. Okay.**
A. So -- so part of that site visit, they require us to actually upload documents and things, and so we had received an email stating that the things that we submitted were not right, incorrect. And so we all wind up working until like 6 o'clock that night, and Pete was upset because he was already gone and had to come back into the office.
**Q. Do you remember the language he used?**
A. Yeah.
**Q. I'm going to ask you to put your politeness aside and quote it for us just the once.**
A. He stated that this was bullshit, and he was just swearing and mad. But I just told him, you have to take that up with Derrick. Don't -- I don't want to hear it. Just take it up with Derrick. I


don't want to hear it, so.
**Q. And did you wind up reporting that incident to anybody?**
A. No, no. Only the people in the room actually heard it.
**Q. Okay. All right. I think that is all I have for the moment. I think Ms. Friedrich may have some additional questions for you, if you stay on the line.**
A. Okay.

CROSS-EXAMINATION

BY MS. FRIERDICH:
**Q. Hi, Ms. Pike. I'm Katherine Frierdich, counsel for Pete Wyatt. Thanks for being here. I understand you're not feeling well, so thank you especially for your time.**
**Just to -- just to back up a little bit, you spoke with Mr. Wyatt on the morning of February 5th while he was driving into the office, correct?**
A. Yes.
**Q. Did he use the F-word in his conversation with you?**
A. Yeah, he was -- he was swearing. He was just asking, like, what the is wrong with Derrick or,


you know, whatever. I didn't really want to -- I know when he gets mad -- I can tell when he is mad. So when he gets mad like that, I don't really like to engage.
**Q. Did he tell you that he quit his job?**
A. No, he did not.
**Q. Did he ever tell you that he quit his job on February 5th as you were working together?**
A. No.
**Q. Have you ever heard him say "I quit"?**
A. No.
**Q. So you did not witness the conversation between Mr. Melton and Mr. Wyatt on the morning of February 5th?**
A. No.
**Q. And were you ever asked to sign an affidavit relating to this situation?**
A. An affidavit?
**Q. Yes.**
A. I -- I was told to give a statement. I don't recall signing an affidavit.
**Q. Okay. Who asked you to give a statement?**
A. I think Dr. Cunningham needed a statement of what happened that morning.
**Q. And you prepared a written statement**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 69

**when -- when did you do that?**

A. I don't remember. I think it was -- actually, it was Friday. It was that Friday. I didn't sign an affidavit. I don't recall signing an affidavit. I just told -- like everything that I just said is what I told them.

**Q. What -- do you remember what time on Friday you drafted and submitted that statement?**

A. No. I was talking to Sharon Gardner in our office.

**Q. But you submitted a written statement?**

A. No. She took my statement on what happened that day.

**Q. Okay. What time was that on the 6th?**

A. I don't know. I can't remember. I can't remember what time it was. It was later in the day.

**Q. So afternoon, would you say?**

A. Yes, um-hum, yeah.

**Q. Okay. And Sharon Gardner is Dr. Cunningham's assistant, is that correct?**

A. Yes.

**Q. Okay. And was her counsel present, or was it you and just Sharon?**

A. Well, she was doing what's normal in incidents at work. She actually takes a statement

Page 70

from everybody involved.

**Q. Okay.**

A. It was just --

**Q. Just you and Sharon?**

A. Yeah, it was just me and Sharon, uh-huh.

**Q. Do you know anybody else who gave Sharon a statement?**

A. I don't know.

**Q. Okay. Did you see Mr. Wyatt leaving Mr. Melton's office on the morning of February 5th?**

A. No.

**Q. When you were working with Mr. Wyatt on February 5th, this was after the phone call when he was driving, was he agitated while working on the 5th?**

A. On the 5th he was just -- he just said that he -- he was feeling bad of -- from what happened with him and Derrick, and he just wanted to talk to him and apologize to him. That's -- that's what he kept -- he kept repeating to me that day throughout the day.

**Q. Okay. Did he say exactly what he wanted to say to Mr. Melton?**

A. The only thing he said to me was after -- after he got there and saw and understood everything that happened, he needed to talk to Derrick and

Page 71

apologize. He never told me what for. He just kept saying he needed to apologize.

And then later in the day after I cancelled their meeting, he just started asking me was Derrick angry with him. He kept asking me, Is he mad? He's mad Gina, isn't he mad?

And I told him, If Derrick is mad, he did not indicate that to me, because I didn't know Derrick was mad.

**Q. I see. How long did you work on the 5th?**

A. I'm sorry?

**Q. How late in the day were you at the office on the 5th?**

A. I think Pete and I left at the same time, 4:30.

**Q. Okay.**

A. Yeah, we did, because we talked on the way home, yep.

**Q. Okay. And then on the 6th, did you see Mr. Wyatt in the office?**

A. No, I did not.

**Q. Did you work with him at all over email or text message? Did you talk to him on the phone --**

A. Yes.

**Q. Did you have any interaction with him**

Page 72

**on -- on the 6th?**

A. Yes. I called him that morning. I can't remember what time it was. He wasn't answering, so I sent him a text. I just had questions in regards to another staff member. And eventually he called me back and he told me where he was, but I can't remember. And he told me that he had -- he just went over his day, like his meetings and things like that.

**Q. Okay. And you take care of Mr. Melton's calendar, correct?**

A. Yes.

**Q. And on the 5th, did you cancel a -- their weekly one-on-one meeting for the 6th?**

A. Yes. So that's when Pete really started asking if Derrick was angry with him. But I -- I -- I -- so Derrick had several meetings for the next day off site, and so that's why I thought he was cancelling.

**Q. Is it unusual that Derrick cancels the one-on-one meetings?**

A. Yeah, yeah. Like I said, he had -- I think that was -- they had Black history events in the community, and he was scheduled to speak at some of those. So he -- he -- yeah, he -- he needed to cancel the meetings. Well, he didn't tell me why. He just

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 73

said cancel the meeting for tomorrow. I just assumed it was for -- because he was going to be out in the public.

**Q. Was it unusual for Mr. Melton to cancel the one-on-one meetings with Mr. Wyatt?**

A. No, that's not unusual.

**Q. Okay.**

A. It's actually quite normal. So I think that's why I was kind of concerned when Pete started asking is Derrick angry. I didn't understand why he kept asking me that.

**Q. And so just to be clear, you did not witness any conversation between Mr. Melton and Mr. Wyatt in the office on February 5th?**

A. No. He just -- I guess after he talked to Derrick, he called me. And, again, this is normal, you know, he called -- he'll call me to get clarity on what Derrick needs from him or, you know, things like that, so. But he was -- when he was -- he was mad, so I didn't want to talk -- I don't talk to Pete when he is mad. I wait until he cools off, so.

**Q. And I think Ms. Kaufman asked you about one incident in which you said that Mr. Wyatt was angry.**

**Have you ever reported Mr. Wyatt being mad**

Page 74

**to a superior, to HR, ever?**

A. No.

MS. FRIERDICH: That's all I have for Ms. Pike.

Thank you so much for your time.

REDIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. A quick follow-up question.**

A. Okay.

**Q. Thank you.**

**Ms. Pike, you said that you did not witness visually Mr. Wyatt going in or out of Mr. Melton's office the morning of February 5th. Does that mean it didn't happen or just that you didn't see it?**

A. Just that I didn't see it.

**Q. Okay.**

A. So their offices are right across from each other, and mine is kind of down the way. So if they talked, I may not have seen it. I don't have, like, line of sight to their offices.

**Q. Okay.**

A. If that makes sense.

**Q. Yes. Thank you. I don't have anything more.**

A. Oh, okay.

Page 75

MS. FRIERDICH: Thank you.

THE WITNESS: Is that it?

MS. KAUFMAN: Yes, ma'am. You are good to go rest.

THE WITNESS: Okay. Thank you. Thank you.

(WHEREUPON, Eugenia Pike left the proceedings.)

MS. GOEN: Okay. Ms. Pike has been removed.

MS. KAUFMAN: Okay. Could we bring in Ms. Gardner?

MS. FRIERDICH: Just for the record, I just want to request a copy of the statement given by Ms. Pike to Ms. Gardner, as it is not privileged and we did request documents. We were not provided them. Thank you.

MS. GOEN: You said Sharon Gardner?

MS. KAUFMAN: Yes.

MS. GOEN: Thanks.

COMMISSIONER BOOKER: County, do you have any other witnesses?

MS. KAUFMAN: We do have Dr. Cunningham, but I think that should be pretty brief.

COMMISSIONER BOOKER: Would you like to call her now?

MS. KAUFMAN: Well, we have Ms. Gardner, also

Page 76

hopefully quite brief.

COMMISSIONER BOOKER: Who would you like to call now?

MS. KAUFMAN: Sharon Gardner, please.

(WHEREUPON, Sharon Gardner entered the proceedings.)

COMMISSIONER BOOKER: It looks like she's in here now?

MS. GOEN: No, we're working on it.

COMMISSIONER BOOKER: Oh, it looks like she's in here.

MR. GOLDKAMP: Mary Gardner is --

COMMISSIONER BOOKER: Oh, that's a different Gardner. I see.

MR. GOLDKAMP: They are two different people.

COMMISSIONER BOOKER: A different Gardner, yes.

MS. GOEN: Okay. But we do now have Sharon. Can you hear us?

MS. GARDNER: I can hear you. Can you hear me?

MS. GOEN: You're a little quiet, but I can hear you.

MS. GARDNER: Okay. Let me turn my volume up a little bit.

(WHEREUPON, the witness was duly sworn.)

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 77

SHARON GARDNER,
called as a witness herein, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. Ms. Gardner, could you spell your name out for the court reporter here?**

A. Sure. First name, S-h-a-r-o-n. Last name, G-a-r-d-n-e-r.

**Q. All right. And what is your title, Ms. Gardner, with the County?**

A. I am the executive assistant to Dr. Cunningham.

**Q. How long have you worked in that position?**

A. I have been in this role since October 2024.

**Q. And had you held any other positions with the County before?**

A. Yes. I actually started in January 2011 as the Public Health Department director of human resources, and then in about October or -- in 2022, I went to County HR as a generalist and then, of course, back to the Health Department.

**Q. Okay. And, Sharon, what sort of interaction, if any, did you have with Mr. Wyatt on a**

Page 78

**regular basis?**

A. On a regular basis, he would -- we'd talk about personnel matters, he may seek my advice, and then from time to time we'd have small chat.

**Q. Okay. Did he ever express any dissatisfaction with his job to you?**

A. We never had any -- no, we never had conversations about that.

**Q. It's not really the sort of thing you talk about?**

A. No, we did not.

**Q. Okay. Did you interact with him directly on February 5th?**

A. No.

**Q. Okay. Okay. Were you informed at some point that he had resigned?**

A. Yes.

**Q. Okay. And who told you that?**

A. Dr. Cunningham told me that.

**Q. Okay. Did Dr. Cunningham have any other direction for you?**

A. Yes, she did. She actually asked me to accept Pete's resignation on her behalf.

**Q. Okay. And is that something you had done for her before?**

Page 79

A. Yes, yes, I do.

**Q. Okay. Now, when was that, February 5th or the next day?**

A. Actually, it was on February 6th that she asked me to accept his resignation.

**Q. Okay. And did you have any direct interaction with Pete on that day, February 6th?**

A. I did, yes.

**Q. And how did you wind up seeing -- seeing Mr. Wyatt that day?**

A. He actually came into the building. So I asked Dr. Cunningham if I should accept on her behalf in person, and she said yes, so I actually talked to him then.

**Q. Okay. Now, after you accepted the resignation, did you have any further conversation with him?**

A. Yeah, we -- I did. He actually told me that he didn't -- he didn't know what I was talking about, so I just asked him if he had talked to Derrick on the phone or in person. He said no, he hadn't talked to him at all. And after -- after a while, he changed his answer to say that he actually did talk to him.

**Q. Okay. So how did he wind up changing his**

Page 80

**answer? Did you repeat the question?**

A. I had to repeat the question. I think I repeated the question about at least three times. The first time I asked him if he had talked to him.

You know, he said no, he hadn't talked to him. He repeated that several times. And then he said, you know, he had texted him and the text had asked him to call Derrick.

And I said, Well, did you call him?

And then that's when he admitted, Well, yeah, I guess I did talk to him.

And then later in the conversation, I asked him if he had gone into his office to talk to him.

He said no. He said that a couple of times.

I asked him if he remembered using the F'ing word in his conversation with him.

And then that's when he said, Oh, I did talk to him. He mentioned that his conversation had gotten heated and -- and that he did remember talking to him, so.

**Q. And what was the answer to the question specifically about using the F-word?**

A. He said he didn't remember.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM



**Q. Okay. Okay. And after that verbal conversation, did you do anything else to follow up on the resignation acceptance?**

A. I sent the email too to follow up.

**Q. And what did the email communicate?**

A. The email just said, on behalf of Dr. Cunningham, as I usually do, your resignation has been accepted, you know, wish you the best with your future endeavors.

MS. KAUFMAN: Okay. Thank you. I don't have any other questions.

CROSS-EXAMINATION

BY MS. FRIERDICH:

**Q. Hello, Ms. Gardner. My name is Katherine Frierdich. I am counsel for Pete Wyatt. Thank you so much for being here today. I just have a few questions for you.**

**Are you aware that the conversation that was alleged to have been had between Mr. Melton and Mr. Wyatt was in the morning of February 5th?**

A. I was aware that the conversation happened February 5th. I'm not sure what time of day it was.

**Q. Okay. And it was your understanding that Mr. Wyatt was cursing at Mr. Melton and -- on the phone or in his office?**



A. On the phone.

**Q. Okay. And you heard from Ms. Cunningham on the 6th, February 6th that Mr. Wyatt had resigned, is that correct?**

A. That is correct.

**Q. And you took a -- we just heard from Ms. Pike that you took a statement from her in the afternoon of the 6th?**

A. I did.

**Q. Did you take any other statements from anyone?**

A. I did not.

**Q. Okay. What time was it that you -- was it -- I believe it was about 12:50 that you confronted Mr. Wyatt in the office on the 6th, is that right?**

A. That sounds about right, yes.

**Q. Okay. And would you -- would it be fair to say that Mr. Wyatt was surprised to learn that his resignation had been accepted?**

A. Yes, that would be fair to say.

**Q. Did he tell you that he did not resign?**

A. He did. He said he did not resign, that is correct.

**Q. Okay. And you have -- you have experience with HR, you said, is that right?**



A. I do.

**Q. Did -- once you received information that there had been a curse-laden conversation, did you report that to anyone?**

A. Could you repeat that question again? I didn't hear the entire question.

**Q. Did you report that you had heard that there was a curse-laden conversation between Mr. Wyatt and Mr. Melton to HR?**

A. No.

**Q. Did you call security to escort Mr. Wyatt out of the building at around 12:50 on the 6th?**

A. I did not.

**Q. So if security was there, it wasn't because of you?**

A. Security might have been present in the vicinity, but in terms of him -- them or me, or me knowing of anyone asking them to escort him out, I am not aware of that. As a matter of fact, I saw him walk out. I didn't see security with him.

**Q. Ms. Cunningham -- Dr. Cunningham wasn't in the office on the 5th or the 6th, was she?**

A. Dr. Cunningham was in the office on the 6th. I'm not sure about the 5th. I believe she was.

**Q. Why did she not communicate with Mr. Wyatt**



**directly then?**

A. It is generally the practice to have me accept on her behalf.

**Q. Okay. Did Mr. Wyatt curse at you when you talked to him at 12:50?**

A. He did not.

**Q. And at that time you told him that you needed to collect his badge, phone, and computer, is that correct?**

A. That is correct.

**Q. Are you aware of any other investigation of the matter between Mr. Wyatt and Mr. Melton other than the statement that you took from Ms. Pike?**

A. I am not.

MS. FRIERDICH: Okay. Thank you. That's all I have.

THE WITNESS: Should I get off the call now?

MS. KAUFMAN: Yes. I don't have any redirect for you, Sharon. Thank you.

MS. FRIERDICH: Thank you.

THE WITNESS: Okay. Bye-bye.

(WHEREUPON, Sharon Gardner left the proceedings.)

MS. KAUFMAN: Okay. Last person we've got to speak to is Dr. Kanika Cunningham.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 85

MS. GOEN: Okay. Give me one moment.
(WHEREUPON, there was a short interruption due to technical difficulties.)
(WHEREUPON, Dr. Kanika Cunningham entered the proceedings.)
(WHEREUPON, the witness was duly sworn.)
DR. KANIKA CUNNINGHAM,
called as a witness herein, having been first duly sworn, was examined and testified as follows:
DIRECT EXAMINATION
BY MS. KAUFMAN:
**Q. Thank you. Dr. Cunningham, could you spell your name for the court reporter?**
A. Yes. K-a-n-i-k-a, C-u-n-n-i-n-g-h-a-m.
**Q. Okay. And what is your position with the County?**
A. I am the director of the Department of Public Health.
**Q. All right. And how long have you worked in that position?**
A. Since January of 2023.
**Q. Okay. Did Mr. Wyatt report directly to you --**

Page 86

A. No.
**Q. -- in his position?**
A. No.
**Q. To whom did he report?**
A. Derrick. And I'm sorry, there is an echo on my end. Can you all not hear it?
**Q. We can hear it, but you're still audible if we listen carefully.**
MR. LIVASY: If you turn down the volume all of the way on your computer and only use your phone audio to talk to us and listen, that should remove that echo.
THE WITNESS: Okay.
BY MS. KAUFMAN:
**Q. All right. Let's give it a go.**
**As of February 5th, 2026, were you contemplating disciplining Mr. Wyatt for any reason?**
A. No.
**Q. Were you contemplating terminating him for any reason?**
A. No.
**Q. Were you generally satisfied with his job performance?**
A. Yeah. I know deposition is a little different because we're FQHC and some people don't

Page 87

understand the specific federal guidelines specifically called HRSA, but I think kind of where he was with his experience and coming in understanding HRSA, I didn't have any concerns. I know there was a steep learning curve there.
**Q. Okay. Dr. Cunningham, are you the appointing authority for DPH?**
A. Yes.
**Q. And what does that mean with respect to your personnel decisions?**
A. All of the hiring and firing, termination, disciplinary, those decisions, corrective actions, those decisions come up to me.
**Q. Are you also acceptable -- or are you also responsible for accepting resignations?**
A. Yes.
**Q. And before February 5th, 2026, had you ever accepted a verbal resignation?**
A. Yes, um-hum.
**Q. Had you ever accepted a resignation that was not in good standing?**
A. Yes, um-hum.
**Q. Okay. And in the case of a verbal resignation, was that something you'd have to witness directly in order to accept it?**

Page 88

A. No.
**Q. So how would you -- how would you learn about a verbal resignation then?**
A. A lot of times it's the department, depending on what level it is, but it would escalate up like higher manager, get the division leader, get the executive leader, get my -- my team. I know a lot of times, the executive leaders try to kind of give me a heads-up if there's any concerns coming up, but a lot of times, it's filtered up through the hierarchy of leadership and then it will come up to me.
**Q. Okay.**
A. But, yeah, there's no way for me to be -- you know, we have nine locations and, you know, I can't be at every single location involved directly in every personnel decision, you know, actually see every single thing.
**Q. Okay. And I do want to clarify, is this -- a verbal resignation, is this something that's happened once before or a handful of times or a lot of times?**
A. I can think of a few times that it has happened. I know, of course, it happened, like, before me, and, again, it goes back to, you know, this is somebody just resigning and not desiring to come

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 509 of 1127 PageID #: 512



Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 89

back and work for the County. But I can recall a few since I've been here that this has happened.

And normally, it's -- it's either, you know, there's a heated situation and they'll call me, you know, run a situation by me and then, you know, and then I'll accept it. I'm trying to think of -- but, yeah, there are some examples. I don't know if you want me to share those.

**Q. No, I'm all set.**

**Let's see. Did you speak directly to Mr. Wyatt on February 5th?**

A. No.

**Q. What about Mr. Melton?**

A. Yes.

**Q. Okay. And how did Mr. Melton contact you?**

A. He called me.

**Q. When?**

A. It was that morning I think right after the conversation between him and Pete. Like, I think, like, immediately right after the conversation.

**Q. Okay. And what did he say?**

A. Well, he was definitely upset and he explained the whole situation to me with, you know -- it started off earlier, I needed information to give back to our County counselor, and I needed very

Page 90

specific information. And I think that is where the interaction happened between him and Pete, and so he called me letting me know what happened during that phone call.

And it was, you know, he did say -- I don't curse, so, I F'ing -- you know, he said he F'ing quit, and he explained all -- everything to me. And I will say there was a conversation too where I was a little concerned about his mental health, like, you know, is everything -- is everything okay with him. And, you know, accepted his resignation and that was -- that was it.

**Q. Okay. And now did you have any interaction with Mr. Wyatt or did you accept his resignation indirectly?**

A. I accepted it indirectly, no interaction with Pete. It was through Derrick. And that's normal, yeah.

**Q. And let's see. Okay. And did you have -- who accepted the resignation on your behalf?**

A. Oh, like, who wrote -- what do you mean? Because I accepted it and then -- when Derrick called me.

**Q. Did you have anybody else speak to Mr. Wyatt over the next couple of days?**

Page 91

A. Oh, yeah, yeah. So Sharon, my assistant, she normally either sends emails or directly deal with employees.

**Q. Okay. And is that what happened in this case?**

A. Yes.

**Q. And did Sharon give you any more information about her conversation with Mr. Wyatt?**

A. Yeah, that was that Friday, and that was -- so Sharon was actually in the process of sending him the email and then he was walking in. I think it was that afternoon, maybe around 12-something probably. And so since he was walking in, and I said, Well, just go ahead and tell him, make sure we get his ID badge, his laptop, and then we can still follow up with the email afterwards.

So when he -- I sat in my office, and then Sharon, I know she had wanted to have security; and that's standard to have security by for just in case something happens. And then I was in my office, and then the next thing I remember Billy knocked on my door and told me to stay in my office, don't come out, just because I think there was some escalation in Pete's voice, his tone, and I was -- it was shared with me that security had walked him out.

Page 92

And then Sharon came to my office and let me know what -- what Pete had shared. And there was some inconsistencies from what he shared with Sharon and based off of the situation that happened. And so then I just directed Sharon just to still follow up with that email because she had collected all of his company equipment and ID at that time.

**Q. Okay. And what do you mean by "inconsistencies"?**

A. So the one thing about the cursing back-and-forth -- well, first it was "that conversation didn't happen," and then somewhere along the conversation, I guess he shared with Sharon or Sharon saw that a conversation did happen; and then Pete had admitted, well, yeah, they did have a conversation, but it wasn't a heated conversation. And then it ended up coming out that, yes, it was a heated conversation.

So it sounded like there was a lot of back-and-forth and, you know, that to me that it wasn't -- it wasn't straightforward or direct. And so she was just sharing those inconsistencies when she was -- when he was talking to her.

**Q. Okay.**

A. And she knew about the situation because

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 93

she is my assistant who typically works with me on these issues and work with HR legal.

MS. KAUFMAN: Okay. All right. I don't have any other questions for you, Dr. Cunningham.

THE WITNESS: Okay.

CROSS-EXAMINATION

BY MS. FRIERDICH:

**Q. Hi, Dr. Cunningham. I'm Katherine Frierdich, counsel for Pete today, and I appreciate you being here. I do have some questions for you.**

**As the appointing authority, you indicated that you accept verbal resignations and that they can be indirect. In any of those instances, were they from someone in your C-suite?**

A. Yeah, they're always from our C-suite when they come up to me. I can't recall a time in which it came from some other route. It always goes through the executive leadership.

**Q. My question is, the verbal resignation coming from someone in your C-suite?**

A. Yeah, it can -- it comes up through them to communicate to me. So like a hiring manager or firing manager, they wouldn't come directly to me.

**Q. My question is, did a -- did you accept a verbal resignation from a member of your C-suite that**

Page 94

**was not made directly to you in the past other than Mr. Wyatt?**

A. I believe I'm answering your question.

**Q. Yeah, I'm sorry if I'm not being clear.**

**So did -- in the past, did someone in your C-suite verbally resign, not to you, but it was reported to you and you accepted the resignation as reported by somebody else?**

A. Yes.

**Q. And who was that?**

THE WITNESS: Is Noah okay -- is it okay for me to tell the employee's name?

MS. KAUFMAN: Yes.

THE WITNESS: Okay.

BY THE WITNESS:

A. Well, there are two I'm familiar with. This was one that was before Pete was here, back in like 2024. This was an employee named Rachel. And then the second one -- actually, this one was Will Bogan who reported to Pete, and that was another example of a verbal resignation.

And then also at our animal care and control, there was another employee who kind of similar, said "I quit" and walked off the job, and I accepted a verbal resignation. And that was toward

Page 95

the end of like 2025. I can't remember that employee's name because he wasn't employed long.

**Q. And were Rachel or Will part of the C-suite?**

A. No. They were not, but it came up through the C-suite to me.

**Q. Okay. But you just answered my question finally. Thank you.**

**So is it -- and you just mentioned a verbal resignation with somebody walking off the job, so is it typical that a verbal resignation then would result in that person not continuing to work in their role after that resignation?**

A. Right, um-hum.

**Q. Okay. So just to -- because there was an echo, is that correct?**

A. Yes.

**Q. Okay. Thank you. Okay. So you at the beginning of your testimony said you didn't have a problem with Pete or his performance, right?**

A. Correct.

**Q. And you didn't talk to him at all about this supposed resignation, correct?**

A. Correct.

**Q. Were you in the office on February 5th?**

Page 96

A. I was in the office -- I think that afternoon I was in the office. I wasn't there in the morning.

**Q. Did you see Pete in the office?**

A. I don't recall seeing him.

**Q. Did you know that he was in the office?**

A. Say it again.

**Q. Did you -- did you know that he was in the office?**

A. I actually don't recall seeing him that day or Friday actually.

**Q. Did anyone tell you that Pete was working in the office?**

A. No, no. It was my understanding that he got his stuff and left.

**Q. Who told you that?**

A. That was Derrick. I think there was some interaction when Pete showed up to work, and I know Derrick -- I think he tried to talk to Derrick or something, and I don't know what the interaction was but I was under the impression that he was getting his stuff and left. I'm not sure. I didn't see him, but that was why he came in the office, to get his stuff.

**Q. I see. So let me repeat this back to you.**

**Derrick calls you, tells you that Pete,**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 97

**over the phone on his way into the office, resigned?**
A. Who was in the office, Derrick?
**Q. Is there a way, are you -- are you able to talk through your phone, or is there a way to --**
A. Yeah, I muted my computer. Unless, let me see if --
MR. LIVASY: Are the speakers from your computer still --
(WHEREUPON, there was a short interruption.)
BY MS. FRIERDICH:
**Q. So -- so just let me repeat that back to you so I understand. Mr. Melton calls you, says that on the way into the office, Mr. Wyatt resigned his position; he said "I quit." And you understand that there may have been a meeting in Mr. Melton's office thereafter, and then it's your understanding that Pete gathered his stuff and left?**
A. Yeah, that -- yes, that is my understanding, he was getting his stuff and he left, yeah.
**Q. Okay. Thank you.**
**You didn't witness the conversation between Mr. Wyatt and Mr. Melton, right?**
A. No, no.

Page 98

**Q. As the appointing authority, you're familiar with Rule 19 regarding resignations, right?**
A. Right. They're resigning in good standing or not.
**Q. Did you ask -- because you held people in high regard, did you ask him to submit his resignation in writing?**
A. No, because I would never talk to -- in a situation, I would never talk directly to the person that's being terminated. It always comes up through the executive team. So I would never go around a leader to talk to their direct report.
**Q. Did you instruct Mr. Melton to get the resignation in writing?**
A. No, because the civil service rules, that's if someone want to resign in good standing. So historically when we've accepted verbal resignations, that's not a standard to say, Hey, go back and have them send a letter. If you accept the verbal resignation and if somebody want to quit, then they're are able to quit, you wouldn't keep them on. So that's not -- that's not a standard.
**Q. Right. So verbal resignation not in good standing is typically, like, "I quit," pick up my stuff and leave?**

Page 99

A. Yeah, if they say "I quit," yes.
**Q. Okay. And there is a provision in the Rule 19 for someone who is presumed resigned who misses three days of work consecutively, correct?**
A. Um-hum, yep, yep, that is another one, um-hum.
**Q. Okay. Did you have any -- why did you not inquire with Mr. Wyatt with regard to whether or not the -- whether or not it happened and why?**
A. Because I don't ever talk to the -- I never go around leadership to get involved. If that's the case, I will be talking to everyone in my department that leaves. So I don't ever go directly and talk to them. That's not a standard.
**Q. Right. But I think you testified that nobody in your C-suite had verbally resigned prior to, and just up and left before, so this is a little bit different of a situation then?**
A. No, it's not. It's the same situation. I think when you were asking me and I answered it, this happens, and I don't go and -- so I had my -- so the C-suite, that's different. So we have -- our C-suite is made up of division leaders that report to the executive leaders.
The executive leadership, that is the

Page 100

leadership team that discuss with me. So that C-suite, they go and they speak with my executive leaders.
So, no, again, it would be a verbal resignation coming up to me, but I don't -- I would not get in the middle of the division leaders who we refer to as our C-suite -- and Pete would have been a part of the C-suite -- I would never -- it would never be a time where I would talk directly to them unless I didn't have an executive leader in the role; and then they all reported to me.
**Q. Okay. You said that you were concerned about Pete's mental health based on Mr. Melton's account to you?**
A. Um-hum.
**Q. Is that correct?**
A. Um-hum.
**Q. And so did you report the situation to HR based on your concern?**
A. So, no, I actually called a mutual friend of Pete and myself, and that particular friend gave some professional advice and I took a position of staying out of that. Now, I don't know if Derrick or anybody else provided those resources or that mutual friend provided those resources, but at that point I

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 101

just took -- it was a professional route.

And like I said, I was genuinely concerned. I think a lot of times with me that I'm often genuinely concerned about the individual, not just, oh, this is, you know, professional and you quit, but I often do ask questions.

There has been times in which, you know, we uncover other individuals on FMLA, and then that will completely change the entire discussion. So a lot of time bringing it up, it prompts the -- whoever is telling me this, it lets me know if there's other factors that I need to consider, like if there's an FMLA or if there are ADA accommodations. And none of that existed with Pete, so it's -- normally it's who I am to be able to make sure we're not missing anything.

**Q. And who is the mutual friend you called?**

THE WITNESS: Kate, is it okay for me to share?

MS. KAUFMAN: Yes.

BY THE WITNESS:

A. Rodney Gee, who is the director of administration.

BY MS. FRIERDICH:

**Q. It was my understanding that Mr. Melton did not report to you but reported to the -- the board, the civil authority -- I'm butchering it, I**

Page 102

**understand.**

A. No, no, Derrick reports to me. There's a dotted line to the board, but how the application is set up, Derrick fully reports to me.

**Q. Okay. Did it surprise you, then, that Mr. Wyatt was returning to work on the 6th when you learned that he was walking into the building?**

A. Yeah, I didn't know why he was coming. That's why I told Sharon to meet him and to grab security. I didn't know why he was coming into the building.

**Q. Okay.**

A. Yeah.

**Q. Okay. And you -- you perceived -- well, Sharon told you that Mr. Wyatt denied resigning, correct, when she spoke with him on February 6th?**

A. Yeah.

**Q. Okay. And you also received some emails from Mr. Wyatt emphatically denying that he resigned, correct?**

A. Um-hum.

**Q. Did you -- did you think that -- or did you ask for the situation to be investigated at that point?**

A. No. I did -- I did not ask for the

Page 103

situation to be investigated. I did speak with our County counsel's office when that information came over. I did read the email.

MS. KAUFMAN: (Inaudible.)

BY THE WITNESS:

A. The email -- did somebody interrupt me.

MS. FRIERDICH: I'm not -- I'm not asking her to discuss what she discussed with you as counsel.

MS. KAUFMAN: Well, that wouldn't have been me, but nonetheless, our office, so I appreciate it.

BY MS. FRIERDICH:

**Q. Yeah, so I'm not -- I don't want to know what you said or what counsel said to you.**

A. No, that's fine. So, yeah, I did do that, but then reading the emails, there was also some inconsistencies in the emails too. So I think you may have a copy of those.

**Q. Okay. And who did you ask to investigate?**

A. Well, it was a discussion with the County counsel's office.

**Q. Okay. So you didn't instruct anyone outside of legal to investigate?**

A. Well, I don't -- I don't instruct anyone. What it is, you know, I get their guidance, and then based off their guidance is when I would follow

Page 104

whatever direction they will tell you based on the situation. So I discussed with them and then followed their guidance.

**Q. So since you didn't communicate with Mr. Wyatt at all, you didn't tell him the reasons why he was being booted from the building or give him an opportunity to respond or instruct him about appellate rights, any of those things?**

A. That's not my role to do that.

**Q. Whose role is that?**

A. I mean, the employees, they often they can follow the civil service rules, and I think with Mr. Wyatt -- Mr. Wyatt, or Pete, reaching out to Matt Livasy, that's typically the route that employees will take when they want to go before the Civil Service Commission. They'll copy an appointed authority on the email.

But, again, I would not have this conversation directly with Pete because he didn't report to me. He is on that middle management. It's not standard for me to go around leadership to go and talk to their immediate supervisor -- to go and talk to the employee.

**Q. Okay.**

A. But there's no difference in this case. I

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 105

wouldn't have had a conversation with Pete.

MS. FRIERDICH: Okay. That's all I have. Thank you so much for your time. I appreciate it. Ms. Kaufman may have some questions for you.

REDIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. I do want to ask one final follow-up.**

**Dr. Cunningham, in any situation if you have had an employee resigned and you have accepted the resignation, do you have further direct communication with that employee?**

A. No, uhn-uhn.

MS. KAUFMAN: Thank you. That's all I've got.

MS. FRIERDICH: Thank you.

(WHEREUPON, Dr. Kanika Cunningham left the proceedings.)

COMMISSIONER BOOKER: Does the County have any other witnesses?

MS. KAUFMAN: No, the County has no other witnesses.

MS. FRIERDICH: Can I take a moment to confer with Mr. Wyatt and come back in a couple of minutes?

MS. KAUFMAN: I would love to use the lady's room, so I'm on board with that.

MS. FRIERDICH: Okay. All right.

Page 106

COMMISSIONER BOOKER: Okay. How many minutes, when should we come back?

MS. KAUFMAN: It's 2:32, so say five minutes? Is that enough time?

COMMISSIONER BOOKER: We will return at 2:37.

(WHEREUPON, a recess was had from 2:32 to 2:39 p.m.)

MS. FRIERDICH: So we would like to call briefly the -- the other two witnesses starting with Dr. Miller.

COMMISSIONER BOOKER: You may proceed.

MS. KAUFMAN: Okay.

COMMISSIONER NUNN: Ms. Frierdich, do you want to make an opening statement before you call your witnesses?

COMMISSIONER BOOKER: I believe they both did.

MS. FRIERDICH: Oh --

COMMISSIONER BOOKER: Oh, yeah, you -- you were supposed to, yes.

OPENING STATEMENT ON BEHALF OF THE APPELLANT

MS. FRIERDICH: Yeah, I definitely would love to. And certainly -- okay.

Yeah, so obviously we're here because there's a precedent being asked to be made by this Commission. The precedent is that someone in the

Page 107

County can resign for somebody else, and that's the message back to merit employees at the County. Somebody can call up the appointing authority and say you resigned your position and, guess what, you're out.

We've got, you know, one day you're sitting in your office and, you know, somebody walks up and says, Hey, we accept your resignation. And that's fine. Nobody asks you if you resigned, nobody investigated. It's all the word of one person. And that's enough for this Commission to say, We'll accept your resignation, and that's fine.

Dr. Cunningham actually confirmed what I suspected to be true, that a verbal resignation not in good standing is made by somebody who says, I quit, they pick up their stuff, they walk out the door, and they stop working. That is not the situation here.

Mr. Wyatt returned to work -- actually stayed at work the entire day of the 5th and returned to work on the 6th; in fact, had a meeting representing the County on the 6th, and then was told to pack up and leave based on one person reporting that he had resigned.

So it's sort of like resignation by hearsay that you're being asked to enforce here, and

Page 108

it's not the situation that Dr. Cunningham just told you is the situation where a verbal resignation is accepted by her.

So I'd like you to keep that in mind as we talk with Mr. Wyatt and what actually happened and the fact that he did continue to work and continued to represent the County and was summarily dismissed without anyone even speaking to him about it. And that is the precedent that they're asking you to set today for the merit employees of the County.

Okay. So at this time we'd like to call Dr. Miller, please.

MS. GOEN: Give me one moment.

MS. FRIERDICH: Thank you.

MR. LIVASY: While the next witness is coming in, I want to just out of respect for the Commission's time, ask everybody if they have a hard stop or any other obligations that we need to be mindful of this afternoon?

COMMISSIONER BOOKER: I don't.

COMMISSIONER NUNN: I'm fine today.

COMMISSIONER HOFFSTEN: Likewise.

MR. LIVASY: All right. Thank you all very much. I myself will have to exit the meeting at 3 o'clock.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 109

MS. FRIERDICH: Is that a problem, Mr. Goldkamp?
MR. GOLDKAMP: No. We can continue the hearing without Mr. Livasy.
MS. FRIERDICH: Okay. Thank you.
(WHEREUPON, Dr. Patrick Miller entered the proceedings.)
MS. GOEN: Okay. Dr. Miller, it looks like you joined us. Can you hear us?
DR. MILLER: Yes.
MS. GOEN: Thank you.
DR. MILLER: Can you see me?
MS. GOEN: We cannot.
MR. LIVASY: Dr. Miller, it looks like the camera lens --
MS. GOEN: Now we can. We've gotcha.
(WHEREUPON, the witness was duly sworn.)
DR. PATRICK MILLER,
called as a witness herein, having been first duly sworn, was examined and testified as follows:
DIRECT EXAMINATION
BY MS. FRIERDICH:
**Q. Hi, Mr. Miller. I'm Katherine Frierdich. I represent Mr. Wyatt in this appeal. I just have a few questions for you, and I really appreciate you**

Page 110

**being here today.**
**Can you describe where your office is located in proximity to Mr. Melton's and Mr. Wyatt's old office?**
A. I share a wall with Mr. Wyatt. I share a wall, so it's immediately next to it. Mr. Melton's office is directly across from Mr. Wyatt's.
**Q. Okay.**
A. So catty-corner.
**Q. Do you have a recollection of February 5th?**
A. February 5th being Thursday?
**Q. Yes.**
A. Yes.
**Q. Did you at any time witness Mr. Wyatt resign his position or say "I quit"?**
A. I did not.
**Q. Had you ever heard Mr. Wyatt talk about quitting his job?**
A. I had not.
**Q. There has been some testimony that Mr. Wyatt gets angry and curses at people in the office. Have you witnessed that?**
A. I have not.
**Q. Okay. On February 5th, you had a meeting**

Page 111

**with Mr. Wyatt, is that correct?**
A. That is correct.
**Q. What time is your meeting?**
A. We met more than once, if I remember correctly. We met around lunchtime-ish. Briefly, we talked for a few minutes but then we had a standard meeting that's in the afternoon.
**Q. And --**
A. Late afternoon, like 3:00 or 4:00. Sorry.
**Q. Okay. Thank you.**
**And then at any time, were you told by anyone that Mr. Wyatt had resigned his position?**
A. On Thursday?
**Q. Yes.**
A. No.
**Q. Okay. And did Mr. Wyatt indicate that he had gotten into an argument with Mr. Melton?**
A. No.
**Q. Did he seem agitated?**
A. No.
**Q. Did you have a meeting with him or see him on February 6th?**
A. I met with -- I was home on February 6th, so I did not meet with anybody in person on February 6th.

Page 112

**Q. Okay. Were you aware that Mr. Wyatt had a -- a meeting at Centene that day? Had you talked about that?**
A. On Friday?
**Q. Yes, a meeting on Friday?**
A. The 6th?
**Q. Yes.**
A. No, I'm not aware of that.
**Q. Did you exchange any phone calls, text messages, or emails with Mr. Wyatt on February 6th?**
A. Yes.
**Q. And can you tell me about those instances?**
A. Sure. On that Friday, I wasn't -- I didn't have my phone with me the whole day and I went to go check it, and then I saw a text message saying, Call me. It may have been, Call me ASAP. I'm not 100 percent sure, but it was, Call me.
So I called him, and he explained that he did not quit, that that did not happen, and he reiterated that a couple of times, and talked me through some of what happened on that Friday. Also, there was an email that went out from him saying similar things --
**Q. Okay.**
A. -- that he did not quit.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 113

**Q. Okay. Did you have any work-related interactions with him on February 6th?**
A. I do not believe so. I was at home, so I think this -- I don't know if this counts as a work-related interaction, just him telling me that he did not quit, but that was my interaction with him.
**Q. Okay. Back to generally in the office since you -- I believe you said you share a wall with Mr. Wyatt. How soundproof are the -- are the offices?**
A. They're not terribly soundproof. With me and Mr. Wyatt sharing a wall, I can usually hear rumblings if he's talking at all. Across the hall, I can usually not hear a normal conversation whatsoever, but if at a normal vocal level; but if the Cardinals hit a home run, I'm going to hear that.
**Q. Okay. Gotcha.**
**Have you ever heard through the wall Mr. Wyatt yelling at anybody, cursing at anybody?**
A. No.
**Q. Okay. Did you hear any elevated discussion between Mr. Wyatt and Mr. Melton on the morning of February 5th?**
A. I did not.
**Q. Okay. Did you in any -- have any interactions with Mr. Melton on February 5th that**

Page 114

**indicated that you had just met or you were going to meet with Mr. Wyatt?**
A. No, I do not believe so.
**Q. Who knew that you were meeting with Mr. Wyatt on February 5th?**
A. It was a standing meeting we had with the CFO, CMO and C -- or CMO. Yeah, me, Mr. Wyatt, and Mr. Ladevich.
**Q. I see. I see.**
A. It had been a standard meeting and everyone -- it had been ongoing for months. I don't know exactly how long, but for a while.
**Q. Okay. And who is your assistant?**
A. I don't know that I actually have an assistant. Possibly Kathy. I think she helps out in general and Eugenia helps out in general. Ms. Davis and Ms. Pike. Sorry.
MS. FRIERDICH: Okay. Okay. That's all I have for you today. Thank you so much for joining us. I really appreciate your time.
THE WITNESS: All right. Thank you.
MS. FRIERDICH: Ms. Kaufman may have some questions for you.
THE WITNESS: Oh, okay. Sorry.
MR. GOLDKAMP: Before Ms. Kaufman asks any

Page 115

questions that she may have, I would ask the Commission to reconsider their decision on allowing Dr. Cunningham to be in the hearing. I believe as the appointing authority, she is entitled to be in this hearing to hear the -- the testimony of -- of the witnesses.
So I would just ask the Commission to maybe reconsider their -- their decision that they made earlier.
COMMISSIONER NUNN: Dr. Cunningham has already testified?
MR. GOLDKAMP: That is correct.
COMMISSIONER NUNN: Okay.
COMMISSIONER HOFFSTEN: I would have no objection to her being present since she's already testified.
COMMISSIONER NUNN: Neither do I.
MR. GOLDKAMP: Just for formality purposes, can we have a motion on that?
COMMISSIONER BOOKER: So moved.
COMMISSIONER HOFFSTEN: Second.
COMMISSIONER BOOKER: All of those in favor?
COMMISSIONER HOFFSTEN: Aye.
COMMISSIONER NUNN: Aye.
COMMISSIONER BOOKER: Aye.

Page 116

MS. GOEN: Okay. Give me one moment.
Okay. So Dr. Cunningham is no longer in open session to be added. Is that something where I should reach out to her?
MR. GOLDKAMP: Yes, Jairris, if you could just send her an email to join the open session, and then we can just add her whenever she shows up. We don't need to -- we can continue with the hearing.
MS. GOEN: I will do that. Thank you.
COMMISSIONER BOOKER: Are we finished with this witness's testimony or does the County need...
MS. KAUFMAN: Thanks.
CROSS-EXAMINATION
BY MS. KAUFMAN:
**Q. Dr. Miller, I understand Mr. Wyatt reached out to you with his version of events. Was this something you spoke to anybody else about?**
A. My conversation with him? I absolutely spoke about it with my spouse. Yeah, I don't -- I tried not to get into gossip if I can avoid it as much as I can.
**Q. So it's fair to say that you did not have an interest in getting a story from Mr. Melton?**
A. No, I -- he did not bring it up, nor did I ask.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 117

**Q. Or Dr. Cunningham?**
A. Likewise.
MS. KAUFMAN: Thank you. Nothing further.
COMMISSIONER BOOKER: Would you like to redirect?
MS. FRIERDICH: No.
Thank you, Dr. Miller.
THE WITNESS: Thank you. Do I go now or -- last time I tried to go you all kept --
MS. FRIERDICH: Yes. Thank you.
(WHEREUPON, Dr. Patrick Miller left the proceedings.)
MS. FRIERDICH: Okay. So we'd like to call Damon Broadus, if I'm pronouncing that correctly.
MS. GOEN: Okay. One moment.
(WHEREUPON, Damon Broadus entered the proceedings.)
MR. BROADUS: Good afternoon.
MS. FRIERDICH: Good afternoon. I think we see your background but not you.
(WHEREUPON, the witness was duly sworn.)
DAMON BROADUS,
called as a witness herein, having been first duly sworn, was examined and testified as follows:

Page 118

DIRECT EXAMINATION
BY MS. FRIERDICH:
**Q. Okay. So, Mr. Broadus, my name is Katherine Frierdich. I represent Pete Wyatt in this appeal. And I just have a few questions for you, so this won't take long, but I really appreciate you joining us and giving us your time.**
**How often did you work with Mr. Wyatt in your position at the County?**
A. I would say regularly. As the deputy director of public health, I was regular integration with Pete as the COO.
**Q. Okay. And where -- can you describe where your office is in proximity to Mr. Wyatt's?**
A. Sure. I'm across the hall. There's a file cabinet in between our locations. I'm located between Mr. Melton and Dr. Cunningham.
**Q. Okay. So you just answered my next question about proximity of your office to Mr. Melton's office. So you share a wall with Mr. Melton?**
A. Yep.
**Q. Okay. How soundproof is your office? Do you hear conversations that are happening on either side of you?**

Page 119

A. They're rumblings, if you will, or you hear voices. You can't -- you know, clear audio sounds, no.
**Q. Right, okay. And on -- do you remember February 5th, the Thursday? Do you recall that day?**
A. Not exactly. I mean, it was a Thursday, like you said.
**Q. Well, do you recall hearing any elevated discussion in Mr. Melton's office that day, like voices elevated?**
A. I do not.
**Q. Okay. Would you have heard any -- if Mr. Wyatt was raising his voice in his office with his door closed, would you -- would you hear that in your office?**
A. If Mr. Wyatt was in Mr. Wyatt's office, I would not.
**Q. Okay. There has been some talk about Mr. Wyatt's conduct on the -- on -- in the -- in the business. Have you -- have you witnessed Mr. Wyatt raise his voice at people and curse at people?**
A. I have not.
**Q. Did you meet with Mr. Wyatt on February 5th?**
A. I did not. I'd have to look at my calendar, but I don't recall.

Page 120

**Q. Do you recall seeing him in the office?**
A. I'm sure I did.
**Q. Okay. And you don't remember any conversations you had with Mr. Wyatt?**
A. At a minimum, an exchange of pleasantries.
**Q. Okay. So suffice it to say that Mr. Wyatt did not tell you that he resigned his position that morning?**
A. No, he did not.
**Q. Okay. When you saw Mr. Wyatt, did he seem agitated?**
A. No, he did not.
**Q. On -- so let's talk about February 6th, that's the Friday, did you have any interactions with Mr. Wyatt over phone, text, or email relating to work, County work?**
A. He called me that afternoon. I don't recall the exact time, but it was in the afternoon.
**Q. Okay. Was that related to County work?**
A. Yes.
**Q. Okay. And so it was a conversation between you in your position and Mr. Wyatt as COO?**
A. Yes.
**Q. Okay. And that was in the afternoon of**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 121

**February 6th?**
A. Yes.
**Q. Were you aware that Mr. Wyatt had a meeting with Centene on the 6th?**
A. I did not.
**Q. In your interactions with Mr. Wyatt, did you ever find him to be disrespectful to you?**
A. Not to me, no, not ever.
**Q. Did you see him be disrespectful to anyone else?**
A. No, I haven't.
**Q. Okay. That's all of the questions I have for you. I appreciate your time. Ms. Kaufman may have some questions for you at this time.**
MS. KAUFMAN: No cross for this witness. Thanks.
MS. FRIERDICH: Thank you. You can -- you can depart, Mr. Broadus. Thank you so much.
(WHEREUPON, Damon Broadus left the proceedings.)
MS. FRIERDICH: Okay. At this time we'll call Mr. Wyatt to testify.
All right. So, Pete, here we go. Why don't you state your name for the record -- well, actually let's swear him in.

Page 122

(WHEREUPON, the witness was duly sworn.)
DUANE "PETE" CARLTON WYATT,
called as a witness herein, having been first duly sworn, was examined and testified as follows:
DIRECT EXAMINATION
BY MS. FRIERDICH:
**Q. Thank you. Mr. Wyatt, would you state your name for the record, please?**
A. My name is Duane Carlton Wyatt. I go by Pete.
**Q. Okay. And up until February 6th, you were chief operating officer for the Department of Public Health, correct?**
A. I was. I began August 19th, 2024.
**Q. Okay. Can you just give us a very brief description of your career preceding your COO position?**
A. Sure. I have -- I held senior leadership positions in the for-profit industry, the nonprofit industry, the healthcare industry, and I'm an instructor.
**Q. When you were interviewing for the COO role, who did you interview with?**
A. I interviewed with a host of people. I

Page 123

interviewed with Derrick, David Marker, Damon Broadus, and Dr. Nelson who at the time was the chief medical officer.
THE COURT REPORTER: It is very hard for me to hear the witness.
(WHEREUPON, there was a short interruption.)
BY MS. FRIERDICH:
**Q. Okay. Are you okay on your end, Pete?**
A. Sure, sure.
**Q. Okay. So you worked full time as a merit employee for the County, correct?**
A. I was, yes.
**Q. Yes. Okay. And what were your duties as COO?**
A. As COO, in a nutshell, all clinical operations, most of the clinical staff, and external responsibilities through outreach and program management.
**Q. Were you out of the office a lot in meetings in your position?**
A. Was I -- I'm sorry, say that again?
**Q. Were you out of the office in meetings a lot in your position?**
A. Often, yes.

Page 124

**Q. And we've heard you reported to Derrick Melton, correct?**
A. I did, yes.
**Q. Describe your relationship with Mr. Melton.**
A. I thought our relationship was professional. The -- the common day, nonsense banter was normal. As senior executives do, we disagree on strategy from time to time, but that was never anything that impacted work.
**Q. Was there a point at which, you know, you've been -- everyone who has testified has said that they didn't have a problem with you, you were a good employee, did a good job, et cetera.**
**Have you ever been confronted by anyone at the County complaining about your behavior?**
A. No, not officially from a performance perspective. There has been an employee complaint that was put in. I think we discussed that earlier.
**Q. Okay. Can you -- so obviously February 6th and February -- or February 5th and 6th are critical here. So can we start and you take us through the morning of February 5th?**
A. Sure.
**Q. Thank you.**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 125

A. On February 5th, I had a meeting that began at 8 o'clock in which I was helping a group of people prepare themselves for job interviews. That is not part of my County. That is just part of an organization that I belong to and part of the commitment.

The meeting was taking long. I began to get calls from Derrick. I actually got one or two calls from Derrick. I do not have my phone active in those meetings as a point of respect, but I do get notifications on my watch. So when he called twice, I picked up and shot him a text and said, Hey, I am wrapping up a meeting. I'll call you back shortly.

That happened. The meeting went a little longer. Derrick called again. I sent him a text. He asked me the question, how many people reported to me. I said six. And I said, I think, I will be able to verify that for you shortly.

The meeting continued. He called again. I didn't get it as I was getting into my car, but I called him back immediately as soon as the -- the car started and the system worked. What I realized on the phone was that Derrick got my information of six, but he focused on the part where I said, "I think, I will confirm it for you shortly." So he needed that number

Page 126

confirmed.

I was not locked into that he needed that number confirmed. The call went on. I said to him -- so everybody has talked about the F-word, and I need to put this F-word in context. Derrick pressed me about the importance of the number. What I couldn't understand was why he was pressing me on the number because that org chart that is active and current is on his assistant's wall. He has it electronically. It's on my wall in my office, and it's also on my assistant's office, Kathy's wall. So the data is available.

So he pressed, and I said to him, Just use the F'ing number, what the F.

Because I couldn't understand why we were pressing. He had the number. He has the -- where I'm going to verify that number is literally less than ten feet from his desk. So I'm confused.

So I made a couple of calls. I did call Gina, I did call Michael Ladevich. I made a couple of other calls on my way back into the office. When I got into the office, I went straight into Derrick's office. I knocked. I went in. My first question to him was, Do you still need that number verified?

He expressed to me that how important it

Page 127

was because he was trying to keep me out of a lawsuit. He said he was trying to protect me. He got up from his chair. He came over to me. He showed me his cell phone and he said, This is what I'm trying to get; and that's the question on his cell phone, on his private cell phone, how many people do you supervise.

I said, Okay, you've got the number, six.

He walked over and sat down. There was some other banter. Nothing was elevated. As he text, he said, You never should have treated me that way.

I didn't know what that was all about. I don't know what the lawsuit is all about. I don't know what he's trying to protect me from. I said to him, I'm out there trying to protect you too, and you shouldn't have treated me like that, as I turned and I left.

So when I left, I closed the door, no slamming the door, no voice. I saw Gina in the hallway. Her testimony was that she talked to me when I came into the building. That is not correct. It was after I talked to Derrick.

And she said, well, something about they couldn't find me, they looked at Kathy and it wasn't on Kathy's calendar. I pulled up my County phone, and I showed her on my County phone that my 8:00 a.m.

Page 128

meeting was on my County phone.

And she said to me, Well, it wasn't on Kathy's desk.

Okay. And I -- and we both laughed, and I said, Oh, I guess I just put this on my phone.

And we just parted. I went into my office, put my stuff down, and continued my day.

**Q. Okay. So let's stop right there and back up just a little bit.**

A. Sure.

**Q. So is it fair to say that you were a little frustrated --**

A. Sure.

**Q. -- as Mr. Melton is blowing up your phone during the meeting, right?**

A. Right.

**Q. And you don't understand why?**

A. I do not understand why.

**Q. And you felt that you had answered the question?**

A. I thought I did, yes.

**Q. So how long was your call with Mr. Melton where you supposedly F-bombed, cursed, yelled at him, was beating the steering wheel, et cetera, how long -- how long was that call?**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 129

A. 58 seconds.

**Q. 58 seconds?**

A. Yes.

**Q. That was the only call between you and Mr. Melton?**

A. That's it.

**Q. Okay.**

A. So in 58 seconds, I pounded on the steering wheel, I told him about my home life, and I quit in 58 seconds. Not possible how that all happens, but you guys heard the testimony.

In his office two to three minutes, four max. I went, I had committed to buy lunch that day for the front office staff. So I had left my office after I put my stuff down. I went and I bought them Imo's Pizza. The day continued.

I had various conversations with -- with the CFO. I had the meeting with Dr. Miller later, but before I had the meeting with Dr. Miller, I talked -- I heard -- had Gina's conversation and I talked with Kathy. And Kathy said, I couldn't -- I couldn't see it on your calendar.

And it was in that moment that I stopped and I sent Derrick another text, and I said, I just talked to Kathy and I just discovered that you did not

Page 130

have information that I had; meaning, he couldn't see that I had a meeting but I thought he saw that I had a meeting.

So I wanted to go and apologize to him because the context of my response to him on the phone was with the understanding that you knew I had the meeting, you know I don't use my phone during a meeting, but you kept blowing up my phone during a meeting after I said I was going to get back to you. So that was a respect thing for me.

So I knocked on his door. He wasn't available. Before I went downstairs to my meeting, I sent him that text, that I hope I could catch him before the end of the day. I didn't. I sat with -- at the end of the day, I had a meeting with Brenda Wetzel that went probably until 5:30, and it was kind of sharing with her what's going on because she had just lost her husband.

So I sat with her until about 5:30, and I came back upstairs. Derrick was gone. Gina had told me earlier in the day that the meeting was cancelled for Friday, so I worked from home. I sent Derrick a note, a text message, How can I help you with UDS, at 9:03 I believe it was on Friday morning. No response.

I went to my meeting with the Centene

Page 131

person. I had that meeting. I came back to the building I guess 12:30, 12:35. I saw Derrick walking out of the door going to his car, tapped on my horn. He noticed me. He continued to get in his car. I said so, you know, I just found a good parking spot. I didn't want to pass that up.

So I got in, and I moved a few steps towards his car. He sat there for a moment and he drove off. I thought I was going to be able to tell him about Centene, but he continued going. I didn't understand that. But all of this was before that I had known that I quit apparently.

**Q. Okay.**

A. So when I got to my office at 12:40, I am preparing for -- I have a meeting with my -- my health center leadership teams, and we were going to do training on Epic. And that was starting at 1 o'clock, and at 12:40, Sharon Gardner came into my office. I can't remember her words, but she said that she -- that Dr. Cunningham had accepted my resignation.

And as you can imagine the shock, I said, What resignation?

We go through -- her description to me was, Did you not go into Derrick's office yesterday?

Well, in a moment of shock, I'm trying to

Page 132

figure out where I resigned, when all of this happened, if this was even real. She asked did I not go into Derrick's office and cuss. I said no.

First, I couldn't remember going into Derrick's office in the context of quitting. So when she testified that I didn't remember, what I wasn't remembering was quitting. But I did go into Derrick's office.

She continued to say that Derrick had told Dr. Cunningham that I had resigned, and Dr. Cunningham had accepted my resignation. I said to her in that moment that this was an integrity problem and that it was going to affect the entire staff and trickle down to my patients.

I stood, I grabbed a couple of personal things, you know, and I walked out of my office at probably 12:50, 12:55, I'm not sure, in that range. Security had been called, and they were standing on the wall. I just walked calmly out and got in my car, and that was it.

**Q. Okay.**

A. So there was no cursing, pounding the wheel. There was no cursing in his office. And if you add all of the testified time, it's 58 seconds.

**Q. And you submitted your phone records with**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 133

**your appeal showing the 58-second call, correct?**
A. I did.
**Q. So it's in the record?**
A. It's in the record.
**Q. Did -- did Melton tell you to go home during that 58 seconds?**
A. Yeah, at the end of the call, at the end of the phone call, we were both heated, and after I said -- used the fricking -- use the F'ing number and what the F, he said, Well, just go home. Just go home.
**Q. So would you say both of you were frustrated at this point?**
A. Oh, extremely frustrated, but that's -- that's not something to concern yourself with.
**Q. So there was testimony that -- or I think it was County counsel, made an argument that you didn't deny quitting until you were told that Dr. Cunningham accepted your resignation. Do you recall hearing that?**
A. Right, that's the first -- that's the first I had ever heard of it.
**Q. So you didn't know that Mr. Melton had resigned on your behalf until Sharon came and told you that your resignation was accepted, is that correct?**

Page 134

A. Correct. Correct.
**Q. So you never used the word "resigned" or "quit" to Mr. Melton either time you talked to him on February 5th?**
A. Never used which word?
**Q. "Resign" or "quit."**
A. No.
**Q. When you left Mr. Melton's office, did you feel that the situation had deescalated?**
A. Yeah, I thought it was done. I thought it was over.
**Q. Okay.**
A. The conversation I had in Derrick's office was indicative of conversations amongst the C-suite. It was a misunderstanding. It was a strategic thing. A ball was dropped, the ball was picked up, but that's just what happens.
**Q. And you spoke with a couple of other people on the phone on the way into the office as well, right?**
A. I'm sorry, I spoke to who people?
**Q. You spoke with Gina and Mr. Ladevich?**
A. Yes.
**Q. And so that was also on the way into the office?**

Page 135

A. Yes.
**Q. Okay. And did you yell or curse at them on the phone?**
A. No.
**Q. Just a second. I'm catching up because you took us through the two days.**
A. I'm sorry.
**Q. Do you know why Mr. Melton said that he was trying to protect you?**
A. I have no idea. He mentioned the lawsuit, but I have no idea what the lawsuit is --
**Q. Okay.**
A. -- or how I would be involved.
**Q. Did anyone approach you and ask you about having an argument with Mr. Melton on the 5th or 6th?**
A. About having an argument?
**Q. Yes.**
A. No.
**Q. So when you left Mr. Melton's office, there was business as usual for the rest of the day?**
A. For me, yeah, there was a lot to be done.
**Q. Okay. And you had meetings?**
A. Yes.
**Q. And you were in your office?**
A. Yes.

Page 136

**Q. Your office is across the hall from Mr. Melton's?**
A. Directly, yes.
**Q. Okay. So just to -- just to go back and clarify, we did hear from Gina testifying that you had said to her that you really wanted to apologize to Mr. Melton?**
A. Um-hum.
**Q. And she -- she did testify that she didn't know why, but -- why you were saying that, but you clarified it. Can you -- can you explain again so it's clear, why Gina would say that you said that you need to apologize to Mr. Melton that afternoon?**
A. After I talked with Kathy, it became very, very clear that going back to the morning, Derrick did not know that I had a meeting because it wasn't on Kathy's calendar. So after Gina said it and then Kathy confirmed it, for me the context of my response to Derrick was different or should have been different.
So had I known that he did not know that I was in a meeting and he did not understand that I was -- I wasn't picking up the phone because I wasn't aware it was ringing because my ringer is always off, then I wouldn't have been as adamant about, I gave you

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 137

the number, use the number. And I would not have said things like, You shouldn't have treated me that way, because what I was referring to was he kept blowing up my phone when I'm trying to wrap up a meeting.

**Q. Okay.**

A. So had I known that, that conversation would have happened differently.

**Q. But you did tell Mr. Melton that you were in a meeting and you were wrapping it up?**

A. I did, I did.

**Q. And he continued to call and text you, is that correct?**

A. Yes, yes.

**Q. Okay. And then you said --**

A. So --

**Q. -- that you finished out your day meeting with Brenda and that Mr. Melton was gone by the time you were leaving the office, right?**

A. Yes. When I -- when I knocked on Derrick's door, I don't know, somewhere between 2:00 and 3:00, he did not answer, so that's when I sent the text --

**Q. Okay.**

A. -- in hopes that I could catch him before he left.

Page 138

**Q. So Mr. Melton knows what car you drive, right?**

A. Sure.

**Q. And so if Mr. Melton had left before you left, and you left at 5:30, would the parking lot be pretty empty?**

A. Pretty empty at 5:30, yes.

**Q. Would Mr. Melton have had an opportunity to see your car in the parking lot?**

A. The opportunity, sure, if he was looking. I park in the same place, but if he was looking, he had the opportunity, but I don't know that that's something that he does. I don't -- I don't know that.

**Q. Let me catch up with you here.**

**Okay. So back to the remainder of February 5th, and this is talking about pretty much like 10:00 a.m., right, on to --**

A. Yes.

**Q. -- the whole day you were at the office from 10:00 a.m. forward?**

A. Yes.

**Q. And you met with the chief medical officer, we heard from him?**

A. Um-hum.

**Q. You met with him twice?**

Page 139

A. Um-hum.

**Q. And you met with Brenda?**

A. Yes.

**Q. The front -- the front desk folks saw you because you --**

A. Yes, Diane and Erica, yes.

**Q. Did you -- did you also have other interactions where people saw you in your office?**

A. Oh, yes. There's a lot of interaction up and down that hallway. You can bring in Michael Ladevich, the CFO. We had conversation. We had -- I had a con- -- a conversation with the contract folks about the phlebotomy project. All of these were drive-by conversations. They weren't meetings.

**Q. And at no time did anybody say to you, man, why are you here when you just quit?**

A. Yeah, it was not a thing. It was not a relevant point all day.

**Q. Yeah, yet nobody said, "Oh, we're so sorry to see you go"?**

A. No.

**Q. "I can't believe you quit"?**

A. No.

**Q. Nothing?**

A. I don't think it was public knowledge until Friday to even myself.

Page 140

**Q. And you mentioned that Gina cancelled your one-on-one with Mr. Melton, but that didn't cause you concern, did it?**

A. No.

**Q. Does that -- does that include it all happening?**

A. The cancellation didn't really concern me. That's a regular thing to have the Friday cancel.

**Q. It's a regular thing that Mr. Melton cancels your one-on-ones?**

A. Yeah.

**Q. Okay.**

A. Am I echoing over there, I'm sorry?

**Q. I'm sorry?**

A. Do you guys hear an echo?

**Q. It is a -- there's a bit of an echo, but I think we're able to parse through it. Are you able to -- okay?**

A. I'm struggling, but I can do it.

**Q. Okay. So let's move on to February 6th. You decided you had a meeting with Centene at 11:30 in the morning, correct?**

A. Yes.

**Q. And it was outside of the office, the**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM



**meeting?**

A. Yes.

**Q. So when Mr. Melton cancelled your meeting, you just worked from home until you had to leave for that meeting, is that correct?**

A. Yes.

**Q. Did you -- what did you do the morning before you left for the Centene meeting work-wise?**

A. I had a couple of conversations. I think the first one might have been with Sharon Foote. I sent Derrick a text 9:03, 9:06, or something like that, asking him if he needed any assistance with the UDS project because it was due on the 15th. I didn't hear back from Derrick about my text on the 5th, and I didn't hear back from him on the 6th.

**Q. Well, let's talk about that meeting quickly. So you texted him on the 5th, and he didn't respond, Why are you texting me, you don't work here anymore, you resigned?**

A. No.

**Q. And when you texted him about the -- and UDS means Uniform Data System. I asked you that myself earlier.**

A. Yes.

**Q. But when you asked him about the UDS,**



**which is definitely related to work and --**

A. Yes.

**Q. -- key to the work, in fact, he didn't respond saying, Why are you texting me about work, you quit?**

A. No response.

**Q. So you had -- you talked to some folks. Did you email that morning before you left for the Centene meeting?**

A. I do not recall. I don't believe I did.

**Q. Okay.**

A. As a matter of fact, I think -- I know I didn't because I don't believe I brought my laptop home, so I can't recall.

**Q. Okay. And when you were meeting with the Centene folks, you were meeting with them in the capacity of COO for the Department of Public Health, correct?**

A. Yes.

**Q. And that meeting was on your calendar?**

A. Yes.

**Q. Okay. And when you said -- when Sharon approached your office to accept your resignation, I'm putting that in air quotes for the record --**

A. Yeah, uh-huh.



**Q. -- you were preparing for a meeting, and I think you mentioned it was the Health Center Management meeting?**

A. Yes. Every Friday -- every Friday at 1 o'clock to 3 o'clock.

**Q. Okay. A two-hour meeting?**

A. Yes.

**Q. Do you lead that meeting?**

A. Do I what?

**Q. Do you lead that meeting?**

A. Yes, I do.

**Q. Okay. And how many people are in that meeting?**

A. Four. On this particular day, we were working with the Epic training crews. They were going to do a training walk-through for the Health Center leaders.

**Q. Okay. Was Mr. Melton in the office on the 6th, do you know?**

A. I do not know.

**Q. When Sharon approached you to tell you that you had resigned --**

A. Oh, excuse me.

**Q. Yes.**

A. I do know, he was in the office but he



left. When he was leaving, I was arriving on Friday the 6th, so he was in the office in the morning.

**Q. Thank you for correcting me.**

**When Sharon approached you to inform you of your resignation, did you deny that you had resigned?**

A. Did I what?

**Q. Deny that you had resigned?**

A. Oh, absolutely.

**Q. Have you denied that you resigned consistently ever since?**

A. Every time I get the opportunity.

**Q. Did you ask to speak with anyone or, you know, Dr. Cunningham or HR, anyone?**

A. Yeah, I sent Dr. Cunningham a note. Again, her position is understandable, but I did reach out to Dr. Cunningham. My first response -- my first response wasn't until Monday for personal reasons, but my first response was back to Sharon, Dr. Cunningham, and Derrick. The next -- I think the next note was to Dr. Cunningham. And then the next note I think was to Dr. Cunningham, Sharon, and Matt Livasy.

**Q. So we had a -- and you submitted your email correspondence to the Commission, so they have it in their file, correct?**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 145

A. I didn't hear the last part.
COMMISSIONER NUNN: I didn't hear that.
MS. FRIERDICH: All right. This echo is not great.
BY MS. FRIERDICH:
**Q. You have submitted your email correspondence to people at the County regarding your alleged resignation, correct?**
A. I did.
**Q. And so --**
A. I think if I -- if I -- if I turn -- if I mute my phone, I think I kill the echo.
**Q. Okay. Yes.**
**So if I take you through the emails, you on -- on February 9th at 4:57 a.m. you emailed Sharon Gardner, Derrick Melton, Dr. Cunningham, and in that email, you -- you spent multiple paragraphs, and this was in response to Sharon's email to you, accepting your, and I'm putting this in air quotes for the record again, your quote/unquote resignation, you responded in a several-paragraph email explaining that you did not resign, is that correct?**
A. That is correct.
**Q. You didn't receive a response to that email, did you?**

Page 146

A. No response.
**Q. And then you emailed again to Dr. Cunningham and Sharon Gardner at 6:50 a.m., same day. Did you ever receive a response to that email?**
A. No response.
**Q. You then emailed on February 12th, this is a week from the fated Thursday, Thursday, February 12th, you emailed Dr. Cunningham, Sharon Gardner, and Matt Livasy, and then Dionne Jones denying --**
A. That is correct.
**Q. -- you had resigned?**
A. That is correct.
**Q. And why Dionne Jones?**
A. Dionne Jones is the chairman of the consumer board that we all present to once a month. So the health centers have a board of directors that is -- that is a reporting relationship for Derrick.
**Q. You didn't respond -- you didn't receive a response from that email either, did you?**
A. I did not.
**Q. Then you emailed Matt Livasy, Dr. Cunningham, Dionne Jones, Sharon Gardner, on February 16th, that's the Monday, with, again, denying that you had resigned and your appeal, is that**

Page 147

**correct?**
A. That is correct.
**Q. And you appended quite a few attachments, including your phone records, your text records, your emails, et cetera.**
A. Correct.
**Q. Did you receive a response from that email?**
A. I did not get a response to the email, but I had made a couple of calls into HR to get Matt to check his emails, to check his phone messages, and I got the call back from Matt on I believe it was that Wednesday.
**Q. And what did Matt say to you? What's the first thing that Matt said to you when you picked up?**
A. He apologized that he had been out of the office. He said that he had gotten word that he should look for my email, but originally he couldn't find it because he was unaware that I no longer worked at the County. So I was not using a County email, I was using my personal email. But he had found it. I don't know if he had found it that day and called or found it the day before.
**Q. So it had been about a week and a half before the personnel director knew that you were no**

Page 148

**longer with the County?**
A. More like two weeks, yes.
**Q. Two weeks.**
**Just to be absolutely certain, you did not submit a written resignation?**
**I think you're on mute.**
A. How about now?
**Q. No, yes.**
A. No, I did not submit.
**Q. You were not an emergency, temporary, or seasonal employee?**
A. I was not.
**Q. You did not miss work for three consecutive days?**
A. I did not.
**Q. And when you supposedly, allegedly resigned your position, you continued to work that day?**
A. I did because I had no idea that I -- that that was a real thing.
**Q. And then you came back the next day, you continued to work --**
A. Yes.
**Q. -- the next day?**
A. Yes.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 149

**Q. And you have continually denied resigning?**
A. Yes.
**Q. Did you ever receive any information from the County whether it be documents, explanation, anything, prior to this hearing and what you heard at this hearing?**
A. I have not.
**Q. Prior to this hearing, is it the case that you thought based on Sharon's account that the alleged resignation occurred in Mr. Melton's office?**
A. Yes. The word that I had gotten indirectly from Sharon's account, it was, Did you not go into Derrick's office and do this and say these things?
**Q. That was the only indication you had received from anyone at the County with regard to what supposedly happened on February 5th?**
A. That was it.
**Q. You through your counsel submitted because -- your requested several times documents supporting what supposedly happened, correct?**
A. Yes.
**Q. And you've got nothing?**
A. Nothing.
**Q. So you submitted a public records request,**

Page 150

**correct?**
A. Yes.
**Q. And you submitted that with a -- and a response came back from Sharon Gardner that it was accepted, right? It had been received?**
A. Yes.
**Q. And that response was immediate, wasn't it?**
A. Yes.
**Q. And we had the initial meeting with this Commission on March 17th, correct?**
A. Yes.
**Q. And you were -- and you were notified on February 26th that the response to that records request would be delayed to the 20th, three days after that meeting, correct?**
A. Yes.
**Q. Then this hearing was set for today, and you were notified on the 20th that that response would be delayed to April 1st?**
A. Yes.
**Q. So you haven't received anything in response to your public records request?**
A. Nothing.
**Q. Have you requested your HR file through**

Page 151

**that public records request?**
A. I have, I have.
**Q. And received no records?**
A. No response.
**Q. And you heard about statements that were given by Mr. Melton and Gina, Ms. Pike, in this hearing?**
A. I did hear about that, yes.
**Q. Have you seen those?**
A. I have not.
**Q. Were you given an opportunity to respond to those?**
A. I have not.
**Q. Did anyone call you and say, Do you have a response to this, Mr. Melton says you quit?**
A. No.
**Q. Can you describe what -- what was in flight, what were you doing at the time that you were essentially booted from the office?**
A. I was preparing for a PCMH audit. I was preparing for a Title 10 audit. We were doing training on the new EMR. I had a slate of candidates ready to be interviewed for the program manager position that following week.
We were working on scheduling execution.

Page 152

We were working on a lot of civil service work around our nursing crew, around our clinical staff, because we were going to have to make some changes. We were working on Care team assignments, because those assignments -- because of incomes, because of salaries, because of longevity, it was going to cause some pain. We were discussing those.
So there were seven or eight different open topics that needed to be completed before May 1st.
**Q. And you heard in this hearing that every person who testified said that you did good work, they had no problem with you, no complaints?**
A. No complaints. I try.
MS. FRIERDICH: That's all I have at this point -- at this moment. I'll turn you over to Ms. Kaufman.

CROSS-EXAMINATION

BY MS. KAUFMAN:
**Q. All right. I'll keep it very brief, Mr. Wyatt. Thank you for your time.**
**So you've testified today that when you were speaking with Ms. Gardner, you were somewhat confused?**
A. Very.

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 525 of 1127 PageID #: 528

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM



**Q. And the inconsistencies in your statement, we'll chalk that up to the fact that you were confused?**

A. Can we be specific about the inconsistencies?

MS. FRIERDICH: I don't think he testified to any inconsistencies, so could you rephrase, please.

MS. KAUFMAN: Sure.

BY MS. KAUFMAN:

**Q. So when you spoke to Sharon, you said a few moments ago, "I said I didn't speak to Derrick because I didn't go into his office and use those words."**

**Is that a fair recap?**

A. What I was responding to Sharon, she was asking if I did go into Derrick's office and cuss, and I said no. She apparently says that that -- or she probably took -- it sounds as though she heard me say I didn't go into Derrick's office.

**Q. Okay. So she just misheard?**

A. Potentially.

**Q. And now you heard Sharon come up here and say that at first you told her you didn't talk to Derrick at all. Did she mishear that too?**

A. I'm speaking to Sharon about did I resign;



she is speaking to me did I talk to Derrick. So the context in this meeting --

**Q. So you never told her you didn't talk to Derrick?**

A. So the context of this meeting was she just told me I resigned. So --

**Q. The question I asked --**

MS. FRIERDICH: Could you let him finish his answers, please. Please don't interrupt. Thank you.

Go ahead, Pete.

BY THE WITNESS:

A. I'm sorry, I'm going -- trying to cancel this, the echo. But the context of this conversation was Sharon was asking me rapid-fire questions behind telling me that I just resigned. So what I'm responding to her about did I go into Derrick's office and curse, I said no.

So then she asked me if I went into Derrick's office, and I said yes, I went into Derrick's office.

BY MS. KAUFMAN:

**Q. Okay. So do we all agree that there was a heated conversation with Derrick on the phone?**

A. Define "heated."

**Q. Well, to my recollection, you've used the**



**word too, so what does it mean to you?**

A. That's why it's not heated. It's common.

**Q. Okay.**

A. "Heated" would be defined as, for me, pounding on my steering wheel, saying F you and F this job, I quit.

That's heated. That never occurred.

**Q. So if Sharon recalls you using the word "heated," she also misheard that?**

A. I don't recall using the word "heated."

**Q. Okay.**

A. Sharon did not mention the phone call. Sharon spoke to the office visit.

**Q. Oh, so Sharon didn't ask you about the phone call at all?**

A. Not that I recall.

**Q. Okay. So let's see. Now, you did tell us that that call lasted 58 seconds and nobody is disputing that. Now, I'm going to be straightforward. It doesn't take you 58 seconds to say "I F'ing quit, I'm done, I F'ing quit," does it?**

A. Do you remember Mr. Melton's testimony as to how much was involved in that personal conversation, are you okay, all of those questions?

**Q. I'm asking the questions.**



A. Okay.

**Q. Okay.**

A. Please re- -- please repeat your question, please. Thank you.

**Q. It is, you are physically capable of saying "I F'ing quit, I F'ing quit" in under 58 seconds?**

A. That is absolutely possible.

**Q. Okay. Let's see. And so the fact that -- do you recall Eugenia testifying that right after she cancelled that one-on-one, you came up to her and asked, Is he mad, is he angry at me?**

A. I don't recall that specific conversation. I wasn't concerned if he was upset with me.

**Q. So if Eugenia recalls it, she was just -- she must be misremembering?**

A. I won't repeat what Eugenia recalls. I just don't recall.

**Q. Okay. Let's see. Okay. I don't think I have anything further. Thank you for your time.**

**REDIRECT EXAMINATION**

BY MS. FRIERDICH:

**Q. So, Pete, 58 seconds. We have Dr. Cunningham in the hearing now. I don't think she was here for Mr. Melton's testimony. What did**

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 157

**Mr. Melton say you all talked about in that 58 seconds?**

**I think you're on mute, Pete. Sorry.**

A. I'm sorry. I'm trying to toggle back and forth. The statement was that I said that I quit. He asked me, Who are you talking to. I said, You. I mentioned about my -- my household situation with my wife. There were -- there were other conversations in there that I doubled-down on, and we discussed the six people that directly report to me and how I was going to confirm it.

So there were -- there were several things in that 58 seconds.

**Q. And that's according to Mr. Melton. And when you say your family situation, what are you referring to?**

A. So in -- in December, I sat in front of the C-team, and I told them that my wife after 16 years had just been RIF'd and that things were going to get kind of crazy through the holidays, but that was going to happen on January 16th, which happened to be her birthday, so it was a very emotional time.

So I told the C-team that in December. So I told -- Dr. Miller was there, Ladevich, Sharon

Page 158

Foote, Gina, Derrick. So I said that in front of the team because that's work family and we want work family to know. So did I bring that up again in the phone call in 58 seconds? No.

**Q. Okay. And there's a lot of talk about when this supposed resignation happened -- did we lose him? Oh, I see you. You just moved on me, Pete.**

**There's a lot of talk about when this supposed resignation happened, was it on the phone, was it in the office. When you left the office after talking to Mr. Melton after the phone call, you felt it was resolved?**

A. Yeah, I thought it was resolved.

**Q. Okay. And --**

A. Given all of the pieces that are working and transitioning a health center from the public health, there are lots of exchanges that happen in the hallway. So this was just another.

**Q. Right.**

A. We don't have a hostile work environment.

**Q. So if Sharon's account is that you were confused, you were confused because --**

A. I was absolutely confused.

**Q. Because you were told that you had resigned, and you hadn't?**

Page 159

A. I was told that I had resigned, and I had not.

MS. FRIERDICH: Okay. Thank you, Pete.

MS. KAUFMAN: Nothing further.

MS. FRIERDICH: We're not calling any other witnesses for confirmation.

COMMISSIONER BOOKER: Thank you. Do you all -- would you like to have closing statements? Or is there anything else you'd like to offer?

MS. FRIERDICH: I believe that the findings of fact and conclusions of law, I will need to amend mine because the story we heard here was not the story that we understood. So I'm asking for leave to amend that.

CLOSING STATEMENT ON BEHALF OF APPELLANT

MS. FRIERDICH: For final statement in two minutes, you heard here that there's a dispute with regard to what was said, and there's one person who was able to resign someone else's position without them knowing and without any ability to respond to it.

And this is a C-suite position. And so what the Commission is being asked to do is say that that's just fine. And we heard from Dr. Cunningham, again, verbal terminations come in and are not in good standing, and those people leave. They up and leave. They pack up and they walk out. They don't continue

Page 160

working. And Pete continued working.

There's all of the evidence in the world he denied it every single time. He continued working. He thought it was resolved. He never said it. So there's just not -- there's not enough here to impact someone's livelihood in the way that it has been and being shut out completely. He has been out of work since the 6th.

It's time to make a decision, reverse this, and consider it a dismissal, and none of the due process related to a dismissal was followed here. So even just ignoring the he said/he said situation, this Commission should find on procedural grounds that this thing was not done right.

So we ask for you to reverse it and all of the other things that we ask in our prayer, restate him with the same position, all of the back pay, all of the benefits, give him back his office and let him get back to work. Thank you.

So is there any other business that needs to be --

MS. KAUFMAN: Yes, I would like to make a closing statement as well.

MS. FRIERDICH: Oh, sure.

CLOSING STATEMENT ON BEHALF OF RESPONDENT

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 161

MS. KAUFMAN: So what you are being asked to find today is rather whether there is competent and substantial evidence for Dr. Cunningham's decision. We are not denying the existence of a factual dispute. He said/he said is a pretty good way to put it, and I don't envy you your task today because what you have before you is to determine whether Mr. Wyatt's resignation was supported by competent and substantial evidence based upon a total of what was said in 58 seconds.

But what we have heard are indications of a lack of credibility, a story that changes, a conversation that doesn't occur at all, and then it does, and then it was heated, and an F word we can't remember using, until we got a good answer for why about a month and a half later.

What you have not heard is any reason to gin up a resignation, any reason to claim that Mr. Wyatt left and said those words, "I fucking quit" when he didn't. Because Ms. Frierdich is absolutely right about that. Nobody is disputing that Mr. Wyatt was a competent employee.

But what we do have is competent and substantial evidence to hold him to his word, and that's all the Commission is being asked to do today. Thanks.

Page 162

MS. FRIERDICH: So my question, Mr. Goldkamp, was, is there an opportunity or any indication that the Commission wants to ask Pete any questions, or is that part of the hearing process? I don't want to cut that off, if there are any questions.

MR. GOLDKAMP: The commissioners have opportunities to ask questions of -- of all witnesses as, you know, as they're called. I guess we can confirm before Mr. Wyatt is, you know, let off the proverbial stand if they want to ask him any questions.

MS. FRIERDICH: Okay. Well, I thank you for your time. Is there any other business? I'm not familiar with these as you are, Mr. Goldkamp.

MR. GOLDKAMP: So I believe the hearing officer has one final statement to close this out and then the hearing can go off the record, but the Commission is going to need to, you know, do some procedural stuff to go back in open session and end the meeting.

COMMISSIONER NUNN: Before we do that, I would move that we will allow everybody to give ten days to file either amended findings of fact and conclusions of law or for the County to file the same, but -- and to include the statement from the young lady that made

Page 163

the statement. We want to do that. I would so move.

MR. GOLDKAMP: So before -- before we do that, can I -- can I give the Commissioners some information that I think may be...

So the findings -- generally what the Commission has done is -- and this will be in the final statement that Commissioner Booker was about to make, is it's 30 days after the receipt of the transcript. And I understand if you want to shorten that period, that's -- that's certainly within your prerogative.

But the findings of fact and conclusions of law cite the transcript, so I don't know how the County or opposing counsel can submit -- submit a findings of fact and conclusions of law before getting a copy of the transcript.

So generally we've made a date that it's basically -- what we usually do is 30 days from the receipt of transcript, but it's usually a date from the receipt -- receipt of the transcript.

MS. FRIERDICH: Is there a --

COMMISSIONER NUNN: I would move to amend to make 30 days -- please do the amendment, as well as the County, have their chance to make findings of facts and conclusions of law within that time period.

Page 164

COMMISSIONER BOOKER: Someone else was speaking? Did someone else have something to say before you said that?

MS. FRIERDICH: I was -- this is Katherine. I was just asking whether or not we can expedite the transcript, if that's possible? We are at March 30th and Mr. Wyatt has been out of work and unpaid since February 6th.

COMMISSIONER BOOKER: Either way, we still have 30 days, yes.

COMMISSIONER NUNN: Can I have a motion on those?

COMMISSIONER BOOKER: I'll second.

COMMISSIONER HOFFSTEN: And may I just say before we vote, I'm not sure that we're in a position as a Commission to expedite the transcript itself, I don't think.

COMMISSIONER BOOKER: Exactly.

COMMISSIONER HOFFSTEN: Noah, is that the case?

MR. GOLDKAMP: I would say I think --

MS. FRIERDICH: That was to the court reporter, I believe.

COMMISSIONER HOFFSTEN: That's right. We can certainly amend the period of time we're allotting once the transcript is produced, but we can't really

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


impact the timeline of when the transcript is ready to be sent out. Correct?

MR. GOLDKAMP: Yes.

COMMISSIONER BOOKER: Yes, exactly. But I'll second the motion on the floor.

COMMISSIONER HOFFSTEN: Could you repeat the motion back, Commissioner Nunn?

COMMISSIONER NUNN: Yes, I would move that we would allow the 30 days for the -- the ability to amend findings of fact and conclusions of law, and the County to be able to do the same, including filing the statement that was supposedly made by -- I can't think of her name now -- the statement from the young lady that was not included with anything that was sent by the County.

MS. FRIERDICH: Well, I --

COMMISSIONER BOOKER: I believe that will be included -- will that not be included because you asked for that or not?

MS. FRIERDICH: That was not presented here as an exhibit, so it's not in the record and so I would object to anything outside of the record being included in the record by the County at this point, yeah. So we need to -- we need to stick with what they presented. That's my motion.


COMMISSIONER BOOKER: Can she make a motion?

COMMISSIONER HOFFSTEN: Commissioner Nunn, could we amend your motion to remove the statement that you referred at the end?

COMMISSIONER BOOKER: Oh, goodness. What is the final motion?

COMMISSIONER NUNN: 30 days for amendment of the findings of fact and conclusions of law, and for the County to be able to have that same 30 days, but I included the statement. So now there's an objection to that.

MS. KAUFMAN: I would -- I would respond to the objection that the Commission does have the sua sponte right to request as part of their investigation any documentation they would like under Civil Rule -- Service Rule 22 and to interview any witnesses they would like and to conduct an investigation under such parameters as they see fit. You've got a lot of broad discretion here.

COMMISSIONER BOOKER: I would like to see this transcript. So I -- I'm going to second the motion that -- that Commissioner Nunn made.

COMMISSIONER HOFFSTEN: I guess I'm just confused about what exactly the statement, who the individual the statement is from?


COMMISSIONER BOOKER: So the young lady was interviewed by the HR person, who is also the assistant to Cunningham.

MS. KAUFMAN: Ms. Pike.

COMMISSIONER BOOKER: Ms. Pike. And that was not -- that was not originally included in the discovery or something like that. So we want to see that.

COMMISSIONER HOFFSTEN: Then I will support the motion.

MS. FRIERDICH: The problem with that is due process, that we are not able to confront that witness on that statement, as we have not been provided that statement.

So while it is true that the Commission can do an investigation, that witness testified today, but the statement was not before us so we were not able to ask her questions about it. So Pete's due process is in jeopardy by including evidence that was not presented by the County.

COMMISSIONER BOOKER: This is not a regular court of law. What is the remedy? This is not a regular court of law. We would like to see this statement.

COMMISSIONER NUNN: That's the motion.


COMMISSIONER BOOKER: I still second it.

All of those in favor?

Aye.

COMMISSIONER NUNN: Aye.

COMMISSIONER HOFFSTEN: Aye.

COMMISSIONER BOOKER: Does anyone have any other motions or issues they'd like to present?

MS. FRIERDICH: No.

COMMISSIONER BOOKER: Okay. Then closing, you will be notified when the transcript of these proceedings have been received in the division of personnel. Findings of facts and conclusions are due to the County HR within 30 days after receipt of the transcript, which is March 30th, 2026. The Commission will --

MR. GOLDKAMP: We don't know the date of the receipt of transcript.

COMMISSIONER BOOKER: Oh, I thought it was -- I thought it was 30 days from this date? I thought you were -- I thought that was the date that I'm saying, 30 days from this date. Is that not what we're saying?

MR. GOLDKAMP: My understanding is it's 30 days after receipt of the transcript.

COMMISSIONER BOOKER: Okay. So then we do not

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Page 169

know that date. Okay. Well, then -- which date is unknown. The Commission will consider all documents at their next regular meeting after the transcripts are received. You will receive written notification of that meeting.

Thank you to everyone who is involved. This hearing is concluded.

MS. FRIERDICH: Thank you.

MS. KAUFMAN: Thank you.

---

Thereupon, at 4:18 p.m., on Monday, March 30, 2026, the hearing was concluded.

---

Page 170

CERTIFICATE OF OFFICER

I, JULIANA F. ZAJICEK, a Registered Professional Reporter and Certified Shorthand Reporter, do hereby certify that I reported in shorthand the proceedings had at the remote hearing aforesaid, and that the foregoing is a true, complete and correct transcript of the proceedings of said remote hearing as appears from my stenographic notes so taken and transcribed under my personal direction.

IN WITNESS WHEREOF, I do hereunto set my hand of office this 12th day of April, 2026.

JULIANA F. ZAJICEK, Certified Reporter

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

WORD INDEX


< 1 >
**1** 12:*4* 59:*22, 25* 131:*17* 143:*5*
**10** 151:*21*
**10:00** 138:*17, 20*
**10:15-ish** 38:*23*
**100** 112:*17*
**105** 4:*6*
**106** 3:*4*
**109** 4:*8*
**11:30** 140:*22*
**116** 4:*9*
**118** 4:*11*
**12:00** 1:*3*
**12:23** 16:*18*
**12:30** 131:*2*
**12:35** 131:*2*
**12:40** 131:*14, 18*
**12:50** 82:*14* 83:*12* 84:*5* 132:*17*
**12:55** 132:*17*
**122** 4:*13*
**12-something** 91:*12*
**12th** 146:*6, 8* 170:*13*
**14** 29:*5*
**15,154** 25:*12*
**152** 4:*14*
**156** 4:*15*
**159** 3:*6*
**15th** 141:*13*
**16** 157:*19*
**161** 3:*7*
**16th** 146:*24* 157:*21*
**17th** 150:*11*
**19** 25:*15* 98:*2* 99:*3*
**19th** 122:*15*
**1st** 150:*20* 152:*10*

< 2 >
**2** 5:*20*
**2.1** 5:*21*
**2:00** 137:*20*
**2:32** 106:*3, 7*
**2:37** 106:*5*
**2:39** 106:*7*
**20** 25:*16*
**2011** 77:*19*
**202.100** 25:*13*
**2022** 77:*21*
**2023** 85:*23*
**2024** 77:*16* 94:*18* 122:*15*
**2025** 95:*1*
**2026** 1:*3, 12* 16:*18* 28:*12* 31:*6* 86:*16* 87:*17* 168:*14* 169:*12* 170:*13*
**20th** 150:*15, 19*
**21** 25:*15*
**22** 23:*2* 25:*15* 166:*16*
**25** 66:*2*
**26th** 150:*14*
**28** 3:*3*

< 3 >
**3** 11:*21* 14:*18* 108:*25* 143:*5*
**3:00** 111:*9* 137:*21*
**30** 1:*3, 12* 3:*13* 34:*13* 38:*22* 163:*8, 18, 23* 164:*10* 165:*9* 166:*7, 9* 168:*13, 19, 21, 23* 169:*12*
**30th** 5:*5* 16:*17* 164:*6* 168:*14*

< 4 >
**4:00** 111:*9*
**4:18** 169:*11*
**4:30** 65:*4* 71:*15*
**4:57** 145:*15*
**40** 3:*14*
**45** 34:*13* 38:*20, 22*

< 5 >
**5:30** 130:*16, 19* 138:*5, 7*
**55** 3:*15*
**57** 3:*16*
**58** 129:*1, 2, 8, 10* 132:*24* 133:*6* 155:*18, 20* 156:*7, 23* 157:*2, 13* 158:*4* 161:*10*
**58-second** 133:*1*
**5th** 28:*12* 31:*6* 32:*1, 22* 33:*12* 37:*21* 39:*11* 47:*11, 18* 49:*21* 50:*25* 51:*24* 56:*21, 24* 57:*16, 17, 18, 25* 62:*7* 67:*19* 68:*8, 14* 70:*10, 13, 14, 15* 71:*10, 13* 72:*12* 73:*14* 74:*12* 78:*13* 79:*2* 81:*20, 22* 83:*22, 24*

86:16
87:17
89:11
95:25
107:19
110:11, 12, 25 113:22, 25 114:5
119:5, 24
124:21, 23
125:1
134:4
135:15
138:16
141:14, 17
149:17

< 6 >
**6** 66:15
**6:50** 146:3
**61** 3:18
**67** 3:19
**6th** 46:13, 15 47:13
48:8 56:24
69:14
71:19 72:1, 13 79:4, 7
82:3, 8, 15
83:12, 22, 24 102:6, 16 107:20, 21 111:22, 23, 25
112:6, 10
113:2
120:14
121:1, 4
122:12
124:21
135:15
140:21
141:15
143:19
144:2
160:8 164:8

< 7 >
**7.020** 25:11
**74** 3:20
**77** 3:22

< 8 >
**8** 125:2
**8:00** 127:25
**81** 3:23
**85** 4:4

< 9 >
**9:00** 34:9
**9:03** 41:3
130:24
141:11
**9:06** 141:11
**9:30** 34:15
38:22
**9:30-ish**
34:10
**9:50** 45:1
**93** 4:5
**9th** 145:15

< A >
**a.m** 127:25
138:17, 20
145:15
146:3
**ability**
49:8
159:19
165:9
**able** 57:7, 9 60:14, 15
97:3 98:21
101:15
125:17
131:9
140:18
159:18
165:11
166:9
167:12, 18
**Absolutely**
32:3 35:25
39:9 46:7
55:8 56:16
116:18
144:9
148:4
156:8
158:23
161:20
**accept**
11:15
24:12, 15
36:12
43:19
78:23 79:5, 12 84:3
87:25 89:6
90:14
93:12, 24
98:19
107:8, 11
142:23
**acceptable**
87:14
**acceptance**
22:4 29:11
56:5 81:3
**accepted**
22:6 23:18
29:7 37:19
38:3 47:23
48:21
79:15 81:8
82:19
87:18, 20
90:11, 16, 20, 22 94:7, 25 98:17
105:9
108:3
131:20
132:11
133:19, 25
150:5
**accepting**
26:9 87:15
145:18
**access** 42:7
57:10
**accidentally**
12:14

**accommodations**
101:13
**account**
48:21, 23
49:7 55:19
60:7
100:14
149:9, 12
158:21
**accounts**
18:5



Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


**accuracy** 48:*6*
**accurate** 34:*3*
**actions** 87:*12*
**active** 125:*9* 126:*8*
**ADA** 101:*13*
**adamant** 136:*25*
**add** 25:*16* 60:*6* 116:7 132:*24*
**added** 116:*3*
**adding** 60:*1*
**additional** 19:*24* 67:*8*
**addressed** 12:*13*
**admin** 57:*11*
**administration** 101:*21*
**Administrative** 6:*21*
**administratively** 11:*14*
**admitted** 16:*5* 18:*1* 80:*10* 92:*15*
**advance** 18:*15*
**adversarial** 23:*24*
**advice** 11:*2*, *6* 78:*3* 100:*22*
**affect** 132:*13*
**affidavit** 50:*23* 68:*17*, *18*, *21* 69:*4*, *5*
**aforesaid** 170:7
**afternoon** 28:*10*, *11* 69:*17* 82:*8* 91:*12* 96:*2* 108:*19* 111:7, *9* 117:*18*, *19* 120:*18*, *19*, *25* 136:*13*
**agenda** 5:*24*
**aggressive** 36:*18*, *19*
**agitated** 70:*14* 111:*19* 120:*12*
**ago** 55:*17* 153:*11*
**agree** 13:7 19:*8* 56:*17* 154:*22*
**agreement** 19:*4*
**ahead** 5:*1*, *19* 8:*18*, *25* 16:*24*, *25* 65:*14* 91:*14* 154:*10*
**air** 142:*24* 145:*19*
**Akram** 5:*15*
**allege** 53:*21*
**alleged** 33:*2* 81:*19* 145:*8* 149:*9*
**allegedly** 148:*16*
**allotting** 164:*24*
**allow** 9:*5* 12:*23* 27:*22* 162:*22* 165:*9*
**allowing** 115:*2*
**amend** 159:*11*, *13* 163:*22* 164:*24* 165:*10* 166:*3*
**amended** 23:*22* 162:*23*
**amendment** 163:*23* 166:7
**angry** 62:*25* 63:*1* 65:*20* 66:*3* 71:*5* 72:*15* 73:*10*, *24* 110:*22* 156:*12*
**animal** 94:*22*
**answer** 23:*15* 52:*21* 63:*21* 79:*23* 80:*1*, *23* 137:*21* 161:*15*
**answered** 95:7 99:*20* 118:*18* 128:*19*
**answering** 72:*3* 94:*3*
**answers** 154:*9*
**anticipate** 29:*13*
**anybody** 8:*5* 67:*3* 70:*6* 90:*24* 100:*24* 111:*24* 113:*18* 116:*17* 139:*15*
**anybody's** 25:*14*
**anymore** 141:*19*
**apologize** 22:*9* 35:7 65:*9* 70:*18* 71:*1*, *2* 130:*4* 136:*6*, *13*
**apologized** 147:*16*
**apparently** 131:*12* 153:*17*
**Appeal** 5:*22* 15:7 16:*2* 40:*20* 109:*24*

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 533 of 1127 PageID #: 536
Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


118:*5* 133:*1* 146:*25*
**APPEALS** 1:*7* 5:*21*
**appear** 17:*17*
**appears** 15:*9* 170:*9*
**Appellant** 1:*8* 2:*12*, *19* 3:*4*, *6* 15:*8* 106:*20* 159:*14*
**appellant's** 18:*9* 19:*3*
**appellate** 104:*7*
**appended** 147:*3*
**apple** 61:*9*
**application** 102:*3*
**appoint** 6:*2* 7:*8*
**appointed** 49:*6* 56:*9* 104:*16*
**appointing** 11:*4*, *10* 15:*10* 28:*23* 87:*7* 93:*11* 98:*1* 107:*3* 115:*4*
**appreciate** 12:*8* 55:*7* 59:*11* 60:*13* 93:*9* 103:*10* 105:*3* 109:*25* 114:*20* 118:*6* 121:*13*
**approach** 135:*14*
**approached** 142:*23* 143:*21* 144:*4*
**appropriate** 7:*18* 8:*8*
**approximately** 43:*12*
**April** 150:*20* 170:*13*
**argument** 26:*14* 111:*17* 133:*17* 135:*15*, *16*
**arrangements** 55:*18*
**arrived** 30:*1*
**arriving** 144:*1*
**Article** 25:*11*
**ASAP** 112:*16*
**aside** 66:*21*
**asked** 33:*21* 34:*3*, *20*, *24* 35:*8*, *11*, *17* 37:*4*, *15* 38:*2*, *7*, *17* 39:*19* 40:*9* 41:*5* 43:*18*, *21* 44:*1*, *4*, *6* 48:*3* 50:*23* 51:*13* 54:*25* 55:*17* 59:*6* 62:*17* 64:*3*, *4* 68:*16*, *22* 73:*22* 78:*22* 79:*5*, *12*, *20* 80:*4*, *8*, *13*, *17* 106:*24* 107:*25* 125:*16* 132:*2* 141:*22*, *25* 154:*7*, *18* 156:*12* 157:*6* 159:*21* 161:*1*, *25* 165:*19*
**asking** 24:*17* 35:*3*, *21* 51:*15*, *17* 52:*4* 56:*17* 62:*15* 67:*25* 71:*4*, *5* 72:*15* 73:*10*, *11* 83:*18* 99:*20* 103:*7* 108:*9* 141:*12* 153:*16* 154:*14* 155:*25* 159:*13* 164:*5*
**asks** 107:*9* 114:*25*
**assigned** 12:*3*
**assignment** 48:*5*
**assignments** 152:*4*, *5*
**assistance** 141:*12*
**assistant** 29:*11* 49:*13* 57:*11* 69:*20* 77:*12* 91:*1* 93:*1* 114:*13*, *15* 167:*3*
**assistant's** 42:*9* 126:*9*, *11*
**Associate** 15:*12*
**associated** 31:*1*, *15*
**assumed** 49:*11* 73:*1*
**assuming** 13:*9*
**assumption** 58:*21*
**attachments** 147:*3*
**attempted** 29:*9*
**attendance** 12:*17*
**attention** 46:*17*, *20*

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 534 of 1127 PageID #: 537
Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


**attorney** 7:*1* 8:*8* 15:*10*, *11* 19:*3*
**attorneys** 15:*16* 16:*9*
**audible** 86:*7*
**audience** 35:*8*
**audio** 86:*10* 119:*2*
**audit** 151:*20*, *21*
**August** 122:*15*
**authority** 11:*4*, *10* 15:*11* 25:*9* 28:*23* 49:*6* 56:*10* 87:*7* 93:*11* 98:*1* 101:*25* 104:*16* 107:*3* 115:*4*
**available** 10:*2*, *8* 42:*10* 126:*12* 130:*12*
**avoid** 116:*20*
**aware** 44:*24* 46:*12*, *14* 50:*19* 58:*13* 65:*17* 81:*18*, *21* 83:*19* 84:*11* 112:*1*, *8* 121:*3* 136:*24*
**Aye** 7:*13*, *14*, *15*, *24* 8:*1*, *3* 14:*3*, *4*, *5* 25:*25* 26:*1*, *2* 28:*2*, *3* 115:*23*, *24*, *25* 168:*3*, *4*, *5*

**< B >**

**back** 14:*11*, *12* 22:*3* 33:*21* 34:*1*, *12* 44:*10*, *23* 55:*23* 59:*5* 63:*24* 66:*17* 67:*17* 72:*6* 77:*23* 88:*24* 89:*1*, *25* 94:*17* 96:*24* 97:*12* 98:*18* 105:*22* 106:*2* 107:*2* 113:*7* 125:*13*, *21* 126:*21* 128:*8* 130:*9*, *20* 131:*1* 136:*4*, *15* 138:*15* 141:*14*, *15* 144:*19* 147:*12* 148:*21* 150:*4* 157:*4* 160:*17*, *18*, *19* 162:*20* 165:*7*
**back-and-forth** 92:*11*, *20*
**background** 32:*16* 37:*7* 117:*20*
**backing** 43:*14*
**bad** 70:*16*
**badge** 55:*19* 84:*8* 91:*15*
**ball** 134:*16*
**banter** 124:*7* 127:*9*
**based** 92:*4* 100:*13*, *19* 103:*25* 104:*1* 107:*22* 149:*9* 161:*9*
**basically** 35:*21* 36:*10* 44:*6* 163:*18*
**basis** 78:*1*, *2*
**beating** 36:*20* 50:*11* 58:*16* 128:*24*
**becoming** 65:*20*
**began** 35:*1* 122:*15* 125:*2*, *7*
**beginning** 62:*11* 95:*19*
**behalf** 21:*6* 28:*9* 78:*23* 79:*12* 81:*6* 84:*3* 90:*20* 106:*20* 133:*24* 159:*14* 160:*25*
**behavior** 124:*16*
**belief** 39:*8*
**believe** 7:*16* 9:*21* 12:*21* 13:*10* 16:*23* 18:*5* 19:*4* 25:*13* 29:*1* 30:*1* 40:*6* 43:*17* 45:*1* 50:*19* 61:*20* 82:*14* 83:*24* 94:*3* 106:*16* 113:*3*, *8* 114:*3* 115:*3* 130:*24* 139:*22* 142:*10*, *13* 147:*12* 159:*10* 162:*16* 164:*22*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

165:*17*
**belong** 125:*5*
**benefit** 15:*19* 30:*18* 37:*5*
**benefits** 160:*18*
**bereavement** 20:*25*
**best** 58:*24* 81:*8*
**Billy** 91:*21*
**birthday** 157:*22*
**bit** 29:*21* 31:*14* 67:*17* 76:*23* 99:*17* 128:*9* 140:*17*
**Black** 72:*22*
**blind** 18:*16*
**blowing** 128:*14* 130:*8* 137:*3*
**board** 101:*25* 102:*3* 105:*24* 146:*16, 17*
**Bogan** 94:*20*
**Booker** 2:*4* 5:*12, 13* 6:*6, 10, 11, 14, 16, 19, 21, 25* 7:*3, 5, 9, 14* 8:*2, 3* 13:*2, 7, 12, 17, 22, 25* 14:*2, 5, 19, 22, 25* 15:*3, 5, 19, 23* 17:*21* 18:*4, 17, 20, 24* 19:*8* 20:*15, 16* 21:*13, 22, 25* 22:*7, 16* 23:*11* 24:*6, 10, 14, 18, 23, 25* 25:*4, 21, 25* 26:*7, 8, 16, 25* 27:*4, 8, 12, 15, 18, 22* 28:*1, 4, 7* 29:*18* 30:*2* 59:*18* 75:*19, 23* 76:*2, 7, 10, 13, 16* 105:*17* 106:*1, 5, 11, 16, 18* 108:*20* 115:*20, 22, 25* 116:*10* 117:*4* 159:*7* 163:*7* 164:*1, 9, 13, 18* 165:*4, 17* 166:*1, 5, 20* 167:*1, 5, 21* 168:*1, 6, 9, 18, 25*
**booted** 104:*6* 151:*19*
**bought** 129:*15*
**branch** 30:*25*
**break** 61:*13*
**breakout** 11:*15* 12:*2, 3*
**Brenda** 130:*15* 137:*17* 139:*2*
**bridge** 21:*10*
**brief** 18:*11* 22:*4* 23:*17* 24:*5, 13, 15* 75:*22* 76:*1* 122:*16* 152:*20*
**briefly** 106:*8* 111:*5*
**bring** 8:*5* 21:*16* 75:*9* 116:*24* 139:*10* 158:*3*
**bringing** 10:*20* 21:*15* 101:*10*
**brings** 18:*6*
**broad** 166:*18*
**BROADUS** 4:*10* 19:*10* 20:*19, 21* 117:*14, 16, 18, 23* 118:*3* 121:*18, 19* 123:*1*
**brought** 9:*12* 22:*22* 142:*13*
**building** 46:*10* 79:*11* 83:*12* 102:*7, 11* 104:*6* 127:*20* 131:*2*
**bullshit** 66:*22*
**business** 49:*8* 52:*11, 17, 19* 58:*2* 119:*20* 135:*20* 160:*20* 162:*14*
**busy** 33:*19*
**butchering** 101:*25*
**button** 7:*7* 11:*25*
**buy** 129:*13*
**Bye-bye** 84:*21*

**< C >**
**cabinet** 118:*16*
**calendar** 57:*8* 60:*14* 63:*17, 19* 64:*14, 20, 22* 72:*10* 120:*1* 127:*24* 129:*22*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

136:*17* 142:*20*
**call** 5:*1, 4, 6* 7:*21* 9:*18* 14:*7* 18:*18* 21:*17, 19* 25:*5* 26:*11* 28:*17* 29:*18, 19* 34:*11* 35:*9* 37:*10* 43:*24* 49:*4, 7* 50:*24* 53:*18* 59:*20* 63:*24, 25* 70:*13* 73:*17* 75:*23* 76:*2* 80:*8, 9* 83:*11* 84:*17* 89:*4* 90:*4* 106:*8, 14* 107:*3* 108:*11* 112:*16, 17* 117:*13* 121:*21* 125:*13* 126:*3, 19, 20* 128:*22, 25* 129:*4* 133:*1, 7, 8* 137:*11* 147:*12* 151:*14* 155:*12, 15, 18* 158:*4, 11*
**called** 9:*11* 20:*21* 28:*22* 30:*11* 33:*16, 21* 34:*5* 37:*11* 42:*11* 43:*24* 44:*4* 60:*24* 63:*21* 72:*2, 5* 73:*16, 17* 77:*2* 85:*10* 87:*2* 89:*16* 90:*3, 22* 100:*20* 101:*16* 109:*19* 112:*18* 117:*24* 120:*18* 122:*4* 125:*11, 15, 19, 21* 132:*18* 147:*22* 162:*9*
**Call-in** 11:*21* 14:*17*
**calling** 17:*18* 41:*2* 159:*5*
**calls** 26:*17, 18* 33:*22* 52:*13* 53:*17* 64:*24* 96:*25* 97:*13* 112:*9* 125:*8, 9* 126:*19, 21* 147:*10*
**calmly** 132:*19*
**camera** 11:*16* 109:*14*
**cancel** 72:*12, 24* 73:*1, 4* 140:*9* 154:*12*
**cancellation** 140:*8*
**cancelled** 71:*4* 130:*21* 140:*2* 141:*3* 156:*11*
**cancelling** 72:*18*
**cancels** 72:*19* 140:*11*
**candidates** 151:*22*
**capable** 156:*5*
**capacity** 142:*17*
**car** 43:*14* 49:*22* 125:*20, 21* 131:*3, 4, 8* 132:*19* 138:*1, 9*
**Cardinals** 113:*14*
**care** 12:*8* 31:*19* 32:*16* 54:*15* 72:*9* 94:*22* 152:*4*
**career** 35:*23* 122:*17*
**carefully** 86:*8*
**CARLTON** 4:*12* 122:*3, 10*
**Carter-Hicks** 5:*16*
**case** 11:*5* 87:*23* 91:*5, 19* 99:*12* 104:*25* 149:*8* 164:*19*
**catch** 25:*2* 130:*13* 137:*24* 138:*14*
**catching** 135:*5*
**catty-corner** 110:*9*
**caught** 32:*19*
**cause** 19:*18* 140:*3* 152:*6*
**cell** 33:*17* 52:*11, 18* 127:*3, 5, 6*
**Centene** 112:*2* 121:*4* 130:*25* 131:*10*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

140:22
141:8
142:9, 16
**Center** 31:3
131:16
143:2, 16
158:16
**Centers**
19:13
146:17
**certain**
17:16 42:1, 22 148:4
**certainly**
106:22
163:10
164:24
**CERTIFICATE**
170:1
**Certified**
1:16, 17
170:4, 19
**certify**
170:5
**cetera**
124:14
128:24
147:5
**CFO** 114:7
129:18
139:11
**chair** 127:3
**chairman**
146:15
**Chairwoman**
5:2, 8
7:23 11:15
**chalk** 153:2
**chance** 27:7
37:3 163:24
**change**
42:23 101:9
**changed**
79:23
**changes**
152:3
161:12
**changing**
79:25
**Chantal** 2:6
**chart** 42:8, 20, 23 126:8
**charter**
25:8, 10
**chat** 12:12
78:4
**check** 32:8
58:17
64:20 66:7
112:15
147:11
**Chief** 19:12
30:24
31:13
42:21
122:13
123:2
138:22
**choose** 6:1
21:15
**cite** 22:21
163:13
**CIVIL** 1:2
2:3 15:6
16:9 25:13
29:3, 16
44:17
98:15
101:25
104:12, 15
152:1
166:15
**claim** 161:18
**claimant**
21:19
**clarified**
136:11
**clarify**
23:24
56:19 63:8
88:18 136:5
**clarity**
73:17
**clear** 19:22
40:9 73:12
94:4 119:2
136:12, 15
**clinical**
31:2, 19, 24
32:17
123:16, 17
152:2
**close** 29:13
162:17
**closed** 5:24
7:18, 21
8:6, 9, 18, 20, 23 9:3
14:7, 16
17:7, 8
119:14
127:17
**closely**
62:1 65:2
**CLOSING** 3:6, 7 26:14
27:9, 24
159:8, 14
160:23, 25
168:9
**CMO** 114:7
**coat** 62:14
**cold** 24:2
**collect**
17:5 22:12
23:4, 8
84:8
**collected**
92:6
**column** 6:24
**come** 21:10
32:15
36:19 59:1
66:17
87:13
88:11, 25
91:22
93:16, 23
105:22
106:2
153:22
159:23
**comes** 66:6
93:21 98:10
**coming**
18:15 24:2
44:23 46:7
87:3 88:9
92:17
93:20
100:5
102:8, 10
108:15
**COMMISSION**
1:2 2:3
6:1, 3
10:17 11:3, 6 12:23
15:6 16:3,

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

6, 10 17:4, 9, 13 18:13, 15 22:6, 11, 13 23:3, 7, 13, 19 24:1, 12 26:23 31:14 51:9 104:16 106:25 107:11 115:2, 7 144:24 150:11 159:21 160:13 161:25 162:4, 18 163:6 164:16 166:13 167:15 168:14 169:2
**Commissioner** 2:4, 5, 6 5:4, 9, 10, 11, 12, 13, 14, 15, 16 6:5, 8, 10, 11, 13, 14, 16, 18, 19, 21, 25 7:3, 5, 9, 10, 11, 13, 14, 15, 20, 22, 24, 25 8:1, 3 11:19, 23 12:2, 6, 9 13:2, 6, 7, 12, 17, 22, 24, 25 14:1, 2, 3, 4, 5, 6, 18, 19, 20, 22, 25 15:3, 5, 19, 23 17:21 18:4, 17, 20, 21, 24, 25 19:8 20:7, 10, 14, 16 21:13, 22, 25 22:2, 7, 16 23:11 24:6, 10, 11, 14, 16, 18, 19, 23, 25 25:4, 21, 22, 23, 24, 25 26:1, 2, 7, 8, 9, 16, 25 27:2, 4, 6, 8, 10, 12, 15, 18, 20, 22, 25 28:1, 2, 3, 4, 7 29:18 30:2 59:18 75:19, 23 76:2, 7, 10, 13, 16 105:17 106:1, 5, 11, 13, 16, 18 108:20, 21, 22 115:10, 13, 14, 17, 20, 21, 22, 23, 24, 25 116:10 117:4 145:2 159:7 162:21 163:7, 22 164:1, 9, 11, 13, 14, 18, 19, 23 165:4, 6, 7, 8, 17 166:1, 2, 5, 7, 20, 22, 23 167:1, 5, 9, 21, 25 168:1, 4, 5, 6, 9, 18, 25
**COMMISSIONERS** 2:3 11:8 16:2 17:16 24:2, 22 27:1 28:10 162:7 163:3
**Commission's** 11:7 108:16
**commitment** 125:6
**committed** 129:13
**common** 124:7 155:2
**communicate** 37:12 81:5 83:25 93:22 104:4
**communicated** 29:11
**communication** 51:14 105:11
**Community** 19:12 72:23
**company** 92:7
**compel** 17:16
**compelled** 17:12 23:1
**competent** 161:2, 8, 22, 23
**complaining** 124:16
**complaint** 124:18
**complaints** 152:13, 14
**complete** 170:7
**completed** 152:9
**completely** 101:9 160:7
**compliant** 66:7
**computer** 11:16, 22 84:8 86:10 97:5, 7
**con** 139:12
**concern** 58:17 100:19 133:15 140:4, 8
**concerned** 73:9 90:9 100:12 101:3, 4 156:14
**concerning** 15:16, 17
**concerns** 87:4 88:9

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 539 of 1127 PageID #: 542

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


**conclude** 28:20
**concluded** 169:7, 12
**conclusion** 29:14
**conclusions** 18:10, 12 22:5, 19 23:18 24:4, 8 159:11 162:23 163:12, 15, 25 165:10 166:8 168:12
**concur** 13:6 19:8 24:10
**condition** 47:15
**conduct** 16:7 33:2 52:11, 17 119:19 166:17
**conducted** 58:9
**conducting** 58:2
**confer** 105:21
**confirm** 14:17 41:25 46:1 60:1, 9 125:25 157:11 162:10
**confirmation** 52:3 159:6
**confirmed** 42:14 107:13 126:1, 3 136:18
**conflicting** 18:5
**conform** 16:16
**confront** 167:12
**confronted** 82:14 124:15
**confused** 126:18 152:24 153:3 158:22, 23 166:24
**connection** 47:3
**consecutive** 148:14
**consecutively** 99:4
**consider** 16:13 17:20 26:23 101:12 160:10 169:2
**considered** 16:21
**consistently** 144:11
**consists** 61:24
**consumer** 146:16
**contact** 37:20 55:24 62:18 63:14 89:15
**contacted** 55:18
**contacting** 56:14
**contemplating** 86:17, 19
**contemporaneous** 44:21
**context** 126:5 130:5 132:5 136:18 154:2, 5, 13
**continually** 149:1
**continue** 49:8 108:6 109:2 116:8 159:25
**continued** 52:6 108:6 125:19 128:7 129:16 131:4, 10 132:9 137:11 148:17, 22 160:1, 3
**continuing** 45:6 95:12
**contract** 139:12
**control** 94:23
**convened** 15:1, 4
**conversation** 28:25 36:9 37:17 38:22, 25 39:17 43:5, 6, 10 44:2 47:4 50:6, 11 51:8 52:2, 9 53:12, 21 54:10 58:11, 20, 23 63:9 67:22 68:12 73:13 79:16 80:12, 18, 20 81:2, 18, 21 83:3, 8 89:19, 20 90:8 91:8 92:12, 13, 14, 16, 18 97:23 104:19 105:1 113:13 116:18 120:22 129:20 134:13 137:6 139:11, 12

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

154:13, 23
155:24
156:13
161:13
**conversations** 46:9 47:1 50:8 51:3, 15, 16 53:11 64:25 78:8 118:24 120:5 129:17 134:14 139:14 141:9 157:8
**COO** 118:12 120:23 122:17, 23 123:15, 16 142:17
**cools** 73:21
**coordinate** 29:22
**copied** 50:20, 22
**copies** 16:4 17:24
**copy** 10:14 75:12 103:17 104:16 163:16
**corner** 11:25
**Correct** 7:4 8:23, 24 14:20 18:2 21:24 41:6, 7, 16, 17, 19 43:24, 25 45:25 46:13, 15, 16, 18 47:8 48:9, 25 49:1, 18 50:1, 16, 17, 21 51:24 52:12, 24 53:9, 25 54:23, 24 56:21, 22 57:2, 18 67:20 69:20 72:10 82:4, 5, 23 84:9, 10 95:16, 21, 23, 24 99:4 100:16 102:16, 20 111:1, 2 115:12 122:14 123:12 124:2 127:20 133:1, 25 134:1 137:12 140:23 141:5 142:18 144:25 145:8, 22, 23 146:11, 13 147:1, 2, 6 149:21 150:1, 11, 16 165:2 170:8
**correcting** 144:3
**corrective** 87:12
**correctly** 111:5 117:14
**correspondence** 144:24 145:7
**counsel** 51:3, 13, 16, 17, 20 53:22 67:14 69:22 81:15 93:9 103:8, 13 133:17 149:19 163:14
**Counselor** 15:12 89:25
**counsel's** 103:2, 20
**counts** 113:4
**COUNTY** 1:1 2:9, 21 10:11 15:6, 11, 12, 13 17:14, 18 19:17 20:3 21:18, 22 22:1, 15 23:6, 13 25:4, 10, 11, 12, 20 26:11 28:4 30:23 40:23 47:4 49:8 52:12, 19 58:2 59:18 75:19 77:11, 18, 22 85:18 89:1, 25 103:2, 19 105:17, 19 107:1, 2, 21 108:7, 10 116:11 118:9 120:17, 20 123:12 124:16 125:4 127:24, 25 128:1 133:17 145:7 147:20 148:1 149:4, 16 162:24 163:14, 24 165:11, 15, 23 166:9 167:20 168:13
**couple** 17:2 22:10 25:7 57:6 80:15 90:25 105:22 112:20 126:19, 20

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

132:*15* 134:*18* 141:*9* 147:*10*
**course** 33:*5* 38:*24* 77:*22* 88:*23*
**court** 30:*18* 61:*6* 77:*7* 85:*15* 123:*4* 164:*21* 167:*22, 23*
**courtroom** 16:*17*
**cracked** 63:*5*
**crazy** 157:*20*
**credibility** 161:*12*
**crew** 152:*2*
**crews** 143:*15*
**critical** 124:*22*
**cross** 21:*10* 121:*15*
**CROSS-EXAMINATION** 40:*16* 67:*11* 81:*12* 93:*6* 116:*13* 152:*18*
**C-suite** 93:*14, 15, 20, 25* 94:*6* 95:*4, 6* 99:*16, 22* 100:*2, 7, 8* 134:*14* 159:*20*
**C-team** 157:*18, 24*
**Cunningham** 1:*9* 2:*15* 4:*3* 8:*9* 9:*18* 10:*18* 11:*3, 9* 12:*24* 13:*15, 18* 14:*9, 15* 21:*7* 28:*22, 25* 29:*7* 31:*5* 37:*11, 13* 39:*13* 43:*24* 44:*4, 5* 49:*5, 9* 51:*4* 52:*23* 53:*7, 9* 56:*3, 7, 9* 68:*23* 75:*21* 77:*13* 78:*19, 20* 79:*12* 81:*7* 82:*2* 83:*21, 23* 84:*25* 85:*5, 9, 14* 87:*6* 93:*4, 8* 105:*8, 15* 107:*13* 108:*1* 115:*3, 10* 116:*2* 117:*1* 118:*17* 131:*20* 132:*10* 133:*19* 144:*14, 15, 17, 19, 21, 22* 145:*16* 146:*3, 8, 23* 156:*24* 159:*22* 167:*3*
**C-u-n-n-i-n-g-h-a-m** 85:*16*
**Cunningham's** 29:*10* 69:*20* 161:*3*
**current** 126:*8*
**currently** 8:*22* 60:*8*
**curse** 35:*1* 43:*8* 84:*4* 90:*6* 119:*21* 135:*2* 154:*17*
**cursed** 28:*17* 33:*10* 39:*23* 128:*23*
**curse-laden** 49:*2* 58:*15* 83:*3, 8*
**curse-ridden** 43:*7*
**curses** 110:*22*
**cursing** 50:*10* 81:*24* 92:*10* 113:*18* 132:*22, 23*
**curve** 87:*5*
**cuss** 132:*3* 153:*16*
**cut** 162:*5*
**CX** 3:*14, 19, 23* 4:*5, 9, 14*

**< D >**
**daily** 32:*18* 61:*24*
**DAMON** 4:*10* 117:*14, 16, 23* 121:*19* 123:*1*
**data** 126:*11* 141:*22*
**date** 163:*17, 19* 168:*16, 19, 20, 21* 169:*1*
**David** 19:*10* 123:*1*
**Davis** 114:*16*
**day** 33:*15* 37:*21* 44:*25* 45:*7, 18, 24* 46:*13* 47:*10* 48:*9* 59:*4* 62:*8, 12* 64:*10* 65:*1, 3, 4, 5, 16* 69:*13, 16* 70:*19, 20* 71:*3, 12* 72:*8, 16* 79:*3, 7, 10* 81:*22* 96:*11* 107:*6, 19*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

112:2, 14
119:5, 9
124:7
128:7
129:13, 16
130:14, 15, 21 135:20
137:16
138:19
139:18
143:14
146:4
147:22, 23
148:18, 21, 24 170:13
**days** 29:5
47:20
90:25 99:4
135:6
148:14
150:15
162:22
163:8, 18, 23 164:10
165:9
166:7, 9
168:13, 19, 21, 23
**deal** 91:2
**December**
157:17, 24
**decided**
140:22
**decision**
10:7 11:4, 7, 11, 13
16:6 88:16
115:2, 8
160:9 161:3
**decisions**
87:10, 12, 13
**deescalated**
134:9
**Define**
154:24
**defined**
155:4
**definitely**
32:13
44:11
58:22
89:22
106:21
142:1
**delayed**
150:15, 20
**demeanor**
34:19, 25
36:15, 17
62:20
**denied**
50:20
102:15
144:10
149:1 160:3
**deny** 19:5
38:25
133:18
144:5, 8
**denying**
102:19
146:10, 24
161:4
**depart**
121:18
**Department**
5:22 19:11
77:20, 23
85:19 88:4
99:13
122:13
142:17
**Department's**
15:10
**depending**
19:25 88:5
**deposition**
86:24
**Deputy**
19:10
118:10
**DERRICK**
3:12 28:14
29:20, 24
30:4, 10, 15, 17, 20, 22
35:13
55:12
59:14, 16
63:15, 22
64:4, 5, 19
65:9 66:24, 25 67:25
70:17, 25
71:5, 7, 8
72:15, 16, 19 73:10, 16, 18
79:20 80:8
86:5 90:17, 22 96:17, 19, 25 97:2
100:23
102:2, 4
123:1
124:1
125:8, 9, 15, 23 126:5
127:21
129:24
130:20, 22
131:2
132:9
136:15, 19
141:11, 14
144:20
145:16
146:18
153:11, 24
154:1, 4, 23
158:1
**D-e-r-r-i-c-k**
30:20
**Derrick's**
126:22
131:24
132:3, 5, 7
134:13
137:20
149:13
153:16, 19
154:16, 19, 20
**describe**
34:19
47:25
62:19
110:2
118:13
124:4
151:17
**described**
40:25
**describing**
37:1 58:15
**description**
54:23
122:17
131:23

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


**designated** 15:*7*
**designation** 66:*6*
**desiring** 88:*25*
**desk** 64:*12* 126:*18* 128:*3* 139:*4*
**detailed** 34:*23*
**details** 37:*18*
**determine** 161:*7*
**Diane** 139:*6*
**difference** 104:*25*
**different** 40:*12* 65:*3*, *5* 76:*13*, *15*, *16* 86:*25* 99:*18*, *22* 136:*19*, *20* 152:*8*
**differently** 137:*7*
**difficulties** 32:*5* 85:*4*
**Dionne** 146:*9*, *14*, *15*, *23*
**DIRECT** 30:*13* 31:*7* 41:*5*, *13*, *22* 42:*4*, *14* 61:*1* 77:*4* 79:*6* 85:*12* 92:*21* 98:*12* 105:*10* 109:*21* 118:*1* 122:*6*
**directed** 92:*5*
**direction** 16:*25* 78:*21* 104:*1* 170:*10*
**directly** 21:*1* 78:*12* 84:*1* 85:*24* 87:*25* 88:*15* 89:*10* 91:*2* 93:*23* 94:*1* 98:*9* 99:*13* 100:*9* 104:*19* 110:*7* 136:*3* 157:*10*
**Director** 19:*11* 77:*20* 85:*19* 101:*20* 118:*11* 147:*25*
**directors** 146:*17*
**disabled** 48:*21*, *24*
**disagree** 124:*8*
**disagreement** 19:*5*
**disagreements** 33:*7*, *8*, *9*
**disciplinary** 87:*12*
**discipline** 32:*22*
**disciplining** 86:*17*
**discovered** 129:*25*
**discovery** 167:*7*
**discretion** 166:*19*
**discuss** 100:*1* 103:*8*
**discussed** 103:*8* 104:*2* 124:*19* 157:*9*
**discussing** 152:*7*
**discussion** 15:*15*, *20*, *24* 60:*18* 101:*9* 103:*19* 113:*21* 119:*9*
**dismissal** 160:*10*, *11*
**dismissed** 108:*7*
**dispute** 20:*12* 159:*16* 161:*4*
**disputed** 19:*14* 20:*6*
**disputing** 155:*19* 161:*21*
**disrespectful** 121:*7*, *9*
**dissatisfaction** 78:*6*
**distance** 65:*15*
**distributed** 24:*22*
**disturbed** 63:*18*
**division** 88:*6* 99:*23* 100:*6* 168:*11*
**doctor** 20:*20*
**document** 44:*12*
**documentation** 17:*5* 19:*18* 39:*21* 44:*3* 55:*1* 166:*15*
**documented** 52:*22*
**documents** 6:*12* 10:*11* 16:*5* 24:*21* 66:*12* 75:*14* 149:*4*, *20* 169:*2*
**doing** 25:*9* 45:*11* 46:*23* 58:*4* 63:*4* 69:*24* 151:*18*, *21*
**door** 91:*22* 107:*16*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

119:14
127:17, 18
130:11
131:3
137:20
**dotted** 102:3
**doubled-down**
37:7 52:6
157:9
**doubt** 21:3
37:6
**downstairs**
130:12
**DPH** 29:6
30:25
59:21, 25
60:7 87:7
**Dr** 1:9
2:15 4:3,
7 8:9
9:18 11:3,
9 12:24
13:15, 18
14:9, 15
19:11
20:19, 20
28:22, 25
29:7, 10
31:5, 11
37:11, 13
39:13
43:24 44:4,
5 49:5, 9
50:6, 7
52:23 53:7,
9 54:8
56:3, 7, 9
68:23
69:20
75:21
77:13
78:19, 20
79:12 81:7
83:21, 23
84:25 85:5,
9, 14 87:6
93:4, 8
105:8, 15
106:10
107:13
108:1, 12
109:5, 7, 9,
11, 13, 18
115:3, 10
116:2, 15
117:1, 7, 11
118:17
123:2
129:18, 19
131:20
132:10
133:19
144:14, 15,
17, 19, 21,
22 145:16
146:3, 8, 23
156:24
157:25
159:22
161:3
**drafted** 69:8
**draw** 29:14
**drawn-out**
19:21
**drive** 138:1
**drive-by**
139:14
**driving**
35:14, 16
67:19 70:14
**dropped**
134:16
**drove** 131:9
**Duane** 1:8
2:12, 19
4:12 28:12
122:3, 10
**due** 85:3
141:13
160:10
167:11, 18
168:12
**duly** 60:21,
24 76:24
77:2 85:7,
10 109:16,
19 117:21,
24 122:1, 4
**duties**
31:15
123:14
**dwell** 65:10
**DX** 3:13, 18,
22 4:4, 8,
11, 13

**< E >**
**earlier**
46:8 54:5
89:24
115:9
124:19
130:21
141:23
**earnest**
54:12
**echo** 61:11
86:5, 12
95:16
140:16, 17
145:3, 12
154:13
**echoing**
140:14
**educate** 24:1
**Edward** 61:8,
9
**effects**
47:17
**eight** 152:8
**either**
16:14, 16
26:13, 20
39:11
55:15 62:6
89:3 91:2
118:24
134:3
146:20
162:23
164:9

**electronically**
126:9
**elevated**
113:20
119:8, 10
127:9
**else's**
55:15
159:18
**email** 48:20,
23 49:7
50:22
55:19
66:13
71:22 81:4,
5, 6 91:11,
16 92:6
103:3, 6

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

104:17 112:22 116:6 120:16 142:8 144:24 145:6, 17, 18, 21, 25 146:4, 20 147:8, 9, 18, 20, 21
**emailed** 145:15 146:2, 6, 8, 22
**emails** 47:21 48:2 50:20 52:13 91:2 102:18 103:15, 16 112:10 145:14 147:5, 11
**emergency** 148:10
**emotional** 157:23
**emphatically** 102:19
**employed** 95:2
**employee** 6:25 7:17 8:8 29:6 55:22 94:18, 23 104:23 105:9, 11 123:12 124:14, 18 148:11 161:22
**employees** 54:15 91:3 104:11, 14 107:2 108:10
**employee's** 8:8 94:12 95:2
**Employment** 2:20
**empty** 138:6, 7
**EMR** 151:22
**enclosed** 23:2
**endeavors** 81:9
**ended** 92:17
**enforce** 107:25
**engage** 58:5 68:4
**enter** 47:20
**entered** 29:24 60:4 76:5 85:6 109:5 117:16
**entering** 15:20
**enterprise** 31:25
**entire** 31:24 83:6 101:9 107:19 132:13
**entitled** 115:4
**environment** 158:20
**envy** 161:6
**Epic** 131:17 143:15
**equipment** 92:7
**Erica** 139:6
**erratically** 36:22
**escalate** 88:5
**escalation** 91:23
**escort** 83:11, 18
**especially** 67:16
**Esq** 2:5, 10, 13, 16
**essentially** 24:3 34:4 38:1 151:19
**et** 124:14 128:24 147:5
**EUGENIA** 3:17 31:10 49:16 57:13 59:20 60:4, 7, 10, 23 61:5 75:6 114:16 156:10, 15, 17
**Event** 59:22
**events** 72:22 116:16
**eventually** 72:5
**everybody** 8:22 55:14 70:1 108:17 126:4 162:22
**evidence** 16:2, 5, 12 160:2 161:3, 9, 24 167:19
**exact** 120:19
**exactly** 70:21 114:12 119:6 164:18 165:4 166:24
**EXAMINATION** 30:13 55:9 61:1 74:5 77:4 85:12 105:5 109:21 118:1 122:6 156:21
**examined** 30:11 60:25 77:3 85:11 109:20 117:25 122:5

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 546 of 1127 PageID #: 549
Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**example** 94:21
**examples** 89:7
**exchange** 112:9 120:6
**exchanged** 43:9
**exchanges** 158:17
**excuse** 8:17 35:15 143:23
**execution** 151:25
**executive** 29:11 30:24 61:25 77:12 88:7, 8 93:18 98:11 99:24, 25 100:2, 10
**executives** 124:8
**exercise** 5:25
**exhibit** 165:21
**exhibits** 17:23 26:5
**existed** 101:14
**existence** 161:4
**exit** 108:24
**exited** 14:15
**expedite** 164:5, 16
**experience** 32:17 82:24 87:3
**explain** 51:10 136:11
**explained** 89:23 90:7 112:18
**explaining** 145:21
**explanation** 149:4
**express** 78:5
**expressed** 126:25
**external** 123:17
**extremely** 133:14

< F >

**face-to-face** 65:10
**fact** 18:10 19:13 20:5 22:5, 19 23:17, 22 24:4, 7 26:6 37:4 40:9 57:11 83:19 107:20 108:6 142:3, 12 153:2 156:9 159:11 162:23 163:12, 15 165:10 166:8
**factors** 101:12
**facts** 17:24 18:4, 12 19:14, 17, 22 20:6, 8, 11, 13 22:22 163:25 168:12
**factual** 18:5 161:4
**fair** 34:16 55:16 82:17, 20 116:22 128:11 153:14
**fairness** 23:5
**familiar** 44:17 49:25 94:16 98:2 162:15
**family** 38:9 157:15 158:2, 3
**far** 6:24 25:15
**fast** 27:17
**fated** 146:7
**favor** 7:12 14:2 25:24 28:1 115:22 168:2
**F-bombed** 128:23
**fearful** 58:22
**February** 28:12 31:6 32:1, 22 33:12 37:21 39:11 46:13, 15 51:24 56:21, 24 57:16, 17, 18 62:7 67:19 68:8, 14 70:10, 13 73:14 74:12 78:13 79:2, 4, 7 81:20, 22 82:3 86:16 87:17 89:11 95:25 102:16 110:11, 12, 25 111:22, 23, 25 112:10 113:2, 22, 25 114:5 119:5, 24 120:14 121:1 122:12 124:21, 23 125:1 134:4

138:16
140:21
145:15
146:6, 8, 24
149:17
150:14
164:8
**federal** 66:6 87:1
**Federally** 31:3
**feel** 56:11, 16, 18 134:9
**feeling** 60:13 67:15 70:16
**feet** 126:18
**felt** 128:19 158:11
**figure** 132:1
**file** 17:3 23:16, 21, 22 118:16 144:25 150:25 162:23, 24
**filed** 15:7 19:2 23:23 24:21
**filing** 165:11
**filled** 54:23
**filtered** 88:10
**final** 105:7 159:15 162:17 163:7 166:6
**finally** 33:21 95:8
**financial** 31:17
**find** 121:7 127:23 147:19 160:13 161:2
**findings** 18:9, 12 22:5, 19 23:17 24:4, 7 26:6 159:10 162:23 163:5, 12, 15, 24 165:10 166:8 168:12
**fine** 11:19 27:11 103:14 107:9, 12 108:21 159:22
**F'ing** 80:18 90:6 126:14 133:9 155:20, 21 156:6
**finish** 154:8
**finished** 116:10 137:16
**firing** 87:11 93:23
**first** 6:23 11:13 12:22 17:18 21:16, 22 26:11 29:6, 18 38:21 59:6 60:24 62:12 66:3 77:2, 8 80:4 85:10 92:11 109:19 117:24 122:4 126:23 132:4 133:21, 22 141:10 144:17, 19 147:15 153:23
**fit** 42:23 166:18
**five** 17:19 27:14, 16 31:10 64:1 106:3
**flight** 54:9 151:18
**floor** 165:5
**FMLA** 101:8, 13
**focus** 31:18
**focused** 125:24
**folks** 139:4, 12 142:7, 16
**follow** 16:11 81:2, 4 91:15 92:5 103:25 104:12
**followed** 104:2 160:11
**following** 6:23 9:2 151:24
**follows** 9:4 30:12 60:25 77:3 85:11 109:20 117:25 122:5
**follow-up** 74:7 105:7
**Foote** 31:10 141:10 158:1
**foregoing** 170:7
**formal** 56:4
**formality** 115:18
**for-profit** 122:20
**forth** 21:16 157:5
**forward** 138:20
**foul** 65:22
**found** 131:5 147:21, 22, 23
**four** 17:18 33:17 34:6 61:19 129:12 143:14



Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**FQHC** 32:17, 20 61:16, 25 62:1 66:5 86:25
**free** 64:23
**frequently** 32:13
**fricking** 133:9
**Friday** 54:3, 4 69:3, 8 91:9 96:11 112:4, 5, 13, 21 120:15 130:22, 24 140:1, 9 143:4 144:1
**friend** 100:20, 21, 25 101:16
**Frierdich** 2:13 3:14, 16, 19, 23 4:5, 8, 11, 13, 15 9:7, 14, 20, 24 10:6, 10, 13, 16, 23 13:10 14:17, 21 16:22, 24 17:2, 20 18:8 19:9 21:5 22:3, 9, 18, 24 23:16 24:12, 20, 24 25:2, 16 26:12, 23, 24 27:14, 16 40:17, 19 54:25 55:6 57:5 59:9, 11 67:7, 12, 13 74:3 75:1, 11 81:13, 15 84:15, 20 93:7, 9 97:11 101:22 103:7, 11 105:2, 14, 21, 25 106:8, 13, 17, 21 108:14 109:1, 4, 22, 23 114:18, 22 117:6, 10, 13, 19 118:2, 4 121:17, 21 122:7 123:8 145:3, 5 152:15 153:6 154:8 156:22 159:3, 5, 10, 15 160:24 161:20 162:2, 13 163:21 164:4, 21 165:16, 20 167:11 168:8 169:8
**front** 35:7 48:11, 14 129:14 139:4 157:17 158:1
**frustrated** 128:12 133:13, 14
**fucking** 28:18 35:14, 16, 18, 25 36:1, 5, 11, 21 37:8 58:9 161:19
**full** 16:6 23:1 30:15 123:11
**fully** 102:4
**further** 15:20 40:13 52:2 56:23 59:12 79:16 105:10 117:3 156:20 159:4
**furthermore** 58:8
**future** 81:9
**F-word** 46:25 67:22 80:24 126:4, 5
**< G >**
**gain** 66:5
**GARDNER** 3:21 9:19 53:6 69:9, 19 75:10, 13, 16, 25 76:4, 5, 12, 14, 16, 19, 22 77:1, 6, 11 81:14 84:22 131:18 145:16 146:3, 9, 23 150:4 152:23
**G-a-r-d-n-e-r** 77:9
**gathered** 97:18
**gathering** 59:1
**gearing** 54:16
**Gee** 101:20
**general** 16:8 53:15 114:16
**generalist** 77:22
**generally** 22:20 32:1 84:2 86:22 113:7 163:5, 17
**genuinely** 101:2, 4
**getting** 8:20 58:7

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 549 of 1127 PageID #: 552

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

96:*21*
97:*20*
116:*23*
125:*20*
163:*15*
**gin** 161:*18*
**Gina** 8:*13*
49:*13, 18, 20* 71:*6*
126:*20*
127:*18*
130:*20*
134:*22*
136:*5, 12, 17* 140:*2*
151:*6* 158:*1*
**Gina's**
129:*20*
**girl** 61:*8*
**give** 9:*5*
13:*9* 29:*21*
37:*5* 51:*13*
53:*2* 59:*15*
68:*20, 22*
85:*1* 86:*15*
88:*8* 89:*24*
91:*7* 104:*6*
108:*13*
116:*1*
122:*16*
160:*18*
162:*22*
163:*3*
**given** 58:*19, 23* 75:*12*
151:*6, 11*
158:*15*
**gives** 25:*8*
**giving**
60:*16* 118:*7*
**Glad** 10:*23*
**go** 5:*1, 18*
7:*20* 8:*17, 25* 15:*4*
16:*24, 25*
47:*16, 19*
55:*23*
57:*11*
62:*17* 65:*4, 14* 75:*3*
86:*15*
91:*14*
98:*11, 18*
99:*11, 13, 21* 100:*2*
104:*15, 21, 22* 112:*15*
117:*8, 9*
121:*23*
122:*10*
130:*4*
131:*23, 24*
132:*3, 7*
133:*5, 10*
136:*4*
139:*20*
149:*13*
153:*12, 16, 19* 154:*10, 16* 162:*18, 20*
**Goen** 2:*20*
8:*4, 15, 24*
14:*9* 29:*21*
30:*1* 59:*14, 23* 60:*6, 11*
75:*8, 16, 18*
76:*9, 17, 20*
85:*1*
108:*13*
109:*7, 10, 12, 15*
116:*1, 9*
117:*15*
**goes** 49:*18*
88:*24* 93:*17*
**going** 6:*16*
9:*7, 12*
10:*18*
15:*14* 20:*1*
33:*12*
35:*21, 23*
38:*5, 8, 13*
40:*11*
58:*21, 22*
64:*21*
66:*20* 73:*2*
74:*11*
113:*15*
114:*1*
126:*17*
130:*9, 17*
131:*3, 9, 10, 16* 132:*4, 13* 136:*15*
143:*15*
152:*3, 6*
154:*12*
155:*19*
157:*10, 20, 21* 162:*19*
166:*21*
**Goldkamp**
2:*10* 7:*6, 16* 8:*7, 12*
11:*2* 12:*22*
13:*14, 20*
14:*8, 24*
15:*2* 16:*23*
17:*1, 15*
21:*17, 24*
23:*13*
24:*21*
25:*18*
26:*21*
60:*19*
76:*12, 15*
109:*1, 2*
114:*25*
115:*12, 18*
116:*5*
162:*2, 7, 15, 16* 163:*2*
164:*20*
165:*3*
168:*16, 23*
**Good** 28:*10*
29:*4* 75:*3*
87:*21* 98:*3, 16, 23*
107:*15*
117:*18, 19*
124:*14*
131:*5*
152:*12*
159:*23*
161:*5, 15*
**goodness**
166:*5*
**gossip**
116:*20*
**gotcha**
109:*15*
113:*16*
**gotten**
80:*21*
111:*17*
147:*17*
149:*11*

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 550 of 1127 PageID #: 553

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


**GOVERNMENT** 1:*1* 15:*13* 66:*6*
**grab** 102:*9*
**grabbed** 132:*15*
**granted** 17:7
**grants** 31:*18*
**great** 145:*4*
**GRIEVANCES** 1:7 5:*21*
**grounds** 160:*13*
**group** 125:*2*
**guess** 62:*13* 73:*15* 80:*11* 92:*13* 107:*4* 128:*5* 131:*2* 162:*9* 166:*23*
**guidance** 6:*22* 103:*24*, *25* 104:*3*
**guidelines** 66:*8* 87:*1*
**guys** 129:*11* 140:*16*

**< H >**
**half** 147:*24* 161:*16*
**hall** 47:7 113:*12* 118:*15* 136:*1*
**hallway** 127:*19* 139:*10* 158:*18*
**hand** 34:*1* 170:*13*
**handful** 88:*20*
**handle** 10:*5*
**hands** 5:*6*
**hanging** 42:*9*
**happen** 37:*24* 44:*3* 74:*13* 92:*12*, *14* 112:*19* 157:*21* 158:*17*
**happened** 28:*23* 36:*6* 37:*15* 39:*18* 44:*6* 50:*11* 53:*9*, *12*, *21* 65:*12*, *17* 68:*24* 69:*13* 70:*16*, *25* 81:*21* 88:*20*, *23* 89:*2* 90:*2*, *3* 91:*4* 92:*4* 99:*9* 108:*5* 112:*21* 125:*14* 132:*2* 137:7 149:*17*, *21* 157:*22* 158:*6*, *9*
**happening** 36:*25* 40:*25* 118:*24* 140:7
**happens** 91:*20* 99:*21* 129:*11* 134:*17*
**happy** 48:7
**hard** 108:*17* 123:*4*
**head** 45:*5*
**headed** 16:*25*
**heads-up** 88:*9*
**Health** 5:*23* 19:*11*, *12* 31:*3* 77:*20*, *23* 85:*20* 90:*9* 100:*13* 118:*11* 122:*14* 131:*15* 142:*17* 143:*2*, *16* 146:*17* 158:*16*, *17*
**healthcare** 122:*21*
**hear** 12:*16* 19:*6* 28:*12*, *13*, *22* 29:*8* 30:*4* 63:*12* 66:*25* 67:*1* 76:*18*, *19*, *20* 83:*6* 86:*6*, *7* 109:*8* 113:*11*, *13*, *15*, *20* 115:*5* 118:*24* 119:*2*, *14* 123:*5* 136:*5* 140:*16* 141:*14*, *15* 145:*1*, *2* 151:*8*
**heard** 12:*25* 28:*20* 29:*1*, *14* 36:*19* 37:*2* 67:*5* 68:*10* 82:*2*, *6* 83:7 110:*18* 113:*17* 119:*12* 124:*1* 129:*11*, *20* 133:*22* 138:*23* 149:*5* 151:*5* 152:*11* 153:*18*, *22* 159:*12*, *16*, *22* 161:*11*, *17*
**hearing** 5:*5* 6:*2*, *9*, *15*, *21* 7:*9*, *17* 10:*3* 12:*24* 13:*3* 15:*1*, *3*, *7*, *25*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

16:7 17:8
19:7, 21
22:21, 23
23:2 24:8,
16, 18
26:13 27:3
29:13
56:14
109:2
115:3, 5
116:8
119:8
133:20
149:5, 6, 8
150:18
151:7
152:11
156:24
162:5, 16,
18 169:7,
12 170:6, 9
**HEARINGS**
1:7 5:20
16:10
**hearsay**
107:25
**heated**
37:16
80:21 89:4
92:16, 18
133:8
154:23, 24
155:2, 4, 7,
9, 10 161:14
**held** 77:17
98:5 122:19
**hell** 64:4
**he'll** 73:17
**Hello** 8:19
81:14
**help** 6:17
18:14 24:1
48:4 130:23
**helpful** 19:1
**helping**
125:2
**helps**
114:15, 16
**hereunto**
170:12
**Hey** 98:18
107:8
125:12
**Hi** 10:23
40:18
67:13 93:8
109:23
**hierarchy**
88:10
**high** 51:23
98:6
**higher** 88:6
**hiring**
87:11 93:22
**historically**
98:17
**history**
72:22
**hit** 8:21
9:1 113:15
**Hoffsten**
2:6 5:10,
11 7:10, 13,
22, 25 8:1
13:6 14:1,
3, 6 18:20,
21, 25
25:22, 24
26:2 27:2,
20 28:2
108:22
115:14, 21,
23 164:14,
19, 23
165:6
166:2, 23
167:9 168:5
**hold** 161:24
**holidays**
157:20
**home** 65:4
71:18
111:23
113:3, 15
129:9
130:22
133:5, 10,
11 141:4
142:14
**honest** 40:8
54:11 58:25
**hope** 130:13
**hopefully**
76:1
**hopes** 137:24
**horn** 131:3
**host** 122:25
**hostile**
158:20
**hostility**
58:20, 23
**household**
157:7
**HR** 42:11
49:4, 7
55:18 74:1
77:22
82:25 83:9
93:2
100:18
144:14
147:10
150:25
167:2
168:13
**HRSA** 66:4,
5 87:2, 4
**human** 77:20
**hung** 28:19
36:13 38:21
**husband**
130:18

**< I >**
**ID** 91:15
92:7
**idea** 14:9
135:10, 11
148:19
**Igloo** 61:10
**ignoring**
160:12
**imagine**
36:24
131:21
**immediate**
104:22
150:7
**immediately**
43:23
89:20
110:6
125:21
**Imo's** 129:16
**impact**
160:5 165:1
**impacted**
124:10
**importance**
126:6

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**important** 126:25
**impression** 96:21
**Inaudible** 103:4
**incident** 51:4 65:24 67:3 73:23
**incidents** 69:25
**include** 13:8 62:2 140:6 162:25
**included** 31:17 165:14, 18, 23 166:10 167:6
**including** 147:4 165:11 167:19
**incomes** 152:5
**inconsistencies** 92:3, 9, 22 103:16 153:1, 5, 7
**incorrect** 66:14
**indicate** 50:3, 9 71:8 111:16
**indicated** 45:23 62:16 93:11 114:1
**indicating** 50:15
**indication** 149:15 162:3
**indications** 161:11
**indicative** 134:14
**indirect** 93:13
**indirectly** 31:21 90:15, 16 149:12
**individual** 101:4 166:25
**individuals** 8:16 101:8
**industry** 122:20, 21
**inform** 144:4
**informal** 16:11
**information** 17:6, 12 19:16 33:17, 23 34:23 53:5, 20 58:8 65:11 83:2 89:24 90:1 91:8 103:2 125:23 130:1 149:3 163:3
**informed** 10:3 64:14 78:15
**initial** 150:10
**initially** 38:21
**inquire** 15:14 57:25 99:8
**inside** 47:20
**instance** 29:7
**instances** 93:13 112:12
**instruct** 98:13 103:21, 23 104:7
**instructor** 122:22
**integration** 118:11
**integrity** 132:12
**intend** 23:21
**intending** 9:17
**intends** 13:9
**interact** 78:12
**interaction** 56:23 71:25 77:25 79:7 90:2, 14, 16 96:18, 20 113:5, 6 139:9
**interactions** 21:2 33:14 62:6, 8 113:2, 25 120:15 121:6 139:8
**interest** 58:24 116:23
**interested** 21:14
**internet** 42:11
**interrupt** 64:22 103:6 154:9
**interruption** 12:20 85:3 97:10 123:7
**interview** 122:24 166:16
**interviewed** 51:2 122:25 123:1 151:23 167:2
**interviewing** 122:23
**interviews** 125:3
**investigate** 22:11 23:4, 8 51:11 103:18, 22
**investigated** 102:23 103:1 107:10
**investigating** 33:2

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**investigation** 17:*4* 23:*2* 51:*8, 10* 52:*2* 84:*11* 166:*14, 17* 167:*16*
**involve** 61:*21, 22* 65:*22*
**involved** 70:*1* 88:*15* 99:*11* 135:*13* 155:*23* 169:*6*
**irritated** 36:*24*
**ish** 34:*16* 45:*3*
**issue** 18:*14* 20:*25*
**issues** 16:*20* 24:*2* 26:*3* 93:*2* 168:*7*
**Item** 5:*21*
**its** 26:*11*

< J >
**Jairris** 2:*20* 116:*5*
**January** 66:*2* 77:*19* 85:*23* 157:*21*
**jeopardy** 167:*19*
**job** 31:*15* 32:*9* 54:*22* 61:*21* 68:*5, 7* 78:*6* 86:*22* 94:*24* 95:*10* 110:*19* 124:*14* 125:*3* 155:*6*
**join** 9:*6* 10:*23* 11:*20, 25* 12:*2, 6* 20:*22* 116:*6*
**joined** 109:*8*
**joining** 114:*19* 118:*7*
**Joked** 40:*4*
**jokes** 63:*6*
**joking** 63:*3*
**Jones** 146:*9, 14, 15, 23*
**judicial** 25:*7, 10, 19*
**Juliana** 1:*15* 5:*17* 170:*3, 19*
**justify** 20:*4*

< K >
**Kanika** 1:*9* 2:*15* 4:*3* 84:*25* 85:*5, 9* 105:*15*
**K-a-n-i-k-a** 85:*16*
**Kate** 101:*17*
**Katherine** 2:*13, 16* 9:*9* 22:*8* 40:*19* 67:*13* 81:*14* 93:*8* 109:*23* 118:*4* 164:*4*
**Kathy** 62:*17* 63:*15, 19* 114:*15* 127:*23* 129:*21, 25* 136:*14, 18*
**Kathy's** 126:*11* 127:*24* 128:*3* 136:*17*
**Kaufman** 2:*16* 3:*13, 15, 18, 20, 22* 4:*4, 6, 9, 14* 9:*10, 16, 23* 10:*2, 9, 12, 15* 12:*13* 13:*8* 15:*18, 22* 18:*3* 19:*10* 20:*9, 12, 18* 22:*2, 18* 23:*20* 25:*6* 28:*6, 8, 10* 29:*19, 23* 30:*4, 6, 9, 14* 55:*6, 10* 59:*12, 20* 60:*3, 12* 61:*2* 73:*22* 74:*6* 75:*3, 9, 17, 21, 25* 76:*4* 77:*5* 81:*10* 84:*18, 24* 85:*13* 86:*14* 93:*3* 94:*13* 101:*18* 103:*4, 9* 105:*4, 6, 13, 19, 23* 106:*3, 12* 114:*22, 25* 116:*12, 14* 117:*3* 121:*13, 15* 152:*17, 19* 153:*8, 9* 154:*21* 159:*4* 160:*22* 161:*1* 166:*12* 167:*4* 169:*9*
**keep** 19:*19* 27:*3* 98:*21* 108:*4* 127:*1* 152:*20*
**kept** 65:*8, 15* 70:*19* 71:*1, 5* 73:*11* 117:*9* 130:*8* 137:*3*
**key** 142:*3*
**kicked** 5:*18*
**kill** 145:*12*
**kind** 63:*3* 64:*8, 16* 65:*12, 15* 73:*9* 74:*18* 87:*2* 88:*8* 94:*23*

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 554 of 1127 PageID #: 557

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


130:16 157:20
**kite** 61:11
**knew** 42:8 59:4 64:5 92:25 114:4 130:6 147:25
**knocked** 91:21 126:23 130:11 137:19
**know** 9:12 19:5, 19, 23 20:1, 4 23:20, 25 32:12 35:1, 4, 21 36:1, 23 38:8 42:19 45:6, 8, 10 46:20 52:14, 15, 16, 20 54:11 58:21 60:12 61:13 63:4, 17, 22 64:6, 15, 17, 18, 21, 23 65:5, 11, 14, 16 68:1 69:15 70:6, 8 71:8 73:17, 18 79:19 80:5, 7 81:8 86:24 87:4 88:7, 14, 16, 23, 24 89:4, 5, 7, 23 90:3, 5, 6, 10, 11 91:18 92:2, 20 96:6, 8, 18, 20 100:23 101:5, 7, 11 102:8, 10 103:12, 24 107:6, 7 113:4 114:12, 14 119:2 124:11 127:11, 12, 13 130:7 131:5 132:16 133:23 135:8 136:10, 16, 21 137:20 138:12, 13 142:12 143:19, 20, 25 144:14 147:22 158:3 162:9, 10, 19 163:13 168:16 169:1
**knowing** 83:18 159:19
**knowledge** 40:1 51:7, 19, 21 139:25
**known** 131:12 136:21 137:6
**knows** 138:1

**< L >**
**lack** 161:12
**Ladevich** 31:11 114:8 126:20 134:22 139:11 157:25
**lady** 162:25 165:13 167:1
**lady's** 105:23
**language** 65:22 66:18
**laptop** 91:15 142:13
**lasted** 155:18
**late** 71:12 111:9
**laughed** 128:4
**laughing** 63:6
**law** 18:10, 12 22:5, 19 23:18 24:4, 8 159:11 162:24 163:13, 15, 25 165:10 166:8 167:22, 23
**lawsuit** 127:1, 12 135:10, 11
**lay** 18:14
**lead** 143:8, 10
**leader** 88:6, 7 98:12 100:10
**leaders** 88:8 99:23, 24 100:3, 6 143:17
**leadership** 62:1 88:11 93:18 99:11, 25 100:1 104:21 122:19 131:16
**learn** 82:18 88:2
**learned** 102:7
**learning** 87:5
**leave** 14:10 20:25 21:7 38:17 98:25 107:22 141:4 159:13, 24
**leaves** 99:13

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**leaving** 70:9 137:18 144:1
**left** 6:24 11:25 39:7 45:23 46:3 56:11 59:16 64:8, 16 71:14 75:6 84:22 96:15, 22 97:18, 20 99:17 105:15 117:11 121:19 127:16, 17 129:14 134:8 135:19 137:25 138:4, 5 141:8 142:8 144:1 158:10 161:19
**legal** 93:2 103:22
**lens** 109:14
**lets** 101:11
**letter** 98:19
**letting** 63:22 90:3
**level** 61:25 88:5 113:14
**life** 129:9
**Likewise** 108:22 117:2
**limit** 27:12 43:11
**line** 6:6 67:9 74:20 102:3
**list** 9:14, 17, 21 17:17 19:3 20:24 54:21
**listed** 19:10 20:5 59:21
**listen** 86:8, 11
**literally** 20:6 126:17
**little** 29:21 31:14 35:6 64:3 67:17 76:20, 23 86:24 90:9 99:17 125:14 128:9, 12
**LIVASY** 5:1, 6, 7, 10, 12, 15 6:7, 19, 23 7:2, 4, 23, 25 8:2 9:5, 9 11:14, 21, 24 12:5, 7, 10, 16 86:9 97:7 104:14 108:15, 23 109:3, 13 144:22 146:9, 22
**livelihood** 160:6
**located** 110:3 118:16
**location** 88:15
**locations** 88:14 118:16
**locked** 126:2
**logs** 53:18
**long** 27:3, 5, 12 43:10 61:17 71:10 77:14 85:21 95:2 114:12 118:6 125:7 128:22, 24, 25
**longer** 116:2 125:15 147:19 148:1
**longevity** 152:6
**look** 18:19 21:9 42:19 57:11 63:16 119:25 147:18
**Look-Alike** 32:20 61:16 66:9
**looked** 57:12 58:1 127:23
**looking** 9:7 60:6 63:2 64:5, 6 138:10, 11
**looks** 12:7, 10 14:14 17:17, 21, 22 76:7, 10 109:7, 13
**lose** 158:6
**lost** 130:18
**lot** 31:18 32:17, 18 46:16, 19, 21 57:1 63:5 88:4, 7, 10, 20 92:19 101:3, 10 123:20, 24 135:21 138:5, 9 139:9 152:1 158:5, 8 166:18
**lots** 158:17
**loud** 36:18 43:6
**LOUIS** 1:1 2:9, 21 15:6, 13 25:10, 11, 12

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 556 of 1127 PageID #: 559

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


**love** 105:23 106:21
**lunch** 129:13
**lunchtime-ish** 111:5

**< M >**
**ma'am** 10:9, 12 20:13 75:3
**mad** 66:23 68:2, 3 71:5, 6, 7, 9 73:19, 21, 25 156:12
**main** 9:11 12:11 20:20
**major** 37:17
**majority** 31:17
**making** 56:4
**man** 139:16
**manage** 31:2
**managed** 31:16
**management** 104:20 123:19 143:3
**Manager** 2:20 88:6 93:22, 23 151:23
**manner** 40:12
**MARCH** 1:3, 12 5:5 16:17 150:11 164:6 168:14 169:11
**Marker** 123:1
**Mary** 76:12
**materials** 6:9 25:1
**Matt** 5:6 104:13 144:22 146:9, 22 147:10, 12, 14, 15
**Matter** 1:8 12:22 19:14 22:11 24:3 83:19 84:12 142:12
**matters** 78:3
**max** 129:13
**mean** 31:21 40:7, 11 52:16 53:11, 14 74:13 87:9 90:21 92:8 104:11 119:6 155:1
**meaning** 17:11 130:1
**means** 57:21 141:22
**meant** 28:21
**Medical** 19:12 123:2 138:22
**meet** 32:12 102:9 111:24 114:2 119:23
**meeting** 5:2, 18 6:15 12:11 14:12 17:13 34:21 41:3, 4, 10, 11, 19 42:8 54:4 57:15, 19, 22 63:16 64:21 71:4 72:13 73:1 97:16 107:20 108:24 110:25 111:3, 7, 21 112:2, 5 114:4, 6, 10 121:4 125:1, 7, 13, 14, 19 128:1, 15 129:18, 19 130:2, 3, 7, 8, 9, 12, 15, 21, 25 131:1, 15 136:16, 22 137:4, 9, 16 140:22 141:1, 3, 5, 8, 16 142:9, 15, 16, 20 143:1, 3, 6, 8, 10, 13 150:10, 16 154:2, 5 162:20 169:3, 5
**meetings** 32:10, 11, 14 58:1 72:8, 16, 20, 25 73:5 123:21, 23 125:10 135:22 139:14
**MELTON** 3:12 9:18 28:14, 17, 20 29:20, 24 30:5, 8, 10, 17, 20 32:8 40:14, 18 55:2, 4 59:16 62:3, 12 65:7 68:13 70:22 73:4, 13 81:19, 24 83:9 84:12 89:13, 15 97:13, 24 98:13 101:23 111:17 113:21, 25 116:23 118:17, 21 124:2, 5 128:14, 22 129:5 133:5, 23 134:3

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

135:8, 15
136:7, 13
137:8, 17
138:1, 4, 8
140:3, 10
141:3
143:18
145:16
151:6, 15
157:1, 14
158:11
**M-e-l-t-o-n** 30:21
**Melton's** 62:19 70:10 72:9 74:12 97:16 100:13 110:3, 6 118:20 119:9 134:8 135:19 136:2 149:10 155:22 156:25
**member** 72:5 93:25
**members** 16:3 31:22, 23 54:16
**mental** 90:9 100:13
**mention** 65:7 155:12
**mentioned** 22:14 25:14 40:2 43:23 51:3 58:4 80:20 95:9 135:10 140:2 143:2 157:7
**merely** 37:11
**merit** 107:2 108:10 123:11
**message** 48:3 63:22 71:23 107:2 112:15 130:23
**messages** 33:23 47:22 48:2, 17 52:12 112:10 147:11
**met** 54:3 56:19 111:4, 5, 23 114:1 138:22, 25 139:2
**Michael** 31:11 126:20 139:10
**middle** 41:19 66:4 100:6 104:20
**MILLER** 4:7 19:12 20:19, 20 31:11 50:1, 2, 3, 6, 7 106:10 108:12 109:5, 7, 9, 11, 13, 18, 23 116:15 117:7, 11 129:18, 19 157:25
**mind** 44:23 108:4
**mindful** 108:18
**mine** 74:18 159:11
**minimum** 120:6
**minor** 37:17
**minute** 27:4, 5 28:24 64:12
**minute-long** 28:16
**minutes** 27:14, 15 34:13 38:20, 22 43:12 64:1 105:22 106:1, 3 111:6 129:12 159:16
**mishear** 153:24
**misheard** 37:3 153:20 155:9
**misremembering** 156:16
**misses** 99:4
**missing** 49:24 101:15
**misunderstanding** 134:15
**misunderstood** 27:10
**moment** 9:5 29:10 40:14 55:17 59:15 67:7 85:1 105:21 108:13 116:1 117:15 129:23 131:8, 25 132:12 152:16
**moments** 153:11
**MONDAY** 1:3 144:18 146:24 169:11
**month** 146:16 161:16
**months** 61:20 114:11
**moot** 17:19
**morning** 45:4 48:8

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


50:5 51:24 57:14, 16, 18 63:10, 13 67:18 68:13, 24 70:10 72:2 74:12 81:20 89:18 96:3 113:22 120:9 124:23 130:24 136:15 140:23 141:7 142:8 144:2
**motion** 7:8, 10 13:15, 17 17:10 18:23 19:2, 6 22:25 23:10 25:18, 21 115:19 164:11 165:5, 7, 25 166:1, 3, 6, 21 167:10, 25
**motions** 13:21 17:3 26:5 168:7
**mouse** 7:7
**mouths** 21:12
**move** 7:20 8:18 27:22 140:21 162:22 163:1, 22 165:8
**moved** 8:9, 15 13:24, 25 24:10 115:20 131:7 158:7
**moving** 5:20 8:22 27:3
**multiple** 40:10 145:17
**mute** 60:8 145:12 148:6 157:3
**muted** 9:9 19:1 97:5
**mutual** 100:20, 24 101:16

**< N >**
**Nadine** 2:5
**name** 30:15 40:18 49:14, 24 50:1 61:3 77:6, 8, 9 81:14 85:15 94:12 95:2 118:3 121:24 122:9, 10 165:13
**named** 94:18
**names** 17:20 59:25
**Nancy** 61:9
**nature** 23:21 34:1 38:2 48:4
**necessarily** 16:15
**necessary** 21:3
**need** 6:2, 16 8:5 11:13, 22 12:11, 23 14:6 21:9 26:14 27:14 35:12 39:19 44:11 48:4, 6 61:12 65:13 101:12 108:18 116:8, 11 126:4, 24 136:13 159:11 162:19 165:24
**needed** 9:6 33:24 34:2, 22 44:3 62:22 63:22 64:19 65:8 68:23 70:25 71:2 72:24 84:8 89:24, 25 125:25 126:2 141:12 152:9
**needs** 73:18 160:20
**Neither** 115:17
**Nelson** 123:2
**never** 29:12 50:14 57:10, 19 71:1 78:7 98:8, 9, 11 99:11 100:8 124:9 127:10 134:2, 5 154:3 155:7 160:4
**new** 151:22
**night** 66:16
**nine** 88:14
**Noah** 2:10 8:4 12:20 13:22 22:7 94:11 164:19
**Nodding** 45:5
**nonclinical** 31:19
**non-privileged** 22:12 23:4
**nonprofit** 122:20
**nonsense** 124:7
**nope** 12:17 40:5

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**normal** 55:21, 24 62:21, 23 69:24 73:8, 16 90:18 113:13, 14 124:8
**normally** 13:13 56:2, 5 89:3 91:2 101:14
**Notary** 1:17
**note** 130:23 144:15, 20, 21
**notes** 170:9
**not-for-profit** 32:16
**notice** 25:7, 10, 19 29:5
**noticed** 131:4
**notification** 169:4
**notifications** 125:11
**notified** 150:13, 19 168:10
**number** 34:2 125:25 126:3, 6, 7, 14, 16, 17, 24 127:7 133:9 137:1
**Nunn** 2:5 5:2, 4, 8, 9, 14 6:5, 8, 13, 18 7:11, 15, 20, 23, 24 11:15, 19, 23 12:2, 6, 9 13:2, 24 14:4, 18, 20 20:7, 10, 14 24:6, 11, 16, 19 25:23 26:1, 9 27:6, 10, 25 28:3 106:13 108:21 115:10, 13, 17, 24 145:2 162:21 163:22 164:11 165:7, 8 166:2, 7, 22 167:25 168:4
**nurses** 31:22
**nursing** 54:15 152:2
**nutshell** 123:16

**< O >**
**object** 21:6 165:22
**objection** 25:17 115:15 166:10, 13
**objections** 16:13
**obligations** 108:18
**obviously** 32:19 39:20 44:5, 12 106:23 124:20
**occur** 161:13
**occurred** 29:10 149:10 155:7
**o'clock** 66:15 108:25 125:2 131:17 143:5
**October** 77:16, 21
**odd** 51:25
**offer** 19:15 22:13 159:9
**offered** 17:25
**office** 38:1, 17 39:7 40:25 43:2, 3 44:25 45:2, 15, 20, 23, 24 46:3, 6, 8, 10 47:1, 2, 6, 9, 13, 16, 18, 19, 20 49:25 50:5, 12 56:20 57:25 58:11, 14, 18 61:16 66:17 67:19 69:10 70:10 71:12, 20 73:14 74:12 80:13 81:25 82:15 83:22, 23 91:17, 20, 22 92:1 95:25 96:1, 2, 4, 6, 9, 13, 23 97:1, 2, 14, 16 103:2, 10, 20 107:7 110:2, 4, 7, 23 113:7 118:14, 19, 20, 23 119:9, 13, 15, 16 120:2 123:20, 23 126:10, 11, 21, 22, 23 128:7 129:12, 14 131:14, 18, 24 132:3, 5, 8, 16, 23 134:8, 13, 19, 25 135:19, 24 136:1 137:18 138:19 139:8 140:25

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

142:23 143:18, 25 144:2 147:17 149:10, 13 151:19 153:12, 16, 19 154:16, 19, 20 155:13 158:10 160:18 170:13

**officer** 6:2, 15 7:9 13:3 15:7 19:7, 12 30:24 31:13 42:22 122:13 123:3 138:23 162:16 170:1

**offices** 65:14 74:17, 20 113:9

**official** 26:22

**officially** 5:18 124:17

**Oh** 11:19, 23 14:14 30:9 53:14 74:25 76:10, 13 80:19 90:21 91:1 101:5 106:17, 18 114:24 128:5 133:14 139:9, 19 143:23 144:9 155:14 158:7 160:24 166:5 168:18

**Okay** 5:14 6:13, 16, 18, 25 7:3, 5 8:14, 16 9:20, 24 11:23 12:2, 5, 9, 10, 19 14:9, 14, 25 15:3, 24 17:2, 22 18:17, 24 19:9 20:16 21:14, 23, 25 22:1 23:11, 16 24:19, 24 25:4 27:10 28:4, 7 29:23 30:1, 2, 8, 22 31:6 32:4, 21 33:5, 9 34:5, 11, 18 35:4 36:6, 9 37:3, 9, 20, 23 38:19, 24 39:16, 23 40:13, 18, 21 41:2, 15, 18 42:3, 7, 24 43:13, 17, 23 44:1, 14 46:12, 22 48:12, 16, 20 49:20 50:14 52:6 53:4, 24 54:19 56:4, 19 57:3, 24 59:7, 10, 14, 24 60:3, 6 61:12, 13 62:2, 5, 19 63:8, 12, 24 64:2, 9, 25 65:18 66:10 67:6, 10 68:22 69:14, 19, 22 70:2, 9, 21 71:16, 19 72:9 73:7 74:8, 16, 21, 25 75:5, 8, 9 76:17, 22 77:24 78:5, 12, 15, 18, 20, 24 79:2, 6, 15, 25 81:1, 10, 23 82:2, 13, 17, 24 84:4, 15, 21, 24 85:1, 17, 24 86:13 87:6, 23 88:12, 18 89:15, 21 90:10, 13, 19 91:4 92:8, 24 93:3, 5 94:11, 14 95:7, 15, 18 97:22 99:2, 7 100:12 101:17 102:5, 12, 14, 18 103:18, 21 104:24 105:2, 25 106:1, 12, 22 108:11 109:4, 7 110:8, 25 111:10, 16 112:1, 24 113:1, 7, 16, 20, 24 114:13, 18, 24 115:13 116:1, 2 117:13, 15 118:3, 13, 18, 23 119:4, 12, 18 120:4, 7, 11, 20, 22, 25 121:12, 21 122:12, 16 123:9, 11, 14 124:20 127:7

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

128:*4, 8* 129:*7* 131:*13* 132:*21* 134:*12* 135:*2, 12, 22* 136:*4* 137:*5, 14, 23* 138:*15* 140:*13, 19, 21* 142:*11, 15, 22* 143:*6, 12, 18* 145:*13* 153:*20* 154:*22* 155:*3, 11, 17, 24* 156:*1, 2, 9, 19* 158:*5, 14* 159:*3* 162:*13* 168:*9, 25* 169:*1*
**Okey-doke** 59:*13*
**old** 110:*4*
**once** 28:*19* 32:*11, 14* 37:*4* 56:*20* 66:*21* 83:*2* 88:*20* 111:*4* 146:*16* 164:*25*
**one-on-one** 72:*13, 20* 73:*5* 140:*3* 156:*11*
**one-on-ones** 140:*11*
**ones** 20:*3*
**ongoing** 114:*11*
**online** 42:*20*
**on-site** 54:*18*
**open** 11:*17* 14:*13* 40:*9* 59:*24* 116:*3, 6* 152:*9* 162:*20*
**OPENING** 3:*3, 4* 26:*13* 27:*9, 23* 28:*5, 9* 106:*14, 20*
**operating** 31:*13* 42:*21* 122:*13*
**operational** 31:*24* 54:*13*
**operations** 31:*17* 123:*17*
**opportunities** 26:*14* 162:*8*
**opportunity** 104:*7* 138:*8, 10, 12* 144:*12* 151:*11* 162:*3*
**opposed** 37:*2*
**opposing** 163:*14*
**option** 14:*10, 11* 42:*22* 60:*16*
**order** 5:*2* 18:*10, 13, 14* 21:*21* 22:*6* 66:*8* 87:*25*
**Ordinance** 25:*11*
**ordinances** 25:*8, 12, 19*
**org** 42:*7, 23* 126:*8*
**organization** 125:*5*
**organizational** 42:*20*
**originally** 147:*18* 167:*6*
**OSV** 54:*17*
**outreach** 123:*18*
**outside** 51:*16* 53:*22* 103:*22* 140:*25* 165:*22*
**outstanding** 22:*10*

**< P >**
**P.M** 1:*3* 16:*18* 106:*7* 169:*11*
**pack** 107:*22* 159:*25*
**pad** 7:*7*
**PAGE** 3:*11* 4:*2*
**pain** 152:*7*
**panelist** 8:*13, 17, 22*
**panelists** 8:*15*
**paragraphs** 145:*17*
**parameters** 166:*18*
**park** 138:*11*
**parking** 46:*16, 19, 21* 57:*1* 131:*5* 138:*5, 9*
**parse** 140:*18*
**part** 66:*11* 95:*3* 100:*8* 125:*4, 5, 24* 145:*1* 162:*5* 166:*14*
**parted** 128:*6*
**particular** 6:*15* 36:*23* 37:*16* 38:*11* 44:*9* 100:*21* 143:*14*
**particularly** 35:*8* 54:*14*
**parties** 6:*1* 15:*20* 16:*8* 21:*2*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


**party** 10:19 11:5
**pass** 131:6
**patients** 132:14
**PATRICK** 4:7 19:11 31:11 50:2 109:5, 18 117:11
**patterns** 54:13
**Paul** 61:10
**pay** 160:17
**PCMH** 151:20
**people** 19:24 31:10 49:25 62:6 67:4 76:15 86:25 98:5 110:22 119:21 122:25 125:3, 16 127:6 134:19, 21 139:8 143:12 145:7 157:10 159:24
**perceived** 102:14
**percent** 112:17
**Perfect** 60:11
**performance** 32:2, 9 86:23 95:20 124:17
**performed** 51:8
**performer** 51:23
**period** 20:25 163:10, 25 164:24
**person** 37:24, 25 40:24 60:9 64:9 79:13, 21 84:24 95:12 98:9 107:10, 22 111:24 131:1 152:12 159:17 167:2
**personal** 47:17 52:11, 18 132:15 144:18 147:21 155:23 170:10
**personally** 63:9
**personnel** 78:3 87:10 88:16 147:25 168:12
**perspective** 124:18
**Pete** 1:8 2:12, 19 4:12 5:22 9:8 10:23 28:13 31:11 38:11, 12, 15 40:19 56:20 62:15, 18, 22 63:3, 4 66:16 67:14 71:14 72:14 73:9, 20 79:7 81:15 89:19 90:2, 17 92:2, 15 93:9 94:17, 20 95:20 96:4, 12, 18, 25 97:17 100:7, 21 101:14 104:13, 19 105:1 118:4, 12 121:23 122:3, 11 123:9 154:10 156:23 157:3 158:7 159:3 160:1 162:4
**Pete's** 63:4 78:23 91:24 100:13 167:18
**phlebotomy** 139:13
**phone** 20:21 28:16, 19, 25 33:17, 22 34:18 37:9, 23 42:25 43:13, 24 49:8 50:5, 24 52:5, 12, 13, 18 53:17, 18 64:24 70:13 71:23 79:21 81:25 82:1 84:8 86:10 90:4 97:1, 4 112:9, 14 120:16 125:9, 23 127:4, 5, 6, 24, 25 128:1, 5, 14 130:5, 7, 8 132:25 133:8 134:19 135:3 136:23 137:4 145:12 147:4, 11 154:23 155:12, 15 158:4, 9, 11

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**physically** 156:*5*
**physicians** 54:*12*
**pick** 98:*24* 107:*16*
**picked** 34:*18* 125:*12* 134:*16* 147:*15*
**picking** 136:*23*
**piece** 31:*19*
**pieces** 158:*15*
**PIKE** 3:*17* 8:*11*, *14* 9:*18* 12:*13*, *16* 31:*10* 49:*15*, *16* 57:*13* 59:*21* 60:*2*, *4*, *7*, *10*, *12*, *15*, *19*, *23* 61:*5*, *10* 67:*13* 74:*3*, *10* 75:*6*, *8*, *12* 82:*7* 84:*13* 114:*17* 151:*6* 167:*4*, *5*
**Pizza** 129:*16*
**place** 12:*12* 23:*14* 138:*11*
**placed** 13:*15*
**places** 42:*13*
**pleadings** 10:*13* 25:*14*
**pleasantries** 120:*6*
**please** 8:*11* 9:*1* 16:*14* 53:*3* 61:*13* 76:*4* 108:*12* 122:*9* 153:*7* 154:*9* 156:*3*, *4* 163:*23*
**plus** 38:*22*
**podium** 57:*20*, *23* 58:*3*
**point** 8:*4*, *7* 16:*1* 17:*19* 19:*20* 22:*14* 23:*19*, *23* 34:*11* 47:*22* 50:*24* 56:*17* 61:*12* 65:*18* 78:*16* 100:*25* 102:*24* 124:*11* 125:*10* 133:*13* 139:*18* 152:*16* 165:*23*
**politeness** 66:*21*
**politenesses** 35:*5*
**popup** 9:*1* 11:*24*
**portion** 26:*12*
**portions** 22:*21*
**position** 30:*22*, *25* 31:*12*, *15* 32:*5* 50:*16* 61:*15*, *18* 77:*14* 85:*17*, *22* 86:*2* 97:*15* 100:*22* 107:*4* 110:*16* 111:*12* 118:*9* 120:*8*, *23* 122:*18* 123:*21*, *24* 144:*16* 148:*17* 151:*24* 159:*18*, *20* 160:*17* 164:*15*
**positions** 33:*25* 77:*17* 122:*20*
**possible** 129:*10* 156:*8* 164:*6*
**Possibly** 42:*16*, *17* 114:*15*
**potential** 19:*24*
**Potentially** 153:*21*
**pounded** 129:*8*
**pounding** 49:*3* 132:*22* 155:*5*
**practice** 22:*20* 55:*21*, *24* 84:*2*
**prayer** 160:*16*
**precedent** 106:*24*, *25* 108:*9*
**preceding** 122:*17*
**precisely** 28:*21*
**pre-hearing** 13:*21* 18:*11* 22:*4* 23:*17* 24:*5*, *13*, *15*
**preliminary** 16:*20* 26:*3*
**pre-motions** 12:*25*
**preoccupied** 33:*19*
**prep** 66:*4*
**prepare** 125:*3*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**prepared** 68:25
**preparing** 131:15 143:1 151:20, 21
**prerogative** 163:11
**PRESENT** 2:18 5:9, 11, 13, 16 13:11, 20 15:9, 11 19:25 20:1 21:18 69:22 83:16 115:15 146:16 168:7
**presented** 12:20 18:11 19:24 23:9 165:20, 25 167:20
**presenting** 19:23
**pressed** 126:5, 13
**pressing** 126:7, 16
**presumed** 99:3
**pretty** 75:22 138:6, 7, 16 161:5
**prior** 17:13 24:2 99:16 149:5, 8
**prioritizing** 32:18
**privacy** 64:18
**private** 127:5
**privileged** 51:17 75:13
**probably** 34:9, 13 38:11, 20 47:12 91:13 130:16 132:17 153:18
**problem** 6:18 26:25 27:2 95:20 109:1 124:13 132:12 152:13 167:11
**problems** 53:24
**procedural** 160:13 162:19
**procedure** 6:9, 11, 22 60:20
**proceed** 12:19 22:1 25:6 106:11
**proceeding** 16:19
**PROCEEDINGS** 1:10 9:2 16:4 29:25 59:17 60:5 75:7 76:6 84:23 85:6 105:16 109:6 117:12, 17 121:20 168:11 170:6, 8
**process** 91:10 160:11 162:5 167:12, 19
**produced** 55:2, 3 164:25
**products** 65:6
**Professional** 1:16 100:22 101:1, 5 124:7 170:4
**program** 32:20 123:18 151:23
**prohibits** 26:19, 20, 22
**project** 139:13 141:13
**projects** 54:8
**promise** 55:12
**promote** 8:5
**promoted** 8:16
**prompts** 101:10
**pronouncing** 117:14
**proposed** 9:25 10:4 18:9, 12 22:5, 19 23:17, 23 24:4
**propriety** 29:15
**protect** 127:2, 13, 14 135:9
**proverbial** 162:11
**provide** 15:23 16:10 29:3 48:7
**provided** 75:14 100:24, 25 167:13
**provision** 25:8 99:2
**proximity** 110:3 118:14, 19
**pry** 64:18
**Public** 1:18 5:22 19:11 73:3 77:20 85:20 118:11

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 565 of 1127 PageID #: 568

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM
122:13 139:25 142:17 149:25 150:23 151:1 158:16
**published** 54:22
**pull** 48:1, 2
**pulled** 127:24
**purpose** 39:16
**purposes** 115:18
**pursuing** 32:21, 22, 25
**put** 14:11 21:20 43:11 44:15 66:20 124:19 126:5 128:5, 7 129:15 161:5
**putting** 5:19 10:19 21:11 142:24 145:19

**< Q >**
**Qualified** 31:3
**question** 10:17, 25 12:21 33:25 34:3, 23 41:16 42:3, 4, 12 52:21 59:6 74:7 80:1, 2, 3, 23 83:5, 6 93:19, 24 94:3 95:7 118:19 125:16 126:23 127:5 128:20 154:7 156:3 162:2
**questions** 35:2, 3 39:5 40:13, 20 57:6 67:8 72:4 81:11, 17 93:4, 10 101:6 105:4 109:25 114:23 115:1 118:5 121:12, 14 154:14 155:24, 25 162:4, 6, 8, 12 167:18
**quick** 55:11 74:7
**quickly** 141:17
**quiet** 76:20
**quit** 28:18 36:2, 3, 5, 11, 12, 21 38:12 40:2 42:24 43:19 44:22 45:13, 22 46:23 48:9, 18, 21 49:2 58:2, 9, 14, 18 68:5, 7, 10 90:7 94:24 97:15 98:20, 21, 24 99:1 101:6 107:15 110:16 112:19, 25 113:6 129:10 131:12 134:3, 6 139:16, 22 142:5 151:15 155:6, 20, 21 156:6 157:5 161:19
**quite** 32:12 58:25 73:8 76:1 147:3
**quitting** 40:4 110:19 132:5, 7 133:18
**quote** 28:18 66:21
**quote/unquote** 145:20
**quotes** 142:24 145:19

**< R >**
**Rachel** 94:18 95:3
**rage** 49:2
**raise** 119:21
**raising** 119:13
**range** 132:17
**rapid-fire** 154:14
**RCX** 3:16
**RDX** 3:15, 20 4:6, 15
**reach** 116:4 144:16
**reached** 116:15
**reaching** 104:13
**read** 14:22 103:3
**reading** 103:15
**ready** 8:17, 20 12:19 16:18 151:23 165:1
**real** 55:11 132:2 148:20

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**realized** 125:22
**really** 18:11 23:14, 25 24:1 39:6 51:22 54:11 58:5, 6 68:1, 3 72:14 78:9 109:25 114:20 118:6 136:6 140:8 164:25
**Realtime** 1:17
**reason** 40:6 47:16 86:17, 20 161:17, 18
**reasonable** 27:13, 19, 21
**reasonably** 29:1
**reasons** 104:5 144:18
**rebuttal** 19:16, 25 20:5, 23 21:4, 9
**recall** 35:5 36:7, 16 43:16 45:17 48:13 58:4 62:5 64:2 68:21 69:4 89:1 93:16 96:5, 10 119:5, 8 120:1, 2, 19 133:20 142:10, 14 155:10, 16 156:10, 13, 18
**recalls** 155:8 156:15, 17
**recap** 153:14
**receipt** 163:8, 19, 20 168:13, 17, 24
**receive** 9:22 10:14 17:5, 11 23:6 47:21 50:18 145:24 146:4, 19 147:7 149:3 169:4
**received** 9:15, 21 19:16 22:15 48:16 50:14 66:13 83:2 102:18 149:16 150:5, 22 151:3 168:11 169:4
**recess** 106:6
**recollection** 110:10 154:25
**recollections** 46:9
**reconsider** 115:2, 8
**record** 5:19 15:4 17:22 26:4 30:16 60:18 61:4 75:11 121:24 122:9 133:3, 4 142:24 145:20 162:18 165:21, 22, 23
**records** 17:12 22:12 23:1, 5, 8 132:25 147:4 149:25 150:14, 23 151:1, 3
**RECROSS-EXAMINATION** 57:4
**redirect** 55:7, 9 74:5 84:18 105:5 117:5 156:21
**refer** 100:7
**referred** 166:4
**referring** 18:8 22:18, 24, 25 50:7 58:10 59:5 137:3 157:16
**regard** 17:10 19:17 98:6 99:8 149:16 159:17
**regarding** 17:6, 12 29:15 51:4, 8 53:20 98:2 145:7
**regards** 72:4
**Registered** 1:16 170:3
**registration** 31:22
**regular** 78:1, 2 118:11 140:9, 10 167:21, 23 169:3
**regularly** 118:10
**rehash** 35:11 39:18
**reiterated** 112:20
**rejoin** 14:12
**related** 33:24 120:20 142:1

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 567 of 1127 PageID #: 570

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


160:*11*
**relates** 35:*2*
**relating**
44:*18*
68:*17*
120:*16*
**relationship**
33:*6* 65:*19*
124:*4*, *6*
146:*18*
**relayed** 51:*9*
**relevance**
10:*4* 18:*22*
20:*3* 21:*13*
**relevant**
19:*7* 22:*12*
23:*4* 139:*18*
**remain** 11:*10*
**remainder**
45:*7* 138:*15*
**remained**
47:*10*, *11*
**remaining**
10:*19*
**remedy**
167:*22*
**remember**
16:*14* 33:*4*
41:*21* 46:*4*,
*5*, *7* 47:*2*,
*5* 48:*10*
49:*23*
50:*13* 52:*5*
53:*17*, *23*
66:*18* 69:*2*,
*7*, *15*, *16*
72:*3*, *7*
80:*21*, *25*
91:*21* 95:*1*
111:*4*
119:*4*
120:*4*
131:*19*
132:*4*, *6*
155:*22*
161:*15*
**remembered**
80:*17*
**remembering**
132:*7*
**remote**
170:*6*, *9*
**remove**
59:*14*
86:*11* 166:*3*
**removed** 75:*8*
**removes**
14:*11*
**repeat** 80:*1*,
*2* 83:*5*
96:*24*
97:*12*
156:*3*, *17*
165:*6*
**repeated**
38:*5* 40:*11*
80:*3*, *6*
**repeatedly**
28:*17* 35:*17*
**repeating**
70:*19*
**rephrase**
153:*7*
**report** 31:*4*
83:*4*, *7*
85:*24* 86:*4*
98:*12*
99:*23*
100:*18*
101:*24*
104:*20*
157:*10*
**reported**
33:*25*
48:*25*
73:*25* 94:*7*,
*8*, *20*
100:*11*
101:*24*
124:*1*
125:*16*
170:*5*
**Reporter**
1:*16*, *17*
61:*6* 77:*7*
85:*15*
123:*4*
164:*21*
170:*4*, *5*, *19*
**reporter's**
30:*18*
**reporting**
67:*2*
107:*22*
146:*18*
**reports**
31:*7* 41:*5*,
*13*, *23* 42:*5*,
*14* 102:*2*, *4*
**represent**
22:*22*
40:*19*
108:*7*
109:*24*
118:*4*
**represented**
16:*9*
**representing**
107:*21*
**request**
7:*17* 17:*3*,
*8* 26:*15*, *22*
75:*12*, *14*
149:*25*
150:*15*, *23*
151:*1*
166:*14*
**requested**
20:*21* 23:*3*
57:*9*
149:*20*
150:*25*
**require**
13:*10* 66:*12*
**required**
52:*1*
**requires**
29:*5*
**rescind** 29:*9*
**reserve**
23:*22*
**resign**
43:*21*
82:*21*, *22*
94:*6* 98:*16*
107:*1*
110:*16*
134:*6*
145:*22*
153:*25*
159:*18*
**Resignation**
5:*21* 29:*4*,
*6*, *9*, *15*
36:*12*
37:*14* 38:*4*
39:*20*
43:*19*
44:*15*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

47:23
48:22 56:5
78:23 79:5, 16 81:3, 7
82:19
87:18, 20, 24 88:3, 19
90:11, 15, 20 93:19, 25 94:7, 21, 25 95:10, 11, 13, 23
98:6, 14, 20, 23 100:5
105:10
107:8, 12, 14, 24
108:2
131:20, 22
132:11
133:19, 25
142:23
144:5
145:8, 20
148:5
149:10
158:6, 9
161:8, 18
**resignations**
44:18
87:15
93:12 98:2, 17
**resigned**
28:13, 16
29:2 38:16, 25 39:8
40:24
50:15, 21
51:12, 23
78:16 82:3
97:1, 14
99:3, 16
102:19
105:9
107:4, 9, 23
111:12
120:8
132:1, 10
133:24
134:2
141:19
143:22
144:6, 8, 10
146:12, 25
148:17
154:6, 15
158:25
159:1
**resigning**
88:25 98:3
102:15
149:1
**resigns**
55:22
**resolved**
26:4
158:12, 13
160:4
**resolving**
26:10
**resources**
77:21
100:24, 25
**respect**
87:9
108:16
125:10
130:10
**respond**
20:18
48:17
104:7
141:18
142:4
146:19
151:11
159:19
166:12
**responded**
34:1 35:18
145:21
**Respondent**
1:9 2:15
3:3, 7
28:9 160:25
**responding**
153:15
154:16
**response**
23:9 130:5, 24 136:18
142:6
144:17, 18, 19 145:18, 24 146:1, 4, 5, 20 147:7, 9 150:4, 7, 14, 19, 23
151:4, 15
**responsibilities** 123:18
**responsible**
87:15
**rest** 18:22
44:25
45:18
47:10 75:4
135:20
**restate**
160:16
**result** 95:12
**return**
12:11 106:5
**returned**
56:20
107:18, 19
**returning**
36:4 43:15, 18 102:6
**reverse**
160:9, 15
**review**
44:20 54:2, 6, 21
**reviewed**
17:23, 24
**Revised**
25:12
**RIF'd** 157:19
**right** 5:7, 17 6:13
8:25 12:9
20:14
23:22
28:24
36:14
40:15
42:11 45:1
47:7 48:11, 14 49:16
58:10 59:2
60:9 66:14
67:6 74:17
77:10
82:15, 16, 25 85:21
86:15
89:18, 20

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

93:3 95:14, 20 97:24 98:2, 3, 23 99:15 105:25 108:23 114:21 119:4 121:23 128:8, 15, 16 133:21 134:20 137:18 138:2, 17 145:3 150:5 152:20 156:10 158:19 160:14 161:21 164:23 166:14
**rights** 104:8
**ringer** 136:24
**ringing** 136:24
**risk** 11:17
**Rodney** 101:20
**rogue** 35:1
**role** 6:4 35:23 54:22 77:15 95:13 100:10 104:9, 10 122:24
**roll** 5:6 7:21 14:6
**room** 9:11 10:1, 20 11:10 13:16 67:4 105:24
**roughly** 33:16 34:16 38:23
**route** 93:17 101:1 104:14
**Rule** 23:2 25:15, 16 44:18 98:2 99:3 166:15, 16
**rules** 13:10 16:9, 11 25:14, 19 29:3, 16 98:15 104:12
**ruling** 11:9 17:7 22:4
**rulings** 16:15
**rumblings** 113:12 119:1
**run** 89:5 113:15
**rushing** 62:22

**< S >**
**said/he** 160:12 161:5
**salaries** 152:6
**sat** 91:17 127:8 130:14, 19 131:8 157:17
**satisfied** 32:2 86:22
**Satonya** 2:4 15:5
**saw** 37:2 45:10, 16, 24 46:2, 15, 16, 19 47:18 57:24 58:25 59:3 64:11, 15 66:3 70:24 83:19 92:14 112:15 120:11 127:18 130:2 131:2 139:4, 8
**saying** 10:7 20:10 37:18 43:16 65:8 71:2 112:15, 22 136:10 142:4 155:5 156:6 168:20, 22
**says** 12:3 97:13 107:8, 15 151:15 153:17
**schedule** 57:7, 10, 12, 14 58:1, 17
**scheduled** 63:20 64:13 72:23
**schedules** 54:13
**scheduling** 151:25
**screaming** 36:22 49:3
**screen** 27:7
**screenshots** 53:12, 13, 15, 16, 20 55:2
**se** 37:7 38:6 57:20 58:7
**search** 62:17
**seasonal** 148:11
**Second** 7:11, 22 14:1 25:22, 23 27:25 53:2 94:19 115:21 135:5 164:13 165:5 166:21 168:1

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


**seconds** 129:*1, 2, 8, 10* 132:*24* 133:*6* 155:*18, 20* 156:7, *23* 157:*2, 13* 158:*4* 161:*10*
**Section** 5:*20* 25:*11, 13*
**security** 83:*11, 14, 16, 20* 91:*18, 19, 25* 102:*10* 132:*18*
**see** 9:*8* 10:*3* 12:*2* 21:*14* 26:*16, 17, 18, 25* 27:*2* 30:*6* 44:*24* 45:*9, 19* 46:*21* 47:*13* 48:*20, 23* 57:7, *9* 58:*17* 60:7 62:*12* 63:*16* 64:*9* 66:*1*, 7 70:*9* 71:*10, 19* 74:*13, 15* 76:*14* 83:*20* 88:*16* 89:*10* 90:*19* 96:*4, 22, 24* 97:*6* 109:*11* 111:*21* 114:*9* 117:*19* 121:*9* 129:*21* 130:*1* 138:*9* 139:*20* 155:*17* 156:*9, 19* 158:7 166:*18, 20* 167:7, *23*
**seeing** 12:*17* 45:*17* 46:*5* 57:*1* 79:*9* 96:*5, 10* 120:*2*
**seek** 78:*3*
**seen** 62:*16* 74:*19* 151:*9*
**sees** 42:*23*
**self** 62:*24*
**send** 44:*12* 53:*10, 16, 19* 98:*19* 116:*6*
**sending** 91:*11*
**sends** 91:*2*
**senior** 62:*1* 122:*19* 124:*8*
**sense** 62:*25* 74:*22*
**sent** 6:*8* 52:*23* 53:*5, 8, 15, 17* 63:*21* 72:*4* 81:*4* 125:*15* 129:*24* 130:*13, 22* 137:*21* 141:*11* 144:*15* 165:*2, 14*
**separate** 24:*13*
**sequestered** 11:*12* 13:*1, 4*
**SERVICE** 1:*2* 2:*3* 15:*6* 16:*10* 25:*13* 29:*3, 16* 44:*17* 98:*15* 104:*12, 15* 152:*1* 166:*16*
**session** 5:*24* 7:*18, 21* 8:*6, 10, 18, 21, 23* 9:*3* 11:*15, 17, 20* 12:*3, 4* 14:*13, 16* 20:*20* 59:*24* 116:*3, 6* 162:*20*
**set** 89:*9* 102:*4* 108:*9* 150:*18* 170:*12*
**settlement** 15:*16, 17*
**seven** 152:*8*
**several-paragraph** 145:*21*
**share** 27:7 89:*8* 101:*17* 110:*5* 113:*8* 118:*20*
**shared** 91:*24* 92:*2, 3, 13*
**sharing** 92:*22* 113:*11* 130:*17*
**SHARON** 3:*21* 31:*10* 53:*6, 10, 16* 69:*9, 19, 23* 70:*4, 5, 6* 75:*16* 76:*4, 5, 17* 77:*1, 24* 84:*19, 22* 91:*1*, 7, *10, 18* 92:*1, 3, 5, 13, 14* 102:*9, 15* 131:*18* 133:*24* 141:*10* 142:*22* 143:*21* 144:*4, 19, 22* 145:*15* 146:*3, 8, 23* 150:*4*

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 571 of 1127 PageID #: 574
Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


153:10, 15, 22, 25
154:14
155:8, 12, 13, 14
157:25
**S-h-a-r-o-n** 77:8
**Sharon's** 145:18 149:9, 12 158:21
**Shawn** 8:19
**shock** 131:21, 25
**shocked** 28:14 51:23
**short** 19:20 36:10 54:17 85:2 97:9 123:6
**shorten** 163:9
**Shorthand** 1:16 170:4, 6
**shortly** 125:13, 18, 25
**shot** 125:12
**shouting** 58:15
**show** 64:13
**showed** 63:19 64:23 96:18 127:3, 25
**showing** 11:16 12:17 133:1
**shows** 116:7
**shut** 55:19 160:7
**side** 118:25
**sides** 18:6
**sight** 74:20
**sign** 50:23 68:16 69:4
**signaled** 46:20
**signing** 68:21 69:4
**similar** 38:2 94:24 112:23
**simply** 16:7
**single** 88:15, 17 160:3
**site** 54:16 66:5, 6, 7, 9, 11 72:17
**sitting** 107:7
**situation** 35:20 36:25 58:16 68:17 89:4, 5, 23 92:4, 25 98:9 99:18, 19 100:18 102:23 103:1 104:2 105:8 107:17 108:1, 2 134:9 157:7, 15 160:12
**situations** 42:23
**six** 41:22 125:17, 23 127:7 157:9
**slamming** 127:18
**slate** 151:22
**small** 78:4
**somebody** 88:25 94:8 95:10 98:20 103:6 107:1, 3, 7, 15
**someone's** 160:6
**somewhat** 152:23
**soon** 38:1 62:13 125:21
**sorry** 7:6 8:15 11:14 16:17 18:25 20:10 22:7 32:8 41:17 50:17 53:11 54:12 71:11 86:5 94:4 111:9 114:17, 24 123:22 134:21 135:7 139:19 140:14, 15 154:12 157:3, 4
**sort** 77:24 78:9 107:24
**sound** 45:1
**sounded** 92:19
**soundproof** 113:9, 10 118:23
**sounds** 55:1 59:24 82:16 119:3 153:18
**south** 34:4
**space** 34:8
**speak** 19:13 39:10, 13 46:11 63:23 64:19 72:23 84:25 89:10 90:24 100:2 103:1 144:13 153:11
**speakers** 97:7
**speaking** 108:8 152:23

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

153:*25* 154:*1* 164:*1*
**special** 5:*5*
**specific** 35:*12* 65:*24* 87:*1* 90:*1* 153:*4* 156:*13*
**specifically** 80:*24* 87:*2*
**speed** 32:*20*
**spell** 30:*19* 61:*7* 77:*6* 85:*15*
**spent** 32:*18* 145:*17*
**spoke** 49:*20*, *21* 50:*4* 67:*18* 102:*16* 116:*17*, *19* 134:*18*, *21*, *22* 153:*10* 155:*13*
**spoken** 50:*10*
**sponte** 166:*13*
**spot** 131:*5*
**spouse** 116:*19*
**ST** 1:*1* 2:*9*, *21* 15:*6*, *13* 25:*10*, *11*, *12*
**staff** 31:*22* 72:*5* 123:*17* 129:*14* 132:*13* 152:*2*
**staffing** 54:*13*
**stand** 162:*11*
**standard** 54:*7* 91:*19* 98:*18*, *22* 99:*14* 104:*21* 111:*6* 114:*10*
**standby** 20:*19*
**standing** 29:*4* 32:*10*, *11*, *13* 54:*4* 87:*21* 98:*3*, *16*, *24* 107:*15* 114:*6* 132:*18* 159:*24*
**standpoint** 39:*20*
**start** 5:*19* 8:*20*, *25* 14:*25* 21:*15* 29:*17* 30:*5* 62:*10*, *11* 124:*22*
**started** 41:*3* 71:*4* 72:*14* 73:*9* 77:*19* 89:*24* 125:*22*
**starting** 106:*9* 131:*17*
**state** 30:*15* 61:*3* 121:*24* 122:*8*
**stated** 46:*8* 58:*3* 66:*22*
**STATEMENT** 3:*3*, *4*, *6*, *7* 16:*8* 19:*18* 27:*9* 28:*5*, *9* 35:*2* 36:*6* 48:*7* 53:*8*, *19* 55:*1* 68:*20*, *22*, *23*, *25* 69:*8*, *11*, *12*, *25* 70:*7* 75:*12* 82:*7* 84:*13* 106:*14*, *20* 153:*1* 157:*5* 159:*14*, *15* 160:*23*, *25* 162:*17*, *25* 163:*1*, *7* 165:*12*, *13* 166:*3*, *10*, *24*, *25* 167:*13*, *14*, *17*, *24*
**statements** 27:*23*, *24* 82:*10* 151:*5* 159:*8*
**stating** 66:*13*
**stay** 12:*24* 58:*24* 67:*8* 91:*22*
**stayed** 107:*19*
**staying** 65:*12* 100:*23*
**steep** 87:*5*
**steering** 36:*20* 49:*3* 50:*11* 58:*16* 128:*24* 129:*9* 155:*5*
**stenographic** 170:*9*
**steps** 32:*7* 44:*7*, *8* 49:*10*, *12* 131:*7*
**stick** 165:*24*
**stip** 20:*17*
**stipulate** 18:*3*
**stipulation** 18:*2* 20:*7*, *11*
**stood** 132:*15*
**stop** 45:*12* 107:*17* 108:*17* 128:*8*
**stopped** 64:*12* 129:*23*
**story** 116:*23* 159:*12* 161:*12*
**straight** 126:*22*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**straightforward** 92:*21* 155:*19*
**strategic** 134:*15*
**strategy** 124:*9*
**strict** 16:*11*
**striking** 28:*15*
**struggling** 140:*20*
**stuff** 59:*2* 65:*6* 96:*15*, *22*, *23* 97:*18*, *20* 98:*25* 107:*16* 128:*7* 129:*15* 162:*19*
**sua** 166:*13*
**submit** 9:*20*, *22* 10:*11* 22:*20* 24:*7*, *14* 98:*6* 148:*5*, *9* 163:*14*
**submitted** 66:*14* 69:*8*, *11* 132:*25* 144:*23* 145:*6* 149:*19*, *25* 150:*3*
**subpoena** 17:*4*, *6*
**substantial** 161:*3*, *8*, *24*
**suddenly** 51:*24*
**suffice** 120:*7*
**suggestion** 13:*3* 24:*9*
**summarily** 108:*7*
**summary** 31:*25*
**superior** 74:*1*
**supervise** 127:*6*
**supervises** 31:*22*
**supervising** 61:*25*
**supervisor** 28:*14* 61:*16* 104:*22*
**supplied** 16:*3*
**supply** 23:*5*
**support** 167:*9*
**supported** 161:*8*
**supporting** 149:*21*
**supposed** 14:*22* 54:*9* 95:*23* 106:*19* 158:*6*, *9*
**supposedly** 40:*24* 58:*2*, *14* 128:*23* 148:*16* 149:*17*, *21* 165:*12*
**sure** 10:*6* 11:*1* 28:*6* 31:*16* 32:*12* 47:*19* 53:*18* 55:*13* 60:*16* 61:*8* 77:*8* 81:*22* 83:*24* 91:*14* 96:*22* 101:*15* 112:*13*, *17* 118:*15* 120:*3* 122:*19* 123:*10* 124:*24* 128:*10*, *13* 132:*17* 138:*3*, *10* 153:*8* 160:*24* 164:*15*
**surprise** 40:*22* 41:*1* 102:*5*
**surprised** 82:*18*
**suspected** 107:*14*
**swear** 60:*19* 121:*25*
**swearing** 66:*23* 67:*24*
**switched** 11:*22*
**sworn** 60:*22*, *25* 76:*25* 77:*3* 85:*8*, *11* 109:*17*, *20* 117:*22*, *25* 122:*2*, *5*
**system** 125:*22* 141:*22*

**< T >**
**table** 17:*15*
**take** 6:*4* 7:*18* 12:*23* 17:*1* 25:*7*, *18* 33:*12* 39:*21* 53:*2* 55:*13*, *14* 56:*15* 61:*13* 66:*24*, *25* 72:*9* 82:*10* 104:*15* 105:*21* 118:*6* 124:*22* 145:*14* 155:*20*
**taken** 1:*11*, *15* 49:*11* 55:*19* 62:*14* 170:*10*
**takes** 69:*25*
**talk** 27:*17* 35:*23* 62:*22* 64:*7* 65:*9*, *13* 70:*17*, *25* 71:*23*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

73:*20* 78:*2*, *9* 79:*23* 80:*11*, *13*, *20* 86:*11* 95:*22* 96:*19* 97:*4* 98:*8*, *9*, *12* 99:*10*, *14* 100:*9* 104:*22* 108:*5* 110:*18* 119:*18* 120:*14* 141:*16* 153:*23* 154:*1*, *3* 158:*5*, *8*
**talked** 49:*5*, *9*, *11* 64:*16* 65:*4* 71:*17* 73:*15* 74:*19* 79:*13*, *20*, *22* 80:*4*, *5* 84:*5* 111:*6* 112:*2*, *20* 126:*4* 127:*19*, *21* 129:*19*, *20*, *25* 134:*3* 136:*14* 142:*7* 157:*1*
**talking** 22:*8* 35:*18*, *25* 37:*5*, *6*, *8* 39:*2* 40:*10*, *24* 44:*21* 52:*5* 57:*15* 69:*9* 79:*19* 80:*21* 92:*23* 99:*12* 113:*12* 138:*16* 157:*6* 158:*11*
**tapped** 131:*3*
**task** 32:*18*, *19* 161:*6*
**team** 31:*23* 54:*15* 88:*7* 98:*11* 100:*1* 152:*4* 158:*2*
**teams** 131:*16*
**TECH** 8:*19*, *25*
**technical** 85:*3*
**technicalities** 16:*12*
**tell** 29:*12* 31:*14* 33:*14* 36:*14*, *18* 41:*10* 49:*20* 51:*18* 65:*25* 68:*2*, *5*, *7* 72:*25* 82:*21* 91:*14* 94:*12* 96:*12* 104:*1*, *5* 112:*12* 120:*8* 131:*9* 133:*5* 137:*8* 143:*21* 155:*17*
**telling** 58:*9* 101:*11* 113:*5* 154:*15*
**tells** 96:*25*
**temporary** 148:*10*
**ten** 126:*17* 162:*22*
**terminated** 98:*10*
**terminating** 86:*19*
**termination** 32:*25* 87:*11*
**terminations** 159:*23*
**terms** 35:*22* 54:*14* 83:*17*
**terribly** 113:*10*
**test** 21:*9*
**testified** 30:*11* 43:*17* 51:*5* 52:*9*, *22* 60:*25* 77:*3* 85:*11* 99:*15* 109:*20* 115:*11*, *16* 117:*25* 122:*5* 124:*12* 132:*6*, *24* 152:*12*, *22* 153:*6* 167:*16*
**testify** 13:*5* 121:*22* 136:*9*
**testifying** 12:*25* 21:*5* 136:*5* 156:*10*
**testimony** 10:*5* 13:*9*, *21* 17:*12* 18:*6* 21:*20* 23:*1* 43:*20* 46:*8* 95:*19* 110:*21* 115:*5* 116:*11* 127:*19* 129:*11* 133:*16* 155:*22* 156:*25*
**text** 33:*22* 34:*21*, *22* 35:*9* 41:*8*, *12*, *20*, *22* 47:*21* 48:*2*, *3*, *12*, *16* 52:*12*, *19* 63:*22* 71:*23* 72:*4* 80:*7* 112:*9*, *15* 120:*16* 125:*12*, *15* 127:*9* 129:*24*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


130:*13, 23* 137:*11, 22* 141:*11, 14* 147:*4*
**texted** 33:*18* 41:*4* 80:*7* 141:*17, 21*
**texting** 48:*18* 141:*18* 142:*4*
**Thank** 5:*7* 8:*24* 9:*10* 10:*10, 16* 12:*8, 20* 14:*21* 22:*25* 24:*11* 25:*3* 26:*24* 28:*8, 11* 29:*19, 23* 40:*15* 49:*16* 55:*5, 7, 11* 57:*3* 59:*10, 11, 23* 60:*11* 61:*3, 14* 67:*15* 74:*4, 9, 23* 75:*1, 5, 14* 81:*10, 15* 84:*15, 19, 20* 85:*14* 95:*8, 18* 97:*22* 105:*2, 13, 14* 108:*14, 23* 109:*4, 10* 111:*10* 114:*19, 21* 116:*9* 117:*3, 7, 8, 10* 121:*17, 18* 122:*8* 124:*25* 144:*3* 152:*21* 154:*9* 156:*4, 20* 159:*3, 7* 160:*19* 162:*13* 169:*6, 8, 9*
**Thanks** 67:*14* 75:*18* 116:*12* 121:*16* 162:*1*
**thing** 70:*23* 78:*9* 88:*17* 91:*21* 92:*10* 130:*10* 134:*15* 139:*17* 140:*9, 10* 147:*15* 148:*20* 160:*14*
**things** 22:*10, 17* 34:*4* 49:*11* 52:*7* 63:*3, 5, 7* 65:*3* 66:*12, 14* 72:*8* 73:*18* 104:*8* 112:*23* 132:*16* 137:*2* 149:*14* 157:*12, 19* 160:*16*
**think** 5:*17* 7:*18* 8:*12* 9:*16* 10:*22* 11:*8, 12* 12:*14, 19, 22* 14:*10* 16:*24* 19:*6, 20, 22* 21:*11* 22:*9* 27:*18, 20* 30:*6* 43:*8* 52:*1, 7* 59:*3, 21* 66:*2* 67:*6, 7* 68:*23* 69:*2* 71:*14* 72:*22* 73:*8, 22* 75:*22* 80:*2* 87:*2* 88:*22* 89:*6, 18, 19* 90:*1* 91:*12, 23* 96:*1, 17, 19* 99:*15, 20* 101:*3* 102:*22* 103:*16* 104:*12* 113:*4* 114:*15* 117:*19* 124:*19* 125:*17, 24* 133:*16* 139:*25* 140:*18* 141:*9* 142:*12* 143:*2* 144:*20, 21* 145:*11, 12* 148:*6* 153:*6* 156:*19, 24* 157:*3* 163:*4* 164:*17, 20* 165:*12*
**thought** 34:*2* 59:*1* 72:*17* 124:*6* 128:*21* 130:*2* 131:*9* 134:*10* 149:*9* 158:*13* 160:*4* 168:*18, 19, 20*
**three** 8:*16* 19:*15, 24* 20:*23* 25:*13* 27:*15, 16, 18, 20* 80:*3* 99:*4* 129:*12* 148:*13* 150:*15*
**three-minute** 27:*23*
**Thursday** 110:*12* 111:*13*

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 576 of 1127 PageID #: 579

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


119:*5, 6*
146:7
**time** 9:*13*
13:*4* 15:*21*
16:*21*
20:*25* 22:*8*
24:*9, 17*
28:*11*
29:*21*
32:*18*
33:*24* 34:*8, 25* 36:*23*
37:*16*
38:*11, 19*
43:*9, 11*
44:*9, 21*
46:*2* 54:*6, 9, 25* 55:*3, 7, 13* 57:*12*
58:*5* 59:*6*
63:*2, 20*
65:*4* 66:*3*
67:*16* 69:*7, 14, 16*
71:*14* 72:*3*
74:*4* 78:*4*
80:*4* 81:*22*
82:*13* 84:*7*
92:*7* 93:*16*
100:*9*
101:*10*
105:*3*
106:*4*
108:*11, 17*
110:*15*
111:*3, 11*
114:*20*
117:*9*
118:*7*
120:*19*
121:*13, 14, 21* 123:*2, 11* 124:*9*
132:*24*
134:*3*
137:*17*
139:*15*
144:*12*
151:*18*
152:*21*
156:*20*
157:*23*
160:*3, 9*
162:*14*
163:*25*
164:*24*
**timeline**
165:*1*
**times** 31:*18*
33:*17, 18*
34:*6* 40:*10, 12* 52:*4*
63:*5* 80:*3, 6, 16* 88:*4, 8, 10, 20, 21, 22* 101:*3, 7*
112:*20*
149:*20*
**tip** 60:*13*
**title** 61:*15*
77:*10*
151:*21*
**today** 6:*4*
18:*7* 25:*9*
28:*12* 51:*5, 9* 61:*13*
81:*16* 93:*9*
108:*10, 21*
110:*1*
114:*19*
150:*18*
152:*22*
161:*2, 6, 25*
167:*16*
**today's**
16:*4, 7*
**toggle** 157:*4*
**told** 28:*23*
37:*16*
39:*20*
40:*23* 41:*4, 9, 18* 44:*5, 9* 57:*19*
64:*6* 66:*23*
68:*20* 69:*5, 6* 71:*1, 7*
72:*6, 7*
78:*18, 19*
79:*18* 84:*7*
91:*22*
96:*16*
102:*9, 15*
107:*21*
108:*1*
111:*11*
129:*9*
130:*20*
132:*9*
133:*18, 24*
153:*23*
154:*3, 6*
157:*18, 24, 25* 158:*24*
159:*1*
**tomorrow**
73:*1*
**tone** 36:*15*
91:*24*
**top** 11:*25*
38:*23* 60:*13*
**topics** 152:*9*
**total** 161:*9*
**training**
131:*17*
143:*15, 16*
151:*22*
**transcribed**
170:*10*
**TRANSCRIPT**
1:*10* 16:*4*
22:*22*
163:*9, 13, 16, 19, 20*
164:*6, 16, 25* 165:*1*
166:*21*
168:*10, 14, 17, 24* 170:*8*
**transcripts**
169:*3*
**transitioning**
158:*16*
**traveled**
12:*14*
**treated**
13:*18*
127:*10, 15*
137:*2*
**trial** 22:*21*
**trickle**
132:*13*
**tried** 46:*17, 20* 63:*14*
96:*19*
116:*20*
117:*9*
**true** 107:*14*
167:*15*
170:*7*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**try** 60:*17* 62:*18* 88:*8* 152:*14*
**trying** 19:*19* 25:*2* 35:*6* 64:*12*, *18* 89:*6* 127:*1*, *2*, *4*, *13*, *14* 131:*25* 135:*9* 137:*4* 154:*12* 157:*4*
**turn** 60:*14*, *15* 76:*22* 86:*9* 145:*11* 152:*16*
**turned** 127:*15*
**twice** 36:*6*, *8* 125:*11* 138:*25*
**two** 19:*9* 20:*4* 21:*1* 33:*6* 43:*12* 51:*3* 59:*25* 63:*9* 76:*15* 94:*16* 106:*9* 125:*8* 129:*12* 135:*6* 148:*2*, *3* 159:*15*
**two-hour** 143:*6*
**typical** 95:*11*
**typically** 93:*1* 98:*24* 104:*14*

**< U >**
**UDS** 130:*23* 141:*13*, *22*, *25*
**uh-huh** 62:*4* 70:*5* 142:*25*
**uhn-uhn** 105:*12*
**umbrella** 31:*2*
**Um-hum** 33:*13* 34:*7* 42:*18* 55:*20* 58:*12* 69:*18* 87:*19*, *22* 95:*14* 99:*5*, *6* 100:*15*, *17* 102:*21* 136:*8* 138:*24* 139:*1*
**unaware** 147:*19*
**uncover** 101:*8*
**understand** 20:*24* 23:*20* 37:*1* 67:*15* 73:*10* 87:*1* 97:*13*, *15* 102:*1* 116:*15* 126:*7*, *15* 128:*17*, *18* 131:*11* 136:*22* 163:*9*
**understandable** 144:*16*
**understanding** 18:*1* 21:*8* 24:*20* 27:*7* 32:*15* 33:*19* 58:*19* 81:*23* 87:*3* 96:*14* 97:*17*, *20* 101:*23* 130:*6* 168:*23*
**understood** 70:*24* 159:*13*
**unfortunate** 37:*18*
**Uniform** 141:*22*
**unilaterally** 56:*6*, *8*
**unknown** 169:*2*
**unmute** 7:*7*
**unpaid** 164:*7*
**untouched** 47:*11*, *12*
**unusual** 72:*19* 73:*4*, *6*
**upload** 66:*12*
**upset** 64:*3* 65:*20* 66:*16* 89:*22* 156:*14*
**upstairs** 130:*20*
**urgency** 62:*14*
**use** 21:*20* 52:*18* 67:*22* 86:*10* 105:*23* 126:*13* 130:*7* 133:*9* 137:*1* 153:*12*
**User** 11:*21* 14:*18*
**users** 59:*25*
**usual** 60:*20* 135:*20*
**usually** 61:*24* 81:*7* 113:*11*, *13* 163:*18*, *19*

**< V >**
**vague** 34:*20* 35:*6*
**various** 129:*17*
**veracity** 18:*4*
**verbal** 29:*6* 37:*14* 81:*1* 87:*18*, *23* 88:*3*, *19* 93:*12*, *19*, *25* 94:*21*,

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

25 95:10, 11 98:17, 19, 23 100:4 107:14 108:2 159:23
**verbally** 42:24 44:22 94:6 99:16
**verbatim** 35:13
**verified** 126:24
**verify** 8:21 125:18 126:17
**version** 116:16
**versus** 40:25
**vicinity** 83:17
**video** 30:5 60:17
**view** 16:2
**VII** 25:11
**visit** 54:18 66:5, 7, 11 155:13
**visited** 43:2
**visually** 74:11
**vocal** 113:14
**voice** 36:15 91:24 119:13, 21 127:18
**voices** 119:2, 10
**volume** 76:22 86:9
**vote** 5:6 7:21 14:7 164:15

**< W >**
**wait** 73:21
**waiting** 10:1, 20 13:16
**walk** 83:20 107:16 159:25
**walked** 91:25 94:24 127:8 132:16, 19
**walking** 91:11, 13 95:10 102:7 131:2
**walks** 107:7
**walk-through** 143:16
**wall** 42:9, 10 110:5, 6 113:8, 11, 17 118:20 126:9, 10, 11 132:19
**want** 11:9, 17 16:1 17:16 35:14 55:14 62:9 64:7 65:11 66:25 67:1 68:1 73:20 75:11 88:18 89:8 98:16, 20 103:12 104:15 105:7 106:13 108:16 131:6 158:2 162:5, 11 163:1, 9 167:7
**wanted** 8:21 9:10 23:25 39:21 40:1 65:9 70:17, 21 91:18 130:4 136:6
**wanting** 40:2
**wants** 27:8 162:4
**watch** 125:11
**way** 42:20 50:5, 12 71:17 74:18 86:10 88:13 97:1, 3, 4, 14 126:21 127:10 134:19, 24 137:2 160:6 161:5 164:9
**WebEx** 1:11 2:3, 9, 12, 15, 18 12:1 59:22, 25
**Wednesday** 147:13
**week** 32:11, 14 54:5, 6 146:7 147:24 151:24
**weekly** 32:19 72:13
**weeks** 148:2, 3
**welcome** 5:18
**Well** 8:12 11:22 13:7, 9 16:4 18:17 21:25 31:19, 20, 23 36:11 38:8, 10, 11, 15 44:5 48:16 53:2 54:3 55:14, 23 59:5 63:15 66:1 67:15 69:24 72:25 75:25 80:9, 10 89:22 91:14 92:11, 15 94:16 102:14 103:9, 19, 23 119:8 121:24 127:22 128:2 131:25

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM


133:*10* 134:*20* 141:*16* 154:*25* 160:*23* 162:*13* 163:*23* 165:*16* 169:*1*

**went** 34:*4* 35:*20* 63:*16* 72:*7* 77:*22* 112:*14*, *22* 125:*14* 126:*3*, *22*, *23* 128:*6* 129:*13*, *15* 130:*12*, *16*, *25* 154:*18*, *19*

**we're** 12:*19* 14:*7* 25:*9* 26:*9* 44:*21* 59:*5* 76:*9* 86:*25* 101:*15* 106:*23* 139:*19* 140:*18* 159:*5* 164:*15*, *24* 168:*21*

**Wetzel** 130:*16*

**We've** 11:*21* 12:*7* 17:*7* 33:*8* 84:*24* 98:*17* 107:*6* 109:*15* 124:*1* 163:*17*

**whatsoever** 19:*17* 32:*5* 113:*13*

**wheel** 36:*21* 49:*3* 50:*11* 58:*16* 128:*24* 129:*9* 132:*23* 155:*5*

**WHEREOF** 170:*12*

**wife** 157:*8*, *18*

**willing** 5:*2*

**wind** 66:*15* 67:*2* 79:*9*, *25*

**wish** 81:*8*

**WITNESS** 3:*11* 4:*2* 9:*20* 10:*18*, *21* 11:*3*, *11* 13:*18* 21:*1* 26:*11* 29:*18* 30:*11* 55:*5*, *8* 59:*10*, *13* 60:*21*, *24* 63:*9* 68:*12* 73:*13* 74:*11* 75:*2*, *5* 76:*24* 77:*2* 84:*17*, *21* 85:*7*, *10* 86:*13* 87:*24* 93:*5* 94:*11*, *14*, *15* 97:*23* 101:*17*, *19* 103:*5* 108:*15* 109:*16*, *19* 110:*15* 114:*21*, *24* 117:*8*, *21*, *24* 121:*15* 122:*1*, *4* 123:*5* 154:*11* 167:*12*, *16* 170:*12*

**witnessed** 20:*6* 65:*20* 110:*23* 119:*20*

**witnesses** 9:*11*, *15*, *16*, *25* 10:*4* 11:*12* 13:*1*, *4*, *21* 17:*4*, *6*, *7*, *17* 18:*18*, *23* 19:*3*, *13*, *15*, *25* 20:*5*, *6*, *23* 21:*3*, *9*, *12*, *16*, *18* 25:*5* 52:*8* 59:*19* 75:*20* 105:*18*, *20* 106:*9*, *15* 115:*6* 159:*6* 162:*8* 166:*16*

**witness's** 116:*11*

**wondering** 18:*21* 23:*7*

**word** 80:*18* 107:*10* 134:*2*, *5* 147:*17* 149:*11* 155:*1*, *8*, *10* 161:*14*, *24*

**words** 21:*11* 35:*1*, *5* 36:*22* 43:*8* 57:*22* 131:*19* 153:*13* 161:*19*

**work** 32:*17* 45:*7* 48:*18* 53:*25* 54:*7*, *17* 61:*24* 62:*1* 65:*2*, *6* 69:*25* 71:*10*, *22* 89:*1* 93:*2* 95:*12* 96:*18* 99:*4* 102:*6* 107:*18*, *19*, *20* 108:*6* 118:*8* 120:*16*, *17*, *20* 124:*10* 141:*18* 142:*1*, *3*, *4* 148:*13*, *17*, *22* 152:*1*, *12* 158:*2*,

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

20 160:7, 19 164:7
**worked** 44:25 46:12 61:17 77:14 85:21 123:11 125:22 130:22 141:4 147:19
**working** 7:7 27:19 54:11, 14 59:14 65:3, 19 66:15 68:8 70:12, 14 76:9 96:12 107:17 143:15 151:25 152:1, 4 158:15 160:1, 3
**workplace** 33:5
**work-related** 113:1, 5
**works** 47:4 93:1
**work-wise** 141:8
**world** 160:2
**wrap** 137:4
**wrapping** 41:19
125:13 137:9
**writing** 29:4 44:15 50:15 98:7, 14
**written** 52:2 68:25 69:11 148:5 169:4
**wrong** 64:4 67:25
**wrote** 90:21
**Wyatt** 1:8 2:12, 19 4:12 5:22 10:22 13:8 17:11 22:14 23:5, 9, 25 24:5 28:13, 16, 20, 24 29:1, 5, 8, 12 31:11, 16 32:8, 15, 23 33:10, 15, 16 34:6 35:8, 17 37:15, 21 38:10, 25 39:10, 23 40:19, 23 41:2, 18 42:14, 21 43:14, 21 44:14, 22, 24 45:6 46:12, 17 47:23 48:17 49:21 50:4, 10, 15, 18 51:12, 23 52:3 54:8, 9 57:24 58:24 62:3 63:12, 24 64:9 65:19 67:14, 18 68:13 70:9, 12 71:20 73:5, 14, 23, 25 74:11 77:25 79:10 81:15, 20, 24 82:3, 15, 18 83:8, 11, 25 84:4, 12 85:24 86:17 89:11 90:14, 25 91:8 94:2 97:14, 24 99:8 102:6, 15, 19 104:5, 13 105:22 107:18 108:5 109:24 110:5, 15, 18, 22 111:1, 12, 16 112:1, 10 113:9, 11, 18, 21 114:2, 5, 7 116:15 118:4, 8 119:13, 16, 20, 23 120:5, 7, 11, 16, 23 121:3, 6, 22 122:3, 8, 10 152:21 161:19, 21 162:10 164:7
**Wyatt's** 18:9 29:15 31:12 32:25 33:3 34:19 36:15 42:10 47:6, 9, 17 48:20 53:25 54:22 55:18 57:7 110:3, 7 118:14 119:16, 19 161:7

**< Y >**
**Yeah** 8:15 27:6, 20 30:6, 9 33:8 34:16 35:6 37:1, 25 45:3 47:12 59:8, 21 64:3 65:2, 21 66:19 67:24 69:18 70:5

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 581 of 1127 PageID #: 584


71:*17*
72:*21, 24*
79:*18*
80:*11*
86:*24*
88:*13* 89:*7*
90:*18* 91:*1, 9* 92:*15*
93:*15, 21*
94:*4* 97:*5, 19, 21* 99:*1*
102:*8, 13, 17* 103:*12, 14* 106:*18, 21, 23*
114:*7*
116:*19*
133:*7*
134:*10*
135:*21*
139:*17, 19*
140:*12*
142:*25*
144:*15*
158:*13*
165:*24*
**year** 61:*19*
**years** 157:*19*
**yell** 135:*2*
**yelled** 128:*23*
**yelling** 36:*23* 50:*10* 113:*18*
**yep** 71:*18* 99:*5* 118:*22*
**yesterday** 131:*24*
**young** 162:*25* 165:*13* 167:*1*

**< Z >**
**Zajicek** 1:*15* 170:*3, 19*



Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

D

**Derrick Melton**

+1 601-291-8361

**Thursday, February 5**

9:32 AM
Outgoing call, 0 mins 58 sec

9:31 AM
Missed call

9:26 AM
Missed call

9:19 AM
Missed call

9:18 AM
Missed call

Plaintiff's Exhibit #02

**Wednesday, January 28**

6:23 PM
Incoming call, 2 mins 12 sec

Favorites Share Block Delete

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Gmail

Pete Wyatt <petewyatt149@gmail.com>

## Re: Resignation Acceptance

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Mon, Feb 9, 2026 at 4:57 AM
To: "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>
Cc: "Melton, Derrick" <DMelton@stlouiscountymo.gov>, "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Sharon,

This emailed "acceptance" is in reference to a situation or conversation that to my knowledge, did not happen. I do not recall ever going into Derrick's office, cussing and quitting.

To accept a resignation that was not made verbally or in writing, without question, conversation or process is a concern. Derrick "advising" Dr. Cunningham that "I quit", simply stated, for reasons I, nor anyone else can explain, he lied.

I did not say to Derrick or anyone else, "I quit". I did not resign. I had/have no interest, intent or prior consideration in the notion of quitting. Quite the contrary. Nor do I intend to allow Derrick to "quit" my job for me. Particularly around something this outrageous and demonstrably false.

To make this decision, in this way, on any level, without inquiry, fact or process would suggest Civil Service Rules allow one person to quit another person's job just by "advising" someone in authority.

To be clear, I DID NOT "QUIT"! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING. I DID NOT AND HAVE NOT HAD ANY CONVERSATION ABOUT QUITTING WITH ANY EMPLOYEE OF THE ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH OR THE COMMUNITY HEALTH CENTERS.

This unwarranted action is based in malicious slander. A petulant, petty and immature act perpetrated for no other reason than to do personal harm. It was definitely not in the interest of staff, community or the mission.

If this has gone forward with Appointing Authority signature without communication, documentation or intent based ONLY on Derrick's "advising", there's something very important missing. Per Civil Service Rules a resignation needs to be in writing. I have not written or presented such a document. If there is such a document, please provide me with a copy today. If there is a document "from me" or written on my behalf, being used to support this action, it IS NOT from my hand, mind or heart. If there is such a document, it is and will be considered libelous.

Again, to be perfectly clear, I DID NOT "quit". Nor did I ever use the word "quit" in my two brief conversations with Derrick, Thursday morning. I have documented communication that would/will suggest otherwise.

If Dr. Cunningham would like more context on this matter, I am more than willing to share what I believe is actual fact and that can help discern the truth. I will also be reaching out to others who may also have fallen victim to Derrick's lie.



Plaintiff's
Exhibit #03

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 584 of 1127 PageID #: 587
Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

I did not "quit" or resign. Nor do I understand why Derrick would risk his professional and personal integrity by telling a lie to Dr. Cunningham and staff. To gain/prove what?

Thank you.

Pete

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation. This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Gmail

Pete Wyatt <petewyatt149@gmail.com>

## Fwd: Resignation Acceptance

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Mon, Feb 9, 2026 at 6:50 AM
To: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>
Cc: "Gardner, Sharon" <sgardner2@stlouiscountymo.gov>

Dr. Cunningham,

This situation is truly unfortunate. Reputation and integrity are all that we truly own.

My specific request is to be reinstated immediately without further escalation, to continue the important work that needs to be done.

In the absence of truth and a submitted resignation letter stating my intent, the actions taken violate Civil Service Rules.

Derrick's reasons are his. I do not expect his truth. What happens in that particular space is no longer my concern. My sincere interest, as demonstrated, is in the work. Allow me to do that.

Thank you.

Pete

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 9, 2026 at 4:57 AM
Subject: Re: Resignation Acceptance
To: Gardner, Sharon <SGardner2@stlouiscountymo.gov>
Cc: Melton, Derrick <DMelton@stlouiscountymo.gov>, Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Sharon,

This emailed "acceptance" is in reference to a situation or conversation that to my knowledge, did not happen. I do not recall ever going into Derrick's office, cussing and quitting.

To accept a resignation that was not made verbally or in writing, without question, conversation or process is a concern. Derrick "advising" Dr. Cunningham that "I quit", simply stated, for reasons I, nor anyone else can explain, he lied.

I did not say to Derrick or anyone else, "I quit". I did not resign. I had/have no interest, intent or prior consideration in the notion of quitting. Quite the contrary. Nor do I intend to allow Derrick to "quit" my job for me. Particularly around something this outrageous and demonstrably false.

To make this decision, in this way, on any level, without inquiry, fact or process would suggest Civil Service Rules allow one person to quit another person's job just by "advising" someone in authority.

To be clear, I DID NOT "QUIT"! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING. I DID NOT AND HAVE NOT HAD ANY CONVERSATION ABOUT QUITTING WITH ANY EMPLOYEE OF THE ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH OR THE COMMUNITY HEALTH CENTERS.



Plaintiff's Exhibit #04

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

This unwarranted action is based in malicious slander. A petulant, petty and immature act perpetrated for no other reason than to do personal harm. It was definitely not in the interest of staff, community or the mission.

If this has gone forward with Appointing Authority signature without communication, documentation or intent based ONLY on Derrick's "advising", there's something very important missing. Per Civil Service Rules a resignation needs to be in writing. I have not written or presented such a document. If there is such a document, please provide me with a copy today. If there is a document "from me" or written on my behalf, being used to support this action, it IS NOT from my hand, mind or heart. If there is such a document, it is and will be considered libelous.

Again, to be perfectly clear, I DID NOT "quit". Nor did I ever use the word "quit" in my two brief conversations with Derrick, Thursday morning. I have documented communication that would/will suggest otherwise.

If Dr. Cunningham would like more context on this matter, I am more than willing to share what I believe is actual fact and that can help discern the truth. I will also be reaching out to others who may also have fallen victim to Derrick's lie.

I did not "quit" or resign. Nor do I understand why Derrick would risk his professional and personal integrity by telling a lie to Dr. Cunningham and staff. To gain/prove what?

Thank you.

Pete

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation. This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Gmail

Pete Wyatt <petewyatt149@gmail.com>

# Fwd: Resignation Acceptance

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Thu, Feb 12, 2026 at 6:18 AM
To: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>
Cc: "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>
Bcc: mlivasy@stlouiscountymo.gov, djones@pinelawn.org

Dr. Cunningham,

I'm following up on my February 9th (Monday) email to you requesting reinstatement to my job due to this egregious situation that is based on a deliberate and malicious lie told to you by Derrick Melton. He created and told you a story that included, among other falsehoods, my alleged cursing the job and quitting. That **DID NOT** happen. However, based on that lie, you subsequently accepted "my resignation!" A resignation that I had to be told about by your assistant. A resignation that, to my knowledge, is not supported by a formal letter from me. It is only supported by hearsay.

In a previous response, I referred to the lie as demonstratively false. However, there has been no attempt to challenge the lie or communicate with me for truth. To that end, I've elevated this situation by attaching a document that lays out the documented communication and timing during the 36 hour period that fostered the unnecessary, unwarranted and unprofessional lie. My statements can be supported by bank records, phone records and staff accounts.

Again, I request

1. A copy of the resignation letter used for this process to occur without my knowledge. Originally requested in the response below to Sharon Gardner.
2. To be fully reinstated as soon as possible to continue the work necessary to serve St. Louis County residents.
3. To have my office locked and off limits until this matter is resolved.

Dr. Cunningham, I don't know how or why the lie was brought to you. But, I do know that your response to it was unjust and without the benefit of doubt. I've shown you nothing but support and respect. This is my informal appeal to be heard and acted upon. Review the document. Ask the questions.

To be clear..., **I did not quit my job. I did not quit on my team. I did not quit on my peers. I did not quit on the mission. Nor did I quit on you.**

My reputation and integrity are all that I truly own. I stand prepared to defend both. They matter.

I look forward to hearing from you and my subsequent return to service.

Thank you.

Pete
314-494-2100

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 9, 2026 at 6:50 AM
Subject: Fwd: Resignation Acceptance
To: Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
Cc: Gardner, Sharon <sgardner2@stlouiscountymo.gov>

Dr. Cunningham,

This situation is truly unfortunate. Reputation and integrity are all that we truly own.

Plaintiff's Exhibit #05

My specific request is to be reinstated immediately without further escalation, to continue th needs to be done.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

In the absence of truth and a submitted resignation letter stating my intent, the actions taken violate Civil Service Rules.

Derrick's reasons are his. I do not expect his truth. What happens in that particular space is no longer my concern. My sincere interest, as demonstrated, is in the work. Allow me to do that.

Thank you.

Pete

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 9, 2026 at 4:57 AM
Subject: Re: Resignation Acceptance
To: Gardner, Sharon <SGardner2@stlouiscountymo.gov>
Cc: Melton, Derrick <DMelton@stlouiscountymo.gov>, Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Sharon,

This emailed "acceptance" is in reference to a situation or conversation that to my knowledge, did not happen. I do not recall ever going into Derrick's office, cussing and quitting.

To accept a resignation that was not made verbally or in writing, without question, conversation or process is a concern. Derrick "advising" Dr. Cunningham that "I quit", simply stated, for reasons I, nor anyone else can explain, he lied.

I did not say to Derrick or anyone else, "I quit". I did not resign. I had/have no interest, intent or prior consideration in the notion of quitting. Quite the contrary. Nor do I intend to allow Derrick to "quit" my job for me. Particularly around something this outrageous and demonstrably false.

To make this decision, in this way, on any level, without inquiry, fact or process would suggest Civil Service Rules allow one person to quit another person's job just by "advising" someone in authority.

To be clear, I DID NOT "QUIT"! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING. I DID NOT AND HAVE NOT HAD ANY CONVERSATION ABOUT QUITTING WITH ANY EMPLOYEE OF THE ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH OR THE COMMUNITY HEALTH CENTERS.

This unwarranted action is based in malicious slander. A petulant, petty and immature act perpetrated for no other reason than to do personal harm. It was definitely not in the interest of staff, community or the mission.

If this has gone forward with Appointing Authority signature without communication, documentation or intent based ONLY on Derrick's "advising", there's something very important missing. Per Civil Service Rules a resignation needs to be in writing. I have not written or presented such a document. If there is such a document, please provide me with a copy today. If there is a document "from me" or written on my behalf, being used to support this action, it IS NOT from my hand, mind or heart. If there is such a document, it is and will be considered libelous.

Again, to be perfectly clear, I DID NOT "quit". Nor did I ever use the word "quit" in my two brief conversations with Derrick, Thursday morning. I have documented communication that would/will suggest otherwise.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

If Dr. Cunningham would like more context on this matter, I am more than willing to share what I believe is actual fact and that can help discern the truth. I will also be reaching out to others who may also have fallen victim to Derrick's lie.

I did not "quit" or resign. Nor do I understand why Derrick would risk his professional and personal integrity by telling a lie to Dr. Cunningham and staff. To gain/prove what?

Thank you.

Pete

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation.  This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

---

**Derrick Melton - Pete Wyatt Incident Feb 5-6.pdf**
138K

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 593 of 1127 PageID #: 596

Gmail

Pete Wyatt <petewyatt149@gmail.com>

# Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Mon, Feb 16, 2026 at 4:31 AM
To: mlivasy@stlouiscountymo.gov
Cc: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

My name is Pete Wyatt, Chief Operating Officer, Community Health Centers.

I copied you in a February 9th memo to Dr. Cunningham and others on this subject. Hopefully, you were able to review the background and talk to Dr. Cunningham about the "resignation." A resignation that was fully processed in 24 hours. However, **I did not and have not resigned.**

I am officially appealing the "resignation" and I'm seeking expeditious and complete reinstatement. I am also requesting an investigation into how this situation occurred.

The attachments represent my appeal and support material.

I understand there is a process that could take some time. I also understand that special circumstances can be acknowledged. I am unjustly without an income and the clinical staff is in the middle of critical transition. This is an extremely positive, but chaotic time for all involved in the Community Health Centers.

Can I get this on Tuesday's agenda?

Thank you.

Pete Wyatt
314-494-2100

**7 attachments**

**Exhibit 2A Panera Transaction.docx**
153K

**Exhibit 2B Imo's Transaction.docx**
151K

**Exhibit 3 Cell Phone Call Log.docx**
144K

**BEFORE THE CIVIL SERVICE COMMISSION.pdf**
274K

**Exhibit 1 Derrick Melton - Pete Wyatt Incident Feb 5-6.pdf**
223K

**Exhibit 4B Text Thread 2.docx**
181K

**Exhibit 4A Text Thread 1.docx**
164K



Plaintiff's
Exhibit #06

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 594 of 1127 PageID #: 597
Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Gmail **Pete Wyatt <petewyatt149@gmail.com>**

# Fwd: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Fri, Feb 20, 2026 at 3:48 PM
To: mlivasy@stlouiscountymo.gov
Cc: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

I'm following up on my attempt to establish a line of communication and timeline regarding my requested appeal and hearing.

It has been 10 working days since Derrick Melton inexplicably submitted MY "resignation" to Dr. Cunningham, stating "I quit", which she accepted, without my knowledge, my consent, a written document from me or factual cause. Since February 6, 2026 I have attempted communication with leadership on several occasions, but have not received acknowledgement of my denial, my submission of evidence to the contrary, my request for appeal or my request for a private, in person hearing under oath.

I've read there is a form you may send for me to state my reasons for appeal and remedy sought. Will you, in fact, be sending a form? Or will the information I have already provided suffice?

What are the next steps in the process? Is there ANYTHING else you need from me at this time that will move this process forward?

Your acknowledgement and direction will be truly appreciated.

Thanks,

Pete
314-494-2100

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Thu, Feb 19, 2026 at 9:17 AM
Subject: Fwd: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request
To: <mlivasy@stlouiscountymo.gov>
Cc: Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, Gardner, Sharon <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

Can we establish a line of communication and timeline regarding my requested appeal?

I prefer private, in person and under oath.

Is there anything you need from me at this time?

Thanks,

Pete
314-494-2100

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 16, 2026 at 4:31 AM

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 595 of 1127 PageID #: 598
Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Subject: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request
To: <mlivasy@stlouiscountymo.gov>
Cc: Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, Gardner, Sharon <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

My name is Pete Wyatt, Chief Operating Officer, Community Health Centers.

I copied you in a February 9th memo to Dr. Cunningham and others on this subject. Hopefully, you were able to review the background and talk to Dr. Cunningham about the "resignation." A resignation that was fully processed in 24 hours. However, **I did not and have not resigned.**

I am officially appealing the "resignation" and I'm seeking expeditious and complete reinstatement. I am also requesting an investigation into how this situation occurred.

The attachments represent my appeal and support material.

I understand there is a process that could take some time. I also understand that special circumstances can be acknowledged. I am unjustly without an income and the clinical staff is in the middle of critical transition. This is an extremely positive, but chaotic time for all involved in the Community Health Centers.

Can I get this on Tuesday's agenda?

Thank you.

Pete Wyatt
314-494-2100

---

**7 attachments**

**Exhibit 2A Panera Transaction.docx**
153K

**Exhibit 2B Imo's Transaction.docx**
151K

**Exhibit 3 Cell Phone Call Log.docx**
144K

**BEFORE THE CIVIL SERVICE COMMISSION.pdf**
274K

**Exhibit 1 Derrick Melton - Pete Wyatt Incident Feb 5-6.pdf**
223K

**Exhibit 4B Text Thread 2.docx**
181K

**Exhibit 4A Text Thread 1.docx**
164K

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

BEFORE THE CIVIL SERVICE COMMISSION
ST LOUIS COUNTY, MISSOURI

Duane Pete Wyatt COO Community Health Centers, Appellant,

v.

St. Louis County, Missouri,

St. Louis County Department of Public Health,

St. Louis County Clinical Consumer Majority Board,

Derrick Melton, CEO, Community Health Centers, and

Dr. Kanica Cunningham, Director, Department of Public Health, Respondents.

**SECOND AMENDED RULE XXII APPEAL**

COMES NOW Duane "Pete" Wyatt, and hereby amends my above-captioned appeal to clarify the respondents to include St. Louis County, the St. Louis County Department of Public Health, and the St. Louis County Clinical Consumer Majority Board. Other than additional formatting fixes, counsel's signature and certificate of service below, this is the only change from Mr. Wyatt's first Amended Rule XXII Appeal.

I Duane "Pete" Wyatt hereby state my formal appeal of wrongful discharge (false resignation), failure to abide by administrative grievance rules, and disparagement, as follows:

1. I am an adult over the age of 18 and resident of St. Louis County, Missouri

2. On August 19, 2024, I was hired to serve as Chief Operating Officer, Community Health Centers

3. I have performed uninterrupted in this capacity and without any performance concerns.

Plaintiff's Exhibit
#07

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**Wrongful Termination (False Resignation)**

4. On Friday, February 6 2026 at approximately 12:40 pm, while in my office preparing for my weekly leadership staff meeting, I was informed by Sharon Gardner, Executive Assistant to Dr. Kanica Cunningham that Dr. Cunningham had accepted my resignation."

5. When I asked for clarification Sharon Gardner stated that my direct supervisor, Derrick Melton Chief Executive Officer, Community Health Centers had informed Dr. Cunningham, his fractional supervisor and Director of Public Health that I had told him in a heated cure laden, exchange, "I quit."

6. The alleged exchange with Derrick Melton occurring at some point on Thursday,

February 5 2026 did not occur. The account allegedly provided by Derrick Melton to Dr. Cunningham is a fabrication

7. At no time have I "quit" (resigned) my position either verbally or in writing. At all relevant times I've consistently denied doing so

8. Further belying Derrick Melton's account on Thursday, February 5th, that I allegedly "quit" is the fact that I was communicating and or present in the office and performing my work as usual on Friday, February 6th

9. Over my objections, at approximately 12:55p.m., I was asked to leave my office and it was planned that I be escorted out of the building, and my access badge, phone and laptop was confiscated

10. Documented evidence exists some attached, (Exhibits 1-4) that directly

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

challenges Derrick Meltons' claim as follows: (1) a detailed timeline, (2A B) bank transaction records, (3) a cell phone call log, including the single connected call with time and duration, and (4A B)) text message threads with timestamps and content My work calendar and DPH security video footage require authorization

**Failure to Comply with Administrative Procedures to Investigate the Grievance**

11. Pursuant to Rule XX: Conflict Resolution and Grievance Procedure Section C.1, Prior to knowing I had resigned", I attempted to interact with Derrick Melton in passing on Friday, February 6th, approximately 12:35pm in the DPH employee parking lot, regarding a meeting update; Derrick Melton proceeded to his car, avoiding communication As he exited the lot he looked my way, but refused to stop and speak with me. Department of Public Health security video footage will confirm my account.

12. Pursuant to Rule XX: Conflict Resolution and Grievance Procedure - Section E.5 , I did not file an official grievance. I did, however attempt to address this false account directly with Dr. Cunningham twice directly via email and once indirectly, when she and Derrick Melton were copied on my initial email response to the email from Sharon Gardner stating that my "resignation" had been accepted. These communications are attached collectively as Exhibit 6

13. To date, I have not received any acknowledgement or response to my messages in direct contravention of obligations pursuant to and in the "spirit" of Rule XX: Sections C.1 and C.2

**Disparagement by Derrick Melton**

14. Upon information and belief, Derrick Melton has repeated this false narrative

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

to senior and middle management within the Department of Public Health, as well as to the Executive Committee of the Clinical Consumer Majority Board of Directors Subsequently, the false narrative has also reached clinical and Department of Public Health staff This false disparagement slanders and damages my professional and personal reputation.

**Subsequently, I hereby respectfully request:**

1. *Pursuant to Rule XXII: Appeals, Hearings and Investigations Section 3.c.;* Immediate and full reinstatement to my position as Chief Operating Officer, with restoration of all status, seniority, pay, and no loss of time or standing

2. *Pursuant to Rule XXV: Records and Reports Section E;* A copy of a the resignation letter supporting these actions and a copy of a clear, written apology and retraction from Derrick Melton to Dr. Cunninham Matt Livasy and the Executive Committee of the Clinical Consumer Majority Board of Directors

3. *Pursuant to Rule XXII: Appeals, Hearings and Investigations Section 2;* In the absence of these results, I hereby request an expedited, closed hearing with the opportunity to conduct reasonable discovery

Respectfully submitted,

Katherine C. Frierdich, MO 51375
Cadenzia Consulting LLC
14 Fordyce Ln
St. Louis, Missouri 63124
(314) 791-5297

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

## Certificate of Service

The undersigned hereby certifies that the foregoing was filed at countyhr@stlouiscountymo.gov, with copy to mlivasy@stlouiscountymo.gov on this 9th day of March, 2026.

______________________

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**BEFORE THE CIVIL SERVICE COMMISSION ST. LOUIS COUNTY, MISSOURI**

In Re the Matter of: )
)
Duane "Pete" Wyatt, )
)
Appellant. )

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION**

**A. Introduction**

A hearing was conducted on March 30, 2026 to hear evidence relating to Duane "Pete" Wyatt's appeal related to his separation from employment with St. Louis County. Official notice was taken of the St. Louis County Charter Article VII section 7.020; St. Louis County Ordinance 15,154, St. Louis County Revised Ordinances section 202.100, and St. Louis County Civil Service Rules XIX and XXII. The Civil Service Commission, now having considered all the evidence and testimony adduced, and having reviewed the full record of this matter, and being fully advised in the premises, makes these findings of fact, conclusions of law, and decision.

**B. Findings of Fact**

1. Duane "Pete" Wyatt was employed by St. Louis County starting on August 19, 2024, as the Federally Qualified Health Center Chief Operations Officer within the Department of Public Health. Hearing Tr. 122:12-15.

2. Dr. Kanika Cunningham, beginning in January 2023, has served as and continues to serve as the Director of the St. Louis County Department of Public Health. Hearing Tr. 85:19-23.

3. Dr. Kanika Cunningham is the Appointing Authority for the Department of

Plaintiff's Exhibit #8

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Public Health. Hearing Tr. 87:8.

4. Mr. Wyatt resigned from County employment, effective February 6, 2026. Hearing Tr. 90:5 – 91:16; Exh. A (resignation acceptance email).

**Mr. Wyatt's Performance and Conduct Prior to Feb. 5**

5. Mr. Wyatt reported directly to Derrick Melton, the Federally Qualified Health Center Chief Executive Officer. Hearing Tr. 31:10.

6. Mr. Wyatt's job duties included the oversight of DPH's clinical operations, including supervising nursing and administrative staff, engaging in strategic planning to maintain financial solvency and stability, and ensuring regulatory compliance with federal HRSA (Health Resources and Services Administration) requirements tied to maintaining DPH's federally qualified health center status. Hearing Tr. 31:14 –25.

7. As of February 5, 2026, Mr. Melton was generally satisfied with Mr. Wyatt's job performance. Hearing Tr. 32:2.

8. As of February 5, 2026, the Department of Public Health was pursuing no disciplinary action against Mr. Wyatt and knew of no allegations of misconduct that could have lead to disciplinary action. Hearing Tr. 32:21 – 33.1.

**Mr. Wyatt's Resignation**

9. On February 5, 2026:

a. At approximately 9:00 a.m., Dr. Cunningham asked Mr. Melton how many employees reported directly to Mr. Wyatt. Dr. Cunningham communicated that she needed an answer urgently. Tr. 89:24-90:1.

b. Mr. Melton sent a text message to Mr. Wyatt with the question at 9:03 a.m. Mr. Wyatt replied that he thought he had six direct reports but would confirm.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Hearing Tr. 41:22-42:2.

c. Mr. Melton called Mr. Wyatt directly four times between 9:03 a.m. and 9:30 a.m. seeking a more specific answer. Mr. Wyatt did not answer. Hearing Tr. 33:16 – 20; Exh. B (call logs).

d. Ms. Pike, who served as Mr. Melton's administrative support staff, also called Mr. Wyatt on Mr. Melton's behalf. Mr. Wyatt did not answer. Hearing Tr. 63:20-23.

e. At or around 9:30 a.m., Mr. Wyatt returned Mr. Melton's call. The call duration was 58 seconds. Hearing Tr. 128:25-129:2; Exh. B.

f. Mr. Wyatt's voice was raised, and Mr. Melton heard a smacking sound that he believed to be Mr. Wyatt smacking the steering wheel of his vehicle. Hearing Tr. 36:17-25.

g. During the 9:30 a.m. call:

    i. Mr. Wyatt repeatedly cursed Mr. Melton, using language including "fuck you," "I'm fucking talking to you," "I'm fucking driving," and "I'm tired of this shit." Hearing Tr. 31:13-25.

    ii. Mr. Wyatt then stated, "I fucking quit." Hearing Tr. 36:1.

    iii. Mr. Melton asked Mr. Wyatt to confirm, and he repeated, "I fucking quit." Hearing Tr. 36:3-8.

    iv. Mr. Melton responded, "If you quit, then I accept." Hearing Tr. 36:12.

h. Following the 9:30 a.m. call, Mr. Melton immediately called Dr. Cunningham. Hearing Tr. 89:16-20.

i. Mr. Melton told Dr. Cunningham that Mr. Wyatt said that he "fucking quit."

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Hearing Tr. 90:6.

j. Mr. Wyatt did not submit a written resignation. Hearing Tr.

**Mr. Wyatt's Actions After the Resignation**

10. On February 5, 2026:

a. At or about 10:00 a.m. Mr. Wyatt arrived at the John C. Murphy building, located at 6121 North Hanley Road Berkeley, Missouri 63134. Hearing Tr. 138:19.

b. Soon after Mr. Wyatt's arrival, at or about 10:15 a.m. Mr. Wyatt entered Mr. Melton's office. Hearing Tr. 38:19-23.

i. Mr. Melton immediately asked why Mr. Wyatt was there. Mr. Melton repeated, "You resigned. You said what you said and that's that." Hearing Tr. 38:1-16.

ii. Mr. Wyatt then left Mr. Melton's office. Hearing Tr. 38:17.

iii. Mr. Wyatt did not attempt to deny his resignation or ask for clarification. Hearing Tr. 38:24 – 39:6.

k. Mr. Wyatt approached Ms. Pike outside Mr. Melton's office multiple times throughout the afternoon. Mr. Wyatt repeatedly said "I need to apologize to him." Hearing Tr. 70:15 – 71:2; *see also* Exh. C (Eugenia Pike statement)

a. At or soon after 3:30 p.m., Ms. Pike cancelled a future one-on-one meeting between Mr. Wyatt and Mr. Melton. Hearing Tr. 71:3.

b. Mr. Wyatt approached Ms. Pike, repeated his request and asked Ms. Pike, "Is he mad? he's mad, isn't he?" Hearing Tr. 71:3-6; Exh. B.

c. Ms. Pike and Mr. Wyatt both left the office at approximately 4:30 p.m.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Hearing Tr. 71:14.

**Dr. Cunningham's Acceptance**

11. On February 6, 2026:

a. On the morning of February 6, 2026, Dr. Cunningham directed her executive assistant, Sharon Gardner, to communicate her formal acceptance of Mr. Wyatt's resignation. Hearing Tr. 78:22 – 79:4.

b. Mr. Wyatt arrived at the John C. Murphy building at approximately 12:35 p.m. Hearing Tr. 131:2.

c. Ms. Gardner came to Mr. Wyatt's office at or around 12:50 p.m. and informed him verbally that Dr. Cunningham had accepted his resignation. Hearing Tr. 82:13-15.

d. In response to Ms. Gardner, Mr. Wyatt denied that he had resigned. Hearing Tr. 82:22

e. Mr. Wyatt initially denied to Ms. Gardner that he had spoken to Mr. Melton at all on February 5, 2026 and repeated his denial multiple times. Hearing Tr. 79:18 – 80:3.

f. After Ms. Gardner asked whether Mr. Wyatt complied with Mr. Melton's text message to call him, Mr. Wyatt changed his answer. Hearing Tr. 80:6-11.

g. Mr. Wyatt then admitted that he had a heated conversation with Mr. Melton. Mr. Wyatt stated to Ms. Gardner that he could not recall whether he cursed. Hearing Tr. 80:19-25.

h. Ms. Gardner instructed Mr. Wyatt to turn in his badge and mobile telephone. Hearing Tr. 84:7.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

i. Mr. Wyatt then left the building. Hearing Tr. 83:19.

j. At 1:19 p.m., Ms. Gardner sent an email to Mr. Wyatt with further written confirmation of Dr. Cunningham's acceptance of Mr. Wyatt's resignation. Hearing Tr. 81:4-9; Exh. A.

12. Mr. Wyatt submitted an appeal to the Civil Service Commission on February 24, 2026, and amended his appeal on March 9, 2026. Mr. Wyatt alleged in both the original and amended submissions that he had never resigned, and so his separation from County employment was properly characterized as an appealable termination.

13. On March 30, 2026, without ruling on whether Mr. Wyatt's separation from County employment was an appealable termination, the Civil Service Commission held a hearing on the record on Mr. Wyatt's allegation. *See* Hearing Tr 1.

14. The Civil Service Commission provided Mr. Wyatt due process on March 30, 2026, by conducting its hearing prior to deciding whether his separation from employment was a resignation or a termination, which was appealable. *See* Hearing Tr., *passim.*

15. During the appeal hearing, Mr. Wyatt received due process when he had the opportunity to respond to all allegations against him with his own testimony and the opportunity to provide additional testimony, exhibits and evidence. *See* Hearing Tr., *passim*.

16. Mr. Wyatt testified at the hearing and provided witness testimony. *See* Hearing Tr. 109:23 – 159:3.

17. Mr. Wyatt and the County were both represented by counsel in this matter. *See* Hearing Tr. 2.

18. The Civil Service Commission members reviewed all the transcripts and evidence before voting on Mr. Wyatt's appeal. The evidence reviewed included a transcript of

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Mr. Wyatt's testimony. *See* Minutes of the Civil Service Commission Meeting dated June 16, 2026.

**C. Conclusions of Law**

The Commission makes the following conclusions of law from its findings of fact and the reasonable inferences derived therefrom:

19. The St. Louis County Civil Service Commission has jurisdiction of this matter pursuant to the St. Louis County Charter Article VII, section 7.20; Ordinance 15,154, section 202.100 of the St. Louis County Revised Ordinances; and St. Louis County Civil Service Rule XXII, section B.1-.3.

20. St. Louis County Civil Service Rule XIX (Resignation) fully applies and the Appointing Authority correctly interpreted the true intent thereof in accepting Mr. Wyatt's oral statement as a resignation not in good standing on February 6, 2026, pursuant to Section A, sub-sections 1 and 2, which respectively state that:

1. A merit system employee may resign in good standing by submitting a written resignation to the employee's Appointing Authority, at least 14 calendar days before the effective date of the resignation. A copy of the written resignation must be submitted by the Appointing Authority to the Personnel Director with the payroll form terminating employment.
2. Failure of the employee to give 14 calendar days notice, unless the Appointing Authority consents to a shorter period of notice, may be cause for an employee not to be recommended for future employment with the County.

21. The hearing before the Commission consisted of direct testimony and cross examination of witnesses and the introduction of exhibits. *See* Tr.

22. County's evidence credibly established that even though there was no written resignation, Mr. Wyatt made an unequivocal verbal statement of his intent to resign to Derrick Melton on February 5, 2026.

23. The County's evidence established that, by failing to submit his resignation in

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

writing and with 14 calendar days' notice, Mr. Wyatt resigned not in good standing.

24. The County's evidence established that Dr. Cunningham, by and through Ms. Gardner, accepted Mr. Wyatt's verbal resignation on February 6, 2026.

25. The County's evidence established that Mr. Wyatt did not disclaim or rescind his resignation prior to Dr. Cunningham's acceptance.

26. Dr. Cunningham's interpretation of Mr. Wyatt's conduct as a verbal resignation not in good standing was supported by competent and substantial evidence, and was not arbitrary, capricious, or unreasonable.

27. Dr. Cunningham did not abuse her discretion when she accepted Mr. Wyatt's resignation.

28. Mr. Wyatt's separation from County employment was appropriate and lawful under the Charter, St. Louis County ordinances, and the Rules and Regulations of this Commission.

29. The Appointing Authority was not required to comply with the procedural requirements contained in Rule XXI, Section D of the St. Louis County Civil Service Rules in that Mr. Wyatt, by resigning, voluntarily waived his entitlement to the due process described therein.

30. Mr. Wyatt's contention on appeal that he was involuntarily terminated from County employment without due process is therefore denied.

31. The evidence adduced at the March 30, 2026 hearing that is contrary or inconsistent with the findings of fact, conclusions of law and decision herein is specifically found to be not credible, and not an adequate basis to reverse any or all of such findings, conclusions and decision.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**DECISION**

We, the Civil Service Commission, therefore, unanimously affirm the decision of the Appointing Authority accepting Mr. Wyatt's resignation from St. Louis County employment, effective February 6, 2026, and deny Appellant's appeal from such resignation.

Nadine Nunn, Chairperson
St. Louis County Civil Service Commission

Satonya L Booker

Satonya Booker, Member
St. Louis County Civil Service Commission

Chantal Hoffsten, Member
St. Louis County Civil Service Commission

Raven Akram

Raven Akram, Member
St. Louis County Civil Service Commission

SO ORDERED:

June 18, 2026

Date

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation. This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

Forbes 2025 America's Best Midsize Employers powered by statista

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

Plaintiffs Exhibit #9

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 611 of 1127 PageID #: 614
Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

## Sunshine Act Request #26-3253 Timeline

Mr. Wyatt, through counsel, submitted a Sunshine Act request to St. Louis County on February 24, 2026. It stated:

"I hereby request any and all documents, photos, emails, text messages, videos, data and other records, from January 26, 2026 through present regarding and/or relating to the following:

- Duane 'Pete' Wyatt
- Mr. Wyatt's Purported Resignation
- Mr. Wyatt's Purported Termination

Additionally, I hereby request any and all documents, photos, emails, text messages, videos, data and other records, from the inception of Mr. Wyatt's employment through present regarding and/or relating to the following:

- Mr. Wyatt's Human Resources File
- Mr. Wyatt's Work Performance

Known custodians include:

- Derrick Melton,
  - CEO, Community Health Centers
  - dmelton@stlouiscountymo.gov
  - 314-565-5627 (County issued phone)
  - 601-291-8361 (Personal cell phone)
- Dr. Kanika Cunningham
  - Director, Department of Public Health
  - kcunningham@stlouiscountymo.gov
- Dionne Jones
  - Chairwoman, Board of Directors
  - djones@pinelawn.org
  - 314-803-2618 (Personal cell phone)
- Sharon Gardner
  - Assistant to Dr. Cunningham
  - Sgardner2@stlouiscountymo.gov
  - 314-901-6725 (County issued phone)
  - 314-402-4356 (Personal cell phone)

Plaintiffs Exhibit #11

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

- Eugenia Pike
  - Assistant to Derrick Melton
  - epike@stlouiscountymo.gov
  - 314-477-3856 (County issued phone)
  - 314-448-0954 (Personal cell phone)

Upon information and belief, Mr. Derick Melton and others use both County-issued and private cell phones (both numbers listed above to the extent known) to conduct County business, Thus I request that both devices each be searched and relevant records produced in response to this request.

Thank you for your consideration to this matter."

| Date | DPH Response / Comment |
|---|---|
| 2/24/26 | Request Opened; Assigned to Department of Public Health |
| 2/24/26 | Receipt confirmed by<br>"Cassunder Pabon (on behalf of)<br>Sharon Gardner<br>Custodian of Records<br>St. Louis County Department of Public Health"[1] |
| 2/26/26 | The Civil Service Commission (the "Commission" notified Mr. Wyatt that his purported "resignation" was on the agenda of the Commission meeting dated March 17th. |
| 2/27/26 | Response received on the three day statutory deadline, extending the deadline by three weeks – **rescheduled to three days after the March 17th Commission meeting**: |

[1] All responses are so signed.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

| | |
|---|---|
| | "The Department of Public Health is working diligently to respond to your request. Additional time is required to complete the search for responsive records and, if any exist, to review them for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all responsive records, or to inform you that no such records exist, no later than **March 20, 2026**" (emphasis added). |
| 3/17/26 | The Commission non-substantively addressed Mr. Wyatt's appeal during its open meeting. Scheduled the evidentiary hearing for March 30, 2026. |
| 3/20/26 | Identical response as 2/27/26, except pushing its compliance deadline to **April 1, 2026, two days following the evidentiary hearing**. |
| 3/30/26 | **Wyatt Appeal Evidentiary Hearing** |
| 4/1/26 | Identical response again, except pushing its compliance deadline to **April 8, 2026**. |
| 4/8/26 | Slightly altered response, pushing its compliance deadline by another week, to April 8, 2026:<br><br>"The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide |

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

| | |
|---|---|
| | you with all records no later than **April 15, 2026**” (emphasis added). |
| 4/15/26 | Identical response to the April 8, 2026 one, extending its compliance deadline to **April 23, 2026**. |
| 4/13/26 | Transcript received, placing the deadline for post-hearing pleadings for April 14, 2026. |
| 4/23/26 | Identical response to the April 8 one, pushing its compliance deadline to **April 29, 2026**. |
| 4/23/26 | Counsel for Mr. Wyatt made the following demand. No response from the County was received.<br>“Pursuant to Missouri Sunshine Law, Section 610.023 R.S.Mo. you were required to respond within three (3) days, which you did not, or provide a *detailed explanation* for the cause of your now multiple delays in responding to my request, which you have not. Mr. Wyatt was not employed with the County for long, so the records should not be voluminous or burdensome to collect and produce. Please note that if we do not receive both the requested documents and an explanation for your delays by the end of the day next Monday, April 27th, I will submit a complaint to the Missouri Attorney General’s Office and seek all available remedies on Wr. Wyatt’s behalf for your failure to comply with the Missouri Sunshine Law. Katherine Frierdich” |

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

| | |
|---|---|
| 4/30/26 | Identical response to the April 8, 2026 one, pushing its compliance deadline to **May 4, 2026**. |
| 5/8/26 | **Four days after its own selected compliance deadline and 39 days after the evidentiary hearing**, the County produced 28 documents, none of which relate to the events of February 5th or 6th, many of which do not relate to Mr. Wyatt at all, are non-responsive, one of which was Mr. Wyatt's public records request fed back to him (but which showed Ms. Gardner received it directly), and only one containing a single redacted name without explanation.<br>The message read: "Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential disclosure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than **May 20, 2026**" (emphasis added).<br>**May 20, 2026 is one week after the parties' post-hearing pleadings were due to the Commission.** |
| 5/11/26 | The County produced one single document which did not relate to the events of February 5th or 6th, nor Mr. Wyatt, and non-responsive.<br>A message identical to the May 8, 2026 message reiterated its extension of its compliance deadline to **May 20, 2026, which** |

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

| | |
|---|---|
| | **is a week after the parties' post-hearing pleadings were due to the Commission**. |
| 5/13/26 | Mr. Wyatt timely filed with the Commission his (a) Proposed Findings of Fact, Conclusions of Law, and Order and (b) Post-Hearing Brief. |
| 5/14/26 | The County *untimely* filed its Findings of Fact, Conclusions of Law and Order. |
| 5/20/26 | THe County produced 14 documents, none of which relate to the events of February 5th or 6th, nor Mr. Wyatt, and were non-responsive.<br>A message identical to the May 8, 2026 message reiterated its extension of its compliance deadline to **June 1, 2026**. |
| 5/21/26 | The County produced 10 documents, which consisted of (1) the purported Pike statement already produced to the Commission, (2) Mr. Wyatt's calendar screenshot, which is the one of only two document produced that was responsive and not a regurgitation of documents already in Mr. Wyatt's possession; (3) a non-responsive Finance Sub-Committee meeting document; (4) an email draft by Mr. Melton, the only other responsive document; and (5) five emails sent by Mr. Wyatt to the County denying resigning his position, with all additional content redacted without explanation.<br>This production was accompanied by the identical message to May 8, 2026, reiterating its compliance deadline extension to **June 1, 2026**. |

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

| | |
|---|---|
| 5/21/26 | The County produced one document which was producing back to Mr. Wyatt his own text messages to Mr. Melton, which was in Mr. Wyatt's possession and appended as an exhibit to Mr. Wyatt's appeal.<br>This production was accompanied by the identical message to May 8, 2026, reiterating its compliance deadline extension to **June 1, 2026**. |
| 6/1/26 | The County responded with a message identical to the one on April 8, 2026, except extending its compliance deadline to **June 5, 2026**. |
| 6/2/25 | The County produced two documents which did not relate to the events of February 5th or 6th, nor Mr. Wyatt, and non-responsive.<br>This production was accompanied by an identical message to the one of May 8, 2026, but reiterating its extension of its compliance deadline to **June 5, 2026**. |
| 6/5/26 | The County produced two documents which did not relate to the events of February 5th or 6th, nor Mr. Wyatt, and non-responsive. |
| 6/5/26 | In a second message the County stated that: "All records have been released and your request has been fulfilled."<br>**This is 99 days after the request was submitted, 60 days after the evidentiary hearing, and nearly a month after post-hearing pleadings were filed.** |

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Summary of Events

Eugenia Pike

On Thursday February 5, 2026 Derrick came into the office that morning and inquired about Pete's whereabouts. I reached out by phone, but Pete did not answer. Kathy went to check Pete's calendar to see if he had anything scheduled for that time such as a meeting or PTO. While we waited Derrick and I talked in his office. He was not upset and stated he did not need to know exactly where Pete was or what he was doing and that he just needed to get the information from him. He was not upset or angry. Derrick and I walked to Kathy's desk to see if she had any luck locating Pete. We all looked and saw that there was nothing scheduled on Pete's calendar from 9 a.m.-10a.m. Kathy explained that the next scheduled meeting wasn't until 10am. I sent Pete a text informing him Derrick needed to speak with him right away. Approximately 5 minutes later I received a call from Pete. He seemed upset and had just finished speaking with Derrick. He asked, "what the hell is wrong with Derrick" and that "I was on stage answering Derrick's text message". I explained to him that he should speak with Derrick directly. He then asked, "what did Derrick need from him". I again stated that he would need to speak with Derrick directly. He stated that he was on the way and would arrive shortly. When Pete arrived, he showed me there was an event showing on his calendar. I explained to him that Derrick and I checked and the calendar showed nothing scheduled between 9-10 a.m.

Later that day Pete and I discussed the events of that morning. I explained that Derrick was not upset that morning and just needed the information right away. Pete explained to me on 2 different occasions that he needed to apologize to Derrick and that he would like to do it face-to-face and not by phone. After he saw that the 1:1 scheduled for Friday had been canceled he asked me several times if Derrick was angry. I informed him that Derrick showed no signs to me that he was angry with Pete.

Plaintiffs Exhibit #12

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**BEFORE THE CIVIL SERVICE COMMISSION ST. LOUIS COUNTY, MISSOURI**

In Re the Matter of:

)
)
Duane "Pete" Wyatt, )
)
Appellant. )

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION**

**A. Introduction**

A hearing was conducted on March 30, 2026 to hear evidence relating to Duane "Pete" Wyatt's appeal related to his separation from employment with St. Louis County. Official notice was taken of the St. Louis County Charter Article VII section 7.020; St. Louis County Ordinance 15,154, St. Louis County Revised Ordinances section 202.100, and St. Louis County Civil Service Rules XIX and XXII. The Civil Service Commission, now having considered all the evidence and testimony adduced, and having reviewed the full record of this matter, and being fully advised in the premises, makes these findings of fact, conclusions of law, and decision.

**B. Findings of Fact**

1. Duane "Pete" Wyatt was employed by St. Louis County starting on August 19, 2024, as the Federally Qualified Health Center Chief Operations Officer within the Department of Public Health. Hearing Tr. 122:12-15.

2. Dr. Kanika Cunningham, beginning in January 2023, has served as and continues to serve as the Director of the St. Louis County Department of Public Health. Hearing Tr.

Plaintiff's Exhibit #13

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

85:19-23.

3. Dr. Kanika Cunningham is the Appointing Authority for the Department of Public Health. Hearing Tr. 87:8.

4. Mr. Wyatt resigned from County employment, effective February 6, 2026. Hearing Tr. 90:5 – 91:16; Exh. A (resignation acceptance email).

**Mr. Wyatt's Performance and Conduct Prior to Feb. 5**

4. Mr. Wyatt reported directly to Derrick Melton, the Federally Qualified Health Center Chief Executive Officer. Hearing Tr. 31:10.

5. Mr. Wyatt's job duties included the oversight of DPH's clinical operations, including supervising nursing and administrative staff, engaging in strategic planning to maintain financial solvency and stability, and ensuring regulatory compliance with federal HRSA (Health Resources and Services Administration) requirements tied to maintaining DPH's federally qualified health center status. Hearing Tr. 31:14 –25.

6. As of February 5, 2026, Mr. Melton was generally satisfied with Mr. Wyatt's job performance. Hearing Tr. 32:2.

7. As of February 5, 2026, the Department of Public Health was pursuing no disciplinary action against Mr. Wyatt and knew of no allegations of misconduct that could have lead to disciplinary action. Hearing Tr. 32:21 – 33.1.

**Mr. Wyatt's Resignation**

9. On February 5, 2026:

a. At approximately 9:00 a.m., Dr. Cunningham asked Mr. Melton how many employees reported directly to Mr. Wyatt. Dr. Cunningham communicated that she needed an answer urgently. Tr. 89:24-90:1.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

b. Mr. Melton sent a text message to Mr. Wyatt with the question at 9:03 a.m. Mr. Wyatt replied that he thought he had six direct reports but would confirm. Hearing Tr. 41:22-42:2.

c. Mr. Melton called Mr. Wyatt directly four times between 9:03 a.m. and 9:30 a.m. seeking a more specific answer. Mr. Wyatt did not answer. Hearing Tr. 33:16 – 20; Exh. B (call logs).

d. Ms. Pike, who served as Mr. Melton's administrative support staff, also called Mr. Wyatt on Mr. Melton's behalf. Mr. Wyatt did not answer. Hearing Tr. 63:20-23.

e. At or around 9:30 a.m., Mr. Wyatt returned Mr. Melton's call. The call duration was 58 seconds. Hearing Tr. 128:25-129:2; Exh. B.

f. Mr. Wyatt's voice was raised, and Mr. Melton heard a smacking sound that he believed to be Mr. Wyatt smacking the steering wheel of his vehicle. Hearing Tr. 36:17-25.

g. During the 9:30 a.m. call:

    i. Mr. Wyatt repeatedly cursed Mr. Melton, using language including "fuck you," "I'm fucking talking to you," "I'm fucking driving," and "I'm tired of this shit." Hearing Tr. 31:13-25.

    ii. Mr. Wyatt then stated, "I fucking quit." Hearing Tr. 36:1.

    iii. Mr. Melton asked Mr. Wyatt to confirm, and he repeated, "I fucking quit." Hearing Tr. 36:3-8.

    iv. Mr. Melton responded, "If you quit, then I accept." Hearing Tr. 36:12.

h. Following the 9:30 a.m. call, Mr. Melton immediately called Dr.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Cunningham. Hearing Tr. 89:16-20.

i. Mr. Melton told Dr. Cunningham that Mr. Wyatt said that he “fucking quit.” Hearing Tr. 90:6.

**Mr. Wyatt’s Actions After the Resignation**

10. On February 5, 2026:

a. At or about 10:00 a.m. Mr. Wyatt arrived at the John C. Murphy building, located at 6121 North Hanley Road Berkeley, Missouri 63134. Hearing Tr. 138:19.

b. Soon after Mr. Wyatt’s arrival, at or about 10:15 a.m. Mr. Wyatt entered Mr. Melton’s office. Hearing Tr. 38:19-23.

i. Mr. Melton immediately asked why Mr. Wyatt was there. Mr. Melton repeated, “You resigned. You said what you said and that’s that.” Hearing Tr. 38:1-16.

ii. Mr. Wyatt then left Mr. Melton’s office. Hearing Tr. 38:17.

iii. Mr. Wyatt did not attempt to deny his resignation or ask for clarification. Hearing Tr. 38:24 – 39:6.

j. Mr. Wyatt approached Ms. Pike outside Mr. Melton’s office multiple times throughout the afternoon. Mr. Wyatt repeatedly said “I need to apologize to him.” Hearing Tr. 70:15 – 71:2; *see also* Exh. C (Eugenia Pike statement)

a. At or soon after 3:30 p.m., Ms. Pike cancelled a future one-on-one meeting between Mr. Wyatt and Mr. Melton. Hearing Tr. 71:3.

b. Mr. Wyatt approached Ms. Pike, repeated his request and asked Ms. Pike, “Is he mad? he’s mad, isn’t he?” Hearing Tr. 71:3-6; Exh. B.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

c. Ms. Pike and Mr. Wyatt both left the office at approximately 4:30 p.m. Hearing Tr. 71:14.

**<u>Dr. Cunningham's Acceptance</u>**

11. On February 6, 2026:

a. On the morning of February 6, 2026, Dr. Cunningham directed her executive assistant, Sharon Gardner, to communicate her formal acceptance of Mr. Wyatt's resignation. Hearing Tr. 78:22 – 79:4.

b. Mr. Wyatt arrived at the John C. Murphy building at approximately 12:35 p.m. Hearing Tr. 131:2.

c. Ms. Gardner came to Mr. Wyatt's office at or around 12:50 p.m. and informed him verbally that Dr. Cunningham had accepted his resignation. Hearing Tr. 82:13-15.

d. In response to Ms. Gardner, Mr. Wyatt denied that he had resigned. Hearing Tr. 82:22

e. Mr. Wyatt initially denied to Ms. Gardner that he had spoken to Mr. Melton at all on February 5, 2025 and repeated his denial multiple times. Hearing Tr. 79:18 – 80:3.

f. After Ms. Gardner asked whether Mr. Wyatt complied with Mr. Melton's text message to call him, Mr. Wyatt changed his answer. Hearing Tr. 80:6-11.

g. Mr. Wyatt then admitted that he had a heated conversation with Mr. Melton. Mr. Wyatt stated to Ms. Gardner that he could not recall whether he cursed. Hearing Tr. 80:19-25.

h. Ms. Gardner instructed Mr. Wyatt to turn in his badge and mobile telephone.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Hearing Tr. 84:7.

i. Mr. Wyatt then left the building. Hearing Tr. 83:19.

j. At 1:19 p.m., Ms. Gardner sent an email to Mr. Wyatt with further written confirmation of Dr. Cunningham's acceptance of Mr. Wyatt's resignation. Hearing Tr. 81:4-9; Exh. A.

12. Mr. Wyatt submitted an appeal to the Civil Service Commission on February 24, 2026, and amended his appeal on March 9, 2026. Mr. Wyatt alleged in both the original and amended submissions that he had never resigned, and so his separation from County employment was properly characterized as an appealable termination.

13. On March 30, 2026, without ruling on whether Mr. Wyatt's separation from County employment was an appealable termination, the Civil Service Commission held a hearing on the record on Mr. Wyatt's allegation. *See* Hearing Tr 1.

14. The Civil Service Commission provided Mr. Wyatt due process on March 30, 2026, by conducting its hearing prior to deciding whether his separation from employment was a resignation or a termination, which was appealable. *See* Hearing Tr., *passim.*

15. During the appeal hearing, Mr. Wyatt received due process when he had the opportunity to respond to all allegations against him with his own testimony and the opportunity to provide additional testimony, exhibits and evidence. *See* Hearing Tr., *passim*.

16. Mr. Wyatt testified at the hearing and provided witness testimony. *See* Hearing Tr. 109:23 – 159:3.

17. Mr. Wyatt and the County were both represented by counsel in this matter. *See* Hearing Tr. 2.

18. The Civil Service Commission members reviewed all the transcripts and

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

evidence before voting on Mr. Wyatt's appeal. *See* Minutes of the Civil Service Commission Meeting dated _________, 2026.

**C. Conclusions of Law**

The Commission makes the following conclusions of law from its findings of fact and the reasonable inferences derived therefrom:

44. The St. Louis County Civil Service Commission has jurisdiction of this matter pursuant to the St. Louis County Charter Article VII, section 7.20; Ordinance 15,154, section 202.100 of the St. Louis County Revised Ordinances; and St. Louis County Civil Service Rule XXII, section B.1-.3.

45. St. Louis County Civil Service Rule XIX (Resignation) fully applies and the Appointing Authority correctly interpreted the true intent thereof in accepting Mr. Wyatt's oral statement as a resignation not in good standing on February 6, 2026, pursuant to Section A, sub-sections 1 and 2, which respectively state that:

1. A merit system employee may resign in good standing by submitting a written resignation to the employee's Appointing Authority, at least 14 calendar days before the effective date of the resignation. A copy of the written resignation must be submitted by the Appointing Authority to the Personnel Director with the payroll form terminating employment.
2. Failure of the employee to give 14 calendar days notice, unless the Appointing Authority consents to a shorter period of notice, may be cause for an employee not to be recommended for future employment with the County.

46. The hearing before the Commission consisted of direct testimony and cross examination of witnesses and the introduction of exhibits. *See* Tr.

47. County's evidence established that Mr. Wyatt made an unequivocal verbal statement of his intent to resign to Derrick Melton on February 5, 2026.

48. The County's evidence established that, by failing to submit his resignation in writing and with 14 calendar days' notice, Mr. Wyatt resigned not in good standing.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

49. The County's evidence established that Dr. Cunningham, by and through Ms. Gardner, accepted Mr. Wyatt's verbal resignation on February 6, 2026.

50. The County's evidence established that Mr. Wyatt did not disclaim or rescind his resignation prior to Dr. Cunningham's acceptance.

51. Dr. Cunningham's interpretation of Mr. Wyatt's conduct as a verbal resignation not in good standing was supported by competent and substantial evidence, and was not arbitrary, capricious, or unreasonable.

52. Dr. Cunningham did not abuse her discretion when she accepted Mr. Wyatt's resignation.

53. Mr. Wyatt's separation from County employment was appropriate and lawful under the Charter, St. Louis County ordinances, and the Rules and Regulations of this Commission.

54. The Appointing Authority was not required to comply with the procedural requirements contained in Rule XXI, Section D of the St. Louis County Civil Service Rules in that Mr. Wyatt, by resigning, voluntarily waived his entitlement to the due process described therein.

55. Mr. Wyatt's contention on appeal that he was involuntarily terminated from County employment without due process is therefore denied.

56. The evidence adduced at the March 30, 2026 hearing that is contrary or inconsistent with the findings of fact, conclusions of law and decision herein is specifically found to be not credible, not truthful and not an adequate basis to reverse any or all of such findings, conclusions and decision.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**DECISION**

We, the Civil Service Commission, therefore, unanimously affirm the decision of the Appointing Authority accepting Mr. Wyatt's resignation from St. Louis County employment, effective February 6, 2026, and deny Appellant's appeal from such resignation.

________________________________________

Nadine Nunn, Chairperson
St. Louis County Civil Service Commission

________________________________________

Satonya Booker, Member
St. Louis County Civil Service Commission

________________________________________

Chantal Hoffsten, Member
St. Louis County Civil Service Commission

SO ORDERED:

________________________

Date

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**BEFORE THE ST. LOUIS COUNTY CIVIL SERVICE COMMISSION**
**ST. LOUIS COUNTY, MISSOURI**

In re Appeal of Duane "Pete" Wyatt, )
)
Appellant, )
)
v. )
)
Dr. Kanika Cunningham, )
Appointing Authority, et al., )
)
Respondents. )

**APPELLANT'S PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

**Proposed Findings of Fact**

1. Mr. Wyatt was employed by St. Louis County as Chief Operating Officer for the Department of Public Health and was a merit employee. Tr. 31:10-13; 122:13-15; 123:11-13.

2. Dr. Kanika Cunningham, the Appointing Authority, testified that she considered Mr. Wyatt terminated from his position. Tr. 98:05-10.

3. The County did not produce any pre-hearing witness list, written statement of cause, or documentary evidence to Appellant before the hearing, and the County confirmed at hearing that it had submitted no documents. Tr. 9:14-23; 10:11-15; 19:16-24; 22:10-15.

4. The Commission took judicial notice of St. Louis County Charter Article VII, Section 7.020; Revised Ordinances section 202.100; Ordinance 15,154; and Civil Service Rules XIX, XX, XXI, and XXII. Tr. 25:07-26:03.

5. On February 5, 2026, Mr. Melton and Mr. Wyatt had a 58-second telephone conversation while Mr. Wyatt was driving to work. Tr. 34:9-17; 125:7-25; Exhibit 3.

Plaintiffs Exhibit #14

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

6. Mr. Melton testified that during that call Mr. Wyatt twice said that he "quit" and Mr. Melton treated the call as a resignation. Tr. 35:13-25; 36:1-13.

7. No witness other than Mr. Melton claimed ever to have heard Mr. Wyatt say "I quit." Tr. 63:8-11; 68:5-11; 110:15-20.

8. Ms. Pike testified that she worked with Mr. Wyatt throughout the remainder of February 5 until 4:30 p.m. Tr. 64:25-65:06.

9. Dr. Miller testified that he met with Mr. Wyatt on February 5th, did not hear him say he quit, did not observe agitation, and never heard any elevated office discussion that day. See Tr. 110:15-111:24; 113:7-24. Dr. Miller testified that he has never witnessed Mr. Wyatt get angry and curse at people. Tr. 110:21-24.

10. Damon Broadus likewise testified that he saw no agitation from Mr. Wyatt on February 5th, and never heard or saw disrespectful conduct by Mr. Wyatt. Tr. 119:08-120:25.

11. Mr. Wyatt never submitted a written resignation. Tr. 44:14-16; 50:14-18; 148:4-9.

12. Mr. Melton admitted he never asked for a written resignation, and Dr. Cunningham admitted she never asked for one either. Tr. 44:14-16; 50:14-18; 98:5-19.

13. Mr. Wyatt reported to work on February 5th after the 58-second phone call, entered Mr. Melton's office for a brief in-person discussion, continued working the rest of the day, and returned again on February 6th. Tr. 37:20-38:18; 45:06-10; 46:12-24; 129:11-25; 131:22-25; 148:16-25.

14. Ms. Gardner testified that Dr. Cunningham did not ask her to accept the resignation until February 6th. Tr. 79:04-14.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

15. When Ms. Gardner informed Mr. Wyatt on February 6th that the County had accepted his resignation, he was surprised, and expressly denied resigning. Tr. 79:15-24; 82:13-23; 132:18-25; 144:5-12.

16. Dr. Cunningham did not speak directly with Mr. Wyatt before accepting the alleged resignation. Tr. 89:10-23; 90:13-18; 95:22-24.

17. Dr. Cunningham testified that verbal resignations "not in good standing" are situations where an employee says "I quit," leaves, and does not continue working in the role. Tr. 88:17-89:08; 94:22-95:15.

18. This case did not fit that pattern because Mr. Wyatt continued to work on February 5th and February 6th after the alleged resignation. Tr. 65:1-17; 71:10-18; 129:11-25; 131:22-25; 148:16-25.

19. Dr. Cunningham sent her assistant to inform Mr. Wyatt on February 6th that a supposed resignation "not in good standing" the day prior had already been accepted, and caused Mr. Wyatt to exit the building under supervision of security. Tr. 79:11-24; 82:13-23; 91:17-20; 102:05-11; 132:18-19.

20. After Ms. Gardner informed him that the County had accepted his resignation, Mr. Wyatt sent repeated emails denying that he resigned. Tr. 145:6-25; 146:1-25; 147:1-25; Exhibit 2.

21. Dr. Cunningham admitted that, even after learning Mr. Wyatt denied resigning, she did not direct anyone outside counsel to conduct an investigation. Tr. 102:14-25.

22. The Commission later invited post-hearing filings and referenced "the statement from the young lady that made the statement." Tr. 165:08-168:05.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

23. The Pike statement later produced to the Commission is an undated, unsigned one-page typed summary. Exhibit 1.

24. At the hearing, however, Ms. Pike testified that she did not recall signing an affidavit, believed Sharon Gardner took her statement, and described that process as occurring later on February 6th. Tr. 68:16-69:25; 70:01-05; 82:06-12.

25. Appellant had no opportunity, after the Pike statement was produced on May 4, 2026, to cross-examine Ms. Pike concerning that document's preparation, timing, edits, or accuracy.

26. Before the hearing, Appellant sought relevant records through a public records request, including materials concerning the alleged resignation, witness statements, investigative materials, and his HR file, but those materials were not produced before the hearing. Request 26-3253.

27. The hearing record reflects that Appellant repeatedly advised the Commission that he had requested documents supporting the County's account and had received nothing from either the County or the Commission before the hearing.

28. The County delayed production of requested records beyond the hearing date and, based on the hearing record and subsequent events, beyond the deadline for meaningful use in post-hearing submissions as well. Request 26-3253.

29. Because the requested materials were not timely produced, Appellant was unable before or during the hearing to compare witness testimony to contemporaneous documents, prepare cross-examination using witness statements and investigative materials, or determine whether exculpatory or inconsistent records existed in his HR file or elsewhere.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

30. The post-hearing production of Ms. Pike's undated, unsigned statement confirms that requested materials existed but were not disclosed in time for Appellant to confront the witness with them during her testimony.

**Proposed Conclusions of Law**

31. Under Article VII of the St. Louis County Charter, covered county employees are retained on the basis of merit and ability, and the Civil Service Commission hears appeals in disciplinary cases. St. Louis County Charter Art. VII, §§ 7.010, 7.030(3).

32. The Commission therefore has jurisdiction to review a separation that is disciplinary in substance regardless of whether Appellant was terminated, as the Appointing Authority testified, or if the County labels it a resignation. Tr. 25:07-26:3.

33. The County failed to prove that Mr. Wyatt voluntarily resigned under Rule XIX because there was no written resignation and because the record shows continued work rather than departure. Tr. 44:14-16; 50:14-18; 65:1-17; 71:10-18; 129:11-25; 148:16-25.

34. The County also failed to prove any deemed resignation by absence. Dr. Cunningham herself acknowledged the Rule XIX provision addressing presumptive resignation after three consecutive missed workdays, and Mr. Wyatt indisputably did not miss three consecutive days. Tr. 99:2-6; 148:10-25.

35. The more persuasive record evidence shows, at most, a brief heated call followed by continued employment conduct inconsistent with resignation. Tr. 64:1-8; 65:1-17; 110:15-25; 120:14-25.

36. Because the Appointing Authority testified to considering the Appellant terminated, Appellant had enforceable rights pursuant to the Charter and Rules XXI and XXII.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

37. Because the County relied on allegations of profanity, aggression, a resignation "not in good standing," and alleged "mental health" concerns shared with an outside third party, the County's action was disciplinary in substance and should have been processed under the discipline-and-appeal framework recognized by the Charter and Rules XXI and XXII. St. Louis County Charter Art. VII, § 7.030(3); Tr. 25:07-26:03; 88:17-25; 90:21-91:12.

38. Mr. Wyatt, as a covered merit employee, possessed a protected property interest in continued employment. St. Louis County Charter Art. VII, §§ 7.010, 7.030(3).

39. Under Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542-46 (1985), due process required notice and an opportunity to respond before the County deprived Mr. Wyatt of that protected employment interest.

40. The County did not provide that process. Dr. Cunningham testified that she considered Mr. Wyatt terminated. Tr. 98:05-10 She alternatively testified that she accepted the alleged resignation without speaking to Mr. Wyatt; Ms. Gardner informed him after the decision had already been made; and the County persisted even after his immediate denial and later written denials. Tr. 79:04-24; 82:13-23; 89:10-23; 90:13-18; 102:14-25; 145:6-147:25; Exhibit 2.

41. Accordingly, the County's action should be reversed on non-constitutional grounds because it was not a proven resignation under the Rules, and, alternatively, because it deprived a merit employee of employment without the minimum pre-deprivation process required by Loudermill.

42. To the extent the County's "resigned not in good standing" designation and all associated accusations placed Mr. Wyatt's good name, reputation, honor, or integrity at issue in connection with loss of employment, due process also supports corrective relief to clear his

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

name. Board of Regents v. Roth, 408 U.S. 564, 573 (1972); Paul v. Davis, 424 U.S. 693, 701-10 (1976); Codd v. Velger, 429 U.S. 624, 627-28 (1977).

43. The late-produced Pike statement should either be excluded or accorded no weight because it was produced only after the hearing, is undated and unsigned, and was not subject to cross-examination after production. Tr. 68:16-25; 69:01-25; 162:21-25; 163:01-25; Exhibit 1.

44. Missouri's Sunshine Law required the County to act on Appellant's request for public records as soon as possible and, absent reasonable cause, no later than the end of the third business day after receipt. Mo. Rev. Stat. § 610.023.

45. Although formal enforcement of Chapter 610 lies in circuit court, the Commission may consider the fairness consequences of the County's delayed and incomplete production in evaluating the reliability and weight of the County's proof in this appeal. § 610.027 R.S.Mo.

46. The County's failure to timely produce requested records materially prejudiced Appellant's ability to prepare and present his case, including his ability to test the County's changing account against contemporaneous records, prepare cross-examination, and confront witnesses with prior statements.

47. To the extent the full extent of prejudice cannot yet be identified, that uncertainty results from the County's continued nonproduction itself. Appellant has therefore preserved all additional objections and remedies arising from any later-produced records, including any rights and remedies available under Chapter 610.

48. The Commission should accordingly draw no inference favorable to the County from the absence of documents the County failed to timely produce and should not afford

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

dispositive or enhanced weight to witness narratives that Appellant was denied a fair opportunity to test through contemporaneous records.

**Proposed Order**

49. The County's action separating Appellant from employment is REVERSED.

50. The Commission finds that Appellant did not voluntarily resign.

51. Appellant shall be reinstated to his former position.

52. Appellant shall receive back pay with interest, restoration of benefits, service credit, leave accruals, seniority from the date of separation through reinstatement, less any lawful offsets, and return of his office space.

53. The County shall remove from Appellant's personnel records any statement that he resigned "not in good standing" and any comparable misconduct-based, resignation or "mental health" notation.

54. The Pike statement produced after hearing is excluded from consideration as unreliable.

55. The Commission shall not afford Respondent any evidentiary or persuasive advantage from records not timely produced, and Appellant's objections arising from that nonproduction are preserved.

56. The Commission grants such other and further relief as is just and proper.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Respectfully submitted,

s/s Katherine Frierdich
Katherine C. Frierdich (née Lemley)
Mo Bar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
Counsel for Appellant

Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on counsel for Respondent and the St. Louis County Clinical Consumer Majority Board on May 13, 2026, via electronic mail.

s/s Katherine Frierdich

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**BEFORE THE ST. LOUIS COUNTY CIVIL SERVICE COMMISSION**
**ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| In re Appeal of Duane "Pete" Wyatt, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| Dr. Kanika Cunningham, | ) |
| Appointing Authority, et al., | ) |
| | ) |
| Respondents. | ) |

**APPELLANT'S POST-HEARING BRIEF**

**Introduction**

St. Louis County (the "County"), through its Appointing Authority, Dr. Kanika Cunningham, would like the Commission to believe that this case is about a merit employee who voluntarily resigned "not in good standing." The County bears the burden to prove that. But its theory simply did not hold up at the hearing on March 30, 2026:

> Q: ". . . did you ask [Mr. Wyatt] to submit his resignation in writing?"
>
> A: [Dr. Cunningham] "No, because I would never talk to--in a situation, I would never talk directly to the **person that's being terminated.**"

See Tr. 98:05-10 (emphasis added). This case is about a termination of a merit employee without basic due process protections.

Even had the County consistently stuck with its "resignation not in good standing" story, which clearly it did not, its case still would have failed. That case would have concerned whether a covered merit employee may be stripped of civil service protection based on an alleged verbal resignation that no one documented in writing, no one investigated before



Plaintiffs Exhibit #15

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

separation, the employee continued to perform County work after the supposed "resignation not in good standing," and the employee immediately, repeatedly and emphatically denied resigning once the County first announced that it had "accepted" the supposed resignation. Even where the County tried to stick to its original story, the hearing record shows that the County's theory shifted; the County's own witnesses materially undermined the resignation narrative; and the County processed this matter as an involuntary separation first and a fact-finding exercise never.

The Commission should find that the County failed to meet its burden of proof, reverse the County's decision, and reinstate Mr. Wyatt to his merit position as if he never left, with interest, because: (a) the Appointing Authority referred to Mr. Wyatt as "terminated"; (b) alternatively, the County failed to prove a voluntary resignation under Rule 19 and Missouri law; (c) Mr. Wyatt's undisputed conduct is inconsistent with any completed resignation; (d) the Appointing Authority admitted that the facts of Mr. Wyatt's alleged resignation don't align with resignations "not in good standing;" and (e) the County denied Mr. Wyatt the minimum due process required before depriving a merit employee of continued employment and disparaging his reputation.

**Jurisdiction and Procedural Background**

Mr. Wyatt was a merit employee serving as Chief Operating Officer. See Tr. 31:10-13; 122:13-15; 123:11-13. Jurisdiction lies with the Civil Service Commission because this appeal challenges a termination of a merit employee. Even if the Commission ignores the Appointing Authority's sworn testimony of considering it a termination, and otherwise considers the County's contrived story, it involves a separation that was disciplinary in substance. Article VII of

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

the Charter gives the Commission authority to hear appeals in cases of disciplinary action by appointing authorities. See St. Louis County Charter Art. VII, § 7.030(3). Rule XXII of the Civil Service Rules provides that the Commission may review qualifying appeals and may affirm, modify, or reverse the Appointing Authority's action. If the County's action was a termination, which was admitted, or, alternatively, not on a valid resignation, then it is an appealable removal.

Before the hearing, counsel for Mr. Wyatt asked the Commission to compel testimony and collect non-privileged records, explaining that Mr. Wyatt had received no witness list, no records, and no statement of cause from the County. See Tr. 9:14-23; 10:11-15; 19:16-24; 22:10-15; 23:1-15. The County confirmed at the hearing that it had submitted no documents. See Tr. 10:11-15. Mr. Wyatt additionally requested relevant documents through Missouri's Sunshine Law, but received no production in the 34 days between his request and the evidentiary hearing.

The Commission later directed that post-hearing findings of fact and conclusions of law could be filed and specifically referenced "the statement from the young lady that made the statement," i.e., Ms. Pike's statement. See Tr. 165:08-168:05. The Pike statement was then produced to the Commission by the County on April 27, 2026, nearly a month after the March 30, 2026 hearing, although the County represented at hearing that Ms. Pike's statement was taken later on February 6. See Tr. 68:16-70:05; 82:6-12; Pike Statement at Exhibit 1. The document produced is undated and unsigned. See Exhibit 1. Mr. Wyatt had no opportunity to confront Ms. Pike about that document after it was produced.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

## Argument

Even under the theory of resignation "not in good standing" that the County wants the Commission to believe, the County's treatment of Mr. Wyatt was disciplinary in substance, not a voluntary departure. The Charter gives this Commission authority to hear appeals in disciplinary matters. See St. Louis County Charter art. VII, § 7.030(3). The Commission also took judicial notice of Charter Article VII, and Civil Service Rules XIX, XX, XXI, and XXII. See Tr. 25:7-26:3. Where the County relies on alleged misconduct to remove a merit employee, it cannot evade review by simply relabeling the event a resignation.

### I. The County Impermissibly Denied Mr. Wyatt the Pre-Deprivation Process Required by Loudermill and St. Louis County Civil Service Rule XXI.

A covered merit employee has a protected property interest in continued employment when the governing law retains employees on the basis of merit and ability and provides appeal rights in disciplinary cases. See St. Louis County Charter Art. VII, §§ 7.010, 7.030(3). In Cleveland Board of Education v. Loudermill, the United States Supreme Court held that due process requires, before discharge, notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to present his side of the story. See 470 U.S. 532, 542-46 (1985). The pretermination or pre-determination hearing need not be elaborate, but it must occur before the government makes effective the decision to deprive the employee of the job; it is an initial check against mistaken decisions. Id. Rule XXI of the St. Louis County Civil Service Rules mirrors those constitutional protections, and the Commission took judicial notice of the Rule during the hearing. See Tr. 25:07-26:03.

Dr. Cunningham testified under oath that, in this situation, she "would never talk directly to the **person that's being terminated**." See Tr. 98:05-10 (emphasis added). That testimony is

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

fatal to the County's case. The County was required to follow the requirements of Loudermill and Rule XXI, but it did not do so. No one gave Mr. Wyatt advance notice that the County was terminating his position. No one explained the evidence relied upon in terminating him, and no one gave him a chance to be heard before the County made the decision effective. Instead, Dr. Cunningham had her assistant inform Mr. Wyatt on February 6th that a supposed resignation "not in good standing" from the day before had already been accepted. See Tr. 79:04-24; 82:13-23. Dr. Cunningham further testified that she told Ms. Gardner to "grab security" and that security walked Mr. Wyatt out, while Mr. Wyatt testified that security was present when he left. See Tr. 91:11-92:07; 102:5-11; 132:16-20. Reinstatement of Mr. Wyatt, under the terms outlined below, is the appropriate relief.

**II. Even if the Commission Ignores Dr. Cunningham's Admission, the County Did Not Prove a Resignation Under Civil Service Commission Rule XIX.**

The record does not support a valid resignation under any route recognized by the County's own rules and hearing theory. Consistent with Dr. Cunningham's testimony using the language of termination, the County produced no written resignation, no contemporaneous memorialization by the decisionmaker, no third-party witness testimony corroborating an oral resignation, and no alleged written statement from Mr. Melton, despite testimony that such a statement existed and was relied upon. The absence of ordinary employment documentation substantially undermines the reliability of the County's claim that Mr. Wyatt voluntarily resigned.

Also importantly, Mr. Wyatt did not disappear from County service. According to the hearing record, he came to the office shortly after the alleged call on Thursday, February 5th, met briefly with Mr. Melton, worked the rest of that day with numerous people in the office,

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

returned on February 6th, and remained engaged in County work until Ms. Gardner confronted him around 12:40 p.m. that day. See Tr. 37:20-38:18; 64:09-65:17; 71:10-18; 129:11-132:25; 148:16-25. This matters because Dr. Cunningham, the County's own Appointing Authority, explained that the verbal resignations she accepts are situations where the employee says "I quit," leaves immediately, and does not continue working. See Tr. 88:17-89:08; 95:9-15; 98:23-99:01. That is not this record. By the County's own description, this case does not fit its own category.

**III. Even if the Commission Ignores Dr. Cunningham's Admission, Rule XXI Should Have Governed Because the County Treated this as a Misconduct-Based Separation.**

The County has repeatedly attempted to reframe the "situation," as Dr. Cunningham called it, as a profanity-laced, heated interaction that called into question Mr. Wyatt's "mental health" and justified a voluntary resignation "not in good standing." See Tr. 28:16-24; 35:01-36:25; 90:21-91:12. Even taking that story at face value, Dr. Cunningham admitted she accepted the alleged resignation indirectly through Mr. Melton without speaking to Mr. Wyatt at all. See Tr. 89:10-23; 90:13-18. Mr. Melton testified that Dr. Cunningham told him to document the alleged resignation himself, but not to obtain a written resignation from Mr. Wyatt. See Tr. 44:01-16. Dr. Cunningham further testified that she "needed information to give back to our County counselor, and . . . needed very specific information." See Tr. 89:24-90:01. She needed information to provide to the County's attorneys, but did not think it necessary to document the actual resignation. Dr. Cunningham also testified that, before she knew Mr. Wyatt would deny voluntarily resigning, she instructed that security be called and that it is "standard to have security by just in case something happens." See Tr. 91:11-25; 102:05-11. Everyone agrees that Mr. Wyatt immediately denied resigning. See, e.g., Tr. 79:15-24; 82:13-23; 132:18-25; 144:05-12.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Dr. Cunningham admitted that, even after Ms. Gardner reported that denial, and even after later emails emphatically denying resignation, she did not ask for an investigation or revisit the decision. See Tr. 92:01-25; 102:14-25; Emails at Exhibit 2.

Under Rule XXII and Loudermill, all of this is backwards: the government cannot decide first, deprive a merit employee of his job second, and then treat the employee's response as too late. This therefore was not merely a failure of form. It was the absence of any pretermination hearing at all. Mr. Wyatt was given no contemporaneous notice that the County had terminated his employment or accepted a verbal resignation "not in good standing," no opportunity to meet with the Appointing Authority before the decision was finalized, and no chance to correct what the record shows was, at minimum, a highly disputed and error-prone account. In a merit system, where the whole point is protection against mistaken or arbitrary removals, that omission is legally significant and independently supports reversal.

**IV. The County's Witnesses Materially Undercut the Verbal-Resignation Story.**

Again, it should be dispositive that Dr. Cunningham used the language of termination in describing how she handles the "situation" at issue here. See Tr. 98:05-10. Yet the County's proof of a voluntary resignation "not in good standing" depends almost entirely on Mr. Melton's account of a 58-second phone call. See Exhibit 3. A problem the County cannot outrun is that the surrounding evidence is inconsistent with a completed resignation. Mr. Melton testified that when Mr. Wyatt appeared at work on February 5th, he conversed with Mr. Wyatt in his office, but no request was made for a written resignation at that time. A reasonable inference is that no unequivocal resignation existed because County leadership knew that Mr. Wyatt did not intend to resign and would not provide one in writing. This gap is powerful because it calls into

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

question Mr. Melton's credibility, contemporaneous conduct, and the reliability of the County's narrative.

Even more, Mr. Melton acknowledged that he received work-related texts from Mr. Wyatt on the morning of February 6th and saw him in the parking lot later that day, yet did not inquire, "[w]hy are you texting me about work?" or "[w]hy are you here?" See Tr. 47:21-48:19; 46:13-24. If Mr. Melton truly believed the 58-second phone call had ended Mr. Wyatt's employment relationship at approximately 9:30 a.m. on February 5th, his response to continuing work on February 6th would have been immediate. It was not.

Gina Pike, Mr. Melton's assistant, testified that she spoke with Mr. Wyatt shortly after the supposed resignation call, that Mr. Wyatt did not tell her he quit, and that she did not witness any such conversation between Messrs. Melton and Wyatt. See Tr. 68:05-15. Ms. Pike then worked with Mr. Wyatt throughout the entire day, until 4:30 p.m. See Tr. 64:09-25; 65:01-17; 71:10-18.

Dr. Miller, Chief Medical Officer, also met with Mr. Wyatt on February 5th, observed no agitation, did not hear any elevated office discussion, and heard no indication that he had resigned. See Tr. 110:15-111:24; 113:07-24. Dr. Miller further confirmed that the behavior described by Mr. Melton was unlike Mr. Wyatt; specifically that he had never witnessed Mr. Wyatt get angry and curse at people. See Tr. 110:21-24. Damon Broadus, Deputy Director of Public Health, likewise testified that he saw no aggression from Mr. Wyatt on February 5th, nor had he ever heard or seen disrespectful conduct by Mr. Wyatt. See Tr. 119:08-120:25.

Ms. Gardner testified that the County's "acceptance of the resignation" did not occur until midday February 6th, that Mr. Wyatt was surprised, and that he immediately said he had

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

not resigned. See Tr. 79:04-24; 82:13-23. That is not post hoc buyer's remorse. It is a contemporaneous denial the first time the County told Mr. Wyatt that it was treating him as resigned.

**V. The County's Shifting Story and the Late Pike Statement Further Undermine Reliability.**

The County's account is further undermined by its shifting description of the supposed resignation. At the time of separation, the explanation communicated to Mr. Wyatt through Ms. Gardner focused on whether he had entered Mr. Melton's office and cursed. See Tr. 131:18-132:13; 149:08-18. At the hearing, however, the County's principal merits theory was materially different: a 58-second phone call while Mr. Wyatt was driving into work, that no one else heard, and that the alleged in-office exchange was not, in fact, the resignation event. See Tr. 28:12-24; 34:9-17; 35:13-36:13; 97:12-20. That change is not minor. It goes directly to what supposedly happened, where it happened, and who, if anyone, could corroborate it. The inconsistency is made more serious by Mr. Melton's testimony that he prepared a written statement and provided information to management . . . and by the strong inference that Ms. Gardner relied on that statement, or on related undisclosed communications, in confronting Mr. Wyatt based on an account that focused on whether he had gone into Mr. Melton's office, cursed, and quit. Yet that statement was not produced before or during the hearing, depriving Mr. Wyatt of the ability to test whether the County's present version matches the contemporaneous written account. And, again, Mr. Melton's own testimony raises the obvious question: if he truly believed on the morning of February 5th that Mr. Wyatt had resigned, why did he not ask for a written resignation when he saw him minutes later in the office? The most

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

reasonable inference is that he did not ask because he knew Mr. Wyatt would not provide one, which is fully consistent with Mr. Wyatt's position that he had not resigned at all.

The County's shift matters because it reinforces that the County did not contemporaneously process an undisputed resignation. It processed a disputed event and later fit the facts to a resignation label. It processed a "termination," per Dr. Cunningham.

The post-hearing Pike statement only deepens the County's reliability problem. During the hearing, Ms. Pike testified that Ms. Gardner "took" her statement later in the day on Friday, February 6th. See Tr. 68:16-70:05. The document produced to the Commission nearly a month after the hearing is a typed, one-page "Summary of Events," undated and unsigned, and Mr. Wyatt had no chance to question Ms. Pike about its origin, timing, edits, or accuracy after it was produced. See Exhibit 1. The Commission should afford it no weight.

## VI. The Record Supports Corrective Relief to Clear Mr. Wyatt's Name.

When the government, in connection with employment termination, puts at issue an employee's "good name, reputation, honor, or integrity," due process requires an opportunity to refute the charge. Board of Regents v. Roth, 408 U.S. 564, 573 (1972). Reputation alone is not enough, but reputation plus loss of employment can implicate liberty interests. Paul v. Davis, 424 U.S. 693, 701-10 (1976). And where a stigmatizing charge is false, the purpose of the hearing is to give the employee an opportunity to clear his name. Codd v. Velger, 429 U.S. 624, 627-28 (1977).

By asserting that Mr. Wyatt resigned following alleged misconduct, while simultaneously denying him a meaningful pretermination process and withholding key investigative materials,

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

the County deprived Mr. Wyatt of the opportunity to clear his name and challenge stigmatizing allegations affecting his professional reputation and future employment opportunities.

Here, the County associated Mr. Wyatt's separation with a profanity-laced explosive quit, a "not in good standing" designation, questioning of Mr. Wyatt's "mental health" to Mr. Melton and an external third party, and a removal with security present. See, e.g., Tr. 90:07-12; 100:12-101:22; 132:18-20. Mr. Wyatt squarely disputes the truth of those charges and disparaging characterizations. See Tr. 132:21-24; 144:05-12. Even if the Commission concludes it need not decide the federal constitutional liberty-interest issue, it should at minimum order removal of the "resigned not in good standing" notation, any mention of a profanity-laced explosive quit, any mention of "mental health" concerns, and any equivalent misconduct characterization from Mr. Wyatt's file because the record does not support it.

## VII. The County's Rolling Nonproduction Preserved Mr. Wyatt's Sunshine Law Objection and Independently Prejudiced the Fairness of the Proceeding.

On February 24, 2026, Mr. Wyatt timely requested relevant public records, including materials concerning the alleged resignation, investigative materials, witness statements, and his HR file. Yet the hearing proceeded without production of those materials. The resulting prejudice was not abstract. In a case that turned almost entirely on credibility and on the details of a brief alleged verbal exchange, contemporaneous records mattered. Without timely production, Mr. Wyatt could not compare witness testimony to underlying writings, prepare cross-examination using statements and investigative materials, test whether the County's hearing theory matched what was communicated to him at the time of separation, or determine whether exculpatory or inconsistent records existed in his HR file or elsewhere.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

The problem is underscored by the hearing record itself. Counsel for Mr. Wyatt advised the Commission that Mr. Wyatt had requested compelled records and had received nothing from either the County or the Commission before hearing. When witness statements surfaced during testimony, counsel for Mr. Wyatt requested them and objected that he had been denied a fair opportunity to confront the witnesses with those materials while they were on the stand. That objection was well-founded. The late production of Ms. Pike's statement nearly a month after the hearing illustrates the point: disclosure delayed until after testimony is not disclosure in time to permit meaningful use.

Missouri's Sunshine Law required the County to act on a request for records as soon as possible and, absent reasonable cause, no later than the end of the third business day after receipt. See R.S.Mo. § 610.023. The County, through Ms. Gardner, Dr. Cunningham's assistant, as custodian of records, confirmed acceptance of the public records request on February 24th. Ms. Gardner then delayed production of the requested documentation *seven* separate times and, tellingly, *twice* pushed production just beyond the initial meeting and then the evidentiary hearing in this matter.

Mr. Wyatt cannot speculate regarding every document that remains withheld. That is precisely the prejudice. Because the records have not been produced, the full extent of the prejudice cannot yet be known. Mr. Wyatt therefore expressly preserves all objections arising from the County's repeatedly delayed and ultimately recent and unresponsive production, including all rights and remedies under Missouri's Sunshine Law, and reserves the right to seek any additional relief that may become appropriate once the records are finally produced or the missing records are identified.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

## Conclusion

The County bears the burden of proving that Mr. Wyatt voluntarily and unequivocally resigned rather than being removed without due process. A public employer cannot avoid constitutional and civil service protections merely by characterizing a disputed separation as a resignation. Due process requires notice of the allegations, disclosure of the evidence relied upon, and a meaningful opportunity to respond before a protected public employee may be deprived of employment. The County produced no written resignation and failed to produce the alleged written statement it relied upon, despite testimony that such a statement existed. These failures substantially undermine the reliability of the County's resignation claim and demonstrate the absence of constitutionally adequate process.

The County asks the Commission to treat a disputed, unwritten, uninvestigated, and immediately denied allegation as a final resignation.

WHEREFORE, for the foregoing reasons, Mr. Wyatt respectfully requests that the Commission find and order as follows:

1. The County removed Mr. Wyatt from employment without providing the pre-deprivation process required by Loudermill and Civil Service Rule XXI.

2. The County failed to prove that Mr. Wyatt voluntarily resigned.

3. In the alternative, Mr. Wyatt's separation was, in substance, a disciplinary removal or discharge and not a valid resignation under Civil Service Rule XIX.

4. Reverse the County's action under Rule XXII and order reinstatement to Mr. Wyatt's former position with (a) back pay with interest, (b) benefits, and (c) restoration of service credit, leave, title, seniority, and office space.

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

5. Order the County to remove from Mr. Wyatt's personnel record any notation that he resigned "not in good standing," demonstrated any "mental health" issues, or otherwise engaged in misconduct related to a resignation.

6. Exclude the late-produced Pike statement from consideration or, alternatively, accord it no weight because it is undated, unsigned, produced after the hearing, and was never subject to confrontation or rebuttal after production.

7. Decline to afford Respondents any evidentiary or persuasive advantage from records not timely produced under Missouri's Sunshine Law, preserve Mr. Wyatt's objections arising from that nonproduction, and grant such further relief as is necessary to prevent prejudice from the County's delayed disclosure.

8. Grant all other relief the Commission deems just and proper.

Respectfully submitted,

__s/s Katherine Frierdich_________

Katherine C. Frierdich (née Lemley)
MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
Counsel for Appellant

Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on counsel for Respondent and the St. Louis County Clinical Consumer Majority Board on May 13, 2026, via electronic mail.

__s/s Katherine Frierdich_________

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Exhibit 1

Pike Statement

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Exhibit 2

Emails

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

Exhibit 3

Phone Record

FILED
08/05/2026
JOAN M. GILMER
CIRCUIT CLERK
ST. LOUIS COUNTY, MO

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants. . | ) | |

**REQUEST FOR LEAVE TO AMEND PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM IN SUPPORT**

COMES NOW Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt") and, through counsel, requests leave to amend his Motion for Preliminary Injunction and Memorandum in Support. The substantive corrections to the Motion and Memorandum are (a) adding missing counsel signatures. The substantive edits to the Memorandum in Support are: (a) correcting Exhibit numbering to avoid duplicative exhibit numbers; and (b) amending to add the sentence on page 6, citing newly added Pl. Ex. 13-15. None of these edits prejudice Defendants, as they have not yet received service of process.

Respectfully submitted,

_/s/ Katherine C. Frierdich_
Katherine C. Frierdich, MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff /Petitioner*

**LEAVE GRANTED:**

[signature]

Judge Division 3
Aguust 5, 2026

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 03:10 PM

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this 3rd day of August, 2026, a true and accurate copy of the foregoing was filed through the Missouri eFiling System, which will provide notice to all counsel of record, and/or was served together with the summons and Verified Petition upon Defendants/Respondents in the manner provided by Missouri Supreme Court Rule 54.

/s/ Katherine C. Frierdich
Katherine C. Frierdich

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 08:16 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

**REQUEST FOR ISSUANCE OF ALIAS SUMMONSES**

COMES NOW Plaintiff/Petitioner hereby requests that the Circuit Clerk issue Alias Summonses for all Defendants/Respondents, to be directed to Elliott Process (5636 Telegraph Rd., St. Louis, Missouri 63129 and (636) 200-8059)), the Special Process Server already appointed. Please issue alias summonses directly to the server for personal service at the following address:

Defendant/Respondent St. Louis County, Missouri
c/o Mr. Sam Page, County Executive, or Registered Agent
41 S. Central Ave.
Clayton, Missouri 63105

Defendant/Respondent St. Louis Civil Service Commission
c/o Mr. Sam Page, County Executive; Ms. Nadine Nunn, Chairperson; Mr. Matt Livasy, Secretary; or Registered Agent
41 S. Central Ave.
Clayton, Missouri 63105

Defendant/Respondent St. Louis County Department of Public Health
c/o Mr. Sam Page, County Executive; Dr. Kanika Cunningham, Appointing Authority; or Registered Agent
41 S. Central Ave.
Clayton, Missouri 63105

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 08:16 PM

Defendant/Respondent Dr. Kanika Cunningham
623 Walnut Woods Street
St. Charles, Missouri 63301

Defendant/Respondent Derrick Melton
537 Rosewood Lane
St. Louis, Missouri 63122

Defendant/Respondent Sharon Gardner
12453 Quatre Drive
Florissant, Missouri 63033

Dated: August 5, 2026

Respectfully submitted,

/s/ *Katherine C. Frierdich*

Katherine C. Frierdich
MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff/Petitioner*

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 08:16 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants/Respondents. | ) | |

**REQUEST FOR ISSUANCE OF ALIAS SUMMONSES**

COMES NOW Plaintiff/Petitioner hereby requests that the Circuit Clerk issue Alias Summonses for all Defendants/Respondents, to be directed to Elliott Process (5636 Telegraph Rd., St. Louis, Missouri 63129 and (636) 200-8059)), the Special Process Server already appointed. Please issue alias summonses directly to the server for personal service at the following address:

Defendant/Respondent St. Louis County, Missouri
c/o Mr. Sam Page, County Executive, or Registered Agent
41 S. Central Ave.
Clayton, Missouri 63105

Defendant/Respondent St. Louis Civil Service Commission
c/o Mr. Sam Page, County Executive; Ms. Nadine Nunn, Chairperson; Mr. Matt Livasy, Secretary; or Registered Agent
41 S. Central Ave.
Clayton, Missouri 63105

Defendant/Respondent St. Louis County Department of Public Health
c/o Mr. Sam Page, County Executive; Dr. Kanika Cunningham, Appointing Authority; or Registered Agent
41 S. Central Ave.
Clayton, Missouri 63105

Electronically Filed - ST LOUIS COUNTY - August 05, 2026 - 08:16 PM

Defendant/Respondent Dr. Kanika Cunningham
623 Walnut Woods Street
St. Charles, Missouri 63301

Defendant/Respondent Derrick Melton
537 Rosewood Lane
St. Louis, Missouri 63122

Defendant/Respondent Sharon Gardner
12453 Quatre Drive
Florissant, Missouri 63033

Dated: August 5, 2026

Respectfully submitted,

/s/ *Katherine C. Frierdich*

Katherine C. Frierdich
MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff/Petitioner*

Electronically Filed - ST LOUIS COUNTY - August 03, 2026 - 02:38 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY
STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et al., | ) | |
| | ) | |
| Defendants/Respondents.. | ) | |

# PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER

COMES NOW Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt"), by and through counsel, and, pursuant to Missouri Supreme Court Rule 92.02, Chapter 526, R.S.Mo., § 536.120, R.S.Mo., and Count IX of his Verified Petition, respectfully moves this Court, upon notice to all Defendants/Respondents (collectively, "Defendants" or the "County"), for a temporary restraining order ("TRO") preserving the status quo pending hearing and determination of his Motion for Preliminary Injunction. In support of this Motion, Mr. Wyatt states as follows:

1. Mr. Wyatt was a merit employee of St. Louis County who served as Chief Operating Officer of the Department of Public Health's Community Health Centers, the County's Federally Qualified Health Center Look-Alike, from August 19, 2024 until February 6, 2026. See Hearing Tr. 31:2-3; 32:15-20; 31:10–13; 122:12–15; 123:11–13.[1] As a merit employee, Mr. Wyatt held a constitutionally-protected property interest in his continued employment. See St. Louis County Charter art. VII, §§ 7.010, 7.030(3); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538–41 (1985).

[1] This is attached as Ex. 1 to Mr. Wyatt's Brief in Support of His Motion for Preliminary Injunction ("PI Brief")

Electronically Filed - ST LOUIS COUNTY - August 03, 2026 - 02:38 PM

2. On February 6, 2026, the County separated Mr. Wyatt from his employment on the basis of a single supervisor's disputed assertion that, during a 58-second telephone call the previous morning, Mr. Wyatt orally stated that he quit. See Hearing Tr. 34:9–17; 35:13–36:13; 129:1–10; PI Brief Exhibit 2. No written resignation exists, no other witness ever heard Mr. Wyatt say he quit, and no one from the County contacted Mr. Wyatt to confirm his intent before "accepting" the alleged resignation. See Hearing Tr. 50:14–18; 52:8–10; 63:8–11; 68:5–11; 89:10–23; 104:18–105:1; 110:15–17; 148:4–9. Mr. Wyatt denied resigning immediately, in person and in writing, and he received none of the pre-deprivation process that the Charter, the Civil Service Rules, and the Due Process Clause require. See Hearing Tr. 82:13–23; 104:4–9; 144:5–12; 149:3–18; PI Brief Ex. 3-7.

3. On June 18, 2026, the Civil Service Commission affirmed the Appointing Authority's acceptance of the alleged resignation "not in good standing" and denied Mr. Wyatt's appeal. As set forth in the Verified Petition and in the briefing on the Motion for Preliminary Injunction defined below, the Commission's decision misreads Civil Service Rule XIX, rests on findings unsupported by, and in places contradicted by, the record, and was rendered upon unlawful procedure. See Decision ¶¶ 9(g)(i), 18, 20–25, 29, 31;[2] Hearing Tr. 5:15–16; 16:1–7; 165:8–168:5; PI Brief Ex. 12.

4. Contemporaneously herewith, Mr. Wyatt has filed his Verified Petition, a Motion for Preliminary Injunction, a Brief in Support, and a Motion for Expedited Hearing (collectively, the "Preliminary Injunction Motion"), seeking interim

[2] This is attached as PI Brief Ex. 8.

Electronically Filed - ST LOUIS COUNTY - August 03, 2026 - 02:38 PM

reinstatement to his merit position, with pay and benefits, pending final judgment, and an order enjoining Defendants from continuing to enforce or rely upon the purported "resignation not in good standing." The Preliminary Injunction Motion, the Verified Petition (sworn to by Mr. Wyatt and effective as an affidavit), and the administrative record are incorporated herein by reference. Service of process upon Defendants is being effected pursuant to Rule 54, and no Defendant has yet entered an appearance.

5. Upon information and belief, the Department of Public Health has now identified a candidate to replace Mr. Wyatt in the Chief Operating Officer position and may be awaiting only approval to pay that candidate a salary greater than the salary the County paid Mr. Wyatt. The facts stated in this paragraph are supported by the Affidavit of Mr. Wyatt filed contemporaneously herewith (the "Wyatt Affidavit"), which sets forth the source and basis of Mr. Wyatt's knowledge.

6. The threatened appointment presents exactly the emergency a TRO exists to meet. If the County installs a replacement before the Preliminary Injunction Motion can be heard, the central interim relief Mr. Wyatt seeks, reinstatement to his position pending final judgment, may be substantially impaired or rendered impracticable. The County would then oppose reinstatement by pointing to an accomplished fact of its own making, and the interests of an innocent third-party appointee would be layered onto a controversy that today concerns only a vacant, funded position. Holding a vacancy open for a short period is simple. Unwinding an appointment is not.

7. The County's reported willingness to pay a replacement more than it paid Mr. Wyatt is itself telling. It confirms that the position remains vacant, funded, and needed;

Electronically Filed - ST LOUIS COUNTY - August 03, 2026 - 02:38 PM

that the County would suffer no fiscal harm from interim reinstatement at Mr. Wyatt's existing salary; and that the only urgency in this case is urgency of the County's own choosing.

8. The purpose of a TRO is to preserve the status quo pending hearing on the preliminary injunction. *Ballesteros v. Johnson*, 812 S.W.2d 217, 221 (Mo. Ct. App. E.D. 1991). The general successor to a TRO is a preliminary injunction. As such, the elements that must be proven are: (1) a probability of success on the merits; (2) a threat of irreparable harm absent the injunction; (3) that the harm to Plaintiffs outweighs any injury that the injunction will impose upon the Defendant; and (4) that the injunction is not contrary to the public interest. *State ex rel. Dir. of Revenue v. Gabbert*, 925 S.W.2d 838, 839 (Mo. banc 1996).

9. <u>High probability of success on the merits</u>. Mr. Wyatt is likely to prevail because: (a) Civil Service Commission Rule XIX authorizes resignation only by a writing, or by presumption after three days' unexcused absence - neither of which occurred; (b) the Commission's contrary "true intent" construction of Rule XIX in order to uphold the County's decision to "accept" an undocumented and unwitnessed purported verbal resignation as a "resignation not in good standing" unlawfully enlarges agency authority, *State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n*, 344 S.W.3d 178, 186 (Mo. banc 2011), § 536.140.2, R.S.Mo.; (c) even fully credited, a heated utterance during a 58-second call that was immediately contradicted by the speaker's conduct and denials is not a voluntary, deliberate, and unequivocal resignation as a matter of law, *Angarita v. St. Louis County*, 981 F.2d 1537, 1544 (8th Cir. 1992); (d) the Commission's decision is

Electronically Filed - ST LOUIS COUNTY - August 03, 2026 - 02:38 PM

unsupported by competent and substantial evidence upon the whole record and was made upon unlawful procedure and without a fair hearing, § 536.140.2, R.S.Mo.; and (e) the County deprived Mr. Wyatt of protected property and liberty interests without any pre-deprivation process or name-clearing opportunity. *Loudermill*, 470 U.S. at 542–46.

10. Immediate and irreparable injury. If Defendants are not enjoined, Mr. Wyatt will suffer irreparable harm. This conclusion is beyond dispute: "[B]eing subject to an unconstitutional statute, 'for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Rebman v. Parson*, 576 S.W.3d 605, 612 (Mo. banc 2019) (as modified June 25, 2019) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). *Rebman* applied *Elrod* to a Missouri public employee's unconstitutional termination and rejected the argument that lost wages afford an adequate remedy, because such a case "is not an ordinary case of employment termination." 576 S.W.3d 605 at 612. Mr. Wyatt's losses of salary, health coverage, retirement service credit, and professional reputation compound daily. See Hearing Tr. 164:4–8; Wyatt Affidavit in Support of His Motion for TRO ¶ 7. The imminent appointment of a replacement adds a new and immediate dimension to that harm. The appointment can occur on any day, upon a single approval, on timing entirely within the County's control and outside Mr. Wyatt's knowledge. Once made, it could not be undone by any later award of money damages, and it would threaten the effectiveness of the very relief now pending before this Court.

11. Balance of harms. The order sought asks the County only to refrain, for a short period, from filling a single executive position while this Court hears a fully briefed motion. No deadline compels the County to act. No candidate holds any entitlement to

Electronically Filed - ST LOUIS COUNTY - August 03, 2026 - 02:38 PM

appointment. If Defendants ultimately prevail, they retain every lawful personnel power, including the power to hire whomever they choose. Against that minimal imposition stands the potential loss of effective interim relief for an employee separated without process.

12. Public interest. The public interest favors enforcement of the merit system, governmental compliance with constitutional due process, and preservation of this Court's ability to grant effective relief on judicial review. It does not favor permitting a public employer to moot a pending motion by its own act, nor committing public funds to a higher salary for the same role while the lawfulness of the underlying vacancy is before the courts. No prejudice to the public interest will result from the brief restraint requested. § 536.120, R.S.Mo.

13. The relief requested is narrow, prohibitory, and preservative. It does not order reinstatement or any other affirmative act; that relief awaits hearing on the Preliminary Injunction Motion. It simply holds the parties in place so that the Court, not the County, decides whether the position remains open. The last actual, peaceable, uncontested status preceding this controversy was Mr. Wyatt's active merit employment as Chief Operating Officer through February 6, 2026, with the position his own. *Pomirko v. Sayad*, 693 S.W.2d 323, 324 (Mo. App. E.D. 1985).

14. Independent of Rule 92.02, § 536.120, R.S.Mo. authorizes this Court, pending disposition of the petition for review, to "issue all necessary and appropriate process" to stay enforcement of the Commission's order and "temporarily to grant or extend … relief

Electronically Filed - ST LOUIS COUNTY - August 03, 2026 - 02:38 PM

denied or withheld." That authority is meaningful only if exercised before the harms it exists to prevent become accomplished facts.

15. This Motion is presented upon actual notice, not *ex parte*. Although Defendants have not yet been served and no counsel has entered an appearance, counsel for Mr. Wyatt is delivering complete copies of the Verified Petition, the Preliminary Injunction Motion, this Motion, and the Wyatt Affidavit to the St. Louis County Counselor's Office by electronic mail and hand delivery, together with written notice of the date and time at which this Motion will be presented to the Court. To the extent Rule 92.02 requires the undersigned to certify the efforts made to give notice, that certification appears in the Certificate of Service and Notice below. Mr. Wyatt requests that the Court take up this Motion at its earliest opportunity, in person or by any remote means convenient to the Court, and that any TRO remain in effect until the Preliminary Injunction Motion is heard and determined or until further order of the Court.

16. In the alternative, if the Court prefers to hear from Defendants before entering any restraint, Mr. Wyatt requests that the Court set this Motion for hearing on a date certain at its earliest opportunity, direct Defendants to appear and show cause why a TRO should not issue, and order that Defendants take no action to fill the Chief Operating Officer position pending that hearing. Mr. Wyatt will separately ask the County to agree in writing to a voluntary standstill pending hearing on the Preliminary Injunction Motion. If the County so agrees, Mr. Wyatt will promptly present that agreement to the Court as a proposed consent order and withdraw his request for contested interim relief.

Electronically Filed - ST LOUIS COUNTY - August 03, 2026 - 02:38 PM

17. Mr. Wyatt requests that any bond required by Rule 92.02(d) be waived or set in a nominal amount, for the reasons stated in the Preliminary Injunction Motion: the restraint sought compels no expenditure, Defendants face minimal risk of compensable loss from briefly holding open a position that has stood vacant since February 6, 2026, and a substantial bond would effectively deny an unlawfully unpaid employee meaningful access to equitable relief.

WHEREFORE, Plaintiff/Petitioner Duane "Pete" Wyatt respectfully requests that this Court enter a Temporary Restraining Order:

A. Enjoining and restraining Defendants, together with their officers, agents, servants, employees, and attorneys, and all persons in active concert or participation with them who receive actual notice of the order, from: (i) appointing, hiring, promoting, transferring, or extending or finalizing any offer of employment to any person for the position of Chief Operating Officer of the Community Health Centers, or any successor, acting, provisional, temporary, or substantially equivalent position, pending hearing and determination of the Motion for Preliminary Injunction; (ii) requesting, granting, or implementing any approval of compensation for any candidate for that position; and (iii) abolishing, reclassifying, defunding, or transferring the duties of that position;

B. Providing that the Temporary Restraining Order shall remain in effect until the Court hears and determines the Motion for Preliminary Injunction, or until further order of the Court;

C. Setting the Preliminary Injunction Motion for hearing at the earliest available date, as requested in the Motion for Expedited Hearing filed herewith;

Electronically Filed - ST LOUIS COUNTY - August 03, 2026 - 02:38 PM

D. In the alternative, setting this Motion for hearing on a date certain at the Court's earliest opportunity, directing Defendants to appear and show cause why a Temporary Restraining Order should not issue, and restraining Defendants from filling the Chief Operating Officer position in the interim;

E. Waiving any bond or setting bond in a nominal amount pursuant to Rule 92.02(d);

F. Ordering Defendants to preserve all documents, electronically stored information, and communications relating to the identification, recruitment, selection, or proposed compensation of any candidate for the Chief Operating Officer position, together with the records identified in the Preliminary Injunction Motion;

G. Ordering expedited discovery as requested in the Motion for Expedited Discovery filed contemporaneously herewith; and

G. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

_/s/ Katherine C. Frierdich__________________

Katherine C. Frierdich, MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff/Petitioner*

Electronically Filed - ST LOUIS COUNTY - August 03, 2026 - 02:38 PM

**CERTIFICATE OF SERVICE AND NOTICE**

The undersigned certifies that on this 3rd day of August, 2026, a true and accurate copy of the foregoing Motion for Temporary Restraining Order, together with the Verified Petition, the Motion for Preliminary Injunction and Brief in Support, the Motion for Expedited Hearing, and the Affidavit of Duane "Pete" Wyatt, was filed through the Missouri eFiling System and is being served upon Defendants with the summons in the manner provided by Missouri Supreme Court Rule 54. The undersigned further certifies, pursuant to Rule 92.02, the following efforts to give notice of this Motion: on August 3, 2026, with complete copies of the Motion for Temporary Restraining Order, Mr. Wyatt's Affidavit in support, and Motion for Expedited Discovery were delivered to the St. Louis County Counselor's Office, 41 South Central Avenue, Clayton, Missouri 63105, by electronic mail addressed to County Counselor Dana Redwing at dredwing@stlouiscountymo.gov, along with a request for an agreed standstill and protective order.

/s/ *Katherine C. Frierdich*

Katherine C. Frierdich

Electronically Filed - ST LOUIS COUNTY - August 03, 2026 - 02:38 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff/Petitioner, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et al., | ) | |
| | ) | |
| Defendants/Respondents. . | ) | |

## AFFIDAVIT OF DUANE "PETE" WYATT IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Duane "Pete" Wyatt, being first duly sworn upon his oath, states as follows:

1. I am the Plaintiff/Petitioner in this action. I am over eighteen years of age and competent to make this Affidavit. The facts stated herein are true and are based on my personal knowledge, except where a fact is expressly stated to be based on information and belief.

2. From August 19, 2024 until February 6, 2026, I served as Chief Operating Officer of the St. Louis County Department of Public Health's Community Health Centers, the County's Federally Qualified Health Center Look-Alike. My annual salary at the time of my separation was $144,200.

3. I did not resign. I have denied resigning, in person and in writing, since the day the County first told me it had "accepted" my resignation, and my appeal from the Civil Service Commission's June 18, 2026 decision is now before this Court. To my knowledge, the Chief Operating Officer position has remained vacant since February 6, 2026, and no one from the County has contacted me about returning to it.

Electronically Filed - ST LOUIS COUNTY - August 03, 2026 - 02:38 PM

4. During the weeks of July 20 and July 31, 2026, I learned from current employees of the Department of Public Health with direct knowledge of the Department's recruitment and hiring activity for the Community Health Centers that the Department of Public Health has identified a candidate to fill the Chief Operating Officer position I held, and potentially at a higher salary.

7. If the County fills the position before my Motion for Preliminary Injunction can be heard, I believe the interim reinstatement I seek will be substantially impaired, and I will remain without salary, health insurance, retirement contributions and service credit, leave accrual, and seniority while a replacement performs the same work at potentially a greater cost to the County.

FURTHER AFFIANT SAYETH NOT.

Duane Pete Wyatt

________________________________

Duane "Pete" Wyatt

STATE OF ~~MISSOURI~~ EB Florida )

) ss.

COUNTY OF Saint Lucie )

Subscribed and sworn to before me this 3rd day of August, 2026.

Echard bien-aime

________________________________

Notary Public

My commission expires: 07/14/2029

Notarized remotely online using communication technology via Proof.

Type of Identification Produced DRIVER LICENSE ___ Personally Known OR ✔ ___ Produced Identification

NOTARY PUBLIC • STATE OF FLORIDA

ECHARD BIEN-AIME

Notary Public - State of Florida

Commission # HH 658104

Expires on July 14, 2029

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>HEATHER RENE CUNNINGHAM | **Case Number: 26SL-CC05095** | |
| Plaintiff/Petitioner:<br>DUANE "PETE" WYATT<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>KATHERINE CLENDENIN LEMLEY<br>ONE METROPOLITAN SQ<br>211 N BROADWAY STE 3600<br>ST LOUIS, MO 63102 | |
| Defendant/Respondent:<br>ST. LOUIS COUNTY, MISSOURI | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Other Administrative Review | | (Date File Stamp for Return) |

**The State of Missouri to:** **SHARON GARDNER**
**Alias:**
**6121 N. HANLEY RD.**
**BERKELEY, MO 63134**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

| | |
|---|---|
| 31-JUL-2026 | /S/ Adam Dockery |
| Date | Clerk |

**Further Information:**
AD

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________.

Served at ______________________________ (address)
in ______________________________ (County/City of St. Louis), MO, on ____________ (date)
at ____________ (time).

______________________________ ______________________________
Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: ____________ ______________________________
Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) Early Neutral Evaluation ("ENE"):** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**(4) Mini-Trial:** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**(5) Summary Jury Trial:** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**Selecting an Alternative Dispute Resolution Procedure and a Neutral**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>HEATHER RENE CUNNINGHAM | **Case Number: 26SL-CC05095** | |
| Plaintiff/Petitioner:<br>DUANE "PETE" WYATT<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>KATHERINE CLENDENIN LEMLEY<br>ONE METROPOLITAN SQ<br>211 N BROADWAY STE 3600<br>ST LOUIS, MO 63102 | |
| Defendant/Respondent:<br>ST. LOUIS COUNTY, MISSOURI | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Other Administrative Review | | (Date File Stamp for Return) |

**The State of Missouri to:** **DERRICK MELTON**
**Alias:**
**6121 N. HANLEY RD.**
**BERKELEY, MO 63134**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

31-JUL-2026 — Date

/S/ Adam Dockery — Clerk

**Further Information:**
AD

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________.

Served at ______________________________ (address)
in ______________________________ (County/City of St. Louis), MO, on ____________________ (date)
at ______________ (time).

______________________________ ______________________________
Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: ____________________ ______________________________
Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

# NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the “neutral,” who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator’s decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2)** **<u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3)** **<u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**<u>(4) Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**<u>(5) Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**<u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>HEATHER RENE CUNNINGHAM | **Case Number: 26SL-CC05095** | |
| Plaintiff/Petitioner:<br>DUANE "PETE" WYATT<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>KATHERINE CLENDENIN LEMLEY<br>ONE METROPOLITAN SQ<br>211 N BROADWAY STE 3600<br>ST LOUIS, MO 63102 | |
| Defendant/Respondent:<br>ST. LOUIS COUNTY, MISSOURI | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Other Administrative Review | | (Date File Stamp for Return) |

**The State of Missouri to:** **KANIKA CUNNINGHAM**
**Alias:**
**6121 N. HANLEY RD.**
**BERKELEY, MO 63134**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

31-JUL-2026
Date

/S/ Adam Dockery
Clerk

**Further Information:**
AD


Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________.

Served at ______________________________ (address)
in ______________________________ (County/City of St. Louis), MO, on ____________ (date)
at __________ (time).

______________________________ ______________________________
Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: ____________ ______________________________
Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the “neutral,” who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator’s decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) <u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) <u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**<u>(4) Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**<u>(5) Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**<u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>HEATHER RENE CUNNINGHAM | **Case Number: 26SL-CC05095** | |
| Plaintiff/Petitioner:<br>DUANE "PETE" WYATT<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>KATHERINE CLENDENIN LEMLEY<br>ONE METROPOLITAN SQ<br>211 N BROADWAY STE 3600<br>ST LOUIS, MO 63102 | |
| Defendant/Respondent:<br>ST. LOUIS COUNTY, MISSOURI | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Other Administrative Review | | (Date File Stamp for Return) |

**The State of Missouri to: ST. LOUIS COUNTY CIVIL SERVICE COMMISSION**
**Alias:**
**41 S. CENTRAL AVE.**
**CLAYTON, MO 63105**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

31-JUL-2026
Date

/S/ Adam Dockery
Clerk

**Further Information:**
AD

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

______________________________ (name) ______________________________ (title).

☐ other: ______________________________.

Served at ______________________________ (address)
in ______________________________ (County/City of St. Louis), MO, on ______________________________ (date)
at ______________________________ (time).

______________________________ ______________________________
Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on ______________________________ (date).

*(Seal)*

My commission expires: ______________________________ ______________________________
Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the “neutral,” who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator’s decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) <u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) <u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**<u>(4) Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**<u>(5) Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**<u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>HEATHER RENE CUNNINGHAM | **Case Number: 26SL-CC05095** | |
| Plaintiff/Petitioner:<br>DUANE "PETE" WYATT<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>KATHERINE CLENDENIN LEMLEY<br>ONE METROPOLITAN SQ<br>211 N BROADWAY STE 3600<br>ST LOUIS, MO 63102 | |
| Defendant/Respondent:<br>ST. LOUIS COUNTY, MISSOURI | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Other Administrative Review | | (Date File Stamp for Return) |

**The State of Missouri to: ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH**
**Alias:**
**6121 N. HANLEY RD.**
**BERKELEY, MO 63134**

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

31-JUL-2026
Date

/S/ Adam Dockery
Clerk

**Further Information:**
AD

**Officer's or Server's Return**

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

________________________________ (name) ______________________ (title).

☐ other: ____________________________________________________________.

Served at ____________________________________________________ (address)

in _________________________ (County/City of St. Louis), MO, on _______________ (date)

at ___________ (time).

| | |
|---|---|
| Printed Name of Officer or Server | Signature of Officer or Server |

**Must be sworn before a notary public if not served by an authorized officer.**

Subscribed and sworn to before me on ______________________ (date).

*(Seal)*

My commission expires: _______________ ______________________

Date Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

Twenty First Judicial Circuit

## NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

### Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

### Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

### Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the “neutral,” who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator’s decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) <u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) <u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**<u>(4) Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**<u>(5) Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**<u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

# Summons in Civil Case

IN THE 21ST JUDICIAL CIRCUIT, ST. LOUIS COUNTY, MISSOURI

| | | |
|---|---|---|
| Judge or Division:<br>HEATHER RENE CUNNINGHAM | **Case Number: 26SL-CC05045** | |
| Plaintiff/Petitioner:<br>DUANE "PETE" WYATT<br>vs. | Plaintiff's/Petitioner's Attorney/Address<br>KATHERINE CLENDENIN LEMLEY<br>ONE METROPOLITAN SQ<br>211 N BROADWAY STE 3600<br>ST LOUIS, MO 63102 | |
| Defendant/Respondent:<br>ST. LOUIS COUNTY, MISSOURI | Court Address:<br>ST LOUIS COUNTY COURT BUILDING<br>105 SOUTH CENTRAL AVENUE<br>CLAYTON, MO 63105 | |
| Nature of Suit:<br>CC Other Administrative Review | | (Date File Stamp for Return) |

**9Te State ohMissouri to: S9f L. OIS C. ON9UYMISS. OVI**
**Alias:**
**E1 Sf CRN9VAL A, Rf**
**CLAU9. NYM. 6312E**

**. tTer Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

***COURT SEAL OF***

***ST. LOUIS COUNTY***

31-JUL-2026
Date

/S/ Adam Dockery
Clerk

**FurtTer Inhormation:**
AD

**. Hicer's or Server's Veturn**

**Note to serving ohicer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with ______________________________________, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

__________________________________________ (name) _____________________________ (title).

☐ other: ______________________________________________________________________________.

Served at __________________________________________________________________ (address)
in ________________________________ (County/City of St. Louis), MO, on ___________________ (date)
at ______________ (time).

________________________________________ ________________________________________
Printed Name of Officer or Server Signature of Officer or Server

**Must be sworn behore a notary public ihnot served by an autTorized ohicerf**
Subscribed and sworn to before me on ____________________________ (date).

*(Seal)*

My commission expires: __________________ ____________________________
Date Notary Public

A copy of the summons and petition must be served on **eacT** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

# NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES

## Purpose of Notice

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

## Your Rights and Obligations in Court Are Not Affected By This Notice

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

## Alternative Dispute Resolution Procedures

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the “neutral,” who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator’s decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) <u>Mediation:</u>** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

**(3) <u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**<u>(4) Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**<u>(5) Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**<u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Avenue, 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

**OFFICE OF THE CIRCUIT CLERK**
Missouri's 21st Judicial Circuit, St. Louis County
Civil Department
105 South Central Avenue, Clayton, MO 63105
Hours: Monday through Friday 8:00 A.M. to 5:00 P.M.
Phone: 314-615-8029

SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act. Please notify the Office of the Circuit Clerk at 314-615-8029. FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 0r 800-735-2966, at least three business days in advance of the court proceeding.

JOAN M. GILMER
CIRCUIT CLERK
ST. LOUIS COUNTY CIRCUIT COURT
105 SOUTH CENTRAL AVENUE
CLAYTON, MISSOURI 63105

# IN THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI

CASE NUMBER: 26SL-CC05095
PLAINTIFF: DUANE WYATT
DEFENDANT: ST. LOUIS COUNTY, MISSOURI
ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH
ST. LOUIS COUNTY CIVIL SERVICE COMMISSION
CUNNINGHAM
MELTON
GARDNER
, KANIKA
DERRICK
SHARON

COURT DATE:
COURT TIME:

DIVISION:

DATE OF DISMISSAL NOTICE: 28-JUL-2026

## DISMISSAL NOTICE

Your petition/pleading(s) have been accepted but no summons or notice can be issued based on the pleadings filed by the party initiating the above referenced case. Corrective pleadings are necessary. The Court cannot proceed further at this time. Please file corrective pleadings as follows:

PLEASE SUBMIT SPECIAL PROCESS SERVER FORM WITH SECOND PAGE, LOCAL RULE 28, ATTACHED. LOCAL RULE 28 IS NECESSARY FOR ALL FILINGS OF SPECIAL PROCESS SERVER FORMS. IF YOU HAVE ANY QUESTIONS, PLEASE CONTACT THE CLERK AT (314)-615-2671. FAILURE TO DO SO WILL RESULT IN YOUR FILING BEING PROCESSED FOR DISMISSAL.

The party initiating this case must file pleadings that correct these insufficiencies within seven (7) business days of the date this *Dismissal Notice* is issued or this case will be dismissed for failure to prosecute with costs assessed to initiating party in accordance with Rule 77.01. No extensions will be permitted unless otherwise ordered by the Court.

**Please return this memo with the corrected or new pleading.**

For additional information regarding this matter you may contact: CIRCUIT CIVIL at: (314) 615-2671.

JOAN GILMER, CIRCUIT CLERK

Electronically Filed - ST LOUIS COUNTY - July 28, 2026 - 03:34 PM

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

Duane Wyatt
Plaintiff/Petitioner

vs.

St. Louis County, Missouri et. al
Defendant/Respondent

July 27, 2026
Date

26SL-CC05095
Case Number

3
Division

# REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Plaintiff (Requesting Party), pursuant to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

Elliott Process LLC, 5636 Telegraph Rd. #510181, St. Louis, MO 63129, (636) 200-8059
Name of Process Server — Address — Telephone

Name of Process Server — Address or in the Alternative — Telephone

Name of Process Server — Address or in the Alternative — Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
Derrick Melton
Name
6121 N. Hanley Rd.
Address
Berkeley, MO 63134
City/State/Zip

SERVE:
Sharon Gardner
Name
6121 N. Hanley Rd.
Address
Berkeley, MO 63134
City/State/Zip

SERVE:
Name
Address
City/State/Zip

SERVE:
Name
Address
City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By ______________________
Deputy Clerk

______________________
Date

Katherine Friedkin [signature]
Signature of Attorney/Plaintiff/Petitioner
51375
Bar No.
14 Fordyce Ln
Address
(314) 791-5297
Phone No. — Fax No.

Electronically Filed - ST LOUIS COUNTY - July 28, 2026 - 03:34 PM

Local Rule 28. SPECIAL PROCESS SERVERS

(1) Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2) The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A) Appointments may list more than one server as alternates.

(B) The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C) Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D) No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E) Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://stlcountycourts.com/forms/associate-civil/request-process-server/

(F) This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system. Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

Electronically Filed - ST LOUIS COUNTY - July 28, 2026 - 03:34 PM

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

July 27, 2026
Date

Duane Wyatt
Plaintiff/Petitioner

26SL-CC05095
Case Number

vs.

3
Division

St. Louis County, Missouri et. al
Defendant/Respondent

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Plaintiff (Requesting Party), pursuant to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

Elliott Process LLC, 5636 Telegraph Rd. #510181, St. Louis, MO 63129, (636) 200-8059
Name of Process Server / Address / Telephone

Name of Process Server / Address or in the Alternative / Telephone

Name of Process Server / Address or in the Alternative / Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
Derrick Melton
Name
6121 N. Hanley Rd.
Address
Berkeley, MO 63134
City/State/Zip

SERVE:
Sharon Gardner
Name
6121 N. Hanley Rd.
Address
Berkeley, MO 63134
City/State/Zip

SERVE:
Name
Address
City/State/Zip

SERVE:
Name
Address
City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By /S/ Adam Dockery
Deputy Clerk

07/31/2026
Date

KF/ Katherine Friedkin
Signature of Attorney/Plaintiff/Petitioner
51375
Bar No.
14 Fordyce Ln
Address
(314) 791-5297
Phone No. Fax No.

Electronically Filed - ST LOUIS COUNTY - July 28, 2026 - 03:34 PM

Local Rule 28. SPECIAL PROCESS SERVERS

(1) Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2) The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A) Appointments may list more than one server as alternates.

(B) The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C) Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D) No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E) Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://stlcountycourts.com/forms/associate-civil/request-process-server/

(F) This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system. Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

Electronically Filed - ST LOUIS COUNTY - July 28, 2026 - 03:34 PM

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

Duane Wyatt
Plaintiff/Petitioner

vs.

St. Louis County, Missouri et. al
Defendant/Respondent

July 27, 2026
Date

26SL-CC05095
Case Number

3
Division

# REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Plaintiff (Requesting Party), pursuant to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

Elliott Process LLC, 5636 Telegraph Rd. #510181, St. Louis, MO 63129, (636) 200-8059
Name of Process Server — Address — Telephone

Name of Process Server — Address or in the Alternative — Telephone

Name of Process Server — Address or in the Alternative — Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
St. Louis County, Missouri
Name
41 S. Central Ave.
Address
Clayton, MO 63124
City/State/Zip

SERVE:
St. Louis County Civil Service Commission
Name
41 S. Central Ave.
Address
Clayton, MO 63105
City/State/Zip

SERVE:
St. Louis County Department of Public Health
Name
6121 N. Hanley Rd.
Address
Berkeley, MO 63134
City/State/Zip

SERVE:
Dr. Kanika Cunningham
Name
6121 N. Hanley Rd.
Address
Berkeley, MO 63134
City/State/Zip

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By ______________________
Deputy Clerk

______________________
Date

KF / Katherine Friedrich
Signature of Attorney/Plaintiff/Petitioner
51375
Bar No.
14 Fordyce Ln
Address
(314) 791-5297
Phone No. — Fax No.

Electronically Filed - ST LOUIS COUNTY - July 28, 2026 - 03:34 PM

Local Rule 28. SPECIAL PROCESS SERVERS

(1) Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2) The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A) Appointments may list more than one server as alternates.

(B) The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C) Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D) No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E) Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://stlcountycourts.com/forms/associate-civil/request-process-server/

(F) This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system. Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

Electronically Filed - ST LOUIS COUNTY - July 28, 2026 - 03:34 PM

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

Duane Wyatt
Plaintiff/Petitioner

vs.

St. Louis County, Missouri et. al
Defendant/Respondent

July 27, 2026
Date

26SL-CC05095
Case Number

3
Division

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Plaintiff (Requesting Party), pursuant to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

Elliott Process LLC, 5636 Telegraph Rd. #510181, St. Louis, MO 63129, (636) 200-8059
Name of Process Server — Address — Telephone

Name of Process Server — Address or in the Alternative — Telephone

Name of Process Server — Address or in the Alternative — Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
St. Louis County, Missouri (Name)
41 S. Central Ave. (Address)
Clayton, MO 63124 (City/State/Zip)

SERVE:
St. Louis County Civil Service Commission (Name)
41 S. Central Ave. (Address)
Clayton, MO 63105 (City/State/Zip)

SERVE:
St. Louis County Department of Public Health (Name)
6121 N. Hanley Rd. (Address)
Berkeley, MO 63134 (City/State/Zip)

SERVE:
Dr. Kanika Cunningham (Name)
6121 N. Hanley Rd. (Address)
Berkeley, MO 63134 (City/State/Zip)

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By /S/ Adam Dockery
Deputy Clerk

07/31/2026
Date

KF / Katherine Friedrich
Signature of Attorney/Plaintiff/Petitioner
51375
Bar No.
14 Fordyce Ln
Address
(314) 791-5297
Phone No. — Fax No.

Electronically Filed - ST LOUIS COUNTY - July 28, 2026 - 03:34 PM

Local Rule 28. SPECIAL PROCESS SERVERS

(1) Any Judge may appoint a Special Process Server in writing in accordance with the law and at the risk and expense of the requesting party except no special process server shall be appointed to serve a garnishment [except as allowed by Missouri Supreme Court Rule 90.03(a)].

This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

(2) The Circuit Clerk may appoint a natural person other than the Sheriff to serve process in any cause in accordance with this subsection;

(A) Appointments may list more than one server as alternates.

(B) The appointment of a person other than the Sheriff to serve process shall be made at the risk and expense of the requesting party.

(C) Any person of lawful age, other than the Sheriff, appointed to serve process shall be a natural person and not a corporation or other business association.

(D) No person, other than the Sheriff, shall be appointed to serve any order, writ or other process which requires any levy, seizure, sequestration, garnishment, [except as allowed by Missouri Supreme Court Rule 90.03(a)], or other taking.

(E) Requests for appointment of a person other than the Sheriff to serve process shall be made on a "Request for Appointment of Process Server" electronic form, which may be found on the Court's Web Site, https://stlcountycourts.com/forms/associate-civil/request-process-server/

(F) This appointment as Special Process Server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVICE RETURN

Any service by the St. Louis County Sheriff's Office shall be scanned into the courts case management system. Any service by another Sheriff or a Special Process Server or any other person authorized to serve process shall return to the attorney or party who sought service and the attorney shall file the return electronically to the Circuit Clerk.

Electronically Filed - ST LOUIS COUNTY - July 27, 2026 - 12:13 PM

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

Duane Wyatt
Plaintiff/Petitioner

vs.

St. Louis County, Missouri et. al
Defendant/Respondent

July 27, 2026
Date

26SL-CC05095
Case Number

3
Division

## REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Plaintiff (Requesting Party), pursuant to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

Elliott Process LLC, 5636 Telegraph Rd. #510181, St. Louis, MO 63129, (636) 200-8059
Name of Process Server / Address / Telephone

Name of Process Server / Address or in the Alternative / Telephone

Name of Process Server / Address or in the Alternative / Telephone

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
St. Louis County, Missouri (Name)
41 S. Central Ave. (Address)
Clayton, MO 63124 (City/State/Zip)

SERVE:
St. Louis County Civil Service Commission (Name)
41 S. Central Ave. (Address)
Clayton, MO 63105 (City/State/Zip)

SERVE:
St. Louis County Department of Public Health (Name)
6121 N. Hanley Rd. (Address)
Berkeley, MO 63134 (City/State/Zip)

SERVE:
Dr. Kanika Cunningham (Name)
6121 N. Hanley Rd. (Address)
Berkeley, MO 63134 (City/State/Zip)

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By ______________________
Deputy Clerk

______________________
Date

KF / Katherine Friedlein
Signature of Attorney/Plaintiff/Petitioner
51375
Bar No.
14 Fordyce Ln
Address
(314) 791-5297
Phone No. / Fax No.

Electronically Filed - ST LOUIS COUNTY - July 27, 2026 - 12:13 PM

In the
# CIRCUIT COURT
## Of St. Louis County, Missouri

For File Stamp Only

Duane Wyatt
Plaintiff/Petitioner

vs.

St. Louis County, Missouri et. al
Defendant/Respondent

July 27, 2026
Date

26SL-CC05095
Case Number

3
Division

# REQUEST FOR APPOINTMENT OF PROCESS SERVER

Comes now Plaintiff (Requesting Party), pursuant to Local Rule 28, and at his/her/its own risk requests the appointment of the Circuit Clerk of

| Name of Process Server | Address | Telephone |
|---|---|---|
| Elliott Process LLC | 5636 Telegraph Rd. #510181, St. Louis, MO 63129 | (636) 200-8059 |
| Name of Process Server | Address or in the Alternative | Telephone |
| | | |
| Name of Process Server | Address or in the Alternative | Telephone |
| | | |

Natural person(s) of lawful age to serve the summons and petition in this cause on the below named parties. This appointment as special process server does not include the authorization to carry a concealed weapon in the performance thereof.

SERVE:
Name: Derrick Melton
Address: 6121 N. Hanley Rd.
City/State/Zip: Berkeley, MO 63134

SERVE:
Name: Sharon Gardner
Address: 6121 N. Hanley Rd.
City/State/Zip: Berkeley, MO 63134

SERVE:
Name:
Address:
City/State/Zip:

SERVE:
Name:
Address:
City/State/Zip:

Appointed as requested:
**JOAN M. GILMER,** Circuit Clerk

By ______________________
Deputy Clerk

______________________
Date

Katherine Friedkin
Signature of Attorney/Plaintiff/Petitioner
51375
Bar No.
14 Fordyce Ln
Address
(314) 791-5297
Phone No.
Fax No.

CCADM62-WS Rev. 07/22

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants. . | ) | |

**PLAINTIFF'S BRIEF IN SUPPORT**
**OF HIS MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt") submits this Brief in support of his Motion for Preliminary Injunction seeking interim reinstatement to his merit position, with pay, benefits, and seniority, pending final judgment.

## I. INTRODUCTION

For nearly eighteen months, Mr. Wyatt served, by his supervisor's own account, "absolutely" satisfactorily, as Chief Operating Officer of the St. Louis County Department of Public Health's Community Health Centers. See Hearing Tr. 32:1–3; 31:10–13 (appended as Pl. Ex. 1). On February 6, 2026, the County stripped Mr. Wyatt of that merit position, his income, and his health insurance on the strength of one man's disputed account of a 58-second telephone call. See Hearing Tr. 34:9–17; 129:1–10; Pl. Ex. 2. There is no written resignation. See Hearing Tr. 50:14–18; 148:4–9. No other witness heard the words the County attributes to Mr. Wyatt. See Hearing Tr. 52:8–10; 63:8–11; 68:5–11; 110:15–17. Mr. Wyatt denied resigning the moment the County first told him it had "accepted" his resignation, and he has never stopped denying it. See Hearing Tr. 82:13–23; 144:5–12; Pl. Ex. 3, 4, and 5. The County's own Appointing Authority

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

described Mr. Wyatt in sworn testimony as "the person that's being terminated." See Hearing Tr. 98:5–10.

What the County calls a "resignation not in good standing" was, in substance, a summary termination of a merit employee without notice, without a statement of cause, without disclosure of any evidence, and without any opportunity to be heard – the precise deprivation forbidden by Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985). The Civil Service Commission's June 18, 2026 decision affirming that action compounds, rather than cures, the violation: it construes Civil Service Rule XIX to authorize a form of separation the Rule nowhere permits; rests on purported testimony "findings" that no witness ever uttered; relies on an unsigned, undated witness statement produced nearly a month after the evidentiary hearing closed; and was joined by a commissioner who never heard a word of the evidence and, upon information and belief, did not review the entire record. See Pl. Ex. 6 (Decision ¶¶ 9(g)(i), 10(k), 18, 20, 29, 31); Hearing Tr. 5:15–16; 165:8–168:5.

Every day that this unlawful separation remains in effect, Mr. Wyatt goes without salary, health coverage, retirement credit, and seniority. See Hearing Tr. 164:4–7. Also, an official, stigmatizing designation – one that by rule impairs his eligibility for future County employment (Pl. Ex. 6 (Decision ¶ 20 (quoting Rule XIX § A.2))) – continues to brand a public-health executive who was never accused of misconduct. Money damages entered years from now cannot restore constitutional rights, health insurance in the interim, or a professional reputation. Mr. Wyatt asks this Court to restore his active merit employment – the last peaceable, uncontested status – pending final judgment.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

## II. STATEMENT OF FACTS

### A. Mr. Wyatt's Merit Employment

Mr. Wyatt began his County employment on August 19, 2024, and served as Chief Operating Officer of the Community Health Centers, the County's Federally Qualified Health Center Look-Alike, overseeing clinical operations, staff, grants, and federal HRSA regulatory compliance. See Hearing Tr. 31:10–25; 122:12–123:19. He was a merit employee with a protected property interest in continued employment. See, e.g., St. Louis County Charter art. VII, §§ 7.010, 7.030(3); Hearing Tr. 123:11–13. As of February 5, 2026, his supervisor, Community Health Centers CEO Derrick Melton, was "absolutely" satisfied with his performance; no discipline, investigation, or termination was pending or contemplated. See Hearing Tr. 32:1–3; 32:21–33:4; 86:16–21.

### B. The 58-Second Call and the County's "Resignation" Narrative

On the morning of February 5, 2026, while Mr. Wyatt was in a scheduled 8:00 a.m. commitment, Mr. Melton placed repeated calls and texts to his phone. See Hearing Tr. 33:16–34:17; 125:1–25. At 9:32 a.m., Mr. Wyatt returned the call while driving to work; the call lasted fifty-eight seconds. See Hearing Tr. 34:9–17; 129:1–10; Pl. Ex. 2. The County's entire resignation theory rests on Mr. Melton's assertion that, in that call, Mr. Wyatt twice said that he quit. See Hearing Tr. 28:12–24; 35:13–36:13. Mr. Wyatt testified that he expressed momentary frustration about (a) Mr. Melton's incessant calls and texts when he knew that Mr. Wyatt was in a meeting, and (b) the staffing question behind them all because the organizational charts were easily available to Melton online, on the walls of Mr. Wyatt's office wall across the hall from his, as well as both of their assistants' walls ("Just use the F'ing number, what the F"). See Hearing

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Tr. 124:6-12. He never said "quit" or "resign;" and the call ended with Mr. Melton telling him, "Well, just go home. Just go home." See Hearing Tr. 126:3–14; 133:5–11; 134:2–7.

No one asked Mr. Wyatt to put any resignation in writing – not Mr. Melton (Hearing Tr. 44:14–16), and not Appointing Authority Dr. Kanika Cunningham, who explained: "I would never talk directly to the person that's being terminated." See Hearing Tr. 98:5–10. No one contacted Mr. Wyatt to confirm his intent before "accepting" the alleged resignation. See Hearing Tr. 89:10–23; 90:13–18; 95:22–24; 104:18–105:1. And no one investigated, before or after his immediate denials. See Hearing Tr. 51:7–24; 102:22–103:3.

**C. Mr. Wyatt's Conduct Refuted Any Resignation**

Twenty minutes after the call, Mr. Wyatt reported to work. See Hearing Tr. 44:24–45:3. He met calmly with Mr. Melton, by Mr. Melton's own account, without a single curse word. See Hearing Tr. 43:5–12. He then worked the entire day: alongside Mr. Melton's assistant, Eugenia Pike until 4:30 p.m., buying lunch for the front-office staff, meeting twice with the Chief Medical Officer, and consoling a grieving colleague at day's end. See Hearing Tr. 64:25–65:17; 110:25–111:9; 129:11–130:19. The next morning he texted Mr. Melton offering help on a federal Uniform Data System submission, represented the County at an outside Centene meeting, returned to the office, and began preparing to lead the standing 1:00 p.m. management meeting. See Hearing Tr. 47:21–48:19; 130:22–131:18; 140:21–143:17. None of the witnesses who worked beside him those two days – Ms. Pike, Dr. Miller, Deputy Director Broadus – heard any resignation or observed any agitation. See Hearing Tr. 63:8–11; 68:5–15; 110:15–111:24; 119:8–120:25.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**D. A Termination in Substance: Security, Seized Badge, No Process**

On February 6, 2026, at Dr. Cunningham's direction, her assistant Sharon Gardner informed Mr. Wyatt that his "resignation" had been "accepted;" Mr. Wyatt, surprised, said he did not resign. See Hearing Tr. 79:4–14; 82:13–23; 131:18–132:3. Ms. Gardner collected his badge, phone, and computer, and security supervised his exit. See Hearing Tr. 84:4–10; 91:11–25; 132:15–20. A written "acceptance" issued at 1:19 p.m. – after his denial. See Pl. Ex. 7. Mr. Wyatt renewed his denials in writing on February 9 ("I DID NOT 'QUIT'! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING"), February 12, and February 16, 2026, requesting reinstatement and an investigation; the County never responded. See Pl. Ex. 3, 4, and 5; Hearing Tr. 145:6–147:25. At no point did the County give Mr. Wyatt notice of any charge, a statement of cause, its evidence, or an opportunity to respond. See Hearing Tr. 104:4–9; 149:3–18.

**E. The Commission Proceedings and Decision**

Mr. Wyatt appealed. Before the March 30, 2026 hearing, the County produced nothing: no documents, no witness list, no statement of cause, as it confirmed on the record. See Hearing Tr. 9:14–23; 10:11–15; 19:16–19. His February 24, 2026 Sunshine Law request (No. 26-3253) went unanswered through the hearing, met instead with serial boilerplate extensions timed past the Commission's key dates. See Hearing Tr. 149:25–151:4; Pl. Ex. 8 and 9. Only three of five commissioners attended the hearing. See Hearing Tr. 5:7–16. Nearly a month after the record closed, the County submitted an unsigned, undated and unauthenticated "Summary of Events" attributed to Ms. Pike, which the Commission accepted over objection and expressly relied upon, though Mr. Wyatt never had any opportunity to cross-examine her about it. See Pl. Ex. 10; Hearing Tr. 165:8–168:5; Pl. Ex. 6 (Decision ¶ 10(k)).

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

On June 18, 2026, the Commission affirmed, concluding that Rule XIX "fully applies" and that Mr. Wyatt, "by failing to submit his resignation in writing and with 14 calendar days' notice … resigned not in good standing," and that by "resigning" he "voluntarily waived" the due process owed under Rule XXI. See Pl. Ex. 6 (Decision ¶¶ 20, 23, 29). The decision attributes to Mr. Wyatt quoted profanities ("fuck you"; "I'm tired of this shit") that no witness ever testified to, supported by a citation to testimony about his job duties See Pl. Ex. 6 (Decision ¶ 9(g)(i)); Hearing Tr. 31:13–25 (cited by the County and the Commission)). It disposes of all contrary evidence, including the County's own witnesses' testimony, in a single unexplained sentence. See Pl. Ex. 6 (Decision ¶ 31). And it was signed by Commissioner Akram, who did not attend the hearing and, upon information and belief, did not review the whole record, while a fifth commissioner did not sign at all, though the decision recites a "unanimous" affirmance by the Commission. See Pl. Ex. 6 (Decision ¶ 18 & signature page); Hearing Tr. 5:15–16; 16:1–7.

**F. Mr. Wyatt's Continuing Injuries**

Since February 6, 2026, Mr. Wyatt has had no salary, no County health insurance, no retirement contributions or service credit, no leave accrual, and no seniority. (Hearing Tr. 164:4–7.) The official "not in good standing" designation – which under Rule XIX § A.2 "may be cause for an employee not to be recommended for future employment with the County" (Pl. Ex. 6 (Decision ¶ 20)) – remains in his official records, accompanied by the County's characterizations of a profanity-laced quit and questions about his "mental health" that Dr. Cunningham shared with a third party. See Hearing Tr. 28:12–24; 90:7–12; 100:12–101:21.

## III. LEGAL STANDARD

Rule 92.02 authorizes this Court to issue a preliminary injunction upon notice and hearing. In deciding whether to do so, Missouri courts weigh "the movant's probability of

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest." State ex rel. Dir. of Revenue v. Gabbert, 925 S.W.2d 838, 839 (Mo. banc 1996) (adopting Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). The office of the remedy is to preserve the status quo pending final judgment, the status quo being "the last actual, peaceable, uncontested status which preceded the pending controversy." Pomirko v. Sayad, 693 S.W.2d 323, 324 (Mo. App. E.D. 1985); State ex rel. Eagleton v. Cameron, 384 S.W.2d 627, 631 (Mo. 1964).

In addition, because Count I of the Petition seeks judicial review of a contested case, § 536.120, R.S.Mo. independently empowers this Court, "[p]ending the filing and final disposition of proceedings for review," to "issue all necessary and appropriate process" to stay enforcement of the agency's order and "temporarily to grant or extend … relief denied or withheld," upon such terms as appear proper, so long as the Court is satisfied "that the public interest will not be prejudiced thereby." The relief the Commission denied and withheld – recognition of Mr. Wyatt's continued merit status, reinstatement, and restoration of pay and benefits – is precisely the relief § 536.120 authorizes this Court to grant temporarily, pending review.

## IV. ARGUMENT

### A. Mr. Wyatt Is Substantially Likely to Succeed on the Merits.

1. Rule XIX does not authorize separation by disputed oral utterance.

Civil Service Rule XIX recognizes only two ways a merit employee may resign: (a) by "submitting a written resignation" (§ A.1), or (b) by presumption after three consecutive days' absence without notice. See also Pl. Ex. 6 (Decision ¶ 20); Hearing Tr. 29:3–5; 99:2–6. Neither occurred. Mr. Wyatt submitted no writing and missed no work – not a single day. See Hearing Tr.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

50:14–18; 148:4–25. Subsection A.2, on which the Commission relied, addresses only a consequence of deficient notice – that a departing employee "may … not be recommended for future employment" – not a freestanding mechanism of separation. The Commission's resort to the Rule's "true intent" in derogation of its text (Pl. Ex. (Decision ¶ 20)) is precisely the enlargement of agency authority Missouri law forbids. An agency "possesses only those powers expressly conferred or necessarily implied by law." State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n, 344 S.W.3d 178, 186 (Mo. banc 2011). And the Commission's reasoning that Mr. Wyatt "resigned not in good standing" precisely "by failing to submit his resignation in writing" (Pl. Ex. 6 (Decision ¶ 23)) is circular; it converts the absence of the very act the Rule requires into proof that the act occurred. On de novo review of these legal questions, no deference is owed. Lagud v. Kansas City Bd. of Police Comm'rs, 136 S.W.3d 786, 791 (Mo. banc 2004).

2. Even fully credited, the County's account fails as a matter of law.

A separation extinguishes a merit employee's protected property interest only if the employee's relinquishment was voluntary, deliberate, and unequivocal, judged under the totality of the circumstances, Angarita v. St. Louis County, 981 F.2d 1537, 1544 (8th Cir. 1992), and courts "indulge every reasonable presumption against waiver" of fundamental rights. Johnson v. Zerbst, 304 U.S. 458, 464 (1938). Even taking Mr. Melton's account at face value – "screaming erratically," pounding a steering wheel, all within fifty-eight seconds (Hearing Tr. 36:14–25) – it describes the archetypal heat-of-the-moment outburst, from an executive who had never cursed at his supervisor or mentioned quitting (Hearing Tr. 33:9–11; 40:1–5), whose supposed resignation Mr. Melton himself found "odd" (Hearing Tr. 51:22–25), and who was back at work within twenty minutes. Mr. Melton's own conduct – closing the call with "just go home," never requesting a writing, saying nothing as Mr. Wyatt kept working and texting about work –

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

confirms that even he did not understand an unequivocal resignation to have occurred. See Hearing Tr. 133:5–11; 44:14–16; 45:9–11; 46:12–24; 48:16–19. Purely hypothetically, if Mr. Wyatt had said "I quit" during that phone call, at most the alleged words were an offer, withdrawn by Mr. Wyatt's open, continued performance of his duties before any acceptance was communicated to him on February 6, and expressly repudiated upon first notice. See Hearing Tr. 79:4–24; 82:13–23; emailed denials at Pl. Ex. 3, 4, and 5. Because even the County's best version of the facts fails as a matter of law, reversal does not depend on any credibility determination.

3. The Commission's decision cannot survive § 536.140 review.

On review, this Court determines whether the decision is supported by competent and substantial evidence upon the whole record, including the evidence that fairly detracts from it, and whether it was made upon lawful procedure and a fair trial. See § 536.140.2, R.S.Mo.; Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 222–23 (Mo. banc 2003). The Commission's decision fails on both scores. It rests on "findings" – quoted profanities – that no witness uttered, supported by a citation to testimony about Mr. Wyatt's job duties. (Pl. Ex. 6 (Decision ¶ 9(g)(i).)) It declares the alleged resignation "unequivocal" with no record citation at all (Decision ¶ 22), in the face of the County's three on-the-record concessions that the facts were disputed (e.g., "He said/he said is a pretty good way to put it"). See Hearing Tr. 18:3–7; 20:12–13; 161:4–5.) It finds Mr. Wyatt "did not attempt to deny his resignation" while elsewhere finding that he denied it immediately and repeatedly (Decision ¶¶ 10(b)(iii), 11(d)–(e).) It sweeps away all contrary evidence, including the County's own witnesses, in one unexplained sentence (Pl. Ex 6 (Decision ¶ 31)), findings that violate § 536.090, R.S.Mo. and preclude meaningful review. It expressly relies on the unsigned, undated purported Pike statement produced nearly a

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

month after the hearing, never authenticated and never subject to cross-examination. See Pl. Ex. 6 (Decision ¶ 10(k)); Hearing Ex. 10; Hearing Tr. 165:8–168:5. And it was joined by a commissioner who attended no part of the hearing and, upon information and belief, did not independently consider the entire record, in violation of § 536.080.2, R.S.Mo. and Civil Service Rule XXII § B.2.a, which requires decision "by the entire Commission after consideration of all testimony and evidence adduced at the hearing." See Hearing Tr. 5:15–16; 16:1–7; Pl. Ex. 6 (Decision ¶ 18). Finally, it is not a decision "by the entire Commission," as one Commissioner did not sign the decision. See Pl. Ex. 6 (Decision signature page); Civil Service Rule XXII § B.2.a.

4. The separation violated due process.

A merit employee may not be deprived of his property interest in employment without prior notice, an explanation of the employer's evidence, and an opportunity to respond – "the initial check against mistaken decisions" – before the deprivation becomes effective. Loudermill, 470 U.S. at 542–46; Bd. of Regents v. Roth, 408 U.S. 564, 576–78 (1972). Where the employee disputes that any resignation occurred, the separation is an involuntary deprivation requiring process, Angarita, 981 F.2d at 1544, and here Mr. Wyatt received none: no notice, no statement of cause, no evidence, no hearing of any kind before the County seized his badge and walked him out under security supervision. See Hearing Tr. 84:4–10; 91:11–25; 104:4–9; 149:3–18. A post-deprivation appeal held seven weeks later – at which the County withheld every document and produced its sole witness statement a month after the record closed – cannot supply the pre-deprivation process Loudermill requires, nor a meaningful name-clearing opportunity for the stigmatizing "not in good standing" designation and accompanying characterizations. Codd v.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Velger, 429 U.S. 624, 627–28 (1977); Speer v. City of Wynne, 276 F.3d 980, 984–85 (8th Cir. 2002).

**B. Mr. Wyatt Is Suffering Irreparable Harm.**

The ongoing deprivation of constitutional rights "unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373 (1976). Beyond the constitutional injury, the harms here are continuing, compounding, and beyond the reach of a money judgment. Mr. Wyatt has been without health insurance since February 6, 2026, an exposure no retrospective damages award can insure against. See Hearing Tr. 164:4–7. His retirement service credit, leave accrual, and seniority erode with each pay period. An official, governmental designation that he resigned "not in good standing," coupled with the County's characterizations of a profanity-laced quit and "mental health" concerns disclosed to third parties (Hearing Tr. 90:7–12; 100:12–101:21), stigmatizes a healthcare executive whose career depends on reputation and integrity, and by Rule XIX § A.2 impairs his eligibility for future County employment. See Pl. Ex. 6 (Decision ¶ 20). Reputational injury of this kind, inflicted and maintained by official records, is not compensable in damages. And the executive experience and professional relationships lost during exclusion from public service cannot be recreated after the fact. There is no adequate remedy at law.

Moreover, on information and belief, the County is presently in the process of filling Mr. Wyatt's position as Chief Operating Officer of the Community Health Centers. If the County permanently fills that position before the Injunction Motion can be heard, the core interim relief Mr. Wyatt seeks may be substantially impaired or rendered impracticable by the mere passage of time.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**C. The Balance of Harms Tips Decisively in Mr. Wyatt's Favor.**

Against these mounting injuries, Defendants can identify no cognizable harm. An injunction requiring public officials to comply with their own Charter, Civil Service Rules, and the Constitution inflicts no legally recognized injury. Moreover, reinstatement pending judgment is not a windfall: the County receives the full-time services of an executive whose performance its own witnesses praised (Hearing Tr. 32:1–3), in exchange for the salary it pays. If Defendants ultimately prevail, they retain every lawful personnel power, including the power to pursue any lawful action through proper procedures. If Mr. Wyatt prevails after years of exclusion, no judgment can return what the interim took. Where one side faces compounding irreparable injury and the other faces, at most, the ordinary obligations of a public employer, the balance is not close.

**D. The Public Interest Favors Relief.**

The public interest lies in enforcement of the merit system that the St. Louis County Charter establishes, in governmental compliance with constitutional due process, and in ensuring that no appointing authority may nullify civil-service protections simply by declaring that a disputed separation was a "resignation." If the County's theory stands even provisionally, every merit employee's protections hang on nothing more than a supervisor's say-so about an unwitnessed conversation. The public also benefits directly from the services of a qualified Chief Operating Officer at its federally qualified health centers. Interim relief will not prejudice the public interest, § 536.120, R.S.Mo.; it vindicates it.

**E. The Requested Relief Preserves the Status Quo and Is Squarely Within the Court's Power.**

The last actual, peaceable, uncontested status preceding this controversy was Mr. Wyatt's active merit employment as Chief Operating Officer through February 5, 2026. Pomirko, 693

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

S.W.2d at 324. An order restoring that status pending judgment preserves, rather than alters, the lawful status quo; it is Defendants' unilateral action – taken without process – that disturbed it. Section 536.120, R.S.Mo. removes any doubt about the Court's authority: pending disposition of the petition for review, the Court may "issue all necessary and appropriate process" to stay enforcement of the Commission's order and "temporarily to grant or extend … relief denied or withheld." Reinstatement with pay, benefits, and seniority pending review is exactly the relief the Commission's order denies and withholds. The Court may likewise order, as temporary relief on such terms as appear proper, restoration of the pay, benefits and seniority withheld since February 6, 2026, or may preserve quantification of those losses for final judgment, at which the Court may order reinstatement and restoration of pay, benefits and seniority lost by reason of the unlawful decision. See § 536.140.5, R.S.Mo.; 42 U.S.C. § 1983.

**F. Any Bond Should Be Waived or Nominal.**

Rule 92.02(d) requires security before an injunction is issued, but the amount rests in the Court's discretion. Here the injunction compels governmental compliance with existing legal obligations; the County's exposure is minimal because it will receive Mr. Wyatt's services in exchange for the salary it pays; and a substantial bond, imposed on an employee unlawfully deprived of income since February 6, 2026, would effectively price him out of equitable relief. Mr. Wyatt respectfully requests that bond be waived or alternatively set at a nominal amount.

## V. CONCLUSION

For the foregoing reasons, and on the basis of the Verified Petition, the administrative record, and the exhibits, Mr. Wyatt respectfully requests that the Court grant his Motion for Preliminary Injunction; order his immediate reinstatement to his position as Chief Operating Officer of the Community Health Centers, or to an equivalent merit position, with full salary,

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

health insurance, retirement participation and service credit, leave accrual, seniority, office space, and all other rights and benefits of merit employment, pending final judgment; order restoration of the pay and benefits withheld since February 6, 2026, with interest, or preserve their quantification for final judgment; enjoin Defendants from treating or representing Mr. Wyatt as having resigned "not in good standing" or otherwise engaged in misconduct; enjoin Defendants from permanently filling his position pending further order; order preservation of all relevant records; waive or set any bond in a nominal amount; and grant such further relief as is just and proper.

Respectfully submitted,

______________________________

Katherine C. Frierdich, MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this ____ day of ______________, 2026, a true and accurate copy of the foregoing Plaintiff's Brief in Support of His Motion for Preliminary Injunction was filed through the Missouri eFiling System, which will provide notice to all counsel of record, and/or was served together with the summons and Verified Petition upon Defendants/Respondents in the manner provided by Missouri Supreme Court Rule 54, including service upon the St. Louis County Counselor's Office, 41 South Central Avenue, Clayton, Missouri 63105.

______________________________
Katherine C. Frierdich

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

HRT
HARTFORD
REPORTING & TECHNOLOGY

Administrative Hearing

3/30/2026

In the Matter of Duane "Pete" Wyatt, Appellant

**Hartford Reporting & Technology**

**7733 Forsyth Boulevard, Suite 1100**

**St. Louis, Missouri 63105**

**(855) 443-3767**

**www.hartfordreporting.com**

Plaintiff's Exhibit
#01

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM



ST. LOUIS COUNTY GOVERNMENT
CIVIL SERVICE COMMISSION
MONDAY, MARCH 30, 2026 AT 12:00 P.M.

In Re:
HEARINGS, APPEALS, GRIEVANCES
In the Matter of Duane “Pete” Wyatt (Appellant);
Dr. Kanika Cunningham (Respondent)
TRANSCRIPT OF PROCEEDINGS
taken via WebEx
March 30, 2026

Taken before Juliana F. Zajicek, Registered Professional Reporter, Certified Shorthand Reporter and Certified Realtime Reporter, and Notary Public.



A P P E A R A N C E S:

CIVIL SERVICE COMMISSION COMMISSIONERS (via WebEx):
Commissioner Satonya Booker
Commissioner Nadine V. Nunn, Esq.
Commissioner Chantal Hoffsten

FOR ST. LOUIS COUNTY (via WebEx):
Mr. Noah Goldkamp, Esq.

FOR APPELLANT DUANE “PETE” WYATT (via WebEx):
Ms. Katherine Frierdich, Esq.

FOR RESPONDENT DR. KANIKA CUNNINGHAM (via WebEx):
Ms. Katherine R. Kaufman, Esq.

ALSO PRESENT (via WebEx):
Duane “Pete” Wyatt, Appellant;
Ms. Jairris Goen, Manager of Employment,
St. Louis County



I N D E X


| | |
|---|---|
| OPENING STATEMENT - RESPONDENT | 28 |
| OPENING STATEMENT - APPELLANT | 106 |
| CLOSING STATEMENT - APPELLANT | 159 |
| CLOSING STATEMENT - RESPONDENT | 161 |


E X A M I N A T I O N


| WITNESS: | PAGE: |
|---|---|
| DERRICK MELTON | |
| DX BY MS. KAUFMAN.................... | 30 |
| CX BY MS. FRIERDICH.................. | 40 |
| RDX BY MS. KAUFMAN................... | 55 |
| RCX BY MS. FRIERDICH................. | 57 |
| EUGENIA PIKE | |
| DX BY MS. KAUFMAN.................... | 61 |
| CX BY MS. FRIERDICH.................. | 67 |
| RDX BY MS. KAUFMAN................... | 74 |
| SHARON GARDNER | |
| DX BY MS. KAUFMAN:................... | 77 |
| CX BY MS. FRIERDICH.................. | 81 |




E X A M I N A T I O N


| WITNESS: | PAGE: |
|---|---|
| DR. KANIKA CUNNINGHAM | |
| DX BY MS. KAUFMAN.................... | 85 |
| CX BY MS. FRIERDICH.................. | 93 |
| RDX BY MS. KAUFMAN................... | 105 |
| DR. PATRICK MILLER | |
| DX BY MS. FRIERDICH.................. | 109 |
| CX BY MS. KAUFMAN.................... | 116 |
| DAMON BROADUS | |
| DX BY MS. FRIERDICH.................. | 118 |
| DUANE "PETE" CARLTON WYATT | |
| DX BY MS. FRIERDICH.................. | 122 |
| CX BY MS. KAUFMAN.................... | 152 |
| RDX BY MS. FRIERDICH................. | 156 |

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM



MR. LIVASY: Why don't we go ahead and call the meeting to order. Chairwoman Nunn, are you willing to do that for us?
COMMISSIONER NUNN: Yes, we would now call this special hearing for March the 30th, and you will be in the hands of Matt Livasy to do a roll call vote.
MR. LIVASY: All right. Thank you.
Chairwoman Nunn?
COMMISSIONER NUNN: Present.
MR. LIVASY: Commissioner Hoffsten?
COMMISSIONER HOFFSTEN: Present.
MR. LIVASY: Commissioner Booker?
COMMISSIONER BOOKER: Present.
COMMISSIONER NUNN: Okay.
MR. LIVASY: And Commissioner Akram and Commissioner Carter-Hicks are not present.
All right. So, Juliana, I think since the meeting is officially kicked off, you're welcome to go ahead and start putting us on the record.
I'm moving to Section 2, Hearings, Appeals, Grievances, and Item 2.1 is Resignation Appeal from Pete Wyatt and the Department of Public Health.
We do have a closed session on the agenda, so we will exercise that likely for this, if that's what the Commission and the parties choose to do.



We need to appoint a hearing officer, so that will be up to the Commission. Who would like to take on that role today?
COMMISSIONER NUNN: Did you say Commissioner Booker is on the line?
MR. LIVASY: Yes.
COMMISSIONER NUNN: And you sent out all of the materials for the hearing procedure and everything to Commissioner Booker?
COMMISSIONER BOOKER: Yes, I have the procedure documents.
COMMISSIONER NUNN: Okay. All right. Then I would say that Commissioner Booker should be the hearing officer for this particular meeting.
COMMISSIONER BOOKER: Okay. I'm going to need some help.
COMMISSIONER NUNN: Okay. No problem.
MR. LIVASY: Commissioner Booker, you have the --
COMMISSIONER BOOKER: Administrative hearing procedure guidance, yes, I do.
MR. LIVASY: And we'll be following the first column on the far left.
COMMISSIONER BOOKER: Okay. An employee with an attorney?



MR. LIVASY: Yes.
COMMISSIONER BOOKER: Okay.
MR. LIVASY: Correct.
COMMISSIONER BOOKER: Okay. So I just --
MR. GOLDKAMP: I'm sorry, I couldn't get to my unmute button. My mouse pad wasn't working.
But can we have a motion to appoint Commissioner Booker as the hearing officer?
COMMISSIONER HOFFSTEN: I'll make that motion.
COMMISSIONER NUNN: Second.
All of those in favor?
COMMISSIONER HOFFSTEN: Aye.
COMMISSIONER BOOKER: Aye.
COMMISSIONER NUNN: Aye.
MR. GOLDKAMP: And then I believe there has been a request from the employee for the hearing to be in a closed session, so I think that's appropriate to take up before -- before anything -- before anything else.
COMMISSIONER NUNN: So I move that we go into closed session by roll call vote.
COMMISSIONER HOFFSTEN: I'll second that.
MR. LIVASY: Chairwoman Nunn?
COMMISSIONER NUNN: Aye.
MR. LIVASY: Commissioner Hoffsten?



COMMISSIONER HOFFSTEN: Aye.
MR. LIVASY: Booker?
COMMISSIONER BOOKER: Aye.
MS. GOEN: And then, Noah, at this point is there anybody else I need to promote to bring into closed session with us?
MR. GOLDKAMP: So at this point, it would be appropriate for the employee, the employee's attorney, and Dr. Cunningham to all be moved over to the closed session.
MS. PIKE: And me, please.
MR. GOLDKAMP: Well, I think you're already a panelist, Gina.
MS. PIKE: Okay.
MS. GOEN: Yeah, sorry. We moved panelists -- okay, so I have promoted those three individuals to panelist -- excuse me -- so we should be ready to go ahead and move into closed session.
IT TECH: Hello, everyone. It's Shawn with IT again. I'm getting ready to start your closed session. I just wanted to verify before I hit it, everybody that's currently a panelist will be moving into closed session, correct?
MS. GOEN: Correct, thank you.
IT TECH: All right. I'll go ahead and start

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


it. If you get a popup, please hit "yes" or "no."

(WHEREUPON, the following proceedings were had in closed session, as follows:)

MR. LIVASY: Let's give a moment to allow all of the others who needed to join to join us.

MS. FRIERDICH: So you are going to be looking for Pete, as I don't see him?

MR. LIVASY: Katherine, you are muted.

MS. KAUFMAN: Thank you. I just wanted to let any witnesses who may be called into the main room know where we are going and that they will be brought in from time to time.

MS. FRIERDICH: Do you have a list of said witnesses, as we have not received one?

MS. KAUFMAN: Yes. I think all of the witnesses on our list are also on yours. We are intending to call Dr. Cunningham, Mr. Melton, Ms. Pike, and Ms. Gardner.

MS. FRIERDICH: Okay. Did you submit a witness list, because I don't believe we received one, or did you submit anything else that we didn't receive?

MS. KAUFMAN: No.

MS. FRIERDICH: Okay. And what about the witnesses that we proposed, are they also in the


waiting room?

MS. KAUFMAN: They can be made available. They've all been informed of the hearing. I don't see the relevance of some of the witnesses' proposed testimony, but we can handle that as we get to it.

MS. FRIERDICH: I'm not sure that's your decision to make, but you're saying that they are available?

MS. KAUFMAN: Yes, ma'am.

MS. FRIERDICH: Thank you.

Did the County submit any documents?

MS. KAUFMAN: No, ma'am.

MS. FRIERDICH: And no other pleadings that we did not receive a copy for?

MS. KAUFMAN: No.

MS. FRIERDICH: Thank you.

So a question for the Commission since Ms. Cunningham is to be a witness, is she going to be remaining here as a party or will you be putting her into the waiting room and bringing her in as a witness?

MR. WYATT: I think I'm in now.

MS. FRIERDICH: Hi, Pete. Glad you could join us.

Is that a question for whom? I'm not


sure.

MR. GOLDKAMP: It could be my advice to the Commission that Dr. Cunningham is not only a witness, she is the appointing authority who made this decision and is, therefore, a party to the case. That would be my advice to -- to the Commission. But it is the Commission's decision.

So I think, Commissioners, that if you want to make a ruling on whether Dr. Cunningham can remain in the room as the appointing authority who made the decision, or if she is a witness and should then be sequestered like the other witnesses, I think that's the first decision we need to make here.

MR. LIVASY: And, I'm sorry, administratively, Chairwoman Nunn, can you accept the breakout session on your computer? You're still showing up on camera in open session, and we just don't want to -- to risk anything there.

COMMISSIONER NUNN: Oh. Is that fine? I did join the session.

MR. LIVASY: We've got you for Call-in User 3, but I need your computer as well to be switched over.

COMMISSIONER NUNN: Oh, okay.

MR. LIVASY: There should be a popup where there's a "join" button in the top left corner of your


WebEx.

COMMISSIONER NUNN: Okay. I see "join breakout session," and it says I'm assigned to breakout session 1.

MR. LIVASY: Okay.

COMMISSIONER NUNN: Let me do join.

MR. LIVASY: It looks like we've got you in. Thank you for taking care of that. I appreciate it.

COMMISSIONER NUNN: Okay. All right.

MR. LIVASY: Okay. And then it looks like we would need you to return to the main meeting for now that's taking place in the chat.

MS. KAUFMAN: Yes, that's addressed to Ms. Pike. I think somehow she may have accidentally traveled in with us.

MR. LIVASY: Ms. Pike, if you can hear me, I'm still seeing you showing up in attendance -- nope, you are gone.

Okay. I think we're all ready to proceed. Thank you for the interruption. Noah, you presented a question, I believe.

MR. GOLDKAMP: Yes. I think the first matter we need to take up is whether the Commission will allow Dr. Cunningham to stay in the hearing while others are testifying and these pre-motions are heard or if she

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM



should be sequestered like the other witnesses?
COMMISSIONER NUNN: Ms. Booker, you are the hearing officer. It is my suggestion that all witnesses will be sequestered until their time to testify.
COMMISSIONER HOFFSTEN: I concur.
COMMISSIONER BOOKER: I agree as well.
MS. KAUFMAN: Would that include Mr. Wyatt as well, assuming he intends to give testimony?
MS. FRIERDICH: I believe the rules require him to be present.
COMMISSIONER BOOKER: Yes. That's how it normally is. So how do we --
MR. GOLDKAMP: So we just -- if we have a motion, and then Dr. Cunningham can be placed in the waiting room.
COMMISSIONER BOOKER: So the motion shall be that Dr. Cunningham shall be treated as a witness, is that how that --
MR. GOLDKAMP: And -- and not present during pre-hearing motions and other witnesses' testimony.
COMMISSIONER BOOKER: May I say what Noah said, or should I --
COMMISSIONER NUNN: You can say "so moved."
COMMISSIONER BOOKER: So moved.



COMMISSIONER HOFFSTEN: Second.
COMMISSIONER BOOKER: All those in favor?
COMMISSIONER HOFFSTEN: Aye.
COMMISSIONER NUNN: Aye.
COMMISSIONER BOOKER: Aye.
COMMISSIONER HOFFSTEN: Do we need to do a roll call vote since we're in a closed --
MR. GOLDKAMP: We do not.
MS. GOEN: Okay. Dr. Cunningham, I have no idea if you have the option to leave. I think I have the option to put you back, but if it removes you from the meeting, just rejoin and you should end up in -- back in the open session.
Oh, okay. She did it, it looks like.
(WHEREUPON, Dr. Cunningham exited the closed session.)
MS. FRIERDICH: And just to confirm, Call-in User 3 is Commissioner Nunn?
COMMISSIONER BOOKER: Yes.
COMMISSIONER NUNN: Correct.
MS. FRIERDICH: Thank you.
COMMISSIONER BOOKER: Am I supposed to read this over here?
MR. GOLDKAMP: Yes.
COMMISSIONER BOOKER: Okay. Do I start with,



"This hearing is convened"?
MR. GOLDKAMP: Yes.
COMMISSIONER BOOKER: Okay. This hearing is convened -- let's go on record.
I am Satonya Booker, a Commissioner of the St. Louis County Civil Service Commission. I am the designated hearing officer for the appeal filed by the appellant.
It appears they are present, along with their attorney, and the Department's appointing authority is present along with a County attorney, Associate -- Associate County Counselor for the St. Louis County Government.
Before we begin, I'm going to inquire as to whether or not there has been any discussion between the attorneys concerning the settlement -- concerning a settlement?
MS. KAUFMAN: No.
COMMISSIONER BOOKER: Is there any benefit to the parties entering into any further discussion at this time?
MS. KAUFMAN: No.
COMMISSIONER BOOKER: If so, I will provide an -- okay. So there is no discussion, okay.
If not, we will begin the hearing.



I want to point out that all of the Commissioners will view the evidence in the appeal. The other Commission members will be supplied with the transcript of today's proceedings, as well as copies of any documents that are admitted into evidence. The full Commission will make the decision, not just me. I am here simply to conduct today's hearing.
Just a general statement, both parties are represented by attorneys and the rules of the Civil Service Commission provide that hearings shall be informal and shall not follow the strict Rules of Evidence and the technicalities thereupon.
I will, however, consider any objections that either one of you may have, but please remember that any rulings that are made may not necessarily conform to what either of you may be -- may be used to in a courtroom. It is May -- I'm sorry, March 30th, 2026, and it is about 12:23 p.m. We are ready to begin the proceeding.
Are there any preliminary issues to be considered at this time?
MS. FRIERDICH: I --
MR. GOLDKAMP: I believe --
MS. FRIERDICH: Yes, go ahead. I think we were headed in the same direction. Go ahead.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 17

MR. GOLDKAMP: And you can take it.

MS. FRIERDICH: Okay. So we do have a couple of motions on file. One was to request that the Commission do an investigation, subpoena witnesses, and collect documentation. We did not receive any information regarding subpoena of witnesses or witnesses, so we've already granted the closed ruling request -- closed hearing request.

Is there anything the Commission has to say in regard to that motion? We just haven't -- we didn't -- "we," meaning Mr. Wyatt, did not receive any information regarding compelled testimony or records from the Commission prior to this meeting, nor the County.

MR. GOLDKAMP: So what is on the table, Commissioners, is whether you want to compel certain witnesses to appear. From the list, it looks like the first four, the County is already calling, so it seems to be a moot point. And then there are five other names that Ms. Frierdich gave for you to consider.

COMMISSIONER BOOKER: Yes, it looks like -- okay. So it looks like for the record, we now have these -- these exhibits, so we reviewed the -- we reviewed the copies of the -- of the facts that you have -- that you have -- that you have offered to us,

Page 18

and I'm understanding that those can be admitted by stipulation. Is that correct?

MS. KAUFMAN: We would not stipulate to the veracity of those facts, Commissioner Booker. There is, I believe, conflicting factual accounts and testimony on both sides which is what brings us here today.

MS. FRIERDICH: And if what you're referring to is appellant's, that's Mr. Wyatt's proposed findings of fact, conclusions of law, and order, so. It's really a -- we presented a pre-hearing brief and proposed findings of facts and conclusions of law and an order because the latter is what the Commission will have to issue in order to help to lay it out in advance for the Commission so you're not coming in blind.

COMMISSIONER BOOKER: Okay. Okay. Well, let's -- let's call -- let's call in these witnesses then. Let's look at --

COMMISSIONER HOFFSTEN: Commissioner Booker, this is Commissioner Hoffsten. I'm just wondering if maybe we can ask the relevance of the rest of the witnesses in the motion?

COMMISSIONER BOOKER: Okay.

COMMISSIONER HOFFSTEN: Because if we -- sorry,

Page 19

I muted myself -- it might be helpful.

So in the motion that was filed by appellant's attorney, there's a list of witnesses, and I believe that there is -- while there's agreement, there's disagreement. So we can, you know, deny the motion or at least hear why they think they're relevant, if you'd like, as the hearing officer.

COMMISSIONER BOOKER: I agree, I concur.

MS. FRIERDICH: Okay. The two that were not listed by Ms. Kaufman is Mr. David Broadus, Deputy Director, Department of Public Health, and Dr. Patrick Miller, Chief Medical Officer, Community Health Centers. They both are fact witnesses who can speak to the disputed facts in this matter.

And then we offer three witnesses as rebuttal, as we have not received any information whatsoever from the County with regard to the facts; no documentation, no statement of cause, nothing. So we are, you know, trying to -- we are trying to keep it to the point and short. I don't think this has to be a very drawn-out hearing.

I think the facts are very clear, but, you know, we don't know what they're presenting so I presented three additional people as potential rebuttal witnesses, depending on what they present.

Page 20

We don't know what they're going to present.

And I would ask what the -- what the relevance of the other ones are to the County if I have to, you know, justify it, but the two -- the two witnesses that are not listed as rebuttal are fact witnesses who literally witnessed disputed facts.

COMMISSIONER NUNN: So there is no stipulation to the facts?

MS. KAUFMAN: Should we have --

COMMISSIONER NUNN: I'm sorry. Are you saying there is no stipulation as to the facts?

MS. KAUFMAN: No. There is a dispute as to the facts, ma'am.

COMMISSIONER NUNN: All right. Commissioner Booker?

COMMISSIONER BOOKER: Okay. So -- okay. So the stip- --

MS. KAUFMAN: If I may respond, we have Mr. Broadus and Dr. Miller both on standby. Dr. Miller is in the main session and doctor -- Mr. Broadus can be called by phone and requested to join.

As for the three rebuttal witnesses, I understand they are on the list, one of them was on bereavement leave during the time period at issue, and

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


the other two did not directly witness any interactions between any of the parties or any of the other witnesses. So I doubt they will be necessary as rebuttal.

MS. FRIERDICH: That's testifying on their behalf, so I would object to that.

Ms. Cunningham was also on leave, that's my understanding, so if that's the -- if that's the test. Look, we may not need the rebuttal witnesses. We can cross that bridge when we come to it. I just -- I don't think we should be putting words in witnesses' mouths.

COMMISSIONER BOOKER: So the relevance of the -- okay. So let's see. So you're interested in bringing -- so we start with -- can we choose which witnesses to bring forth first?

MR. GOLDKAMP: What you would do is call the County to present their witnesses, and then it is the same for the claimant, is you would call the claimant to put on their testimony and then they can use whatever order they would like.

COMMISSIONER BOOKER: So it's the County first and then the -- okay.

MR. GOLDKAMP: Correct.

COMMISSIONER BOOKER: Okay. Okay. Well, the --


okay. So can the County proceed?

MS. KAUFMAN: Yes, Commissioner.

MS. FRIERDICH: Can we just back up and get a ruling on acceptance of our pre-hearing brief and proposed findings of fact, conclusions of law, and order, that they will be accepted by the Commission?

COMMISSIONER BOOKER: I'm sorry, Noah and Katherine were talking at the same time.

MS. FRIERDICH: I apologize. So I think there are a couple of things still outstanding. We also ask that the Commission investigate this matter and collect relevant non-privileged records. Did the Commission do that, and is there anything to offer to Mr. Wyatt at this point? As I mentioned, we have received nothing from the County.

COMMISSIONER BOOKER: So they do not have the same things we have?

MS. KAUFMAN: So if Ms. Frierdich is referring to a proposed findings of fact and conclusions of law, it's generally our practice to submit that after the hearing so that we can cite to portions of the trial transcript that represent the facts that were brought out at the hearing.

MS. FRIERDICH: That's not what I was referring to. Thank you, though. I was referring to the motion


for compelled testimony and records, full investigation, enclosed Rule 22 hearing.

We requested that the Commission investigate and collect all non-privileged relevant records and supply them to Mr. Wyatt in fairness. We did not receive anything from the County or the Commission. I'm just wondering did the Commission investigate and collect any records such that they should be presented to Mr. Wyatt in response for our motion?

COMMISSIONER BOOKER: Okay. So what is my -- what do I do here?

MR. GOLDKAMP: So the County -- the Commission did not. So it isn't really my place to say that, but that is the -- the answer.

MS. FRIERDICH: Okay. And then we did file a pre-hearing brief and proposed findings of fact and conclusions of law. We'd ask that those be accepted by the Commission at this point.

I understand Ms. Kaufman, you know, may intend to file something of the same nature after the fact. We would reserve the right to file an amended, but we filed proposed at this point.

And to clarify, it's not adversarial to do that. It's really, Mr. Wyatt wanted to, you know,


really help to educate the Commission on what the issues are prior to the Commissioners coming in cold, essentially, on this matter, so. They are only proposed findings of fact and conclusions of law in a pre-hearing brief from Mr. Wyatt.

COMMISSIONER NUNN: Commissioner Booker, we can have everyone to submit findings of fact and conclusions of law at the end of the hearing, and that is my suggestion that we would do so at this time.

COMMISSIONER BOOKER: I concur. So moved.

COMMISSIONER NUNN: Thank you.

MS. FRIERDICH: So will the Commission accept our pre-hearing brief, which is separate?

COMMISSIONER BOOKER: I submit that we will -- we will accept -- accept your pre-hearing brief.

COMMISSIONER NUNN: After hearing or at this time, is what you are asking?

COMMISSIONER BOOKER: After the hearing.

COMMISSIONER NUNN: Okay.

MS. FRIERDICH: It's my understanding, Mr. Goldkamp, that the documents that we filed have been distributed to the commissioners?

COMMISSIONER BOOKER: Yes.

MS. FRIERDICH: Okay.

COMMISSIONER BOOKER: Yes, we have all of that,

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


all of those materials.
MS. FRIERDICH: I'm just trying to catch up here. Thank you.
COMMISSIONER BOOKER: Okay. So then the County, call their witnesses.
MS. KAUFMAN: Yes. Before we proceed, we would like to take judicial notice of a couple of the ordinances and the charter provision that gives us authority to do what we're doing today. That would be judicial notice of St. Louis County Charter Article VII, Section 7.020; St. Louis County Ordinance 15,154; St. Louis County Revised Ordinances Section 202.100; and I believe the three civil service rules that have been mentioned in anybody's pleadings thus far are Rule 19, Rule 21, and Rule 22.
MS. FRIERDICH: I would add to that Rule 20. Otherwise, I have no objection.
MR. GOLDKAMP: Can we have a motion to take judicial notice of those ordinances and rules of the County?
COMMISSIONER BOOKER: I will make that motion.
COMMISSIONER HOFFSTEN: I'll second.
COMMISSIONER NUNN: Second.
COMMISSIONER HOFFSTEN: All those in favor?
COMMISSIONER BOOKER: Aye.


COMMISSIONER NUNN: Aye.
COMMISSIONER HOFFSTEN: Aye.
All of the preliminary issues have been resolved, so -- and that is what is on the record for all of the motions and all of the exhibits and findings of fact.
So, Commissioner Booker, are we --
COMMISSIONER BOOKER: Yes.
COMMISSIONER NUNN: -- as we're accepting all of those, and as they're resolving, may we have the County call its first witness?
MS. FRIERDICH: May I ask, is there a portion of this hearing at which there are either opening or closing argument opportunities, or do we need to request those?
COMMISSIONER BOOKER: I see nothing in here that -- I don't see anything that -- that calls for that. I don't see anything that calls for that. But it doesn't -- there's nothing that prohibits it -- prohibits it either.
MR. GOLDKAMP: No, there's nothing that prohibits it. Is that an official request, Ms. Frierdich, for the Commission to consider?
MS. FRIERDICH: Yes. Thank you.
COMMISSIONER BOOKER: Do you all see a problem


with that, Commissioners?
COMMISSIONER HOFFSTEN: I don't see a problem with it as long as we keep the hearing moving along.
COMMISSIONER BOOKER: One minute -- do they a minute or how long?
COMMISSIONER NUNN: Yeah, if -- do you have a chance to share the screen, is that my understanding?
COMMISSIONER BOOKER: No. She wants to have an opening statement and a closing statement?
COMMISSIONER NUNN: Okay. I misunderstood. That's fine.
COMMISSIONER BOOKER: With a limit of how long? What is reasonable?
MS. FRIERDICH: I need five minutes.
COMMISSIONER BOOKER: Three minutes?
MS. FRIERDICH: Five. It might be three. I do talk fast, so.
COMMISSIONER BOOKER: I think three is reasonable. I am working.
COMMISSIONER HOFFSTEN: Yeah, I think that three is reasonable.
COMMISSIONER BOOKER: I move to allow them to have -- they each have three-minute opening statements and closing statements?
COMMISSIONER NUNN: Second.


COMMISSIONER BOOKER: All of those in favor?
COMMISSIONER HOFFSTEN: Aye.
COMMISSIONER NUNN: Aye.
COMMISSIONER BOOKER: Okay. Would the County like to have an opening statement?
MS. KAUFMAN: Sure.
COMMISSIONER BOOKER: Okay.
MS. KAUFMAN: Thank you.
OPENING STATEMENT ON BEHALF OF THE RESPONDENT
MS. KAUFMAN: Good afternoon, Commissioners, and it is indeed now afternoon. Thank you for your time. Today you will hear that on February 5th, 2026, Duane Pete Wyatt resigned. You'll hear how much that shocked his supervisor, Derrick Melton, and that it was all the more striking because of just how Mr. Wyatt resigned. At the end of a minute-long phone call in which he repeatedly cursed Mr. Melton, he said, and I quote, "I fucking quit," and he said it more than once. And then he hung up the phone. But Mr. Melton had heard enough to conclude that Mr. Wyatt meant precisely what he said.
You'll hear how he called Dr. Cunningham, his appointing authority, and told her what happened right then and there the minute Mr. Wyatt got off the phone. And after that conversation, Dr. Cunningham

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 29

had also heard enough to reasonably believe Mr. Wyatt had resigned.

And while our civil service rules provide that a resignation in good standing must be in writing and requires 14 days' notice, Mr. Wyatt is not the first DPH employee to make a verbal resignation. In this instance, Dr. Cunningham accepted.

What you will not hear is that Mr. Wyatt ever attempted to rescind that resignation from the moment it occurred until the moment Dr. Cunningham's executive assistant communicated her acceptance. Mr. Wyatt will tell you that he never said it at all. But at the close of this hearing, I anticipate you too will have heard enough to draw your conclusion regarding the propriety of Mr. Wyatt's resignation under our civil service rules.

That's all I've got to start with.

COMMISSIONER BOOKER: Call your first witness.

MS. KAUFMAN: Yes, thank you. We'd like to call Derrick Melton.

MS. GOEN: Give me just a little bit of time to coordinate.

MS. KAUFMAN: Okay. Thank you.

(WHEREUPON, Derrick Melton entered the proceedings.)

Page 30

MS. GOEN: Okay. I believe he has arrived.

COMMISSIONER BOOKER: Okay. Would you like to begin?

MS. KAUFMAN: Yes. Can you hear us, Derrick?

MR. MELTON: Yes. I'll start my video.

MS. KAUFMAN: Yeah, I don't think we can see you yet.

MR. MELTON: Okay. I'll --

MS. KAUFMAN: Oh, yeah.

DERRICK MELTON,

called as a witness herein, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. Derrick, could you state your full name for the record?**

A. Yes. Derrick Melton.

**Q. And for our court reporter's benefit, could you spell that out?**

A. Yes. D-e-r-r-i-c-k for Derrick, Melton, M-e-l-t-o-n.

**Q. Okay. And, Derrick, what is your position with the County?**

A. Chief executive officer.

**Q. And what branch of DPH is that position**

Page 31

**associated with?**

A. The clinical umbrella. I manage the Federally Qualified Health Center.

**Q. To whom do you report?**

A. Dr. Cunningham.

**Q. Okay. And as of February 5th, 2026, did you have any direct reports to you?**

A. Yes.

**Q. Who were they?**

A. Five people. Sharon Foote, Eugenia Pike, Dr. Patrick Miller, Michael Ladevich, and Pete Wyatt.

**Q. And what was Mr. Wyatt's position?**

A. Chief operating officer.

**Q. Could you tell the Commission a little bit about the job duties associated with that position?**

A. Sure. He -- Mr. Wyatt managed all of the operations. The majority included our financial grants. A lot of times he would also focus on the nonclinical care as well as the clinical piece as well.

And what I mean by that is indirectly, he supervises the nurses, the registration staff members, and a few more other members on our team as well. So he was over the entire clinical operational enterprise, in summary.

Page 32

**Q. And as of February 5th, were you generally satisfied with his performance?**

A. Absolutely.

**Q. Okay. Were you having any -- any difficulties whatsoever with the position?**

A. No.

**Q. What were the steps, if any, you took with Mr. Melton -- sorry, Mr. Wyatt to check in about his job performance?**

A. We would often have meetings, standing meetings, at least once a week, standing meetings for sure. Sometimes we would meet, you know, quite more frequently than that, but we definitely had standing meetings once a week.

Mr. Wyatt, from my understanding, he come from a background of not-for-profit care. He didn't have a lot of experience in FQHC clinical work, so we spent a lot of time prioritizing his daily task and obviously his weekly task to get him caught up to speed for the FQHC Look-Alike program.

**Q. Okay. And were you pursuing -- as of February 5th, were you pursuing any discipline against Mr. Wyatt?**

A. No.

**Q. Were you pursuing Mr. Wyatt's termination?**

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 739 of 1127 PageID #: 742

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


A. No.
**Q. Were you investigating any alleged conduct of Mr. Wyatt's?**
A. No, not that I can remember, no.
**Q. Okay. So in the course of this workplace relationship, have the two of you had some disagreements?**
A. Yeah, we've had a few disagreements.
**Q. Okay. In any of these disagreements, has Mr. Wyatt ever cursed at you?**
A. No.
**Q. So I'm going to take you to February 5th.**
A. Um-hum.
**Q. Can you tell me about your interactions with Mr. Wyatt, if you had any, on that day?**
A. Yes. So I called Mr. Wyatt roughly around four times on his cell phone to get some information from him. I also texted him a few times. And it's my understanding he was busy or he was preoccupied with something else.
And he finally called me back, and I asked him, did he get my phone calls, did he get my text messages; and he said yes. The information that I needed from him at that time was related to how many positions reported to him. That was the question at


hand. And he responded something back to the nature of a number that he thought, and I needed him to be more accurate. And I asked him that question, and he -- that's when things essentially went south.
**Q. Okay. So how many -- you said you called Mr. Wyatt about four times.**
A. Um-hum.
**Q. In what space of time?**
A. I would probably say anywhere between 9:00 and 9:30-ish.
**Q. Okay. And at what point did he call you back?**
A. It was probably about 30 to 45 minutes or so after.
**Q. So 9:30?**
A. Yeah, roughly, ish, yes, that's fair to say.
**Q. Okay. And when you picked up the phone, can you describe for me Mr. Wyatt's demeanor?**
A. It was very vague. I asked him did he get my text, and he said yes, he was in a meeting. And he -- and I said, I also got your text, but I needed more detailed information of the -- of the question that I asked you.
And his demeanor at that time got very


rogue. He began to, you know, say curse words and ask me questions as it relates to the -- to the statement or the questions that I was asking him.
**Q. Okay. And I know we have our -- our politenesses, but can you recall which words he used?**
A. Yeah, I was trying to be a little vague there, and, again, I apologize up front for the audience. But I particularly asked Mr. Wyatt, did he get my text or did he get my call?
And he said yes.
And, again, as to rehash, I asked him, I need him to be more specific.
And he verbatim said, Derrick, what do you want me to do, I'm fucking driving.
And I said, Excuse me?
He said, I'm fucking driving.
And I repeatedly asked Mr. Wyatt who was he talking to, and he responded, I'm fucking talking to you.
And that's when I went into the situation of asking him, you know, basically what was going on, out of everything that I've done for him in terms of his role and his career was he going to talk to me like that.
He said, Absolutely, I'm fucking talking


to you. And he said, You know what, I just fucking quit.
And I said, So you quit? You're not returning?
He said, Yes, I fucking quit.
**Q. Okay. And that statement happened twice that you recall?**
A. At least twice.
**Q. Okay. And how did the conversation end?**
A. It was basically very short after that. After he said he fucking quit, I said, Well, if you quit, then I accept your resignation.
And we hung up.
**Q. All right. Now, can you tell me anything else about Mr. Wyatt's tone of voice or demeanor such as you recall?**
A. Yes, his demeanor was very, I would say, he was loud. I could tell he was very aggressive or what would come off to be aggressive to me. I heard him beating, what seems to be beating on the steering wheel as he would say he fucking quit. He was screaming erratically, not any words to me at that particular time, but just yelling as if, you know, he was irritated at something or, I would imagine, the situation that was happening.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 37

**Q. Yeah, and I understand you are describing what you heard as opposed to saw.**

**Okay. Is there any chance you misheard?**

A. No. In fact, I asked him more than once who was he talking to. I did give him the benefit of the doubt that maybe he was talking to someone else in the background or per se, but he -- he doubled-down, that I'm fucking talking to you.

**Q. Okay. What did you do after the phone call?**

A. I merely called Dr. Cunningham.

**Q. And what did you communicate to Dr. Cunningham?**

A. That we just had a verbal resignation and Mr. Wyatt -- she asked me, What happened. At that particular time, I told her it was a very heated conversation. I gave her very minor but major details, and she was saying, that's very unfortunate. And she accepted it.

**Q. Okay. Did you have any more contact with Mr. Wyatt on that same day, February 5th?**

A. Actually, I did.

**Q. Okay. And what was that? Was that phone again or in person, or how did that happen?**

A. Yeah, it was in person. He came to my

Page 38

office. And as soon as he came in, I essentially asked him something similar to the nature of, Why are you here. You said what you said, and I accepted your resignation.

And he repeated and said, You're not going to do this to me, per se.

And I asked him what he said.

Well, you know what's going on with me and my family.

I said, Well, Mr. Wyatt -- at that particular time it was probably "Pete." I said, Well, Pete, you quit.

And he said, You're not going to do this to me.

I said, Well, Pete, you did it to yourself. You resigned.

And I asked him to leave my office, and he did.

**Q. Okay. And about what time was this?**

A. I would probably say about 45 minutes after we initially hung up from the first conversation, so 9:30 plus another 30, 45 minutes on top of that. So roughly 10:15-ish or so.

**Q. Okay. And during the course of that conversation, did Mr. Wyatt deny having resigned?**

Page 39

A. No.

**Q. Did he ask you what you were talking about?**

A. No.

**Q. Did he ask you any questions at all?**

A. No, not really.

**Q. And when he left the office, was it still your belief that he had resigned?**

A. Absolutely.

**Q. Did you speak to Mr. Wyatt any more about this, either on February 5th or after?**

A. No.

**Q. Did you speak to Dr. Cunningham again about it?**

A. Yes.

**Q. Okay. And what was the purpose of that conversation?**

A. Just to rehash what happened. I also asked her did I need to do anything else from a resignation standpoint, and she told me that obviously she wanted me to make documentation and she would take it from there.

**Q. Okay. Had Mr. Wyatt ever cursed at you before?**

A. No.

Page 40

**Q. To your knowledge, had he ever wanted -- mentioned wanting to quit before?**

A. No.

**Q. Joked about quitting?**

A. Nope.

**Q. Did you have any reason to believe he didn't mean what he said?**

A. No. He was very, very honest and very open. It was very clear. And even, in fact, I asked him multiple times, A, who was he talking to, what's going on. I mean, he -- he repeated himself several different times in that manner.

**Q. Okay. I don't have any further questions for you at the moment, Mr. Melton.**

A. All right. Thank you.

CROSS-EXAMINATION

BY MS. FRIERDICH:

**Q. Okay. Hi, Mr. Melton. My name is Katherine Frierdich, and I represent Pete, Mr. Wyatt, in this appeal. I do have a few questions for you.**

A. Okay.

**Q. You -- would it surprise you that Mr. Wyatt was told by someone at the County that he supposedly resigned while talking to you in person in your office versus how you described it happening?**

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


A. Yes. That would be a surprise to me.
**Q. Okay. So when you were calling Mr. Wyatt, 9:03 is when it started, he was in a meeting and he told you that he had been in a meeting. You texted him and asked him that -- how many direct reports did he have, is that correct?**
A. No, that's not correct.
**Q. What did you text him?**
A. It was more so when you said he told me that he was in a meeting. He did not tell me when he was in a meeting.
**Q. So you did not ask him over text how many direct reports does he have?**
A. I did.
**Q. You did ask him, okay. And that was the question that you had, is that correct?**
A. That is correct, yes. I'm sorry.
**Q. Okay. And Mr. Wyatt told you, I'm in the middle of a meeting wrapping up, is that correct, by text?**
A. I don't remember.
**Q. And then by text, he said six direct reports --**
A. Yes.
**Q. -- but that he would like to confirm to be**


**certain?**
A. Yes.
**Q. Okay. And that was your question, that was your only question to him, "How many direct reports you have?"**
A. Yes.
**Q. Okay. And you have access to the org chart, don't you? You knew he was in a meeting. You do, it was hanging on your assistant's wall, hanging on Mr. Wyatt's wall. It was available on your -- on your internet. You could have called HR, right?**
A. Is that a question?
**Q. Yes. There were those places that you could have confirmed how many direct reports Mr. Wyatt had?**
A. Possibly.
**Q. Possibly?**
A. Um-hum.
**Q. Do you know whether or not you could look up his organizational chart in some way online?**
A. Yes. Mr. Wyatt is the chief operating officer. He has the option to -- in certain situations to change his org chart as he sees fit.
**Q. Okay. So you say that he quit verbally on the phone?**


A. Yes.
**Q. And then came to the office and visited your office?**
A. Yes.
**Q. You had a conversation. Did that conversation -- was that conversation loud and curse-ridden?**
A. No, I don't think any curse words were exchanged during that time.
**Q. How long did that conversation last?**
A. If I had to put a time limit on it, I would say approximately two minutes.
**Q. Okay. And you say on the phone, just backing up to when Mr. Wyatt was in the car, you said, So you're not returning?**
A. I didn't -- I don't recall saying that.
**Q. Okay. I believe you just testified that you asked him, So you're not returning? And then you said, If you quit, I accept your resignation.**
**That's not your testimony?**
A. I asked Mr. Wyatt did he resign and he said yes.
**Q. Okay. You mentioned that you immediately called Dr. Cunningham after that phone call, correct?**
A. Correct.


**Q. Okay. And you asked her in that -- in that conversation or in later conversation what documentation needed to happen?**
A. When I called Dr. Cunningham, I asked Dr. Cunningham -- well, I told her obviously what just happened, and I basically asked her what were next steps.
**Q. And what did she say the next steps were?**
A. She told me in that particular time that she would get back with me, and she did and that's when we later said that I would definitely need to document it; obviously I had already done so, but send it to her.
**Q. Okay. When -- did you ask Mr. Wyatt to put his resignation in writing?**
A. No.
**Q. Are you familiar with the civil service rule relating to resignations?**
A. Yes.
**Q. Did you review those at the same contemporaneous time as what we're talking about?**
A. No. Mr. Wyatt verbally said that he quit. I didn't have any -- in my mind he wasn't coming back.
**Q. I see. Are you aware that Mr. Wyatt worked the rest of that day, came to the office, I**

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 45

**believe it was 9:50. Would that sound about right when he came to the office?**

A. Ish, yeah.

**Q. In the morning?**

A. (Nodding head.)

**Q. Did you know that Mr. Wyatt was continuing to work the remainder of that day?**

A. I did not know.

**Q. You did not see him?**

A. I saw him. I didn't know what he was doing.

**Q. And you didn't stop him and say, Why are you here, you quit?**

**Did you ever do that?**

A. Yes, when he came to my office.

**Q. What about when you saw him later?**

A. I don't recall seeing him too much later the rest of the day.

**Q. When did you see him?**

A. When he came to my office.

**Q. After he --**

A. He said he quit.

**Q. After he left your office, you indicated that you saw him at the office, he was there all day? Is that correct?**

Page 46

A. I can't confirm if he was or not.

**Q. When is the next time you saw him after he left your office?**

A. I don't remember.

**Q. You remember seeing him though at the office?**

A. Absolutely. I remember him coming to my office, and he stated my testimony earlier and that was it. Any other recollections or conversations or was he in the office or was he in the building, I can't speak to that.

**Q. Okay. You're aware that Mr. Wyatt worked on February 6th, which is the next day, correct?**

A. I was not aware.

**Q. You saw him on February 6th, correct?**

A. I saw him in the parking lot, correct.

**Q. And Mr. Wyatt tried to get your attention, correct?**

A. I saw him in the parking lot. I don't know if he signaled and tried to get my attention or not, but I did see him in the parking lot.

**Q. Okay. Did you say to him, What are you doing here, you quit?**

A. No.

**Q. Have you ever used the F-word in**

Page 47

**conversations in the office before?**

A. In the office, I don't remember.

**Q. Have you ever used it in connection with any conversation with anyone who works for the County?**

A. I don't remember.

**Q. Did you -- Mr. Wyatt's office is across the hall from yours, right?**

A. Correct.

**Q. So would you say that Mr. Wyatt's office remained the same during the rest of the day of the 5th? It remained untouched?**

A. Yeah, probably untouched.

**Q. Did you see his office on the 6th?**

A. Yes.

**Q. Was it in the same condition?**

A. I had no reason to go to his office.

**Q. Was Mr. Wyatt's personal effects in his office on the 5th when you saw it?**

A. I'm not sure. I didn't go in his office. I did not enter inside of his office those days.

**Q. Did you receive any emails or text messages after the point that you say that you accepted his resignation from Mr. Wyatt?**

A. Yes, I did.

**Q. Can you describe them?**

Page 48

A. I'll have to pull them up.

**Q. Pull both emails and text messages?**

A. Text message. He asked me -- he asked me something to the nature of, If you need me to help on an assignment.

But if you need accuracy in that statement, I'm happy to provide it.

**Q. And that was on the morning of the 6th, correct, the day after you say he quit?**

A. I don't remember. I don't have them in front of me right now.

**Q. Okay. So more than one text is what you recall?**

A. I don't have that in front of me right now.

**Q. Okay. Well, when you received those text messages from Mr. Wyatt, did you respond, Why are you texting me about work when you quit?**

A. I did not.

**Q. Okay. Did you see that Mr. Wyatt's email account was disabled after he quit and you accepted his resignation?**

A. Did I ever see that his email account was disabled?

**Q. He reported to you, correct?**

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 49

A. Correct.
**Q. So if he quit in a curse-laden rage where he is pounding on the steering wheel and screaming at you, did you call HR?**
A. I talked to Dr. Cunningham, which is the appointed authority.
**Q. Did you call HR about his email account, phone, ability to continue County business?**
A. I did not. I talked to Dr. Cunningham about the next steps, and those would have been the things that I assumed that she had taken when I talked to her about next steps.
**Q. Your assistant is Gina, what is her last name?**
A. Pike.
**Q. Pike. Thank you. Eugenia, right?**
A. Yes.
**Q. She goes by Gina, correct?**
A. Yes.
**Q. Okay. Did Gina tell you that she spoke with Mr. Wyatt after he spoke with you on the 5th in the car?**
A. I don't remember.
**Q. There is a -- I'm missing the last name, I'm not as familiar with the people in your office.**

Page 50

**There's someone with the last name Miller, correct?**
A. Patrick Miller, maybe.
**Q. Did -- did Mr. Miller indicate that he spoke with Mr. Wyatt after you spoke with him on the phone on the way into the office on that morning?**
A. I had no conversation with Dr. Miller. If you are referring to Dr. Miller, I had no conversations with him.
**Q. Did anyone indicate to you that they had spoken with Mr. Wyatt after the yelling, cursing, beating the steering wheel conversation happened with you when he was on the way to the office?**
A. I don't remember.
**Q. Okay. You never received anything in writing from Mr. Wyatt indicating that he had resigned his position, is that correct?**
A. No -- correct, I'm sorry, I did not receive anything from Mr. Wyatt.
**Q. And you're aware, because I believe you were copied on several emails, in which he denied that he ever resigned, is that correct?**
A. I was copied on one email.
**Q. Were you asked to sign a -- an affidavit after -- at some point after the phone call on the 5th?**

Page 51

A. No.
**Q. Were you interviewed by anyone other than counsel and the two conversations that you mentioned with Ms. Cunningham regarding this incident that you have testified to today?**
A. No.
**Q. Was there any, to your knowledge, any investigation performed regarding the conversation that you have relayed to the Commission today?**
A. Can you explain "investigation"?
**Q. Yes. Did anyone investigate whether or not Mr. Wyatt resigned?**
A. Counsel did. Counsel asked me to give all communication --
**Q. I'm not asking about your conversations with counsel. Anything outside of conversations with counsel. Those are privileged. I'm not asking you to tell me anything about that.**
**Did anyone else to your knowledge other than counsel --**
A. Not to my knowledge.
**Q. And -- but you said that you were really shocked that this high performer, Mr. Wyatt, resigned so suddenly on the morning of February 5th, correct?**
A. It was odd.

Page 52

**Q. Did -- did you think that that required a further conversation, investigation, written confirmation from Mr. Wyatt?**
A. After me asking him several times on the phone, as I remember, who was he talking to, was he okay, and he doubled-down and he continued to say the things that he said, I didn't think so.
**Q. Were there any witnesses to the conversation that you've testified to?**
A. Not on my end.
**Q. You conduct business on your personal cell phone through the County, correct, text messages, phone calls, emails, any of those?**
A. I don't know.
**Q. You don't know?**
A. I mean, I don't know. What do you mean by do I conduct business?
**Q. Do you use your personal cell phone to text about County business?**
A. I don't know. Maybe, maybe not. I don't -- I can't answer that question.
**Q. You testified that you documented everything and you sent it to Dr. Cunningham, is that correct?**
A. Yes.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 53

**Q. Who else?**
A. Well, I take -- give me one second, please.
**Q. Okay.**
A. I sent -- I actually sent the information to Sharon Gardner.
**Q. Not Dr. Cunningham?**
A. I sent the -- I sent my statement to Dr. Cunningham of what happened, that is correct.
**Q. And so what did you send to Sharon?**
A. Conversations that -- I mean, I'm sorry, screenshots that a conversation actually happened.
**Q. What screenshots?**
A. What do you mean what -- oh, what screenshots I sent or what screenshots in general?
**Q. What screenshots did you send to Sharon?**
A. I sent her, as I remember, phone calls, phone call logs for sure.
**Q. Did you send anyone else your statement or screenshots or any other information regarding the conversation that you allege happened?**
A. Outside of the -- outside of counsel, I don't remember, no.
**Q. Okay. You said that you had no problems with Mr. Wyatt's work, correct?**

Page 54

A. No.
**Q. Did you ever review him?**
A. We met every Friday -- well, we had a standing meeting every Friday. Sometimes they were earlier in the week, sometimes they were later in the week, but that was my time to review all of his standard work.
**Q. What projects did Dr. Wyatt -- or Mr. Wyatt have in flight at the time of this supposed conversation?**
A. I know we were really working in honest -- in earnest, I'm sorry, about physicians and their operational schedules. There were staffing patterns that we were particularly working on in terms of nursing, how many employees and how many care team members did we have per site; and we were also gearing up to work for -- work towards our OSV, which is short for on-site visit.
**Q. Okay.**
A. And there -- there may be more, but I would have to review the list.
**Q. You published Mr. Wyatt's role as a job description to be filled, correct?**
A. Correct.
MS. FRIERDICH: So at this time because we asked

Page 55

for documentation and it sounds like the statement by Mr. Melton and the screenshots were not produced to us, we ask for those to be produced at this time.
And that's all I have for you, Mr. Melton.
THE WITNESS: Thank you.
MS. FRIERDICH: Ms. Kaufman might have some redirect, but thank you for your time. Appreciate it.
THE WITNESS: Absolutely.

REDIRECT EXAMINATION

BY MS. KAUFMAN:
**Q. Thank you. I'll be real quick with you, Derrick. I promise.**
A. Sure. Take your time.
**Q. So -- well, I don't want to take everybody else's either.**
A. That's fair.
**Q. So you were asked a moment ago whether you contacted HR or made arrangements to have Mr. Wyatt's badge taken or his email account shut off.**
A. Um-hum.
**Q. Would that be your normal practice for an employee who resigns?**
A. Yes. What do you -- well, let me go back. Would it be the normal practice for me to contact them?

Page 56

**Q. Yes. Are you the one who has to do it normally?**
A. No. Dr. Cunningham.
**Q. Okay. And what about making the formal acceptance of a resignation, is that normally something you do unilaterally or something Dr. Cunningham does?**
A. No, I don't do it unilaterally. That's something Dr. Cunningham does as the appointed authority.
**Q. So did you feel you had anything left to do --**
A. No.
**Q. -- after contacting her and hearing, I'll take it from here?**
A. Absolutely, I feel like there was -- that was my point in asking her. I agree with you, I didn't feel like I had anything else to do.
**Q. Okay. And just to clarify, you met with Pete once when he returned to the office on February 5th, is that correct?**
A. That's correct.
**Q. Did you have any further interaction with him on February 5th or February 6th?**
A. No.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM



**Q. Other than seeing him in the parking lot?**
A. That is correct.
**Q. Okay. Thank you.**

RECROSS-EXAMINATION

BY MS. FRIERDICH:
**Q. I just have a couple of questions. You're able to see Mr. Wyatt's schedule, are you not, his calendar?**
A. Able to see it, yes, if I requested it. I don't have -- I never had access to his schedule. In fact, I did go to his admin assistant to look at his schedule. And there were -- at the time that I looked at it, along with Ms. Eugenia Pike, there was nothing on his schedule for that morning.
**Q. And you're talking about the meeting that he was at on February 5th, the morning of February 5th?**
A. Correct, the morning of February 5th. And he never told me he was at a meeting. He told me per se, I was at the podium.
So whatever that means. Maybe that's a meeting to him, but those were the words he gave me, "I was on the podium."
**Q. Okay. When you saw Mr. Wyatt in the office on the 5th, did you inquire about what his**



**schedule looked like, if he was having any meetings, conducting County business after he supposedly quit?**
A. He stated he was on the podium, and he mentioned, as I recall, he was doing something for me. I didn't really engage in that because at the time it really wasn't about where he was or what -- where he wasn't per se. It was more so about getting me the information, but furthermore, it was about how he conducted himself, telling me he fucking quit.
**Q. Right. I'm actually referring to later on after -- after your conversation in your office --**
A. Um-hum.
**Q. -- when you were aware he was in the office after he supposedly quit. And he quit in a what you're describing to be a curse-laden shouting, beating the steering wheel situation, but it didn't concern you to check his schedule, see what he's up to, why he's in the office after he quit?**
A. It was my understanding given the hostility of the conversation, I was under the assumption that, you know -- I'm not going to -- I'm definitely not going to say I was fearful or anything, but given the hostility of the conversation, it was in my best interest to stay away from Mr. Wyatt.
And to be quite honest, when I saw him



come in, I actually thought he was gathering his stuff, in which that was his right.
**Q. I think you said you saw him later on in the day, you knew he was there later on in the day?**
A. Well, we're referring back to when you asked me the question the first time.
**Q. Okay.**
A. Yeah.
MS. FRIERDICH: That's all I have.
THE WITNESS: Okay. Thank you.
MS. FRIERDICH: Thank you, I appreciate it.
MS. KAUFMAN: Nothing further.
THE WITNESS: Okey-doke.
MS. GOEN: Okay, Derrick, I am working to remove you. Give me one moment.
(WHEREUPON, Derrick Melton left the proceedings.)
COMMISSIONER BOOKER: Does the County have any other witnesses?
MS. KAUFMAN: Yes. We'd like to call Eugenia Pike next. And -- yeah, I think she is listed as DPH WebEx Event 1.
MS. GOEN: Thank you.
Okay. So it sounds like in open session we have two users with the DPH WebEx 1, both names, so



we are adding one. We'll have to confirm whether or not it is Ms. Pike or not.
MS. KAUFMAN: Okay.
(WHEREUPON, Eugenia Pike entered the proceedings.)
MS. GOEN: Okay. So we were looking to add Eugenia Pike. I do see that we have a DPH account in here. You are currently on mute, but could you confirm whether or not we have got the right person?
MS. PIKE: Yes, this is Eugenia.
MS. GOEN: Perfect. Thank you.
MS. KAUFMAN: Ms. Pike, I know you're not feeling tip top, and I appreciate you being here. Are you able to turn your calendar on?
MS. PIKE: I have not been able to turn it on. I'm not sure why. It is not even giving me the option of a video. Let me try it again.
(Discussion off the record.)
MR. GOLDKAMP: If you could swear Ms. Pike in, that is the usual procedure.
(WHEREUPON, the witness was duly sworn.)

EUGENIA PIKE,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 61

DIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. Thank you. Could you state your name for the record?**

A. Eugenia Pike.

**Q. And for our court reporter, could you spell it?**

A. Sure. E as in Edward, U, G as in girl, E as in Edward, N as in Nancy, I, A as in apple.

Pike, P as in Paul, I as in Igloo, K as in kite, E as in echo.

**Q. Okay. And if you need at some point to take a break today, please let us know, okay?**

A. Thank you.

**Q. What is your position title?**

A. Office supervisor for the FQHC Look-Alike.

**Q. And how long have you worked in that position?**

A. A year and -- about a year and four months, I do believe.

**Q. And what does that job involve?**

A. What does it involve?

**Q. Yes.**

A. My daily work usually consists of just supervising at the executive level of the FQHC, so I

Page 62

work closely with the senior leadership for the FQHC.

**Q. Okay. And would that include both Mr. Melton and Mr. Wyatt?**

A. Yes, uh-huh.

**Q. Okay. Now, if you had any, can you recall your interactions with either or both of those people on February 5th?**

A. Yes, I had interactions that day with both. Do you want me to -- where do you want me to start?

**Q. Let's start at the beginning. When did you first see Mr. Melton that day?**

A. As soon as he came in, I guess there was some urgency, so he -- he hadn't even taken his coat off. He was just asking if Pete was there, and we indicated that he wasn't -- we hadn't seen him. So Kathy and I were together, so he asked us to go search for Pete, try to contact him.

**Q. Okay. And can you describe Mr. Melton's demeanor for me?**

A. It was normal. He -- he just -- just needed to talk to Pete. He wasn't, like, rushing or anything like that. He was -- he was just his normal self.

**Q. Did you get the sense that he was angry?**

Page 63

A. No, no, he wasn't angry, no, not at all. Even during all of the time that we were looking for Pete, he and I are kind of joking about things, about Pete and, you know, like, you know, Pete's out doing other things a lot of times. And we always cracked jokes about it with him, so we were just laughing about some of those things.

**Q. Okay. And just to clarify, did you personally witness any conversation between the two of them that morning?**

A. No.

**Q. Okay. Did you hear from Mr. Wyatt later that morning?**

A. Yes. I -- we -- when we tried to contact him, I -- Kathy and Derrick, we -- well, we actually went to look and see if he had, like, a meeting on his calendar or something like that, you know, to where he couldn't be disturbed.

So Kathy showed us his calendar, and since there was nothing scheduled at that time, we -- I called him. He didn't answer. So I -- I sent him a text message just letting him know that Derrick needed to speak with him.

**Q. Okay. Did Mr. Wyatt ever call you back?**

A. He -- he did call. He did call maybe like

Page 64

five minutes later or something like that.

**Q. Okay. Do you recall what he said?**

A. Yeah, he was a little upset. He asked what the hell was wrong with Derrick, and he asked if I knew what Derrick was looking for or why he was looking for him. And I told him I didn't know, and I didn't want to actually -- I didn't want to talk about it, so I just kind of left it at that.

**Q. Okay. Did you see Mr. Wyatt in person that day?**

A. I saw him when he came in. He -- he stopped at my desk for a minute. He was just trying to show me that he did have something scheduled on his calendar. I informed him that that's not what was -- you know, that's not what we saw, and I just -- I just kind of left it at that. I talked to him to let him know that, you know, we -- we, you know, weren't trying to pry, you know, his privacy or whatever. It's just that Derrick needed to speak with him.

We did check the calendar. Like, if you were in a meeting, you know, we were not going to interrupt you or anything like that, but your calendar showed you were free, so that's why, you know, you got phone calls from both of us.

**Q. Okay. Did you have any more conversations**

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM



**with him that day?**

A. Yeah. So I work closely with him, so working on different things throughout the day, all day until time to go home at 4:30. He talked to me throughout the day about, you know, just different work products and stuff like that.

**Q. Did he mention Mr. Melton again?**

A. Yes, he -- he kept saying he needed to apologize to Derrick and that he wanted to talk to him face-to-face. Again, I didn't dwell on -- I didn't want any information about it. I did not know what happened, and I -- I was just kind of staying out of it. I didn't -- I just said if you need to talk to him, go ahead. You know, their offices are across from each other. So I just kind of kept my distance from it. I didn't know until the next day that -- what -- what actually happened. I was not aware.

**Q. Okay. So I do have to ask, at any point during your working relationship with Mr. Wyatt, had you witnessed him becoming upset or angry?**

A. Yeah, I have. I have.

**Q. Did that ever involve foul language?**

A. Yes.

**Q. Is there any incident in specific that you can tell me about?**



A. Well, when, let's see, that was in maybe January of '25. I think that might have been the first time I saw him actually get angry. He -- we were in the middle of prep for the -- our HRSA -- the HRSA site visit. To actually gain the FQHC designation, the federal government comes on site and does a site visit to check and see if you're compliant with all of their guidelines in order to become a Look-Alike site.

**Q. Okay.**

A. So -- so part of that site visit, they require us to actually upload documents and things, and so we had received an email stating that the things that we submitted were not right, incorrect. And so we all wind up working until like 6 o'clock that night, and Pete was upset because he was already gone and had to come back into the office.

**Q. Do you remember the language he used?**

A. Yeah.

**Q. I'm going to ask you to put your politeness aside and quote it for us just the once.**

A. He stated that this was bullshit, and he was just swearing and mad. But I just told him, you have to take that up with Derrick. Don't -- I don't want to hear it. Just take it up with Derrick. I



don't want to hear it, so.

**Q. And did you wind up reporting that incident to anybody?**

A. No, no. Only the people in the room actually heard it.

**Q. Okay. All right. I think that is all I have for the moment. I think Ms. Frierdich may have some additional questions for you, if you stay on the line.**

A. Okay.

CROSS-EXAMINATION

BY MS. FRIERDICH:

**Q. Hi, Ms. Pike. I'm Katherine Frierdich, counsel for Pete Wyatt. Thanks for being here. I understand you're not feeling well, so thank you especially for your time.**

**Just to -- just to back up a little bit, you spoke with Mr. Wyatt on the morning of February 5th while he was driving into the office, correct?**

A. Yes.

**Q. Did he use the F-word in his conversation with you?**

A. Yeah, he was -- he was swearing. He was just asking, like, what the is wrong with Derrick or,



you know, whatever. I didn't really want to -- I know when he gets mad -- I can tell when he is mad. So when he gets mad like that, I don't really like to engage.

**Q. Did he tell you that he quit his job?**

A. No, he did not.

**Q. Did he ever tell you that he quit his job on February 5th as you were working together?**

A. No.

**Q. Have you ever heard him say "I quit"?**

A. No.

**Q. So you did not witness the conversation between Mr. Melton and Mr. Wyatt on the morning of February 5th?**

A. No.

**Q. And were you ever asked to sign an affidavit relating to this situation?**

A. An affidavit?

**Q. Yes.**

A. I -- I was told to give a statement. I don't recall signing an affidavit.

**Q. Okay. Who asked you to give a statement?**

A. I think Dr. Cunningham needed a statement of what happened that morning.

**Q. And you prepared a written statement**

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 69

**when -- when did you do that?**
A. I don't remember. I think it was -- actually, it was Friday. It was that Friday. I didn't sign an affidavit. I don't recall signing an affidavit. I just told -- like everything that I just said is what I told them.
**Q. What -- do you remember what time on Friday you drafted and submitted that statement?**
A. No. I was talking to Sharon Gardner in our office.
**Q. But you submitted a written statement?**
A. No. She took my statement on what happened that day.
**Q. Okay. What time was that on the 6th?**
A. I don't know. I can't remember. I can't remember what time it was. It was later in the day.
**Q. So afternoon, would you say?**
A. Yes, um-hum, yeah.
**Q. Okay. And Sharon Gardner is Dr. Cunningham's assistant, is that correct?**
A. Yes.
**Q. Okay. And was her counsel present, or was it you and just Sharon?**
A. Well, she was doing what's normal in incidents at work. She actually takes a statement

Page 70

from everybody involved.
**Q. Okay.**
A. It was just --
**Q. Just you and Sharon?**
A. Yeah, it was just me and Sharon, uh-huh.
**Q. Do you know anybody else who gave Sharon a statement?**
A. I don't know.
**Q. Okay. Did you see Mr. Wyatt leaving Mr. Melton's office on the morning of February 5th?**
A. No.
**Q. When you were working with Mr. Wyatt on February 5th, this was after the phone call when he was driving, was he agitated while working on the 5th?**
A. On the 5th he was just -- he just said that he -- he was feeling bad of -- from what happened with him and Derrick, and he just wanted to talk to him and apologize to him. That's -- that's what he kept -- he kept repeating to me that day throughout the day.
**Q. Okay. Did he say exactly what he wanted to say to Mr. Melton?**
A. The only thing he said to me was after -- after he got there and saw and understood everything that happened, he needed to talk to Derrick and

Page 71

apologize. He never told me what for. He just kept saying he needed to apologize.
And then later in the day after I cancelled their meeting, he just started asking me was Derrick angry with him. He kept asking me, Is he mad? He's mad Gina, isn't he mad?
And I told him, If Derrick is mad, he did not indicate that to me, because I didn't know Derrick was mad.
**Q. I see. How long did you work on the 5th?**
A. I'm sorry?
**Q. How late in the day were you at the office on the 5th?**
A. I think Pete and I left at the same time, 4:30.
**Q. Okay.**
A. Yeah, we did, because we talked on the way home, yep.
**Q. Okay. And then on the 6th, did you see Mr. Wyatt in the office?**
A. No, I did not.
**Q. Did you work with him at all over email or text message? Did you talk to him on the phone --**
A. Yes.
**Q. Did you have any interaction with him**

Page 72

**on -- on the 6th?**
A. Yes. I called him that morning. I can't remember what time it was. He wasn't answering, so I sent him a text. I just had questions in regards to another staff member. And eventually he called me back and he told me where he was, but I can't remember. And he told me that he had -- he just went over his day, like his meetings and things like that.
**Q. Okay. And you take care of Mr. Melton's calendar, correct?**
A. Yes.
**Q. And on the 5th, did you cancel a -- their weekly one-on-one meeting for the 6th?**
A. Yes. So that's when Pete really started asking if Derrick was angry with him. But I -- I -- I -- so Derrick had several meetings for the next day off site, and so that's why I thought he was cancelling.
**Q. Is it unusual that Derrick cancels the one-on-one meetings?**
A. Yeah, yeah. Like I said, he had -- I think that was -- they had Black history events in the community, and he was scheduled to speak at some of those. So he -- he -- yeah, he -- he needed to cancel the meetings. Well, he didn't tell me why. He just

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


said cancel the meeting for tomorrow. I just assumed it was for -- because he was going to be out in the public.

**Q. Was it unusual for Mr. Melton to cancel the one-on-one meetings with Mr. Wyatt?**

A. No, that's not unusual.

**Q. Okay.**

A. It's actually quite normal. So I think that's why I was kind of concerned when Pete started asking is Derrick angry. I didn't understand why he kept asking me that.

**Q. And so just to be clear, you did not witness any conversation between Mr. Melton and Mr. Wyatt in the office on February 5th?**

A. No. He just -- I guess after he talked to Derrick, he called me. And, again, this is normal, you know, he called -- he'll call me to get clarity on what Derrick needs from him or, you know, things like that, so. But he was -- when he was -- he was mad, so I didn't want to talk -- I don't talk to Pete when he is mad. I wait until he cools off, so.

**Q. And I think Ms. Kaufman asked you about one incident in which you said that Mr. Wyatt was angry.**

**Have you ever reported Mr. Wyatt being mad to a superior, to HR, ever?**



A. No.

MS. FRIERDICH: That's all I have for Ms. Pike.

Thank you so much for your time.

REDIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. A quick follow-up question.**

A. Okay.

**Q. Thank you.**

**Ms. Pike, you said that you did not witness visually Mr. Wyatt going in or out of Mr. Melton's office the morning of February 5th. Does that mean it didn't happen or just that you didn't see it?**

A. Just that I didn't see it.

**Q. Okay.**

A. So their offices are right across from each other, and mine is kind of down the way. So if they talked, I may not have seen it. I don't have, like, line of sight to their offices.

**Q. Okay.**

A. If that makes sense.

**Q. Yes. Thank you. I don't have anything more.**

A. Oh, okay.



MS. FRIERDICH: Thank you.

THE WITNESS: Is that it?

MS. KAUFMAN: Yes, ma'am. You are good to go rest.

THE WITNESS: Okay. Thank you. Thank you.

(WHEREUPON, Eugenia Pike left the proceedings.)

MS. GOEN: Okay. Ms. Pike has been removed.

MS. KAUFMAN: Okay. Could we bring in Ms. Gardner?

MS. FRIERDICH: Just for the record, I just want to request a copy of the statement given by Ms. Pike to Ms. Gardner, as it is not privileged and we did request documents. We were not provided them. Thank you.

MS. GOEN: You said Sharon Gardner?

MS. KAUFMAN: Yes.

MS. GOEN: Thanks.

COMMISSIONER BOOKER: County, do you have any other witnesses?

MS. KAUFMAN: We do have Dr. Cunningham, but I think that should be pretty brief.

COMMISSIONER BOOKER: Would you like to call her now?

MS. KAUFMAN: Well, we have Ms. Gardner, also hopefully quite brief.



COMMISSIONER BOOKER: Who would you like to call now?

MS. KAUFMAN: Sharon Gardner, please.

(WHEREUPON, Sharon Gardner entered the proceedings.)

COMMISSIONER BOOKER: It looks like she's in here now?

MS. GOEN: No, we're working on it.

COMMISSIONER BOOKER: Oh, it looks like she's in here.

MR. GOLDKAMP: Mary Gardner is --

COMMISSIONER BOOKER: Oh, that's a different Gardner. I see.

MR. GOLDKAMP: They are two different people.

COMMISSIONER BOOKER: A different Gardner, yes.

MS. GOEN: Okay. But we do now have Sharon. Can you hear us?

MS. GARDNER: I can hear you. Can you hear me?

MS. GOEN: You're a little quiet, but I can hear you.

MS. GARDNER: Okay. Let me turn my volume up a little bit.

(WHEREUPON, the witness was duly sworn.)

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 77

SHARON GARDNER,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. Ms. Gardner, could you spell your name out for the court reporter here?**

A. Sure. First name, S-h-a-r-o-n. Last name, G-a-r-d-n-e-r.

**Q. All right. And what is your title, Ms. Gardner, with the County?**

A. I am the executive assistant to Dr. Cunningham.

**Q. How long have you worked in that position?**

A. I have been in this role since October 2024.

**Q. And had you held any other positions with the County before?**

A. Yes. I actually started in January 2011 as the Public Health Department director of human resources, and then in about October or -- in 2022, I went to County HR as a generalist and then, of course, back to the Health Department.

**Q. Okay. And, Sharon, what sort of interaction, if any, did you have with Mr. Wyatt on a**

Page 78

**regular basis?**

A. On a regular basis, he would -- we'd talk about personnel matters, he may seek my advice, and then from time to time we'd have small chat.

**Q. Okay. Did he ever express any dissatisfaction with his job to you?**

A. We never had any -- no, we never had conversations about that.

**Q. It's not really the sort of thing you talk about?**

A. No, we did not.

**Q. Okay. Did you interact with him directly on February 5th?**

A. No.

**Q. Okay. Okay. Were you informed at some point that he had resigned?**

A. Yes.

**Q. Okay. And who told you that?**

A. Dr. Cunningham told me that.

**Q. Okay. Did Dr. Cunningham have any other direction for you?**

A. Yes, she did. She actually asked me to accept Pete's resignation on her behalf.

**Q. Okay. And is that something you had done for her before?**

Page 79

A. Yes, yes, I do.

**Q. Okay. Now, when was that, February 5th or the next day?**

A. Actually, it was on February 6th that she asked me to accept his resignation.

**Q. Okay. And did you have any direct interaction with Pete on that day, February 6th?**

A. I did, yes.

**Q. And how did you wind up seeing -- seeing Mr. Wyatt that day?**

A. He actually came into the building. So I asked Dr. Cunningham if I should accept on her behalf in person, and she said yes, so I actually talked to him then.

**Q. Okay. Now, after you accepted the resignation, did you have any further conversation with him?**

A. Yeah, we -- I did. He actually told me that he didn't -- he didn't know what I was talking about, so I just asked him if he had talked to Derrick on the phone or in person. He said no, he hadn't talked to him at all. And after -- after a while, he changed his answer to say that he actually did talk to him.

**Q. Okay. So how did he wind up changing his**

Page 80

**answer? Did you repeat the question?**

A. I had to repeat the question. I think I repeated the question about at least three times. The first time I asked him if he had talked to him.

You know, he said no, he hadn't talked to him. He repeated that several times. And then he said, you know, he had texted him and the text had asked him to call Derrick.

And I said, Well, did you call him?

And then that's when he admitted, Well, yeah, I guess I did talk to him.

And then later in the conversation, I asked him if he had gone into his office to talk to him.

He said no. He said that a couple of times.

I asked him if he remembered using the F'ing word in his conversation with him.

And then that's when he said, Oh, I did talk to him. He mentioned that his conversation had gotten heated and -- and that he did remember talking to him, so.

**Q. And what was the answer to the question specifically about using the F-word?**

A. He said he didn't remember.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM



**Q. Okay. Okay. And after that verbal conversation, did you do anything else to follow up on the resignation acceptance?**

A. I sent the email too to follow up.

**Q. And what did the email communicate?**

A. The email just said, on behalf of Dr. Cunningham, as I usually do, your resignation has been accepted, you know, wish you the best with your future endeavors.

MS. KAUFMAN: Okay. Thank you. I don't have any other questions.

CROSS-EXAMINATION

BY MS. FRIERDICH:

**Q. Hello, Ms. Gardner. My name is Katherine Frierdich. I am counsel for Pete Wyatt. Thank you so much for being here today. I just have a few questions for you.**

**Are you aware that the conversation that was alleged to have been had between Mr. Melton and Mr. Wyatt was in the morning of February 5th?**

A. I was aware that the conversation happened February 5th. I'm not sure what time of day it was.

**Q. Okay. And it was your understanding that Mr. Wyatt was cursing at Mr. Melton and -- on the phone or in his office?**



A. On the phone.

**Q. Okay. And you heard from Ms. Cunningham on the 6th, February 6th that Mr. Wyatt had resigned, is that correct?**

A. That is correct.

**Q. And you took a -- we just heard from Ms. Pike that you took a statement from her in the afternoon of the 6th?**

A. I did.

**Q. Did you take any other statements from anyone?**

A. I did not.

**Q. Okay. What time was it that you -- was it -- I believe it was about 12:50 that you confronted Mr. Wyatt in the office on the 6th, is that right?**

A. That sounds about right, yes.

**Q. Okay. And would you -- would it be fair to say that Mr. Wyatt was surprised to learn that his resignation had been accepted?**

A. Yes, that would be fair to say.

**Q. Did he tell you that he did not resign?**

A. He did. He said he did not resign, that is correct.

**Q. Okay. And you have -- you have experience with HR, you said, is that right?**



A. I do.

**Q. Did -- once you received information that there had been a curse-laden conversation, did you report that to anyone?**

A. Could you repeat that question again? I didn't hear the entire question.

**Q. Did you report that you had heard that there was a curse-laden conversation between Mr. Wyatt and Mr. Melton to HR?**

A. No.

**Q. Did you call security to escort Mr. Wyatt out of the building at around 12:50 on the 6th?**

A. I did not.

**Q. So if security was there, it wasn't because of you?**

A. Security might have been present in the vicinity, but in terms of him -- them or me, or me knowing of anyone asking them to escort him out, I am not aware of that. As a matter of fact, I saw him walk out. I didn't see security with him.

**Q. Ms. Cunningham -- Dr. Cunningham wasn't in the office on the 5th or the 6th, was she?**

A. Dr. Cunningham was in the office on the 6th. I'm not sure about the 5th. I believe she was.

**Q. Why did she not communicate with Mr. Wyatt directly then?**



A. It is generally the practice to have me accept on her behalf.

**Q. Okay. Did Mr. Wyatt curse at you when you talked to him at 12:50?**

A. He did not.

**Q. And at that time you told him that you needed to collect his badge, phone, and computer, is that correct?**

A. That is correct.

**Q. Are you aware of any other investigation of the matter between Mr. Wyatt and Mr. Melton other than the statement that you took from Ms. Pike?**

A. I am not.

MS. FRIERDICH: Okay. Thank you. That's all I have.

THE WITNESS: Should I get off the call now?

MS. KAUFMAN: Yes. I don't have any redirect for you, Sharon. Thank you.

MS. FRIERDICH: Thank you.

THE WITNESS: Okay. Bye-bye.

(WHEREUPON, Sharon Gardner left the proceedings.)

MS. KAUFMAN: Okay. Last person we've got to speak to is Dr. Kanika Cunningham.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM



MS. GOEN: Okay. Give me one moment.
(WHEREUPON, there was a short interruption due to technical difficulties.)
(WHEREUPON, Dr. Kanika Cunningham entered the proceedings.)
(WHEREUPON, the witness was duly sworn.)
DR. KANIKA CUNNINGHAM,
called as a witness herein, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. KAUFMAN:
**Q. Thank you. Dr. Cunningham, could you spell your name for the court reporter?**
A. Yes. K-a-n-i-k-a, C-u-n-n-i-n-g-h-a-m.
**Q. Okay. And what is your position with the County?**
A. I am the director of the Department of Public Health.
**Q. All right. And how long have you worked in that position?**
A. Since January of 2023.
**Q. Okay. Did Mr. Wyatt report directly to you --**



A. No.
**Q. -- in his position?**
A. No.
**Q. To whom did he report?**
A. Derrick. And I'm sorry, there is an echo on my end. Can you all not hear it?
**Q. We can hear it, but you're still audible if we listen carefully.**
MR. LIVASY: If you turn down the volume all of the way on your computer and only use your phone audio to talk to us and listen, that should remove that echo.
THE WITNESS: Okay.
BY MS. KAUFMAN:
**Q. All right. Let's give it a go.**
**As of February 5th, 2026, were you contemplating disciplining Mr. Wyatt for any reason?**
A. No.
**Q. Were you contemplating terminating him for any reason?**
A. No.
**Q. Were you generally satisfied with his job performance?**
A. Yeah. I know deposition is a little different because we're FQHC and some people don't



understand the specific federal guidelines specifically called HRSA, but I think kind of where he was with his experience and coming in understanding HRSA, I didn't have any concerns. I know there was a steep learning curve there.
**Q. Okay. Dr. Cunningham, are you the appointing authority for DPH?**
A. Yes.
**Q. And what does that mean with respect to your personnel decisions?**
A. All of the hiring and firing, termination, disciplinary, those decisions, corrective actions, those decisions come up to me.
**Q. Are you also acceptable -- or are you also responsible for accepting resignations?**
A. Yes.
**Q. And before February 5th, 2026, had you ever accepted a verbal resignation?**
A. Yes, um-hum.
**Q. Had you ever accepted a resignation that was not in good standing?**
A. Yes, um-hum.
**Q. Okay. And in the case of a verbal resignation, was that something you'd have to witness directly in order to accept it?**



A. No.
**Q. So how would you -- how would you learn about a verbal resignation then?**
A. A lot of times it's the department, depending on what level it is, but it would escalate up like higher manager, get the division leader, get the executive leader, get my -- my team. I know a lot of times, the executive leaders try to kind of give me a heads-up if there's any concerns coming up, but a lot of times, it's filtered up through the hierarchy of leadership and then it will come up to me.
**Q. Okay.**
A. But, yeah, there's no way for me to be -- you know, we have nine locations and, you know, I can't be at every single location involved directly in every personnel decision, you know, actually see every single thing.
**Q. Okay. And I do want to clarify, is this -- a verbal resignation, is this something that's happened once before or a handful of times or a lot of times?**
A. I can think of a few times that it has happened. I know, of course, it happened, like, before me, and, again, it goes back to, you know, this is somebody just resigning and not desiring to come

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 89

back and work for the County. But I can recall a few since I've been here that this has happened.

And normally, it's -- it's either, you know, there's a heated situation and they'll call me, you know, run a situation by me and then, you know, and then I'll accept it. I'm trying to think of -- but, yeah, there are some examples. I don't know if you want me to share those.

**Q. No, I'm all set.**

**Let's see. Did you speak directly to Mr. Wyatt on February 5th?**

A. No.

**Q. What about Mr. Melton?**

A. Yes.

**Q. Okay. And how did Mr. Melton contact you?**

A. He called me.

**Q. When?**

A. It was that morning I think right after the conversation between him and Pete. Like, I think, like, immediately right after the conversation.

**Q. Okay. And what did he say?**

A. Well, he was definitely upset and he explained the whole situation to me with, you know -- it started off earlier, I needed information to give back to our County counselor, and I needed very

Page 90

specific information. And I think that is where the interaction happened between him and Pete, and so he called me letting me know what happened during that phone call.

And it was, you know, he did say -- I don't curse, so, I F'ing -- you know, he said he F'ing quit, and he explained all -- everything to me. And I will say there was a conversation too where I was a little concerned about his mental health, like, you know, is everything -- is everything okay with him. And, you know, accepted his resignation and that was -- that was it.

**Q. Okay. And now did you have any interaction with Mr. Wyatt or did you accept his resignation indirectly?**

A. I accepted it indirectly, no interaction with Pete. It was through Derrick. And that's normal, yeah.

**Q. And let's see. Okay. And did you have -- who accepted the resignation on your behalf?**

A. Oh, like, who wrote -- what do you mean? Because I accepted it and then -- when Derrick called me.

**Q. Did you have anybody else speak to Mr. Wyatt over the next couple of days?**

Page 91

A. Oh, yeah, yeah. So Sharon, my assistant, she normally either sends emails or directly deal with employees.

**Q. Okay. And is that what happened in this case?**

A. Yes.

**Q. And did Sharon give you any more information about her conversation with Mr. Wyatt?**

A. Yeah, that was that Friday, and that was -- so Sharon was actually in the process of sending him the email and then he was walking in. I think it was that afternoon, maybe around 12-something probably. And so since he was walking in, and I said, Well, just go ahead and tell him, make sure we get his ID badge, his laptop, and then we can still follow up with the email afterwards.

So when he -- I sat in my office, and then Sharon, I know she had wanted to have security; and that's standard to have security by for just in case something happens. And then I was in my office, and then the next thing I remember Billy knocked on my door and told me to stay in my office, don't come out, just because I think there was some escalation in Pete's voice, his tone, and I was -- it was shared with me that security had walked him out.

Page 92

And then Sharon came to my office and let me know what -- what Pete had shared. And there was some inconsistencies from what he shared with Sharon and based off of the situation that happened. And so then I just directed Sharon just to still follow up with that email because she had collected all of his company equipment and ID at that time.

**Q. Okay. And what do you mean by "inconsistencies"?**

A. So the one thing about the cursing back-and-forth -- well, first it was "that conversation didn't happen," and then somewhere along the conversation, I guess he shared with Sharon or Sharon saw that a conversation did happen; and then Pete had admitted, well, yeah, they did have a conversation, but it wasn't a heated conversation. And then it ended up coming out that, yes, it was a heated conversation.

So it sounded like there was a lot of back-and-forth and, you know, that to me that it wasn't -- it wasn't straightforward or direct. And so she was just sharing those inconsistencies when she was -- when he was talking to her.

**Q. Okay.**

A. And she knew about the situation because

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 93

she is my assistant who typically works with me on these issues and work with HR legal.

MS. KAUFMAN: Okay. All right. I don't have any other questions for you, Dr. Cunningham.

THE WITNESS: Okay.

CROSS-EXAMINATION

BY MS. FRIERDICH:

**Q. Hi, Dr. Cunningham. I'm Katherine Frierdich, counsel for Pete today, and I appreciate you being here. I do have some questions for you.**

**As the appointing authority, you indicated that you accept verbal resignations and that they can be indirect. In any of those instances, were they from someone in your C-suite?**

A. Yeah, they're always from our C-suite when they come up to me. I can't recall a time in which it came from some other route. It always goes through the executive leadership.

**Q. My question is, the verbal resignation coming from someone in your C-suite?**

A. Yeah, it can -- it comes up through them to communicate to me. So like a hiring manager or firing manager, they wouldn't come directly to me.

**Q. My question is, did a -- did you accept a verbal resignation from a member of your C-suite that**

Page 94

**was not made directly to you in the past other than Mr. Wyatt?**

A. I believe I'm answering your question.

**Q. Yeah, I'm sorry if I'm not being clear.**

**So did -- in the past, did someone in your C-suite verbally resign, not to you, but it was reported to you and you accepted the resignation as reported by somebody else?**

A. Yes.

**Q. And who was that?**

THE WITNESS: Is Noah okay -- is it okay for me to tell the employee's name?

MS. KAUFMAN: Yes.

THE WITNESS: Okay.

BY THE WITNESS:

A. Well, there are two I'm familiar with. This was one that was before Pete was here, back in like 2024. This was an employee named Rachel. And then the second one -- actually, this one was Will Bogan who reported to Pete, and that was another example of a verbal resignation.

And then also at our animal care and control, there was another employee who kind of similar, said "I quit" and walked off the job, and I accepted a verbal resignation. And that was toward

Page 95

the end of like 2025. I can't remember that employee's name because he wasn't employed long.

**Q. And were Rachel or Will part of the C-suite?**

A. No. They were not, but it came up through the C-suite to me.

**Q. Okay. But you just answered my question finally. Thank you.**

**So is it -- and you just mentioned a verbal resignation with somebody walking off the job, so is it typical that a verbal resignation then would result in that person not continuing to work in their role after that resignation?**

A. Right, um-hum.

**Q. Okay. So just to -- because there was an echo, is that correct?**

A. Yes.

**Q. Okay. Thank you. Okay. So you at the beginning of your testimony said you didn't have a problem with Pete or his performance, right?**

A. Correct.

**Q. And you didn't talk to him at all about this supposed resignation, correct?**

A. Correct.

**Q. Were you in the office on February 5th?**

Page 96

A. I was in the office -- I think that afternoon I was in the office. I wasn't there in the morning.

**Q. Did you see Pete in the office?**

A. I don't recall seeing him.

**Q. Did you know that he was in the office?**

A. Say it again.

**Q. Did you -- did you know that he was in the office?**

A. I actually don't recall seeing him that day or Friday actually.

**Q. Did anyone tell you that Pete was working in the office?**

A. No, no. It was my understanding that he got his stuff and left.

**Q. Who told you that?**

A. That was Derrick. I think there was some interaction when Pete showed up to work, and I know Derrick -- I think he tried to talk to Derrick or something, and I don't know what the interaction was but I was under the impression that he was getting his stuff and left. I'm not sure. I didn't see him, but that was why he came in the office, to get his stuff.

**Q. I see. So let me repeat this back to you.**

**Derrick calls you, tells you that Pete,**

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM



over the phone on his way into the office, resigned?
A. Who was in the office, Derrick?
**Q. Is there a way, are you -- are you able to talk through your phone, or is there a way to --**
A. Yeah, I muted my computer. Unless, let me see if --
MR. LIVASY: Are the speakers from your computer still --
(WHEREUPON, there was a short interruption.)
BY MS. FRIERDICH:
**Q. So -- so just let me repeat that back to you so I understand. Mr. Melton calls you, says that on the way into the office, Mr. Wyatt resigned his position; he said "I quit." And you understand that there may have been a meeting in Mr. Melton's office thereafter, and then it's your understanding that Pete gathered his stuff and left?**
A. Yeah, that -- yes, that is my understanding, he was getting his stuff and he left, yeah.
**Q. Okay. Thank you.**
**You didn't witness the conversation between Mr. Wyatt and Mr. Melton, right?**
A. No, no.



**Q. As the appointing authority, you're familiar with Rule 19 regarding resignations, right?**
A. Right. They're resigning in good standing or not.
**Q. Did you ask -- because you held people in high regard, did you ask him to submit his resignation in writing?**
A. No, because I would never talk to -- in a situation, I would never talk directly to the person that's being terminated. It always comes up through the executive team. So I would never go around a leader to talk to their direct report.
**Q. Did you instruct Mr. Melton to get the resignation in writing?**
A. No, because the civil service rules, that's if someone want to resign in good standing. So historically when we've accepted verbal resignations, that's not a standard to say, Hey, go back and have them send a letter. If you accept the verbal resignation and if somebody want to quit, then they're are able to quit, you wouldn't keep them on. So that's not -- that's not a standard.
**Q. Right. So verbal resignation not in good standing is typically, like, "I quit," pick up my stuff and leave?**



A. Yeah, if they say "I quit," yes.
**Q. Okay. And there is a provision in the Rule 19 for someone who is presumed resigned who misses three days of work consecutively, correct?**
A. Um-hum, yep, yep, that is another one, um-hum.
**Q. Okay. Did you have any -- why did you not inquire with Mr. Wyatt with regard to whether or not the -- whether or not it happened and why?**
A. Because I don't ever talk to the -- I never go around leadership to get involved. If that's the case, I will be talking to everyone in my department that leaves. So I don't ever go directly and talk to them. That's not a standard.
**Q. Right. But I think you testified that nobody in your C-suite had verbally resigned prior to, and just up and left before, so this is a little bit different of a situation then?**
A. No, it's not. It's the same situation. I think when you were asking me and I answered it, this happens, and I don't go and -- so I had my -- so the C-suite, that's different. So we have -- our C-suite is made up of division leaders that report to the executive leaders.
The executive leadership, that is the



leadership team that discuss with me. So that C-suite, they go and they speak with my executive leaders.
So, no, again, it would be a verbal resignation coming up to me, but I don't -- I would not get in the middle of the division leaders who we refer to as our C-suite -- and Pete would have been a part of the C-suite -- I would never -- it would never be a time where I would talk directly to them unless I didn't have an executive leader in the role; and then they all reported to me.
**Q. Okay. You said that you were concerned about Pete's mental health based on Mr. Melton's account to you?**
A. Um-hum.
**Q. Is that correct?**
A. Um-hum.
**Q. And so did you report the situation to HR based on your concern?**
A. So, no, I actually called a mutual friend of Pete and myself, and that particular friend gave some professional advice and I took a position of staying out of that. Now, I don't know if Derrick or anybody else provided those resources or that mutual friend provided those resources, but at that point I

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 101

just took -- it was a professional route.

And like I said, I was genuinely concerned. I think a lot of times with me that I'm often genuinely concerned about the individual, not just, oh, this is, you know, professional and you quit, but I often do ask questions.

There has been times in which, you know, we uncover other individuals on FMLA, and then that will completely change the entire discussion. So a lot of time bringing it up, it prompts the -- whoever is telling me this, it lets me know if there's other factors that I need to consider, like if there's an FMLA or if there are ADA accommodations. And none of that existed with Pete, so it's -- normally it's who I am to be able to make sure we're not missing anything.

**Q. And who is the mutual friend you called?**

THE WITNESS: Kate, is it okay for me to share?

MS. KAUFMAN: Yes.

BY THE WITNESS:

A. Rodney Gee, who is the director of administration.

BY MS. FRIERDICH:

**Q. It was my understanding that Mr. Melton did not report to you but reported to the -- the board, the civil authority -- I'm butchering it, I**

Page 102

**understand.**

A. No, no, Derrick reports to me. There's a dotted line to the board, but how the application is set up, Derrick fully reports to me.

**Q. Okay. Did it surprise you, then, that Mr. Wyatt was returning to work on the 6th when you learned that he was walking into the building?**

A. Yeah, I didn't know why he was coming. That's why I told Sharon to meet him and to grab security. I didn't know why he was coming into the building.

**Q. Okay.**

A. Yeah.

**Q. Okay. And you -- you perceived -- well, Sharon told you that Mr. Wyatt denied resigning, correct, when she spoke with him on February 6th?**

A. Yeah.

**Q. Okay. And you also received some emails from Mr. Wyatt emphatically denying that he resigned, correct?**

A. Um-hum.

**Q. Did you -- did you think that -- or did you ask for the situation to be investigated at that point?**

A. No. I did -- I did not ask for the

Page 103

situation to be investigated. I did speak with our County counsel's office when that information came over. I did read the email.

MS. KAUFMAN: (Inaudible.)

BY THE WITNESS:

A. The email -- did somebody interrupt me.

MS. FRIERDICH: I'm not -- I'm not asking her to discuss what she discussed with you as counsel.

MS. KAUFMAN: Well, that wouldn't have been me, but nonetheless, our office, so I appreciate it.

BY MS. FRIERDICH:

**Q. Yeah, so I'm not -- I don't want to know what you said or what counsel said to you.**

A. No, that's fine. So, yeah, I did do that, but then reading the emails, there was also some inconsistencies in the emails too. So I think you may have a copy of those.

**Q. Okay. And who did you ask to investigate?**

A. Well, it was a discussion with the County counsel's office.

**Q. Okay. So you didn't instruct anyone outside of legal to investigate?**

A. Well, I don't -- I don't instruct anyone. What it is, you know, I get their guidance, and then based off their guidance is when I would follow

Page 104

whatever direction they will tell you based on the situation. So I discussed with them and then followed their guidance.

**Q. So since you didn't communicate with Mr. Wyatt at all, you didn't tell him the reasons why he was being booted from the building or give him an opportunity to respond or instruct him about appellate rights, any of those things?**

A. That's not my role to do that.

**Q. Whose role is that?**

A. I mean, the employees, they often they can follow the civil service rules, and I think with Mr. Wyatt -- Mr. Wyatt, or Pete, reaching out to Matt Livasy, that's typically the route that employees will take when they want to go before the Civil Service Commission. They'll copy an appointed authority on the email.

But, again, I would not have this conversation directly with Pete because he didn't report to me. He is on that middle management. It's not standard for me to go around leadership to go and talk to their immediate supervisor -- to go and talk to the employee.

**Q. Okay.**

A. But there's no difference in this case. I

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM



wouldn't have had a conversation with Pete.

MS. FRIERDICH: Okay. That's all I have. Thank you so much for your time. I appreciate it. Ms. Kaufman may have some questions for you.

REDIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. I do want to ask one final follow-up.**

**Dr. Cunningham, in any situation if you have had an employee resigned and you have accepted the resignation, do you have further direct communication with that employee?**

A. No, uhn-uhn.

MS. KAUFMAN: Thank you. That's all I've got.

MS. FRIERDICH: Thank you.

(WHEREUPON, Dr. Kanika Cunningham left the proceedings.)

COMMISSIONER BOOKER: Does the County have any other witnesses?

MS. KAUFMAN: No, the County has no other witnesses.

MS. FRIERDICH: Can I take a moment to confer with Mr. Wyatt and come back in a couple of minutes?

MS. KAUFMAN: I would love to use the lady's room, so I'm on board with that.

MS. FRIERDICH: Okay. All right.



COMMISSIONER BOOKER: Okay. How many minutes, when should we come back?

MS. KAUFMAN: It's 2:32, so say five minutes? Is that enough time?

COMMISSIONER BOOKER: We will return at 2:37.

(WHEREUPON, a recess was had from 2:32 to 2:39 p.m.)

MS. FRIERDICH: So we would like to call briefly the -- the other two witnesses starting with Dr. Miller.

COMMISSIONER BOOKER: You may proceed.

MS. KAUFMAN: Okay.

COMMISSIONER NUNN: Ms. Frierdich, do you want to make an opening statement before you call your witnesses?

COMMISSIONER BOOKER: I believe they both did.

MS. FRIERDICH: Oh --

COMMISSIONER BOOKER: Oh, yeah, you -- you were supposed to, yes.

OPENING STATEMENT ON BEHALF OF THE APPELLANT

MS. FRIERDICH: Yeah, I definitely would love to. And certainly -- okay.

Yeah, so obviously we're here because there's a precedent being asked to be made by this Commission. The precedent is that someone in the



County can resign for somebody else, and that's the message back to merit employees at the County. Somebody can call up the appointing authority and say you resigned your position and, guess what, you're out.

We've got, you know, one day you're sitting in your office and, you know, somebody walks up and says, Hey, we accept your resignation. And that's fine. Nobody asks you if you resigned, nobody investigated. It's all the word of one person. And that's enough for this Commission to say, We'll accept your resignation, and that's fine.

Dr. Cunningham actually confirmed what I suspected to be true, that a verbal resignation not in good standing is made by somebody who says, I quit, they pick up their stuff, they walk out the door, and they stop working. That is not the situation here.

Mr. Wyatt returned to work -- actually stayed at work the entire day of the 5th and returned to work on the 6th; in fact, had a meeting representing the County on the 6th, and then was told to pack up and leave based on one person reporting that he had resigned.

So it's sort of like resignation by hearsay that you're being asked to enforce here, and



it's not the situation that Dr. Cunningham just told you is the situation where a verbal resignation is accepted by her.

So I'd like you to keep that in mind as we talk with Mr. Wyatt and what actually happened and the fact that he did continue to work and continued to represent the County and was summarily dismissed without anyone even speaking to him about it. And that is the precedent that they're asking you to set today for the merit employees of the County.

Okay. So at this time we'd like to call Dr. Miller, please.

MS. GOEN: Give me one moment.

MS. FRIERDICH: Thank you.

MR. LIVASY: While the next witness is coming in, I want to just out of respect for the Commission's time, ask everybody if they have a hard stop or any other obligations that we need to be mindful of this afternoon?

COMMISSIONER BOOKER: I don't.

COMMISSIONER NUNN: I'm fine today.

COMMISSIONER HOFFSTEN: Likewise.

MR. LIVASY: All right. Thank you all very much. I myself will have to exit the meeting at 3 o'clock.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 109

MS. FRIERDICH: Is that a problem, Mr. Goldkamp?
MR. GOLDKAMP: No. We can continue the hearing without Mr. Livasy.
MS. FRIERDICH: Okay. Thank you.
(WHEREUPON, Dr. Patrick Miller entered the proceedings.)
MS. GOEN: Okay. Dr. Miller, it looks like you joined us. Can you hear us?
DR. MILLER: Yes.
MS. GOEN: Thank you.
DR. MILLER: Can you see me?
MS. GOEN: We cannot.
MR. LIVASY: Dr. Miller, it looks like the camera lens --
MS. GOEN: Now we can. We've gotcha.
(WHEREUPON, the witness was duly sworn.)

DR. PATRICK MILLER,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. FRIERDICH:

**Q. Hi, Mr. Miller. I'm Katherine Frierdich. I represent Mr. Wyatt in this appeal. I just have a few questions for you, and I really appreciate you**

Page 110

**being here today.**
**Can you describe where your office is located in proximity to Mr. Melton's and Mr. Wyatt's old office?**
A. I share a wall with Mr. Wyatt. I share a wall, so it's immediately next to it. Mr. Melton's office is directly across from Mr. Wyatt's.
**Q. Okay.**
A. So catty-corner.
**Q. Do you have a recollection of February 5th?**
A. February 5th being Thursday?
**Q. Yes.**
A. Yes.
**Q. Did you at any time witness Mr. Wyatt resign his position or say "I quit"?**
A. I did not.
**Q. Had you ever heard Mr. Wyatt talk about quitting his job?**
A. I had not.
**Q. There has been some testimony that Mr. Wyatt gets angry and curses at people in the office. Have you witnessed that?**
A. I have not.
**Q. Okay. On February 5th, you had a meeting**

Page 111

**with Mr. Wyatt, is that correct?**
A. That is correct.
**Q. What time is your meeting?**
A. We met more than once, if I remember correctly. We met around lunchtime-ish. Briefly, we talked for a few minutes but then we had a standard meeting that's in the afternoon.
**Q. And --**
A. Late afternoon, like 3:00 or 4:00. Sorry.
**Q. Okay. Thank you.**
**And then at any time, were you told by anyone that Mr. Wyatt had resigned his position?**
A. On Thursday?
**Q. Yes.**
A. No.
**Q. Okay. And did Mr. Wyatt indicate that he had gotten into an argument with Mr. Melton?**
A. No.
**Q. Did he seem agitated?**
A. No.
**Q. Did you have a meeting with him or see him on February 6th?**
A. I met with -- I was home on February 6th, so I did not meet with anybody in person on February 6th.

Page 112

**Q. Okay. Were you aware that Mr. Wyatt had a -- a meeting at Centene that day? Had you talked about that?**
A. On Friday?
**Q. Yes, a meeting on Friday?**
A. The 6th?
**Q. Yes.**
A. No, I'm not aware of that.
**Q. Did you exchange any phone calls, text messages, or emails with Mr. Wyatt on February 6th?**
A. Yes.
**Q. And can you tell me about those instances?**
A. Sure. On that Friday, I wasn't -- I didn't have my phone with me the whole day and I went to go check it, and then I saw a text message saying, Call me. It may have been, Call me ASAP. I'm not 100 percent sure, but it was, Call me.
So I called him, and he explained that he did not quit, that that did not happen, and he reiterated that a couple of times, and talked me through some of what happened on that Friday. Also, there was an email that went out from him saying similar things --
**Q. Okay.**
A. -- that he did not quit.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 113

**Q. Okay. Did you have any work-related interactions with him on February 6th?**
A. I do not believe so. I was at home, so I think this -- I don't know if this counts as a work-related interaction, just him telling me that he did not quit, but that was my interaction with him.
**Q. Okay. Back to generally in the office since you -- I believe you said you share a wall with Mr. Wyatt. How soundproof are the -- are the offices?**
A. They're not terribly soundproof. With me and Mr. Wyatt sharing a wall, I can usually hear rumblings if he's talking at all. Across the hall, I can usually not hear a normal conversation whatsoever, but if at a normal vocal level; but if the Cardinals hit a home run, I'm going to hear that.
**Q. Okay. Gotcha.**
**Have you ever heard through the wall Mr. Wyatt yelling at anybody, cursing at anybody?**
A. No.
**Q. Okay. Did you hear any elevated discussion between Mr. Wyatt and Mr. Melton on the morning of February 5th?**
A. I did not.
**Q. Okay. Did you in any -- have any interactions with Mr. Melton on February 5th that**

Page 114

**indicated that you had just met or you were going to meet with Mr. Wyatt?**
A. No, I do not believe so.
**Q. Who knew that you were meeting with Mr. Wyatt on February 5th?**
A. It was a standing meeting we had with the CFO, CMO and C -- or CMO. Yeah, me, Mr. Wyatt, and Mr. Ladevich.
**Q. I see. I see.**
A. It had been a standard meeting and everyone -- it had been ongoing for months. I don't know exactly how long, but for a while.
**Q. Okay. And who is your assistant?**
A. I don't know that I actually have an assistant. Possibly Kathy. I think she helps out in general and Eugenia helps out in general. Ms. Davis and Ms. Pike. Sorry.
MS. FRIERDICH: Okay. Okay. That's all I have for you today. Thank you so much for joining us. I really appreciate your time.
THE WITNESS: All right. Thank you.
MS. FRIERDICH: Ms. Kaufman may have some questions for you.
THE WITNESS: Oh, okay. Sorry.
MR. GOLDKAMP: Before Ms. Kaufman asks any

Page 115

questions that she may have, I would ask the Commission to reconsider their decision on allowing Dr. Cunningham to be in the hearing. I believe as the appointing authority, she is entitled to be in this hearing to hear the -- the testimony of -- of the witnesses.
So I would just ask the Commission to maybe reconsider their -- their decision that they made earlier.
COMMISSIONER NUNN: Dr. Cunningham has already testified?
MR. GOLDKAMP: That is correct.
COMMISSIONER NUNN: Okay.
COMMISSIONER HOFFSTEN: I would have no objection to her being present since she's already testified.
COMMISSIONER NUNN: Neither do I.
MR. GOLDKAMP: Just for formality purposes, can we have a motion on that?
COMMISSIONER BOOKER: So moved.
COMMISSIONER HOFFSTEN: Second.
COMMISSIONER BOOKER: All of those in favor?
COMMISSIONER HOFFSTEN: Aye.
COMMISSIONER NUNN: Aye.
COMMISSIONER BOOKER: Aye.

Page 116

MS. GOEN: Okay. Give me one moment.
Okay. So Dr. Cunningham is no longer in open session to be added. Is that something where I should reach out to her?
MR. GOLDKAMP: Yes, Jairris, if you could just send her an email to join the open session, and then we can just add her whenever she shows up. We don't need to -- we can continue with the hearing.
MS. GOEN: I will do that. Thank you.
COMMISSIONER BOOKER: Are we finished with this witness's testimony or does the County need...
MS. KAUFMAN: Thanks.
CROSS-EXAMINATION
BY MS. KAUFMAN:
**Q. Dr. Miller, I understand Mr. Wyatt reached out to you with his version of events. Was this something you spoke to anybody else about?**
A. My conversation with him? I absolutely spoke about it with my spouse. Yeah, I don't -- I tried not to get into gossip if I can avoid it as much as I can.
**Q. So it's fair to say that you did not have an interest in getting a story from Mr. Melton?**
A. No, I -- he did not bring it up, nor did I ask.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 117

**Q. Or Dr. Cunningham?**
A. Likewise.
MS. KAUFMAN: Thank you. Nothing further.
COMMISSIONER BOOKER: Would you like to redirect?
MS. FRIERDICH: No.
Thank you, Dr. Miller.
THE WITNESS: Thank you. Do I go now or -- last time I tried to go you all kept --
MS. FRIERDICH: Yes. Thank you.
(WHEREUPON, Dr. Patrick Miller left the proceedings.)
MS. FRIERDICH: Okay. So we'd like to call Damon Broadus, if I'm pronouncing that correctly.
MS. GOEN: Okay. One moment.
(WHEREUPON, Damon Broadus entered the proceedings.)
MR. BROADUS: Good afternoon.
MS. FRIERDICH: Good afternoon. I think we see your background but not you.
(WHEREUPON, the witness was duly sworn.)
DAMON BROADUS,
called as a witness herein, having been first duly sworn, was examined and testified as follows:

Page 118

DIRECT EXAMINATION
BY MS. FRIERDICH:
**Q. Okay. So, Mr. Broadus, my name is Katherine Frierdich. I represent Pete Wyatt in this appeal. And I just have a few questions for you, so this won't take long, but I really appreciate you joining us and giving us your time.**
**How often did you work with Mr. Wyatt in your position at the County?**
A. I would say regularly. As the deputy director of public health, I was regular integration with Pete as the COO.
**Q. Okay. And where -- can you describe where your office is in proximity to Mr. Wyatt's?**
A. Sure. I'm across the hall. There's a file cabinet in between our locations. I'm located between Mr. Melton and Dr. Cunningham.
**Q. Okay. So you just answered my next question about proximity of your office to Mr. Melton's office. So you share a wall with Mr. Melton?**
A. Yep.
**Q. Okay. How soundproof is your office? Do you hear conversations that are happening on either side of you?**

Page 119

A. They're rumblings, if you will, or you hear voices. You can't -- you know, clear audio sounds, no.
**Q. Right, okay. And on -- do you remember February 5th, the Thursday? Do you recall that day?**
A. Not exactly. I mean, it was a Thursday, like you said.
**Q. Well, do you recall hearing any elevated discussion in Mr. Melton's office that day, like voices elevated?**
A. I do not.
**Q. Okay. Would you have heard any -- if Mr. Wyatt was raising his voice in his office with his door closed, would you -- would you hear that in your office?**
A. If Mr. Wyatt was in Mr. Wyatt's office, I would not.
**Q. Okay. There has been some talk about Mr. Wyatt's conduct on the -- on -- in the -- in the business. Have you -- have you witnessed Mr. Wyatt raise his voice at people and curse at people?**
A. I have not.
**Q. Did you meet with Mr. Wyatt on February 5th?**
A. I did not. I'd have to look at my calendar, but I don't recall.

Page 120

**Q. Do you recall seeing him in the office?**
A. I'm sure I did.
**Q. Okay. And you don't remember any conversations you had with Mr. Wyatt?**
A. At a minimum, an exchange of pleasantries.
**Q. Okay. So suffice it to say that Mr. Wyatt did not tell you that he resigned his position that morning?**
A. No, he did not.
**Q. Okay. When you saw Mr. Wyatt, did he seem agitated?**
A. No, he did not.
**Q. On -- so let's talk about February 6th, that's the Friday, did you have any interactions with Mr. Wyatt over phone, text, or email relating to work, County work?**
A. He called me that afternoon. I don't recall the exact time, but it was in the afternoon.
**Q. Okay. Was that related to County work?**
A. Yes.
**Q. Okay. And so it was a conversation between you in your position and Mr. Wyatt as COO?**
A. Yes.
**Q. Okay. And that was in the afternoon of**

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


**February 6th?**
A. Yes.
**Q. Were you aware that Mr. Wyatt had a meeting with Centene on the 6th?**
A. I did not.
**Q. In your interactions with Mr. Wyatt, did you ever find him to be disrespectful to you?**
A. Not to me, no, not ever.
**Q. Did you see him be disrespectful to anyone else?**
A. No, I haven't.
**Q. Okay. That's all of the questions I have for you. I appreciate your time. Ms. Kaufman may have some questions for you at this time.**
MS. KAUFMAN: No cross for this witness. Thanks.
MS. FRIERDICH: Thank you. You can -- you can depart, Mr. Broadus. Thank you so much.
(WHEREUPON, Damon Broadus left the proceedings.)
MS. FRIERDICH: Okay. At this time we'll call Mr. Wyatt to testify.
All right. So, Pete, here we go. Why don't you state your name for the record -- well, actually let's swear him in.


(WHEREUPON, the witness was duly sworn.)
DUANE "PETE" CARLTON WYATT,
called as a witness herein, having been first duly sworn, was examined and testified as follows:
DIRECT EXAMINATION
BY MS. FRIERDICH:
**Q. Thank you. Mr. Wyatt, would you state your name for the record, please?**
A. My name is Duane Carlton Wyatt. I go by Pete.
**Q. Okay. And up until February 6th, you were chief operating officer for the Department of Public Health, correct?**
A. I was. I began August 19th, 2024.
**Q. Okay. Can you just give us a very brief description of your career preceding your COO position?**
A. Sure. I have -- I held senior leadership positions in the for-profit industry, the nonprofit industry, the healthcare industry, and I'm an instructor.
**Q. When you were interviewing for the COO role, who did you interview with?**
A. I interviewed with a host of people. I


interviewed with Derrick, David Marker, Damon Broadus, and Dr. Nelson who at the time was the chief medical officer.
THE COURT REPORTER: It is very hard for me to hear the witness.
(WHEREUPON, there was a short interruption.)
BY MS. FRIERDICH:
**Q. Okay. Are you okay on your end, Pete?**
A. Sure, sure.
**Q. Okay. So you worked full time as a merit employee for the County, correct?**
A. I was, yes.
**Q. Yes. Okay. And what were your duties as COO?**
A. As COO, in a nutshell, all clinical operations, most of the clinical staff, and external responsibilities through outreach and program management.
**Q. Were you out of the office a lot in meetings in your position?**
A. Was I -- I'm sorry, say that again?
**Q. Were you out of the office in meetings a lot in your position?**
A. Often, yes.


**Q. And we've heard you reported to Derrick Melton, correct?**
A. I did, yes.
**Q. Describe your relationship with Mr. Melton.**
A. I thought our relationship was professional. The -- the common day, nonsense banter was normal. As senior executives do, we disagree on strategy from time to time, but that was never anything that impacted work.
**Q. Was there a point at which, you know, you've been -- everyone who has testified has said that they didn't have a problem with you, you were a good employee, did a good job, et cetera.**
**Have you ever been confronted by anyone at the County complaining about your behavior?**
A. No, not officially from a performance perspective. There has been an employee complaint that was put in. I think we discussed that earlier.
**Q. Okay. Can you -- so obviously February 6th and February -- or February 5th and 6th are critical here. So can we start and you take us through the morning of February 5th?**
A. Sure.
**Q. Thank you.**

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 125

A. On February 5th, I had a meeting that began at 8 o'clock in which I was helping a group of people prepare themselves for job interviews. That is not part of my County. That is just part of an organization that I belong to and part of the commitment.

The meeting was taking long. I began to get calls from Derrick. I actually got one or two calls from Derrick. I do not have my phone active in those meetings as a point of respect, but I do get notifications on my watch. So when he called twice, I picked up and shot him a text and said, Hey, I am wrapping up a meeting. I'll call you back shortly.

That happened. The meeting went a little longer. Derrick called again. I sent him a text. He asked me the question, how many people reported to me. I said six. And I said, I think, I will be able to verify that for you shortly.

The meeting continued. He called again. I didn't get it as I was getting into my car, but I called him back immediately as soon as the -- the car started and the system worked. What I realized on the phone was that Derrick got my information of six, but he focused on the part where I said, "I think, I will confirm it for you shortly." So he needed that number

Page 126

confirmed.

I was not locked into that he needed that number confirmed. The call went on. I said to him -- so everybody has talked about the F-word, and I need to put this F-word in context. Derrick pressed me about the importance of the number. What I couldn't understand was why he was pressing me on the number because that org chart that is active and current is on his assistant's wall. He has it electronically. It's on my wall in my office, and it's also on my assistant's office, Kathy's wall. So the data is available.

So he pressed, and I said to him, Just use the F'ing number, what the F.

Because I couldn't understand why we were pressing. He had the number. He has the -- where I'm going to verify that number is literally less than ten feet from his desk. So I'm confused.

So I made a couple of calls. I did call Gina, I did call Michael Ladevich. I made a couple of other calls on my way back into the office. When I got into the office, I went straight into Derrick's office. I knocked. I went in. My first question to him was, Do you still need that number verified?

He expressed to me that how important it

Page 127

was because he was trying to keep me out of a lawsuit. He said he was trying to protect me. He got up from his chair. He came over to me. He showed me his cell phone and he said, This is what I'm trying to get; and that's the question on his cell phone, on his private cell phone, how many people do you supervise.

I said, Okay, you've got the number, six.

He walked over and sat down. There was some other banter. Nothing was elevated. As he text, he said, You never should have treated me that way.

I didn't know what that was all about. I don't know what the lawsuit is all about. I don't know what he's trying to protect me from. I said to him, I'm out there trying to protect you too, and you shouldn't have treated me like that, as I turned and I left.

So when I left, I closed the door, no slamming the door, no voice. I saw Gina in the hallway. Her testimony was that she talked to me when I came into the building. That is not correct. It was after I talked to Derrick.

And she said, well, something about they couldn't find me, they looked at Kathy and it wasn't on Kathy's calendar. I pulled up my County phone, and I showed her on my County phone that my 8:00 a.m.

Page 128

meeting was on my County phone.

And she said to me, Well, it wasn't on Kathy's desk.

Okay. And I -- and we both laughed, and I said, Oh, I guess I just put this on my phone.

And we just parted. I went into my office, put my stuff down, and continued my day.

**Q. Okay. So let's stop right there and back up just a little bit.**

A. Sure.

**Q. So is it fair to say that you were a little frustrated --**

A. Sure.

**Q. -- as Mr. Melton is blowing up your phone during the meeting, right?**

A. Right.

**Q. And you don't understand why?**

A. I do not understand why.

**Q. And you felt that you had answered the question?**

A. I thought I did, yes.

**Q. So how long was your call with Mr. Melton where you supposedly F-bombed, cursed, yelled at him, was beating the steering wheel, et cetera, how long -- how long was that call?**

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 129

A. 58 seconds.
**Q. 58 seconds?**
A. Yes.
**Q. That was the only call between you and Mr. Melton?**
A. That's it.
**Q. Okay.**
A. So in 58 seconds, I pounded on the steering wheel, I told him about my home life, and I quit in 58 seconds. Not possible how that all happens, but you guys heard the testimony.
In his office two to three minutes, four max. I went, I had committed to buy lunch that day for the front office staff. So I had left my office after I put my stuff down. I went and I bought them Imo's Pizza. The day continued.
I had various conversations with -- with the CFO. I had the meeting with Dr. Miller later, but before I had the meeting with Dr. Miller, I talked -- I heard -- had Gina's conversation and I talked with Kathy. And Kathy said, I couldn't -- I couldn't see it on your calendar.
And it was in that moment that I stopped and I sent Derrick another text, and I said, I just talked to Kathy and I just discovered that you did not

Page 130

have information that I had; meaning, he couldn't see that I had a meeting but I thought he saw that I had a meeting.
So I wanted to go and apologize to him because the context of my response to him on the phone was with the understanding that you knew I had the meeting, you know I don't use my phone during a meeting, but you kept blowing up my phone during a meeting after I said I was going to get back to you. So that was a respect thing for me.
So I knocked on his door. He wasn't available. Before I went downstairs to my meeting, I sent him that text, that I hope I could catch him before the end of the day. I didn't. I sat with -- at the end of the day, I had a meeting with Brenda Wetzel that went probably until 5:30, and it was kind of sharing with her what's going on because she had just lost her husband.
So I sat with her until about 5:30, and I came back upstairs. Derrick was gone. Gina had told me earlier in the day that the meeting was cancelled for Friday, so I worked from home. I sent Derrick a note, a text message, How can I help you with UDS, at 9:03 I believe it was on Friday morning. No response.
I went to my meeting with the Centene

Page 131

person. I had that meeting. I came back to the building I guess 12:30, 12:35. I saw Derrick walking out of the door going to his car, tapped on my horn. He noticed me. He continued to get in his car. I said so, you know, I just found a good parking spot. I didn't want to pass that up.
So I got in, and I moved a few steps towards his car. He sat there for a moment and he drove off. I thought I was going to be able to tell him about Centene, but he continued going. I didn't understand that. But all of this was before that I had known that I quit apparently.
**Q. Okay.**
A. So when I got to my office at 12:40, I am preparing for -- I have a meeting with my -- my health center leadership teams, and we were going to do training on Epic. And that was starting at 1 o'clock, and at 12:40, Sharon Gardner came into my office. I can't remember her words, but she said that she -- that Dr. Cunningham had accepted my resignation.
And as you can imagine the shock, I said, What resignation?
We go through -- her description to me was, Did you not go into Derrick's office yesterday?
Well, in a moment of shock, I'm trying to

Page 132

figure out where I resigned, when all of this happened, if this was even real. She asked did I not go into Derrick's office and cuss. I said no.
First, I couldn't remember going into Derrick's office in the context of quitting. So when she testified that I didn't remember, what I wasn't remembering was quitting. But I did go into Derrick's office.
She continued to say that Derrick had told Dr. Cunningham that I had resigned, and Dr. Cunningham had accepted my resignation. I said to her in that moment that this was an integrity problem and that it was going to affect the entire staff and trickle down to my patients.
I stood, I grabbed a couple of personal things, you know, and I walked out of my office at probably 12:50, 12:55, I'm not sure, in that range. Security had been called, and they were standing on the wall. I just walked calmly out and got in my car, and that was it.
**Q. Okay.**
A. So there was no cursing, pounding the wheel. There was no cursing in his office. And if you add all of the testified time, it's 58 seconds.
**Q. And you submitted your phone records with**

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 133

**your appeal showing the 58-second call, correct?**
A. I did.
**Q. So it's in the record?**
A. It's in the record.
**Q. Did -- did Melton tell you to go home during that 58 seconds?**
A. Yeah, at the end of the call, at the end of the phone call, we were both heated, and after I said -- used the fricking -- use the F'ing number and what the F, he said, Well, just go home. Just go home.
**Q. So would you say both of you were frustrated at this point?**
A. Oh, extremely frustrated, but that's -- that's not something to concern yourself with.
**Q. So there was testimony that -- or I think it was County counsel, made an argument that you didn't deny quitting until you were told that Dr. Cunningham accepted your resignation. Do you recall hearing that?**
A. Right, that's the first -- that's the first I had ever heard of it.
**Q. So you didn't know that Mr. Melton had resigned on your behalf until Sharon came and told you that your resignation was accepted, is that correct?**

Page 134

A. Correct. Correct.
**Q. So you never used the word "resigned" or "quit" to Mr. Melton either time you talked to him on February 5th?**
A. Never used which word?
**Q. "Resign" or "quit."**
A. No.
**Q. When you left Mr. Melton's office, did you feel that the situation had deescalated?**
A. Yeah, I thought it was done. I thought it was over.
**Q. Okay.**
A. The conversation I had in Derrick's office was indicative of conversations amongst the C-suite. It was a misunderstanding. It was a strategic thing. A ball was dropped, the ball was picked up, but that's just what happens.
**Q. And you spoke with a couple of other people on the phone on the way into the office as well, right?**
A. I'm sorry, I spoke to who people?
**Q. You spoke with Gina and Mr. Ladevich?**
A. Yes.
**Q. And so that was also on the way into the office?**

Page 135

A. Yes.
**Q. Okay. And did you yell or curse at them on the phone?**
A. No.
**Q. Just a second. I'm catching up because you took us through the two days.**
A. I'm sorry.
**Q. Do you know why Mr. Melton said that he was trying to protect you?**
A. I have no idea. He mentioned the lawsuit, but I have no idea what the lawsuit is --
**Q. Okay.**
A. -- or how I would be involved.
**Q. Did anyone approach you and ask you about having an argument with Mr. Melton on the 5th or 6th?**
A. About having an argument?
**Q. Yes.**
A. No.
**Q. So when you left Mr. Melton's office, there was business as usual for the rest of the day?**
A. For me, yeah, there was a lot to be done.
**Q. Okay. And you had meetings?**
A. Yes.
**Q. And you were in your office?**
A. Yes.

Page 136

**Q. Your office is across the hall from Mr. Melton's?**
A. Directly, yes.
**Q. Okay. So just to -- just to go back and clarify, we did hear from Gina testifying that you had said to her that you really wanted to apologize to Mr. Melton?**
A. Um-hum.
**Q. And she -- she did testify that she didn't know why, but -- why you were saying that, but you clarified it. Can you -- can you explain again so it's clear, why Gina would say that you said that you need to apologize to Mr. Melton that afternoon?**
A. After I talked with Kathy, it became very, very clear that going back to the morning, Derrick did not know that I had a meeting because it wasn't on Kathy's calendar. So after Gina said it and then Kathy confirmed it, for me the context of my response to Derrick was different or should have been different.
So had I known that he did not know that I was in a meeting and he did not understand that I was -- I wasn't picking up the phone because I wasn't aware it was ringing because my ringer is always off, then I wouldn't have been as adamant about, I gave you

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 137

the number, use the number. And I would not have said things like, You shouldn't have treated me that way, because what I was referring to was he kept blowing up my phone when I'm trying to wrap up a meeting.

**Q. Okay.**

A. So had I known that, that conversation would have happened differently.

**Q. But you did tell Mr. Melton that you were in a meeting and you were wrapping it up?**

A. I did, I did.

**Q. And he continued to call and text you, is that correct?**

A. Yes, yes.

**Q. Okay. And then you said --**

A. So --

**Q. -- that you finished out your day meeting with Brenda and that Mr. Melton was gone by the time you were leaving the office, right?**

A. Yes. When I -- when I knocked on Derrick's door, I don't know, somewhere between 2:00 and 3:00, he did not answer, so that's when I sent the text --

**Q. Okay.**

A. -- in hopes that I could catch him before he left.

Page 138

**Q. So Mr. Melton knows what car you drive, right?**

A. Sure.

**Q. And so if Mr. Melton had left before you left, and you left at 5:30, would the parking lot be pretty empty?**

A. Pretty empty at 5:30, yes.

**Q. Would Mr. Melton have had an opportunity to see your car in the parking lot?**

A. The opportunity, sure, if he was looking. I park in the same place, but if he was looking, he had the opportunity, but I don't know that that's something that he does. I don't -- I don't know that.

**Q. Let me catch up with you here.**

**Okay. So back to the remainder of February 5th, and this is talking about pretty much like 10:00 a.m., right, on to --**

A. Yes.

**Q. -- the whole day you were at the office from 10:00 a.m. forward?**

A. Yes.

**Q. And you met with the chief medical officer, we heard from him?**

A. Um-hum.

**Q. You met with him twice?**

Page 139

A. Um-hum.

**Q. And you met with Brenda?**

A. Yes.

**Q. The front -- the front desk folks saw you because you --**

A. Yes, Diane and Erica, yes.

**Q. Did you -- did you also have other interactions where people saw you in your office?**

A. Oh, yes. There's a lot of interaction up and down that hallway. You can bring in Michael Ladevich, the CFO. We had conversation. We had -- I had a con- -- a conversation with the contract folks about the phlebotomy project. All of these were drive-by conversations. They weren't meetings.

**Q. And at no time did anybody say to you, man, why are you here when you just quit?**

A. Yeah, it was not a thing. It was not a relevant point all day.

**Q. Yeah, yet nobody said, "Oh, we're so sorry to see you go"?**

A. No.

**Q. "I can't believe you quit"?**

A. No.

**Q. Nothing?**

A. I don't think it was public knowledge

Page 140

until Friday to even myself.

**Q. And you mentioned that Gina cancelled your one-on-one with Mr. Melton, but that didn't cause you concern, did it?**

A. No.

**Q. Does that -- does that include it all happening?**

A. The cancellation didn't really concern me. That's a regular thing to have the Friday cancel.

**Q. It's a regular thing that Mr. Melton cancels your one-on-ones?**

A. Yeah.

**Q. Okay.**

A. Am I echoing over there, I'm sorry?

**Q. I'm sorry?**

A. Do you guys hear an echo?

**Q. It is a -- there's a bit of an echo, but I think we're able to parse through it. Are you able to -- okay?**

A. I'm struggling, but I can do it.

**Q. Okay. So let's move on to February 6th. You decided you had a meeting with Centene at 11:30 in the morning, correct?**

A. Yes.

**Q. And it was outside of the office, the**

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 141

meeting?

A. Yes.

**Q. So when Mr. Melton cancelled your meeting, you just worked from home until you had to leave for that meeting, is that correct?**

A. Yes.

**Q. Did you -- what did you do the morning before you left for the Centene meeting work-wise?**

A. I had a couple of conversations. I think the first one might have been with Sharon Foote. I sent Derrick a text 9:03, 9:06, or something like that, asking him if he needed any assistance with the UDS project because it was due on the 15th. I didn't hear back from Derrick about my text on the 5th, and I didn't hear back from him on the 6th.

**Q. Well, let's talk about that meeting quickly. So you texted him on the 5th, and he didn't respond, Why are you texting me, you don't work here anymore, you resigned?**

A. No.

**Q. And when you texted him about the -- and UDS means Uniform Data System. I asked you that myself earlier.**

A. Yes.

**Q. But when you asked him about the UDS,**

Page 142

**which is definitely related to work and --**

A. Yes.

**Q. -- key to the work, in fact, he didn't respond saying, Why are you texting me about work, you quit?**

A. No response.

**Q. So you had -- you talked to some folks. Did you email that morning before you left for the Centene meeting?**

A. I do not recall. I don't believe I did.

**Q. Okay.**

A. As a matter of fact, I think -- I know I didn't because I don't believe I brought my laptop home, so I can't recall.

**Q. Okay. And when you were meeting with the Centene folks, you were meeting with them in the capacity of COO for the Department of Public Health, correct?**

A. Yes.

**Q. And that meeting was on your calendar?**

A. Yes.

**Q. Okay. And when you said -- when Sharon approached your office to accept your resignation, I'm putting that in air quotes for the record --**

A. Yeah, uh-huh.

Page 143

**Q. -- you were preparing for a meeting, and I think you mentioned it was the Health Center Management meeting?**

A. Yes. Every Friday -- every Friday at 1 o'clock to 3 o'clock.

**Q. Okay. A two-hour meeting?**

A. Yes.

**Q. Do you lead that meeting?**

A. Do I what?

**Q. Do you lead that meeting?**

A. Yes, I do.

**Q. Okay. And how many people are in that meeting?**

A. Four. On this particular day, we were working with the Epic training crews. They were going to do a training walk-through for the Health Center leaders.

**Q. Okay. Was Mr. Melton in the office on the 6th, do you know?**

A. I do not know.

**Q. When Sharon approached you to tell you that you had resigned --**

A. Oh, excuse me.

**Q. Yes.**

A. I do know, he was in the office but he left. When he was leaving, I was arriving on Friday the 6th, so he was in the office in the morning.

Page 144

**Q. Thank you for correcting me.**

**When Sharon approached you to inform you of your resignation, did you deny that you had resigned?**

A. Did I what?

**Q. Deny that you had resigned?**

A. Oh, absolutely.

**Q. Have you denied that you resigned consistently ever since?**

A. Every time I get the opportunity.

**Q. Did you ask to speak with anyone or, you know, Dr. Cunningham or HR, anyone?**

A. Yeah, I sent Dr. Cunningham a note. Again, her position is understandable, but I did reach out to Dr. Cunningham. My first response -- my first response wasn't until Monday for personal reasons, but my first response was back to Sharon, Dr. Cunningham, and Derrick. The next -- I think the next note was to Dr. Cunningham. And then the next note I think was to Dr. Cunningham, Sharon, and Matt Livasy.

**Q. So we had a -- and you submitted your email correspondence to the Commission, so they have it in their file, correct?**

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


A. I didn't hear the last part.
COMMISSIONER NUNN: I didn't hear that.
MS. FRIERDICH: All right. This echo is not great.
BY MS. FRIERDICH:
**Q. You have submitted your email correspondence to people at the County regarding your alleged resignation, correct?**
A. I did.
**Q. And so --**
A. I think if I -- if I -- if I turn -- if I mute my phone, I think I kill the echo.
**Q. Okay. Yes.**
**So if I take you through the emails, you on -- on February 9th at 4:57 a.m. you emailed Sharon Gardner, Derrick Melton, Dr. Cunningham, and in that email, you -- you spent multiple paragraphs, and this was in response to Sharon's email to you, accepting your, and I'm putting this in air quotes for the record again, your quote/unquote resignation, you responded in a several-paragraph email explaining that you did not resign, is that correct?**
A. That is correct.
**Q. You didn't receive a response to that email, did you?**


A. No response.
**Q. And then you emailed again to Dr. Cunningham and Sharon Gardner at 6:50 a.m., same day. Did you ever receive a response to that email?**
A. No response.
**Q. You then emailed on February 12th, this is a week from the fated Thursday, Thursday, February 12th, you emailed Dr. Cunningham, Sharon Gardner, and Matt Livasy, and then Dionne Jones denying --**
A. That is correct.
**Q. -- you had resigned?**
A. That is correct.
**Q. And why Dionne Jones?**
A. Dionne Jones is the chairman of the consumer board that we all present to once a month. So the health centers have a board of directors that is -- that is a reporting relationship for Derrick.
**Q. You didn't respond -- you didn't receive a response from that email either, did you?**
A. I did not.
**Q. Then you emailed Matt Livasy, Dr. Cunningham, Dionne Jones, Sharon Gardner, on February 16th, that's the Monday, with, again, denying that you had resigned and your appeal, is that**


**correct?**
A. That is correct.
**Q. And you appended quite a few attachments, including your phone records, your text records, your emails, et cetera.**
A. Correct.
**Q. Did you receive a response from that email?**
A. I did not get a response to the email, but I had made a couple of calls into HR to get Matt to check his emails, to check his phone messages, and I got the call back from Matt on I believe it was that Wednesday.
**Q. And what did Matt say to you? What's the first thing that Matt said to you when you picked up?**
A. He apologized that he had been out of the office. He said that he had gotten word that he should look for my email, but originally he couldn't find it because he was unaware that I no longer worked at the County. So I was not using a County email, I was using my personal email. But he had found it. I don't know if he had found it that day and called or found it the day before.
**Q. So it had been about a week and a half before the personnel director knew that you were no**


**longer with the County?**
A. More like two weeks, yes.
**Q. Two weeks.**
**Just to be absolutely certain, you did not submit a written resignation?**
**I think you're on mute.**
A. How about now?
**Q. No, yes.**
A. No, I did not submit.
**Q. You were not an emergency, temporary, or seasonal employee?**
A. I was not.
**Q. You did not miss work for three consecutive days?**
A. I did not.
**Q. And when you supposedly, allegedly resigned your position, you continued to work that day?**
A. I did because I had no idea that I -- that that was a real thing.
**Q. And then you came back the next day, you continued to work --**
A. Yes.
**Q. -- the next day?**
A. Yes.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


**Q. And you have continually denied resigning?**
A. Yes.
**Q. Did you ever receive any information from the County whether it be documents, explanation, anything, prior to this hearing and what you heard at this hearing?**
A. I have not.
**Q. Prior to this hearing, is it the case that you thought based on Sharon's account that the alleged resignation occurred in Mr. Melton's office?**
A. Yes. The word that I had gotten indirectly from Sharon's account, it was, Did you not go into Derrick's office and do this and say these things?
**Q. That was the only indication you had received from anyone at the County with regard to what supposedly happened on February 5th?**
A. That was it.
**Q. You through your counsel submitted because -- your requested several times documents supporting what supposedly happened, correct?**
A. Yes.
**Q. And you've got nothing?**
A. Nothing.
**Q. So you submitted a public records request,**


**correct?**
A. Yes.
**Q. And you submitted that with a -- and a response came back from Sharon Gardner that it was accepted, right? It had been received?**
A. Yes.
**Q. And that response was immediate, wasn't it?**
A. Yes.
**Q. And we had the initial meeting with this Commission on March 17th, correct?**
A. Yes.
**Q. And you were -- and you were notified on February 26th that the response to that records request would be delayed to the 20th, three days after that meeting, correct?**
A. Yes.
**Q. Then this hearing was set for today, and you were notified on the 20th that that response would be delayed to April 1st?**
A. Yes.
**Q. So you haven't received anything in response to your public records request?**
A. Nothing.
**Q. Have you requested your HR file through**


**that public records request?**
A. I have, I have.
**Q. And received no records?**
A. No response.
**Q. And you heard about statements that were given by Mr. Melton and Gina, Ms. Pike, in this hearing?**
A. I did hear about that, yes.
**Q. Have you seen those?**
A. I have not.
**Q. Were you given an opportunity to respond to those?**
A. I have not.
**Q. Did anyone call you and say, Do you have a response to this, Mr. Melton says you quit?**
A. No.
**Q. Can you describe what -- what was in flight, what were you doing at the time that you were essentially booted from the office?**
A. I was preparing for a PCMH audit. I was preparing for a Title 10 audit. We were doing training on the new EMR. I had a slate of candidates ready to be interviewed for the program manager position that following week.
We were working on scheduling execution.


We were working on a lot of civil service work around our nursing crew, around our clinical staff, because we were going to have to make some changes. We were working on Care team assignments, because those assignments -- because of incomes, because of salaries, because of longevity, it was going to cause some pain. We were discussing those.
So there were seven or eight different open topics that needed to be completed before May 1st.
**Q. And you heard in this hearing that every person who testified said that you did good work, they had no problem with you, no complaints?**
A. No complaints. I try.
MS. FRIERDICH: That's all I have at this point -- at this moment. I'll turn you over to Ms. Kaufman.

CROSS-EXAMINATION

BY MS. KAUFMAN:
**Q. All right. I'll keep it very brief, Mr. Wyatt. Thank you for your time.**
**So you've testified today that when you were speaking with Ms. Gardner, you were somewhat confused?**
A. Very.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


**Q. And the inconsistencies in your statement, we'll chalk that up to the fact that you were confused?**
A. Can we be specific about the inconsistencies?
MS. FRIERDICH: I don't think he testified to any inconsistencies, so could you rephrase, please.
MS. KAUFMAN: Sure.
BY MS. KAUFMAN:
**Q. So when you spoke to Sharon, you said a few moments ago, "I said I didn't speak to Derrick because I didn't go into his office and use those words."**
**Is that a fair recap?**
A. What I was responding to Sharon, she was asking if I did go into Derrick's office and cuss, and I said no. She apparently says that that -- or she probably took -- it sounds as though she heard me say I didn't go into Derrick's office.
**Q. Okay. So she just misheard?**
A. Potentially.
**Q. And now you heard Sharon come up here and say that at first you told her you didn't talk to Derrick at all. Did she mishear that too?**
A. I'm speaking to Sharon about did I resign;


she is speaking to me did I talk to Derrick. So the context in this meeting --
**Q. So you never told her you didn't talk to Derrick?**
A. So the context of this meeting was she just told me I resigned. So --
**Q. The question I asked --**
MS. FRIERDICH: Could you let him finish his answers, please. Please don't interrupt. Thank you.
Go ahead, Pete.
BY THE WITNESS:
A. I'm sorry, I'm going -- trying to cancel this, the echo. But the context of this conversation was Sharon was asking me rapid-fire questions behind telling me that I just resigned. So what I'm responding to her about did I go into Derrick's office and curse, I said no.
So then she asked me if I went into Derrick's office, and I said yes, I went into Derrick's office.
BY MS. KAUFMAN:
**Q. Okay. So do we all agree that there was a heated conversation with Derrick on the phone?**
A. Define "heated."
**Q. Well, to my recollection, you've used the**


**word too, so what does it mean to you?**
A. That's why it's not heated. It's common.
**Q. Okay.**
A. "Heated" would be defined as, for me, pounding on my steering wheel, saying F you and F this job, I quit.
That's heated. That never occurred.
**Q. So if Sharon recalls you using the word "heated," she also misheard that?**
A. I don't recall using the word "heated."
**Q. Okay.**
A. Sharon did not mention the phone call. Sharon spoke to the office visit.
**Q. Oh, so Sharon didn't ask you about the phone call at all?**
A. Not that I recall.
**Q. Okay. So let's see. Now, you did tell us that that call lasted 58 seconds and nobody is disputing that. Now, I'm going to be straightforward. It doesn't take you 58 seconds to say "I F'ing quit, I'm done, I F'ing quit," does it?**
A. Do you remember Mr. Melton's testimony as to how much was involved in that personal conversation, are you okay, all of those questions?
**Q. I'm asking the questions.**


A. Okay.
**Q. Okay.**
A. Please re- -- please repeat your question, please. Thank you.
**Q. It is, you are physically capable of saying "I F'ing quit, I F'ing quit" in under 58 seconds?**
A. That is absolutely possible.
**Q. Okay. Let's see. And so the fact that -- do you recall Eugenia testifying that right after she cancelled that one-on-one, you came up to her and asked, Is he mad, is he angry at me?**
A. I don't recall that specific conversation. I wasn't concerned if he was upset with me.
**Q. So if Eugenia recalls it, she was just -- she must be misremembering?**
A. I won't repeat what Eugenia recalls. I just don't recall.
**Q. Okay. Let's see. Okay. I don't think I have anything further. Thank you for your time.**

**REDIRECT EXAMINATION**

BY MS. FRIERDICH:
**Q. So, Pete, 58 seconds. We have Dr. Cunningham in the hearing now. I don't think she was here for Mr. Melton's testimony. What did**

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM



**Mr. Melton say you all talked about in that 58 seconds?**

**I think you're on mute, Pete. Sorry.**

A. I'm sorry. I'm trying to toggle back and forth. The statement was that I said that I quit. He asked me, Who are you talking to. I said, You. I mentioned about my -- my household situation with my wife. There were -- there were other conversations in there that I doubled-down on, and we discussed the six people that directly report to me and how I was going to confirm it.

So there were -- there were several things in that 58 seconds.

**Q. And that's according to Mr. Melton. And when you say your family situation, what are you referring to?**

A. So in -- in December, I sat in front of the C-team, and I told them that my wife after 16 years had just been RIF'd and that things were going to get kind of crazy through the holidays, but that was going to happen on January 16th, which happened to be her birthday, so it was a very emotional time.

So I told the C-team that in December. So I told -- Dr. Miller was there, Ladevich, Sharon



Foote, Gina, Derrick. So I said that in front of the team because that's work family and we want work family to know. So did I bring that up again in the phone call in 58 seconds? No.

**Q. Okay. And there's a lot of talk about when this supposed resignation happened -- did we lose him? Oh, I see you. You just moved on me, Pete.**

**There's a lot of talk about when this supposed resignation happened, was it on the phone, was it in the office. When you left the office after talking to Mr. Melton after the phone call, you felt it was resolved?**

A. Yeah, I thought it was resolved.

**Q. Okay. And --**

A. Given all of the pieces that are working and transitioning a health center from the public health, there are lots of exchanges that happen in the hallway. So this was just another.

**Q. Right.**

A. We don't have a hostile work environment.

**Q. So if Sharon's account is that you were confused, you were confused because --**

A. I was absolutely confused.

**Q. Because you were told that you had resigned, and you hadn't?**



A. I was told that I had resigned, and I had not.

MS. FRIERDICH: Okay. Thank you, Pete.

MS. KAUFMAN: Nothing further.

MS. FRIERDICH: We're not calling any other witnesses for confirmation.

COMMISSIONER BOOKER: Thank you. Do you all -- would you like to have closing statements? Or is there anything else you'd like to offer?

MS. FRIERDICH: I believe that the findings of fact and conclusions of law, I will need to amend mine because the story we heard here was not the story that we understood. So I'm asking for leave to amend that.

CLOSING STATEMENT ON BEHALF OF APPELLANT

MS. FRIERDICH: For final statement in two minutes, you heard here that there's a dispute with regard to what was said, and there's one person who was able to resign someone else's position without them knowing and without any ability to respond to it.

And this is a C-suite position. And so what the Commission is being asked to do is say that that's just fine. And we heard from Dr. Cunningham, again, verbal terminations come in and are not in good standing, and those people leave. They up and leave. They pack up and they walk out. They don't continue



working. And Pete continued working.

There's all of the evidence in the world he denied it every single time. He continued working. He thought it was resolved. He never said it. So there's just not -- there's not enough here to impact someone's livelihood in the way that it has been and being shut out completely. He has been out of work since the 6th.

It's time to make a decision, reverse this, and consider it a dismissal, and none of the due process related to a dismissal was followed here. So even just ignoring the he said/he said situation, this Commission should find on procedural grounds that this thing was not done right.

So we ask for you to reverse it and all of the other things that we ask in our prayer, restate him with the same position, all of the back pay, all of the benefits, give him back his office and let him get back to work. Thank you.

So is there any other business that needs to be --

MS. KAUFMAN: Yes, I would like to make a closing statement as well.

MS. FRIERDICH: Oh, sure.

CLOSING STATEMENT ON BEHALF OF RESPONDENT

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


MS. KAUFMAN: So what you are being asked to find today is rather whether there is competent and substantial evidence for Dr. Cunningham's decision. We are not denying the existence of a factual dispute. He said/he said is a pretty good way to put it, and I don't envy you your task today because what you have before you is to determine whether Mr. Wyatt's resignation was supported by competent and substantial evidence based upon a total of what was said in 58 seconds.

But what we have heard are indications of a lack of credibility, a story that changes, a conversation that doesn't occur at all, and then it does, and then it was heated, and an F word we can't remember using, until we got a good answer for why about a month and a half later.

What you have not heard is any reason to gin up a resignation, any reason to claim that Mr. Wyatt left and said those words, "I fucking quit" when he didn't. Because Ms. Frierdich is absolutely right about that. Nobody is disputing that Mr. Wyatt was a competent employee.

But what we do have is competent and substantial evidence to hold him to his word, and that's all the Commission is being asked to do today.


Thanks.

MS. FRIERDICH: So my question, Mr. Goldkamp, was, is there an opportunity or any indication that the Commission wants to ask Pete any questions, or is that part of the hearing process? I don't want to cut that off, if there are any questions.

MR. GOLDKAMP: The commissioners have opportunities to ask questions of -- of all witnesses as, you know, as they're called. I guess we can confirm before Mr. Wyatt is, you know, let off the proverbial stand if they want to ask him any questions.

MS. FRIERDICH: Okay. Well, I thank you for your time. Is there any other business? I'm not familiar with these as you are, Mr. Goldkamp.

MR. GOLDKAMP: So I believe the hearing officer has one final statement to close this out and then the hearing can go off the record, but the Commission is going to need to, you know, do some procedural stuff to go back in open session and end the meeting.

COMMISSIONER NUNN: Before we do that, I would move that we will allow everybody to give ten days to file either amended findings of fact and conclusions of law or for the County to file the same, but -- and to include the statement from the young lady that made


the statement. We want to do that. I would so move.

MR. GOLDKAMP: So before -- before we do that, can I -- can I give the Commissioners some information that I think may be...

So the findings -- generally what the Commission has done is -- and this will be in the final statement that Commissioner Booker was about to make, is it's 30 days after the receipt of the transcript. And I understand if you want to shorten that period, that's -- that's certainly within your prerogative.

But the findings of fact and conclusions of law cite the transcript, so I don't know how the County or opposing counsel can submit -- submit a findings of fact and conclusions of law before getting a copy of the transcript.

So generally we've made a date that it's basically -- what we usually do is 30 days from the receipt of transcript, but it's usually a date from the receipt -- receipt of the transcript.

MS. FRIERDICH: Is there a --

COMMISSIONER NUNN: I would move to amend to make 30 days -- please do the amendment, as well as the County, have their chance to make findings of facts and conclusions of law within that time period.


COMMISSIONER BOOKER: Someone else was speaking? Did someone else have something to say before you said that?

MS. FRIERDICH: I was -- this is Katherine. I was just asking whether or not we can expedite the transcript, if that's possible? We are at March 30th and Mr. Wyatt has been out of work and unpaid since February 6th.

COMMISSIONER BOOKER: Either way, we still have 30 days, yes.

COMMISSIONER NUNN: Can I have a motion on those?

COMMISSIONER BOOKER: I'll second.

COMMISSIONER HOFFSTEN: And may I just say before we vote, I'm not sure that we're in a position as a Commission to expedite the transcript itself, I don't think.

COMMISSIONER BOOKER: Exactly.

COMMISSIONER HOFFSTEN: Noah, is that the case?

MR. GOLDKAMP: I would say I think --

MS. FRIERDICH: That was to the court reporter, I believe.

COMMISSIONER HOFFSTEN: That's right. We can certainly amend the period of time we're allotting once the transcript is produced, but we can't really

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 165

impact the timeline of when the transcript is ready to be sent out. Correct?
MR. GOLDKAMP: Yes.
COMMISSIONER BOOKER: Yes, exactly. But I'll second the motion on the floor.
COMMISSIONER HOFFSTEN: Could you repeat the motion back, Commissioner Nunn?
COMMISSIONER NUNN: Yes, I would move that we would allow the 30 days for the -- the ability to amend findings of fact and conclusions of law, and the County to be able to do the same, including filing the statement that was supposedly made by -- I can't think of her name now -- the statement from the young lady that was not included with anything that was sent by the County.
MS. FRIERDICH: Well, I --
COMMISSIONER BOOKER: I believe that will be included -- will that not be included because you asked for that or not?
MS. FRIERDICH: That was not presented here as an exhibit, so it's not in the record and so I would object to anything outside of the record being included in the record by the County at this point, yeah. So we need to -- we need to stick with what they presented. That's my motion.

Page 166

COMMISSIONER BOOKER: Can she make a motion?
COMMISSIONER HOFFSTEN: Commissioner Nunn, could we amend your motion to remove the statement that you referred at the end?
COMMISSIONER BOOKER: Oh, goodness. What is the final motion?
COMMISSIONER NUNN: 30 days for amendment of the findings of fact and conclusions of law, and for the County to be able to have that same 30 days, but I included the statement. So now there's an objection to that.
MS. KAUFMAN: I would -- I would respond to the objection that the Commission does have the sua sponte right to request as part of their investigation any documentation they would like under Civil Rule -- Service Rule 22 and to interview any witnesses they would like and to conduct an investigation under such parameters as they see fit. You've got a lot of broad discretion here.
COMMISSIONER BOOKER: I would like to see this transcript. So I -- I'm going to second the motion that -- that Commissioner Nunn made.
COMMISSIONER HOFFSTEN: I guess I'm just confused about what exactly the statement, who the individual the statement is from?

Page 167

COMMISSIONER BOOKER: So the young lady was interviewed by the HR person, who is also the assistant to Cunningham.
MS. KAUFMAN: Ms. Pike.
COMMISSIONER BOOKER: Ms. Pike. And that was not -- that was not originally included in the discovery or something like that. So we want to see that.
COMMISSIONER HOFFSTEN: Then I will support the motion.
MS. FRIERDICH: The problem with that is due process, that we are not able to confront that witness on that statement, as we have not been provided that statement.
So while it is true that the Commission can do an investigation, that witness testified today, but the statement was not before us so we were not able to ask her questions about it. So Pete's due process is in jeopardy by including evidence that was not presented by the County.
COMMISSIONER BOOKER: This is not a regular court of law. What is the remedy? This is not a regular court of law. We would like to see this statement.
COMMISSIONER NUNN: That's the motion.

Page 168

COMMISSIONER BOOKER: I still second it.
All of those in favor?
Aye.
COMMISSIONER NUNN: Aye.
COMMISSIONER HOFFSTEN: Aye.
COMMISSIONER BOOKER: Does anyone have any other motions or issues they'd like to present?
MS. FRIERDICH: No.
COMMISSIONER BOOKER: Okay. Then closing, you will be notified when the transcript of these proceedings have been received in the division of personnel. Findings of facts and conclusions are due to the County HR within 30 days after receipt of the transcript, which is March 30th, 2026. The Commission will --
MR. GOLDKAMP: We don't know the date of the receipt of transcript.
COMMISSIONER BOOKER: Oh, I thought it was -- I thought it was 30 days from this date? I thought you were -- I thought that was the date that I'm saying, 30 days from this date. Is that not what we're saying?
MR. GOLDKAMP: My understanding is it's 30 days after receipt of the transcript.
COMMISSIONER BOOKER: Okay. So then we do not

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Page 169

know that date. Okay. Well, then -- which date is unknown. The Commission will consider all documents at their next regular meeting after the transcripts are received. You will receive written notification of that meeting.

Thank you to everyone who is involved. This hearing is concluded.

MS. FRIERDICH: Thank you.

MS. KAUFMAN: Thank you.

---

Thereupon, at 4:18 p.m., on Monday, March 30, 2026, the hearing was concluded.

---

Page 170

CERTIFICATE OF OFFICER

I, JULIANA F. ZAJICEK, a Registered Professional Reporter and Certified Shorthand Reporter, do hereby certify that I reported in shorthand the proceedings had at the remote hearing aforesaid, and that the foregoing is a true, complete and correct transcript of the proceedings of said remote hearing as appears from my stenographic notes so taken and transcribed under my personal direction.

IN WITNESS WHEREOF, I do hereunto set my hand of office this 12th day of April, 2026.

JULIANA F. ZAJICEK, Certified Reporter

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

WORD INDEX


< 1 >
**1** 12:4 59:22, 25 131:17 143:5
**10** 151:21
**10:00** 138:17, 20
**10:15-ish** 38:23
**100** 112:17
**105** 4:6
**106** 3:4
**109** 4:8
**11:30** 140:22
**116** 4:9
**118** 4:11
**12:00** 1:3
**12:23** 16:18
**12:30** 131:2
**12:35** 131:2
**12:40** 131:14, 18
**12:50** 82:14 83:12 84:5 132:17
**12:55** 132:17
**122** 4:13
**12-something** 91:12
**12th** 146:6, 8 170:13
**14** 29:5
**15,154** 25:12
**152** 4:14
**156** 4:15
**159** 3:6
**15th** 141:13
**16** 157:19
**161** 3:7
**16th** 146:24 157:21
**17th** 150:11
**19** 25:15 98:2 99:3
**19th** 122:15
**1st** 150:20 152:10

< 2 >
**2** 5:20
**2.1** 5:21
**2:00** 137:20
**2:32** 106:3, 7
**2:37** 106:5
**2:39** 106:7
**20** 25:16
**2011** 77:19
**202.100** 25:13
**2022** 77:21
**2023** 85:23
**2024** 77:16 94:18 122:15
**2025** 95:1
**2026** 1:3, 12 16:18 28:12 31:6 86:16 87:17 168:14 169:12 170:13
**20th** 150:15, 19
**21** 25:15
**22** 23:2 25:15 166:16
**25** 66:2
**26th** 150:14
**28** 3:3

< 3 >
**3** 11:21 14:18 108:25 143:5
**3:00** 111:9 137:21
**30** 1:3, 12 3:13 34:13 38:22 163:8, 18, 23 164:10 165:9 166:7, 9 168:13, 19, 21, 23 169:12
**30th** 5:5 16:17 164:6 168:14

< 4 >
**4:00** 111:9
**4:18** 169:11
**4:30** 65:4 71:15
**4:57** 145:15
**40** 3:14
**45** 34:13 38:20, 22

< 5 >
**5:30** 130:16, 19 138:5, 7
**55** 3:15
**57** 3:16
**58** 129:1, 2, 8, 10 132:24 133:6 155:18, 20 156:7, 23 157:2, 13 158:4 161:10
**58-second** 133:1
**5th** 28:12 31:6 32:1, 22 33:12 37:21 39:11 47:11, 18 49:21 50:25 51:24 56:21, 24 57:16, 17, 18, 25 62:7 67:19 68:8, 14 70:10, 13, 14, 15 71:10, 13 72:12 73:14 74:12 78:13 79:2 81:20, 22 83:22, 24

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


86:*16*
87:*17*
89:*11*
95:*25*
107:*19*
110:*11, 12, 25* 113:*22, 25* 114:*5*
119:*5, 24*
124:*21, 23*
125:*1*
134:*4*
135:*15*
138:*16*
141:*14, 17*
149:*17*

< 6 >
**6** 66:*15*
**6:50** 146:*3*
**61** 3:*18*
**67** 3:*19*
**6th** 46:*13, 15* 47:*13* 48:*8* 56:*24* 69:*14* 71:*19* 72:*1, 13* 79:*4, 7* 82:*3, 8, 15* 83:*12, 22, 24* 102:*6, 16* 107:*20, 21* 111:*22, 23, 25* 112:*6, 10* 113:*2* 120:*14* 121:*1, 4* 122:*12* 124:*21* 135:*15* 140:*21* 141:*15* 143:*19* 144:*2* 160:*8* 164:*8*

< 7 >
**7.020** 25:*11*
**74** 3:*20*
**77** 3:*22*

< 8 >
**8** 125:*2*
**8:00** 127:*25*
**81** 3:*23*
**85** 4:*4*

< 9 >
**9:00** 34:*9*
**9:03** 41:*3* 130:*24* 141:*11*
**9:06** 141:*11*
**9:30** 34:*15* 38:*22*
**9:30-ish** 34:*10*
**9:50** 45:*1*
**93** 4:*5*
**9th** 145:*15*

< A >
**a.m** 127:*25* 138:*17, 20* 145:*15* 146:*3*
**ability** 49:*8* 159:*19* 165:*9*
**able** 57:*7, 9* 60:*14, 15* 97:*3* 98:*21* 101:*15* 125:*17* 131:*9* 140:*18* 159:*18* 165:*11* 166:*9* 167:*12, 18*
**Absolutely** 32:*3* 35:*25* 39:*9* 46:*7* 55:*8* 56:*16* 116:*18* 144:*9* 148:*4* 156:*8* 158:*23* 161:*20*
**accept** 11:*15* 24:*12, 15* 36:*12* 43:*19* 78:*23* 79:*5, 12* 84:*3* 87:*25* 89:*6* 90:*14* 93:*12, 24* 98:*19* 107:*8, 11* 142:*23*
**acceptable** 87:*14*
**acceptance** 22:*4* 29:*11* 56:*5* 81:*3*
**accepted** 22:*6* 23:*18* 29:*7* 37:*19* 38:*3* 47:*23* 48:*21* 79:*15* 81:*8* 82:*19* 87:*18, 20* 90:*11, 16, 20, 22* 94:*7, 25* 98:*17* 105:*9* 108:*3* 131:*20* 132:*11* 133:*19, 25* 150:*5*
**accepting** 26:*9* 87:*15* 145:*18*
**access** 42:*7* 57:*10*
**accidentally** 12:*14*

**accommodations** 101:*13*
**account** 48:*21, 23* 49:*7* 55:*19* 60:*7* 100:*14* 149:*9, 12* 158:*21*
**accounts** 18:*5*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**accuracy** 48:*6*
**accurate** 34:*3*
**actions** 87:*12*
**active** 125:*9* 126:*8*
**ADA** 101:*13*
**adamant** 136:*25*
**add** 25:*16* 60:*6* 116:7 132:*24*
**added** 116:*3*
**adding** 60:*1*
**additional** 19:*24* 67:*8*
**addressed** 12:*13*
**admin** 57:*11*
**administration** 101:*21*
**Administrative** 6:*21*
**administratively** 11:*14*
**admitted** 16:*5* 18:*1* 80:*10* 92:*15*
**advance** 18:*15*
**adversarial** 23:*24*
**advice** 11:*2*, *6* 78:*3* 100:*22*
**affect** 132:*13*
**affidavit** 50:*23* 68:*17*, *18*, *21* 69:*4*, *5*
**aforesaid** 170:7
**afternoon** 28:*10*, *11* 69:*17* 82:*8* 91:*12* 96:*2* 108:*19* 111:7, *9* 117:*18*, *19* 120:*18*, *19*, *25* 136:*13*
**agenda** 5:*24*
**aggressive** 36:*18*, *19*
**agitated** 70:*14* 111:*19* 120:*12*
**ago** 55:*17* 153:*11*
**agree** 13:7 19:*8* 56:*17* 154:*22*
**agreement** 19:*4*
**ahead** 5:*1*, *19* 8:*18*, *25* 16:*24*, *25* 65:*14* 91:*14* 154:*10*
**air** 142:*24* 145:*19*
**Akram** 5:*15*
**allege** 53:*21*
**alleged** 33:*2* 81:*19* 145:*8* 149:*9*
**allegedly** 148:*16*
**allotting** 164:*24*
**allow** 9:*5* 12:*23* 27:*22* 162:*22* 165:*9*
**allowing** 115:*2*
**amend** 159:*11*, *13* 163:*22* 164:*24* 165:*10* 166:*3*
**amended** 23:*22* 162:*23*
**amendment** 163:*23* 166:7
**angry** 62:*25* 63:*1* 65:*20* 66:*3* 71:*5* 72:*15* 73:*10*, *24* 110:*22* 156:*12*
**animal** 94:*22*
**answer** 23:*15* 52:*21* 63:*21* 79:*23* 80:*1*, *23* 137:*21* 161:*15*
**answered** 95:7 99:*20* 118:*18* 128:*19*
**answering** 72:*3* 94:*3*
**answers** 154:*9*
**anticipate** 29:*13*
**anybody** 8:*5* 67:*3* 70:*6* 90:*24* 100:*24* 111:*24* 113:*18* 116:*17* 139:*15*
**anybody's** 25:*14*
**anymore** 141:*19*
**apologize** 22:*9* 35:7 65:*9* 70:*18* 71:*1*, *2* 130:*4* 136:*6*, *13*
**apologized** 147:*16*
**apparently** 131:*12* 153:*17*
**Appeal** 5:*22* 15:7 16:*2* 40:*20* 109:*24*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

118:5
133:1
146:25
**APPEALS** 1:7 5:21
**appear** 17:17
**appears** 15:9 170:9
**Appellant** 1:8 2:12, 19 3:4, 6 15:8 106:20 159:14
**appellant's** 18:9 19:3
**appellate** 104:7
**appended** 147:3
**apple** 61:9
**application** 102:3
**appoint** 6:2 7:8
**appointed** 49:6 56:9 104:16
**appointing** 11:4, 10 15:10 28:23 87:7 93:11 98:1 107:3 115:4
**appreciate** 12:8 55:7 59:11 60:13 93:9 103:10 105:3
109:25
114:20
118:6
121:13
**approach** 135:14
**approached** 142:23 143:21 144:4
**appropriate** 7:18 8:8
**approximately** 43:12
**April** 150:20 170:13
**argument** 26:14 111:17 133:17 135:15, 16
**arrangements** 55:18
**arrived** 30:1
**arriving** 144:1
**Article** 25:11
**ASAP** 112:16
**aside** 66:21
**asked** 33:21 34:3, 20, 24 35:8, 11, 17 37:4, 15 38:2, 7, 17 39:19 40:9 41:5 43:18, 21 44:1, 4, 6 48:3
50:23
51:13
54:25
55:17 59:6 62:17 64:3, 4 68:16, 22 73:22 78:22 79:5, 12, 20 80:4, 8, 13, 17 106:24 107:25 125:16 132:2 141:22, 25 154:7, 18 156:12 157:6 159:21 161:1, 25 165:19
**asking** 24:17 35:3, 21 51:15, 17 52:4 56:17 62:15 67:25 71:4, 5 72:15 73:10, 11 83:18 99:20 103:7 108:9 141:12 153:16 154:14 155:25 159:13 164:5
**asks** 107:9 114:25
**assigned** 12:3
**assignment** 48:5
**assignments** 152:4, 5
**assistance** 141:12
**assistant** 29:11 49:13 57:11 69:20 77:12 91:1 93:1 114:13, 15 167:3
**assistant's** 42:9 126:9, 11
**Associate** 15:12
**associated** 31:1, 15
**assumed** 49:11 73:1
**assuming** 13:9
**assumption** 58:21
**attachments** 147:3
**attempted** 29:9
**attendance** 12:17
**attention** 46:17, 20

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**attorney** 7:1 8:8 15:10, 11 19:3
**attorneys** 15:16 16:9
**audible** 86:7
**audience** 35:8
**audio** 86:10 119:2
**audit** 151:20, 21
**August** 122:15
**authority** 11:4, 10 15:11 25:9 28:23 49:6 56:10 87:7 93:11 98:1 101:25 104:16 107:3 115:4
**available** 10:2, 8 42:10 126:12 130:12
**avoid** 116:20
**aware** 44:24 46:12, 14 50:19 58:13 65:17 81:18, 21 83:19 84:11 112:1, 8 121:3 136:24
**Aye** 7:13, 14, 15, 24 8:1, 3 14:3, 4, 5 25:25 26:1, 2 28:2, 3 115:23, 24, 25 168:3, 4, 5

**< B >**
**back** 14:11, 12 22:3 33:21 34:1, 12 44:10, 23 55:23 59:5 63:24 66:17 67:17 72:6 77:23 88:24 89:1, 25 94:17 96:24 97:12 98:18 105:22 106:2 107:2 113:7 125:13, 21 126:21 128:8 130:9, 20 131:1 136:4, 15 138:15 141:14, 15 144:19 147:12 148:21 150:4 157:4 160:17, 18, 19 162:20 165:7
**back-and-forth** 92:11, 20
**background** 32:16 37:7 117:20
**backing** 43:14
**bad** 70:16
**badge** 55:19 84:8 91:15
**ball** 134:16
**banter** 124:7 127:9
**based** 92:4 100:13, 19 103:25 104:1 107:22 149:9 161:9
**basically** 35:21 36:10 44:6 163:18
**basis** 78:1, 2
**beating** 36:20 50:11 58:16 128:24
**becoming** 65:20
**began** 35:1 122:15 125:2, 7
**beginning** 62:11 95:19
**behalf** 21:6 28:9 78:23 79:12 81:6 84:3 90:20 106:20 133:24 159:14 160:25
**behavior** 124:16
**belief** 39:8
**believe** 7:16 9:21 12:21 13:10 16:23 18:5 19:4 25:13 29:1 30:1 40:6 43:17 45:1 50:19 61:20 82:14 83:24 94:3 106:16 113:3, 8 114:3 115:3 130:24 139:22 142:10, 13 147:12 159:10 162:16 164:22

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

165:17
**belong** 125:5
**benefit** 15:19 30:18 37:5
**benefits** 160:18
**bereavement** 20:25
**best** 58:24 81:8
**Billy** 91:21
**birthday** 157:22
**bit** 29:21 31:14 67:17 76:23 99:17 128:9 140:17
**Black** 72:22
**blind** 18:16
**blowing** 128:14 130:8 137:3
**board** 101:25 102:3 105:24 146:16, 17
**Bogan** 94:20
**Booker** 2:4 5:12, 13 6:6, 10, 11, 14, 16, 19, 21, 25 7:3, 5, 9, 14 8:2, 3 13:2, 7, 12, 17, 22, 25 14:2, 5, 19, 22, 25 15:3, 5, 19, 23 17:21 18:4, 17, 20, 24 19:8 20:15, 16 21:13, 22, 25 22:7, 16 23:11 24:6, 10, 14, 18, 23, 25 25:4, 21, 25 26:7, 8, 16, 25 27:4, 8, 12, 15, 18, 22 28:1, 4, 7 29:18 30:2 59:18 75:19, 23 76:2, 7, 10, 13, 16 105:17 106:1, 5, 11, 16, 18 108:20 115:20, 22, 25 116:10 117:4 159:7 163:7 164:1, 9, 13, 18 165:4, 17 166:1, 5, 20 167:1, 5, 21 168:1, 6, 9, 18, 25
**booted** 104:6 151:19
**bought** 129:15
**branch** 30:25
**break** 61:13
**breakout** 11:15 12:2, 3
**Brenda** 130:15 137:17 139:2
**bridge** 21:10
**brief** 18:11 22:4 23:17 24:5, 13, 15 75:22 76:1 122:16 152:20
**briefly** 106:8 111:5
**bring** 8:5 21:16 75:9 116:24 139:10 158:3
**bringing** 10:20 21:15 101:10
**brings** 18:6
**broad** 166:18
**BROADUS** 4:10 19:10 20:19, 21 117:14, 16, 18, 23 118:3 121:18, 19 123:1
**brought** 9:12 22:22 142:13
**building** 46:10 79:11 83:12 102:7, 11 104:6 127:20 131:2
**bullshit** 66:22
**business** 49:8 52:11, 17, 19 58:2 119:20 135:20 160:20 162:14
**busy** 33:19
**butchering** 101:25
**button** 7:7 11:25
**buy** 129:13
**Bye-bye** 84:21

**< C >**
**cabinet** 118:16
**calendar** 57:8 60:14 63:17, 19 64:14, 20, 22 72:10 120:1 127:24 129:22

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

136:*17*
142:*20*
**call** 5:*1*, *4*, *6* 7:*21*
9:*18* 14:*7*
18:*18*
21:*17*, *19*
25:*5* 26:*11*
28:*17*
29:*18*, *19*
34:*11* 35:*9*
37:*10*
43:*24* 49:*4*, *7* 50:*24*
53:*18*
59:*20*
63:*24*, *25*
70:*13*
73:*17*
75:*23* 76:*2*
80:*8*, *9*
83:*11*
84:*17* 89:*4*
90:*4* 106:*8*, *14* 107:*3*
108:*11*
112:*16*, *17*
117:*13*
121:*21*
125:*13*
126:*3*, *19*, *20* 128:*22*, *25* 129:*4*
133:*1*, *7*, *8*
137:*11*
147:*12*
151:*14*
155:*12*, *15*, *18* 158:*4*, *11*
**called** 9:*11*
20:*21*
28:*22*
30:*11*
33:*16*, *21*
34:*5* 37:*11*
42:*11*
43:*24* 44:*4*
60:*24*
63:*21* 72:*2*, *5* 73:*16*, *17*
77:*2* 85:*10*
87:*2* 89:*16*
90:*3*, *22*
100:*20*
101:*16*
109:*19*
112:*18*
117:*24*
120:*18*
122:*4*
125:*11*, *15*, *19*, *21*
132:*18*
147:*22*
162:*9*
**Call-in**
11:*21* 14:*17*
**calling**
17:*18* 41:*2*
159:*5*
**calls** 26:*17*, *18* 33:*22*
52:*13*
53:*17*
64:*24*
96:*25*
97:*13*
112:*9*
125:*8*, *9*
126:*19*, *21*
147:*10*
**calmly**
132:*19*
**camera**
11:*16*
109:*14*
**cancel**
72:*12*, *24*
73:*1*, *4*
140:*9*
154:*12*
**cancellation**
140:*8*
**cancelled**
71:*4*
130:*21*
140:*2*
141:*3*
156:*11*
**cancelling**
72:*18*
**cancels**
72:*19*
140:*11*
**candidates**
151:*22*
**capable**
156:*5*
**capacity**
142:*17*
**car** 43:*14*
49:*22*
125:*20*, *21*
131:*3*, *4*, *8*
132:*19*
138:*1*, *9*
**Cardinals**
113:*14*
**care** 12:*8*
31:*19*
32:*16*
54:*15* 72:*9*
94:*22* 152:*4*
**career**
35:*23*
122:*17*
**carefully**
86:*8*
**CARLTON**
4:*12* 122:*3*, *10*
**Carter-Hicks**
5:*16*
**case** 11:*5*
87:*23* 91:*5*, *19* 99:*12*
104:*25*
149:*8*
164:*19*
**catch** 25:*2*
130:*13*
137:*24*
138:*14*
**catching**
135:*5*
**catty-corner**
110:*9*
**caught** 32:*19*
**cause** 19:*18*
140:*3* 152:*6*
**cell** 33:*17*
52:*11*, *18*
127:*3*, *5*, *6*
**Centene**
112:*2*
121:*4*
130:*25*
131:*10*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

140:22
141:8
142:9, 16
**Center** 31:3
131:16
143:2, 16
158:16
**Centers**
19:13
146:17
**certain**
17:16 42:1,
22 148:4
**certainly**
106:22
163:10
164:24
**CERTIFICATE**
170:1
**Certified**
1:16, 17
170:4, 19
**certify**
170:5
**cetera**
124:14
128:24
147:5
**CFO** 114:7
129:18
139:11
**chair** 127:3
**chairman**
146:15
**Chairwoman**
5:2, 8
7:23 11:15
**chalk** 153:2
**chance** 27:7
37:3 163:24
**change**
42:23 101:9
**changed**
79:23
**changes**
152:3
161:12
**changing**
79:25
**Chantal** 2:6
**chart** 42:8,
20, 23 126:8
**charter**
25:8, 10
**chat** 12:12
78:4
**check** 32:8
58:17
64:20 66:7
112:15
147:11
**Chief** 19:12
30:24
31:13
42:21
122:13
123:2
138:22
**choose** 6:1
21:15
**cite** 22:21
163:13
**CIVIL** 1:2
2:3 15:6
16:9 25:13
29:3, 16
44:17
98:15
101:25
104:12, 15
152:1
166:15
**claim** 161:18
**claimant**
21:19
**clarified**
136:11
**clarify**
23:24
56:19 63:8
88:18 136:5
**clarity**
73:17
**clear** 19:22
40:9 73:12
94:4 119:2
136:12, 15
**clinical**
31:2, 19, 24
32:17
123:16, 17
152:2
**close** 29:13
162:17
**closed** 5:24
7:18, 21
8:6, 9, 18,
20, 23 9:3
14:7, 16
17:7, 8
119:14
127:17
**closely**
62:1 65:2
**CLOSING** 3:6,
7 26:14
27:9, 24
159:8, 14
160:23, 25
168:9
**CMO** 114:7
**coat** 62:14
**cold** 24:2
**collect**
17:5 22:12
23:4, 8
84:8
**collected**
92:6
**column** 6:24
**come** 21:10
32:15
36:19 59:1
66:17
87:13
88:11, 25
91:22
93:16, 23
105:22
106:2
153:22
159:23
**comes** 66:6
93:21 98:10
**coming**
18:15 24:2
44:23 46:7
87:3 88:9
92:17
93:20
100:5
102:8, 10
108:15
**COMMISSION**
1:2 2:3
6:1, 3
10:17 11:3,
6 12:23
15:6 16:3,

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

6, 10 17:4, 9, 13 18:13, 15 22:6, 11, 13 23:3, 7, 13, 19 24:1, 12 26:23 31:14 51:9 104:16 106:25 107:11 115:2, 7 144:24 150:11 159:21 160:13 161:25 162:4, 18 163:6 164:16 166:13 167:15 168:14 169:2
**Commissioner** 2:4, 5, 6 5:4, 9, 10, 11, 12, 13, 14, 15, 16 6:5, 8, 10, 11, 13, 14, 16, 18, 19, 21, 25 7:3, 5, 9, 10, 11, 13, 14, 15, 20, 22, 24, 25 8:1, 3 11:19, 23 12:2, 6, 9 13:2, 6, 7, 12, 17, 22, 24, 25 14:1, 2, 3, 4, 5, 6, 18, 19, 20, 22, 25 15:3, 5, 19, 23 17:21 18:4, 17, 20, 21, 24, 25 19:8 20:7, 10, 14, 16 21:13, 22, 25 22:2, 7, 16 23:11 24:6, 10, 11, 14, 16, 18, 19, 23, 25 25:4, 21, 22, 23, 24, 25 26:1, 2, 7, 8, 9, 16, 25 27:2, 4, 6, 8, 10, 12, 15, 18, 20, 22, 25 28:1, 2, 3, 4, 7 29:18 30:2 59:18 75:19, 23 76:2, 7, 10, 13, 16 105:17 106:1, 5, 11, 13, 16, 18 108:20, 21, 22 115:10, 13, 14, 17, 20, 21, 22, 23, 24, 25 116:10 117:4 145:2 159:7 162:21 163:7, 22 164:1, 9, 11, 13, 14, 18, 19, 23 165:4, 6, 7, 8, 17 166:1, 2, 5, 7, 20, 22, 23 167:1, 5, 9, 21, 25 168:1, 4, 5, 6, 9, 18, 25
**COMMISSIONERS** 2:3 11:8 16:2 17:16 24:2, 22 27:1 28:10 162:7 163:3
**Commission's** 11:7 108:16
**commitment** 125:6
**committed** 129:13
**common** 124:7 155:2
**communicate** 37:12 81:5 83:25 93:22 104:4
**communicated** 29:11
**communication** 51:14 105:11
**Community** 19:12 72:23
**company** 92:7
**compel** 17:16
**compelled** 17:12 23:1
**competent** 161:2, 8, 22, 23
**complaining** 124:16
**complaint** 124:18
**complaints** 152:13, 14
**complete** 170:7
**completed** 152:9
**completely** 101:9 160:7
**compliant** 66:7
**computer** 11:16, 22 84:8 86:10 97:5, 7
**con** 139:12
**concern** 58:17 100:19 133:15 140:4, 8
**concerned** 73:9 90:9 100:12 101:3, 4 156:14
**concerning** 15:16, 17
**concerns** 87:4 88:9

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


**conclude** 28:*20*
**concluded** 169:7, *12*
**conclusion** 29:*14*
**conclusions** 18:*10*, *12* 22:5, *19* 23:*18* 24:4, *8* 159:*11* 162:*23* 163:*12*, *15*, *25* 165:*10* 166:*8* 168:*12*
**concur** 13:*6* 19:*8* 24:*10*
**condition** 47:*15*
**conduct** 16:7 33:*2* 52:*11*, *17* 119:*19* 166:*17*
**conducted** 58:*9*
**conducting** 58:*2*
**confer** 105:*21*
**confirm** 14:*17* 41:*25* 46:*1* 60:*1*, *9* 125:*25* 157:*11* 162:*10*
**confirmation** 52:*3* 159:*6*
**confirmed** 42:*14* 107:*13* 126:*1*, *3* 136:*18*
**conflicting** 18:*5*
**conform** 16:*16*
**confront** 167:*12*
**confronted** 82:*14* 124:*15*
**confused** 126:*18* 152:*24* 153:*3* 158:*22*, *23* 166:*24*
**connection** 47:*3*
**consecutive** 148:*14*
**consecutively** 99:*4*
**consider** 16:*13* 17:*20* 26:*23* 101:*12* 160:*10* 169:*2*
**considered** 16:*21*
**consistently** 144:*11*
**consists** 61:*24*
**consumer** 146:*16*
**contact** 37:*20* 55:*24* 62:*18* 63:*14* 89:*15*
**contacted** 55:*18*
**contacting** 56:*14*
**contemplating** 86:*17*, *19*
**contemporaneous** 44:*21*
**context** 126:*5* 130:*5* 132:*5* 136:*18* 154:*2*, *5*, *13*
**continually** 149:*1*
**continue** 49:*8* 108:*6* 109:*2* 116:*8* 159:*25*
**continued** 52:*6* 108:*6* 125:*19* 128:7 129:*16* 131:*4*, *10* 132:*9* 137:*11* 148:*17*, *22* 160:*1*, *3*
**continuing** 45:*6* 95:*12*
**contract** 139:*12*
**control** 94:*23*
**convened** 15:*1*, *4*
**conversation** 28:*25* 36:*9* 37:*17* 38:*22*, *25* 39:*17* 43:*5*, *6*, *10* 44:*2* 47:*4* 50:*6*, *11* 51:*8* 52:*2*, *9* 53:*12*, *21* 54:*10* 58:*11*, *20*, *23* 63:*9* 67:*22* 68:*12* 73:*13* 79:*16* 80:*12*, *18*, *20* 81:*2*, *18*, *21* 83:*3*, *8* 89:*19*, *20* 90:*8* 91:*8* 92:*12*, *13*, *14*, *16*, *18* 97:*23* 104:*19* 105:*1* 113:*13* 116:*18* 120:*22* 129:*20* 134:*13* 137:*6* 139:*11*, *12*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

154:*13*, *23* 155:*24* 156:*13* 161:*13*
**conversations** 46:*9* 47:*1* 50:*8* 51:*3*, *15*, *16* 53:*11* 64:*25* 78:*8* 118:*24* 120:*5* 129:*17* 134:*14* 139:*14* 141:*9* 157:*8*
**COO** 118:*12* 120:*23* 122:*17*, *23* 123:*15*, *16* 142:*17*
**cools** 73:*21*
**coordinate** 29:*22*
**copied** 50:*20*, *22*
**copies** 16:*4* 17:*24*
**copy** 10:*14* 75:*12* 103:*17* 104:*16* 163:*16*
**corner** 11:*25*
**Correct** 7:*4* 8:*23*, *24* 14:*20* 18:*2* 21:*24* 41:*6*, *7*, *16*, *17*, *19* 43:*24*, *25* 45:*25* 46:*13*, *15*, *16*, *18* 47:*8* 48:*9*, *25* 49:*1*, *18* 50:*1*, *16*, *17*, *21* 51:*24* 52:*12*, *24* 53:*9*, *25* 54:*23*, *24* 56:*21*, *22* 57:*2*, *18* 67:*20* 69:*20* 72:*10* 82:*4*, *5*, *23* 84:*9*, *10* 95:*16*, *21*, *23*, *24* 99:*4* 100:*16* 102:*16*, *20* 111:*1*, *2* 115:*12* 122:*14* 123:*12* 124:*2* 127:*20* 133:*1*, *25* 134:*1* 137:*12* 140:*23* 141:*5* 142:*18* 144:*25* 145:*8*, *22*, *23* 146:*11*, *13* 147:*1*, *2*, *6* 149:*21* 150:*1*, *11*, *16* 165:*2* 170:*8*
**correcting** 144:*3*
**corrective** 87:*12*
**correctly** 111:*5* 117:*14*
**correspondence** 144:*24* 145:*7*
**counsel** 51:*3*, *13*, *16*, *17*, *20* 53:*22* 67:*14* 69:*22* 81:*15* 93:*9* 103:*8*, *13* 133:*17* 149:*19* 163:*14*
**Counselor** 15:*12* 89:*25*
**counsel's** 103:*2*, *20*
**counts** 113:*4*
**COUNTY** 1:*1* 2:*9*, *21* 10:*11* 15:*6*, *11*, *12*, *13* 17:*14*, *18* 19:*17* 20:*3* 21:*18*, *22* 22:*1*, *15* 23:*6*, *13* 25:*4*, *10*, *11*, *12*, *20* 26:*11* 28:*4* 30:*23* 40:*23* 47:*4* 49:*8* 52:*12*, *19* 58:*2* 59:*18* 75:*19* 77:*11*, *18*, *22* 85:*18* 89:*1*, *25* 103:*2*, *19* 105:*17*, *19* 107:*1*, *2*, *21* 108:*7*, *10* 116:*11* 118:*9* 120:*17*, *20* 123:*12* 124:*16* 125:*4* 127:*24*, *25* 128:*1* 133:*17* 145:*7* 147:*20* 148:*1* 149:*4*, *16* 162:*24* 163:*14*, *24* 165:*11*, *15*, *23* 166:*9* 167:*20* 168:*13*
**couple** 17:*2* 22:*10* 25:*7* 57:*6* 80:*15* 90:*25* 105:*22* 112:*20* 126:*19*, *20*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

132:*15* 134:*18* 141:*9* 147:*10*
**course** 33:*5* 38:*24* 77:*22* 88:*23*
**court** 30:*18* 61:*6* 77:*7* 85:*15* 123:*4* 164:*21* 167:*22, 23*
**courtroom** 16:*17*
**cracked** 63:*5*
**crazy** 157:*20*
**credibility** 161:*12*
**crew** 152:*2*
**crews** 143:*15*
**critical** 124:*22*
**cross** 21:*10* 121:*15*
**CROSS-EXAMINATION** 40:*16* 67:*11* 81:*12* 93:*6* 116:*13* 152:*18*
**C-suite** 93:*14, 15, 20, 25* 94:*6* 95:*4, 6* 99:*16, 22* 100:*2, 7, 8* 134:*14* 159:*20*
**C-team** 157:*18, 24*
**Cunningham** 1:*9* 2:*15* 4:*3* 8:*9* 9:*18* 10:*18* 11:*3, 9* 12:*24* 13:*15, 18* 14:*9, 15* 21:*7* 28:*22, 25* 29:*7* 31:*5* 37:*11, 13* 39:*13* 43:*24* 44:*4, 5* 49:*5, 9* 51:*4* 52:*23* 53:*7, 9* 56:*3, 7, 9* 68:*23* 75:*21* 77:*13* 78:*19, 20* 79:*12* 81:*7* 82:*2* 83:*21, 23* 84:*25* 85:*5, 9, 14* 87:*6* 93:*4, 8* 105:*8, 15* 107:*13* 108:*1* 115:*3, 10* 116:*2* 117:*1* 118:*17* 131:*20* 132:*10* 133:*19* 144:*14, 15, 17, 19, 21, 22* 145:*16* 146:*3, 8, 23* 156:*24* 159:*22* 167:*3*
**C-u-n-n-i-n-g-h-a-m** 85:*16*
**Cunningham's** 29:*10* 69:*20* 161:*3*
**current** 126:*8*
**currently** 8:*22* 60:*8*
**curse** 35:*1* 43:*8* 84:*4* 90:*6* 119:*21* 135:*2* 154:*17*
**cursed** 28:*17* 33:*10* 39:*23* 128:*23*
**curse-laden** 49:*2* 58:*15* 83:*3, 8*
**curse-ridden** 43:*7*
**curses** 110:*22*
**cursing** 50:*10* 81:*24* 92:*10* 113:*18* 132:*22, 23*
**curve** 87:*5*
**cuss** 132:*3* 153:*16*
**cut** 162:*5*
**CX** 3:*14, 19, 23* 4:*5, 9, 14*

**< D >**
**daily** 32:*18* 61:*24*
**DAMON** 4:*10* 117:*14, 16, 23* 121:*19* 123:*1*
**data** 126:*11* 141:*22*
**date** 163:*17, 19* 168:*16, 19, 20, 21* 169:*1*
**David** 19:*10* 123:*1*
**Davis** 114:*16*
**day** 33:*15* 37:*21* 44:*25* 45:*7, 18, 24* 46:*13* 47:*10* 48:*9* 59:*4* 62:*8, 12* 64:*10* 65:*1, 3, 4, 5, 16* 69:*13, 16* 70:*19, 20* 71:*3, 12* 72:*8, 16* 79:*3, 7, 10* 81:*22* 96:*11* 107:*6, 19*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


112:*2, 14*
119:*5, 9*
124:*7*
128:*7*
129:*13, 16*
130:*14, 15, 21* 135:*20*
137:*16*
138:*19*
139:*18*
143:*14*
146:*4*
147:*22, 23*
148:*18, 21, 24* 170:*13*
**days** 29:*5*
47:*20*
90:*25* 99:*4*
135:*6*
148:*14*
150:*15*
162:*22*
163:*8, 18, 23* 164:*10*
165:*9*
166:*7, 9*
168:*13, 19, 21, 23*
**deal** 91:*2*
**December**
157:*17, 24*
**decided**
140:*22*
**decision**
10:*7* 11:*4, 7, 11, 13*
16:*6* 88:*16*
115:*2, 8*
160:*9* 161:*3*
**decisions**
87:*10, 12, 13*
**deescalated**
134:*9*
**Define**
154:*24*
**defined**
155:*4*
**definitely**
32:*13*
44:*11*
58:*22*
89:*22*
106:*21*
142:*1*
**delayed**
150:*15, 20*
**demeanor**
34:*19, 25*
36:*15, 17*
62:*20*
**denied**
50:*20*
102:*15*
144:*10*
149:*1* 160:*3*
**deny** 19:*5*
38:*25*
133:*18*
144:*5, 8*
**denying**
102:*19*
146:*10, 24*
161:*4*
**depart**
121:*18*
**Department**
5:*22* 19:*11*
77:*20, 23*
85:*19* 88:*4*
99:*13*
122:*13*
142:*17*
**Department's**
15:*10*
**depending**
19:*25* 88:*5*
**deposition**
86:*24*
**Deputy**
19:*10*
118:*10*
**DERRICK**
3:*12* 28:*14*
29:*20, 24*
30:*4, 10, 15, 17, 20, 22*
35:*13*
55:*12*
59:*14, 16*
63:*15, 22*
64:*4, 5, 19*
65:*9* 66:*24, 25* 67:*25*
70:*17, 25*
71:*5, 7, 8*
72:*15, 16, 19* 73:*10, 16, 18*
79:*20* 80:*8*
86:*5* 90:*17, 22* 96:*17, 19, 25* 97:*2*
100:*23*
102:*2, 4*
123:*1*
124:*1*
125:*8, 9, 15, 23* 126:*5*
127:*21*
129:*24*
130:*20, 22*
131:*2*
132:*9*
136:*15, 19*
141:*11, 14*
144:*20*
145:*16*
146:*18*
153:*11, 24*
154:*1, 4, 23*
158:*1*
**D-e-r-r-i-c-k**
30:*20*
**Derrick's**
126:*22*
131:*24*
132:*3, 5, 7*
134:*13*
137:*20*
149:*13*
153:*16, 19*
154:*16, 19, 20*
**describe**
34:*19*
47:*25*
62:*19*
110:*2*
118:*13*
124:*4*
151:*17*
**described**
40:*25*
**describing**
37:*1* 58:*15*
**description**
54:*23*
122:*17*
131:*23*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**designated** 15:7
**designation** 66:6
**desiring** 88:25
**desk** 64:12 126:18 128:3 139:4
**detailed** 34:23
**details** 37:18
**determine** 161:7
**Diane** 139:6
**difference** 104:25
**different** 40:12 65:3, 5 76:13, 15, 16 86:25 99:18, 22 136:19, 20 152:8
**differently** 137:7
**difficulties** 32:5 85:4
**Dionne** 146:9, 14, 15, 23
**DIRECT** 30:13 31:7 41:5, 13, 22 42:4, 14 61:1 77:4 79:6 85:12 92:21 98:12 105:10 109:21 118:1 122:6
**directed** 92:5
**direction** 16:25 78:21 104:1 170:10
**directly** 21:1 78:12 84:1 85:24 87:25 88:15 89:10 91:2 93:23 94:1 98:9 99:13 100:9 104:19 110:7 136:3 157:10
**Director** 19:11 77:20 85:19 101:20 118:11 147:25
**directors** 146:17
**disabled** 48:21, 24
**disagree** 124:8
**disagreement** 19:5
**disagreements** 33:7, 8, 9
**disciplinary** 87:12
**discipline** 32:22
**disciplining** 86:17
**discovered** 129:25
**discovery** 167:7
**discretion** 166:19
**discuss** 100:1 103:8
**discussed** 103:8 104:2 124:19 157:9
**discussing** 152:7
**discussion** 15:15, 20, 24 60:18 101:9 103:19 113:21 119:9
**dismissal** 160:10, 11
**dismissed** 108:7
**dispute** 20:12 159:16 161:4
**disputed** 19:14 20:6
**disputing** 155:19 161:21
**disrespectful** 121:7, 9
**dissatisfaction** 78:6
**distance** 65:15
**distributed** 24:22
**disturbed** 63:18
**division** 88:6 99:23 100:6 168:11
**doctor** 20:20
**document** 44:12
**documentation** 17:5 19:18 39:21 44:3 55:1 166:15
**documented** 52:22
**documents** 6:12 10:11 16:5 24:21 66:12 75:14 149:4, 20 169:2
**doing** 25:9 45:11 46:23 58:4 63:4 69:24 151:18, 21
**door** 91:22 107:16

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

119:14 127:17, 18 130:11 131:3 137:20
**dotted** 102:3
**doubled-down** 37:7 52:6 157:9
**doubt** 21:3 37:6
**downstairs** 130:12
**DPH** 29:6 30:25 59:21, 25 60:7 87:7
**Dr** 1:9 2:15 4:3, 7 8:9 9:18 11:3, 9 12:24 13:15, 18 14:9, 15 19:11 20:19, 20 28:22, 25 29:7, 10 31:5, 11 37:11, 13 39:13 43:24 44:4, 5 49:5, 9 50:6, 7 52:23 53:7, 9 54:8 56:3, 7, 9 68:23 69:20 75:21 77:13 78:19, 20 79:12 81:7 83:21, 23 84:25 85:5, 9, 14 87:6 93:4, 8 105:8, 15 106:10 107:13 108:1, 12 109:5, 7, 9, 11, 13, 18 115:3, 10 116:2, 15 117:1, 7, 11 118:17 123:2 129:18, 19 131:20 132:10 133:19 144:14, 15, 17, 19, 21, 22 145:16 146:3, 8, 23 156:24 157:25 159:22 161:3
**drafted** 69:8
**draw** 29:14
**drawn-out** 19:21
**drive** 138:1
**drive-by** 139:14
**driving** 35:14, 16 67:19 70:14
**dropped** 134:16
**drove** 131:9
**Duane** 1:8 2:12, 19 4:12 28:12 122:3, 10
**due** 85:3 141:13 160:10 167:11, 18 168:12
**duly** 60:21, 24 76:24 77:2 85:7, 10 109:16, 19 117:21, 24 122:1, 4
**duties** 31:15 123:14
**dwell** 65:10
**DX** 3:13, 18, 22 4:4, 8, 11, 13

**< E >**
**earlier** 46:8 54:5 89:24 115:9 124:19 130:21 141:23
**earnest** 54:12
**echo** 61:11 86:5, 12 95:16 140:16, 17 145:3, 12 154:13
**echoing** 140:14
**educate** 24:1
**Edward** 61:8, 9
**effects** 47:17
**eight** 152:8
**either** 16:14, 16 26:13, 20 39:11 55:15 62:6 89:3 91:2 118:24 134:3 146:20 162:23 164:9
**electronically** 126:9
**elevated** 113:20 119:8, 10 127:9
**else's** 55:15 159:18
**email** 48:20, 23 49:7 50:22 55:19 66:13 71:22 81:4, 5, 6 91:11, 16 92:6 103:3, 6

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 789 of 1127 PageID #: 792
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

104:*17*
112:*22*
116:*6*
120:*16*
142:*8*
144:*24*
145:*6, 17, 18, 21, 25*
146:*4, 20*
147:*8, 9, 18, 20, 21*
**emailed**
145:*15*
146:*2, 6, 8, 22*
**emails**
47:*21* 48:*2*
50:*20*
52:*13* 91:*2*
102:*18*
103:*15, 16*
112:*10*
145:*14*
147:*5, 11*
**emergency**
148:*10*
**emotional**
157:*23*
**emphatically**
102:*19*
**employed**
95:*2*
**employee**
6:*25* 7:*17*
8:*8* 29:*6*
55:*22*
94:*18, 23*
104:*23*
105:*9, 11*
123:*12*
124:*14, 18*
148:*11*
161:*22*
**employees**
54:*15* 91:*3*
104:*11, 14*
107:*2*
108:*10*
**employee's**
8:*8* 94:*12*
95:*2*
**Employment**
2:*20*
**empty** 138:*6, 7*
**EMR** 151:*22*
**enclosed**
23:*2*
**endeavors**
81:*9*
**ended** 92:*17*
**enforce**
107:*25*
**engage** 58:*5*
68:*4*
**enter** 47:*20*
**entered**
29:*24* 60:*4*
76:*5* 85:*6*
109:*5*
117:*16*
**entering**
15:*20*
**enterprise**
31:*25*
**entire**
31:*24* 83:*6*
101:*9*
107:*19*
132:*13*
**entitled**
115:*4*
**environment**
158:*20*
**envy** 161:*6*
**Epic** 131:*17*
143:*15*
**equipment**
92:*7*
**Erica** 139:*6*
**erratically**
36:*22*
**escalate**
88:*5*
**escalation**
91:*23*
**escort**
83:*11, 18*
**especially**
67:*16*
**Esq** 2:*5, 10, 13, 16*
**essentially**
24:*3* 34:*4*
38:*1* 151:*19*
**et** 124:*14*
128:*24*
147:*5*
**EUGENIA**
3:*17* 31:*10*
49:*16*
57:*13*
59:*20* 60:*4, 7, 10, 23*
61:*5* 75:*6*
114:*16*
156:*10, 15, 17*
**Event** 59:*22*
**events**
72:*22*
116:*16*
**eventually**
72:*5*
**everybody**
8:*22* 55:*14*
70:*1*
108:*17*
126:*4*
162:*22*
**evidence**
16:*2, 5, 12*
160:*2*
161:*3, 9, 24*
167:*19*
**exact** 120:*19*
**exactly**
70:*21*
114:*12*
119:*6*
164:*18*
165:*4*
166:*24*
**EXAMINATION**
30:*13* 55:*9*
61:*1* 74:*5*
77:*4* 85:*12*
105:*5*
109:*21*
118:*1*
122:*6*
156:*21*
**examined**
30:*11*
60:*25* 77:*3*
85:*11*
109:*20*
117:*25*
122:*5*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


**example** 94:*21*
**examples** 89:*7*
**exchange** 112:*9* 120:*6*
**exchanged** 43:*9*
**exchanges** 158:*17*
**excuse** 8:*17* 35:*15* 143:*23*
**execution** 151:*25*
**executive** 29:*11* 30:*24* 61:*25* 77:*12* 88:*7*, *8* 93:*18* 98:*11* 99:*24*, *25* 100:*2*, *10*
**executives** 124:*8*
**exercise** 5:*25*
**exhibit** 165:*21*
**exhibits** 17:*23* 26:*5*
**existed** 101:*14*
**existence** 161:*4*
**exit** 108:*24*
**exited** 14:*15*
**expedite** 164:*5*, *16*
**experience** 32:*17* 82:*24* 87:*3*
**explain** 51:*10* 136:*11*
**explained** 89:*23* 90:*7* 112:*18*
**explaining** 145:*21*
**explanation** 149:*4*
**express** 78:*5*
**expressed** 126:*25*
**external** 123:*17*
**extremely** 133:*14*

**< F >**

**face-to-face** 65:*10*
**fact** 18:*10* 19:*13* 20:*5* 22:*5*, *19* 23:*17*, *22* 24:*4*, *7* 26:*6* 37:*4* 40:*9* 57:*11* 83:*19* 107:*20* 108:*6* 142:*3*, *12* 153:*2* 156:*9* 159:*11* 162:*23* 163:*12*, *15* 165:*10* 166:*8*
**factors** 101:*12*
**facts** 17:*24* 18:*4*, *12* 19:*14*, *17*, *22* 20:*6*, *8*, *11*, *13* 22:*22* 163:*25* 168:*12*
**factual** 18:*5* 161:*4*
**fair** 34:*16* 55:*16* 82:*17*, *20* 116:*22* 128:*11* 153:*14*
**fairness** 23:*5*
**familiar** 44:*17* 49:*25* 94:*16* 98:*2* 162:*15*
**family** 38:*9* 157:*15* 158:*2*, *3*
**far** 6:*24* 25:*15*
**fast** 27:*17*
**fated** 146:*7*
**favor** 7:*12* 14:*2* 25:*24* 28:*1* 115:*22* 168:*2*
**F-bombed** 128:*23*
**fearful** 58:*22*
**February** 28:*12* 31:*6* 32:*1*, *22* 33:*12* 37:*21* 39:*11* 46:*13*, *15* 51:*24* 56:*21*, *24* 57:*16*, *17*, *18* 62:*7* 67:*19* 68:*8*, *14* 70:*10*, *13* 73:*14* 74:*12* 78:*13* 79:*2*, *4*, *7* 81:*20*, *22* 82:*3* 86:*16* 87:*17* 89:*11* 95:*25* 102:*16* 110:*11*, *12*, *25* 111:*22*, *23*, *25* 112:*10* 113:*2*, *22*, *25* 114:*5* 119:*5*, *24* 120:*14* 121:*1* 122:*12* 124:*21*, *23* 125:*1* 134:*4*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


138:*16*
140:*21*
145:*15*
146:*6, 8, 24*
149:*17*
150:*14*
164:*8*
**federal** 66:*6* 87:*1*
**Federally** 31:*3*
**feel** 56:*11, 16, 18* 134:*9*
**feeling** 60:*13* 67:*15* 70:*16*
**feet** 126:*18*
**felt** 128:*19* 158:*11*
**figure** 132:*1*
**file** 17:*3* 23:*16, 21, 22* 118:*16* 144:*25* 150:*25* 162:*23, 24*
**filed** 15:*7* 19:*2* 23:*23* 24:*21*
**filing** 165:*11*
**filled** 54:*23*
**filtered** 88:*10*
**final** 105:*7* 159:*15* 162:*17* 163:*7* 166:*6*
**finally** 33:*21* 95:*8*
**financial** 31:*17*
**find** 121:*7* 127:*23* 147:*19* 160:*13* 161:*2*
**findings** 18:*9, 12* 22:*5, 19* 23:*17* 24:*4, 7* 26:*6* 159:*10* 162:*23* 163:*5, 12, 15, 24* 165:*10* 166:*8* 168:*12*
**fine** 11:*19* 27:*11* 103:*14* 107:*9, 12* 108:*21* 159:*22*
**F'ing** 80:*18* 90:*6* 126:*14* 133:*9* 155:*20, 21* 156:*6*
**finish** 154:*8*
**finished** 116:*10* 137:*16*
**firing** 87:*11* 93:*23*
**first** 6:*23* 11:*13* 12:*22* 17:*18* 21:*16, 22* 26:*11* 29:*6, 18* 38:*21* 59:*6* 60:*24* 62:*12* 66:*3* 77:*2, 8* 80:*4* 85:*10* 92:*11* 109:*19* 117:*24* 122:*4* 126:*23* 132:*4* 133:*21, 22* 141:*10* 144:*17, 19* 147:*15* 153:*23*
**fit** 42:*23* 166:*18*
**five** 17:*19* 27:*14, 16* 31:*10* 64:*1* 106:*3*
**flight** 54:*9* 151:*18*
**floor** 165:*5*
**FMLA** 101:*8, 13*
**focus** 31:*18*
**focused** 125:*24*
**folks** 139:*4, 12* 142:*7, 16*
**follow** 16:*11* 81:*2, 4* 91:*15* 92:*5* 103:*25* 104:*12*
**followed** 104:*2* 160:*11*
**following** 6:*23* 9:*2* 151:*24*
**follows** 9:*4* 30:*12* 60:*25* 77:*3* 85:*11* 109:*20* 117:*25* 122:*5*
**follow-up** 74:*7* 105:*7*
**Foote** 31:*10* 141:*10* 158:*1*
**foregoing** 170:*7*
**formal** 56:*4*
**formality** 115:*18*
**for-profit** 122:*20*
**forth** 21:*16* 157:*5*
**forward** 138:*20*
**foul** 65:*22*
**found** 131:*5* 147:*21, 22, 23*
**four** 17:*18* 33:*17* 34:*6* 61:*19* 129:*12* 143:*14*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**FQHC** 32:17, 20 61:16, 25 62:1 66:5 86:25
**free** 64:23
**frequently** 32:13
**fricking** 133:9
**Friday** 54:3, 4 69:3, 8 91:9 96:11 112:4, 5, 13, 21 120:15 130:22, 24 140:1, 9 143:4 144:1
**friend** 100:20, 21, 25 101:16
**Frierdich** 2:13 3:14, 16, 19, 23 4:5, 8, 11, 13, 15 9:7, 14, 20, 24 10:6, 10, 13, 16, 23 13:10 14:17, 21 16:22, 24 17:2, 20 18:8 19:9 21:5 22:3, 9, 18, 24 23:16 24:12, 20, 24 25:2, 16 26:12, 23, 24 27:14, 16 40:17, 19 54:25 55:6 57:5 59:9, 11 67:7, 12, 13 74:3 75:1, 11 81:13, 15 84:15, 20 93:7, 9 97:11 101:22 103:7, 11 105:2, 14, 21, 25 106:8, 13, 17, 21 108:14 109:1, 4, 22, 23 114:18, 22 117:6, 10, 13, 19 118:2, 4 121:17, 21 122:7 123:8 145:3, 5 152:15 153:6 154:8 156:22 159:3, 5, 10, 15 160:24 161:20 162:2, 13 163:21 164:4, 21 165:16, 20 167:11 168:8 169:8
**front** 35:7 48:11, 14 129:14 139:4 157:17 158:1
**frustrated** 128:12 133:13, 14
**fucking** 28:18 35:14, 16, 18, 25 36:1, 5, 11, 21 37:8 58:9 161:19
**full** 16:6 23:1 30:15 123:11
**fully** 102:4
**further** 15:20 40:13 52:2 56:23 59:12 79:16 105:10 117:3 156:20 159:4
**furthermore** 58:8
**future** 81:9
**F-word** 46:25 67:22 80:24 126:4, 5
**< G >**
**gain** 66:5
**GARDNER** 3:21 9:19 53:6 69:9, 19 75:10, 13, 16, 25 76:4, 5, 12, 14, 16, 19, 22 77:1, 6, 11 81:14 84:22 131:18 145:16 146:3, 9, 23 150:4 152:23
**G-a-r-d-n-e-r** 77:9
**gathered** 97:18
**gathering** 59:1
**gearing** 54:16
**Gee** 101:20
**general** 16:8 53:15 114:16
**generalist** 77:22
**generally** 22:20 32:1 84:2 86:22 113:7 163:5, 17
**genuinely** 101:2, 4
**getting** 8:20 58:7

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

96:*21* 97:*20* 116:*23* 125:*20* 163:*15*
**gin** 161:*18*
**Gina** 8:*13* 49:*13, 18, 20* 71:*6* 126:*20* 127:*18* 130:*20* 134:*22* 136:*5, 12, 17* 140:*2* 151:*6* 158:*1*
**Gina's** 129:*20*
**girl** 61:*8*
**give** 9:*5* 13:*9* 29:*21* 37:*5* 51:*13* 53:*2* 59:*15* 68:*20, 22* 85:*1* 86:*15* 88:*8* 89:*24* 91:*7* 104:*6* 108:*13* 116:*1* 122:*16* 160:*18* 162:*22* 163:*3*
**given** 58:*19, 23* 75:*12* 151:*6, 11* 158:*15*
**gives** 25:*8*
**giving** 60:*16* 118:*7*
**Glad** 10:*23*
**go** 5:*1, 18* 7:*20* 8:*17, 25* 15:*4* 16:*24, 25* 47:*16, 19* 55:*23* 57:*11* 62:*17* 65:*4, 14* 75:*3* 86:*15* 91:*14* 98:*11, 18* 99:*11, 13, 21* 100:*2* 104:*15, 21, 22* 112:*15* 117:*8, 9* 121:*23* 122:*10* 130:*4* 131:*23, 24* 132:*3, 7* 133:*5, 10* 136:*4* 139:*20* 149:*13* 153:*12, 16, 19* 154:*10, 16* 162:*18, 20*
**Goen** 2:*20* 8:*4, 15, 24* 14:*9* 29:*21* 30:*1* 59:*14, 23* 60:*6, 11* 75:*8, 16, 18* 76:*9, 17, 20* 85:*1* 108:*13* 109:*7, 10, 12, 15* 116:*1, 9* 117:*15*
**goes** 49:*18* 88:*24* 93:*17*
**going** 6:*16* 9:*7, 12* 10:*18* 15:*14* 20:*1* 33:*12* 35:*21, 23* 38:*5, 8, 13* 40:*11* 58:*21, 22* 64:*21* 66:*20* 73:*2* 74:*11* 113:*15* 114:*1* 126:*17* 130:*9, 17* 131:*3, 9, 10, 16* 132:*4, 13* 136:*15* 143:*15* 152:*3, 6* 154:*12* 155:*19* 157:*10, 20, 21* 162:*19* 166:*21*
**Goldkamp** 2:*10* 7:*6, 16* 8:*7, 12* 11:*2* 12:*22* 13:*14, 20* 14:*8, 24* 15:*2* 16:*23* 17:*1, 15* 21:*17, 24* 23:*13* 24:*21* 25:*18* 26:*21* 60:*19* 76:*12, 15* 109:*1, 2* 114:*25* 115:*12, 18* 116:*5* 162:*2, 7, 15, 16* 163:*2* 164:*20* 165:*3* 168:*16, 23*
**Good** 28:*10* 29:*4* 75:*3* 87:*21* 98:*3, 16, 23* 107:*15* 117:*18, 19* 124:*14* 131:*5* 152:*12* 159:*23* 161:*5, 15*
**goodness** 166:*5*
**gossip** 116:*20*
**gotcha** 109:*15* 113:*16*
**gotten** 80:*21* 111:*17* 147:*17* 149:*11*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**GOVERNMENT** 1:*1* 15:*13* 66:*6*
**grab** 102:*9*
**grabbed** 132:*15*
**granted** 17:7
**grants** 31:*18*
**great** 145:*4*
**GRIEVANCES** 1:7 5:*21*
**grounds** 160:*13*
**group** 125:*2*
**guess** 62:*13* 73:*15* 80:*11* 92:*13* 107:*4* 128:*5* 131:*2* 162:*9* 166:*23*
**guidance** 6:*22* 103:*24*, *25* 104:*3*
**guidelines** 66:*8* 87:*1*
**guys** 129:*11* 140:*16*

**< H >**
**half** 147:*24* 161:*16*
**hall** 47:7 113:*12* 118:*15* 136:*1*
**hallway** 127:*19* 139:*10* 158:*18*
**hand** 34:*1* 170:*13*
**handful** 88:*20*
**handle** 10:*5*
**hands** 5:*6*
**hanging** 42:*9*
**happen** 37:*24* 44:*3* 74:*13* 92:*12*, *14* 112:*19* 157:*21* 158:*17*
**happened** 28:*23* 36:*6* 37:*15* 39:*18* 44:*6* 50:*11* 53:*9*, *12*, *21* 65:*12*, *17* 68:*24* 69:*13* 70:*16*, *25* 81:*21* 88:*20*, *23* 89:*2* 90:*2*, *3* 91:*4* 92:*4* 99:*9* 108:*5* 112:*21* 125:*14* 132:*2* 137:7 149:*17*, *21* 157:*22* 158:*6*, *9*
**happening** 36:*25* 40:*25* 118:*24* 140:7
**happens** 91:*20* 99:*21* 129:*11* 134:*17*
**happy** 48:7
**hard** 108:*17* 123:*4*
**head** 45:*5*
**headed** 16:*25*
**heads-up** 88:*9*
**Health** 5:*23* 19:*11*, *12* 31:*3* 77:*20*, *23* 85:*20* 90:*9* 100:*13* 118:*11* 122:*14* 131:*15* 142:*17* 143:*2*, *16* 146:*17* 158:*16*, *17*
**healthcare** 122:*21*
**hear** 12:*16* 19:*6* 28:*12*, *13*, *22* 29:*8* 30:*4* 63:*12* 66:*25* 67:*1* 76:*18*, *19*, *20* 83:*6* 86:*6*, *7* 109:*8* 113:*11*, *13*, *15*, *20* 115:*5* 118:*24* 119:*2*, *14* 123:*5* 136:*5* 140:*16* 141:*14*, *15* 145:*1*, *2* 151:*8*
**heard** 12:*25* 28:*20* 29:*1*, *14* 36:*19* 37:*2* 67:*5* 68:*10* 82:*2*, *6* 83:7 110:*18* 113:*17* 119:*12* 124:*1* 129:*11*, *20* 133:*22* 138:*23* 149:*5* 151:*5* 152:*11* 153:*18*, *22* 159:*12*, *16*, *22* 161:*11*, *17*
**hearing** 5:*5* 6:*2*, *9*, *15*, *21* 7:*9*, *17* 10:*3* 12:*24* 13:*3* 15:*1*, *3*, *7*, *25*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

16:7 17:8 19:7, 21 22:21, 23 23:2 24:8, 16, 18 26:13 27:3 29:13 56:14 109:2 115:3, 5 116:8 119:8 133:20 149:5, 6, 8 150:18 151:7 152:11 156:24 162:5, 16, 18 169:7, 12 170:6, 9
**HEARINGS** 1:7 5:20 16:10
**hearsay** 107:25
**heated** 37:16 80:21 89:4 92:16, 18 133:8 154:23, 24 155:2, 4, 7, 9, 10 161:14
**held** 77:17 98:5 122:19
**hell** 64:4
**he'll** 73:17
**Hello** 8:19 81:14
**help** 6:17 18:14 24:1 48:4 130:23
**helpful** 19:1
**helping** 125:2
**helps** 114:15, 16
**hereunto** 170:12
**Hey** 98:18 107:8 125:12
**Hi** 10:23 40:18 67:13 93:8 109:23
**hierarchy** 88:10
**high** 51:23 98:6
**higher** 88:6
**hiring** 87:11 93:22
**historically** 98:17
**history** 72:22
**hit** 8:21 9:1 113:15
**Hoffsten** 2:6 5:10, 11 7:10, 13, 22, 25 8:1 13:6 14:1, 3, 6 18:20, 21, 25 25:22, 24 26:2 27:2, 20 28:2
108:22 115:14, 21, 23 164:14, 19, 23 165:6 166:2, 23 167:9 168:5
**hold** 161:24
**holidays** 157:20
**home** 65:4 71:18 111:23 113:3, 15 129:9 130:22 133:5, 10, 11 141:4 142:14
**honest** 40:8 54:11 58:25
**hope** 130:13
**hopefully** 76:1
**hopes** 137:24
**horn** 131:3
**host** 122:25
**hostile** 158:20
**hostility** 58:20, 23
**household** 157:7
**HR** 42:11 49:4, 7 55:18 74:1 77:22 82:25 83:9 93:2 100:18
144:14 147:10 150:25 167:2 168:13
**HRSA** 66:4, 5 87:2, 4
**human** 77:20
**hung** 28:19 36:13 38:21
**husband** 130:18

**< I >**
**ID** 91:15 92:7
**idea** 14:9 135:10, 11 148:19
**Igloo** 61:10
**ignoring** 160:12
**imagine** 36:24 131:21
**immediate** 104:22 150:7
**immediately** 43:23 89:20 110:6 125:21
**Imo's** 129:16
**impact** 160:5 165:1
**impacted** 124:10
**importance** 126:6

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**important** 126:25
**impression** 96:21
**Inaudible** 103:4
**incident** 51:4 65:24 67:3 73:23
**incidents** 69:25
**include** 13:8 62:2 140:6 162:25
**included** 31:17 165:14, 18, 23 166:10 167:6
**including** 147:4 165:11 167:19
**incomes** 152:5
**inconsistencies** 92:3, 9, 22 103:16 153:1, 5, 7
**incorrect** 66:14
**indicate** 50:3, 9 71:8 111:16
**indicated** 45:23 62:16 93:11 114:1
**indicating** 50:15
**indication** 149:15 162:3
**indications** 161:11
**indicative** 134:14
**indirect** 93:13
**indirectly** 31:21 90:15, 16 149:12
**individual** 101:4 166:25
**individuals** 8:16 101:8
**industry** 122:20, 21
**inform** 144:4
**informal** 16:11
**information** 17:6, 12 19:16 33:17, 23 34:23 53:5, 20 58:8 65:11 83:2 89:24 90:1 91:8 103:2 125:23 130:1 149:3 163:3
**informed** 10:3 64:14 78:15
**initial** 150:10
**initially** 38:21
**inquire** 15:14 57:25 99:8
**inside** 47:20
**instance** 29:7
**instances** 93:13 112:12
**instruct** 98:13 103:21, 23 104:7
**instructor** 122:22
**integration** 118:11
**integrity** 132:12
**intend** 23:21
**intending** 9:17
**intends** 13:9
**interact** 78:12
**interaction** 56:23 71:25 77:25 79:7 90:2, 14, 16 96:18, 20 113:5, 6 139:9
**interactions** 21:2 33:14 62:6, 8 113:2, 25 120:15 121:6 139:8
**interest** 58:24 116:23
**interested** 21:14
**internet** 42:11
**interrupt** 64:22 103:6 154:9
**interruption** 12:20 85:3 97:10 123:7
**interview** 122:24 166:16
**interviewed** 51:2 122:25 123:1 151:23 167:2
**interviewing** 122:23
**interviews** 125:3
**investigate** 22:11 23:4, 8 51:11 103:18, 22
**investigated** 102:23 103:1 107:10
**investigating** 33:2

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**investigation** 17:4 23:2 51:8, 10 52:2 84:11 166:14, 17 167:16
**involve** 61:21, 22 65:22
**involved** 70:1 88:15 99:11 135:13 155:23 169:6
**irritated** 36:24
**ish** 34:16 45:3
**issue** 18:14 20:25
**issues** 16:20 24:2 26:3 93:2 168:7
**Item** 5:21
**its** 26:11

< J >
**Jairris** 2:20 116:5
**January** 66:2 77:19 85:23 157:21
**jeopardy** 167:19
**job** 31:15 32:9 54:22 61:21 68:5, 7 78:6 86:22 94:24 95:10 110:19 124:14 125:3 155:6
**join** 9:6 10:23 11:20, 25 12:2, 6 20:22 116:6
**joined** 109:8
**joining** 114:19 118:7
**Joked** 40:4
**jokes** 63:6
**joking** 63:3
**Jones** 146:9, 14, 15, 23
**judicial** 25:7, 10, 19
**Juliana** 1:15 5:17 170:3, 19
**justify** 20:4

< K >
**Kanika** 1:9 2:15 4:3 84:25 85:5, 9 105:15
**K-a-n-i-k-a** 85:16
**Kate** 101:17
**Katherine** 2:13, 16 9:9 22:8 40:19 67:13 81:14 93:8 109:23 118:4 164:4
**Kathy** 62:17 63:15, 19 114:15 127:23 129:21, 25 136:14, 18
**Kathy's** 126:11 127:24 128:3 136:17
**Kaufman** 2:16 3:13, 15, 18, 20, 22 4:4, 6, 9, 14 9:10, 16, 23 10:2, 9, 12, 15 12:13 13:8 15:18, 22 18:3 19:10 20:9, 12, 18 22:2, 18 23:20 25:6 28:6, 8, 10 29:19, 23 30:4, 6, 9, 14 55:6, 10 59:12, 20 60:3, 12 61:2 73:22 74:6 75:3, 9, 17, 21, 25 76:4 77:5 81:10 84:18, 24 85:13 86:14 93:3 94:13 101:18 103:4, 9 105:4, 6, 13, 19, 23 106:3, 12 114:22, 25 116:12, 14 117:3 121:13, 15 152:17, 19 153:8, 9 154:21 159:4 160:22 161:1 166:12 167:4 169:9
**keep** 19:19 27:3 98:21 108:4 127:1 152:20
**kept** 65:8, 15 70:19 71:1, 5 73:11 117:9 130:8 137:3
**key** 142:3
**kicked** 5:18
**kill** 145:12
**kind** 63:3 64:8, 16 65:12, 15 73:9 74:18 87:2 88:8 94:23

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

130:*16* 157:*20*
**kite** 61:*11*
**knew** 42:*8* 59:*4* 64:*5* 92:*25* 114:*4* 130:*6* 147:*25*
**knocked** 91:*21* 126:*23* 130:*11* 137:*19*
**know** 9:*12* 19:*5*, *19*, *23* 20:*1*, *4* 23:*20*, *25* 32:*12* 35:*1*, *4*, *21* 36:*1*, *23* 38:*8* 42:*19* 45:*6*, *8*, *10* 46:*20* 52:*14*, *15*, *16*, *20* 54:*11* 58:*21* 60:*12* 61:*13* 63:*4*, *17*, *22* 64:*6*, *15*, *17*, *18*, *21*, *23* 65:*5*, *11*, *14*, *16* 68:*1* 69:*15* 70:*6*, *8* 71:*8* 73:*17*, *18* 79:*19* 80:*5*, *7* 81:*8* 86:*24* 87:*4* 88:*7*, *14*, *16*, *23*, *24* 89:*4*, *5*, *7*, *23* 90:*3*, *5*, *6*, *10*, *11* 91:*18* 92:*2*, *20* 96:*6*, *8*, *18*, *20* 100:*23* 101:*5*, *7*, *11* 102:*8*, *10* 103:*12*, *24* 107:*6*, *7* 113:*4* 114:*12*, *14* 119:*2* 124:*11* 127:*11*, *12*, *13* 130:*7* 131:*5* 132:*16* 133:*23* 135:*8* 136:*10*, *16*, *21* 137:*20* 138:*12*, *13* 142:*12* 143:*19*, *20*, *25* 144:*14* 147:*22* 158:*3* 162:*9*, *10*, *19* 163:*13* 168:*16* 169:*1*
**knowing** 83:*18* 159:*19*
**knowledge** 40:*1* 51:*7*, *19*, *21* 139:*25*
**known** 131:*12* 136:*21* 137:*6*
**knows** 138:*1*

**< L >**
**lack** 161:*12*
**Ladevich** 31:*11* 114:*8* 126:*20* 134:*22* 139:*11* 157:*25*
**lady** 162:*25* 165:*13* 167:*1*
**lady's** 105:*23*
**language** 65:*22* 66:*18*
**laptop** 91:*15* 142:*13*
**lasted** 155:*18*
**late** 71:*12* 111:*9*
**laughed** 128:*4*
**laughing** 63:*6*
**law** 18:*10*, *12* 22:*5*, *19* 23:*18* 24:*4*, *8* 159:*11* 162:*24* 163:*13*, *15*, *25* 165:*10* 166:*8* 167:*22*, *23*
**lawsuit** 127:*1*, *12* 135:*10*, *11*
**lay** 18:*14*
**lead** 143:*8*, *10*
**leader** 88:*6*, *7* 98:*12* 100:*10*
**leaders** 88:*8* 99:*23*, *24* 100:*3*, *6* 143:*17*
**leadership** 62:*1* 88:*11* 93:*18* 99:*11*, *25* 100:*1* 104:*21* 122:*19* 131:*16*
**learn** 82:*18* 88:*2*
**learned** 102:*7*
**learning** 87:*5*
**leave** 14:*10* 20:*25* 21:*7* 38:*17* 98:*25* 107:*22* 141:*4* 159:*13*, *24*
**leaves** 99:*13*

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 799 of 1127 PageID #: 802
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


**leaving** 70:*9* 137:*18* 144:*1*
**left** 6:*24* 11:*25* 39:*7* 45:*23* 46:*3* 56:*11* 59:*16* 64:*8*, *16* 71:*14* 75:*6* 84:*22* 96:*15*, *22* 97:*18*, *20* 99:*17* 105:*15* 117:*11* 121:*19* 127:*16*, *17* 129:*14* 134:*8* 135:*19* 137:*25* 138:*4*, *5* 141:*8* 142:*8* 144:*1* 158:*10* 161:*19*
**legal** 93:*2* 103:*22*
**lens** 109:*14*
**lets** 101:*11*
**letter** 98:*19*
**letting** 63:*22* 90:*3*
**level** 61:*25* 88:*5* 113:*14*
**life** 129:*9*
**Likewise** 108:*22* 117:*2*
**limit** 27:*12* 43:*11*
**line** 6:*6* 67:*9* 74:*20* 102:*3*
**list** 9:*14*, *17*, *21* 17:*17* 19:*3* 20:*24* 54:*21*
**listed** 19:*10* 20:*5* 59:*21*
**listen** 86:*8*, *11*
**literally** 20:*6* 126:*17*
**little** 29:*21* 31:*14* 35:*6* 64:*3* 67:*17* 76:*20*, *23* 86:*24* 90:*9* 99:*17* 125:*14* 128:*9*, *12*
**LIVASY** 5:*1*, *6*, *7*, *10*, *12*, *15* 6:*7*, *19*, *23* 7:*2*, *4*, *23*, *25* 8:*2* 9:*5*, *9* 11:*14*, *21*, *24* 12:*5*, *7*, *10*, *16* 86:*9* 97:*7* 104:*14* 108:*15*, *23*
109:*3*, *13* 144:*22* 146:*9*, *22*
**livelihood** 160:*6*
**located** 110:*3* 118:*16*
**location** 88:*15*
**locations** 88:*14* 118:*16*
**locked** 126:*2*
**logs** 53:*18*
**long** 27:*3*, *5*, *12* 43:*10* 61:*17* 71:*10* 77:*14* 85:*21* 95:*2* 114:*12* 118:*6* 125:*7* 128:*22*, *24*, *25*
**longer** 116:*2* 125:*15* 147:*19* 148:*1*
**longevity** 152:*6*
**look** 18:*19* 21:*9* 42:*19* 57:*11* 63:*16* 119:*25* 147:*18*
**Look-Alike** 32:*20* 61:*16* 66:*9*
**looked** 57:*12* 58:*1* 127:*23*
**looking** 9:*7* 60:*6* 63:*2* 64:*5*, *6* 138:*10*, *11*
**looks** 12:*7*, *10* 14:*14* 17:*17*, *21*, *22* 76:*7*, *10* 109:*7*, *13*
**lose** 158:*6*
**lost** 130:*18*
**lot** 31:*18* 32:*17*, *18* 46:*16*, *19*, *21* 57:*1* 63:*5* 88:*4*, *7*, *10*, *20* 92:*19* 101:*3*, *10* 123:*20*, *24* 135:*21* 138:*5*, *9* 139:*9* 152:*1* 158:*5*, *8* 166:*18*
**lots** 158:*17*
**loud** 36:*18* 43:*6*
**LOUIS** 1:*1* 2:*9*, *21* 15:*6*, *13* 25:*10*, *11*, *12*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**love** 105:23 106:21
**lunch** 129:13
**lunchtime-ish** 111:5

< M >
**ma'am** 10:9, 12 20:13 75:3
**mad** 66:23 68:2, 3 71:5, 6, 7, 9 73:19, 21, 25 156:12
**main** 9:11 12:11 20:20
**major** 37:17
**majority** 31:17
**making** 56:4
**man** 139:16
**manage** 31:2
**managed** 31:16
**management** 104:20 123:19 143:3
**Manager** 2:20 88:6 93:22, 23 151:23
**manner** 40:12
**MARCH** 1:3, 12 5:5 16:17 150:11 164:6
168:14 169:11
**Marker** 123:1
**Mary** 76:12
**materials** 6:9 25:1
**Matt** 5:6 104:13 144:22 146:9, 22 147:10, 12, 14, 15
**Matter** 1:8 12:22 19:14 22:11 24:3 83:19 84:12 142:12
**matters** 78:3
**max** 129:13
**mean** 31:21 40:7, 11 52:16 53:11, 14 74:13 87:9 90:21 92:8 104:11 119:6 155:1
**meaning** 17:11 130:1
**means** 57:21 141:22
**meant** 28:21
**Medical** 19:12 123:2 138:22
**meet** 32:12 102:9 111:24 114:2 119:23
**meeting** 5:2, 18 6:15 12:11 14:12 17:13 34:21 41:3, 4, 10, 11, 19 42:8 54:4 57:15, 19, 22 63:16 64:21 71:4 72:13 73:1 97:16 107:20 108:24 110:25 111:3, 7, 21 112:2, 5 114:4, 6, 10 121:4 125:1, 7, 13, 14, 19 128:1, 15 129:18, 19 130:2, 3, 7, 8, 9, 12, 15, 21, 25 131:1, 15 136:16, 22 137:4, 9, 16 140:22 141:1, 3, 5, 8, 16 142:9, 15, 16, 20 143:1, 3, 6, 8, 10, 13 150:10, 16 154:2, 5 162:20 169:3, 5
**meetings** 32:10, 11, 14 58:1 72:8, 16, 20, 25 73:5 123:21, 23 125:10 135:22 139:14
**MELTON** 3:12 9:18 28:14, 17, 20 29:20, 24 30:5, 8, 10, 17, 20 32:8 40:14, 18 55:2, 4 59:16 62:3, 12 65:7 68:13 70:22 73:4, 13 81:19, 24 83:9 84:12 89:13, 15 97:13, 24 98:13 101:23 111:17 113:21, 25 116:23 118:17, 21 124:2, 5 128:14, 22 129:5 133:5, 23 134:3

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 801 of 1127 PageID #: 804

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

135:8, 15
136:7, 13
137:8, 17
138:1, 4, 8
140:3, 10
141:3
143:18
145:16
151:6, 15
157:1, 14
158:11
**M-e-l-t-o-n** 30:21
**Melton's** 62:19 70:10 72:9 74:12 97:16 100:13 110:3, 6 118:20 119:9 134:8 135:19 136:2 149:10 155:22 156:25
**member** 72:5 93:25
**members** 16:3 31:22, 23 54:16
**mental** 90:9 100:13
**mention** 65:7 155:12
**mentioned** 22:14 25:14 40:2 43:23 51:3 58:4 80:20 95:9 135:10 140:2 143:2 157:7
**merely** 37:11
**merit** 107:2 108:10 123:11
**message** 48:3 63:22 71:23 107:2 112:15 130:23
**messages** 33:23 47:22 48:2, 17 52:12 112:10 147:11
**met** 54:3 56:19 111:4, 5, 23 114:1 138:22, 25 139:2
**Michael** 31:11 126:20 139:10
**middle** 41:19 66:4 100:6 104:20
**MILLER** 4:7 19:12 20:19, 20 31:11 50:1, 2, 3, 6, 7 106:10 108:12 109:5, 7, 9, 11, 13, 18, 23 116:15 117:7, 11 129:18, 19 157:25
**mind** 44:23 108:4
**mindful** 108:18
**mine** 74:18 159:11
**minimum** 120:6
**minor** 37:17
**minute** 27:4, 5 28:24 64:12
**minute-long** 28:16
**minutes** 27:14, 15 34:13 38:20, 22 43:12 64:1 105:22 106:1, 3 111:6 129:12 159:16
**mishear** 153:24
**misheard** 37:3 153:20 155:9
**misremembering** 156:16
**misses** 99:4
**missing** 49:24 101:15
**misunderstanding** 134:15
**misunderstood** 27:10
**moment** 9:5 29:10 40:14 55:17 59:15 67:7 85:1 105:21 108:13 116:1 117:15 129:23 131:8, 25 132:12 152:16
**moments** 153:11
**MONDAY** 1:3 144:18 146:24 169:11
**month** 146:16 161:16
**months** 61:20 114:11
**moot** 17:19
**morning** 45:4 48:8

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


50:5 51:24 57:14, 16, 18 63:10, 13 67:18 68:13, 24 70:10 72:2 74:12 81:20 89:18 96:3 113:22 120:9 124:23 130:24 136:15 140:23 141:7 142:8 144:2
**motion** 7:8, 10 13:15, 17 17:10 18:23 19:2, 6 22:25 23:10 25:18, 21 115:19 164:11 165:5, 7, 25 166:1, 3, 6, 21 167:10, 25
**motions** 13:21 17:3 26:5 168:7
**mouse** 7:7
**mouths** 21:12
**move** 7:20 8:18 27:22 140:21 162:22 163:1, 22 165:8
**moved** 8:9, 15 13:24, 25 24:10 115:20 131:7 158:7
**moving** 5:20 8:22 27:3
**multiple** 40:10 145:17
**mute** 60:8 145:12 148:6 157:3
**muted** 9:9 19:1 97:5
**mutual** 100:20, 24 101:16

**< N >**
**Nadine** 2:5
**name** 30:15 40:18 49:14, 24 50:1 61:3 77:6, 8, 9 81:14 85:15 94:12 95:2 118:3 121:24 122:9, 10 165:13
**named** 94:18
**names** 17:20 59:25
**Nancy** 61:9
**nature** 23:21 34:1 38:2 48:4
**necessarily** 16:15
**necessary** 21:3
**need** 6:2, 16 8:5 11:13, 22 12:11, 23 14:6 21:9 26:14 27:14 35:12 39:19 44:11 48:4, 6 61:12 65:13 101:12 108:18 116:8, 11 126:4, 24 136:13 159:11 162:19 165:24
**needed** 9:6 33:24 34:2, 22 44:3 62:22 63:22 64:19 65:8 68:23 70:25 71:2 72:24 84:8 89:24, 25 125:25 126:2 141:12 152:9
**needs** 73:18 160:20
**Neither** 115:17
**Nelson** 123:2
**never** 29:12 50:14 57:10, 19 71:1 78:7 98:8, 9, 11 99:11 100:8 124:9 127:10 134:2, 5 154:3 155:7 160:4
**new** 151:22
**night** 66:16
**nine** 88:14
**Noah** 2:10 8:4 12:20 13:22 22:7 94:11 164:19
**Nodding** 45:5
**nonclinical** 31:19
**non-privileged** 22:12 23:4
**nonprofit** 122:20
**nonsense** 124:7
**nope** 12:17 40:5

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**normal** 55:21, 24 62:21, 23 69:24 73:8, 16 90:18 113:13, 14 124:8
**normally** 13:13 56:2, 5 89:3 91:2 101:14
**Notary** 1:17
**note** 130:23 144:15, 20, 21
**notes** 170:9
**not-for-profit** 32:16
**notice** 25:7, 10, 19 29:5
**noticed** 131:4
**notification** 169:4
**notifications** 125:11
**notified** 150:13, 19 168:10
**number** 34:2 125:25 126:3, 6, 7, 14, 16, 17, 24 127:7 133:9 137:1
**Nunn** 2:5 5:2, 4, 8, 9, 14 6:5, 8, 13, 18 7:11, 15, 20, 23, 24 11:15, 19, 23 12:2, 6, 9 13:2, 24 14:4, 18, 20 20:7, 10, 14 24:6, 11, 16, 19 25:23 26:1, 9 27:6, 10, 25 28:3 106:13 108:21 115:10, 13, 17, 24 145:2 162:21 163:22 164:11 165:7, 8 166:2, 7, 22 167:25 168:4
**nurses** 31:22
**nursing** 54:15 152:2
**nutshell** 123:16

**< O >**
**object** 21:6 165:22
**objection** 25:17 115:15 166:10, 13
**objections** 16:13
**obligations** 108:18
**obviously** 32:19 39:20 44:5, 12 106:23 124:20
**occur** 161:13
**occurred** 29:10 149:10 155:7
**o'clock** 66:15 108:25 125:2 131:17 143:5
**October** 77:16, 21
**odd** 51:25
**offer** 19:15 22:13 159:9
**offered** 17:25
**office** 38:1, 17 39:7 40:25 43:2, 3 44:25 45:2, 15, 20, 23, 24 46:3, 6, 8, 10 47:1, 2, 6, 9, 13, 16, 18, 19, 20 49:25 50:5, 12 56:20 57:25 58:11, 14, 18 61:16 66:17 67:19 69:10 70:10 71:12, 20 73:14 74:12 80:13 81:25 82:15 83:22, 23 91:17, 20, 22 92:1 95:25 96:1, 2, 4, 6, 9, 13, 23 97:1, 2, 14, 16 103:2, 10, 20 107:7 110:2, 4, 7, 23 113:7 118:14, 19, 20, 23 119:9, 13, 15, 16 120:2 123:20, 23 126:10, 11, 21, 22, 23 128:7 129:12, 14 131:14, 18, 24 132:3, 5, 8, 16, 23 134:8, 13, 19, 25 135:19, 24 136:1 137:18 138:19 139:8 140:25

142:*23*
143:*18, 25*
144:*2*
147:*17*
149:*10, 13*
151:*19*
153:*12, 16, 19* 154:*16, 19, 20*
155:*13*
158:*10*
160:*18*
170:*13*
**officer** 6:*2, 15* 7:*9*
13:*3* 15:*7*
19:*7, 12*
30:*24*
31:*13*
42:*22*
122:*13*
123:*3*
138:*23*
162:*16*
170:*1*
**offices**
65:*14*
74:*17, 20*
113:*9*
**official**
26:*22*
**officially**
5:*18* 124:*17*
**Oh** 11:*19, 23* 14:*14*
30:*9* 53:*14*
74:*25*
76:*10, 13*
80:*19*
90:*21* 91:*1*
101:*5*
106:*17, 18*
114:*24*
128:*5*
133:*14*
139:*9, 19*
143:*23*
144:*9*
155:*14*
158:*7*
160:*24*
166:*5*
168:*18*
**Okay** 5:*14*
6:*13, 16, 18, 25* 7:*3, 5*
8:*14, 16*
9:*20, 24*
11:*23* 12:*2, 5, 9, 10, 19*
14:*9, 14, 25*
15:*3, 24*
17:*2, 22*
18:*17, 24*
19:*9* 20:*16*
21:*14, 23, 25* 22:*1*
23:*11, 16*
24:*19, 24*
25:*4* 27:*10*
28:*4, 7*
29:*23* 30:*1, 2, 8, 22*
31:*6* 32:*4, 21* 33:*5, 9*
34:*5, 11, 18*
35:*4* 36:*6, 9* 37:*3, 9, 20, 23*
38:*19, 24*
39:*16, 23*
40:*13, 18, 21* 41:*2, 15, 18* 42:*3, 7, 24* 43:*13, 17, 23* 44:*1, 14* 46:*12, 22* 48:*12, 16, 20*
49:*20*
50:*14* 52:*6*
53:*4, 24*
54:*19* 56:*4, 19* 57:*3, 24*
59:*7, 10, 14, 24* 60:*3, 6*
61:*12, 13*
62:*2, 5, 19*
63:*8, 12, 24*
64:*2, 9, 25*
65:*18*
66:*10* 67:*6, 10* 68:*22*
69:*14, 19, 22* 70:*2, 9, 21* 71:*16, 19* 72:*9*
73:*7* 74:*8, 16, 21, 25*
75:*5, 8, 9*
76:*17, 22*
77:*24* 78:*5, 12, 15, 18, 20, 24* 79:*2, 6, 15, 25*
81:*1, 10, 23*
82:*2, 13, 17, 24* 84:*4, 15, 21, 24* 85:*1, 17, 24*
86:*13* 87:*6, 23* 88:*12, 18* 89:*15, 21* 90:*10, 13, 19* 91:*4*
92:*8, 24*
93:*3, 5*
94:*11, 14*
95:*7, 15, 18*
97:*22* 99:*2, 7* 100:*12*
101:*17*
102:*5, 12, 14, 18*
103:*18, 21*
104:*24*
105:*2, 25*
106:*1, 12, 22* 108:*11*
109:*4, 7*
110:*8, 25*
111:*10, 16*
112:*1, 24*
113:*1, 7, 16, 20, 24*
114:*13, 18, 24* 115:*13*
116:*1, 2*
117:*13, 15*
118:*3, 13, 18, 23*
119:*4, 12, 18* 120:*4, 7, 11, 20, 22, 25* 121:*12, 21* 122:*12, 16* 123:*9, 11, 14*
124:*20*
127:*7*



Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


128:4, 8
129:7
131:13
132:21
134:12
135:2, 12, 22 136:4
137:5, 14, 23 138:15
140:13, 19, 21 142:11, 15, 22
143:6, 12, 18 145:13
153:20
154:22
155:3, 11, 17, 24
156:1, 2, 9, 19 158:5, 14 159:3
162:13
168:9, 25
169:1
**Okey-doke** 59:13
**old** 110:4
**once** 28:19 32:11, 14 37:4 56:20 66:21 83:2 88:20 111:4 146:16 164:25
**one-on-one** 72:13, 20 73:5 140:3 156:11
**one-on-ones** 140:11
**ones** 20:3
**ongoing** 114:11
**online** 42:20
**on-site** 54:18
**open** 11:17 14:13 40:9 59:24 116:3, 6 152:9 162:20
**OPENING** 3:3, 4 26:13 27:9, 23 28:5, 9 106:14, 20
**operating** 31:13 42:21 122:13
**operational** 31:24 54:13
**operations** 31:17 123:17
**opportunities** 26:14 162:8
**opportunity** 104:7 138:8, 10, 12 144:12 151:11 162:3
**opposed** 37:2
**opposing** 163:14
**option** 14:10, 11 42:22 60:16
**order** 5:2 18:10, 13, 14 21:21 22:6 66:8 87:25
**Ordinance** 25:11
**ordinances** 25:8, 12, 19
**org** 42:7, 23 126:8
**organization** 125:5
**organizational** 42:20
**originally** 147:18 167:6
**OSV** 54:17
**outreach** 123:18
**outside** 51:16 53:22 103:22 140:25 165:22
**outstanding** 22:10

**< P >**
**P.M** 1:3 16:18 106:7 169:11
**pack** 107:22 159:25
**pad** 7:7
**PAGE** 3:11 4:2
**pain** 152:7
**panelist** 8:13, 17, 22
**panelists** 8:15
**paragraphs** 145:17
**parameters** 166:18
**park** 138:11
**parking** 46:16, 19, 21 57:1 131:5 138:5, 9
**parse** 140:18
**part** 66:11 95:3 100:8 125:4, 5, 24 145:1 162:5 166:14
**parted** 128:6
**particular** 6:15 36:23 37:16 38:11 44:9 100:21 143:14
**particularly** 35:8 54:14
**parties** 6:1 15:20 16:8 21:2

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**party** 10:*19* 11:*5*
**pass** 131:*6*
**patients** 132:*14*
**PATRICK** 4:7 19:*11* 31:*11* 50:*2* 109:*5*, *18* 117:*11*
**patterns** 54:*13*
**Paul** 61:*10*
**pay** 160:*17*
**PCMH** 151:*20*
**people** 19:*24* 31:*10* 49:*25* 62:*6* 67:*4* 76:*15* 86:*25* 98:*5* 110:*22* 119:*21* 122:*25* 125:*3*, *16* 127:*6* 134:*19*, *21* 139:*8* 143:*12* 145:*7* 157:*10* 159:*24*
**perceived** 102:*14*
**percent** 112:*17*
**Perfect** 60:*11*
**performance** 32:*2*, *9* 86:*23* 95:*20* 124:*17*
**performed** 51:*8*
**performer** 51:*23*
**period** 20:*25* 163:*10*, *25* 164:*24*
**person** 37:*24*, *25* 40:*24* 60:*9* 64:*9* 79:*13*, *21* 84:*24* 95:*12* 98:*9* 107:*10*, *22* 111:*24* 131:*1* 152:*12* 159:*17* 167:*2*
**personal** 47:*17* 52:*11*, *18* 132:*15* 144:*18* 147:*21* 155:*23* 170:*10*
**personally** 63:*9*
**personnel** 78:*3* 87:*10* 88:*16* 147:*25* 168:*12*
**perspective** 124:*18*
**Pete** 1:*8* 2:*12*, *19* 4:*12* 5:*22* 9:*8* 10:*23* 28:*13* 31:*11* 38:*11*, *12*, *15* 40:*19* 56:*20* 62:*15*, *18*, *22* 63:*3*, *4* 66:*16* 67:*14* 71:*14* 72:*14* 73:*9*, *20* 79:*7* 81:*15* 89:*19* 90:*2*, *17* 92:*2*, *15* 93:*9* 94:*17*, *20* 95:*20* 96:*4*, *12*, *18*, *25* 97:*17* 100:*7*, *21* 101:*14* 104:*13*, *19* 105:*1* 118:*4*, *12* 121:*23* 122:*3*, *11* 123:*9* 154:*10* 156:*23* 157:*3* 158:*7* 159:*3* 160:*1* 162:*4*
**Pete's** 63:*4* 78:*23* 91:*24* 100:*13* 167:*18*
**phlebotomy** 139:*13*
**phone** 20:*21* 28:*16*, *19*, *25* 33:*17*, *22* 34:*18* 37:*9*, *23* 42:*25* 43:*13*, *24* 49:*8* 50:*5*, *24* 52:*5*, *12*, *13*, *18* 53:*17*, *18* 64:*24* 70:*13* 71:*23* 79:*21* 81:*25* 82:*1* 84:*8* 86:*10* 90:*4* 97:*1*, *4* 112:*9*, *14* 120:*16* 125:*9*, *23* 127:*4*, *5*, *6*, *24*, *25* 128:*1*, *5*, *14* 130:*5*, *7*, *8* 132:*25* 133:*8* 134:*19* 135:*3* 136:*23* 137:*4* 145:*12* 147:*4*, *11* 154:*23* 155:*12*, *15* 158:*4*, *9*, *11*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


**physically** 156:*5*
**physicians** 54:*12*
**pick** 98:*24* 107:*16*
**picked** 34:*18* 125:*12* 134:*16* 147:*15*
**picking** 136:*23*
**piece** 31:*19*
**pieces** 158:*15*
**PIKE** 3:*17* 8:*11, 14* 9:*18* 12:*13, 16* 31:*10* 49:*15, 16* 57:*13* 59:*21* 60:*2, 4, 7, 10, 12, 15, 19, 23* 61:*5, 10* 67:*13* 74:*3, 10* 75:*6, 8, 12* 82:*7* 84:*13* 114:*17* 151:*6* 167:*4, 5*
**Pizza** 129:*16*
**place** 12:*12* 23:*14* 138:*11*
**placed** 13:*15*
**places** 42:*13*
**pleadings** 10:*13* 25:*14*
**pleasantries** 120:*6*
**please** 8:*11* 9:*1* 16:*14* 53:*3* 61:*13* 76:*4* 108:*12* 122:*9* 153:*7* 154:*9* 156:*3, 4* 163:*23*
**plus** 38:*22*
**podium** 57:*20, 23* 58:*3*
**point** 8:*4, 7* 16:*1* 17:*19* 19:*20* 22:*14* 23:*19, 23* 34:*11* 47:*22* 50:*24* 56:*17* 61:*12* 65:*18* 78:*16* 100:*25* 102:*24* 124:*11* 125:*10* 133:*13* 139:*18* 152:*16* 165:*23*
**politeness** 66:*21*
**politenesses** 35:*5*
**popup** 9:*1* 11:*24*
**portion** 26:*12*
**portions** 22:*21*
**position** 30:*22, 25* 31:*12, 15* 32:*5* 50:*16* 61:*15, 18* 77:*14* 85:*17, 22* 86:*2* 97:*15* 100:*22* 107:*4* 110:*16* 111:*12* 118:*9* 120:*8, 23* 122:*18* 123:*21, 24* 144:*16* 148:*17* 151:*24* 159:*18, 20* 160:*17* 164:*15*
**positions** 33:*25* 77:*17* 122:*20*
**possible** 129:*10* 156:*8* 164:*6*
**Possibly** 42:*16, 17* 114:*15*
**potential** 19:*24*
**Potentially** 153:*21*
**pounded** 129:*8*
**pounding** 49:*3* 132:*22* 155:*5*
**practice** 22:*20* 55:*21, 24* 84:*2*
**prayer** 160:*16*
**precedent** 106:*24, 25* 108:*9*
**preceding** 122:*17*
**precisely** 28:*21*
**pre-hearing** 13:*21* 18:*11* 22:*4* 23:*17* 24:*5, 13, 15*
**preliminary** 16:*20* 26:*3*
**pre-motions** 12:*25*
**preoccupied** 33:*19*
**prep** 66:*4*
**prepare** 125:*3*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**prepared** 68:*25*
**preparing** 131:*15* 143:*1* 151:*20, 21*
**prerogative** 163:*11*
**PRESENT** 2:*18* 5:*9, 11, 13, 16* 13:*11, 20* 15:*9, 11* 19:*25* 20:*1* 21:*18* 69:*22* 83:*16* 115:*15* 146:*16* 168:*7*
**presented** 12:*20* 18:*11* 19:*24* 23:*9* 165:*20, 25* 167:*20*
**presenting** 19:*23*
**pressed** 126:*5, 13*
**pressing** 126:*7, 16*
**presumed** 99:*3*
**pretty** 75:*22* 138:*6, 7, 16* 161:*5*
**prior** 17:*13* 24:*2* 99:*16* 149:*5, 8*
**prioritizing** 32:*18*
**privacy** 64:*18*
**private** 127:*5*
**privileged** 51:*17* 75:*13*
**probably** 34:*9, 13* 38:*11, 20* 47:*12* 91:*13* 130:*16* 132:*17* 153:*18*
**problem** 6:*18* 26:*25* 27:*2* 95:*20* 109:*1* 124:*13* 132:*12* 152:*13* 167:*11*
**problems** 53:*24*
**procedural** 160:*13* 162:*19*
**procedure** 6:*9, 11, 22* 60:*20*
**proceed** 12:*19* 22:*1* 25:*6* 106:*11*
**proceeding** 16:*19*
**PROCEEDINGS** 1:*10* 9:*2* 16:*4* 29:*25* 59:*17* 60:*5* 75:*7* 76:*6* 84:*23* 85:*6* 105:*16* 109:*6* 117:*12, 17* 121:*20* 168:*11* 170:*6, 8*
**process** 91:*10* 160:*11* 162:*5* 167:*12, 19*
**produced** 55:*2, 3* 164:*25*
**products** 65:*6*
**Professional** 1:*16* 100:*22* 101:*1, 5* 124:*7* 170:*4*
**program** 32:*20* 123:*18* 151:*23*
**prohibits** 26:*19, 20, 22*
**project** 139:*13* 141:*13*
**projects** 54:*8*
**promise** 55:*12*
**promote** 8:*5*
**promoted** 8:*16*
**prompts** 101:*10*
**pronouncing** 117:*14*
**proposed** 9:*25* 10:*4* 18:*9, 12* 22:*5, 19* 23:*17, 23* 24:*4*
**propriety** 29:*15*
**protect** 127:*2, 13, 14* 135:*9*
**proverbial** 162:*11*
**provide** 15:*23* 16:*10* 29:*3* 48:*7*
**provided** 75:*14* 100:*24, 25* 167:*13*
**provision** 25:*8* 99:*2*
**proximity** 110:*3* 118:*14, 19*
**pry** 64:*18*
**Public** 1:*18* 5:*22* 19:*11* 73:*3* 77:*20* 85:*20* 118:*11*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

122:13
139:25
142:17
149:25
150:23
151:1
158:16
**published**
54:22
**pull** 48:1, 2
**pulled**
127:24
**purpose**
39:16
**purposes**
115:18
**pursuing**
32:21, 22, 25
**put** 14:11
21:20
43:11
44:15
66:20
124:19
126:5
128:5, 7
129:15
161:5
**putting**
5:19 10:19
21:11
142:24
145:19

**< Q >**
**Qualified**
31:3
**question**
10:17, 25
12:21
33:25 34:3, 23 41:16
42:3, 4, 12
52:21 59:6
74:7 80:1, 2, 3, 23
83:5, 6
93:19, 24
94:3 95:7
118:19
125:16
126:23
127:5
128:20
154:7
156:3 162:2
**questions**
35:2, 3
39:5 40:13, 20 57:6
67:8 72:4
81:11, 17
93:4, 10
101:6
105:4
109:25
114:23
115:1
118:5
121:12, 14
154:14
155:24, 25
162:4, 6, 8, 12 167:18
**quick** 55:11
74:7
**quickly**
141:17
**quiet** 76:20
**quit** 28:18
36:2, 3, 5, 11, 12, 21
38:12 40:2
42:24
43:19
44:22
45:13, 22
46:23 48:9, 18, 21 49:2
58:2, 9, 14, 18 68:5, 7, 10 90:7
94:24
97:15
98:20, 21, 24 99:1
101:6
107:15
110:16
112:19, 25
113:6
129:10
131:12
134:3, 6
139:16, 22
142:5
151:15
155:6, 20, 21 156:6
157:5
161:19
**quite** 32:12
58:25 73:8
76:1 147:3
**quitting**
40:4
110:19
132:5, 7
133:18
**quote** 28:18
66:21
**quote/unquote**
145:20
**quotes**
142:24
145:19

**< R >**
**Rachel**
94:18 95:3
**rage** 49:2
**raise** 119:21
**raising**
119:13
**range** 132:17
**rapid-fire**
154:14
**RCX** 3:16
**RDX** 3:15, 20 4:6, 15
**reach** 116:4
144:16
**reached**
116:15
**reaching**
104:13
**read** 14:22
103:3
**reading**
103:15
**ready** 8:17, 20 12:19
16:18
151:23
165:1
**real** 55:11
132:2
148:20

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**realized** 125:22
**really** 18:11 23:14, 25 24:1 39:6 51:22 54:11 58:5, 6 68:1, 3 72:14 78:9 109:25 114:20 118:6 136:6 140:8 164:25
**Realtime** 1:17
**reason** 40:6 47:16 86:17, 20 161:17, 18
**reasonable** 27:13, 19, 21
**reasonably** 29:1
**reasons** 104:5 144:18
**rebuttal** 19:16, 25 20:5, 23 21:4, 9
**recall** 35:5 36:7, 16 43:16 45:17 48:13 58:4 62:5 64:2 68:21 69:4 89:1 93:16 96:5, 10 119:5, 8 120:1, 2, 19 133:20 142:10, 14 155:10, 16 156:10, 13, 18
**recalls** 155:8 156:15, 17
**recap** 153:14
**receipt** 163:8, 19, 20 168:13, 17, 24
**receive** 9:22 10:14 17:5, 11 23:6 47:21 50:18 145:24 146:4, 19 147:7 149:3 169:4
**received** 9:15, 21 19:16 22:15 48:16 50:14 66:13 83:2 102:18 149:16 150:5, 22 151:3 168:11 169:4
**recess** 106:6
**recollection** 110:10 154:25
**recollections** 46:9
**reconsider** 115:2, 8
**record** 5:19 15:4 17:22 26:4 30:16 60:18 61:4 75:11 121:24 122:9 133:3, 4 142:24 145:20 162:18 165:21, 22, 23
**records** 17:12 22:12 23:1, 5, 8 132:25 147:4 149:25 150:14, 23 151:1, 3
**RECROSS-EXAMINATION** 57:4
**redirect** 55:7, 9 74:5 84:18 105:5 117:5 156:21
**refer** 100:7
**referred** 166:4
**referring** 18:8 22:18, 24, 25 50:7 58:10 59:5 137:3 157:16
**regard** 17:10 19:17 98:6 99:8 149:16 159:17
**regarding** 17:6, 12 29:15 51:4, 8 53:20 98:2 145:7
**regards** 72:4
**Registered** 1:16 170:3
**registration** 31:22
**regular** 78:1, 2 118:11 140:9, 10 167:21, 23 169:3
**regularly** 118:10
**rehash** 35:11 39:18
**reiterated** 112:20
**rejoin** 14:12
**related** 33:24 120:20 142:1

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

160:11
**relates** 35:2
**relating**
44:18
68:17
120:16
**relationship**
33:6 65:19
124:4, 6
146:18
**relayed** 51:9
**relevance**
10:4 18:22
20:3 21:13
**relevant**
19:7 22:12
23:4 139:18
**remain** 11:10
**remainder**
45:7 138:15
**remained**
47:10, 11
**remaining**
10:19
**remedy**
167:22
**remember**
16:14 33:4
41:21 46:4, 5, 7 47:2, 5 48:10
49:23
50:13 52:5
53:17, 23
66:18 69:2, 7, 15, 16
72:3, 7
80:21, 25
91:21 95:1
111:4
119:4
120:4
131:19
132:4, 6
155:22
161:15
**remembered**
80:17
**remembering**
132:7
**remote**
170:6, 9
**remove**
59:14
86:11 166:3
**removed** 75:8
**removes**
14:11
**repeat** 80:1, 2 83:5
96:24
97:12
156:3, 17
165:6
**repeated**
38:5 40:11
80:3, 6
**repeatedly**
28:17 35:17
**repeating**
70:19
**rephrase**
153:7
**report** 31:4
83:4, 7
85:24 86:4
98:12
99:23
100:18
101:24
104:20
157:10
**reported**
33:25
48:25
73:25 94:7, 8, 20
100:11
101:24
124:1
125:16
170:5
**Reporter**
1:16, 17
61:6 77:7
85:15
123:4
164:21
170:4, 5, 19
**reporter's**
30:18
**reporting**
67:2
107:22
146:18
**reports**
31:7 41:5, 13, 23 42:5, 14 102:2, 4
**represent**
22:22
40:19
108:7
109:24
118:4
**represented**
16:9
**representing**
107:21
**request**
7:17 17:3, 8 26:15, 22
75:12, 14
149:25
150:15, 23
151:1
166:14
**requested**
20:21 23:3
57:9
149:20
150:25
**require**
13:10 66:12
**required**
52:1
**requires**
29:5
**rescind** 29:9
**reserve**
23:22
**resign**
43:21
82:21, 22
94:6 98:16
107:1
110:16
134:6
145:22
153:25
159:18
**Resignation**
5:21 29:4, 6, 9, 15
36:12
37:14 38:4
39:20
43:19
44:15

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

47:23
48:22 56:5
78:23 79:5, 16 81:3, 7
82:19
87:18, 20, 24 88:3, 19
90:11, 15, 20 93:19, 25 94:7, 21, 25 95:10, 11, 13, 23
98:6, 14, 20, 23 100:5
105:10
107:8, 12, 14, 24
108:2
131:20, 22
132:11
133:19, 25
142:23
144:5
145:8, 20
148:5
149:10
158:6, 9
161:8, 18
**resignations**
44:18
87:15
93:12 98:2, 17
**resigned**
28:13, 16
29:2 38:16, 25 39:8
40:24
50:15, 21
51:12, 23
78:16 82:3
97:1, 14
99:3, 16
102:19
105:9
107:4, 9, 23
111:12
120:8
132:1, 10
133:24
134:2
141:19
143:22
144:6, 8, 10
146:12, 25
148:17
154:6, 15
158:25
159:1
**resigning**
88:25 98:3
102:15
149:1
**resigns**
55:22
**resolved**
26:4
158:12, 13
160:4
**resolving**
26:10
**resources**
77:21
100:24, 25
**respect**
87:9
108:16
125:10
130:10
**respond**
20:18
48:17
104:7
141:18
142:4
146:19
151:11
159:19
166:12
**responded**
34:1 35:18
145:21
**Respondent**
1:9 2:15
3:3, 7
28:9 160:25
**responding**
153:15
154:16
**response**
23:9 130:5, 24 136:18
142:6
144:17, 18, 19 145:18, 24 146:1, 4, 5, 20 147:7, 9 150:4, 7, 14, 19, 23
151:4, 15
**responsibilities** 123:18
**responsible**
87:15
**rest** 18:22
44:25
45:18
47:10 75:4
135:20
**restate**
160:16
**result** 95:12
**return**
12:11 106:5
**returned**
56:20
107:18, 19
**returning**
36:4 43:15, 18 102:6
**reverse**
160:9, 15
**review**
44:20 54:2, 6, 21
**reviewed**
17:23, 24
**Revised**
25:12
**RIF'd** 157:19
**right** 5:7, 17 6:13
8:25 12:9
20:14
23:22
28:24
36:14
40:15
42:11 45:1
47:7 48:11, 14 49:16
58:10 59:2
60:9 66:14
67:6 74:17
77:10
82:15, 16, 25 85:21
86:15
89:18, 20

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


93:3 95:14, 20 97:24 98:2, 3, 23 99:15 105:25 108:23 114:21 119:4 121:23 128:8, 15, 16 133:21 134:20 137:18 138:2, 17 145:3 150:5 152:20 156:10 158:19 160:14 161:21 164:23 166:14

**rights** 104:8

**ringer** 136:24

**ringing** 136:24

**risk** 11:17

**Rodney** 101:20

**rogue** 35:1

**role** 6:4 35:23 54:22 77:15 95:13 100:10 104:9, 10 122:24

**roll** 5:6 7:21 14:6

**room** 9:11 10:1, 20 11:10 13:16 67:4 105:24

**roughly** 33:16 34:16 38:23

**route** 93:17 101:1 104:14

**Rule** 23:2 25:15, 16 44:18 98:2 99:3 166:15, 16

**rules** 13:10 16:9, 11 25:14, 19 29:3, 16 98:15 104:12

**ruling** 11:9 17:7 22:4

**rulings** 16:15

**rumblings** 113:12 119:1

**run** 89:5 113:15

**rushing** 62:22

**< S >**

**said/he** 160:12 161:5

**salaries** 152:6

**sat** 91:17 127:8 130:14, 19 131:8 157:17

**satisfied** 32:2 86:22

**Satonya** 2:4 15:5

**saw** 37:2 45:10, 16, 24 46:2, 15, 16, 19 47:18 57:24 58:25 59:3 64:11, 15 66:3 70:24 83:19 92:14 112:15 120:11 127:18 130:2 131:2 139:4, 8

**saying** 10:7 20:10 37:18 43:16 65:8 71:2 112:15, 22 136:10 142:4 155:5 156:6 168:20, 22

**says** 12:3 97:13 107:8, 15 151:15 153:17

**schedule** 57:7, 10, 12, 14 58:1, 17

**scheduled** 63:20 64:13 72:23

**schedules** 54:13

**scheduling** 151:25

**screaming** 36:22 49:3

**screen** 27:7

**screenshots** 53:12, 13, 15, 16, 20 55:2

**se** 37:7 38:6 57:20 58:7

**search** 62:17

**seasonal** 148:11

**Second** 7:11, 22 14:1 25:22, 23 27:25 53:2 94:19 115:21 135:5 164:13 165:5 166:21 168:1

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**seconds** 129:*1, 2, 8, 10* 132:*24* 133:*6* 155:*18, 20* 156:*7, 23* 157:*2, 13* 158:*4* 161:*10*
**Section** 5:*20* 25:*11, 13*
**security** 83:*11, 14, 16, 20* 91:*18, 19, 25* 102:*10* 132:*18*
**see** 9:*8* 10:*3* 12:*2* 21:*14* 26:*16, 17, 18, 25* 27:*2* 30:*6* 44:*24* 45:*9, 19* 46:*21* 47:*13* 48:*20, 23* 57:*7, 9* 58:*17* 60:*7* 62:*12* 63:*16* 64:*9* 66:*1, 7* 70:*9* 71:*10, 19* 74:*13, 15* 76:*14* 83:*20* 88:*16* 89:*10* 90:*19* 96:*4, 22, 24* 97:*6* 109:*11* 111:*21* 114:*9* 117:*19* 121:*9* 129:*21* 130:*1* 138:*9* 139:*20* 155:*17* 156:*9, 19* 158:*7* 166:*18, 20* 167:*7, 23*
**seeing** 12:*17* 45:*17* 46:*5* 57:*1* 79:*9* 96:*5, 10* 120:*2*
**seek** 78:*3*
**seen** 62:*16* 74:*19* 151:*9*
**sees** 42:*23*
**self** 62:*24*
**send** 44:*12* 53:*10, 16, 19* 98:*19* 116:*6*
**sending** 91:*11*
**sends** 91:*2*
**senior** 62:*1* 122:*19* 124:*8*
**sense** 62:*25* 74:*22*
**sent** 6:*8* 52:*23* 53:*5, 8, 15, 17* 63:*21* 72:*4* 81:*4* 125:*15* 129:*24* 130:*13, 22* 137:*21* 141:*11* 144:*15* 165:*2, 14*
**separate** 24:*13*
**sequestered** 11:*12* 13:*1, 4*
**SERVICE** 1:*2* 2:*3* 15:*6* 16:*10* 25:*13* 29:*3, 16* 44:*17* 98:*15* 104:*12, 15* 152:*1* 166:*16*
**session** 5:*24* 7:*18, 21* 8:*6, 10, 18, 21, 23* 9:*3* 11:*15, 17, 20* 12:*3, 4* 14:*13, 16* 20:*20* 59:*24* 116:*3, 6* 162:*20*
**set** 89:*9* 102:*4* 108:*9* 150:*18* 170:*12*
**settlement** 15:*16, 17*
**seven** 152:*8*
**several-paragraph** 145:*21*
**share** 27:*7* 89:*8* 101:*17* 110:*5* 113:*8* 118:*20*
**shared** 91:*24* 92:*2, 3, 13*
**sharing** 92:*22* 113:*11* 130:*17*
**SHARON** 3:*21* 31:*10* 53:*6, 10, 16* 69:*9, 19, 23* 70:*4, 5, 6* 75:*16* 76:*4, 5, 17* 77:*1, 24* 84:*19, 22* 91:*1, 7, 10, 18* 92:*1, 3, 5, 13, 14* 102:*9, 15* 131:*18* 133:*24* 141:*10* 142:*22* 143:*21* 144:*4, 19, 22* 145:*15* 146:*3, 8, 23* 150:*4*

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 815 of 1127 PageID #: 818

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

153:*10, 15, 22, 25* 154:*14* 155:*8, 12, 13, 14* 157:*25*
**S-h-a-r-o-n** 77:*8*
**Sharon's** 145:*18* 149:*9, 12* 158:*21*
**Shawn** 8:*19*
**shock** 131:*21, 25*
**shocked** 28:*14* 51:*23*
**short** 19:*20* 36:*10* 54:*17* 85:*2* 97:*9* 123:*6*
**shorten** 163:*9*
**Shorthand** 1:*16* 170:*4, 6*
**shortly** 125:*13, 18, 25*
**shot** 125:*12*
**shouting** 58:*15*
**show** 64:*13*
**showed** 63:*19* 64:*23* 96:*18* 127:*3, 25*
**showing** 11:*16* 12:*17* 133:*1*
**shows** 116:*7*
**shut** 55:*19* 160:*7*
**side** 118:*25*
**sides** 18:*6*
**sight** 74:*20*
**sign** 50:*23* 68:*16* 69:*4*
**signaled** 46:*20*
**signing** 68:*21* 69:*4*
**similar** 38:*2* 94:*24* 112:*23*
**simply** 16:*7*
**single** 88:*15, 17* 160:*3*
**site** 54:*16* 66:*5, 6, 7, 9, 11* 72:*17*
**sitting** 107:*7*
**situation** 35:*20* 36:*25* 58:*16* 68:*17* 89:*4, 5, 23* 92:*4, 25* 98:*9* 99:*18, 19* 100:*18* 102:*23* 103:*1* 104:*2* 105:*8* 107:*17* 108:*1, 2* 134:*9* 157:*7, 15* 160:*12*
**situations** 42:*23*
**six** 41:*22* 125:*17, 23* 127:*7* 157:*9*
**slamming** 127:*18*
**slate** 151:*22*
**small** 78:*4*
**somebody** 88:*25* 94:*8* 95:*10* 98:*20* 103:*6* 107:*1, 3, 7, 15*
**someone's** 160:*6*
**somewhat** 152:*23*
**soon** 38:*1* 62:*13* 125:*21*
**sorry** 7:*6* 8:*15* 11:*14* 16:*17* 18:*25* 20:*10* 22:*7* 32:*8* 41:*17* 50:*17* 53:*11* 54:*12* 71:*11* 86:*5* 94:*4* 111:*9* 114:*17, 24* 123:*22* 134:*21* 135:*7* 139:*19* 140:*14, 15* 154:*12* 157:*3, 4*
**sort** 77:*24* 78:*9* 107:*24*
**sound** 45:*1*
**sounded** 92:*19*
**soundproof** 113:*9, 10* 118:*23*
**sounds** 55:*1* 59:*24* 82:*16* 119:*3* 153:*18*
**south** 34:*4*
**space** 34:*8*
**speak** 19:*13* 39:*10, 13* 46:*11* 63:*23* 64:*19* 72:*23* 84:*25* 89:*10* 90:*24* 100:*2* 103:*1* 144:*13* 153:*11*
**speakers** 97:*7*
**speaking** 108:*8* 152:*23*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

153:*25*
154:*1* 164:*1*
**special** 5:*5*
**specific**
35:*12*
65:*24* 87:*1*
90:*1* 153:*4*
156:*13*
**specifically**
80:*24* 87:*2*
**speed** 32:*20*
**spell** 30:*19*
61:*7* 77:*6*
85:*15*
**spent** 32:*18*
145:*17*
**spoke** 49:*20*, *21* 50:*4*
67:*18*
102:*16*
116:*17*, *19*
134:*18*, *21*, *22* 153:*10*
155:*13*
**spoken** 50:*10*
**sponte**
166:*13*
**spot** 131:*5*
**spouse**
116:*19*
**ST** 1:*1*
2:*9*, *21*
15:*6*, *13*
25:*10*, *11*, *12*
**staff** 31:*22*
72:*5*
123:*17*
129:*14*
132:*13*
152:*2*
**staffing**
54:*13*
**stand** 162:*11*
**standard**
54:*7* 91:*19*
98:*18*, *22*
99:*14*
104:*21*
111:*6*
114:*10*
**standby**
20:*19*
**standing**
29:*4* 32:*10*, *11*, *13* 54:*4*
87:*21* 98:*3*, *16*, *24*
107:*15*
114:*6*
132:*18*
159:*24*
**standpoint**
39:*20*
**start** 5:*19*
8:*20*, *25*
14:*25*
21:*15*
29:*17* 30:*5*
62:*10*, *11*
124:*22*
**started**
41:*3* 71:*4*
72:*14* 73:*9*
77:*19*
89:*24*
125:*22*
**starting**
106:*9*
131:*17*
**state** 30:*15*
61:*3*
121:*24*
122:*8*
**stated** 46:*8*
58:*3* 66:*22*
**STATEMENT**
3:*3*, *4*, *6*, *7*
16:*8* 19:*18*
27:*9* 28:*5*, *9* 35:*2*
36:*6* 48:*7*
53:*8*, *19*
55:*1* 68:*20*, *22*, *23*, *25*
69:*8*, *11*, *12*, *25* 70:*7*
75:*12* 82:*7*
84:*13*
106:*14*, *20*
153:*1*
157:*5*
159:*14*, *15*
160:*23*, *25*
162:*17*, *25*
163:*1*, *7*
165:*12*, *13*
166:*3*, *10*, *24*, *25*
167:*13*, *14*, *17*, *24*
**statements**
27:*23*, *24*
82:*10*
151:*5* 159:*8*
**stating**
66:*13*
**stay** 12:*24*
58:*24* 67:*8*
91:*22*
**stayed**
107:*19*
**staying**
65:*12*
100:*23*
**steep** 87:*5*
**steering**
36:*20* 49:*3*
50:*11*
58:*16*
128:*24*
129:*9* 155:*5*
**stenographic**
170:*9*
**steps** 32:*7*
44:*7*, *8*
49:*10*, *12*
131:*7*
**stick** 165:*24*
**stip** 20:*17*
**stipulate**
18:*3*
**stipulation**
18:*2* 20:*7*, *11*
**stood** 132:*15*
**stop** 45:*12*
107:*17*
108:*17*
128:*8*
**stopped**
64:*12*
129:*23*
**story**
116:*23*
159:*12*
161:*12*
**straight**
126:*22*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**straightforward** 92:21 155:19
**strategic** 134:15
**strategy** 124:9
**strict** 16:11
**striking** 28:15
**struggling** 140:20
**stuff** 59:2 65:6 96:15, 22, 23 97:18, 20 98:25 107:16 128:7 129:15 162:19
**sua** 166:13
**submit** 9:20, 22 10:11 22:20 24:7, 14 98:6 148:5, 9 163:14
**submitted** 66:14 69:8, 11 132:25 144:23 145:6 149:19, 25 150:3
**subpoena** 17:4, 6
**substantial** 161:3, 8, 24
**suddenly** 51:24
**suffice** 120:7
**suggestion** 13:3 24:9
**summarily** 108:7
**summary** 31:25
**superior** 74:1
**supervise** 127:6
**supervises** 31:22
**supervising** 61:25
**supervisor** 28:14 61:16 104:22
**supplied** 16:3
**supply** 23:5
**support** 167:9
**supported** 161:8
**supporting** 149:21
**supposed** 14:22 54:9 95:23 106:19 158:6, 9
**supposedly** 40:24 58:2, 14 128:23 148:16 149:17, 21 165:12
**sure** 10:6 11:1 28:6 31:16 32:12 47:19 53:18 55:13 60:16 61:8 77:8 81:22 83:24 91:14 96:22 101:15 112:13, 17 118:15 120:3 122:19 123:10 124:24 128:10, 13 132:17 138:3, 10 153:8 160:24 164:15
**surprise** 40:22 41:1 102:5
**surprised** 82:18
**suspected** 107:14
**swear** 60:19 121:25
**swearing** 66:23 67:24
**switched** 11:22
**sworn** 60:22, 25 76:25 77:3 85:8, 11 109:17, 20 117:22, 25 122:2, 5
**system** 125:22 141:22

**< T >**
**table** 17:15
**take** 6:4 7:18 12:23 17:1 25:7, 18 33:12 39:21 53:2 55:13, 14 56:15 61:13 66:24, 25 72:9 82:10 104:15 105:21 118:6 124:22 145:14 155:20
**taken** 1:11, 15 49:11 55:19 62:14 170:10
**takes** 69:25
**talk** 27:17 35:23 62:22 64:7 65:9, 13 70:17, 25 71:23

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 818 of 1127 PageID #: 821
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

73:20 78:2, 9 79:23 80:11, 13, 20 86:11 95:22 96:19 97:4 98:8, 9, 12 99:10, 14 100:9 104:22 108:5 110:18 119:18 120:14 141:16 153:23 154:1, 3 158:5, 8

**talked** 49:5, 9, 11 64:16 65:4 71:17 73:15 74:19 79:13, 20, 22 80:4, 5 84:5 111:6 112:2, 20 126:4 127:19, 21 129:19, 20, 25 134:3 136:14 142:7 157:1

**talking** 22:8 35:18, 25 37:5, 6, 8 39:2 40:10, 24 44:21 52:5 57:15 69:9 79:19 80:21 92:23 99:12 113:12 138:16 157:6 158:11

**tapped** 131:3

**task** 32:18, 19 161:6

**team** 31:23 54:15 88:7 98:11 100:1 152:4 158:2

**teams** 131:16

**TECH** 8:19, 25

**technical** 85:3

**technicalities** 16:12

**tell** 29:12 31:14 33:14 36:14, 18 41:10 49:20 51:18 65:25 68:2, 5, 7 72:25 82:21 91:14 94:12 96:12 104:1, 5 112:12 120:8 131:9 133:5 137:8 143:21 155:17

**telling** 58:9 101:11 113:5 154:15

**tells** 96:25

**temporary** 148:10

**ten** 126:17 162:22

**terminated** 98:10

**terminating** 86:19

**termination** 32:25 87:11

**terminations** 159:23

**terms** 35:22 54:14 83:17

**terribly** 113:10

**test** 21:9

**testified** 30:11 43:17 51:5 52:9, 22 60:25 77:3 85:11 99:15 109:20 115:11, 16 117:25 122:5 124:12 132:6, 24 152:12, 22 153:6 167:16

**testify** 13:5 121:22 136:9

**testifying** 12:25 21:5 136:5 156:10

**testimony** 10:5 13:9, 21 17:12 18:6 21:20 23:1 43:20 46:8 95:19 110:21 115:5 116:11 127:19 129:11 133:16 155:22 156:25

**text** 33:22 34:21, 22 35:9 41:8, 12, 20, 22 47:21 48:2, 3, 12, 16 52:12, 19 63:22 71:23 72:4 80:7 112:9, 15 120:16 125:12, 15 127:9 129:24

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

130:*13, 23* 137:*11, 22* 141:*11, 14* 147:*4*

**texted** 33:*18* 41:*4* 80:*7* 141:*17, 21*

**texting** 48:*18* 141:*18* 142:*4*

**Thank** 5:*7* 8:*24* 9:*10* 10:*10, 16* 12:*8, 20* 14:*21* 22:*25* 24:*11* 25:*3* 26:*24* 28:*8, 11* 29:*19, 23* 40:*15* 49:*16* 55:*5, 7, 11* 57:*3* 59:*10, 11, 23* 60:*11* 61:*3, 14* 67:*15* 74:*4, 9, 23* 75:*1, 5, 14* 81:*10, 15* 84:*15, 19, 20* 85:*14* 95:*8, 18* 97:*22* 105:*2, 13, 14* 108:*14, 23* 109:*4, 10* 111:*10* 114:*19, 21* 116:*9* 117:*3, 7, 8, 10* 121:*17, 18* 122:*8* 124:*25* 144:*3* 152:*21* 154:*9* 156:*4, 20* 159:*3, 7* 160:*19* 162:*13* 169:*6, 8, 9*

**Thanks** 67:*14* 75:*18* 116:*12* 121:*16* 162:*1*

**thing** 70:*23* 78:*9* 88:*17* 91:*21* 92:*10* 130:*10* 134:*15* 139:*17* 140:*9, 10* 147:*15* 148:*20* 160:*14*

**things** 22:*10, 17* 34:*4* 49:*11* 52:*7* 63:*3, 5, 7* 65:*3* 66:*12, 14* 72:*8* 73:*18* 104:*8* 112:*23* 132:*16* 137:*2* 149:*14* 157:*12, 19* 160:*16*

**think** 5:*17* 7:*18* 8:*12* 9:*16* 10:*22* 11:*8, 12* 12:*14, 19, 22* 14:*10* 16:*24* 19:*6, 20, 22* 21:*11* 22:*9* 27:*18, 20* 30:*6* 43:*8* 52:*1, 7* 59:*3, 21* 66:*2* 67:*6, 7* 68:*23* 69:*2* 71:*14* 72:*22* 73:*8, 22* 75:*22* 80:*2* 87:*2* 88:*22* 89:*6, 18, 19* 90:*1* 91:*12, 23* 96:*1, 17, 19* 99:*15, 20* 101:*3* 102:*22* 103:*16* 104:*12* 113:*4* 114:*15* 117:*19* 124:*19* 125:*17, 24* 133:*16* 139:*25* 140:*18* 141:*9* 142:*12* 143:*2* 144:*20, 21* 145:*11, 12* 148:*6* 153:*6* 156:*19, 24* 157:*3* 163:*4* 164:*17, 20* 165:*12*

**thought** 34:*2* 59:*1* 72:*17* 124:*6* 128:*21* 130:*2* 131:*9* 134:*10* 149:*9* 158:*13* 160:*4* 168:*18, 19, 20*

**three** 8:*16* 19:*15, 24* 20:*23* 25:*13* 27:*15, 16, 18, 20* 80:*3* 99:*4* 129:*12* 148:*13* 150:*15*

**three-minute** 27:*23*

**Thursday** 110:*12* 111:*13*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

119:5, 6
146:7
**time** 9:13
13:4 15:21
16:21
20:25 22:8
24:9, 17
28:11
29:21
32:18
33:24 34:8,
25 36:23
37:16
38:11, 19
43:9, 11
44:9, 21
46:2 54:6,
9, 25 55:3,
7, 13 57:12
58:5 59:6
63:2, 20
65:4 66:3
67:16 69:7,
14, 16
71:14 72:3
74:4 78:4
80:4 81:22
82:13 84:7
92:7 93:16
100:9
101:10
105:3
106:4
108:11, 17
110:15
111:3, 11
114:20
117:9
118:7
120:19
121:13, 14,
21 123:2,
11 124:9
132:24
134:3
137:17
139:15
144:12
151:18
152:21
156:20
157:23
160:3, 9
162:14
163:25
164:24
**timeline**
165:1
**times** 31:18
33:17, 18
34:6 40:10,
12 52:4
63:5 80:3,
6, 16 88:4,
8, 10, 20, 21,
22 101:3, 7
112:20
149:20
**tip** 60:13
**title** 61:15
77:10
151:21
**today** 6:4
18:7 25:9
28:12 51:5,
9 61:13
81:16 93:9
108:10, 21
110:1
114:19
150:18
152:22
161:2, 6, 25
167:16
**today's**
16:4, 7
**toggle** 157:4
**told** 28:23
37:16
39:20
40:23 41:4,
9, 18 44:5,
9 57:19
64:6 66:23
68:20 69:5,
6 71:1, 7
72:6, 7
78:18, 19
79:18 84:7
91:22
96:16
102:9, 15
107:21
108:1
111:11
129:9
130:20
132:9
133:18, 24
153:23
154:3, 6
157:18, 24,
25 158:24
159:1
**tomorrow**
73:1
**tone** 36:15
91:24
**top** 11:25
38:23 60:13
**topics** 152:9
**total** 161:9
**training**
131:17
143:15, 16
151:22
**transcribed**
170:10
**TRANSCRIPT**
1:10 16:4
22:22
163:9, 13,
16, 19, 20
164:6, 16,
25 165:1
166:21
168:10, 14,
17, 24 170:8
**transcripts**
169:3
**transitioning**
158:16
**traveled**
12:14
**treated**
13:18
127:10, 15
137:2
**trial** 22:21
**trickle**
132:13
**tried** 46:17,
20 63:14
96:19
116:20
117:9
**true** 107:14
167:15
170:7

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**try** 60:*17* 62:*18* 88:*8* 152:*14*
**trying** 19:*19* 25:*2* 35:*6* 64:*12*, *18* 89:*6* 127:*1*, *2*, *4*, *13*, *14* 131:*25* 135:*9* 137:*4* 154:*12* 157:*4*
**turn** 60:*14*, *15* 76:*22* 86:*9* 145:*11* 152:*16*
**turned** 127:*15*
**twice** 36:*6*, *8* 125:*11* 138:*25*
**two** 19:*9* 20:*4* 21:*1* 33:*6* 43:*12* 51:*3* 59:*25* 63:*9* 76:*15* 94:*16* 106:*9* 125:*8* 129:*12* 135:*6* 148:*2*, *3* 159:*15*
**two-hour** 143:*6*
**typical** 95:*11*
**typically** 93:*1* 98:*24* 104:*14*

**< U >**
**UDS** 130:*23* 141:*13*, *22*, *25*
**uh-huh** 62:*4* 70:*5* 142:*25*
**uhn-uhn** 105:*12*
**umbrella** 31:*2*
**Um-hum** 33:*13* 34:*7* 42:*18* 55:*20* 58:*12* 69:*18* 87:*19*, *22* 95:*14* 99:*5*, *6* 100:*15*, *17* 102:*21* 136:*8* 138:*24* 139:*1*
**unaware** 147:*19*
**uncover** 101:*8*
**understand** 20:*24* 23:*20* 37:*1* 67:*15* 73:*10* 87:*1* 97:*13*, *15* 102:*1* 116:*15* 126:*7*, *15* 128:*17*, *18* 131:*11* 136:*22* 163:*9*
**understandable** 144:*16*
**understanding** 18:*1* 21:*8* 24:*20* 27:*7* 32:*15* 33:*19* 58:*19* 81:*23* 87:*3* 96:*14* 97:*17*, *20* 101:*23* 130:*6* 168:*23*
**understood** 70:*24* 159:*13*
**unfortunate** 37:*18*
**Uniform** 141:*22*
**unilaterally** 56:*6*, *8*
**unknown** 169:*2*
**unmute** 7:*7*
**unpaid** 164:*7*
**untouched** 47:*11*, *12*
**unusual** 72:*19* 73:*4*, *6*
**upload** 66:*12*
**upset** 64:*3* 65:*20* 66:*16* 89:*22* 156:*14*
**upstairs** 130:*20*
**urgency** 62:*14*
**use** 21:*20* 52:*18* 67:*22* 86:*10* 105:*23* 126:*13* 130:*7* 133:*9* 137:*1* 153:*12*
**User** 11:*21* 14:*18*
**users** 59:*25*
**usual** 60:*20* 135:*20*
**usually** 61:*24* 81:*7* 113:*11*, *13* 163:*18*, *19*

**< V >**
**vague** 34:*20* 35:*6*
**various** 129:*17*
**veracity** 18:*4*
**verbal** 29:*6* 37:*14* 81:*1* 87:*18*, *23* 88:*3*, *19* 93:*12*, *19*, *25* 94:*21*,

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

25 95:10, 11 98:17, 19, 23 100:4 107:14 108:2 159:23
**verbally** 42:24 44:22 94:6 99:16
**verbatim** 35:13
**verified** 126:24
**verify** 8:21 125:18 126:17
**version** 116:16
**versus** 40:25
**vicinity** 83:17
**video** 30:5 60:17
**view** 16:2
**VII** 25:11
**visit** 54:18 66:5, 7, 11 155:13
**visited** 43:2
**visually** 74:11
**vocal** 113:14
**voice** 36:15 91:24 119:13, 21 127:18
**voices** 119:2, 10
**volume** 76:22 86:9
**vote** 5:6 7:21 14:7 164:15

**< W >**
**wait** 73:21
**waiting** 10:1, 20 13:16
**walk** 83:20 107:16 159:25
**walked** 91:25 94:24 127:8 132:16, 19
**walking** 91:11, 13 95:10 102:7 131:2
**walks** 107:7
**walk-through** 143:16
**wall** 42:9, 10 110:5, 6 113:8, 11, 17 118:20 126:9, 10, 11 132:19
**want** 11:9, 17 16:1 17:16 35:14 55:14 62:9 64:7 65:11 66:25 67:1 68:1 73:20 75:11 88:18 89:8 98:16, 20 103:12 104:15 105:7 106:13 108:16 131:6 158:2 162:5, 11 163:1, 9 167:7
**wanted** 8:21 9:10 23:25 39:21 40:1 65:9 70:17, 21 91:18 130:4 136:6
**wanting** 40:2
**wants** 27:8 162:4
**watch** 125:11
**way** 42:20 50:5, 12 71:17 74:18 86:10 88:13 97:1, 3, 4, 14 126:21 127:10 134:19, 24 137:2 160:6 161:5 164:9
**WebEx** 1:11 2:3, 9, 12, 15, 18 12:1 59:22, 25
**Wednesday** 147:13
**week** 32:11, 14 54:5, 6 146:7 147:24 151:24
**weekly** 32:19 72:13
**weeks** 148:2, 3
**welcome** 5:18
**Well** 8:12 11:22 13:7, 9 16:4 18:17 21:25 31:19, 20, 23 36:11 38:8, 10, 11, 15 44:5 48:16 53:2 54:3 55:14, 23 59:5 63:15 66:1 67:15 69:24 72:25 75:25 80:9, 10 89:22 91:14 92:11, 15 94:16 102:14 103:9, 19, 23 119:8 121:24 127:22 128:2 131:25

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 823 of 1127 PageID #: 826
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM


133:*10*
134:*20*
141:*16*
154:*25*
160:*23*
162:*13*
163:*23*
165:*16*
169:*1*
**went** 34:*4*
35:*20*
63:*16* 72:*7*
77:*22*
112:*14*, *22*
125:*14*
126:*3*, *22*, *23* 128:*6*
129:*13*, *15*
130:*12*, *16*, *25* 154:*18*, *19*
**we're** 12:*19*
14:*7* 25:*9*
26:*9* 44:*21*
59:*5* 76:*9*
86:*25*
101:*15*
106:*23*
139:*19*
140:*18*
159:*5*
164:*15*, *24*
168:*21*
**Wetzel**
130:*16*
**We've** 11:*21*
12:*7* 17:*7*
33:*8* 84:*24*
98:*17*
107:*6*
109:*15*
124:*1*
163:*17*
**whatsoever**
19:*17* 32:*5*
113:*13*
**wheel** 36:*21*
49:*3* 50:*11*
58:*16*
128:*24*
129:*9*
132:*23*
155:*5*
**WHEREOF**
170:*12*
**wife** 157:*8*, *18*
**willing** 5:*2*
**wind** 66:*15*
67:*2* 79:*9*, *25*
**wish** 81:*8*
**WITNESS**
3:*11* 4:*2*
9:*20* 10:*18*, *21* 11:*3*, *11*
13:*18* 21:*1*
26:*11*
29:*18*
30:*11* 55:*5*, *8* 59:*10*, *13*
60:*21*, *24*
63:*9* 68:*12*
73:*13*
74:*11* 75:*2*, *5* 76:*24*
77:*2* 84:*17*, *21* 85:*7*, *10*
86:*13*
87:*24* 93:*5*
94:*11*, *14*, *15* 97:*23*
101:*17*, *19*
103:*5*
108:*15*
109:*16*, *19*
110:*15*
114:*21*, *24*
117:*8*, *21*, *24* 121:*15*
122:*1*, *4*
123:*5*
154:*11*
167:*12*, *16*
170:*12*
**witnessed**
20:*6* 65:*20*
110:*23*
119:*20*
**witnesses**
9:*11*, *15*, *16*, *25* 10:*4*
11:*12* 13:*1*, *4*, *21* 17:*4*, *6*, *7*, *17*
18:*18*, *23*
19:*3*, *13*, *15*, *25* 20:*5*, *6*, *23* 21:*3*, *9*, *12*, *16*, *18*
25:*5* 52:*8*
59:*19*
75:*20*
105:*18*, *20*
106:*9*, *15*
115:*6*
159:*6*
162:*8*
166:*16*
**witness's**
116:*11*
**wondering**
18:*21* 23:*7*
**word** 80:*18*
107:*10*
134:*2*, *5*
147:*17*
149:*11*
155:*1*, *8*, *10*
161:*14*, *24*
**words** 21:*11*
35:*1*, *5*
36:*22* 43:*8*
57:*22*
131:*19*
153:*13*
161:*19*
**work** 32:*17*
45:*7* 48:*18*
53:*25* 54:*7*, *17* 61:*24*
62:*1* 65:*2*, *6* 69:*25*
71:*10*, *22*
89:*1* 93:*2*
95:*12*
96:*18* 99:*4*
102:*6*
107:*18*, *19*, *20* 108:*6*
118:*8*
120:*16*, *17*, *20* 124:*10*
141:*18*
142:*1*, *3*, *4*
148:*13*, *17*, *22* 152:*1*, *12* 158:*2*,

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 824 of 1127 PageID #: 827



Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

20 160:7, 19 164:7
**worked** 44:25 46:12 61:17 77:14 85:21 123:11 125:22 130:22 141:4 147:19
**working** 7:7 27:19 54:11, 14 59:14 65:3, 19 66:15 68:8 70:12, 14 76:9 96:12 107:17 143:15 151:25 152:1, 4 158:15 160:1, 3
**workplace** 33:5
**work-related** 113:1, 5
**works** 47:4 93:1
**work-wise** 141:8
**world** 160:2
**wrap** 137:4
**wrapping** 41:19
125:13 137:9
**writing** 29:4 44:15 50:15 98:7, 14
**written** 52:2 68:25 69:11 148:5 169:4
**wrong** 64:4 67:25
**wrote** 90:21
**Wyatt** 1:8 2:12, 19 4:12 5:22 10:22 13:8 17:11 22:14 23:5, 9, 25 24:5 28:13, 16, 20, 24 29:1, 5, 8, 12 31:11, 16 32:8, 15, 23 33:10, 15, 16 34:6 35:8, 17 37:15, 21 38:10, 25 39:10, 23 40:19, 23 41:2, 18 42:14, 21 43:14, 21 44:14, 22, 24 45:6 46:12, 17 47:23 48:17 49:21 50:4, 10, 15, 18 51:12, 23 52:3 54:8, 9 57:24 58:24 62:3 63:12, 24 64:9 65:19 67:14, 18 68:13 70:9, 12 71:20 73:5, 14, 23, 25 74:11 77:25 79:10 81:15, 20, 24 82:3, 15, 18 83:8, 11, 25 84:4, 12 85:24 86:17 89:11 90:14, 25 91:8 94:2 97:14, 24 99:8 102:6, 15, 19 104:5, 13 105:22 107:18 108:5 109:24 110:5, 15, 18, 22 111:1, 12, 16 112:1, 10 113:9, 11, 18, 21 114:2, 5, 7 116:15 118:4, 8 119:13, 16, 20, 23 120:5, 7, 11, 16, 23 121:3, 6, 22 122:3, 8, 10 152:21 161:19, 21 162:10 164:7
**Wyatt's** 18:9 29:15 31:12 32:25 33:3 34:19 36:15 42:10 47:6, 9, 17 48:20 53:25 54:22 55:18 57:7 110:3, 7 118:14 119:16, 19 161:7

**< Y >**
**Yeah** 8:15 27:6, 20 30:6, 9 33:8 34:16 35:6 37:1, 25 45:3 47:12 59:8, 21 64:3 65:2, 21 66:19 67:24 69:18 70:5

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 825 of 1127 PageID #: 828

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

71:*17*
72:*21*, *24*
79:*18*
80:*11*
86:*24*
88:*13* 89:*7*
90:*18* 91:*1*, *9* 92:*15*
93:*15*, *21*
94:*4* 97:*5*, *19*, *21* 99:*1*
102:*8*, *13*, *17* 103:*12*, *14* 106:*18*, *21*, *23*
114:*7*
116:*19*
133:*7*
134:*10*
135:*21*
139:*17*, *19*
140:*12*
142:*25*
144:*15*
158:*13*
165:*24*
**year** 61:*19*
**years** 157:*19*
**yell** 135:*2*
**yelled** 128:*23*
**yelling** 36:*23* 50:*10* 113:*18*
**yep** 71:*18* 99:*5* 118:*22*
**yesterday** 131:*24*
**young** 162:*25* 165:*13* 167:*1*

**< Z >**
**Zajicek** 1:*15* 170:*3*, *19*

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

D

**Derrick Melton**
+1 601-291-8361

Thursday, February 5

9:32 AM
Outgoing call, 0 mins 58 sec

9:31 AM
Missed call

9:26 AM
Missed call

9:19 AM
Missed call

9:18 AM
Missed call

Plaintiff's Exhibit #02

Wednesday, January 28

6:23 PM
Incoming call, 2 mins 12 sec

Favorites Share Block Delete

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 827 of 1127 PageID #: 830
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Gmail

**Pete Wyatt <petewyatt149@gmail.com>**

## Re: Resignation Acceptance

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Mon, Feb 9, 2026 at 4:57 AM
To: "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>
Cc: "Melton, Derrick" <DMelton@stlouiscountymo.gov>, "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Sharon,

This emailed "acceptance" is in reference to a situation or conversation that to my knowledge, did not happen. I do not recall ever going into Derrick's office, cussing and quitting.

To accept a resignation that was not made verbally or in writing, without question, conversation or process is a concern. Derrick "advising" Dr. Cunningham that "I quit", simply stated, for reasons I, nor anyone else can explain, he lied.

I did not say to Derrick or anyone else, "I quit". I did not resign. I had/have no interest, intent or prior consideration in the notion of quitting. Quite the contrary. Nor do I intend to allow Derrick to "quit" my job for me. Particularly around something this outrageous and demonstrably false.

To make this decision, in this way, on any level, without inquiry, fact or process would suggest Civil Service Rules allow one person to quit another person's job just by "advising" someone in authority.

To be clear, I DID NOT "QUIT"! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING. I DID NOT AND HAVE NOT HAD ANY CONVERSATION ABOUT QUITTING WITH ANY EMPLOYEE OF THE ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH OR THE COMMUNITY HEALTH CENTERS.

This unwarranted action is based in malicious slander. A petulant, petty and immature act perpetrated for no other reason than to do personal harm. It was definitely not in the interest of staff, community or the mission.

If this has gone forward with Appointing Authority signature without communication, documentation or intent based ONLY on Derrick's "advising", there's something very important missing. Per Civil Service Rules a resignation needs to be in writing. I have not written or presented such a document. If there is such a document, please provide me with a copy today. If there is a document "from me" or written on my behalf, being used to support this action, it IS NOT from my hand, mind or heart. If there is such a document, it is and will be considered libelous.

Again, to be perfectly clear, I DID NOT "quit". Nor did I ever use the word "quit" in my two brief conversations with Derrick, Thursday morning. I have documented communication that would/will suggest otherwise.

If Dr. Cunningham would like more context on this matter, I am more than willing to share what I believe is actual fact and that can help discern the truth. I will also be reaching out to others who may also have fallen victim to Derrick's lie.



Plaintiff's Exhibit #03

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

I did not "quit" or resign. Nor do I understand why Derrick would risk his professional and personal integrity by telling a lie to Dr. Cunningham and staff. To gain/prove what?

Thank you.

Pete

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation. This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 830 of 1127 PageID #: 833

Gmail

Pete Wyatt <petewyatt149@gmail.com>

# Fwd: Resignation Acceptance

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Mon, Feb 9, 2026 at 6:50 AM
To: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>
Cc: "Gardner, Sharon" <sgardner2@stlouiscountymo.gov>

Dr. Cunningham,

This situation is truly unfortunate. Reputation and integrity are all that we truly own.

My specific request is to be reinstated immediately without further escalation, to continue the important work that needs to be done.

In the absence of truth and a submitted resignation letter stating my intent, the actions taken violate Civil Service Rules.

Derrick's reasons are his. I do not expect his truth. What happens in that particular space is no longer my concern. My sincere interest, as demonstrated, is in the work. Allow me to do that.

Thank you.

Pete

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 9, 2026 at 4:57 AM
Subject: Re: Resignation Acceptance
To: Gardner, Sharon <SGardner2@stlouiscountymo.gov>
Cc: Melton, Derrick <DMelton@stlouiscountymo.gov>, Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Sharon,

This emailed "acceptance" is in reference to a situation or conversation that to my knowledge, did not happen. I do not recall ever going into Derrick's office, cussing and quitting.

To accept a resignation that was not made verbally or in writing, without question, conversation or process is a concern. Derrick "advising" Dr. Cunningham that "I quit", simply stated, for reasons I, nor anyone else can explain, he lied.

I did not say to Derrick or anyone else, "I quit". I did not resign. I had/have no interest, intent or prior consideration in the notion of quitting. Quite the contrary. Nor do I intend to allow Derrick to "quit" my job for me. Particularly around something this outrageous and demonstrably false.

To make this decision, in this way, on any level, without inquiry, fact or process would suggest Civil Service Rules allow one person to quit another person's job just by "advising" someone in authority.

To be clear, I DID NOT "QUIT"! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING. I DID NOT AND HAVE NOT HAD ANY CONVERSATION ABOUT QUITTING WITH ANY EMPLOYEE OF THE ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH OR THE COMMUNITY HEALTH CENTERS.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM



Plaintiff's Exhibit #04

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

This unwarranted action is based in malicious slander. A petulant, petty and immature act perpetrated for no other reason than to do personal harm. It was definitely not in the interest of staff, community or the mission.

If this has gone forward with Appointing Authority signature without communication, documentation or intent based ONLY on Derrick's "advising", there's something very important missing. Per Civil Service Rules a resignation needs to be in writing. I have not written or presented such a document. If there is such a document, please provide me with a copy today. If there is a document "from me" or written on my behalf, being used to support this action, it IS NOT from my hand, mind or heart. If there is such a document, it is and will be considered libelous.

Again, to be perfectly clear, I DID NOT "quit". Nor did I ever use the word "quit" in my two brief conversations with Derrick, Thursday morning. I have documented communication that would/will suggest otherwise.

If Dr. Cunningham would like more context on this matter, I am more than willing to share what I believe is actual fact and that can help discern the truth. I will also be reaching out to others who may also have fallen victim to Derrick's lie.

I did not "quit" or resign. Nor do I understand why Derrick would risk his professional and personal integrity by telling a lie to Dr. Cunningham and staff. To gain/prove what?

Thank you.

Pete

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation. This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Gmail

Pete Wyatt <petewyatt149@gmail.com>

# Fwd: Resignation Acceptance

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Thu, Feb 12, 2026 at 6:18 AM
To: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>
Cc: "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>
Bcc: mlivasy@stlouiscountymo.gov, djones@pinelawn.org

Dr. Cunningham,

I'm following up on my February 9th (Monday) email to you requesting reinstatement to my job due to this egregious situation that is based on a deliberate and malicious lie told to you by Derrick Melton. He created and told you a story that included, among other falsehoods, my alleged cursing the job and quitting. That **DID NOT** happen. However, based on that lie, you subsequently accepted "my resignation!" A resignation that I had to be told about by your assistant. A resignation that, to my knowledge, is not supported by a formal letter from me. It is only supported by hearsay.

In a previous response, I referred to the lie as demonstratively false. However, there has been no attempt to challenge the lie or communicate with me for truth. To that end, I've elevated this situation by attaching a document that lays out the documented communication and timing during the 36 hour period that fostered the unnecessary, unwarranted and unprofessional lie. My statements can be supported by bank records, phone records and staff accounts.

Again, I request

1. A copy of the resignation letter used for this process to occur without my knowledge. Originally requested in the response below to Sharon Gardner.
2. To be fully reinstated as soon as possible to continue the work necessary to serve St. Louis County residents.
3. To have my office locked and off limits until this matter is resolved.

Dr. Cunningham, I don't know how or why the lie was brought to you. But, I do know that your response to it was unjust and without the benefit of doubt. I've shown you nothing but support and respect. This is my informal appeal to be heard and acted upon. Review the document. Ask the questions.

To be clear..., **I did not quit my job. I did not quit on my team. I did not quit on my peers. I did not quit on the mission. Nor did I quit on you.**

My reputation and integrity are all that I truly own. I stand prepared to defend both. They matter.

I look forward to hearing from you and my subsequent return to service.

Thank you.

Pete
314-494-2100

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 9, 2026 at 6:50 AM
Subject: Fwd: Resignation Acceptance
To: Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
Cc: Gardner, Sharon <sgardner2@stlouiscountymo.gov>

Dr. Cunningham,

Plaintiff's Exhibit #05

This situation is truly unfortunate. Reputation and integrity are all that we truly own.

My specific request is to be reinstated immediately without further escalation, to continue th needs to be done.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

In the absence of truth and a submitted resignation letter stating my intent, the actions taken violate Civil Service Rules.

Derrick's reasons are his. I do not expect his truth. What happens in that particular space is no longer my concern. My sincere interest, as demonstrated, is in the work. Allow me to do that.

Thank you.

Pete

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 9, 2026 at 4:57 AM
Subject: Re: Resignation Acceptance
To: Gardner, Sharon <SGardner2@stlouiscountymo.gov>
Cc: Melton, Derrick <DMelton@stlouiscountymo.gov>, Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Sharon,

This emailed "acceptance" is in reference to a situation or conversation that to my knowledge, did not happen. I do not recall ever going into Derrick's office, cussing and quitting.

To accept a resignation that was not made verbally or in writing, without question, conversation or process is a concern. Derrick "advising" Dr. Cunningham that "I quit", simply stated, for reasons I, nor anyone else can explain, he lied.

I did not say to Derrick or anyone else, "I quit". I did not resign. I had/have no interest, intent or prior consideration in the notion of quitting. Quite the contrary. Nor do I intend to allow Derrick to "quit" my job for me. Particularly around something this outrageous and demonstrably false.

To make this decision, in this way, on any level, without inquiry, fact or process would suggest Civil Service Rules allow one person to quit another person's job just by "advising" someone in authority.

To be clear, I DID NOT "QUIT"! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING. I DID NOT AND HAVE NOT HAD ANY CONVERSATION ABOUT QUITTING WITH ANY EMPLOYEE OF THE ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH OR THE COMMUNITY HEALTH CENTERS.

This unwarranted action is based in malicious slander. A petulant, petty and immature act perpetrated for no other reason than to do personal harm. It was definitely not in the interest of staff, community or the mission.

If this has gone forward with Appointing Authority signature without communication, documentation or intent based ONLY on Derrick's "advising", there's something very important missing. Per Civil Service Rules a resignation needs to be in writing. I have not written or presented such a document. If there is such a document, please provide me with a copy today. If there is a document "from me" or written on my behalf, being used to support this action, it IS NOT from my hand, mind or heart. If there is such a document, it is and will be considered libelous.

Again, to be perfectly clear, I DID NOT "quit". Nor did I ever use the word "quit" in my two brief conversations with Derrick, Thursday morning. I have documented communication that would/will suggest otherwise.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

If Dr. Cunningham would like more context on this matter, I am more than willing to share what I believe is actual fact and that can help discern the truth. I will also be reaching out to others who may also have fallen victim to Derrick's lie.

I did not "quit" or resign. Nor do I understand why Derrick would risk his professional and personal integrity by telling a lie to Dr. Cunningham and staff. To gain/prove what?

Thank you.

Pete

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation. This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

---

**Derrick Melton - Pete Wyatt Incident Feb 5-6.pdf**
138K

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 837 of 1127 PageID #: 840
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Gmail **Pete Wyatt <petewyatt149@gmail.com>**

# Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Mon, Feb 16, 2026 at 4:31 AM
To: mlivasy@stlouiscountymo.gov
Cc: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

My name is Pete Wyatt, Chief Operating Officer, Community Health Centers.

I copied you in a February 9th memo to Dr. Cunningham and others on this subject. Hopefully, you were able to review the background and talk to Dr. Cunningham about the "resignation." A resignation that was fully processed in 24 hours. However, **I did not and have not resigned.**

I am officially appealing the "resignation" and I'm seeking expeditious and complete reinstatement. I am also requesting an investigation into how this situation occurred.

The attachments represent my appeal and support material.

I understand there is a process that could take some time. I also understand that special circumstances can be acknowledged. I am unjustly without an income and the clinical staff is in the middle of critical transition. This is an extremely positive, but chaotic time for all involved in the Community Health Centers.

Can I get this on Tuesday's agenda?

Thank you.

Pete Wyatt
314-494-2100

---

**7 attachments**

**Exhibit 2A Panera Transaction.docx**
153K

**Exhibit 2B Imo's Transaction.docx**
151K

**Exhibit 3 Cell Phone Call Log.docx**
144K

**BEFORE THE CIVIL SERVICE COMMISSION.pdf**
274K

**Exhibit 1 Derrick Melton - Pete Wyatt Incident Feb 5-6.pdf**
223K

**Exhibit 4B Text Thread 2.docx**
181K

**Exhibit 4A Text Thread 1.docx**
164K

Plaintiff's
Exhibit #06

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 838 of 1127 PageID #: 841
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Gmail **Pete Wyatt <petewyatt149@gmail.com>**

# Fwd: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Fri, Feb 20, 2026 at 3:48 PM
To: mlivasy@stlouiscountymo.gov
Cc: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

I'm following up on my attempt to establish a line of communication and timeline regarding my requested appeal and hearing.

It has been 10 working days since Derrick Melton inexplicably submitted MY "resignation" to Dr. Cunningham, stating "I quit", which she accepted, without my knowledge, my consent, a written document from me or factual cause. Since February 6, 2026 I have attempted communication with leadership on several occasions, but have not received acknowledgement of my denial, my submission of evidence to the contrary, my request for appeal or my request for a private, in person hearing under oath.

I've read there is a form you may send for me to state my reasons for appeal and remedy sought. Will you, in fact, be sending a form? Or will the information I have already provided suffice?

What are the next steps in the process? Is there ANYTHING else you need from me at this time that will move this process forward?

Your acknowledgement and direction will be truly appreciated.

Thanks,

Pete
314-494-2100

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Thu, Feb 19, 2026 at 9:17 AM
Subject: Fwd: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request
To: <mlivasy@stlouiscountymo.gov>
Cc: Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, Gardner, Sharon <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

Can we establish a line of communication and timeline regarding my requested appeal?

I prefer private, in person and under oath.

Is there anything you need from me at this time?

Thanks,

Pete
314-494-2100

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 16, 2026 at 4:31 AM

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Subject: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request
To: <mlivasy@stlouiscountymo.gov>
Cc: Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, Gardner, Sharon <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

My name is Pete Wyatt, Chief Operating Officer, Community Health Centers.

I copied you in a February 9th memo to Dr. Cunningham and others on this subject. Hopefully, you were able to review the background and talk to Dr. Cunningham about the "resignation." A resignation that was fully processed in 24 hours. However, **I did not and have not resigned.**

I am officially appealing the "resignation" and I'm seeking expeditious and complete reinstatement. I am also requesting an investigation into how this situation occurred.

The attachments represent my appeal and support material.

I understand there is a process that could take some time. I also understand that special circumstances can be acknowledged. I am unjustly without an income and the clinical staff is in the middle of critical transition. This is an extremely positive, but chaotic time for all involved in the Community Health Centers.

Can I get this on Tuesday's agenda?

Thank you.

Pete Wyatt
314-494-2100

---

**7 attachments**

**Exhibit 2A Panera Transaction.docx**
153K

**Exhibit 2B Imo's Transaction.docx**
151K

**Exhibit 3 Cell Phone Call Log.docx**
144K

**BEFORE THE CIVIL SERVICE COMMISSION.pdf**
274K

**Exhibit 1 Derrick Melton - Pete Wyatt Incident Feb 5-6.pdf**
223K

**Exhibit 4B Text Thread 2.docx**
181K

**Exhibit 4A Text Thread 1.docx**
164K

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation. This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

Plaintiff's Exhibit #08

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 841 of 1127 PageID #: 844
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM



Request Visibility: Unpublished

# Request 26-3253 Closed



## Dates

**Received**

February 24, 2026 via web

## Requester

Katherine Frierdich, Counsel to Mr. Wyatt

kcfrierdich@cadenziaconsulting.com

14 Fordyce Ln , St. Louis, MO, 63124

(314) 791-5297

Cadenzia Consulting LLC

## Invoices

No invoices due

## Request

I hereby request any and all documents, photos, emails, text messages, videos, data and other records, from January 26, 2026 through present regarding and/or relating to the following:

- Duane "Pete" Wyatt
- Mr. Wyatt's Purported Resignation
- Mr. Wyatt's Purported Termination

Additionally, I hereby request any and all documents, photos, emails, text messages, videos, data and other records, from the inception of Mr. Wyatt's employment through present regarding and/or relating to the following:

- Mr. Wyatt's Human Resources File
- Mr. Wyatt's Work Performance

Known custodians include:

- Derrick Melton,
  - CEO, Community Health Centers
  - dmelton@stlouiscountymo.gov
  - 314-565-5627 (County issued phone)



Plaintiff's Exhibit #09

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 843 of 1127 PageID #: 846
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

## Staff assigned

### Departments

Department of Public Health

### Point of contact

Sharon Gardner

- 601-291-8361 (Personal cell phone)

- Dr. Kanika Cunningham
  - Director, Department of Public Health
  - kcunningham@stlouiscountymo.gov
- Dionne Jones
  - Chairwoman, Board of Directors
  - djones@pinelawn.org
  - 314-803-2618 (Personal cell phone)
- Sharon Gardner
  - Assistant to Dr. Cunningham
  - Sgardner2@stlouiscountymo.gov
  - 314-901-6725 (County issued phone)
  - 314-402-4356 (Personal cell phone)
- Eugenia Pike
  - Assistant to Derrick Melton
  - epike@stlouiscountymo.gov
  - 314-477-3856 (County issued phone)
  - 314-448-0954 (Personal cell phone)
-

Upon information and belief, Mr. Derick Melton and others use both County-issued and private cell phones (both numbers listed above to the extent known) to conduct County business, Thus I request that both devices each be searched and relevant records produced in response to this request.

Thank you for your consideration to this matter.

Show less

Timeline Documents

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

### Request closed

Anyone with access to this request

All records have been released, and your request has been fulfilled.

June 5, 2026, 10:31am by Staff

### Document(s) released to requester

Requester + Staff

Re: [External Email] Epic Users.pdf
RE: On-site with Epic.pdf
[External Email] RE: On-site with Epic.pdf

June 5, 2026, 10:31am by Staff

### Message to requester

Requester + Staff

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

June 5, 2026, 10:31am by Staff

### Document(s) released to requester

Requester + Staff

RE_ Gentle Reminder - Employee Cell Phones.pdf
Cell Phones - T-Mobile and Verizon-January 2026.xlsx

June 2, 2026, 2:40pm by Staff

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

## Message to requester

Requester + Staff

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than June 5, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

June 2, 2026, 2:40pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than June 5, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 846 of 1127 PageID #: 849
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

June 1, 2026, 5:10pm by Staff

## Document(s) released to requester

Requester + Staff

IMG_8691-redacted.jpeg.pdf

May 21, 2026, 12:07pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than June 1, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

May 21, 2026, 12:07pm by Staff

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

### Document(s) released to requester

Requester + Staff

26.pdf

May 21, 2026, 9:42am by Staff

### Message to requester

Requester + Staff

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than June 1, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

May 21, 2026, 9:42am by Staff

### Document(s) released to requester

Requester + Staff

Eugenia Pike Written Statement regarding Pete Wyatt.pdf
Pete Wyatt's Calendar on 2.5.2026.pdf
RE: Finance Sub-committee Meeting-FQHC LAL.pdf

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

RE: Email to Staff on my behalf.pdf
Email to Staff on my behalf.pdf
[External Email] Fwd: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request.pdf
[External Email] Fwd: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request.pdf
RE Pete Community Food Truck Follow-Up Report-redacted.pdf
[External Email] Fwd Resignation Acceptance-redacted.pdf
[External Email] Fwd Resignation Acceptance-redacted.pdf

May 21, 2026, 9:25am by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than June 1, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 849 of 1127 PageID #: 852
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

May 21, 2026, 9:25am by Staff

## Document(s) released to requester

Requester + Staff

RE: Gentle Reminder - Employee Cell Phones.pdf
RE: Divisions Need for MFA Epic Users.pdf
RE: FW: [External Email] Re: Invite for Friday.pdf
Re: FW: [External Email] Re: Invite for Friday.pdf
Re: FW: [External Email] Re: Invite for Friday.pdf
RE: UDS Work Plan.pdf
RE: UDS Work Plan.pdf
RE: UDS Work Plan.pdf
RE: 2025 UDS Report Debra's final 1.14.2026.pdf
RE: MPCA invoices 775 and 805.pdf
RE: Finance Sub-committee Meeting-FQHC LAL.pdf
RE: [External Email] Re: Epic project updates.pdf
RE [External Email] Immunization Records-redacted.pdf
ce5e14a2-611f-4eb9-9ae8-0a7d83134d38-redacted.jpg.pdf

May 20, 2026, 2:55pm by Staff

## Message to requester

Requester + Staff

Dear Kaherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 850 of 1127 PageID #: 853
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than June 1, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

May 20, 2026, 2:55pm by Staff

### Document(s) released to requester

Requester + Staff

RE: Lab Contract(s).pdf

May 11, 2026, 3:49pm by Staff

### Message to requester

Requester + Staff

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than May 20, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

May 11, 2026, 3:49pm by Staff

**Document(s) released to requester** Requester + Staff

RE: [External Email] Information.pdf
26.pdf
RE: [External Email] Weekly Status update for Epic Project at St. Louis DPH.pdf
RE: [External Email] Fwd: Scheduling Questions.pdf
RE: [External Email] Re: Department Specific Scheduling Instructions.pdf
RE: [External Email] Re: Department Specific Scheduling Instructions.pdf
RE: Executive Leadership Team FQHC.pdf
26.pdf
Re: [External Email] Information.pdf
Re: [External Email] Information.pdf
26.pdf
Re: REMINDER: ACTION NEEDED: Councilwoman Bangert Townhall.pdf
RE: Foote, Sharon shared "2025 UDS Report (all tables completed)" with you.pdf
RE: Request for Telework Utilization Information.pdf
RE: January 2026 Reports for February Finance Committee and Consumer Majority Board Meetings.pdf
[External Email] [Opened] St. Louis County records request #26-3253 from Katherine Frierdich, Counsel to Mr. Wyatt.pdf
RE: [External Email] Re: Department Specific Scheduling Instructions.pdf

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 852 of 1127 PageID #: 855
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

RE: Request for Telework Utilization Information.pdf
RE: [External Email] Re: Department Specific Scheduling Instructions.pdf
RE: Request for Telework Utilization Information.pdf
RE: [External Email] Re: Department Specific Scheduling Instructions.pdf
RE: Request for Telework Utilization Information.pdf
LEAD Training Program (Pete Wyatt).pdf
RE Gentle Reminder - Employee Cell Phones-redacted.pdf

May 8, 2026, 3:20pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than May 20, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

May 8, 2026, 3:20pm by Staff

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

## Message to requester

Requester + Staff

Dear [Name],

The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than May 4, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

April 30, 2026, 7:35am by Staff

## Message from requester

Requester + Staff

Pursuant to Missouri Sunshine Law, Section 610.023 R.S.Mo., you were required to respond within three (3) days, which you did not, or provide a *detailed explanation* for the cause of your now multiple delays in responding to my request, which you have not. Mr. Wyatt was not employed with the County for long, so the records should not be voluminous or burdensome to collect and produce. Please note that if we do not receive both the requested documents and an explanation for your delays by the end of the day next Monday, April 27th, I will submit a complaint to the Missouri Attorney General's Office and seek all available remedies on Mr. Wyatt's behalf for your failure to comply with the

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Missouri Sunshine Law. Katherine Frierdich

April 23, 2026, 4:41pm by the requester via email

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than April 29, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

April 23, 2026, 4:24pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than April 23, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 855 of 1127 PageID #: 858
Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Saint Louis County Department of Public Health

April 15, 2026, 4:00pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than April 15, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

April 8, 2026, 2:14pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health is working diligently to respond to your request. Additional time is required to complete the search for responsive records and, if any exist, to review them for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all responsive records, or to inform you that no such records exist, no later than April 8, 2026.

Sincerely,

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

April 1, 2026, 8:27pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health is working diligently to respond to your request. Additional time is required to complete the search for responsive records and, if any exist, to review them for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all responsive records, or to inform you that no such records exist, no later than April 1, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

March 20, 2026, 11:57am by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health is working diligently to respond to your request. Additional time is required to complete the search for responsive

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

records and, if any exist, to review them for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all responsive records, or to inform you that no such records exist, no later than March 20, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

February 27, 2026, 1:52pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

Your records request has been forwarded to the appropriate division of the Department of Public Health. All responsive records, if any, will be reviewed and provided to you.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

February 25, 2026, 11:32am by Staff

## Department assignment

Anyone with access to this request

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Department of Public Health

February 24, 2026, 4:55pm by the requester

**Request opened** Anyone with access to this request

Request received via web

February 24, 2026, 4:55pm by the requester

FAQS
Help
Privacy
Terms
St Louis County Home

CIVICPLUS NextRequest

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Sunshine Act Request #26-3253 Timeline

Mr. Wyatt, through counsel, submitted a Sunshine Act request to St. Louis County on February 24, 2026. It stated:

"I hereby request any and all documents, photos, emails, text messages, videos, data and other records, from January 26, 2026 through present regarding and/or relating to the following:

- Duane 'Pete' Wyatt
- Mr. Wyatt's Purported Resignation
- Mr. Wyatt's Purported Termination

Additionally, I hereby request any and all documents, photos, emails, text messages, videos, data and other records, from the inception of Mr. Wyatt's employment through present regarding and/or relating to the following:

- Mr. Wyatt's Human Resources File
- Mr. Wyatt's Work Performance

Known custodians include:

- Derrick Melton,
    - CEO, Community Health Centers
    - dmelton@stlouiscountymo.gov
    - 314-565-5627 (County issued phone)
    - 601-291-8361 (Personal cell phone)
- Dr. Kanika Cunningham
    - Director, Department of Public Health
    - kcunningham@stlouiscountymo.gov
- Dionne Jones
    - Chairwoman, Board of Directors
    - djones@pinelawn.org
    - 314-803-2618 (Personal cell phone)
- Sharon Gardner
    - Assistant to Dr. Cunningham
    - Sgardner2@stlouiscountymo.gov
    - 314-901-6725 (County issued phone)
    - 314-402-4356 (Personal cell phone)

Plaintiff's Exhibit #10

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

- Eugenia Pike
  - Assistant to Derrick Melton
  - epike@stlouiscountymo.gov
  - 314-477-3856 (County issued phone)
  - 314-448-0954 (Personal cell phone)

Upon information and belief, Mr. Derick Melton and others use both County-issued and private cell phones (both numbers listed above to the extent known) to conduct County business, Thus I request that both devices each be searched and relevant records produced in response to this request.

Thank you for your consideration to this matter."

| Date | DPH Response / Comment |
|---|---|
| 2/24/26 | Request Opened; Assigned to Department of Public Health |
| 2/24/26 | Receipt confirmed by<br>"Cassunder Pabon (on behalf of)<br>Sharon Gardner<br>Custodian of Records<br>St. Louis County Department of Public Health"[1] |
| 2/26/26 | The Civil Service Commission (the "Commission" notified Mr. Wyatt that his purported "resignation" was on the agenda of the Commission meeting dated March 17th. |
| 2/27/26 | Response received on the three day statutory deadline, extending the deadline by three weeks – **rescheduled to three days after the March 17th Commission meeting**: |

[1] All responses are so signed.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

| | |
|---|---|
| | "The Department of Public Health is working diligently to respond to your request. Additional time is required to complete the search for responsive records and, if any exist, to review them for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all responsive records, or to inform you that no such records exist, no later than **March 20, 2026**" (emphasis added). |
| 3/17/26 | The Commission non-substantively addressed Mr. Wyatt's appeal during its open meeting. Scheduled the evidentiary hearing for March 30, 2026. |
| 3/20/26 | Identical response as 2/27/26, except pushing its compliance deadline to **April 1, 2026, two days following the evidentiary hearing**. |
| 3/30/26 | **Wyatt Appeal Evidentiary Hearing** |
| 4/1/26 | Identical response again, except pushing its compliance deadline to **April 8, 2026**. |
| 4/8/26 | Slightly altered response, pushing its compliance deadline by another week, to April 8, 2026:<br><br>"The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide |

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

| | |
|---|---|
| | you with all records no later than **April 15, 2026**" (emphasis added). |
| 4/15/26 | Identical response to the April 8, 2026 one, extending its compliance deadline to **April 23, 2026**. |
| 4/13/26 | Transcript received, placing the deadline for post-hearing pleadings for April 14, 2026. |
| 4/23/26 | Identical response to the April 8 one, pushing its compliance deadline to **April 29, 2026**. |
| 4/23/26 | Counsel for Mr. Wyatt made the following demand. No response from the County was received.<br>"Pursuant to Missouri Sunshine Law, Section 610.023 R.S.Mo. you were required to respond within three (3) days, which you did not, or provide a *detailed explanation* for the cause of your now multiple delays in responding to my request, which you have not. Mr. Wyatt was not employed with the County for long, so the records should not be voluminous or burdensome to collect and produce. Please note that if we do not receive both the requested documents and an explanation for your delays by the end of the day next Monday, April 27th, I will submit a complaint to the Missouri Attorney General's Office and seek all available remedies on Wr. Wyatt's behalf for your failure to comply with the Missouri Sunshine Law. Katherine Frierdich" |

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

| | |
|---|---|
| 4/30/26 | Identical response to the April 8, 2026 one, pushing its compliance deadline to **May 4, 2026**. |
| 5/8/26 | **Four days after its own selected compliance deadline and 39 days after the evidentiary hearing**, the County produced 28 documents, none of which relate to the events of February 5th or 6th, many of which do not relate to Mr. Wyatt at all, are non-responsive, one of which was Mr. Wyatt's public records request fed back to him (but which showed Ms. Gardner received it directly), and only one containing a single redacted name without explanation.<br>The message read: "Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential disclosure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than **May 20, 2026**" (emphasis added).<br>**May 20, 2026 is one week after the parties' post-hearing pleadings were due to the Commission.** |
| 5/11/26 | The County produced one single document which did not relate to the events of February 5th or 6th, nor Mr. Wyatt, and non-responsive.<br>A message identical to the May 8, 2026 message reiterated its extension of its compliance deadline to **May 20, 2026, which** |

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

| | |
|---|---|
| | **is a week after the parties' post-hearing pleadings were due to the Commission**. |
| 5/13/26 | Mr. Wyatt timely filed with the Commission his (a) Proposed Findings of Fact, Conclusions of Law, and Order and (b) Post-Hearing Brief. |
| 5/14/26 | The County *untimely* filed its Findings of Fact, Conclusions of Law and Order. |
| 5/20/26 | THe County produced 14 documents, none of which relate to the events of February 5th or 6th, nor Mr. Wyatt, and were non-responsive.<br>A message identical to the May 8, 2026 message reiterated its extension of its compliance deadline to **June 1, 2026**. |
| 5/21/26 | The County produced 10 documents, which consisted of (1) the purported Pike statement already produced to the Commission, (2) Mr. Wyatt's calendar screenshot, which is the one of only two document produced that was responsive and not a regurgitation of documents already in Mr. Wyatt's possession; (3) a non-responsive Finance Sub-Committee meeting document; (4) an email draft by Mr. Melton, the only other responsive document; and (5) five emails sent by Mr. Wyatt to the County denying resigning his position, with all additional content redacted without explanation.<br>This production was accompanied by the identical message to May 8, 2026, reiterating its compliance deadline extension to **June 1, 2026**. |

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

| | |
|---|---|
| 5/21/26 | The County produced one document which was producing back to Mr. Wyatt his own text messages to Mr. Melton, which was in Mr. Wyatt's possession and appended as an exhibit to Mr. Wyatt's appeal.<br>This production was accompanied by the identical message to May 8, 2026, reiterating its compliance deadline extension to **June 1, 2026**. |
| 6/1/26 | The County responded with a message identical to the one on April 8, 2026, except extending its compliance deadline to **June 5, 2026**. |
| 6/2/25 | The County produced two documents which did not relate to the events of February 5th or 6th, nor Mr. Wyatt, and non-responsive.<br>This production was accompanied by an identical message to the one of May 8, 2026, but reiterating its extension of its compliance deadline to **June 5, 2026**. |
| 6/5/26 | The County produced two documents which did not relate to the events of February 5th or 6th, nor Mr. Wyatt, and non-responsive. |
| 6/5/26 | In a second message the County stated that: "All records have been released and your request has been fulfilled."<br>**This is 99 days after the request was submitted, 60 days after the evidentiary hearing, and nearly a month after post-hearing pleadings were filed.** |

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:04 PM

Summary of Events

Eugenia Pike

On Thursday February 5, 2026 Derrick came into the office that morning and inquired about Pete's whereabouts. I reached out by phone, but Pete did not answer. Kathy went to check Pete's calendar to see if he had anything scheduled for that time such as a meeting or PTO. While we waited Derrick and I talked in his office. He was not upset and stated he did not need to know exactly where Pete was or what he was doing and that he just needed to get the information from him. He was not upset or angry. Derrick and I walked to Kathy's desk to see if she had any luck locating Pete. We all looked and saw that there was nothing scheduled on Pete's calendar from 9 a.m.-10a.m. Kathy explained that the next scheduled meeting wasn't until 10am. I sent Pete a text informing him Derrick needed to speak with him right away. Approximately 5 minutes later I received a call from Pete. He seemed upset and had just finished speaking with Derrick. He asked, "what the hell is wrong with Derrick" and that "I was on stage answering Derrick's text message". I explained to him that he should speak with Derrick directly. He then asked, "what did Derrick need from him". I again stated that he would need to speak with Derrick directly. He stated that he was on the way and would arrive shortly. When Pete arrived, he showed me there was an event showing on his calendar. I explained to him that Derrick and I checked and the calendar showed nothing scheduled between 9-10 a.m.

Later that day Pete and I discussed the events of that morning. I explained that Derrick was not upset that morning and just needed the information right away. Pete explained to me on 2 different occasions that he needed to apologize to Derrick and that he would like to do it face-to-face and not by phone. After he saw that the 1:1 scheduled for Friday had been canceled he asked me several times if Derrick was angry. I informed him that Derrick showed no signs to me that he was angry with Pete.

Plaintiff's Exhibit #11

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:07 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants. . | ) | |

**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

COMES NOW Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt"), by and through counsel, and, pursuant to Missouri Supreme Court Rule 92.02, Chapter 526, R.S.Mo., § 536.120, R.S.Mo., and Count IX of his verified Petition, respectfully moves this Court for a preliminary injunction restoring Mr. Wyatt to his merit position, with pay and benefits, pending final judgment, and enjoining Defendants/Respondents (collectively, "Defendants" or the "County") from continuing to enforce or rely upon his purported "resignation not in good standing." In support of this Motion, Mr. Wyatt states as follows:

1. Mr. Wyatt was a merit employee of St. Louis County who served as Chief Operating Officer of the Department of Public Health's Community Health Centers, the County's Federally Qualified Health Center Look-Alike, from August 19, 2024 until February 6, 2026. See Pl. Ex. 1 (Hearing Tr. 31:10–13; 122:12–15; 123:11–13).[1]

2. As a merit employee, Mr. Wyatt held a constitutionally protected property interest in his continued employment. See St. Louis County Charter art. VII, §§ 7.010, 7.030(3); Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538–41 (1985).

[1] The exhibits listed herein correspond to the exhibits appended to the accompanying Brief in support of this motion.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:07 PM

3. As of February 5, 2026, Mr. Wyatt's supervisor was "absolutely" satisfied with his performance, and no discipline, investigation, or termination was pending or contemplated against him. See Hearing Tr. 32:1–3; 32:21–33:4; 86:16–21.

4. On February 6, 2026, the County separated Mr. Wyatt from his employment on the basis of a single supervisor's disputed assertion that, during a 58-second telephone call on February 5, 2026, Mr. Wyatt orally stated that he quit. See Hearing Tr. 34:9–17; 35:13–36:13; 129:1–10; Pl. Ex. 2.

5. No written resignation exists. See Hearing Tr. 50:14–18; 148:4–9.

6. No other witness ever heard Mr. Wyatt say that he quit. See Hearing Tr. 52:8–10; 63:8–11; 68:5–11; 110:15–17.

7. No one asked Mr. Wyatt to confirm or reduce any resignation to writing. See Hearing Tr. 44:14–16; 98:5–19.

8. Mr. Wyatt continued performing County work on February 5 and 6, 2026, including representing the County at an outside meeting with Centene on the morning of February 6th. See Hearing Tr. 64:25–65:17; 129:11–132:25; 140:21–141:8. He did not abandon his position for a minute, let alone the three days required for a resignation in lieu of a resignation in writing, as per Rule XIX. And no one from the County contacted Mr. Wyatt before "accepting" the alleged resignation. See Hearing Tr. 89:10–23; 90:13–18; 95:22–24; 104:18–105:1.

9. Mr. Wyatt immediately denied resigning, in person and in writing ("I DID NOT 'QUIT'! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING"), and repeatedly requested reinstatement. See Hearing Tr. 82:13–23; 144:5–12; 145:6–147:25; Pl. Ex. 3, 4, and 5.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:07 PM

10. The County treated the matter as a termination in all but name: the Appointing Authority, Dr. Cunningham, testified she never spoke with Mr. Wyatt because "I would never talk directly to the person that's being terminated." See Hearing Tr. 98:5–10). And she directed that security be called to escort Mr. Wyatt from the building. See Hearing Tr. 91:11–25; 102:5–11; 132:16–20.

11. Yet the County provided Mr. Wyatt none of the procedural protections mandated for merit-employee terminations by the Charter, the Civil Service Rules, and the Due Process Clause: no notice, no statement of cause, no explanation of the evidence, and no pre-deprivation opportunity to respond. See Hearing Tr. 104:4–9; 149:3–18.

12. On June 18, 2026, the Civil Service Commission affirmed the Appointing Authority's acceptance of the alleged resignation "not in good standing" and denied Mr. Wyatt's appeal. As set forth in the Verified Petition and the brief accompanying this Motion, the Commission's decision (a) misreads Civil Service Rule XIX; (b) rests on findings unsupported by, and in places contradicted by, the record; (c) adopts the County's proposed findings and conclusions nearly verbatim — including counsel's citation errors and quoted statements no witness ever uttered; (d) was rendered upon unlawful procedure (including consideration of an unsigned, undated witness statement produced nearly a month after the hearing, and joinder in the decision by a commissioner who did not attend the hearing); and (e) affirms a separation effected without any due process. See Pl. Ex. 6 (Decision ¶¶ 9(g)(i)), 18, 20–25, 29, 31; Hearing Tr. 5:15–16; 16:1–7; 165:8–168:5; Pl. Ex. 11..

13. Since February 6, 2026, Mr. Wyatt has been without salary, health insurance, retirement contributions and service credit, leave accrual, and seniority, and he suffers continuing

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:07 PM

injury to his constitutional rights and professional reputation each day the County's official "not in good standing" designation stands. See Hearing Tr. 164:4–8, Verified Petition ¶ 9.

14. In determining whether to issue a preliminary injunction, Missouri courts weigh "the movant's probability of success on the merits, the threat of irreparable harm to the movant absent the injunction, the balance between this harm and the injury that the injunction's issuance would inflict on other interested parties, and the public interest." State ex rel. Dir. of Revenue v. Gabbert, 925 S.W.2d 838, 839 (Mo. banc 1996) (citing Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc)). Each factor favors relief here.

15. ***Probability of success***. Mr. Wyatt is likely to prevail because: (a) Rule XIX authorizes resignation only by a writing or by presumption after three days' unexcused absence, and the Commission's contrary "true intent" construction unlawfully enlarges agency authority, State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n, 344 S.W.3d 178, 186 (Mo. banc 2011); (b) even fully credited, a frustrated utterance during a 58-second call, immediately contradicted by the speaker's conduct and denials, is not a voluntary, deliberate, and unequivocal resignation as a matter of law, See Angarita v. St. Louis County, 981 F.2d 1537, 1544 (8th Cir. 1992); (c) the Commission's decision is unsupported by competent and substantial evidence upon the whole record and was made upon unlawful procedure and without a fair trial, § 536.140.2, R.S.Mo.; (d) the County deprived Mr. Wyatt of protected property and liberty interests without any pre-deprivation process or name-clearing opportunity, Loudermill, 470 U.S. at 542–46, and the Commission's holding that Mr. Wyatt "by resigning, voluntarily waived" that process (Decision ¶ 29) assumes the very fact in dispute — a waiver of constitutional protections must be knowing and voluntary and cannot be supplied by the contested resignation itself, Johnson v. Zerbst, 304 U.S. 458, 464 (1938); and (e) the Commission adopted the County's proposed findings and

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:07 PM

conclusions nearly verbatim, errors included, negating the "independent reflection" Missouri law requires of a tribunal that adopts a party's proposals. Skillicorn v. State, 22 S.W.3d 678, 690 (Mo. banc 2000); King v. King, 548 S.W.3d 440, 442 n.1 (Mo. App. E.D. 2018); Tribus, LLC v. Greater Metro, Inc., 589 S.W.3d 679, 699 (Mo. App. E.D. 2019).

16. ***Irreparable harm.*** The ongoing deprivation of constitutionally protected interests is itself irreparable injury, Elrod v. Burns, 427 U.S. 347, 373 (1976), and Mr. Wyatt's loss of health coverage, retirement service credit, professional standing, and reputation – injuries compounding daily under an official stigmatizing "not in good standing" designation – cannot be measured or restored by money damages alone. Moreover, on information and belief, the County is presently in the process of filling Mr. Wyatt's position as Chief Operating Officer of the Community Health Centers. If the County permanently fills that position before the Injunction Motion can be heard, the core interim relief Mr. Wyatt seeks may be substantially impaired or rendered impracticable by the mere passage of time.

11. ***Balance of harms.*** Defendants suffer no cognizable injury from being required to comply with their own Charter, Rules, and the Constitution; they will receive the services of an executive whose performance their own witnesses praised; and if they ultimately prevail, they retain every lawful personnel power. Each additional day of exclusion, by contrast, compounds Mr. Wyatt's irreparable injuries.

12. ***Public interest.*** The public interest favors enforcement of the merit system, constitutional due process, and open government, and disfavors permitting a governmental employer to evade mandatory termination procedures by labeling a disputed separation a "resignation." No prejudice to the public interest will result from interim relief. § 536.120, R.S.Mo.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:07 PM

13. The relief requested preserves and restores the status quo. The last actual, peaceable, uncontested status preceding this controversy was Mr. Wyatt's active merit employment as Chief Operating Officer through midday February 6, 2026. See Pomirko v. Sayad, 693 S.W.2d 323, 324 (Mo. App. E.D. 1985); State ex rel. Eagleton v. Cameron, 384 S.W.2d 627, 631 (Mo. 1964).

14. Independent of Rule 92.02 and § 536.120, R.S.Mo., authorizes this Court, pending disposition of the petition for review, to "issue all necessary and appropriate process" to stay enforcement of the Commission's order and "temporarily to grant or extend … relief denied or withheld" – here, the reinstatement, pay, benefits, etc., the Commission's order denies.

15. Mr. Wyatt requests that any bond required by Rule 92.02(d) be waived or, in the alternative, set in a nominal amount. The injunction sought compels public officials' compliance with existing legal obligations; Defendants face no financial harm or loss (they will receive Mr. Wyatt's services in exchange for his salary); and a substantial bond would effectively deny an unlawfully unpaid employee meaningful access to equitable relief.

16. This Motion is made upon notice to all Defendants. Mr. Wyatt requests that the Court set this Motion for hearing at the earliest available date, and he relies upon his Verified Petition, sworn to by Mr. Wyatt and effective as an affidavit, administrative record, the exhibits thereto, and the Brief in Support filed contemporaneously herewith, all of which are incorporated by reference.

WHEREFORE, Plaintiff/Petitioner Duane "Pete" Wyatt respectfully requests that this Court, after notice and hearing, enter a preliminary injunction:

A. Ordering Defendants immediately to reinstate Mr. Wyatt to his position as Chief Operating Officer of the Community Health Centers, or to an equivalent level of seniority merit position, with full salary, health insurance, retirement participation and service credit, leave

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:07 PM

accrual, seniority, title, and all other rights and benefits of merit employment, pending final judgment;

B. Ordering Defendants to restore to Mr. Wyatt, as temporary relief pursuant to § 536.120, R.S.Mo., the pay and benefits withheld since February 6, 2026, together with interest, or, in the alternative, preserving the quantification and award of back pay and lost benefits for final judgment pursuant to § 536.140.5, R.S.Mo., 42 U.S.C. § 1983, and the Court's equitable powers;

C. Enjoining Defendants from treating, recording, or representing Mr. Wyatt internally, in his personnel and employment records, or to any third party, as having resigned, resigned "not in good standing," engaged in misconduct, or presented "mental health" concerns, pending final judgment;

D. Enjoining Defendants from permanently filling Mr. Wyatt's position or, in the alternative, requiring Defendants to maintain an equivalent executive merit position pending final judgment;

E. Ordering Defendants to preserve all documents, electronically stored information, emails, text messages on County-issued and personal cell phones, personnel files, telephone records, investigative materials, meeting minutes, and communications relating to Mr. Wyatt's employment, separation, appeal, records requests, and this litigation;

F. Waiving any injunction bond or setting bond in a nominal amount pursuant to Rule 92.02(d);

G. Setting this Motion for hearing at the earliest available date; and

H. Granting such other and further relief as the Court deems just and proper.

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:07 PM

Respectfully submitted,

______________________________

Katherine C. Frierdich
MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this ____ day of _____________, 2026, a true and accurate copy of the foregoing Motion for Preliminary Injunction was filed through the Missouri eFiling System, which will provide notice to all counsel of record, and/or was served together with the summons and Verified Petition upon Defendants/Respondents in the manner provided by Missouri Supreme Court Rule 54, including service upon the St. Louis County Counselor's Office, 41 South Central Avenue, Clayton, Missouri 63105.

______________________________

Katherine C. Frierdich

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:12 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Cause No. 26SL-CC05095 |
| v. | ) | |
| | ) | Division 3 |
| ST. LOUIS COUNTY, MISSOURI; et. al, | ) | |
| | ) | |
| Defendants. . | ) | |

**PLAINTIFF/PETITIONER'S MOTION FOR EXPEDITED HEARING ON HIS MOTION FOR PRELIMINARY INJUNCTION**

COMES NOW Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt"), by and through counsel, and, pursuant to Missouri Supreme Court Rule 92.02, § 536.120, R.S.Mo., and this Court's inherent authority to manage its docket, respectfully moves the Court to set his Motion for Preliminary Injunction for hearing on an expedited basis. In support of this Motion, Mr. Wyatt states as follows:

1. Contemporaneously herewith, Mr. Wyatt has filed a Motion for Preliminary Injunction and Brief in Support (together, the "Injunction Motion"), seeking interim reinstatement to his merit position as Chief Operating Officer of the St. Louis County Department of Public Health's Community Health Centers, with pay and benefits, pending final judgment, and enjoining Defendants/Respondents (collectively, "Defendants" or the "County") from continuing to enforce or rely upon his purported "resignation not in good standing."

2. As set forth in the Verified Petition and the Injunction Motion, the County separated Mr. Wyatt from his merit employment on February 6, 2026 without any written resignation, without notice, without a statement of cause, and without any pre-deprivation opportunity to

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:12 PM

respond on the basis of a single supervisor's disputed account of a 58-second telephone call. (Hearing Tr. 34:9–17; 50:14–18; 104:4–9; 149:3–18.) The Civil Service Commission affirmed that separation as a resignation not requiring due process by decision dated June 18, 2026. See Exhibit 6 to the Injunction Motion (Decision).

3. Time is of the essence. Since February 6, 2026, Mr. Wyatt has been without salary, health insurance, retirement contributions and service credit, leave accrual, and seniority. (Hearing Tr. 164:4–7.) These injuries compound with every passing pay period. And the ongoing deprivation of constitutionally protected interests is itself irreparable injury that no later money judgment can repair. Elrod v. Burns, 427 U.S. 347, 373 (1976).

4. Moreover, on information and belief, the County is presently in the process of filling Mr. Wyatt's position as Chief Operating Officer of the Community Health Centers. If the County permanently fills that position before the Injunction Motion can be heard, the core interim relief Mr. Wyatt seeks – reinstatement to his position pending final judgment – may be substantially impaired or rendered impracticable, and the related relief requested in the Injunction Motion (enjoining Defendants from permanently filling the position pending final judgment) would be defeated by the mere passage of time. Expedition is necessary to preserve the Court's ability to grant effective relief.

5. The Injunction Motion is well suited to prompt determination. It presents primarily questions of law arising on a closed administrative record: it relies upon the Verified Petition, sworn to by Mr. Wyatt and effective as an affidavit, the hearing transcript and exhibits, and the Commission's written decision. No discovery is required before the Motion may be heard.

6. Defendants will suffer no prejudice from an early setting. The County litigated the underlying appeal before its own Civil Service Commission, possesses the complete record, and

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:12 PM

has been on notice of Mr. Wyatt's denials and reinstatement demands since February 2026. Rule 92.02 requires only notice and an opportunity to be heard before a preliminary injunction may issue, and an expedited setting affords Defendants both.

7. Section 536.120, R.S.Mo. independently contemplates prompt interim relief, authorizing this Court, "[p]ending the filing and final disposition" of proceedings for review, to "issue all necessary and appropriate process" to stay enforcement of the agency's order and "temporarily to grant or extend … relief denied or withheld." That authority is meaningful only if exercised before the harm it exists to prevent become accomplished facts.

8. Mr. Wyatt accordingly requests that the Court set the Injunction Motion for hearing at the earliest date available on the Court's docket, and in any event within ten (10) days of the filing of this Motion or as soon thereafter as the Court's schedule permits. Counsel for Mr. Wyatt will make themselves available at any date and time convenient to the Court. If the Court desires a response from Defendants before the hearing, Mr. Wyatt requests that any such response be ordered on an expedited schedule.

9. This Motion is brought in good faith to prevent irreparable harm and not for the purpose of delay or any other improper purpose. No party will be prejudiced by the relief requested.

WHEREFORE, Plaintiff/Petitioner Duane "Pete" Wyatt respectfully requests that this Court enter an Order:

A. Setting Plaintiff/Petitioner's Motion for Preliminary Injunction for hearing on an expedited basis, at the earliest date available on the Court's docket, and in any event within fourteen (14) days of the filing of this Motion or as soon thereafter as the Court's schedule permits;

Electronically Filed - ST LOUIS COUNTY - July 19, 2026 - 06:12 PM

B. Directing that any response to the Motion for Preliminary Injunction be filed on such expedited schedule as the Court deems appropriate;

C. In the alternative, setting this matter for an expedited scheduling or status conference at the Court's earliest convenience; and

D. Granting such other and further relief as the Court deems just and proper.

Respectfully submitted,

______________________________

Katherine C. Frierdich, MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
*Counsel for Plaintiff/Petitioner*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on this ____ day of ______________, 2026, a true and accurate copy of the foregoing Motion for Expedited Hearing was filed through the Missouri eFiling System, which will provide notice to all counsel of record, and/or was served together with the summons and Verified Petition upon Defendants/Respondents in the manner provided by Missouri Supreme Court Rule 54, including service upon the St. Louis County Counselor's Office, 41 South Central Avenue, Clayton, Missouri 63105.

______________________________

Katherine C. Frierdich

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**IN THE CIRCUIT COURT OF ST. LOUIS COUNTY**
**STATE OF MISSOURI**

| | | |
|---|---|---|
| DUANE "PETE" WYATT,<br><br>Plaintiff/Petitioner,<br><br>v.<br><br>ST. LOUIS COUNTY, MISSOURI;<br><br>ST. LOUIS COUNTY CIVIL SERVICE COMMISSION;<br><br>DR. KANIKA CUNNINGHAM, in her official capacity as Appointing Authority, Department of Public Health, and in her individual capacity;<br><br>DERRICK MELTON, in his official capacity as Chief Executive Officer, Department of Health Community Health Centers, and in his individual capacity; and<br><br>SHARON GARDNER, in her official capacity as Custodian of Records, Department of Public Health, and in her individual capacity,<br><br>Defendants/Respondents. | ) | Cause No.<br><br>Division |

**PETITION FOR JUDICIAL REVIEW OF ADMINISTRATIVE DECISION, DECLARATORY JUDGMENT, DEPRIVATION OF CIVIL RIGHTS UNDER 42 U.S.C. § 1983, VIOLATION OF THE MISSOURI SUNSHINE LAW, AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

COMES NOW Plaintiff/Petitioner Duane "Pete" Wyatt ("Mr. Wyatt"), by and through counsel, for his Petition against Defendants/Respondents, states as follows:

## I. INTRODUCTION

1. This case arises from St. Louis County's (the "County") unlawful separation of Mr. Wyatt, a merit employee, from his position as Chief Operating Officer for the Community

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Health Centers run by St. Louis County Department of Public Health ("DPH"). See Hearing Tr. 31:10–13; 122:12–15; 123:11–13, attached as Pl. Ex. 1.

2. The County did not follow the termination procedures required for a merit employee. Instead, the County treated an alleged, disputed, undocumented, oral statement made during a 58-second telephone call as a "resignation not in good standing," deprived Mr. Wyatt of his position and income, denied him the procedural protections guaranteed by the St. Louis County merit system and by Cleveland Board of Education v. Loudermill, 470 U.S. 532 (1985), and stigmatized him without providing a meaningful name-clearing process. See Hearing Tr. 28:12–24; 34:9–17; 129:1–10; Hearing Ex. 3.[1]

3. On June 18, 2026, the St. Louis County Civil Service Commission (the "Commission") issued Findings of Fact, Conclusions of Law and Decision affirming the Appointing Authority's action and concluding that the County lawfully accepted Mr. Wyatt's alleged resignation effective February 6, 2026. See Decision at Pl. Ex. 3.

4. The Commission's decision should be reversed because it is contrary to law, unsupported by competent and substantial evidence upon the whole record, made upon unlawful procedure and without a fair trial, arbitrary, capricious, unreasonable, and an abuse of discretion. See § 536.140.2, R.S.Mo.; Mo. Const. art. V, § 18.

5. The record shows that the County's own Appointing Authority characterized Mr. Wyatt as "being terminated." When asked at the hearing whether she asked Mr. Wyatt to submit his resignation in writing, Dr. Cunningham testified: "No, because I would never talk to – in a situation, I would never talk directly to the person that's being terminated." See

[1] The Hearing Exhibits referenced herein are attached collectively as Exhibit Pl. Ex. 2.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Hearing Tr. 98:5–10. The same testimony confirms that Mr. Wyatt was not asked to put any resignation in writing. See Hearing Tr. 44:14–16; 98:5–19.

6. At the administrative hearing, the County admitted that it had submitted no documents, no pre-hearing witness list, and no other pleadings or evidentiary materials to Mr. Wyatt before the hearing. See Hearing Tr. 9:14–23; 10:11–15. Mr. Wyatt's counsel also stated on the record that Mr. Wyatt had received "no documentation, no statement of cause, nothing." See Hearing Tr. 19:16–19.

7. Mr. Wyatt immediately denied resigning. See Hearing Tr. 82:17–23; 131:18-132:14; 144:5–12. In written communications sent after the County claimed to have accepted his alleged resignation, he stated: "I DID NOT 'QUIT'! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING," and he requested immediate reinstatement. See Hearing Ex. 2a.-2d. (February 9th email quoted); Hearing Tr. 145:6–147:25.

8. Yet the Commission's written decision affirmed the Appointing Authority's acceptance of Mr. Wyatt's alleged resignation effective February 6, 2026, calling it “unequivocal,” and denied his appeal.

9. Mr. Wyatt brings this action to obtain judicial review of the Commission's decision under Chapter 536, R.S.Mo.; declaratory relief under Chapter 527, R.S.Mo.; relief under 42 U.S.C. § 1983 for deprivation of constitutional property and liberty interests without due process of law; relief for violation of Missouri's Sunshine Law, Chapter 610, R.S.Mo.; and preliminary and permanent injunctive relief reinstating him to his position, restoring his pay, benefits, seniority, and reputation, and prohibiting Defendants from continuing to treat him as having resigned "not in good standing."

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

## II. PARTIES

10. Plaintiff/Petitioner Duane "Pete" Wyatt is a resident of the State of Missouri and was employed by St. Louis County as Chief Operating Officer for DPH's Community Health Centers, a Federally Qualified Health Center Look-Alike. See Hearing Tr. 31:2-3; 32:15-20; 66:5-9).

11. At all relevant times, Mr. Wyatt was a merit employee within the St. Louis County civil service system with a protected property interest in continued employment. See St. Louis County Charter art. VII, §§ 7.010, 7.030(3); Hearing Tr. 123:11–13 .

12. Defendant/Respondent St. Louis County, Missouri is a charter county and political subdivision of the State of Missouri.

13. Defendant/Respondent St. Louis County Civil Service Commission is the administrative body that heard Mr. Wyatt's appeal on March 30, 2026, and issued the Findings of Fact, Conclusions of Law and Decision challenged in this action. The Commission is named as a respondent for purposes of judicial review pursuant to § 536.110.2, R.S.Mo.

14. Defendant/Respondent Dr. Kanika Cunningham is, and at all relevant times was, the Director of DPH and the Appointing Authority for DPH. See Hearing Tr. 85:17–23; 87:6–16. She is sued in her official capacity for declaratory, injunctive, and other lawful relief, and in her individual capacity for compensatory and punitive damages under 42 U.S.C. § 1983.

15. Defendant/Respondent Derrick Melton ("Mr. Melton") is, and at all relevant times was, the Chief Executive Officer of DPH's Community Health Centers and Mr. Wyatt's

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

direct supervisor. See Hearing Tr. 30:22–31:13. He is sued in his official capacity for declaratory, injunctive, and other lawful relief, and in his individual capacity for compensatory and punitive damages under 42 U.S.C. § 1983.

16. Defendant/Respondent Sharon Gardner is the Executive Assistant to the Director of DPH and the custodian of records or responsible public official for records requested by or on behalf of Mr. Wyatt under Chapter 610, R.S.Mo., including records concerning his alleged resignation, separation, appeal, hearing, employment, and related communications. (Hearing Tr. 77:10–16). She is sued in her official capacity, and in her individual capacity for the statutory remedies available under § 610.027, R.S.Mo..

17. At all times relevant, Defendants/Respondents acted under color of state law, county charter, ordinance, regulation, and official authority within the meaning of 42 U.S.C. § 1983.

## III. JURISDICTION AND VENUE

18. This Court has jurisdiction over this petition for judicial review of a contested case under Chapter 536, R.S.Mo., including §§ 536.100 through 536.140, R.S.Mo., and under the St. Louis County Charter art. VII and the Civil Service Rules governing appeals from Civil Service Commission decisions, of which the Commission took judicial notice at the hearing. See Hearing Tr. 25:6–26:2.

19. This Petition is timely filed within thirty (30) days after the mailing or delivery of notice of the Commission's final decision, as required by § 536.110.1, R.S.Mo.. The Commission's Findings of Fact, Conclusions of Law and Decision was signed and ordered on June 18, 2026, and notice of the Decision was delivered to Mr. Wyatt by electronic mail on

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

June 18, 2026. This Petition is filed on July 17, 2026, within thirty days after the mailing or delivery of that notice, as required by § 536.110.1, R.S.Mo..

20. Section 536.140.2, R.S.Mo., authorizes judicial review of whether the Commission's action: (1) violates constitutional provisions; (2) exceeds the agency's statutory authority or jurisdiction; (3) is unsupported by competent and substantial evidence upon the whole record; (4) is, for any other reason, unauthorized by law; (5) is made upon unlawful procedure or without a fair trial; (6) is arbitrary, capricious or unreasonable; or (7) involves an abuse of discretion.

21. This Court also has jurisdiction under Missouri's Declaratory Judgment Act, Chapter 527, R.S.Mo., because an actual controversy exists concerning whether Mr. Wyatt resigned, whether Defendants were required to follow merit-employee termination procedures, whether the "not in good standing" designation is lawful, and whether the Commission's order is valid.

22. This Court has concurrent jurisdiction over Mr. Wyatt's claims under 42 U.S.C. § 1983 for deprivation of property and liberty interests without due process of law under the Fourteenth Amendment to the United States Constitution, and over his parallel claims under Article I, §§ 2 and 10 of the Missouri Constitution. See Haywood v. Drown, 556 U.S. 729, 735 (2009) (state courts of general jurisdiction may adjudicate § 1983 claims).

23. This Court has jurisdiction over Mr. Wyatt's Missouri Sunshine Law claim under Chapter 610, R.S.Mo., including § 610.027.1, R.S.Mo., which authorizes enforcement by suit in the circuit court of the county in which the public governmental body has its principal place of business.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

24. Venue is proper in St. Louis County under §§ 536.110.3 and 508.010, R.S.Mo., because Defendants/Respondents reside or maintain their offices in St. Louis County, the challenged administrative decision was issued by a St. Louis County body, the relevant employment relationship existed in St. Louis County, the relevant records are maintained in St. Louis County, and the acts and omissions complained of occurred in St. Louis County.

## IV. STANDARD OF REVIEW

25. This Court reviews questions of law de novo, including interpretation of statutes, ordinances, the St. Louis County Charter, the St. Louis County Civil Service Rules, and the Missouri and United States Constitutions, and defers to no agency conclusion of law. Lagud, 136 S.W.3d at 791.

26. The Commission's decision is subject to judicial review under Mo. Const. art. V, § 18 and § 536.140, R.S.Mo., to determine whether it is authorized by law and, in cases in which a hearing is required by law, whether it is supported by competent and substantial evidence upon the whole record. Hampton v. Big Boy Steel Erection, 121 S.W.3d 220, 222–23 (Mo. banc 2003); Lagud, 136 S.W.3d 791.

27. The Court must consider the whole record, including evidence that fairly detracts from the Commission's decision Hampton, 121 S.W.3d at 223. And, in its discretion, the Court may hear evidence of alleged irregularities in procedure or of unfairness by the agency not shown in the record. See § 536.140.4, R.S.Mo..

28. The Court owes no deference to the Commission's erroneous interpretation of Civil Service Rule XIX, including the Commission's conclusion that an alleged oral statement, disputed by the employee and unsupported by any written resignation, permitted the County to

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

avoid the termination procedures applicable to a merit employee.

29. Nor is deference owed to the Decision's credibility recitals, because the Decision was joined by a commissioner who did not attend the evidentiary hearing and never observed any witness testify, and because the Decision's blanket credibility recital (Decision ¶ 31) is conclusory and unexplained; there is no genuine, demeanor-based credibility determination to which deference could attach.

## V. GENERAL FACTUAL ALLEGATIONS

### A. Mr. Wyatt's Merit Employment

30. Mr. Wyatt began employment with St. Louis County on or about August 19, 2024. See Hearing Tr. 122:15.

31. 30. Mr. Wyatt served as the Chief Operating Officer of the Community Health Centers, the County's Federally Qualified Health Center Look-Alike, within DPH. See Hearing Tr. 31:2-3; 32:15-20; 66:5-9; 122:12–15.

32. Mr. Wyatt's duties included oversight of all clinical operations, supervision of nursing, registration, and administrative staff, management of financial grants, and regulatory compliance with federal HRSA requirements related to the Department's federally qualified health center status. See Hearing Tr. 86:22-87:5.

33. Mr. Wyatt reported directly to Mr. Melton, the Community Health Centers' Chief Executive Officer. See Hearing Tr. 31:4–13; 124:1–3.

34. As of February 5, 2026, Mr. Melton was, in his own words, "absolutely" satisfied with Mr. Wyatt's job performance. See Hearing Tr. 32:1–3.

35. As of February 5, 2026, Department of Public Health was pursuing no

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

discipline or termination against Mr. Wyatt, was investigating no alleged misconduct by Mr. Wyatt, and Dr. Cunningham was contemplating no discipline or termination of Mr. Wyatt. See Hearing Tr. 32:21–33:4; 86:16–21.

36. Mr. Wyatt was a merit employee and possessed a protected property interest in continued employment. See St. Louis County Charter art. VII, §§ 7.010, 7.030(3); Loudermill, 470 U.S. at 538–41 (1985); Bd. of Regents v. Roth, 408 U.S. 564, 576–78 (1972).

37. As a merit employee, Mr. Wyatt could not be deprived of his employment except in accordance with St. Louis County's Charter, ordinances, Civil Service Rules, and constitutional due process requirements.

**B. The February 5, 2026 Telephone Call**

38. On the morning of February 5, 2026, while Mr. Wyatt was completing a scheduled 8:00 a.m. commitment, Mr. Melton placed repeated calls and texts to Mr. Wyatt's cellular telephone seeking confirmation of the number of positions reporting to Mr. Wyatt. See Hearing Tr. 33:16–34:17; 125:1–25; Hearing Ex. 3 (missed calls at 9:18, 9:19, 9:26, and 9:31 a.m).

39. At approximately 9:32 a.m., Mr. Wyatt returned Mr. Melton's calls while driving to the Department of Public Health office. The telephone call lasted 58 seconds. See Hearing Tr. 34:9–17; 125:19–25; 129:1–10; Hearing Ex. 3 (outgoing call, 0 mins 58 sec)).

40. The County's claim that Mr. Wyatt resigned depends entirely on Mr. Melton's disputed assertion that, during that 58-second telephone call, Mr. Wyatt twice stated that he quit, among several other things. See Hearing Tr. 35:13–36:13; 28:12–24.

41. Mr. Wyatt testified that during the 58-second call, after Mr. Melton pressed him

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

about a staffing number that appeared on the organizational chart posted on Mr. Melton's own assistant's wall, on Mr. Wyatt's wall in the office next door to Mr. Melton, and electronically, Mr. Wyatt said, in frustration, "Just use the F'ing number, what the F" — words directed at the situation, not at Mr. Melton, and never accompanied by "quit" or "resign." See Hearing Tr. 126:3–14; 133:5–11; 134:2–7. Mr. Wyatt further testified that the call ended not with any acceptance of a resignation, but with Mr. Melton telling him: "Well, just go home. Just go home." See Hearing Tr. 133:8–11. Mr. Melton's claimed contemporaneous "acceptance" – "if you quit, then I accept your resignation" (Hearing Tr. 36:11–12) – thus conflicts not only with Mr. Wyatt's account but with Mr. Melton's own instruction to a supposedly resigned employee to "go home," and with Mr. Melton's cross-examination testimony that he did not recall asking "So you're not returning?" See Hearing Tr. 43:16–22.

42. No witness other than Mr. Melton claims ever to have heard Mr. Wyatt say "I quit." See Hearing Tr. 52:8–10; 63:8–11; 68:5–11; 110:15–17.

43. Mr. Wyatt has consistently denied resigning and denied submitting any resignation, verbally or in writing. See Hearing Tr. 134:2–7; 144:5–12; Hearing Ex. 2.

44. No written resignation exists. See Hearing Tr. 50:14–18; 148:4–9.

45. Mr. Melton did not ask Mr. Wyatt to submit a written resignation. See Hearing Tr. 44:14–16.

46. Dr. Cunningham did not ask Mr. Wyatt to submit a written resignation, testifying, "I would never talk directly to the person that's being terminated." See Hearing Tr. 98:5–10.

47. Dr. Cunningham did not instruct Mr. Melton to obtain a written resignation

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

from Mr. Wyatt; she instructed him only to document the alleged resignation himself and send it to her. See Hearing Tr. 39:16–22; 44:1–13; 98:13–22.

48. No one from the County contacted Mr. Wyatt before "accepting" the alleged resignation to confirm whether he intended to resign. See Hearing Tr. 89:10–23; 90:13–18; 95:22–24; 104:18–105:1.

49. No one from the County conducted any pre-separation investigation before "accepting" the alleged resignation, and Dr. Cunningham admitted that even after Mr. Wyatt's immediate denial and subsequent written denials, she did not ask for the situation to be investigated. See Hearing Tr. 51:7–24; 84:11–14; 102:22–103:3.

50. No one from the County provided Mr. Wyatt with written notice that he was accused of resigning, abandoning his position, engaging in misconduct, or being subject to termination; no one provided him a statement of cause; and no one gave him a pre-deprivation opportunity to respond before the County treated him as separated from employment. See Hearing Tr. 104:4–9; 149:3–18.

**C. Mr. Wyatt's Conduct Was Inconsistent with Resignation**

51. After the alleged telephone resignation, Mr Wyatt had two additional phone conversations with DPH work colleagues regarding County work on the way into the office, and reported to work at approximately 9:50 a.m. See Hearing Tr. 44:24–45:3; 126:19-21.

52. Mr. Wyatt entered Mr. Melton's office for a brief, two-to-three-minute discussion in which, by Mr. Melton's own account, which differs from other accounts repeated to Mr. Wyatt, no curse words were exchanged. See Hearing Tr. 37:25–38:18; 43:5–12; 129:12–13.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

53. Mr. Wyatt continued working in the office for the remainder of February 5, 2026, until approximately 5:30 p.m., including working alongside Ms. Eugenia Pike, Mr. Melton's assistant, until 4:30 p.m., purchasing lunch for the front office staff, meeting twice with Chief Medical Officer Dr. Patrick Miller, talking with his assistant, and meeting with a grieving colleague at day's end. See Hearing Tr. 64:25–65:17; 71:10–15; 110:25–111:9; 129:11–130:19. Mr. Wyatt's office was directly across the hall from Mr. Melton's. See Hearing Tr. 135.19-136.03.

54. Later on February 5th, Ms. Pike told Mr. Wyatt that she and Mr. Melton had checked his work calendar and that his 8:00 a.m. commitment had not appeared on it. Believing, based on Ms. Pike's report, that Mr. Melton had been unable to see that he was in a meeting when Mr. Melton was repeatedly calling and texting him, Mr. Wyatt told Ms. Pike on multiple occasions that he wished to apologize to Mr. Melton, face-to-face – he knocked on Mr. Melton's door, and, when Mr. Melton was unavailable, sent Mr. Melton a text message hoping to catch him before the end of the day. See Hearing Tr. 65:7–17; 70:15–71:9; 129:23–130:14; 130:1–10; 136:14–137:4.

55. Mr. Wyatt's intended apology concerned only his frustration at the repeated calls and texts: as he testified, "the context of my response to him on the phone was with the understanding that you knew I had the meeting, you know I don't use my phone during a meeting, but you kept blowing up my phone during a meeting after I [suspended the meeting and] said I was going to get back to you. So that was a respect thing for me." See Hearing Tr. 130:1–10). It was not, and could not reasonably be understood as, an apology for resigning or for saying "I quit" – words Mr. Wyatt has consistently and immediately denied uttering. See

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Hearing Tr. 82:17-23; 134:2–7; 144:5–12; Hearing Ex. 2.

56. The screenshot of Mr. Wyatt's work calendar that the County itself produced on May 21, 2026, in response to Sunshine Law Request No. 26-3253, and nearly two months after the Commission hearing, shows that the 8:00 a.m. commitment in fact did appear on Mr. Wyatt's work calendar on the morning of February 5, 2026. See Hearing Ex. 3 (calendar screenshot produced May 21, 2026). Ms. Pike's contrary report to Mr. Wyatt was mistaken, and Mr. Melton — who testified that he and Ms. Pike checked that very calendar and found "nothing on his schedule for that morning" (Hearing Tr. 57:9–58:9) — indeed had ready access to a calendar showing that Mr. Wyatt was engaged in a scheduled commitment when Mr. Melton placed the repeated calls and texts to which Mr. Wyatt was responding. See Hearing Ex. 3; Hearing Ex. 3.

57. At approximately 9:03 a.m. on February 6, 2026, Mr. Wyatt sent Mr. Melton a work-related text message asking whether Mr. Melton needed assistance with the federal Uniform Data System (UDS) project due February 15. Mr. Melton admitted receiving work-related texts from Mr. Wyatt and never responding, "Why are you texting me about work when you quit?" See Hearing Tr. 47:21–48:19; 130:22–24; 141:9–142:6.

58. On the morning of February 6, 2026, Mr. Wyatt conducted County business at an out-of-office meeting with Centene in his capacity as Chief Operating Officer. See Hearing Tr. 130:25–131:1; 140:21–141:8; 142:15–21.

59. Mr. Wyatt returned to the office at approximately 12:40 p.m. on February 6, 2026, and began preparing to lead the standing 1:00 p.m. Health Center Management meeting and Epic training. See Hearing Tr. 131:2–18; 143:1–17. Sometime that afternoon, Deputy

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Director of Public Health Damon Broadus had a work-related conversation with Mr. Wyatt concerning County business. See Hearing Tr. 120:14–121:2.

60. Mr. Wyatt's conduct was inconsistent with a voluntary, knowing, unequivocal, and completed resignation.

61. Mr. Wyatt's continued performance of County work after the alleged resignation – witnessed by Ms. Pike, Dr. Miller, Mr. Broadus, and others, none of whom observed agitation, cursing, or any indication of resignation – further demonstrates that the County's resignation theory is not supported by competent and substantial evidence upon the whole record. See Hearing Tr. 63:8–11; 68:5–15; 110:15–111:24; 113:7–24; 119:8–120:25.

**D. The Appointing Authority Treated the Matter as a Termination**

62. Dr. Cunningham was the Appointing Authority for DPH, responsible for all hiring, firing, termination, disciplinary, and corrective-action decisions, and for accepting resignations. See Hearing Tr. 87:6–16.

63. When asked at the administrative hearing why she did not ask Mr. Wyatt to submit a resignation in writing, Dr. Cunningham testified that she would not speak directly to "the person that's being terminated." See Hearing Tr. 98:5–10.

64. Dr. Cunningham's testimony confirms the substance of the County's action: Mr. Wyatt was terminated.

65. Dr. Cunningham further instructed her assistant to "grab security" when Mr. Wyatt returned to the building on February 6, and security walked Mr. Wyatt out – the treatment of a terminated employee, not a voluntarily departing one. See Hearing Tr. 91:11–25; 102:5–11; 132:16–20).

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

66. Having treated Mr. Wyatt as terminated, Defendants/Respondents were required to comply with the procedures applicable to termination of a merit employee under Civil Service Rules XX, XXI and XXII and the Charter. See Hearing Tr. 25:6–26:2 (judicial notice).

67. Defendants did not comply with those procedures. Defendants instead attempted to avoid those procedures by labeling the separation a "resignation not in good standing."

**E. The "Not in Good Standing" Designation and Its Continuing Consequences**

68. The Commission concluded that Civil Service Rule XIX applied and that the Appointing Authority properly treated Mr. Wyatt's alleged oral statement as a resignation "not in good standing."

69. Dr. Cunningham herself defined a verbal resignation "not in good standing" as a situation in which an employee says "I quit," picks up their belongings, walks off the job, and does not continue working in the role. See Hearing Tr. 88:17–89:8; 94:22–95:15; 98:23–99:1. By the County's own definition, this record — two additional days of continuous County work — does not fit that category.

70. The "not in good standing" designation is materially different from a resignation in good standing: it communicates that the employee separated under circumstances rendering him unsuitable for favorable reemployment consideration, and it carries the natural and foreseeable implication that Mr. Wyatt engaged in misconduct, abandoned his position, or failed to satisfy the standards expected of executive leadership within St. Louis County government.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

71. Rule XIX itself attaches a concrete employment consequence to the circumstances underlying the designation: failure to give fourteen days' notice "may be cause for an employee not to be recommended for future employment with the County." Rule XIX § A.2 (quoted at Decision ¶ 20). By rule, the designation does not merely wound reputation in the abstract; it forecloses or materially impairs Mr. Wyatt's eligibility for future County employment.

72. The County coupled the designation with disparaging characterizations: a profanity-laced explosive quit (Hearing Tr. 28:12–24; 35:13–36:25), questions about Mr. Wyatt's "mental health" that Dr. Cunningham raised with Mr. Melton and disclosed to a third party, Rodney Gee (Hearing Tr. 90:7–12; 100:12–101:21), and removal from the building with security present (Hearing Tr. 91:11–25; 132:16–20).

73. The designation reflects adversely upon Mr. Wyatt's honesty, integrity, judgment, professionalism, reliability, and fitness to serve in public employment, and conveys that his departure was disciplinary in substance even though Defendants did not utilize the disciplinary procedures required for merit employees.

74. The designation has become part of Mr. Wyatt's official employment history with St. Louis County through the actions of the Appointing Authority and the Commission, whose written decision is an official governmental record concerning Mr. Wyatt's employment. Upon information and belief, County personnel records continue to identify Mr. Wyatt's separation in accordance with the Commission's decision, are maintained in the ordinary course of County business, and are available to County officials responsible for future employment decisions.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

75. Mr. Wyatt developed his professional reputation as a healthcare executive, public servant, and organizational leader across the for-profit, nonprofit, and healthcare industries. (Hearing Tr. 122:19–22). Professional reputation and integrity are indispensable qualifications for executive leadership positions within governmental healthcare organizations.

76. The designation impairs Mr. Wyatt's eligibility for future employment or reemployment with St. Louis County and his ability to compete for comparable executive positions, and that reputational injury continues each day Defendants maintain official records identifying him as having resigned "not in good standing."

77. Defendants did not provide Mr. Wyatt with a constitutionally adequate name-clearing hearing before imposing the stigmatizing "not in good standing" designation, and any post-deprivation process provided by the Commission was inadequate because the County withheld its evidence before and during the hearing, produced the sole witness statement nearly a month after the hearing, and the Commission affirmed the stigmatizing designation. See Hearing Tr. 9:14–10:15; 19:16–19; 68:16–70:5; 165:8–168:5; Hearing Ex. 1.

**F Mr. Wyatt Immediately Contested the County's Characterization**

78. Mr. Wyatt did not acquiesce in Defendants' characterization of his separation.

79. On February 6, 2026, at approximately 12:40 p.m., at Dr. Cunningham's direction, Ms. Gardner confronted Mr. Wyatt in his office and informed him that Dr. Cunningham had accepted his resignation. See Hearing Tr. 79:4–14; 131:14-20.

80. During that communication, Ms. Gardner's account to Mr. Wyatt focused on whether he had entered Mr. Melton's office and cursed – an account materially different from the telephone-call theory the County advanced at the hearing. See Hearing Tr. 79:18–80:25;

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

131:23–132:13; 149:8–18.

81. Ms. Gardner admitted at the hearing that Mr. Wyatt was surprised and said he did not resign. See Hearing Tr. 82:13–23.

82. Ms. Gardner collected his badge, phone, and computer, and Mr. Wyatt exited the building minutes later under supervision of security (Hearing Tr. 84:4–10; 91:11–25; 132:15–20), but left many of his personal belongings, which remain there today and have not been returned. At 1:19 p.m. that day, Ms. Gardner sent Mr. Wyatt an email formally "accepting" his resignation on Dr. Cunningham's behalf. See Hearing Ex. 2, Feb. 6, 2026 email.

83. On February 9, 2026, at 4:57 a.m., Mr. Wyatt emailed Ms. Gardner, Mr. Melton, and Dr. Cunningham, denying that he had resigned. He wrote that the purported acceptance referred to "a situation or conversation that to my knowledge, did not happen"; that "I did not say to Derrick or anyone else, 'I quit'. I did not resign"; and, unequivocally: "I DID NOT 'QUIT'! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING." See Hearing Ex. 2a., Feb. 9, 2026 email; Hearing Tr. 145:14–23.

84. In the same email, Mr. Wyatt noted that per Civil Service Rules a resignation needs to be in writing, requested that any document purporting to be a resignation be provided to him that day, and stated that any such document was not from his "hand, mind or heart." See Hearing Ex. 2a.

85. Mr. Wyatt received no response. See Hearing Tr. 145:24–146:5. He emailed Dr. Cunningham and Ms. Gardner again at 6:50 a.m. the same day, again without response (Hearing Ex. 2.b.); emailed Dr. Cunningham, Ms. Gardner, and Personnel Director Matt

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Livasy on February 12, 2026, again denying that he resigned and requesting reinstatement (Hearing Ex. 2.c.); and emailed Mr. Livasy, Dr. Cunningham, Ms. Gardner, and Board Chair Dionne Jones on February 16, 2026, formally appealing the "resignation" with supporting exhibits and seeking expeditious and complete reinstatement and an investigation See Hearing Ex. 2.e.; Hearing Tr. 146:2–147:9.

86. Approximately two weeks passed before the County's Personnel Director even learned that Mr. Wyatt was no longer employed, because no one had told him. See Hearing Tr. 147:10–148:2.

87. Mr. Wyatt has consistently disputed the County's characterization from the first notice of the purported resignation through the administrative proceedings, and continues to dispute it in this action. See Hearing Tr. 144:5–12; 149:1–2; 160:1–3.

**G. The County Withheld Its Evidence Before and During the Commission Hearing**

88. Mr. Wyatt appealed the County's action to the Commission, requested reinstatement and an investigation, informed the County that he was unjustly without income, and requested a private, in-person hearing under oath. See Pl. Ex. 4.

89. On February 24, 2026, Mr. Wyatt submitted a request for public records under Missouri's Sunshine Law (Request No. 26-3253), seeking materials concerning the alleged resignation, investigative materials, witness statements, and his HR file. Ms. Gardner, as custodian of records, confirmed acceptance of the request the same day. See Pl. Ex. 5 (Request #26-3253 file) and Pl. Ex. 6 (Timeline).

90. Section 610.023.3, R.S.Mo., required the County to act on that request as soon as possible and, absent detailed cause, no later than the end of the third business day following

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

receipt.

91. The County produced absolutely nothing relevant to Mr. Wyatt's supposed resignation or appeal in the thirty-four days between the request and the March 30, 2026 evidentiary hearing, and nothing at all responsive or not already in Wyatt's possession, save two documents, for seventy-three days. Instead, the custodian issued at least eight serial extensions over the course of 99 days: on February 27 to March 20, 2026 (three days after the Commission's March 17 meeting, at which Mr. Wyatt had been notified his purported "resignation" was on the agenda); on March 20 to April 1 (one day after the March 30 evidentiary hearing); on April 1 to April 8; on April 8 to April 15; on April 15 to April 23; on April 23 to April 29; on April 30 to May 4; and on June 1 to June 5, 2026. Each extension recited materially identical boilerplate extensions of its compliance deadline.. See Hearing Tr. 149:25–151:4; Pl. Ex. 5 and 6; fn. 8 *infra*.

92. The first production arrived on May 8, 2026 – seventy-three days after the request, 31 days after the Commission hearing, and five days before Mr. Wyatt's post-hearing brief was due: fifteen documents, none relating to the events of February 5 or 6, 2026, many not relating to Mr. Wyatt at all. A single further non-responsive document followed on May 11, 2026, two days before the post-hearing brief deadline. See Pet. Exh. 5 and 6.

93. On May 21, 2026, the County produced Mr. Wyatt's own text messages to Mr. Melton and Mr. Wyatt's own correspondence – documents Mr. Wyatt himself had appended to his appeal – with additional content redacted and no statutory exemption identified, together with the purported Pike statement. The only new, relevant, responsive record produced was a screenshot of Mr. Wyatt's work calendar for the morning of February 5, 2026. See ¶ 52.2,

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

*supra*; Pet. Exh. 5 and 6.

94. Two additional irrelevant documents were produced on June 2, 2026, and three more on June 5, 2026. On June 5, 2026, the County closed Request No. 26-3253, representing: "All records have been released, and your request has been fulfilled."

95. That representation was false. The County has never produced, among other records known to exist: Mr. Melton's written statement and screenshots, which he testified he prepared and provided to Dr. Cunningham and Ms. Gardner (Hearing Tr. 52:22–53:23; 54:25–55:5); Mr. Wyatt's Human Resources file; any investigative materials; the communications among Mr. Melton, Dr. Cunningham, and Ms. Gardner concerning the alleged resignation; and the June 16, 2026 Commission meeting minutes that the Decision itself cites. See Decision ¶ 18.

96. Every extension and response was issued by or on behalf of Ms. Gardner as custodian, signed "Cassundra Pabon (on behalf of) Sharon Gardner, Custodian of Records, Saint Louis County Department of Public Health."

97. Before the hearing, Mr. Wyatt moved the Commission to compel testimony and collect non-privileged records; the Commission did not do so, and Mr. Wyatt received no witness list, no documents, and no statement of cause from the County or the Commission. See Hearing Tr. 9:14–23; 17:2–14; 19:16–19; 22:10–23:15.

98. At the hearing, the County confirmed on the record that it had submitted no documents. See Hearing Tr. 10:11–15.

99. When witness statements surfaced during testimony – including Mr. Melton's written statement, screenshots sent to Dr. Cunningham and Ms. Gardner, and a statement Ms.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Gardner took from Ms. Pike on February 6 – Mr. Wyatt's counsel requested them on the record. They were not produced before or during the hearing. See Hearing Tr. 52:22–53:23; 54:25–55:5; 68:16–69:13; 75:11–15).

100. Nearly a month after the hearing, on or about April 27, 2026, the County produced to the Commission a typed, one-page, undated, and unsigned "Summary of Events" attributed to Ms. Pike. See Pet. Exh. 7. Mr. Wyatt had no opportunity to cross-examine Ms. Pike concerning that document's preparation, timing, edits, or accuracy. See Hearing Ex. 1; Hearing Tr. 68:16–69:13; 162:21–163:1; 165:8–168:5.

101. Despite the absence of pre-hearing documentation from the County and despite the lack of a written resignation, the Commission proceeded with the hearing and later accepted and considered the post-hearing Pike statement over Mr. Wyatt's due-process objection. See Hearing Tr. 167:11-168:5.

**H. The Commission's Decision**

102. On June 18, 2026, the Commission issued its Findings of Fact, Conclusions of Law and Decision. The decision recites that Commission members reviewed the transcripts and evidence, citing minutes of a Commission meeting dated June 16, 2026, two days before the decision was signed. See Decision ¶ 18.

103. The Commission found that Mr. Wyatt was employed by St. Louis County beginning August 19, 2024, as the Federally Qualified Health Center Chief Operating Officer; that Dr. Cunningham was the Appointing Authority; that Mr. Wyatt reported directly to Mr. Melton; that Mr. Wyatt's duties included oversight of clinical operations, staff supervision, strategic planning, and regulatory compliance; that Mr. Melton was generally satisfied with

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Mr. Wyatt's job performance as of February 5, 2026; and that the Department was pursuing no disciplinary action against Mr. Wyatt and knew of no allegations of misconduct. See Decision ¶¶ 1–8).

104. The Commission concluded that Rule XIX "fully applies and the Appointing Authority correctly interpreted the true intent thereof in accepting Mr. Wyatt's oral statement as a resignation not in good standing," relying on Rule XIX § A, subsections 1 and 2. See Decision ¶ 20.

105. Rule XIX § A.1, as quoted in the decision, provides that a merit system employee "may resign in good standing by submitting a written resignation to the employee's Appointing Authority, at least 14 calendar days before the effective date of the resignation"; § A.2 provides that failure to give 14 calendar days' notice "may be cause for an employee not to be recommended for future employment with the County." See Decision ¶ 20 (quoting Rule XIX § A.1–.2)).

106. Rule XIX § A thus prescribes the manner in which a merit employee may resign in good standing; it does not authorize an Appointing Authority to deem an employee to have resigned. By its plain terms, the sole consequence Rule XIX attaches to a resignation tendered without fourteen days' written notice is prospective and limited: the failure "may be cause for an employee not to be recommended for future employment with the County." (Decision ¶ 20 (quoting Rule XIX § A.2)). Nothing in Rule XIX provides that a disputed oral statement is itself a resignation, that an Appointing Authority may "accept" an oral statement as a "resignation not in good standing," or that non-compliance with § A.1 works a forfeiture of the employee's position – much less a forfeiture of the pre-termination procedures

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

guaranteed by Rule XXI § D.

107. The Commission's conclusion that the Appointing Authority "correctly interpreted the true intent" of Rule XIX (Decision ¶ 20) is itself a concession that the rule's text does not say what the Commission held. Civil service rules are constructed according to the same plain-language principles that govern statutes; a commission may not enlarge a rule beyond its terms in the name of its "true intent." Read as written, Rule XIX answers the question presented: an employee who resigns without written fourteen-day notice faces, at most, a future-employment consequence – not the retroactive loss of his existing position without the process Rule XXI § D commands.

108. The Commission further concluded that the County's evidence established that Mr. Wyatt made an "unequivocal verbal statement of his intent to resign" – a conclusion supported by no record citation (Decision ¶ 22); that "by failing to submit his resignation in writing and with 14 calendar days' notice, Mr. Wyatt resigned not in good standing" (Decision ¶ 23); that Mr. Wyatt "did not disclaim or rescind his resignation prior to Dr. Cunningham's acceptance" (Decision ¶ 25); and that the Appointing Authority was not required to comply with the procedural requirements of Civil Service Rule XXI § D because Mr. Wyatt, "by resigning, voluntarily waived his entitlement to the due process described therein" See Decision ¶ 29.

109. The Commission's "acceptance" rationale (Decision ¶ 25) imports a contract-law construct – offer, acceptance, and revocation – that appears nowhere in the Charter, the ordinances, or the Civil Service Rules, and for which the Commission identified no authority. Even on that borrowed framework, the finding fails on the County's own

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

evidence. Before Dr. Cunningham's written "acceptance" was tendered at approximately 12:40–12:50 p.m., Mr. Wyatt had reported to work within approximately twenty minutes of the 58-second call (Hearing Tr. 34:8–16; 44:24–45:3), had been personally observed by Mr. Melton working at the office (Hearing Tr. 44:24–45:11), and had continued to perform his duties, including attending the County's February 6th meeting with Centene (Hearing Tr. 130:25–131:2; 140:21–141:8). Each act was an objective manifestation, known to the County before any "acceptance," that Mr. Wyatt had not resigned. And no witness testified that anyone advised Mr. Wyatt, before Ms. Gardner told Mr. Wyatt that he had resigned, that the Appointing Authority regarded him as having resigned, or asked him to confirm any intent to resign. See e.g., Hearing Tr. 44:14–16; 98:5–10 (no writing, no confirmation). The Commission thus faulted Mr. Wyatt for failing to "disclaim or rescind" (Decision ¶ 25) a resignation he did not know had been imputed to him – and when the imputation was finally disclosed, he disclaimed it on the spot: "What resignation?" See Hearing Tr. 131:18–132:14.

110. The decision contains purported findings of fact that appear nowhere in the hearing record: it finds that during the 58-second call Mr. Wyatt used the phrases "fuck you" and "I'm tired of this shit," citing "Hearing Tr. 31:13-25" (Decision ¶ 9(g)(i)), but no witness testified to those phrases at any point in the hearing, and the cited transcript passage concerns Mr. Wyatt's job duties, not the telephone call. See Hearing Tr. 31:13–25. The only profanity any witness attributed to the 58-second call was Mr. Melton's account that Mr. Wyatt said "I'm fucking driving," "I'm fucking talking to you," and "I just fucking quit" (Hearing Tr. 35:13–36:12), an account Mr. Wyatt disputes as to any statement of quitting. Even on Mr. Melton's telling, no epithet was aimed at Mr. Melton personally, and the "screaming" he

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

described was "not any words to me at that particular time." See Hearing Tr. 35:13–36:25.

111. No witness at any point testified that Mr. Wyatt said "fuck you" or "I'm tired of this shit" – the phrases that the County quoted in its Findings of Fact, Conclusions of Law and Decision ("County FOF/COL"), and the Commission Decision identically presents in quotation marks as findings of fact.[2] See County FOF/COL ¶ 9.g.i. vs. Decision ¶ 9.g.i (identical)).[3]

112. The false quotations did not originate with the Commission. They appear word for word – accompanied by the same erroneous citation to "Hearing Tr. 31:13-25" – in the County's proposed findings. See Id. The Commission copied both: the fabricated quotations and the citation error that betrays them. No commissioner who had in fact "reviewed all the transcripts" (Decision ¶ 18) could have adopted a finding whose only record citation refutes it, because Hearing Tr. 31:13–25 is testimony about Mr. Wyatt's job duties and says nothing about the telephone call. The verbatim reproduction of an advocate's false quotation and citation error is the signature of mechanical adoption, not adjudication.

113. The decision recites that the Commission held the hearing "without ruling on whether Mr. Wyatt's separation from County employment was an appealable termination," and finds that the March 30, 2026 post-separation hearing itself "provided Mr. Wyatt due process."

[2] In fact, all but one of the quoted testimony included in the County FOF/COL were accurate. Some were not in the record at all, such as Mr. Melton purportedly stating to Mr. Wyatt: "You resigned. You said what you said and that's that;" Mr. Wyatt purportedly stating; "I need to apologize to him;" and Wyatt purportedly stating about Mr. Melton: "Is he mad? He's mad, isn't he?" See County FOF/COL 10.b., 10.j., and 10.b. (the second sub b. in the disordered paragraph). The remainder of the quoted testimony, save one, was inaccurate and/or incomplete. See County FOF/COL ¶¶ 9.g.1v. 9.i. The County FOF/COL further misstated that Ms. Pike called Mr. Wyatt on Mr. Melton's behalf on the morning of February 5th – which is not in the record. See County FOF ¶ 9.d. Other established "facts" stated in County FOF/COL were, in fact, disputed. See, e.g., ¶ 4, ¶ 10.c. (disordered paragraph). It was upon this inexcusable sloppiness that the Commission relied in its opinion verbatim.

[3] CF. Mr. Wyatt's Findings of Fact and Conclusions of law and Post-Hearing Brief, which were entirely ignored. See Pl. Ex. 7.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

See Decision ¶¶ 13–15. The decision further recites that official notice was taken only of Charter Article VII § 7.020, Ordinance 15,154, Revised Ordinances § 202.100, and Civil Service Rules XIX and XXII–not Rule XXI–even though the decision purports to adjudicate and extinguish Mr. Wyatt's rights under Rule XXI, Section D. See Decision, Introduction; Decision ¶ 29.

114. The decision disposes of all contrary evidence in a single sentence, declaring that any evidence "contrary or inconsistent with the findings of fact, conclusions of law and decision herein is specifically found to be not credible, and not an adequate basis to reverse." The determination is circular: it defines credibility by agreement with the result rather than deriving the result from the evidence. It identifies no witness and no testimony, and by its terms it sweeps in the testimony of the County's own witnesses Ms. Pike, Dr. Miller, and Mr. Broadus. A finding in that form defeats the judicial review that § 536.090, RSMo, exists to enable: it leaves this Court no way to know what evidence the Commission weighed, what it rejected, or why. The sentence itself was drafted by County counsel and adopted by the Commission without alteration. See County FOF/COL ¶ 56.

115. With the exception of one added paragraph (Decision ¶ 9.j.) and a few added words to paragraph 47 (cf. County FOF/COL ¶ 22),[4] the Commission adopted the County's FOF/COL verbatim – including County counsel's citation errors and the fabricated quotations described in paragraphs 110-112 *supra*. The County's proposal did not acknowledge, address, or weigh any evidence unfavorable to its position; the Commission's decision, having adopted it, addresses none either.

[4] The only reason that the County's FOF/COL paragraph numbering isn't identical to the Decision is that the County inexplicably skipped from paragraph 18 to 44 in its pleading.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

116. The Missouri Supreme Court has repeatedly criticized this practice. Massman Construction Co. v. Missouri Highway & Transportation Commission, 914 S.W.2d 801, 804 (Mo. banc 1996), described the adoption of significant portions of a party's proposed order without modification as an "often troublesome practice," because advocates "are prone to excesses of rhetoric and lengthy recitals of evidence favorable to their side but which ignore proper evidence or inferences from evidence favorable to the other party," and admonished decision-makers to approach a proposed order "with the sharp eye of a skeptic and the sharp pencil of an editor." State v. Griffin, 848 S.W.2d 464, 471 (Mo. banc 1993), warned that adopting one party's proposals in their entirety creates "a problem with the appearance," because "[t]he judiciary is not and should not be a rubber-stamp for anyone." And Skillicorn v. State, 22 S.W.3d 678, 690-691 (Mo. banc 2000), permits verbatim adoption only where the tribunal, "after independent reflection, concurs with the contents" of the proposed findings and those findings are supported by the evidence. The Eastern District has been blunter still: it has "repeatedly chastised trial courts" for the wholesale adoption of a party's proposed judgment, because "[d]ue to the very nature of our adversarial system, the wholesale adoption of one proposed judgment over another will never be perceived as impartial by the opposing party in any highly contested case." King v. King, 548 S.W.3d 440, 442 n.1 (Mo. App. E.D. 2018) (citing Griffin, 848 S.W.2d at 471; Neal v. Neal, 281 S.W.3d 330, 337 (Mo. App. E.D. 2009); Binkley v. Binkley, 725 S.W.2d 910, 911 n.2 (Mo. App. E.D. 1987)). It "harbor[s] significant reservations over" the practice, because once parties have had their day in court they are entitled to a judgment that "is not an advocate's view of the evidence." Tribus, LLC v. Greater Metro, Inc., 589 S.W.3d 679, 699 (Mo. App. E.D. 2019). See also United States v. El Paso

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Natural Gas Co., 376 U.S. 651, 656–57 (1964) (findings "mechanically adopted" from the prevailing party "do not reveal the discerning line for decision," while findings "drawn with the insight of a disinterested mind are ... more helpful to the appellate court"); Anderson v. City of Bessemer City, 470 U.S. 564, 572 (1985) (reviewing courts have "criticized courts for their verbatim adoption of findings of fact prepared by prevailing parties, particularly when those findings have taken the form of conclusory statements unsupported by citation to the record").

117. Neither of Skillicorn's conditions is present here. Independent reflection is not merely unproven; it is negated by the face of the Decision, which reproduces the County's fabricated quotations and copies its erroneous transcript citations – errors that any independent examination of the record would have exposed. Nor do the Commission's two trivial alterations supply the missing judgment: a decision-maker's critical review is demonstrated by material engagement with the proposals, not cosmetic edits. Cf. Marchant v. City of Little Rock, 741 F.2d 201, 204-205 (8th Cir. 1984) (verbatim adoption "strongly disfavored"; affirming only because the district court altered and supplemented the proposed findings, showing that it "brought its critical judgment . . . to bear").

118. Mr. Wyatt does not ask this Court to apply a heightened standard of review. He asks the Court to apply the standard it is already bound to apply – review of the whole record, not merely the evidence and inferences favorable to the Commission (Mo. Const. art. V, § 18; Seck v. Department of Transportation, 434 S.W.3d 74, 79 (Mo. banc 2014)) – with the recognition that findings authored entirely by the prevailing party's advocate, and adopted with their errors intact, carry no assurance that the Commission ever weighed the contrary

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

evidence at all. On whole-record review, findings of that provenance supply no basis for resolving evidentiary conflicts in the Commission's favor. See Coffer v. Wasson-Hunt, 281 S.W.3d 308, 310 (Mo. banc 2009); Wilson v. City of St. Louis, 418 S.W.3d 501, 506 (Mo. App. E.D. 2013).

119. At the hearing, the County repeatedly conceded on the record that the facts were disputed. County counsel declined to stipulate to Mr. Wyatt's proposed facts because "There is, I believe, conflicting factual accounts and testimony on both sides" (Hearing Tr. 18:3–7); confirmed, "There is a dispute as to the facts, ma'am" (Hearing Tr. 20:12–13); and acknowledged in closing argument, "We are not denying the existence of a factual dispute. He said/he said is a pretty good way to put it." See Hearing Tr. 161:4–5).

120. In its FOF/COL, however, the County represented to the Commission that Mr. Wyatt's verbal resignation was established as an uncontested and unequivocal fact, stating that Mr. Wyatt resigned effective February 6th, citing Dr. Cunningham's hearsay testimony on the record and her attempted written "acceptance" of the "resignation" (County FOF/COL ¶ 4), and that the County proved that Mr. Wyatt's resignation was "unequivocal" (¶ 47). Those representations were false, contradicted the County's own on-the-record concessions, and misstated the whole record.

121. The Commission accepted the County's post-hearing characterization and treated the alleged verbal resignation as uncontested rather than resolving the disputed question upon the whole record. See Decision ¶¶ 4, 22–25 (declaring the alleged verbal resignation an established "fact" and finding it "credibly established" and "unequivocal" without addressing Mr. Wyatt's sworn denial or the County's on-the-record concessions). Mr.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Wyatt testified under oath that he did not resign, and that he has denied resigning "[e]very time I get the opportunity." See Hearing Tr. 134:2–7; 144:5–12; 145:15–23. The Decision nowhere mentions, let alone weighs, that testimony.

122. The Commission's decision rests on an erroneous legal premise: that the County could avoid merit-employee termination procedures by accepting a disputed, unwritten, alleged oral resignation without confirming intent, without investigation, without notice, without a statement of cause, and without any pre-deprivation process. The Decision's waiver holding is circular. It treats the disputed resignation itself as the "voluntary waiver" of the very procedures that exist to determine whether Mr. Wyatt resigned at all. See Decision ¶ 29). Waiver of a constitutionally protected property interest must be knowing and voluntary; it cannot be supplied by the contested fact whose existence the waived process would have tested. On the Commission's logic, a merit employee's procedural protections are extinguished the moment a supervisor claims to have heard a resignation – the accusation becomes the adjudication. See Angarita v. St. Louis County, 981 F.2d 1537, 1544 (8th Cir. 1992).

123. The Commission's decision disregards the whole record, including the undisputed evidence that Mr. Wyatt did not submit a written resignation, immediately denied resigning, continued working after the alleged telephone call, and repeatedly requested reinstatement, and it unlawfully converts a disputed factual assertion by a single supervisor into a waiver of a merit employee's constitutionally protected property interest in public employment.

124. And yet, despite all of the described issues, the Commission affirmed the

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Appointing Authority's acceptance of Mr. Wyatt's alleged resignation effective February 6, 2026, and denied his appeal. See Decision, "Decision" section.

**I. The Hearing Panel, the Absent Commissioner, and the Signed Decision**

125. Only three of the Commission's five members – Chairperson Nadine Nunn, Commissioner Chantal Hoffsten, and Commissioner Satonya Booker – attended the March 30, 2026 evidentiary hearing, and Commissioner Booker was appointed hearing officer by motion. See Hearing Tr. 5:7–14; 6:13–15; 7:8–15.

126. Commissioners Raven Akram and Carter-Hicks were absent from the evidentiary hearing. See Hearing Tr. 5:15–16.

127. The hearing officer stated on the record that the absent members "will be supplied with the transcript of today's proceedings, as well as copies of any documents that are admitted into evidence," and that "[t]he full Commission will make the decision, not just me." See Hearing Tr. 16:1–7. The hearing thus proceeded on the express premise that non-attending members would decide the appeal on the full paper record.

128. Chairperson Nunn and Commissioners Booker, Hoffsten, and Akram signed the June 18, 2026 Decision. Commissioner Carter-Hicks did not sign the Decision.

129. Commissioner Akram signed and joined in rendering the Decision despite not attending the evidentiary hearing and never observing any witness testify.

130. The Decision nevertheless recites that the Commission "unanimously" affirmed the Appointing Authority, although only four of five members signed it, one signatory heard none of the evidence, and the hearing officer had represented that "[t]he full Commission" would decide. See Decision, "Decision" section; Hearing Tr. 16:1–7.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

131. The Decision recites that Commission members "reviewed all the transcripts and evidence before voting" and that "[t]he evidence reviewed included a transcript of Mr. Wyatt's testimony," citing Minutes of the Civil Service Commission Meeting dated June 16, 2026. See Decision ¶ 18. The Decision does not state that Commissioner Akram, or any non-attending member, read the full record – including the testimony of Mr. Melton, Ms. Pike, Ms. Gardner, Dr. Miller, Mr. Broadus, and Dr. Cunningham, the witnesses whose credibility the Decision purports to resolve against Mr. Wyatt – or personally considered the portions of the record cited in the parties' post-hearing submissions. The single item of evidence the recital does identify – 'a transcript of Mr. Wyatt's testimony' – is conspicuous. It is consistent with a non-attending member having reviewed only the appellant's own testimony, and not the testimony of the witnesses whose accounts the Decision credits and whose credibility it purports to resolve against Mr. Wyatt.

132. Upon information and belief, the Commission deliberated and voted on Mr. Wyatt's appeal at its June 16, 2026 meeting, the minutes of which have not been produced to Mr. Wyatt despite his outstanding records requests.

133. The paper record supplied to any non-attending member was itself augmented, after the close of evidence and over Mr. Wyatt's objection, by the undated, unsigned Pike statement – a document never admitted as an exhibit at the hearing and never subject to confrontation. See Hearing Tr. 165:8–168:5; Hearing Ex. 1. The document also contradicts the sworn testimony of its own purported author: Ms. Pike testified at the hearing that she did not submit a written statement – "Q. But you submitted a written statement? A. No. She took my statement." She Hearing Tr. 68:16–69:13. The Commission thus supplemented the record,

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

post-hearing, with an unsigned document whose very existence as Ms. Pike's statement is refuted by Ms. Pike's own testimony. See Hearing Tr. 165:8–168:5; Hearing Ex. 1.

**COUNT I**

**PETITION FOR JUDICIAL REVIEW OF A CONTESTED CASE (§§ 536.100–536.140, R.S.Mo.: Against Respondents St. Louis County and the Civil Service Commission)**

134. Mr. Wyatt incorporates the preceding paragraphs as though fully set forth herein.

135. This Count is brought pursuant to Chapter 536, R.S.Mo., including §§ 536.100 through 536.140, R.S.Mo., and the St. Louis County Charter art. VII, ordinances, and Civil Service Rules governing appeals from Commission decisions.

136. Mr. Wyatt is a person aggrieved by the Commission's Findings of Fact, Conclusions of Law and Decision, which constitutes a final decision in a contested case subject to judicial review. See § 536.100, R.S.Mo..

137. The Commission affirmed the Appointing Authority's decision even though: (a) no written resignation existed (Hearing Tr. 50:14–18; 148:4–9); (b) Mr. Wyatt immediately, repeatedly, and unequivocally denied resigning (Hearing Tr. 82:17–23; 144:4–12; Hearing Ex. 2); (c) Mr. Wyatt continued working after the alleged telephone call and returned to work the following day (Hearing Tr. 64:25–65:17; 129:11–132:25; 148:16–25); (d) the County provided Mr. Wyatt no pre-termination notice, no written statement of cause, none of the evidence against him, and no meaningful pre-deprivation opportunity to respond (Hearing Tr. 104:4–9; 149:3–18); (e) the County admitted at hearing that it submitted no documents (Hearing Tr. 10:11–15); and (f) Dr. Cunningham testified that she did not speak to Mr. Wyatt

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

because she would never speak directly to "the person that's being terminated" (Hearing Tr. 98:5–10).

**A. The Decision Misinterprets Civil Service Rule XIX**

138. Civil Service Rule XIX, of which the Commission took judicial notice (Hearing Tr. 25:6–26:2), recognizes two, and only two, means by which a merit employee may resign: (a) by written resignation, with fourteen days' notice required for a resignation in good standing (Hearing Tr. 29:3–5); and (b) by presumptive resignation upon absence from work for three consecutive days without notice (Hearing Tr. 99:2–6).

139. The text of Rule XIX § A, as quoted in the decision itself, confirms the point. Subsection A.1 authorizes resignation "in good standing by submitting a written resignation . . . at least 14 calendar days before the effective date"; subsection A.2 addresses only the consequence of deficient notice — that the employee "may . . . not be recommended for future employment with the County." See Decision ¶ 20. Nothing in the quoted rule authorizes an oral resignation, defines a "verbal resignation not in good standing," or empowers an appointing authority to treat a disputed utterance as a completed separation. By the rule's plain text, "not in good standing" is a rehire-recommendation consequence attaching to a written resignation on short notice — not a freestanding mechanism of separation. The Commission's resort to the rule's "true intent" in derogation of its text (Decision ¶ 20) is precisely the enlargement of agency authority that Missouri law forbids. State ex rel. Praxair, Inc. v. Mo. Pub. Serv. Comm'n, 344 S.W.3d 178, 186 (Mo. banc 2011).

140. The Commission's conclusion that Mr. Wyatt "resigned not in good standing" precisely "by failing to submit his resignation in writing and with 14 calendar days' notice"

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

(Decision ¶ 23) is circular and self-refuting: it converts the absence of the very act the rule requires – a written resignation – into proof that a resignation occurred.

141. The Commission's finding that Mr. Wyatt "did not disclaim or rescind his resignation prior to Dr. Cunningham's acceptance" (Decision ¶ 25) is refuted by the decision's own findings and the record. Acceptance was first verbally communicated to Mr. Wyatt at approximately 12:50 p.m. on February 6, 2026; he denied resigning immediately; and the written confirmation issued at 1:19 p.m. – after his denial. See Hearing Tr. 82:13–23; Hearing Ex. 2. Mr. Wyatt could not "rescind" a resignation he did not know the County claimed existed; any purported offer to resign was withdrawn by his continued, open performance of duties before any acceptance was communicated; and Mr. Melton's February 5th "I accept" was a nullity, because, as Mr. Melton himself testified, acceptance of a resignation is the Appointing Authority's act alone – and Dr. Cunningham did not direct acceptance until February 6th. See Hearing Tr. 56:4–10; 79:4–14.

142. The Commission's waiver conclusion (Decision ¶ 29) is a bootstrap: it invokes the very fact in dispute – a voluntary resignation – to extinguish the pre-deprivation process constitutionally required to determine that fact, and a post-deprivation appellate hearing held more than seven weeks after the separation cannot supply the process Loudermill requires before the deprivation is made effective. 470 U.S. at 542–46.

143. Neither occurred. Mr. Wyatt submitted no writing, and he indisputably did not miss three consecutive days of work — he missed none. See Hearing Tr. 148:4–25).

144. Dr. Cunningham instead applied a third category found nowhere in Rule XIX (an unwitnessed, undocumented "verbal resignation not in good standing") and yet, even by

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

her own definition of that practice is that an employee leaves, and does not continue working ("somebody's just resigning and not desiring to come back" and 'walking off the job") See Hearing Tr. 88:17–89:8; 95:9–15.

Q: "So verbal resignation not in good standing is typically, like, 'I quit' pick up my stuff and leave?

A: (Cunningham): "Yeah, if they say 'I quit', yes."

See Hearing Tr. 98:23-99:1. The facts of this record do not even fit Dr. Cunningham's own contrived definition of "resignation not in good standing," because Mr. Wyatt kept working for two more days. See Hearing Tr. 65:1–17; 129:11–132:25.

145. An administrative agency possesses only those powers expressly conferred or necessarily implied by law and may not enlarge its authority or dispense with mandatory legal requirements. State ex rel. Praxair, 344 S.W.3d at 186. Rule XIX cannot lawfully be construed to permit the County to impose a "resignation not in good standing" based solely on a disputed oral statement, without a writing, confirmation, investigation, or pre-deprivation process.

**B. Even If Credited, Mr. Melton's Account Would Not Establish a Resignation Under Rule XIX or Missouri Law**

146. In the alternative, and without conceding the truth of any portion of Mr. Melton's account, even if the Commission credited that account in full, the alleged utterance would not, as a matter of law, constitute a resignation under Rule XIX or extinguish Mr. Wyatt's protected property interest.

147. A resignation effective to extinguish a merit employee's protected property interest must be voluntary, deliberate, and unequivocal, judged objectively under the totality of the circumstances. Angarita, 981 F.2d at 1544; see also Johnson v. Zerbst, 304 U.S. 458, 464

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

(1938) (courts indulge every reasonable presumption against waiver of fundamental rights). An ambiguous or heated utterance, immediately contradicted by the speaker's conduct, is not an unequivocal resignation.

148. Mr. Melton's own account describes the archetypal heat-of-the-moment exchange: loud, "aggressive" speech, "screaming erratically," and beating on the steering wheel, all within a 58-second call. See Hearing Tr. 36:14–25; 129:1–10; Hearing Ex 3. No reasonable employer could treat such an outburst – from an executive who had never cursed at his supervisor, never mentioned or joked about quitting (Hearing Tr. 33:9–11; 40:1–5), and whose supposed resignation Mr. Melton himself found "odd" (Hearing Tr. 51:22–25) – as a deliberate, considered relinquishment of a career and its attendant civil-service protections. Mr. Melton's account is also irreconcilable with his own conduct on his own telling: an employer who believed his COO had just unequivocally resigned would not close the call by instructing him to "just go home." See Hearing Tr. 133:5–11.

149. Mr. Wyatt's objective conduct immediately following the call repudiated any purported resignation: he reported to work approximately twenty minutes following the 9:32 a.m. phone call (Hearing Tr. 34:8-16; 44:24–45:3); held a calm, two-to-three-minute conversation with Mr. Melton in which, by Mr. Melton's own testimony, no curse words were exchanged (Hearing Tr. 43:5–12); worked the entire day and once sought to apologize to Mr. Melton face-to-face for his frustration at the repeated calls, not for any supposed resignation (See ¶¶ 52–52.2 *supra*) (Hearing Tr. 65:7–17; 70:15–71:9)[5]; and the next morning sent Mr. Melton work-related texts and represented the County at the Centene meeting (Hearing Tr.

[5] As stated herein, Mr. Wyatt desired to apologize based on his understanding, which was false, that Mr. Melton was unable to see the meeting on his calendar. See Hearing Ex. 3 (produced by the County via Sunshine Act response after the March 30th hearing and post-hearing briefing).

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

47:21–48:19; 130:25-131:02; 140:21–141:15).

150. Mr. Melton's own conduct confirms that even he did not understand an unequivocal resignation to have occurred: he never requested a written resignation (Hearing Tr. 44:14–16); he did not consult Rule XIX (Hearing Tr. 44:17–23); he said nothing when he saw Mr. Wyatt continuing to work and received his work-related texts (Hearing Tr. 45:9–11; 46:12–24; 48:16–19); and he merely assumed, without ever verifying, that Mr. Wyatt "was gathering his stuff" (Hearing Tr. 58:25–59:2).

151. Hypothetically, if verbal resignations not accompanied by three consecutive abandoned work days, as Rule XIX requires, could be deemed effective, the alleged words constituted an offer to resign, which could be withdrawn any time before an effective acceptance was communicated to Mr. Wyatt. No acceptance was communicated until approximately 12:40 p.m. on February 6th (Hearing Tr. 79:4–24; 131:14-20), by which time Mr. Wyatt's continued, open performance of his duties had withdrawn any such offer, and upon first notice he expressly and immediately repudiated it. See Hearing Tr. 82:13–23).

152. Rule XIX itself confirms the point: even a resignation in good standing requires a writing and fourteen days' notice. See Hearing Tr. 29:3–5. Yet the County processed this unwitnessed, unwritten remark to completion within approximately 28 hours. An interpretation of Rule XIX under which a heated oral remark accomplishes instantly what the Rule requires two weeks and a writing to accomplish deliberately is arbitrary, unreasonable, and unauthorized by law.

153. Because even the County's own best version of the facts fails as a matter of law, the Commission's affirmance must be reversed regardless of any credibility determination, and

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

this Court owes the Commission no deference on that legal question. Lagud v. Kansas City Bd. of Police Comm'rs, 136 S.W.3d 786, 791 (Mo. banc 2004).

**C. No Competent and Substantial Evidence of a Voluntary, Unequivocal Resignation or Waiver**

154. A resignation extinguishes a protected property interest only if it is voluntary; an employee's waiver of constitutionally protected employment rights must be knowing, voluntary, and intelligent, and courts indulge every reasonable presumption against waiver. Johnson v. Zerbst, 304 U.S. at 464; Fuentes v. Shevin, 407 U.S. 67, 94–95 (1972); D.H. Overmyer Co. v. Frick Co., 405 U.S. 174, 185–87 (1972); see also Angarita, 981 F.2d at 1544 (resignation deemed involuntary where obtained by employer conduct; voluntariness assessed under totality of the circumstances).

155. No competent and substantial evidence establishes that Mr. Wyatt knowingly, voluntarily, and intentionally relinquished his merit employment: the sole evidence is one supervisor's account of a 58-second call that no one else heard, contradicted by the employee's immediate denial, his continued performance of County work, the absence of any writing, and the testimony of every other witness. See Hearing Tr. 52:8–10; 63:8–11; 68:5–15; 110:15–111:24; 119:8–120:25; 129:1–10; Hearing Ex. 3.

**D. The Decision Was Made Upon Unlawful Procedure and Without a Fair Trial**

156. The Commission's decision was made upon unlawful procedure and without a fair trial, § 536.140.2(5), R.S.Mo., because: (a) the County failed to provide pre-hearing documents, a witness list, a statement of cause, or the factual basis for its action (Hearing Tr. 9:14–10:15; 19:16–19); (b) the County withheld witness statements identified during testimony despite counsel's on-the-record requests (Hearing Tr. 54:25–55:5; 75:11–15); (c) the

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

County withheld all records responsive to Mr. Wyatt's February 24 Sunshine Law request through the hearing date, in violation of § 610.023.3, R.S.Mo.; and (d) the Commission accepted and considered the undated, unsigned Pike statement produced nearly a month after the hearing, over objection and without any opportunity for confrontation (Hearing Ex. 1; Hearing Tr. 165:8–168:5).

157. Indeed, the decision's findings of fact expressly rely upon the purported Pike statement, citing it as "Exh. C (Eugenia Pike statement)." (Decision ¶ 10(k)). That document is typed, unsigned, and undated; it was never authenticated by Ms. Pike, who testified she did not herself prepare a written statement - it was prepared for her (Hearing Tr. 68:16–69:13);[6] It was produced only after the evidentiary record closed; and Mr. Wyatt was never afforded any opportunity to confront Ms. Pike concerning its preparation, timing, edits, or accuracy. A finding of fact resting on an unauthenticated, post-hearing, untested writing is not supported by competent and substantial evidence, § 536.140.2(3), R.S.Mo., and its consideration rendered the proceeding fundamentally unfair. The Commission should have excluded the statement or accorded it no weight, and its reliance on it independently requires reversal.

**E. The Decision Rests on a Misapprehension of the Record Induced by the County's Post-Hearing Misrepresentation**

158. Statements and concessions of counsel made on the record are binding judicial admissions. At the hearing, the County three times conceded that whether Mr. Wyatt verbally resigned was disputed. See Hearing Tr. 18:3–7; 20:12–13; 161:4–5. In its FOF/COL, the County nevertheless represented that the verbal resignation was undisputed and unequivocal.

[6] "Q: But you submitted a written statement? A: (Pike): No. She [Gardner] took my statement."

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

See County FOF/COL ¶¶ 14, 47.

159. To the extent the Commission adopted that characterization and treated the alleged resignation as uncontested (Decision ¶¶ 22–25), its decision rests on a material misapprehension of the whole record – which includes Mr. Wyatt's sworn denial (Hearing Tr. 134:2–7; 144:5-12; 145:15-23), his contemporaneous written denials (Hearing Ex. 2), and the County's own concessions – and is for that reason arbitrary, capricious, unreasonable, unsupported by competent and substantial evidence upon the whole record, and made upon unlawful procedure and without a fair hearing. See § 536.140.2(3), (5)–(6), R.S.Mo..

160. Moreover, if the Commission treated the resignation as uncontested, it made no credibility determination resolving the disputed question, and there is accordingly no credibility finding to which this Court could defer on review.

161. The decision's contents confirm the taint. The Commission adopted the County's proposed findings wholesale, including purported "findings" that Mr. Wyatt said "fuck you" and "I'm tired of this shit" during the call – phrases no witness uttered in testimony – supported by a citation to transcript testimony about Mr. Wyatt's job duties. (Cf. Decision ¶ 9(g)(i), with Hearing Tr. 31:13–25). A decision resting on findings unsupported by any evidence in the record is, by definition, unsupported by competent and substantial evidence upon the whole record. See § 536.140.2(3), R.S.Mo..

162. The Decision is internally contradictory on the dispositive question of denial: Finding ¶ 10(b)(iii) recites that Mr. Wyatt "did not attempt to deny his resignation," while the Decision's own Findings ¶¶ 11(d)–(e) acknowledge that Mr. Wyatt denied resigning when Ms. Gardner first informed him of the purported acceptance and repeated that denial multiple

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

times. The record it purports to credit is likewise internally contradictory: Mr. Melton testified on direct that he asked, "So you quit? You're not returning?" (Hearing Tr. 36:3–4), then testified on cross-examination, "I didn't -- I don't recall saying that." See Hearing Tr. 43:16–22). Findings that contradict one another on a material point are arbitrary, capricious, and unsupported by competent and substantial evidence upon the whole record. See § 536.140.2(3), (6), R.S.Mo.

163. Section 536.090, R.S.Mo., requires that every decision in a contested case be in writing and include findings of fact, stated separately, comprising "a concise statement of the findings on which the agency bases its order." The decision's blanket declaration that all evidence "contrary or inconsistent" with its findings "is specifically found to be not credible, and not an adequate basis to reverse" (Decision ¶ 31) identifies no witness, no testimony, and no reason; it sweeps in the testimony of the County's own witnesses – including Ms. Pike, who worked beside Mr. Wyatt for the remainder of February 5 and never heard him say he quit (Hearing Tr. 64:25–65:17; 68:5–11), and it forecloses the meaningful judicial review that § 536.090 exists to enable. Verbatim adoption of a prevailing party's proposed findings, while not automatically invalid, warrants the most searching scrutiny of whether the findings represent the tribunal's own reasoned decision rather than its advocate's. Cf. Anderson v. City of Bessemer City, 470 U.S. 564, 572 (1985).

**F. The Decision Was Rendered in Violation of Civil Service Rule XXII § B.2.a and, Upon Information and Belief, § 536.080.2, RSMo.**

164. Section 536.080.2, R.S.Mo., provides that in a contested case, each official of an agency who renders or joins in rendering a final decision shall, prior to the final decision, either hear all the evidence, read the full record including all the evidence, or personally

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

consider the portions of the record cited or referred to in the arguments or briefs.

165. Commissioner Akram joined in rendering the final Decision, signing it on June 18, 2026, without having attended the March 30, 2026 evidentiary hearing or heard any of the evidence. See Decision, signature page; Hearing Tr. 5:15–16.

166. Upon information and belief, Commissioner Akram neither read the full record, including the testimony of Mr. Melton, Ms. Pike, Ms. Gardner, Dr. Miller, Mr. Broadus, and Dr. Cunningham, the witnesses whose credibility the Decision purports to resolve against Mr. Wyatt, nor personally considered the portions of the record cited in the parties' post-hearing submissions before joining in the Decision. The Decision's own recital describes the members' review as having "included a transcript of Mr. Wyatt's testimony" (Decision ¶ 18), conspicuously identifying only the appellant's own testimony in a case decided against him on the credibility of four other witnesses.

167. The records that would confirm or refute the non-attending Commissioner's compliance with § 536.080.2, the June 16, 2026 Commission meeting minutes that the Decision itself cites, and records of the materials actually transmitted to and reviewed by the non-attending Commissioners, are exclusively within Defendants' possession and have been withheld despite Mr. Wyatt's February 24, 2026 Sunshine Law request. This Court may hear and consider evidence of such alleged irregularities in procedure or of unfairness by the agency not shown in the record. See § 536.140.4, R.S.Mo..

168. Any record review by a non-attending Commissioner was in any event conducted on a record augmented, after the close of evidence and over Mr. Wyatt's objection, by the undated, unsigned Pike statement on which the Decision expressly relies. See Decision

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

¶ 10(k); Hearing Ex. 1.

169. If, as alleged on information and belief, an official who neither heard the evidence, read the full record, nor personally considered the cited portions of the record joined in rendering the final Decision, the Decision was made upon unlawful procedure and without a fair trial, is unsupported by competent and substantial evidence upon the whole record, and is arbitrary, capricious, and unreasonable, § 536.140.2(3), (5), (7), R.S.Mo., and should be reversed or remanded with directions. See § 536.140.4–.5, R.S.Mo.

170. Civil Service Rule XXII independently commands both who must render the decision and what each of them must first do. Section B.2.a provides that "[i]n conducting hearings and investigations the Commission shall act as a body"; that "[h]earings may be held by the Commission, or by any member thereof authorized to serve as the hearing officer"; "but the decision shall be rendered by the entire Commission after consideration of all testimony and evidence adduced at the hearing." See Rule XXII § B.2.a, St. Louis County Civil Service Rules (Nov. 2024) at 82. The hearing officer's own on-the-record framing – that the absent members "will be supplied with the transcript" and that "[t]he full Commission will make the decision, not just me" – tracks that mandate. See Hearing Tr. 16:1–7.

171. The Decision complies with neither requirement. The entire Commission did not render it: Commissioner Carter-Hicks neither signed nor joined it. And it was joined by Commissioner Akram, who attended no part of the hearing and who, upon information and belief, did not consider all testimony and evidence adduced at the hearing before joining in rendering the Decision – a standard more demanding than § 536.080.2's alternative of personally considering only the portions of the record cited in the parties' briefs, and one the

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Decision's own recital does not claim was met, describing the members' review as having "included a transcript of Mr. Wyatt's testimony." See Decision ¶ 18.

172. The two requirements leave no lawful account of the Decision. If Rule XXII means what it says – that the decision "shall be rendered by the entire Commission" – the Decision is invalid on its face for want of Commissioner Carter-Hicks's participation. If, instead, fewer than all members may render the decision, then Commissioner Akram's joinder was unnecessary to any quorum and unlawful unless she first considered all testimony and evidence, which upon information and belief she did not. On either reading, the Decision's recital that the Commission "unanimously" affirmed the Appointing Authority is false, and the Decision was rendered upon unlawful procedure and without a fair trial. See § 536.140.2(2), (3), (5)–(7), RSMo.

173. Where the specific law governing an agency's decision-making imposes a stricter requirement than § 536.080.2's general alternatives, the specific mandate controls. See State ex rel. Rogers v. Board of Police Commissioners, 995 S.W.2d 1 (Mo. App. E.D. 1999); Rule XXII § B.2.a – of which the Commission took official notice (Hearing Tr. 25:6–26:2) and by which it is bound, State ex rel. Praxair, 344 S.W.3d at 186 – is such a mandate: it permits decision only by the entire Commission, and only after each member's consideration of all testimony and evidence, not a subset cited in briefing.

**G. The Decision's Findings Violate § 536.090, R.S.Mo., and Preclude Meaningful Judicial Review**

174. Section 536.090, R.S.Mo., requires that every decision in a contested case be in writing and include findings of fact, stated separately from the conclusions of law, comprising a concise statement of the findings on which the agency bases its order.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

175. To satisfy § 536.090, an agency's findings must be sufficiently definite and specific under the circumstances of the particular case to enable the reviewing court to review the decision intelligently and to ascertain whether the facts afford a reasonable basis for the order without resorting to the evidence. See Phil Crowley Steel Corp. v. King, 778 S.W.2d 800 (Mo. App. 1989)(findings be "sufficiently definite and certain or specific under the circumstances of the particular case to enable the court to review the decision intelligently and ascertain if the facts afford a reasonable basis for the order without resorting to the evidence." (internal citations omitted)); Century State Bank v. State Banking Bd. of Missouri, 523 S.W.2d 856, 859 (Mo. App. 1975)(a Missouri administrative agency must make detailed, specific findings of fact on contested issues rather than relying on "bare ultimate conclusions.").

176. A mere recitation of the events giving rise to the controversy does not comply with § 536.090, and neither a summary of the testimony nor ultimate conclusions is sufficient. Iron County v. State Tax Comm'n, 480 S.W.2d 65, 69–70 (Mo. banc 1972); Phil Crowley Steel Corp., 778 S.W.2d at 800.

177. Adequate findings must reflect the agency's determination of what part of the evidence it believed and found to be true and what part it rejected, and cannot leave the reviewing court to speculate. Century State Bank, 523 S.W.2d at 859; Sturdevant v. Fisher, 940 S.W.2d 21, 24 (Mo. App. 1997).

178. The Decision does not satisfy those requirements. Its blanket recital that all evidence "contrary or inconsistent with the findings of fact, conclusions of law and decision herein is specifically found to be not credible, and not an adequate basis to reverse" (Decision

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

¶ 31) identifies no witness, no testimony, and no reason; sweeps in the testimony of the County's own witnesses, including Ms. Pike, Dr. Miller, Dr. Cunningham, and Mr. Broadus; and makes no express credibility determination resolving the dispositive conflict between Mr. Melton's account and Mr. Wyatt's sworn denial.

179. Conclusory and incomplete findings, and the absence of express credibility determinations, preclude meaningful judicial review, and this Court cannot infer that the Commission found facts in accordance with the result reached. Nighbert v. City of St. Louis, 658 S.W.3d 603 (Mo. App. E.D. 2022); Cummings v. Mischeaux, 960 S.W.2d 560 (Mo. App. 1998).

180. Where an agency's findings are insufficient to permit judicial review, the reviewing court is obligated to reverse and remand for adequate findings. Conlon Group, Inc. v. City of St. Louis, 944 S.W.2d 954 (Mo. App. 1997); Nighbert, 658 S.W.3d 603; § 536.140.5, R.S.Mo..

181. The Commission's decision accordingly (a) violates constitutional provisions, including the due process guarantees of U.S. Const. amend. XIV and Mo. Const. art. I, § 10; (b) exceeds the Commission's lawful authority; (c) is unsupported by competent and substantial evidence upon the whole record; (d) is unauthorized by law; (e) was made upon unlawful procedure and without a fair trial; (f) is arbitrary, capricious, and unreasonable; and (g) constitutes an abuse of discretion. See § 536.140.2, R.S.Mo..

182. Under § 536.140.5, R.S.Mo., this Court may reverse the decision and order reinstatement, or remand with directions, and may order restoration of pay and benefits lost by reason of the unlawful decision.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

WHEREFORE, Mr. Wyatt respectfully requests that this Court enter judgment in his favor on Count I and: (A) reverse and vacate the Commission's Findings of Fact, Conclusions of Law and Decision; (A-1) alternatively, remand the cause to the Commission pursuant to § 536.140.5, R.S.Mo., with directions that any decision on Mr. Wyatt's appeal be rendered only by commissioners who heard all the evidence, read the full record, or personally considered the portions of the record cited in the parties' submissions, as § 536.080.2, R.S.Mo. requires, accord no evidentiary or persuasive weight to witness accounts that Respondents' withholding of records prevented Mr. Wyatt from testing, and draw no inference favorable to Respondents from records they failed to produce; (B) declare that Mr. Wyatt did not validly resign from County employment and that the County was required to follow merit-employee termination procedures; (C) order Mr. Wyatt reinstated to his position or an equivalent merit position; (D) order restoration of back pay with interest, benefits, seniority, leave accrual, retirement credit, and all other employment rights; (E) order expungement of any "not in good standing" designation and any related misconduct or "mental health" notation from Mr. Wyatt's personnel records; (F) award costs; and (G) grant such further relief as the Court deems just and proper.

## COUNT II

## ULTRA VIRES ACTION AND FAILURE TO FOLLOW MANDATORY MERIT EMPLOYEE PROCEDURES (Declaratory and Injunctive Relief — All Defendants)

183. Mr. Wyatt incorporates the preceding paragraphs as though fully set forth herein. This Count is pleaded in the alternative to, and in support of, Count I.

184. Mr. Wyatt's employment was governed by the St. Louis County Charter, the Revised Ordinances of St. Louis County, and the Civil Service Rules, which establish

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

mandatory – not advisory – procedures governing the discipline, removal, resignation, and appeal rights of merit employees, and which bind appointing authorities and the Commission alike. See Hearing Tr. 25:6–26:2.

185. Government officials act ultra vires when they exercise powers not granted by law or fail to comply with mandatory legal requirements governing the exercise of their authority. State ex rel. Praxair, 344 S.W.3d at 186.

186. The Civil Service Rules authorize appointing authorities to accept voluntary resignations. They do not authorize an appointing authority to declare a resignation where the employee denies resigning, to avoid mandatory removal procedures by characterizing a disputed separation as a resignation, or to deprive a merit employee of employment without first determining whether a resignation actually occurred. Nor do they authorize the Commission to affirm action exceeding the appointing authority's legal authority or to waive mandatory procedural protections established for merit employees.

187. By accepting an alleged resignation that Mr. Wyatt immediately disputed – without written confirmation, investigation, or compliance with mandatory removal procedures (Hearing Tr. 44:14-16; 89:10–23; 98:5-10; 102:22–103:3) – Defendants exceeded the authority granted by the Charter and Civil Service Rules, and their actions are ultra vires and void. To hold otherwise would permit every appointing authority to circumvent the merit system simply by alleging an oral resignation, effectively repealing the Charter's merit protections without legislative action.

188. An actual controversy exists concerning whether Mr. Wyatt resigned, whether Defendants possessed authority to accept a disputed oral resignation, whether Defendants

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

were required to utilize mandatory removal procedures, and whether the Commission exceeded its authority in affirming the action. The Commission has entered its final decision, and a judicial declaration will terminate the controversy.

WHEREFORE, Mr. Wyatt respectfully requests that this Court: (A) declare that Defendants acted outside the authority granted by the St. Louis County Charter, ordinances, and Civil Service Rules; (B) declare the purported acceptance of the alleged resignation ultra vires, unlawful, and void; (C) declare that mandatory merit-employee removal procedures could not be avoided by characterizing Mr. Wyatt's disputed separation as a resignation; (D) vacate the Commission's order; (E) order Mr. Wyatt restored to his merit position with all rights, benefits, seniority, retirement credit, and compensation; (F) permanently enjoin Defendants from enforcing or relying upon the purported resignation or the Commission's order; and (G) award such other relief as is just and proper.

## COUNT III

### 42 U.S.C. § 1983 — DEPRIVATION OF PROPERTY INTEREST WITHOUT PROCEDURAL DUE PROCESS (Fourteenth Amendment — Against Defendants Cunningham and Melton in Their Individual Capacities, and Against St. Louis County)

189. Mr. Wyatt incorporates the preceding paragraphs as though fully set forth herein.

190. At all relevant times, Defendants Cunningham and Melton acted under color of state law in their respective capacities as Director/Appointing Authority of DPH and Chief Executive Officer of the Community Health Centers.

191. As a permanent merit employee, Mr. Wyatt possessed a constitutionally protected property interest in continued employment under the St. Louis County Charter,

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

ordinances, and Civil Service Rules. Loudermill, 470 U.S. at 538–41; Roth, 408 U.S. at 576–78; Winegar v. Des Moines Indep. Cmty. Sch. Dist., 20 F.3d 895, 899 (8th Cir. 1994).

192. Due process required, before the deprivation became effective, oral or written notice of the basis for the separation, an explanation of the employer's evidence, and an opportunity for Mr. Wyatt to present his side of the story. Loudermill, 470 U.S. at 542–46. The pre-termination hearing need not be elaborate, but it must occur before the decision is made effective; it is the "initial check against mistaken decisions." Id. at 545–46.

193. A purported resignation does not extinguish these protections unless it was in fact voluntary; where, as here, the employee disputes that any resignation occurred at all, the separation is an involuntary deprivation requiring due process. Angarita, 981 F.2d at 1544.

194. Defendant Cunningham personally deprived Mr. Wyatt of his property interest without due process by: (a) accepting an alleged resignation indirectly, through Mr. Melton, without ever speaking to Mr. Wyatt (Hearing Tr. 89:10–23; 90:13–18; 95:22–24); (b) refusing as a matter of personal practice to communicate with "the person that's being terminated" (Hearing Tr. 98:5–10); (c) directing her assistant to announce the accomplished "acceptance," collect Mr. Wyatt's badge, laptop, and phone, and have security stand by (Hearing Tr. 84:4–10; 91:11–25; 102:5–11); and (d) refusing to investigate or revisit the decision after Mr. Wyatt's immediate oral denial and repeated written denials (Hearing Tr. 102:14–103:3).

195. Defendant Melton personally participated in and set in motion the deprivation by: (a) reporting to Dr. Cunningham that Mr. Wyatt had verbally resigned during a 58-second call that no one else heard, knowing or recklessly disregarding that Mr. Wyatt had not submitted a clear, unequivocal, and voluntary resignation (Hearing Tr. 35:13–37:19;

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

129:1–10); (b) declining to request any written resignation (Hearing Tr. 44:14–16); (c) failing to correct the record despite personally observing Mr. Wyatt continuing to work on February 5th and receiving Mr. Wyatt's work-related texts on February 6th (Hearing Tr. 44:24-25:11; 46:12–24; 47:21–48:19; 130:22–24; 141:9–142:6); and (d) documenting the alleged resignation for County counsel while no one documented, investigated, or confirmed the resignation itself (Hearing Tr. 39:16–22; 44:1–13; 52:22–53:23; 89:24–90:1).

196. At all relevant times, it was clearly established that a public employee with a protected property interest could not be deprived of that interest without constitutionally adequate notice and a meaningful pre-deprivation opportunity to respond (Loudermill, 470 U.S. at 542–46; Winegar, 20 F.3d at 899–902), and that a public official could not evade those requirements by treating a disputed, involuntary separation as a voluntary resignation (Angarita, 981 F.2d at 1544–45). A reasonable official in Defendants' positions would have understood that separating Mr. Wyatt on this record, with no process whatsoever, violated his clearly established rights, and Defendants are therefore not entitled to qualified immunity. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

197. Defendant St. Louis County is liable under § 1983 because the deprivation was inflicted by Dr. Cunningham, the County official with final policymaking authority over DPH personnel decisions, including hiring, firing, termination, discipline, and acceptance of resignations (Hearing Tr. 87:9–16), acting pursuant to the County's custom and practice – which she described and which she testified predated her – of accepting unwritten and secondhand so-called "verbal resignations not in good standing" without any process. See Hearing Tr. 88:17–22; 94:16–95:1; 98:23–99:1; Monell v. Dep't of Soc. Servs., 436 U.S. 658,

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

690–94 (1978)(municipality can be held liable if the constitutional violation results from an official "policy or custom."); Pembaur v. City of Cincinnati, 475 U.S. 469, 480–83 (1986)(affirming Monell and finding that a single, discrete decision made by an official with final policymaking authority constitutes *official policy*, making the local government fully liable for damage).

198. As a direct and proximate result, Mr. Wyatt suffered loss of employment, compensation, and benefits; loss of retirement contributions, service credit, leave accrual, and seniority; damage to his professional reputation; emotional distress, humiliation, and embarrassment; and other compensatory damages.

199. Defendants Cunningham's and Melton's conduct was intentional, reckless, or callously indifferent to Mr. Wyatt's federally protected rights, warranting compensatory and punitive damages against them in their individual capacities. Smith v. Wade, 461 U.S. 30, 56 (1983)(showing of "reckless or callous indifference" to a plaintiff's rights is sufficient to recover punitive damages). Punitive damages are not sought against the County. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981).

WHEREFORE, Mr. Wyatt respectfully requests judgment on Count III against Defendants Cunningham and Melton in their individual capacities and against St. Louis County for: (A) compensatory damages; (B) punitive damages against the individual Defendants; (C) reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988; (D) pre- and post-judgment interest; and (E) such other relief as the Court deems just and proper.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**COUNT IV**

**42 U.S.C. § 1983: DEPRIVATION OF LIBERTY INTEREST WITHOUT DUE PROCESS (Stigma-Plus / Name-Clearing Hearing — Against All Defendants; Mo. Const. art. I, §§ 2, 10)**

200. Mr. Wyatt incorporates the preceding paragraphs as though fully set forth herein.

201. In addition to his property interest, Mr. Wyatt possessed a constitutionally protected liberty interest in his good name, reputation, honor, integrity, and ability to pursue his chosen profession. Roth, 408 U.S. at 573–74 (recognized a "liberty interest" in one's reputation pursuant to Due Process Clause of the 14th Amendment).

202. When a governmental employer, in connection with discharge, makes stigmatizing charges that seriously damage the employee's standing and associations in the community or foreclose future employment opportunities, and the employee disputes those charges, due process requires notice and a meaningful opportunity to clear his name. Roth, 408 U.S. at 573; Codd v. Velger, 429 U.S. 624, 627–28 (1977); Paul v. Davis, 424 U.S. 693, 701–10 (1976); Speer v. City of Wynne, 276 F.3d 980, 984–85 (8th Cir. 2002).

203. In connection with Mr. Wyatt's separation, Defendants imposed and communicated stigmatizing charges: that he exploded in a profanity-laced tirade at his supervisor and quit on the spot (Hearing Tr. 28:12–24; 35:13–36:25); that he resigned "not in good standing"; that his "mental health" was in question, a concern Dr. Cunningham disclosed beyond the decisionmakers to Rodney Gee (Hearing Tr. 90:7–12; 100:20–101:21); and that his conduct warranted removal from the building with security standing by (Hearing Tr. 91:11–25; 132:16–20).

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

204. Those charges are false, and Mr. Wyatt has disputed them at every turn. See, e.g., Hearing Tr. 132:21–24; 144:5–12; Hearing Ex. 2a.-2.e.). They impugn his honesty, professionalism, judgment, and fitness for executive public employment, and they have been memorialized in official County records, including the Commission's written decision affirming the "not in good standing" designation.

205. The "plus" accompanying the stigma is concrete and rule-based: under Rule XIX § A.2, the circumstances of Mr. Wyatt's designated separation are "cause for an employee not to be recommended for future employment with the County" (Decision ¶ 20) – an official, tangible alteration of Mr. Wyatt's legal status and eligibility for public employment accompanying the loss of his position and the reputational injury. Paul, 424 U.S. at 708–11 (stigma coupled with alteration of a right or status recognized by law implicates a liberty interest).

206. Defendants provided no name-clearing process before imposing and publishing the designation, and the Commission proceeding was not a constitutionally adequate substitute because the County disclosed none of its evidence beforehand, withheld witness statements during the hearing, and produced the sole written witness statement – undated and unsigned – nearly a month afterward, when confrontation was impossible. See Hearing Tr. 9:14–10:15; 68:16–70:5; 165:8–168:5; Hearing Ex. 1. A name-clearing opportunity that arrives without notice of the evidence is no opportunity at all. Codd, 429 U.S. at 627–28.

207. Mr. Wyatt continues to suffer reputational injury and impairment of future employment opportunities each day the designation and associated characterizations remain in his official records; those injuries cannot be fully remedied by damages alone, and equitable

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

relief is required.

WHEREFORE, Mr. Wyatt respectfully requests judgment on Count IV and an order: (A) declaring that Defendants deprived Mr. Wyatt of a protected liberty interest without due process; (B) requiring Defendants to remove, expunge, or correct all County records stating or implying that Mr. Wyatt resigned "not in good standing," engaged in a profanity-laced quit, or presented "mental health" concerns, unless and until a constitutionally adequate name-clearing hearing is provided; (C) alternatively, requiring Defendants promptly to provide a meaningful name-clearing hearing before a neutral decisionmaker within a time certain; (D) awarding compensatory damages against the individual Defendants and the County, and punitive damages against the individual Defendants; (E) awarding attorneys' fees and costs under 42 U.S.C. § 1988; and (F) granting all further relief authorized by law.

**COUNT V**

**42 U.S.C. § 1983: CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS (Against Defendants Cunningham, Melton, and Gardner in Their Individual Capacities)**

208. Mr. Wyatt incorporates the preceding paragraphs as though fully set forth herein. This Count is pleaded in the alternative.

209. To prove a § 1983 conspiracy, a plaintiff must show: (1) that the defendants conspired to deprive him of a constitutional right; (2) at least one overt act in furtherance of the conspiracy; and (3) actual deprivation of the right. White v. McKinley, 519 F.3d 806, 814 (8th Cir. 2008).

210. Beginning on or about February 5, 2026, Defendants Cunningham, Melton, and Gardner reached a mutual understanding to treat Mr. Wyatt's disputed, involuntary separation

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

as a voluntary "resignation not in good standing" and thereby to avoid the procedural protections required before terminating a merit employee.

211. In furtherance of that agreement, Defendants committed overt acts including: (a) Mr. Melton's February 5 report to Dr. Cunningham of a verbal resignation, after the 58-second call, without any inquiry or writing (Hearing Tr. 37:9–19; 89:15–20); (b) Dr. Cunningham's direction that Mr. Melton document "very specific information" for County counsel rather than obtain or confirm any resignation (Hearing Tr. 44:1–13; 89:24–90:1); (c) Ms. Gardner's February 6 confrontation and same-day "acceptance" email announcing a decision already made (Hearing Tr. 79:4–24; 81:1–9; Hearing Ex. 2); (d) the taking of a witness statement from Ms. Pike on February 6 that was then withheld from Mr. Wyatt through and beyond the hearing (Hearing Tr. 68:16–70:5; Hearing Ex. 1); (e) the serial delay of Mr. Wyatt's Sunshine Law request past the Commission's March 17 meeting and March 30 hearing (Pl. Ex. 5 and 6; Hearing Tr. 149:25–151:4); (f) the presentation at hearing of a resignation narrative materially different from the account communicated to Mr. Wyatt at separation (Hearing Tr. 131:23–132:13; 149:8–18; compare Hearing Tr. 28:12–24); and (g) the June 5, 2026 closure of Request No. 26-3253 with the false representation that "[a]ll records have been released, and your request has been fulfilled," while records known to exist – including Mr. Melton's written statement to Dr. Cunninham – remained unproduced See ¶¶ 87.3–87.4, *supra*.

212. These acts accomplished the deprivation of Mr. Wyatt's procedural due process rights, his property interest in continued employment, and his liberty interest in his good name, as alleged in Counts III and IV.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

213. Defendants acted intentionally, willfully, and in reckless disregard of Mr. Wyatt's federally protected rights, and each is jointly and severally liable for the resulting damages.

WHEREFORE, Mr. Wyatt respectfully requests judgment on Count V against Defendants Cunningham, Melton, and Gardner, jointly and severally, for compensatory damages, punitive damages, attorneys' fees and costs under 42 U.S.C. § 1988, interest, and such other relief as the Court deems just and proper.

**COUNT VI**

**VIOLATION OF THE MISSOURI SUNSHINE LAW (§§ 610.010–610.035, R.S.Mo. Against St. Louis County, the Commission, and Defendant Gardner)**

214. Mr. Wyatt incorporates the preceding paragraphs as though fully set forth herein.

215. St. Louis County, its DPH, and the Civil Service Commission are each a "public governmental body" within the meaning of § 610.010(4), R.S.Mo., and the records described herein – including records of the alleged resignation, communications among Mr. Melton, Dr. Cunningham, Ms. Gardner and other officials, Mr. Melton's written statement and screenshots, Ms. Pike's statement, personnel records, and telephone logs – are "public records" within the meaning of § 610.010(6), R.S.Mo., unless specifically exempt.

216. The public records to which Mr. Wyatt is entitled further include: (a) the minutes of the Civil Service Commission meeting dated June 16, 2026, which the Decision itself cites (Decision ¶ 18), confirming those minutes exist; (b) the record of each Commissioner's vote on Mr. Wyatt's appeal, including whether Commissioners who did not attend the March 30, 2026 hearing cast votes; (c) the transcript of the non-privileged, *ex parte*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

closed session which included the County Counselor, Commissioners and Commission's Counsel, to the exclusion of Mr. Wyatt's counsel during the May 19, 2026 Public Hearing;[7] (d) any notice, agenda, or claimed justification under § 610.021, R.S.Mo., for closing the June 16, 2026 meeting or any portion of it, together with the recorded votes and records required by § 610.022, R.S.Mo.; (e) records reflecting what portions of the hearing record, exhibits, and post-hearing submissions were transmitted to, and reviewed by, the Commissioners who did not attend the hearing, including Commissioner Akram; and (f) the written statement Mr. Melton testified he prepared and provided to management, which has never been produced. See Hearing Tr. 52:22–53:23..

217. The June 16, 2026 minutes and vote records bear directly on whether a non-attending Commissioner joined in rendering the Decision, and therefore on the § 536.080.2 violation alleged in Count I; their continued nonproduction compounds the prejudice alleged herein.

218. Missouri's Sunshine Law is to be liberally construed in favor of openness, and exceptions strictly construed. See § 610.011, R.S.Mo.

219. On February 24, 2026, Mr. Wyatt submitted Request No. 26-3253 seeking records concerning the alleged resignation, investigative materials, witness statements, and his HR file. Ms. Gardner, the custodian of records, confirmed receipt the same day. See Petition Exhibit 5.

220. Section 610.023.3, R.S.Mo., required the County to act on the request as soon as possible and no later than the end of the third business day following receipt, and, if access

[7] Counsel for Wyatt recorded this fact in the Teams meeting chat function during the meeting for Mr. Wyatt.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

could not be granted then, to provide a detailed explanation of the cause for further delay and the place and earliest time the record would be available.

221. The County produced nothing responsive or relevant before the March 30, 2026 hearing – *34 days* after the request. And, in totality, the County produced nothing at all responsive, relevant or not repetitive, with the exception of Mr. Wyatt's calendar screenshot (Hearing Ex. 3) and an innocuous draft email from Mr. Melton – for *73 days*. Instead, it issued at least 13 serial extensions over the course of *99 days* reciting materially identical boilerplate,[8] notably twice extending the promised production date just past the Commission's March 17th meeting, then just past the March 30th evidentiary hearing, and again just past the post-hearing pleading deadline. See Hearing Tr. 149:25–151:4; Pl. Ex. 5 and 6.

222. The withheld records went to the central disputed issue – whether Mr. Wyatt resigned – and their nonproduction materially impaired Mr. Wyatt's ability to prepare for the hearing, identify witnesses, test the County's shifting account against contemporaneous writings, and confront witnesses with their prior statements, as the post-hearing surfacing of the undated, unsigned Pike statement confirms. See Hearing Ex. 1; Hearing Tr. 68:16–70:5. The February 5, 2026 calendar screenshot – the only new, relevant, responsive record ever produced, and withheld until seven weeks after the hearing – is exactly the kind of exculpatory contemporaneous record whose timely production would have permitted Mr. Wyatt to

[8] The 13 extensions were one of three repeated and generic messages, for example: (1) "The Department of Public Health is working diligently to respond to your request. Additional time is required to complete the search for responsive records and, if any exist, to review them for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all responsive records, or to inform you that no such records exist, no later than March 20, 2026"; (2) "The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than April 23, 2026" and (3) "Please know that the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than June 5, 2026.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

confront Mr. Melton and Ms. Pike with proof that the 8:00 a.m. meeting appeared on the very calendar they testified they had checked. See ¶ 54, *supra*; Hearing Tr. 57:9–58:9; 63:14–23.

223. Defendants knew Mr. Wyatt was challenging the alleged resignation, knew he had requested the records, and knew the records were material to the pending proceeding; their failure to timely produce was knowing and, given the timing of the serial delays relative to the hearing dates, purposeful within the meaning of § 610.027.3 - .4, R.S.Mo. Laut v. City of Arnold, 491 S.W.3d 191, 196–98 (Mo. banc 2016)(defining knowing and purposeful violations).

224. The County's June 5, 2026 closure of Request No. 26-3253 with the representation that "[a]ll records have been released, and your request has been fulfilled" – while records known to exist remained unproduced, including the written statement Mr. Melton testified under oath that he prepared (Hearing Tr. 52:22–53:23) – was false when made and is itself evidence of a knowing and purposeful violation. Laut, 491 S.W.3d at 196–98. The County's redaction of Mr. Wyatt's own correspondence without identifying any exemption authorized by § 610.021, R.S.Mo., further violated the Sunshine Law's requirement that exceptions be strictly construed and closures justified. See Pl. Ex. 5; §§ 610.011, 610.023-.024, R.S.Mo.

225. The substantive record produced over 99 days consisted almost entirely of non-responsive documents and of Mr. Wyatt's own materials returned to him in original or redacted form; the only new, relevant, responsive record was the February 5, 2026 calendar screenshot described in ¶ 6 *supra* – a record that corroborates Mr. Wyatt and undermines the County's account, and that the County withheld until seven weeks after the evidentiary

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

hearing.

WHEREFORE, Mr. Wyatt respectfully requests that the Court: (A) declare that Defendants violated Missouri's Sunshine Law; (B) order Defendants immediately to produce all non-exempt responsive records, including the non-privileged, *ex parte* May 19th closed session transcript, the June 16, 2026 Commission meeting minutes, the record of each Commissioner's vote, any § 610.021 closure justification and § 610.022 records, the records of materials transmitted to non-attending Commissioners, and Mr. Melton's written statement; (C) order preservation of all records relating to Mr. Wyatt's employment, separation, appeal, and this litigation; (D) assess civil penalties of up to $1,000 for each knowing violation and up to $5,000 for each purposeful violation pursuant to § 610.027.3–.4, R.S.Mo.; (E) award Mr. Wyatt his costs and reasonable attorneys' fees pursuant to § 610.027.3–.4, R.S.Mo.; (F) consider Defendants' violations in determining whether the Commission proceedings were conducted upon unlawful procedure under § 536.140.2(5), R.S.Mo.; and (G) grant such other relief as is just and proper.

## COUNT VII

## DECLARATORY JUDGMENT
## (Chapter 527, R.S.Mo. — In the Alternative, All Defendants)

226. Mr. Wyatt incorporates the preceding paragraphs as though fully set forth herein. This Count is pleaded in the alternative to Count I, to the extent any question presented is not fully resolved on the administrative record.

227. An actual, present, and justiciable controversy exists: Defendants contend Mr. Wyatt voluntarily resigned and forfeited his merit protections; Mr. Wyatt contends he never resigned, that no knowing and voluntary relinquishment occurred; that Mr. Wyatt did not

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

submit a written resignation nor miss work for 3 consecutive days as defined as “resignations” by Rule XIX; and that Defendants lacked authority to accept a disputed oral resignation in lieu of mandatory removal procedures.

228. Mr. Wyatt requests declarations that: (a) he did not voluntarily resign; (b) his separation was an involuntary deprivation of employment; (c) Defendants failed to comply with the mandatory procedures applicable to merit employees; (d) the purported acceptance of the resignation and the Commission's affirming order are void; (e) Defendants lacked authority to impose the "not in good standing" designation without due process, and its maintenance violates Mr. Wyatt's liberty interests; and (f) Mr. Wyatt remains entitled to the protections afforded merit employees under the Charter and Civil Service Rules.

229. A declaratory judgment will terminate the uncertainty and controversy giving rise to this action and will materially assist in determining the propriety of the injunctive relief requested herein.

WHEREFORE, Mr. Wyatt respectfully requests that the Court enter the declarations set forth above and grant such other declaratory relief as is just and proper.

**COUNT VIII**

**ALTERNATIVE PETITION FOR WRIT OF MANDAMUS**
**(Mo. Sup. Ct. R. 94 — Against Defendants Cunningham and St. Louis County)**

182. Mr. Wyatt incorporates the preceding paragraphs as though fully set forth herein. This Count is pleaded strictly in the alternative, in the event the Court concludes that any portion of the relief sought is unavailable under Chapter 536 R.S.Mo.

183. Mandamus lies where the petitioner establishes a clear, unequivocal, specific right to the relief requested, a corresponding present ministerial duty on the respondent's part, and

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

no adequate remedy at law. State ex rel. Hewitt v. Kerr, 461 S.W.3d 798, 805 (Mo. banc 2015); Furlong Cos. v. City of Kansas City, 189 S.W.3d 157, 165–66 (Mo. banc 2006).

184. The Charter and Civil Service Rules impose ministerial duties to recognize and preserve the employment status of a merit employee unless lawfully separated, to comply with the mandatory procedures governing involuntary separation, and to maintain accurate personnel records consistent with lawful personnel actions.

185. Because no lawful resignation or removal occurred, Defendants have a present ministerial duty to recognize Mr. Wyatt's continued merit status unless and until he is lawfully separated in accordance with the Charter and Civil Service Rules, and they have failed and refused to perform that duty despite Mr. Wyatt's repeated demands.

WHEREFORE, in the alternative, Mr. Wyatt respectfully requests that this Court issue its preliminary order in mandamus and, upon final hearing, its permanent writ, compelling Defendants to recognize Mr. Wyatt's continued merit status, to perform all mandatory duties under the Charter and Civil Service Rules, and to correct County records accordingly, and awarding costs and such further relief as is just and proper.

**COUNT IX**

**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**
**(Mo. Sup. Ct. R. 92; Chapter 526, R.S.Mo. – All Defendants)**

230. Mr. Wyatt incorporates the preceding paragraphs as though fully set forth herein.

231. Mr. Wyatt is substantially likely to prevail on the merits for the reasons set forth in Counts I through VIII, including the Appointing Authority's own "being terminated" testimony (Hearing Tr. 98:5–10), the absence of any writing or corroboration (Hearing Tr.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

50:14–18; 52:8–10; 148:4-9), the immediate and continuous denials (Hearing Tr. 82:17–23; Hearing Ex. 2.a.-2.e.), the continuation of County work after the alleged resignation ((Hearing Tr. 64:25–65:17; 71:10–15; 110:25–111:9; 129:11–130:19); and the complete absence of pre-deprivation process (Hearing Tr. 89:10–23; 104:4–9).

232. Mr. Wyatt is suffering irreparable harm: he has been without salary, health insurance, retirement contributions and service credit, leave accrual, and seniority since February 6, 2026; he continues to suffer reputational injury from the official "not in good standing" designation; and the ongoing deprivation of constitutionally protected property and liberty interests is itself irreparable injury. Elrod v. Burns, 427 U.S. 347, 373 (1976) (deprivation of constitutional rights "unquestionably constitutes irreparable injury").

233. Money damages cannot restore Mr. Wyatt's constitutional rights, remove the continuing stigma of the official designation, or recreate the executive experience and professional relationships lost while he remains unlawfully excluded from public service; there is no adequate remedy at law.

234. The balance of equities favors Mr. Wyatt: Defendants suffer no cognizable prejudice from complying with their own Charter, Rules, and the Constitution, and if they ultimately prevail they retain authority to take lawful personnel action; each additional day of exclusion compounds Mr. Wyatt's injury. The public interest strongly favors enforcement of the merit system and constitutional due process, and disfavors permitting governmental employers to avoid mandatory removal procedures by characterizing disputed separations as resignations.

235. The status quo ante immediately preceding Defendants' unlawful conduct was

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Mr. Wyatt's active merit employment as Chief Operating Officer; preliminary relief restoring that status preserves, rather than alters, the lawful status quo.

236. Mr. Wyatt requests that any injunction bond be waived or set at a nominal amount pursuant to Rule 92.02(d) because the injunction compels governmental compliance with existing legal obligations, Defendants face minimal risk of compensable harm, and a substantial bond would effectively deny meaningful access to equitable relief.

WHEREFORE, Mr. Wyatt respectfully requests that this Court: (A) issue a preliminary injunction restoring Mr. Wyatt to active merit employment with salary and benefits pending final judgment; (B) enjoin Defendants from treating or representing Mr. Wyatt as having resigned "not in good standing"; (C) order Defendants to preserve all documents, electronically stored information, emails, text messages, personnel files, telephone records, investigative materials, and communications relating to Mr. Wyatt's employment, separation, appeal, and this litigation; (D) enjoin Defendants from permanently filling Mr. Wyatt's position pending further order, or alternatively require maintenance of an equivalent executive merit position; (E) upon final judgment, enter a permanent injunction consistent with the Court's declarations; (F) waive or substantially reduce any injunction bond; and (G) grant such other equitable relief as is just and proper.

## COUNT X

### DEFAMATION (SLANDER)
### Against Defendant Melton in His Individual Capacity

237. Mr. Wyatt incorporates the preceding paragraphs as though fully set forth herein. This Count is brought against Defendant Melton solely in his individual capacity and is expressly not premised upon any testimony given in the Commission proceeding.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

238. Under Missouri law, the six elements of defamation are: (1) publication (2) of a defamatory statement (3) that identifies the plaintiff, (4) that is false, (5) that is published with the requisite degree of fault, and (6) that damages the plaintiff's reputation. Overcast v. Billings Mut. Ins. Co., 11 S.W.3d 62, 70 (Mo. banc 2000).

239. On February 5, 2026, and thereafter, Defendant Melton published to third parties – including Dr. Cunningham and, through her and Ms. Gardner, other County personnel – false statements of fact: that Mr. Wyatt had erupted at him in a heated, profanity-laced tirade; that Mr. Wyatt declared, at least twice, that he "fucking quit"; that Mr. Wyatt pounded his steering wheel and screamed erratically; and that Mr. Wyatt had resigned his employment. See Hearing Tr. 35:13–36:25; 37:9–19; 89:15–90:12.

240. Those statements were false in their material particulars – in their sting. Mr. Wyatt never said "quit," never resigned, and never directed a tirade at Mr. Melton, as he has sworn. See Hearing Tr. 134:2–7; 155:2–7 ("'Heated' would be defined as, for me, pounding on my steering wheel, saying F you and F this job, I quit. That's heated. That never occurred."); 157:4–13; 159:1–2. At most, Mr. Wyatt briefly expressed frustration at Mr. Melton's repeated calls and texts during a scheduled meeting, saying "Just use the F'ing number, what the F" (Hearing Tr. 126:3–14; 128:9–16) – frustration for which he sought that same day to apologize once he learned Mr. Melton had been unable to see the meeting on his calendar (Hearing Tr. 65:7–17; 70:15–71:9; 130:1–10).[9] Even Mr. Melton's own account concedes that no epithet was directed at Mr. Melton and that the "screaming" he described was "not any words to me." See Hearing Tr. 35:13-36:–25. Both parties to the call were mutually frustrated.

[9] Again, Ms. Pike's representation that Mr. Melton could not see the meeting was false, as demonstrated by the County's post-hearing, sole responsive, relevant and non-repetitive document produced pursuant to Mr. Wyatt's public records request.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

See Hearing Tr. 133:12-14. And by Mr. Wyatt's testimony, the call ended with Mr. Melton saying "Well, just go home. Just go home" – not with any resignation or acceptance. See Hearing Tr. 133:5–11. The account of an explosive, screaming, steering-wheel-pounding resignation is further refuted by the call's 58-second duration (Hearing Tr. 129:1–12; Hearing Ex. 3); Mr. Wyatt's calm arrival at the office within twenty minutes; the calm two-minute office conversation in which, by Mr. Melton's own testimony, no curse words were exchanged (Hearing Tr. 43:5–12); Mr. Wyatt's continued work in Mr. Melton's presence (Hearing Tr. 43.01-12; 46.15-24); and Mr. Melton's failure to react to Mr. Wyatt's continued work and work-related texts. (Hearing Tr. 45:9–11; 46:12–24; 47:21–48:19).

241. Defendant Melton made the statements knowing they were false or with reckless disregard for their truth. Any qualified privilege attaching to intra-employer communications was abused and thereby lost through such actual malice. Rice v. Hodapp, 919 S.W.2d 240, 244 (Mo. banc 1996)(qualified privilege defeated by proof of actual malice).

242. The statements imputed conduct incompatible with Mr. Wyatt's profession and directly and proximately caused injury to his reputation, humiliation and emotional distress, loss of professional standing, and economic damages including lost wages, lost earning capacity, and lost employment opportunities.

243. Defendant Melton's conduct was intentional, malicious, and undertaken with conscious disregard for Mr. Wyatt's rights, warranting punitive damages.

WHEREFORE, Mr. Wyatt respectfully requests judgment on Count X against Defendant Melton, individually, for compensatory and special damages, punitive damages, interest, costs, and such other relief as the Court deems just and proper.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff/Petitioner Duane "Pete" Wyatt respectfully requests that this Court enter judgment in his favor and against Defendants/Respondents and grant the following relief:

A. Reverse and vacate the Commission's Findings of Fact, Conclusions of Law and Decision pursuant to § 536.140, R.S.Mo., and declare that decision unlawful, unsupported by competent and substantial evidence upon the whole record, made upon unlawful procedure and without a fair trial, arbitrary, capricious, unreasonable, and an abuse of discretion, or alternatively remand with directions pursuant to §§ 536.080.2 and 536.140.5, R.S.Mo.;

B. Declare that Mr. Wyatt never voluntarily resigned; that Defendants lacked authority to characterize his disputed separation as a resignation; that the purported acceptance is ultra vires and void; and that Mr. Wyatt retained all rights afforded merit employees;

C. Declare that Defendants deprived Mr. Wyatt of constitutionally protected property and liberty interests without due process of law in violation of the Fourteenth Amendment and Mo. Const. art. I, §§ 2 and 10;

D. Order Defendants immediately to reinstate Mr. Wyatt to his former position or an equivalent merit position, with restoration of uninterrupted employment status, salary, benefits, retirement participation and service credit, accrued leave, seniority, longevity credit, title, and office space, together with back pay and interest;

E. Order Defendants to remove, expunge, or correct every County record stating or implying that Mr. Wyatt resigned "not in good standing," voluntarily resigned, engaged in misconduct, or presented "mental health" concerns, or alternatively order a constitutionally

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

adequate name-clearing hearing before a neutral decisionmaker within a time certain;

F. Issue preliminary and permanent injunctive relief as requested in Count IX, including evidence-preservation orders;

G. Declare that Defendants violated Missouri's Sunshine Law; order production of all non-exempt responsive records; and award civil penalties, costs, and attorneys' fees pursuant to § 610.027, R.S.Mo.;

H. Award compensatory damages against St. Louis County and the individual Defendants, and punitive damages against Defendants Cunningham and Melton in their individual capacities, on Counts III, IV, V, and X;

I. Award reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and § 610.027, R.S.Mo., taxable costs, and pre- and post-judgment interest; and

J. Retain jurisdiction to enforce the judgment and all injunctive orders, grant leave to amend if justice so requires, and grant such other and further legal or equitable relief as the Court deems just and proper.

Respectfully submitted,

Katherine C. Frierdich
MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
Counsel for Plaintiff/Petitioner

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

# VERIFICATION

STATE OF ~~MISSOURI~~ Texas )
)
) ss
).
COUNTY OF ~~ST. LOUIS~~ Dallas )

I, Duane "Pete" Wyatt, being first duly sworn upon my oath, state that I am the Plaintiff/Petitioner in this action; that I have read the foregoing Petition; and that the factual allegations contained therein are true and correct to the best of my knowledge, information, and belief.

Duane Pete Wyatt
Duane "Pete" Wyatt 07/15/2026

Subscribed and sworn to before me this 15th day of July, 2026.

NOTARY PUBLIC
STATE OF TEXAS
Eleas Habib Mithu
ID NUMBER
135524120
COMMISSION EXPIRES
August 12, 2029

Eleas Habib Mithu
Notary Public

My Commission Expires: 08/12/2029

Electronically signed and notarized online using the Proof platform.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

HRT

HARTFORD

REPORTING & TECHNOLOGY

Administrative Hearing

3/30/2026

In the Matter of Duane "Pete" Wyatt, Appellant

**Hartford Reporting & Technology**

**7733 Forsyth Boulevard, Suite 1100**

**St. Louis, Missouri 63105**

**(855) 443-3767**

**www.hartfordreporting.com**

Plaintiff's Exhibit
#01

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 952 of 1127 PageID #: 955



Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM



ST. LOUIS COUNTY GOVERNMENT
CIVIL SERVICE COMMISSION
MONDAY, MARCH 30, 2026 AT 12:00 P.M.

In Re:

HEARINGS, APPEALS, GRIEVANCES
In the Matter of Duane “Pete” Wyatt (Appellant);
Dr. Kanika Cunningham (Respondent)
TRANSCRIPT OF PROCEEDINGS
taken via WebEx
March 30, 2026

Taken before Juliana F. Zajicek, Registered Professional Reporter, Certified Shorthand Reporter and Certified Realtime Reporter, and Notary Public.



A P P E A R A N C E S:

CIVIL SERVICE COMMISSION COMMISSIONERS (via WebEx):
Commissioner Satonya Booker
Commissioner Nadine V. Nunn, Esq.
Commissioner Chantal Hoffsten

FOR ST. LOUIS COUNTY (via WebEx):
Mr. Noah Goldkamp, Esq.

FOR APPELLANT DUANE “PETE” WYATT (via WebEx):
Ms. Katherine Frierdich, Esq.

FOR RESPONDENT DR. KANIKA CUNNINGHAM (via WebEx):
Ms. Katherine R. Kaufman, Esq.

ALSO PRESENT (via WebEx):
Duane “Pete” Wyatt, Appellant;
Ms. Jairris Goen, Manager of Employment,
St. Louis County



I N D E X


| | |
|---|---|
| OPENING STATEMENT - RESPONDENT | 28 |
| OPENING STATEMENT - APPELLANT | 106 |
| CLOSING STATEMENT - APPELLANT | 159 |
| CLOSING STATEMENT - RESPONDENT | 161 |


E X A M I N A T I O N


| WITNESS: | PAGE: |
|---|---|
| DERRICK MELTON | |
| DX BY MS. KAUFMAN.................... | 30 |
| CX BY MS. FRIERDICH.................. | 40 |
| RDX BY MS. KAUFMAN................... | 55 |
| RCX BY MS. FRIERDICH................. | 57 |
| EUGENIA PIKE | |
| DX BY MS. KAUFMAN.................... | 61 |
| CX BY MS. FRIERDICH.................. | 67 |
| RDX BY MS. KAUFMAN................... | 74 |
| SHARON GARDNER | |
| DX BY MS. KAUFMAN:................... | 77 |
| CX BY MS. FRIERDICH.................. | 81 |




E X A M I N A T I O N


| WITNESS: | PAGE: |
|---|---|
| DR. KANIKA CUNNINGHAM | |
| DX BY MS. KAUFMAN.................... | 85 |
| CX BY MS. FRIERDICH.................. | 93 |
| RDX BY MS. KAUFMAN................... | 105 |
| DR. PATRICK MILLER | |
| DX BY MS. FRIERDICH.................. | 109 |
| CX BY MS. KAUFMAN.................... | 116 |
| DAMON BROADUS | |
| DX BY MS. FRIERDICH.................. | 118 |
| DUANE "PETE" CARLTON WYATT | |
| DX BY MS. FRIERDICH.................. | 122 |
| CX BY MS. KAUFMAN.................... | 152 |
| RDX BY MS. FRIERDICH................. | 156 |

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 5

MR. LIVASY: Why don't we go ahead and call the meeting to order. Chairwoman Nunn, are you willing to do that for us?

COMMISSIONER NUNN: Yes, we would now call this special hearing for March the 30th, and you will be in the hands of Matt Livasy to do a roll call vote.

MR. LIVASY: All right. Thank you.

Chairwoman Nunn?

COMMISSIONER NUNN: Present.

MR. LIVASY: Commissioner Hoffsten?

COMMISSIONER HOFFSTEN: Present.

MR. LIVASY: Commissioner Booker?

COMMISSIONER BOOKER: Present.

COMMISSIONER NUNN: Okay.

MR. LIVASY: And Commissioner Akram and Commissioner Carter-Hicks are not present.

All right. So, Juliana, I think since the meeting is officially kicked off, you're welcome to go ahead and start putting us on the record.

I'm moving to Section 2, Hearings, Appeals, Grievances, and Item 2.1 is Resignation Appeal from Pete Wyatt and the Department of Public Health.

We do have a closed session on the agenda, so we will exercise that likely for this, if that's

Page 6

what the Commission and the parties choose to do.

We need to appoint a hearing officer, so that will be up to the Commission. Who would like to take on that role today?

COMMISSIONER NUNN: Did you say Commissioner Booker is on the line?

MR. LIVASY: Yes.

COMMISSIONER NUNN: And you sent out all of the materials for the hearing procedure and everything to Commissioner Booker?

COMMISSIONER BOOKER: Yes, I have the procedure documents.

COMMISSIONER NUNN: Okay. All right. Then I would say that Commissioner Booker should be the hearing officer for this particular meeting.

COMMISSIONER BOOKER: Okay. I'm going to need some help.

COMMISSIONER NUNN: Okay. No problem.

MR. LIVASY: Commissioner Booker, you have the --

COMMISSIONER BOOKER: Administrative hearing procedure guidance, yes, I do.

MR. LIVASY: And we'll be following the first column on the far left.

COMMISSIONER BOOKER: Okay. An employee with an

Page 7

attorney?

MR. LIVASY: Yes.

COMMISSIONER BOOKER: Okay.

MR. LIVASY: Correct.

COMMISSIONER BOOKER: Okay. So I just --

MR. GOLDKAMP: I'm sorry, I couldn't get to my unmute button. My mouse pad wasn't working.

But can we have a motion to appoint Commissioner Booker as the hearing officer?

COMMISSIONER HOFFSTEN: I'll make that motion.

COMMISSIONER NUNN: Second.

All of those in favor?

COMMISSIONER HOFFSTEN: Aye.

COMMISSIONER BOOKER: Aye.

COMMISSIONER NUNN: Aye.

MR. GOLDKAMP: And then I believe there has been a request from the employee for the hearing to be in a closed session, so I think that's appropriate to take up before -- before anything -- before anything else.

COMMISSIONER NUNN: So I move that we go into closed session by roll call vote.

COMMISSIONER HOFFSTEN: I'll second that.

MR. LIVASY: Chairwoman Nunn?

COMMISSIONER NUNN: Aye.

MR. LIVASY: Commissioner Hoffsten?

Page 8

COMMISSIONER HOFFSTEN: Aye.

MR. LIVASY: Booker?

COMMISSIONER BOOKER: Aye.

MS. GOEN: And then, Noah, at this point is there anybody else I need to promote to bring into closed session with us?

MR. GOLDKAMP: So at this point, it would be appropriate for the employee, the employee's attorney, and Dr. Cunningham to all be moved over to the closed session.

MS. PIKE: And me, please.

MR. GOLDKAMP: Well, I think you're already a panelist, Gina.

MS. PIKE: Okay.

MS. GOEN: Yeah, sorry. We moved panelists -- okay, so I have promoted those three individuals to panelist -- excuse me -- so we should be ready to go ahead and move into closed session.

IT TECH: Hello, everyone. It's Shawn with IT again. I'm getting ready to start your closed session. I just wanted to verify before I hit it, everybody that's currently a panelist will be moving into closed session, correct?

MS. GOEN: Correct, thank you.

IT TECH: All right. I'll go ahead and start

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM


it. If you get a popup, please hit "yes" or "no."

(WHEREUPON, the following proceedings were had in closed session, as follows:)

MR. LIVASY: Let's give a moment to allow all of the others who needed to join to join us.

MS. FRIERDICH: So you are going to be looking for Pete, as I don't see him?

MR. LIVASY: Katherine, you are muted.

MS. KAUFMAN: Thank you. I just wanted to let any witnesses who may be called into the main room know where we are going and that they will be brought in from time to time.

MS. FRIERDICH: Do you have a list of said witnesses, as we have not received one?

MS. KAUFMAN: Yes. I think all of the witnesses on our list are also on yours. We are intending to call Dr. Cunningham, Mr. Melton, Ms. Pike, and Ms. Gardner.

MS. FRIERDICH: Okay. Did you submit a witness list, because I don't believe we received one, or did you submit anything else that we didn't receive?

MS. KAUFMAN: No.

MS. FRIERDICH: Okay. And what about the witnesses that we proposed, are they also in the


waiting room?

MS. KAUFMAN: They can be made available. They've all been informed of the hearing. I don't see the relevance of some of the witnesses' proposed testimony, but we can handle that as we get to it.

MS. FRIERDICH: I'm not sure that's your decision to make, but you're saying that they are available?

MS. KAUFMAN: Yes, ma'am.

MS. FRIERDICH: Thank you.

Did the County submit any documents?

MS. KAUFMAN: No, ma'am.

MS. FRIERDICH: And no other pleadings that we did not receive a copy for?

MS. KAUFMAN: No.

MS. FRIERDICH: Thank you.

So a question for the Commission since Ms. Cunningham is to be a witness, is she going to be remaining here as a party or will you be putting her into the waiting room and bringing her in as a witness?

MR. WYATT: I think I'm in now.

MS. FRIERDICH: Hi, Pete. Glad you could join us.

Is that a question for whom? I'm not


sure.

MR. GOLDKAMP: It could be my advice to the Commission that Dr. Cunningham is not only a witness, she is the appointing authority who made this decision and is, therefore, a party to the case. That would be my advice to -- to the Commission. But it is the Commission's decision.

So I think, Commissioners, that if you want to make a ruling on whether Dr. Cunningham can remain in the room as the appointing authority who made the decision, or if she is a witness and should then be sequestered like the other witnesses, I think that's the first decision we need to make here.

MR. LIVASY: And, I'm sorry, administratively, Chairwoman Nunn, can you accept the breakout session on your computer? You're still showing up on camera in open session, and we just don't want to -- to risk anything there.

COMMISSIONER NUNN: Oh. Is that fine? I did join the session.

MR. LIVASY: We've got you for Call-in User 3, but I need your computer as well to be switched over.

COMMISSIONER NUNN: Oh, okay.

MR. LIVASY: There should be a popup where there's a "join" button in the top left corner of your


WebEx.

COMMISSIONER NUNN: Okay. I see "join breakout session," and it says I'm assigned to breakout session 1.

MR. LIVASY: Okay.

COMMISSIONER NUNN: Let me do join.

MR. LIVASY: It looks like we've got you in. Thank you for taking care of that. I appreciate it.

COMMISSIONER NUNN: Okay. All right.

MR. LIVASY: Okay. And then it looks like we would need you to return to the main meeting for now that's taking place in the chat.

MS. KAUFMAN: Yes, that's addressed to Ms. Pike. I think somehow she may have accidentally traveled in with us.

MR. LIVASY: Ms. Pike, if you can hear me, I'm still seeing you showing up in attendance -- nope, you are gone.

Okay. I think we're all ready to proceed. Thank you for the interruption. Noah, you presented a question, I believe.

MR. GOLDKAMP: Yes. I think the first matter we need to take up is whether the Commission will allow Dr. Cunningham to stay in the hearing while others are testifying and these pre-motions are heard or if she

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM



should be sequestered like the other witnesses?
COMMISSIONER NUNN: Ms. Booker, you are the hearing officer. It is my suggestion that all witnesses will be sequestered until their time to testify.
COMMISSIONER HOFFSTEN: I concur.
COMMISSIONER BOOKER: I agree as well.
MS. KAUFMAN: Would that include Mr. Wyatt as well, assuming he intends to give testimony?
MS. FRIERDICH: I believe the rules require him to be present.
COMMISSIONER BOOKER: Yes. That's how it normally is. So how do we --
MR. GOLDKAMP: So we just -- if we have a motion, and then Dr. Cunningham can be placed in the waiting room.
COMMISSIONER BOOKER: So the motion shall be that Dr. Cunningham shall be treated as a witness, is that how that --
MR. GOLDKAMP: And -- and not present during pre-hearing motions and other witnesses' testimony.
COMMISSIONER BOOKER: May I say what Noah said, or should I --
COMMISSIONER NUNN: You can say "so moved."
COMMISSIONER BOOKER: So moved.



COMMISSIONER HOFFSTEN: Second.
COMMISSIONER BOOKER: All those in favor?
COMMISSIONER HOFFSTEN: Aye.
COMMISSIONER NUNN: Aye.
COMMISSIONER BOOKER: Aye.
COMMISSIONER HOFFSTEN: Do we need to do a roll call vote since we're in a closed --
MR. GOLDKAMP: We do not.
MS. GOEN: Okay. Dr. Cunningham, I have no idea if you have the option to leave. I think I have the option to put you back, but if it removes you from the meeting, just rejoin and you should end up in -- back in the open session.
Oh, okay. She did it, it looks like.
(WHEREUPON, Dr. Cunningham exited the closed session.)
MS. FRIERDICH: And just to confirm, Call-in User 3 is Commissioner Nunn?
COMMISSIONER BOOKER: Yes.
COMMISSIONER NUNN: Correct.
MS. FRIERDICH: Thank you.
COMMISSIONER BOOKER: Am I supposed to read this over here?
MR. GOLDKAMP: Yes.
COMMISSIONER BOOKER: Okay. Do I start with,



"This hearing is convened"?
MR. GOLDKAMP: Yes.
COMMISSIONER BOOKER: Okay. This hearing is convened -- let's go on record.
I am Satonya Booker, a Commissioner of the St. Louis County Civil Service Commission. I am the designated hearing officer for the appeal filed by the appellant.
It appears they are present, along with their attorney, and the Department's appointing authority is present along with a County attorney, Associate -- Associate County Counselor for the St. Louis County Government.
Before we begin, I'm going to inquire as to whether or not there has been any discussion between the attorneys concerning the settlement -- concerning a settlement?
MS. KAUFMAN: No.
COMMISSIONER BOOKER: Is there any benefit to the parties entering into any further discussion at this time?
MS. KAUFMAN: No.
COMMISSIONER BOOKER: If so, I will provide an -- okay. So there is no discussion, okay.
If not, we will begin the hearing.



I want to point out that all of the Commissioners will view the evidence in the appeal. The other Commission members will be supplied with the transcript of today's proceedings, as well as copies of any documents that are admitted into evidence. The full Commission will make the decision, not just me. I am here simply to conduct today's hearing.
Just a general statement, both parties are represented by attorneys and the rules of the Civil Service Commission provide that hearings shall be informal and shall not follow the strict Rules of Evidence and the technicalities thereupon.
I will, however, consider any objections that either one of you may have, but please remember that any rulings that are made may not necessarily conform to what either of you may be -- may be used to in a courtroom. It is May -- I'm sorry, March 30th, 2026, and it is about 12:23 p.m. We are ready to begin the proceeding.
Are there any preliminary issues to be considered at this time?
MS. FRIERDICH: I --
MR. GOLDKAMP: I believe --
MS. FRIERDICH: Yes, go ahead. I think we were headed in the same direction. Go ahead.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 17

MR. GOLDKAMP: And you can take it.
MS. FRIERDICH: Okay. So we do have a couple of motions on file. One was to request that the Commission do an investigation, subpoena witnesses, and collect documentation. We did not receive any information regarding subpoena of witnesses or witnesses, so we've already granted the closed ruling request -- closed hearing request.
Is there anything the Commission has to say in regard to that motion? We just haven't -- we didn't -- "we," meaning Mr. Wyatt, did not receive any information regarding compelled testimony or records from the Commission prior to this meeting, nor the County.
MR. GOLDKAMP: So what is on the table, Commissioners, is whether you want to compel certain witnesses to appear. From the list, it looks like the first four, the County is already calling, so it seems to be a moot point. And then there are five other names that Ms. Frierdich gave for you to consider.
COMMISSIONER BOOKER: Yes, it looks like -- okay. So it looks like for the record, we now have these -- these exhibits, so we reviewed the -- we reviewed the copies of the -- of the facts that you have -- that you have -- that you have offered to us,

Page 18

and I'm understanding that those can be admitted by stipulation. Is that correct?
MS. KAUFMAN: We would not stipulate to the veracity of those facts, Commissioner Booker. There is, I believe, conflicting factual accounts and testimony on both sides which is what brings us here today.
MS. FRIERDICH: And if what you're referring to is appellant's, that's Mr. Wyatt's proposed findings of fact, conclusions of law, and order, so. It's really a -- we presented a pre-hearing brief and proposed findings of facts and conclusions of law and an order because the latter is what the Commission will have to issue in order to help to lay it out in advance for the Commission so you're not coming in blind.
COMMISSIONER BOOKER: Okay. Okay. Well, let's -- let's call -- let's call in these witnesses then. Let's look at --
COMMISSIONER HOFFSTEN: Commissioner Booker, this is Commissioner Hoffsten. I'm just wondering if maybe we can ask the relevance of the rest of the witnesses in the motion?
COMMISSIONER BOOKER: Okay.
COMMISSIONER HOFFSTEN: Because if we -- sorry,

Page 19

I muted myself -- it might be helpful.
So in the motion that was filed by appellant's attorney, there's a list of witnesses, and I believe that there is -- while there's agreement, there's disagreement. So we can, you know, deny the motion or at least hear why they think they're relevant, if you'd like, as the hearing officer.
COMMISSIONER BOOKER: I agree, I concur.
MS. FRIERDICH: Okay. The two that were not listed by Ms. Kaufman is Mr. David Broadus, Deputy Director, Department of Public Health, and Dr. Patrick Miller, Chief Medical Officer, Community Health Centers. They both are fact witnesses who can speak to the disputed facts in this matter.
And then we offer three witnesses as rebuttal, as we have not received any information whatsoever from the County with regard to the facts; no documentation, no statement of cause, nothing. So we are, you know, trying to -- we are trying to keep it to the point and short. I don't think this has to be a very drawn-out hearing.
I think the facts are very clear, but, you know, we don't know what they're presenting so I presented three additional people as potential rebuttal witnesses, depending on what they present.

Page 20

We don't know what they're going to present.
And I would ask what the -- what the relevance of the other ones are to the County if I have to, you know, justify it, but the two -- the two witnesses that are not listed as rebuttal are fact witnesses who literally witnessed disputed facts.
COMMISSIONER NUNN: So there is no stipulation to the facts?
MS. KAUFMAN: Should we have --
COMMISSIONER NUNN: I'm sorry. Are you saying there is no stipulation as to the facts?
MS. KAUFMAN: No. There is a dispute as to the facts, ma'am.
COMMISSIONER NUNN: All right. Commissioner Booker?
COMMISSIONER BOOKER: Okay. So -- okay. So the stip- --
MS. KAUFMAN: If I may respond, we have Mr. Broadus and Dr. Miller both on standby. Dr. Miller is in the main session and doctor -- Mr. Broadus can be called by phone and requested to join.
As for the three rebuttal witnesses, I understand they are on the list, one of them was on bereavement leave during the time period at issue, and

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 21

the other two did not directly witness any interactions between any of the parties or any of the other witnesses. So I doubt they will be necessary as rebuttal.

MS. FRIERDICH: That's testifying on their behalf, so I would object to that.

Ms. Cunningham was also on leave, that's my understanding, so if that's the -- if that's the test. Look, we may not need the rebuttal witnesses. We can cross that bridge when we come to it. I just -- I don't think we should be putting words in witnesses' mouths.

COMMISSIONER BOOKER: So the relevance of the -- okay. So let's see. So you're interested in bringing -- so we start with -- can we choose which witnesses to bring forth first?

MR. GOLDKAMP: What you would do is call the County to present their witnesses, and then it is the same for the claimant, is you would call the claimant to put on their testimony and then they can use whatever order they would like.

COMMISSIONER BOOKER: So it's the County first and then the -- okay.

MR. GOLDKAMP: Correct.

COMMISSIONER BOOKER: Okay. Okay. Well, the --

Page 22

okay. So can the County proceed?

MS. KAUFMAN: Yes, Commissioner.

MS. FRIERDICH: Can we just back up and get a ruling on acceptance of our pre-hearing brief and proposed findings of fact, conclusions of law, and order, that they will be accepted by the Commission?

COMMISSIONER BOOKER: I'm sorry, Noah and Katherine were talking at the same time.

MS. FRIERDICH: I apologize. So I think there are a couple of things still outstanding. We also ask that the Commission investigate this matter and collect relevant non-privileged records. Did the Commission do that, and is there anything to offer to Mr. Wyatt at this point? As I mentioned, we have received nothing from the County.

COMMISSIONER BOOKER: So they do not have the same things we have?

MS. KAUFMAN: So if Ms. Frierdich is referring to a proposed findings of fact and conclusions of law, it's generally our practice to submit that after the hearing so that we can cite to portions of the trial transcript that represent the facts that were brought out at the hearing.

MS. FRIERDICH: That's not what I was referring to. Thank you, though. I was referring to the motion

Page 23

for compelled testimony and records, full investigation, enclosed Rule 22 hearing.

We requested that the Commission investigate and collect all non-privileged relevant records and supply them to Mr. Wyatt in fairness. We did not receive anything from the County or the Commission. I'm just wondering did the Commission investigate and collect any records such that they should be presented to Mr. Wyatt in response for our motion?

COMMISSIONER BOOKER: Okay. So what is my -- what do I do here?

MR. GOLDKAMP: So the County -- the Commission did not. So it isn't really my place to say that, but that is the -- the answer.

MS. FRIERDICH: Okay. And then we did file a pre-hearing brief and proposed findings of fact and conclusions of law. We'd ask that those be accepted by the Commission at this point.

I understand Ms. Kaufman, you know, may intend to file something of the same nature after the fact. We would reserve the right to file an amended, but we filed proposed at this point.

And to clarify, it's not adversarial to do that. It's really, Mr. Wyatt wanted to, you know,

Page 24

really help to educate the Commission on what the issues are prior to the Commissioners coming in cold, essentially, on this matter, so. They are only proposed findings of fact and conclusions of law in a pre-hearing brief from Mr. Wyatt.

COMMISSIONER NUNN: Commissioner Booker, we can have everyone to submit findings of fact and conclusions of law at the end of the hearing, and that is my suggestion that we would do so at this time.

COMMISSIONER BOOKER: I concur. So moved.

COMMISSIONER NUNN: Thank you.

MS. FRIERDICH: So will the Commission accept our pre-hearing brief, which is separate?

COMMISSIONER BOOKER: I submit that we will -- we will accept -- accept your pre-hearing brief.

COMMISSIONER NUNN: After hearing or at this time, is what you are asking?

COMMISSIONER BOOKER: After the hearing.

COMMISSIONER NUNN: Okay.

MS. FRIERDICH: It's my understanding, Mr. Goldkamp, that the documents that we filed have been distributed to the commissioners?

COMMISSIONER BOOKER: Yes.

MS. FRIERDICH: Okay.

COMMISSIONER BOOKER: Yes, we have all of that,

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 958 of 1127 PageID #: 961



Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM



all of those materials.

MS. FRIERDICH: I'm just trying to catch up here. Thank you.

COMMISSIONER BOOKER: Okay. So then the County, call their witnesses.

MS. KAUFMAN: Yes. Before we proceed, we would like to take judicial notice of a couple of the ordinances and the charter provision that gives us authority to do what we're doing today. That would be judicial notice of St. Louis County Charter Article VII, Section 7.020; St. Louis County Ordinance 15,154; St. Louis County Revised Ordinances Section 202.100; and I believe the three civil service rules that have been mentioned in anybody's pleadings thus far are Rule 19, Rule 21, and Rule 22.

MS. FRIERDICH: I would add to that Rule 20. Otherwise, I have no objection.

MR. GOLDKAMP: Can we have a motion to take judicial notice of those ordinances and rules of the County?

COMMISSIONER BOOKER: I will make that motion.

COMMISSIONER HOFFSTEN: I'll second.

COMMISSIONER NUNN: Second.

COMMISSIONER HOFFSTEN: All those in favor?

COMMISSIONER BOOKER: Aye.



COMMISSIONER NUNN: Aye.

COMMISSIONER HOFFSTEN: Aye.

All of the preliminary issues have been resolved, so -- and that is what is on the record for all of the motions and all of the exhibits and findings of fact.

So, Commissioner Booker, are we --

COMMISSIONER BOOKER: Yes.

COMMISSIONER NUNN: -- as we're accepting all of those, and as they're resolving, may we have the County call its first witness?

MS. FRIERDICH: May I ask, is there a portion of this hearing at which there are either opening or closing argument opportunities, or do we need to request those?

COMMISSIONER BOOKER: I see nothing in here that -- I don't see anything that -- that calls for that. I don't see anything that calls for that. But it doesn't -- there's nothing that prohibits it -- prohibits it either.

MR. GOLDKAMP: No, there's nothing that prohibits it. Is that an official request, Ms. Frierdich, for the Commission to consider?

MS. FRIERDICH: Yes. Thank you.

COMMISSIONER BOOKER: Do you all see a problem



with that, Commissioners?

COMMISSIONER HOFFSTEN: I don't see a problem with it as long as we keep the hearing moving along.

COMMISSIONER BOOKER: One minute -- do they a minute or how long?

COMMISSIONER NUNN: Yeah, if -- do you have a chance to share the screen, is that my understanding?

COMMISSIONER BOOKER: No. She wants to have an opening statement and a closing statement?

COMMISSIONER NUNN: Okay. I misunderstood. That's fine.

COMMISSIONER BOOKER: With a limit of how long? What is reasonable?

MS. FRIERDICH: I need five minutes.

COMMISSIONER BOOKER: Three minutes?

MS. FRIERDICH: Five. It might be three. I do talk fast, so.

COMMISSIONER BOOKER: I think three is reasonable. I am working.

COMMISSIONER HOFFSTEN: Yeah, I think that three is reasonable.

COMMISSIONER BOOKER: I move to allow them to have -- they each have three-minute opening statements and closing statements?

COMMISSIONER NUNN: Second.



COMMISSIONER BOOKER: All of those in favor?

COMMISSIONER HOFFSTEN: Aye.

COMMISSIONER NUNN: Aye.

COMMISSIONER BOOKER: Okay. Would the County like to have an opening statement?

MS. KAUFMAN: Sure.

COMMISSIONER BOOKER: Okay.

MS. KAUFMAN: Thank you.

OPENING STATEMENT ON BEHALF OF THE RESPONDENT

MS. KAUFMAN: Good afternoon, Commissioners, and it is indeed now afternoon. Thank you for your time. Today you will hear that on February 5th, 2026, Duane Pete Wyatt resigned. You'll hear how much that shocked his supervisor, Derrick Melton, and that it was all the more striking because of just how Mr. Wyatt resigned. At the end of a minute-long phone call in which he repeatedly cursed Mr. Melton, he said, and I quote, "I fucking quit," and he said it more than once. And then he hung up the phone. But Mr. Melton had heard enough to conclude that Mr. Wyatt meant precisely what he said.

You'll hear how he called Dr. Cunningham, his appointing authority, and told her what happened right then and there the minute Mr. Wyatt got off the phone. And after that conversation, Dr. Cunningham

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM


had also heard enough to reasonably believe Mr. Wyatt had resigned.

And while our civil service rules provide that a resignation in good standing must be in writing and requires 14 days' notice, Mr. Wyatt is not the first DPH employee to make a verbal resignation. In this instance, Dr. Cunningham accepted.

What you will not hear is that Mr. Wyatt ever attempted to rescind that resignation from the moment it occurred until the moment Dr. Cunningham's executive assistant communicated her acceptance. Mr. Wyatt will tell you that he never said it at all. But at the close of this hearing, I anticipate you too will have heard enough to draw your conclusion regarding the propriety of Mr. Wyatt's resignation under our civil service rules.

That's all I've got to start with.

COMMISSIONER BOOKER: Call your first witness.

MS. KAUFMAN: Yes, thank you. We'd like to call Derrick Melton.

MS. GOEN: Give me just a little bit of time to coordinate.

MS. KAUFMAN: Okay. Thank you.

(WHEREUPON, Derrick Melton entered the proceedings.)


MS. GOEN: Okay. I believe he has arrived.

COMMISSIONER BOOKER: Okay. Would you like to begin?

MS. KAUFMAN: Yes. Can you hear us, Derrick?

MR. MELTON: Yes. I'll start my video.

MS. KAUFMAN: Yeah, I don't think we can see you yet.

MR. MELTON: Okay. I'll --

MS. KAUFMAN: Oh, yeah.

DERRICK MELTON,

called as a witness herein, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. Derrick, could you state your full name for the record?**

A. Yes. Derrick Melton.

**Q. And for our court reporter's benefit, could you spell that out?**

A. Yes. D-e-r-r-i-c-k for Derrick, Melton, M-e-l-t-o-n.

**Q. Okay. And, Derrick, what is your position with the County?**

A. Chief executive officer.

**Q. And what branch of DPH is that position**


**associated with?**

A. The clinical umbrella. I manage the Federally Qualified Health Center.

**Q. To whom do you report?**

A. Dr. Cunningham.

**Q. Okay. And as of February 5th, 2026, did you have any direct reports to you?**

A. Yes.

**Q. Who were they?**

A. Five people. Sharon Foote, Eugenia Pike, Dr. Patrick Miller, Michael Ladevich, and Pete Wyatt.

**Q. And what was Mr. Wyatt's position?**

A. Chief operating officer.

**Q. Could you tell the Commission a little bit about the job duties associated with that position?**

A. Sure. He -- Mr. Wyatt managed all of the operations. The majority included our financial grants. A lot of times he would also focus on the nonclinical care as well as the clinical piece as well.

And what I mean by that is indirectly, he supervises the nurses, the registration staff members, and a few more other members on our team as well. So he was over the entire clinical operational enterprise, in summary.


**Q. And as of February 5th, were you generally satisfied with his performance?**

A. Absolutely.

**Q. Okay. Were you having any -- any difficulties whatsoever with the position?**

A. No.

**Q. What were the steps, if any, you took with Mr. Melton -- sorry, Mr. Wyatt to check in about his job performance?**

A. We would often have meetings, standing meetings, at least once a week, standing meetings for sure. Sometimes we would meet, you know, quite more frequently than that, but we definitely had standing meetings once a week.

Mr. Wyatt, from my understanding, he come from a background of not-for-profit care. He didn't have a lot of experience in FQHC clinical work, so we spent a lot of time prioritizing his daily task and obviously his weekly task to get him caught up to speed for the FQHC Look-Alike program.

**Q. Okay. And were you pursuing -- as of February 5th, were you pursuing any discipline against Mr. Wyatt?**

A. No.

**Q. Were you pursuing Mr. Wyatt's termination?**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM



A. No.
**Q. Were you investigating any alleged conduct of Mr. Wyatt's?**
A. No, not that I can remember, no.
**Q. Okay. So in the course of this workplace relationship, have the two of you had some disagreements?**
A. Yeah, we've had a few disagreements.
**Q. Okay. In any of these disagreements, has Mr. Wyatt ever cursed at you?**
A. No.
**Q. So I'm going to take you to February 5th.**
A. Um-hum.
**Q. Can you tell me about your interactions with Mr. Wyatt, if you had any, on that day?**
A. Yes. So I called Mr. Wyatt roughly around four times on his cell phone to get some information from him. I also texted him a few times. And it's my understanding he was busy or he was preoccupied with something else.
And he finally called me back, and I asked him, did he get my phone calls, did he get my text messages; and he said yes. The information that I needed from him at that time was related to how many positions reported to him. That was the question at



hand. And he responded something back to the nature of a number that he thought, and I needed him to be more accurate. And I asked him that question, and he -- that's when things essentially went south.
**Q. Okay. So how many -- you said you called Mr. Wyatt about four times.**
A. Um-hum.
**Q. In what space of time?**
A. I would probably say anywhere between 9:00 and 9:30-ish.
**Q. Okay. And at what point did he call you back?**
A. It was probably about 30 to 45 minutes or so after.
**Q. So 9:30?**
A. Yeah, roughly, ish, yes, that's fair to say.
**Q. Okay. And when you picked up the phone, can you describe for me Mr. Wyatt's demeanor?**
A. It was very vague. I asked him did he get my text, and he said yes, he was in a meeting. And he -- and I said, I also got your text, but I needed more detailed information of the -- of the question that I asked you.
And his demeanor at that time got very



rogue. He began to, you know, say curse words and ask me questions as it relates to the -- to the statement or the questions that I was asking him.
**Q. Okay. And I know we have our -- our politenesses, but can you recall which words he used?**
A. Yeah, I was trying to be a little vague there, and, again, I apologize up front for the audience. But I particularly asked Mr. Wyatt, did he get my text or did he get my call?
And he said yes.
And, again, as to rehash, I asked him, I need him to be more specific.
And he verbatim said, Derrick, what do you want me to do, I'm fucking driving.
And I said, Excuse me?
He said, I'm fucking driving.
And I repeatedly asked Mr. Wyatt who was he talking to, and he responded, I'm fucking talking to you.
And that's when I went into the situation of asking him, you know, basically what was going on, out of everything that I've done for him in terms of his role and his career was he going to talk to me like that.
He said, Absolutely, I'm fucking talking



to you. And he said, You know what, I just fucking quit.
And I said, So you quit? You're not returning?
He said, Yes, I fucking quit.
**Q. Okay. And that statement happened twice that you recall?**
A. At least twice.
**Q. Okay. And how did the conversation end?**
A. It was basically very short after that. After he said he fucking quit, I said, Well, if you quit, then I accept your resignation.
And we hung up.
**Q. All right. Now, can you tell me anything else about Mr. Wyatt's tone of voice or demeanor such as you recall?**
A. Yes, his demeanor was very, I would say, he was loud. I could tell he was very aggressive or what would come off to be aggressive to me. I heard him beating, what seems to be beating on the steering wheel as he would say he fucking quit. He was screaming erratically, not any words to me at that particular time, but just yelling as if, you know, he was irritated at something or, I would imagine, the situation that was happening.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM



**Q. Yeah, and I understand you are describing what you heard as opposed to saw.**
**Okay. Is there any chance you misheard?**
A. No. In fact, I asked him more than once who was he talking to. I did give him the benefit of the doubt that maybe he was talking to someone else in the background or per se, but he -- he doubled-down, that I'm fucking talking to you.
**Q. Okay. What did you do after the phone call?**
A. I merely called Dr. Cunningham.
**Q. And what did you communicate to Dr. Cunningham?**
A. That we just had a verbal resignation and Mr. Wyatt -- she asked me, What happened. At that particular time, I told her it was a very heated conversation. I gave her very minor but major details, and she was saying, that's very unfortunate. And she accepted it.
**Q. Okay. Did you have any more contact with Mr. Wyatt on that same day, February 5th?**
A. Actually, I did.
**Q. Okay. And what was that? Was that phone again or in person, or how did that happen?**
A. Yeah, it was in person. He came to my



office. And as soon as he came in, I essentially asked him something similar to the nature of, Why are you here. You said what you said, and I accepted your resignation.
And he repeated and said, You're not going to do this to me, per se.
And I asked him what he said.
Well, you know what's going on with me and my family.
I said, Well, Mr. Wyatt -- at that particular time it was probably "Pete." I said, Well, Pete, you quit.
And he said, You're not going to do this to me.
I said, Well, Pete, you did it to yourself. You resigned.
And I asked him to leave my office, and he did.
**Q. Okay. And about what time was this?**
A. I would probably say about 45 minutes after we initially hung up from the first conversation, so 9:30 plus another 30, 45 minutes on top of that. So roughly 10:15-ish or so.
**Q. Okay. And during the course of that conversation, did Mr. Wyatt deny having resigned?**



A. No.
**Q. Did he ask you what you were talking about?**
A. No.
**Q. Did he ask you any questions at all?**
A. No, not really.
**Q. And when he left the office, was it still your belief that he had resigned?**
A. Absolutely.
**Q. Did you speak to Mr. Wyatt any more about this, either on February 5th or after?**
A. No.
**Q. Did you speak to Dr. Cunningham again about it?**
A. Yes.
**Q. Okay. And what was the purpose of that conversation?**
A. Just to rehash what happened. I also asked her did I need to do anything else from a resignation standpoint, and she told me that obviously she wanted me to make documentation and she would take it from there.
**Q. Okay. Had Mr. Wyatt ever cursed at you before?**
A. No.



**Q. To your knowledge, had he ever wanted -- mentioned wanting to quit before?**
A. No.
**Q. Joked about quitting?**
A. Nope.
**Q. Did you have any reason to believe he didn't mean what he said?**
A. No. He was very, very honest and very open. It was very clear. And even, in fact, I asked him multiple times, A, who was he talking to, what's going on. I mean, he -- he repeated himself several different times in that manner.
**Q. Okay. I don't have any further questions for you at the moment, Mr. Melton.**
A. All right. Thank you.

CROSS-EXAMINATION

BY MS. FRIERDICH:
**Q. Okay. Hi, Mr. Melton. My name is Katherine Frierdich, and I represent Pete, Mr. Wyatt, in this appeal. I do have a few questions for you.**
A. Okay.
**Q. You -- would it surprise you that Mr. Wyatt was told by someone at the County that he supposedly resigned while talking to you in person in your office versus how you described it happening?**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM


A. Yes. That would be a surprise to me.
**Q. Okay. So when you were calling Mr. Wyatt, 9:03 is when it started, he was in a meeting and he told you that he had been in a meeting. You texted him and asked him that -- how many direct reports did he have, is that correct?**
A. No, that's not correct.
**Q. What did you text him?**
A. It was more so when you said he told me that he was in a meeting. He did not tell me when he was in a meeting.
**Q. So you did not ask him over text how many direct reports does he have?**
A. I did.
**Q. You did ask him, okay. And that was the question that you had, is that correct?**
A. That is correct, yes. I'm sorry.
**Q. Okay. And Mr. Wyatt told you, I'm in the middle of a meeting wrapping up, is that correct, by text?**
A. I don't remember.
**Q. And then by text, he said six direct reports --**
A. Yes.
**Q. -- but that he would like to confirm to be certain?**


A. Yes.
**Q. Okay. And that was your question, that was your only question to him, "How many direct reports you have?"**
A. Yes.
**Q. Okay. And you have access to the org chart, don't you? You knew he was in a meeting. You do, it was hanging on your assistant's wall, hanging on Mr. Wyatt's wall. It was available on your -- on your internet. You could have called HR, right?**
A. Is that a question?
**Q. Yes. There were those places that you could have confirmed how many direct reports Mr. Wyatt had?**
A. Possibly.
**Q. Possibly?**
A. Um-hum.
**Q. Do you know whether or not you could look up his organizational chart in some way online?**
A. Yes. Mr. Wyatt is the chief operating officer. He has the option to -- in certain situations to change his org chart as he sees fit.
**Q. Okay. So you say that he quit verbally on the phone?**


A. Yes.
**Q. And then came to the office and visited your office?**
A. Yes.
**Q. You had a conversation. Did that conversation -- was that conversation loud and curse-ridden?**
A. No, I don't think any curse words were exchanged during that time.
**Q. How long did that conversation last?**
A. If I had to put a time limit on it, I would say approximately two minutes.
**Q. Okay. And you say on the phone, just backing up to when Mr. Wyatt was in the car, you said, So you're not returning?**
A. I didn't -- I don't recall saying that.
**Q. Okay. I believe you just testified that you asked him, So you're not returning? And then you said, If you quit, I accept your resignation.**
**That's not your testimony?**
A. I asked Mr. Wyatt did he resign and he said yes.
**Q. Okay. You mentioned that you immediately called Dr. Cunningham after that phone call, correct?**
A. Correct.


**Q. Okay. And you asked her in that -- in that conversation or in later conversation what documentation needed to happen?**
A. When I called Dr. Cunningham, I asked Dr. Cunningham -- well, I told her obviously what just happened, and I basically asked her what were next steps.
**Q. And what did she say the next steps were?**
A. She told me in that particular time that she would get back with me, and she did and that's when we later said that I would definitely need to document it; obviously I had already done so, but send it to her.
**Q. Okay. When -- did you ask Mr. Wyatt to put his resignation in writing?**
A. No.
**Q. Are you familiar with the civil service rule relating to resignations?**
A. Yes.
**Q. Did you review those at the same contemporaneous time as what we're talking about?**
A. No. Mr. Wyatt verbally said that he quit. I didn't have any -- in my mind he wasn't coming back.
**Q. I see. Are you aware that Mr. Wyatt worked the rest of that day, came to the office, I**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 45

**believe it was 9:50. Would that sound about right when he came to the office?**
A. Ish, yeah.
**Q. In the morning?**
A. (Nodding head.)
**Q. Did you know that Mr. Wyatt was continuing to work the remainder of that day?**
A. I did not know.
**Q. You did not see him?**
A. I saw him. I didn't know what he was doing.
**Q. And you didn't stop him and say, Why are you here, you quit?**
**Did you ever do that?**
A. Yes, when he came to my office.
**Q. What about when you saw him later?**
A. I don't recall seeing him too much later the rest of the day.
**Q. When did you see him?**
A. When he came to my office.
**Q. After he --**
A. He said he quit.
**Q. After he left your office, you indicated that you saw him at the office, he was there all day? Is that correct?**

Page 46

A. I can't confirm if he was or not.
**Q. When is the next time you saw him after he left your office?**
A. I don't remember.
**Q. You remember seeing him though at the office?**
A. Absolutely. I remember him coming to my office, and he stated my testimony earlier and that was it. Any other recollections or conversations or was he in the office or was he in the building, I can't speak to that.
**Q. Okay. You're aware that Mr. Wyatt worked on February 6th, which is the next day, correct?**
A. I was not aware.
**Q. You saw him on February 6th, correct?**
A. I saw him in the parking lot, correct.
**Q. And Mr. Wyatt tried to get your attention, correct?**
A. I saw him in the parking lot. I don't know if he signaled and tried to get my attention or not, but I did see him in the parking lot.
**Q. Okay. Did you say to him, What are you doing here, you quit?**
A. No.
**Q. Have you ever used the F-word in**

Page 47

**conversations in the office before?**
A. In the office, I don't remember.
**Q. Have you ever used it in connection with any conversation with anyone who works for the County?**
A. I don't remember.
**Q. Did you -- Mr. Wyatt's office is across the hall from yours, right?**
A. Correct.
**Q. So would you say that Mr. Wyatt's office remained the same during the rest of the day of the 5th? It remained untouched?**
A. Yeah, probably untouched.
**Q. Did you see his office on the 6th?**
A. Yes.
**Q. Was it in the same condition?**
A. I had no reason to go to his office.
**Q. Was Mr. Wyatt's personal effects in his office on the 5th when you saw it?**
A. I'm not sure. I didn't go in his office. I did not enter inside of his office those days.
**Q. Did you receive any emails or text messages after the point that you say that you accepted his resignation from Mr. Wyatt?**
A. Yes, I did.
**Q. Can you describe them?**

Page 48

A. I'll have to pull them up.
**Q. Pull both emails and text messages?**
A. Text message. He asked me -- he asked me something to the nature of, If you need me to help on an assignment.
But if you need accuracy in that statement, I'm happy to provide it.
**Q. And that was on the morning of the 6th, correct, the day after you say he quit?**
A. I don't remember. I don't have them in front of me right now.
**Q. Okay. So more than one text is what you recall?**
A. I don't have that in front of me right now.
**Q. Okay. Well, when you received those text messages from Mr. Wyatt, did you respond, Why are you texting me about work when you quit?**
A. I did not.
**Q. Okay. Did you see that Mr. Wyatt's email account was disabled after he quit and you accepted his resignation?**
A. Did I ever see that his email account was disabled?
**Q. He reported to you, correct?**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 49

A. Correct.
**Q. So if he quit in a curse-laden rage where he is pounding on the steering wheel and screaming at you, did you call HR?**
A. I talked to Dr. Cunningham, which is the appointed authority.
**Q. Did you call HR about his email account, phone, ability to continue County business?**
A. I did not. I talked to Dr. Cunningham about the next steps, and those would have been the things that I assumed that she had taken when I talked to her about next steps.
**Q. Your assistant is Gina, what is her last name?**
A. Pike.
**Q. Pike. Thank you. Eugenia, right?**
A. Yes.
**Q. She goes by Gina, correct?**
A. Yes.
**Q. Okay. Did Gina tell you that she spoke with Mr. Wyatt after he spoke with you on the 5th in the car?**
A. I don't remember.
**Q. There is a -- I'm missing the last name, I'm not as familiar with the people in your office.**

Page 50

**There's someone with the last name Miller, correct?**
A. Patrick Miller, maybe.
**Q. Did -- did Mr. Miller indicate that he spoke with Mr. Wyatt after you spoke with him on the phone on the way into the office on that morning?**
A. I had no conversation with Dr. Miller. If you are referring to Dr. Miller, I had no conversations with him.
**Q. Did anyone indicate to you that they had spoken with Mr. Wyatt after the yelling, cursing, beating the steering wheel conversation happened with you when he was on the way to the office?**
A. I don't remember.
**Q. Okay. You never received anything in writing from Mr. Wyatt indicating that he had resigned his position, is that correct?**
A. No -- correct, I'm sorry, I did not receive anything from Mr. Wyatt.
**Q. And you're aware, because I believe you were copied on several emails, in which he denied that he ever resigned, is that correct?**
A. I was copied on one email.
**Q. Were you asked to sign a -- an affidavit after -- at some point after the phone call on the 5th?**

Page 51

A. No.
**Q. Were you interviewed by anyone other than counsel and the two conversations that you mentioned with Ms. Cunningham regarding this incident that you have testified to today?**
A. No.
**Q. Was there any, to your knowledge, any investigation performed regarding the conversation that you have relayed to the Commission today?**
A. Can you explain "investigation"?
**Q. Yes. Did anyone investigate whether or not Mr. Wyatt resigned?**
A. Counsel did. Counsel asked me to give all communication --
**Q. I'm not asking about your conversations with counsel. Anything outside of conversations with counsel. Those are privileged. I'm not asking you to tell me anything about that.**
**Did anyone else to your knowledge other than counsel --**
A. Not to my knowledge.
**Q. And -- but you said that you were really shocked that this high performer, Mr. Wyatt, resigned so suddenly on the morning of February 5th, correct?**
A. It was odd.

Page 52

**Q. Did -- did you think that that required a further conversation, investigation, written confirmation from Mr. Wyatt?**
A. After me asking him several times on the phone, as I remember, who was he talking to, was he okay, and he doubled-down and he continued to say the things that he said, I didn't think so.
**Q. Were there any witnesses to the conversation that you've testified to?**
A. Not on my end.
**Q. You conduct business on your personal cell phone through the County, correct, text messages, phone calls, emails, any of those?**
A. I don't know.
**Q. You don't know?**
A. I mean, I don't know. What do you mean by do I conduct business?
**Q. Do you use your personal cell phone to text about County business?**
A. I don't know. Maybe, maybe not. I don't -- I can't answer that question.
**Q. You testified that you documented everything and you sent it to Dr. Cunningham, is that correct?**
A. Yes.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM



**Q. Who else?**
A. Well, I take -- give me one second, please.
**Q. Okay.**
A. I sent -- I actually sent the information to Sharon Gardner.
**Q. Not Dr. Cunningham?**
A. I sent the -- I sent my statement to Dr. Cunningham of what happened, that is correct.
**Q. And so what did you send to Sharon?**
A. Conversations that -- I mean, I'm sorry, screenshots that a conversation actually happened.
**Q. What screenshots?**
A. What do you mean what -- oh, what screenshots I sent or what screenshots in general?
**Q. What screenshots did you send to Sharon?**
A. I sent her, as I remember, phone calls, phone call logs for sure.
**Q. Did you send anyone else your statement or screenshots or any other information regarding the conversation that you allege happened?**
A. Outside of the -- outside of counsel, I don't remember, no.
**Q. Okay. You said that you had no problems with Mr. Wyatt's work, correct?**



A. No.
**Q. Did you ever review him?**
A. We met every Friday -- well, we had a standing meeting every Friday. Sometimes they were earlier in the week, sometimes they were later in the week, but that was my time to review all of his standard work.
**Q. What projects did Dr. Wyatt -- or Mr. Wyatt have in flight at the time of this supposed conversation?**
A. I know we were really working in honest -- in earnest, I'm sorry, about physicians and their operational schedules. There were staffing patterns that we were particularly working on in terms of nursing, how many employees and how many care team members did we have per site; and we were also gearing up to work for -- work towards our OSV, which is short for on-site visit.
**Q. Okay.**
A. And there -- there may be more, but I would have to review the list.
**Q. You published Mr. Wyatt's role as a job description to be filled, correct?**
A. Correct.
MS. FRIERDICH: So at this time because we asked



for documentation and it sounds like the statement by Mr. Melton and the screenshots were not produced to us, we ask for those to be produced at this time.
And that's all I have for you, Mr. Melton.
THE WITNESS: Thank you.
MS. FRIERDICH: Ms. Kaufman might have some redirect, but thank you for your time. Appreciate it.
THE WITNESS: Absolutely.

REDIRECT EXAMINATION

BY MS. KAUFMAN:
**Q. Thank you. I'll be real quick with you, Derrick. I promise.**
A. Sure. Take your time.
**Q. So -- well, I don't want to take everybody else's either.**
A. That's fair.
**Q. So you were asked a moment ago whether you contacted HR or made arrangements to have Mr. Wyatt's badge taken or his email account shut off.**
A. Um-hum.
**Q. Would that be your normal practice for an employee who resigns?**
A. Yes. What do you -- well, let me go back. Would it be the normal practice for me to contact them?



**Q. Yes. Are you the one who has to do it normally?**
A. No. Dr. Cunningham.
**Q. Okay. And what about making the formal acceptance of a resignation, is that normally something you do unilaterally or something Dr. Cunningham does?**
A. No, I don't do it unilaterally. That's something Dr. Cunningham does as the appointed authority.
**Q. So did you feel you had anything left to do --**
A. No.
**Q. -- after contacting her and hearing, I'll take it from here?**
A. Absolutely, I feel like there was -- that was my point in asking her. I agree with you, I didn't feel like I had anything else to do.
**Q. Okay. And just to clarify, you met with Pete once when he returned to the office on February 5th, is that correct?**
A. That's correct.
**Q. Did you have any further interaction with him on February 5th or February 6th?**
A. No.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 57

**Q. Other than seeing him in the parking lot?**
A. That is correct.
**Q. Okay. Thank you.**

RECROSS-EXAMINATION

BY MS. FRIERDICH:
**Q. I just have a couple of questions. You're able to see Mr. Wyatt's schedule, are you not, his calendar?**
A. Able to see it, yes, if I requested it. I don't have -- I never had access to his schedule. In fact, I did go to his admin assistant to look at his schedule. And there were -- at the time that I looked at it, along with Ms. Eugenia Pike, there was nothing on his schedule for that morning.
**Q. And you're talking about the meeting that he was at on February 5th, the morning of February 5th?**
A. Correct, the morning of February 5th. And he never told me he was at a meeting. He told me per se, I was at the podium.
So whatever that means. Maybe that's a meeting to him, but those were the words he gave me, "I was on the podium."
**Q. Okay. When you saw Mr. Wyatt in the office on the 5th, did you inquire about what his**

Page 58

**schedule looked like, if he was having any meetings, conducting County business after he supposedly quit?**
A. He stated he was on the podium, and he mentioned, as I recall, he was doing something for me. I didn't really engage in that because at the time it really wasn't about where he was or what -- where he wasn't per se. It was more so about getting me the information, but furthermore, it was about how he conducted himself, telling me he fucking quit.
**Q. Right. I'm actually referring to later on after -- after your conversation in your office --**
A. Um-hum.
**Q. -- when you were aware he was in the office after he supposedly quit. And he quit in a what you're describing to be a curse-laden shouting, beating the steering wheel situation, but it didn't concern you to check his schedule, see what he's up to, why he's in the office after he quit?**
A. It was my understanding given the hostility of the conversation, I was under the assumption that, you know -- I'm not going to -- I'm definitely not going to say I was fearful or anything, but given the hostility of the conversation, it was in my best interest to stay away from Mr. Wyatt.
And to be quite honest, when I saw him

Page 59

come in, I actually thought he was gathering his stuff, in which that was his right.
**Q. I think you said you saw him later on in the day, you knew he was there later on in the day?**
A. Well, we're referring back to when you asked me the question the first time.
**Q. Okay.**
A. Yeah.
MS. FRIERDICH: That's all I have.
THE WITNESS: Okay. Thank you.
MS. FRIERDICH: Thank you, I appreciate it.
MS. KAUFMAN: Nothing further.
THE WITNESS: Okey-doke.
MS. GOEN: Okay, Derrick, I am working to remove you. Give me one moment.
(WHEREUPON, Derrick Melton left the proceedings.)
COMMISSIONER BOOKER: Does the County have any other witnesses?
MS. KAUFMAN: Yes. We'd like to call Eugenia Pike next. And -- yeah, I think she is listed as DPH WebEx Event 1.
MS. GOEN: Thank you.
Okay. So it sounds like in open session we have two users with the DPH WebEx 1, both names, so

Page 60

we are adding one. We'll have to confirm whether or not it is Ms. Pike or not.
MS. KAUFMAN: Okay.
(WHEREUPON, Eugenia Pike entered the proceedings.)
MS. GOEN: Okay. So we were looking to add Eugenia Pike. I do see that we have a DPH account in here. You are currently on mute, but could you confirm whether or not we have got the right person?
MS. PIKE: Yes, this is Eugenia.
MS. GOEN: Perfect. Thank you.
MS. KAUFMAN: Ms. Pike, I know you're not feeling tip top, and I appreciate you being here. Are you able to turn your calendar on?
MS. PIKE: I have not been able to turn it on. I'm not sure why. It is not even giving me the option of a video. Let me try it again.
(Discussion off the record.)
MR. GOLDKAMP: If you could swear Ms. Pike in, that is the usual procedure.
(WHEREUPON, the witness was duly sworn.)

EUGENIA PIKE,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 61

DIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. Thank you. Could you state your name for the record?**

A. Eugenia Pike.

**Q. And for our court reporter, could you spell it?**

A. Sure. E as in Edward, U, G as in girl, E as in Edward, N as in Nancy, I, A as in apple.

Pike, P as in Paul, I as in Igloo, K as in kite, E as in echo.

**Q. Okay. And if you need at some point to take a break today, please let us know, okay?**

A. Thank you.

**Q. What is your position title?**

A. Office supervisor for the FQHC Look-Alike.

**Q. And how long have you worked in that position?**

A. A year and -- about a year and four months, I do believe.

**Q. And what does that job involve?**

A. What does it involve?

**Q. Yes.**

A. My daily work usually consists of just supervising at the executive level of the FQHC, so I

Page 62

work closely with the senior leadership for the FQHC.

**Q. Okay. And would that include both Mr. Melton and Mr. Wyatt?**

A. Yes, uh-huh.

**Q. Okay. Now, if you had any, can you recall your interactions with either or both of those people on February 5th?**

A. Yes, I had interactions that day with both. Do you want me to -- where do you want me to start?

**Q. Let's start at the beginning. When did you first see Mr. Melton that day?**

A. As soon as he came in, I guess there was some urgency, so he -- he hadn't even taken his coat off. He was just asking if Pete was there, and we indicated that he wasn't -- we hadn't seen him. So Kathy and I were together, so he asked us to go search for Pete, try to contact him.

**Q. Okay. And can you describe Mr. Melton's demeanor for me?**

A. It was normal. He -- he just -- just needed to talk to Pete. He wasn't, like, rushing or anything like that. He was -- he was just his normal self.

**Q. Did you get the sense that he was angry?**

Page 63

A. No, no, he wasn't angry, no, not at all. Even during all of the time that we were looking for Pete, he and I are kind of joking about things, about Pete and, you know, like, you know, Pete's out doing other things a lot of times. And we always cracked jokes about it with him, so we were just laughing about some of those things.

**Q. Okay. And just to clarify, did you personally witness any conversation between the two of them that morning?**

A. No.

**Q. Okay. Did you hear from Mr. Wyatt later that morning?**

A. Yes. I -- we -- when we tried to contact him, I -- Kathy and Derrick, we -- well, we actually went to look and see if he had, like, a meeting on his calendar or something like that, you know, to where he couldn't be disturbed.

So Kathy showed us his calendar, and since there was nothing scheduled at that time, we -- I called him. He didn't answer. So I -- I sent him a text message just letting him know that Derrick needed to speak with him.

**Q. Okay. Did Mr. Wyatt ever call you back?**

A. He -- he did call. He did call maybe like

Page 64

five minutes later or something like that.

**Q. Okay. Do you recall what he said?**

A. Yeah, he was a little upset. He asked what the hell was wrong with Derrick, and he asked if I knew what Derrick was looking for or why he was looking for him. And I told him I didn't know, and I didn't want to actually -- I didn't want to talk about it, so I just kind of left it at that.

**Q. Okay. Did you see Mr. Wyatt in person that day?**

A. I saw him when he came in. He -- he stopped at my desk for a minute. He was just trying to show me that he did have something scheduled on his calendar. I informed him that that's not what was -- you know, that's not what we saw, and I just -- I just kind of left it at that. I talked to him to let him know that, you know, we -- we, you know, weren't trying to pry, you know, his privacy or whatever. It's just that Derrick needed to speak with him.

We did check the calendar. Like, if you were in a meeting, you know, we were not going to interrupt you or anything like that, but your calendar showed you were free, so that's why, you know, you got phone calls from both of us.

**Q. Okay. Did you have any more conversations**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 65

**with him that day?**
A. Yeah. So I work closely with him, so working on different things throughout the day, all day until time to go home at 4:30. He talked to me throughout the day about, you know, just different work products and stuff like that.
**Q. Did he mention Mr. Melton again?**
A. Yes, he -- he kept saying he needed to apologize to Derrick and that he wanted to talk to him face-to-face. Again, I didn't dwell on -- I didn't want any information about it. I did not know what happened, and I -- I was just kind of staying out of it. I didn't -- I just said if you need to talk to him, go ahead. You know, their offices are across from each other. So I just kind of kept my distance from it. I didn't know until the next day that -- what -- what actually happened. I was not aware.
**Q. Okay. So I do have to ask, at any point during your working relationship with Mr. Wyatt, had you witnessed him becoming upset or angry?**
A. Yeah, I have. I have.
**Q. Did that ever involve foul language?**
A. Yes.
**Q. Is there any incident in specific that you can tell me about?**

Page 66

A. Well, when, let's see, that was in maybe January of '25. I think that might have been the first time I saw him actually get angry. He -- we were in the middle of prep for the -- our HRSA -- the HRSA site visit. To actually gain the FQHC designation, the federal government comes on site and does a site visit to check and see if you're compliant with all of their guidelines in order to become a Look-Alike site.
**Q. Okay.**
A. So -- so part of that site visit, they require us to actually upload documents and things, and so we had received an email stating that the things that we submitted were not right, incorrect. And so we all wind up working until like 6 o'clock that night, and Pete was upset because he was already gone and had to come back into the office.
**Q. Do you remember the language he used?**
A. Yeah.
**Q. I'm going to ask you to put your politeness aside and quote it for us just the once.**
A. He stated that this was bullshit, and he was just swearing and mad. But I just told him, you have to take that up with Derrick. Don't -- I don't want to hear it. Just take it up with Derrick. I

Page 67

don't want to hear it, so.
**Q. And did you wind up reporting that incident to anybody?**
A. No, no. Only the people in the room actually heard it.
**Q. Okay. All right. I think that is all I have for the moment. I think Ms. Frierdich may have some additional questions for you, if you stay on the line.**
A. Okay.

CROSS-EXAMINATION

BY MS. FRIERDICH:
**Q. Hi, Ms. Pike. I'm Katherine Frierdich, counsel for Pete Wyatt. Thanks for being here. I understand you're not feeling well, so thank you especially for your time.**
**Just to -- just to back up a little bit, you spoke with Mr. Wyatt on the morning of February 5th while he was driving into the office, correct?**
A. Yes.
**Q. Did he use the F-word in his conversation with you?**
A. Yeah, he was -- he was swearing. He was just asking, like, what the is wrong with Derrick or,

Page 68

you know, whatever. I didn't really want to -- I know when he gets mad -- I can tell when he is mad. So when he gets mad like that, I don't really like to engage.
**Q. Did he tell you that he quit his job?**
A. No, he did not.
**Q. Did he ever tell you that he quit his job on February 5th as you were working together?**
A. No.
**Q. Have you ever heard him say "I quit"?**
A. No.
**Q. So you did not witness the conversation between Mr. Melton and Mr. Wyatt on the morning of February 5th?**
A. No.
**Q. And were you ever asked to sign an affidavit relating to this situation?**
A. An affidavit?
**Q. Yes.**
A. I -- I was told to give a statement. I don't recall signing an affidavit.
**Q. Okay. Who asked you to give a statement?**
A. I think Dr. Cunningham needed a statement of what happened that morning.
**Q. And you prepared a written statement**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 69

**when -- when did you do that?**

A. I don't remember. I think it was -- actually, it was Friday. It was that Friday. I didn't sign an affidavit. I don't recall signing an affidavit. I just told -- like everything that I just said is what I told them.

**Q. What -- do you remember what time on Friday you drafted and submitted that statement?**

A. No. I was talking to Sharon Gardner in our office.

**Q. But you submitted a written statement?**

A. No. She took my statement on what happened that day.

**Q. Okay. What time was that on the 6th?**

A. I don't know. I can't remember. I can't remember what time it was. It was later in the day.

**Q. So afternoon, would you say?**

A. Yes, um-hum, yeah.

**Q. Okay. And Sharon Gardner is Dr. Cunningham's assistant, is that correct?**

A. Yes.

**Q. Okay. And was her counsel present, or was it you and just Sharon?**

A. Well, she was doing what's normal in incidents at work. She actually takes a statement

Page 70

from everybody involved.

**Q. Okay.**

A. It was just --

**Q. Just you and Sharon?**

A. Yeah, it was just me and Sharon, uh-huh.

**Q. Do you know anybody else who gave Sharon a statement?**

A. I don't know.

**Q. Okay. Did you see Mr. Wyatt leaving Mr. Melton's office on the morning of February 5th?**

A. No.

**Q. When you were working with Mr. Wyatt on February 5th, this was after the phone call when he was driving, was he agitated while working on the 5th?**

A. On the 5th he was just -- he just said that he -- he was feeling bad of -- from what happened with him and Derrick, and he just wanted to talk to him and apologize to him. That's -- that's what he kept -- he kept repeating to me that day throughout the day.

**Q. Okay. Did he say exactly what he wanted to say to Mr. Melton?**

A. The only thing he said to me was after -- after he got there and saw and understood everything that happened, he needed to talk to Derrick and

Page 71

apologize. He never told me what for. He just kept saying he needed to apologize.

And then later in the day after I cancelled their meeting, he just started asking me was Derrick angry with him. He kept asking me, Is he mad? He's mad Gina, isn't he mad?

And I told him, If Derrick is mad, he did not indicate that to me, because I didn't know Derrick was mad.

**Q. I see. How long did you work on the 5th?**

A. I'm sorry?

**Q. How late in the day were you at the office on the 5th?**

A. I think Pete and I left at the same time, 4:30.

**Q. Okay.**

A. Yeah, we did, because we talked on the way home, yep.

**Q. Okay. And then on the 6th, did you see Mr. Wyatt in the office?**

A. No, I did not.

**Q. Did you work with him at all over email or text message? Did you talk to him on the phone --**

A. Yes.

**Q. Did you have any interaction with him**

Page 72

**on -- on the 6th?**

A. Yes. I called him that morning. I can't remember what time it was. He wasn't answering, so I sent him a text. I just had questions in regards to another staff member. And eventually he called me back and he told me where he was, but I can't remember. And he told me that he had -- he just went over his day, like his meetings and things like that.

**Q. Okay. And you take care of Mr. Melton's calendar, correct?**

A. Yes.

**Q. And on the 5th, did you cancel a -- their weekly one-on-one meeting for the 6th?**

A. Yes. So that's when Pete really started asking if Derrick was angry with him. But I -- I -- I -- so Derrick had several meetings for the next day off site, and so that's why I thought he was cancelling.

**Q. Is it unusual that Derrick cancels the one-on-one meetings?**

A. Yeah, yeah. Like I said, he had -- I think that was -- they had Black history events in the community, and he was scheduled to speak at some of those. So he -- he -- yeah, he -- he needed to cancel the meetings. Well, he didn't tell me why. He just

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 73

said cancel the meeting for tomorrow. I just assumed it was for -- because he was going to be out in the public.

**Q. Was it unusual for Mr. Melton to cancel the one-on-one meetings with Mr. Wyatt?**

A. No, that's not unusual.

**Q. Okay.**

A. It's actually quite normal. So I think that's why I was kind of concerned when Pete started asking is Derrick angry. I didn't understand why he kept asking me that.

**Q. And so just to be clear, you did not witness any conversation between Mr. Melton and Mr. Wyatt in the office on February 5th?**

A. No. He just -- I guess after he talked to Derrick, he called me. And, again, this is normal, you know, he called -- he'll call me to get clarity on what Derrick needs from him or, you know, things like that, so. But he was -- when he was -- he was mad, so I didn't want to talk -- I don't talk to Pete when he is mad. I wait until he cools off, so.

**Q. And I think Ms. Kaufman asked you about one incident in which you said that Mr. Wyatt was angry.**

**Have you ever reported Mr. Wyatt being mad**

Page 74

**to a superior, to HR, ever?**

A. No.

MS. FRIERDICH: That's all I have for Ms. Pike. Thank you so much for your time.

REDIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. A quick follow-up question.**

A. Okay.

**Q. Thank you.**

**Ms. Pike, you said that you did not witness visually Mr. Wyatt going in or out of Mr. Melton's office the morning of February 5th. Does that mean it didn't happen or just that you didn't see it?**

A. Just that I didn't see it.

**Q. Okay.**

A. So their offices are right across from each other, and mine is kind of down the way. So if they talked, I may not have seen it. I don't have, like, line of sight to their offices.

**Q. Okay.**

A. If that makes sense.

**Q. Yes. Thank you. I don't have anything more.**

A. Oh, okay.

Page 75

MS. FRIERDICH: Thank you.

THE WITNESS: Is that it?

MS. KAUFMAN: Yes, ma'am. You are good to go rest.

THE WITNESS: Okay. Thank you. Thank you.

(WHEREUPON, Eugenia Pike left the proceedings.)

MS. GOEN: Okay. Ms. Pike has been removed.

MS. KAUFMAN: Okay. Could we bring in Ms. Gardner?

MS. FRIERDICH: Just for the record, I just want to request a copy of the statement given by Ms. Pike to Ms. Gardner, as it is not privileged and we did request documents. We were not provided them. Thank you.

MS. GOEN: You said Sharon Gardner?

MS. KAUFMAN: Yes.

MS. GOEN: Thanks.

COMMISSIONER BOOKER: County, do you have any other witnesses?

MS. KAUFMAN: We do have Dr. Cunningham, but I think that should be pretty brief.

COMMISSIONER BOOKER: Would you like to call her now?

MS. KAUFMAN: Well, we have Ms. Gardner, also

Page 76

hopefully quite brief.

COMMISSIONER BOOKER: Who would you like to call now?

MS. KAUFMAN: Sharon Gardner, please.

(WHEREUPON, Sharon Gardner entered the proceedings.)

COMMISSIONER BOOKER: It looks like she's in here now?

MS. GOEN: No, we're working on it.

COMMISSIONER BOOKER: Oh, it looks like she's in here.

MR. GOLDKAMP: Mary Gardner is --

COMMISSIONER BOOKER: Oh, that's a different Gardner. I see.

MR. GOLDKAMP: They are two different people.

COMMISSIONER BOOKER: A different Gardner, yes.

MS. GOEN: Okay. But we do now have Sharon. Can you hear us?

MS. GARDNER: I can hear you. Can you hear me?

MS. GOEN: You're a little quiet, but I can hear you.

MS. GARDNER: Okay. Let me turn my volume up a little bit.

(WHEREUPON, the witness was duly sworn.)

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 77

SHARON GARDNER,
called as a witness herein, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. Ms. Gardner, could you spell your name out for the court reporter here?**

A. Sure. First name, S-h-a-r-o-n. Last name, G-a-r-d-n-e-r.

**Q. All right. And what is your title, Ms. Gardner, with the County?**

A. I am the executive assistant to Dr. Cunningham.

**Q. How long have you worked in that position?**

A. I have been in this role since October 2024.

**Q. And had you held any other positions with the County before?**

A. Yes. I actually started in January 2011 as the Public Health Department director of human resources, and then in about October or -- in 2022, I went to County HR as a generalist and then, of course, back to the Health Department.

**Q. Okay. And, Sharon, what sort of interaction, if any, did you have with Mr. Wyatt on a**

Page 78

**regular basis?**

A. On a regular basis, he would -- we'd talk about personnel matters, he may seek my advice, and then from time to time we'd have small chat.

**Q. Okay. Did he ever express any dissatisfaction with his job to you?**

A. We never had any -- no, we never had conversations about that.

**Q. It's not really the sort of thing you talk about?**

A. No, we did not.

**Q. Okay. Did you interact with him directly on February 5th?**

A. No.

**Q. Okay. Okay. Were you informed at some point that he had resigned?**

A. Yes.

**Q. Okay. And who told you that?**

A. Dr. Cunningham told me that.

**Q. Okay. Did Dr. Cunningham have any other direction for you?**

A. Yes, she did. She actually asked me to accept Pete's resignation on her behalf.

**Q. Okay. And is that something you had done for her before?**

Page 79

A. Yes, yes, I do.

**Q. Okay. Now, when was that, February 5th or the next day?**

A. Actually, it was on February 6th that she asked me to accept his resignation.

**Q. Okay. And did you have any direct interaction with Pete on that day, February 6th?**

A. I did, yes.

**Q. And how did you wind up seeing -- seeing Mr. Wyatt that day?**

A. He actually came into the building. So I asked Dr. Cunningham if I should accept on her behalf in person, and she said yes, so I actually talked to him then.

**Q. Okay. Now, after you accepted the resignation, did you have any further conversation with him?**

A. Yeah, we -- I did. He actually told me that he didn't -- he didn't know what I was talking about, so I just asked him if he had talked to Derrick on the phone or in person. He said no, he hadn't talked to him at all. And after -- after a while, he changed his answer to say that he actually did talk to him.

**Q. Okay. So how did he wind up changing his**

Page 80

**answer? Did you repeat the question?**

A. I had to repeat the question. I think I repeated the question about at least three times. The first time I asked him if he had talked to him.

You know, he said no, he hadn't talked to him. He repeated that several times. And then he said, you know, he had texted him and the text had asked him to call Derrick.

And I said, Well, did you call him?

And then that's when he admitted, Well, yeah, I guess I did talk to him.

And then later in the conversation, I asked him if he had gone into his office to talk to him.

He said no. He said that a couple of times.

I asked him if he remembered using the F'ing word in his conversation with him.

And then that's when he said, Oh, I did talk to him. He mentioned that his conversation had gotten heated and -- and that he did remember talking to him, so.

**Q. And what was the answer to the question specifically about using the F-word?**

A. He said he didn't remember.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 81

**Q. Okay. Okay. And after that verbal conversation, did you do anything else to follow up on the resignation acceptance?**
A. I sent the email too to follow up.
**Q. And what did the email communicate?**
A. The email just said, on behalf of Dr. Cunningham, as I usually do, your resignation has been accepted, you know, wish you the best with your future endeavors.
MS. KAUFMAN: Okay. Thank you. I don't have any other questions.
CROSS-EXAMINATION
BY MS. FRIERDICH:
**Q. Hello, Ms. Gardner. My name is Katherine Frierdich. I am counsel for Pete Wyatt. Thank you so much for being here today. I just have a few questions for you.**
**Are you aware that the conversation that was alleged to have been had between Mr. Melton and Mr. Wyatt was in the morning of February 5th?**
A. I was aware that the conversation happened February 5th. I'm not sure what time of day it was.
**Q. Okay. And it was your understanding that Mr. Wyatt was cursing at Mr. Melton and -- on the phone or in his office?**

Page 82

A. On the phone.
**Q. Okay. And you heard from Ms. Cunningham on the 6th, February 6th that Mr. Wyatt had resigned, is that correct?**
A. That is correct.
**Q. And you took a -- we just heard from Ms. Pike that you took a statement from her in the afternoon of the 6th?**
A. I did.
**Q. Did you take any other statements from anyone?**
A. I did not.
**Q. Okay. What time was it that you -- was it -- I believe it was about 12:50 that you confronted Mr. Wyatt in the office on the 6th, is that right?**
A. That sounds about right, yes.
**Q. Okay. And would you -- would it be fair to say that Mr. Wyatt was surprised to learn that his resignation had been accepted?**
A. Yes, that would be fair to say.
**Q. Did he tell you that he did not resign?**
A. He did. He said he did not resign, that is correct.
**Q. Okay. And you have -- you have experience with HR, you said, is that right?**

Page 83

A. I do.
**Q. Did -- once you received information that there had been a curse-laden conversation, did you report that to anyone?**
A. Could you repeat that question again? I didn't hear the entire question.
**Q. Did you report that you had heard that there was a curse-laden conversation between Mr. Wyatt and Mr. Melton to HR?**
A. No.
**Q. Did you call security to escort Mr. Wyatt out of the building at around 12:50 on the 6th?**
A. I did not.
**Q. So if security was there, it wasn't because of you?**
A. Security might have been present in the vicinity, but in terms of him -- them or me, or me knowing of anyone asking them to escort him out, I am not aware of that. As a matter of fact, I saw him walk out. I didn't see security with him.
**Q. Ms. Cunningham -- Dr. Cunningham wasn't in the office on the 5th or the 6th, was she?**
A. Dr. Cunningham was in the office on the 6th. I'm not sure about the 5th. I believe she was.
**Q. Why did she not communicate with Mr. Wyatt**

Page 84

**directly then?**
A. It is generally the practice to have me accept on her behalf.
**Q. Okay. Did Mr. Wyatt curse at you when you talked to him at 12:50?**
A. He did not.
**Q. And at that time you told him that you needed to collect his badge, phone, and computer, is that correct?**
A. That is correct.
**Q. Are you aware of any other investigation of the matter between Mr. Wyatt and Mr. Melton other than the statement that you took from Ms. Pike?**
A. I am not.
MS. FRIERDICH: Okay. Thank you. That's all I have.
THE WITNESS: Should I get off the call now?
MS. KAUFMAN: Yes. I don't have any redirect for you, Sharon. Thank you.
MS. FRIERDICH: Thank you.
THE WITNESS: Okay. Bye-bye.
(WHEREUPON, Sharon Gardner left the proceedings.)
MS. KAUFMAN: Okay. Last person we've got to speak to is Dr. Kanika Cunningham.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM



MS. GOEN: Okay. Give me one moment.

(WHEREUPON, there was a short interruption due to technical difficulties.)

(WHEREUPON, Dr. Kanika Cunningham entered the proceedings.)

(WHEREUPON, the witness was duly sworn.)

DR. KANIKA CUNNINGHAM,

called as a witness herein, having been first duly sworn, was examined and testified as follows:

DIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. Thank you. Dr. Cunningham, could you spell your name for the court reporter?**

A. Yes. K-a-n-i-k-a, C-u-n-n-i-n-g-h-a-m.

**Q. Okay. And what is your position with the County?**

A. I am the director of the Department of Public Health.

**Q. All right. And how long have you worked in that position?**

A. Since January of 2023.

**Q. Okay. Did Mr. Wyatt report directly to you --**



A. No.

**Q. -- in his position?**

A. No.

**Q. To whom did he report?**

A. Derrick. And I'm sorry, there is an echo on my end. Can you all not hear it?

**Q. We can hear it, but you're still audible if we listen carefully.**

MR. LIVASY: If you turn down the volume all of the way on your computer and only use your phone audio to talk to us and listen, that should remove that echo.

THE WITNESS: Okay.

BY MS. KAUFMAN:

**Q. All right. Let's give it a go.**

**As of February 5th, 2026, were you contemplating disciplining Mr. Wyatt for any reason?**

A. No.

**Q. Were you contemplating terminating him for any reason?**

A. No.

**Q. Were you generally satisfied with his job performance?**

A. Yeah. I know deposition is a little different because we're FQHC and some people don't



understand the specific federal guidelines specifically called HRSA, but I think kind of where he was with his experience and coming in understanding HRSA, I didn't have any concerns. I know there was a steep learning curve there.

**Q. Okay. Dr. Cunningham, are you the appointing authority for DPH?**

A. Yes.

**Q. And what does that mean with respect to your personnel decisions?**

A. All of the hiring and firing, termination, disciplinary, those decisions, corrective actions, those decisions come up to me.

**Q. Are you also acceptable -- or are you also responsible for accepting resignations?**

A. Yes.

**Q. And before February 5th, 2026, had you ever accepted a verbal resignation?**

A. Yes, um-hum.

**Q. Had you ever accepted a resignation that was not in good standing?**

A. Yes, um-hum.

**Q. Okay. And in the case of a verbal resignation, was that something you'd have to witness directly in order to accept it?**



A. No.

**Q. So how would you -- how would you learn about a verbal resignation then?**

A. A lot of times it's the department, depending on what level it is, but it would escalate up like higher manager, get the division leader, get the executive leader, get my -- my team. I know a lot of times, the executive leaders try to kind of give me a heads-up if there's any concerns coming up, but a lot of times, it's filtered up through the hierarchy of leadership and then it will come up to me.

**Q. Okay.**

A. But, yeah, there's no way for me to be -- you know, we have nine locations and, you know, I can't be at every single location involved directly in every personnel decision, you know, actually see every single thing.

**Q. Okay. And I do want to clarify, is this -- a verbal resignation, is this something that's happened once before or a handful of times or a lot of times?**

A. I can think of a few times that it has happened. I know, of course, it happened, like, before me, and, again, it goes back to, you know, this is somebody just resigning and not desiring to come

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 89

back and work for the County. But I can recall a few since I've been here that this has happened.

And normally, it's -- it's either, you know, there's a heated situation and they'll call me, you know, run a situation by me and then, you know, and then I'll accept it. I'm trying to think of -- but, yeah, there are some examples. I don't know if you want me to share those.

**Q. No, I'm all set.**

**Let's see. Did you speak directly to Mr. Wyatt on February 5th?**

A. No.

**Q. What about Mr. Melton?**

A. Yes.

**Q. Okay. And how did Mr. Melton contact you?**

A. He called me.

**Q. When?**

A. It was that morning I think right after the conversation between him and Pete. Like, I think, like, immediately right after the conversation.

**Q. Okay. And what did he say?**

A. Well, he was definitely upset and he explained the whole situation to me with, you know -- it started off earlier, I needed information to give back to our County counselor, and I needed very

Page 90

specific information. And I think that is where the interaction happened between him and Pete, and so he called me letting me know what happened during that phone call.

And it was, you know, he did say -- I don't curse, so, I F'ing -- you know, he said he F'ing quit, and he explained all -- everything to me. And I will say there was a conversation too where I was a little concerned about his mental health, like, you know, is everything -- is everything okay with him. And, you know, accepted his resignation and that was -- that was it.

**Q. Okay. And now did you have any interaction with Mr. Wyatt or did you accept his resignation indirectly?**

A. I accepted it indirectly, no interaction with Pete. It was through Derrick. And that's normal, yeah.

**Q. And let's see. Okay. And did you have -- who accepted the resignation on your behalf?**

A. Oh, like, who wrote -- what do you mean? Because I accepted it and then -- when Derrick called me.

**Q. Did you have anybody else speak to Mr. Wyatt over the next couple of days?**

Page 91

A. Oh, yeah, yeah. So Sharon, my assistant, she normally either sends emails or directly deal with employees.

**Q. Okay. And is that what happened in this case?**

A. Yes.

**Q. And did Sharon give you any more information about her conversation with Mr. Wyatt?**

A. Yeah, that was that Friday, and that was -- so Sharon was actually in the process of sending him the email and then he was walking in. I think it was that afternoon, maybe around 12-something probably. And so since he was walking in, and I said, Well, just go ahead and tell him, make sure we get his ID badge, his laptop, and then we can still follow up with the email afterwards.

So when he -- I sat in my office, and then Sharon, I know she had wanted to have security; and that's standard to have security by for just in case something happens. And then I was in my office, and then the next thing I remember Billy knocked on my door and told me to stay in my office, don't come out, just because I think there was some escalation in Pete's voice, his tone, and I was -- it was shared with me that security had walked him out.

Page 92

And then Sharon came to my office and let me know what -- what Pete had shared. And there was some inconsistencies from what he shared with Sharon and based off of the situation that happened. And so then I just directed Sharon just to still follow up with that email because she had collected all of his company equipment and ID at that time.

**Q. Okay. And what do you mean by "inconsistencies"?**

A. So the one thing about the cursing back-and-forth -- well, first it was "that conversation didn't happen," and then somewhere along the conversation, I guess he shared with Sharon or Sharon saw that a conversation did happen; and then Pete had admitted, well, yeah, they did have a conversation, but it wasn't a heated conversation. And then it ended up coming out that, yes, it was a heated conversation.

So it sounded like there was a lot of back-and-forth and, you know, that to me that it wasn't -- it wasn't straightforward or direct. And so she was just sharing those inconsistencies when she was -- when he was talking to her.

**Q. Okay.**

A. And she knew about the situation because

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 93

she is my assistant who typically works with me on these issues and work with HR legal.

MS. KAUFMAN: Okay. All right. I don't have any other questions for you, Dr. Cunningham.

THE WITNESS: Okay.

CROSS-EXAMINATION

BY MS. FRIERDICH:

**Q. Hi, Dr. Cunningham. I'm Katherine Frierdich, counsel for Pete today, and I appreciate you being here. I do have some questions for you.**

**As the appointing authority, you indicated that you accept verbal resignations and that they can be indirect. In any of those instances, were they from someone in your C-suite?**

A. Yeah, they're always from our C-suite when they come up to me. I can't recall a time in which it came from some other route. It always goes through the executive leadership.

**Q. My question is, the verbal resignation coming from someone in your C-suite?**

A. Yeah, it can -- it comes up through them to communicate to me. So like a hiring manager or firing manager, they wouldn't come directly to me.

**Q. My question is, did a -- did you accept a verbal resignation from a member of your C-suite that**

Page 94

**was not made directly to you in the past other than Mr. Wyatt?**

A. I believe I'm answering your question.

**Q. Yeah, I'm sorry if I'm not being clear.**

**So did -- in the past, did someone in your C-suite verbally resign, not to you, but it was reported to you and you accepted the resignation as reported by somebody else?**

A. Yes.

**Q. And who was that?**

THE WITNESS: Is Noah okay -- is it okay for me to tell the employee's name?

MS. KAUFMAN: Yes.

THE WITNESS: Okay.

BY THE WITNESS:

A. Well, there are two I'm familiar with. This was one that was before Pete was here, back in like 2024. This was an employee named Rachel. And then the second one -- actually, this one was Will Bogan who reported to Pete, and that was another example of a verbal resignation.

And then also at our animal care and control, there was another employee who kind of similar, said "I quit" and walked off the job, and I accepted a verbal resignation. And that was toward

Page 95

the end of like 2025. I can't remember that employee's name because he wasn't employed long.

**Q. And were Rachel or Will part of the C-suite?**

A. No. They were not, but it came up through the C-suite to me.

**Q. Okay. But you just answered my question finally. Thank you.**

**So is it -- and you just mentioned a verbal resignation with somebody walking off the job, so is it typical that a verbal resignation then would result in that person not continuing to work in their role after that resignation?**

A. Right, um-hum.

**Q. Okay. So just to -- because there was an echo, is that correct?**

A. Yes.

**Q. Okay. Thank you. Okay. So you at the beginning of your testimony said you didn't have a problem with Pete or his performance, right?**

A. Correct.

**Q. And you didn't talk to him at all about this supposed resignation, correct?**

A. Correct.

**Q. Were you in the office on February 5th?**

Page 96

A. I was in the office -- I think that afternoon I was in the office. I wasn't there in the morning.

**Q. Did you see Pete in the office?**

A. I don't recall seeing him.

**Q. Did you know that he was in the office?**

A. Say it again.

**Q. Did you -- did you know that he was in the office?**

A. I actually don't recall seeing him that day or Friday actually.

**Q. Did anyone tell you that Pete was working in the office?**

A. No, no. It was my understanding that he got his stuff and left.

**Q. Who told you that?**

A. That was Derrick. I think there was some interaction when Pete showed up to work, and I know Derrick -- I think he tried to talk to Derrick or something, and I don't know what the interaction was but I was under the impression that he was getting his stuff and left. I'm not sure. I didn't see him, but that was why he came in the office, to get his stuff.

**Q. I see. So let me repeat this back to you.**

**Derrick calls you, tells you that Pete,**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 97

**over the phone on his way into the office, resigned?**
A. Who was in the office, Derrick?
**Q. Is there a way, are you -- are you able to talk through your phone, or is there a way to --**
A. Yeah, I muted my computer. Unless, let me see if --
MR. LIVASY: Are the speakers from your computer still --
(WHEREUPON, there was a short interruption.)
BY MS. FRIERDICH:
**Q. So -- so just let me repeat that back to you so I understand. Mr. Melton calls you, says that on the way into the office, Mr. Wyatt resigned his position; he said "I quit." And you understand that there may have been a meeting in Mr. Melton's office thereafter, and then it's your understanding that Pete gathered his stuff and left?**
A. Yeah, that -- yes, that is my understanding, he was getting his stuff and he left, yeah.
**Q. Okay. Thank you.**
**You didn't witness the conversation between Mr. Wyatt and Mr. Melton, right?**
A. No, no.

Page 98

**Q. As the appointing authority, you're familiar with Rule 19 regarding resignations, right?**
A. Right. They're resigning in good standing or not.
**Q. Did you ask -- because you held people in high regard, did you ask him to submit his resignation in writing?**
A. No, because I would never talk to -- in a situation, I would never talk directly to the person that's being terminated. It always comes up through the executive team. So I would never go around a leader to talk to their direct report.
**Q. Did you instruct Mr. Melton to get the resignation in writing?**
A. No, because the civil service rules, that's if someone want to resign in good standing. So historically when we've accepted verbal resignations, that's not a standard to say, Hey, go back and have them send a letter. If you accept the verbal resignation and if somebody want to quit, then they're able to quit, you wouldn't keep them on. So that's not -- that's not a standard.
**Q. Right. So verbal resignation not in good standing is typically, like, "I quit," pick up my stuff and leave?**

Page 99

A. Yeah, if they say "I quit," yes.
**Q. Okay. And there is a provision in the Rule 19 for someone who is presumed resigned who misses three days of work consecutively, correct?**
A. Um-hum, yep, yep, that is another one, um-hum.
**Q. Okay. Did you have any -- why did you not inquire with Mr. Wyatt with regard to whether or not the -- whether or not it happened and why?**
A. Because I don't ever talk to the -- I never go around leadership to get involved. If that's the case, I will be talking to everyone in my department that leaves. So I don't ever go directly and talk to them. That's not a standard.
**Q. Right. But I think you testified that nobody in your C-suite had verbally resigned prior to, and just up and left before, so this is a little bit different of a situation then?**
A. No, it's not. It's the same situation. I think when you were asking me and I answered it, this happens, and I don't go and -- so I had my -- so the C-suite, that's different. So we have -- our C-suite is made up of division leaders that report to the executive leaders.
The executive leadership, that is the

Page 100

leadership team that discuss with me. So that C-suite, they go and they speak with my executive leaders.
So, no, again, it would be a verbal resignation coming up to me, but I don't -- I would not get in the middle of the division leaders who we refer to as our C-suite -- and Pete would have been a part of the C-suite -- I would never -- it would never be a time where I would talk directly to them unless I didn't have an executive leader in the role; and then they all reported to me.
**Q. Okay. You said that you were concerned about Pete's mental health based on Mr. Melton's account to you?**
A. Um-hum.
**Q. Is that correct?**
A. Um-hum.
**Q. And so did you report the situation to HR based on your concern?**
A. So, no, I actually called a mutual friend of Pete and myself, and that particular friend gave some professional advice and I took a position of staying out of that. Now, I don't know if Derrick or anybody else provided those resources or that mutual friend provided those resources, but at that point I

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 101

just took -- it was a professional route.

And like I said, I was genuinely concerned. I think a lot of times with me that I'm often genuinely concerned about the individual, not just, oh, this is, you know, professional and you quit, but I often do ask questions.

There has been times in which, you know, we uncover other individuals on FMLA, and then that will completely change the entire discussion. So a lot of time bringing it up, it prompts the -- whoever is telling me this, it lets me know if there's other factors that I need to consider, like if there's an FMLA or if there are ADA accommodations. And none of that existed with Pete, so it's -- normally it's who I am to be able to make sure we're not missing anything.

**Q. And who is the mutual friend you called?**

THE WITNESS: Kate, is it okay for me to share?

MS. KAUFMAN: Yes.

BY THE WITNESS:

A. Rodney Gee, who is the director of administration.

BY MS. FRIERDICH:

**Q. It was my understanding that Mr. Melton did not report to you but reported to the -- the board, the civil authority -- I'm butchering it, I**

Page 102

**understand.**

A. No, no, Derrick reports to me. There's a dotted line to the board, but how the application is set up, Derrick fully reports to me.

**Q. Okay. Did it surprise you, then, that Mr. Wyatt was returning to work on the 6th when you learned that he was walking into the building?**

A. Yeah, I didn't know why he was coming. That's why I told Sharon to meet him and to grab security. I didn't know why he was coming into the building.

**Q. Okay.**

A. Yeah.

**Q. Okay. And you -- you perceived -- well, Sharon told you that Mr. Wyatt denied resigning, correct, when she spoke with him on February 6th?**

A. Yeah.

**Q. Okay. And you also received some emails from Mr. Wyatt emphatically denying that he resigned, correct?**

A. Um-hum.

**Q. Did you -- did you think that -- or did you ask for the situation to be investigated at that point?**

A. No. I did -- I did not ask for the

Page 103

situation to be investigated. I did speak with our County counsel's office when that information came over. I did read the email.

MS. KAUFMAN: (Inaudible.)

BY THE WITNESS:

A. The email -- did somebody interrupt me.

MS. FRIERDICH: I'm not -- I'm not asking her to discuss what she discussed with you as counsel.

MS. KAUFMAN: Well, that wouldn't have been me, but nonetheless, our office, so I appreciate it.

BY MS. FRIERDICH:

**Q. Yeah, so I'm not -- I don't want to know what you said or what counsel said to you.**

A. No, that's fine. So, yeah, I did do that, but then reading the emails, there was also some inconsistencies in the emails too. So I think you may have a copy of those.

**Q. Okay. And who did you ask to investigate?**

A. Well, it was a discussion with the County counsel's office.

**Q. Okay. So you didn't instruct anyone outside of legal to investigate?**

A. Well, I don't -- I don't instruct anyone. What it is, you know, I get their guidance, and then based off their guidance is when I would follow

Page 104

whatever direction they will tell you based on the situation. So I discussed with them and then followed their guidance.

**Q. So since you didn't communicate with Mr. Wyatt at all, you didn't tell him the reasons why he was being booted from the building or give him an opportunity to respond or instruct him about appellate rights, any of those things?**

A. That's not my role to do that.

**Q. Whose role is that?**

A. I mean, the employees, they often they can follow the civil service rules, and I think with Mr. Wyatt -- Mr. Wyatt, or Pete, reaching out to Matt Livasy, that's typically the route that employees will take when they want to go before the Civil Service Commission. They'll copy an appointed authority on the email.

But, again, I would not have this conversation directly with Pete because he didn't report to me. He is on that middle management. It's not standard for me to go around leadership to go and talk to their immediate supervisor -- to go and talk to the employee.

**Q. Okay.**

A. But there's no difference in this case. I

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 105

wouldn't have had a conversation with Pete.
MS. FRIERDICH: Okay. That's all I have. Thank you so much for your time. I appreciate it. Ms. Kaufman may have some questions for you.

REDIRECT EXAMINATION

BY MS. KAUFMAN:

**Q. I do want to ask one final follow-up.**

**Dr. Cunningham, in any situation if you have had an employee resigned and you have accepted the resignation, do you have further direct communication with that employee?**

A. No, uhn-uhn.
MS. KAUFMAN: Thank you. That's all I've got.
MS. FRIERDICH: Thank you.
(WHEREUPON, Dr. Kanika Cunningham left the proceedings.)
COMMISSIONER BOOKER: Does the County have any other witnesses?
MS. KAUFMAN: No, the County has no other witnesses.
MS. FRIERDICH: Can I take a moment to confer with Mr. Wyatt and come back in a couple of minutes?
MS. KAUFMAN: I would love to use the lady's room, so I'm on board with that.
MS. FRIERDICH: Okay. All right.

Page 106

COMMISSIONER BOOKER: Okay. How many minutes, when should we come back?
MS. KAUFMAN: It's 2:32, so say five minutes? Is that enough time?
COMMISSIONER BOOKER: We will return at 2:37.
(WHEREUPON, a recess was had from 2:32 to 2:39 p.m.)
MS. FRIERDICH: So we would like to call briefly the -- the other two witnesses starting with Dr. Miller.
COMMISSIONER BOOKER: You may proceed.
MS. KAUFMAN: Okay.
COMMISSIONER NUNN: Ms. Frierdich, do you want to make an opening statement before you call your witnesses?
COMMISSIONER BOOKER: I believe they both did.
MS. FRIERDICH: Oh --
COMMISSIONER BOOKER: Oh, yeah, you -- you were supposed to, yes.

OPENING STATEMENT ON BEHALF OF THE APPELLANT

MS. FRIERDICH: Yeah, I definitely would love to. And certainly -- okay.
Yeah, so obviously we're here because there's a precedent being asked to be made by this Commission. The precedent is that someone in the

Page 107

County can resign for somebody else, and that's the message back to merit employees at the County. Somebody can call up the appointing authority and say you resigned your position and, guess what, you're out.
We've got, you know, one day you're sitting in your office and, you know, somebody walks up and says, Hey, we accept your resignation. And that's fine. Nobody asks you if you resigned, nobody investigated. It's all the word of one person. And that's enough for this Commission to say, We'll accept your resignation, and that's fine.
Dr. Cunningham actually confirmed what I suspected to be true, that a verbal resignation not in good standing is made by somebody who says, I quit, they pick up their stuff, they walk out the door, and they stop working. That is not the situation here.
Mr. Wyatt returned to work -- actually stayed at work the entire day of the 5th and returned to work on the 6th; in fact, had a meeting representing the County on the 6th, and then was told to pack up and leave based on one person reporting that he had resigned.
So it's sort of like resignation by hearsay that you're being asked to enforce here, and

Page 108

it's not the situation that Dr. Cunningham just told you is the situation where a verbal resignation is accepted by her.
So I'd like you to keep that in mind as we talk with Mr. Wyatt and what actually happened and the fact that he did continue to work and continued to represent the County and was summarily dismissed without anyone even speaking to him about it. And that is the precedent that they're asking you to set today for the merit employees of the County.
Okay. So at this time we'd like to call Dr. Miller, please.
MS. GOEN: Give me one moment.
MS. FRIERDICH: Thank you.
MR. LIVASY: While the next witness is coming in, I want to just out of respect for the Commission's time, ask everybody if they have a hard stop or any other obligations that we need to be mindful of this afternoon?
COMMISSIONER BOOKER: I don't.
COMMISSIONER NUNN: I'm fine today.
COMMISSIONER HOFFSTEN: Likewise.
MR. LIVASY: All right. Thank you all very much. I myself will have to exit the meeting at 3 o'clock.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 109

MS. FRIERDICH: Is that a problem, Mr. Goldkamp?
MR. GOLDKAMP: No. We can continue the hearing without Mr. Livasy.
MS. FRIERDICH: Okay. Thank you.
(WHEREUPON, Dr. Patrick Miller entered the proceedings.)
MS. GOEN: Okay. Dr. Miller, it looks like you joined us. Can you hear us?
DR. MILLER: Yes.
MS. GOEN: Thank you.
DR. MILLER: Can you see me?
MS. GOEN: We cannot.
MR. LIVASY: Dr. Miller, it looks like the camera lens --
MS. GOEN: Now we can. We've gotcha.
(WHEREUPON, the witness was duly sworn.)
DR. PATRICK MILLER,
called as a witness herein, having been first duly sworn, was examined and testified as follows:
DIRECT EXAMINATION
BY MS. FRIERDICH:
**Q. Hi, Mr. Miller. I'm Katherine Frierdich. I represent Mr. Wyatt in this appeal. I just have a few questions for you, and I really appreciate you**

Page 110

**being here today.**
**Can you describe where your office is located in proximity to Mr. Melton's and Mr. Wyatt's old office?**
A. I share a wall with Mr. Wyatt. I share a wall, so it's immediately next to it. Mr. Melton's office is directly across from Mr. Wyatt's.
**Q. Okay.**
A. So catty-corner.
**Q. Do you have a recollection of February 5th?**
A. February 5th being Thursday?
**Q. Yes.**
A. Yes.
**Q. Did you at any time witness Mr. Wyatt resign his position or say "I quit"?**
A. I did not.
**Q. Had you ever heard Mr. Wyatt talk about quitting his job?**
A. I had not.
**Q. There has been some testimony that Mr. Wyatt gets angry and curses at people in the office. Have you witnessed that?**
A. I have not.
**Q. Okay. On February 5th, you had a meeting**

Page 111

**with Mr. Wyatt, is that correct?**
A. That is correct.
**Q. What time is your meeting?**
A. We met more than once, if I remember correctly. We met around lunchtime-ish. Briefly, we talked for a few minutes but then we had a standard meeting that's in the afternoon.
**Q. And --**
A. Late afternoon, like 3:00 or 4:00. Sorry.
**Q. Okay. Thank you.**
**And then at any time, were you told by anyone that Mr. Wyatt had resigned his position?**
A. On Thursday?
**Q. Yes.**
A. No.
**Q. Okay. And did Mr. Wyatt indicate that he had gotten into an argument with Mr. Melton?**
A. No.
**Q. Did he seem agitated?**
A. No.
**Q. Did you have a meeting with him or see him on February 6th?**
A. I met with -- I was home on February 6th, so I did not meet with anybody in person on February 6th.

Page 112

**Q. Okay. Were you aware that Mr. Wyatt had a -- a meeting at Centene that day? Had you talked about that?**
A. On Friday?
**Q. Yes, a meeting on Friday?**
A. The 6th?
**Q. Yes.**
A. No, I'm not aware of that.
**Q. Did you exchange any phone calls, text messages, or emails with Mr. Wyatt on February 6th?**
A. Yes.
**Q. And can you tell me about those instances?**
A. Sure. On that Friday, I wasn't -- I didn't have my phone with me the whole day and I went to go check it, and then I saw a text message saying, Call me. It may have been, Call me ASAP. I'm not 100 percent sure, but it was, Call me.
So I called him, and he explained that he did not quit, that that did not happen, and he reiterated that a couple of times, and talked me through some of what happened on that Friday. Also, there was an email that went out from him saying similar things --
**Q. Okay.**
A. -- that he did not quit.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 113

**Q. Okay. Did you have any work-related interactions with him on February 6th?**

A. I do not believe so. I was at home, so I think this -- I don't know if this counts as a work-related interaction, just him telling me that he did not quit, but that was my interaction with him.

**Q. Okay. Back to generally in the office since you -- I believe you said you share a wall with Mr. Wyatt. How soundproof are the -- are the offices?**

A. They're not terribly soundproof. With me and Mr. Wyatt sharing a wall, I can usually hear rumblings if he's talking at all. Across the hall, I can usually not hear a normal conversation whatsoever, but if at a normal vocal level; but if the Cardinals hit a home run, I'm going to hear that.

**Q. Okay. Gotcha.**

**Have you ever heard through the wall Mr. Wyatt yelling at anybody, cursing at anybody?**

A. No.

**Q. Okay. Did you hear any elevated discussion between Mr. Wyatt and Mr. Melton on the morning of February 5th?**

A. I did not.

**Q. Okay. Did you in any -- have any interactions with Mr. Melton on February 5th that indicated that you had just met or you were going to meet with Mr. Wyatt?**

Page 114

A. No, I do not believe so.

**Q. Who knew that you were meeting with Mr. Wyatt on February 5th?**

A. It was a standing meeting we had with the CFO, CMO and C -- or CMO. Yeah, me, Mr. Wyatt, and Mr. Ladevich.

**Q. I see. I see.**

A. It had been a standard meeting and everyone -- it had been ongoing for months. I don't know exactly how long, but for a while.

**Q. Okay. And who is your assistant?**

A. I don't know that I actually have an assistant. Possibly Kathy. I think she helps out in general and Eugenia helps out in general. Ms. Davis and Ms. Pike. Sorry.

MS. FRIERDICH: Okay. Okay. That's all I have for you today. Thank you so much for joining us. I really appreciate your time.

THE WITNESS: All right. Thank you.

MS. FRIERDICH: Ms. Kaufman may have some questions for you.

THE WITNESS: Oh, okay. Sorry.

MR. GOLDKAMP: Before Ms. Kaufman asks any

Page 115

questions that she may have, I would ask the Commission to reconsider their decision on allowing Dr. Cunningham to be in the hearing. I believe as the appointing authority, she is entitled to be in this hearing to hear the -- the testimony of -- of the witnesses.

So I would just ask the Commission to maybe reconsider their -- their decision that they made earlier.

COMMISSIONER NUNN: Dr. Cunningham has already testified?

MR. GOLDKAMP: That is correct.

COMMISSIONER NUNN: Okay.

COMMISSIONER HOFFSTEN: I would have no objection to her being present since she's already testified.

COMMISSIONER NUNN: Neither do I.

MR. GOLDKAMP: Just for formality purposes, can we have a motion on that?

COMMISSIONER BOOKER: So moved.

COMMISSIONER HOFFSTEN: Second.

COMMISSIONER BOOKER: All of those in favor?

COMMISSIONER HOFFSTEN: Aye.

COMMISSIONER NUNN: Aye.

COMMISSIONER BOOKER: Aye.

Page 116

MS. GOEN: Okay. Give me one moment.

Okay. So Dr. Cunningham is no longer in open session to be added. Is that something where I should reach out to her?

MR. GOLDKAMP: Yes, Jairris, if you could just send her an email to join the open session, and then we can just add her whenever she shows up. We don't need to -- we can continue with the hearing.

MS. GOEN: I will do that. Thank you.

COMMISSIONER BOOKER: Are we finished with this witness's testimony or does the County need...

MS. KAUFMAN: Thanks.

CROSS-EXAMINATION

BY MS. KAUFMAN:

**Q. Dr. Miller, I understand Mr. Wyatt reached out to you with his version of events. Was this something you spoke to anybody else about?**

A. My conversation with him? I absolutely spoke about it with my spouse. Yeah, I don't -- I tried not to get into gossip if I can avoid it as much as I can.

**Q. So it's fair to say that you did not have an interest in getting a story from Mr. Melton?**

A. No, I -- he did not bring it up, nor did I ask.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 117

**Q. Or Dr. Cunningham?**
A. Likewise.
MS. KAUFMAN: Thank you. Nothing further.
COMMISSIONER BOOKER: Would you like to redirect?
MS. FRIERDICH: No.
Thank you, Dr. Miller.
THE WITNESS: Thank you. Do I go now or -- last time I tried to go you all kept --
MS. FRIERDICH: Yes. Thank you.
(WHEREUPON, Dr. Patrick Miller left the proceedings.)
MS. FRIERDICH: Okay. So we'd like to call Damon Broadus, if I'm pronouncing that correctly.
MS. GOEN: Okay. One moment.
(WHEREUPON, Damon Broadus entered the proceedings.)
MR. BROADUS: Good afternoon.
MS. FRIERDICH: Good afternoon. I think we see your background but not you.
(WHEREUPON, the witness was duly sworn.)
DAMON BROADUS,
called as a witness herein, having been first duly sworn, was examined and testified as follows:

Page 118

DIRECT EXAMINATION
BY MS. FRIERDICH:
**Q. Okay. So, Mr. Broadus, my name is Katherine Frierdich. I represent Pete Wyatt in this appeal. And I just have a few questions for you, so this won't take long, but I really appreciate you joining us and giving us your time.**
**How often did you work with Mr. Wyatt in your position at the County?**
A. I would say regularly. As the deputy director of public health, I was regular integration with Pete as the COO.
**Q. Okay. And where -- can you describe where your office is in proximity to Mr. Wyatt's?**
A. Sure. I'm across the hall. There's a file cabinet in between our locations. I'm located between Mr. Melton and Dr. Cunningham.
**Q. Okay. So you just answered my next question about proximity of your office to Mr. Melton's office. So you share a wall with Mr. Melton?**
A. Yep.
**Q. Okay. How soundproof is your office? Do you hear conversations that are happening on either side of you?**

Page 119

A. They're rumblings, if you will, or you hear voices. You can't -- you know, clear audio sounds, no.
**Q. Right, okay. And on -- do you remember February 5th, the Thursday? Do you recall that day?**
A. Not exactly. I mean, it was a Thursday, like you said.
**Q. Well, do you recall hearing any elevated discussion in Mr. Melton's office that day, like voices elevated?**
A. I do not.
**Q. Okay. Would you have heard any -- if Mr. Wyatt was raising his voice in his office with his door closed, would you -- would you hear that in your office?**
A. If Mr. Wyatt was in Mr. Wyatt's office, I would not.
**Q. Okay. There has been some talk about Mr. Wyatt's conduct on the -- on -- in the -- in the business. Have you -- have you witnessed Mr. Wyatt raise his voice at people and curse at people?**
A. I have not.
**Q. Did you meet with Mr. Wyatt on February 5th?**
A. I did not. I'd have to look at my

Page 120

calendar, but I don't recall.
**Q. Do you recall seeing him in the office?**
A. I'm sure I did.
**Q. Okay. And you don't remember any conversations you had with Mr. Wyatt?**
A. At a minimum, an exchange of pleasantries.
**Q. Okay. So suffice it to say that Mr. Wyatt did not tell you that he resigned his position that morning?**
A. No, he did not.
**Q. Okay. When you saw Mr. Wyatt, did he seem agitated?**
A. No, he did not.
**Q. On -- so let's talk about February 6th, that's the Friday, did you have any interactions with Mr. Wyatt over phone, text, or email relating to work, County work?**
A. He called me that afternoon. I don't recall the exact time, but it was in the afternoon.
**Q. Okay. Was that related to County work?**
A. Yes.
**Q. Okay. And so it was a conversation between you in your position and Mr. Wyatt as COO?**
A. Yes.
**Q. Okay. And that was in the afternoon of**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM


**February 6th?**
A. Yes.
**Q. Were you aware that Mr. Wyatt had a meeting with Centene on the 6th?**
A. I did not.
**Q. In your interactions with Mr. Wyatt, did you ever find him to be disrespectful to you?**
A. Not to me, no, not ever.
**Q. Did you see him be disrespectful to anyone else?**
A. No, I haven't.
**Q. Okay. That's all of the questions I have for you. I appreciate your time. Ms. Kaufman may have some questions for you at this time.**
MS. KAUFMAN: No cross for this witness. Thanks.
MS. FRIERDICH: Thank you. You can -- you can depart, Mr. Broadus. Thank you so much.
(WHEREUPON, Damon Broadus left the proceedings.)
MS. FRIERDICH: Okay. At this time we'll call Mr. Wyatt to testify.
All right. So, Pete, here we go. Why don't you state your name for the record -- well, actually let's swear him in.


(WHEREUPON, the witness was duly sworn.)
DUANE "PETE" CARLTON WYATT,
called as a witness herein, having been first duly sworn, was examined and testified as follows:
DIRECT EXAMINATION
BY MS. FRIERDICH:
**Q. Thank you. Mr. Wyatt, would you state your name for the record, please?**
A. My name is Duane Carlton Wyatt. I go by Pete.
**Q. Okay. And up until February 6th, you were chief operating officer for the Department of Public Health, correct?**
A. I was. I began August 19th, 2024.
**Q. Okay. Can you just give us a very brief description of your career preceding your COO position?**
A. Sure. I have -- I held senior leadership positions in the for-profit industry, the nonprofit industry, the healthcare industry, and I'm an instructor.
**Q. When you were interviewing for the COO role, who did you interview with?**
A. I interviewed with a host of people. I


interviewed with Derrick, David Marker, Damon Broadus, and Dr. Nelson who at the time was the chief medical officer.
THE COURT REPORTER: It is very hard for me to hear the witness.
(WHEREUPON, there was a short interruption.)
BY MS. FRIERDICH:
**Q. Okay. Are you okay on your end, Pete?**
A. Sure, sure.
**Q. Okay. So you worked full time as a merit employee for the County, correct?**
A. I was, yes.
**Q. Yes. Okay. And what were your duties as COO?**
A. As COO, in a nutshell, all clinical operations, most of the clinical staff, and external responsibilities through outreach and program management.
**Q. Were you out of the office a lot in meetings in your position?**
A. Was I -- I'm sorry, say that again?
**Q. Were you out of the office in meetings a lot in your position?**
A. Often, yes.


**Q. And we've heard you reported to Derrick Melton, correct?**
A. I did, yes.
**Q. Describe your relationship with Mr. Melton.**
A. I thought our relationship was professional. The -- the common day, nonsense banter was normal. As senior executives do, we disagree on strategy from time to time, but that was never anything that impacted work.
**Q. Was there a point at which, you know, you've been -- everyone who has testified has said that they didn't have a problem with you, you were a good employee, did a good job, et cetera.**
**Have you ever been confronted by anyone at the County complaining about your behavior?**
A. No, not officially from a performance perspective. There has been an employee complaint that was put in. I think we discussed that earlier.
**Q. Okay. Can you -- so obviously February 6th and February -- or February 5th and 6th are critical here. So can we start and you take us through the morning of February 5th?**
A. Sure.
**Q. Thank you.**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 125

A. On February 5th, I had a meeting that began at 8 o'clock in which I was helping a group of people prepare themselves for job interviews. That is not part of my County. That is just part of an organization that I belong to and part of the commitment.

The meeting was taking long. I began to get calls from Derrick. I actually got one or two calls from Derrick. I do not have my phone active in those meetings as a point of respect, but I do get notifications on my watch. So when he called twice, I picked up and shot him a text and said, Hey, I am wrapping up a meeting. I'll call you back shortly.

That happened. The meeting went a little longer. Derrick called again. I sent him a text. He asked me the question, how many people reported to me. I said six. And I said, I think, I will be able to verify that for you shortly.

The meeting continued. He called again. I didn't get it as I was getting into my car, but I called him back immediately as soon as the -- the car started and the system worked. What I realized on the phone was that Derrick got my information of six, but he focused on the part where I said, "I think, I will confirm it for you shortly." So he needed that number

Page 126

confirmed.

I was not locked into that he needed that number confirmed. The call went on. I said to him -- so everybody has talked about the F-word, and I need to put this F-word in context. Derrick pressed me about the importance of the number. What I couldn't understand was why he was pressing me on the number because that org chart that is active and current is on his assistant's wall. He has it electronically. It's on my wall in my office, and it's also on my assistant's office, Kathy's wall. So the data is available.

So he pressed, and I said to him, Just use the F'ing number, what the F.

Because I couldn't understand why we were pressing. He had the number. He has the -- where I'm going to verify that number is literally less than ten feet from his desk. So I'm confused.

So I made a couple of calls. I did call Gina, I did call Michael Ladevich. I made a couple of other calls on my way back into the office. When I got into the office, I went straight into Derrick's office. I knocked. I went in. My first question to him was, Do you still need that number verified?

He expressed to me that how important it

Page 127

was because he was trying to keep me out of a lawsuit. He said he was trying to protect me. He got up from his chair. He came over to me. He showed me his cell phone and he said, This is what I'm trying to get; and that's the question on his cell phone, on his private cell phone, how many people do you supervise.

I said, Okay, you've got the number, six.

He walked over and sat down. There was some other banter. Nothing was elevated. As he text, he said, You never should have treated me that way.

I didn't know what that was all about. I don't know what the lawsuit is all about. I don't know what he's trying to protect me from. I said to him, I'm out there trying to protect you too, and you shouldn't have treated me like that, as I turned and I left.

So when I left, I closed the door, no slamming the door, no voice. I saw Gina in the hallway. Her testimony was that she talked to me when I came into the building. That is not correct. It was after I talked to Derrick.

And she said, well, something about they couldn't find me, they looked at Kathy and it wasn't on Kathy's calendar. I pulled up my County phone, and I showed her on my County phone that my 8:00 a.m.

Page 128

meeting was on my County phone.

And she said to me, Well, it wasn't on Kathy's desk.

Okay. And I -- and we both laughed, and I said, Oh, I guess I just put this on my phone.

And we just parted. I went into my office, put my stuff down, and continued my day.

**Q. Okay. So let's stop right there and back up just a little bit.**

A. Sure.

**Q. So is it fair to say that you were a little frustrated --**

A. Sure.

**Q. -- as Mr. Melton is blowing up your phone during the meeting, right?**

A. Right.

**Q. And you don't understand why?**

A. I do not understand why.

**Q. And you felt that you had answered the question?**

A. I thought I did, yes.

**Q. So how long was your call with Mr. Melton where you supposedly F-bombed, cursed, yelled at him, was beating the steering wheel, et cetera, how long -- how long was that call?**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 129

A. 58 seconds.

**Q. 58 seconds?**

A. Yes.

**Q. That was the only call between you and Mr. Melton?**

A. That's it.

**Q. Okay.**

A. So in 58 seconds, I pounded on the steering wheel, I told him about my home life, and I quit in 58 seconds. Not possible how that all happens, but you guys heard the testimony.

In his office two to three minutes, four max. I went, I had committed to buy lunch that day for the front office staff. So I had left my office after I put my stuff down. I went and I bought them Imo's Pizza. The day continued.

I had various conversations with -- with the CFO. I had the meeting with Dr. Miller later, but before I had the meeting with Dr. Miller, I talked -- I heard -- had Gina's conversation and I talked with Kathy. And Kathy said, I couldn't -- I couldn't see it on your calendar.

And it was in that moment that I stopped and I sent Derrick another text, and I said, I just talked to Kathy and I just discovered that you did not

Page 130

have information that I had; meaning, he couldn't see that I had a meeting but I thought he saw that I had a meeting.

So I wanted to go and apologize to him because the context of my response to him on the phone was with the understanding that you knew I had the meeting, you know I don't use my phone during a meeting, but you kept blowing up my phone during a meeting after I said I was going to get back to you. So that was a respect thing for me.

So I knocked on his door. He wasn't available. Before I went downstairs to my meeting, I sent him that text, that I hope I could catch him before the end of the day. I didn't. I sat with -- at the end of the day, I had a meeting with Brenda Wetzel that went probably until 5:30, and it was kind of sharing with her what's going on because she had just lost her husband.

So I sat with her until about 5:30, and I came back upstairs. Derrick was gone. Gina had told me earlier in the day that the meeting was cancelled for Friday, so I worked from home. I sent Derrick a note, a text message, How can I help you with UDS, at 9:03 I believe it was on Friday morning. No response.

I went to my meeting with the Centene

Page 131

person. I had that meeting. I came back to the building I guess 12:30, 12:35. I saw Derrick walking out of the door going to his car, tapped on my horn. He noticed me. He continued to get in his car. I said so, you know, I just found a good parking spot. I didn't want to pass that up.

So I got in, and I moved a few steps towards his car. He sat there for a moment and he drove off. I thought I was going to be able to tell him about Centene, but he continued going. I didn't understand that. But all of this was before that I had known that I quit apparently.

**Q. Okay.**

A. So when I got to my office at 12:40, I am preparing for -- I have a meeting with my -- my health center leadership teams, and we were going to do training on Epic. And that was starting at 1 o'clock, and at 12:40, Sharon Gardner came into my office. I can't remember her words, but she said that she -- that Dr. Cunningham had accepted my resignation.

And as you can imagine the shock, I said, What resignation?

We go through -- her description to me was, Did you not go into Derrick's office yesterday?

Well, in a moment of shock, I'm trying to

Page 132

figure out where I resigned, when all of this happened, if this was even real. She asked did I not go into Derrick's office and cuss. I said no.

First, I couldn't remember going into Derrick's office in the context of quitting. So when she testified that I didn't remember, what I wasn't remembering was quitting. But I did go into Derrick's office.

She continued to say that Derrick had told Dr. Cunningham that I had resigned, and Dr. Cunningham had accepted my resignation. I said to her in that moment that this was an integrity problem and that it was going to affect the entire staff and trickle down to my patients.

I stood, I grabbed a couple of personal things, you know, and I walked out of my office at probably 12:50, 12:55, I'm not sure, in that range. Security had been called, and they were standing on the wall. I just walked calmly out and got in my car, and that was it.

**Q. Okay.**

A. So there was no cursing, pounding the wheel. There was no cursing in his office. And if you add all of the testified time, it's 58 seconds.

**Q. And you submitted your phone records with**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 133

**your appeal showing the 58-second call, correct?**
A. I did.
**Q. So it's in the record?**
A. It's in the record.
**Q. Did -- did Melton tell you to go home during that 58 seconds?**
A. Yeah, at the end of the call, at the end of the phone call, we were both heated, and after I said -- used the fricking -- use the F'ing number and what the F, he said, Well, just go home. Just go home.
**Q. So would you say both of you were frustrated at this point?**
A. Oh, extremely frustrated, but that's -- that's not something to concern yourself with.
**Q. So there was testimony that -- or I think it was County counsel, made an argument that you didn't deny quitting until you were told that Dr. Cunningham accepted your resignation. Do you recall hearing that?**
A. Right, that's the first -- that's the first I had ever heard of it.
**Q. So you didn't know that Mr. Melton had resigned on your behalf until Sharon came and told you that your resignation was accepted, is that correct?**

Page 134

A. Correct. Correct.
**Q. So you never used the word "resigned" or "quit" to Mr. Melton either time you talked to him on February 5th?**
A. Never used which word?
**Q. "Resign" or "quit."**
A. No.
**Q. When you left Mr. Melton's office, did you feel that the situation had deescalated?**
A. Yeah, I thought it was done. I thought it was over.
**Q. Okay.**
A. The conversation I had in Derrick's office was indicative of conversations amongst the C-suite. It was a misunderstanding. It was a strategic thing. A ball was dropped, the ball was picked up, but that's just what happens.
**Q. And you spoke with a couple of other people on the phone on the way into the office as well, right?**
A. I'm sorry, I spoke to who people?
**Q. You spoke with Gina and Mr. Ladevich?**
A. Yes.
**Q. And so that was also on the way into the office?**

Page 135

A. Yes.
**Q. Okay. And did you yell or curse at them on the phone?**
A. No.
**Q. Just a second. I'm catching up because you took us through the two days.**
A. I'm sorry.
**Q. Do you know why Mr. Melton said that he was trying to protect you?**
A. I have no idea. He mentioned the lawsuit, but I have no idea what the lawsuit is --
**Q. Okay.**
A. -- or how I would be involved.
**Q. Did anyone approach you and ask you about having an argument with Mr. Melton on the 5th or 6th?**
A. About having an argument?
**Q. Yes.**
A. No.
**Q. So when you left Mr. Melton's office, there was business as usual for the rest of the day?**
A. For me, yeah, there was a lot to be done.
**Q. Okay. And you had meetings?**
A. Yes.
**Q. And you were in your office?**
A. Yes.

Page 136

**Q. Your office is across the hall from Mr. Melton's?**
A. Directly, yes.
**Q. Okay. So just to -- just to go back and clarify, we did hear from Gina testifying that you had said to her that you really wanted to apologize to Mr. Melton?**
A. Um-hum.
**Q. And she -- she did testify that she didn't know why, but -- why you were saying that, but you clarified it. Can you -- can you explain again so it's clear, why Gina would say that you said that you need to apologize to Mr. Melton that afternoon?**
A. After I talked with Kathy, it became very, very clear that going back to the morning, Derrick did not know that I had a meeting because it wasn't on Kathy's calendar. So after Gina said it and then Kathy confirmed it, for me the context of my response to Derrick was different or should have been different.
So had I known that he did not know that I was in a meeting and he did not understand that I was -- I wasn't picking up the phone because I wasn't aware it was ringing because my ringer is always off, then I wouldn't have been as adamant about, I gave you

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 137

the number, use the number. And I would not have said things like, You shouldn't have treated me that way, because what I was referring to was he kept blowing up my phone when I'm trying to wrap up a meeting.

**Q. Okay.**

A. So had I known that, that conversation would have happened differently.

**Q. But you did tell Mr. Melton that you were in a meeting and you were wrapping it up?**

A. I did, I did.

**Q. And he continued to call and text you, is that correct?**

A. Yes, yes.

**Q. Okay. And then you said --**

A. So --

**Q. -- that you finished out your day meeting with Brenda and that Mr. Melton was gone by the time you were leaving the office, right?**

A. Yes. When I -- when I knocked on Derrick's door, I don't know, somewhere between 2:00 and 3:00, he did not answer, so that's when I sent the text --

**Q. Okay.**

A. -- in hopes that I could catch him before he left.

Page 138

**Q. So Mr. Melton knows what car you drive, right?**

A. Sure.

**Q. And so if Mr. Melton had left before you left, and you left at 5:30, would the parking lot be pretty empty?**

A. Pretty empty at 5:30, yes.

**Q. Would Mr. Melton have had an opportunity to see your car in the parking lot?**

A. The opportunity, sure, if he was looking. I park in the same place, but if he was looking, he had the opportunity, but I don't know that that's something that he does. I don't -- I don't know that.

**Q. Let me catch up with you here.**

**Okay. So back to the remainder of February 5th, and this is talking about pretty much like 10:00 a.m., right, on to --**

A. Yes.

**Q. -- the whole day you were at the office from 10:00 a.m. forward?**

A. Yes.

**Q. And you met with the chief medical officer, we heard from him?**

A. Um-hum.

**Q. You met with him twice?**

Page 139

A. Um-hum.

**Q. And you met with Brenda?**

A. Yes.

**Q. The front -- the front desk folks saw you because you --**

A. Yes, Diane and Erica, yes.

**Q. Did you -- did you also have other interactions where people saw you in your office?**

A. Oh, yes. There's a lot of interaction up and down that hallway. You can bring in Michael Ladevich, the CFO. We had conversation. We had -- I had a con- -- a conversation with the contract folks about the phlebotomy project. All of these were drive-by conversations. They weren't meetings.

**Q. And at no time did anybody say to you, man, why are you here when you just quit?**

A. Yeah, it was not a thing. It was not a relevant point all day.

**Q. Yeah, yet nobody said, "Oh, we're so sorry to see you go"?**

A. No.

**Q. "I can't believe you quit"?**

A. No.

**Q. Nothing?**

A. I don't think it was public knowledge until Friday to even myself.

Page 140

**Q. And you mentioned that Gina cancelled your one-on-one with Mr. Melton, but that didn't cause you concern, did it?**

A. No.

**Q. Does that -- does that include it all happening?**

A. The cancellation didn't really concern me. That's a regular thing to have the Friday cancel.

**Q. It's a regular thing that Mr. Melton cancels your one-on-ones?**

A. Yeah.

**Q. Okay.**

A. Am I echoing over there, I'm sorry?

**Q. I'm sorry?**

A. Do you guys hear an echo?

**Q. It is a -- there's a bit of an echo, but I think we're able to parse through it. Are you able to -- okay?**

A. I'm struggling, but I can do it.

**Q. Okay. So let's move on to February 6th. You decided you had a meeting with Centene at 11:30 in the morning, correct?**

A. Yes.

**Q. And it was outside of the office, the**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 141

**meeting?**

A. Yes.

**Q. So when Mr. Melton cancelled your meeting, you just worked from home until you had to leave for that meeting, is that correct?**

A. Yes.

**Q. Did you -- what did you do the morning before you left for the Centene meeting work-wise?**

A. I had a couple of conversations. I think the first one might have been with Sharon Foote. I sent Derrick a text 9:03, 9:06, or something like that, asking him if he needed any assistance with the UDS project because it was due on the 15th. I didn't hear back from Derrick about my text on the 5th, and I didn't hear back from him on the 6th.

**Q. Well, let's talk about that meeting quickly. So you texted him on the 5th, and he didn't respond, Why are you texting me, you don't work here anymore, you resigned?**

A. No.

**Q. And when you texted him about the -- and UDS means Uniform Data System. I asked you that myself earlier.**

A. Yes.

**Q. But when you asked him about the UDS,**

Page 142

**which is definitely related to work and --**

A. Yes.

**Q. -- key to the work, in fact, he didn't respond saying, Why are you texting me about work, you quit?**

A. No response.

**Q. So you had -- you talked to some folks. Did you email that morning before you left for the Centene meeting?**

A. I do not recall. I don't believe I did.

**Q. Okay.**

A. As a matter of fact, I think -- I know I didn't because I don't believe I brought my laptop home, so I can't recall.

**Q. Okay. And when you were meeting with the Centene folks, you were meeting with them in the capacity of COO for the Department of Public Health, correct?**

A. Yes.

**Q. And that meeting was on your calendar?**

A. Yes.

**Q. Okay. And when you said -- when Sharon approached your office to accept your resignation, I'm putting that in air quotes for the record --**

A. Yeah, uh-huh.

Page 143

**Q. -- you were preparing for a meeting, and I think you mentioned it was the Health Center Management meeting?**

A. Yes. Every Friday -- every Friday at 1 o'clock to 3 o'clock.

**Q. Okay. A two-hour meeting?**

A. Yes.

**Q. Do you lead that meeting?**

A. Do I what?

**Q. Do you lead that meeting?**

A. Yes, I do.

**Q. Okay. And how many people are in that meeting?**

A. Four. On this particular day, we were working with the Epic training crews. They were going to do a training walk-through for the Health Center leaders.

**Q. Okay. Was Mr. Melton in the office on the 6th, do you know?**

A. I do not know.

**Q. When Sharon approached you to tell you that you had resigned --**

A. Oh, excuse me.

**Q. Yes.**

A. I do know, he was in the office but he

Page 144

left. When he was leaving, I was arriving on Friday the 6th, so he was in the office in the morning.

**Q. Thank you for correcting me.**

**When Sharon approached you to inform you of your resignation, did you deny that you had resigned?**

A. Did I what?

**Q. Deny that you had resigned?**

A. Oh, absolutely.

**Q. Have you denied that you resigned consistently ever since?**

A. Every time I get the opportunity.

**Q. Did you ask to speak with anyone or, you know, Dr. Cunningham or HR, anyone?**

A. Yeah, I sent Dr. Cunningham a note. Again, her position is understandable, but I did reach out to Dr. Cunningham. My first response -- my first response wasn't until Monday for personal reasons, but my first response was back to Sharon, Dr. Cunningham, and Derrick. The next -- I think the next note was to Dr. Cunningham. And then the next note I think was to Dr. Cunningham, Sharon, and Matt Livasy.

**Q. So we had a -- and you submitted your email correspondence to the Commission, so they have it in their file, correct?**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 145

A. I didn't hear the last part.
COMMISSIONER NUNN: I didn't hear that.
MS. FRIERDICH: All right. This echo is not great.
BY MS. FRIERDICH:
**Q. You have submitted your email correspondence to people at the County regarding your alleged resignation, correct?**
A. I did.
**Q. And so --**
A. I think if I -- if I -- if I turn -- if I mute my phone, I think I kill the echo.
**Q. Okay. Yes.**
**So if I take you through the emails, you on -- on February 9th at 4:57 a.m. you emailed Sharon Gardner, Derrick Melton, Dr. Cunningham, and in that email, you -- you spent multiple paragraphs, and this was in response to Sharon's email to you, accepting your, and I'm putting this in air quotes for the record again, your quote/unquote resignation, you responded in a several-paragraph email explaining that you did not resign, is that correct?**
A. That is correct.
**Q. You didn't receive a response to that email, did you?**

Page 146

A. No response.
**Q. And then you emailed again to Dr. Cunningham and Sharon Gardner at 6:50 a.m., same day. Did you ever receive a response to that email?**
A. No response.
**Q. You then emailed on February 12th, this is a week from the fated Thursday, Thursday, February 12th, you emailed Dr. Cunningham, Sharon Gardner, and Matt Livasy, and then Dionne Jones denying --**
A. That is correct.
**Q. -- you had resigned?**
A. That is correct.
**Q. And why Dionne Jones?**
A. Dionne Jones is the chairman of the consumer board that we all present to once a month. So the health centers have a board of directors that is -- that is a reporting relationship for Derrick.
**Q. You didn't respond -- you didn't receive a response from that email either, did you?**
A. I did not.
**Q. Then you emailed Matt Livasy, Dr. Cunningham, Dionne Jones, Sharon Gardner, on February 16th, that's the Monday, with, again, denying that you had resigned and your appeal, is that**

Page 147

**correct?**
A. That is correct.
**Q. And you appended quite a few attachments, including your phone records, your text records, your emails, et cetera.**
A. Correct.
**Q. Did you receive a response from that email?**
A. I did not get a response to the email, but I had made a couple of calls into HR to get Matt to check his emails, to check his phone messages, and I got the call back from Matt on I believe it was that Wednesday.
**Q. And what did Matt say to you? What's the first thing that Matt said to you when you picked up?**
A. He apologized that he had been out of the office. He said that he had gotten word that he should look for my email, but originally he couldn't find it because he was unaware that I no longer worked at the County. So I was not using a County email, I was using my personal email. But he had found it. I don't know if he had found it that day and called or found it the day before.
**Q. So it had been about a week and a half before the personnel director knew that you were no**

Page 148

**longer with the County?**
A. More like two weeks, yes.
**Q. Two weeks.**
**Just to be absolutely certain, you did not submit a written resignation?**
**I think you're on mute.**
A. How about now?
**Q. No, yes.**
A. No, I did not submit.
**Q. You were not an emergency, temporary, or seasonal employee?**
A. I was not.
**Q. You did not miss work for three consecutive days?**
A. I did not.
**Q. And when you supposedly, allegedly resigned your position, you continued to work that day?**
A. I did because I had no idea that I -- that that was a real thing.
**Q. And then you came back the next day, you continued to work --**
A. Yes.
**Q. -- the next day?**
A. Yes.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 149

**Q. And you have continually denied resigning?**
A. Yes.
**Q. Did you ever receive any information from the County whether it be documents, explanation, anything, prior to this hearing and what you heard at this hearing?**
A. I have not.
**Q. Prior to this hearing, is it the case that you thought based on Sharon's account that the alleged resignation occurred in Mr. Melton's office?**
A. Yes. The word that I had gotten indirectly from Sharon's account, it was, Did you not go into Derrick's office and do this and say these things?
**Q. That was the only indication you had received from anyone at the County with regard to what supposedly happened on February 5th?**
A. That was it.
**Q. You through your counsel submitted because -- your requested several times documents supporting what supposedly happened, correct?**
A. Yes.
**Q. And you've got nothing?**
A. Nothing.
**Q. So you submitted a public records request,**

Page 150

**correct?**
A. Yes.
**Q. And you submitted that with a -- and a response came back from Sharon Gardner that it was accepted, right? It had been received?**
A. Yes.
**Q. And that response was immediate, wasn't it?**
A. Yes.
**Q. And we had the initial meeting with this Commission on March 17th, correct?**
A. Yes.
**Q. And you were -- and you were notified on February 26th that the response to that records request would be delayed to the 20th, three days after that meeting, correct?**
A. Yes.
**Q. Then this hearing was set for today, and you were notified on the 20th that that response would be delayed to April 1st?**
A. Yes.
**Q. So you haven't received anything in response to your public records request?**
A. Nothing.
**Q. Have you requested your HR file through**

Page 151

**that public records request?**
A. I have, I have.
**Q. And received no records?**
A. No response.
**Q. And you heard about statements that were given by Mr. Melton and Gina, Ms. Pike, in this hearing?**
A. I did hear about that, yes.
**Q. Have you seen those?**
A. I have not.
**Q. Were you given an opportunity to respond to those?**
A. I have not.
**Q. Did anyone call you and say, Do you have a response to this, Mr. Melton says you quit?**
A. No.
**Q. Can you describe what -- what was in flight, what were you doing at the time that you were essentially booted from the office?**
A. I was preparing for a PCMH audit. I was preparing for a Title 10 audit. We were doing training on the new EMR. I had a slate of candidates ready to be interviewed for the program manager position that following week.
We were working on scheduling execution.

Page 152

We were working on a lot of civil service work around our nursing crew, around our clinical staff, because we were going to have to make some changes. We were working on Care team assignments, because those assignments -- because of incomes, because of salaries, because of longevity, it was going to cause some pain. We were discussing those.
So there were seven or eight different open topics that needed to be completed before May 1st.
**Q. And you heard in this hearing that every person who testified said that you did good work, they had no problem with you, no complaints?**
A. No complaints. I try.
MS. FRIERDICH: That's all I have at this point -- at this moment. I'll turn you over to Ms. Kaufman.

CROSS-EXAMINATION

BY MS. KAUFMAN:
**Q. All right. I'll keep it very brief, Mr. Wyatt. Thank you for your time.**
**So you've testified today that when you were speaking with Ms. Gardner, you were somewhat confused?**
A. Very.

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 990 of 1127 PageID #: 993



Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM



**Q. And the inconsistencies in your statement, we'll chalk that up to the fact that you were confused?**

A. Can we be specific about the inconsistencies?

MS. FRIERDICH: I don't think he testified to any inconsistencies, so could you rephrase, please.

MS. KAUFMAN: Sure.

BY MS. KAUFMAN:

**Q. So when you spoke to Sharon, you said a few moments ago, "I said I didn't speak to Derrick because I didn't go into his office and use those words."**

**Is that a fair recap?**

A. What I was responding to Sharon, she was asking if I did go into Derrick's office and cuss, and I said no. She apparently says that that -- or she probably took -- it sounds as though she heard me say I didn't go into Derrick's office.

**Q. Okay. So she just misheard?**

A. Potentially.

**Q. And now you heard Sharon come up here and say that at first you told her you didn't talk to Derrick at all. Did she mishear that too?**

A. I'm speaking to Sharon about did I resign;



she is speaking to me did I talk to Derrick. So the context in this meeting --

**Q. So you never told her you didn't talk to Derrick?**

A. So the context of this meeting was she just told me I resigned. So --

**Q. The question I asked --**

MS. FRIERDICH: Could you let him finish his answers, please. Please don't interrupt. Thank you.

Go ahead, Pete.

BY THE WITNESS:

A. I'm sorry, I'm going -- trying to cancel this, the echo. But the context of this conversation was Sharon was asking me rapid-fire questions behind telling me that I just resigned. So what I'm responding to her about did I go into Derrick's office and curse, I said no.

So then she asked me if I went into Derrick's office, and I said yes, I went into Derrick's office.

BY MS. KAUFMAN:

**Q. Okay. So do we all agree that there was a heated conversation with Derrick on the phone?**

A. Define "heated."

**Q. Well, to my recollection, you've used the**



**word too, so what does it mean to you?**

A. That's why it's not heated. It's common.

**Q. Okay.**

A. "Heated" would be defined as, for me, pounding on my steering wheel, saying F you and F this job, I quit.

That's heated. That never occurred.

**Q. So if Sharon recalls you using the word "heated," she also misheard that?**

A. I don't recall using the word "heated."

**Q. Okay.**

A. Sharon did not mention the phone call. Sharon spoke to the office visit.

**Q. Oh, so Sharon didn't ask you about the phone call at all?**

A. Not that I recall.

**Q. Okay. So let's see. Now, you did tell us that that call lasted 58 seconds and nobody is disputing that. Now, I'm going to be straightforward. It doesn't take you 58 seconds to say "I F'ing quit, I'm done, I F'ing quit," does it?**

A. Do you remember Mr. Melton's testimony as to how much was involved in that personal conversation, are you okay, all of those questions?

**Q. I'm asking the questions.**



A. Okay.

**Q. Okay.**

A. Please re- -- please repeat your question, please. Thank you.

**Q. It is, you are physically capable of saying "I F'ing quit, I F'ing quit" in under 58 seconds?**

A. That is absolutely possible.

**Q. Okay. Let's see. And so the fact that -- do you recall Eugenia testifying that right after she cancelled that one-on-one, you came up to her and asked, Is he mad, is he angry at me?**

A. I don't recall that specific conversation. I wasn't concerned if he was upset with me.

**Q. So if Eugenia recalls it, she was just -- she must be misremembering?**

A. I won't repeat what Eugenia recalls. I just don't recall.

**Q. Okay. Let's see. Okay. I don't think I have anything further. Thank you for your time.**

**REDIRECT EXAMINATION**

BY MS. FRIERDICH:

**Q. So, Pete, 58 seconds. We have Dr. Cunningham in the hearing now. I don't think she was here for Mr. Melton's testimony. What did**

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM



**Mr. Melton say you all talked about in that 58 seconds?**

**I think you're on mute, Pete. Sorry.**

A. I'm sorry. I'm trying to toggle back and forth. The statement was that I said that I quit. He asked me, Who are you talking to. I said, You. I mentioned about my -- my household situation with my wife. There were -- there were other conversations in there that I doubled-down on, and we discussed the six people that directly report to me and how I was going to confirm it.

So there were -- there were several things in that 58 seconds.

**Q. And that's according to Mr. Melton. And when you say your family situation, what are you referring to?**

A. So in -- in December, I sat in front of the C-team, and I told them that my wife after 16 years had just been RIF'd and that things were going to get kind of crazy through the holidays, but that was going to happen on January 16th, which happened to be her birthday, so it was a very emotional time.

So I told the C-team that in December. So I told -- Dr. Miller was there, Ladevich, Sharon



Foote, Gina, Derrick. So I said that in front of the team because that's work family and we want work family to know. So did I bring that up again in the phone call in 58 seconds? No.

**Q. Okay. And there's a lot of talk about when this supposed resignation happened -- did we lose him? Oh, I see you. You just moved on me, Pete.**

**There's a lot of talk about when this supposed resignation happened, was it on the phone, was it in the office. When you left the office after talking to Mr. Melton after the phone call, you felt it was resolved?**

A. Yeah, I thought it was resolved.

**Q. Okay. And --**

A. Given all of the pieces that are working and transitioning a health center from the public health, there are lots of exchanges that happen in the hallway. So this was just another.

**Q. Right.**

A. We don't have a hostile work environment.

**Q. So if Sharon's account is that you were confused, you were confused because --**

A. I was absolutely confused.

**Q. Because you were told that you had resigned, and you hadn't?**



A. I was told that I had resigned, and I had not.

MS. FRIERDICH: Okay. Thank you, Pete.

MS. KAUFMAN: Nothing further.

MS. FRIERDICH: We're not calling any other witnesses for confirmation.

COMMISSIONER BOOKER: Thank you. Do you all -- would you like to have closing statements? Or is there anything else you'd like to offer?

MS. FRIERDICH: I believe that the findings of fact and conclusions of law, I will need to amend mine because the story we heard here was not the story that we understood. So I'm asking for leave to amend that.

CLOSING STATEMENT ON BEHALF OF APPELLANT

MS. FRIERDICH: For final statement in two minutes, you heard here that there's a dispute with regard to what was said, and there's one person who was able to resign someone else's position without them knowing and without any ability to respond to it.

And this is a C-suite position. And so what the Commission is being asked to do is say that that's just fine. And we heard from Dr. Cunningham, again, verbal terminations come in and are not in good standing, and those people leave. They up and leave. They pack up and they walk out. They don't continue



working. And Pete continued working.

There's all of the evidence in the world he denied it every single time. He continued working. He thought it was resolved. He never said it. So there's just not -- there's not enough here to impact someone's livelihood in the way that it has been and being shut out completely. He has been out of work since the 6th.

It's time to make a decision, reverse this, and consider it a dismissal, and none of the due process related to a dismissal was followed here. So even just ignoring the he said/he said situation, this Commission should find on procedural grounds that this thing was not done right.

So we ask for you to reverse it and all of the other things that we ask in our prayer, restate him with the same position, all of the back pay, all of the benefits, give him back his office and let him get back to work. Thank you.

So is there any other business that needs to be --

MS. KAUFMAN: Yes, I would like to make a closing statement as well.

MS. FRIERDICH: Oh, sure.

CLOSING STATEMENT ON BEHALF OF RESPONDENT

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Page 161

MS. KAUFMAN: So what you are being asked to find today is rather whether there is competent and substantial evidence for Dr. Cunningham's decision. We are not denying the existence of a factual dispute. He said/he said is a pretty good way to put it, and I don't envy you your task today because what you have before you is to determine whether Mr. Wyatt's resignation was supported by competent and substantial evidence based upon a total of what was said in 58 seconds.

But what we have heard are indications of a lack of credibility, a story that changes, a conversation that doesn't occur at all, and then it does, and then it was heated, and an F word we can't remember using, until we got a good answer for why about a month and a half later.

What you have not heard is any reason to gin up a resignation, any reason to claim that Mr. Wyatt left and said those words, "I fucking quit" when he didn't. Because Ms. Frierdich is absolutely right about that. Nobody is disputing that Mr. Wyatt was a competent employee.

But what we do have is competent and substantial evidence to hold him to his word, and that's all the Commission is being asked to do today. Thanks.

Page 162

MS. FRIERDICH: So my question, Mr. Goldkamp, was, is there an opportunity or any indication that the Commission wants to ask Pete any questions, or is that part of the hearing process? I don't want to cut that off, if there are any questions.

MR. GOLDKAMP: The commissioners have opportunities to ask questions of -- of all witnesses as, you know, as they're called. I guess we can confirm before Mr. Wyatt is, you know, let off the proverbial stand if they want to ask him any questions.

MS. FRIERDICH: Okay. Well, I thank you for your time. Is there any other business? I'm not familiar with these as you are, Mr. Goldkamp.

MR. GOLDKAMP: So I believe the hearing officer has one final statement to close this out and then the hearing can go off the record, but the Commission is going to need to, you know, do some procedural stuff to go back in open session and end the meeting.

COMMISSIONER NUNN: Before we do that, I would move that we will allow everybody to give ten days to file either amended findings of fact and conclusions of law or for the County to file the same, but -- and to include the statement from the young lady that made

Page 163

the statement. We want to do that. I would so move.

MR. GOLDKAMP: So before -- before we do that, can I -- can I give the Commissioners some information that I think may be...

So the findings -- generally what the Commission has done is -- and this will be in the final statement that Commissioner Booker was about to make, is it's 30 days after the receipt of the transcript. And I understand if you want to shorten that period, that's -- that's certainly within your prerogative.

But the findings of fact and conclusions of law cite the transcript, so I don't know how the County or opposing counsel can submit -- submit a findings of fact and conclusions of law before getting a copy of the transcript.

So generally we've made a date that it's basically -- what we usually do is 30 days from the receipt of transcript, but it's usually a date from the receipt -- receipt of the transcript.

MS. FRIERDICH: Is there a --

COMMISSIONER NUNN: I would move to amend to make 30 days -- please do the amendment, as well as the County, have their chance to make findings of facts and conclusions of law within that time period.

Page 164

COMMISSIONER BOOKER: Someone else was speaking? Did someone else have something to say before you said that?

MS. FRIERDICH: I was -- this is Katherine. I was just asking whether or not we can expedite the transcript, if that's possible? We are at March 30th and Mr. Wyatt has been out of work and unpaid since February 6th.

COMMISSIONER BOOKER: Either way, we still have 30 days, yes.

COMMISSIONER NUNN: Can I have a motion on those?

COMMISSIONER BOOKER: I'll second.

COMMISSIONER HOFFSTEN: And may I just say before we vote, I'm not sure that we're in a position as a Commission to expedite the transcript itself, I don't think.

COMMISSIONER BOOKER: Exactly.

COMMISSIONER HOFFSTEN: Noah, is that the case?

MR. GOLDKAMP: I would say I think --

MS. FRIERDICH: That was to the court reporter, I believe.

COMMISSIONER HOFFSTEN: That's right. We can certainly amend the period of time we're allotting once the transcript is produced, but we can't really

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 993 of 1127 PageID #: 996

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM





impact the timeline of when the transcript is ready to be sent out. Correct?

MR. GOLDKAMP: Yes.

COMMISSIONER BOOKER: Yes, exactly. But I'll second the motion on the floor.

COMMISSIONER HOFFSTEN: Could you repeat the motion back, Commissioner Nunn?

COMMISSIONER NUNN: Yes, I would move that we would allow the 30 days for the -- the ability to amend findings of fact and conclusions of law, and the County to be able to do the same, including filing the statement that was supposedly made by -- I can't think of her name now -- the statement from the young lady that was not included with anything that was sent by the County.

MS. FRIERDICH: Well, I --

COMMISSIONER BOOKER: I believe that will be included -- will that not be included because you asked for that or not?

MS. FRIERDICH: That was not presented here as an exhibit, so it's not in the record and so I would object to anything outside of the record being included in the record by the County at this point, yeah. So we need to -- we need to stick with what they presented. That's my motion.



COMMISSIONER BOOKER: Can she make a motion?

COMMISSIONER HOFFSTEN: Commissioner Nunn, could we amend your motion to remove the statement that you referred at the end?

COMMISSIONER BOOKER: Oh, goodness. What is the final motion?

COMMISSIONER NUNN: 30 days for amendment of the findings of fact and conclusions of law, and for the County to be able to have that same 30 days, but I included the statement. So now there's an objection to that.

MS. KAUFMAN: I would -- I would respond to the objection that the Commission does have the sua sponte right to request as part of their investigation any documentation they would like under Civil Rule -- Service Rule 22 and to interview any witnesses they would like and to conduct an investigation under such parameters as they see fit. You've got a lot of broad discretion here.

COMMISSIONER BOOKER: I would like to see this transcript. So I -- I'm going to second the motion that -- that Commissioner Nunn made.

COMMISSIONER HOFFSTEN: I guess I'm just confused about what exactly the statement, who the individual the statement is from?



COMMISSIONER BOOKER: So the young lady was interviewed by the HR person, who is also the assistant to Cunningham.

MS. KAUFMAN: Ms. Pike.

COMMISSIONER BOOKER: Ms. Pike. And that was not -- that was not originally included in the discovery or something like that. So we want to see that.

COMMISSIONER HOFFSTEN: Then I will support the motion.

MS. FRIERDICH: The problem with that is due process, that we are not able to confront that witness on that statement, as we have not been provided that statement.

So while it is true that the Commission can do an investigation, that witness testified today, but the statement was not before us so we were not able to ask her questions about it. So Pete's due process is in jeopardy by including evidence that was not presented by the County.

COMMISSIONER BOOKER: This is not a regular court of law. What is the remedy? This is not a regular court of law. We would like to see this statement.

COMMISSIONER NUNN: That's the motion.



COMMISSIONER BOOKER: I still second it.

All of those in favor?

Aye.

COMMISSIONER NUNN: Aye.

COMMISSIONER HOFFSTEN: Aye.

COMMISSIONER BOOKER: Does anyone have any other motions or issues they'd like to present?

MS. FRIERDICH: No.

COMMISSIONER BOOKER: Okay. Then closing, you will be notified when the transcript of these proceedings have been received in the division of personnel. Findings of facts and conclusions are due to the County HR within 30 days after receipt of the transcript, which is March 30th, 2026. The Commission will --

MR. GOLDKAMP: We don't know the date of the receipt of transcript.

COMMISSIONER BOOKER: Oh, I thought it was -- I thought it was 30 days from this date? I thought you were -- I thought that was the date that I'm saying, 30 days from this date. Is that not what we're saying?

MR. GOLDKAMP: My understanding is it's 30 days after receipt of the transcript.

COMMISSIONER BOOKER: Okay. So then we do not

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM



know that date. Okay. Well, then -- which date is unknown. The Commission will consider all documents at their next regular meeting after the transcripts are received. You will receive written notification of that meeting.

Thank you to everyone who is involved. This hearing is concluded.

MS. FRIERDICH: Thank you.

MS. KAUFMAN: Thank you.

---

Thereupon, at 4:18 p.m., on Monday, March 30, 2026, the hearing was concluded.

---



CERTIFICATE OF OFFICER

I, JULIANA F. ZAJICEK, a Registered Professional Reporter and Certified Shorthand Reporter, do hereby certify that I reported in shorthand the proceedings had at the remote hearing aforesaid, and that the foregoing is a true, complete and correct transcript of the proceedings of said remote hearing as appears from my stenographic notes so taken and transcribed under my personal direction.

IN WITNESS WHEREOF, I do hereunto set my hand of office this 12th day of April, 2026.

JULIANA F. ZAJICEK, Certified Reporter

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

WORD INDEX


< 1 >
**1** 12:*4* 59:*22, 25* 131:*17* 143:*5*
**10** 151:*21*
**10:00** 138:*17, 20*
**10:15-ish** 38:*23*
**100** 112:*17*
**105** 4:*6*
**106** 3:*4*
**109** 4:*8*
**11:30** 140:*22*
**116** 4:*9*
**118** 4:*11*
**12:00** 1:*3*
**12:23** 16:*18*
**12:30** 131:*2*
**12:35** 131:*2*
**12:40** 131:*14, 18*
**12:50** 82:*14* 83:*12* 84:*5* 132:*17*
**12:55** 132:*17*
**122** 4:*13*
**12-something** 91:*12*
**12th** 146:*6, 8* 170:*13*
**14** 29:*5*
**15,154** 25:*12*
**152** 4:*14*
**156** 4:*15*
**159** 3:*6*
**15th** 141:*13*
**16** 157:*19*
**161** 3:*7*
**16th** 146:*24* 157:*21*
**17th** 150:*11*
**19** 25:*15* 98:*2* 99:*3*
**19th** 122:*15*
**1st** 150:*20* 152:*10*

< 2 >
**2** 5:*20*
**2.1** 5:*21*
**2:00** 137:*20*
**2:32** 106:*3, 7*
**2:37** 106:*5*
**2:39** 106:*7*
**20** 25:*16*
**2011** 77:*19*
**202.100** 25:*13*
**2022** 77:*21*
**2023** 85:*23*
**2024** 77:*16* 94:*18* 122:*15*
**2025** 95:*1*
**2026** 1:*3, 12* 16:*18* 28:*12* 31:*6* 86:*16* 87:*17* 168:*14* 169:*12* 170:*13*
**20th** 150:*15, 19*
**21** 25:*15*
**22** 23:*2* 25:*15* 166:*16*
**25** 66:*2*
**26th** 150:*14*
**28** 3:*3*

< 3 >
**3** 11:*21* 14:*18* 108:*25* 143:*5*
**3:00** 111:*9* 137:*21*
**30** 1:*3, 12* 3:*13* 34:*13* 38:*22* 163:*8, 18, 23* 164:*10* 165:*9* 166:*7, 9* 168:*13, 19, 21, 23* 169:*12*
**30th** 5:*5* 16:*17* 164:*6* 168:*14*

< 4 >
**4:00** 111:*9*
**4:18** 169:*11*
**4:30** 65:*4* 71:*15*
**4:57** 145:*15*
**40** 3:*14*
**45** 34:*13* 38:*20, 22*

< 5 >
**5:30** 130:*16, 19* 138:*5, 7*
**55** 3:*15*
**57** 3:*16*
**58** 129:*1, 2, 8, 10* 132:*24* 133:*6* 155:*18, 20* 156:*7, 23* 157:*2, 13* 158:*4* 161:*10*
**58-second** 133:*1*
**5th** 28:*12* 31:*6* 32:*1, 22* 33:*12* 37:*21* 39:*11* 47:*11, 18* 49:*21* 50:*25* 51:*24* 56:*21, 24* 57:*16, 17, 18, 25* 62:*7* 67:*19* 68:*8, 14* 70:*10, 13, 14, 15* 71:*10, 13* 72:*12* 73:*14* 74:*12* 78:*13* 79:*2* 81:*20, 22* 83:*22, 24*

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 996 of 1127 PageID #: 999

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM


86:16
87:17
89:11
95:25
107:19
110:11, 12, 25 113:22, 25 114:5
119:5, 24
124:21, 23
125:1
134:4
135:15
138:16
141:14, 17
149:17

< 6 >
**6** 66:15
**6:50** 146:3
**61** 3:18
**67** 3:19
**6th** 46:13, 15 47:13
48:8 56:24
69:14
71:19 72:1, 13 79:4, 7
82:3, 8, 15
83:12, 22, 24 102:6, 16 107:20, 21 111:22, 23, 25
112:6, 10
113:2
120:14
121:1, 4
122:12
124:21
135:15
140:21
141:15
143:19
144:2
160:8 164:8

< 7 >
**7.020** 25:11
**74** 3:20
**77** 3:22

< 8 >
**8** 125:2
**8:00** 127:25
**81** 3:23
**85** 4:4

< 9 >
**9:00** 34:9
**9:03** 41:3
130:24
141:11
**9:06** 141:11
**9:30** 34:15
38:22
**9:30-ish**
34:10
**9:50** 45:1
**93** 4:5
**9th** 145:15

< A >
**a.m** 127:25
138:17, 20
145:15
146:3
**ability**
49:8
159:19
165:9
**able** 57:7, 9 60:14, 15
97:3 98:21
101:15
125:17
131:9
140:18
159:18
165:11
166:9
167:12, 18
**Absolutely**
32:3 35:25
39:9 46:7
55:8 56:16
116:18
144:9
148:4
156:8
158:23
161:20
**accept**
11:15
24:12, 15
36:12
43:19
78:23 79:5, 12 84:3
87:25 89:6
90:14
93:12, 24
98:19
107:8, 11
142:23
**acceptable**
87:14
**acceptance**
22:4 29:11
56:5 81:3
**accepted**
22:6 23:18
29:7 37:19
38:3 47:23
48:21
79:15 81:8
82:19
87:18, 20
90:11, 16, 20, 22 94:7, 25 98:17
105:9
108:3
131:20
132:11
133:19, 25
150:5
**accepting**
26:9 87:15
145:18
**access** 42:7
57:10
**accidentally**
12:14

**accommodations**
101:13
**account**
48:21, 23
49:7 55:19
60:7
100:14
149:9, 12
158:21
**accounts**
18:5

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**accuracy** 48:*6*
**accurate** 34:*3*
**actions** 87:*12*
**active** 125:*9* 126:*8*
**ADA** 101:*13*
**adamant** 136:*25*
**add** 25:*16* 60:*6* 116:*7* 132:*24*
**added** 116:*3*
**adding** 60:*1*
**additional** 19:*24* 67:*8*
**addressed** 12:*13*
**admin** 57:*11*
**administration** 101:*21*
**Administrative** 6:*21*
**administratively** 11:*14*
**admitted** 16:*5* 18:*1* 80:*10* 92:*15*
**advance** 18:*15*
**adversarial** 23:*24*
**advice** 11:*2*, *6* 78:*3* 100:*22*
**affect** 132:*13*
**affidavit** 50:*23* 68:*17*, *18*, *21* 69:*4*, *5*
**aforesaid** 170:*7*
**afternoon** 28:*10*, *11* 69:*17* 82:*8* 91:*12* 96:*2* 108:*19* 111:*7*, *9* 117:*18*, *19* 120:*18*, *19*, *25* 136:*13*
**agenda** 5:*24*
**aggressive** 36:*18*, *19*
**agitated** 70:*14* 111:*19* 120:*12*
**ago** 55:*17* 153:*11*
**agree** 13:*7* 19:*8* 56:*17* 154:*22*
**agreement** 19:*4*
**ahead** 5:*1*, *19* 8:*18*, *25* 16:*24*, *25* 65:*14* 91:*14* 154:*10*
**air** 142:*24* 145:*19*
**Akram** 5:*15*
**allege** 53:*21*
**alleged** 33:*2* 81:*19* 145:*8* 149:*9*
**allegedly** 148:*16*
**allotting** 164:*24*
**allow** 9:*5* 12:*23* 27:*22* 162:*22* 165:*9*
**allowing** 115:*2*
**amend** 159:*11*, *13* 163:*22* 164:*24* 165:*10* 166:*3*
**amended** 23:*22* 162:*23*
**amendment** 163:*23* 166:*7*
**angry** 62:*25* 63:*1* 65:*20* 66:*3* 71:*5* 72:*15* 73:*10*, *24* 110:*22* 156:*12*
**animal** 94:*22*
**answer** 23:*15* 52:*21* 63:*21* 79:*23* 80:*1*, *23* 137:*21* 161:*15*
**answered** 95:*7* 99:*20* 118:*18* 128:*19*
**answering** 72:*3* 94:*3*
**answers** 154:*9*
**anticipate** 29:*13*
**anybody** 8:*5* 67:*3* 70:*6* 90:*24* 100:*24* 111:*24* 113:*18* 116:*17* 139:*15*
**anybody's** 25:*14*
**anymore** 141:*19*
**apologize** 22:*9* 35:*7* 65:*9* 70:*18* 71:*1*, *2* 130:*4* 136:*6*, *13*
**apologized** 147:*16*
**apparently** 131:*12* 153:*17*
**Appeal** 5:*22* 15:*7* 16:*2* 40:*20* 109:*24*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

118:5 133:1 146:25
**APPEALS** 1:7 5:21
**appear** 17:17
**appears** 15:9 170:9
**Appellant** 1:8 2:12, 19 3:4, 6 15:8 106:20 159:14
**appellant's** 18:9 19:3
**appellate** 104:7
**appended** 147:3
**apple** 61:9
**application** 102:3
**appoint** 6:2 7:8
**appointed** 49:6 56:9 104:16
**appointing** 11:4, 10 15:10 28:23 87:7 93:11 98:1 107:3 115:4
**appreciate** 12:8 55:7 59:11 60:13 93:9 103:10 105:3
109:25 114:20 118:6 121:13
**approach** 135:14
**approached** 142:23 143:21 144:4
**appropriate** 7:18 8:8
**approximately** 43:12
**April** 150:20 170:13
**argument** 26:14 111:17 133:17 135:15, 16
**arrangements** 55:18
**arrived** 30:1
**arriving** 144:1
**Article** 25:11
**ASAP** 112:16
**aside** 66:21
**asked** 33:21 34:3, 20, 24 35:8, 11, 17 37:4, 15 38:2, 7, 17 39:19 40:9 41:5 43:18, 21 44:1, 4, 6 48:3
50:23 51:13 54:25 55:17 59:6 62:17 64:3, 4 68:16, 22 73:22 78:22 79:5, 12, 20 80:4, 8, 13, 17 106:24 107:25 125:16 132:2 141:22, 25 154:7, 18 156:12 157:6 159:21 161:1, 25 165:19
**asking** 24:17 35:3, 21 51:15, 17 52:4 56:17 62:15 67:25 71:4, 5 72:15 73:10, 11 83:18 99:20 103:7 108:9 141:12 153:16 154:14 155:25 159:13 164:5
**asks** 107:9 114:25
**assigned** 12:3
**assignment** 48:5
**assignments** 152:4, 5
**assistance** 141:12
**assistant** 29:11 49:13 57:11 69:20 77:12 91:1 93:1 114:13, 15 167:3
**assistant's** 42:9 126:9, 11
**Associate** 15:12
**associated** 31:1, 15
**assumed** 49:11 73:1
**assuming** 13:9
**assumption** 58:21
**attachments** 147:3
**attempted** 29:9
**attendance** 12:17
**attention** 46:17, 20

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**attorney** 7:1 8:8 15:10, 11 19:3
**attorneys** 15:16 16:9
**audible** 86:7
**audience** 35:8
**audio** 86:10 119:2
**audit** 151:20, 21
**August** 122:15
**authority** 11:4, 10 15:11 25:9 28:23 49:6 56:10 87:7 93:11 98:1 101:25 104:16 107:3 115:4
**available** 10:2, 8 42:10 126:12 130:12
**avoid** 116:20
**aware** 44:24 46:12, 14 50:19 58:13 65:17 81:18, 21 83:19 84:11 112:1, 8 121:3 136:24
**Aye** 7:13, 14, 15, 24 8:1, 3 14:3, 4, 5 25:25 26:1, 2 28:2, 3 115:23, 24, 25 168:3, 4, 5

**< B >**

**back** 14:11, 12 22:3 33:21 34:1, 12 44:10, 23 55:23 59:5 63:24 66:17 67:17 72:6 77:23 88:24 89:1, 25 94:17 96:24 97:12 98:18 105:22 106:2 107:2 113:7 125:13, 21 126:21 128:8 130:9, 20 131:1 136:4, 15 138:15 141:14, 15 144:19 147:12 148:21 150:4 157:4 160:17, 18, 19 162:20 165:7
**back-and-forth** 92:11, 20
**background** 32:16 37:7 117:20
**backing** 43:14
**bad** 70:16
**badge** 55:19 84:8 91:15
**ball** 134:16
**banter** 124:7 127:9
**based** 92:4 100:13, 19 103:25 104:1 107:22 149:9 161:9
**basically** 35:21 36:10 44:6 163:18
**basis** 78:1, 2
**beating** 36:20 50:11 58:16 128:24
**becoming** 65:20
**began** 35:1 122:15 125:2, 7
**beginning** 62:11 95:19
**behalf** 21:6 28:9 78:23 79:12 81:6 84:3 90:20 106:20 133:24 159:14 160:25
**behavior** 124:16
**belief** 39:8
**believe** 7:16 9:21 12:21 13:10 16:23 18:5 19:4 25:13 29:1 30:1 40:6 43:17 45:1 50:19 61:20 82:14 83:24 94:3 106:16 113:3, 8 114:3 115:3 130:24 139:22 142:10, 13 147:12 159:10 162:16 164:22

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

165:17
**belong** 125:5
**benefit** 15:19 30:18 37:5
**benefits** 160:18
**bereavement** 20:25
**best** 58:24 81:8
**Billy** 91:21
**birthday** 157:22
**bit** 29:21 31:14 67:17 76:23 99:17 128:9 140:17
**Black** 72:22
**blind** 18:16
**blowing** 128:14 130:8 137:3
**board** 101:25 102:3 105:24 146:16, 17
**Bogan** 94:20
**Booker** 2:4 5:12, 13 6:6, 10, 11, 14, 16, 19, 21, 25 7:3, 5, 9, 14 8:2, 3 13:2, 7, 12, 17, 22, 25 14:2, 5, 19, 22, 25 15:3, 5, 19, 23 17:21 18:4, 17, 20, 24 19:8 20:15, 16 21:13, 22, 25 22:7, 16 23:11 24:6, 10, 14, 18, 23, 25 25:4, 21, 25 26:7, 8, 16, 25 27:4, 8, 12, 15, 18, 22 28:1, 4, 7 29:18 30:2 59:18 75:19, 23 76:2, 7, 10, 13, 16 105:17 106:1, 5, 11, 16, 18 108:20 115:20, 22, 25 116:10 117:4 159:7 163:7 164:1, 9, 13, 18 165:4, 17 166:1, 5, 20 167:1, 5, 21 168:1, 6, 9, 18, 25
**booted** 104:6 151:19
**bought** 129:15
**branch** 30:25
**break** 61:13
**breakout** 11:15 12:2, 3
**Brenda** 130:15 137:17 139:2
**bridge** 21:10
**brief** 18:11 22:4 23:17 24:5, 13, 15 75:22 76:1 122:16 152:20
**briefly** 106:8 111:5
**bring** 8:5 21:16 75:9 116:24 139:10 158:3
**bringing** 10:20 21:15 101:10
**brings** 18:6
**broad** 166:18
**BROADUS** 4:10 19:10 20:19, 21 117:14, 16, 18, 23 118:3 121:18, 19 123:1
**brought** 9:12 22:22 142:13
**building** 46:10 79:11 83:12 102:7, 11 104:6 127:20 131:2
**bullshit** 66:22
**business** 49:8 52:11, 17, 19 58:2 119:20 135:20 160:20 162:14
**busy** 33:19
**butchering** 101:25
**button** 7:7 11:25
**buy** 129:13
**Bye-bye** 84:21

**< C >**
**cabinet** 118:16
**calendar** 57:8 60:14 63:17, 19 64:14, 20, 22 72:10 120:1 127:24 129:22

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 1001 of 1127
PageID #: 1004

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM


136:17 142:20
**call** 5:1, 4, 6 7:21 9:18 14:7 18:18 21:17, 19 25:5 26:11 28:17 29:18, 19 34:11 35:9 37:10 43:24 49:4, 7 50:24 53:18 59:20 63:24, 25 70:13 73:17 75:23 76:2 80:8, 9 83:11 84:17 89:4 90:4 106:8, 14 107:3 108:11 112:16, 17 117:13 121:21 125:13 126:3, 19, 20 128:22, 25 129:4 133:1, 7, 8 137:11 147:12 151:14 155:12, 15, 18 158:4, 11
**called** 9:11 20:21 28:22 30:11 33:16, 21 34:5 37:11 42:11 43:24 44:4 60:24 63:21 72:2, 5 73:16, 17 77:2 85:10 87:2 89:16 90:3, 22 100:20 101:16 109:19 112:18 117:24 120:18 122:4 125:11, 15, 19, 21 132:18 147:22 162:9
**Call-in** 11:21 14:17
**calling** 17:18 41:2 159:5
**calls** 26:17, 18 33:22 52:13 53:17 64:24 96:25 97:13 112:9 125:8, 9 126:19, 21 147:10
**calmly** 132:19
**camera** 11:16 109:14
**cancel** 72:12, 24 73:1, 4 140:9 154:12
**cancellation** 140:8
**cancelled** 71:4 130:21 140:2 141:3 156:11
**cancelling** 72:18
**cancels** 72:19 140:11
**candidates** 151:22
**capable** 156:5
**capacity** 142:17
**car** 43:14 49:22 125:20, 21 131:3, 4, 8 132:19 138:1, 9
**Cardinals** 113:14
**care** 12:8 31:19 32:16 54:15 72:9 94:22 152:4
**career** 35:23 122:17
**carefully** 86:8
**CARLTON** 4:12 122:3, 10
**Carter-Hicks** 5:16
**case** 11:5 87:23 91:5, 19 99:12 104:25 149:8 164:19
**catch** 25:2 130:13 137:24 138:14
**catching** 135:5
**catty-corner** 110:9
**caught** 32:19
**cause** 19:18 140:3 152:6
**cell** 33:17 52:11, 18 127:3, 5, 6
**Centene** 112:2 121:4 130:25 131:10

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

140:22
141:8
142:9, 16
**Center** 31:3
131:16
143:2, 16
158:16
**Centers**
19:13
146:17
**certain**
17:16 42:1,
22 148:4
**certainly**
106:22
163:10
164:24
**CERTIFICATE**
170:1
**Certified**
1:16, 17
170:4, 19
**certify**
170:5
**cetera**
124:14
128:24
147:5
**CFO** 114:7
129:18
139:11
**chair** 127:3
**chairman**
146:15
**Chairwoman**
5:2, 8
7:23 11:15
**chalk** 153:2
**chance** 27:7
37:3 163:24
**change**
42:23 101:9
**changed**
79:23
**changes**
152:3
161:12
**changing**
79:25
**Chantal** 2:6
**chart** 42:8,
20, 23 126:8
**charter**
25:8, 10
**chat** 12:12
78:4
**check** 32:8
58:17
64:20 66:7
112:15
147:11
**Chief** 19:12
30:24
31:13
42:21
122:13
123:2
138:22
**choose** 6:1
21:15
**cite** 22:21
163:13
**CIVIL** 1:2
2:3 15:6
16:9 25:13
29:3, 16
44:17
98:15
101:25
104:12, 15
152:1
166:15
**claim** 161:18
**claimant**
21:19
**clarified**
136:11
**clarify**
23:24
56:19 63:8
88:18 136:5
**clarity**
73:17
**clear** 19:22
40:9 73:12
94:4 119:2
136:12, 15
**clinical**
31:2, 19, 24
32:17
123:16, 17
152:2
**close** 29:13
162:17
**closed** 5:24
7:18, 21
8:6, 9, 18,
20, 23 9:3
14:7, 16
17:7, 8
119:14
127:17
**closely**
62:1 65:2
**CLOSING** 3:6,
7 26:14
27:9, 24
159:8, 14
160:23, 25
168:9
**CMO** 114:7
**coat** 62:14
**cold** 24:2
**collect**
17:5 22:12
23:4, 8
84:8
**collected**
92:6
**column** 6:24
**come** 21:10
32:15
36:19 59:1
66:17
87:13
88:11, 25
91:22
93:16, 23
105:22
106:2
153:22
159:23
**comes** 66:6
93:21 98:10
**coming**
18:15 24:2
44:23 46:7
87:3 88:9
92:17
93:20
100:5
102:8, 10
108:15
**COMMISSION**
1:2 2:3
6:1, 3
10:17 11:3,
6 12:23
15:6 16:3,

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

6, 10 17:4, 9, 13 18:13, 15 22:6, 11, 13 23:3, 7, 13, 19 24:1, 12 26:23 31:14 51:9 104:16 106:25 107:11 115:2, 7 144:24 150:11 159:21 160:13 161:25 162:4, 18 163:6 164:16 166:13 167:15 168:14 169:2
**Commissioner** 2:4, 5, 6 5:4, 9, 10, 11, 12, 13, 14, 15, 16 6:5, 8, 10, 11, 13, 14, 16, 18, 19, 21, 25 7:3, 5, 9, 10, 11, 13, 14, 15, 20, 22, 24, 25 8:1, 3 11:19, 23 12:2, 6, 9 13:2, 6, 7, 12, 17, 22, 24, 25 14:1, 2, 3, 4, 5, 6, 18, 19, 20, 22, 25 15:3, 5, 19, 23 17:21 18:4, 17, 20, 21, 24, 25 19:8 20:7, 10, 14, 16 21:13, 22, 25 22:2, 7, 16 23:11 24:6, 10, 11, 14, 16, 18, 19, 23, 25 25:4, 21, 22, 23, 24, 25 26:1, 2, 7, 8, 9, 16, 25 27:2, 4, 6, 8, 10, 12, 15, 18, 20, 22, 25 28:1, 2, 3, 4, 7 29:18 30:2 59:18 75:19, 23 76:2, 7, 10, 13, 16 105:17 106:1, 5, 11, 13, 16, 18 108:20, 21, 22 115:10, 13, 14, 17, 20, 21, 22, 23, 24, 25 116:10 117:4 145:2 159:7 162:21 163:7, 22 164:1, 9, 11, 13, 14, 18, 19, 23 165:4, 6, 7, 8, 17 166:1, 2, 5, 7, 20, 22, 23 167:1, 5, 9, 21, 25 168:1, 4, 5, 6, 9, 18, 25
**COMMISSIONERS** 2:3 11:8 16:2 17:16 24:2, 22 27:1 28:10 162:7 163:3
**Commission's** 11:7 108:16
**commitment** 125:6
**committed** 129:13
**common** 124:7 155:2
**communicate** 37:12 81:5 83:25 93:22 104:4
**communicated** 29:11
**communication** 51:14 105:11
**Community** 19:12 72:23
**company** 92:7
**compel** 17:16
**compelled** 17:12 23:1
**competent** 161:2, 8, 22, 23
**complaining** 124:16
**complaint** 124:18
**complaints** 152:13, 14
**complete** 170:7
**completed** 152:9
**completely** 101:9 160:7
**compliant** 66:7
**computer** 11:16, 22 84:8 86:10 97:5, 7
**con** 139:12
**concern** 58:17 100:19 133:15 140:4, 8
**concerned** 73:9 90:9 100:12 101:3, 4 156:14
**concerning** 15:16, 17
**concerns** 87:4 88:9

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**conclude** 28:*20*
**concluded** 169:7, *12*
**conclusion** 29:*14*
**conclusions** 18:*10*, *12* 22:*5*, *19* 23:*18* 24:*4*, *8* 159:*11* 162:*23* 163:*12*, *15*, *25* 165:*10* 166:*8* 168:*12*
**concur** 13:*6* 19:*8* 24:*10*
**condition** 47:*15*
**conduct** 16:7 33:*2* 52:*11*, *17* 119:*19* 166:*17*
**conducted** 58:*9*
**conducting** 58:*2*
**confer** 105:*21*
**confirm** 14:*17* 41:*25* 46:*1* 60:*1*, *9* 125:*25* 157:*11* 162:*10*
**confirmation** 52:*3* 159:*6*
**confirmed** 42:*14* 107:*13* 126:*1*, *3* 136:*18*
**conflicting** 18:*5*
**conform** 16:*16*
**confront** 167:*12*
**confronted** 82:*14* 124:*15*
**confused** 126:*18* 152:*24* 153:*3* 158:*22*, *23* 166:*24*
**connection** 47:*3*
**consecutive** 148:*14*
**consecutively** 99:*4*
**consider** 16:*13* 17:*20* 26:*23* 101:*12* 160:*10* 169:*2*
**considered** 16:*21*
**consistently** 144:*11*
**consists** 61:*24*
**consumer** 146:*16*
**contact** 37:*20* 55:*24* 62:*18* 63:*14* 89:*15*
**contacted** 55:*18*
**contacting** 56:*14*
**contemplating** 86:*17*, *19*
**contemporaneous** 44:*21*
**context** 126:*5* 130:*5* 132:*5* 136:*18* 154:*2*, *5*, *13*
**continually** 149:*1*
**continue** 49:*8* 108:*6* 109:*2* 116:*8* 159:*25*
**continued** 52:*6* 108:*6* 125:*19* 128:7 129:*16* 131:*4*, *10* 132:*9* 137:*11* 148:*17*, *22* 160:*1*, *3*
**continuing** 45:*6* 95:*12*
**contract** 139:*12*
**control** 94:*23*
**convened** 15:*1*, *4*
**conversation** 28:*25* 36:*9* 37:*17* 38:*22*, *25* 39:*17* 43:*5*, *6*, *10* 44:*2* 47:*4* 50:*6*, *11* 51:*8* 52:*2*, *9* 53:*12*, *21* 54:*10* 58:*11*, *20*, *23* 63:*9* 67:*22* 68:*12* 73:*13* 79:*16* 80:*12*, *18*, *20* 81:*2*, *18*, *21* 83:*3*, *8* 89:*19*, *20* 90:*8* 91:*8* 92:*12*, *13*, *14*, *16*, *18* 97:*23* 104:*19* 105:*1* 113:*13* 116:*18* 120:*22* 129:*20* 134:*13* 137:*6* 139:*11*, *12*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM


154:*13*, *23* 155:*24* 156:*13* 161:*13*
**conversations** 46:*9* 47:*1* 50:*8* 51:*3*, *15*, *16* 53:*11* 64:*25* 78:*8* 118:*24* 120:*5* 129:*17* 134:*14* 139:*14* 141:*9* 157:*8*
**COO** 118:*12* 120:*23* 122:*17*, *23* 123:*15*, *16* 142:*17*
**cools** 73:*21*
**coordinate** 29:*22*
**copied** 50:*20*, *22*
**copies** 16:*4* 17:*24*
**copy** 10:*14* 75:*12* 103:*17* 104:*16* 163:*16*
**corner** 11:*25*
**Correct** 7:*4* 8:*23*, *24* 14:*20* 18:*2* 21:*24* 41:*6*, *7*, *16*, *17*, *19* 43:*24*, *25* 45:*25* 46:*13*, *15*, *16*, *18* 47:*8* 48:*9*, *25* 49:*1*, *18* 50:*1*, *16*, *17*, *21* 51:*24* 52:*12*, *24* 53:*9*, *25* 54:*23*, *24* 56:*21*, *22* 57:*2*, *18* 67:*20* 69:*20* 72:*10* 82:*4*, *5*, *23* 84:*9*, *10* 95:*16*, *21*, *23*, *24* 99:*4* 100:*16* 102:*16*, *20* 111:*1*, *2* 115:*12* 122:*14* 123:*12* 124:*2* 127:*20* 133:*1*, *25* 134:*1* 137:*12* 140:*23* 141:*5* 142:*18* 144:*25* 145:*8*, *22*, *23* 146:*11*, *13* 147:*1*, *2*, *6* 149:*21* 150:*1*, *11*, *16* 165:*2* 170:*8*
**correcting** 144:*3*
**corrective** 87:*12*
**correctly** 111:*5* 117:*14*
**correspondence** 144:*24* 145:*7*
**counsel** 51:*3*, *13*, *16*, *17*, *20* 53:*22* 67:*14* 69:*22* 81:*15* 93:*9* 103:*8*, *13* 133:*17* 149:*19* 163:*14*
**Counselor** 15:*12* 89:*25*
**counsel's** 103:*2*, *20*
**counts** 113:*4*
**COUNTY** 1:*1* 2:*9*, *21* 10:*11* 15:*6*, *11*, *12*, *13* 17:*14*, *18* 19:*17* 20:*3* 21:*18*, *22* 22:*1*, *15* 23:*6*, *13* 25:*4*, *10*, *11*, *12*, *20* 26:*11* 28:*4* 30:*23* 40:*23* 47:*4* 49:*8* 52:*12*, *19* 58:*2* 59:*18* 75:*19* 77:*11*, *18*, *22* 85:*18* 89:*1*, *25* 103:*2*, *19* 105:*17*, *19* 107:*1*, *2*, *21* 108:*7*, *10* 116:*11* 118:*9* 120:*17*, *20* 123:*12* 124:*16* 125:*4* 127:*24*, *25* 128:*1* 133:*17* 145:*7* 147:*20* 148:*1* 149:*4*, *16* 162:*24* 163:*14*, *24* 165:*11*, *15*, *23* 166:*9* 167:*20* 168:*13*
**couple** 17:*2* 22:*10* 25:*7* 57:*6* 80:*15* 90:*25* 105:*22* 112:*20* 126:*19*, *20*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM


132:15
134:18
141:9
147:10
**course** 33:5
38:24
77:22 88:23
**court** 30:18
61:6 77:7
85:15
123:4
164:21
167:22, 23
**courtroom**
16:17
**cracked** 63:5
**crazy** 157:20
**credibility**
161:12
**crew** 152:2
**crews** 143:15
**critical**
124:22
**cross** 21:10
121:15
**CROSS-EXAMINATION**
40:16
67:11
81:12 93:6
116:13
152:18
**C-suite**
93:14, 15, 20, 25 94:6
95:4, 6
99:16, 22
100:2, 7, 8
134:14
159:20
**C-team**
157:18, 24
**Cunningham**
1:9 2:15
4:3 8:9
9:18 10:18
11:3, 9
12:24
13:15, 18
14:9, 15
21:7 28:22, 25 29:7
31:5 37:11, 13 39:13
43:24 44:4, 5 49:5, 9
51:4 52:23
53:7, 9
56:3, 7, 9
68:23
75:21
77:13
78:19, 20
79:12 81:7
82:2 83:21, 23 84:25
85:5, 9, 14
87:6 93:4, 8 105:8, 15
107:13
108:1
115:3, 10
116:2
117:1
118:17
131:20
132:10
133:19
144:14, 15, 17, 19, 21, 22 145:16
146:3, 8, 23
156:24
159:22
167:3
**C-u-n-n-i-n-g-h-a-m** 85:16
**Cunningham's**
29:10
69:20 161:3
**current**
126:8
**currently**
8:22 60:8
**curse** 35:1
43:8 84:4
90:6
119:21
135:2
154:17
**cursed**
28:17
33:10
39:23
128:23
**curse-laden**
49:2 58:15
83:3, 8
**curse-ridden**
43:7
**curses**
110:22
**cursing**
50:10
81:24
92:10
113:18
132:22, 23
**curve** 87:5
**cuss** 132:3
153:16
**cut** 162:5
**CX** 3:14, 19, 23 4:5, 9, 14

**< D >**
**daily** 32:18
61:24
**DAMON** 4:10
117:14, 16, 23 121:19
123:1
**data** 126:11
141:22
**date** 163:17, 19 168:16, 19, 20, 21
169:1
**David** 19:10
123:1
**Davis** 114:16
**day** 33:15
37:21
44:25 45:7, 18, 24
46:13
47:10 48:9
59:4 62:8, 12 64:10
65:1, 3, 4, 5, 16 69:13, 16 70:19, 20 71:3, 12
72:8, 16
79:3, 7, 10
81:22
96:11
107:6, 19

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

112:*2, 14*
119:*5, 9*
124:*7*
128:*7*
129:*13, 16*
130:*14, 15, 21* 135:*20*
137:*16*
138:*19*
139:*18*
143:*14*
146:*4*
147:*22, 23*
148:*18, 21, 24* 170:*13*
**days** 29:*5*
47:*20*
90:*25* 99:*4*
135:*6*
148:*14*
150:*15*
162:*22*
163:*8, 18, 23* 164:*10*
165:*9*
166:*7, 9*
168:*13, 19, 21, 23*
**deal** 91:*2*
**December**
157:*17, 24*
**decided**
140:*22*
**decision**
10:*7* 11:*4, 7, 11, 13*
16:*6* 88:*16*
115:*2, 8*
160:*9* 161:*3*
**decisions**
87:*10, 12, 13*
**deescalated**
134:*9*
**Define**
154:*24*
**defined**
155:*4*
**definitely**
32:*13*
44:*11*
58:*22*
89:*22*
106:*21*
142:*1*
**delayed**
150:*15, 20*
**demeanor**
34:*19, 25*
36:*15, 17*
62:*20*
**denied**
50:*20*
102:*15*
144:*10*
149:*1* 160:*3*
**deny** 19:*5*
38:*25*
133:*18*
144:*5, 8*
**denying**
102:*19*
146:*10, 24*
161:*4*
**depart**
121:*18*
**Department**
5:*22* 19:*11*
77:*20, 23*
85:*19* 88:*4*
99:*13*
122:*13*
142:*17*
**Department's**
15:*10*
**depending**
19:*25* 88:*5*
**deposition**
86:*24*
**Deputy**
19:*10*
118:*10*
**DERRICK**
3:*12* 28:*14*
29:*20, 24*
30:*4, 10, 15, 17, 20, 22*
35:*13*
55:*12*
59:*14, 16*
63:*15, 22*
64:*4, 5, 19*
65:*9* 66:*24, 25* 67:*25*
70:*17, 25*
71:*5, 7, 8*
72:*15, 16, 19* 73:*10, 16, 18*
79:*20* 80:*8*
86:*5* 90:*17, 22* 96:*17, 19, 25* 97:*2*
100:*23*
102:*2, 4*
123:*1*
124:*1*
125:*8, 9, 15, 23* 126:*5*
127:*21*
129:*24*
130:*20, 22*
131:*2*
132:*9*
136:*15, 19*
141:*11, 14*
144:*20*
145:*16*
146:*18*
153:*11, 24*
154:*1, 4, 23*
158:*1*
**D-e-r-r-i-c-k**
30:*20*
**Derrick's**
126:*22*
131:*24*
132:*3, 5, 7*
134:*13*
137:*20*
149:*13*
153:*16, 19*
154:*16, 19, 20*
**describe**
34:*19*
47:*25*
62:*19*
110:*2*
118:*13*
124:*4*
151:*17*
**described**
40:*25*
**describing**
37:*1* 58:*15*
**description**
54:*23*
122:*17*
131:*23*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM


**designated** 15:7
**designation** 66:6
**desiring** 88:25
**desk** 64:12 126:18 128:3 139:4
**detailed** 34:23
**details** 37:18
**determine** 161:7
**Diane** 139:6
**difference** 104:25
**different** 40:12 65:3, 5 76:13, 15, 16 86:25 99:18, 22 136:19, 20 152:8
**differently** 137:7
**difficulties** 32:5 85:4
**Dionne** 146:9, 14, 15, 23
**DIRECT** 30:13 31:7 41:5, 13, 22 42:4, 14 61:1 77:4 79:6 85:12 92:21 98:12 105:10 109:21 118:1 122:6
**directed** 92:5
**direction** 16:25 78:21 104:1 170:10
**directly** 21:1 78:12 84:1 85:24 87:25 88:15 89:10 91:2 93:23 94:1 98:9 99:13 100:9 104:19 110:7 136:3 157:10
**Director** 19:11 77:20 85:19 101:20 118:11 147:25
**directors** 146:17
**disabled** 48:21, 24
**disagree** 124:8
**disagreement** 19:5
**disagreements** 33:7, 8, 9
**disciplinary** 87:12
**discipline** 32:22
**disciplining** 86:17
**discovered** 129:25
**discovery** 167:7
**discretion** 166:19
**discuss** 100:1 103:8
**discussed** 103:8 104:2 124:19 157:9
**discussing** 152:7
**discussion** 15:15, 20, 24 60:18 101:9 103:19 113:21 119:9
**dismissal** 160:10, 11
**dismissed** 108:7
**dispute** 20:12 159:16 161:4
**disputed** 19:14 20:6
**disputing** 155:19 161:21
**disrespectful** 121:7, 9
**dissatisfaction** 78:6
**distance** 65:15
**distributed** 24:22
**disturbed** 63:18
**division** 88:6 99:23 100:6 168:11
**doctor** 20:20
**document** 44:12
**documentation** 17:5 19:18 39:21 44:3 55:1 166:15
**documented** 52:22
**documents** 6:12 10:11 16:5 24:21 66:12 75:14 149:4, 20 169:2
**doing** 25:9 45:11 46:23 58:4 63:4 69:24 151:18, 21
**door** 91:22 107:16

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

119:14 127:17, 18 130:11 131:3 137:20
**dotted** 102:3
**doubled-down** 37:7 52:6 157:9
**doubt** 21:3 37:6
**downstairs** 130:12
**DPH** 29:6 30:25 59:21, 25 60:7 87:7
**Dr** 1:9 2:15 4:3, 7 8:9 9:18 11:3, 9 12:24 13:15, 18 14:9, 15 19:11 20:19, 20 28:22, 25 29:7, 10 31:5, 11 37:11, 13 39:13 43:24 44:4, 5 49:5, 9 50:6, 7 52:23 53:7, 9 54:8 56:3, 7, 9 68:23 69:20 75:21 77:13 78:19, 20 79:12 81:7 83:21, 23 84:25 85:5, 9, 14 87:6 93:4, 8 105:8, 15 106:10 107:13 108:1, 12 109:5, 7, 9, 11, 13, 18 115:3, 10 116:2, 15 117:1, 7, 11 118:17 123:2 129:18, 19 131:20 132:10 133:19 144:14, 15, 17, 19, 21, 22 145:16 146:3, 8, 23 156:24 157:25 159:22 161:3
**drafted** 69:8
**draw** 29:14
**drawn-out** 19:21
**drive** 138:1
**drive-by** 139:14
**driving** 35:14, 16 67:19 70:14
**dropped** 134:16
**drove** 131:9
**Duane** 1:8 2:12, 19 4:12 28:12 122:3, 10
**due** 85:3 141:13 160:10 167:11, 18 168:12
**duly** 60:21, 24 76:24 77:2 85:7, 10 109:16, 19 117:21, 24 122:1, 4
**duties** 31:15 123:14
**dwell** 65:10
**DX** 3:13, 18, 22 4:4, 8, 11, 13

< E >
**earlier** 46:8 54:5 89:24 115:9 124:19 130:21 141:23
**earnest** 54:12
**echo** 61:11 86:5, 12 95:16 140:16, 17 145:3, 12 154:13
**echoing** 140:14
**educate** 24:1
**Edward** 61:8, 9
**effects** 47:17
**eight** 152:8
**either** 16:14, 16 26:13, 20 39:11 55:15 62:6 89:3 91:2 118:24 134:3 146:20 162:23 164:9
**electronically** 126:9
**elevated** 113:20 119:8, 10 127:9
**else's** 55:15 159:18
**email** 48:20, 23 49:7 50:22 55:19 66:13 71:22 81:4, 5, 6 91:11, 16 92:6 103:3, 6

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

104:17
112:22
116:6
120:16
142:8
144:24
145:6, 17, 18, 21, 25
146:4, 20
147:8, 9, 18, 20, 21
**emailed**
145:15
146:2, 6, 8, 22
**emails**
47:21 48:2
50:20
52:13 91:2
102:18
103:15, 16
112:10
145:14
147:5, 11
**emergency**
148:10
**emotional**
157:23
**emphatically**
102:19
**employed**
95:2
**employee**
6:25 7:17
8:8 29:6
55:22
94:18, 23
104:23
105:9, 11
123:12
124:14, 18
148:11
161:22
**employees**
54:15 91:3
104:11, 14
107:2
108:10
**employee's**
8:8 94:12
95:2
**Employment**
2:20
**empty** 138:6, 7
**EMR** 151:22
**enclosed**
23:2
**endeavors**
81:9
**ended** 92:17
**enforce**
107:25
**engage** 58:5
68:4
**enter** 47:20
**entered**
29:24 60:4
76:5 85:6
109:5
117:16
**entering**
15:20
**enterprise**
31:25
**entire**
31:24 83:6
101:9
107:19
132:13
**entitled**
115:4
**environment**
158:20
**envy** 161:6
**Epic** 131:17
143:15
**equipment**
92:7
**Erica** 139:6
**erratically**
36:22
**escalate**
88:5
**escalation**
91:23
**escort**
83:11, 18
**especially**
67:16
**Esq** 2:5, 10, 13, 16
**essentially**
24:3 34:4
38:1 151:19
**et** 124:14
128:24
147:5
**EUGENIA**
3:17 31:10
49:16
57:13
59:20 60:4, 7, 10, 23
61:5 75:6
114:16
156:10, 15, 17
**Event** 59:22
**events**
72:22
116:16
**eventually**
72:5
**everybody**
8:22 55:14
70:1
108:17
126:4
162:22
**evidence**
16:2, 5, 12
160:2
161:3, 9, 24
167:19
**exact** 120:19
**exactly**
70:21
114:12
119:6
164:18
165:4
166:24
**EXAMINATION**
30:13 55:9
61:1 74:5
77:4 85:12
105:5
109:21
118:1
122:6
156:21
**examined**
30:11
60:25 77:3
85:11
109:20
117:25
122:5

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**example** 94:*21*
**examples** 89:*7*
**exchange** 112:*9* 120:*6*
**exchanged** 43:*9*
**exchanges** 158:*17*
**excuse** 8:*17* 35:*15* 143:*23*
**execution** 151:*25*
**executive** 29:*11* 30:*24* 61:*25* 77:*12* 88:*7*, *8* 93:*18* 98:*11* 99:*24*, *25* 100:*2*, *10*
**executives** 124:*8*
**exercise** 5:*25*
**exhibit** 165:*21*
**exhibits** 17:*23* 26:*5*
**existed** 101:*14*
**existence** 161:*4*
**exit** 108:*24*
**exited** 14:*15*
**expedite** 164:*5*, *16*
**experience** 32:*17* 82:*24* 87:*3*
**explain** 51:*10* 136:*11*
**explained** 89:*23* 90:*7* 112:*18*
**explaining** 145:*21*
**explanation** 149:*4*
**express** 78:*5*
**expressed** 126:*25*
**external** 123:*17*
**extremely** 133:*14*

**< F >**
**face-to-face** 65:*10*
**fact** 18:*10* 19:*13* 20:*5* 22:*5*, *19* 23:*17*, *22* 24:*4*, *7* 26:*6* 37:*4* 40:*9* 57:*11* 83:*19* 107:*20* 108:*6* 142:*3*, *12* 153:*2* 156:*9* 159:*11* 162:*23* 163:*12*, *15* 165:*10* 166:*8*
**factors** 101:*12*
**facts** 17:*24* 18:*4*, *12* 19:*14*, *17*, *22* 20:*6*, *8*, *11*, *13* 22:*22* 163:*25* 168:*12*
**factual** 18:*5* 161:*4*
**fair** 34:*16* 55:*16* 82:*17*, *20* 116:*22* 128:*11* 153:*14*
**fairness** 23:*5*
**familiar** 44:*17* 49:*25* 94:*16* 98:*2* 162:*15*
**family** 38:*9* 157:*15* 158:*2*, *3*
**far** 6:*24* 25:*15*
**fast** 27:*17*
**fated** 146:*7*
**favor** 7:*12* 14:*2* 25:*24* 28:*1* 115:*22* 168:*2*
**F-bombed** 128:*23*
**fearful** 58:*22*
**February** 28:*12* 31:*6* 32:*1*, *22* 33:*12* 37:*21* 39:*11* 46:*13*, *15* 51:*24* 56:*21*, *24* 57:*16*, *17*, *18* 62:*7* 67:*19* 68:*8*, *14* 70:*10*, *13* 73:*14* 74:*12* 78:*13* 79:*2*, *4*, *7* 81:*20*, *22* 82:*3* 86:*16* 87:*17* 89:*11* 95:*25* 102:*16* 110:*11*, *12*, *25* 111:*22*, *23*, *25* 112:*10* 113:*2*, *22*, *25* 114:*5* 119:*5*, *24* 120:*14* 121:*1* 122:*12* 124:*21*, *23* 125:*1* 134:*4*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

138:*16*
140:*21*
145:*15*
146:*6*, *8*, *24*
149:*17*
150:*14*
164:*8*
**federal** 66:*6* 87:*1*
**Federally** 31:*3*
**feel** 56:*11*, *16*, *18* 134:*9*
**feeling** 60:*13* 67:*15* 70:*16*
**feet** 126:*18*
**felt** 128:*19* 158:*11*
**figure** 132:*1*
**file** 17:*3* 23:*16*, *21*, *22* 118:*16* 144:*25* 150:*25* 162:*23*, *24*
**filed** 15:*7* 19:*2* 23:*23* 24:*21*
**filing** 165:*11*
**filled** 54:*23*
**filtered** 88:*10*
**final** 105:*7* 159:*15* 162:*17* 163:*7* 166:*6*
**finally** 33:*21* 95:*8*
**financial** 31:*17*
**find** 121:*7* 127:*23* 147:*19* 160:*13* 161:*2*
**findings** 18:*9*, *12* 22:*5*, *19* 23:*17* 24:*4*, *7* 26:*6* 159:*10* 162:*23* 163:*5*, *12*, *15*, *24* 165:*10* 166:*8* 168:*12*
**fine** 11:*19* 27:*11* 103:*14* 107:*9*, *12* 108:*21* 159:*22*
**F'ing** 80:*18* 90:*6* 126:*14* 133:*9* 155:*20*, *21* 156:*6*
**finish** 154:*8*
**finished** 116:*10* 137:*16*
**firing** 87:*11* 93:*23*
**first** 6:*23* 11:*13* 12:*22* 17:*18* 21:*16*, *22* 26:*11* 29:*6*, *18* 38:*21* 59:*6* 60:*24* 62:*12* 66:*3* 77:*2*, *8* 80:*4* 85:*10* 92:*11* 109:*19* 117:*24* 122:*4* 126:*23* 132:*4* 133:*21*, *22* 141:*10* 144:*17*, *19* 147:*15* 153:*23*
**fit** 42:*23* 166:*18*
**five** 17:*19* 27:*14*, *16* 31:*10* 64:*1* 106:*3*
**flight** 54:*9* 151:*18*
**floor** 165:*5*
**FMLA** 101:*8*, *13*
**focus** 31:*18*
**focused** 125:*24*
**folks** 139:*4*, *12* 142:*7*, *16*
**follow** 16:*11* 81:*2*, *4* 91:*15* 92:*5* 103:*25* 104:*12*
**followed** 104:*2* 160:*11*
**following** 6:*23* 9:*2* 151:*24*
**follows** 9:*4* 30:*12* 60:*25* 77:*3* 85:*11* 109:*20* 117:*25* 122:*5*
**follow-up** 74:*7* 105:*7*
**Foote** 31:*10* 141:*10* 158:*1*
**foregoing** 170:*7*
**formal** 56:*4*
**formality** 115:*18*
**for-profit** 122:*20*
**forth** 21:*16* 157:*5*
**forward** 138:*20*
**foul** 65:*22*
**found** 131:*5* 147:*21*, *22*, *23*
**four** 17:*18* 33:*17* 34:*6* 61:*19* 129:*12* 143:*14*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**FQHC** 32:17, 20 61:16, 25 62:1 66:5 86:25
**free** 64:23
**frequently** 32:13
**fricking** 133:9
**Friday** 54:3, 4 69:3, 8 91:9 96:11 112:4, 5, 13, 21 120:15 130:22, 24 140:1, 9 143:4 144:1
**friend** 100:20, 21, 25 101:16
**Frierdich** 2:13 3:14, 16, 19, 23 4:5, 8, 11, 13, 15 9:7, 14, 20, 24 10:6, 10, 13, 16, 23 13:10 14:17, 21 16:22, 24 17:2, 20 18:8 19:9 21:5 22:3, 9, 18, 24 23:16 24:12, 20, 24 25:2, 16 26:12, 23, 24 27:14, 16 40:17, 19 54:25 55:6 57:5 59:9, 11 67:7, 12, 13 74:3 75:1, 11 81:13, 15 84:15, 20 93:7, 9 97:11 101:22 103:7, 11 105:2, 14, 21, 25 106:8, 13, 17, 21 108:14 109:1, 4, 22, 23 114:18, 22 117:6, 10, 13, 19 118:2, 4 121:17, 21 122:7 123:8 145:3, 5 152:15 153:6 154:8 156:22 159:3, 5, 10, 15 160:24 161:20 162:2, 13 163:21 164:4, 21 165:16, 20 167:11 168:8 169:8
**front** 35:7 48:11, 14 129:14 139:4 157:17 158:1
**frustrated** 128:12 133:13, 14
**fucking** 28:18 35:14, 16, 18, 25 36:1, 5, 11, 21 37:8 58:9 161:19
**full** 16:6 23:1 30:15 123:11
**fully** 102:4
**further** 15:20 40:13 52:2 56:23 59:12 79:16 105:10 117:3 156:20 159:4
**furthermore** 58:8
**future** 81:9
**F-word** 46:25 67:22 80:24 126:4, 5
**< G >**
**gain** 66:5
**GARDNER** 3:21 9:19 53:6 69:9, 19 75:10, 13, 16, 25 76:4, 5, 12, 14, 16, 19, 22 77:1, 6, 11 81:14 84:22 131:18 145:16 146:3, 9, 23 150:4 152:23
**G-a-r-d-n-e-r** 77:9
**gathered** 97:18
**gathering** 59:1
**gearing** 54:16
**Gee** 101:20
**general** 16:8 53:15 114:16
**generalist** 77:22
**generally** 22:20 32:1 84:2 86:22 113:7 163:5, 17
**genuinely** 101:2, 4
**getting** 8:20 58:7

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

96:*21*
97:*20*
116:*23*
125:*20*
163:*15*
**gin** 161:*18*
**Gina** 8:*13*
49:*13*, *18*, *20* 71:*6*
126:*20*
127:*18*
130:*20*
134:*22*
136:*5*, *12*, *17* 140:*2*
151:*6* 158:*1*
**Gina's**
129:*20*
**girl** 61:*8*
**give** 9:*5*
13:*9* 29:*21*
37:*5* 51:*13*
53:*2* 59:*15*
68:*20*, *22*
85:*1* 86:*15*
88:*8* 89:*24*
91:*7* 104:*6*
108:*13*
116:*1*
122:*16*
160:*18*
162:*22*
163:*3*
**given** 58:*19*, *23* 75:*12*
151:*6*, *11*
158:*15*
**gives** 25:*8*
**giving**
60:*16* 118:*7*
**Glad** 10:*23*
**go** 5:*1*, *18*
7:*20* 8:*17*, *25* 15:*4*
16:*24*, *25*
47:*16*, *19*
55:*23*
57:*11*
62:*17* 65:*4*, *14* 75:*3*
86:*15*
91:*14*
98:*11*, *18*
99:*11*, *13*, *21* 100:*2*
104:*15*, *21*, *22* 112:*15*
117:*8*, *9*
121:*23*
122:*10*
130:*4*
131:*23*, *24*
132:*3*, *7*
133:*5*, *10*
136:*4*
139:*20*
149:*13*
153:*12*, *16*, *19* 154:*10*, *16* 162:*18*, *20*
**Goen** 2:*20*
8:*4*, *15*, *24*
14:*9* 29:*21*
30:*1* 59:*14*, *23* 60:*6*, *11*
75:*8*, *16*, *18*
76:*9*, *17*, *20*
85:*1*
108:*13*
109:*7*, *10*, *12*, *15*
116:*1*, *9*
117:*15*
**goes** 49:*18*
88:*24* 93:*17*
**going** 6:*16*
9:*7*, *12*
10:*18*
15:*14* 20:*1*
33:*12*
35:*21*, *23*
38:*5*, *8*, *13*
40:*11*
58:*21*, *22*
64:*21*
66:*20* 73:*2*
74:*11*
113:*15*
114:*1*
126:*17*
130:*9*, *17*
131:*3*, *9*, *10*, *16* 132:*4*, *13* 136:*15*
143:*15*
152:*3*, *6*
154:*12*
155:*19*
157:*10*, *20*, *21* 162:*19*
166:*21*
**Goldkamp**
2:*10* 7:*6*, *16* 8:*7*, *12*
11:*2* 12:*22*
13:*14*, *20*
14:*8*, *24*
15:*2* 16:*23*
17:*1*, *15*
21:*17*, *24*
23:*13*
24:*21*
25:*18*
26:*21*
60:*19*
76:*12*, *15*
109:*1*, *2*
114:*25*
115:*12*, *18*
116:*5*
162:*2*, *7*, *15*, *16* 163:*2*
164:*20*
165:*3*
168:*16*, *23*
**Good** 28:*10*
29:*4* 75:*3*
87:*21* 98:*3*, *16*, *23*
107:*15*
117:*18*, *19*
124:*14*
131:*5*
152:*12*
159:*23*
161:*5*, *15*
**goodness**
166:*5*
**gossip**
116:*20*
**gotcha**
109:*15*
113:*16*
**gotten**
80:*21*
111:*17*
147:*17*
149:*11*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**GOVERNMENT** 1:*1* 15:*13* 66:*6*
**grab** 102:*9*
**grabbed** 132:*15*
**granted** 17:7
**grants** 31:*18*
**great** 145:*4*
**GRIEVANCES** 1:7 5:*21*
**grounds** 160:*13*
**group** 125:*2*
**guess** 62:*13* 73:*15* 80:*11* 92:*13* 107:*4* 128:*5* 131:*2* 162:*9* 166:*23*
**guidance** 6:*22* 103:*24*, *25* 104:*3*
**guidelines** 66:*8* 87:*1*
**guys** 129:*11* 140:*16*

**< H >**
**half** 147:*24* 161:*16*
**hall** 47:7 113:*12* 118:*15* 136:*1*
**hallway** 127:*19* 139:*10* 158:*18*
**hand** 34:*1* 170:*13*
**handful** 88:*20*
**handle** 10:*5*
**hands** 5:*6*
**hanging** 42:*9*
**happen** 37:*24* 44:*3* 74:*13* 92:*12*, *14* 112:*19* 157:*21* 158:*17*
**happened** 28:*23* 36:*6* 37:*15* 39:*18* 44:*6* 50:*11* 53:*9*, *12*, *21* 65:*12*, *17* 68:*24* 69:*13* 70:*16*, *25* 81:*21* 88:*20*, *23* 89:*2* 90:*2*, *3* 91:*4* 92:*4* 99:*9* 108:*5* 112:*21* 125:*14* 132:*2* 137:7 149:*17*, *21* 157:*22* 158:*6*, *9*
**happening** 36:*25* 40:*25* 118:*24* 140:7
**happens** 91:*20* 99:*21* 129:*11* 134:*17*
**happy** 48:7
**hard** 108:*17* 123:*4*
**head** 45:*5*
**headed** 16:*25*
**heads-up** 88:*9*
**Health** 5:*23* 19:*11*, *12* 31:*3* 77:*20*, *23* 85:*20* 90:*9* 100:*13* 118:*11* 122:*14* 131:*15* 142:*17* 143:*2*, *16* 146:*17* 158:*16*, *17*
**healthcare** 122:*21*
**hear** 12:*16* 19:*6* 28:*12*, *13*, *22* 29:*8* 30:*4* 63:*12* 66:*25* 67:*1* 76:*18*, *19*, *20* 83:*6* 86:*6*, *7* 109:*8* 113:*11*, *13*, *15*, *20* 115:*5* 118:*24* 119:*2*, *14* 123:*5* 136:*5* 140:*16* 141:*14*, *15* 145:*1*, *2* 151:*8*
**heard** 12:*25* 28:*20* 29:*1*, *14* 36:*19* 37:*2* 67:*5* 68:*10* 82:*2*, *6* 83:7 110:*18* 113:*17* 119:*12* 124:*1* 129:*11*, *20* 133:*22* 138:*23* 149:*5* 151:*5* 152:*11* 153:*18*, *22* 159:*12*, *16*, *22* 161:*11*, *17*
**hearing** 5:*5* 6:*2*, *9*, *15*, *21* 7:*9*, *17* 10:*3* 12:*24* 13:*3* 15:*1*, *3*, *7*, *25*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

16:7 17:8 19:7, 21 22:21, 23 23:2 24:8, 16, 18 26:13 27:3 29:13 56:14 109:2 115:3, 5 116:8 119:8 133:20 149:5, 6, 8 150:18 151:7 152:11 156:24 162:5, 16, 18 169:7, 12 170:6, 9
**HEARINGS** 1:7 5:20 16:10
**hearsay** 107:25
**heated** 37:16 80:21 89:4 92:16, 18 133:8 154:23, 24 155:2, 4, 7, 9, 10 161:14
**held** 77:17 98:5 122:19
**hell** 64:4
**he'll** 73:17
**Hello** 8:19 81:14
**help** 6:17 18:14 24:1 48:4 130:23
**helpful** 19:1
**helping** 125:2
**helps** 114:15, 16
**hereunto** 170:12
**Hey** 98:18 107:8 125:12
**Hi** 10:23 40:18 67:13 93:8 109:23
**hierarchy** 88:10
**high** 51:23 98:6
**higher** 88:6
**hiring** 87:11 93:22
**historically** 98:17
**history** 72:22
**hit** 8:21 9:1 113:15
**Hoffsten** 2:6 5:10, 11 7:10, 13, 22, 25 8:1 13:6 14:1, 3, 6 18:20, 21, 25 25:22, 24 26:2 27:2, 20 28:2 108:22 115:14, 21, 23 164:14, 19, 23 165:6 166:2, 23 167:9 168:5
**hold** 161:24
**holidays** 157:20
**home** 65:4 71:18 111:23 113:3, 15 129:9 130:22 133:5, 10, 11 141:4 142:14
**honest** 40:8 54:11 58:25
**hope** 130:13
**hopefully** 76:1
**hopes** 137:24
**horn** 131:3
**host** 122:25
**hostile** 158:20
**hostility** 58:20, 23
**household** 157:7
**HR** 42:11 49:4, 7 55:18 74:1 77:22 82:25 83:9 93:2 100:18 144:14 147:10 150:25 167:2 168:13
**HRSA** 66:4, 5 87:2, 4
**human** 77:20
**hung** 28:19 36:13 38:21
**husband** 130:18

**< I >**
**ID** 91:15 92:7
**idea** 14:9 135:10, 11 148:19
**Igloo** 61:10
**ignoring** 160:12
**imagine** 36:24 131:21
**immediate** 104:22 150:7
**immediately** 43:23 89:20 110:6 125:21
**Imo's** 129:16
**impact** 160:5 165:1
**impacted** 124:10
**importance** 126:6

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**important** 126:25
**impression** 96:21
**Inaudible** 103:4
**incident** 51:4 65:24 67:3 73:23
**incidents** 69:25
**include** 13:8 62:2 140:6 162:25
**included** 31:17 165:14, 18, 23 166:10 167:6
**including** 147:4 165:11 167:19
**incomes** 152:5
**inconsistencies** 92:3, 9, 22 103:16 153:1, 5, 7
**incorrect** 66:14
**indicate** 50:3, 9 71:8 111:16
**indicated** 45:23 62:16 93:11 114:1
**indicating** 50:15
**indication** 149:15 162:3
**indications** 161:11
**indicative** 134:14
**indirect** 93:13
**indirectly** 31:21 90:15, 16 149:12
**individual** 101:4 166:25
**individuals** 8:16 101:8
**industry** 122:20, 21
**inform** 144:4
**informal** 16:11
**information** 17:6, 12 19:16 33:17, 23 34:23 53:5, 20 58:8 65:11 83:2 89:24 90:1 91:8 103:2 125:23 130:1 149:3 163:3
**informed** 10:3 64:14 78:15
**initial** 150:10
**initially** 38:21
**inquire** 15:14 57:25 99:8
**inside** 47:20
**instance** 29:7
**instances** 93:13 112:12
**instruct** 98:13 103:21, 23 104:7
**instructor** 122:22
**integration** 118:11
**integrity** 132:12
**intend** 23:21
**intending** 9:17
**intends** 13:9
**interact** 78:12
**interaction** 56:23 71:25 77:25 79:7 90:2, 14, 16 96:18, 20 113:5, 6 139:9
**interactions** 21:2 33:14 62:6, 8 113:2, 25 120:15 121:6 139:8
**interest** 58:24 116:23
**interested** 21:14
**internet** 42:11
**interrupt** 64:22 103:6 154:9
**interruption** 12:20 85:3 97:10 123:7
**interview** 122:24 166:16
**interviewed** 51:2 122:25 123:1 151:23 167:2
**interviewing** 122:23
**interviews** 125:3
**investigate** 22:11 23:4, 8 51:11 103:18, 22
**investigated** 102:23 103:1 107:10
**investigating** 33:2

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**investigation** 17:4 23:2 51:8, 10 52:2 84:11 166:14, 17 167:16
**involve** 61:21, 22 65:22
**involved** 70:1 88:15 99:11 135:13 155:23 169:6
**irritated** 36:24
**ish** 34:16 45:3
**issue** 18:14 20:25
**issues** 16:20 24:2 26:3 93:2 168:7
**Item** 5:21
**its** 26:11

< J >
**Jairris** 2:20 116:5
**January** 66:2 77:19 85:23 157:21
**jeopardy** 167:19
**job** 31:15 32:9 54:22 61:21 68:5, 7 78:6 86:22 94:24 95:10 110:19 124:14 125:3 155:6
**join** 9:6 10:23 11:20, 25 12:2, 6 20:22 116:6
**joined** 109:8
**joining** 114:19 118:7
**Joked** 40:4
**jokes** 63:6
**joking** 63:3
**Jones** 146:9, 14, 15, 23
**judicial** 25:7, 10, 19
**Juliana** 1:15 5:17 170:3, 19
**justify** 20:4

< K >
**Kanika** 1:9 2:15 4:3 84:25 85:5, 9 105:15
**K-a-n-i-k-a** 85:16
**Kate** 101:17
**Katherine** 2:13, 16 9:9 22:8 40:19 67:13 81:14 93:8 109:23 118:4 164:4
**Kathy** 62:17 63:15, 19 114:15 127:23 129:21, 25 136:14, 18
**Kathy's** 126:11 127:24 128:3 136:17
**Kaufman** 2:16 3:13, 15, 18, 20, 22 4:4, 6, 9, 14 9:10, 16, 23 10:2, 9, 12, 15 12:13 13:8 15:18, 22 18:3 19:10 20:9, 12, 18 22:2, 18 23:20 25:6 28:6, 8, 10 29:19, 23 30:4, 6, 9, 14 55:6, 10 59:12, 20 60:3, 12 61:2 73:22 74:6 75:3, 9, 17, 21, 25 76:4 77:5 81:10 84:18, 24 85:13 86:14 93:3 94:13 101:18 103:4, 9 105:4, 6, 13, 19, 23 106:3, 12 114:22, 25 116:12, 14 117:3 121:13, 15 152:17, 19 153:8, 9 154:21 159:4 160:22 161:1 166:12 167:4 169:9
**keep** 19:19 27:3 98:21 108:4 127:1 152:20
**kept** 65:8, 15 70:19 71:1, 5 73:11 117:9 130:8 137:3
**key** 142:3
**kicked** 5:18
**kill** 145:12
**kind** 63:3 64:8, 16 65:12, 15 73:9 74:18 87:2 88:8 94:23

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

130:16 157:20
**kite** 61:11
**knew** 42:8 59:4 64:5 92:25 114:4 130:6 147:25
**knocked** 91:21 126:23 130:11 137:19
**know** 9:12 19:5, 19, 23 20:1, 4 23:20, 25 32:12 35:1, 4, 21 36:1, 23 38:8 42:19 45:6, 8, 10 46:20 52:14, 15, 16, 20 54:11 58:21 60:12 61:13 63:4, 17, 22 64:6, 15, 17, 18, 21, 23 65:5, 11, 14, 16 68:1 69:15 70:6, 8 71:8 73:17, 18 79:19 80:5, 7 81:8 86:24 87:4 88:7, 14, 16, 23, 24 89:4, 5, 7, 23 90:3, 5, 6, 10, 11 91:18 92:2, 20 96:6, 8, 18, 20 100:23 101:5, 7, 11 102:8, 10 103:12, 24 107:6, 7 113:4 114:12, 14 119:2 124:11 127:11, 12, 13 130:7 131:5 132:16 133:23 135:8 136:10, 16, 21 137:20 138:12, 13 142:12 143:19, 20, 25 144:14 147:22 158:3 162:9, 10, 19 163:13 168:16 169:1
**knowing** 83:18 159:19
**knowledge** 40:1 51:7, 19, 21 139:25
**known** 131:12 136:21 137:6
**knows** 138:1

**< L >**
**lack** 161:12
**Ladevich** 31:11 114:8 126:20 134:22 139:11 157:25
**lady** 162:25 165:13 167:1
**lady's** 105:23
**language** 65:22 66:18
**laptop** 91:15 142:13
**lasted** 155:18
**late** 71:12 111:9
**laughed** 128:4
**laughing** 63:6
**law** 18:10, 12 22:5, 19 23:18 24:4, 8 159:11 162:24 163:13, 15, 25 165:10 166:8 167:22, 23
**lawsuit** 127:1, 12 135:10, 11
**lay** 18:14
**lead** 143:8, 10
**leader** 88:6, 7 98:12 100:10
**leaders** 88:8 99:23, 24 100:3, 6 143:17
**leadership** 62:1 88:11 93:18 99:11, 25 100:1 104:21 122:19 131:16
**learn** 82:18 88:2
**learned** 102:7
**learning** 87:5
**leave** 14:10 20:25 21:7 38:17 98:25 107:22 141:4 159:13, 24
**leaves** 99:13

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**leaving** 70:*9* 137:*18* 144:*1*
**left** 6:*24* 11:*25* 39:*7* 45:*23* 46:*3* 56:*11* 59:*16* 64:*8*, *16* 71:*14* 75:*6* 84:*22* 96:*15*, *22* 97:*18*, *20* 99:*17* 105:*15* 117:*11* 121:*19* 127:*16*, *17* 129:*14* 134:*8* 135:*19* 137:*25* 138:*4*, *5* 141:*8* 142:*8* 144:*1* 158:*10* 161:*19*
**legal** 93:*2* 103:*22*
**lens** 109:*14*
**lets** 101:*11*
**letter** 98:*19*
**letting** 63:*22* 90:*3*
**level** 61:*25* 88:*5* 113:*14*
**life** 129:*9*
**Likewise** 108:*22* 117:*2*
**limit** 27:*12* 43:*11*
**line** 6:*6* 67:*9* 74:*20* 102:*3*
**list** 9:*14*, *17*, *21* 17:*17* 19:*3* 20:*24* 54:*21*
**listed** 19:*10* 20:*5* 59:*21*
**listen** 86:*8*, *11*
**literally** 20:*6* 126:*17*
**little** 29:*21* 31:*14* 35:*6* 64:*3* 67:*17* 76:*20*, *23* 86:*24* 90:*9* 99:*17* 125:*14* 128:*9*, *12*
**LIVASY** 5:*1*, *6*, *7*, *10*, *12*, *15* 6:*7*, *19*, *23* 7:*2*, *4*, *23*, *25* 8:*2* 9:*5*, *9* 11:*14*, *21*, *24* 12:*5*, *7*, *10*, *16* 86:*9* 97:*7* 104:*14* 108:*15*, *23* 109:*3*, *13* 144:*22* 146:*9*, *22*
**livelihood** 160:*6*
**located** 110:*3* 118:*16*
**location** 88:*15*
**locations** 88:*14* 118:*16*
**locked** 126:*2*
**logs** 53:*18*
**long** 27:*3*, *5*, *12* 43:*10* 61:*17* 71:*10* 77:*14* 85:*21* 95:*2* 114:*12* 118:*6* 125:*7* 128:*22*, *24*, *25*
**longer** 116:*2* 125:*15* 147:*19* 148:*1*
**longevity** 152:*6*
**look** 18:*19* 21:*9* 42:*19* 57:*11* 63:*16* 119:*25* 147:*18*
**Look-Alike** 32:*20* 61:*16* 66:*9*
**looked** 57:*12* 58:*1* 127:*23*
**looking** 9:*7* 60:*6* 63:*2* 64:*5*, *6* 138:*10*, *11*
**looks** 12:*7*, *10* 14:*14* 17:*17*, *21*, *22* 76:*7*, *10* 109:*7*, *13*
**lose** 158:*6*
**lost** 130:*18*
**lot** 31:*18* 32:*17*, *18* 46:*16*, *19*, *21* 57:*1* 63:*5* 88:*4*, *7*, *10*, *20* 92:*19* 101:*3*, *10* 123:*20*, *24* 135:*21* 138:*5*, *9* 139:*9* 152:*1* 158:*5*, *8* 166:*18*
**lots** 158:*17*
**loud** 36:*18* 43:*6*
**LOUIS** 1:*1* 2:*9*, *21* 15:*6*, *13* 25:*10*, *11*, *12*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**love** 105:23 106:21
**lunch** 129:13
**lunchtime-ish** 111:5

< M >
**ma'am** 10:9, 12 20:13 75:3
**mad** 66:23 68:2, 3 71:5, 6, 7, 9 73:19, 21, 25 156:12
**main** 9:11 12:11 20:20
**major** 37:17
**majority** 31:17
**making** 56:4
**man** 139:16
**manage** 31:2
**managed** 31:16
**management** 104:20 123:19 143:3
**Manager** 2:20 88:6 93:22, 23 151:23
**manner** 40:12
**MARCH** 1:3, 12 5:5 16:17 150:11 164:6
168:14 169:11
**Marker** 123:1
**Mary** 76:12
**materials** 6:9 25:1
**Matt** 5:6 104:13 144:22 146:9, 22 147:10, 12, 14, 15
**Matter** 1:8 12:22 19:14 22:11 24:3 83:19 84:12 142:12
**matters** 78:3
**max** 129:13
**mean** 31:21 40:7, 11 52:16 53:11, 14 74:13 87:9 90:21 92:8 104:11 119:6 155:1
**meaning** 17:11 130:1
**means** 57:21 141:22
**meant** 28:21
**Medical** 19:12 123:2 138:22
**meet** 32:12 102:9 111:24 114:2 119:23
**meeting** 5:2, 18 6:15 12:11 14:12 17:13 34:21 41:3, 4, 10, 11, 19 42:8 54:4 57:15, 19, 22 63:16 64:21 71:4 72:13 73:1 97:16 107:20 108:24 110:25 111:3, 7, 21 112:2, 5 114:4, 6, 10 121:4 125:1, 7, 13, 14, 19 128:1, 15 129:18, 19 130:2, 3, 7, 8, 9, 12, 15, 21, 25 131:1, 15 136:16, 22 137:4, 9, 16 140:22 141:1, 3, 5, 8, 16 142:9, 15, 16, 20 143:1, 3, 6, 8, 10, 13 150:10, 16 154:2, 5 162:20 169:3, 5
**meetings** 32:10, 11, 14 58:1 72:8, 16, 20, 25 73:5 123:21, 23 125:10 135:22 139:14
**MELTON** 3:12 9:18 28:14, 17, 20 29:20, 24 30:5, 8, 10, 17, 20 32:8 40:14, 18 55:2, 4 59:16 62:3, 12 65:7 68:13 70:22 73:4, 13 81:19, 24 83:9 84:12 89:13, 15 97:13, 24 98:13 101:23 111:17 113:21, 25 116:23 118:17, 21 124:2, 5 128:14, 22 129:5 133:5, 23 134:3

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

135:8, 15
136:7, 13
137:8, 17
138:1, 4, 8
140:3, 10
141:3
143:18
145:16
151:6, 15
157:1, 14
158:11
**M-e-l-t-o-n** 30:21
**Melton's** 62:19 70:10 72:9 74:12 97:16 100:13 110:3, 6 118:20 119:9 134:8 135:19 136:2 149:10 155:22 156:25
**member** 72:5 93:25
**members** 16:3 31:22, 23 54:16
**mental** 90:9 100:13
**mention** 65:7 155:12
**mentioned** 22:14 25:14 40:2 43:23 51:3 58:4 80:20 95:9 135:10 140:2 143:2 157:7
**merely** 37:11
**merit** 107:2 108:10 123:11
**message** 48:3 63:22 71:23 107:2 112:15 130:23
**messages** 33:23 47:22 48:2, 17 52:12 112:10 147:11
**met** 54:3 56:19 111:4, 5, 23 114:1 138:22, 25 139:2
**Michael** 31:11 126:20 139:10
**middle** 41:19 66:4 100:6 104:20
**MILLER** 4:7 19:12 20:19, 20 31:11 50:1, 2, 3, 6, 7 106:10 108:12 109:5, 7, 9, 11, 13, 18, 23 116:15 117:7, 11 129:18, 19 157:25
**mind** 44:23 108:4
**mindful** 108:18
**mine** 74:18 159:11
**minimum** 120:6
**minor** 37:17
**minute** 27:4, 5 28:24 64:12
**minute-long** 28:16
**minutes** 27:14, 15 34:13 38:20, 22 43:12 64:1 105:22 106:1, 3 111:6 129:12 159:16
**mishear** 153:24
**misheard** 37:3 153:20 155:9
**misremembering** 156:16
**misses** 99:4
**missing** 49:24 101:15
**misunderstanding** 134:15
**misunderstood** 27:10
**moment** 9:5 29:10 40:14 55:17 59:15 67:7 85:1 105:21 108:13 116:1 117:15 129:23 131:8, 25 132:12 152:16
**moments** 153:11
**MONDAY** 1:3 144:18 146:24 169:11
**month** 146:16 161:16
**months** 61:20 114:11
**moot** 17:19
**morning** 45:4 48:8

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

50:5 51:24 57:14, 16, 18 63:10, 13 67:18 68:13, 24 70:10 72:2 74:12 81:20 89:18 96:3 113:22 120:9 124:23 130:24 136:15 140:23 141:7 142:8 144:2
**motion** 7:8, 10 13:15, 17 17:10 18:23 19:2, 6 22:25 23:10 25:18, 21 115:19 164:11 165:5, 7, 25 166:1, 3, 6, 21 167:10, 25
**motions** 13:21 17:3 26:5 168:7
**mouse** 7:7
**mouths** 21:12
**move** 7:20 8:18 27:22 140:21 162:22 163:1, 22 165:8
**moved** 8:9, 15 13:24, 25 24:10 115:20 131:7 158:7
**moving** 5:20 8:22 27:3
**multiple** 40:10 145:17
**mute** 60:8 145:12 148:6 157:3
**muted** 9:9 19:1 97:5
**mutual** 100:20, 24 101:16

< N >
**Nadine** 2:5
**name** 30:15 40:18 49:14, 24 50:1 61:3 77:6, 8, 9 81:14 85:15 94:12 95:2 118:3 121:24 122:9, 10 165:13
**named** 94:18
**names** 17:20 59:25
**Nancy** 61:9
**nature** 23:21 34:1 38:2 48:4
**necessarily** 16:15
**necessary** 21:3
**need** 6:2, 16 8:5 11:13, 22 12:11, 23 14:6 21:9 26:14 27:14 35:12 39:19 44:11 48:4, 6 61:12 65:13 101:12 108:18 116:8, 11 126:4, 24 136:13 159:11 162:19 165:24
**needed** 9:6 33:24 34:2, 22 44:3 62:22 63:22 64:19 65:8 68:23 70:25 71:2 72:24 84:8 89:24, 25 125:25 126:2 141:12 152:9
**needs** 73:18 160:20
**Neither** 115:17
**Nelson** 123:2
**never** 29:12 50:14 57:10, 19 71:1 78:7 98:8, 9, 11 99:11 100:8 124:9 127:10 134:2, 5 154:3 155:7 160:4
**new** 151:22
**night** 66:16
**nine** 88:14
**Noah** 2:10 8:4 12:20 13:22 22:7 94:11 164:19
**Nodding** 45:5
**nonclinical** 31:19
**non-privileged** 22:12 23:4
**nonprofit** 122:20
**nonsense** 124:7
**nope** 12:17 40:5

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**normal** 55:*21, 24* 62:*21, 23* 69:*24* 73:*8, 16* 90:*18* 113:*13, 14* 124:*8*
**normally** 13:*13* 56:*2, 5* 89:*3* 91:*2* 101:*14*
**Notary** 1:*17*
**note** 130:*23* 144:*15, 20, 21*
**notes** 170:*9*
**not-for-profit** 32:*16*
**notice** 25:*7, 10, 19* 29:*5*
**noticed** 131:*4*
**notification** 169:*4*
**notifications** 125:*11*
**notified** 150:*13, 19* 168:*10*
**number** 34:*2* 125:*25* 126:*3, 6, 7, 14, 16, 17, 24* 127:*7* 133:*9* 137:*1*
**Nunn** 2:*5* 5:*2, 4, 8, 9, 14* 6:*5, 8, 13, 18* 7:*11, 15, 20, 23, 24* 11:*15, 19, 23* 12:*2, 6, 9* 13:*2, 24* 14:*4, 18, 20* 20:*7, 10, 14* 24:*6, 11, 16, 19* 25:*23* 26:*1, 9* 27:*6, 10, 25* 28:*3* 106:*13* 108:*21* 115:*10, 13, 17, 24* 145:*2* 162:*21* 163:*22* 164:*11* 165:*7, 8* 166:*2, 7, 22* 167:*25* 168:*4*
**nurses** 31:*22*
**nursing** 54:*15* 152:*2*
**nutshell** 123:*16*

**< O >**
**object** 21:*6* 165:*22*
**objection** 25:*17* 115:*15* 166:*10, 13*
**objections** 16:*13*
**obligations** 108:*18*
**obviously** 32:*19* 39:*20* 44:*5, 12* 106:*23* 124:*20*
**occur** 161:*13*
**occurred** 29:*10* 149:*10* 155:*7*
**o'clock** 66:*15* 108:*25* 125:*2* 131:*17* 143:*5*
**October** 77:*16, 21*
**odd** 51:*25*
**offer** 19:*15* 22:*13* 159:*9*
**offered** 17:*25*
**office** 38:*1, 17* 39:*7* 40:*25* 43:*2, 3* 44:*25* 45:*2, 15, 20, 23, 24* 46:*3, 6, 8, 10* 47:*1, 2, 6, 9, 13, 16, 18, 19, 20* 49:*25* 50:*5, 12* 56:*20* 57:*25* 58:*11, 14, 18* 61:*16* 66:*17* 67:*19* 69:*10* 70:*10* 71:*12, 20* 73:*14* 74:*12* 80:*13* 81:*25* 82:*15* 83:*22, 23* 91:*17, 20, 22* 92:*1* 95:*25* 96:*1, 2, 4, 6, 9, 13, 23* 97:*1, 2, 14, 16* 103:*2, 10, 20* 107:*7* 110:*2, 4, 7, 23* 113:*7* 118:*14, 19, 20, 23* 119:*9, 13, 15, 16* 120:*2* 123:*20, 23* 126:*10, 11, 21, 22, 23* 128:*7* 129:*12, 14* 131:*14, 18, 24* 132:*3, 5, 8, 16, 23* 134:*8, 13, 19, 25* 135:*19, 24* 136:*1* 137:*18* 138:*19* 139:*8* 140:*25*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

142:23
143:18, 25
144:2
147:17
149:10, 13
151:19
153:12, 16, 19 154:16, 19, 20
155:13
158:10
160:18
170:13
**officer** 6:2, 15 7:9 13:3 15:7 19:7, 12 30:24 31:13 42:22 122:13 123:3 138:23 162:16 170:1
**offices** 65:14 74:17, 20 113:9
**official** 26:22
**officially** 5:18 124:17
**Oh** 11:19, 23 14:14 30:9 53:14 74:25 76:10, 13 80:19 90:21 91:1 101:5 106:17, 18 114:24 128:5 133:14 139:9, 19 143:23 144:9 155:14 158:7 160:24 166:5 168:18
**Okay** 5:14 6:13, 16, 18, 25 7:3, 5 8:14, 16 9:20, 24 11:23 12:2, 5, 9, 10, 19 14:9, 14, 25 15:3, 24 17:2, 22 18:17, 24 19:9 20:16 21:14, 23, 25 22:1 23:11, 16 24:19, 24 25:4 27:10 28:4, 7 29:23 30:1, 2, 8, 22 31:6 32:4, 21 33:5, 9 34:5, 11, 18 35:4 36:6, 9 37:3, 9, 20, 23 38:19, 24 39:16, 23 40:13, 18, 21 41:2, 15, 18 42:3, 7, 24 43:13, 17, 23 44:1, 14 46:12, 22 48:12, 16, 20 49:20 50:14 52:6 53:4, 24 54:19 56:4, 19 57:3, 24 59:7, 10, 14, 24 60:3, 6 61:12, 13 62:2, 5, 19 63:8, 12, 24 64:2, 9, 25 65:18 66:10 67:6, 10 68:22 69:14, 19, 22 70:2, 9, 21 71:16, 19 72:9 73:7 74:8, 16, 21, 25 75:5, 8, 9 76:17, 22 77:24 78:5, 12, 15, 18, 20, 24 79:2, 6, 15, 25 81:1, 10, 23 82:2, 13, 17, 24 84:4, 15, 21, 24 85:1, 17, 24 86:13 87:6, 23 88:12, 18 89:15, 21 90:10, 13, 19 91:4 92:8, 24 93:3, 5 94:11, 14 95:7, 15, 18 97:22 99:2, 7 100:12 101:17 102:5, 12, 14, 18 103:18, 21 104:24 105:2, 25 106:1, 12, 22 108:11 109:4, 7 110:8, 25 111:10, 16 112:1, 24 113:1, 7, 16, 20, 24 114:13, 18, 24 115:13 116:1, 2 117:13, 15 118:3, 13, 18, 23 119:4, 12, 18 120:4, 7, 11, 20, 22, 25 121:12, 21 122:12, 16 123:9, 11, 14 124:20 127:7

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

128:4, 8
129:7
131:13
132:21
134:12
135:2, 12, 22 136:4
137:5, 14, 23 138:15
140:13, 19, 21 142:11, 15, 22
143:6, 12, 18 145:13
153:20
154:22
155:3, 11, 17, 24
156:1, 2, 9, 19 158:5, 14 159:3
162:13
168:9, 25
169:1
**Okey-doke** 59:13
**old** 110:4
**once** 28:19 32:11, 14 37:4 56:20 66:21 83:2 88:20 111:4 146:16 164:25
**one-on-one** 72:13, 20 73:5 140:3 156:11
**one-on-ones** 140:11
**ones** 20:3
**ongoing** 114:11
**online** 42:20
**on-site** 54:18
**open** 11:17 14:13 40:9 59:24 116:3, 6 152:9 162:20
**OPENING** 3:3, 4 26:13 27:9, 23 28:5, 9 106:14, 20
**operating** 31:13 42:21 122:13
**operational** 31:24 54:13
**operations** 31:17 123:17
**opportunities** 26:14 162:8
**opportunity** 104:7 138:8, 10, 12 144:12 151:11 162:3
**opposed** 37:2
**opposing** 163:14
**option** 14:10, 11 42:22 60:16
**order** 5:2 18:10, 13, 14 21:21 22:6 66:8 87:25
**Ordinance** 25:11
**ordinances** 25:8, 12, 19
**org** 42:7, 23 126:8
**organization** 125:5
**organizational** 42:20
**originally** 147:18 167:6
**OSV** 54:17
**outreach** 123:18
**outside** 51:16 53:22 103:22 140:25 165:22
**outstanding** 22:10

**< P >**
**P.M** 1:3 16:18 106:7 169:11
**pack** 107:22 159:25
**pad** 7:7
**PAGE** 3:11 4:2
**pain** 152:7
**panelist** 8:13, 17, 22
**panelists** 8:15
**paragraphs** 145:17
**parameters** 166:18
**park** 138:11
**parking** 46:16, 19, 21 57:1 131:5 138:5, 9
**parse** 140:18
**part** 66:11 95:3 100:8 125:4, 5, 24 145:1 162:5 166:14
**parted** 128:6
**particular** 6:15 36:23 37:16 38:11 44:9 100:21 143:14
**particularly** 35:8 54:14
**parties** 6:1 15:20 16:8 21:2

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM


**party** 10:19 11:5
**pass** 131:6
**patients** 132:14
**PATRICK** 4:7 19:11 31:11 50:2 109:5, 18 117:11
**patterns** 54:13
**Paul** 61:10
**pay** 160:17
**PCMH** 151:20
**people** 19:24 31:10 49:25 62:6 67:4 76:15 86:25 98:5 110:22 119:21 122:25 125:3, 16 127:6 134:19, 21 139:8 143:12 145:7 157:10 159:24
**perceived** 102:14
**percent** 112:17
**Perfect** 60:11
**performance** 32:2, 9 86:23 95:20 124:17
**performed** 51:8
**performer** 51:23
**period** 20:25 163:10, 25 164:24
**person** 37:24, 25 40:24 60:9 64:9 79:13, 21 84:24 95:12 98:9 107:10, 22 111:24 131:1 152:12 159:17 167:2
**personal** 47:17 52:11, 18 132:15 144:18 147:21 155:23 170:10
**personally** 63:9
**personnel** 78:3 87:10 88:16 147:25 168:12
**perspective** 124:18
**Pete** 1:8 2:12, 19 4:12 5:22 9:8 10:23 28:13 31:11 38:11, 12, 15 40:19 56:20 62:15, 18, 22 63:3, 4 66:16 67:14 71:14 72:14 73:9, 20 79:7 81:15 89:19 90:2, 17 92:2, 15 93:9 94:17, 20 95:20 96:4, 12, 18, 25 97:17 100:7, 21 101:14 104:13, 19 105:1 118:4, 12 121:23 122:3, 11 123:9 154:10 156:23 157:3 158:7 159:3 160:1 162:4
**Pete's** 63:4 78:23 91:24 100:13 167:18
**phlebotomy** 139:13
**phone** 20:21 28:16, 19, 25 33:17, 22 34:18 37:9, 23 42:25 43:13, 24 49:8 50:5, 24 52:5, 12, 13, 18 53:17, 18 64:24 70:13 71:23 79:21 81:25 82:1 84:8 86:10 90:4 97:1, 4 112:9, 14 120:16 125:9, 23 127:4, 5, 6, 24, 25 128:1, 5, 14 130:5, 7, 8 132:25 133:8 134:19 135:3 136:23 137:4 145:12 147:4, 11 154:23 155:12, 15 158:4, 9, 11

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**physically** 156:*5*
**physicians** 54:*12*
**pick** 98:*24* 107:*16*
**picked** 34:*18* 125:*12* 134:*16* 147:*15*
**picking** 136:*23*
**piece** 31:*19*
**pieces** 158:*15*
**PIKE** 3:*17* 8:*11, 14* 9:*18* 12:*13, 16* 31:*10* 49:*15, 16* 57:*13* 59:*21* 60:*2, 4, 7, 10, 12, 15, 19, 23* 61:*5, 10* 67:*13* 74:*3, 10* 75:*6, 8, 12* 82:*7* 84:*13* 114:*17* 151:*6* 167:*4, 5*
**Pizza** 129:*16*
**place** 12:*12* 23:*14* 138:*11*
**placed** 13:*15*
**places** 42:*13*
**pleadings** 10:*13* 25:*14*
**pleasantries** 120:*6*
**please** 8:*11* 9:*1* 16:*14* 53:*3* 61:*13* 76:*4* 108:*12* 122:*9* 153:*7* 154:*9* 156:*3, 4* 163:*23*
**plus** 38:*22*
**podium** 57:*20, 23* 58:*3*
**point** 8:*4, 7* 16:*1* 17:*19* 19:*20* 22:*14* 23:*19, 23* 34:*11* 47:*22* 50:*24* 56:*17* 61:*12* 65:*18* 78:*16* 100:*25* 102:*24* 124:*11* 125:*10* 133:*13* 139:*18* 152:*16* 165:*23*
**politeness** 66:*21*
**politenesses** 35:*5*
**popup** 9:*1* 11:*24*
**portion** 26:*12*
**portions** 22:*21*
**position** 30:*22, 25* 31:*12, 15* 32:*5* 50:*16* 61:*15, 18* 77:*14* 85:*17, 22* 86:*2* 97:*15* 100:*22* 107:*4* 110:*16* 111:*12* 118:*9* 120:*8, 23* 122:*18* 123:*21, 24* 144:*16* 148:*17* 151:*24* 159:*18, 20* 160:*17* 164:*15*
**positions** 33:*25* 77:*17* 122:*20*
**possible** 129:*10* 156:*8* 164:*6*
**Possibly** 42:*16, 17* 114:*15*
**potential** 19:*24*
**Potentially** 153:*21*
**pounded** 129:*8*
**pounding** 49:*3* 132:*22* 155:*5*
**practice** 22:*20* 55:*21, 24* 84:*2*
**prayer** 160:*16*
**precedent** 106:*24, 25* 108:*9*
**preceding** 122:*17*
**precisely** 28:*21*
**pre-hearing** 13:*21* 18:*11* 22:*4* 23:*17* 24:*5, 13, 15*
**preliminary** 16:*20* 26:*3*
**pre-motions** 12:*25*
**preoccupied** 33:*19*
**prep** 66:*4*
**prepare** 125:*3*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**prepared** 68:25
**preparing** 131:15 143:1 151:20, 21
**prerogative** 163:11
**PRESENT** 2:18 5:9, 11, 13, 16 13:11, 20 15:9, 11 19:25 20:1 21:18 69:22 83:16 115:15 146:16 168:7
**presented** 12:20 18:11 19:24 23:9 165:20, 25 167:20
**presenting** 19:23
**pressed** 126:5, 13
**pressing** 126:7, 16
**presumed** 99:3
**pretty** 75:22 138:6, 7, 16 161:5
**prior** 17:13 24:2 99:16 149:5, 8
**prioritizing** 32:18
**privacy** 64:18
**private** 127:5
**privileged** 51:17 75:13
**probably** 34:9, 13 38:11, 20 47:12 91:13 130:16 132:17 153:18
**problem** 6:18 26:25 27:2 95:20 109:1 124:13 132:12 152:13 167:11
**problems** 53:24
**procedural** 160:13 162:19
**procedure** 6:9, 11, 22 60:20
**proceed** 12:19 22:1 25:6 106:11
**proceeding** 16:19
**PROCEEDINGS** 1:10 9:2 16:4 29:25 59:17 60:5 75:7 76:6 84:23 85:6 105:16 109:6 117:12, 17 121:20 168:11 170:6, 8
**process** 91:10 160:11 162:5 167:12, 19
**produced** 55:2, 3 164:25
**products** 65:6
**Professional** 1:16 100:22 101:1, 5 124:7 170:4
**program** 32:20 123:18 151:23
**prohibits** 26:19, 20, 22
**project** 139:13 141:13
**projects** 54:8
**promise** 55:12
**promote** 8:5
**promoted** 8:16
**prompts** 101:10
**pronouncing** 117:14
**proposed** 9:25 10:4 18:9, 12 22:5, 19 23:17, 23 24:4
**propriety** 29:15
**protect** 127:2, 13, 14 135:9
**proverbial** 162:11
**provide** 15:23 16:10 29:3 48:7
**provided** 75:14 100:24, 25 167:13
**provision** 25:8 99:2
**proximity** 110:3 118:14, 19
**pry** 64:18
**Public** 1:18 5:22 19:11 73:3 77:20 85:20 118:11

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

122:*13*
139:*25*
142:*17*
149:*25*
150:*23*
151:*1*
158:*16*
**published** 54:*22*
**pull** 48:*1*, *2*
**pulled** 127:*24*
**purpose** 39:*16*
**purposes** 115:*18*
**pursuing** 32:*21*, *22*, *25* 33:*25* 34:*3*, *23* 41:*16* 42:*3*, *4*, *12* 52:*21* 59:*6* 74:*7* 80:*1*, *2*, *3*, *23* 83:*5*, *6* 93:*19*, *24* 94:*3* 95:*7* 118:*19* 125:*16* 126:*23* 127:*5* 128:*20* 154:*7* 156:*3* 162:*2*
**put** 14:*11* 21:*20* 43:*11* 44:*15* 66:*20* 124:*19* 126:*5* 128:*5*, *7* 129:*15* 161:*5*
**putting** 5:*19* 10:*19* 21:*11* 142:*24* 145:*19*

< Q >
**Qualified** 31:*3*
**question** 10:*17*, *25* 12:*21*
**questions** 35:*2*, *3* 39:*5* 40:*13*, *20* 57:*6* 67:*8* 72:*4* 81:*11*, *17* 93:*4*, *10* 101:*6* 105:*4* 109:*25* 114:*23* 115:*1* 118:*5* 121:*12*, *14* 154:*14* 155:*24*, *25* 162:*4*, *6*, *8*, *12* 167:*18*
**quick** 55:*11* 74:*7*
**quickly** 141:*17*
**quiet** 76:*20*
**quit** 28:*18* 36:*2*, *3*, *5*, *11*, *12*, *21* 38:*12* 40:*2* 42:*24* 43:*19* 44:*22* 45:*13*, *22* 46:*23* 48:*9*, *18*, *21* 49:*2* 58:*2*, *9*, *14*, *18* 68:*5*, *7*, *10* 90:*7* 94:*24* 97:*15* 98:*20*, *21*, *24* 99:*1* 101:*6* 107:*15* 110:*16* 112:*19*, *25* 113:*6* 129:*10* 131:*12* 134:*3*, *6* 139:*16*, *22* 142:*5* 151:*15* 155:*6*, *20*, *21* 156:*6* 157:*5* 161:*19*
**quite** 32:*12* 58:*25* 73:*8* 76:*1* 147:*3*
**quitting** 40:*4* 110:*19* 132:*5*, *7* 133:*18*
**quote** 28:*18* 66:*21*
**quote/unquote** 145:*20*
**quotes** 142:*24* 145:*19*

< R >
**Rachel** 94:*18* 95:*3*
**rage** 49:*2*
**raise** 119:*21*
**raising** 119:*13*
**range** 132:*17*
**rapid-fire** 154:*14*
**RCX** 3:*16*
**RDX** 3:*15*, *20* 4:*6*, *15*
**reach** 116:*4* 144:*16*
**reached** 116:*15*
**reaching** 104:*13*
**read** 14:*22* 103:*3*
**reading** 103:*15*
**ready** 8:*17*, *20* 12:*19* 16:*18* 151:*23* 165:*1*
**real** 55:*11* 132:*2* 148:*20*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**realized** 125:22
**really** 18:11 23:14, 25 24:1 39:6 51:22 54:11 58:5, 6 68:1, 3 72:14 78:9 109:25 114:20 118:6 136:6 140:8 164:25
**Realtime** 1:17
**reason** 40:6 47:16 86:17, 20 161:17, 18
**reasonable** 27:13, 19, 21
**reasonably** 29:1
**reasons** 104:5 144:18
**rebuttal** 19:16, 25 20:5, 23 21:4, 9
**recall** 35:5 36:7, 16 43:16 45:17 48:13 58:4 62:5 64:2 68:21 69:4 89:1 93:16 96:5, 10 119:5, 8 120:1, 2, 19 133:20 142:10, 14 155:10, 16 156:10, 13, 18
**recalls** 155:8 156:15, 17
**recap** 153:14
**receipt** 163:8, 19, 20 168:13, 17, 24
**receive** 9:22 10:14 17:5, 11 23:6 47:21 50:18 145:24 146:4, 19 147:7 149:3 169:4
**received** 9:15, 21 19:16 22:15 48:16 50:14 66:13 83:2 102:18 149:16 150:5, 22 151:3 168:11 169:4
**recess** 106:6
**recollection** 110:10 154:25
**recollections** 46:9
**reconsider** 115:2, 8
**record** 5:19 15:4 17:22 26:4 30:16 60:18 61:4 75:11 121:24 122:9 133:3, 4 142:24 145:20 162:18 165:21, 22, 23
**records** 17:12 22:12 23:1, 5, 8 132:25 147:4 149:25 150:14, 23 151:1, 3
**RECROSS-EXAMINATION** 57:4
**redirect** 55:7, 9 74:5 84:18 105:5 117:5 156:21
**refer** 100:7
**referred** 166:4
**referring** 18:8 22:18, 24, 25 50:7 58:10 59:5 137:3 157:16
**regard** 17:10 19:17 98:6 99:8 149:16 159:17
**regarding** 17:6, 12 29:15 51:4, 8 53:20 98:2 145:7
**regards** 72:4
**Registered** 1:16 170:3
**registration** 31:22
**regular** 78:1, 2 118:11 140:9, 10 167:21, 23 169:3
**regularly** 118:10
**rehash** 35:11 39:18
**reiterated** 112:20
**rejoin** 14:12
**related** 33:24 120:20 142:1

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

160:*11*
**relates** 35:*2*
**relating**
44:*18*
68:*17*
120:*16*
**relationship**
33:*6* 65:*19*
124:*4*, *6*
146:*18*
**relayed** 51:*9*
**relevance**
10:*4* 18:*22*
20:*3* 21:*13*
**relevant**
19:*7* 22:*12*
23:*4* 139:*18*
**remain** 11:*10*
**remainder**
45:*7* 138:*15*
**remained**
47:*10*, *11*
**remaining**
10:*19*
**remedy**
167:*22*
**remember**
16:*14* 33:*4*
41:*21* 46:*4*,
*5*, *7* 47:*2*,
*5* 48:*10*
49:*23*
50:*13* 52:*5*
53:*17*, *23*
66:*18* 69:*2*,
*7*, *15*, *16*
72:*3*, *7*
80:*21*, *25*
91:*21* 95:*1*
111:*4*
119:*4*
120:*4*
131:*19*
132:*4*, *6*
155:*22*
161:*15*
**remembered**
80:*17*
**remembering**
132:*7*
**remote**
170:*6*, *9*
**remove**
59:*14*
86:*11* 166:*3*
**removed** 75:*8*
**removes**
14:*11*
**repeat** 80:*1*,
*2* 83:*5*
96:*24*
97:*12*
156:*3*, *17*
165:*6*
**repeated**
38:*5* 40:*11*
80:*3*, *6*
**repeatedly**
28:*17* 35:*17*
**repeating**
70:*19*
**rephrase**
153:*7*
**report** 31:*4*
83:*4*, *7*
85:*24* 86:*4*
98:*12*
99:*23*
100:*18*
101:*24*
104:*20*
157:*10*
**reported**
33:*25*
48:*25*
73:*25* 94:*7*,
*8*, *20*
100:*11*
101:*24*
124:*1*
125:*16*
170:*5*
**Reporter**
1:*16*, *17*
61:*6* 77:*7*
85:*15*
123:*4*
164:*21*
170:*4*, *5*, *19*
**reporter's**
30:*18*
**reporting**
67:*2*
107:*22*
146:*18*
**reports**
31:*7* 41:*5*,
*13*, *23* 42:*5*,
*14* 102:*2*, *4*
**represent**
22:*22*
40:*19*
108:*7*
109:*24*
118:*4*
**represented**
16:*9*
**representing**
107:*21*
**request**
7:*17* 17:*3*,
*8* 26:*15*, *22*
75:*12*, *14*
149:*25*
150:*15*, *23*
151:*1*
166:*14*
**requested**
20:*21* 23:*3*
57:*9*
149:*20*
150:*25*
**require**
13:*10* 66:*12*
**required**
52:*1*
**requires**
29:*5*
**rescind** 29:*9*
**reserve**
23:*22*
**resign**
43:*21*
82:*21*, *22*
94:*6* 98:*16*
107:*1*
110:*16*
134:*6*
145:*22*
153:*25*
159:*18*
**Resignation**
5:*21* 29:*4*,
*6*, *9*, *15*
36:*12*
37:*14* 38:*4*
39:*20*
43:*19*
44:*15*

47:23
48:22 56:5
78:23 79:5,
16 81:3, 7
82:19
87:18, 20,
24 88:3, 19
90:11, 15,
20 93:19,
25 94:7, 21,
25 95:10,
11, 13, 23
98:6, 14, 20,
23 100:5
105:10
107:8, 12,
14, 24
108:2
131:20, 22
132:11
133:19, 25
142:23
144:5
145:8, 20
148:5
149:10
158:6, 9
161:8, 18
**resignations**
44:18
87:15
93:12 98:2,
17
**resigned**
28:13, 16
29:2 38:16,
25 39:8
40:24
50:15, 21
51:12, 23
78:16 82:3
97:1, 14
99:3, 16
102:19
105:9
107:4, 9, 23
111:12
120:8
132:1, 10
133:24
134:2
141:19
143:22
144:6, 8, 10
146:12, 25
148:17
154:6, 15
158:25
159:1
**resigning**
88:25 98:3
102:15
149:1
**resigns**
55:22
**resolved**
26:4
158:12, 13
160:4
**resolving**
26:10
**resources**
77:21
100:24, 25
**respect**
87:9
108:16
125:10
130:10
**respond**
20:18
48:17
104:7
141:18
142:4
146:19
151:11
159:19
166:12
**responded**
34:1 35:18
145:21
**Respondent**
1:9 2:15
3:3, 7
28:9 160:25
**responding**
153:15
154:16
**response**
23:9 130:5,
24 136:18
142:6
144:17, 18,
19 145:18,
24 146:1, 4,
5, 20 147:7,
9 150:4, 7,
14, 19, 23
151:4, 15
**responsibiliti
es** 123:18
**responsible**
87:15
**rest** 18:22
44:25
45:18
47:10 75:4
135:20
**restate**
160:16
**result** 95:12
**return**
12:11 106:5
**returned**
56:20
107:18, 19
**returning**
36:4 43:15,
18 102:6
**reverse**
160:9, 15
**review**
44:20 54:2,
6, 21
**reviewed**
17:23, 24
**Revised**
25:12
**RIF'd** 157:19
**right** 5:7,
17 6:13
8:25 12:9
20:14
23:22
28:24
36:14
40:15
42:11 45:1
47:7 48:11,
14 49:16
58:10 59:2
60:9 66:14
67:6 74:17
77:10
82:15, 16,
25 85:21
86:15
89:18, 20



Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

93:3 95:14, 20 97:24 98:2, 3, 23 99:15 105:25 108:23 114:21 119:4 121:23 128:8, 15, 16 133:21 134:20 137:18 138:2, 17 145:3 150:5 152:20 156:10 158:19 160:14 161:21 164:23 166:14
**rights** 104:8
**ringer** 136:24
**ringing** 136:24
**risk** 11:17
**Rodney** 101:20
**rogue** 35:1
**role** 6:4 35:23 54:22 77:15 95:13 100:10 104:9, 10 122:24
**roll** 5:6 7:21 14:6
**room** 9:11 10:1, 20 11:10 13:16 67:4 105:24
**roughly** 33:16 34:16 38:23
**route** 93:17 101:1 104:14
**Rule** 23:2 25:15, 16 44:18 98:2 99:3 166:15, 16
**rules** 13:10 16:9, 11 25:14, 19 29:3, 16 98:15 104:12
**ruling** 11:9 17:7 22:4
**rulings** 16:15
**rumblings** 113:12 119:1
**run** 89:5 113:15
**rushing** 62:22

< S >
**said/he** 160:12 161:5
**salaries** 152:6
**sat** 91:17 127:8 130:14, 19 131:8 157:17
**satisfied** 32:2 86:22
**Satonya** 2:4 15:5
**saw** 37:2 45:10, 16, 24 46:2, 15, 16, 19 47:18 57:24 58:25 59:3 64:11, 15 66:3 70:24 83:19 92:14 112:15 120:11 127:18 130:2 131:2 139:4, 8
**saying** 10:7 20:10 37:18 43:16 65:8 71:2 112:15, 22 136:10 142:4 155:5 156:6 168:20, 22
**says** 12:3 97:13 107:8, 15 151:15 153:17
**schedule** 57:7, 10, 12, 14 58:1, 17
**scheduled** 63:20 64:13 72:23
**schedules** 54:13
**scheduling** 151:25
**screaming** 36:22 49:3
**screen** 27:7
**screenshots** 53:12, 13, 15, 16, 20 55:2
**se** 37:7 38:6 57:20 58:7
**search** 62:17
**seasonal** 148:11
**Second** 7:11, 22 14:1 25:22, 23 27:25 53:2 94:19 115:21 135:5 164:13 165:5 166:21 168:1

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**seconds** 129:1, 2, 8, 10 132:24 133:6 155:18, 20 156:7, 23 157:2, 13 158:4 161:10
**Section** 5:20 25:11, 13
**security** 83:11, 14, 16, 20 91:18, 19, 25 102:10 132:18
**see** 9:8 10:3 12:2 21:14 26:16, 17, 18, 25 27:2 30:6 44:24 45:9, 19 46:21 47:13 48:20, 23 57:7, 9 58:17 60:7 62:12 63:16 64:9 66:1, 7 70:9 71:10, 19 74:13, 15 76:14 83:20 88:16 89:10 90:19 96:4, 22, 24 97:6 109:11 111:21 114:9 117:19 121:9 129:21 130:1 138:9 139:20 155:17 156:9, 19 158:7 166:18, 20 167:7, 23
**seeing** 12:17 45:17 46:5 57:1 79:9 96:5, 10 120:2
**seek** 78:3
**seen** 62:16 74:19 151:9
**sees** 42:23
**self** 62:24
**send** 44:12 53:10, 16, 19 98:19 116:6
**sending** 91:11
**sends** 91:2
**senior** 62:1 122:19 124:8
**sense** 62:25 74:22
**sent** 6:8 52:23 53:5, 8, 15, 17 63:21 72:4 81:4 125:15 129:24 130:13, 22 137:21 141:11 144:15 165:2, 14
**separate** 24:13
**sequestered** 11:12 13:1, 4
**SERVICE** 1:2 2:3 15:6 16:10 25:13 29:3, 16 44:17 98:15 104:12, 15 152:1 166:16
**session** 5:24 7:18, 21 8:6, 10, 18, 21, 23 9:3 11:15, 17, 20 12:3, 4 14:13, 16 20:20 59:24 116:3, 6 162:20
**set** 89:9 102:4 108:9 150:18 170:12
**settlement** 15:16, 17
**seven** 152:8
**several-paragraph** 145:21
**share** 27:7 89:8 101:17 110:5 113:8 118:20
**shared** 91:24 92:2, 3, 13
**sharing** 92:22 113:11 130:17
**SHARON** 3:21 31:10 53:6, 10, 16 69:9, 19, 23 70:4, 5, 6 75:16 76:4, 5, 17 77:1, 24 84:19, 22 91:1, 7, 10, 18 92:1, 3, 5, 13, 14 102:9, 15 131:18 133:24 141:10 142:22 143:21 144:4, 19, 22 145:15 146:3, 8, 23 150:4

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

153:10, 15, 22, 25
154:14
155:8, 12, 13, 14
157:25
**S-h-a-r-o-n** 77:8
**Sharon's** 145:18
149:9, 12
158:21
**Shawn** 8:19
**shock** 131:21, 25
**shocked** 28:14 51:23
**short** 19:20 36:10
54:17 85:2
97:9 123:6
**shorten** 163:9
**Shorthand** 1:16 170:4, 6
**shortly** 125:13, 18, 25
**shot** 125:12
**shouting** 58:15
**show** 64:13
**showed** 63:19
64:23
96:18
127:3, 25
**showing** 11:16
12:17 133:1
**shows** 116:7
**shut** 55:19
160:7
**side** 118:25
**sides** 18:6
**sight** 74:20
**sign** 50:23
68:16 69:4
**signaled** 46:20
**signing** 68:21 69:4
**similar** 38:2 94:24
112:23
**simply** 16:7
**single** 88:15, 17
160:3
**site** 54:16
66:5, 6, 7, 9, 11 72:17
**sitting** 107:7
**situation** 35:20
36:25
58:16
68:17 89:4, 5, 23 92:4, 25 98:9
99:18, 19
100:18
102:23
103:1
104:2
105:8
107:17
108:1, 2
134:9
157:7, 15
160:12
**situations** 42:23
**six** 41:22
125:17, 23
127:7 157:9
**slamming** 127:18
**slate** 151:22
**small** 78:4
**somebody** 88:25 94:8
95:10
98:20
103:6
107:1, 3, 7, 15
**someone's** 160:6
**somewhat** 152:23
**soon** 38:1
62:13
125:21
**sorry** 7:6
8:15 11:14
16:17
18:25
20:10 22:7
32:8 41:17
50:17
53:11
54:12
71:11 86:5
94:4 111:9
114:17, 24
123:22
134:21
135:7
139:19
140:14, 15
154:12
157:3, 4
**sort** 77:24
78:9 107:24
**sound** 45:1
**sounded** 92:19
**soundproof** 113:9, 10
118:23
**sounds** 55:1
59:24
82:16
119:3
153:18
**south** 34:4
**space** 34:8
**speak** 19:13
39:10, 13
46:11
63:23
64:19
72:23
84:25
89:10
90:24
100:2
103:1
144:13
153:11
**speakers** 97:7
**speaking** 108:8
152:23

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

153:*25* 154:*1* 164:*1*
**special** 5:*5*
**specific** 35:*12* 65:*24* 87:*1* 90:*1* 153:*4* 156:*13*
**specifically** 80:*24* 87:*2*
**speed** 32:*20*
**spell** 30:*19* 61:*7* 77:*6* 85:*15*
**spent** 32:*18* 145:*17*
**spoke** 49:*20*, *21* 50:*4* 67:*18* 102:*16* 116:*17*, *19* 134:*18*, *21*, *22* 153:*10* 155:*13*
**spoken** 50:*10*
**sponte** 166:*13*
**spot** 131:*5*
**spouse** 116:*19*
**ST** 1:*1* 2:*9*, *21* 15:*6*, *13* 25:*10*, *11*, *12*
**staff** 31:*22* 72:*5* 123:*17* 129:*14* 132:*13* 152:*2*
**staffing** 54:*13*
**stand** 162:*11*
**standard** 54:*7* 91:*19* 98:*18*, *22* 99:*14* 104:*21* 111:*6* 114:*10*
**standby** 20:*19*
**standing** 29:*4* 32:*10*, *11*, *13* 54:*4* 87:*21* 98:*3*, *16*, *24* 107:*15* 114:*6* 132:*18* 159:*24*
**standpoint** 39:*20*
**start** 5:*19* 8:*20*, *25* 14:*25* 21:*15* 29:*17* 30:*5* 62:*10*, *11* 124:*22*
**started** 41:*3* 71:*4* 72:*14* 73:*9* 77:*19* 89:*24* 125:*22*
**starting** 106:*9* 131:*17*
**state** 30:*15* 61:*3* 121:*24* 122:*8*
**stated** 46:*8* 58:*3* 66:*22*
**STATEMENT** 3:*3*, *4*, *6*, *7* 16:*8* 19:*18* 27:*9* 28:*5*, *9* 35:*2* 36:*6* 48:*7* 53:*8*, *19* 55:*1* 68:*20*, *22*, *23*, *25* 69:*8*, *11*, *12*, *25* 70:*7* 75:*12* 82:*7* 84:*13* 106:*14*, *20* 153:*1* 157:*5* 159:*14*, *15* 160:*23*, *25* 162:*17*, *25* 163:*1*, *7* 165:*12*, *13* 166:*3*, *10*, *24*, *25* 167:*13*, *14*, *17*, *24*
**statements** 27:*23*, *24* 82:*10* 151:*5* 159:*8*
**stating** 66:*13*
**stay** 12:*24* 58:*24* 67:*8* 91:*22*
**stayed** 107:*19*
**staying** 65:*12* 100:*23*
**steep** 87:*5*
**steering** 36:*20* 49:*3* 50:*11* 58:*16* 128:*24* 129:*9* 155:*5*
**stenographic** 170:*9*
**steps** 32:*7* 44:*7*, *8* 49:*10*, *12* 131:*7*
**stick** 165:*24*
**stip** 20:*17*
**stipulate** 18:*3*
**stipulation** 18:*2* 20:*7*, *11*
**stood** 132:*15*
**stop** 45:*12* 107:*17* 108:*17* 128:*8*
**stopped** 64:*12* 129:*23*
**story** 116:*23* 159:*12* 161:*12*
**straight** 126:*22*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**straightforward** 92:*21* 155:*19*
**strategic** 134:*15*
**strategy** 124:*9*
**strict** 16:*11*
**striking** 28:*15*
**struggling** 140:*20*
**stuff** 59:*2* 65:*6* 96:*15*, *22*, *23* 97:*18*, *20* 98:*25* 107:*16* 128:*7* 129:*15* 162:*19*
**sua** 166:*13*
**submit** 9:*20*, *22* 10:*11* 22:*20* 24:*7*, *14* 98:*6* 148:*5*, *9* 163:*14*
**submitted** 66:*14* 69:*8*, *11* 132:*25* 144:*23* 145:*6* 149:*19*, *25* 150:*3*
**subpoena** 17:*4*, *6*
**substantial** 161:*3*, *8*, *24*
**suddenly** 51:*24*
**suffice** 120:*7*
**suggestion** 13:*3* 24:*9*
**summarily** 108:*7*
**summary** 31:*25*
**superior** 74:*1*
**supervise** 127:*6*
**supervises** 31:*22*
**supervising** 61:*25*
**supervisor** 28:*14* 61:*16* 104:*22*
**supplied** 16:*3*
**supply** 23:*5*
**support** 167:*9*
**supported** 161:*8*
**supporting** 149:*21*
**supposed** 14:*22* 54:*9* 95:*23* 106:*19* 158:*6*, *9*
**supposedly** 40:*24* 58:*2*, *14* 128:*23* 148:*16* 149:*17*, *21* 165:*12*
**sure** 10:*6* 11:*1* 28:*6* 31:*16* 32:*12* 47:*19* 53:*18* 55:*13* 60:*16* 61:*8* 77:*8* 81:*22* 83:*24* 91:*14* 96:*22* 101:*15* 112:*13*, *17* 118:*15* 120:*3* 122:*19* 123:*10* 124:*24* 128:*10*, *13* 132:*17* 138:*3*, *10* 153:*8* 160:*24* 164:*15*
**surprise** 40:*22* 41:*1* 102:*5*
**surprised** 82:*18*
**suspected** 107:*14*
**swear** 60:*19* 121:*25*
**swearing** 66:*23* 67:*24*
**switched** 11:*22*
**sworn** 60:*22*, *25* 76:*25* 77:*3* 85:*8*, *11* 109:*17*, *20* 117:*22*, *25* 122:*2*, *5*
**system** 125:*22* 141:*22*

**< T >**
**table** 17:*15*
**take** 6:*4* 7:*18* 12:*23* 17:*1* 25:*7*, *18* 33:*12* 39:*21* 53:*2* 55:*13*, *14* 56:*15* 61:*13* 66:*24*, *25* 72:*9* 82:*10* 104:*15* 105:*21* 118:*6* 124:*22* 145:*14* 155:*20*
**taken** 1:*11*, *15* 49:*11* 55:*19* 62:*14* 170:*10*
**takes** 69:*25*
**talk** 27:*17* 35:*23* 62:*22* 64:*7* 65:*9*, *13* 70:*17*, *25* 71:*23*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

73:20 78:2, 9 79:23
80:11, 13, 20 86:11
95:22
96:19 97:4
98:8, 9, 12
99:10, 14
100:9
104:22
108:5
110:18
119:18
120:14
141:16
153:23
154:1, 3
158:5, 8
**talked** 49:5, 9, 11 64:16
65:4 71:17
73:15
74:19
79:13, 20, 22 80:4, 5
84:5 111:6
112:2, 20
126:4
127:19, 21
129:19, 20, 25 134:3
136:14
142:7 157:1
**talking**
22:8 35:18, 25 37:5, 6, 8 39:2
40:10, 24
44:21 52:5
57:15 69:9
79:19
80:21
92:23
99:12
113:12
138:16
157:6
158:11
**tapped** 131:3
**task** 32:18, 19 161:6
**team** 31:23
54:15 88:7
98:11
100:1
152:4 158:2
**teams** 131:16
**TECH** 8:19, 25
**technical**
85:3
**technicalities**
16:12
**tell** 29:12
31:14
33:14
36:14, 18
41:10
49:20
51:18
65:25 68:2, 5, 7 72:25
82:21
91:14
94:12
96:12
104:1, 5
112:12
120:8
131:9
133:5
137:8
143:21
155:17
**telling**
58:9
101:11
113:5
154:15
**tells** 96:25
**temporary**
148:10
**ten** 126:17
162:22
**terminated**
98:10
**terminating**
86:19
**termination**
32:25 87:11
**terminations**
159:23
**terms** 35:22
54:14 83:17
**terribly**
113:10
**test** 21:9
**testified**
30:11
43:17 51:5
52:9, 22
60:25 77:3
85:11
99:15
109:20
115:11, 16
117:25
122:5
124:12
132:6, 24
152:12, 22
153:6
167:16
**testify**
13:5
121:22
136:9
**testifying**
12:25 21:5
136:5
156:10
**testimony**
10:5 13:9, 21 17:12
18:6 21:20
23:1 43:20
46:8 95:19
110:21
115:5
116:11
127:19
129:11
133:16
155:22
156:25
**text** 33:22
34:21, 22
35:9 41:8, 12, 20, 22
47:21 48:2, 3, 12, 16
52:12, 19
63:22
71:23 72:4
80:7 112:9, 15 120:16
125:12, 15
127:9
129:24

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

130:*13, 23* 137:*11, 22* 141:*11, 14* 147:*4*
**texted** 33:*18* 41:*4* 80:*7* 141:*17, 21*
**texting** 48:*18* 141:*18* 142:*4*
**Thank** 5:*7* 8:*24* 9:*10* 10:*10, 16* 12:*8, 20* 14:*21* 22:*25* 24:*11* 25:*3* 26:*24* 28:*8, 11* 29:*19, 23* 40:*15* 49:*16* 55:*5, 7, 11* 57:*3* 59:*10, 11, 23* 60:*11* 61:*3, 14* 67:*15* 74:*4, 9, 23* 75:*1, 5, 14* 81:*10, 15* 84:*15, 19, 20* 85:*14* 95:*8, 18* 97:*22* 105:*2, 13, 14* 108:*14, 23* 109:*4, 10* 111:*10* 114:*19, 21* 116:*9* 117:*3, 7, 8, 10* 121:*17, 18* 122:*8* 124:*25* 144:*3* 152:*21* 154:*9* 156:*4, 20* 159:*3, 7* 160:*19* 162:*13* 169:*6, 8, 9*
**Thanks** 67:*14* 75:*18* 116:*12* 121:*16* 162:*1*
**thing** 70:*23* 78:*9* 88:*17* 91:*21* 92:*10* 130:*10* 134:*15* 139:*17* 140:*9, 10* 147:*15* 148:*20* 160:*14*
**things** 22:*10, 17* 34:*4* 49:*11* 52:*7* 63:*3, 5, 7* 65:*3* 66:*12, 14* 72:*8* 73:*18* 104:*8* 112:*23* 132:*16* 137:*2* 149:*14* 157:*12, 19* 160:*16*
**think** 5:*17* 7:*18* 8:*12* 9:*16* 10:*22* 11:*8, 12* 12:*14, 19, 22* 14:*10* 16:*24* 19:*6, 20, 22* 21:*11* 22:*9* 27:*18, 20* 30:*6* 43:*8* 52:*1, 7* 59:*3, 21* 66:*2* 67:*6, 7* 68:*23* 69:*2* 71:*14* 72:*22* 73:*8, 22* 75:*22* 80:*2* 87:*2* 88:*22* 89:*6, 18, 19* 90:*1* 91:*12, 23* 96:*1, 17, 19* 99:*15, 20* 101:*3* 102:*22* 103:*16* 104:*12* 113:*4* 114:*15* 117:*19* 124:*19* 125:*17, 24* 133:*16* 139:*25* 140:*18* 141:*9* 142:*12* 143:*2* 144:*20, 21* 145:*11, 12* 148:*6* 153:*6* 156:*19, 24* 157:*3* 163:*4* 164:*17, 20* 165:*12*
**thought** 34:*2* 59:*1* 72:*17* 124:*6* 128:*21* 130:*2* 131:*9* 134:*10* 149:*9* 158:*13* 160:*4* 168:*18, 19, 20*
**three** 8:*16* 19:*15, 24* 20:*23* 25:*13* 27:*15, 16, 18, 20* 80:*3* 99:*4* 129:*12* 148:*13* 150:*15*
**three-minute** 27:*23*
**Thursday** 110:*12* 111:*13*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM


119:5, 6
146:7
**time** 9:13
13:4 15:21
16:21
20:25 22:8
24:9, 17
28:11
29:21
32:18
33:24 34:8,
25 36:23
37:16
38:11, 19
43:9, 11
44:9, 21
46:2 54:6,
9, 25 55:3,
7, 13 57:12
58:5 59:6
63:2, 20
65:4 66:3
67:16 69:7,
14, 16
71:14 72:3
74:4 78:4
80:4 81:22
82:13 84:7
92:7 93:16
100:9
101:10
105:3
106:4
108:11, 17
110:15
111:3, 11
114:20
117:9
118:7
120:19
121:13, 14,
21 123:2,
11 124:9
132:24
134:3
137:17
139:15
144:12
151:18
152:21
156:20
157:23
160:3, 9
162:14
163:25
164:24
**timeline**
165:1
**times** 31:18
33:17, 18
34:6 40:10,
12 52:4
63:5 80:3,
6, 16 88:4,
8, 10, 20, 21,
22 101:3, 7
112:20
149:20
**tip** 60:13
**title** 61:15
77:10
151:21
**today** 6:4
18:7 25:9
28:12 51:5,
9 61:13
81:16 93:9
108:10, 21
110:1
114:19
150:18
152:22
161:2, 6, 25
167:16
**today's**
16:4, 7
**toggle** 157:4
**told** 28:23
37:16
39:20
40:23 41:4,
9, 18 44:5,
9 57:19
64:6 66:23
68:20 69:5,
6 71:1, 7
72:6, 7
78:18, 19
79:18 84:7
91:22
96:16
102:9, 15
107:21
108:1
111:11
129:9
130:20
132:9
133:18, 24
153:23
154:3, 6
157:18, 24,
25 158:24
159:1
**tomorrow**
73:1
**tone** 36:15
91:24
**top** 11:25
38:23 60:13
**topics** 152:9
**total** 161:9
**training**
131:17
143:15, 16
151:22
**transcribed**
170:10
**TRANSCRIPT**
1:10 16:4
22:22
163:9, 13,
16, 19, 20
164:6, 16,
25 165:1
166:21
168:10, 14,
17, 24 170:8
**transcripts**
169:3
**transitioning**
158:16
**traveled**
12:14
**treated**
13:18
127:10, 15
137:2
**trial** 22:21
**trickle**
132:13
**tried** 46:17,
20 63:14
96:19
116:20
117:9
**true** 107:14
167:15
170:7

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**try** 60:*17* 62:*18* 88:*8* 152:*14*
**trying** 19:*19* 25:*2* 35:*6* 64:*12, 18* 89:*6* 127:*1, 2, 4, 13, 14* 131:*25* 135:*9* 137:*4* 154:*12* 157:*4*
**turn** 60:*14, 15* 76:*22* 86:*9* 145:*11* 152:*16*
**turned** 127:*15*
**twice** 36:*6, 8* 125:*11* 138:*25*
**two** 19:*9* 20:*4* 21:*1* 33:*6* 43:*12* 51:*3* 59:*25* 63:*9* 76:*15* 94:*16* 106:*9* 125:*8* 129:*12* 135:*6* 148:*2, 3* 159:*15*
**two-hour** 143:*6*
**typical** 95:*11*
**typically** 93:*1* 98:*24* 104:*14*

**< U >**
**UDS** 130:*23* 141:*13, 22, 25*
**uh-huh** 62:*4* 70:*5* 142:*25*
**uhn-uhn** 105:*12*
**umbrella** 31:*2*
**Um-hum** 33:*13* 34:*7* 42:*18* 55:*20* 58:*12* 69:*18* 87:*19, 22* 95:*14* 99:*5, 6* 100:*15, 17* 102:*21* 136:*8* 138:*24* 139:*1*
**unaware** 147:*19*
**uncover** 101:*8*
**understand** 20:*24* 23:*20* 37:*1* 67:*15* 73:*10* 87:*1* 97:*13, 15* 102:*1* 116:*15* 126:*7, 15* 128:*17, 18* 131:*11* 136:*22* 163:*9*
**understandable** 144:*16*
**understanding** 18:*1* 21:*8* 24:*20* 27:*7* 32:*15* 33:*19* 58:*19* 81:*23* 87:*3* 96:*14* 97:*17, 20* 101:*23* 130:*6* 168:*23*
**understood** 70:*24* 159:*13*
**unfortunate** 37:*18*
**Uniform** 141:*22*
**unilaterally** 56:*6, 8*
**unknown** 169:*2*
**unmute** 7:*7*
**unpaid** 164:*7*
**untouched** 47:*11, 12*
**unusual** 72:*19* 73:*4, 6*
**upload** 66:*12*
**upset** 64:*3* 65:*20* 66:*16* 89:*22* 156:*14*
**upstairs** 130:*20*
**urgency** 62:*14*
**use** 21:*20* 52:*18* 67:*22* 86:*10* 105:*23* 126:*13* 130:*7* 133:*9* 137:*1* 153:*12*
**User** 11:*21* 14:*18*
**users** 59:*25*
**usual** 60:*20* 135:*20*
**usually** 61:*24* 81:*7* 113:*11, 13* 163:*18, 19*

**< V >**
**vague** 34:*20* 35:*6*
**various** 129:*17*
**veracity** 18:*4*
**verbal** 29:*6* 37:*14* 81:*1* 87:*18, 23* 88:*3, 19* 93:*12, 19, 25* 94:*21,*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

25 95:10, 11 98:17, 19, 23 100:4 107:14 108:2 159:23
**verbally** 42:24 44:22 94:6 99:16
**verbatim** 35:13
**verified** 126:24
**verify** 8:21 125:18 126:17
**version** 116:16
**versus** 40:25
**vicinity** 83:17
**video** 30:5 60:17
**view** 16:2
**VII** 25:11
**visit** 54:18 66:5, 7, 11 155:13
**visited** 43:2
**visually** 74:11
**vocal** 113:14
**voice** 36:15 91:24 119:13, 21 127:18
**voices** 119:2, 10
**volume** 76:22 86:9
**vote** 5:6 7:21 14:7 164:15

< W >

**wait** 73:21
**waiting** 10:1, 20 13:16
**walk** 83:20 107:16 159:25
**walked** 91:25 94:24 127:8 132:16, 19
**walking** 91:11, 13 95:10 102:7 131:2
**walks** 107:7
**walk-through** 143:16
**wall** 42:9, 10 110:5, 6 113:8, 11, 17 118:20 126:9, 10, 11 132:19
**want** 11:9, 17 16:1 17:16 35:14 55:14 62:9 64:7 65:11 66:25 67:1 68:1 73:20 75:11 88:18 89:8 98:16, 20 103:12 104:15 105:7 106:13 108:16 131:6 158:2 162:5, 11 163:1, 9 167:7
**wanted** 8:21 9:10 23:25 39:21 40:1 65:9 70:17, 21 91:18 130:4 136:6
**wanting** 40:2
**wants** 27:8 162:4
**watch** 125:11
**way** 42:20 50:5, 12 71:17 74:18 86:10 88:13 97:1, 3, 4, 14 126:21 127:10 134:19, 24 137:2 160:6 161:5 164:9
**WebEx** 1:11 2:3, 9, 12, 15, 18 12:1 59:22, 25
**Wednesday** 147:13
**week** 32:11, 14 54:5, 6 146:7 147:24 151:24
**weekly** 32:19 72:13
**weeks** 148:2, 3
**welcome** 5:18
**Well** 8:12 11:22 13:7, 9 16:4 18:17 21:25 31:19, 20, 23 36:11 38:8, 10, 11, 15 44:5 48:16 53:2 54:3 55:14, 23 59:5 63:15 66:1 67:15 69:24 72:25 75:25 80:9, 10 89:22 91:14 92:11, 15 94:16 102:14 103:9, 19, 23 119:8 121:24 127:22 128:2 131:25

133:10
134:20
141:16
154:25
160:23
162:13
163:23
165:16
169:1
**went** 34:4
35:20
63:16 72:7
77:22
112:14, 22
125:14
126:3, 22,
23 128:6
129:13, 15
130:12, 16,
25 154:18,
19
**we're** 12:19
14:7 25:9
26:9 44:21
59:5 76:9
86:25
101:15
106:23
139:19
140:18
159:5
164:15, 24
168:21
**Wetzel**
130:16
**We've** 11:21
12:7 17:7
33:8 84:24
98:17
107:6
109:15
124:1
163:17
**whatsoever**
19:17 32:5
113:13
**wheel** 36:21
49:3 50:11
58:16
128:24
129:9
132:23
155:5
**WHEREOF**
170:12
**wife** 157:8,
18
**willing** 5:2
**wind** 66:15
67:2 79:9,
25
**wish** 81:8
**WITNESS**
3:11 4:2
9:20 10:18,
21 11:3, 11
13:18 21:1
26:11
29:18
30:11 55:5,
8 59:10, 13
60:21, 24
63:9 68:12
73:13
74:11 75:2,
5 76:24
77:2 84:17,
21 85:7, 10
86:13
87:24 93:5
94:11, 14,
15 97:23
101:17, 19
103:5
108:15
109:16, 19
110:15
114:21, 24
117:8, 21,
24 121:15
122:1, 4
123:5
154:11
167:12, 16
170:12
**witnessed**
20:6 65:20
110:23
119:20
**witnesses**
9:11, 15, 16,
25 10:4
11:12 13:1,
4, 21 17:4,
6, 7, 17
18:18, 23
19:3, 13, 15,
25 20:5, 6,
23 21:3, 9,
12, 16, 18
25:5 52:8
59:19
75:20
105:18, 20
106:9, 15
115:6
159:6
162:8
166:16
**witness's**
116:11
**wondering**
18:21 23:7
**word** 80:18
107:10
134:2, 5
147:17
149:11
155:1, 8, 10
161:14, 24
**words** 21:11
35:1, 5
36:22 43:8
57:22
131:19
153:13
161:19
**work** 32:17
45:7 48:18
53:25 54:7,
17 61:24
62:1 65:2,
6 69:25
71:10, 22
89:1 93:2
95:12
96:18 99:4
102:6
107:18, 19,
20 108:6
118:8
120:16, 17,
20 124:10
141:18
142:1, 3, 4
148:13, 17,
22 152:1,
12 158:2,



Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

20 160:7, 19 164:7
**worked** 44:25 46:12 61:17 77:14 85:21 123:11 125:22 130:22 141:4 147:19
**working** 7:7 27:19 54:11, 14 59:14 65:3, 19 66:15 68:8 70:12, 14 76:9 96:12 107:17 143:15 151:25 152:1, 4 158:15 160:1, 3
**workplace** 33:5
**work-related** 113:1, 5
**works** 47:4 93:1
**work-wise** 141:8
**world** 160:2
**wrap** 137:4
**wrapping** 41:19
125:13 137:9
**writing** 29:4 44:15 50:15 98:7, 14
**written** 52:2 68:25 69:11 148:5 169:4
**wrong** 64:4 67:25
**wrote** 90:21
**Wyatt** 1:8 2:12, 19 4:12 5:22 10:22 13:8 17:11 22:14 23:5, 9, 25 24:5 28:13, 16, 20, 24 29:1, 5, 8, 12 31:11, 16 32:8, 15, 23 33:10, 15, 16 34:6 35:8, 17 37:15, 21 38:10, 25 39:10, 23 40:19, 23 41:2, 18 42:14, 21 43:14, 21 44:14, 22, 24 45:6 46:12, 17 47:23 48:17 49:21 50:4, 10, 15, 18 51:12, 23 52:3 54:8, 9 57:24 58:24 62:3 63:12, 24 64:9 65:19 67:14, 18 68:13 70:9, 12 71:20 73:5, 14, 23, 25 74:11 77:25 79:10 81:15, 20, 24 82:3, 15, 18 83:8, 11, 25 84:4, 12 85:24 86:17 89:11 90:14, 25 91:8 94:2 97:14, 24 99:8 102:6, 15, 19 104:5, 13 105:22 107:18 108:5 109:24 110:5, 15, 18, 22 111:1, 12, 16 112:1, 10 113:9, 11, 18, 21 114:2, 5, 7 116:15 118:4, 8 119:13, 16, 20, 23 120:5, 7, 11, 16, 23 121:3, 6, 22 122:3, 8, 10 152:21 161:19, 21 162:10 164:7
**Wyatt's** 18:9 29:15 31:12 32:25 33:3 34:19 36:15 42:10 47:6, 9, 17 48:20 53:25 54:22 55:18 57:7 110:3, 7 118:14 119:16, 19 161:7

**< Y >**
**Yeah** 8:15 27:6, 20 30:6, 9 33:8 34:16 35:6 37:1, 25 45:3 47:12 59:8, 21 64:3 65:2, 21 66:19 67:24 69:18 70:5

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

71:*17*
72:*21*, *24*
79:*18*
80:*11*
86:*24*
88:*13* 89:*7*
90:*18* 91:*1*, *9* 92:*15*
93:*15*, *21*
94:*4* 97:*5*, *19*, *21* 99:*1*
102:*8*, *13*, *17* 103:*12*, *14* 106:*18*, *21*, *23*
114:*7*
116:*19*
133:*7*
134:*10*
135:*21*
139:*17*, *19*
140:*12*
142:*25*
144:*15*
158:*13*
165:*24*
**year** 61:*19*
**years** 157:*19*
**yell** 135:*2*
**yelled** 128:*23*
**yelling** 36:*23* 50:*10* 113:*18*
**yep** 71:*18* 99:*5* 118:*22*
**yesterday** 131:*24*
**young** 162:*25* 165:*13* 167:*1*

**< Z >**
**Zajicek** 1:*15* 170:*3*, *19*

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Summary of Events

Eugenia Pike

On Thursday February 5, 2026 Derrick came into the office that morning and inquired about Pete's whereabouts. I reached out by phone, but Pete did not answer. Kathy went to check Pete's calendar to see if he had anything scheduled for that time such as a meeting or PTO. While we waited Derrick and I talked in his office. He was not upset and stated he did not need to know exactly where Pete was or what he was doing and that he just needed to get the information from him. He was not upset or angry. Derrick and I walked to Kathy's desk to see if she had any luck locating Pete. We all looked and saw that there was nothing scheduled on Pete's calendar from 9 a.m.-10a.m. Kathy explained that the next scheduled meeting wasn't until 10am. I sent Pete a text informing him Derrick needed to speak with him right away. Approximately 5 minutes later I received a call from Pete. He seemed upset and had just finished speaking with Derrick. He asked, "what the hell is wrong with Derrick" and that "I was on stage answering Derrick's text message". I explained to him that he should speak with Derrick directly. He then asked, "what did Derrick need from him". I again stated that he would need to speak with Derrick directly. He stated that he was on the way and would arrive shortly. When Pete arrived, he showed me there was an event showing on his calendar. I explained to him that Derrick and I checked and the calendar showed nothing scheduled between 9-10 a.m.

Later that day Pete and I discussed the events of that morning. I explained that Derrick was not upset that morning and just needed the information right away. Pete explained to me on 2 different occasions that he needed to apologize to Derrick and that he would like to do it face-to-face and not by phone. After he saw that the 1:1 scheduled for Friday had been canceled he asked me several times if Derrick was angry. I informed him that Derrick showed no signs to me that he was angry with Pete.

Plaintiff's Exhibit #02

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Gmail

**Pete Wyatt <petewyatt149@gmail.com>**

---

## Re: Resignation Acceptance

1 message

---

**Pete Wyatt** <petewyatt149@gmail.com> Mon, Feb 9, 2026 at 4:57 AM
To: "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>
Cc: "Melton, Derrick" <DMelton@stlouiscountymo.gov>, "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Sharon,

This emailed "acceptance" is in reference to a situation or conversation that to my knowledge, did not happen. I do not recall ever going into Derrick's office, cussing and quitting.

To accept a resignation that was not made verbally or in writing, without question, conversation or process is a concern. Derrick "advising" Dr. Cunningham that "I quit", simply stated, for reasons I, nor anyone else can explain, he lied.

I did not say to Derrick or anyone else, "I quit". I did not resign. I had/have no interest, intent or prior consideration in the notion of quitting. Quite the contrary. Nor do I intend to allow Derrick to "quit" my job for me. Particularly around something this outrageous and demonstrably false.

To make this decision, in this way, on any level, without inquiry, fact or process would suggest Civil Service Rules allow one person to quit another person's job just by "advising" someone in authority.

To be clear, I DID NOT "QUIT"! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING. I DID NOT AND HAVE NOT HAD ANY CONVERSATION ABOUT QUITTING WITH ANY EMPLOYEE OF THE ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH OR THE COMMUNITY HEALTH CENTERS.

This unwarranted action is based in malicious slander. A petulant, petty and immature act perpetrated for no other reason than to do personal harm. It was definitely not in the interest of staff, community or the mission.

If this has gone forward with Appointing Authority signature without communication, documentation or intent based ONLY on Derrick's "advising", there's something very important missing. Per Civil Service Rules a resignation needs to be in writing. I have not written or presented such a document. If there is such a document, please provide me with a copy today. If there is a document "from me" or written on my behalf, being used to support this action, it IS NOT from my hand, mind or heart. If there is such a document, it is and will be considered libelous.

Again, to be perfectly clear, I DID NOT "quit". Nor did I ever use the word "quit" in my two brief conversations with Derrick, Thursday morning. I have documented communication that would/will suggest otherwise.

If Dr. Cunningham would like more context on this matter, I am more than willing to share what I believe is actual fact and that can help discern the truth. I will also be reaching out to others who may also have fallen victim to Derrick's lie.

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 1049 of 1127 PageID #: 1052
Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

I did not "quit" or resign. Nor do I understand why Derrick would risk his professional and personal integrity by telling a lie to Dr. Cunningham and staff. To gain/prove what?

Thank you.

Pete

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation.  This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Gmail

Pete Wyatt <petewyatt149@gmail.com>

# Fwd: Resignation Acceptance

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Mon, Feb 9, 2026 at 6:50 AM
To: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>
Cc: "Gardner, Sharon" <sgardner2@stlouiscountymo.gov>

Dr. Cunningham,

This situation is truly unfortunate. Reputation and integrity are all that we truly own.

My specific request is to be reinstated immediately without further escalation, to continue the important work that needs to be done.

In the absence of truth and a submitted resignation letter stating my intent, the actions taken violate Civil Service Rules.

Derrick's reasons are his. I do not expect his truth. What happens in that particular space is no longer my concern. My sincere interest, as demonstrated, is in the work. Allow me to do that.

Thank you.

Pete

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 9, 2026 at 4:57 AM
Subject: Re: Resignation Acceptance
To: Gardner, Sharon <SGardner2@stlouiscountymo.gov>
Cc: Melton, Derrick <DMelton@stlouiscountymo.gov>, Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Sharon,

This emailed "acceptance" is in reference to a situation or conversation that to my knowledge, did not happen. I do not recall ever going into Derrick's office, cussing and quitting.

To accept a resignation that was not made verbally or in writing, without question, conversation or process is a concern. Derrick "advising" Dr. Cunningham that "I quit", simply stated, for reasons I, nor anyone else can explain, he lied.

I did not say to Derrick or anyone else, "I quit". I did not resign. I had/have no interest, intent or prior consideration in the notion of quitting. Quite the contrary. Nor do I intend to allow Derrick to "quit" my job for me. Particularly around something this outrageous and demonstrably false.

To make this decision, in this way, on any level, without inquiry, fact or process would suggest Civil Service Rules allow one person to quit another person's job just by "advising" someone in authority.

To be clear, I DID NOT "QUIT"! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING. I DID NOT AND HAVE NOT HAD ANY CONVERSATION ABOUT QUITTING WITH ANY EMPLOYEE OF THE ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH OR THE COMMUNITY HEALTH CENTERS.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

This unwarranted action is based in malicious slander. A petulant, petty and immature act perpetrated for no other reason than to do personal harm. It was definitely not in the interest of staff, community or the mission.

If this has gone forward with Appointing Authority signature without communication, documentation or intent based ONLY on Derrick's "advising", there's something very important missing. Per Civil Service Rules a resignation needs to be in writing. I have not written or presented such a document. If there is such a document, please provide me with a copy today. If there is a document "from me" or written on my behalf, being used to support this action, it IS NOT from my hand, mind or heart. If there is such a document, it is and will be considered libelous.

Again, to be perfectly clear, I DID NOT "quit". Nor did I ever use the word "quit" in my two brief conversations with Derrick, Thursday morning. I have documented communication that would/will suggest otherwise.

If Dr. Cunningham would like more context on this matter, I am more than willing to share what I believe is actual fact and that can help discern the truth. I will also be reaching out to others who may also have fallen victim to Derrick's lie.

I did not "quit" or resign. Nor do I understand why Derrick would risk his professional and personal integrity by telling a lie to Dr. Cunningham and staff. To gain/prove what?

Thank you.

Pete

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation. This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Gmail **Pete Wyatt <petewyatt149@gmail.com>**

# Fwd: Resignation Acceptance

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Thu, Feb 12, 2026 at 6:18 AM
To: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>
Cc: "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>
Bcc: mlivasy@stlouiscountymo.gov, djones@pinelawn.org

Dr. Cunningham,

I'm following up on my February 9th (Monday) email to you requesting reinstatement to my job due to this egregious situation that is based on a deliberate and malicious lie told to you by Derrick Melton. He created and told you a story that included, among other falsehoods, my alleged cursing the job and quitting. That **DID NOT** happen. However, based on that lie, you subsequently accepted "my resignation!" A resignation that I had to be told about by your assistant. A resignation that, to my knowledge, is not supported by a formal letter from me. It is only supported by hearsay.

In a previous response, I referred to the lie as demonstratively false. However, there has been no attempt to challenge the lie or communicate with me for truth. To that end, I've elevated this situation by attaching a document that lays out the documented communication and timing during the 36 hour period that fostered the unnecessary, unwarranted and unprofessional lie. My statements can be supported by bank records, phone records and staff accounts.

Again, I request

1. A copy of the resignation letter used for this process to occur without my knowledge. Originally requested in the response below to Sharon Gardner.
2. To be fully reinstated as soon as possible to continue the work necessary to serve St. Louis County residents.
3. To have my office locked and off limits until this matter is resolved.

Dr. Cunningham, I don't know how or why the lie was brought to you. But, I do know that your response to it was unjust and without the benefit of doubt. I've shown you nothing but support and respect. This is my informal appeal to be heard and acted upon. Review the document. Ask the questions.

To be clear..., **I did not quit my job. I did not quit on my team. I did not quit on my peers. I did not quit on the mission. Nor did I quit on you.**

My reputation and integrity are all that I truly own. I stand prepared to defend both. They matter.

I look forward to hearing from you and my subsequent return to service.

Thank you.

Pete
314-494-2100

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 9, 2026 at 6:50 AM
Subject: Fwd: Resignation Acceptance
To: Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
Cc: Gardner, Sharon <sgardner2@stlouiscountymo.gov>

Dr. Cunningham,

This situation is truly unfortunate. Reputation and integrity are all that we truly own.

My specific request is to be reinstated immediately without further escalation, to continue the important work that needs to be done.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

In the absence of truth and a submitted resignation letter stating my intent, the actions taken violate Civil Service Rules.

Derrick's reasons are his. I do not expect his truth. What happens in that particular space is no longer my concern. My sincere interest, as demonstrated, is in the work. Allow me to do that.

Thank you.

Pete

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 9, 2026 at 4:57 AM
Subject: Re: Resignation Acceptance
To: Gardner, Sharon <SGardner2@stlouiscountymo.gov>
Cc: Melton, Derrick <DMelton@stlouiscountymo.gov>, Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Sharon,

This emailed "acceptance" is in reference to a situation or conversation that to my knowledge, did not happen. I do not recall ever going into Derrick's office, cussing and quitting.

To accept a resignation that was not made verbally or in writing, without question, conversation or process is a concern. Derrick "advising" Dr. Cunningham that "I quit", simply stated, for reasons I, nor anyone else can explain, he lied.

I did not say to Derrick or anyone else, "I quit". I did not resign. I had/have no interest, intent or prior consideration in the notion of quitting. Quite the contrary. Nor do I intend to allow Derrick to "quit" my job for me. Particularly around something this outrageous and demonstrably false.

To make this decision, in this way, on any level, without inquiry, fact or process would suggest Civil Service Rules allow one person to quit another person's job just by "advising" someone in authority.

To be clear, I DID NOT "QUIT"! I DID NOT SUBMIT A RESIGNATION VERBALLY OR IN WRITING. I DID NOT AND HAVE NOT HAD ANY CONVERSATION ABOUT QUITTING WITH ANY EMPLOYEE OF THE ST. LOUIS COUNTY DEPARTMENT OF PUBLIC HEALTH OR THE COMMUNITY HEALTH CENTERS.

This unwarranted action is based in malicious slander. A petulant, petty and immature act perpetrated for no other reason than to do personal harm. It was definitely not in the interest of staff, community or the mission.

If this has gone forward with Appointing Authority signature without communication, documentation or intent based ONLY on Derrick's "advising", there's something very important missing. Per Civil Service Rules a resignation needs to be in writing. I have not written or presented such a document. If there is such a document, please provide me with a copy today. If there is a document "from me" or written on my behalf, being used to support this action, it IS NOT from my hand, mind or heart. If there is such a document, it is and will be considered libelous.

Again, to be perfectly clear, I DID NOT "quit". Nor did I ever use the word "quit" in my two brief conversations with Derrick, Thursday morning. I have documented communication that would/will suggest otherwise.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

If Dr. Cunningham would like more context on this matter, I am more than willing to share what I believe is actual fact and that can help discern the truth. I will also be reaching out to others who may also have fallen victim to Derrick's lie.

I did not "quit" or resign. Nor do I understand why Derrick would risk his professional and personal integrity by telling a lie to Dr. Cunningham and staff. To gain/prove what?

Thank you.

Pete

---

**From:** Gardner, Sharon <SGardner2@stlouiscountymo.gov>
**Sent:** Friday, February 6, 2026 1:19:30 PM
**To:** petewyatt149@gmail.com <petewyatt149@gmail.com>
**Cc:** Melton, Derrick <DMelton@stlouiscountymo.gov>; Cunningham, Kanika <KCunningham@stlouiscountymo.gov>
**Subject:** Resignation Acceptance

Dear Mr. Wyatt:

Dr. Cunningham has been informed that you advised CEO Derrick Melton of your resignation.  This email is to formally acknowledge and accept your resignation on behalf of Dr. Cunningham and the Department of Public Health.

We wish you the best in your future endeavors.

Sincerely,

**Sharon Gardner**

Executive Assistant to Director

Department of Public Health

Administration

Saint Louis County

6121 N. Hanley Rd. | Berkeley, MO 63134

o: 314.615.1627 | m: 314.901.6725

www.stlouiscountymo.gov

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**Disclaimer**

The information contained in this communication from the sender is confidential. It is intended solely for use by the recipient and others authorized to receive it. If you are not the recipient, you are hereby notified that any disclosure, copying, distribution or taking action in relation of the contents of this information is strictly prohibited and may be unlawful.

---

**Derrick Melton - Pete Wyatt Incident Feb 5-6.pdf**
138K

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Gmail

**Pete Wyatt <petewyatt149@gmail.com>**

# Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Mon, Feb 16, 2026 at 4:31 AM
To: mlivasy@stlouiscountymo.gov
Cc: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

My name is Pete Wyatt, Chief Operating Officer, Community Health Centers.

I copied you in a February 9th memo to Dr. Cunningham and others on this subject. Hopefully, you were able to review the background and talk to Dr. Cunningham about the "resignation." A resignation that was fully processed in 24 hours. However, **I did not and have not resigned.**

I am officially appealing the "resignation" and I'm seeking expeditious and complete reinstatement. I am also requesting an investigation into how this situation occurred.

The attachments represent my appeal and support material.

I understand there is a process that could take some time. I also understand that special circumstances can be acknowledged. I am unjustly without an income and the clinical staff is in the middle of critical transition. This is an extremely positive, but chaotic time for all involved in the Community Health Centers.

Can I get this on Tuesday's agenda?

Thank you.

Pete Wyatt
314-494-2100

**7 attachments**

**Exhibit 2A Panera Transaction.docx**
153K

**Exhibit 2B Imo's Transaction.docx**
151K

**Exhibit 3 Cell Phone Call Log.docx**
144K

**BEFORE THE CIVIL SERVICE COMMISSION.pdf**
274K

**Exhibit 1 Derrick Melton - Pete Wyatt Incident Feb 5-6.pdf**
223K

**Exhibit 4B Text Thread 2.docx**
181K

**Exhibit 4A Text Thread 1.docx**
164K

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Gmail

Pete Wyatt <petewyatt149@gmail.com>

# Fwd: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request

1 message

**Pete Wyatt** <petewyatt149@gmail.com> Fri, Feb 20, 2026 at 3:48 PM
To: mlivasy@stlouiscountymo.gov
Cc: "Cunningham, Kanika" <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, "Gardner, Sharon" <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

I'm following up on my attempt to establish a line of communication and timeline regarding my requested appeal and hearing.

It has been 10 working days since Derrick Melton inexplicably submitted MY "resignation" to Dr. Cunningham, stating "I quit", which she accepted, without my knowledge, my consent, a written document from me or factual cause. Since February 6, 2026 I have attempted communication with leadership on several occasions, but have not received acknowledgement of my denial, my submission of evidence to the contrary, my request for appeal or my request for a private, in person hearing under oath.

I've read there is a form you may send for me to state my reasons for appeal and remedy sought. Will you, in fact, be sending a form? Or will the information I have already provided suffice?

What are the next steps in the process? Is there ANYTHING else you need from me at this time that will move this process forward?

Your acknowledgement and direction will be truly appreciated.

Thanks,

Pete
314-494-2100

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Thu, Feb 19, 2026 at 9:17 AM
Subject: Fwd: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request
To: <mlivasy@stlouiscountymo.gov>
Cc: Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, Gardner, Sharon <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

Can we establish a line of communication and timeline regarding my requested appeal?

I prefer private, in person and under oath.

Is there anything you need from me at this time?

Thanks,

Pete
314-494-2100

---------- Forwarded message ---------
From: **Pete Wyatt** <petewyatt149@gmail.com>
Date: Mon, Feb 16, 2026 at 4:31 AM

Subject: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request
To: <mlivasy@stlouiscountymo.gov>
Cc: Cunningham, Kanika <KCunningham@stlouiscountymo.gov>, Dionne Jones <djones@pinelawn.org>, Gardner, Sharon <SGardner2@stlouiscountymo.gov>, Pete Wyatt <petewyatt149@gmail.com>

Matt,

My name is Pete Wyatt, Chief Operating Officer, Community Health Centers.

I copied you in a February 9th memo to Dr. Cunningham and others on this subject. Hopefully, you were able to review the background and talk to Dr. Cunningham about the "resignation." A resignation that was fully processed in 24 hours. However, **I did not and have not resigned.**

I am officially appealing the "resignation" and I'm seeking expeditious and complete reinstatement. I am also requesting an investigation into how this situation occurred.

The attachments represent my appeal and support material.

I understand there is a process that could take some time. I also understand that special circumstances can be acknowledged. I am unjustly without an income and the clinical staff is in the middle of critical transition. This is an extremely positive, but chaotic time for all involved in the Community Health Centers.

Can I get this on Tuesday's agenda?

Thank you.

Pete Wyatt
314-494-2100

---

**7 attachments**

**Exhibit 2A Panera Transaction.docx**
153K

**Exhibit 2B Imo's Transaction.docx**
151K

**Exhibit 3 Cell Phone Call Log.docx**
144K

**BEFORE THE CIVIL SERVICE COMMISSION.pdf**
274K

**Exhibit 1 Derrick Melton - Pete Wyatt Incident Feb 5-6.pdf**
223K

**Exhibit 4B Text Thread 2.docx**
181K

**Exhibit 4A Text Thread 1.docx**
164K

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

10:24 97

# Derrick Melton

+1 601-291-8361

**Thursday, February 5**

9:32 AM
Outgoing call, 0 mins 58 sec

9:31 AM
Missed call

9:26 AM
Missed call

9:19 AM
Missed call

9:18 AM
Missed call

**Wednesday, January 28**

6:23 PM
Incoming call, 2 mins 12 sec

Favorites Share Block Delete

26SL-CC05095
Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**BEFORE THE CIVIL SERVICE COMMISSION ST. LOUIS COUNTY, MISSOURI**

In Re the Matter of: )
)
Duane "Pete" Wyatt, )
)
Appellant. )

# FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION

## A. Introduction

A hearing was conducted on March 30, 2026 to hear evidence relating to Duane "Pete" Wyatt's appeal related to his separation from employment with St. Louis County. Official notice was taken of the St. Louis County Charter Article VII section 7.020; St. Louis County Ordinance 15,154, St. Louis County Revised Ordinances section 202.100, and St. Louis County Civil Service Rules XIX and XXII. The Civil Service Commission, now having considered all the evidence and testimony adduced, and having reviewed the full record of this matter, and being fully advised in the premises, makes these findings of fact, conclusions of law, and decision.

## B. Findings of Fact

1. Duane "Pete" Wyatt was employed by St. Louis County starting on August 19, 2024, as the Federally Qualified Health Center Chief Operations Officer within the Department of Public Health. Hearing Tr. 122:12-15.

2. Dr. Kanika Cunningham, beginning in January 2023, has served as and continues to serve as the Director of the St. Louis County Department of Public Health. Hearing Tr. 85:19-23.

3. Dr. Kanika Cunningham is the Appointing Authority for the Department of

Plaintif
#

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Public Health. Hearing Tr. 87:8.

4. Mr. Wyatt resigned from County employment, effective February 6, 2026. Hearing Tr. 90:5 – 91:16; Exh. A (resignation acceptance email).

**Mr. Wyatt's Performance and Conduct Prior to Feb. 5**

5. Mr. Wyatt reported directly to Derrick Melton, the Federally Qualified Health Center Chief Executive Officer. Hearing Tr. 31:10.

6. Mr. Wyatt's job duties included the oversight of DPH's clinical operations, including supervising nursing and administrative staff, engaging in strategic planning to maintain financial solvency and stability, and ensuring regulatory compliance with federal HRSA (Health Resources and Services Administration) requirements tied to maintaining DPH's federally qualified health center status. Hearing Tr. 31:14 –25.

7. As of February 5, 2026, Mr. Melton was generally satisfied with Mr. Wyatt's job performance. Hearing Tr. 32:2.

8. As of February 5, 2026, the Department of Public Health was pursuing no disciplinary action against Mr. Wyatt and knew of no allegations of misconduct that could have lead to disciplinary action. Hearing Tr. 32:21 – 33.1.

**Mr. Wyatt's Resignation**

9. On February 5, 2026:

a. At approximately 9:00 a.m., Dr. Cunningham asked Mr. Melton how many employees reported directly to Mr. Wyatt. Dr. Cunningham communicated that she needed an answer urgently. Tr. 89:24-90:1.

b. Mr. Melton sent a text message to Mr. Wyatt with the question at 9:03 a.m. Mr. Wyatt replied that he thought he had six direct reports but would confirm.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Hearing Tr. 41:22-42:2.

c. Mr. Melton called Mr. Wyatt directly four times between 9:03 a.m. and 9:30 a.m. seeking a more specific answer. Mr. Wyatt did not answer. Hearing Tr. 33:16 – 20; Exh. B (call logs).

d. Ms. Pike, who served as Mr. Melton's administrative support staff, also called Mr. Wyatt on Mr. Melton's behalf. Mr. Wyatt did not answer. Hearing Tr. 63:20-23.

e. At or around 9:30 a.m., Mr. Wyatt returned Mr. Melton's call. The call duration was 58 seconds. Hearing Tr. 128:25-129:2; Exh. B.

f. Mr. Wyatt's voice was raised, and Mr. Melton heard a smacking sound that he believed to be Mr. Wyatt smacking the steering wheel of his vehicle. Hearing Tr. 36:17-25.

g. During the 9:30 a.m. call:

   i. Mr. Wyatt repeatedly cursed Mr. Melton, using language including "fuck you," "I'm fucking talking to you," "I'm fucking driving," and "I'm tired of this shit." Hearing Tr. 31:13-25.

   ii. Mr. Wyatt then stated, "I fucking quit." Hearing Tr. 36:1.

   iii. Mr. Melton asked Mr. Wyatt to confirm, and he repeated, "I fucking quit." Hearing Tr. 36:3-8.

   iv. Mr. Melton responded, "If you quit, then I accept." Hearing Tr. 36:12.

h. Following the 9:30 a.m. call, Mr. Melton immediately called Dr. Cunningham. Hearing Tr. 89:16-20.

i. Mr. Melton told Dr. Cunningham that Mr. Wyatt said that he "fucking quit."

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Hearing Tr. 90:6.

j. Mr. Wyatt did not submit a written resignation. Hearing Tr.

**Mr. Wyatt's Actions After the Resignation**

10. On February 5, 2026:

a. At or about 10:00 a.m. Mr. Wyatt arrived at the John C. Murphy building, located at 6121 North Hanley Road Berkeley, Missouri 63134. Hearing Tr. 138:19.

b. Soon after Mr. Wyatt's arrival, at or about 10:15 a.m. Mr. Wyatt entered Mr. Melton's office. Hearing Tr. 38:19-23.

i. Mr. Melton immediately asked why Mr. Wyatt was there. Mr. Melton repeated, "You resigned. You said what you said and that's that." Hearing Tr. 38:1-16.

ii. Mr. Wyatt then left Mr. Melton's office. Hearing Tr. 38:17.

iii. Mr. Wyatt did not attempt to deny his resignation or ask for clarification. Hearing Tr. 38:24 – 39:6.

k. Mr. Wyatt approached Ms. Pike outside Mr. Melton's office multiple times throughout the afternoon. Mr. Wyatt repeatedly said "I need to apologize to him." Hearing Tr. 70:15 – 71:2; *see also* Exh. C (Eugenia Pike statement)

a. At or soon after 3:30 p.m., Ms. Pike cancelled a future one-on-one meeting between Mr. Wyatt and Mr. Melton. Hearing Tr. 71:3.

b. Mr. Wyatt approached Ms. Pike, repeated his request and asked Ms. Pike, "Is he mad? he's mad, isn't he?" Hearing Tr. 71:3-6; Exh. B.

c. Ms. Pike and Mr. Wyatt both left the office at approximately 4:30 p.m.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Hearing Tr. 71:14.

**Dr. Cunningham's Acceptance**

11. On February 6, 2026:

a. On the morning of February 6, 2026, Dr. Cunningham directed her executive assistant, Sharon Gardner, to communicate her formal acceptance of Mr. Wyatt's resignation. Hearing Tr. 78:22 – 79:4.

b. Mr. Wyatt arrived at the John C. Murphy building at approximately 12:35 p.m. Hearing Tr. 131:2.

c. Ms. Gardner came to Mr. Wyatt's office at or around 12:50 p.m. and informed him verbally that Dr. Cunningham had accepted his resignation. Hearing Tr. 82:13-15.

d. In response to Ms. Gardner, Mr. Wyatt denied that he had resigned. Hearing Tr. 82:22

e. Mr. Wyatt initially denied to Ms. Gardner that he had spoken to Mr. Melton at all on February 5, 2026 and repeated his denial multiple times. Hearing Tr. 79:18 – 80:3.

f. After Ms. Gardner asked whether Mr. Wyatt complied with Mr. Melton's text message to call him, Mr. Wyatt changed his answer. Hearing Tr. 80:6-11.

g. Mr. Wyatt then admitted that he had a heated conversation with Mr. Melton. Mr. Wyatt stated to Ms. Gardner that he could not recall whether he cursed. Hearing Tr. 80:19-25.

h. Ms. Gardner instructed Mr. Wyatt to turn in his badge and mobile telephone. Hearing Tr. 84:7.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

i. Mr. Wyatt then left the building. Hearing Tr. 83:19.

j. At 1:19 p.m., Ms. Gardner sent an email to Mr. Wyatt with further written confirmation of Dr. Cunningham's acceptance of Mr. Wyatt's resignation. Hearing Tr. 81:4-9; Exh. A.

12. Mr. Wyatt submitted an appeal to the Civil Service Commission on February 24, 2026, and amended his appeal on March 9, 2026. Mr. Wyatt alleged in both the original and amended submissions that he had never resigned, and so his separation from County employment was properly characterized as an appealable termination.

13. On March 30, 2026, without ruling on whether Mr. Wyatt's separation from County employment was an appealable termination, the Civil Service Commission held a hearing on the record on Mr. Wyatt's allegation. *See* Hearing Tr 1.

14. The Civil Service Commission provided Mr. Wyatt due process on March 30, 2026, by conducting its hearing prior to deciding whether his separation from employment was a resignation or a termination, which was appealable. *See* Hearing Tr., *passim*.

15. During the appeal hearing, Mr. Wyatt received due process when he had the opportunity to respond to all allegations against him with his own testimony and the opportunity to provide additional testimony, exhibits and evidence. *See* Hearing Tr., *passim*.

16. Mr. Wyatt testified at the hearing and provided witness testimony. *See* Hearing Tr. 109:23 – 159:3.

17. Mr. Wyatt and the County were both represented by counsel in this matter. *See* Hearing Tr. 2.

18. The Civil Service Commission members reviewed all the transcripts and evidence before voting on Mr. Wyatt's appeal. The evidence reviewed included a transcript of

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Mr. Wyatt's testimony. *See* Minutes of the Civil Service Commission Meeting dated June 16, 2026.

**C. Conclusions of Law**

The Commission makes the following conclusions of law from its findings of fact and the reasonable inferences derived therefrom:

19. The St. Louis County Civil Service Commission has jurisdiction of this matter pursuant to the St. Louis County Charter Article VII, section 7.20; Ordinance 15,154, section 202.100 of the St. Louis County Revised Ordinances; and St. Louis County Civil Service Rule XXII, section B.1-.3.

20. St. Louis County Civil Service Rule XIX (Resignation) fully applies and the Appointing Authority correctly interpreted the true intent thereof in accepting Mr. Wyatt's oral statement as a resignation not in good standing on February 6, 2026, pursuant to Section A, sub-sections 1 and 2, which respectively state that:

1. A merit system employee may resign in good standing by submitting a written resignation to the employee's Appointing Authority, at least 14 calendar days before the effective date of the resignation. A copy of the written resignation must be submitted by the Appointing Authority to the Personnel Director with the payroll form terminating employment.
2. Failure of the employee to give 14 calendar days notice, unless the Appointing Authority consents to a shorter period of notice, may be cause for an employee not to be recommended for future employment with the County.

21. The hearing before the Commission consisted of direct testimony and cross examination of witnesses and the introduction of exhibits. *See* Tr.

22. County's evidence credibly established that even though there was no written resignation, Mr. Wyatt made an unequivocal verbal statement of his intent to resign to Derrick Melton on February 5, 2026.

23. The County's evidence established that, by failing to submit his resignation in

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

writing and with 14 calendar days' notice, Mr. Wyatt resigned not in good standing.

24. The County's evidence established that Dr. Cunningham, by and through Ms. Gardner, accepted Mr. Wyatt's verbal resignation on February 6, 2026.

25. The County's evidence established that Mr. Wyatt did not disclaim or rescind his resignation prior to Dr. Cunningham's acceptance.

26. Dr. Cunningham's interpretation of Mr. Wyatt's conduct as a verbal resignation not in good standing was supported by competent and substantial evidence, and was not arbitrary, capricious, or unreasonable.

27. Dr. Cunningham did not abuse her discretion when she accepted Mr. Wyatt's resignation.

28. Mr. Wyatt's separation from County employment was appropriate and lawful under the Charter, St. Louis County ordinances, and the Rules and Regulations of this Commission.

29. The Appointing Authority was not required to comply with the procedural requirements contained in Rule XXI, Section D of the St. Louis County Civil Service Rules in that Mr. Wyatt, by resigning, voluntarily waived his entitlement to the due process described therein.

30. Mr. Wyatt's contention on appeal that he was involuntarily terminated from County employment without due process is therefore denied.

31. The evidence adduced at the March 30, 2026 hearing that is contrary or inconsistent with the findings of fact, conclusions of law and decision herein is specifically found to be not credible, and not an adequate basis to reverse any or all of such findings, conclusions and decision.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**DECISION**

We, the Civil Service Commission, therefore, unanimously affirm the decision of the Appointing Authority accepting Mr. Wyatt's resignation from St. Louis County employment, effective February 6, 2026, and deny Appellant's appeal from such resignation.

Nadine Nunn, Chairperson
St. Louis County Civil Service Commission

Satonya L Booker

Satonya Booker, Member
St. Louis County Civil Service Commission

Chantal Hoffsten, Member
St. Louis County Civil Service Commission

Raven Akram

Raven Akram, Member
St. Louis County Civil Service Commission

SO ORDERED:

June 18, 2026

Date

26SL-CC05095

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

BEFORE THE CIVIL SERVICE COMMISSION
ST LOUIS COUNTY, MISSOURI

Duane Pete Wyatt COO Community Health Centers, Appellant,

v.

St. Louis County, Missouri,

St. Louis County Department of Public Health,

St. Louis County Clinical Consumer Majority Board,

Derrick Melton, CEO, Community Health Centers, and

Dr. Kanica Cunningham, Director, Department of Public Health, Respondents.

**SECOND AMENDED RULE XXII APPEAL**

COMES NOW Duane "Pete" Wyatt, and hereby amends my above-captioned appeal to clarify the respondents to include St. Louis County, the St. Louis County Department of Public Health, and the St. Louis County Clinical Consumer Majority Board. Other than additional formatting fixes, counsel's signature and certificate of service below, this is the only change from Mr. Wyatt's first Amended Rule XXII Appeal.

I Duane "Pete" Wyatt hereby state my formal appeal of wrongful discharge (false resignation), failure to abide by administrative grievance rules, and disparagement, as follows:

1. I am an adult over the age of 18 and resident of St. Louis County, Missouri

2. On August 19, 2024, I was hired to serve as Chief Operating Officer, Community Health Centers

3. I have performed uninterrupted in this capacity and without any performance concerns.

Plaintiff's Exhibit #04

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**Wrongful Termination (False Resignation)**

4. On Friday, February 6 2026 at approximately 12:40 pm, while in my office preparing for my weekly leadership staff meeting, I was informed by Sharon Gardner, Executive Assistant to Dr. Kanica Cunningham that Dr. Cunningham had accepted my resignation."

5. When I asked for clarification Sharon Gardner stated that my direct supervisor, Derrick Melton Chief Executive Officer, Community Health Centers had informed Dr. Cunningham, his fractional supervisor and Director of Public Health that I had told him in a heated cure laden, exchange, "I quit."

6. The alleged exchange with Derrick Melton occurring at some point on Thursday,

February 5 2026 did not occur. The account allegedly provided by Derrick Melton to Dr. Cunningham is a fabrication

7. At no time have I "quit" (resigned) my position either verbally or in writing. At all relevant times I've consistently denied doing so

8. Further belying Derrick Melton's account on Thursday, February 5th, that I allegedly "quit" is the fact that I was communicating and or present in the office and performing my work as usual on Friday, February 6th

9. Over my objections, at approximately 12:55p.m., I was asked to leave my office and it was planned that I be escorted out of the building, and my access badge, phone and laptop was confiscated

10. Documented evidence exists some attached, (Exhibits 1-4) that directly

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

challenges Derrick Meltons' claim as follows: (1) a detailed timeline, (2A B) bank transaction records, (3) a cell phone call log, including the single connected call with time and duration, and (4A B)) text message threads with timestamps and content My work calendar and DPH security video footage require authorization

**Failure to Comply with Administrative Procedures to Investigate the Grievance**

11. Pursuant to Rule XX: Conflict Resolution and Grievance Procedure Section C.1, Prior to knowing I had resigned", I attempted to interact with Derrick Melton in passing on Friday, February 6th, approximately 12:35pm in the DPH employee parking lot, regarding a meeting update; Derrick Melton proceeded to his car, avoiding communication As he exited the lot he looked my way, but refused to stop and speak with me. Department of Public Health security video footage will confirm my account.

12. Pursuant to Rule XX: Conflict Resolution and Grievance Procedure - Section E.5 , I did not file an official grievance. I did, however attempt to address this false account directly with Dr. Cunningham twice directly via email and once indirectly, when she and Derrick Melton were copied on my initial email response to the email from Sharon Gardner stating that my "resignation" had been accepted. These communications are attached collectively as Exhibit 6

13. To date, I have not received any acknowledgement or response to my messages in direct contravention of obligations pursuant to and in the "spirit" of Rule XX: Sections C.1 and C.2

**Disparagement by Derrick Melton**

14. Upon information and belief, Derrick Melton has repeated this false narrative

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

to senior and middle management within the Department of Public Health, as well as to the Executive Committee of the Clinical Consumer Majority Board of Directors Subsequently, the false narrative has also reached clinical and Department of Public Health staff This false disparagement slanders and damages my professional and personal reputation.

**Subsequently, I hereby respectfully request:**

1. *Pursuant to Rule XXII: Appeals, Hearings and Investigations Section 3.c.;* Immediate and full reinstatement to my position as Chief Operating Officer, with restoration of all status, seniority, pay, and no loss of time or standing

2. *Pursuant to Rule XXV: Records and Reports Section E;* A copy of a the resignation letter supporting these actions and a copy of a clear, written apology and retraction from Derrick Melton to Dr. Cunninham Matt Livasy and the Executive Committee of the Clinical Consumer Majority Board of Directors

3. *Pursuant to Rule XXII: Appeals, Hearings and Investigations Section 2;* In the absence of these results, I hereby request an expedited, closed hearing with the opportunity to conduct reasonable discovery.

Respectfully submitted,

Katherine C. Frierdich, MO 51375
Cadenzia Consulting LLC
14 Fordyce Ln
St. Louis, Missouri 63124
(314) 791-5297

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Certificate of Service

The undersigned hereby certifies that the foregoing was filed at countyhr@stlouiscountymo.gov, with copy to mlivasy@stlouiscountymo.gov on this 9th day of March, 2026.

______________________________

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Skip to main content

St. Louis County

NextRequest

**Request Visibility:** Unpublished

# Request 26-3253 Closed

11 of 541

## Dates

**Received**

February 24, 2026 via web

## Requester

Katherine Frierdich, Counsel to Mr. Wyatt

kcfrierdich@cadenziaconsulting.com

14 Fordyce Ln , St. Louis, MO, 63124

(314) 791-5297

Cadenzia Consulting LLC

## Invoices

No invoices due

## Request

I hereby request any and all documents, photos, emails, text messages, videos, data and other records, from January 26, 2026 through present regarding and/or relating to the following:

- Duane "Pete" Wyatt
- Mr. Wyatt's Purported Resignation
- Mr. Wyatt's Purported Termination

Additionally, I hereby request any and all documents, photos, emails, text messages, videos, data and other records, from the inception of Mr. Wyatt's employment through present regarding and/or relating to the following:

- Mr. Wyatt's Human Resources File
- Mr. Wyatt's Work Performance

Known custodians include:

- Derrick Melton,
  - CEO, Community Health Centers
  - dmelton@stlouiscountymo.gov
  - 314-565-5627 (County issued phone)



Plaintiff's Exhibit #05

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 1077 of 1127 PageID #: 1080
Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

## Staff assigned

### Departments

Department of Public Health

### Point of contact

Sharon Gardner

- 601-291-8361 (Personal cell phone)
- Dr. Kanika Cunningham
  - Director, Department of Public Health
  - kcunningham@stlouiscountymo.gov
- Dionne Jones
  - Chairwoman, Board of Directors
  - djones@pinelawn.org
  - 314-803-2618 (Personal cell phone)
- Sharon Gardner
  - Assistant to Dr. Cunningham
  - Sgardner2@stlouiscountymo.gov
  - 314-901-6725 (County issued phone)
  - 314-402-4356 (Personal cell phone)
- Eugenia Pike
  - Assistant to Derrick Melton
  - epike@stlouiscountymo.gov
  - 314-477-3856 (County issued phone)
  - 314-448-0954 (Personal cell phone)
-

Upon information and belief, Mr. Derick Melton and others use both County-issued and private cell phones (both numbers listed above to the extent known) to conduct County business, Thus I request that both devices each be searched and relevant records produced in response to this request.

Thank you for your consideration to this matter.

Show less

Timeline Documents

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Anyone with access to this request

## Request closed

All records have been released, and your request has been fulfilled.

June 5, 2026, 10:31am by Staff

Requester + Staff

## Document(s) released to requester

Re: [External Email] Epic Users.pdf
RE: On-site with Epic.pdf
[External Email] RE: On-site with Epic.pdf

June 5, 2026, 10:31am by Staff

Requester + Staff

## Message to requester

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

June 5, 2026, 10:31am by Staff

Requester + Staff

## Document(s) released to requester

RE_ Gentle Reminder - Employee Cell Phones.pdf
Cell Phones - T-Mobile and Verizon-January 2026.xlsx

June 2, 2026, 2:40pm by Staff

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

## Message to requester

Requester + Staff

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than June 5, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

June 2, 2026, 2:40pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than June 5, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

June 1, 2026, 5:10pm by Staff

### Document(s) released to requester

Requester + Staff

IMG_8691-redacted.jpeg.pdf

May 21, 2026, 12:07pm by Staff

### Message to requester

Requester + Staff

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than June 1, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

May 21, 2026, 12:07pm by Staff

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

## Document(s) released to requester

Requester + Staff

26.pdf

May 21, 2026, 9:42am by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than June 1, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

May 21, 2026, 9:42am by Staff

## Document(s) released to requester

Requester + Staff

Eugenia Pike Written Statement regarding Pete Wyatt.pdf
Pete Wyatt's Calendar on 2.5.2026.pdf
RE: Finance Sub-committee Meeting-FQHC LAL.pdf

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 1082 of 1127 PageID #: 1085
Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

RE: Email to Staff on my behalf.pdf
Email to Staff on my behalf.pdf
[External Email] Fwd: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request.pdf
[External Email] Fwd: Pete Wyatt "Resignation Acceptance" Civil Service Commission Appeal Request.pdf
RE Pete Community Food Truck Follow-Up Report-redacted.pdf
[External Email] Fwd Resignation Acceptance-redacted.pdf
[External Email] Fwd Resignation Acceptance-redacted.pdf

May 21, 2026, 9:25am by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than June 1, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

May 21, 2026, 9:25am by Staff

## Document(s) released to requester

Requester + Staff

RE: Gentle Reminder - Employee Cell Phones.pdf
RE: Divisions Need for MFA Epic Users.pdf
RE: FW: [External Email] Re: Invite for Friday.pdf
Re: FW: [External Email] Re: Invite for Friday.pdf
Re: FW: [External Email] Re: Invite for Friday.pdf
RE: UDS Work Plan.pdf
RE: UDS Work Plan.pdf
RE: UDS Work Plan.pdf
RE: 2025 UDS Report Debra's final 1.14.2026.pdf
RE: MPCA invoices 775 and 805.pdf
RE: Finance Sub-committee Meeting-FQHC LAL.pdf
RE: [External Email] Re: Epic project updates.pdf
RE [External Email] Immunization Records-redacted.pdf
ce5e14a2-611f-4eb9-9ae8-0a7d83134d38-redacted.jpg.pdf

May 20, 2026, 2:55pm by Staff

## Message to requester

Requester + Staff

Dear Kaherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than June 1, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

May 20, 2026, 2:55pm by Staff

## Document(s) released to requester

Requester + Staff

RE: Lab Contract(s).pdf

May 11, 2026, 3:49pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than May 20, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

May 11, 2026, 3:49pm by Staff

## Document(s) released to requester

Requester + Staff

RE: [External Email] Information.pdf
26.pdf
RE: [External Email] Weekly Status update for Epic Project at St. Louis DPH.pdf
RE: [External Email] Fwd: Scheduling Questions.pdf
RE: [External Email] Re: Department Specific Scheduling Instructions.pdf
RE: [External Email] Re: Department Specific Scheduling Instructions.pdf
RE: Executive Leadership Team FQHC.pdf
26.pdf
Re: [External Email] Information.pdf
Re: [External Email] Information.pdf
26.pdf
Re: REMINDER: ACTION NEEDED: Councilwoman Bangert Townhall.pdf
RE: Foote, Sharon shared "2025 UDS Report (all tables completed)" with you.pdf
RE: Request for Telework Utilization Information.pdf
RE: January 2026 Reports for February Finance Committee and Consumer Majority Board Meetings.pdf
[External Email] [Opened] St. Louis County records request #26-3253 from Katherine Frierdich, Counsel to Mr. Wyatt.pdf
RE: [External Email] Re: Department Specific Scheduling Instructions.pdf

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

RE: Request for Telework Utilization Information.pdf
RE: [External Email] Re: Department Specific Scheduling Instructions.pdf
RE: Request for Telework Utilization Information.pdf
RE: [External Email] Re: Department Specific Scheduling Instructions.pdf
RE: Request for Telework Utilization Information.pdf
LEAD Training Program (Pete Wyatt).pdf
RE Gentle Reminder - Employee Cell Phones-redacted.pdf

May 8, 2026, 3:20pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The following documents have been identified as responsive to your request and are released.

Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than May 20, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

May 8, 2026, 3:20pm by Staff

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Requester + Staff

## Message to requester

Dear [Name],

The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than May 4, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

April 30, 2026, 7:35am by Staff

Requester + Staff

## Message from requester

Pursuant to Missouri Sunshine Law, Section 610.023 R.S.Mo., you were required to respond within three (3) days, which you did not, or provide a *detailed explanation* for the cause of your now multiple delays in responding to my request, which you have not. Mr. Wyatt was not employed with the County for long, so the records should not be voluminous or burdensome to collect and produce. Please note that if we do not receive both the requested documents and an explanation for your delays by the end of the day next Monday, April 27th, I will submit a complaint to the Missouri Attorney General's Office and seek all available remedies on Mr. Wyatt's behalf for your failure to comply with the

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Missouri Sunshine Law. Katherine Frierdich

April 23, 2026, 4:41pm by the requester via email

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than April 29, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

April 23, 2026, 4:24pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than April 23, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Saint Louis County Department of Public Health

April 15, 2026, 4:00pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than April 15, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

April 8, 2026, 2:14pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health is working diligently to respond to your request. Additional time is required to complete the search for responsive records and, if any exist, to review them for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all responsive records, or to inform you that no such records exist, no later than April 8, 2026.

Sincerely,

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

April 1, 2026, 8:27pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health is working diligently to respond to your request. Additional time is required to complete the search for responsive records and, if any exist, to review them for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all responsive records, or to inform you that no such records exist, no later than April 1, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

March 20, 2026, 11:57am by Staff

## Message to requester

Requester + Staff

Dear Katherine,

The Department of Public Health is working diligently to respond to your request. Additional time is required to complete the search for responsive

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

records and, if any exist, to review them for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all responsive records, or to inform you that no such records exist, no later than March 20, 2026.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

February 27, 2026, 1:52pm by Staff

## Message to requester

Requester + Staff

Dear Katherine,

Your records request has been forwarded to the appropriate division of the Department of Public Health. All responsive records, if any, will be reviewed and provided to you.

Sincerely,

Cassundra Pabon (on behalf of)

Sharon Gardner

Custodian of Records

Saint Louis County Department of Public Health

February 25, 2026, 11:32am by Staff

## Department assignment

Anyone with access to this request

Case: 4:26-cv-01432-ZMB Doc. #: 1-1 Filed: 09/08/26 Page: 1092 of 1127
PageID #: 1095
Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Department of Public Health

February 24, 2026, 4:55pm by the requester

**Request opened** Anyone with access to this request

Request received via web

February 24, 2026, 4:55pm by the requester

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Sunshine Act Request #26-3253 Timeline

Mr. Wyatt, through counsel, submitted a Sunshine Act request to St. Louis County on February 24, 2026. It stated:

"I hereby request any and all documents, photos, emails, text messages, videos, data and other records, from January 26, 2026 through present regarding and/or relating to the following:

- Duane 'Pete' Wyatt
- Mr. Wyatt's Purported Resignation
- Mr. Wyatt's Purported Termination

Additionally, I hereby request any and all documents, photos, emails, text messages, videos, data and other records, from the inception of Mr. Wyatt's employment through present regarding and/or relating to the following:

- Mr. Wyatt's Human Resources File
- Mr. Wyatt's Work Performance

Known custodians include:

- Derrick Melton,
    - CEO, Community Health Centers
    - dmelton@stlouiscountymo.gov
    - 314-565-5627 (County issued phone)
    - 601-291-8361 (Personal cell phone)
- Dr. Kanika Cunningham
    - Director, Department of Public Health
    - kcunningham@stlouiscountymo.gov
- Dionne Jones
    - Chairwoman, Board of Directors
    - djones@pinelawn.org
    - 314-803-2618 (Personal cell phone)
- Sharon Gardner
    - Assistant to Dr. Cunningham
    - Sgardner2@stlouiscountymo.gov
    - 314-901-6725 (County issued phone)
    - 314-402-4356 (Personal cell phone)

Plaintiff's Exhibit #06

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

- Eugenia Pike
    - Assistant to Derrick Melton
    - epike@stlouiscountymo.gov
    - 314-477-3856 (County issued phone)
    - 314-448-0954 (Personal cell phone)

Upon information and belief, Mr. Derick Melton and others use both County-issued and private cell phones (both numbers listed above to the extent known) to conduct County business, Thus I request that both devices each be searched and relevant records produced in response to this request.

Thank you for your consideration to this matter."

| Date | DPH Response / Comment |
|---|---|
| 2/24/26 | Request Opened; Assigned to Department of Public Health |
| 2/24/26 | Receipt confirmed by<br>"Cassunder Pabon (on behalf of)<br>Sharon Gardner<br>Custodian of Records<br>St. Louis County Department of Public Health"[1] |
| 2/26/26 | The Civil Service Commission (the "Commission" notified Mr. Wyatt that his purported "resignation" was on the agenda of the Commission meeting dated March 17th. |
| 2/27/26 | Response received on the three day statutory deadline, extending the deadline by three weeks – **rescheduled to three days after the March 17th Commission meeting**: |

[1] All responses are so signed.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

| | |
|---|---|
| | "The Department of Public Health is working diligently to respond to your request. Additional time is required to complete the search for responsive records and, if any exist, to review them for potential closure or redaction pursuant to applicable laws. We now expect to provide you with all responsive records, or to inform you that no such records exist, no later than **March 20, 2026**" (emphasis added). |
| 3/17/26 | The Commission non-substantively addressed Mr. Wyatt's appeal during its open meeting. Scheduled the evidentiary hearing for March 30, 2026. |
| 3/20/26 | Identical response as 2/27/26, except pushing its compliance deadline to **April 1, 2026, two days following the evidentiary hearing**. |
| 3/30/26 | **Wyatt Appeal Evidentiary Hearing** |
| 4/1/26 | Identical response again, except pushing its compliance deadline to **April 8, 2026**. |
| 4/8/26 | Slightly altered response, pushing its compliance deadline by another week, to April 8, 2026:<br><br>"The Department of Public Health requires additional time to review responsive records for potential closure or redaction pursuant to applicable laws. We now expect to provide |

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

| | |
|---|---|
| | you with all records no later than **April 15, 2026**" (emphasis added). |
| 4/15/26 | Identical response to the April 8, 2026 one, extending its compliance deadline to **April 23, 2026**. |
| 4/13/26 | Transcript received, placing the deadline for post-hearing pleadings for April 14, 2026. |
| 4/23/26 | Identical response to the April 8 one, pushing its compliance deadline to **April 29, 2026**. |
| 4/23/26 | Counsel for Mr. Wyatt made the following demand. No response from the County was received.<br>"Pursuant to Missouri Sunshine Law, Section 610.023 R.S.Mo. you were required to respond within three (3) days, which you did not, or provide a *detailed explanation* for the cause of your now multiple delays in responding to my request, which you have not. Mr. Wyatt was not employed with the County for long, so the records should not be voluminous or burdensome to collect and produce. Please note that if we do not receive both the requested documents and an explanation for your delays by the end of the day next Monday, April 27th, I will submit a complaint to the Missouri Attorney General's Office and seek all available remedies on Wr. Wyatt's behalf for your failure to comply with the Missouri Sunshine Law. Katherine Frierdich" |

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

| | |
|---|---|
| 4/30/26 | Identical response to the April 8, 2026 one, pushing its compliance deadline to **May 4, 2026**. |
| 5/8/26 | **Four days after its own selected compliance deadline and 39 days after the evidentiary hearing**, the County produced 28 documents, none of which relate to the events of February 5th or 6th, many of which do not relate to Mr. Wyatt at all, are non-responsive, one of which was Mr. Wyatt's public records request fed back to him (but which showed Ms. Gardner received it directly), and only one containing a single redacted name without explanation.<br>The message read: "Please know the Department of Public Health is still working diligently to fulfill this request and requires additional time to review remaining responsive records for potential disclosure or redaction pursuant to applicable laws. We now expect to provide you with all records no later than **May 20, 2026**" (emphasis added).<br>**May 20, 2026 is one week after the parties' post-hearing pleadings were due to the Commission.** |
| 5/11/26 | The County produced one single document which did not relate to the events of February 5th or 6th, nor Mr. Wyatt, and non-responsive.<br>A message identical to the May 8, 2026 message reiterated its extension of its compliance deadline to **May 20, 2026, which** |

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

| | |
|---|---|
| | **is a week after the parties' post-hearing pleadings were due to the Commission**. |
| 5/13/26 | Mr. Wyatt timely filed with the Commission his (a) Proposed Findings of Fact, Conclusions of Law, and Order and (b) Post-Hearing Brief. |
| 5/14/26 | The County *untimely* filed its Findings of Fact, Conclusions of Law and Order. |
| 5/20/26 | THe County produced 14 documents, none of which relate to the events of February 5th or 6th, nor Mr. Wyatt, and were non-responsive.<br>A message identical to the May 8, 2026 message reiterated its extension of its compliance deadline to **June 1, 2026**. |
| 5/21/26 | The County produced 10 documents, which consisted of (1) the purported Pike statement already produced to the Commission, (2) Mr. Wyatt's calendar screenshot, which is the one of only two document produced that was responsive and not a regurgitation of documents already in Mr. Wyatt's possession; (3) a non-responsive Finance Sub-Committee meeting document; (4) an email draft by Mr. Melton, the only other responsive document; and (5) five emails sent by Mr. Wyatt to the County denying resigning his position, with all additional content redacted without explanation.<br>This production was accompanied by the identical message to May 8, 2026, reiterating its compliance deadline extension to **June 1, 2026**. |

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

| | |
|---|---|
| 5/21/26 | The County produced one document which was producing back to Mr. Wyatt his own text messages to Mr. Melton, which was in Mr. Wyatt's possession and appended as an exhibit to Mr. Wyatt's appeal.<br>This production was accompanied by the identical message to May 8, 2026, reiterating its compliance deadline extension to **June 1, 2026**. |
| 6/1/26 | The County responded with a message identical to the one on April 8, 2026, except extending its compliance deadline to **June 5, 2026**. |
| 6/2/25 | The County produced two documents which did not relate to the events of February 5th or 6th, nor Mr. Wyatt, and non-responsive.<br>This production was accompanied by an identical message to the one of May 8, 2026, but reiterating its extension of its compliance deadline to **June 5, 2026**. |
| 6/5/26 | The County produced two documents which did not relate to the events of February 5th or 6th, nor Mr. Wyatt, and non-responsive. |
| 6/5/26 | In a second message the County stated that: "All records have been released and your request has been fulfilled."<br>**This is 99 days after the request was submitted, 60 days after the evidentiary hearing, and nearly a month after post-hearing pleadings were filed.** |

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**BEFORE THE ST. LOUIS COUNTY CIVIL SERVICE COMMISSION**
**ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| In re Appeal of Duane "Pete" Wyatt, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| Dr. Kanika Cunningham, | ) |
| Appointing Authority, et al., | ) |
| | ) |
| Respondents. | ) |

**APPELLANT'S PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER**

**Proposed Findings of Fact**

1. Mr. Wyatt was employed by St. Louis County as Chief Operating Officer for the Department of Public Health and was a merit employee. Tr. 31:10-13; 122:13-15; 123:11-13.

2. Dr. Kanika Cunningham, the Appointing Authority, testified that she considered Mr. Wyatt terminated from his position. Tr. 98:05-10.

3. The County did not produce any pre-hearing witness list, written statement of cause, or documentary evidence to Appellant before the hearing, and the County confirmed at hearing that it had submitted no documents. Tr. 9:14-23; 10:11-15; 19:16-24; 22:10-15.

4. The Commission took judicial notice of St. Louis County Charter Article VII, Section 7.020; Revised Ordinances section 202.100; Ordinance 15,154; and Civil Service Rules XIX, XX, XXI, and XXII. Tr. 25:07-26:03.

5. On February 5, 2026, Mr. Melton and Mr. Wyatt had a 58-second telephone conversation while Mr. Wyatt was driving to work. Tr. 34:9-17; 125:7-25; Exhibit 3.



Plaintiff's Exhibit
#07

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

6. Mr. Melton testified that during that call Mr. Wyatt twice said that he "quit" and Mr. Melton treated the call as a resignation. Tr. 35:13-25; 36:1-13.

7. No witness other than Mr. Melton claimed ever to have heard Mr. Wyatt say "I quit." Tr. 63:8-11; 68:5-11; 110:15-20.

8. Ms. Pike testified that she worked with Mr. Wyatt throughout the remainder of February 5 until 4:30 p.m. Tr. 64:25-65:06.

9. Dr. Miller testified that he met with Mr. Wyatt on February 5th, did not hear him say he quit, did not observe agitation, and never heard any elevated office discussion that day. See Tr. 110:15-111:24; 113:7-24. Dr. Miller testified that he has never witnessed Mr. Wyatt get angry and curse at people. Tr. 110:21-24.

10. Damon Broadus likewise testified that he saw no agitation from Mr. Wyatt on February 5th, and never heard or saw disrespectful conduct by Mr. Wyatt. Tr. 119:08-120:25.

11. Mr. Wyatt never submitted a written resignation. Tr. 44:14-16; 50:14-18; 148:4-9.

12. Mr. Melton admitted he never asked for a written resignation, and Dr. Cunningham admitted she never asked for one either. Tr. 44:14-16; 50:14-18; 98:5-19.

13. Mr. Wyatt reported to work on February 5th after the 58-second phone call, entered Mr. Melton's office for a brief in-person discussion, continued working the rest of the day, and returned again on February 6th. Tr. 37:20-38:18; 45:06-10; 46:12-24; 129:11-25; 131:22-25; 148:16-25.

14. Ms. Gardner testified that Dr. Cunningham did not ask her to accept the resignation until February 6th. Tr. 79:04-14.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

15. When Ms. Gardner informed Mr. Wyatt on February 6th that the County had accepted his resignation, he was surprised, and expressly denied resigning. Tr. 79:15-24; 82:13-23; 132:18-25; 144:5-12.

16. Dr. Cunningham did not speak directly with Mr. Wyatt before accepting the alleged resignation. Tr. 89:10-23; 90:13-18; 95:22-24.

17. Dr. Cunningham testified that verbal resignations “not in good standing” are situations where an employee says “I quit,” leaves, and does not continue working in the role. Tr. 88:17-89:08; 94:22-95:15.

18. This case did not fit that pattern because Mr. Wyatt continued to work on February 5th and February 6th after the alleged resignation. Tr. 65:1-17; 71:10-18; 129:11-25; 131:22-25; 148:16-25.

19. Dr. Cunningham sent her assistant to inform Mr. Wyatt on February 6th that a supposed resignation “not in good standing” the day prior had already been accepted, and caused Mr. Wyatt to exit the building under supervision of security. Tr. 79:11-24; 82:13-23; 91:17-20; 102:05-11; 132:18-19.

20. After Ms. Gardner informed him that the County had accepted his resignation, Mr. Wyatt sent repeated emails denying that he resigned. Tr. 145:6-25; 146:1-25; 147:1-25; Exhibit 2.

21. Dr. Cunningham admitted that, even after learning Mr. Wyatt denied resigning, she did not direct anyone outside counsel to conduct an investigation. Tr. 102:14-25.

22. The Commission later invited post-hearing filings and referenced “the statement from the young lady that made the statement.” Tr. 165:08-168:05.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

23. The Pike statement later produced to the Commission is an undated, unsigned one-page typed summary. Exhibit 1.

24. At the hearing, however, Ms. Pike testified that she did not recall signing an affidavit, believed Sharon Gardner took her statement, and described that process as occurring later on February 6th. Tr. 68:16-69:25; 70:01-05; 82:06-12.

25. Appellant had no opportunity, after the Pike statement was produced on May 4, 2026, to cross-examine Ms. Pike concerning that document's preparation, timing, edits, or accuracy.

26. Before the hearing, Appellant sought relevant records through a public records request, including materials concerning the alleged resignation, witness statements, investigative materials, and his HR file, but those materials were not produced before the hearing. Request 26-3253.

27. The hearing record reflects that Appellant repeatedly advised the Commission that he had requested documents supporting the County's account and had received nothing from either the County or the Commission before the hearing.

28. The County delayed production of requested records beyond the hearing date and, based on the hearing record and subsequent events, beyond the deadline for meaningful use in post-hearing submissions as well. Request 26-3253.

29. Because the requested materials were not timely produced, Appellant was unable before or during the hearing to compare witness testimony to contemporaneous documents, prepare cross-examination using witness statements and investigative materials, or determine whether exculpatory or inconsistent records existed in his HR file or elsewhere.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

30. The post-hearing production of Ms. Pike's undated, unsigned statement confirms that requested materials existed but were not disclosed in time for Appellant to confront the witness with them during her testimony.

**Proposed Conclusions of Law**

31. Under Article VII of the St. Louis County Charter, covered county employees are retained on the basis of merit and ability, and the Civil Service Commission hears appeals in disciplinary cases. St. Louis County Charter Art. VII, §§ 7.010, 7.030(3).

32. The Commission therefore has jurisdiction to review a separation that is disciplinary in substance regardless of whether Appellant was terminated, as the Appointing Authority testified, or if the County labels it a resignation. Tr. 25:07-26:3.

33. The County failed to prove that Mr. Wyatt voluntarily resigned under Rule XIX because there was no written resignation and because the record shows continued work rather than departure. Tr. 44:14-16; 50:14-18; 65:1-17; 71:10-18; 129:11-25; 148:16-25.

34. The County also failed to prove any deemed resignation by absence. Dr. Cunningham herself acknowledged the Rule XIX provision addressing presumptive resignation after three consecutive missed workdays, and Mr. Wyatt indisputably did not miss three consecutive days. Tr. 99:2-6; 148:10-25.

35. The more persuasive record evidence shows, at most, a brief heated call followed by continued employment conduct inconsistent with resignation. Tr. 64:1-8; 65:1-17; 110:15-25; 120:14-25.

36. Because the Appointing Authority testified to considering the Appellant terminated, Appellant had enforceable rights pursuant to the Charter and Rules XXI and XXII.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

37. Because the County relied on allegations of profanity, aggression, a resignation "not in good standing," and alleged "mental health" concerns shared with an outside third party, the County's action was disciplinary in substance and should have been processed under the discipline-and-appeal framework recognized by the Charter and Rules XXI and XXII. St. Louis County Charter Art. VII, § 7.030(3); Tr. 25:07-26:03; 88:17-25; 90:21-91:12.

38. Mr. Wyatt, as a covered merit employee, possessed a protected property interest in continued employment. St. Louis County Charter Art. VII, §§ 7.010, 7.030(3).

39. Under Cleveland Board of Education v. Loudermill, 470 U.S. 532, 542-46 (1985), due process required notice and an opportunity to respond before the County deprived Mr. Wyatt of that protected employment interest.

40. The County did not provide that process. Dr. Cunningham testified that she considered Mr. Wyatt terminated. Tr. 98:05-10 She alternatively testified that she accepted the alleged resignation without speaking to Mr. Wyatt; Ms. Gardner informed him after the decision had already been made; and the County persisted even after his immediate denial and later written denials. Tr. 79:04-24; 82:13-23; 89:10-23; 90:13-18; 102:14-25; 145:6-147:25; Exhibit 2.

41. Accordingly, the County's action should be reversed on non-constitutional grounds because it was not a proven resignation under the Rules, and, alternatively, because it deprived a merit employee of employment without the minimum pre-deprivation process required by Loudermill.

42. To the extent the County's "resigned not in good standing" designation and all associated accusations placed Mr. Wyatt's good name, reputation, honor, or integrity at issue in connection with loss of employment, due process also supports corrective relief to clear his

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

name. Board of Regents v. Roth, 408 U.S. 564, 573 (1972); Paul v. Davis, 424 U.S. 693, 701-10 (1976); Codd v. Velger, 429 U.S. 624, 627-28 (1977).

43. The late-produced Pike statement should either be excluded or accorded no weight because it was produced only after the hearing, is undated and unsigned, and was not subject to cross-examination after production. Tr. 68:16-25; 69:01-25; 162:21-25; 163:01-25; Exhibit 1.

44. Missouri's Sunshine Law required the County to act on Appellant's request for public records as soon as possible and, absent reasonable cause, no later than the end of the third business day after receipt. Mo. Rev. Stat. § 610.023.

45. Although formal enforcement of Chapter 610 lies in circuit court, the Commission may consider the fairness consequences of the County's delayed and incomplete production in evaluating the reliability and weight of the County's proof in this appeal. § 610.027 R.S.Mo.

46. The County's failure to timely produce requested records materially prejudiced Appellant's ability to prepare and present his case, including his ability to test the County's changing account against contemporaneous records, prepare cross-examination, and confront witnesses with prior statements.

47. To the extent the full extent of prejudice cannot yet be identified, that uncertainty results from the County's continued nonproduction itself. Appellant has therefore preserved all additional objections and remedies arising from any later-produced records, including any rights and remedies available under Chapter 610.

48. The Commission should accordingly draw no inference favorable to the County from the absence of documents the County failed to timely produce and should not afford

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

dispositive or enhanced weight to witness narratives that Appellant was denied a fair opportunity to test through contemporaneous records.

**Proposed Order**

49. The County's action separating Appellant from employment is REVERSED.

50. The Commission finds that Appellant did not voluntarily resign.

51. Appellant shall be reinstated to his former position.

52. Appellant shall receive back pay with interest, restoration of benefits, service credit, leave accruals, seniority from the date of separation through reinstatement, less any lawful offsets, and return of his office space.

53. The County shall remove from Appellant's personnel records any statement that he resigned "not in good standing" and any comparable misconduct-based, resignation or "mental health" notation.

54. The Pike statement produced after hearing is excluded from consideration as unreliable.

55. The Commission shall not afford Respondent any evidentiary or persuasive advantage from records not timely produced, and Appellant's objections arising from that nonproduction are preserved.

56. The Commission grants such other and further relief as is just and proper.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Respectfully submitted,

s/s Katherine Frierdich

Katherine C. Frierdich (née Lemley)
Mo Bar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
Counsel for Appellant

Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on counsel for Respondent and the St. Louis County Clinical Consumer Majority Board on May 13, 2026, via electronic mail.

s/s Katherine Frierdich

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

**BEFORE THE ST. LOUIS COUNTY CIVIL SERVICE COMMISSION**
**ST. LOUIS COUNTY, MISSOURI**

| | |
|---|---|
| In re Appeal of Duane "Pete" Wyatt, | ) |
| | ) |
| Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| Dr. Kanika Cunningham, | ) |
| Appointing Authority, et al., | ) |
| | ) |
| Respondents. | ) |

## APPELLANT'S POST-HEARING BRIEF

### Introduction

St. Louis County (the "County"), through its Appointing Authority, Dr. Kanika Cunningham, would like the Commission to believe that this case is about a merit employee who voluntarily resigned "not in good standing." The County bears the burden to prove that. But its theory simply did not hold up at the hearing on March 30, 2026:

> Q: ". . . did you ask [Mr. Wyatt] to submit his resignation in writing?"
>
> A: [Dr. Cunningham] "No, because I would never talk to--in a situation, I would never talk directly to the **person that's being terminated.**"

See Tr. 98:05-10 (emphasis added). This case is about a termination of a merit employee without basic due process protections.

Even had the County consistently stuck with its "resignation not in good standing" story, which clearly it did not, its case still would have failed. That case would have concerned whether a covered merit employee may be stripped of civil service protection based on an alleged verbal resignation that no one documented in writing, no one investigated before

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

separation, the employee continued to perform County work after the supposed "resignation not in good standing," and the employee immediately, repeatedly and emphatically denied resigning once the County first announced that it had "accepted" the supposed resignation. Even where the County tried to stick to its original story, the hearing record shows that the County's theory shifted; the County's own witnesses materially undermined the resignation narrative; and the County processed this matter as an involuntary separation first and a fact-finding exercise never.

The Commission should find that the County failed to meet its burden of proof, reverse the County's decision, and reinstate Mr. Wyatt to his merit position as if he never left, with interest, because: (a) the Appointing Authority referred to Mr. Wyatt as "terminated"; (b) alternatively, the County failed to prove a voluntary resignation under Rule 19 and Missouri law; (c) Mr. Wyatt's undisputed conduct is inconsistent with any completed resignation; (d) the Appointing Authority admitted that the facts of Mr. Wyatt's alleged resignation don't align with resignations "not in good standing;" and (e) the County denied Mr. Wyatt the minimum due process required before depriving a merit employee of continued employment and disparaging his reputation.

**Jurisdiction and Procedural Background**

Mr. Wyatt was a merit employee serving as Chief Operating Officer. See Tr. 31:10-13; 122:13-15; 123:11-13. Jurisdiction lies with the Civil Service Commission because this appeal challenges a termination of a merit employee. Even if the Commission ignores the Appointing Authority's sworn testimony of considering it a termination, and otherwise considers the County's contrived story, it involves a separation that was disciplinary in substance. Article VII of

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

the Charter gives the Commission authority to hear appeals in cases of disciplinary action by appointing authorities. See St. Louis County Charter Art. VII, § 7.030(3). Rule XXII of the Civil Service Rules provides that the Commission may review qualifying appeals and may affirm, modify, or reverse the Appointing Authority's action. If the County's action was a termination, which was admitted, or, alternatively, not on a valid resignation, then it is an appealable removal.

Before the hearing, counsel for Mr. Wyatt asked the Commission to compel testimony and collect non-privileged records, explaining that Mr. Wyatt had received no witness list, no records, and no statement of cause from the County. See Tr. 9:14-23; 10:11-15; 19:16-24; 22:10-15; 23:1-15. The County confirmed at the hearing that it had submitted no documents. See Tr. 10:11-15. Mr. Wyatt additionally requested relevant documents through Missouri's Sunshine Law, but received no production in the 34 days between his request and the evidentiary hearing.

The Commission later directed that post-hearing findings of fact and conclusions of law could be filed and specifically referenced "the statement from the young lady that made the statement," i.e., Ms. Pike's statement. See Tr. 165:08-168:05. The Pike statement was then produced to the Commission by the County on April 27, 2026, nearly a month after the March 30, 2026 hearing, although the County represented at hearing that Ms. Pike's statement was taken later on February 6. See Tr. 68:16-70:05; 82:6-12; Pike Statement at Exhibit 1. The document produced is undated and unsigned. See Exhibit 1. Mr. Wyatt had no opportunity to confront Ms. Pike about that document after it was produced.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

## Argument

Even under the theory of resignation "not in good standing" that the County wants the Commission to believe, the County's treatment of Mr. Wyatt was disciplinary in substance, not a voluntary departure. The Charter gives this Commission authority to hear appeals in disciplinary matters. See St. Louis County Charter art. VII, § 7.030(3). The Commission also took judicial notice of Charter Article VII, and Civil Service Rules XIX, XX, XXI, and XXII. See Tr. 25:7-26:3. Where the County relies on alleged misconduct to remove a merit employee, it cannot evade review by simply relabeling the event a resignation.

### I. The County Impermissibly Denied Mr. Wyatt the Pre-Deprivation Process Required by Loudermill and St. Louis County Civil Service Rule XXI.

A covered merit employee has a protected property interest in continued employment when the governing law retains employees on the basis of merit and ability and provides appeal rights in disciplinary cases. See St. Louis County Charter Art. VII, §§ 7.010, 7.030(3). In Cleveland Board of Education v. Loudermill, the United States Supreme Court held that due process requires, before discharge, notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to present his side of the story. See 470 U.S. 532, 542-46 (1985). The pretermination or pre-determination hearing need not be elaborate, but it must occur before the government makes effective the decision to deprive the employee of the job; it is an initial check against mistaken decisions. Id. Rule XXI of the St. Louis County Civil Service Rules mirrors those constitutional protections, and the Commission took judicial notice of the Rule during the hearing. See Tr. 25:07-26:03.

Dr. Cunningham testified under oath that, in this situation, she "would never talk directly to the **person that's being terminated**." See Tr. 98:05-10 (emphasis added). That testimony is

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

fatal to the County's case. The County was required to follow the requirements of Loudermill and Rule XXI, but it did not do so. No one gave Mr. Wyatt advance notice that the County was terminating his position. No one explained the evidence relied upon in terminating him, and no one gave him a chance to be heard before the County made the decision effective. Instead, Dr. Cunningham had her assistant inform Mr. Wyatt on February 6th that a supposed resignation "not in good standing" from the day before had already been accepted. See Tr. 79:04-24; 82:13-23. Dr. Cunningham further testified that she told Ms. Gardner to "grab security" and that security walked Mr. Wyatt out, while Mr. Wyatt testified that security was present when he left. See Tr. 91:11-92:07; 102:5-11; 132:16-20. Reinstatement of Mr. Wyatt, under the terms outlined below, is the appropriate relief.

**II. Even if the Commission Ignores Dr. Cunningham's Admission, the County Did Not Prove a Resignation Under Civil Service Commission Rule XIX.**

The record does not support a valid resignation under any route recognized by the County's own rules and hearing theory. Consistent with Dr. Cunningham's testimony using the language of termination, the County produced no written resignation, no contemporaneous memorialization by the decisionmaker, no third-party witness testimony corroborating an oral resignation, and no alleged written statement from Mr. Melton, despite testimony that such a statement existed and was relied upon. The absence of ordinary employment documentation substantially undermines the reliability of the County's claim that Mr. Wyatt voluntarily resigned.

Also importantly, Mr. Wyatt did not disappear from County service. According to the hearing record, he came to the office shortly after the alleged call on Thursday, February 5th, met briefly with Mr. Melton, worked the rest of that day with numerous people in the office,

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

returned on February 6th, and remained engaged in County work until Ms. Gardner confronted him around 12:40 p.m. that day. See Tr. 37:20-38:18; 64:09-65:17; 71:10-18; 129:11-132:25; 148:16-25. This matters because Dr. Cunningham, the County's own Appointing Authority, explained that the verbal resignations she accepts are situations where the employee says "I quit," leaves immediately, and does not continue working. See Tr. 88:17-89:08; 95:9-15; 98:23-99:01. That is not this record. By the County's own description, this case does not fit its own category.

**III. Even if the Commission Ignores Dr. Cunningham's Admission, Rule XXI Should Have Governed Because the County Treated this as a Misconduct-Based Separation.**

The County has repeatedly attempted to reframe the "situation," as Dr. Cunningham called it, as a profanity-laced, heated interaction that called into question Mr. Wyatt's "mental health" and justified a voluntary resignation "not in good standing." See Tr. 28:16-24; 35:01-36:25; 90:21-91:12. Even taking that story at face value, Dr. Cunningham admitted she accepted the alleged resignation indirectly through Mr. Melton without speaking to Mr. Wyatt at all. See Tr. 89:10-23; 90:13-18. Mr. Melton testified that Dr. Cunningham told him to document the alleged resignation himself, but not to obtain a written resignation from Mr. Wyatt. See Tr. 44:01-16. Dr. Cunningham further testified that she "needed information to give back to our County counselor, and . . . needed very specific information." See Tr. 89:24-90:01. She needed information to provide to the County's attorneys, but did not think it necessary to document the actual resignation. Dr. Cunningham also testified that, before she knew Mr. Wyatt would deny voluntarily resigning, she instructed that security be called and that it is "standard to have security by just in case something happens." See Tr. 91:11-25; 102:05-11. Everyone agrees that Mr. Wyatt immediately denied resigning. See, e.g., Tr. 79:15-24; 82:13-23; 132:18-25; 144:05-12.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Dr. Cunningham admitted that, even after Ms. Gardner reported that denial, and even after later emails emphatically denying resignation, she did not ask for an investigation or revisit the decision. See Tr. 92:01-25; 102:14-25; Emails at Exhibit 2.

Under Rule XXII and Loudermill, all of this is backwards: the government cannot decide first, deprive a merit employee of his job second, and then treat the employee's response as too late. This therefore was not merely a failure of form. It was the absence of any pretermination hearing at all. Mr. Wyatt was given no contemporaneous notice that the County had terminated his employment or accepted a verbal resignation "not in good standing," no opportunity to meet with the Appointing Authority before the decision was finalized, and no chance to correct what the record shows was, at minimum, a highly disputed and error-prone account. In a merit system, where the whole point is protection against mistaken or arbitrary removals, that omission is legally significant and independently supports reversal.

**IV. The County's Witnesses Materially Undercut the Verbal-Resignation Story.**

Again, it should be dispositive that Dr. Cunningham used the language of termination in describing how she handles the "situation" at issue here. See Tr. 98:05-10. Yet the County's proof of a voluntary resignation "not in good standing" depends almost entirely on Mr. Melton's account of a 58-second phone call. See Exhibit 3. A problem the County cannot outrun is that the surrounding evidence is inconsistent with a completed resignation. Mr. Melton testified that when Mr. Wyatt appeared at work on February 5th, he conversed with Mr. Wyatt in his office, but no request was made for a written resignation at that time. A reasonable inference is that no unequivocal resignation existed because County leadership knew that Mr. Wyatt did not intend to resign and would not provide one in writing. This gap is powerful because it calls into

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

question Mr. Melton's credibility, contemporaneous conduct, and the reliability of the County's narrative.

Even more, Mr. Melton acknowledged that he received work-related texts from Mr. Wyatt on the morning of February 6th and saw him in the parking lot later that day, yet did not inquire, "[w]hy are you texting me about work?" or "[w]hy are you here?" See Tr. 47:21-48:19; 46:13-24. If Mr. Melton truly believed the 58-second phone call had ended Mr. Wyatt's employment relationship at approximately 9:30 a.m. on February 5th, his response to continuing work on February 6th would have been immediate. It was not.

Gina Pike, Mr. Melton's assistant, testified that she spoke with Mr. Wyatt shortly after the supposed resignation call, that Mr. Wyatt did not tell her he quit, and that she did not witness any such conversation between Messrs. Melton and Wyatt. See Tr. 68:05-15. Ms. Pike then worked with Mr. Wyatt throughout the entire day, until 4:30 p.m. See Tr. 64:09-25; 65:01-17; 71:10-18.

Dr. Miller, Chief Medical Officer, also met with Mr. Wyatt on February 5th, observed no agitation, did not hear any elevated office discussion, and heard no indication that he had resigned. See Tr. 110:15-111:24; 113:07-24. Dr. Miller further confirmed that the behavior described by Mr. Melton was unlike Mr. Wyatt; specifically that he had never witnessed Mr. Wyatt get angry and curse at people. See Tr. 110:21-24. Damon Broadus, Deputy Director of Public Health, likewise testified that he saw no aggression from Mr. Wyatt on February 5th, nor had he ever heard or seen disrespectful conduct by Mr. Wyatt. See Tr. 119:08-120:25.

Ms. Gardner testified that the County's "acceptance of the resignation" did not occur until midday February 6th, that Mr. Wyatt was surprised, and that he immediately said he had

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

not resigned. See Tr. 79:04-24; 82:13-23. That is not post hoc buyer's remorse. It is a contemporaneous denial the first time the County told Mr. Wyatt that it was treating him as resigned.

**V. The County's Shifting Story and the Late Pike Statement Further Undermine Reliability.**

The County's account is further undermined by its shifting description of the supposed resignation. At the time of separation, the explanation communicated to Mr. Wyatt through Ms. Gardner focused on whether he had entered Mr. Melton's office and cursed. See Tr. 131:18-132:13; 149:08-18. At the hearing, however, the County's principal merits theory was materially different: a 58-second phone call while Mr. Wyatt was driving into work, that no one else heard, and that the alleged in-office exchange was not, in fact, the resignation event. See Tr. 28:12-24; 34:9-17; 35:13-36:13; 97:12-20. That change is not minor. It goes directly to what supposedly happened, where it happened, and who, if anyone, could corroborate it. The inconsistency is made more serious by Mr. Melton's testimony that he prepared a written statement and provided information to management . . . and by the strong inference that Ms. Gardner relied on that statement, or on related undisclosed communications, in confronting Mr. Wyatt based on an account that focused on whether he had gone into Mr. Melton's office, cursed, and quit. Yet that statement was not produced before or during the hearing, depriving Mr. Wyatt of the ability to test whether the County's present version matches the contemporaneous written account. And, again, Mr. Melton's own testimony raises the obvious question: if he truly believed on the morning of February 5th that Mr. Wyatt had resigned, why did he not ask for a written resignation when he saw him minutes later in the office? The most

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

reasonable inference is that he did not ask because he knew Mr. Wyatt would not provide one, which is fully consistent with Mr. Wyatt's position that he had not resigned at all.

The County's shift matters because it reinforces that the County did not contemporaneously process an undisputed resignation. It processed a disputed event and later fit the facts to a resignation label. It processed a "termination," per Dr. Cunningham.

The post-hearing Pike statement only deepens the County's reliability problem. During the hearing, Ms. Pike testified that Ms. Gardner "took" her statement later in the day on Friday, February 6th. See Tr. 68:16-70:05. The document produced to the Commission nearly a month after the hearing is a typed, one-page "Summary of Events," undated and unsigned, and Mr. Wyatt had no chance to question Ms. Pike about its origin, timing, edits, or accuracy after it was produced. See Exhibit 1. The Commission should afford it no weight.

## VI. The Record Supports Corrective Relief to Clear Mr. Wyatt's Name.

When the government, in connection with employment termination, puts at issue an employee's "good name, reputation, honor, or integrity," due process requires an opportunity to refute the charge. Board of Regents v. Roth, 408 U.S. 564, 573 (1972). Reputation alone is not enough, but reputation plus loss of employment can implicate liberty interests. Paul v. Davis, 424 U.S. 693, 701-10 (1976). And where a stigmatizing charge is false, the purpose of the hearing is to give the employee an opportunity to clear his name. Codd v. Velger, 429 U.S. 624, 627-28 (1977).

By asserting that Mr. Wyatt resigned following alleged misconduct, while simultaneously denying him a meaningful pretermination process and withholding key investigative materials,

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

the County deprived Mr. Wyatt of the opportunity to clear his name and challenge stigmatizing allegations affecting his professional reputation and future employment opportunities.

Here, the County associated Mr. Wyatt's separation with a profanity-laced explosive quit, a "not in good standing" designation, questioning of Mr. Wyatt's "mental health" to Mr. Melton and an external third party, and a removal with security present. See, e.g., Tr. 90:07-12; 100:12-101:22; 132:18-20. Mr. Wyatt squarely disputes the truth of those charges and disparaging characterizations. See Tr. 132:21-24; 144:05-12. Even if the Commission concludes it need not decide the federal constitutional liberty-interest issue, it should at minimum order removal of the "resigned not in good standing" notation, any mention of a profanity-laced explosive quit, any mention of "mental health" concerns, and any equivalent misconduct characterization from Mr. Wyatt's file because the record does not support it.

## VII. The County's Rolling Nonproduction Preserved Mr. Wyatt's Sunshine Law Objection and Independently Prejudiced the Fairness of the Proceeding.

On February 24, 2026, Mr. Wyatt timely requested relevant public records, including materials concerning the alleged resignation, investigative materials, witness statements, and his HR file. Yet the hearing proceeded without production of those materials. The resulting prejudice was not abstract. In a case that turned almost entirely on credibility and on the details of a brief alleged verbal exchange, contemporaneous records mattered. Without timely production, Mr. Wyatt could not compare witness testimony to underlying writings, prepare cross-examination using statements and investigative materials, test whether the County's hearing theory matched what was communicated to him at the time of separation, or determine whether exculpatory or inconsistent records existed in his HR file or elsewhere.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

The problem is underscored by the hearing record itself. Counsel for Mr. Wyatt advised the Commission that Mr. Wyatt had requested compelled records and had received nothing from either the County or the Commission before hearing. When witness statements surfaced during testimony, counsel for Mr. Wyatt requested them and objected that he had been denied a fair opportunity to confront the witnesses with those materials while they were on the stand. That objection was well-founded. The late production of Ms. Pike's statement nearly a month after the hearing illustrates the point: disclosure delayed until after testimony is not disclosure in time to permit meaningful use.

Missouri's Sunshine Law required the County to act on a request for records as soon as possible and, absent reasonable cause, no later than the end of the third business day after receipt. See R.S.Mo. § 610.023. The County, through Ms. Gardner, Dr. Cunningham's assistant, as custodian of records, confirmed acceptance of the public records request on February 24th. Ms. Gardner then delayed production of the requested documentation *seven* separate times and, tellingly, *twice* pushed production just beyond the initial meeting and then the evidentiary hearing in this matter.

Mr. Wyatt cannot speculate regarding every document that remains withheld. That is precisely the prejudice. Because the records have not been produced, the full extent of the prejudice cannot yet be known. Mr. Wyatt therefore expressly preserves all objections arising from the County's repeatedly delayed and ultimately recent and unresponsive production, including all rights and remedies under Missouri's Sunshine Law, and reserves the right to seek any additional relief that may become appropriate once the records are finally produced or the missing records are identified.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

## Conclusion

The County bears the burden of proving that Mr. Wyatt voluntarily and unequivocally resigned rather than being removed without due process. A public employer cannot avoid constitutional and civil service protections merely by characterizing a disputed separation as a resignation. Due process requires notice of the allegations, disclosure of the evidence relied upon, and a meaningful opportunity to respond before a protected public employee may be deprived of employment. The County produced no written resignation and failed to produce the alleged written statement it relied upon, despite testimony that such a statement existed. These failures substantially undermine the reliability of the County's resignation claim and demonstrate the absence of constitutionally adequate process.

The County asks the Commission to treat a disputed, unwritten, uninvestigated, and immediately denied allegation as a final resignation.

WHEREFORE, for the foregoing reasons, Mr. Wyatt respectfully requests that the Commission find and order as follows:

1. The County removed Mr. Wyatt from employment without providing the pre-deprivation process required by Loudermill and Civil Service Rule XXI.

2. The County failed to prove that Mr. Wyatt voluntarily resigned.

3. In the alternative, Mr. Wyatt's separation was, in substance, a disciplinary removal or discharge and not a valid resignation under Civil Service Rule XIX.

4. Reverse the County's action under Rule XXII and order reinstatement to Mr. Wyatt's former position with (a) back pay with interest, (b) benefits, and (c) restoration of service credit, leave, title, seniority, and office space.

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

5. Order the County to remove from Mr. Wyatt's personnel record any notation that he resigned "not in good standing," demonstrated any "mental health" issues, or otherwise engaged in misconduct related to a resignation.

6. Exclude the late-produced Pike statement from consideration or, alternatively, accord it no weight because it is undated, unsigned, produced after the hearing, and was never subject to confrontation or rebuttal after production.

7. Decline to afford Respondents any evidentiary or persuasive advantage from records not timely produced under Missouri's Sunshine Law, preserve Mr. Wyatt's objections arising from that nonproduction, and grant such further relief as is necessary to prevent prejudice from the County's delayed disclosure.

8. Grant all other relief the Commission deems just and proper.

Respectfully submitted,

__s/s Katherine Frierdich_________

Katherine C. Frierdich (née Lemley)
MoBar #51375
Cadenzia Consulting LLC
14 Fordyce Lane
St. Louis, Missouri 63124
(314) 791-5297
kcfrierdich@cadenziaconsulting.com
Counsel for Appellant

Certificate of Service

I hereby certify that a true and correct copy of the foregoing was served on counsel for Respondent and the St. Louis County Clinical Consumer Majority Board on May 13, 2026, via electronic mail.

__s/s Katherine Frierdich_________

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Exhibit 1

Pike Statement

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Exhibit 2

Emails

Electronically Filed - St Louis County - July 17, 2026 - 02:27 PM

Exhibit 3

Phone Record

EXHIBIT
B

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| DUANE "PETE" WYATT, Plaintiff, | ) | |
| v. | ) | Case No. 26SL-CC05095 |
| ST. LOUIS COUNTY, et al., Defendant, | ) | |

**ORIGINAL FILING FORM**

**THIS FORM MUST BE COMPLETED AND VERIFIED BY THE FILING PARTY WHEN INITIATING A NEW CASE.**

☐ THIS SAME CAUSE, OR A SUBSTANTIALLY EQUIVALENT COMPLAINT, WAS PREVIOUSLY FILED IN THIS COURT AS CASE NUMBER ____________________ AND ASSIGNED TO THE HONORABLE JUDGE ______________________________.

☐ THIS CAUSE IS RELATED, BUT IS NOT SUBSTANTIALLY EQUIVALENT TO ANY PREVIOUSLY FILED COMPLAINT. THE RELATED CASE NUMBER IS _____________________ AND THAT CASE WAS ASSIGNED TO THE HONORABLE ________________________. THIS CASE MAY, THEREFORE, BE OPENED AS AN ORIGINAL PROCEEDING.

☒ NEITHER THIS SAME CAUSE, NOR A SUBSTANTIALLY EQUIVALENT COMPLAINT, HAS BEEN PREVIOUSLY FILED IN THIS COURT, AND THEREFORE MAY BE OPENED AS AN ORIGINAL PROCEEDING.

**The undersigned affirms that the information provided above is true and correct.**

Date: 09/09/2026

/s/ Sandra Zambrana #61125
Signature of Filing Party

EXHIBIT C

JS 44 (Rev. 03/24)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

DUANE "PETE" WYATT

(b) County of Residence of First Listed Plaintiff St. Louis County, MO
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*
Katherine C. Frierdich, Mo Bar #51375. Cadenzia Consulting LLC
14 Fordyce Lane. St. Louis, Mo. 63124. (314) 791-5297
kcfrierdich@cadenziaconsulting.com

## DEFENDANTS

ST LOUIS COUNTY JUSTICE CTR ETAL

County of Residence of First Listed Defendant St. Louis County, MO
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*
Sandra Zambrana #61125. County Counselor's Office
41 S. Central Ave. Clayton, MO 63105

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question *(U.S. Government Not a Party)*
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

**CONTRACT**: ☐ 110 Insurance; ☐ 120 Marine; ☐ 130 Miller Act; ☐ 140 Negotiable Instrument; ☐ 150 Recovery of Overpayment & Enforcement of Judgment; ☐ 151 Medicare Act; ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans); ☐ 153 Recovery of Overpayment of Veteran's Benefits; ☐ 160 Stockholders' Suits; ☐ 190 Other Contract; ☐ 195 Contract Product Liability; ☐ 196 Franchise

**TORTS** — PERSONAL INJURY: ☐ 310 Airplane; ☐ 315 Airplane Product Liability; ☐ 320 Assault, Libel & Slander; ☐ 330 Federal Employers' Liability; ☐ 340 Marine; ☐ 345 Marine Product Liability; ☐ 350 Motor Vehicle; ☐ 355 Motor Vehicle Product Liability; ☐ 360 Other Personal Injury; ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY: ☐ 365 Personal Injury - Product Liability; ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability; ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY: ☐ 370 Other Fraud; ☐ 371 Truth in Lending; ☐ 380 Other Personal Property Damage; ☐ 385 Property Damage Product Liability

**FORFEITURE/PENALTY**: ☐ 625 Drug Related Seizure of Property 21 USC 881; ☐ 690 Other

**LABOR**: ☐ 710 Fair Labor Standards Act; ☐ 720 Labor/Management Relations; ☐ 740 Railway Labor Act; ☐ 751 Family and Medical Leave Act; ☐ 790 Other Labor Litigation; ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**: ☐ 462 Naturalization Application; ☐ 465 Other Immigration Actions

**BANKRUPTCY**: ☐ 422 Appeal 28 USC 158; ☐ 423 Withdrawal 28 USC 157

**INTELLECTUAL PROPERTY RIGHTS**: ☐ 820 Copyrights; ☐ 830 Patent; ☐ 835 Patent - Abbreviated New Drug Application; ☐ 840 Trademark; ☐ 880 Defend Trade Secrets Act of 2016

**SOCIAL SECURITY**: ☐ 861 HIA (1395ff); ☐ 862 Black Lung (923); ☐ 863 DIWC/DIWW (405(g)); ☐ 864 SSID Title XVI; ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**: ☐ 870 Taxes (U.S. Plaintiff or Defendant); ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**: ☐ 375 False Claims Act; ☐ 376 Qui Tam (31 USC 3729(a)); ☐ 400 State Reapportionment; ☐ 410 Antitrust; ☐ 430 Banks and Banking; ☐ 450 Commerce; ☐ 460 Deportation; ☐ 470 Racketeer Influenced and Corrupt Organizations; ☐ 480 Consumer Credit (15 USC 1681 or 1692); ☐ 485 Telephone Consumer Protection Act; ☐ 490 Cable/Sat TV; ☐ 850 Securities/Commodities/ Exchange; ☐ 890 Other Statutory Actions; ☐ 891 Agricultural Acts; ☐ 893 Environmental Matters; ☐ 895 Freedom of Information Act; ☐ 896 Arbitration; ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision; ☐ 950 Constitutionality of State Statutes

**REAL PROPERTY**: ☐ 210 Land Condemnation; ☐ 220 Foreclosure; ☐ 230 Rent Lease & Ejectment; ☐ 240 Torts to Land; ☐ 245 Tort Product Liability; ☐ 290 All Other Real Property

**CIVIL RIGHTS**: ☒ 440 Other Civil Rights; ☐ 441 Voting; ☐ 442 Employment; ☐ 443 Housing/ Accommodations; ☐ 445 Amer. w/Disabilities - Employment; ☐ 446 Amer. w/Disabilities - Other; ☐ 448 Education

**PRISONER PETITIONS** — Habeas Corpus: ☐ 463 Alien Detainee; ☐ 510 Motions to Vacate Sentence; ☐ 530 General; ☐ 535 Death Penalty. Other: ☐ 540 Mandamus & Other; ☐ 550 Civil Rights; ☐ 555 Prison Condition; ☐ 560 Civil Detainee - Conditions of Confinement

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding ☒ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing ***(Do not cite jurisdictional statutes unless diversity)***:
42 U.S.C. 1983

Brief description of cause:
Plaintiff claims Defendants are violating his 8th Amendment rights.

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: X Yes No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):* JUDGE DOCKET NUMBER

DATE: September 9, 2026

SIGNATURE OF ATTORNEY OF RECORD: /s/ Sandra Zambrana #61125

**FOR OFFICE USE ONLY**

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG. JUDGE